**UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION**

**In Re: Highland Capital Management, L.P.**

§

§    Case No **19-34054-SGJ-11**

**The Dugaboy Investment Trust**
**- Appellant**

§

vs.    §

**Highland Claimant Trust**
-Appellee

§        **3:25-CV-02724-L**

§

[4401] **Order Granting Motion for Order Fixing Allowed Amount of Class 11 Interests (related document # 4362) Entered on 9/22/2025.**

# Volume 3
# APPELLANT RECORD

Geoffrey S. Harper
Texas Bar No. 00795408
gharper@winston.com
John Michael Gaddis
Texas Bar No. 24069747
mgaddis@winston.com
WINSTON & STRAWN LLP
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
(214) 453-6500
(214) 453-6400 (fax)

*Counsel for Appellant The Dugaboy Investment Trust*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | Case No. 19-34054-sgj |
| | § | |
| Reorganized Debtor. | § | |
| | § | |

*INDEX*

**Appellant The Dugaboy Investment Trust's Statement of Issues to be Presented and Amended Designation of Items to be Included in the Record on Appeal From the Bankruptcy Court's Order Fixing Allowed Amount of Class 11 Interests**

Pursuant to Rule 8009(a)(1) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Appellant The Dugaboy Investment Trust ("Appellant"), having filed a Notice of Appeal [Docket No. 4423] on October 6, 2025, from the Bankruptcy Court's September 22, 2025 *Order Fixing Allowed Amount of Class 11 Interests* [Docket No. 4401], and having received the Clerk's letter of October 23, 2025 requesting corrections to the record designations, submits this *Statement of Issues to be Presented and Amended Designation of Items to be Included in the Record on Appeal*, and respectfully requests that the Clerk prepare and forward the listed items to the District Court for inclusion in the record in connection with this appeal.[1]

## STATEMENT OF ISSUES TO BE PRESENTED ON APPEAL

1.  Did the Bankruptcy Court misapply the absolute-priority rule in determining that the Hunter Mountain Investment Trust's (HMIT's) Class 10 interests were entitled to 100% of any excess funds left over after all senior creditor classes were paid in full, in disregard of equity interests that allocated 99.5% to HMIT and 0.5% to Dugaboy?

2.  Did the Bankruptcy Court err when it allocated potential excess funds in a way that effectively gave HMIT *more than* 100% of what it was entitled to, in contravention of black-letter law holding that a senior class cannot receive more than 100% without the consent of the junior class? *See In re Idearc, Inc.*, 423 B.R. 138, 170 (Bankr. N.D. Tex. 2009).

3.  Did the Bankruptcy Court err in determining the value of Dugaboy's interest only as a fixed dollar amount, rather than a *pro rata* percentage reflecting its equity ownership share?

4.  Did the Bankruptcy Court err in allowing Highland to use a valuation methodology for determining the allowed amount of Dugaboy's claim based on limited partners' pre-petition capital accounts, which were derived from untested and unvetted figures created for tax purposes that bore little if any relation to true market value, when nothing in the confirmed Reorganization Plan allowed for such a method?

5.  Did the Bankruptcy Court err in believing that "res judicata" required it to use the same methodology to value Dugaboy's Class 11 interests as it had previously used to value HMIT's Class 10 interests?

---

[1] Because of its voluminous nature, Docket No. 4255 will be delivered to the Clerk on a flash drive that will arrive tomorrow.

1

6.  Did the Bankruptcy Court err at the hearing on September 18, 2025, when it invoked "res judicata" to threaten Dugaboy's counsel with Rule 11 sanctions for "recycling" arguments previously made by the "revolving door of lawyers" that had represented Dugaboy over the previous several years, thus seeking to impose a chilling effect on Dugaboy's right to zealous advocacy by its chosen counsel?

7.  Did the Bankruptcy Court's Order Fixing Allowed Amount of Class 11 Interests (Docket No. 4401) constitute a "final" judgment or order, thereby giving the District Court jurisdiction for appellate review of the Bankruptcy Court's Order denying Dugaboy's Motion to Recuse?

**DESIGNATION OF ITEMS TO BE INCLUDED IN THE RECORD ON APPEAL**

1.  Notice of Appeal for Bankruptcy Case No. 19-34054-sgj11 [Docket No. 4423] filed by Appellant;

2.  Bankruptcy Court's *Order Fixing Allowed Amount of Class 11 Interests* [Docket No. 4401];

3.  Docket entries kept by the bankruptcy clerk in case no. 19-34054-sg11;

4.  Any opinion, findings of fact, and conclusions of law of the bankruptcy court relating to the issues on appeal, including transcripts of all oral rulings; and

5.  Each of the additional documents and items designated below:

| Date Filed | Docket No. | Description/Docket Text |
|---|---|---|
| 2/22/2021 | 1943 | Order confirming the fifth amended chapter 11 plan, as modified and granting related relief (RE: related document(s) 1472 Chapter 11 plan filed by Debtor Highland Capital Management, L.P., 1808 Chapter 11 plan filed by Debtor Highland Capital Management, L.P.). Entered on 2/22/2021 (Okafor, M.) |
| 9/14/2022 | 3521-5 | Claimant Trust Agreement |
| 2/27/2024 | 4199 | Stipulated and Agreed Order resolving (A) HCLOM, Ltd.'s Scheduled claims 3.65 and 3.66; and (B) Highland Capital Management, L.P.'s (1) Objection and (2) Motion for a bad faith |

*Vol. 2*

*000827*

*000845*

*000848*

*Vol. 3*

*000873*

*000881*

*000883*

*000885*
*Thru Vol 5*

| | | | |
|---|---|---|---|
| | | | finding and an award of attorney's fees against HCLOM, Ltd., and James Dondero in connection therewith (related document #3657, 4176) Entered on 12/27/2024. (Dugan, Sue) |
| | 5/19/2025 | 4216 | Motion to compromise controversy with the HMIT Entities. (Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith) Filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust (Attachments: #1 Exhibit A--Proposed Order (Annable, Zachery) |
| | 5/19/2025 | 4217 | Declaration re: (Declaration of Gregory V. Demo in Support of Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith) filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust (RE: related document(s) 4216 Motion to compromise controversy with the HMIT Entities. (Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith)). (Attachments: #1 Exhibit 1 (Annable, Zachery) |
| | 5/19/2025 | 4217-1 | Proposed Settlement Agreement |
| | 6/9/2025 | 4230 | Objection to (related document(s): 4216 Motion to compromise controversy with the HMIT Entities. (Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith) filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust) filed by Partner Dugaboy Investment Trust. (Hesse, Gregory) |
| | 6/20/2025 | 4251 | Exhibit List for the June 25, 2025 Hearing filed by Partner Dugaboy Investment Trust (RE: related document(s) 4230 Objection). (Lang, Michael) |
| | 6/20/2025 | 4252 | Witness List for the June 25, 2025 Hearing filed by Partner Dugaboy Investment Trust (RE: related document(s) 4230 Objection). (Lang, Michael) |
| | 6/20/2025 | 4255 *(to be submitted to* | Witness and Exhibit List filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust (RE: related |

3

| | | | |
|---|---|---|---|
| | *Clerk on flash drive*) | | document(s) 4216 Motion to compromise controversy with the HMIT Entities. (Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith)). (Attachments: #1 Exhibit 1 , #2 Exhibit 2 , #3 Exhibit 3 , #4 Exhibit 4 , #5 Exhibit 5 , #6 Exhibit 6 , #7 Exhibit 7 , #8 Exhibit 8 , #9 Exhibit 9 , #10 Exhibit 10 , #11 Exhibit 11 , #12 Exhibit 12 , #13 Exhibit 13 , #14 Exhibit 14 , #15 Exhibit 15 , #16 Exhibit 16 , #17 Exhibit 17 , #18 Exhibit 18 , #19 Exhibit 19 , #20 Exhibit 20 , #21 Exhibit 21 , #22 Exhibit 22 , #23 Exhibit 23 , #24 Exhibit 24 , #25 Exhibit 25 , #26 Exhibit 26 , #27 Exhibit 27 , #28 Exhibit 28 , #29 Exhibit 29 , #30 Exhibit 30 , #31 Exhibit 31 , #32 Exhibit 32 , #33 Exhibit 33 , #34 Exhibit 34 , #35 Exhibit 35 , #36 Exhibit 36 , #37 Exhibit 37 , #38 Exhibit 38 , #39 Exhibit 39 , #40 Exhibit 40 , #41 Exhibit 41 , #42 Exhibit 42 , #43 Exhibit 43 , #44 Exhibit 44 , #45 Exhibit 45 , #46 Exhibit 46 , #47 Exhibit 47 , #48 Exhibit 48 , #49 Exhibit 49 , #50 Exhibit 50 , #51 Exhibit 51 , #52 Exhibit 52 , #53 Exhibit 53 , #54 Exhibit 54 , #55 Exhibit 55 , #56 Exhibit 56 , #57 Exhibit 57 , #58 Exhibit 58 , #59 Exhibit 59 , #60 Exhibit 60 , #61 Exhibit 61 , #62 Exhibit 62 , #63 Exhibit 63 , #64 Exhibit 64 , #65 Exhibit 65 , #66 Exhibit 66 , #67 Exhibit 67 , #68 Exhibit 68 , #69 Exhibit 69 , #70 Exhibit 70 , #71 Exhibit 71 , #72 Exhibit 72 , #73 Exhibit 73 , #74 Exhibit 74 , #75 Exhibit 75 , #76 Exhibit 76 , #77 Exhibit 77 , #78 Exhibit 78 , #79 Exhibit 79 , #80 Exhibit 80 , #81 Exhibit 81 , #82 Exhibit 82 , #83 Exhibit 83 , #84 Exhibit 84 , #85 Exhibit 85 , #86 Exhibit 86 , #87 Exhibit 87 , #88 Exhibit 88 , #89 Exhibit 89 , #90 Exhibit 90 , #91 Exhibit 91 , #92 Exhibit 92 , #93 Exhibit 93 , #94 Exhibit 94 , #95 Exhibit 95 , #96 Exhibit 96 , #97 Exhibit 97 , #98 Exhibit 98 , #99 Exhibit 99 , #100 Exhibit 100 , #101 Exhibit 101 , #102 Exhibit 102 , #103 Exhibit 103 , #104 Exhibit 104 , #105 Exhibit 105 , #106 Exhibit 106 , #107 Exhibit 107 , #108 Exhibit 108 , #109 Exhibit 109 , #110 Exhibit 110 , #111 Exhibit 111 , #112 Exhibit 112 , #113 Exhibit 113 , #114 Exhibit 114 , #115 Exhibit 115 , #116 Exhibit 116 , #117 Exhibit 117 , #118 Exhibit 118 , #119 Exhibit 119 , #120 Exhibit 120 , #121 Exhibit 121 , #122 Exhibit 122 , #123 Exhibit 123 (Annable, Zachery) |
| | 6/20/2025 | 4256 | Witness and Exhibit List filed by Creditor Hunter Mountain Investment Trust (RE: related document(s) 4216 Motion to compromise controversy with the HMIT Entities. (Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 |

*Handwritten left margin:* VOl. 6  003542

4

| | | | |
|---|---|---|---|
| | | | U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith)). (Phillips, Louis) |
| | 6/20/2025 | 4257 | Witness and Exhibit List filed by Interested Parties Crown Global Life Insurance, Ltd, The Dallas Foundation (RE: related document(s) 4216 Motion to compromise controversy with the HMIT Entities. (Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith)). (Attachments: #1 Exhibit 1 - Charitable DAF/CLO HoldCo Organization Chart, #2 Exhibit 2 - Rand Structure Chart, #3 Exhibit 3 - July 9, 2021 Memo on DAFs and Sponsoring Orgs, #4 Exhibit 4 - Charitable Respondents Response and Disclosures (Okin, Matthew) |
| | 6/23/2025 | 4271 | Amended Witness and Exhibit List filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust (RE: related document(s) 4253 List (witness/exhibit/generic)). (Attachments: #1 Exhibit 66, #2 Exhibit 67 (Annable, Zachery) |
| | 6/23/2025 | 4272 | Amended Witness and Exhibit List filed by Interested Parties Crown Global Life Insurance, Ltd, The Dallas Foundation (RE: related document(s) 4257 List (witness/exhibit/generic)). (Attachments: #1 Exhibit 5, #2 Exhibit 66, #3 Exhibit 7 7,4 Exhibit 8, 8, Exhibit 9 (Curry, David) |
| | 6/23/2025 | 4273 | Objection to (related document(s)): 4255 List (witness/exhibit/generic) filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust) filed by Partner Dugaboy Investment Trust. (Ohlinger, Ali) |
| | 6/23/2025 | 4275 | Omnibus Reply to (related document(s): 4229 Objection filed by Creditor Patrick Daugherty, 4230 Objection filed by Partner Dugaboy Investment Trust, 4231 Objection filed by Interested Party The Dallas Foundation, Interested Party Crown Global Life Insurance, Ltd) filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust. (Annable, Zachery) |
| | 6/23/2025 | 4277 | Amended Witness and Exhibit List filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust (RE: related document(s) 4255 List (witness/exhibit/generic)). (Attachments: #1 Exhibit 124 , #2 Exhibit 125 (Annable, Zachery) |

5

*vol. B*

*004259*

| | | | |
|---|---|---|---|
| 6/24/2025 | 4279 | Witness and Exhibit List with Respect to Hearing to be Held on June 25, 2025 filed by Partner Dugaboy Investment Trust (RE: related document(s) 4213 Motion to extend time to (Motion for an Order Further Extending Duration of Trusts) (RE: related document(s) 4144 Order on motion to extend/shorten time)). (Attachments: #1 Exhibit 1 (Deitsch-Perez, Deborah) | |
| 6/24/2025 | 4280 | Amended Witness and Exhibit List (Highland Capital Management, L.P., Highland Claimant Trust, and Litigation Sub-Trust Second Amended Witness and Exhibit List with Respect to Hearing to Be Held on June 25, 2025) filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust (RE: related document(s) 4255 List (witness/exhibit/generic), 4277 List (witness/exhibit/generic)).          (Attachments:#1 Exhibit 126 (Annable, Zachery) | |
| 6/25/2025 | 4293 | Court admitted exhibits date of hearing June 25, 2025 (RE: related document(s) 4216 Motion to compromise controversy with the HMIT Entities. (Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith) Filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust (Court Admitted Debtors Exhibits #1 through #9; #11 through #56 & #58 through #123 & #126 offered by attorney John Morris; Court Also Admitted Patrick Daugherty Exhibits #1 through #42 offered by attorney Drew K. York: Court also admitted Dugaboy Investment Trust Exhibit #3, which was a letter offered by attorney Michael J. Lang.) (Edmond, Michael) Modified on 6/30/2025 (emi).Modified on 6/30/2025 (emi). (Entered: 06/27/2025) | |
| 6/25/2025 | 4296 | Transcript of hearing held June 25, 2025, before Chief Judge Stacey C.G. Jernigan [Docket No. 4296] re: Motion for Entry of an Order Approving Settlement with HMIT Entities (4216) [Docket No. 4297] | |
| 6/27/2025 | 4290 | Stipulation by Highland Claimant Trust, Highland Litigation Sub-Trust and The Dugaboy Investment Trust. filed by Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust (RE: related document(s) 4223 Objection). (Annable, Zachery) | |
| 6/27/2025 | 4291 | Stipulation withdrawing objection of The Dallas Foundation and Crown Global Life Insurance, LTD to Motion for Entry of an | |

*004270*

*004295*

*004296*

*004562*

*004291*

| | | | |
|---|---|---|---|
| *vol. 8* | | | order pursuant to Bankruptcy Rule 9019 and 11 U.S.C. Section 363 approving settlement with the HMIT Entities and authorizing actions consistent therewith (RE: related document(s) 4232 Response filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust, 4282 Stipulation filed by Creditor Hunter Mountain Investment Trust). Entered on 6/27/2025 (Okafor, M.) |
| *0045??* | 6/30/2025 | 4297 | Order approving settlement between the Highland Entities and the HMIT Entities and authorizing actions consistent therewith (related document # 4216) Entered on 6/30/2025. (Okafor, M.) |
| *004581* | 7/10/2025 | 4308 | Notice Letter from the Office of the Texas Attorney General Requesting a Stay filed by Interested Party State of Texas. (Stone, Johnathan) |
| *0045?3* | 7/14/2025 | 4311 | Notice of appeal of Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C § 363 Approving Settlement Between the Highland Entities and the HMIT Entities and Authorizing Actions Consistent Therewith. Fee Amount $298 filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4297 Order on motion to compromise controversy). Appellant Designation due by 07/28/2025. (Lang, Michael) |
| *0045?2* | 7/16/2025 | 4323 | Notice regarding the record for a bankruptcy appeal to the U.S. District Court. (RE: related document(s) 4311 Notice of appeal of Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C § 363 Approving Settlement Between the Highland Entities and the HMIT Entities and Authorizing Actions Consistent Therewith. filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4297 Order on motion to compromise controversy). Appellant Designation due by 07/28/2025.) (Whitaker, Sheniqua) |
| *0045?4* | 7/17/2025 | 4326 | Motion to Stay 9019 Order filed by Creditor The Dugaboy Investment Trust. Objections due by 8/7/2025. (Lang, Michael) Modified text on 7/21/2025 (mdo). |
| *vol. 9* *004690* | 7/17/2025 | 4329 | Notice of docketing notice of appeal. Civil Action Number: 3:25-cv-01876-K. (RE: related document(s) 4311 Notice of appeal of Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C § 363 Approving Settlement Between the Highland Entities and the HMIT Entities and Authorizing Actions Consistent Therewith. filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4297 Order on motion to compromise controversy). Appellant Designation due by 07/28/2025.) (Whitaker, Sheniqua) |

| | 7/21/2025 | 4333 | Memorandum of opinion (RE: related document(s) 4308 Notice (generic) filed by Interested Party State of Texas, 4326 The Dugaboy Investment Trust's Motion to Stay 9019 Order filed by Creditor The Dugaboy Investment Trust). Entered on 7/21/2025 (Okafor, M.) |
|---|---|---|---|
| | 8/4/2025 | 4353 | Notice of appeal. Fee Amount $298 filed by Partner Dugaboy Investment Trust (RE: related document(s) 4333 Memorandum of opinion). Appellant Designation due by 08/18/2025. (Attachments: # 1 Exhibit A) (Harper, Geoffrey) |
| | 8/8/2025 | 4362 | Motion to allow claims (Motion for Order Fixing Allowed Amount of Class 11 Interests) Filed by Other Professional Highland Claimant Trust (Attachments: # 1 Exhibit A--Proposed Order) (Annable, Zachery) |
| | 8/12/2025 | 4368 | Amended appellant designation of contents for inclusion in record on appeal and statement of issues on appeal. filed by Partner Dugaboy Investment Trust (RE: related document(s) 4365 Appellant designation). (Harper, Geoffrey) |
| | 8/15/2025 | 4371 | Notice of hearing filed by Other Professional Highland Claimant Trust (RE: related document(s) 4362 Motion to allow claims (Motion for Order Fixing Allowed Amount of Class 11 Interests) Filed by Other Professional Highland Claimant Trust (Attachments: # 1 Exhibit A--Proposed Order)). Hearing to be held on 9/18/2025 at 02:30 PM at https://us-courts.webex.com/meet/jerniga for 4362, (Annable, Zachery) |
| | 8/29/2025 | 4378 | Order Approving Motion to Conform Plan to Fifth Circuit Mandate (related document # 4302) Entered on 8/29/2025. (Okafor, M.) |
| | 9/8/2025 | 4384 | Response opposed to (related document(s): 4362 Motion to allow claims (Motion for Order Fixing Allowed Amount of Class 11 Interests) filed by Other Professional Highland Claimant Trust) filed by Creditor The Dugaboy Investment Trust. (Harper, Geoffrey) |
| | 9/11/2025 | 4389 | Stipulation by Highland Claimant Trust and The Dugaboy Investment Trust. filed by Other Professional Highland Claimant Trust (RE: related document(s) 4384 Response). (Annable, Zachery) |
| | 9/15/2025 | 4393 | Reply to (related document(s): 4384 Response filed by Creditor The Dugaboy Investment Trust) (Reply in Support of Motion for Order Fixing Allowed Amount of Class 11 Interests) filed by Other Professional Highland Claimant Trust. (Annable, Zachery) |

*Handwritten annotations in left margin:*
Vol 10
0049 63
0049 79
00500 1
00500 2
00500 23
005000 29
00500 32
00500 47
00500 51

| | 9/15/2025 | 4394 | Amended Witness and Exhibit List (Highland Claimant Trust's Witness and Exhibit List with Respect to Hearing to Be Held on September 18, 2025) filed by Other Professional Highland Claimant Trust (RE: related document(s) 4362 Motion to allow claims (Motion for Order Fixing Allowed Amount of Class 11 Interests)). (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5 # 6 Exhibit 6 # 7 Exhibit 7 # 8 Exhibit 8 # 9 Exhibit 9 # 10 Exhibit 10) (Annable, Zachery) |
| | 9/15/2025 | 4395 | Witness and Exhibit List for Hearing to be Held on September 18, 2025 filed by Partner Dugaboy Investment Trust (RE: related document(s) 4362 Motion to allow claims (Motion for Order Fixing Allowed Amount of Class 11 Interests)). (Harper, Geoffrey) |
| | 9/18/2025 | 4398 | Court admitted exhibits date of hearing September 18, 2025 (RE: related document(s) 4362 Motion to allow claims (Motion for Order Fixing Allowed Amount of Class 11 Interests) filed by Other Professional Highland Claimant Trust (Court Admitted Debtors/Highland Capital Mgmt., L.P. exhibits #1, #2, #3, #4, #5, #6, #7, #8, #9 & #10 offered by attorney John Morris, found at doc. #4394.) (Edmond, Michael) |
| | 9/22/2025 | 4401 | Order Granting Motion for Order Fixing Allowed Amount of Class 11 Interests (related document # 4362) Entered on 9/22/2025. (Grandstaff, Travis) |

Dated: October 23, 2025   Respectfully submitted,

**WINSTON & STRAWN LLP**

By: */s/ Geoffrey S. Harper*

Geoffrey S. Harper
Texas Bar No. 00795408
gharper@winston.com
John Michael Gaddis
Texas Bar No. 24069747
mgaddis@winston.com
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
(214) 453-6500
(214) 453-6400 (fax)

*Counsel for Appellant*
*The Dugaboy Investment Trust*

## CERTIFICATE OF SERVICE

I certify that on October 23, 2025, a copy of this document was served electronically via the Court's CM/ECF system to the parties registered or otherwise entitled to receive electronic notices in this case.

   */s/ Geoffrey S. Harper*
   Geoffrey S. Harper

10

Gregory G. Hesse, Esq.
State Bar No. 09549419
HUNTON ANDREWS KURTH, LLP
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202-2799
Telephone: (214) 979-3000
Telecopy:   (214) 880-0011

**ATTORNEYS FOR DUGABOY INVESTMENT TRUST**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P. | § | Case No. 19-34054-sgj-11 |
| | § | |
| Reorganized Debtor. | § | |
| | § | |

**PRELIMINARY OBJECTION OF THE DUGABOY INVESTMENT TRUST TO THE
MOTION FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 9019
AND 11 U.S.C. § 363 APPROVING SETTLEMENT WITH THE HMIT ENTITIES**

**COMES NOW**, the Dugaboy Investment Trust ("Dugaboy") and submits this Preliminary

Objection (the "Objection") to the *Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019*

*and 11 U.S.C. § 363 Approving Settlement with the HMIT Entities and Authorizing Actions*

*Consistent Therewith* [Dkt. No. 4216] (the "Settlement Motion"), and in support thereof,

respectfully states as follows:

**PRELIMINARY STATEMENT**

1.      The Settlement Motion seeks approval of a settlement agreement between Highland

Capital Management, L.P. ("Highland"), the Highland Claimant Trust, the Highland Litigation

Sub-Trust, and the Highland Indemnity Trust (collectively, the "Highland Entities"), on the one

hand, and Hunter Mountain Investment Trust ("HMIT") and related entities (the "HMIT Entities")

000873

on the other (the "Settlement Agreement").  On June 6, 2025, Dugaboy retained the undersigned

counsel to represent it with respect to the Settlement Motion.  The undersigned promptly requested

a brief two-week extension of the Settlement Motion's objection deadline.  Counsel for the

Highland Entities declined any extension.  As such, Dugaboy files this Objection to preserve its

rights, and expressly reserves the right to supplement this Objection after conducting discovery of

the issues relevant to the Settlement Motion.

2.      If the Court grants the Settlement Motion, it will approve a wide-ranging

compromise that would significantly alter the confirmed Plan (as defined below). Specifically, the

Settlement Motion attempts to elevate distributions to certain equity interests (Class 10) above the

remaining creditors and provides for accelerated distributions *ahead* of those creditor[s].[1]  Such a

distribution is a clear violation of the terms of the Plan and its implementation documents,

including the Claimant Trust Agreement.  For this reason alone, the Court should deny the

Settlement Motion.

3.      Additionally, the Settlement Motion is devoid of information sufficient to allow the

Court or other parties in interest to determine whether the proposed Settlement Agreement meets

the standards for approval, including evidence to support the distribution of any assets to the

holders of any equity interests, including the HMIT Entities, and evidence to support the allowance

of HMIT's Class 10 interest in the amount of $336,940,230.58.  As a result, Dugaboy intends to

serve discovery upon the Highland Entities to obtain the evidence relating to these and other issues

set forth in the Settlement Motion.

---

[1]      It is not clear from the Settlement Motion the total number of remaining, unpaid claimants.  In footnote
3 of the Settlement Motion, the Highland Entities represent that if the Settlement Motion is granted, the only
"unresolved claim" is the claim of Patrick Daugherty.  Since the Settlement Motion proposes making distributions to
only the holder of a Class 10 Equity Interest, it implies that the only "unresolved claim" (maybe the only unpaid claim)
is held by Mr. Daugherty.

000874

4.     Finally, the Settlement Agreement's currently drafted mutual release provisions are vague and overly broad.  Out of an abundance of caution, Dugaboy objects to any language that explicitly or implicitly attempts to impose a release of any of its claims or the claims of any affiliates, including James Dondero ("Dondero"), against any Highland Entity (as that term is defined in the Settlement Agreement) or any HMIT Entity (as that term is defined in the Settlement Agreement).  For these reasons, as further detailed below, the Settlement Motion should be denied.

## PROCEDURAL HISTORY

5.     The Debtor commenced the above-captioned case (the "Bankruptcy Case") in the District of Delaware on October 16, 2019.  The Bankruptcy Case was subsequently transferred to this Court.  On February 22, 2021, this Court entered the *Order (I) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (II) Granting Related Relief* [Docket No. 1943], which confirmed the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* [Docket No. 1943-1] (the "Plan").  The Plan went effective on August 11, 2021 [Docket No. 2700] (the "Effective Date").

6.     On the Effective Date, in accordance with the Plan: (a) Highland established the Claimant Trust for the benefit of the Claimant Trust Beneficiaries; (b) Highland established Litigation Sub-Trust for the benefit of the Claimant Trust as the "Litigation Sub-Trust Beneficiary"; (c) the Class B/C Interests and the Class A Interests in Highland were extinguished; (d) holders of allowed Class 10 interests, consisting of Class B/C Interests, would receive contingent and unvested Class 10 Interests if and when their claims or interests were allowed in amounts determined under the Plan; (e) holders of allowed Class 11 interests, consisting of the Class A Interests, would receive contingent and unvested Class 11 Interests if and when their claims or interests were allowed in amounts under the Plan; (f) James P. Seery, Jr., was appointed

the Claimant Trustee of the Claimant Trust; and (g) Marc Kirschner was appointed the Litigation Trustee of the Litigation Sub-Trust.

7.      Subsequently, on or about August 16, 2021, the Claimant Trust, as grantor through the Claimant Trustee (Mr. Seery), established the Indemnity Trust for the benefit of the "Trust Indemnified Parties."[2]  In general terms the "Trust Indemnified Parties" and "Beneficiaries" of the Indemnity Trust are (a) the "Indemnified Parties" identified in Sec. 8.2 of the Claimant Trust Agreement, (b) the "Indemnified Parties" identified in Sec. 8.2 of the Litigation Sub-Trust and (c) the "Covered Persons" under Sec. 10 of the Reorganized Limited Partnership Agreement of Highland.  Mr. Seery appointed himself the Indemnity Trust Administrator for the Indemnity Trust and is generally responsible for managing the Indemnity Trust.[3]

8.      Prior to the filing of the Settlement Motion, neither the Class 10 Interests held by HMIT nor any of the Class 11 Interests, including those held by Dugaboy, have been Allowed (as defined in the Plan).  The Settlement Motion, however, proposes to alter this state of affairs with an agreement to allow HMIT's Class 10 Interests and to authorize distribution of funds and assets to HMIT by the Claimant Trust or by other entities for the benefit of the Claimant Trust.  The proposed distributions being made by the Claimant Trust, or for the benefit of the Claimant Trust, are being effectuated, apparently, prior to payment in full of all holders of claims.

---

[2]    According to the Settlement Agreement, the Indemnity Trust Agreement has been amended at least two times, most recently "effective as of [April 28], 2025."  See, Settlement Agreement, p.5 (definition of "Indemnity Trust Agreement").  Upon information and belief, the Second Amendments to the Indemnity Trust Agreement have not been provided to Dugaboy.

[3]     The Settlement Agreement was signed for the Highland Entities by Mr. Kirschner as the Litigation Trustee for the Litigation Sub-Trust and Mr. Seery as (a) the Chief Executive Officer of Highland, (b) the Claimant Trustee for the Claimant Trust and (c) the Indemnity Trust Administrator for the Indemnity Trust.

## INITIAL OBJECTIONS

**A.    The Settlement Agreement Violates the Terms of the Plan and the Claimant Trust Agreement**

9.    The Claimant Trust Agreement has explicit requirements that must be met prior to the distribution of funds or assets to any Equity Trust Certificate holders.  Sec. 5.1(c) of the Claimant Trust Agreement provides:

> (c) <u>Contingent Trust Interests.</u> On the date hereof, or on the date such Interest becomes Allowed under the Plan, the Claimant Trust shall issue Contingent Interests to Holders of  Allowed Class 10 Class B/C Limited Partnership Interests and Holders of Allowed Class 11 Class A Limited Partnership Interests (collectively, the "Equity Holders"). The Claimant Trustee shall allocate to each Holder of Allowed Class 10 Class B/C Limited Partnership Interests and each Holder of Allowed Class 11 Class A Limited Partnership Interests a Contingent Trust Interest equal to the ratio that the amount of each Holder's Allowed Class 10 or Class 11 Interest bears to the total amount of the Allowed Class 10 or Class 11 Interests, as applicable, under the Plan. Contingent Trust Interests shall not vest, and the Equity Holders shall not have any rights under this Agreement, unless and until the Claimant Trustee files with the Bankruptcy Court a certification that all GUC Beneficiaries have been paid indefeasibly in full, including, to the extent applicable, all accrued and unpaid post-petition interest consistent with the Plan and all Disputed Claims have been resolved (the "GUC Payment Certification"). Equity Holders will only be deemed "Beneficiaries" under this Agreement upon the filing of a GUC Payment Certification with the Bankruptcy Court, at which time the Contingent Trust Interests will vest and be deemed "Equity Trust Interests." The Equity Trust Interests shall be subordinated in right and priority to Subordinated Trust Interests, and distributions on account thereof shall only be made if and when Subordinated Beneficiaries have been repaid in full on account of such Subordinated Beneficiary's Allowed Subordinated Claim, in accordance with the terms of the Plan, the Confirmation Order, and this Agreement. The Equity Trust Interests distributed to Allowed Holders of Class A Limited Partnership Interests shall be subordinated to the Equity Trust Interests distributed to Allowed Holders of Class B/C Limited Partnership Interests.

10.    Before the Holders of Class 10 or Class 11 Interests are entitled to receive any distribution of property, the Claimant Trustee is required to file with the Court the "GUC Payment Certification" (as defined in Section 5.1(c) of the Claimant Trust Agreement).  As of the filing of the Settlement Motion, the GUC Payment Certification had not been filed.  So, based on the

express terms of the Claimant Trust Agreement, no distribution can be made to the HMIT Entities

based on its Class 10 Interests.

11.      The Settlement Agreement, however, includes an agreement between the Highland

Entities and the HMIT Entities as to the allowed amount of HMIT's Class 10 Interest:

$336,940,230.58. And Section 4(b) of the Settlement Agreement provides that, notwithstanding

the allowance of HMIT's Class 10 Interest, it shall not be a "Claimant Trust Beneficiary" or a

"Beneficiary" under the Claimant Trust Agreement.

12.      In an apparent attempt to subvert the prohibition against making distributions to the

HMIT Entities, the Settlement Agreement proposes to have distributions made by entities under

the control of the Claimant Trust or the Claimant Trustee to the HMIT Entities. For example:

- Highland, which is wholly owned, directly and indirectly, by the Claimant Trust, is making a $500,000 payment to the HMIT Entities;[4]

- the Indemnity Trust, which was created by the Claimant Trust for the benefit of the Indemnified Parties identified in the Claimant Trust, the Litigation Trust and the Highland limited partnership agreement is making a series of payments in an amount not less than $23 million (and could be more if any funds remain in the Indemnity Trust on April 1, 2029) to be applied to HMIT's allowed Class 10 Equity Interest;

- the Litigation Trust, the sole beneficiary of which is the Claimant Trust, is transferring to the HMIT Entities the "Kirschner Claims";[5] and

- "The Highland Entities" (the specific Highland Entity is not disclosed in the Settlement Motion or Settlement Agreement) is transferring to HMIT the Dugaboy Note. After the Dugaboy Note is valued, the value is to be applied to HMIT's Class 10 Interest.

13.      All, or substantially all, of the payments and transfers of property are being made

by *or for the benefit of* the Claimant Trust to reduce the HMIT Entities' Class 10 Equity Interests

---

[4]      The Settlement Agreement is silent as to how this payment is to be applied by HMIT. Will it be applied to HMIT's Class 10 Interest?
[5]      The Settlement Agreement is silent as to the value of the "Kirschner Claims" or how such value it to be applied by HMIT. Once again, will the value attributed to the "Kirschner Claims" be applied to HMIT's Class 10 Interest?

in violation of the express terms of the Claimant Trust Agreement and Plan. As such, the Settlement Motion should be denied.

**B.      There is Insufficient Evidence to Support Approval of the Settlement Agreement**

14.      The Highland Entities are proposing a settlement with the HMIT Entities that violates the Plan, the Claimant Trust Agreement and the Confirmation Order. As a result, Dugaboy requires discovery relating to a number of relevant issues, including but not limited to:

- Has the Claimant Trust paid all the creditors, including the Class 9 subordinated creditors, in full?

- Is the Debtor solvent and capable of paying all the creditors, including the Class 9 subordinated creditors, in full?

- If the Debtor has not paid all creditors in full, does it have adequate funds and resources to pay all creditors in full?

- What is the basis of the Claimant Trustee's agreement to allow the Class 10 Equity Interest of HMIT in the amount of $336,940,230.58?

- What is the basis of the Claimant Trustee's assertion in Footnote 3 as to the amount of the Class 11 Equity Interests?

- What value is being attributed to the Kirschner Claims, and will such value be applied to HMIT's Class 10 Equity Interest?

15.      The forgoing factual issues are not exhaustive but illustrate a sampling of the types of open factual issues left unaddressed by the Settlement Motion. Dugaboy intends to serve discovery on the Highland Entities with regard to the Settlement Motion. Because the Highland Entities have failed to provide sufficient evidence to support approval of the Settlement Agreement, the Court should deny the Settlement Motion.

**C.      The Releases Contained in the Settlement Agreement are Vague and Overly Broad**

16.      Finally, the Settlement Motion contains vague and overly broad mutual release provisions. Out of an abundance of caution, Dugaboy objects to any language that explicitly or implicitly attempts to impose a release of any of its claims or the claims of any affiliate, including

Mr. Dondero, of any Highland Entity (as that term is defined in the Settlement Agreement) or any

HMIT Entity (as that term is defined in the Settlement Agreement).

## RESERVATION OF RIGHTS

17.     In the event the Court grants Dugaboy's motion to extend the response deadline to

the Settlement Motion, Dugaboy reserves its rights to supplement this Objection.  Further,

Dugaboy reserves its rights to supplement this Objection as a result of evidence that will be

obtained in discovery.

**WHEREFORE, PREMISES CONSIDERED**, Dugaboy prays that the Court enter an

order (a) denying the Settlement Motion,  and (b) granting Dugaboy such other and further relief

to which it is entitled.

Respectfully submitted,

**HUNTON ANDREWS KURTH LLP**

By:     /s/  *Gregory G. Hesse*
        Gregory G. Hesse (Texas Bar No.09549419)
        1445 Ross Avenue, Suite 3700
        Dallas, Texas  75202-2799
        Telephone:  (214) 979-3000
        Telecopy:   (214) 880-0011
        GHesse@hunton.com

**ATTORNEYS FOR DUGABOY INVESTMENT
TRUST**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 9th day of June, 2025, a true and correct copy
of the foregoing was served on ECF participants, electronically through the Court's ECF System.

/s/  *Gregory G. Hesse*
Gregory G. Hesse

Michael J. Lang
Texas State Bar No. 24036944
mlang@cwl.law
Alexandra Ohlinger
Texas State Bar No. 24091423
aohlinger@cwl.law
Crawford, Wishnew & Lang PLLC
1700 Pacific Ave, Suite 2390
Dallas, Texas 75201
Telephone: (214) 817-4500

*Counsel for Dugaboy Investment Trust*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| *In re* | § | Chapter 11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | Case No. 19-34054-sgj11 |
| | § | |
| Reorganized Debtor. | § | |
| | § | |

**DUGABOY INVESTMENT TRUST'S EXHIBIT LIST
FOR THE JUNE 25, 2025 HEARING**

COMES NOW, Dugaboy Investment Trust ("Dugaboy") and files this Exhibit List for the

June 25, 2025 Hearing in the Bankruptcy Case.

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 1 | Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) | Dkt. No. 1943 |
| 2 | Settlement Agreement & General Release dated May 19, 2025 | Dkt. No. 4217 |

Dugaboy reserves the right to introduce any exhibit designated by any other party, to

supplement and/or amend its Exhibit List, to introduce any rebuttal exhibits, and to not use any

such exhibits during the evidentiary hearing in response to the circumstances of the hearing.

000881

Dated: June 20, 2025,                    Respectfully submitted,

                                         Crawford, Wishnew & Lang PLLC

                                         By: */s/ Michael J. Lang*
                                         Michael J. Lang
                                         Texas State Bar No. 24036944
                                         mlang@cwl.law
                                         Alexandra Ohlinger
                                         Texas State Bar No. 24091423
                                         aohlinger@cwl.law
                                         1700 Pacific Ave, Suite 2390
                                         Dallas, Texas 75201
                                         Telephone: (214) 817-4500

                                         ***Counsel for Dugaboy Investment Trust***

### CERTIFICATE OF SERVICE

The undersigned certifies that on June 20, 2025, a true and correct copy of the above and foregoing document was served on all parties and counsel set to receive notice by the Court's ECF system.

                                         */s/ Michael J. Lang*
                                         Michael J. Lang

---

Michael J. Lang
Texas State Bar No. 24036944
mlang@cwl.law
Alexandra Ohlinger
Texas State Bar No. 24091423
aohlinger@cwl.law
Crawford, Wishnew & Lang PLLC
1700 Pacific Ave, Suite 2390
Dallas, Texas 75201
Telephone: (214) 817-4500

*Counsel for Dugaboy Investment Trust*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| *In re* | § Chapter 11 |
| | § |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § Case No. 19-34054-sgj11 |
| | § |
| Reorganized Debtor. | § |
| | § |

**DUGABOY INVESTMENT TRUST'S WITNESS LIST**
**FOR THE JUNE 25, 2025 HEARING**

COMES NOW, Dugaboy Investment Trust ("Dugaboy") and files this Witness List for the

June 25, 2025 Hearing in the Bankruptcy Case. Dugaboy may, in its sole discretion, call the

following witness(es) to testify at the June 25, 2025 Hearing in the Bankruptcy Case.

| | Witness |
|---|---|
| 1 | James P. Seery, Jr. c/o John A. Morris Pachulski Stang Ziehl & Jones LLP 1700 Broadway, 36th Floor New York, NY 10019 jmorris@pszjlaw.com (212) 561-7760 |

Dugaboy also reserves the right to call or cross-examine any witness called by any other party, to supplement and/or amend this Witness List, and to call additional witnesses as necessary to rebut testimony or evidence introduced at the hearing.

Dated: June 20, 2025,                    Respectfully submitted,

                                         Crawford, Wishnew & Lang PLLC

                                         By: */s/ Michael J. Lang*
                                         Michael J. Lang
                                         Texas State Bar No. 24036944
                                         mlang@cwl.law
                                         Alexandra Ohlinger
                                         Texas State Bar No. 24091423
                                         aohlinger@cwl.law
                                         1700 Pacific Ave, Suite 2390
                                         Dallas, Texas 75201
                                         Telephone: (214) 817-4500

                                         ***Counsel for Dugaboy Investment  Trust***

## CERTIFICATE OF SERVICE

The undersigned certifies that on June 20, 2025, a true and correct copy of the above and foregoing document was served on all parties and counsel set to receive notice by the Court's ECF system.

                                         */s/ Michael J. Lang*
                                         Michael J. Lang

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (admitted *pro hac vice*)
John A. Morris (admitted *pro hac vice*)
Gregory V. Demo (admitted *pro hac vice*)
Jordan A. Kroop (admitted *pro hac vice*)
Hayley R. Winograd (admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Tel: (310) 277-6910

QUINN EMANUEL URQUHART &
SULLIVAN LLP
Deborah J. Newman (admitted *pro hac vice*)
Robert S. Loigman (admitted *pro hac vice*)
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100

SIDLEY AUSTIN LLP
Paige Holden Montgomery
2021 McKinney Avenue
Suite 2000
Dallas, Texas 75201
Telephone: (214) 981-3300

*Counsel for Highland Capital Management,
L.P. and the Highland Claimant Trust*

*Co-Counsel for Marc S. Kirschner, as
Litigation Trustee of The Highland
Litigation Sub-Trust*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § | Case No. 19-34054-sgj11 |
| | § | |
| Reorganized Debtor. | § | |

## HIGHLAND CAPITAL MANAGEMENT, L.P., HIGHLAND CLAIMANT TRUST, AND LITIGATION SUB-TRUST WITNESS AND EXHIBIT LIST WITH RESPECT TO HEARING TO BE HELD ON JUNE 25, 2025

Highland Capital Management, L.P., the reorganized debtor (the "<u>Debtor</u>" or "<u>Highland</u>,"

as applicable) in the above-captioned chapter 11 case (the "<u>Bankruptcy Case</u>"), the Highland

---

[1] The Reorganized Debtor's last four digits of its taxpayer identification number are (8357). The headquarters and service address for the above-captioned Reorganized Debtor is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

Claimant Trust (the "<u>Claimant Trust</u>"), and the Highland Litigation Sub-Trust (the "<u>Litigation</u>

<u>Sub-Trust</u>," and together with Highland and the Claimant Trust, the "<u>Movants</u>"), by and through

their undersigned counsel, submit the following witness and exhibit list with respect to the

*Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. § 363 Approving*

*Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith* [Docket No.

4216], which the Court has set for hearing at 9:30 a.m. (Central Time) on June 25, 2025 (the

"<u>Hearing</u>") in the Bankruptcy Case.

### A.    <u>Witnesses</u>:

1.    James P. Seery, Jr.;

2.    James Dondero;

3.    Deborah Deitsch-Perez, Esq;

4.    Any witness identified by or called by any other party; and

5.    Any witness necessary for rebuttal.

### B.    <u>Exhibits</u>:

| Number | Exhibit | Offered | Admitted |
|---|---|---|---|
| **A.** | **<u>Settlement Agreement</u>** | | |
| 1. | *Declaration of Gregory V. Demo in Support of Motion for Entry of an Order Pursuant to a Bankruptcy Rule 9019 and 11 U.S.C. § 363 Approving Settlement Agreement with the HMIT Entities and Authorizing Actions Consistent Therewith* [Docket No. 4217] [HCMLPHMIT00002688-HCMLPHMIT00002715] | | |
| **B.** | **<u>Negotiation Documents</u>** | | |
| 2. | Email from L. Phillips to J. Morris dated March 5, 2025 [HCMLPHMIT00000015-HCMLPHMIT00000017] | | |
| 3. | Email from L. Phillips to J. Morris dated March 13, 2025 [HCMLPHMIT00000022-00000026] | | |

| Number | Exhibit | Offered | Admitted |
|---|---|---|---|
| 4. | Email from L. Phillips to J. Morris dated March 18, 2025 [HCMLPHMIT00000028-HCMLPHMIT00000029] | | |
| 5. | Email from L. Phillips to J. Morris dated March 19, 2025 [HCMLPHMIT00000030-HCMLPHMIT00000031] | | |
| 6. | Confidentiality Agreement-M Patrick and Related Entities [HCMLPHMIT00000032-HCMLPHMIT00000045] | | |
| 7. | Email from L. Phillips to J. Morris and A. Hurt dated March 22, 2025 [HCMLPHMIT00000046-HCMLPHMIT00000048] | | |
| 8. | Email from L. Phillips to J. Morris dated March 24, 2025 [HCMLPHMIT00000052-HCMLPHMIT00000054] | | |
| 9. | Email from L. Phillips to J. Morris dated March 24, 2025 [HCMLPHMIT00000055-HCMLPHMIT00000056] | | |
| 10. | Email from L. Phillips to J. Morris dated March 28, 2025 [HCMLPHMIT00000057] | | |
| 11. | Email from L. Phillips to J. Morris dated March 30, 2025 [HCMLPHMIT00000058] | | |
| 12. | Email from L. Phillips to J. Morris dated March 31, 2025 [HCMLPHMIT00000059] | | |
| 13. | HCLOM Intercreditor and Participation Agreement [HCMLPHMIT00000060-HCMLPHMIT00000063] | | |
| 14. | Email from L. Phillips to J. Morris dated April 2, 2025 [HCMLPHMIT00000075-HCMLPHMIT00000078] | | |
| 15. | Email from L. Phillips to J. Morris dated April 2, 2025 [HCMLPHMIT00000079-HCMLPHMIT00000080] | | |
| 16. | Email from L. Phillips to J. Morris dated April 3, 2025 with attachment - Paul Murphy Joinder to Confidentiality Agreement [HCMLPHMIT00000081-HCMLPHMIT00000083] | | |
| 17. | Email from L. Phillips to J. Morris dated April 4, 2025 [HCMLPHMIT00000089] | | |
| 18. | Email from L. Phillips to J. Morris dated April 7, 2025 [HCMLPHMIT00000090-HCMLPHMIT00000092] | | |

| Number | Exhibit | Offered | Admitted |
|--------|---------|---------|----------|
| 19. | Email from L. Phillips to J. Morris dated April 7, 2025 with attachment – Shawn Raver Joinder to Confidentiality Agreement [HCMLPHMIT00000093-HCMLPHMIT00000096] | | |
| 20. | Email from L. Phillips to J. Morris dated April 7, 2025 [HCMLPHMIT00000099-HCMLPHMIT00000102] | | |
| 21. | Email from L. Phillips to J. Morris dated April 7, 2025 with attachments- Phillips Joinder to Confidentiality Agreement (signed by Phillips) and A. Hurt Joinder to Confidentiality Agreement (signed by Hurt) [HCMLPHMIT00000103-HCMLPHMIT00000107] | | |
| 22. | Email from L. Phillips to J. Morris dated April 8, 2025 with fully executed HCLOM Remittance Agreement [HCMLPHMIT00000108-HCMLPHMIT00000112] | | |
| 23. | Email from L. Phillips to J. Morris dated April 10, 2025 with HMIT 2022 Settlement Agreement [HCMLPHMIT00000118-HCMLPHMIT00000130] | | |
| 24. | Email from L. Phillips to J. Morris dated April 17, 2025 with attachment James Shields Joinder to Confidentiality Agreement [HCMLPHMIT00000135-HCMLPHMIT00000150] | | |
| 25. | Email from L. Phillips to J. Morris dated May 9, 2025 [HCMLPHMIT00000157-HCMLPHMIT00000158] | | |
| 26. | Email from L. Phillips to J. Morris dated May 9, 2025 [HCMLPHMIT00000159-HCMLPHMIT00000161] | | |
| 27. | Email from L. Phillips to J. Morris dated May 13, 2025 [HCMLPHMIT00000162-HCMLPHMIT00000163] | | |
| 28. | Email from L. Phillips to J. Morris dated May 14, 2025 [HCMLPHMIT00000164-HCMLPHMIT00000166] | | |
| 29. | Email from L. Phillips to J. Morris dated May 14, 2025 with Redlines of Settlement Agreement [HCMLPHMIT00000167-HCMLPHMIT00000218] | | |
| 30. | Email from L. Phillips to J. Morris dated May 15, 2025 [HCMLPHMIT00000226-HCMLPHMIT00000234] | | |
| 31. | Email from L. Phillips to J. Morris dated May 16, 2025 with Clean and Redline of Rand Settlement Agreement [HCMLPHMIT00000235-HCMLPHMIT00000283] | | |

WITNESS AND EXHIBIT LIST FOR HEARING ON JUNE 25, 2025                    PAGE 4 OF 14
SF 4897-3339-1694.4 36027.002 DOCS_NY:42648.1 36027/002

000888

| Number | Exhibit | Offered | Admitted |
|--------|---------|---------|----------|
| 32. | Email from L. Phillips to T. Cournoyer dated May 16, 2025 [HCMLPHMIT00000287-HCMLPHMIT00000289] | | |
| 33. | Email from L. Phillips to J. Seery, M. Patrick, S. Raver, J. Shields, A. Hurt dated May 17, 2025 [HCMLPHMIT00000290] | | |
| 34. | Email from L. Phillips to J. Morris dated May 17, 2025 [HCMLPHMIT00000291-HCMLPHMIT00000292] | | |
| 35. | Email from L. Phillips to J. Morris, J. Pomerantz dated May 19, 2025 with attachment HMIT Redlined Pages only to Settlement Agreement [HCMLPHMIT00000295-HCMLPHMIT00000297] | | |
| 36. | Email from L. Phillips to G. Demo, A. Hurt, J. Shields dated May 19, 2025 [HCMLPHMIT00000342-HCMLPHMIT00000344] | | |
| 37. | Email from L. Phillips to G. Demo, J. Morris, J. Pomerantz dated May 19, 2025 with attachment - M. Patrick signature o HMIT Rand Settlement Agreement [HCMLPHMIT00000345-HCMLPHMIT00000370] | | |
| 38. | Email from L. Phillips to G. Demo, J. Morris, J. Pomerantz date May 19, 2025 [HCMLPHMIT00000371-HCMLPHMIT00000372] | | |
| 39. | Email from L. Phillips to G. Demo, J. Morris, J. Pomerantz dated May 19, 2025 [HCMLPHMIT00000373-HCMLPHMIT00000374] | | |
| 40. | Email from L. Phillips to G. Demo, J. Morris, J. Pomerantz dated May 19, 2025 [HCMLPHMIT00000423-HCMLPHMIT00000428] | | |
| 41. | Email from J. Morris to L. Phillips dated March 22, 2025 [HCMLPHMIT00000562-HCMLPHMIT00000563] | | |
| 42. | Email from J. Morris to L. Phillips, A. Hurt dated March 22, 2025 with attachment – fully executed Confidentiality Agreement [HCMLPHMIT00000564-HCMLPHMIT00000580] | | |
| 43. | Email from J. Morris to L. Phillips dated April 4, 2025 with attachment Litigation Protections M. Patrick [HCMLPHMIT00000621-HCMLPHMIT00000631] | | |
| 44. | Email from J. Morris to L. Phillips dated April 7, 2025 [HCMLPHMIT00000642-HCMLPHMIT00000644] | | |

| Number | Exhibit | Offered | Admitted |
|--------|---------|---------|----------|
| 45. | Email from J. Morris to L. Phillips dated April 8, 2025 with attachment – current snapshot of remaining assets<br>[HCMLPHMIT00000656--HCMLPHMIT00000661] | | |
| 46. | Email from J. Morris to L. Phillips dated April 16, 2025 with attachment – Second Amended and Restated Indemnity Trust Agreement<br>[HCMLPHMIT00000672-HCMLPHMIT00000727] | | |
| 47. | April 15, 2025 Draft Illustrative Highland Indemnity Trust Payout Schedule<br>[HCMLPHMIT00000724-HCMLPHMIT00000727] | | |
| 48. | Email from J. Morris to L. Phillips dated May 15, 2025 with attachment – Draft Rand Settlement Agreement and Redline<br>[HCMLPHMIT00000766-HCMLPHMIT00000820] | | |
| 49. | Email from J. Morris to L. Phillips dated May 15, 2025 with Clean and Redline Settlement Agreement<br>[HCMLPHMIT00000829-HCMLPHMIT00000877] | | |
| 50. | Email from L. Phillips to D. Klos dated April 17, 2025<br>[HCMLPHMIT00000947] | | |
| 51. | Email re: Microsoft Teams call from D. Klos to J. Seery, T. Cournoyer, K. Hendrix, J. Morris, G. Demo, M. Patrick, S. Raver, Paul, L. Phillips, A. Hurt dated April 7, 2025<br>[HCMLPHMIT00000949] | | |
| 52. | Microsoft Teams Appointment for J. Seery, T. Cournoyer, K. Hendrix, J. Morris, G. Demo, M. Patrick, S. Raver, Paul, L. Phillips, A. Hurt scheduled for April 8, 2025<br>[HCMLPHMIT00000950] | | |
| 53. | Email from D. Klos to J. Shields dated April 22, 2025 with attachment – Potential Settlement Structure with DAF and HMIT<br>[HCMLPHMIT00000987-HCMLPHMIT00001000] | | |
| 54. | Email from J. Seery to M. Patrick, S. Raver, L. Phillips, A. Hurt, J. Shields dated April 28, 2025 with attachment – Draft Rand Settlement Agreement<br>[HCMLPHMIT00001001-HCMLPHMIT00001025] | | |
| 55. | Email Microsoft Teams appointment from D. Klos to J. Seery, K. Hendrix, M. Patrick, S. Raver, Paul dated April 3, 2025<br>[HCMLPHMIT00001037] | | |

| Number | Exhibit | Offered | Admitted |
|--------|---------|---------|----------|
| 56. | Email from D. Klos to M. Patrick dated April 2, 2025 [HCMLPHMIT00001042] | | |
| 57. | Email from J. Seery to J. Morris, T. Cournoyer, D. Klos, M. Gray dated June 11, 2025 with attachment – Class 9 Consent to Rand Settlement and Release [HCMLPHMIT00001220-HCMLPHMIT00001245] | | |
| **C.** | **Class 9 Documents** | | |
| 58. | Letter to P. Daugherty from J. Seery re: Eighth Distribution re: Highland Claimant Trust dated May 20, 2025 [HCMLPHMIT00002329] | | |
| 59. | Written Consent of Holders of Class 9 Subordinated Claim Trust Interests in the Highland Claimant Trust dated May 16, 2025 [HCMLPHMIT00002677-HCMLPHMIT00002682] | | |
| 60. | Tolling Agreement Extending Claim Objection Deadline dated July 27, 2022 | | |
| 61. | Amendment No. 1 to Tolling Agreement Extending the Claim Objection Deadline dated December 21, 2022 | | |
| 62. | Amendment No. 2 to Tolling Agreement Extending Claim Objection Deadline dated November 6, 2023 | | |
| 63. | Amendment No. 3 to Tolling Agreement Extending Claim Objection Deadline dated November 20, 2024 | | |
| **D.** | **HCLOM/HMIT** | | |
| 64. | Email from L. Phillips to J. Morris dated January 6, 2025 [HCMLPHMIT00000008-HCMLPHMIT00000009] | | |
| 65. | Email from L. Phillips to J. Morris, A. Hurt dated January 11, 2025 [HCMLPHMIT00000010-HCMLPHMIT00000012] | | |
| 66. | *Highland Capital Management, L.P.'s Motion for (A) a Bad Faith Finding and (B) and Award of Attorney's Fees Against Highland CLO Management, Ltd. and James Dondero in Connection with HCLOM Claims 3.65 and 3.66* [Docket No. 4176] [HCMLPHMIT00000441-HCMLPHMIT00000500] | | |

WITNESS AND EXHIBIT LIST FOR HEARING ON JUNE 25, 2025                    PAGE 7 OF 14
SF 4897-3339-1694.4 36027.002 DOCS_NY:42648.1 36027/002

000891

| Number | Exhibit | Offered | Admitted |
|--------|---------|---------|----------|
| 67. | Hearing Transcript dated December 18, 2024 [Docket No. 4197]<br><br>[HCMLPHMIT00003829-HCMLPHMIT00003859] | | |
| 68. | *Stipulated and Agreed Order Resolving (A) HCLOM, Ltd.'s Scheduled Claims 3.65 and 3.66; and (B) Highland Capital Management, L.P.'s (1) Objection and (2) Motion for a Bad Faith Finding and an Award for Attorney's Fees Against HCLOM, Ltd. and James Dondero in Connection Therewith [Docket Nos. 3657, 4716]*  [Docket No. 4199]<br><br>[HCMLPHMIT00003860-HCMLPHMIT00003866] | | |
| 69. | Intercreditor and Participation Agreement with HCLOM dated January 10, 2025<br><br>[HCMLPHMIT00003868-HCMLPHMIT00003871] | | |
| E. | **Patrick Authority** | | |
| 70. | Trust Agreement of Hunter Mountain dated December 17, 2015<br><br>[HCMLPHMIT00004103-HCMLPHMIT00004114] | | |
| 71. | Show Cause Hearing Transcript June 8, 2021<br><br>[HCMLPHMIT00002716-HCMLPHMIT00003013] | | |
| 72. | HMIT Hearing Transcript June 8, 2023<br><br>[HCMLPHMIT00003014-HCMLPHMIT00003402] | | |
| 73. | Limited Liability Company Agreement of Atlas IDF GP, LLC dated October 29, 2015<br><br>[HCMLPHMIT00003511-HCMLPHMIT00003517] | | |
| 74. | HOLDCO Responses and Disclosures Related to the Court's Order Requiring Disclosures [Docket No. 2547]<br><br>HCMLPHMIT00003523-HCMLPHMIT00003828] | | |
| 75. | HMIT Appointment of Successor Administrator dated 8/12/2022<br><br>[HCMLPHMIT00003872] | | |
| 76. | Limited Liability Company Agreement of Rand PE Fund Management, LLC dated October 29, 2015<br><br>[HCMLPHMIT00003873-HCMLPHMIT00003879] | | |
| 77. | Limited Liability Company Agreement of Rand Advisors, LLC dated August 28, 2013<br><br>[HCMLPHMIT00003880-HCMLPHMIT00003886] | | |

| Number | Exhibit | Offered | Admitted |
|--------|---------|---------|----------|
| 78. | Agreement of Limited Partnership of Rand PE Fund I, L.P. dated October 29, 2015<br>[HCMLPHMIT00003887-HCMLPHMIT00003893] | | |
| 79. | Amended and Restated Limited Partnership Agreement of Atlas IDF, LP dated November 30, 2015<br>[HCMLPHMIT00003894-HCMLPHMIT00003928] | | |
| 80. | Atlas IDF, LP Offering of Series 1 Limited Partnership Interests dated November 30, 2015<br>[HCMLPHMIT00003929-HCMLPHMIT00004023] | | |
| 81. | Rand PE Fund I, LP Offering Series 1 Limited Partnership Interests dated November 30, 2015<br>[HCMLPHMIT00004024-HCMLPHMIT00004095] | | |
| 82. | Member and Manager Consent of Atlas IDF GP, LLC dated October 13, 2022<br>[HCMLPHMIT00004124-HCMLPHMIT00004126] | | |
| 83. | Amended and Restated Company Agreement of Atlas IDF GP, LLC dated August 8, 2022<br>[HCMLPHMIT00004127-HCMLPHMIT00004151] | | |
| 84. | Amended and Restated Company Agreement of Rand Advisors, LLC dated August 1, 2022<br>[HCMLPHMIT00004152-HCMLPHMIT00004176] | | |
| 85. | Amended and Restated Company Agreement of Rand PE Fund Management, LLC dated August 1, 2022<br>[HCMLPHMIT00004177-HCMLPHMIT00004201] | | |
| 86. | Membership Interest Purchase Agreement Rand Advisors dated August 1, 2022<br>[HCMLPHMIT00004202-HCMLPHMIT00004215] | | |
| 87. | Member and Manager Consent of Rand Advisors, LLC dated October 13, 2022<br>[HCMLPHMIT00004216-HCMLPHMIT00004218] | | |
| 88. | Member and Manager Consent of Rand PE Fund Management, LLC dated October 13, 2022<br>[HCMLPHMIT00004219-HCMLPHMIT00004221] | | |
| 89. | 3/17/2025 Rand Advisors Form ADV<br>[HCMLPHMIT00003465-HCMLPHMIT00003493] | | |
| 90. | Atlas IDF, LP Subscription 12/21/2015 (signature pages only) | | |

**WITNESS AND EXHIBIT LIST FOR HEARING ON JUNE 25, 2025**                    **PAGE 9 OF 14**
SF 4897-3339-1694.4 36027.002 DOCS_NY:42648.1 36027/002

000893

| Number | Exhibit | Offered | Admitted |
|--------|---------|---------|----------|
| 91. | Atlas IDF, LP Subscription 12/23/2015 (signature page only) | | |
| 92. | Atlas IDF LP SEC Form D dated February 24, 2025 [HCMLPHMIT00003518-HCMLPHMIT00003522] | | |
| 93. | Rand PE Fund I, L.P. SEC Form D dated February 24, 2025 [HCMLPHMIT00004096-HCMLPHMIT00004100] | | |
| 94. | Amended and Restated Limited Liability Company Agreement of Beacon Mountain LLC dated September 24, 2015 [HCMLPHMIT00004115-HCMLPHMIT00004123] | | |
| 95. | Second Amended and Restated Limited Liability Company Agreement of Beacon Mountain LLC dated February 12, 2025 | | |
| 96. | Bylaws of The Okada Family Foundation, Inc. (final version) | | |
| 97. | Bylaws of Empower Dallas Foundation, Inc. | | |
| 98. | Crown Global DVA Policy 30218 (signed) | | |
| 99. | Crown Global DVA Termsheet 30218 | | |
| 100. | Crown Global DVA Policy 30219 (signed) | | |
| 101. | Crown Global DVA Termsheet 30219 | | |
| 102. | Crown Global Rand Participation Agreement (Executed) | | |
| 103. | S&G HMIT Opinion Rep Letter dated January 29, 2016 | | |
| 104. | S&G HMIT Opinion dated January 29, 2016 | | |
| F. | **<u>Dugaboy Note</u>** | | |
| 105. | Promissory Note $24,268,621.69 dated May 31, 2017 [HCMLPHMIT00001327-HCMLPHMIT00001328] | | |

**Witness and Exhibit List for Hearing on June 25, 2025**                    **Page 10 of 14**
SF 4897-3339-1694.4 36027.002 DOCS_NY:42648.1 36027/002

000894

| Number | Exhibit | Offered | Admitted |
|--------|---------|---------|----------|
| 106. | The Dugaboy Investment Trust Offering of $1817M Promissory Note Owed to HCMLP February 2024<br>[HCMLPHMIT00002323-HCMLPHMIT00002327] | | |
| 107. | Participation Agreement for Par/Near Par Trades dated July 18, 2024<br>[HCMLPHMIT00002594-HCMLPHMIT00002600] | | |
| 108. | $18.5mm Dugaboy Note Attempted Sale – Process Update<br>[HCMLPHMIT00002601] | | |
| 109. | The Dugaboy Investment Trust $18.17M Promissory Note Owed to HCMLP February 2024<br>[HCMLPHMIT00002602-HCMLPHMIT00002607] | | |
| 110. | The Dugaboy Investment Trust $18.17M Promissory Note Owed to HCMLP February 2024<br>[HCMLPHMIT00002608-HCMLPHMIT00002630] | | |
| 111. | Highland Claimant Trust Recommended Dugaboy Note Contribution dated June 7, 2024<br>[HCMLPHMIT00002631-HCMLPHMIT00002636] | | |
| 112. | Email from D. Klos to DC Sauter dated May 23, 2024<br>[HCMLPHMIT00002637-HCMLPHMIT00002639] | | |
| **G.** | **Capital Account Amounts** | | |
| 113. | Highland Capital Management, L.P. Consolidated Financial Statement and Supplemental Information dated December 31, 2018<br>[HCMLPHMIT00002548-HCMLPHMIT00002593] | | |
| 114. | Fourth Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P. dated December 24, 2015<br>[HCMLPHMIT00002641-HCMLPHMIT00002676] | | |
| 115. | 2018 Tax Return for Highland Capital Management, LP (sig page, p. 1 of return, p. 1 of each partners' Schedule K-1 (Strand, Okada, MAP 1, MAP 2, Dugaboy, HMIT)<br>[HCMLPHMIT00001332; HCMLPHMIT00001336; HCMLPHMIT00001414; HCMLPHMIT00001419; HCMLPHMIT00001424; HCMLPHMIT00001429; HCMLPHMIT00001434; HCMLPHMIT00001439] | | |

WITNESS AND EXHIBIT LIST FOR HEARING ON JUNE 25, 2025                    PAGE 11 OF 14
SF 4897-3339-1694.4 36027.002 DOCS_NY:42648.1 36027/002

000895

| Number | Exhibit | Offered | Admitted |
|---|---|---|---|
| 116. | 2019 Tax Return for Highland Capital Management, LP (sig page, p. 1 of return, p. 1 of each partners' Schedule K-1 (Strand, Okada, MAP 1, MAP 2, Dugaboy, HMIT) [HCMLPHMIT00001726; HCMLPHMIT00001766; HCMLPHMIT00001865; HCMLPHMIT00001870; HCMLPHMIT00001875; HCMLPHMIT00001880; HCMLPHMIT00001885; HCMLPHMIT00001890] | | |
| 117. | Monthly Operating Report – FINAL November 2019 [HCMLPHMIT00001329] | | |
| 118. | Hunter Mountain Note Receivable October 15, 2019 [HCMLPHMIT00001330] | | |
| **H.** | **Dallas Foundation Issues** | | |
| 119. | Affidavit of James Dondero in the Grand Court of Cayman Islands FSD2025-0099 dated April 16, 2025 [HCMLPHMIT00003429-HCMLPHMIT00003438] | | |
| 120. | Email from J. Pomerantz to D. Curry, M. Okin dated June 19, 2025 | | |
| **I.** | **Plan, CTA, and Litigation Trust Agreement** | | |
| 121. | *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)*, Pages 26-29, (entire document can be found at Docket No. 1808) Excerpts: Article IV. B.1-5 (pages 26-28) Article IV. B.5 (pages 28-29) Article IV. B.7 (page 30) Article IV. B.10 (page 31) Article IV. D. (pages 34-35) Article VII. D.1-2 (pages 44-45) Article XI (pages 53-55) | | |

WITNESS AND EXHIBIT LIST FOR HEARING ON JUNE 25, 2025    PAGE 12 OF 14
SF 4897-3339-1694.4 36027.002 DOCS_NY:42648.1 36027/002

000896

| Number | Exhibit | Offered | Admitted |
|--------|---------|---------|----------|
| 122. | *Claimant Trust Agreement*, (entire document can be found at Docket No. 1811-2, as modified by Docket No. 1875-4)<br><br>Excerpts:<br>Fourth "Whereas" clause (page 1)<br>Section 2.2(a)-(b) (page 8)<br>Section 3.2(a)-(b) (pages 11-12)<br>Section 3.2(c)(iv) (page 12)<br>Section 2.3(b)(ix) (page 9) | | |
| 123. | *Litigation Sub-Trust Agreement*, (entire document can be found at Docket No. 1811-4)<br><br>Excerpts:<br>Fourth "Whereas" clause (page 1)<br>Section 2.2 (page 5)<br>Section 3.2(a) (page 7)<br>Section 3.2(b) (page 7)<br>Section 3.2(c)(v) (page 7)<br>Section 3.3 (b)(iii) (page 9) | | |
| 124. | Any document entered or filed in the Debtor's chapter 11 bankruptcy case, including any exhibits thereto | | |
| 125. | All exhibits necessary for impeachment and/or rebuttal purposes | | |
| 126. | All exhibits identified by or offered by any other party at the Hearing | | |

Dated:  June 20, 2025

**PACHULSKI STANG ZIEHL & JONES LLP**
Jeffrey N. Pomerantz (admitted *pro hac vice*)
John A. Morris (admitted *pro hac vice*)
Gregory V. Demo (admitted *pro hac vice*)
Jordan A. Kroop (admitted *pro hac vice*)
Hayley R. Winograd (admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Tel: (310) 277-6910
Fax: (310) 201-0760
Email: jpomerantz@pszjlaw.com
jmorris@pszjlaw.com
gdemo@pszjlaw.com
jkroop@pszjlaw.com
hwinograd@pszjlaw.com


 - and -

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.
and the Highland Claimant Trust*

**QUINN EMANUEL URQUHART &
SULLIVAN LLP**

Deborah J. Newman (admitted *pro hac vice*)
Robert S. Loigman (admitted *pro hac vice*)
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000


-and-

**SIDLEY AUSTIN LLP**

Paige Holden Montgomery
2021 McKinney Avenue
Suite 2000
Dallas, Texas 75201
Telephone: (214) 981-3300


*Co-Counsel for Marc S. Kirschner, as
Litigation Trustee of the Highland Litigation
Sub-Trust*

**EXHIBIT 1**

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (admitted *pro hac vice*)
John A. Morris (admitted *pro hac vice*)
Gregory V. Demo (admitted *pro hac vice*)
Hayley R. Winograd (admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Tel: (310) 277-6910

QUINN EMANUEL URQUHART &
SULLIVAN LLP
Deborah J. Newman (admitted *pro hac vice*)
Robert S. Loigman (admitted *pro hac vice*)
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100

SIDLEY AUSTIN LLP
Paige Holden Montgomery
2021 McKinney Avenue
Suite 2000
Dallas, Texas 75201
Telephone: (214) 981-3300

*Counsel for Highland Capital Management,*
*L.P. and the Highland Claimant Trust*

*Co-Counsel for Marc S. Kirschner, as*
*Litigation Trustee of The Highland*
*Litigation Sub-Trust*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § | Case No. 19-34054-sgj11 |
| | § | |
| Debtor. | § | |

**DECLARATION OF GREGORY V. DEMO IN SUPPORT OF MOTION FOR ENTRY**
**OF AN ORDER PURSUANT TO BANKRUPTCY RULE 9019 AND 11 U.S.C. § 363**
**APPROVING SETTLEMENT WITH THE HMIT ENTITIES AND AUTHORIZING**
**ACTIONS CONSISTENT THEREWITH**

I, Gregory V. Demo, pursuant to 28 U.S.C. § 1746, under penalty of perjury, declare as

follows:

---

[1] The last four digits of the Debtor's taxpayer identification number are 8357. The headquarters and service address for Highland is 100 Crescent Court, Suite 1850, Dallas, TX 75201.





1.    I am an attorney at the law firm Pachulski Stang Ziehl & Jones LLP, counsel to Highland Capital Management, L.P., and I submit this Declaration in support of the *Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. § 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith*, being filed concurrently with this Declaration.  I submit this Declaration based on my personal knowledge and review of the documents listed below.

2.    Attached as **Exhibit 1** is a true and correct copy of the *Settlement Agreement and General Release*, dated as of May 19, 2025, by and among, Highland Capital Management, L.P., the Highland Claimant Trust, the Highland Litigation Sub-Trust, and the Highland Indemnity Trust, on the one hand, and Hunter Mountain Investment Trust, Beacon Mountain LLC, Rand Advisors, LLC, Rand PE Fund I, LP, Rand PE Fund Management, LLC, Atlas IDF, LP, Atlas IDF GP, LLC, on the other hand.

*[Signature Page Follows]*

000901

HCMLPHMIT00002689

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Dated: May 19, 2025.                    _/s/ Gregory V. Demo__
                                        Gregory V. Demo

000902
HCMLPHMIT00002690

# EXHIBIT 1

000903
HCMLPHMIT00002691

EXECUTION VERSION

## SETTLEMENT AGREEMENT ⎯ GENERAL RELEASE

THIS SETTLEMENT AGREEMENT & GENERAL RELEASE (this "**A_____t**") is entered into as of May 19, 2025 (the "**A_____t D t**"), by and among Highland Capital Management, L.P., a Delaware limited partnership ("**Hi h____**"), the Highland Claimant Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act (the "**C__i___t T__t**"), the Highland Litigation Sub-Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act (the "**Liti ti___S b T___t**"), and the Highland Indemnity Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act (the "**I____it T___t**", and together with Highland, the Claimant Trust and the Litigation Sub-Trust, the "**Hi h____ E titi__**"), on the one hand, and Hunter Mountain Investment Trust, a Delaware statutory trust ("**HMIT**"), Beacon Mountain LLC, a Delaware limited liability company ("**B____ M___t i__**"), Rand Advisors, LLC, a Delaware limited liability company ("**R____A__i____**"), Rand PE Fund I, LP, a Delaware series limited partnership ("**R____PE F_____**"), Rand PE Fund Management, LLC, a Delaware limited liability company ("**R____GP**"), Atlas IDF, LP, a Delaware limited partnership ("**At___IDF**"), Atlas IDF GP, LLC, a Delaware limited liability company ("**At___GP**" and together with HMIT, Beacon Mountain, Rand Advisors, Rand PE Fund, Rand GP and Atlas IDF, the "**HMIT E titi__**"), on the other hand. The Highland Entities and the HMIT Entities are collectively referred to as the "**P__ti__**," and each individually, as a "**P__t**".

## DEFINITIONS

Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Claimant Trust Agreement or the Plan, as applicable (in each case, as hereinafter defined). For purposes of this Agreement, the following capitalized terms have the following meanings:

"**9019 M ti___**" means the motion seeking entry of the Bankruptcy Court Order pursuant to Bankruptcy Rule 9019 and in accordance with <u>Section 18</u>.

"**A ti___**" means any action, claim, demand, arbitration, hearing, charge, complaint, investigation, examination, indictment, litigation, suit or other civil, criminal, administrative or investigative proceedings, including any petition under Rule 202 of the Texas Rules of Civil Procedure.

"**A__i i t__**" means a Person that, directly or indirectly, through one or more intermediaries, controls or is controlled by, or is under common control with, a specified Person as of the date on which, or at any time during the period for which, the determination of affiliation is being made. The term "control" (including, with correlative meanings, the terms "controlled by" and "under common control with"), as applied to any Person, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting securities or other ownership interest, by contract or otherwise.

"**A_____C____i t**" means the *Amended Complaint and Objection to Claims*, filed as docket number 158 in *Kirschner v. Dondero*, Adv. Pro. No. 21-03076-sgj (Bankr. N.D. Tex. May 19, 2022).

000904

HCMLPHMIT00002692

"**B      t   C**" means *In re Highland Capital Management, L.P.*, Case No. 19-34054-sgj (Bankr. N.D. Tex.) and its related proceedings.

"**B      t   C**" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended).

"**B      t   C      t**" means the U.S. Bankruptcy Court for the Northern District of Texas, Dallas Division.

"**B      t   C      t A      D t**" means the date on which the Bankruptcy Court Order is issued.

"**B      t   C      t O**" means an order of the Bankruptcy Court approving the allowance of the HMIT's Class 10 Interest as provided in this Agreement pursuant to the 9019 Motion.

"**B      t   R**" means the Federal Rules of Bankruptcy Procedure.

"**B   i   D**" means any day other than (i) a Saturday or a Sunday, (ii) a day on which the Federal Reserve Bank of New York or the New York Stock Exchange is closed, or (iii) a day on which banks in the States of Texas are required, or authorized by law, to close.

"**C   i   t T   t A      t**" means that certain Claimant Trust Agreement of the Claimant Trust (as may have been or may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), effective as of August 11, 2021, by and among Highland, as settlor, James P. Seery, Jr., a Claimant Trustee, and Wilmington Trust, National Association, a national banking association, as Delaware trustee.

"**C   i**" means any claims, debts, liabilities, demands, obligations, breaches of contract, breaches of duty or any relationship, misfeasance, malfeasance, promises, acts, omissions, agreements, liens, losses, costs and expenses (including attorney's fees and related costs), damages, injuries, suits, Actions, and causes of action of whatever kind or nature, whenever and however, arising, whether known or unknown, suspected or unsuspected, matured or unmatured, liquidated or unliquidated, contingent or fixed, at law or in equity, statutory or otherwise.

"**C      10**" means the class of Claims or Equity Interests described in Article II. Section H.10. of the Plan.

"**C      11**" means the class of Claims or Equity Interests described in Article II. Section H.11. of the Plan.

"**C      itt**" means the official committee of unsecured creditors appointed in the Bankruptcy Case.

"**C   i   ti   O**" means that certain *Order Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (ii) Granting Related Relief* [Docket No. 1943], as conformed in accordance with the Fifth Circuit's rulings.

2

HCMLPHMIT00002693

"**D    b    N  t**" means that certain Promissory Note dated May 31, 2017, in the original face amount of $24,268,621.69, from The Dugaboy Investment Trust, as Maker, and Highland Capital Management, L.P. and The Get Good Non-Exempt Trust, collectively as Payee.

"**Fi      C    t A            D t**" means the date on which the Bankruptcy Court Order becomes a Final Order.

"**Fi        O**" means an order or judgment of the Bankruptcy Court, which is in full force and effect, and as to which the time to appeal, petition for certiorari, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, new trial, reargument, or rehearing shall have been waived in writing in form and substance satisfactory to the Highland Entities, as applicable, or, in the event that an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order of the Bankruptcy Court shall have been determined by the highest court to which such order was appealed, or certiorari, new trial, reargument or rehearing shall have been denied and the time to take any further appeal, petition for certiorari, or move for a new trial, reargument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be Filed with respect to such order shall not preclude such order from being a Final Order.

"**G  t**" means the gatekeeping provision contained in Article IX. F of the Plan as of August 11, 2021.

"**G          t  A  th  it**" means any federal, provincial, state, local or foreign government or political subdivision thereof, court of competent jurisdiction, administrative agency, judicial or arbitral body, or commission or other governmental or regulatory authority or instrumentality.

"**Hi  h        R        P  ti**" means collectively (i) the Highland Entities, (ii) any Affiliate of any Highland Entity and any Person directly or indirectly majority-owned by any Highland Entity or any of their respective Affiliates, (iii) any Person directly or indirectly managed by any Highland Entity or any of their respective Affiliates, whether by contract or otherwise (the entities described in clauses (i)-(iii), collectively, the "**Hi  h        P  ti**"), (iv) each of the Highland Parties' current and former trustees and administrators (including the trustees of any of the Claimant Trust, the Litigation Sub-Trust, or the Indemnity Trust), officers, executives, agents, directors, advisors, advisory representatives, consultants, administrators, managers, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns, (v) the current and former members of the Oversight Board of the Claimant Trust in any capacity (including Richard Katz) and their Affiliates, (vi) Farallon Capital Management, LLC, Stonehill Capital Management, LLC, Muck Holdings LLC, and Jessup Holdings LLC, in each case, in any capacity, (vii) the Independent Board and its members John Dubel, James P. Seery, Jr., and Russell Nelms, (viii) James P. Seery, Jr., individually and in all capacities for any Highland Released Party, including as Chief Executive Officer of Highland Capital Management, L.P., Claimant Trustee of the Claimant

000906

HCMLPHMIT00002694

Trust, and the Indemnity Trust Administrator of the Indemnity Trust, (ix) Marc S. Kirschner, individually and as Trustee of the Litigation Sub-Trust, (x) the Committee and each of its members, (xi) the professionals (and their respective firms) (a) retained by Highland or the Committee during the Bankruptcy Case or which provided services to Highland or the Committee during the Bankruptcy Case or (b) retained by any Highland Released Party on or after August 11, 2021, (xii) any Person indemnified by any Highland Party (the Persons described in clauses (i)-(xii), collectively, the "**Hi h      C      P ti**"), and (xii) each Highland Covered Party's current and former officers, executives, agents, attorneys (and their respective firms), directors, advisors, consultants, administrators, managers, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns, if not otherwise included in the defined term "Highland Covered Parties;" provided, however, and for the avoidance of doubt, and without in any way limiting the scope of the foregoing, "Highland Covered Parties" shall include Highland CLO Funding, Ltd., Highland HCF Advisor, Ltd., Highland Multi Strategy Credit Fund, L.P., Highland Multi Strategy Credit Fund GP, L.P., Highland Multi Strategy Credit GP, LLC, Highland Multi Strategy Credit Fund, Ltd., Highland Select Equity Master Fund, L.P., Highland Select Equity Fund GP, L.P., Highland Select Equity Fund, L.P., Highland Restoration Capital Partners Master, L.P., Highland Restoration Capital Partners GP, LLC, Highland Restoration Capital Partners, L.P., Highland Restoration Capital Partners Offshore, L.P., Highland Offshore Director, LLC, Acis CLO Management, LLC, Neutra, Ltd., Pollack, Ltd., Acis CLO Management Holdings, L.P., Acis CLO Management Intermediate Holdings I, LLC, Acis CLO Management Intermediate Holdings II, LLC, Acis CLO Assets Holdings Limited, CHG Houston Holdings, LLC, Penant Management, L.P., Penant Management GP, LLC, Gunwale, LLC, HE Capital, LLC, Gleneagles CLO, Ltd., Aberdeen Loan Funding, Ltd. Highland Argentina Regional Opportunity Fund GP, LLC, Highland Argentina Regional Opportunity Fund, L.P., Highland Argentina Regional Opportunity Fund, Ltd., Highland Argentina Regional Opportunity Master Fund, L.P., Highland Latin America Consulting, Ltd., Highland Capital Management Korea Limited, Highland Capital Management Latin America, L.P., Highland Latin America GP, Ltd., Highland Latin America LP, Ltd., Highland Offshore Partners, L.P. (Diversified), Brentwood CLO, Ltd., Eastland CLO, Ltd., Bristol Bay Funding Ltd., Jasper CLO Ltd., Highland Legacy Limited, Grayson CLO, Ltd., Greenbriar CLO, Ltd.,  Highland Loan Funding V Ltd., Highland Park CDO I, Ltd., Liberty CLO, Ltd., Valhalla CLO, Ltd., Stratford CLO Ltd., Southfork CLO, Ltd., Pam Capital Funding, L.P., Stonebridge-Highland Healthcare Private Equity Fund, Pamco Cayman Ltd., Red River CLO, Ltd., Rockwall CDO II Ltd., Rockwall CDO, Ltd., Westchester CLO, Ltd. Longhorn Credit Funding, LLC, PensionDanmark Pensionsforsikringsaktieselskab, Highland Dynamic Income Master Fund L.P., Highland Dynamic Income Fund GP, LLC, Highland Dynamic Income Fund, L.P., Highland Dynamic Income Fund, Ltd., Highland JHT Holdings, LLC, Highland Prometheus Master Fund, L.P., Highland Prometheus Feeder Fund I, L.P., Highland Prometheus Feeder Fund II, L.P., Highland Sunbridge GP, LLC, Trussway Holdings, LLC, Trussway Industries, LLC, TW Company, Inc., T-Way Investments, LLC, SSP Holdings, LLC, Highland Flexible Income UCITS Fund, and Acis CLO 2017-7, Ltd. *Notwithstanding the forgoing or anything herein to the contrary*, none of "Highland Released Parties", "Highland Parties", nor "Highland Covered Parties" shall include James Dondero, Scott Ellington, Isaac Leventon, or any Person directly or indirectly owned as of the date hereof (in whole or in part) by, and/or Affiliated as of the date hereof with, or claiming

4

000907
HCMLPHMIT00002695

through, under or on behalf of, any of Mr. Dondero, Mr. Ellington, or Mr. Leventon in any manner and none of such Persons are released from any Claim by any Person in connection with this Agreement.

"**HMIT C    10 I t    t**" means the unvested, contingent Class 10 interest in the Claimant Trust (a) to be allowed on account of HMIT's pre-petition equity interest in Highland, and (b) subject to the terms and conditions, as applicable, of the Plan, the Plan Documents, the Claimant Trust Agreement, and in accordance with this Agreement, and applicable law.

"**HMIT N t** " means that certain Secured Promissory Note dated December 21, 2015, in the original face amount of $63,000,000 from HMIT, as maker, and Highland, as payee.

"**HMIT N t C i** " means any Claim related to, in connection with or arising out of the HMIT Note.

"**HMIT R     P ti** " means collectively (i) the HMIT Entities, (ii) any Affiliate of any HMIT Entity and any Person directly or indirectly majority owned by any HMIT Entity or any of their respective Affiliates, (iii) any Person directly or indirectly managed by any HMIT Entity or any of their respective Affiliates, whether by contract or otherwise (the entities described in clauses (i) – (iii), collectively, the "**HMIT P ti** "), (iv) each of the HMIT Parties' current and former trustees, administrators, officer, executives, agents, directors, advisors, consultants, manager, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns (v) the professionals (and their respective firms (a) retained by any HMIT Party during the Bankruptcy Case or which provided services to any HMIT Party during the Bankruptcy Case or (b) retained by any HMIT Released Party on or after August 11, 2021, (vi) any Person indemnified by any HMIT Party (the Persons described in clauses (i) – (vi), collectively, the "**HMIT C          P ti** "), and (vii) each HMIT Covered Party's current and former officers, executives, agents, directors, advisors, consultants, administrators, managers, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns, if not otherwise included in the defined term "HMIT Covered Parties." *Notwithstanding the forgoing*, none of "HMIT Released Parties", "HMIT Parties", nor "HMIT Covered Parties" shall include James Dondero, Scott Ellington, Isaac Leventon, or any Person directly or indirectly owned as of the date hereof (in whole or in part) by, and/or Affiliated as of the date hereof with, or claiming through, under or on behalf of, any of Mr. Dondero, Mr. Ellington, or Mr. Leventon in any manner, and none of such Persons are released from any Claims by any Person in connection with this Agreement.

"**I     it T   t A   i it t** " has the meaning given to it in the Indemnity Trust Agreement.

"**I     it T   t A        t**" means that certain *Second Amended and Restated Indemnity Trust Agreement of the Indemnity Trust* (as may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), effective as of [April 28], 2025, by and among the Claimant Trust, as grantor, James P. Seery, Jr., as indemnity

000908

HCMLPHMIT00002696

trust administrator, and Wilmington Trust, National Association, a national banking association, as indemnity trustee and Delaware trustee.

"**I        it T   t A   t**" has the meaning set forth in the Indemnity Trust Agreement, but excluding Highland, the Claimant Trust, and their respective assets.

"**I            t B      **" means the independent board appointed by the Bankruptcy Court on January 9, 2020, pursuant to that certain *Order Approving Settlement with Official Committee of Unsecured Creditors Regarding Governance of the Debtor and Procedures for Operations in the Ordinary Course* [Docket No. 339].

"**Ki   h    C  i    **" means all Claims and causes of action that were asserted or could have been asserted by the Litigation Trustee of the Litigation Sub-Trust, in the Amended Complaint.

"**Li  bi it  **" means any liability, debt, obligation, loss, damage, claim, cost or expense (including costs of investigation and defense and attorney's fees, costs and expenses), in each case, whether direct or indirect, whether accrued or contingent, whether or not involving a third-party claim, and including incidental and consequential damages and diminution of value.

"**Liti  ti   P  t  ti    **" means, individually and collectively, the rights, duties, and obligations set forth in Sections 1 – 2 and Sections 9 - 16.

"**Liti  ti   S  b T   t**" means the Highland Litigation Sub-Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act.

"**Liti  ti   S  b T   t A          t**" means that certain Litigation Sub-Trust Agreement of the Litigation Sub-Trust (as may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), effective as of August 16, 2021, by and among James P. Seery, Jr., as Claimant Trustee of the Claimant Trust, Wilmington Trust, National Association, a national banking association, as Delaware Trustee, and the Litigation Trustee.

"**Liti  ti   T   t  **" means Marc S. Kirschner, as Litigation Trustee of the Litigation Sub-Trust.

"**LPA**" means that certain *Sixth Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P.* (as may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), dated as of October 4, 2021.

"**O    ti   Ex        **" means, except for the expenses of the Indemnity Trust (including any payments to Trust Indemnified Parties or Indemnified Parties (in each case, as defined, and pursuant to the terms and conditions set forth, in the Indemnity Trust Agreement)), the expenses of operating and administering the Highland Entities, including legal expenses, employee compensation, Claimant Trustee/CEO and other trust and trustee related compensation, incentive compensation, and customary general and administrative expenses.

000909

HCMLPHMIT00002697

"**O i i    P   **" means that certain *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* attached as Exhibit A to the *Order (A) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as modified) and (B) Granting Related Relief*, filed at Docket No. 1943 on the Bankruptcy Court's docket.

"**O    i ht B    **" means the oversight board of the Highland Claimant Trust.

"**P    i    Liti ti   **" means (i) *Hunter Mountain Investment Trust v. Highland Cap. Mgmt., L.P.*, Case No. 3:23-cv-02071-E (N.D. Tex.), on remand to the Bankruptcy Court (including *Hunter Mountain Investment Trust's Emergency Motion for Leave to File Adversary Proceeding* filed at Bankruptcy Court Docket No. 3699 and all proceedings, decisions, and orders relating there); (ii) *Dugaboy Investment Trust v. Highland Cap. Mgmt, L.P.*, 3:24-cv-01531-X (N.D. Tex.) (only as to HMIT), and (iii) *Hunter Mountain Investment Trust v. Highland Cap. Mgmt., L.P.*, Case No. 3:24-cv-01786-L (N.D. Tex.).

"**P    itt   I    t    t  **" has the meaning set forth in the Indemnity Trust Agreement.

"**P      **" means any natural person, partnership, limited liability partnership, corporation, limited liability company, association, joint stock company, trust, estate, joint venture, unincorporated organization or Governmental Authority.

"**P   **" means that certain *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* as conformed in accordance with the Fifth Circuit's rulings.

"**P    D        t **" has the meaning given to it in the Plan.

"**P    P   t  ti    **" means, collectively, the provisions of the Plan contained in Article IX thereof.

"**P    R t  **" means the proportion that (a) the allowed amount of a particular Claim or Equity Interest in Class 10 bears to (b) the aggregate allowed amount of all Claims or Equity Interests in Class 10.

"**Th    t **" means any written threats of legal action, legal demands, filed complaints, petitions for pre-suit discovery, suits, litigations, arbitrations, actual or threatened restraining orders or injunctions made in writing, or similar written actions of any kind, or sworn statements evidencing the same, in any forum against any Trust Indemnified Parties or Indemnified Party (both as defined in the Indemnity Trust Agreement), excluding any such action that would otherwise be a Threat except that any applicable statute of limitations that could be applicable to such action has expired.

"**Th    t  N ti   **" means the written notice of any Threats received by the Indemnity Trust with respect to any Trust Indemnified Parties or Indemnified Party (both as defined in the Indemnity Trust Agreement), that is hereby required to be provided by the Indemnity Trust to the HMIT Entities, within five (5) Business Days after receipt of such Threat.

## RECITALS

7

000910

HCMLPHMIT00002698

**WHEREAS**, as of the Petition Date, HMIT held Class B and Class C Limited Partnerships Interests in Highland;

**WHEREAS**, on December 21, 2015, HMIT entered into the HMIT Note with Highland, which had a total outstanding principal balance of Fifty-Seven Million Six Hundred Ninety Thousand Six Hundred Forty and 95/100 Dollars ($57,690,640.95) as of the Petition Date (the "**HMIT Note Balance**");

**WHEREAS**, HMIT's Class B and Class C Limited Partnership Interests in Highland were extinguished on August 11, 2021, in accordance with the Plan;

**WHEREAS**, pursuant to the LPA, HMIT's capital account balance at Highland on account of its Class B and Class C Limited Partnership Interests on the Petition Date was Three Hundred Ninety-Four Million Six Hundred Thirty Thousand Eight Hundred Seventy-One and 53/100 Dollars ($394,630,871.53) (the "**HMIT Capital Account Balance**");

**WHEREAS**, some or all of the HMIT Entities have asserted certain Claims against certain Highland Entities and certain other Highland Covered Parties, including those asserted in the Pending Litigation;

**WHEREAS**, certain distributions to be made to the holders of allowed Class 10 Claims or Equity Interests pursuant to the terms and subject to the conditions set forth herein are premised on the consent of certain Highland Covered Parties in their capacity as Holders of Class 9 Interests, and such Persons are only willing to provide such consent in exchange for the releases as set forth in this Agreement;

**WHEREAS**, some or all of the Highland Entities have asserted certain Claims against certain HMIT Entities, including the HMIT Note Claims;

**WHEREAS**, the Parties wish to terminate, extinguish, and release any and all rights, duties, obligations and Claims that (a) any of the Highland Released Parties owed or have, or may have owed or have, to or with respect to any of the HMIT Released Parties, and (b) any of the HMIT Released Parties owed or have, or may have owed or have, to or with respect to any of the Highland Released Parties, as provided in this Agreement (collectively, the "**Rights and Obligations**");

**WHEREAS**, the Parties agree that the Litigation Protections are intended to enact a permanent cessation of all litigation concerning or related to the Highland Released Parties through and including the Agreement Date; and

**WHEREAS**, the Parties, individually and collectively, wish to (a) resolve all disputes between and/or among any of the Highland Entities and their respective indemnitees, on the one hand, and any of the HMIT Entities, on the other hand, including those asserted or attempted to be asserted in the Pending Litigation, (b) fix and allow HMIT's Class 10 Interest at the amount and on the terms provided herein; and (c) terminate, extinguish, and release all Rights and Obligations on the terms provided herein.

000911

HCMLPHMIT00002699

**NOW THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree as follows:

## AGREEMENT

1.      <u>Stay and Dismissal of Pending Litigation With Prejudice</u>.

        (a)     Within five (5) Business Days after the Agreement Date, the HMIT Entities shall take all steps necessary (at their own cost) to stay the Pending Litigation.

        (b)     Within five (5) Business Days after the Bankruptcy Court Approval Date, the HMIT Entities shall take all steps necessary (at their own cost) to dismiss the Pending Litigation with prejudice.

2.      <u>Maintenance of Stay and Dismissal of Certain Defendants from the Amended Complaint</u>.

        (a)     The Litigation Trustee shall continue to maintain the stay of Adv. Proc. No. 21-03076-sgj and all related proceedings arising therefrom through the Bankruptcy Court Approval Date. Within five (5) Business Days after the Bankruptcy Court Approval Date, the Litigation Sub-Trust shall take all steps necessary (at its own cost) to dismiss, with prejudice, HMIT and Rand PE from Counts I, II, III, and XXIV of the Amended Complaint.

3.      <u>Cash Payment to HMIT</u>.  Within five (5) Business Days following the Bankruptcy Court Approval Date, Highland shall pay HMIT a one-time, lump sum of Five Hundred Thousand Dollars (US$500,000.00) (the "**P        t**") by wire transfer:

        Hunter Mountain Investment Trust
        C/o CLO Holdco, LLC
        Hancock Whitney
        Account # - 071173413
        Routing # - 113000968
        (469) 604-0955

4.      <u>HMIT Class 10 Interest</u>.

        (a)     Subject to entry of the Bankruptcy Court Order, and the terms of this Agreement, the HMIT Class 10 Interest shall be deemed allowed in the amount of Three Hundred Thirty-Six Million Nine Hundred Forty Thousand Two Hundred Thirty and 58/100 Dollars (US$336,940,230.58), which amount represents the HMIT Capital Account Balance, <u>less</u> the HMIT Note Balance.

        (b)     Notwithstanding anything to the contrary in the Plan or the Claimant Trust Agreement, as an integral part of this Agreement to consent to the allowance of the HMIT Class 10 Interest and the other considerations in this Agreement, HMIT shall not be deemed, and no holder of the HMIT Class 10 Interest shall be, a Claimant Trust Beneficiary or a "Beneficiary" under the Claimant Trust Agreement, and the Highland Released Parties, individually and collectively, shall owe no duty to any HMIT Releasor (whether contractual, fiduciary, equitable,

000912

HCMLPHMIT00002700

statutory or otherwise), including with respect to the HMIT Class 10 Interest, in each case, except as expressly set forth in this Agreement.  Furthermore, without limiting the foregoing and for the avoidance of doubt, the contractual right of the holder of the HMIT Class 10 Interest to receive or recover any payments or Indemnity Trust Assets from the Indemnity Trust as set forth in this Agreement or the Indemnity Trust Agreement does not make any HMIT Releasor or any other Person a beneficiary of the Indemnity Trust or under the Indemnity Trust Agreement.

(c)     Notwithstanding anything to the contrary in the Plan, the Claimant Trust Agreement or the Indemnity Trust Agreement, in no event shall HMIT sell, transfer, assign, pledge, hypothecate, participate or otherwise dispose of or encumber the HMIT Class 10 Interest or any rights (including any right to payment) with respect thereto (collectively, a "**C      10 A  i      t**"), and any attempted Class 10 Assignment shall be null and void.

(d)     For the avoidance of doubt, the HMIT Class 10 Interest is and shall remain senior to the not yet allowed, unvested contingent Class 11 Claims of Equity Interests as provided for in the Plan, the Plan Documents, and the Claimant Trust Agreement.

5.     <u>Initial Interim Distributions on the Allowed Class 10 Interests</u>.

(a)     Within five (5) Business Days after the Bankruptcy Court Approval Date, the Indemnity Trust shall distribute (the date on which such distribution is made, the "**I iti  I t i  Di t ib ti  D t**") Pro Rata to the Holders of allowed Class 10 Claims or Equity Interests cash in the aggregate amount of Ten Million Dollars (US$10,000,000.00) (the "**I iti  I t i  C h Di t ib ti  A      t**"), by means of wire transfer with the Pro Rata portion in respect of the HMIT Class 10 Interest sent to the wire instructions contained in Section 3 ("**Wi  T      **").

(b)     Within five (5) Business Days after the Bankruptcy Court Approval Date (the "**N t  A  i      t D t**"), the Highland Entities shall cause the portion of the Dugaboy Note held by the Highland Entities to be distributed to HMIT in-kind and take all actions necessary for HMIT to become the holder of such portion of the Dugaboy Note, and shall in addition pay to HMIT cash in the aggregate amount of all principal and interest payments actually received on the Dugaboy Note by the Highland Entities, including the Indemnity Trust, from the Agreement Date to the Note Assignment Date.  Prior to the Bankruptcy Court Approval Date, HMIT will engage an independent valuation service provider to value the Dugaboy Note for purposes of determining the magnitude of reduction to the outstanding allowed Class 10 Interests on account of such in-kind distribution, which shall not be less than Fifty percent (50%) of the current balance owed under the Dugaboy Note. The HMIT Entities acknowledge and agree that none of the Highland Entities are representing or warranting that the Dugaboy Note can be sold, or the price, if any, that could be received for the Dugaboy Note and further acknowledge and agree that any such purchase price may be de minimis.

6.     <u>Subsequent Distribution(s) on the Allowed Class 10 Interests</u>.

(a)     On December 1, 2027, the Indemnity Trust shall distribute (such distribution, collectively, the "**Fi  t S b      t Di t ib ti**", and the date on which such Subsequent Distribution is made, the "**Fi  t S b      t Di t ib ti  D t**") Pro Rata to the

000913

HCMLPHMIT00002701

Holders of allowed Class 10 Claims or Equity Interests: cash in the aggregate amount of Six Million Five Hundred Thousand Dollars (US$6,500,000.00), by Wire Transfer.

(b)     On December 1, 2028, the Indemnity Trust shall distribute (such distribution, collectively, the "S____ S_b_____t Di_t_ib_ti__", and the date on which such Subsequent Distribution is made, the "S___ S_b_____t Di_t_ib_ti__ D_t_") Pro Rata to the Holders of allowed Class 10 Claims or Equity Interests cash in the aggregate amount of Six Million Five Hundred Thousand Dollars (US$6,500,000.00) by Wire Transfer.

(c)     Notwithstanding anything herein to the contrary, the obligations of the Indemnity Trust to make the First Subsequent Distribution or Second Subsequent Distribution is subject in all respects to (i) there being no Threats and (ii) a determination in accordance with Article VIII, Section 8.1(c) of the Indemnity Trust Agreement that the Indemnity Trust Assets comprising such distributions are not reasonably necessary to satisfy current or potential Indemnification Obligations (as defined in the Indemnity Trust Agreement) to all persons who are or might become Beneficiaries (as defined in the Indemnity Trust Agreement).

7.     <u>Final Distribution on the Allowed Class 10 Interests</u>.

(a)     On the later of the Final Court Approval Date and April 1, 2029, the Indemnity Trust will distribute all excess remaining Indemnity Trust Assets in accordance with Article VIII of the Indemnity Trust Agreement; <u>provided</u>, <u>however</u>, that the obligation of the Indemnity Trust to make any such distributions and/or dissolve and wind up the affairs of the Indemnity Trust is subject in all respects to (i) there being no Threats and (ii) a determination in accordance with Article VIII of the Indemnity Trust Agreement that (1) a Final Order(s) (as defined in the Indemnity Trust Agreement) has been entered resolving all litigation, claims or proceedings in any forum of any kind which could give rise to Indemnity Obligations (as defined in the Indemnity Trust Agreement) and payment in full of all such Indemnity Obligations and (2) all applicable statutes of limitations and any applicable tolling of such statutes of limitation have expired.

(b)     The Indemnity Trust agrees to not use Indemnity Trust Assets to fund Operating Expenses.

(c)     Following the Bankruptcy Court Approval Date, at the request of Mark Patrick, solely in his capacity, and to the extent he remains, as administrator of HMIT, but not more often than quarterly, Highland and the Indemnity Trust Administrator agree to review (i) the status of their respective assets, (ii) the balance of cash held, (iii) the status of any claims made for indemnification and any resolutions thereof, (iv) the status of any litigation, and (v) forecasted operating expenses with Mr. Patrick, and will each work in good faith to reduce operating expenses where reasonably practicable; provided, however, that all such reporting shall be subject to Mr. Patrick's agreement to maintain confidentiality with respect to any non-public information.

8.     <u>Transfer Kirschner Claims; Dismissal of HMIT Note Claims</u>.

(a)     Within five (5) Business Days after the Bankruptcy Court Approval Date, but after the dismissal provided for in <u>Section 2</u>, the Litigation Sub-Trust shall execute a short-

000914
HCMLPHMIT00002702

form assignment in in favor of the HMIT Entities transferring all of the Litigation Sub-Trust's right, title, and interest in and to the Kirschner Claims (the "**Ki    h    T        **"). Such assignment shall be in a form mutually acceptable to the Parties and its substance shall be consistent with the terms, conditions and limitations set forth in this Agreement, including Section 8(b) below. Each HMIT Entity acknowledges and agrees that none of the Highland Entities will have any duty or obligation to assist the HMIT Entities in any way with respect to the Kirschner Claims, including the prosecution thereof, except as provided in this Agreement, including the terms of Section 8(c) below.

(b)     THE HMIT ENTITIES SPECIFICALLY ACKNOWLEDGE AND AGREE THAT THE LITIGATION SUB-TRUST IS TRANSFERRING THE KIRSCHNER CLAIMS ON AN "AS IS AND WITH ALL FAULTS" BASIS AND THAT THE HMIT ENTITIES ARE NOT RELYING ON ANY REPRESENTATIONS OR WARRANTIES OF ANY KIND WHATSOEVER, EXPRESS OR IMPLIED, FROM THE HIGHLAND ENTITIES OR THEIR REPRESENTATIVES AS TO ANY MATTERS CONCERNING THE KIRSCHNER CLAIMS AND AMENDED COMPLAINT, INCLUDING WITH RESPECT TO THE ENFORCEABILITY, TRANSFERABILITY, VIABILITY, STRENGTH, OR VALUE OF ANY OF THE KIRSCHNER CLAIMS OR THE AMENDED COMPLAINT.  The HMIT Entities hereby specifically acknowledge that they have carefully reviewed this Section and have had the opportunity to discuss its import with legal counsel and that the provisions of this Section are a material part of this Agreement.  Thus, if for any reason HMIT is precluded from or is otherwise unable to prosecute all or any of the Kirschner Claims, (i) the HMIT Releasors shall have no recourse against any Highland Released Parties whatsoever and shall not be entitled to compensation of any kind, it being agreed that the HMIT Entities are otherwise receiving adequate consideration for the duties and obligations they are undertaking pursuant to this Agreement and (ii) there will be no effect whatsoever on the validity and enforceability of this Agreement or any of the other transactions contemplated hereby.

(c)     As promptly as reasonably practicable following the Bankruptcy Court Approval Date, the Highland Entities shall provide to the HMIT Entities electronic copies of written discovery requests and responses thereto, and documents produced in discovery in respect of the Kirschner Claims and the Amended Complaint.  The Highland Entities will not provide any other documents regarding the Kirschner Claims including any attorney-client communications and any documents subject to the attorney work-product doctrine or similar privileges or immunities concerning the Kirschner Claims (collectively, the "**Ki    h    P  i  i    **"), it being understood and agreed that the Highland Entities are retaining, and not transferring or waiving, the Kirschner Privileges.

(d)     Each Party acknowledges and agrees that if (i) the Kirschner Transfer is found or deemed to be impermissible or invalid, for any reason, or (ii) any HMIT Entity materially breaches this Agreement, the Kirschner Claims and Amended Complaint will revert to, and remain an asset of, the Litigation Sub-Trust.

9.     General Release By The HMIT Entities. On the Bankruptcy Court Approval Date, and to the maximum extent permitted by law, each of the HMIT Entities, on behalf of itself and each of its respective Affiliates (including Affiliated and/or managed funds, accounts and other investment vehicles) and its and their respective current and former advisors, consultants,

000915

HCMLPHMIT00002703

administrators, trustees, directors, officers, managers, executives, members, partners (including limited and general partners), employees, beneficiaries, direct and indirect shareholders and other equity holders, agents, participants, direct and indirect subsidiaries and parents, successors, predecessors, designees, and assigns (whether by operation of law or otherwise) and all Persons claiming through, under or on their behalf (collectively with the HMIT Entities, the "**HMIT R        **") hereby forever, finally, fully, unconditionally, and completely releases, relieves, acquits, discharges, remises, and exonerates each Highland Released Party from, and waives and relinquishes, any and all Claims, which the HMIT Releasors, or any Person claiming through, under, or on behalf of any of the HMIT Releasors, ever had, now has, or hereafter can, shall, or may have against any of the Highland Released Parties by reason of, arising from, relating to, or in connection with, any fact, matter, or transaction that occurred prior to the Agreement Date, including any fact, matter, transaction, or occurrence asserted by any HMIT Entity in the Pending Litigation or in connection with, relating to, or with respect to the Bankruptcy Case, the management or operation of any of the Highland Released Parties, or the Highland Released Parties' property and including any defense, affirmative defenses, and right to setoff arising out of, or otherwise related to, any of the foregoing (collectively, the "**HMIT E tit  R      C  i   **").

     10.   <u>General Release By The Highland Entities</u>. On the Bankruptcy Court Approval Date, and to the maximum extent permitted by law, each of the Highland Entities, on behalf of itself and each of its respective Affiliates (including Affiliated and/or managed funds, accounts and other investment vehicles) and its or their respective current and former advisors, consultants, administrators, trustees, directors, officers, managers, executives, members, partners (including limited and general partners), employees, beneficiaries, direct and indirect shareholders and other equity holders, agents, participants, direct and indirect subsidiaries and parents, successors, predecessors, designees, and assigns (whether by operation of law or otherwise) and all Persons claiming through, under or on their behalf (collectively with the Highland Entities, the "**Hi  h     R      **") hereby forever, finally, fully, unconditionally, and completely releases, relieves, acquits, discharges, remises, and exonerates each HMIT Released Party from, and waives and relinquishes, any and all Claims which the Highland Releasors, or any Person claiming through, under, or on behalf of any of the Highland Releasors, ever had, now has, or hereafter can, shall, or may have against any of the HMIT Released Parties by reason of, arising from, relating to, or in connection with, any fact, matter, or transaction that occurred prior to the Bankruptcy Court Approval Date, including any fact, matter, transaction, or occurrence in connection with, relating to, or with respect to the Bankruptcy Case, the management or operation of any of the HMIT Released Parties, or the HMIT Released Parties' property and including any defense, affirmative defenses, and right to setoff arising out of, or otherwise related to, any of the foregoing (collectively, the "**Hi  h      R      C  i  **").

     11.   <u>Further Provisions Concerning The General Releases</u>.

     **(a)   FOR THE AVOIDANCE OF DOUBT THE FOREGOING RELEASES ARE INTENDED TO BE GENERAL AND INCLUDE A RELEASE OF ALL RELEASED CLAIMS WHETHER KNOWN OR UNKNOWN SUSPECTED OR UNSUSPECTED ARISING OR EXISTING FROM THE BEGINNING OF TIME THROUGH AND INCLUDING THE AGREEMENT DATE.**

000916

HCMLPHMIT00002704

(b)      To the maximum extent permitted by law, each of the HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, waives the benefit of any statute or other principle of law or equity that limits the applicability of a release with respect to Claims that the releasing party does not know or suspect to exist in his, her or its favor at the time of executing the release.

(c)      Without limiting the scope of the foregoing waiver, in connection with the foregoing release, each of the HMIT Entities and the Highland Entities, on its own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, waives the benefits of Section 1542 of the California Civil Code (to the extent, if any, that Section 1542 might apply to the foregoing release), which provides as follows:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT IF KNOWN BY HIM OR HER WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

Each of the HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, hereby agrees that the provisions of Section 1542 of the Civil Code of the State of California and all similar federal or state law, rights, rules or legal principles, legal or equitable, in each case solely to the extent such provisions apply, **ARE HEREBY KNOWINGLY AND VOLUNTARILY WAIVED AND RELINQUISHED BY EACH OF THE HMIT ENTITIES AND THE HIGHLAND ENTITIES, ON THEIR OWN BEHALF AND ON BEHALF OF THE OTHER HMIT RELEASORS AND HIGHLAND RELEASORS RESPECTIVELY** in each and every capacity, to the full extent that such rights and benefits pertaining to the matters released herein may be waived, and each of the HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, hereby agrees and acknowledges that this waiver and relinquishment is an essential term of this Agreement, without which the consideration provided would not have been given.

In connection with such waiver and relinquishment, each of the HMIT Entities and Highland Entities acknowledges that it is aware that it may hereafter discover Claims presently unknown or unsuspected, or facts in addition to or different from those which it now knows or believes to be true, with respect to the matters released herein.  Nevertheless, it is the intent of each of the HMIT Entities and the Highland Entities, on its own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, in executing this Agreement fully, finally, and forever to settle and release all such matters, and all Claims related thereto, which exist, may exist or might have existed (whether or not previously or currently asserted in any action) which are the subject to the releases granted above.

(d)      As an integral component of this Agreement, and notwithstanding the Parties' intent set forth in the preamble hereto and the general nature of the releases in Sections 9 and 10, should:

000917

HCMLPHMIT00002705

(i)     any HMIT Releasor contend or assert that any Claim of any kind whatsoever held by any HMIT Releasor against any Highland Released Party survives this Agreement and is in any way related to or arising from or in connection with any HMIT Entity Released Claim (such claim or cause of action, a "**HMIT A_____ C i **"), such HMIT Releasor will be deemed to have irrevocably, fully, and finally assigned such HMIT Alleged Claim to the Highland Entities and the Highland Entities will be deemed to have forever, finally, full, unconditionally, and irrevocably, and completely released such HMIT Alleged Claim.

(ii)     any Highland Releasor contend or assert that any Claim of any kind whatsoever held by any Highland Releasor against any HMIT Released Party survives this Agreement and is in any way related to or arising from or in connection with any Highland Entity Released Claim (such claim or cause of action, a "**Hi h_____ A_____ C i **"), such Highland Releasor will be deemed to have irrevocably, fully, and finally assigned such Highland Alleged Claim to the HMIT Entities and the HMIT Entities will be deemed to have forever, finally, full, unconditionally, and irrevocably, and completely released such Highland Alleged Claim.

12.     <u>Covenant Not To Sue; Limitation on Standing</u>. Upon the Agreement Date:

(a)     Each of the HMIT Releasors covenants and agrees that it will not institute or prosecute any Action, in law, in equity or otherwise, against any of the Highland Released Parties, to recover, enforce, investigate, or collect any HMIT Entity Released Claim and will not (i) induce, encourage or direct any other Person to do so or (ii) act in concert with or assist (financially or otherwise) any other Person in doing so.

(b)     Each of the Highland Releasors covenants and agrees that it will not institute or prosecute any Action, in law, in equity or otherwise, against any of the HMIT Released Parties, to recover, enforce, investigate, or collect any Highland Entity Released Claim and will not (i) induce, encourage or direct any other Person to do so or (ii) act in concert with or assist (financially or otherwise) any other Person in doing so.

(c)     For the avoidance of doubt, this Agreement shall not operate to give any HMIT Entity standing for any purpose in connection with the Bankruptcy Case (or in connection with any appeal arising from any order entered by the Bankruptcy Court), except for the limited purpose of seeking Court approval of this Agreement (including with respect to any appeal concerning any order entered granting or denying such approval), and except for the limited purpose of enforcing this Agreement, no HMIT Entity shall commence any Action in connection with the HMIT Class 10 Interest.

13.     <u>Representations and Warranties</u>.

(a)     Each of the HMIT Entities hereby represents and warrants that every HMIT Entity Released Claim has not heretofore been assigned or encumbered and is not the subject of a transfer (as such term is defined in 11 U.S.C. § 101(54)), by any HMIT Releasor.

(b)     The HMIT Entities, on their own behalf and on behalf of the other HMIT Releasors, acknowledge and agree that each Plan Provision is lawful, effective, and binding on the HMIT Releasors. The HMIT Entities further agree, on their own behalf and on behalf of the

15

HCMLPHMIT00002706

other HMIT Releasors, that the HMIT Releasors will never, in any way, challenge or seek to modify, nullify, vacate, or revoke, or induce, encourage or direct any other Person to do so or act in concert with or assist (financially or otherwise) any other Person in doing so the Confirmation Order, the Plan, the Plan Protections, or any Plan Document, including the Claimant Trust Agreement, the LPA, the Indemnity Trust Agreement or the Litigation Sub-Trust Agreement, in the Bankruptcy Court, in any other state or federal court, in any other forum or tribunal, or otherwise, including administrative or regulatory tribunals and foreign courts.

(c)     Each of the Highland Entities hereby represents and warrants that every Highland Entity Released Claim has not heretofore been assigned or encumbered and is not the subject of a transfer (as such term is defined in 11 U.S.C. § 101(54)), by any Highland Releasor.

(d)     Each Party severally represents and warrants as to itself only that: (i) it has taken all necessary action to authorize and approve the execution, delivery and performance of this Agreement; (ii) such Party has full power and authority to execute and deliver this Agreement; and (iii) this Agreement constitutes a valid, legal and binding obligation of such Party, and is enforceable subject to its terms. Each individual signatory hereto individually warrants and represents to all Parties hereto that such individual has full power and authority to act on behalf of and bind the Party for which he or she has executed this Agreement; provided, however that no signatory shall otherwise provide any warranty or representation or otherwise be a party to this Agreement on an individual basis.

14.     <u>No Continuing Rights, Duties or Obligations</u>.  Except for the rights, duties, and obligations expressly set forth in this Agreement, all Rights and Obligations that existed or may have existed shall be deemed terminated, extinguished, and released upon the Agreement Date. For the avoidance of doubt, from and after the Agreement Date, (a) the Highland Released Parties, individually and collectively, shall owe no duty, past or present, including with respect to the Kirchner Claims, to the HMIT Released Parties, individually and collectively, whether contractual, fiduciary, equitable, statutory or otherwise, except as arising out of this Agreement, and (b) the HMIT Released Parties, individually and collectively, shall owe no duty to the Highland Released Parties, individually and collectively, whether contractual, fiduciary, equitable, statutory or otherwise, except as arising out of this Agreement.

15.     <u>Gatekeeper Standard</u>.

(a)     The HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, acknowledge and agree that, notwithstanding the United States Court of Appeals for the Fifth Circuit's decision in *Highland Capital Management Fund Advisors, L.P. v. Highland Capital Management, L.P.*, No. 23-10534 (5th Cir. Mar. 18, 2025), the "Gatekeeper" provisions contained in Highland's Original Plan is forever binding on each of the HMIT Entities and any Persons claiming through, under or on behalf of any of them, and for a claim or cause of action to be "colorable" for purposes of the Gatekeeper, it must be found by final order of the Bankruptcy Court (the "**G   t        C   t**"), which order shall be subject to appeal to a court of competent jurisdiction, to have satisfied the "Gatekeeper Colorability Test" as such term is defined in *In re Highland Capital Management, L.P.*, 2023 Bankr. LEXIS 2104 at *124-36 (Bankr. N.D. Tex. Aug. 24, 2023).

000919

HCMLPHMIT00002707

(b)    The HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, acknowledge and agree that compliance with the Gatekeeper requires (i) a motion seeking leave to sue an Exculpated Party (as that term is defined in Highland's original Plan) and a finding that the litigant's claims and causes of action are "colorable" attaching a complaint setting forth the basis for such claims or causes of action and (ii), in the Gatekeeper Court's sole discretion, an evidentiary hearing (during which the Gatekeeper Court may, among other things, hear testimony and assess the credibility of any witness(es)) to determine whether a proposed claim or cause of action is "colorable."

(c)    The HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, further acknowledge and agree that the moving party under the Gatekeeper has the burden of satisfying the "Gatekeeper Colorability Test," and that the dismissal of the Pending Litigation shall have res judicata effect.

16.    <u>Indemnification</u>.

(a)    Without in any manner limiting the available remedies for any breach of this Agreement, the HMIT Entities, severally but not jointly, agree to indemnify, defend, and hold the Highland Released Parties harmless from and against any and all Liability, that may arise or result from or on account of, or that are otherwise related or attributable to (x) any breach of this Agreement or of any representation or warranty contained in the Agreement, including the representations and warranties of any HMIT Entity set forth in <u>Section 13</u> or (y) any Actions brought or prosecuted by or on behalf of, any HMIT Releasor or that are induced, encouraged, assisted  or directed by any HMIT Releasor or brought or prosecuted in concert with any HMIT Releasor against any Highland Released Party with respect to or related to any HMIT Entity Released Claims.  Without limiting the scope of the foregoing in any manner, any HMIT Entity that breaches <u>Section 12</u> shall be liable to the Highland Released Party against whom the applicable Action has been brought or prosecuted in violation of <u>Section 12</u> for the reasonable attorneys' fees and costs incurred by such Highland Released Party in defending against or otherwise responding to such Action.  Each HMIT Entity acknowledges and agrees that the HMIT Entities are and shall be severally but not jointly liable for any Liability arising from or out of any breach of this Agreement or of any representation or warranty set forth in this Agreement.

(b)    Without in any manner limiting the available remedies for any breach of this Agreement, the Highland Entities, severally but not jointly, agree to indemnify, defend, and hold the HMIT Released Parties harmless from and against any and all Liability, that may arise or result from or on account of, or that are otherwise related or attributable to (x) any breach of this Agreement or of any representation or warranty contained in the Agreement, including the representations and warranties of any Highland Entity set forth in <u>Section 13</u> or (y) any suits, proceedings, or other actions brought or prosecuted by or on behalf of, any Highland Releasor or that are induced, encouraged, assisted  or directed by any Highland Releasor or brought or prosecuted in concert with any Highland Releasor against any HMIT Released Party with respect to or related to any Highland Entity Released Claims.  Without in any manner limiting the scope of the foregoing, any Highland Entity that breaches <u>Section 12</u> shall be liable to the HMIT

000920

HCMLPHMIT00002708

Released Party against whom the applicable Action has been brought or prosecuted in violation of <u>Section 12</u> for the reasonable attorneys' fees and costs incurred by such HMIT Released Party in defending against or otherwise responding to such Action.  Each Highland Entity acknowledges and agrees that the Highland Entities are and shall be severally but not jointly liable for any Liability arising from or out of any breach of this Agreement or of any representation or warranty set forth in this Agreement.

       17.    <u>Execution</u>.  This Agreement may be executed by the exchange of signatures by facsimile or by PDF attachment to an email transmittal and in counterparts, and if so executed, shall be fully executed when a counterpart has been executed and delivered by all Parties hereto through counsel.  All counterparts taken together shall constitute one and the same agreement and shall be fully enforceable as such.

       18.    <u>Bankruptcy Court Order</u>.  The allowance of the allowed HMIT Class 10 Interest pursuant to <u>Section 4</u> is subject to the entry of the Bankruptcy Court Order.  To that end, the Highland Entities shall file the 9019 Motion no later than five (5) Business Days after the Agreement Date.  Each Party shall, and shall cause each of their respective Affiliates to, undertake any and all actions in compliance with applicable law to obtain the Bankruptcy Court Order as promptly as practicable, and without limiting the foregoing, if an Action is threatened or instituted by any Person opposing the 9019 Motion or otherwise challenging the validity or legality, or seeking to restrain the consummation, of the transactions contemplated by this Agreement or the Bankruptcy Court Order, each Party shall, and shall cause its respective Affiliates to, use their commercially reasonable best efforts to avoid, resist, resolve or, if necessary, and defend to effectuate this Agreement and consummate the transactions hereby.  If the 9019 Motion is not approved by entry of the Bankruptcy Court Order or if the Bankruptcy Court Approval is precluded from becoming a Final Order, (a) there will be no effect on, adjustment to, or impairment of, in any way, the validity and enforceability of the remainder of this Agreement, and the other transactions contemplated hereby, all of which shall remain in full force and effect and (b) each Party shall, and shall cause its respective Affiliates to, use their best efforts to seek the allowance of the HMIT Class 10 Interest in a substantially similar amount and on substantially similar terms as set forth in <u>Section 4</u> to the fullest extent possible so as to give effect to the original intent of the Parties as closely as possible.

       19.    <u>Fees and Expenses</u>.  Whether or not the transactions contemplated hereby are consummated or the Bankruptcy Court Order is obtained, and except as otherwise expressly provided in this Agreement, each Party will bear its respective fees, costs and expenses (including legal, accounting and other professional fees) incurred in connection with the preparation, negotiation, execution and performance of this Agreement or the transactions contemplated hereby, including with respect to each Party's respective obligations pursuant to <u>Section 18</u>.  Notwithstanding the foregoing, if any Party hereto, any Highland Released Party, or any HMIT Released Party brings an Action to enforce or interpret the terms and provisions of this Agreement, the prevailing Person in that Action shall be entitled to have and recover from the non-prevailing Person all such fees, costs and expenses (including all court costs and reasonable attorneys' fees) as the prevailing Person may suffer or incur in the pursuit or defense of such action or proceeding.

000921

HCMLPHMIT00002709

20.   <u>Entire Agreement; No Other Representations</u>.   **THIS AGREEMENT CONTAINS THE ENTIRE AGREEMENT BETWEEN THE PARTIES AND NO RIGHTS ARE CREATED IN FAVOR OF ANY PERSON OTHER THAN AS SPECIFIED OR EXPRESSLY SET FORTH IN THIS AGREEMENT. THERE ARE NO REPRESENTATIONS CONDITIONS WARRANTIES STATEMENTS OR UNDERSTANDINGS COLLECTIVELY <u>REPRESENTATIONS</u> EITHER ORAL OR WRITTEN BETWEEN THE PARTIES OTHER THAN THOSE EXPRESSLY SET FORTH IN THIS AGREEMENT. THE PARTIES EXPRESSLY AGREE THAT THEY HAVE NOT BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY ANY REPRESENTATIONS NOT SET FORTH IN THIS AGREEMENT AND THE PARTIES EXPRESSLY AGREE THAT THEY HAVE NOT RELIED ON ANY REPRESENTATIONS NOT EXPRESSLY SET FORTH IN THIS AGREEMENT. THE PARTIES EXPRESSLY AGREE THAT THEY ARE ENTERING INTO THIS AGREEMENT RELYING SOLELY ON THEIR OWN UDGMENT AND NOT ON ANY REPRESENTATIONS BY ANY PARTY EXCEPT FOR THOSE REPRESENTATIONS EXPRESSLY SET FORTH IN THIS AGREEMENT. THE PARTIES AGREE THAT REPRESENTATIONS NOT EXPRESSLY SET FORTH IN THIS AGREEMENT SHALL NOT BE USED IN THE INTERPRETATION OR CONSTRUCTION OF THIS AGREEMENT AND NEITHER THE HMIT RELEASED PARTIES NOR THE HIGHLAND RELEASED PARTIES SHALL HAVE ANY LIABILITY FOR ANY CONSE UENCES ARISING AS A RESULT OF ANY REPRESENTATIONS NOT SET FORTH IN THIS AGREEMENT**.

21.   <u>Agreement and Release Knowing and Voluntary</u>.   The Parties acknowledge that they have considered this Agreement with their respective attorneys and have carefully read this Agreement, that it has been fully explained by their attorneys, and that they have had a reasonable opportunity to consider this Agreement. The Parties further represent that they know and fully understand the contents of this Agreement, that they intend to be legally bound by this Agreement and the releases and covenants contained herein, and that they are signing this Agreement, including the release provisions herein, voluntarily and of their own free will and without coercion, and with the benefit of advice of counsel.

22.   <u>Cooperation</u>.   The Parties agree to perform any services or actions reasonably necessary to carry out the terms and conditions of this Agreement or the transactions contemplated hereby, including the execution and delivery of reasonable additional documents, instruments, conveyances and/or assurances, in good faith, and to reasonably communicate and cooperate with one another in this regard. For the avoidance of doubt, nothing in this Section shall obligate the Highland Entities to assist the HMIT Entities in any way with respect to the Kirschner Claims, including the prosecution thereof.

23.   <u>Governing Law</u>.   This Agreement shall be construed pursuant to and governed by the laws of the State of Delaware (substantive and procedural) without reference to principles of conflicts of law that would result in the application of any other State's laws.

24.   <u>Jurisdiction/Venue</u>.   The Parties hereby irrevocably submit to the jurisdiction and venue of the Bankruptcy Court with respect to any Action arising out of or related to this Agreement or the subject matter hereof; if (and only if) the Bankruptcy Court lacks personal or

000922

HCMLPHMIT00002710

subject matter jurisdiction to adjudicate an Action arising out of or related to this Agreement or the subject matter hereof, then the Parties irrevocably submit to the jurisdiction and venue of the United States District Court for the Northern District of Texas.

25.    <u>No Admissions</u>.  All Parties acknowledge and agree that the matters set forth in this Agreement constitute the settlement and compromise of disputed Claims and that this Agreement shall not constitute the admission of any fact or liability by any of them regarding any Claim, including the Claims released hereunder, and neither the terms hereof, nor the fact of this Agreement itself, shall be evidence of any kind in any Action, other than an Action to enforce the terms of the Agreement or any instrument executed in connection herewith or any claim for damages or other relief for breach of any representation or warranty contained herein or in any instrument executed in connection herewith.

26.    <u>Other Provisions</u>.

(a)    No representation, inducement, agreement, promise or understandings altering, modifying, amending, taking from or adding to, the terms and conditions hereof shall have any force or effect unless the same is in writing and validly executed by each of the Parties hereto.

(b)    The waiver by any Party of any breach of, or default under, any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach or default; provided, however, that for any such waiver to be enforceable, it shall be in writing and executed by the non-breaching Party.

(c)    The headings contained in this Agreement are for convenience only and shall in no way restrict or otherwise affect the construction of the provisions hereof.

(d)    The Parties shall each execute all documents and perform all acts necessary and proper to effectuate the terms of this Agreement.

27.    <u>Notices</u>.  All notices required or permitted to be provided hereunder shall be afforded to the respective parties to and through their counsel, and shall be transmitted simultaneously by electronic mail (with PDF attachments, as necessary) and by telefax, addressed as follows:

To the Highland Entities:

**PACHULSKI STANG ZIEHL AND  ONES LLP**
Jeffrey N. Pomerantz
John A. Morris
10100 Santa Monica Boulevard
Los Angeles, California 90067-4003
310.277.6910
jpomerantz@pszjlaw.com
jmorris@pszjlaw.com

To the HMIT Entities:

000923
HCMLPHMIT00002711


**KELLY HART PITRE**
Louis M. Phillips
Amelia Hurt
301 Main Street, Suite 1600
225.381.9643
Louis.Phillips@Kellyhart.com
Amelia.Hurt@Kellyhart.com

28.     <u>Severability</u>. Should any term, provision or paragraph of this Agreement be determined to be illegal or void or of no force and effect, the balance of the Agreement shall survive.  The invalidity or unenforceability of any provision of this Agreement shall not affect the validity and enforceability of any other provision of this Agreement.

29.     <u>Interpretive Provisions</u>. Unless the express context otherwise requires: (a) the words "hereof," "herein" and "hereunder" and words of similar import, when used in this Agreement, shall refer to this Agreement as a whole and not to any particular provision of this Agreement; (b) words defined in the singular shall have a comparable meaning when used in the plural, and vice versa; (c) the words "Dollars" and "$" mean U.S. dollars; (d) references herein to a specific Section, Subsection, Recital, Schedule or Exhibit shall refer, respectively, to Sections, Subsections, Recitals, Schedules or Exhibits of this Agreement; (e) wherever the word "include," "includes" or "including" is used in this Agreement, it shall be deemed to be followed by the words ",without limitation,"; (f) references herein to any gender shall include each other gender; (g) references herein to any Person shall include such Person's heirs, executors, personal representatives, administrators, successors and assigns; provided, however, that nothing contained in this clause (g) is intended to authorize any assignment or transfer not otherwise permitted by this Agreement; (h) with respect to the determination of any period of time, the word "from" means "from and including" and the words "to" and "until" each means "to but excluding"; (i) the word "or" shall be disjunctive but not exclusive; (j) the headings contained in this Agreement are intended solely for convenience and shall not affect the rights of the Parties; and (k) if the last day for the giving of any notice or the performance of any act required or permitted under this Agreement is a day that is not a Business Day, then the time for the giving of such notice or the performance of such action shall be extended to the next succeeding Business Day.

<p align="center">[<em>Signature page follows</em>]</p>

000924

HCMLPHMIT00002712

    IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first written above.

**HUNTER MOUNTAIN INVESTMENT TRUST**

By      /s/ Mark Patrick
       Name:     Mark Patrick
       Title:      Administrator
       Date:      May 19, 2025

**BEACON MOUNTAIN LLC**

By      /s/ Mark Patrick
       Name:     Mark Patrick
       Title:      President
       Date:      May 19, 2025

**RAND ADVISORS  LLC**

By      /s/ Mark Patrick
       Name:     Mark Patrick
       Title:      President
       Date:      May 19, 2025

**RAND PE FUND I  LP**
By: Rand PE Fund Management, LLC, its General Partner

By      /s/ Mark Patrick
       Name:     Mark Patrick
       Title:      President
       Date:      May 19, 2025

**RAND PE FUND MANAGEMENT  LLC**

By      /s/ Mark Patrick
       Name:     Mark Patrick
       Title:      President
       Date:      May 19, 2025

000925

HCMLPHMIT00002713

**ATLAS IDF  LP**
By: Atlas IDF GP, LLC, its General Partner


By     _____/s/ Mark Patrick_____
      Name:     Mark Patrick
      Title:     President
      Date:     May 19, 2025

**ATLAS IDF GP  LLC**


By     _____/s/ Mark Patrick_____
      Name:     Mark Patrick
      Title:     President
      Date:     May 19, 2025


**HIGHLAND CAPITAL MANAGEMENT  L.P.**


By     _____/s/ James P. Seery, Jr._____
      Name:     James. P. Seery, Jr.
      Title:     Chief Executive Officer
      Date:     May 19, 2025


**HIGHLAND CLAIMANT TRUST**


By     _____/s/ James P. Seery, Jr._____
      Name:     James P. Seery, Jr.
      Title:     Claimant Trustee
      Date:     May 19, 2025

**HIGHLAND LITIGATION SUB  TRUST**


By     ___/s/ Marc S. Kirschner_____
      Name:     Marc S. Kirschner
      Title:     Litigation Trustee
      Date:     May 19, 2025

000926
HCMLPHMIT00002714

**HIGHLAND INDEMNITY TRUST**


By   ___/s/ James P. Seery, Jr._____
      Name:    James P. Seery, Jr.
      Title:     Indemnity Trust Administrator
      Date:    May 19, 2025

000927
HCMLPHMIT00002715

# EXHIBIT 2

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**To:** "John A. Morris" <jmorris@pszjlaw.com>
**Subject:** RE: Highland: Confidentiality Agreement (draft)
**Date:** Wed, 5 Mar 2025 13:23:52 +0000
**Importance:** Normal
**Inline-Images:** image003.png

---

Appreciate it.

**Louis M. Phillips**
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

louis.phillips@kellyhart.com
www.kellyhart.com

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18
U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the
use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually
receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the
communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225)
381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be
used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose
of marketing or recommending to any other party any transaction or other matter.

**From:** John A. Morris <jmorris@pszjlaw.com>
**Sent:** Wednesday, March 5, 2025 7:22 AM
**To:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Subject:** Re: Highland: Confidentiality Agreement (draft)

**EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution
when opening attachments, following links or responding to this message.**

Thanks, Louis.

HCMLPHMIT00000015

I hope your mother is comfortable and stable. I can relate to caring for elderly parents . . .

Anyway, I'll wait to hear from you.

Chat soon,

John

Sent from my iPhone

On Mar 5, 2025, at 8:16 AM, Louis M. Phillips <Louis.Phillips@kellyhart.com> wrote:

Thank you John,

I have fallen a bit behind.  After I talked to you from Wisconsin my mother had to be hospitalized and I had to rearrange my travel to get back to LA.  She got home yesterday evening, but still involved with getting home health, sitters, etc.

I hope to get back at things close to full time by tomorrow.  To be sure, my clients are pushing me.

**Louis M. Phillips**
*Partner*

<image001.png>

KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

louis.phillips@kellyhart.com
www.kellyhart.com

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.



**From:** John A. Morris <jmorris@pszjlaw.com>
**Sent:** Tuesday, March 4, 2025 4:32 PM
**To:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Subject:** Highland: Confidentiality Agreement (draft)

**EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.**

Louis,

Following up, to aid our discussions, attached is a draft Confidentiality Agreement under which Highland would consider providing confidential information.

We look forward to hearing from you on this and related matters.

Regards,

John
**John A. Morris**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 212.561.7760
Tel: 212.561.7700 | Fax: 212.561.7777
jmorris@pszjlaw.com
vCard | Bio | LinkedIn

<image004.jpg>
Los Angeles | New York | Wilmington, DE | Houston | San Francisco

**EXHIBIT**

000932

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**To:** "John A. Morris" <jmorris@pszjlaw.com>
**Subject:** RE: Slight interruption
**Date:** Thu, 13 Mar 2025 21:35:13 +0000
**Importance:** Normal
**Inline-Images:** image006.png; image007.jpg; image008.jpg; image001.png

---

Slight but nothing big.  Hopefully by first of week

**Louis M. Phillips**
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

louis.phillips@kellyhart.com
www.kellyhart.com

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

---

**From:** John A. Morris <jmorris@pszjlaw.com>
**Sent:** Thursday, March 13, 2025 4:26 PM
**To:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Subject:** RE: Slight interruption

**EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.**

---

Wow.

000933

You can't catch a break.

I hope there's no injuries.

Chat soon.

---

**From:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Sent:** Thursday, March 13, 2025 5:10 PM
**To:** John A. Morris <jmorris@pszjlaw.com>
**Subject:** FW: Slight interruption

John,

Please see below.  Hope to finish my draft proposal for my client to review tomorrow. Then as soon as possible to get It to you.

**Louis M. Phillips**
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

louis.phillips@kellyhart.com
www.kellyhart.com

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

---

**From:** Louis Phillips <louis.phillips10505@gmail.com>
**Sent:** Thursday, March 13, 2025 4:09 PM
**To:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Subject:** Slight interruption

HCMLPHMIT00000023

EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.



HCMLPHMIT00000024



**Louis M. Phillips**
*Partner*


KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

*louis.phillips@kellyhart.com*
*www.kellyhart.com*

Licensed to Practice in the State of Louisiana

Confidentiality Notice: The information contained in this email message is protected under the Electronic
Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the
attorney/work product privileges. It is intended only for the use of the individual named above and the privileges
are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other
reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the
communication is strictly prohibited. If you have received this communication in error, please immediately
notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended
to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the

000936

Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

HCMLPHMIT00000026

**EXHIBIT**

000938

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**To:** "John A. Morris" <jmorris@pszjlaw.com>
**Cc:** "Amelia L. Hurt" <Amelia.Hurt@kellyhart.com>
**Subject:** RE: Confidentiality Agreement - M. Patrick and Related Entities.001(Highland Draft 03.04.2025).docx
**Date:** Tue, 18 Mar 2025 16:03:57 +0000
**Importance:** Normal
**Inline-Images:** image003.png

---

Sure.  Take care.

**Louis M. Phillips**
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

*louis.phillips@kellyhart.com*
*www.kellyhart.com*

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

---

**From:** John A. Morris <jmorris@pszjlaw.com>
**Sent:** Tuesday, March 18, 2025 10:52 AM
**To:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Cc:** Amelia L. Hurt <Amelia.Hurt@kellyhart.com>
**Subject:** Re: Confidentiality Agreement - M. Patrick and Related Entities.001(Highland Draft 03.04.2025).docx

HCMLPHMIT00000028

EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.

Thank you, Louis.

I'm in LA for a deposition today but will be in touch shortly, hopefully tomorrow.

Chat soon.

John

Sent from my iPhone


On Mar 18, 2025, at 8:18 AM, Louis M. Phillips <Louis.Phillips@kellyhart.com> wrote:


John,

Please see a very minor set of proposed revisions.  While I am finalizing our proposal with my clients, a couple of questions:  (i) Do you have a proposed form of joinder as described in Section 4?  (ii) is it sufficient as far as you are concerned for me to send you via email a list of Representatives as defined in Section 4 for your review and approval?



**Louis M. Phillips**
*Partner*

<image003.png>

KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

louis.phillips@kellyhart.com
www.kellyhart.com

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.


<Confidentiality Agreement - M. Patrick and Related Entities.001(Highland Draft 03.04.2025).docx>


HCMLPHMIT00000029

**EXHIBIT**

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**To:** "John A. Morris" <jmorris@pszjlaw.com>
**Cc:** "Jeff Pomerantz" <jpomerantz@pszjlaw.com>, "Amelia L. Hurt"
<Amelia.Hurt@kellyhart.com>
**Subject:** RE: Highland: NDA w/ Patrick and Related Entities
**Date:** Wed, 19 Mar 2025 17:55:25 +0000
**Importance:** Normal
**Inline-Images:** image004.jpg; image001.png

---

John,

One thing I noticed, and should mention up front:  Re #3 on Exhibit A, if we get to a settlement then
HMIT can withdraw its appeal, but we have no influence with respect to Dugaboy. Just mentioning up
front. I will get back with you.

**Louis M. Phillips**
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

*louis.phillips@kellyhart.com*
*www.kellyhart.com*

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18
U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the
use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually
receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the
communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225)
381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be
used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose
of marketing or recommending to any other party any transaction or other matter.

---

**From:** John A. Morris <jmorris@pszjlaw.com>
**Sent:** Wednesday, March 19, 2025 12:35 PM
**To:** Louis M. Phillips <Louis.Phillips@kellyhart.com>

HCMLPHMIT00000030

**Cc:** John Morris; jpomerantz@pszjlaw.com; Amelia L. Hurt; Amelia.Hurt@kellyhart.com
**Subject:** Highland: NDA w/ Patrick and Related Entities

**EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.**

Louis,

After accepting all your changes, we made a few further changes and added the Exhibits, all of which are reflected in the blackline.

If this version is acceptable, please have it signed and sent back to us at your earliest convenience and we'll promptly send a countersigned copy.

Let's chat to discuss any questions you may have or how you envision this proceeding.

I look forward to speaking with you.

Regards,

John
**John A. Morris**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 212.561.7760
Tel: 212.561.7700 | Fax: 212.561.7777
jmorris@pszjlaw.com
vCard | Bio | LinkedIn



Los Angeles | New York | Wilmington, DE | Houston | San Francisco

000943

# EXHIBIT

# CONFIDENTIALITY AGREEMENT

This CONFIDENTIALITY AGREEMENT (this "**Agreement**") is entered into as of March 18, 2025 (the "**Effective Date**") by and among Highland Capital Management, L.P., a Delaware limited partnership ("**Highland**" or the "**Disclosing Party**"), on the one hand, and Mark Patrick, a United States citizen and resident of Dallas, Texas ("**Mr. Patrick**"), Hunter Mountain Investment Trust, a Delaware statutory trust ("**Hunter Mountain**"), Charitable DAF Holdco, Ltd., a Cayman Islands exempted company ("**DAF Holdco**"), CDH GP, Ltd., a Cayman Islands exempted company ("**DAF GP**"), Charitable DAF Fund, L.P., a Cayman Islands exempted limited partnership ("**DAF Fund**"), and CLO Holdco, Ltd., a Cayman Islands exempted company ("**CLO Holdco**", and together with DAF Holdco, DAF GP and DAF Fund, the "**DAF Entities**"), Rand Advisors, LLC, a Delaware limited liability company ("**Rand Advisors**"), Rand PE Fund I, LP, a Delaware series limited partnership ("**Rand PE Fund**"), Rand PE Fund Management, LLC, a Delaware limited liability company ("**Rand GP**"), Atlas IDF, LP, a Delaware limited partnership ("**Atlas IDF**"), Atlas IDF GP, LLC, a Delaware limited liability company ("**Atlas GP**" and together with Rand Advisors, Rand PE Fund, Rand GP and Atlas IDF, the "**Rand Entities**", and the Rand Entities together with Mr. Patrick, Hunter Mountain and the DAF Entities, the "**Recipients**"), on the other hand.  Highland and the Recipients are sometimes referred to herein individually as a "**Party**" and collectively as the "**Parties**."

## Recitals

WHEREAS, Mr. Patrick hereby represents and warrants that he is a control person for each of Hunter Mountain, the DAF Entities and the Rand Entities;

WHEREAS, there are several active litigations to which Highland or one of its affiliates, on the one hand, and one or more of the Recipients, on the other hand, are parties, including, without limitation, the matters set forth on Exhibit A hereto (collectively, the "**Pending Litigations**");

WHEREAS, the Parties desire to enter into good faith settlement discussions in an effort to reach a mutually acceptable global resolution to the Pending Litigations and all potential claims and causes of action against each other (the "**Potential Settlement**");

WHEREAS, in connection with negotiating the Potential Settlement, it is anticipated that Highland will provide the Recipients with certain Confidential Information (as hereinafter defined); and

WHEREAS, as a condition to Highland providing Recipients with any such Confidential Information, the Recipients agree to the terms and conditions set forth in this Agreement.

## Agreement

NOW, THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and agreed, the Parties, intending to be legally bound, hereby agree as follows:

HCMLPHMIT00000032

1.   **Representations and Warranties**

(a)   Each Party hereby represents and warrants to the other Parties as follows:

(i)   <u>Existence and Good Standing</u>.  Such Party is a legal entity duly organized, validly existing and, to the extent applicable in such jurisdiction, in good standing under the Laws (as hereinafter defined) of the jurisdiction in which it is incorporated or formed.  Such Party has all requisite corporate or similar right, power, authority and capacity to own, lease and operate the properties and assets it owns, leases and operates.  Each Party is qualified to do business as a foreign entity in each jurisdiction in which its ownership of property or the conduct of its business as now conducted requires it to qualify.

(ii)   <u>Authority; Enforceability</u>. Such Party has the full power and authority to execute this Agreement and to perform its obligations under this Agreement.  The execution, delivery and performance of this Agreement have been duly and validly authorized by all required action on behalf of such Party in accordance with its respective Organizational Documents (as hereinafter defined) and applicable Law.  This Agreement constitute the valid and binding obligations of, and enforceable against, such Party.

(iii)   <u>No Violations</u>.  The execution and delivery by such Party of this Agreement, the performance and compliance with the terms and conditions hereof and thereof by such Party, and the performance by such Parent of its obligations contemplated hereby, in each case, will not (with or without notice or passage of time, or both):

(1) violate, conflict with, result in a breach of or constitute a default under any of the provisions of the Organizational Documents of such Party; or

(2) breach, violate or conflict with any provision of any Law or Permit applicable to such Party.

(iv)   <u>Legal Proceedings</u>.  There are no judicial, administrative or arbitral actions, suits, hearings, inquiries, charges, investigations, administrative proceedings, grievances or formal complaints or other proceedings (public or private) commenced, brought, conducted or heard before, or otherwise involving, any Governmental Entity or arbitrator, in each case, pending nor threatened that (i) challenge the validity or enforceability of Party's obligations under this Agreement or (b) seek to prevent or delay, or otherwise would reasonably be expected to adversely affect, the performance by such Party of its obligations hereunder.

(b)   Each Recipient hereby represents and warrants to Highland as follows:

(i) None of James Dondero, nor any Person directly or indirectly owned or controlled by Mr. Dondero (including, without limitation, Dugaboy Investment Trust) nor or any attorney, agent, employee, or representative engaged or working for benefit of Mr. Dondero nor any Person directly or indirectly owned or controlled by him (collectively, the "**Dondero Related Parties**") directly or indirectly owns any interest in, or directly or indirectly has any control over, such Recipient, including, without limitation, as the result of any written or oral contract, agreement, arrangement or obligation.

2

000946

HCMLPHMIT00000033

(ii)  Such Recipient does not represent and is not acting on behalf of any Dondero Related Party.

(iii)  Such Recipient has no duty or obligation to provide any Confidential Information to any Person not a party to this Agreement, whether through a common or joint interest agreement or otherwise, and is not representing or acting on behalf of any Person with such a duty or obligation.

## 2.     Confidential and Proprietary Nature of the Information

Recipients acknowledge the confidential and proprietary nature of the Confidential Information, agree to hold and keep the Confidential Information in strict confidence as provided in this Agreement, agree that the use of any such Confidential Information is expressly limited to the pursuit of a Potential Settlement and shall not be used for any other purpose or in any other manner except as expressly provided in this Agreement, and otherwise agree to each and every restriction and obligation in this Agreement.

## 3.     Confidential Information

As used in this Agreement, the term "**Confidential Information**" means and includes (a) any and all of the following items that will be disclosed to any Recipient or any of their respective Representatives (as hereinafter defined) by or on behalf of Highland, whether orally or in writing and without regard to whether Highland has specifically designated such item as confidential, proprietary or non-public: any and all confidential, proprietary or non-public information concerning the business or affairs of Highland or any of its affiliates or related accounts, or other Persons (as hereinafter defined) (which includes, for the avoidance of doubt and without limitation, Highland Claimant Trust, Highland Litigation Sub-Trust, Highland Indemnity Trust, each of their and Highland's direct and indirect subsidiaries, and each of their respective affiliates, and its and their respective parent entities, beneficiaries, members, shareholders, owners, creditors, trustees, oversight boards, directors, managers, officers, employees, agents, advisors and representatives (collectively, the "**Highland Related Parties**")), including, without limitation, any written or oral information, reports and data concerning financial statements, assets, liabilities, indemnity and other obligations, cash flow, income, and expenses; past, current or planned investment or portfolio information; contracts and agreements; know-how, inventions and ideas, whether past, current or planned; partner, beneficiary, owner or investor lists; partner, beneficiary, owner or investor information; business plans; entity structure details; all compliance-related reports, records and information; and any other information, however documented, that is proprietary or non-public or is a trade secret within the meaning of applicable state trade secret Law, and (b) any and all statements or representations made in the course of discussing, negotiating or evaluating a Potential Settlement, including, without limitation, the terms of any Potential Settlement and the fact that (i) Confidential Information has been disclosed to Recipient and (ii) any discussions or negotiations are taking place concerning a Potential Settlement.

To the extent that any Confidential Information includes information or materials subject to the attorney-client privilege, work-product doctrine, or any other applicable privilege concerning pending or threatened legal proceedings or governmental investigations, the Parties understand and agree that they have a commonality of interest with respect to such matters, and it

000947
HCMLPHMIT00000034

is their desire, intention, and mutual understanding that the sharing of such information or materials is not intended to, and shall not, waive or diminish in any way the confidentiality of such information or material or its continued protection under the attorney-client privilege, work-product doctrine, or other applicable privilege. Accordingly, all Confidential Information disclosed by or on behalf of Highland that is entitled to protection under the attorney-client privilege, work-product doctrine, or other applicable privilege shall remain entitled to such protection under these privileges and this Agreement.

## 4.    Restricted Use of Confidential Information

Recipients agree that the Confidential Information (a) shall be kept strictly confidential by each Recipient and (b) without limiting the foregoing, shall not be disclosed by or on behalf of any Recipient to any Person (as hereinafter defined) except as otherwise expressly permitted by this Agreement. It is understood and the Recipients agree that Confidential Information may only be disclosed to Mr. Patrick and such specific legal counsel, accountants and financial advisors of the Recipients to whom such disclosure has been consented to in writing by Highland in its sole discretion (which consent may be given via email) (collectively "**Representatives**") and who (i) require such Confidential Information for the purpose of evaluating, negotiating or consummating a Proposed Settlement (ii) are informed by Recipient of the confidential nature of the Confidential Information and the obligations set forth in this Agreement, and (iii) execute a written joinder in the form annexed hereto as Exhibit B pursuant to which the Representative agrees to be bound to this Agreement as if they were an original Party hereto, with such joinder including, without limitation, a representation and warranty that such Representative (1) does not currently represent any Dondero Related Party and (2) has no duty or obligation to provide any Confidential Information to any Person not a party to this Agreement, whether through a common or joint interest agreement or otherwise, and does not represent any Person with such a duty or obligation. Recipients further agree that Recipients and their Representatives shall not use any of the Confidential Information to the detriment of Highland or any Highland Related Party or for any reason or purpose other than evaluating, negotiating or consummating a Proposed Settlement. Recipients shall enforce this Agreement as to its Representatives and take such action, legal or otherwise, to the extent necessary to cause them to comply with this Agreement and thereby prevent any disclosure of Confidential Information by any of its Representatives (including, without limitation, all actions that any Recipient would take to protect its own confidential information).

Without limiting the generality of the foregoing and for the avoidance of doubt, the Recipients and their Representatives shall not disclose or refer to any Confidential Information to (a) subject to Section 5 below, any Governmental Entity (as hereinafter defined), including, without limitation, in any pleadings or submissions, or (b) any Dondero Related Party. The Parties acknowledge that it is their collective intent that no Confidential Information disclosed hereunder may be examined in any proceeding of a Governmental Entity (or any discovery relating to any such proceeding), and all Confidential Information shall be entitled to all protections applicable under Federal Rule of Evidence 408 and any other protections afforded to settlement and compromise communications under any other applicable Law.

4

000948
HCMLPHMIT00000035

**5.     Legally Compelled Disclosure**

If any Recipient or any of its Representatives becomes compelled by Law (whether by oral questions, interrogatories, requests for information or documents, subpoena, civil or criminal investigative demand, or similar process) to make any disclosure that is prohibited or otherwise constrained by this Agreement, such Recipient or its Representative, as the case may be, shall provide Highland with immediate notice of such legal proceedings, including all related documentation, so Highland may (a) seek an appropriate protective order or other appropriate relief, or (b) waive compliance with the provisions of this Agreement.  In the absence of a protective order or Recipients receiving a written waiver from Highland, Recipients or their Representatives are permitted (with Highland's cooperation but at Recipient's expense) to disclose that portion (and only that portion) of the Confidential Information that Recipient or its Representative is legally compelled by an order of an applicable Governmental Entity of competent jurisdiction to disclose; provided, however, that Recipient and its Representatives must use best efforts to obtain reliable assurance that confidential treatment will be accorded by any Person to whom any Confidential Information is so disclosed.

**6.     Return or Destruction of Confidential Information**

If Highland notifies Recipients that it wishes Recipients to return all Confidential Information, then Recipients (i) shall promptly deliver to Highland all documents or other materials disclosed by or on behalf of Highland to Recipient or its Representatives constituting Confidential Information, together with all copies and summaries thereof in the possession or under the control of Recipients or their Representatives, and (ii) will destroy materials generated by Recipients or their Representatives that include or refer to any part of the Confidential Information, without retaining any copies, including, without limitation, any electronically stored copies or attachments to emails, of any such documents or materials.  Written notice of return or destruction shall constitute a valid termination of access to Confidential Information and shall be deemed to have been given at the time Highland sends such notice.  Such notice may be sent in any manner reasonably calculated to notify Recipients of the termination.

**7.     No Obligation to Negotiate a Potential Settlement**

None of the Parties shall have rights or obligations of any kind whatsoever with respect to any Potential Settlement by virtue of this Agreement other than for the matters specifically agreed to herein.  Without limiting the preceding sentence, nothing in this Agreement requires any Party to enter into any Potential Settlement or to negotiate the same for any specified period of time or on any specific terms.

**8.     No Representations or Warranties**

Highland shall have no obligation to provide any information—confidential or otherwise—to the Recipients and retains the right to determine, in its sole discretion, what information, if any, it wishes to make available to Recipients, and neither Highland nor any Highland Related Party makes any representation or warranty (express or implied) concerning the completeness or accuracy of the Confidential Information.

000949

HCMLPHMIT00000036

9.    **Miscellaneous**

(a)    <u>Modification</u>.  This Agreement may only be modified or waived by a separate writing signed by the Party or Parties expressly modifying or waiving this Agreement.

(b)    <u>Waiver</u>.  Neither the failure nor any delay by any Party in exercising any right, power, or privilege under this Agreement will operate as a waiver of such right, power, or privilege, and no single or partial exercise of any such right, power, or privilege will preclude any other or further exercise of such right, power, or privilege or the exercise of any other right, power, or privilege.

(c)    <u>Certain Definitions</u>.

(i)  The term "**Governmental Entity**" means any federal, national, state, foreign, provincial, local or other government or any governmental, regulatory, administrative or self-regulatory authority, agency, bureau, board, commission, court, judicial or arbitral body, department, political subdivision, tribunal or other instrumentality thereof, including any fiscal intermediary or administrative contractor acting on behalf of any of the foregoing.

(ii)  The term "**Law**" means any law, rule, regulation, statute, code, ordinance, decree or other restriction of any Governmental Entity or any order, injunction, judgment, decree, ruling, writ, assessment or award of a Governmental Entity.

(iii)  The term "**Organizational Documents**" means certificates of incorporation, bylaws, certificates of formation, certificates of trust, limited liability company agreements, limited liability partnership agreements, partnership or limited partnership agreements, trust agreements or other similar formation or governing documents of any Person, in each case, as amended, restated or otherwise modified to date.

(iv)  The term "**Person**" means any individual, corporation (including any non-profit corporation), general or limited partnership, limited liability company, joint venture, estate, trust, association, organization, labor union, any other business entity, or a Governmental Entity.

(d)    <u>Severability</u>.  The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provisions of this Agreement, which shall remain in full force and effect.  If any of the terms, covenants or provisions of this Agreement are determined to be unenforceable by reason of its extent, duration, scope or otherwise, then the Parties contemplate and intend that the authority making such determination shall reduce such extent, duration, scope or other provision and enforce them in their reduced form for all purposes contemplated by this Agreement.

(e)    <u>Breach</u>.  Recipients agree that Highland will be irreparably injured by a breach of this Agreement by any Recipient or its Representatives, that monetary remedies will be inadequate to protect Highland against any actual or threatened breach of this Agreement by any Recipient or by its Representatives, and that Highland shall be entitled to an injunction or other equitable relief as a remedy for any breach as a matter of right and without the necessity of having to post a bond. Such remedy shall not be deemed to be the exclusive remedy for a breach of this Agreement, but

6

000950

HCMLPHMIT00000037

shall be in addition to all other remedies available at law or equity. The non-prevailing Party shall pay the other Party's costs and expenses in any action to enforce the terms of this Agreement.

(f)     <u>Liability and Indemnity</u>. Recipients shall, jointly and severally, be liable to and shall indemnify and hold Highland and the Highland Related Parties harmless from and against any and all claims, suits, losses, damages, costs or expenses, including reasonable attorney fees, incurred or suffered by Highland or any Highland Related Party as a result of any Recipient or its Representatives violation of this Agreement, including, without limitation, using or disclosing any Confidential Information other than in accordance with this Agreement, whether such use or disclosure is performed negligently or otherwise.

(g)     <u>Notices</u>. All notices, requests, demands, claims, and other communications hereunder shall be in writing. Any notice, request, demand, claim or other communication hereunder shall be deemed duly delivered: (a) four (4) business days after it is sent by registered or certified mail, return receipt requested, postage prepaid; (b) one (1) business day after it is sent for next business day delivery via a reputable nationwide overnight courier service; (c) when sent, if emailed on a business day; and (d) the next business day following the day on which the email is sent if emailed on a day that is not a business day, in each case to the intended recipient as set forth below:

If to Highland:        Highland Capital Management, L.P.
                       100 Crescent Court, Suite 1850
                       Dallas, Texas 75201
                       Attention: James P. Seery, Jr.
                       Email: jpseeryjr@gmail.com AND notices@highlandcapital.com

                       With copies to:

                       Pachulski Stang Ziehl & Jones LLP
                       780 3rd Avenue #34
                       New York, New York 10017
                       Attention: John A. Morris
                       Email: jmorris@pszjlaw.com

If to Recipients:      c/o Mark Patrick
                       6716 Glenhurst Dr.
                       Dallas, Texas 75254
                       Email: mpatrick@dafholdco.com

                       With copies to:

                       Kelly Hart & Pitre
                       301 Main Street Suite 1600
                       Baton Rouge, Louisiana 70801
                       Attention: Louis M. Phillips
                       Email: Louis.Phillips@kellyhart.com

000951
HCMLPHMIT00000038

(h)     <u>Governing Law; Jurisdiction</u>.  This Agreement shall be interpreted and construed in accordance with the laws of the State of Delaware, without regard to conflict of laws provisions. Each Party hereby irrevocably submits and acknowledges and recognizes the exclusive jurisdiction of the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (which court, for purposes of this Agreement, is the only court of competent jurisdiction), over any suit, action or other proceeding arising out of, under or in connection with this Agreement or its subject matter.  Each Party irrevocably consents to service of process in any action or proceeding arising out of or relating to this Agreement in the manner provided for notices in <u>Section 9(g)</u> above. Nothing in this Agreement shall affect the right of any Party to serve process in any manner permitted by law.

(i)     <u>Execution of Agreement</u>.  This Agreement may be executed in one or more counterparts, each of which will be deemed to be an original copy of this Agreement, and all of which, when taken together, shall be deemed to constitute one and the same agreement.  The exchange of copies of this Agreement and of signature pages by email shall constitute effective execution and delivery of this Agreement as to the Parties and may be used in lieu of the original Agreement for all purposes.  Signatures of the Parties transmitted by email shall be deemed to be their original signatures for any purpose whatsoever.

(j)     <u>Headings</u>.  The headings of the sections of this Agreement are inserted for convenience of reference only and shall not control or affect the meaning or construction of any of the terms of this Agreement in any manner.

(k)     <u>Construction</u>.  This Agreement has been fully negotiated by the Parties. Accordingly, in interpreting this Agreement, no weight shall be placed on which Party to this Agreement or its counsel drafted the provision being interpreted.

[SIGNATURES ON FOLLOWING PAGE]

8

000952

HCMLPHMIT00000039

IN WITNESS WHEREOF, the Parties have executed this Agreement to be effective as of the Effective Date.

**HIGHLAND:**

HIGHLAND CAPITAL MANAGEMENT, L.P.

By: _____
Name: James P. Seery, Jr.
Title: Chief Executive Officer

**RECIPIENTS:**

_____
MARK PATRICK

HUNTER MOUNTAIN INVESTMENT TRUST

By: _____
Name: Mark Patrick
Title: Administrator

CHARITABLE DAF HOLDCO, LTD.

By: _____
Name: Mark Patrick
Title: Director

CDH GP, LTD.

By: _____
Name: Mark Patrick
Title: Director

000953

HCMLPHMIT00000040

CHARITABLE DAF FUND, L.P.
By: CDH GP, Ltd., its General Partner

By: _____
Name: Mark Patrick
Title: Managing Member


CLO HOLDCO, LTD.

By: _____
Name: Mark Patrick
Title: Director


RAND ADVISORS, LLC

By: _____
Name: Mark Patrick
Title: President


RAND PE FUND I, L.P.
By: Rand PE Fund Management, LLC, its General Partner

By: _____
Name: Mark Patrick
Title: President


RAND PE FUND MANAGEMENT, LLC

By: _____
Name: Mark Patrick
Title: President


Type text here


Signature Page to Confidentiality Agreement


000954

HCMLPHMIT00000041

ATLAS IDF, LP
By: Atlas IDF GP, LLC its General Partner

By: _____
Name: Mark Patrick
Title: President

Type text here

ATLAS IDF GP, LLC

By: _____
Name: Mark Patrick
Title: President

SIGNATURE PAGE TO CONFIDENTIALITY AGREEMENT

000955

HCMLPHMIT00000042

**EXHIBIT A**

**PENDING LITIGATION**

1.    DAF/CLOH appeal of Seery Retention Order (21-cv-01585-S)

2.    HMIT appeal of Order denying leave to file Claims Trading Complaint (23-cv-02071-E)

3.    HMIT appeal of Order dismissing Valuation Complaint (24-cv-01531-X)

4.    HMIT appeal of Order staying motion for leave to remove Seery (24-cv-01786)

5.    DAF appeal of decision affirming dismissal of HarbourVest Complaint (24-10880)

4910-0725-4050.6 36027.003

000956

HCMLPHMIT00000043

## EXHIBIT B

## JOINDER TO CONFIDENTIALITY AGREEMENT

This JOINDER TO CONFIDENTIALITY AGREEMENT (this "**Joinder**") is entered into as of _____, _____, 2025 (the "**Effective Date**") by and between Highland Capital Management, L.P., a Delaware limited partnership ("**Highland**"), and _____ (the "**Joining Party**").  Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Confidentiality Agreement (as hereinafter defined).

WHEREAS, reference is made to that certain Confidentiality Agreement as of March 18, 2025 by and among Highland, on the one hand, and Mark Patrick, a United States citizen and resident of Dallas, Texas, Hunter Mountain Investment Trust, a Delaware statutory trust, Charitable DAF Holdco, Ltd., a Cayman Islands exempted company, CDH GP, Ltd., a Cayman Islands exempted company, Charitable DAF Fund, L.P., a Cayman Islands exempted limited partnership, and CLO Holdco, Ltd., a Cayman Islands exempted company, Rand Advisors, LLC, a Delaware limited liability company, Rand PE Fund I, LP, a Delaware series limited partnership, Rand PE Fund Management, LLC, a Delaware limited liability company, Atlas IDF, LP, a Delaware limited partnership, Atlas IDF GP, LLC, a Delaware limited liability company, on the other hand (the "**Confidentiality Agreement**");

WHEREAS, the Joining Party is a Representative of Recipients and desires to receive certain Confidential Information for the sole limited purpose of advising Recipients in connection with its evaluation, negotiation and consummation of a Proposed Settlement; and

WHEREAS, in accordance with Section 4 of the Confidentiality Agreement and as a condition to Highland providing, or permitting Recipients to provide, such Confidential Information to the Joining Party, the Joining Party agrees to the terms and conditions set forth in this Joinder.

NOW, THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and agreed, the parties hereto, intending to be legally bound, hereby agree as follows:

1.      The Joining Party acknowledges that it has received and reviewed a copy of the Confidentiality Agreement.  The Joining Party hereby joins as a Party to, and agrees to be bound by all of the terms, provisions and conditions set forth in, the Confidentiality Agreement as a "Recipient" thereunder, with the same force and effect as if originally named therein as a "Recipient."

2.      Without limiting the generality of the foregoing, the Joining Party hereby (a) makes each of the representations and warranties set forth in Section 1 of the Confidentiality Agreement to Highland and (b) represents and warrants to Highland that such Joining Party (i) does not currently represent any Dondero Related Party and (ii) has no duty or obligation to provide any

000957


HCMLPHMIT00000044

Confidential Information to any Person not a party to this Agreement, whether through a common or joint interest agreement or otherwise, and does not represent any Person with such a duty or obligation.

3.      Each of the terms, provisions and conditions set forth in Section 9 of the Confidentiality Agreement are incorporated herein by reference in their entirety and shall apply to this Agreement *mutatis mutandis*.


IN WITNESS WHEREOF, the parties hereto have executed this Joinder to be effective as of the Effective Date.

**HIGHLAND:**

HIGHLAND CAPITAL MANAGEMENT, L.P.


By: _____
Name: James P. Seery, Jr.
Title: Chief Executive Officer


**JOINING PARTY:**


_____
Name: _____

000958
HCMLPHMIT00000045

**EXHIBIT**

000959

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**To:** "John A. Morris" <jmorris@pszjlaw.com>, "Amelia L. Hurt" <Amelia.Hurt@kellyhart.com>
**Cc:** "Jeff Pomerantz" <jpomerantz@pszjlaw.com>
**Subject:** Re: Confidentiality Agreement
**Date:** Sat, 22 Mar 2025 17:32:58 +0000
**Importance:** Normal
**Inline-Images:** image002.png; image001.jpg; image002(1).png; image001(1).jpg

---

Thank you John. We will be in touch very soon

Louis M. Phillips
On March 22, 2025 at 12:35:38 PM EDT, John A. Morris <jmorris@pszjlaw.com> wrote:

**EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.**

Louis and Amelia,

Attached is a fully executed copy of the Confidentiality Agreement.

Please let us know when you expect to send a proposal.  We are prepared to meet with you and Mark (and any other Representatives who sign the NDA) in Dallas or New York promptly thereafter.

I'm available if you want to discuss anything in the interim.  Otherwise, have a good weekend.

Regards,

John
**John A. Morris**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 212.561.7760
Tel: 212.561.7700 | Fax: 212.561.7777
jmorris@pszjlaw.com
vCard | Bio | LinkedIn



Los Angeles | New York | Wilmington, DE | Houston | San Francisco

---

**From:** jpseeryjr@gmail.com <jpseeryjr@gmail.com>
**Sent:** Saturday, March 22, 2025 11:34 AM
**To:** John A. Morris <jmorris@pszjlaw.com>
**Cc:** David Klos <DKlos@highlandcapital.com>; Tim Cournoyer <TCournoyer@highlandcapital.com>; Jeff Pomerantz <jpomerantz@pszjlaw.com>; Gregory V. Demo <GDemo@pszjlaw.com>; Hayley R. Winograd <hwinograd@pszjlaw.com>; Jordan A. Kroop <Jkroop@pszjlaw.com>
**Subject:** Re: Confidentiality Agreement

 HCMLPHMIT00000046

EXECUTED

Best.  Jim

Jim Seery
631-804-2049
jpseeryjr@gmail.com

---

**From:** John A. Morris <jmorris@pszjlaw.com>
**Date:** Saturday, March 22, 2025 at 10:20 AM
**To:** jpseeryjr@gmail.com <jpseeryjr@gmail.com>
**Cc:** David Klos <DKlos@highlandcapital.com>, Tim Cournoyer
<TCournoyer@highlandcapital.com>, Jeff Pomerantz <jpomerantz@pszjlaw.com>, Gregory V.
Demo <GDemo@pszjlaw.com>, Hayley R. Winograd <hwinograd@pszjlaw.com>, Jordan A. Kroop
<Jkroop@pszjlaw.com>
**Subject:** FW: Confidentiality Agreement

Jim,

Louis sent back a signed NDA.

There is at least one change (the deletion of the word "Dugaboy" from item 3 of Exhibit A, which is fine), but
he didn't send a black line so I'm trying to confirm there is nothing else.

If anyone knows how to compare, please do so.

But send me the signed version in the meantime at your convenience.

Also, it might make sense to dust off the "litigation protections" and conform them to the Patrick parties.
Please let me know if you and Tim want to handle that or if you want us to do so; I'm not sure when we
present them to Louis, but we should be prepared.

I'll be available to talk between 11:30 and 5 pm today.

Chat soon,

John

---

**From:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Sent:** Saturday, March 22, 2025 8:45 AM
**To:** John A. Morris <jmorris@pszjlaw.com>
**Cc:** Amelia L. Hurt <Amelia.Hurt@kellyhart.com>
**Subject:** Confidentiality Agreement

John,

I missed that Mark had executed a slightly revised version (word document attached), but found it
last evening.  Apologies.  Please get mean executed version from Mr. Seery.  Thanks.

**Louis M. Phillips**
*Partner*

000961

HCMLPHMIT00000047



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

_louis.phillips@kellyhart.com_
_www.kellyhart.com_

_Licensed to Practice in the State of Louisiana_

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.



HCMLPHMIT00000048

**EXHIBIT**

000963

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**To:** "John A. Morris" <jmorris@pszjlaw.com>
**Cc:** "Jeff Pomerantz" <jpomerantz@pszjlaw.com>, "Amelia L. Hurt" <Amelia.Hurt@kellyhart.com>
**Subject:** RE: Question re settlement process/term sheet
**Date:** Mon, 24 Mar 2025 16:00:18 +0000
**Importance:** Normal
**Inline-Images:** image005.jpg; image006.png; image001.png

---

I have the same view, and think it is the best approach.

**Louis M. Phillips**
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

*louis.phillips@kellyhart.com*
*www.kellyhart.com*

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

---

**From:** John A. Morris <jmorris@pszjlaw.com>
**Sent:** Monday, March 24, 2025 9:59 AM
**To:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>; Amelia L. Hurt <Amelia.Hurt@kellyhart.com>
**Subject:** FW: Question re settlement process/term sheet

HCMLPHMIT00000052

EXTERNAL SENDER ALERT – This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.

Louis,

Under Article IX of the Plan, the Bankruptcy Court retains jurisdiction to approve, among other things, the resolution of Claims, Equity Interests, and pending litigation. Based on that, HCMLP and the Claimant Trust expect to seek Bankruptcy Court approval of any settlement we may reach.

Please let me know if you have a different view.

Regards,

John

**John A. Morris**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 212.561.7760
Tel: 212.561.7700 | Fax: 212.561.7777
jmorris@pszjlaw.com
vCard | Bio | LinkedIn



Los Angeles | New York | Wilmington, DE | Houston | San Francisco

---

**From:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Sent:** Monday, March 24, 2025 6:49 AM
**To:** John A. Morris <jmorris@pszjlaw.com>
**Cc:** Amelia L. Hurt <Amelia.Hurt@kellyhart.com>
**Subject:** Question re settlement process/term sheet

John,

I would like your view as to whether a settlement agreement, if we reach one, should be made subject to Court approval (or, maybe if it can be). I know we need to account for our agreement with HCLOM, as our agreement supersedes the effect of the agreed order, and says in part that HCLOM has no Class 10 interest. Maybe that is the basis for the Court having authority. Would like your thoughts on what you are assuming re the process and of the Court's authority post-effective date. I admit I did not consult the plan or confirmation order before sending this

**Louis M. Phillips**
*Partner*

000965

HCMLPHMIT00000053

**KELLY HART & PITRE**
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

*louis.phillips@kellyhart.com*
*www.kellyhart.com*

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

HCMLPHMIT00000054

**EXHIBIT**

000967

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**To:** "John A. Morris" <jmorris@pszjlaw.com>
**Cc:** "Amelia L. Hurt" <Amelia.Hurt@kellyhart.com>, "Jeff Pomerantz" <jpomerantz@pszjlaw.com>
**Subject:** Re: The proposed list of Representatives under the CA
**Date:** Tue, 25 Mar 2025 21:43:09 +0000
**Importance:** Normal
**Inline-Images:** image001.jpg; image002.png; image001(1).jpg; image002(1).png

---

Thank you John

Louis M. Phillips
On March 25, 2025 at 4:29:51 PM CDT, John A. Morris <jmorris@pszjlaw.com> wrote:

**EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.**

Louis,

Assuming everyone reads and can stand by the representations in the CA and Joinder, the Highland side has no objection to any of the individuals listed below.

Regards,

John
**John A. Morris**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 212.561.7760
Tel: 212.561.7700 | Fax: 212.561.7777
jmorris@pszjlaw.com
vCard | Bio | LinkedIn



Los Angeles | New York | Wilmington, DE | Houston | San Francisco

---

**From:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Sent:** Monday, March 24, 2025 10:36 AM
**To:** John A. Morris <jmorris@pszjlaw.com>
**Cc:** Amelia L. Hurt <Amelia.Hurt@kellyhart.com>
**Subject:** The proposed list of Representatives under the CA

John,

We propose the following list of Representatives under the Confidentiality Agreement.  Please advise.  Once you have approved I will get the joinders executed.



Louis M. Phillips and Amelia L. Hurt -- Kelly Hart
Shawn Raver -- Chief Operating Officer and Assistant General Counsel Charitable DAF Holdco, Ltd.
Sawnie A. McEntire -- Parsons McEntire McCleary PLLC
Brian P. Shaw -- Carrington Coleman
James D. Shields -- Shields Legal Group
Paul Murphy -- Director CLO HoldCo - Stanbrook Prudhoe (Cayman)

**Louis M. Phillips**
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

*louis.phillips@kellyhart.com*
*www.kellyhart.com*

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.



HCMLPHMIT00000056

**EXHIBIT**

000970

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**To:** "John A. Morris" <jmorris@pszjlaw.com>
**Cc:** "Amelia L. Hurt" <Amelia.Hurt@kellyhart.com>
**Subject:** Draft Settlement Term Sheet 3.28 Clean.DOCX -- Subject to Rule 408; Confidential Settlement Discussions
**Date:** Fri, 28 Mar 2025 20:49:20 +0000
**Importance:** Normal
**Attachments:** Draft_Settlement_Term_Sheet_3.28_Clean.DOCX
**Inline-Images:** image003.png

---

John,

Please see our draft Settlement Term Sheet ("Draft").  As we assume there will be comments we have not included signature blocks or attached exhibits.  I can send Exhibit B either later today or over the weekend (trying to get something else out).  I look forward to hearing from you.

**Louis M. Phillips**
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

louis.phillips@kellyhart.com
www.kellyhart.com

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

**EXHIBIT**

000972

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**To:** "John A. Morris" <jmorris@pszjlaw.com>
**Cc:** "Jeff Pomerantz" <jpomerantz@pszjlaw.com>
**Subject:** Re: Follow up
**Date:** Sun, 30 Mar 2025 23:51:41 +0000
**Importance:** Normal

John,

Either works tomorrow. Probably earlier is better for me.

Louis M. Phillips
On March 30, 2025 at 6:17:02 PM CDT, John A. Morris <jmorris@pszjlaw.com> wrote:

EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.

Hi.

Are you free to chat with Jeff and me either tomorrow, between 11 and noon or 5:30 pm eastern or Tuesday between 1 and 3 pm or 4 to 6 pm  eastern?

If you want one other lawyer to join, that's fine. We'd prefer not a big group for the initial call.

Let us know.

Thanks.


Sent from my iPhone

HCMLPHMIT00000058

**EXHIBIT  2**

000974

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**To:** "John A. Morris" <jmorris@pszjlaw.com>, "Jeff Pomerantz" <jpomerantz@pszjlaw.com>
**Cc:** "Amelia L. Hurt" <Amelia.Hurt@kellyhart.com>
**Subject:** FW: Executed Intercreditor Agreement -- settlement Discussions subject to Rule 408; Confidential and Protected
**Date:** Mon, 31 Mar 2025 17:12:01 +0000
**Importance:** Normal
**Attachments:** HCLOM__Intercreditor_Agreement_(HMIT)_Execution_Version.pdf
**Inline-Images:** image001.png

---

John and Jeff,

Please see Exhibit B.

**Louis M. Phillips**
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

*louis.phillips@kellyhart.com*
*www.kellyhart.com*

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.



**EXHIBIT**

000976

## INTERCREDITOR AND PARTICIPATION AGREEMENT

This Intercreditor and Participation Agreement (the "Agreement") is entered into as of January 10, 2025 (the "Effective Date") by and between Highland CLO Management, Ltd. (together with its successors and assigns in such capacities, "HCLOM Ltd.") and Hunter Mountain Investment Trust (together with its successors and assigns in such capacities, "HMIT"). HCLOM Ltd. and HMIT are each referred to herein individually as a "Party" and jointly as the "Parties."

## RECITALS

WHEREAS, on September 22, 2020, Highland Capital Management, L.P. filed a Notice of Filing of Debtor's Amended Schedules in its pending Chapter 11 Case No. 19-34054-sgj11 (the "Bankruptcy Case") in which it, among other things, scheduled a creditor's claim by HCLOM Ltd. (the "HCLOM Claim"); and

WHEREAS, on December 27, 2024, the Bankruptcy Court entered a Stipulated and Agreed Order Resolving (A) HCLOM, Ltd.'s Scheduled Claims 3.65 and 3.66; and (B) Highland Capital Management, L.P.'s (1) Objection and (2) Motion for a Bad Faith Finding and an Award of Attorneys' Fees Against HCLOM, Ltd. and James Dondero in Connection Therewith [Docket Nos. 3657, 4176] in the Bankruptcy Case (the "Stipulation and Agreed Order"); and

WHEREAS, the Stipulation and Agreed Order converted the HCLOM Claim to a Class 10 interest/claim (as such is defined in Article III.H. ¶ 10 of the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) in the Bankruptcy Case) (the "Plan") in the amount of $10,140,633.26; and

WHEREAS, the Parties have agreed to certain rights and priorities solely as between themselves regarding HCLOM Ltd.'s participation in the payment of Class 10 interests/claims;

THEREFORE, for and in consideration of the promises, covenants, conditions, stipulations, benefits, and obligations described and provided herein, the sufficiency and adequacy of which is expressly hereby acknowledged, the Parties agree as follows:

## AGREEMENT

1.      **HMIT Payment Obligation to HCLOM Ltd.** Upon HMIT's receipt of distributions on account of its Class 10 interest/claim (the "Distributions"), HMIT will pay to HCLOM Ltd. an amount equal to five percent (5%) of the funds received by HMIT within two (2) business days after receipt of indefeasible funds by HMIT (the "HMIT Payment Obligation"). HMIT shall be entitled to deduct from the Distributions the fees and expenses billed by Kelly Hart Hallman, LLP which directly relate to the Stipulation and Agreed Order or this Agreement (the "HMIT Expenses") until all HMIT Expenses are paid in full.

2.      **No Additional Duties to HCLOM Ltd.** HMIT shall retain and have the sole discretion to act with respect to its Class 10 interest/claim, and shall owe no additional duties to HCLOM Ltd. or any other person or entity, including without limitation, with respect to (i) the amount of Distributions or recovery by HMIT on account of its Class 10 interests/claims,

000977

HCMLPHMIT00000060

(ii) the amount of Distributions that could be received by any holder of Class 10 interests/claims, (iii) the rights of any holder of Class 10 interests/claims, or (iv) any pleading or document that could or should be filed in any way related to the Bankruptcy Case, the Plan, or the HMIT Class 10 interests/claims.

3.      **No Liens or Encumbrances**. HMIT will not take any action that could reasonably be expected to encumber HMIT's Class 10 interests/claims, limit or affect HMIT's right or ability to fulfil and perform the HMIT Payment Obligation, or limit or affect HCLOM Ltd.'s right to receive the Distributions.

4.      **This Agreement Supersedes the Effects of the Stipulated and Agreed Order Among the Parties**. HCLOM acknowledges and agrees that, notwithstanding the Stipulated and Agreed Order, the terms of this Agreement amends and supersedes the effect of the Stipulation and Agreed Order as between the Parties and HCLOM's rights to payment under the Plan are limited solely to the HMIT Payment Obligation.

5.      **Non-Interference; No Cause of Action**. Notwithstanding Paragraph 3, HCLOM will not have any rights to object to or otherwise interfere with the rights of HMIT as a holder of Class 10 interest to reach a settlement with Highland Capital Management, LP ("Highland"). HCLOM acknowledges that it shall have no right to notice or approval of such a settlement nor will it have any cause of action against HMIT arising out of any such settlement.

6.      **Remittance Agreement**. The Parties acknowledge that contemporaneously herewith NREA SB II Holdings, LLC (together with its successors and assigns in such capacities, "NexPoint Small Bay."), Charitable DAF Holdings Corp. (together with its successors and assigns in such capacities, "Charitable DAF"), and Liberty CLO Holdco, Ltd. (together with its successors and assigns in such capacities, "Liberty CLO") have entered into that certain Remittance Agreement effective January 10, 2025 (the "Remittance Agreement"). HCLOM agrees that if NexPoint Small Bay fails to make the DAF Bridge Equity Payment (as defined in the Remittance Agreement) pursuant to the terms of the Remittance Agreement, HMIT will have no obligations to make the HMIT Payment Obligation, and HMIT shall not receive any distribution from HMIT or any other party related to any Class 10 interest/claim. Notwithstanding any failure of NexPoint Small Bay to adhere to the terms of the Remittance Agreement, HCLOM acknowledges that by executing this Agreement, it shall have no other recourse or rights to payment under the Plan other than the terms of this Agreement.

7.      **Choice of Law; Jurisdiction; Venue**. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas, without regard to conflict of law provisions. Each Party to hereby consents and agrees that the courts located in Texas shall have sole and exclusive jurisdiction to hear and determine any claims or disputes between the parties pertaining to this Agreement or to any matter arising out of or relating to this Agreement. Each Party expressly submits and consents in advance to such jurisdiction in any action or suit commenced in any such court, and each Party hereby waives any objection that it may have based upon lack of personal jurisdiction, improper venue, or *forum non conveniens*.

8.      **Amendments; Waivers**. No amendment, modification, or waiver of any of the provisions of this Agreement shall be deemed to be made unless the same shall be in writing signed on behalf of each Party, and each waiver, if any, shall be a waiver only with respect to the specific instance involved and shall in no way impair the rights of the Party making such waiver or the obligations of the other Party in any other respect or at any other time.

2

000978

HCMLPHMIT00000061

9.      **Binding Effect**. Except as otherwise expressly provided herein, the provisions of this Agreement shall inure to the benefit of, and be binding upon, the Parties and their respective successors, assigns, executors, representatives, and administrators.

10.      **Entire Agreement**. The Agreement contains the entire understanding of the Parties with respect to the subject matter hereof and supersedes all prior agreements and understandings, oral or written, with respect to such matters, which the parties acknowledge have been merged into this Agreement.

11.      **Counterparts**. This Agreement may be executed in counterparts, each of which shall be deemed an original but all of which taken together shall constitute one and the same instrument. Signature by facsimile or other similar electronic transmission shall have the same force and effect as an original signature.

IN WITNESS WHEREOF, the Parties have executed this Intercreditor and Participation Agreement as of the Effective Date set forth above and in the capacities set forth below.

000979
HCMLPHMIT00000062

HIGHLAND CLO MANAGEMENT, LTD.

By: _____

Name: __James Dondero_____

Title: ___President_____


HUNTER MOUNTAIN INVESTMENT TRUST


By: _____

Name: _____

Title: _____

**000980**

HCMLPHMIT00000063

**EXHIBIT**

000981

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**To:** "John A. Morris" <jmorris@pszjlaw.com>
**Cc:** "Jeff Pomerantz" <jpomerantz@pszjlaw.com>, "Amelia L. Hurt"
<Amelia.Hurt@kellyhart.com>
**Subject:** Re: Highland: Follow Up
**Date:** Wed, 2 Apr 2025 19:34:59 +0000
**Importance:** Normal
**Inline-Images:** image003.png; image003(1).png

---

Makes sense. I think having the non-outside lawyers is fine as a first step. Will send our list and appreciate your folks gathering what they think is involved.

Louis M. Phillips
On April 2, 2025 at 2:14:41 PM CDT, John A. Morris <jmorris@pszjlaw.com> wrote:

**EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.**

Louis.

Dave Klos will contact Mark and Shawn to set up a business Zoom meeting for tomorrow morning.  We do not intend to have outside lawyers on the call but can if you think that would be best (we know Mark and Shawn are businessmen lawyers, and that's fine).

Please provide the list of information in advance of the call so we can be as responsive as possible.

To be efficient, the Highland team intends to present certain financial information tomorrow (subject to Fed. R. Evid. 408 and the Confidentiality Agreement) that we believe is relevant in all cases.

Please let us know if this makes sense; if so, we'll proceed.

Regards,

John

---

**From:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Sent:** Wednesday, April 2, 2025 1:29 PM
**To:** John A. Morris <jmorris@pszjlaw.com>
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>; Amelia L. Hurt <Amelia.Hurt@kellyhart.com>
**Subject:** RE: Highland: Follow Up

Correct. Thought that was implicit.

**Louis M. Phillips**
*Partner*

000982


HCMLPHMIT00000075



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

*louis.phillips@kellyhart.com*
*www.kellyhart.com*

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

---

**From:** John A. Morris <jmorris@pszjlaw.com>
**Sent:** Wednesday, April 2, 2025 12:15 PM
**To:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>; Amelia L. Hurt <Amelia.Hurt@kellyhart.com>
**Subject:** Re: Highland: Follow Up

**EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.**

---

I assume we have the "green light" in the nothing discussed on Monday is a conceptual deal breaker?

Please confirm.

Thanks.

Sent from my iPhone


On Apr 2, 2025, at 1:05 PM, Louis M. Phillips <Louis.Phillips@kellyhart.com> wrote:

John,

Would it be possible to do an initial Zoom call with those people?  Shawn is out of town for the rest of the week and he is needed.  Maybe your side could discuss the range of information they think is involved and my two people could give their view, in anticipation of a meeting maybe next week?

Mark and Shawn are available tomorrow morning until 1:00 pm central.

I am getting Shawn's Joinder, hopefully today

HCMLPHMIT00000076


**Louis M. Phillips**
*Partner*

<image003.png>

KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

*louis.phillips@kellyhart.com*
*www.kellyhart.com*

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

---

**From:** John A. Morris <jmorris@pszjlaw.com>
**Sent:** Tuesday, April 1, 2025 7:24 AM
**To:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>; Amelia L. Hurt <Amelia.Hurt@kellyhart.com>
**Subject:** RE: Highland: Follow Up

**EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.**

---

This assumes, of course, that you'll give the "green light" (*i.e.*, nothing discussed yesterday is a showstopper) in advance.

---

**From:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Sent:** Tuesday, April 1, 2025 7:14 AM
**To:** John A. Morris <jmorris@pszjlaw.com>
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>; Amelia L. Hurt <Amelia.Hurt@kellyhart.com>
**Subject:** Re: Highland: Follow Up

That sounds good. I will get back

Louis M. Phillips
On March 31, 2025 at 8:15:03 PM CDT, John A. Morris <jmorris@pszjlaw.com> wrote:

EXTERNAL ALERT – This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.

Louis,

Dave Klos, Kirstin Hendrix, and some others are available later this week to share information with Mark and Shawn at Highland's offices.  Jim Seery would likely participate by Zoom.

We thought meeting without lawyers might a good first step.  If that makes sense, let me know how Dave can reach out to Mark and Shawn to set something up.

Chat soon,

John

Sent from my iPhone



KELLY
HART
PITRE
ATTORNEYS AT LAW

**EXHIBIT**

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**To:** "John A. Morris" <jmorris@pszjlaw.com>
**Cc:** "Jeff Pomerantz" <jpomerantz@pszjlaw.com>, "Amelia L. Hurt" <Amelia.Hurt@kellyhart.com>
**Subject:** Re: Highland: Confidentiality Agreement
**Date:** Wed, 2 Apr 2025 21:53:34 +0000
**Importance:** Normal
**Inline-Images:** image001.jpg; image001(1).jpg

---

We agree. I have sent Shawn the rider. He is out of town but will get it back to me

Louis M. Phillips
On April 2, 2025 at 4:30:31 PM CDT, John A. Morris <jmorris@pszjlaw.com> wrote:

**EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.**

Louis:

Attached is a copy of the Confidentiality Agreement signed by Mr. Seery in his capacities as the CEO of Highland and as the Claimant Trustee of the Highland Claimant Trust.

While the source of the information to be provided is HCMLP, we should have included the Highland Claimant Trust as an express signatory.

If you can acknowledge that Mr. Patrick agrees and understands that—notwithstanding any statement in the Agreement to the contrary—the Highland Claimant Trust is an intended signatory and beneficiary of the Agreement, we can proceed and amend the Agreement tomorrow to make that explicit.

Assuming that's not problematic, please also have Shawn execute the Rider in advance of tomorrow's meeting.

Thank you,

John
**John A. Morris**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 212.561.7760
Tel: 212.561.7700 | Fax: 212.561.7777
jmorris@pszjlaw.com
vCard | Bio | LinkedIn



Los Angeles | New York | Wilmington, DE | Houston | San Francisco

000988
HCMLPHMIT00000080

**EXHIBIT**

000989

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**To:** "John A. Morris" <jmorris@pszjlaw.com>, "Jeff Pomerantz" <jpomerantz@pszjlaw.com>
**Cc:** "Amelia L. Hurt" <Amelia.Hurt@kellyhart.com>
**Subject:** Paul Murphy Joinder
**Date:** Thu, 3 Apr 2025 12:43:06 +0000
**Importance:** Normal
**Attachments:** Paul_Murphy_Joinder_to_CA.pdf

---

John and Jeff,

Please see the Joinder executed by Paul Murphy.  He will be with Mark and Shawn. I should have Shawn's this morning.


Louis M. Phillips
Partner


KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

louis.phillips@kellyhart.com
www.kellyhart.com

Licensed to Practice in the State of Louisiana

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.


HCMLPHMIT00000081

## JOINDER TO CONFIDENTIALITY AGREEMENT

This JOINDER TO CONFIDENTIALITY AGREEMENT (this "**Joinder**") is entered into as of March 18, 2025 (the "**Effective Date**") by and between Highland Capital Management, L.P., a Delaware limited partnership ("**Highland**"), and Paul Murphy (the "**Joining Party**"). Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Confidentiality Agreement (as hereinafter defined).

WHEREAS, reference is made to that certain Confidentiality Agreement as of March 18, 2025 by and among Highland, on the one hand, and Mark Patrick, a United States citizen and resident of Dallas, Texas, Hunter Mountain Investment Trust, a Delaware statutory trust, Charitable DAF Holdco, Ltd., a Cayman Islands exempted company, CDH GP, Ltd., a Cayman Islands exempted company, Charitable DAF Fund, L.P., a Cayman Islands exempted limited partnership, and CLO Holdco, Ltd., a Cayman Islands exempted company, Rand Advisors, LLC, a Delaware limited liability company, Rand PE Fund I, LP, a Delaware series limited partnership, Rand PE Fund Management, LLC, a Delaware limited liability company, Atlas IDF, LP, a Delaware limited partnership, Atlas IDF GP, LLC, a Delaware limited liability company, on the other hand (the "**Confidentiality Agreement**");

WHEREAS, the Joining Party is a Representative of Recipients and desires to receive certain Confidential Information for the sole limited purpose of advising Recipients in connection with its evaluation, negotiation and consummation of a Proposed Settlement; and

WHEREAS, in accordance with Section 4 of the Confidentiality Agreement and as a condition to Highland providing, or permitting Recipients to provide, such Confidential Information to the Joining Party, the Joining Party agrees to the terms and conditions set forth in this Joinder.

NOW, THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and agreed, the parties hereto, intending to be legally bound, hereby agree as follows:

1.      The Joining Party acknowledges that it has received and reviewed a copy of the Confidentiality Agreement.  The Joining Party hereby joins as a Party to, and agrees to be bound by all of the terms, provisions and conditions set forth in, the Confidentiality Agreement as a "Recipient" thereunder, with the same force and effect as if originally named therein as a "Recipient."

2.      Without limiting the generality of the foregoing, the Joining Party hereby (a) makes each of the representations and warranties set forth in Section 1 of the Confidentiality Agreement to Highland and (b) represents and warrants to Highland that such Joining Party (i) does not currently represent any Dondero Related Party and (ii) has no duty or obligation to provide any Confidential Information to any Person not a party to this Agreement, whether through a common or joint interest agreement or otherwise, and does not represent any Person with such a duty or obligation.

Paul Murphy Joinder to CA.DOCX

HCMLPHMIT00000082

3.     Each of the terms, provisions and conditions set forth in Section 9 of the Confidentiality Agreement are incorporated herein by reference in their entirety and shall apply to this Agreement *mutatis mutandis*.


IN WITNESS WHEREOF, the parties hereto have executed this Joinder to be effective as of the Effective Date.

<div style="margin-left:40%">

**HIGHLAND:**

HIGHLAND CAPITAL MANAGEMENT, L.P.


By: _____
Name: James P. Seery, Jr.
Title: Chief Executive Officer


**JOINING PARTY:**


_____
Name: Paul Murphy

</div>

Paul Murphy Joinder to CA.DOCX

000992

HCMLPHMIT00000083

**EXHIBIT**

000993

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**To:** "John A. Morris" <jmorris@pszjlaw.com>
**Subject:** Re: Catch up
**Date:** Fri, 4 Apr 2025 16:26:41 +0000
**Importance:** Normal

---

Will call as soon as I walk out

Louis M. Phillips
On April 4, 2025 at 11:26:06 AM CDT, John A. Morris <jmorris@pszjlaw.com> wrote:

> **EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.**
>
> ---
>
> Ok.  I have a call at 1 Eastern so please before then if time permits.
>
> Thanks,
>
> John
>
> Sent from my iPhone
>
>
> On Apr 4, 2025, at 12:16 PM, Louis M. Phillips <Louis.Phillips@kellyhart.com> wrote:
>
>
> Will break in 30 minutes
>
> Louis M. Phillips
> On April 4, 2025 at 10:14:42 AM CDT, John A. Morris <jmorris@pszjlaw.com> wrote:
>
> EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.
>
> Hi Louis.
>
> Give me a call when there is a break in the action down there: 1.646.341.3686
>
> Thanks,
>
> John
>
> Sent from my iPhone

**EXHIBIT**

000995

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**To:** "John A. Morris" <jmorris@pszjlaw.com>
**Cc:** "Jeff Pomerantz" <jpomerantz@pszjlaw.com>, "Amelia L. Hurt"
<Amelia.Hurt@kellyhart.com>
**Subject:** RE: Highland/DAF/HMIT: Follow up
**Date:** Mon, 7 Apr 2025 12:11:45 +0000
**Importance:** Normal
**Inline-Images:** image004.jpg; image001.png

---

John,

As I mentioned on the phone Friday, we request a breakdown and documentation with specificity of any (i) accrued liabilities, (ii) anticipated success or severance (or completion) payments or bonuses, (iii) continuing admin budget for the Claimant trust, Indemnification sub trust and/or litigation sub trust, and (iv) the identity and amount and basis for any holdback(s).

We are available Tuesday in Dallas.  How many from your side would be participating in person?  I am trying to get my travel plans situated and to make sure my travel might add to the process (for example if you, Jeff, et al from Pachulski are attending remotely so might I). I believe I can get an early flight out in the morning arriving around 7:00 am or a bit later one arriving around 8:45.

**Louis M. Phillips**
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

louis.phillips@kellyhart.com
www.kellyhart.com

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be


000996
HCMLPHMIT00000090

used or relied upon by anyone for the purpose of avoiding penalties that may be imposed under federal law, nor for the purpose of marketing or recommending to any other party any transaction or other matter.

**From:** John A. Morris <jmorris@pszjlaw.com>
**Sent:** Friday, April 4, 2025 3:54 PM
**To:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>; Amelia L. Hurt <Amelia.Hurt@kellyhart.com>
**Subject:** Highland/DAF/HMIT: Follow up

**EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.**

Louis:

I'm writing to follow up on several things.

1. <u>Litigation Protections</u>.  Attached are the "Litigation Protections" I mentioned.  They are still subject to review and material change but wanted to share them now.

2. <u>Follow up information</u>.  It sounds like yesterday's Zoom meeting was helpful.  Please let us know if there is any other information your clients need to assess the situation.

3. <u>HCMLP's diligence</u>.  We'll have some questions on our end, but for now, please send us the Remittance Agreement referred to in the Intercreditor Agreement.

4. <u>Joinder signature</u>.  For completeness, please send us Shawn's signature page.

5. <u>Preliminary terms/structure</u>.  We hope to provide over the weekend a set of bullet points concerning possible terms and structure of an agreement.

6. <u>Further meeting</u>.  Some or all of us are prepared to meet in Dallas on Tuesday at a time to be determined (some may participate by Zoom).  Please let us know if that is possible as soon as you're able so we can make travel arrangements.

Please let me know if you have any questions and thank you for your continued cooperation.

Regards,

John


**John A. Morris**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 212.561.7760
Tel: 212.561.7700 | Fax: 212.561.7777
jmorris@pszjlaw.com
vCard | Bio | LinkedIn



HCMLPHMIT00000091

000998
HCMLPHMIT00000092

**EXHIBIT**

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**To:** "John A. Morris" <jmorris@pszjlaw.com>, "Jeff Pomerantz" <jpomerantz@pszjlaw.com>
**Cc:** "Amelia L. Hurt" <Amelia.Hurt@kellyhart.com>
**Subject:** FW: Joinder Agreement
**Date:** Mon, 7 Apr 2025 14:08:57 +0000
**Importance:** Normal
**Attachments:** Raver_Joinder.pdf
**Inline-Images:** image003.png

---

John,

Please see the Joinder executed by Shawn Raver.

**Louis M. Phillips**
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

*louis.phillips@kellyhart.com*
*www.kellyhart.com*

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

**From:** Shawn Raver <sraver@dafholdco.com>
**Sent:** Monday, April 7, 2025 9:04 AM
**To:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Subject:** Re: Joinder Agreement

001000

HCMLPHMIT00000093

EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.

## JOINDER TO CONFIDENTIALITY AGREEMENT

This JOINDER TO CONFIDENTIALITY AGREEMENT (this "**Joinder**") is entered into as of March 18, 2025 (the "**Effective Date**") by and between Highland Capital Management, L.P., a Delaware limited partnership ("**Highland**"), and Shawn Raver (the "**Joining Party**"). Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Confidentiality Agreement (as hereinafter defined).

WHEREAS, reference is made to that certain Confidentiality Agreement as of March 18, 2025 by and among Highland, on the one hand, and Mark Patrick, a United States citizen and resident of Dallas, Texas, Hunter Mountain Investment Trust, a Delaware statutory trust, Charitable DAF Holdco, Ltd., a Cayman Islands exempted company, CDH GP, Ltd., a Cayman Islands exempted company, Charitable DAF Fund, L.P., a Cayman Islands exempted limited partnership, and CLO Holdco, Ltd., a Cayman Islands exempted company, Rand Advisors, LLC, a Delaware limited liability company, Rand PE Fund I, LP, a Delaware series limited partnership, Rand PE Fund Management, LLC, a Delaware limited liability company, Atlas IDF, LP, a Delaware limited partnership, Atlas IDF GP, LLC, a Delaware limited liability company, on the other hand (the "**Confidentiality Agreement**");

WHEREAS, the Joining Party is a Representative of Recipients and desires to receive certain Confidential Information for the sole limited purpose of advising Recipients in connection with its evaluation, negotiation and consummation of a Proposed Settlement; and

WHEREAS, in accordance with Section 4 of the Confidentiality Agreement and as a condition to Highland providing, or permitting Recipients to provide, such Confidential Information to the Joining Party, the Joining Party agrees to the terms and conditions set forth in this Joinder.

NOW, THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and agreed, the parties hereto, intending to be legally bound, hereby agree as follows:

1.      The Joining Party acknowledges that it has received and reviewed a copy of the Confidentiality Agreement. The Joining Party hereby joins as a Party to, and agrees to be bound by all of the terms, provisions and conditions set forth in, the Confidentiality Agreement as a "Recipient" thereunder, with the same force and effect as if originally named therein as a "Recipient."

2.      Without limiting the generality of the foregoing, the Joining Party hereby (a) makes each of the representations and warranties set forth in Section 1 of the Confidentiality Agreement to Highland and (b) represents and warrants to Highland that such Joining Party (i) does not currently represent any Dondero Related Party and (ii) has no duty or obligation to provide any Confidential Information to any Person not a party to this Agreement, whether through a common or joint interest agreement or otherwise, and does not represent any Person with such a duty or obligation.

Shawn Raver Joinder to CA (2).DOCX

**001002**

HCMLPHMIT00000095

3.      Each of the terms, provisions and conditions set forth in Section 9 of the Confidentiality Agreement are incorporated herein by reference in their entirety and shall apply to this Agreement *mutatis mutandis*.


IN WITNESS WHEREOF, the parties hereto have executed this Joinder to be effective as of the Effective Date.

**HIGHLAND:**

HIGHLAND CAPITAL MANAGEMENT, L.P.


By: _____
Name: James P. Seery, Jr.
Title: Chief Executive Officer


**JOINING PARTY:**

_____
Name: Shawn Raver

001003

HCMLPHMIT00000096

**EXHIBIT 2**

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**To:** "John A. Morris" <jmorris@pszjlaw.com>
**Cc:** "Jeff Pomerantz" <jpomerantz@pszjlaw.com>, "Amelia L. Hurt" <Amelia.Hurt@kellyhart.com>
**Subject:** RE: Highland/DAF/HMIT: Follow up
**Date:** Mon, 7 Apr 2025 15:17:39 +0000
**Importance:** Normal
**Inline-Images:** image005.jpg; image006.png; image001.png

---

The structure suits me fine.  I will get with Mark and Shawn.  They would be the only ones.

You are correct you do not have joinders from Amelia and I.  The same thing occurred to me last night.  We will send (getting a pre-trial order and brief out for Noon, so maybe a bit after then).  Will get the Remittance Agreement out as well, and will get information re the other matters (I do not have it directly)

**Louis M. Phillips**
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

*louis.phillips@kellyhart.com*
*www.kellyhart.com*

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

**From:** John A. Morris <jmorris@pszjlaw.com>
**Sent:** Monday, April 7, 2025 10:09 AM

HCMLPHMIT00000099

**To:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>; Amelia L. Hurt <Amelia.Hurt@kellyhart.com>
**Subject:** Highland/DAF/HMIT: Follow up

**EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.**

Louis,

Following up.

1. <u>Meeting</u>.  We propose that the business folks (including Mark and Jim) meet in person at Highland's offices at 10:30 am Central Time tomorrow (casual dress, no suits), with lawyers participating by Zoom; if you want to attend in person, Jeff may attend in person as well so let me know (I am unable to attend in person because of other commitments).

2. <u>DAF/HMIT information request</u>.  During tomorrow's meeting, Highland will provide the information requested below (and can quickly walk through the same information that was presented the other day for your benefit if that would be helpful).

3. <u>Highland information request</u>.  As requested, please provide a copy of the Remittance Agreement referred to in the Intercreditor Agreement and share with us any other agreements or information concerning any current or former connection between DAF/CLOH/HMIT and Dondero/Okada/Dugaboy, including the funding of the HMIT litigation (that Mark testified to in June 2023) and the disposition of the HMIT Notes made in favor of Dugaboy and Okada. We just need to know how any agreement may impact the Dondero side, if at all.

4. <u>NDA signatures</u>.  Please let us know who will be participating on your side and send any Joinders not previously sent (I'm not sure we received one for you and Amelia).

We look forward to your prompt response.

Regards,

John

**John A. Morris**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 212.561.7760
Tel: 212.561.7700 | Fax: 212.561.7777
jmorris@pszjlaw.com
vCard | Bio | LinkedIn



Los Angeles | New York | Wilmington, DE | Houston | San Francisco

---

**From:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Sent:** Monday, April 7, 2025 8:12 AM
**To:** John A. Morris <jmorris@pszjlaw.com>



Cc: ~~Jason Sharp~~ <jponersharp@kellyhart.com>; Amelia L. Hurt <Amelia.Hurt@kellyhart.com>
**Subject:** RE: Highland/DAF/HMIT: Follow up

John,

As I mentioned on the phone Friday, we request a breakdown and documentation with specificity of any (i) accrued liabilities, (ii) anticipated success or severance (or completion) payments or bonuses, (iii) continuing admin budget for the Claimant trust, Indemnification sub trust and/or litigation sub trust, and (iv) the identity and amount and basis for any holdback(s).

We are available Tuesday in Dallas.  How many from your side would be participating in person?  I am trying to get my travel plans situated and to make sure my travel might add to the process (for example if you, Jeff, et al from Pachulski are attending remotely so might I). I believe I can get an early flight out in the morning arriving around 7:00 am or a bit later one arriving around 8:45.

**Louis M. Phillips**
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

louis.phillips@kellyhart.com
www.kellyhart.com

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

---

**From:** John A. Morris <jmorris@pszjlaw.com>
**Sent:** Friday, April 4, 2025 3:54 PM
**To:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>; Amelia L. Hurt <Amelia.Hurt@kellyhart.com>
**Subject:** Highland/DAF/HMIT: Follow up

HCMLPHMIT00000101

**EXTERNAL SENDER ALERT** - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.

Louis:

I'm writing to follow up on several things.

1. <u>Litigation Protections</u>.  Attached are the "Litigation Protections" I mentioned.  They are still subject to review and material change but wanted to share them now.

2. <u>Follow up information</u>.  It sounds like yesterday's Zoom meeting was helpful.  Please let us know if there is any other information your clients need to assess the situation.

3. <u>HCMLP's diligence</u>.  We'll have some questions on our end, but for now, please send us the Remittance Agreement referred to in the Intercreditor Agreement.

4. <u>Joinder signature</u>.  For completeness, please send us Shawn's signature page.

5. <u>Preliminary terms/structure</u>.  We hope to provide over the weekend a set of bullet points concerning possible terms and structure of an agreement.

6. <u>Further meeting</u>.  Some or all of us are prepared to meet in Dallas on Tuesday at a time to be determined (some may participate by Zoom).  Please let us know if that is possible as soon as you're able so we can make travel arrangements.

Please let me know if you have any questions and thank you for your continued cooperation.

Regards,

John


**John A. Morris**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 212.561.7760
Tel: 212.561.7700 | Fax: 212.561.7777
<u>jmorris@pszjlaw.com</u>
<u>vCard</u> | <u>Bio</u> | <u>LinkedIn</u>



Los Angeles | New York | Wilmington, DE | Houston | San Francisco

HCMLPHMIT00000102

**EXHIBIT 2**

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**To:** "John A. Morris" <jmorris@pszjlaw.com>, "Jeff Pomerantz" <jpomerantz@pszjlaw.com>
**Cc:** "Amelia L. Hurt" <Amelia.Hurt@kellyhart.com>
**Subject:** LMP and ALH Joinders Confidentiality Agreement
**Date:** Mon, 7 Apr 2025 21:02:23 +0000
**Importance:** Normal
**Attachments:** 1408_001.pdf; Amelia_Joinder_to_CA.pdf
**Inline-Images:** image003.png

---

John,

Please see the attached joinders.

**Louis M. Phillips**
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

*louis.phillips@kellyhart.com*
*www.kellyhart.com*

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

HCMLPHMIT00000103

## JOINDER TO CONFIDENTIALITY AGREEMENT

This JOINDER TO CONFIDENTIALITY AGREEMENT (this "**Joinder**") is entered into as of March 18, 2025 (the "**Effective Date**") by and between Highland Capital Management, L.P., a Delaware limited partnership ("**Highland**"), and Louis M. Phillips (the "**Joining Party**"). Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Confidentiality Agreement (as hereinafter defined).

WHEREAS, reference is made to that certain Confidentiality Agreement as of March 18, 2025 by and among Highland, on the one hand, and Mark Patrick, a United States citizen and resident of Dallas, Texas, Hunter Mountain Investment Trust, a Delaware statutory trust, Charitable DAF Holdco, Ltd., a Cayman Islands exempted company, CDH GP, Ltd., a Cayman Islands exempted company, Charitable DAF Fund, L.P., a Cayman Islands exempted limited partnership, and CLO Holdco, Ltd., a Cayman Islands exempted company, Rand Advisors, LLC, a Delaware limited liability company, Rand PE Fund I, LP, a Delaware series limited partnership, Rand PE Fund Management, LLC, a Delaware limited liability company, Atlas IDF, LP, a Delaware limited partnership, Atlas IDF GP, LLC, a Delaware limited liability company, on the other hand (the "**Confidentiality Agreement**");

WHEREAS, the Joining Party is a Representative of Recipients and desires to receive certain Confidential Information for the sole limited purpose of advising Recipients in connection with its evaluation, negotiation and consummation of a Proposed Settlement; and

WHEREAS, in accordance with Section 4 of the Confidentiality Agreement and as a condition to Highland providing, or permitting Recipients to provide, such Confidential Information to the Joining Party, the Joining Party agrees to the terms and conditions set forth in this Joinder.

NOW, THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and agreed, the parties hereto, intending to be legally bound, hereby agree as follows:

1.      The Joining Party acknowledges that it has received and reviewed a copy of the Confidentiality Agreement.  The Joining Party hereby joins as a Party to, and agrees to be bound by all of the terms, provisions and conditions set forth in, the Confidentiality Agreement as a "Recipient" thereunder, with the same force and effect as if originally named therein as a "Recipient."

2.      Without limiting the generality of the foregoing, the Joining Party hereby (a) makes each of the representations and warranties set forth in Section 1 of the Confidentiality Agreement to Highland and (b) represents and warrants to Highland that such Joining Party (i) does not currently represent any Dondero Related Party and (ii) has no duty or obligation to provide any Confidential Information to any Person not a party to this Agreement, whether through a common or joint interest agreement or otherwise, and does not represent any Person with such a duty or obligation.

4233814_1.docx

001011

HCMLPHMIT00000104

3.      Each of the terms, provisions and conditions set forth in Section 9 of the Confidentiality Agreement are incorporated herein by reference in their entirety and shall apply to this Agreement *mutatis mutandis*.


        IN WITNESS WHEREOF, the parties hereto have executed this Joinder to be effective as of the Effective Date.

**HIGHLAND:**

HIGHLAND CAPITAL MANAGEMENT, L.P.


By: _____
Name: James P. Seery, Jr.
Title: Chief Executive Officer


**JOINING PARTY:**

_____
Name: Louis M. Phillips

4233814_1.docx

001012
HCMLPHMIT00000105

## JOINDER TO CONFIDENTIALITY AGREEMENT

This JOINDER TO CONFIDENTIALITY AGREEMENT (this "**Joinder**") is entered into as of March 18, 2025 (the "**Effective Date**") by and between Highland Capital Management, L.P., a Delaware limited partnership ("**Highland**"), and Amelia L. Hurt (the "**Joining Party**"). Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Confidentiality Agreement (as hereinafter defined).

WHEREAS, reference is made to that certain Confidentiality Agreement as of March 18, 2025 by and among Highland, on the one hand, and Mark Patrick, a United States citizen and resident of Dallas, Texas, Hunter Mountain Investment Trust, a Delaware statutory trust, Charitable DAF Holdco, Ltd., a Cayman Islands exempted company, CDH GP, Ltd., a Cayman Islands exempted company, Charitable DAF Fund, L.P., a Cayman Islands exempted limited partnership, and CLO Holdco, Ltd., a Cayman Islands exempted company, Rand Advisors, LLC, a Delaware limited liability company, Rand PE Fund I, LP, a Delaware series limited partnership, Rand PE Fund Management, LLC, a Delaware limited liability company, Atlas IDF, LP, a Delaware limited partnership, Atlas IDF GP, LLC, a Delaware limited liability company, on the other hand (the "**Confidentiality Agreement**");

WHEREAS, the Joining Party is a Representative of Recipients and desires to receive certain Confidential Information for the sole limited purpose of advising Recipients in connection with its evaluation, negotiation and consummation of a Proposed Settlement; and

WHEREAS, in accordance with Section 4 of the Confidentiality Agreement and as a condition to Highland providing, or permitting Recipients to provide, such Confidential Information to the Joining Party, the Joining Party agrees to the terms and conditions set forth in this Joinder.

NOW, THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and agreed, the parties hereto, intending to be legally bound, hereby agree as follows:

1.      The Joining Party acknowledges that it has received and reviewed a copy of the Confidentiality Agreement.  The Joining Party hereby joins as a Party to, and agrees to be bound by all of the terms, provisions and conditions set forth in, the Confidentiality Agreement as a "Recipient" thereunder, with the same force and effect as if originally named therein as a "Recipient."

2.      Without limiting the generality of the foregoing, the Joining Party hereby (a) makes each of the representations and warranties set forth in Section 1 of the Confidentiality Agreement to Highland and (b) represents and warrants to Highland that such Joining Party (i) does not currently represent any Dondero Related Party and (ii) has no duty or obligation to provide any Confidential Information to any Person not a party to this Agreement, whether through a common or joint interest agreement or otherwise, and does not represent any Person with such a duty or obligation.

Amelia Joinder to CA.DOCX

HCMLPHMIT00000106

3.    Each of the terms, provisions and conditions set forth in Section 9 of the Confidentiality Agreement are incorporated herein by reference in their entirety and shall apply to this Agreement *mutatis mutandis*.

IN WITNESS WHEREOF, the parties hereto have executed this Joinder to be effective as of the Effective Date.

**HIGHLAND:**

HIGHLAND CAPITAL MANAGEMENT, L.P.

By: _____
Name: James P. Seery, Jr.
Title: Chief Executive Officer

**JOINING PARTY:**

_____
Name: Amelia L. Hurt

HCMLPHMIT00000107

**EXHIBIT 22**

001015

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**To:** "John A. Morris" <jmorris@pszjlaw.com>, "Jeff Pomerantz" <jpomerantz@pszjlaw.com>
**Cc:** "Amelia L. Hurt" <Amelia.Hurt@kellyhart.com>
**Subject:** Remittance Agreement
**Date:** Tue, 8 Apr 2025 13:17:06 +0000
**Attachments:** HCLOM__Remittance_Agreement_(Charitable_DAF_Liberty_CLO)(706141854.2).pdf;
Remittance_Agreement.pdf
**Inline-Images:** image001.png

---

John and Jeff,

Please find the Remittance Agreement, executed version.

**Louis M. Phillips**
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

*louis.phillips@kellyhart.com*
*www.kellyhart.com*

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

HCMLPHMIT00000108

## REMITTANCE AGREEMENT

This Remittance Agreement (the "Agreement") is entered into as of January 10, 2025 (the "Effective Date") by and between NREA SB II Holdings, LLC (together with its successors and assigns in such capacities, "NexPoint Small Bay."), Charitable DAF Holdings Corp. (together with its successors and assigns in such capacities, "Charitable DAF"), and Liberty CLO Holdco, Ltd. (together with its successors and assigns in such capacities, "Liberty CLO"). NexPoint Small Bay, Charitable DAF, and Liberty CLO are each referred to herein individually as a "Party" and collectively as the "Parties."

## RECITALS

WHEREAS, the Charitable DAF and Liberty CLO jointly previously provided temporary bridge funding and equity to NexPoint Small Bay, with repayment required in accordance with the Limited Liability Company Agreement of NexPoint Small Bay (the "DAF Bridge Equity"); and

WHEREAS, NexPoint Small Bay currently owes $8,265,050.74 to Charitable DAF and Liberty CLO, jointly, as repayment for the DAF Bridge Equity;

THEREFORE, for and in consideration of the payment, promises, covenants, conditions, stipulations, benefits, and obligations described and provided herein, the sufficiency and adequacy of which is expressly hereby acknowledged, the Parties agree as follows:

## AGREEMENT

1.      **Payment to DAF.** On or before January 14, 2025, NexPoint Small Bay shall pay to Charitable DAF and Liberty CLO, jointly, the amount of $8,265,050.74 (the "DAF Bridge Equity Payment").

2.      **Satisfaction and Release of Claims.** Charitable DAF and Liberty CLO each stipulates and agrees that the DAF Bridge Equity Payment will fully and completely satisfy all obligations arising out of or relating to the DAF Bridge Equity, that they each, upon receipt of the DAF Bridge Equity Payment, automatically and forever release and discharge NexPoint Small Bay and its affiliates, members, successors, and assigns, of and from all claims, demands, damages, liability, and responsibility, of any type or kind arising from or relating to the DAF Bridge Equity and/or their membership in NexPoint Small Bay, and Charitable DAF and Liberty CLO shall cease to be Members of NexPoint Small Bay and cease to have any rights under the Limited Liability Company Agreement of NexPoint Small Bay. Charitable DAF and Liberty CLO hereby provide any consent that is required by them under the Limited Liability Company Agreement of NexPoint Small Bay.

3.      **Choice of Law; Jurisdiction; Venue.** This Agreement shall be governed by and construed in accordance with the laws of the State of Texas, without regard to conflict of law provisions. Each Party to hereby consents and agrees that the courts located in Texas shall have sole and exclusive jurisdiction to hear and determine any claims or disputes between the parties pertaining to this Agreement or to any matter arising out of or relating to this Agreement. Each Party expressly submits and consents in advance to such jurisdiction in any action or suit commenced in any such court, and each Party hereby waives any objection that it may have based upon lack of personal jurisdiction, improper venue, or *forum non conveniens*.

001017

HCMLPHMIT00000109

4.    **Amendments; Waivers.** No amendment, modification, or waiver of any of the provisions of this Agreement shall be deemed to be made unless the same shall be in writing signed on behalf of each Party, and each waiver, if any, shall be a waiver only with respect to the specific instance involved and shall in no way impair the rights of the Party making such waiver or the obligations of the other Party in any other respect or at any other time.

5.    **Binding Effect.** Except as otherwise expressly provided herein, the provisions of this Agreement shall inure to the benefit of, and be binding upon, the Parties and their respective successors, assigns, executors, representatives, and administrators.

6.    **Entire Agreement.** The Agreement contains the entire understanding of the Parties with respect to the subject matter hereof and supersedes all prior agreements and understandings, oral or written, with respect to such matters, which the Parties acknowledge have been merged into this Agreement.

7.    **Counterparts.** This Agreement may be executed in counterparts, each of which shall be deemed an original but all of which taken together shall constitute one and the same instrument. Signature by facsimile or other similar electronic transmission shall have the same force and effect as an original signature.

IN WITNESS WHEREOF, the Parties have executed this Remittance Agreement as of the Effective Date set forth above and in the capacities set forth below.

**NREA SB II Holdings, LLC,**
a Delaware limited liability company

By: _____
Name:  Anthony Scavo
Title:   Authorized Signatory


CHARITABLE DAF HOLDINGS CORP.

By:_____
Name:_____
Title:_____




LIBERTY CLO HOLDCO, LTD.

By:_____
Name:_____
Title:_____

001018

HCMLPHMIT00000110

## REMITTANCE AGREEMENT

This Remittance Agreement (the "Agreement") is entered into as of January 10, 2025 (the "Effective Date") by and between NREA SB II Holdings, LLC (together with its successors and assigns in such capacities, "NexPoint Small Bay."), Charitable DAF Holdings Corp. (together with its successors and assigns in such capacities, "Charitable DAF"), and Liberty CLO Holdco, Ltd. (together with its successors and assigns in such capacities, "Liberty CLO"). NexPoint Small Bay, Charitable DAF, and Liberty CLO are each referred to herein individually as a "Party" and collectively as the "Parties."

## RECITALS

WHEREAS, the Charitable DAF and Liberty CLO jointly previously provided temporary bridge funding and equity to NexPoint Small Bay, with repayment required in accordance with the Limited Liability Company Agreement of NexPoint Small Bay (the "DAF Bridge Equity"); and

WHEREAS, NexPoint Small Bay currently owes $8,265,050.74 to Charitable DAF and Liberty CLO, jointly, as repayment for the DAF Bridge Equity;

THEREFORE, for and in consideration of the payment, promises, covenants, conditions, stipulations, benefits, and obligations described and provided herein, the sufficiency and adequacy of which is expressly hereby acknowledged, the Parties agree as follows:

## AGREEMENT

1.      **Payment to DAF.** On or before January 14, 2025, NexPoint Small Bay shall pay to Charitable DAF and Liberty CLO, jointly, the amount of $8,265,050.74 (the "DAF Bridge Equity Payment").

2.      **Satisfaction and Release of Claims.** Charitable DAF and Liberty CLO each stipulates and agrees that the DAF Bridge Equity Payment will fully and completely satisfy all obligations arising out of or relating to the DAF Bridge Equity, that they each, upon receipt of the DAF Bridge Equity Payment, automatically and forever release and discharge NexPoint Small Bay and its affiliates, members, successors, and assigns, of and from all claims, demands, damages, liability, and responsibility, of any type or kind arising from or relating to the DAF Bridge Equity and/or their membership in NexPoint Small Bay, and Charitable DAF and Liberty CLO shall cease to be Members of NexPoint Small Bay and cease to have any rights under the Limited Liability Company Agreement of NexPoint Small Bay. Charitable DAF and Liberty CLO hereby provide any consent that is required by them under the Limited Liability Company Agreement of NexPoint Small Bay.

3.      **Choice of Law; Jurisdiction; Venue.** This Agreement shall be governed by and construed in accordance with the laws of the State of Texas, without regard to conflict of law provisions. Each Party to hereby consents and agrees that the courts located in Texas shall have sole and exclusive jurisdiction to hear and determine any claims or disputes between the parties pertaining to this Agreement or to any matter arising out of or relating to this Agreement. Each Party expressly submits and consents in advance to such jurisdiction in any action or suit commenced in any such court, and each Party hereby waives any objection that it may have based upon lack of personal jurisdiction, improper venue, or *forum non conveniens*.

4.      **Amendments; Waivers.** No amendment, modification, or waiver of any of the provisions of this Agreement shall be deemed to be made unless the same shall be in writing signed on behalf of each Party, and each waiver, if any, shall be a waiver only with respect to the specific instance involved and shall in no way impair the rights of the Party making such waiver or the obligations of the other Party in any other respect or at any other time.

5.      **Binding Effect.** Except as otherwise expressly provided herein, the provisions of this Agreement shall inure to the benefit of, and be binding upon, the Parties and their respective successors, assigns, executors, representatives, and administrators.

6.      **Entire Agreement.** The Agreement contains the entire understanding of the Parties with respect to the subject matter hereof and supersedes all prior agreements and understandings, oral or written, with respect to such matters, which the Parties acknowledge have been merged into this Agreement.

7.      **Counterparts.** This Agreement may be executed in counterparts, each of which shall be deemed an original but all of which taken together shall constitute one and the same instrument. Signature by facsimile or other similar electronic transmission shall have the same force and effect as an original signature.

IN WITNESS WHEREOF, the Parties have executed this Remittance Agreement as of the Effective Date set forth above and in the capacities set forth below.

NREA SB II Holdings, LLC

By: _____
Name: _____
Title: _____

CHARITABLE DAF HOLDINGS CORP.

By: _____
Name: __Mark Patrick_____
Title: __President_____

LIBERTY CLO HOLDCO, LTD.

By: _____
Name: __Mark Patrick_____
Title: __Director_____

**EXHIBIT 23**

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**To:** "John A. Morris" <jmorris@pszjlaw.com>, "Jeff Pomerantz" <jpomerantz@pszjlaw.com>
**Cc:** "Amelia L. Hurt" <Amelia.Hurt@kellyhart.com>
**Subject:** FW: 2022 settlement
**Date:** Thu, 10 Apr 2025 20:57:55 +0000
**Importance:** Normal
**Attachments:** Hunter_Mountain_Settlement_--_Final_Execution_Version_(All_Signatures).pdf
**Inline-Images:** image002.png

---

John and Jeff,

Please see the 2022 Settlement Agreement re the HMIT note(s) that we discussed during the call.

**Louis M. Phillips**
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

*louis.phillips@kellyhart.com*
*www.kellyhart.com*

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

HCMLPHMIT00000118

## CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE

This Confidential Settlement Agreement and Release (the "Agreement") is entered into as of June 21, 2022 (the "Effective Date"), by and between Hunter Mountain Investment Trust, a Delaware statutory trust ("HMIT") and Rand PE Fund I, LP, Series 1, a Delaware series limited partnership ("Rand") (and together with HMIT, the "Cross-Plaintiffs"), on the one hand, and James D. Dondero ("Dondero"), Mark K. Okada ("Okada), The Dugaboy Investment Trust, a Delaware statutory trust ("Dugaboy"), The Mark and Pamela Okada Family Trust – Exempt Trust #1, a Delaware statutory trust ("MAP#1"), and The Mark and Pamela Okada Family Trust – Exempt Trust #2, a Delaware statutory trust ("MAP#2") (and collectively with Dondero, Okada, Dugaboy, and MAP #1, the "Cross-Defendants"), on the other hand. In this Agreement, Cross-Plaintiffs and Cross-Defendants are referred to collectively as the "Parties" and each individually as a "Party."

### RECITALS

WHEREAS, on or about December 21, 2015, Highland Capital Management, L.P. ("HCMLP"), a Delaware limited partnership, and its limited partners Dugaboy, Okada, MAP#1, MAP#2, and HMIT (together, the "HCMLP Limited Partners") entered into a Second Amended and Restated Buy-Sell and Redemption Agreement, pursuant to which HMIT agreed to purchase certain limited partnership interests in HCMLP from the HCMLP Limited Partners, which interests, prior to any subsequent transaction, represented 99.5% of the then existing limited partnership interests of HCMLP;

WHEREAS, on or about December 21, 2015, HCMLP and HMIT executed a Contribution Agreement, pursuant to which HMIT agreed to contribute Seventy Million Dollars ($70,000,000.00) of capital (the "Capital Contribution") in the form of cash and a note to HCMLP in return for the issuance of limited partnership interests in HCMLP which when combined with those held by the HCMLP Limited Partners, represented a Fifty-Five Percent (55%) of the limited partnership interests in HCMLP.

WHEREAS, HCMLP required Rand to execute a Guaranty Agreement in which Rand guaranteed the full and prompt payment and performance of all indebtedness, liabilities, and obligations of HMIT arising under or in connection with the Capital Contribution.

WHEREAS, on December 21, 2015, HMIT issued to HCMLP a Secured Promissory Note in which HMIT agreed to pay HCMLP the principal amount of Sixty-Three Million Dollars ($63,000,000.00), together with interest on the outstanding principal amount at the rate of Two and Sixty-One One Hundredths Percent (2.61%) per annum for the purchase of the limited partnership interests described in the Contribution Agreement;

WHEREAS, on December 24, 2015, HMIT, in addition to cash considerations, issued Security Promissory Notes to the HCMLP Limited Partners in which HMIT agreed to (i) pay Dugaboy the principal amount of Sixty-Two Million, Six Hundred Fifty-Seven Thousand, Six-Hundred and Forty Seven Dollars and Twenty-Seven Cents ($62,657,647.27), (ii) pay Okada the principal amount of Sixteen Million, Three Hundred and Fifty-One Thousand, Three Hundred and Fifty-Seven Hundred Dollars and Seventy-Two Cents ($16,351,357.12), (iii) pay MAP#1 the

1

001023

HCMLPHMIT00000119

principal amount of Three Million, Two Hundred Eighty-Three Thousand, Six Hundred Eight-Eight Dollars and Nine Cents ($3,283,688.09), (iv) pay MAP#2 the principal amount of One Million, Four Hundred Seven Thousand, Three Hundred Six Dollars and Ninety-Two Cents ($1,407,306.92), and (v) pay interest on the outstanding principal amounts of each of the Secured Promissory Notes at the rate of Two and Sixty-One One Hundredths Percent (2.61%) per annum, in order to pay for HMIT's acquisition of the limited partnership interests in HCMLP from the HCMLP Limited Partners (44.5% post issuance per the Contribution Agreement) in accordance with the Partnership Interest Purchase Agreement;

WHEREAS, as a condition to HMIT's acquiring the referenced limited partnership interests from the HCMLP Limited Partners, the HCMLP Limited Partners each required Rand to execute Guaranty Agreements in which Rand guaranteed the full and prompt payment and performance of all indebtedness, liabilities, and obligations of HMIT arising under or in connection with the Secured Promissory Notes;

WHEREAS, on or about December 24, 2015, HCMLP and the HCMLP Limited Partners executed a Fourth Amended and Restated Agreement of Limited Partnership admitting HMIT as a limited partner of HCMLP;

WHEREAS, on or about October 16, 2019, HCMLP filed a chapter 11 petition in bankruptcy ("HCMLP Bankruptcy");

WHEREAS, on or about April 2, 2020, HMIT filed a proof of claim in the HCMLP Bankruptcy totaling $60,298,739.00;

WHEREAS, HCMLP objected to HMIT's proof of claim, and HCMLP sought subordination of HMIT's claim by instituting an adversary proceeding styled *Highland Capital Management, L.P. v. Hunter Mountain Investment Trust* Adv. Proc. No. 20-03105-sgj (Bankr. N.D. Tex) (the "HMIT Adversary Proceeding");

WHEREAS, by stipulation entered in the HMIT Adversary Proceeding and in the HCMLP Bankruptcy, HMIT withdrew its proof of claim;

WHEREAS, on or about October 15, 2021, Marc A. Kirschner ("Kirschner"), as Trustee of the Litigation Sub-Trust, filed an adversary proceeding, styled *Kirschner v. Dondero, et al.*, Adv. Proc. No. 21-03076-sgj (Bankr. N.D. Tex.) (the "Kirchner Litigation"), in which Kirschner named HMIT and Rand as defendants and asserted claims (i) against HMIT for avoidance and recovery of allegedly constructive and/or intentional fraudulent transfers, illegal distributions under the Delaware Revised Uniform Limited Partnership Act, and breach of contract, and (ii) against Rand for breach of contract;

WHEREAS, on or about March 23, 2022, HMIT and Rand filed cross-claims in the Kirschner Litigation against Cross-Defendants, alleging generally that Cross-Defendants are liable for and should be required to pay any and all damages for which HMIT or Rand may be liable in the Kirschner Litigation (the "Cross-Complaint");

2

HCMLPHMIT00000120

WHEREAS, the Cross-Defendants dispute their liability to Cross-Plaintiffs and all allegations contained in the Cross-Complaint; and

WHEREAS, the Parties now wish to resolve the Cross-Complaint and all other potential disputes between them;

NOW THEREFORE, in consideration of the foregoing recitals, the promises contained in this Agreement, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties stipulate and agree as follows:

## TERMS OF AGREEMENT

### 1.    Consideration for Settlement

1.1    <u>Settlement Payment</u>.  The Parties agree that, simultaneously with the execution of this Agreement, and no later than the Effective Date, Cross-Defendants shall make a one-time payment of Fifty Thousand Dollars ($50,000.00) (the "<u>Settlement Payment</u>") to Cross-Plaintiffs consistent with the instructions set forth in Sections 1.3 and 1.4 below.

1.2    <u>Payment of Past Attorneys' Fees, Audit Fees, and Bank Fees</u>.  In addition to the Settlement Payment, Cross-Defendants shall, within ten (10) business days of receiving a written demand by Cross-Plaintiffs, which demand shall include relevant back-up documentation, including at a minimum documentation of attorney rates and time entries, pay (i) all attorneys' fees incurred by Cross-Plaintiffs in connection with either the HCMLP Bankruptcy or the Kirschner Lawsuit, (ii) all audit fees incurred by Cross-Plaintiffs during the pendency of the HCMLP Bankruptcy, and (iii) all bank fees incurred by Cross-Plaintiffs during the pendency of the HCMLP Bankruptcy (the "<u>Past Fees Payment</u>").  The Past Fees Payment shall be made consistent with the instructions set forth in Sections 1.3 and 1.4 below.

1.3    <u>Manner of Payments</u>.  The Settlement Payment, and any other payments to be made pursuant to this Agreement, shall be deemed made when received by wire transfer, without set-off, in immediately available funds.  All such payments should be made in a manner to ensure receipt not later than 5:00 p.m., Central Standard Time, on the date when due under this Agreement. Whenever any payment to be made hereunder is due on a day which is not a Business Day (as defined below), such payment shall be made on the next Business Day thereafter, and any such payment shall be deemed timely made.  "<u>Business Day</u>" means a day of the year (other than a Saturday, Sunday, legal holiday, or other day on which banking institutions in the State of Texas are authorized or required by law to close) in which banking institutions are open for the purpose of conducting commercial business.

1.4    <u>Wire Transfer Instructions</u>.  Unless Cross-Plaintiffs instruct Cross-Defendants otherwise in writing, all payments to be made pursuant to this Agreement shall be made pursuant to the wire transfer instructions set forth below:

| | |
|---|---|
| To: | Rand PE Fund I LP |
| Bank: | PNC Bank |
| Bank Address: | PO Box 640750 |
| | Pittsburgh, PA 15264-0570 |

3

HCMLPHMIT00000121

ABA Routing:          043000096
Account No:           4947568529

1.5  <u>Agreement to Fund Defense</u>.  In addition to the payments contemplated in this Section 1, as further consideration for settlement, Cross-Defendants agree to fund Cross-Plaintiffs' defense costs in the same manner as set forth in Section 1.2 through 1.4 above with regard to any and all claims now or hereafter asserted against Cross-Plaintiffs in the Kirschner Litigation.  Such defense shall include, at a minimum, the retention of a licensed attorney to represent Cross-Plaintiffs in the Kirschner Litigation and payment of all costs and attorneys' fees associated with Cross-Plaintiffs' defense.  For the avoidance of doubt, the Parties agree that Cross-Defendants may select any counsel of their choosing, in their sole discretion, to replace Cross-Plaintiffs' existing counsel and may retain counsel already representing other named defendants in the Kirschner Litigation, so long as no ethical or other legal conflict bars such dual representation.  Cross-Plaintiffs shall retain full control of their defense in the Kirschner Litigation; provided however, that upon the substitution of counsel for Cross-Plaintiffs as contemplated in this Agreement, Cross-Defendants shall only control Cross-Plaintiffs' defense (hereinafter referred to as a "<u>Change of Litigation Control</u>").  In the event of a Change of Litigation Control, Cross-Plaintiffs shall: a) continue to be promptly apprised of all Kirschner Litigation events, issues, and circumstances which may affect Cross-Plaintiffs in said litigation by substitute counsel; and b) retain the right to consent to any resolution of the claims asserted against Cross-Plaintiffs in the Kirschner Litigation that involves (i) the payment of money by Cross-Plaintiffs, or (ii) any admission of liability by Cross-Plaintiffs, whether by settlement, default judgment, or otherwise.

## 2.  **Dismissal of Cross-Complaint**.

4.1  <u>Timing of Dismissal</u>.  Within five (5) business days of the Effective Date of this Agreement, the Parties shall stipulate to the dismissal of the Cross-Complaint with prejudice.

4.2  <u>Responsibility for Filing</u>.  Cross-Plaintiffs shall bear responsibility for ensuring that appropriate notice of the Parties' stipulation of dismissal of the Cross-Complaint is timely filed with the United States Bankruptcy Court for the Northern District of Texas.

## 3.  **Releases**

3.1  <u>Release by Cross-Plaintiffs of Cross-Defendants</u>.  Cross-Plaintiffs, on behalf of themselves, their predecessors, successors, affiliates, and assigns, and each of their past, present, and future officers, directors, managers, agents, employees, representatives, and any person acting by, through, or under the direction of them (collectively, the "<u>Cross-Plaintiff Releasing Parties</u>") hereby fully and irrevocably release and discharge Cross-Defendants, together with their predecessors, successors, affiliates, and assigns, and each of their past, present, and future officers, directors, managers, agents, employees, representatives, and any person acting by, through, or under the direction of them (collectively, the "<u>Cross-Defendant Released Parties</u>"), from all claims, rights, demands, actions, lawsuits, causes of action, grievances, liabilities, obligations, controversies, damages, costs, expenses, losses, and debts, of any nature whatsoever, present or future, known or unknown, contingent or definitive, conditional or unconditional, that the Cross-Plaintiff Releasing Parties had, have, or may have against the Cross-Defendant Released Parties, which arise out of or relate in any manner to the subject matter of this Agreement or the Cross-

4

001026

HCMLPHMIT00000122

Complaint, or any other agreements executed by and between the Parties prior to the Effective Date.

3.2    Release by Cross-Defendants of Cross-Plaintiffs.  Cross-Defendants, on behalf of themselves, their predecessors, successors, affiliates, and assigns, and each of their past, present, and future officers, directors, managers, agents, employees, representatives, and any person acting by, through, or under the direction of them (collectively, the "Cross-Defendant Releasing Parties") hereby fully and irrevocably release and discharge Cross-Plaintiffs, together with their predecessors, successors, affiliates, and assigns, and each of their past, present, and future officers, directors, managers, agents (inclusive of counsels for Cross-Plaintiffs), employees, representatives, and any person acting by, through, or under the direction of them (collectively, the "Cross-Plaintiff Released Parties"), from all claims, rights, demands, actions, lawsuits, causes of action, grievances, liabilities, obligations, controversies, damages, costs, expenses, losses, and debts, of any nature whatsoever, present or future, known or unknown, contingent or definitive, conditional or unconditional, that the Cross-Defendant Releasing Parties had, have, or may have against the Cross-Plaintiff Released Parties, which arise out of or relate in any manner to the subject matter of this Agreement or the Cross-Complaint, or any other agreements executed by and between the Parties prior to the Effective Date, including but not limited to any and all guarantees or debt obligations facially owed by Cross-Plaintiffs to Cross-Defendants.

## 4.    Confidentiality and Non-Disparagement

4.1    Duty of Confidentiality.  The terms of this Agreement and all correspondence relating to this Agreement are and shall remain confidential.  The Parties shall not disclose any information relating to this Agreement or its contents, nor shall any Party cause any individual, entity, affiliate, or agent acting under its direction or control to disclose any information relating to this Agreement or its contents, to any third party whatsoever, except (i) with the prior written consent of the other Party to this Agreement; (ii) as may be required by applicable law, regulation, or order of a governmental authority of competent jurisdiction; (iii) during the course of litigation so long as the disclosure is subject to the same restrictions as are embodied in a court-ordered protective order limiting disclosure to outside counsel; or (iv) in confidence to the Party's counsel, accountants, financial advisors, or tax professionals, whom the Party shall advise of the confidential nature of this Agreement.

4.2    Requirements Prior to Disclosure. Should any Party disclose any information relating to this Agreement or its contents under any of the circumstances specified in Section 3.1, the disclosing Party shall notify the other Parties in writing before any disclosure of the same.  In such case, the disclosing Party shall: (i) make available as soon as practicable (and in any event prior to disclosure), for inspection and copying, a copy of the Agreement or other information the Party intends to disclose; (ii) where applicable, identify the law, regulation, order, or other legal basis for the disclosure; and (iii) to the extent possible, refrain from disclosing anything for at least ten (10) business days following the disclosing Party's written notice of disclosure to give the other Parties an opportunity to resist disclosure or seek other appropriate legal relief.  In any event, the Parties shall use reasonable efforts to limit the disclosure of the terms and conditions of this Agreement and seek a protective order or other confidential treatment of the disclosed information.

001027

HCMLPHMIT00000123

4.3  <u>Duty of Non-Disparagement</u>.  Subject to applicable law, each of the Parties covenant and agree that neither they nor any of their respective agents, subsidiaries, affiliates, successors, assigns, officers, employees or directors, will in any way publicly disparage, call into disrepute, defame, slander or otherwise criticize the opposing Parties or such other Parties' agents, subsidiaries, affiliates, successors, assigns, officers, employees, agents, or directors.

4.4  <u>Violation of Duties of Confidentiality and Non-Disparagement</u>.  Any Party violating their duties of confidentiality or non-disparagement shall be responsible for payment of any damages incurred by the other Parties as a result of the violation.  The Parties also shall have the right and standing to seek an injunction against any person and/or entity violating this Section 5, or any person and/or entity who has announced an intention to violate this Section 5 or who has failed to desist from any such violation after written demand to do so, from further or future violations.  All attorneys' fees, costs, and expenses incurred by a Party in enforcing its rights pursuant to this Section 5 shall be the liability of and borne by each and every person and/or entity against whom injunctive, monetary, or other relief is obtained.

**5.  Covenants, Representations, and Warranties**

5.1  <u>Authority to Enter Into Agreement</u>. The Parties covenant and warrant that they have the full power and authority to enter into this Agreement and to carry out its terms and that they have not previously assigned, sold, or otherwise pledged or encumbered any right, title, or interest in the claims released herein or their right, power, or authority to enter into this Agreement.

5.2  <u>Authority to Execute on Behalf of Another</u>.  Any person signing this Agreement on behalf of another person or entity represents and warrants that he or she has full power and authority to do so and that said other person or entity is bound hereby.

5.3  <u>No Admission of Liability</u>.  By entering into this Agreement, no Party is admitting any liability to any other Party or any other person or entity.  Neither this Agreement, nor any document or instrument delivered hereunder, nor any statement, transaction, or proceeding in connection with the negotiation, execution, or implementation of this Agreement, is intended to be or shall be construed as or deemed to be evidence of an admission or concession of any liability or wrongdoing or of the truth of any allegations asserted by any Party against another, and no such statement, transaction, or proceeding shall be admissible in evidence for any such purpose except as required to enforce this Agreement.

5.4  <u>Covenant Not To Sue.</u>  The Parties, for themselves, their heirs, and successors hereby covenant and agree not to file any lawsuit or other action concerning the claims released herein, other than an action to enforce the Agreement.

5.5  <u>Representation by Counsel.</u>  Each Party has executed this Agreement upon its own independent judgment and upon the advice of its independent legal counsel, and not in reliance upon any representation, express or implied, of any kind or nature from any other Party or Party's counsel.

6

HCMLPHMIT00000124

## 6.    Miscellaneous Provisions

6.1    <u>Governing Law</u>.    The provisions of this Agreement shall be interpreted in accordance with, and governed by, the laws of the State of Texas, without regard to conflict of laws principles.

6.2    <u>Dispute Resolution</u>.    In the event there is an unresolved legal dispute between the Parties and/or any of their respective officers, directors, partners, employees, agents, affiliates or other representatives that involves legal rights or remedies arising from this Agreement, the Parties agree to submit their dispute to binding arbitration under the authority of the Federal Arbitration Act; provided, however, that any Party may pursue a temporary restraining order and/or preliminary injunctive relief in connection with any confidentiality covenants or agreements binding on the other party, with related expedited discovery for the parties, in a court of law, and thereafter, require arbitration of all issues of final relief.  The arbitration will be conducted by the American Arbitration Association pursuant to the rules governing complex commercial disputes. A panel of three arbitrators will preside over the arbitration and will together deliberate, decide, and issue the final award.  The arbitrators shall be duly licensed to practice law in the state of Texas. The arbitrators shall be required to state in a written opinion all facts and conclusions of law relied upon to support any decision rendered. The arbitrators will not have the authority to render a decision that contains an outcome based on error of state or federal law or to fashion a cause of action or remedy not otherwise provided for under applicable state or federal law.  Any dispute over whether the arbitrators have failed to comply with the foregoing will be resolved by summary judgment in a court of law.  All proceedings shall be conducted in Dallas, Texas or another mutually agreeable site.  Each party shall bear its own attorneys' fees, costs, and expenses, including any costs of experts, witnesses, and/or travel.

6.3    <u>Waiver of Right to Jury Trial</u>.

EACH PARTY ACKNOWLEDGES AND AGREES THAT ANY CONTROVERSY WHICH MAY ARISE UNDER THIS AGREEMENT IS LIKELY TO INVOLVE COMPLICATED AND DIFFICULT ISSUES AND, THEREFORE, EACH SUCH PARTY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LEGAL ACTION ARISING OUT OF OR RELATING TO THIS AGREEMENT. EACH PARTY TO THIS AGREEMENT CERTIFIES AND ACKNOWLEDGES THAT (A) NO REPRESENTATIVE OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT SEEK TO ENFORCE THE FOREGOING WAIVER IN THE EVENT OF A LEGAL ACTION, (B) SUCH PARTY HAS CONSIDERED THE IMPLICATIONS OF THIS WAIVER, AND (C) SUCH PARTY MAKES THIS WAIVER VOLUNTARILY.

6.4    <u>Cooperation</u>.    Each of the Parties hereto shall execute such additional documents and take such additional actions as are or may be reasonably necessary to effectuate the purposes of this Agreement.

001029

HCMLPHMIT00000125

6.5     Counterparts.  This Agreement may be executed in counterparts.  All counterparts so executed shall constitute one agreement binding on all parties hereto, notwithstanding that all Parties are not signatory to the original or to the same counterpart.

6.6     Entire Agreement/No Other Agreements.

THE PARTIES EXPRESSLY ACKNOWLEDGE, COVENANT, AND AGREE THAT THIS AGREEMENT AND ITS EXHIBITS CONSTITUTE THE ENTIRE AGREEMENT OF THE PARTIES WITH RESPECT TO THE SUBJECT MATTER CONTAINED THEREIN.  THE PARTIES EXPRESSLY WAIVE AND DISAVOW ALL PRIOR AGREEMENTS, COVENANTS, REPRESENTATIONS, AND WARRANTIES, EXPRESS OR IMPLIED, WRITTEN OR ORAL, OF THE PARTIES CONCERNING THE SUBJECT MATTER OF THIS AGREEMENT.

6.7     Modification.  This Agreement shall not be modified or amended except by an instrument in writing signed by an authorized representative of each Party.

6.8     No Third-Party Beneficiaries.  This Agreement is for the sole benefit of the Parties and their respective successors and permitted assigns and Released Parties, and nothing herein, express or implied, is intended to or shall confer upon any other person or entity any legal or equitable rights, benefit, or remedy of any nature whatsoever.

6.9     No Waiver.  The failure by any Party to enforce any term of this Agreement shall not be deemed a waiver of the term or any other term of the Agreement, nor shall any Party be deemed to have waived any right to performance under this Agreement unless such waiver is made expressly in writing by the Party making the waiver.

6.10     Severability.  It is expressly understood and agreed that each provision of this Agreement shall be deemed to be severable, and if any provision herein is determined to be invalid, illegal, or unenforceable by a court of competent jurisdiction for any reason, then such invalidity, illegality, and/or unenforceability shall not affect the validity, legality, and enforceability of the remaining provisions of this Agreement.

6.11     Mutual Interpretation.  The Parties agree and stipulate that this Agreement was negotiated on an "arms-length" basis between parties of equal bargaining power, and that this Agreement has been drafted jointly by the Parties and their respective Counsel.  Accordingly, this Agreement shall be neutral, and no ambiguity shall be construed in favor of or against either Party.

6.12     Binding Effect; Successors and Assigns.  This Agreement, and each provision of this Agreement, shall inure to the benefit of, and shall be binding upon, the Parties as well as the legal successors and assigns of the Parties.

001030

HCMLPHMIT00000126

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date shown below.

**Hunter Mountain Investment Trust**

Name: _John W. Havic_

Title: _Trustee_

Date: _6/21/22_


**Rand PE Fund I, LP, Series 1.**

Name: _John W. Havic_

Title: _Manager, Rand PE, LP_

Date: _6/21/22_


_____

**James D. Dondero**

Date: _____


_____

**The Mark and Pamela Okada Family Trust – Exempt Trust #1**

Name: _____

Title: _____

Date: _____


_____

**Mark K. Okada**

Date: _____


_____

**The Dugaboy Investment Trust,**

Name: _____

Title: _____

Date: _____


_____

**The Mark and Pamela Okada Family Trust – Exempt Trust #2**

Name: _____

Title: _____

Date: _____


9

001031

HCMLPHMIT00000127

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date shown below.

_____

**Hunter Mountain Investment Trust**

Name: _____

Title: _____

Date: _____

_____

**Rand PE Fund I, LP, Series 1.**

Name: _____

Title: _____

Date: _____

_____

**James D. Dondero**

Date: _____

Title: _____

Date: _____

_____

**Mark K. Okada**

Date: _____

_____

**The Mark and Pamela Okada Family Trust – Exempt Trust #1**

Name: _____

_____

**The Dugaboy Investment Trust,**

Name: _____

Title: _____

9

001032

HCMLPHMIT00000128

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date shown below.

_____

**Hunter Mountain Investment Trust**

Name: _____

Title: _____

Date: _____


_____

**Rand PE Fund I, LP, Series 1.**

Name: _____

Title: _____

Date: _____


_____

**James D. Dondero**

Date: _____


_____

**The Mark and Pamela Okada Family
Trust – Exempt Trust #1**

Name: _____

Title: Trustee

Date: June 21, 2022


_____

**Mark K. Okada**

Date: _____


_____

**The Dugaboy Investment Trust,**

Name: _____

Title: _____

Date: _____


_____

**The Mark and Pamela Okada Family
Trust – Exempt Trust #2**

Name: _____

Title: Trustee

Date: June 21, 2022


9

HCMLPHMIT00000129

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date shown below.

**Hunter Mountain Investment Trust**

Name: _____

Title: _____

Date: _____

**Rand PE Fund I, LP, Series 1.**

Name: _____

Title: _____

Date: _____

**James D. Dondero**

Date: _____

**The Mark and Pamela Okada Family Trust – Exempt Trust #1**

Name: _____

Title: _____

Date: _____

**Mark K. Okada**

Date: _____

**The Dugaboy Investment Trust,**

Name: _Larry _____

Title: _TRUSTEE_____

Date: _6|21|22_____

**The Mark and Pamela Okada Family Trust – Exempt Trust #2**

Name: _____

Title: _____

Date: _____

001034

HCMLPHMIT00000130

**EXHIBIT 2**

001035

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**To:** "John A. Morris" <jmorris@pszjlaw.com>, "Jeff Pomerantz" <jpomerantz@pszjlaw.com>
**Cc:** "Amelia L. Hurt" <Amelia.Hurt@kellyhart.com>
**Subject:** FW: Joinder to Confidentiality Agreement
**Date:** Thu, 17 Apr 2025 17:33:36 +0000
**Importance:** Normal
**Attachments:** James_D._Shields_Joinder_to_CA.pdf
**Inline-Images:** image001.png

---

John,

Please see attached Joinder from Jim Shields.  Please have Mr. Seery execute and then return it to me so I can forward to Mr. Shields.  Thank you.

**Louis M. Phillips**
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

*louis.phillips@kellyhart.com*
*www.kellyhart.com*

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

---

**From:** Jim Shields <jshields@shieldslegal.com>
**Sent:** Wednesday, April 16, 2025 11:53 AM
**To:** Louis M. Phillips <Louis.Phillips@kellyhart.com>

HCMLPHMIT00000135

**Cc:** Kasey Rose <krose@shieldslegal.com>
**Subject:** RE: Joinder to Confidentiality Agreement

**EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.**

## JOINDER TO CONFIDENTIALITY AGREEMENT

This JOINDER TO CONFIDENTIALITY AGREEMENT (this "**Joinder**") is entered into as of March 18, 2025 (the "**Effective Date**") by and between Highland Capital Management, L.P., a Delaware limited partnership ("**Highland**"), and James D. Shields (the "**Joining Party**"). Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Confidentiality Agreement (as hereinafter defined).

WHEREAS, reference is made to that certain Confidentiality Agreement as of March 18, 2025 by and among Highland, on the one hand, and Mark Patrick, a United States citizen and resident of Dallas, Texas, Hunter Mountain Investment Trust, a Delaware statutory trust, Charitable DAF Holdco, Ltd., a Cayman Islands exempted company, CDH GP, Ltd., a Cayman Islands exempted company, Charitable DAF Fund, L.P., a Cayman Islands exempted limited partnership, and CLO Holdco, Ltd., a Cayman Islands exempted company, Rand Advisors, LLC, a Delaware limited liability company, Rand PE Fund I, LP, a Delaware series limited partnership, Rand PE Fund Management, LLC, a Delaware limited liability company, Atlas IDF, LP, a Delaware limited partnership, Atlas IDF GP, LLC, a Delaware limited liability company, on the other hand (the "**Confidentiality Agreement**");

WHEREAS, the Joining Party is a Representative of Recipients and desires to receive certain Confidential Information for the sole limited purpose of advising Recipients in connection with its evaluation, negotiation and consummation of a Proposed Settlement; and

WHEREAS, in accordance with Section 4 of the Confidentiality Agreement and as a condition to Highland providing, or permitting Recipients to provide, such Confidential Information to the Joining Party, the Joining Party agrees to the terms and conditions set forth in this Joinder.

NOW, THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and agreed, the parties hereto, intending to be legally bound, hereby agree as follows:

1.     The Joining Party acknowledges that it has received and reviewed a copy of the Confidentiality Agreement.  The Joining Party hereby joins as a Party to, and agrees to be bound by all of the terms, provisions and conditions set forth in, the Confidentiality Agreement as a "Recipient" thereunder, with the same force and effect as if originally named therein as a "Recipient."

2.     Without limiting the generality of the foregoing, the Joining Party hereby (a) makes each of the representations and warranties set forth in Section 1 of the Confidentiality Agreement to Highland and (b) represents and warrants to Highland that such Joining Party (i) does not currently represent any Dondero Related Party and (ii) has no duty or obligation to provide any Confidential Information to any Person not a party to this Agreement, whether through a common or joint interest agreement or otherwise, and does not represent any Person with such a duty or obligation.

James D. Shields Joinder to CA (002)

001038

HCMLPHMIT00000137

3.      Each of the terms, provisions and conditions set forth in Section 9 of the Confidentiality Agreement are incorporated herein by reference in their entirety and shall apply to this Agreement *mutatis mutandis*.

4.      A true and correct copy of the Confidentiality Agreement, as modified in paragraph 9(f) by agreement of Highland and Joining Party, is attached hereto as Exhibit "A".

IN WITNESS WHEREOF, the parties hereto have executed this Joinder to be effective as of the Effective Date.

**HIGHLAND:**

HIGHLAND CAPITAL MANAGEMENT, L.P.

By: _____
Name: James P. Seery, Jr.
Title: Chief Executive Officer

**JOINING PARTY:**

_____
Name: James D. Shields

James D. Shields Joinder to CA (002)

001039

HCMLPHMIT00000138

Execution Version

*Joinder of confidentility Agreement*

## CONFIDENTIALITY AGREEMENT

This CONFIDENTIALITY AGREEMENT (this "**Agreement**") is entered into as of March 18, 2025 (the "**Effective Date**") by and among Highland Capital Management, L.P., a Delaware limited partnership ("**Highland**" or the "**Disclosing Party**"), on the one hand, and Mark Patrick, a United States citizen and resident of Dallas, Texas ("**Mr. Patrick**"), Hunter Mountain Investment Trust, a Delaware statutory trust ("**Hunter Mountain**"), Charitable DAF Holdco, Ltd., a Cayman Islands exempted company ("**DAF Holdco**"), CDH GP, Ltd., a Cayman Islands exempted company ("**DAF GP**"), Charitable DAF Fund, L.P., a Cayman Islands exempted limited partnership ("**DAF Fund**"), and CLO Holdco, Ltd., a Cayman Islands exempted company ("**CLO Holdco**", and together with DAF Holdco, DAF GP and DAF Fund, the "**DAF Entities**"), Rand Advisors, LLC, a Delaware limited liability company ("**Rand Advisors**"), Rand PE Fund I, LP, a Delaware series limited partnership ("**Rand PE Fund**"), Rand PE Fund Management, LLC, a Delaware limited liability company ("**Rand GP**"), Atlas IDF, LP, a Delaware limited partnership ("**Atlas IDF**"), Atlas IDF GP, LLC, a Delaware limited liability company ("**Atlas GP**" and together with Rand Advisors, Rand PE Fund, Rand GP and Atlas IDF, the "**Rand Entities**", and the Rand Entities together with Mr. Patrick, Hunter Mountain and the DAF Entities, the "**Recipients**"), on the other hand. Highland and the Recipients are sometimes referred to herein individually as a "**Party**" and collectively as the "**Parties**."

### Recitals

WHEREAS, Mr. Patrick hereby represents and warrants that he is a control person for each of Hunter Mountain, the DAF Entities and the Rand Entities;

WHEREAS, there are several active litigations to which Highland or one of its affiliates, on the one hand, and one or more of the Recipients, on the other hand, are parties, including, without limitation, the matters set forth on <u>Exhibit A</u> hereto (collectively, the "**Pending Litigations**");

WHEREAS, the Parties desire to enter into good faith settlement discussions in an effort to reach a mutually acceptable global resolution to the Pending Litigations and all potential claims and causes of action against each other (the "**Potential Settlement**");

WHEREAS, in connection with negotiating the Potential Settlement, it is anticipated that Highland will provide the Recipients with certain Confidential Information (as hereinafter defined); and

WHEREAS, as a condition to Highland providing Recipients with any such Confidential Information, the Recipients agree to the terms and conditions set forth in this Agreement.

### Agreement

NOW, THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and agreed, the Parties, intending to be legally bound, hereby agree as follows:

001040

HCMLPHMIT00000139

1.    **Representations and Warranties**

(a)    Each Party hereby represents and warrants to the other Parties as follows:

(i)    <u>Existence and Good Standing</u>. Such Party is a legal entity duly organized, validly existing and, to the extent applicable in such jurisdiction, in good standing under the Laws (as hereinafter defined) of the jurisdiction in which it is incorporated or formed. Such Party has all requisite corporate or similar right, power, authority and capacity to own, lease and operate the properties and assets it owns, leases and operates. Each Party is qualified to do business as a foreign entity in each jurisdiction in which its ownership of property or the conduct of its business as now conducted requires it to qualify.

(ii)    <u>Authority; Enforceability</u>. Such Party has the full power and authority to execute this Agreement and to perform its obligations under this Agreement. The execution, delivery and performance of this Agreement have been duly and validly authorized by all required action on behalf of such Party in accordance with its respective Organizational Documents (as hereinafter defined) and applicable Law. This Agreement constitute the valid and binding obligations of, and enforceable against, such Party.

(iii)    <u>No Violations</u>. The execution and delivery by such Party of this Agreement, the performance and compliance with the terms and conditions hereof and thereof by such Party, and the performance by such Parent of its obligations contemplated hereby, in each case, will not (with or without notice or passage of time, or both):

(1) violate, conflict with, result in a breach of or constitute a default under any of the provisions of the Organizational Documents of such Party; or

(2) breach, violate or conflict with any provision of any Law or Permit applicable to such Party.

(iv)    <u>Legal Proceedings</u>. There are no judicial, administrative or arbitral actions, suits, hearings, inquiries, charges, investigations, administrative proceedings, grievances or formal complaints or other proceedings (public or private) commenced, brought, conducted or heard before, or otherwise involving, any Governmental Entity or arbitrator, in each case, pending nor threatened that (i) challenge the validity or enforceability of Party's obligations under this Agreement or (b) seek to prevent or delay, or otherwise would reasonably be expected to adversely affect, the performance by such Party of its obligations hereunder.

(b)    Each Recipient hereby represents and warrants to Highland as follows:

(i) None of James Dondero, nor any Person directly or indirectly owned or controlled by Mr. Dondero (including, without limitation, Dugaboy Investment Trust) nor or any attorney, agent, employee, or representative engaged or working for benefit of Mr. Dondero nor any Person directly or indirectly owned or controlled by him (collectively, the **"Dondero Related Parties"**) directly or indirectly owns any interest in, or directly or indirectly has any control over, such Recipient, including, without limitation, as the result of any written or oral contract, agreement, arrangement or obligation.

2

001041

HCMLPHMIT00000140

(ii)  Such Recipient does not represent and is not acting on behalf of any Dondero Related Party.

(iii)  Such Recipient has no duty or obligation to provide any Confidential Information to any Person not a party to this Agreement, whether through a common or joint interest agreement or otherwise, and is not representing or acting on behalf of any Person with such a duty or obligation.

## 2.    Confidential and Proprietary Nature of the Information

Recipients acknowledge the confidential and proprietary nature of the Confidential Information, agree to hold and keep the Confidential Information in strict confidence as provided in this Agreement, agree that the use of any such Confidential Information is expressly limited to the pursuit of a Potential Settlement and shall not be used for any other purpose or in any other manner except as expressly provided in this Agreement, and otherwise agree to each and every restriction and obligation in this Agreement.

## 3.    Confidential Information

As used in this Agreement, the term **"Confidential Information"** means and includes (a) any and all of the following items that will be disclosed to any Recipient or any of their respective Representatives (as hereinafter defined) by or on behalf of Highland, whether orally or in writing and without regard to whether Highland has specifically designated such item as confidential, proprietary or non-public: any and all confidential, proprietary or non-public information concerning the business or affairs of Highland or any of its affiliates or related accounts, or other Persons (as hereinafter defined) (which includes, for the avoidance of doubt and without limitation, Highland Claimant Trust, Highland Litigation Sub-Trust, Highland Indemnity Trust, each of their and Highland's direct and indirect subsidiaries, and each of their respective affiliates, and its and their respective parent entities, beneficiaries, members, shareholders, owners, creditors, trustees, oversight boards, directors, managers, officers, employees, agents, advisors and representatives (collectively, the **"Highland Related Parties"**)), including, without limitation, any written or oral information, reports and data concerning financial statements, assets, liabilities, indemnity and other obligations, cash flow, income, and expenses; past, current or planned investment or portfolio information; contracts and agreements; know-how, inventions and ideas, whether past, current or planned; partner, beneficiary, owner or investor lists; partner, beneficiary, owner or investor information; business plans; entity structure details; all compliance-related reports, records and information; and any other information, however documented, that is proprietary or non-public or is a trade secret within the meaning of applicable state trade secret Law, and (b) any and all statements or representations made in the course of discussing, negotiating or evaluating a Potential Settlement, including, without limitation, the terms of any Potential Settlement and the fact that (i) Confidential Information has been disclosed to Recipient and (ii) any discussions or negotiations are taking place concerning a Potential Settlement.

To the extent that any Confidential Information includes information or materials subject to the attorney-client privilege, work-product doctrine, or any other applicable privilege concerning pending or threatened legal proceedings or governmental investigations, the Parties understand and agree that they have a commonality of interest with respect to such matters, and it

001042

HCMLPHMIT00000141

is their desire, intention, and mutual understanding that the sharing of such information or materials is not intended to, and shall not, waive or diminish in any way the confidentiality of such information or material or its continued protection under the attorney-client privilege, work-product doctrine, or other applicable privilege. Accordingly, all Confidential Information disclosed by or on behalf of Highland that is entitled to protection under the attorney-client privilege, work-product doctrine, or other applicable privilege shall remain entitled to such protection under these privileges and this Agreement.

**4.        Restricted Use of Confidential Information**

Recipients agree that the Confidential Information (a) shall be kept strictly confidential by each Recipient and (b) without limiting the foregoing, shall not be disclosed by or on behalf of any Recipient to any Person (as hereinafter defined) except as otherwise expressly permitted by this Agreement. It is understood and the Recipients agree that Confidential Information may only be disclosed to Mr. Patrick and such specific legal counsel, accountants and financial advisors of the Recipients to whom such disclosure has been consented to in writing by Highland in its sole discretion (which consent may be given via email) (collectively "**Representatives**") and who (i) require such Confidential Information for the purpose of evaluating, negotiating or consummating a Proposed Settlement (ii) are informed by Recipient of the confidential nature of the Confidential Information and the obligations set forth in this Agreement, and (iii) execute a written joinder in the form annexed hereto as Exhibit B pursuant to which the Representative agrees to be bound to this Agreement as if they were an original Party hereto, with such joinder including, without limitation, a representation and warranty that such Representative (1) does not currently represent any Dondero Related Party and (2) has no duty or obligation to provide any Confidential Information to any Person not a party to this Agreement, whether through a common or joint interest agreement or otherwise, and does not represent any Person with such a duty or obligation. Recipients further agree that Recipients and their Representatives shall not use any of the Confidential Information to the detriment of Highland or any Highland Related Party or for any reason or purpose other than evaluating, negotiating or consummating a Proposed Settlement. Recipients shall enforce this Agreement as to its Representatives and take such action, legal or otherwise, to the extent necessary to cause them to comply with this Agreement and thereby prevent any disclosure of Confidential Information by any of its Representatives (including, without limitation, all actions that any Recipient would take to protect its own confidential information).

Without limiting the generality of the foregoing and for the avoidance of doubt, the Recipients and their Representatives shall not disclose or refer to any Confidential Information to (a) subject to Section 5 below, any Governmental Entity (as hereinafter defined), including, without limitation, in any pleadings or submissions, or (b) any Dondero Related Party. The Parties acknowledge that it is their collective intent that no Confidential Information disclosed hereunder may be examined in any proceeding of a Governmental Entity (or any discovery relating to any such proceeding), and all Confidential Information shall be entitled to all protections applicable under Federal Rule of Evidence 408 and any other protections afforded to settlement and compromise communications under any other applicable Law.

4

5.    **Legally Compelled Disclosure**

If any Recipient or any of its Representatives becomes compelled by Law (whether by oral questions, interrogatories, requests for information or documents, subpoena, civil or criminal investigative demand, or similar process) to make any disclosure that is prohibited or otherwise constrained by this Agreement, such Recipient or its Representative, as the case may be, shall provide Highland with immediate notice of such legal proceedings, including all related documentation, so Highland may (a) seek an appropriate protective order or other appropriate relief, or (b) waive compliance with the provisions of this Agreement.  In the absence of a protective order or Recipients receiving a written waiver from Highland, Recipients or their Representatives are permitted (with Highland's cooperation but at Recipient's expense) to disclose that portion (and only that portion) of the Confidential Information that Recipient or its Representative is legally compelled by an order of an applicable Governmental Entity of competent jurisdiction to disclose; provided, however, that Recipient and its Representatives must use best efforts to obtain reliable assurance that confidential treatment will be accorded by any Person to whom any Confidential Information is so disclosed.

6.    **Return or Destruction of Confidential Information**

If Highland notifies Recipients that it wishes Recipients to return all Confidential Information, then Recipients (i) shall promptly deliver to Highland all documents or other materials disclosed by or on behalf of Highland to Recipient or its Representatives constituting Confidential Information, together with all copies and summaries thereof in the possession or under the control of Recipients or their Representatives, and (ii) will destroy materials generated by Recipients or their Representatives that include or refer to any part of the Confidential Information, without retaining any copies, including, without limitation, any electronically stored copies or attachments to emails, of any such documents or materials.  Written notice of return or destruction shall constitute a valid termination of access to Confidential Information and shall be deemed to have been given at the time Highland sends such notice.  Such notice may be sent in any manner reasonably calculated to notify Recipients of the termination.

7.    **No Obligation to Negotiate a Potential Settlement**

None of the Parties shall have rights or obligations of any kind whatsoever with respect to any Potential Settlement by virtue of this Agreement other than for the matters specifically agreed to herein.  Without limiting the preceding sentence, nothing in this Agreement requires any Party to enter into any Potential Settlement or to negotiate the same for any specified period of time or on any specific terms.

8.    **No Representations or Warranties**

Highland shall have no obligation to provide any information—confidential or otherwise—to the Recipients and retains the right to determine, in its sole discretion, what information, if any, it wishes to make available to Recipients, and neither Highland nor any Highland Related Party makes any representation or warranty (express or implied) concerning the completeness or accuracy of the Confidential Information.

001044

HCMLPHMIT00000143

## 9.  Miscellaneous

(a)  <u>Modification</u>.  This Agreement may only be modified or waived by a separate writing signed by the Party or Parties expressly modifying or waiving this Agreement.

(b)  <u>Waiver</u>.  Neither the failure nor any delay by any Party in exercising any right, power, or privilege under this Agreement will operate as a waiver of such right, power, or privilege, and no single or partial exercise of any such right, power, or privilege will preclude any other or further exercise of such right, power, or privilege or the exercise of any other right, power, or privilege.

(c)  <u>Certain Definitions</u>.

(i)  The term **"Governmental Entity"** means any federal, national, state, foreign, provincial, local or other government or any governmental, regulatory, administrative or self-regulatory authority, agency, bureau, board, commission, court, judicial or arbitral body, department, political subdivision, tribunal or other instrumentality thereof, including any fiscal intermediary or administrative contractor acting on behalf of any of the foregoing.

(ii)  The term **"Law"** means any law, rule, regulation, statute, code, ordinance, decree or other restriction of any Governmental Entity or any order, injunction, judgment, decree, ruling, writ, assessment or award of a Governmental Entity.

(iii)  The term **"Organizational Documents"** means certificates of incorporation, bylaws, certificates of formation, certificates of trust, limited liability company agreements, limited liability partnership agreements, partnership or limited partnership agreements, trust agreements or other similar formation or governing documents of any Person, in each case, as amended, restated or otherwise modified to date.

(iv)  The term **"Person"** means any individual, corporation (including any non-profit corporation), general or limited partnership, limited liability company, joint venture, estate, trust, association, organization, labor union, any other business entity, or a Governmental Entity.

(d)  <u>Severability</u>.  The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provisions of this Agreement, which shall remain in full force and effect.  If any of the terms, covenants or provisions of this Agreement are determined to be unenforceable by reason of its extent, duration, scope or otherwise, then the Parties contemplate and intend that the authority making such determination shall reduce such extent, duration, scope or other provision and enforce them in their reduced form for all purposes contemplated by this Agreement.

(e)  <u>Breach</u>.  Recipients agree that Highland will be irreparably injured by a breach of this Agreement by any Recipient or its Representatives, that monetary remedies will be inadequate to protect Highland against any actual or threatened breach of this Agreement by any Recipient or by its Representatives, and that Highland shall be entitled to an injunction or other equitable relief as a remedy for any breach as a matter of right and without the necessity of having to post a bond.  Such remedy shall not be deemed to be the exclusive remedy for a breach of this Agreement, but

6

001045

HCMLPHMIT00000144

shall be in addition to all other remedies available at law or equity. The non-prevailing Party shall pay the other Party's costs and expenses in any action to enforce the terms of this Agreement.



(f) <u>Liability and Indemnity</u>. Recipients shall, ~~jointly and severally~~ be liable to and shall indemnify and hold Highland and the Highland Related Parties harmless from and against any and all claims, suits, losses, damages, costs or expenses, including reasonable attorney fees, incurred or suffered by Highland or any Highland Related Party as a result of any Recipient or its ~~Representatives~~ violation of this Agreement, including, without limitation, using or disclosing any Confidential Information other than in accordance with this Agreement, whether such use or disclosure is performed negligently or otherwise.

(g) <u>Notices</u>. All notices, requests, demands, claims, and other communications hereunder shall be in writing. Any notice, request, demand, claim or other communication hereunder shall be deemed duly delivered: (a) four (4) business days after it is sent by registered or certified mail, return receipt requested, postage prepaid; (b) one (1) business day after it is sent for next business day delivery via a reputable nationwide overnight courier service; (c) when sent, if emailed on a business day; and (d) the next business day following the day on which the email is sent if emailed on a day that is not a business day, in each case to the intended recipient as set forth below:

If to Highland:    Highland Capital Management, L.P.
100 Crescent Court, Suite 1850
Dallas, Texas 75201
Attention: James P. Seery, Jr.
Email: jpseeryjr@gmail.com AND notices@highlandcapital.com

With copies to:

Pachulski Stang Ziehl & Jones LLP
780 3rd Avenue #34
New York, New York 10017
Attention: John A. Morris
Email: jmorris@pszjlaw.com

If to Recipients:    c/o Mark Patrick
6716 Glenhurst Dr.
Dallas, Texas 75254
Email: mpatrick@dafholdco.com

With copies to:

Kelly Hart & Pitre
301 Main Street Suite 1600
Baton Rouge, Louisiana 70801
Attention: Louis M. Phillips
Email: Louis.Phillips@kellyhart.com

7

001046
HCMLPHMIT00000145

(h)    <u>Governing Law; Jurisdiction</u>.  This Agreement shall be interpreted and construed in accordance with the laws of the State of Delaware, without regard to conflict of laws provisions. Each Party hereby irrevocably submits and acknowledges and recognizes the exclusive jurisdiction of the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (which court, for purposes of this Agreement, is the only court of competent jurisdiction), over any suit, action or other proceeding arising out of, under or in connection with this Agreement or its subject matter.  Each Party irrevocably consents to service of process in any action or proceeding arising out of or relating to this Agreement in the manner provided for notices in <u>Section 9(g)</u> above. Nothing in this Agreement shall affect the right of any Party to serve process in any manner permitted by law.

(i)    <u>Execution of Agreement</u>.  This Agreement may be executed in one or more counterparts, each of which will be deemed to be an original copy of this Agreement, and all of which, when taken together, shall be deemed to constitute one and the same agreement.  The exchange of copies of this Agreement and of signature pages by email shall constitute effective execution and delivery of this Agreement as to the Parties and may be used in lieu of the original Agreement for all purposes.  Signatures of the Parties transmitted by email shall be deemed to be their original signatures for any purpose whatsoever.

(j)    <u>Headings</u>.  The headings of the sections of this Agreement are inserted for convenience of reference only and shall not control or affect the meaning or construction of any of the terms of this Agreement in any manner.

(k)    <u>Construction</u>.  This Agreement has been fully negotiated by the Parties. Accordingly, in interpreting this Agreement, no weight shall be placed on which Party to this Agreement or its counsel drafted the provision being interpreted.

[SIGNATURES ON FOLLOWING PAGE]

8

001047

HCMLPHMIT00000146

IN WITNESS WHEREOF, the Parties have executed this Agreement to be effective as of the Effective Date.

**HIGHLAND:**

HIGHLAND CAPITAL MANAGEMENT, L.P.

By: _____
Name: James P. Seery, Jr.
Title: Chief Executive Officer

**RECIPIENTS:**

_____
MARK PATRICK

HUNTER MOUNTAIN INVESTMENT TRUST

By: _____
Name: Mark Patrick
Title: Administrator

CHARITABLE DAF HOLDCO, LTD.

By: _____
Name: Mark Patrick
Title: Director

CDH GP, LTD.

By: _____
Name: Mark Patrick
Title: Director

SIGNATURE PAGE TO CONFIDENTIALITY AGREEMENT

**001048**

HCMLPHMIT00000147

CHARITABLE DAF FUND, L.P.
By: CDH GP, Ltd., its General Partner

By: _____
Name: Mark Patrick
Title: Managing Member


CLO HOLDCO, LTD.

By: _____
Name: Mark Patrick
Title: Director


RAND ADVISORS, LLC

By: _____
Name: Mark Patrick
Title: President


RAND PE FUND I, L.P.
By: Rand PE Fund Management, LLC, its General
Partner

By: _____
Name: Mark Patrick
Title: President


RAND PE FUND MANAGEMENT, LLC

By: _____
Name: Mark Patrick
Title: President


Type text here


SIGNATURE PAGE TO CONFIDENTIALITY AGREEMENT

001049

HCMLPHMIT00000148

ATLAS IDF, LP
By: Atlas IDF GP, LLC its General Partner

By: _____
Name: Mark Patrick
Title: President

Type text here

ATLAS IDF GP, LLC

By: _____
Name: Mark Patrick
Title: President

SIGNATURE PAGE TO CONFIDENTIALITY AGREEMENT

001050

HCMLPHMIT00000149

## EXHIBIT A

### <u>PENDING LITIGATION</u>

1.        DAF/CLOH appeal of Seery Retention Order (21-cv-01585-S)

2.        HMIT appeal of Order denying leave to file Claims Trading Complaint (23-cv-02071-E)

3.        HMIT appeal of Order dismissing Valuation Complaint (24-cv-01531-X)

4.        HMIT appeal of Order staying motion for leave to remove Seery (24-cv-01786)

5.        DAF appeal of decision affirming dismissal of HarbourVest Complaint (24-10880)

001051
HCMLPHMIT00000150

**EXHIBIT 2**

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**To:** "John A. Morris" <jmorris@pszjlaw.com>
**Cc:** "Amelia L. Hurt" <Amelia.Hurt@kellyhart.com>
**Subject:** Possibility of brief call?
**Date:** Fri, 9 May 2025 19:02:46 +0000
**Importance:** Normal
**Inline-Images:** image003.png

---

John,

I just got back from Turkey, and am amazed at the increased toll that come with increased age.  But am in the office today.

While I was over there we got together and went through the settlement agreement draft.  We aim to get a responsive redline by Monday or Tuesday.  I just want to update as to a shift represented by our thinking about the timing of the releases, a proposed agreement to stay pending bankruptcy court approval, and how we are searching for a slightly different approach to money.  Let me know if you want/have time to visit.

**Louis M. Phillips**
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

louis.phillips@kellyhart.com
www.kellyhart.com

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

001053

001054
HCMLPHMIT00000158

**EXHIBIT 2**

From: "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
To: "John A. Morris" <jmorris@pszjlaw.com>
Cc: "Amelia L. Hurt" <Amelia.Hurt@kellyhart.com>, "Jeff Pomerantz" <jpomerantz@pszjlaw.com>
Subject: RE: Possibility of brief call?
Date: Fri, 9 May 2025 19:18:10 +0000
Importance: Normal
Inline-Images: image003.png; image004.png

---

Sure.  I will be working tomorrow.  We can visit.  Good luck.

**Louis M. Phillips**
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

*louis.phillips@kellyhart.com*
*www.kellyhart.com*

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

---

**From:** John A. Morris <jmorris@pszjlaw.com>
**Sent:** Friday, May 9, 2025 2:09 PM
**To:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Cc:** Amelia L. Hurt <Amelia.Hurt@kellyhart.com>; Jeff Pomerantz <jpomerantz@pszjlaw.com>
**Subject:** Re: Possibility of brief call?

HCMLPHMIT00000159

**EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.**

Welcome back.

I am in Court in Delaware so today is out?

Any appetite for a call tomorrow?

Otherwise, Monday will work.

Let us know.

Thanks.

Sent from my iPhone


On May 9, 2025, at 3:02 PM, Louis M. Phillips <Louis.Phillips@kellyhart.com> wrote:


John,

I just got back from Turkey, and am amazed at the increased toll that come with increased age.  But am in the office today.

While I was over there we got together and went through the settlement agreement draft.  We aim to get a responsive redline by Monday or Tuesday.  I just want to update as to a shift represented by our thinking about the timing of the releases, a proposed agreement to stay pending bankruptcy court approval, and how we are searching for a slightly different approach to money.  Let me know if you want/have time to visit.



**Louis M. Phillips**
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

louis.phillips@kellyhart.com
www.kellyhart.com

*Licensed to Practice in the State of Louisiana*

HCMLPHMIT00000160

Confidential above Information contained in this message may be protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

HCMLPHMIT00000161

**EXHIBIT 2**

001059

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>

**To:** "John A. Morris" <jmorris@pszjlaw.com>

**Cc:** "Jeff Pomerantz" <jpomerantz@pszjlaw.com>, "Amelia L. Hurt" <Amelia.Hurt@kellyhart.com>

**Subject:** RE: Checking in

**Date:** Tue, 13 May 2025 23:04:58 +0000

**Importance:** Normal

---

John,

My fault.  It took a few days longer than I expected to get over my trip to Turkey (actually the travel back).  I sent my proposed version to the client group today and proposed a call early morning tomorrow with an eye toward getting it to you by Noon.




Louis M. Phillips
Partner


KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

louis.phillips@kellyhart.com
www.kellyhart.com

Licensed to Practice in the State of Louisiana

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

-----Original Message-----
From: John A. Morris <jmorris@pszjlaw.com>
Sent: Tuesday, May 13, 2025 6:00 PM
To: Louis M. Phillips <Louis.Phillips@kellyhart.com>
Cc: Jeff Pomerantz <jpomerantz@pszjlaw.com>; Amelia L. Hurt <Amelia.Hurt@kellyhart.com>
Subject: Checking in

EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.

Hi Louis.

001060

HCMLPHMIT00000162

Checking in.

Jim had understood from Mark that we were to receive comments on the draft agreement yesterday or today.

Any ETA?  Let us know if call would be helpful.

We look forward to hearing from you.

Regards,

John

Sent from my iPhone

HCMLPHMIT00000163

**EXHIBIT 2**

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**To:** "John A. Morris" <jmorris@pszjlaw.com>
**Cc:** "Jeff Pomerantz" <jpomerantz@pszjlaw.com>, "Amelia L. Hurt" <Amelia.Hurt@kellyhart.com>
**Subject:** RE: Checking in
**Date:** Wed, 14 May 2025 23:08:10 +0000
**Importance:** Normal

---

Typing transmittal email.


Louis M. Phillips
Partner


KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

louis.phillips@kellyhart.com
www.kellyhart.com

Licensed to Practice in the State of Louisiana

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.


-----Original Message-----
From: John A. Morris <jmorris@pszjlaw.com>
Sent: Wednesday, May 14, 2025 6:03 PM
To: Louis M. Phillips <Louis.Phillips@kellyhart.com>
Cc: Jeff Pomerantz <jpomerantz@pszjlaw.com>; Amelia L. Hurt <Amelia.Hurt@kellyhart.com>
Subject: Re: Checking in

EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.

Hi Louis.

Everything ok?

001063


HCMLPHMIT00000164

We are able to move this forward.  Let us know.

Thanks.

Sent from my iPhone

> On May 13, 2025, at 7:05 PM, Louis M. Phillips <Louis.Phillips@kellyhart.com> wrote:
>
> John,
>
> My fault.  It took a few days longer than I expected to get over my trip to Turkey (actually the travel back).  I sent my proposed version to the client group today and proposed a call early morning tomorrow with an eye toward getting it to you by Noon.
>
>
>
>
> Louis M. Phillips
> Partner
>
>
>
> KELLY HART & PITRE
> 301 MAIN STREET SUITE 1600
> BATON ROUGE, LOUISIANA 70801
> TELEPHONE: 225-381-9643
> FAX: 225-336-9763
> DIRECT:  225-338-5308
>
> louis.phillips@kellyhart.com
> http://www.kellyhart.com
>
> Licensed to Practice in the State of Louisiana
>
> Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.
>
> IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.
>
> -----Original Message-----
> From: John A. Morris <jmorris@pszjlaw.com>
> Sent: Tuesday, May 13, 2025 6:00 PM
> To: Louis M. Phillips <Louis.Phillips@kellyhart.com>
> Cc: Jeff Pomerantz <jpomerantz@pszjlaw.com>; Amelia L. Hurt <Amelia.Hurt@kellyhart.com>
> Subject: Checking in
>
> EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.
>
> Hi Louis.
>
> Checking in.
>
> Jim had understood from Mark that we were to receive comments on the draft agreement yesterday or today.
>
> Any ETA?  Let us know if call would be helpful.

HCMLPHMIT00000165

> We look forward to hearing from you.
>
> Regards,
>
> John
>
> Sent from my iPhone
>

# EXHIBIT 2

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**To:** "John A. Morris" <jmorris@pszjlaw.com>, "Jeff Pomerantz" <jpomerantz@pszjlaw.com>
**Cc:** "Amelia L. Hurt" <Amelia.Hurt@kellyhart.com>, "Jim Shields" <jshields@shieldslegal.com>
**Subject:** KH clean of Redline of v9 Settlement Agreement after comments 5.14.DOCX; Redline KH 5.14 against Highland v9.PDF
**Date:** Wed, 14 May 2025 23:20:51 +0000
**Importance:** Normal
**Attachments:** KH_clean_of_Redline_of_v9_Settlement_Agreement_after_comments_5.14.DOCX; Redline_KH_5.14_against_Highland_v9.PDF
**Inline-Images:** image003.png

---

John,

Please see the HMIT Entities' responsive version of the settlement agreement along with the redline from your version 9.  First, I apologize for the delay, as the last version, sent by Mr. Seery, arrived on the day I landed in Istanbul, and scheduling on my side plus my schedule while overseas made it difficult to get things done.  And then I just took longer to get over the lag from traveling back.

We have made some proposed changes.  First major change is that we are willing to have the releases made effective as of bankruptcy court approval, and live with that in the event of an appeal.  We also think, because the bankruptcy court will have approved the agreement, that the assignment of the Dugaboy Note and the Kirchner litigation should be done within the revised timeline set forth, and that there is no reason for any reservation of HMIT Note Claims by the Litigation Sub Trust (and no reason that we can see for continued day to day activity of the sub-trust, as the litigation would only be returned if an appeal is successful (which none of us think will be the case – at least I think none of us do)).  We have added an agreed abatement of everything pending bankruptcy court approval.  We have also accelerated funding, though propose an agreement to escrow funds in the event of reversal on appeal.  We have reviewed the information provided by Mr. Seery and his group and think our structure and timing of funding leaves plenty of money aside for indemnification.  We also have tried to identify and make clear what a Threat would be, to get something objective we can rely on and receive notice of.

I am around tomorrow and Friday.  I will be working this weekend (without jet lag) and in my New Orleans office Monday preparing for an all day trial on Tuesday. We should be able to corral my side quickly.

There are some other tweaks that are minor we think, with the changes mentioned above being the major changes in structure.

Also, John, while the parties have discussed this matter the attached draft agreement does not contain any reference.  That is ok with us, but my clients request from your side an answer to the following question:  "Did any of the Highland Entities or their affiliates, for their own account or on behalf of Highland CDO Holding Company, affirmatively give consent to the transfer by Sentinel Reinsurance, Ltd. or its affiliates of that certain promissory note in the original principal amount of app.$32.8M and dated December 13, 2010, and executed by CLO Holdco, Ltd.?"

I really appreciate your patience. Look forward to visiting soon.

HCMLPHMIT00000167

**Louis M. Phillips**
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

*louis.phillips@kellyhart.com*
*www.kellyhart.com*

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

HCMLPHMIT00000168

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/25/25
5/14/2025

## SETTLEMENT AGREEMENT & GENERAL RELEASE

THIS SETTLEMENT AGREEMENT & GENERAL RELEASE (this "**Agreement**") is entered into as of ~~April [   ],~~May [], 2025 (the "**Agreement Date**"), by and among Highland Capital Management, L.P., a Delaware limited partnership ("**Highland**"), the Highland Claimant Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act (the "**Claimant Trust**"), the Highland Litigation Sub-Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act (the "**Litigation Sub-Trust**"), and the Highland Indemnity Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act (the "**Indemnity Trust**", and together with Highland, the Claimant Trust and the Litigation Sub-Trust, the "**Highland Entities**"), on the one hand, and Hunter Mountain Investment Trust, a Delaware statutory trust ("**HMIT**"), Rand Advisors, LLC, a Delaware limited liability company ("**Rand Advisors**"), Rand PE Fund I, LP, a Delaware series limited partnership ("**Rand PE Fund**"), Rand PE Fund Management, LLC, a Delaware limited liability company ("**Rand GP**"), Atlas IDF, LP, a Delaware limited partnership ("**Atlas IDF**"), Atlas IDF GP, LLC, a Delaware limited liability company ("**Atlas GP**" and together with HMIT, Rand Advisors, Rand PE Fund, Rand GP and Atlas IDF, the "**HMIT Entities**"), on the other hand.  The Highland Entities and the HMIT Entities are collectively referred to as the "**Parties**," and each individually, as a "**Party**".

## DEFINITIONS

"**9019 Motion**" means the motion seeking entry of the Bankruptcy Court Order pursuant to Bankruptcy Rule 9019 and in accordance with Section 18.

"**Action**" means any action, claim, demand, arbitration, hearing, charge, complaint, investigation, examination, indictment, litigation, suit or other civil, criminal, administrative or investigative proceedings.

"**Affiliate**" means a Person that, directly or indirectly, through one or more intermediaries, controls or is controlled by, or is under common control with, a specified Person as of the date on which, or at any time during the period for which, the determination of affiliation is being made. The term "control" (including, with correlative meanings, the terms "controlled by" and "under common control with"), as applied to any Person, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting securities or other ownership interest, by contract or otherwise.

"**Amended Complaint**" means the *Amended Complaint and Objection to Claims*, filed as docket number 158 in *Kirschner v. Dondero*, Adv. Pro. No. 21-03076-sgj (Bankr. N.D. Tex. May 19, 2022).

"**Bankruptcy Case**" means *In re Highland Capital Management, L.P.*, Case No. 19-34054-sgj (Bankr. N.D. Tex.) and its related proceedings.

"**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended).

001069

HCMLPHMIT00000169

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

5/14/2025

"**Bankruptcy Court**" means the U.S. Bankruptcy Court for the Northern District of Texas, Dallas Division.

"**Bankruptcy Court Approval Date**" means the date on which the Bankruptcy Court Order is issued.

"**Bankruptcy Court Order**" means an order of the Bankruptcy Court approving the allowance of the HMIT's Class 10 Interest as provided in this Agreement pursuant to the 9019 Motion.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure.

"**Business Day**" means any day other than (i) a Saturday or a Sunday, (ii) a day on which the Federal Reserve Bank of New York or the New York Stock Exchange is closed, or (iii) a day on which banks in the States of Texas are required, or authorized by law, to close.

"**Claimant Trust Agreement**" means that certain Claimant Trust Agreement of the Claimant Trust (as may have been or may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), effective as of August 11, 2021, by and among Highland, as settlor, James P. Seery, Jr., a Claimant Trustee, and Wilmington Trust, National Association, a national banking association, as Delaware trustee.

"**Claims**" means any claims, debts, liabilities, demands, obligations, breaches of contract, breaches of duty or any relationship, misfeasance, malfeasance, promises, acts, omissions, agreements, liens, losses, costs and expenses (including attorney's fees and related costs), damages, injuries, suits, actions, and causes of action of whatever kind or nature, whenever and however, arising, whether known or unknown, suspected or unsuspected, matured or unmatured, liquidated or unliquidated, contingent or fixed, at law or in equity, statutory or otherwise.

"**Class 10**" means the class of Claims or Equity Interests described in Article II. Section H.10. of the Plan.

"**Class 11**" means the class of Claims or Equity Interests described in Article II. Section H.11. of the Plan.

"**Committee**" means the official committee of unsecured creditors appointed in the Bankruptcy Case.

"**Confirmation Order**" means that certain *Order Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (ii) Granting Related Relief* [Docket No. 1943], as conformed in accordance with the Fifth Circuit's rulings.

"**Dugaboy Note**" means that certain Promissory Note dated May 31, 2017, in the original face amount of $24,268,621.69, from The Dugaboy Investment Trust, as Maker, and Highland Capital Management, L.P. and The Get Good Non-Exempt Trust, collectively as Payee.

001070
HCMLPHMIT00000170

5/14/2025

"**Final Court Approval Date**" means the date on which the Bankruptcy Court Order becomes a Final Order.

"**Final Order**" means an order or judgment of the Bankruptcy Court, which is in full force and effect, and as to which the time to appeal, petition for certiorari, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, new trial, reargument, or rehearing shall have been waived in writing in form and substance satisfactory to the Highland Entities, as applicable, or, in the event that an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order of the Bankruptcy Court shall have been determined by the highest court to which such order was appealed, or certiorari, new trial, reargument or rehearing shall have been denied and the time to take any further appeal, petition for certiorari, or move for a new trial, reargument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be Filed with respect to such order shall not preclude such order from being a Final Order.

"**Gatekeeper**" means the gatekeeping provision contained in Article IX. F of the Plan as of August 11, 2021.

"**Governmental Authority**" means any federal, provincial, state, local or foreign government or political subdivision thereof, court of competent jurisdiction, administrative agency, judicial or arbitral body, or commission or other governmental or regulatory authority or instrumentality.

"**Highland Released Parties**" means collectively (i) the Highland Entities, (ii) any Affiliate of any Highland Entity and any Person directly or indirectly majority-owned by any Highland Entity or any of their respective Affiliates, (iii) any Person directly or indirectly managed by any Highland Entity or any of their respective Affiliates, whether by contract or otherwise (the entities described in clauses (i)-(iii), collectively, the "**Highland Parties**"), (iv) each of the Highland Parties' current and former trustees and administrators (including the trustees of any of the Claimant Trust, the Litigation Sub-Trust, or the Indemnity Trust), officers, executives, agents, directors, advisors, advisory representatives, consultants, administrators, managers, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns, (v) the current and former members of the Oversight Board of the Claimant Trust in any capacity (including Richard Katz) and their Affiliates, including Farallon Capital Management, LLC, Stonehill Capital Management, LLC, Muck Holdings LLC, and Jessup Holdings LLC, (vi) the Independent Board and its members John Dubel, James P. Seery, Jr., and Russell Nelms, (vii) James P. Seery, Jr., individually and in all capacities for any Highland Released Party, including as Chief Executive Officer of Highland Capital Management, L.P., Claimant Trustee of the Claimant Trust, and the Indemnity Trust Administrator of the Indemnity Trust, (viii) Marc S. Kirschner, individually and as Trustee of the Litigation Sub-Trust, (ix) the Committee and each of its members, (x) the professionals (and their respective firms) (a) retained by Highland or the Committee during the Bankruptcy Case or which provided services to Highland or the Committee during the Bankruptcy Case or (b) retained by any Highland Released Party on

001071
HCMLPHMIT00000171

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

5/14/2025

or after August 11, 2021, (xi) any Person indemnified by any Highland Party (the Persons described in clauses (i)-(xi), collectively, the "**Highland Covered Parties**"), and (xii) each Highland Covered Party's current and former officers, executives, agents, directors, advisors, consultants, administrators, managers, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns, if not otherwise included in the defined term "Highland Covered Parties;" provided, however, and for the avoidance of doubt, and without in any way limiting the scope of the foregoing, "Highland Covered Parties" shall include Highland CLO Funding, Ltd., Highland HCF Advisor, Ltd., Highland Multi Strategy Credit Fund, L.P., Highland Multi Strategy Credit Fund GP, L.P., Highland Multi Strategy Credit GP, LLC, Highland Multi Strategy Credit Fund, Ltd., Highland Select Equity Master Fund, L.P., Highland Select Equity Fund GP, L.P., Highland Select Equity Fund, L.P., Highland Restoration Capital Partners Master, L.P., Highland Restoration Capital Partners GP, LLC, Highland Restoration Capital Partners, L.P., Highland Restoration Capital Partners Offshore, L.P., Highland Offshore Director, LLC, Acis CLO Management, LLC, Neutra, Ltd., Pollack, Ltd., Acis CLO Management Holdings, L.P., Acis CLO Management Intermediate Holdings I, LLC, Acis CLO Management Intermediate Holdings II, LLC, Acis CLO Assets Holdings Limited, CHG Houston Holdings, LLC, Penant Management, L.P., Penant Management GP, LLC, Gunwale, LLC, HE Capital, LLC, Gleneagles CLO, Ltd., Aberdeen Loan Funding, Ltd. Highland Argentina Regional Opportunity Fund GP, LLC, Highland Argentina Regional Opportunity Fund, L.P., Highland Argentina Regional Opportunity Fund, Ltd., Highland Argentina Regional Opportunity Master Fund, L.P., Highland Latin America Consulting, Ltd., Highland Capital Management Korea Limited, Highland Capital Management Latin America, L.P., Highland Latin America GP, Ltd., Highland Latin America LP, Ltd., Highland Offshore Partners, L.P. (Diversified), Brentwood CLO, Ltd., Eastland CLO, Ltd., Bristol Bay Funding Ltd., Jasper CLO Ltd., Highland Legacy Limited, Grayson CLO, Ltd., Greenbriar CLO, Ltd.,  Highland Loan Funding V Ltd., Highland Park CDO I, Ltd., Liberty CLO, Ltd., Valhalla CLO, Ltd., Stratford CLO Ltd., Southfork CLO, Ltd., Pam Capital Funding, L.P., Stonebridge-Highland Healthcare Private Equity Fund, Pamco Cayman Ltd., Red River CLO, Ltd., Rockwall CDO II Ltd., Rockwall CDO, Ltd., Westchester CLO, Ltd. Longhorn Credit Funding, LLC, PensionDanmark Pensionsforsikringsaktieselskab, Highland Dynamic Income Master Fund L.P., Highland Dynamic Income Fund GP, LLC, Highland Dynamic Income Fund, L.P., Highland Dynamic Income Fund, Ltd., Highland JHT Holdings, LLC, Highland Prometheus Master Fund, L.P., Highland Prometheus Feeder Fund I, L.P., Highland Prometheus Feeder Fund II, L.P., Highland Sunbridge GP, LLC, Trussway Holdings, LLC, Trussway Industries, LLC, TW Company, Inc., T-Way Investments, LLC, SSP Holdings, LLC, Highland Flexible Income UCITS Fund, and Acis CLO 2017-7, Ltd. *Notwithstanding the forgoing or anything herein to the contrary*, none of "Highland Released Parties", "Highland Parties", nor "Highland Covered Parties" shall include James Dondero, Scott Ellington, Isaac Leventon, or any Person directly or indirectly owned as of the date hereof (in whole or in part) by, and/or Affiliated as of the date hereof with, any of Mr. Dondero, Mr. Ellington, or Mr. Leventon in any manner and none of such Persons are released from any Claim by any Person in connection with this Agreement.

"**HMIT Class 10 Interest**" means the unvested, contingent Class 10 interest in the Claimant Trust (a) to be allowed on account of HMIT's pre-petition equity interest in Highland,

001072
HCMLPHMIT00000172

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
~~DRAFT 4/28/25~~

5/14/2025

and (b) subject to the terms and conditions, as applicable, of the Plan, the Plan Documents, the Claimant Trust Agreement, and in accordance with this Agreement, and applicable law.

"**HMIT Note**" means that certain Secured Promissory Note dated December 21, 2015, in the original face amount of $63,000,000 from HMIT, as maker, and Highland, as payee.

"**HMIT Note Claims**" means any Claim related to, in connection with or arising out of the HMIT Note.

"**HMIT Released Parties**" means collectively (i) the HMIT Entities, (ii) any Affiliate of any HMIT Entity and any Person directly or indirectly majority owned by any HMIT Entity or any of their respective Affiliates, (iii) any Person directly or indirectly managed by any HMIT Entity or any of their respective Affiliates, whether by contract or otherwise (the entities described in clauses (i) – (iii), collectively, the "**HMIT Parties**"), (iv) each of the HMIT Parties' current and former trustees, administrators, officer, executives, agents, directors, advisors, consultants, manager, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns (v) the professionals (and their respective firms (a) retained by any HMIT Party during the Bankruptcy Case or which provided services to any HMIT Party during the Bankruptcy Case or (b) retained by any HMIT Released Party on or after August 11, 2021, (vi) any Person indemnified by any HMIT Party (the Persons described in clauses (i) – (vi), collectively, the "**HMIT Covered Parties**"), and (vii) each HMIT Covered Party's current and former officers, executives, agents, directors, advisors, consultants, administrators, managers, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns, if not otherwise included in the defined term "HMIT Covered Parties." *Notwithstanding the forgoing,* none of "HMIT Released Parties", "HMIT Parties", nor "HMIT Covered Parties" shall include James Dondero, Scott Ellington, Isaac Leventon, or any Person directly or indirectly owned as of the date hereof (in whole or in part) by, and/or Affiliated as of the date hereof with, any of Mr. Dondero, Mr. Ellington, or Mr. Leventon in any manner, and none of such Persons are released from any Claims by any Person in connection with this Agreement.

"**Indemnity Trust Administrator**" has the meaning given to it in the Indemnity Trust Agreement.

"**Indemnity Trust Agreement**" means that certain *Second Amended and Restated Indemnity Trust Agreement of the Indemnity Trust* (as may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), effective as of [April 28], 2025, by and among the Claimant Trust, as grantor, James P. Seery, Jr., as indemnity trust administrator, and Wilmington Trust, National Association, a national banking association, as indemnity trustee and Delaware trustee.

"**Indemnity Trust Assets**" has the meaning set forth in the Indemnity Trust Agreement.

"**Independent Board**" means the independent board appointed by the Bankruptcy Court on January 9, 2020, pursuant to that certain *Order Approving Settlement with Official Committee*

001073
HCMLPHMIT00000173

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
~~DRAFT 4/28/25~~

5/14/2025

*of Unsecured Creditors Regarding Governance of the Debtor and Procedures for Operations in the Ordinary Course* [Docket No. 339].

"**Kirschner Claims**" means all Claims and causes of action ~~other than the HMIT Note Claims~~ that were asserted or could have been asserted by the Litigation Trustee of the Litigation Sub-Trust, in the Amended Complaint.

"**Liability**" means any liability, debt, obligation, loss, damage, claim, cost or expense (including costs of investigation and defense and attorney's fees, costs and expenses), in each case, whether direct or indirect, whether accrued or contingent, whether or not involving a third-party claim, and including incidental and consequential damages and diminution of value.

"**Litigation Protections**" means, individually and collectively, the rights, duties, and obligations set forth in Section 1 and Sections 9 - 16.

"**Litigation Sub-Trust**" means the Highland Litigation Sub-Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act.

"**Litigation Sub-Trust Agreement**" means that certain Litigation Sub-Trust Agreement of the Litigation Sub-Trust (as may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), effective as of August 16, 2021, by and among James P. Seery, Jr., as Claimant Trustee of the Claimant Trust, Wilmington Trust, National Association, a national banking association, as Delaware Trustee, and the Litigation Trustee.

"**Litigation Trustee**" means Marc S. Kirschner, as Litigation Trustee of the Litigation Sub-Trust.

"**LPA**" means that certain *Sixth Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P.* (as may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), dated as of October 4, 2021.

"Operating Expenses" means the expenses of operation and administration of the Highland Entities except for the Indemnity Trust, including legal expenses, employee compensation, Claimant Trustee/CEO and other trust and trustee related compensation, incentive compensation, and customary general and administrative expenses.

"**Original Plan**" means that certain *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* attached as Exhibit A to the *Order (A) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as modified) and (B) Granting Related Relief*, filed at Docket No. 1943 on the Bankruptcy Court's docket.

"**Oversight Board**" means the oversight board of the Highland Claimant Trust.

"**Pending Litigation**" means (i) *Hunter Mountain Investment Trust v. Highland Cap. Mgmt., L.P.*, Case No. 3:23-cv-02071-E (N.D. Tex.), on remand to the Bankruptcy Court (including *Hunter Mountain Investment Trust's Emergency Motion for Leave to File Adversary Proceeding* filed at Bankruptcy Court Docket No. 3699 and all proceedings, decisions, and orders

001074

HCMLPHMIT00000174

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
~~DRAFT 4/28/25~~

5/14/2025

relating there); (ii) *Dugaboy Investment Trust v. Highland Cap. Mgmt., L.P.*, 3:24-cv-01531-X (N.D. Tex.) (only as to HMIT), and (iii) *Hunter Mountain Investment Trust v. Highland Cap. Mgmt., L.P.*, Case No. 3:24-cv-01786-L (N.D. Tex.).

"**Permitted Investments**" has the meaning set forth in the Indemnity Trust Agreement.

"**Person**" means any natural person, partnership, limited liability partnership, corporation, limited liability company, association, joint stock company, trust, estate, joint venture, unincorporated organization or Governmental Authority.

"**Plan**" means that certain *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* as conformed in accordance with the Fifth Circuit's rulings.

"**Plan Documents**" has the meaning given to it in the Plan.

"**Plan Protections**" means, collectively, the provisions of the Plan contained in Article IX thereof.

"**Pro Rata**" means the proportion that (a) the allowed amount of a particular Claim or Equity Interest in Class 10 bears to (b) the aggregate allowed amount of all Claims or Equity Interests in Class 10.

"**Threats**" means any written threats~~, of legal action, legal~~ demands, filed complaints, petitions for pre-suit discovery, suits, litigations, arbitrations, actual or threated restraining orders or injunctions made in writing, or similar written actions of any kind in any forum against any Trust Indemnified Parties or Indemnified Party (both as defined in the Indemnity Trust Agreement~~).~~), excluding any such action that would otherwise be a Threat except that any applicable Statute of Limitations that could be applicable to such action has expired.

"**Threats Notice**" means the written notice of any Threats made to any Trust Indemnified Parties or Indemnified Party (both as defined in the Indemnity Trust Agreement), that is hereby required to be provided by such Party to the HMIT Entities, within Five (5) business days after receipt of such Threat.

## RECITALS

**WHEREAS**, as of the Petition Date, HMIT held Class B and Class C Limited Partnerships Interests in Highland;

**WHEREAS**, on December 21, 2015, HMIT entered into the HMIT Note with Highland, which had a total outstanding principal balance of Fifty-Seven Million Six Hundred Ninety Thousand Six Hundred Forty and 95/100 Dollars ($57,690,640.95) as of the Petition Date (the "**HMIT Note Balance**");

**WHEREAS**, HMIT's Class B and Class C Limited Partnership Interests in Highland were extinguished on August 11, 2021, in accordance with the Plan;

001075

HCMLPHMIT00000175

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

5/14/2025

**WHEREAS**, pursuant to the LPA, HMIT's capital account balance at Highland on account of its Class B and Class C Limited Partnership Interests on the Petition Date was Three Hundred Ninety-Four Million Six Hundred Thirty Thousand Eight Hundred Seventy-One and 53/100 Dollars ($394,630,871.53) (the "**HMIT Capital Account Balance**");

**WHEREAS**, some or all of the HMIT Entities have asserted certain Claims against certain Highland Entities, including those asserted in the Pending Litigation;

**WHEREAS**, some or all of the Highland Entities have asserted certain Claims against certain HMIT Entities, including the HMIT Note Claims;

**WHEREAS**, the Parties wish to terminate, extinguish, and release any and all rights, duties, obligations and Claims that (a) any of the Highland Released Parties owed or have, or may have owed or have, to or with respect to any of the HMIT Released Parties, and (b) any of the HMIT Released Parties owed or have, or may have owed or have, to or with respect to any of the Highland Released Parties, as provided in this Agreement (collectively, the "**Rights and Obligations**");

**WHEREAS**, the Parties agree that the Litigation Protections are intended to enact a permanent cessation of all litigation concerning or related to the Highland Released Parties through and including the Agreement Date; and

**WHEREAS**, the Parties, individually and collectively, wish to (a) resolve all disputes between and/or among any of the Highland Entities, on the one hand, and any of the HMIT Entities, on the other hand, including those asserted in the Pending Litigation, (b) fix and allow HMIT's Class 10 Interest at the amount and on the terms provided herein; and (c) terminate, extinguish, and release all Rights and Obligations on the terms provided herein.

**NOW THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree as follows:

## AGREEMENT

1.    Abatement and Dismissal of Pending Litigation With Prejudice.

(a)    Within three (3) Business Days after the Agreement Date, the HMIT Entities shall take all steps necessary (at their own cost) to abate the Pending Litigation.

1.(b)    Within three (3) Business Days after the Bankruptcy Court Approval Date, the HMIT Entities shall take all steps necessary (at their own cost) to dismiss the Pending Litigation with prejudice.

2.    Maintenance of Abatement and Dismissal of Certain Defendants from the Amended Complaint.

(a)    Within three (3) Business Days after the Effective Date, the Litigation Trustee shall take all steps necessary (at its own cost) to dismiss, with prejudice, HMIT and Rand

001076
HCMLPHMIT00000176

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

5/14/2025

~~PE Fund from Counts I, II, and III of the Amended Complaint. For the avoidance of doubt, Counts I, II, and III constitute all Kirschner Claims that are not HMIT Note Claims, and such dismissal shall not affect or impair any HMIT Note Claims or any liability or obligation of HMIT with respect to the HMIT Note, if any.~~

~~(b)~~(a) ~~Within three (3) Business Days after the Final~~The Litigation Trustee shall continue to maintain the abatement of Adv. Proc. No. 21-03076-sgj and all related proceedings arising therefrom through the Bankruptcy Court Approval Date. Within three (3) Business Days after the Bankruptcy Court Approval Date, the Litigation Sub-Trust shall take all steps necessary (at its own cost) to dismiss, with prejudice, HMIT and Rand PE from ~~Count~~ Counts I, II, III, and XXIV of the Amended Complaint~~, which constitutes all HMIT Note Claims against HMIT and Rand PE.~~.

3.      <u>Cash Payment to HMIT</u>.  In consideration for the dismissal of the Pending Litigation, within three (3) Business Days following the ~~Agreement~~Bankruptcy Court Approval Date, Highland shall pay HMIT a one-time, lump sum of ~~[~~Five Hundred Thousand Dollars (US$500,000.00)~~]~~) (the "**Payment**") by wire transfer:

[wire instructions]

4.      <u>HMIT Class 10 Interest</u>.

(a)      Subject to entry of the Bankruptcy Court Order, and the terms of this Agreement, the HMIT Class 10 Interest shall be deemed allowed in the amount of Three Hundred Thirty-Six Million Nine Hundred Forty Thousand Two Hundred Thirty and 58/100 Dollars (US$336,940,230.58), which amount represents the HMIT Capital Account Balance, <u>less</u> the HMIT Note Balance.

(b)      Notwithstanding anything to the contrary in the Plan or the Claimant Trust Agreement, as an integral part of this Agreement to consent to the allowance of the HMIT Class 10 Interest and the other considerations in this Agreement, HMIT shall not be deemed, and no holder of the HMIT Class 10 Interest shall be, a Claimant Trust Beneficiary or a "Beneficiary" under the Claimant Trust Agreement, and the Highland Released Parties, individually and collectively, shall owe no duty to any HMIT Releasor (whether contractual, fiduciary, equitable, statutory or otherwise), including with respect to the HMIT Class 10 Interest, in each case, except as expressly set forth in this Agreement.  Furthermore, without limiting the foregoing and for the avoidance of doubt, the contractual right of the holder of the HMIT Class 10 Interest to receive or recover any payments or Indemnity Trust Assets from the Indemnity Trust as set forth in this Agreement or the Indemnity Trust Agreement does not make any HMIT Releasor or any other Person a beneficiary of the Indemnity Trust or under the Indemnity Trust Agreement.

(c)      Notwithstanding anything to the contrary in the Plan, the Claimant Trust Agreement or the Indemnity Trust Agreement, in no event shall HMIT sell, transfer, assign, pledge, hypothecate, participate or otherwise dispose of the HMIT Class 10 Interest or any rights (including any right to payment) with respect thereto.

001077

HCMLPHMIT00000177

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

5/14/2025

(d)     For the avoidance of doubt, the HMIT Class 10 Interest is and shall remain senior to the not yet allowed, unvested contingent Class 11 Claims of Equity Interests as provided for in the Plan, the Plan Documents, and the Claimant Trust Agreement.

5.     Initial Interim ~~Cash~~ Distributions on the Allowed Class 10 Interests.

(a)     Within ten (10) Business Days ~~of~~after the ~~Final~~Bankruptcy Court Approval Date, the Indemnity Trust shall distribute (the date on which such distribution is made, the "**Initial Interim Distribution Date**") Pro Rata to the Holders of allowed Class 10 Claims or Equity Interests: ~~(i)~~ cash in the aggregate amount of ~~[Ten~~Twelve Million Dollars (US$~~10~~12,000,000.00~~)]~~]) (the "**Initial Interim Cash Distribution Amount**"~~); and (ii) cash in the aggregate amount of all principal and interest payments paid on the Dugaboy Note and actually received by Highland or the Indemnity Trust from and after the Bankruptcy Court Approval Date (the "~~**Initial Interim Dugaboy Distribution Amount**~~")~~"~~. ~~").

(b)     ~~Upon~~HMIT shall deposit and hold Ten Million Dollars (US$10,000,000) of the Initial Interim Cash Distirbution Amount in an interest bearing escrow account (the "**HMIT Escrow Account**") pending the Final Court Approval Date.

~~(b)~~     Within ten (10) Business Days after the Bankruptcy Court Approval Date~~,~~ ~~the Indemnity Trust shall establish a balance sheet reserve in respect of the Initial Interim Cash Distribution Amount and the Initial Interim Dugaboy Distribution Amount (if and when received), which reserve will be held solely in cash or Permitted Investments and otherwise on~~ ("**Note Assignment Date**"), ~~the same terms as other Indemnity Trust Assets pursuant to the Indemnity Trust Agreement pending distribution in accordance with Section 5(a).~~

~~6.~~     ~~Subsequent Distribution(s) on~~Highland Entities shall cause the Dugaboy Note to be assigned to HMIT and take all actions necessary for HMIT to become the ~~Allowed Class 10 Interests.~~

~~(a)~~(c)     ~~On the later~~holder ~~of the Final Court Approval Date and April 1, 2028, the Indemnity Trust shall distribute (such distribution, collectively, the "~~**Subsequent Distribution**~~", and the date on which such Subsequent Distribution is made, the "~~**Subsequent Distribution Date**~~") Pro Rata to the Holders of allowed Class 10 Claims or Equity Interests: (i) cash in the aggregate amount of [Five Million Dollars (US$5,000,000.00)]; and (ii)(x)(1) if HMIT elects in writing that it desires for the Indemnity Trust to sell the~~ Dugaboy Note, ~~the net proceeds, if any, actually received by the Indemnity Trust from such sale, or (2) if HMIT instead elects that it desires~~and shall in addition pay ~~to receive the Dugaboy Note in kind, the Dugaboy Note in kind, plus (y)~~HMIT cash in the aggregate amount of all principal and interest payments actually received on the Dugaboy Note by the ~~the Highland Entities including the~~ Indemnity Trust ~~from and after the Initial Interim Distribution~~ of the Note Assignment Date ~~(the amount pursuant.~~  Prior ~~to subclause (y), the "~~**Subsequent Dugaboy P+I Amount**~~"). If~~ the ~~Dugaboy Note is distributed in kind~~Bankruptcy Court Approval Date, HMIT will engage an independent valuation service provider to value the Dugaboy Note for purposes of determining the magnitude of reduction to the outstanding allowed Class 10 Interests on account of such in-kind distribution~~.~~, which shall not be less than Fifty percent (50%) of the current balance owed under the Dugaboy Note. The HMIT Entities acknowledge and agree that none of the Highland Entities are representing or warranting

001078
HCMLPHMIT00000178

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
~~DRAFT 4/28/25~~

5/14/2025

that the Dugaboy Note can ~~or will~~ be sold, or the price, if any, that could be received for the Dugaboy Note and further acknowledge and agree that any such purchase price may be de minimis.

~~(b)    Upon the Initial Interim Distribution Date, the Indemnity Trust shall establish a balance sheet reserve in respect of the cash portion of the Subsequent Dugaboy P+I Amount, which will be held solely in cash or Permitted Investments and otherwise on the same terms as other Indemnity Trust Assets pursuant to the Indemnity Trust Agreement pending distribution in accordance with Section 6(a).~~

6.    Subsequent Distribution(s) on the Allowed Class 10 Interests.

(a)    On December 1, 2027, the Indemnity Trust shall distribute (such distribution, collectively, the "**First Subsequent Distribution**", and the date on which such Subsequent Distribution is made, the "**First Subsequent Distribution Date**") Pro Rata to the Holders of allowed Class 10 Claims or Equity Interests: cash in the aggregate amount of Eight Million Dollars (US$8,000,000.00). . HMIT shall deposit and hold Six Million Dollars (US$6,000,000) of the First Subsequent Distribution in the HMIT Escrow Account pending the Final Court Approval Date.

(b)    On Decemeber 1, 2028, the Indemnity Trust shall distribute (such distribution, collectively, the "**Second Subsequent Distribution**", and the date on which such Subsequent Distribution is made, the "**Second Subsequent Distribution Date**") Pro Rata to the Holders of allowed Class 10 Claims or Equity Interests cash in the aggregate amount of Eight Million Dollars (US$8,000,000.00).

(c)    HMIT shall deposit and hold Six Million Dollars (US$6,000,000) of the Second Subequent Distribution in the HMIT Escrow Account pending the Final Court Approval Date.

~~(c)~~(d)    Notwithstanding anything herein to the contrary, the obligations of the Indemnity Trust to make the First Subsequent Distribution, ~~including any Cash, the Dugaboy Note,~~ or ~~the~~Second Subsequent ~~Dugaboy P+I Amount,~~Distribution is subject in all respects to (i) there being no Threats and (ii) a determination in accordance with Article VIII, Section 8.1(c) of the Indemnity Trust Agreement that the Indemnity Trust Assets comprising such distributions are not reasonably necessary to satisfy current or potential Indemnification Obligations (as defined in the Indemnity Trust Agreement) to all persons who are or might become Beneficiaries (as defined in the Indemnity Trust Agreement).

7.    Final Distribution on the Allowed Class 10 Interests.

(a)    On the later of the Final Court Approval Date and April 1, 2029, the Indemnity Trust will distribute all excess remaining Indemnity Trust Assets in accordance with Article VIII of the Indemnity Trust Agreement; provided, however, that the obligation of the Indemnity Trust to make any such distributions and/or dissolve and wind up the affairs of the Indemnity Trust is subject in all respects to (i) there being no Threats and (ii) a determination in accordance with Article VIII of the Indemnity Trust Agreement that (1) a Final Order(s) (as defined in the Indemnity Trust Agreement) has been entered resolving all litigation, claims or

001079
HCMLPHMIT00000179

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
~~DRAFT 4/28/25~~

5/14/2025

proceedings in any forum of any kind which could give rise to Indemnity Obligations (as defined in the Indemnity Trust Agreement) and payment in full of all such Indemnity Obligations and (2) all applicable statutes of limitations and any applicable tolling of such statutes of limitation have expired.

(b)    The Indemnity Trust agrees to not use Indemnity Trust Assets to fund ~~the operating expenses of Highland.~~Operating Expenses.

(c)    Following the Bankruptcy Court Approval Date, at the request of Mark Patrick, solely in his capacity, and to the extent he remains, as administrator of HMIT, but not more often than quarterly, Highland and the Indemnity Trust Administrator agree to review (i) the status of their respective assets, (ii) the balance of cash held, (iii) the status of any claims made for indemnification and any resolutions thereof, (iv) the status of any litigation, and (v) forecasted operating expenses with Mr. Patrick, and will each work in good faith to reduce operating expenses where reasonably practicable; provided, however, that all such reporting shall be subject to Mr. Patrick's agreement to maintain confidentiality with respect to any non-public information.

8.    <u>Transfer Kirschner Claims; Dismissal of HMIT Note Claims.</u>

(a)    In consideration of the dismissal of the Pending Litigation and the releases provided herein, within ten (10) Business Days ~~of~~after the ~~Agreement~~Bankruptcy Court Approval Date, but after the dismissal provided for in <u>Section 2</u>~~, and solely to the extent permitted by the Plan, the Litigation Sub-Trust Agreement and applicable law~~, the Litigation Sub-Trust shall execute an assignment in the form attached hereto as **Exhibit [_]** in favor of the HMIT Entities transferring all of the Litigation Sub-Trust's right, title, and interest in and to the Kirschner Claims (~~which, for the avoidance of doubt, shall not include any HMIT Note Claims~~) (the "**Kirschner Transfer**").[1] Each HMIT Entity acknowledges and agrees that none of the Highland Entities will have any duty or obligation to assist the HMIT Entities in any way with respect to the Kirschner Claims, including the prosecution thereof<u>, except as provided in this Agreement, including without limitation the terms of Section 8(c) below</u>.

(b)    THE HMIT ENTITIES SPECIFICALLY ACKNOWLEDGE AND AGREE THAT THE LITIGATION SUB-TRUST IS TRANSFERRING THE KIRSCHNER CLAIMS ON AN "AS IS AND WITH ALL FAULTS" BASIS AND THAT THE HMIT ENTITIES ARE NOT RELYING ON ANY REPRESENTATIONS OR WARRANTIES OF ANY KIND WHATSOEVER, EXPRESS OR IMPLIED, FROM THE HIGHLAND ENTITIES OR THEIR REPRESENTATIVES AS TO ANY MATTERS CONCERNING THE KIRSCHNER CLAIMS AND AMENDED COMPLAINT, INCLUDING WITH RESPECT TO THE ENFORCEABILITY, TRANSFERABILITY, VIABILITY, STRENGTH, OR VALUE OF ANY OF THE KIRSCHNER CLAIMS OR THE AMENDED COMPLAINT.  The HMIT Entities hereby specifically acknowledge that they have carefully reviewed this Section and have had the opportunity to discuss its import with legal counsel and that the provisions of this Section are a material part of this Agreement.  Thus, if for any reason HMIT is precluded from or is otherwise unable to prosecute all or any of the Kirschner Claims, (i) the HMIT Releasors shall have no

---

[1] ~~NTD: HMIT Claim to be dismissed without prejudice.~~

001080

HCMLPHMIT00000180

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

5/14/2025

recourse against the Highland Released Parties whatsoever and shall not be entitled to compensation of any kind, it being agreed that the HMIT Entities are otherwise receiving adequate consideration for the duties and obligations they are undertaking pursuant to this Agreement and (ii) there will be no effect whatsoever on the validity and enforceability of this Agreement or any of the other transactions contemplated hereby.

(c)      As promptly as reasonably practicable following the ~~Effective~~Bankruptcy Court Approval Date, the Highland Entities shall provide to the HMIT Entities electronic copies of written discovery requests and responses thereto, and documents produced in discovery in respect of the Kirschner Claims and the Amended Complaint.  The Highland Entities will not provide any other documents regarding the Kirschner Claims including any attorney-client communications and any documents subject to the attorney work-product doctrine or similar privileges or immunities concerning the Kirschner Claims (collectively, the "**Kirschner Privileges**"), it being understood and agreed that the Highland Entities are retaining, and not transferring or waiving, the Kirschner Privileges.

(d)      Each Party acknowledges and agrees that if (a) the Kirschner Transfer is found or deemed to be impermissible or invalid, for any reason, or (b) the Final Court Approval Date does not occur, the Kirschner Claims and Amended Complaint will revert to, and remain an asset of, the Litigation Sub-Trust.

9.      <u>General Release By The HMIT Entities</u>. On the ~~Agreement~~<u>Bankruptcy Court Approval</u> Date, and to the maximum extent permitted by law, each of the HMIT Entities, on behalf of itself and each of its respective Affiliates (including Affiliated and/or managed funds, accounts and other investment vehicles) and its and their respective current and former advisors, consultants, administrators, trustees, directors, officers, managers, executives, members, partners (including limited and general partners), employees, beneficiaries, direct and indirect shareholders and other equity holders, agents, participants, direct and indirect subsidiaries and parents, successors, predecessors, designees, and assigns (whether by operation of law or otherwise) (collectively with the HMIT Entities, the "**HMIT Releasors**") hereby forever, finally, fully, unconditionally, and completely releases, relieves, acquits, discharges, remises, and exonerates each Highland Released Party from, and waives and relinquishes, any and all Claims, which the HMIT Releasors, or any Person claiming through, under, or on behalf of any of the HMIT Releasors, ever had, now has, or hereafter can, shall, or may have against any of the Highland Released Parties by reason of, arising from, relating to, or in connection with, any fact, matter, or transaction that occurred prior to the Agreement Date, including any fact, matter, transaction, or occurrence in connection with, relating to, or with respect to the Bankruptcy Case, the management or operation of any of the Highland Released Parties, or the Highland Released Parties' property and including any defense, affirmative defenses, and right to setoff arising out of, or otherwise related to, any of the foregoing (collectively, the "**HMIT Entity Released Claims**").

10.      <u>General Release By The Highland Entities</u>.

(a)      On the ~~Agreement~~<u>Bankruptcy Court Approval</u> Date, and to the maximum extent permitted by law, each of the Highland Entities, on behalf of itself and each of its respective Affiliates (including Affiliated and/or managed funds, accounts and other investment vehicles) and

001081

HCMLPHMIT00000181

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

5/14/2025

its or their respective current and former advisors, consultants, administrators, trustees, directors, officers, managers, executives, members, partners (including limited and general partners), employees, beneficiaries, direct and indirect shareholders and other equity holders, agents, participants, direct and indirect subsidiaries and parents, successors, predecessors, designees, and assigns (whether by operation of law or otherwise)(collectively with the Highland Entities, the "**Highland Releasors**") hereby forever, finally, fully, unconditionally, and completely releases, relieves, acquits, discharges, remises, and exonerates each HMIT Released Party from, and waives and relinquishes, any and all Claims, excepting any HMIT Note Claims, which the Highland Releasors, or any Person claiming through, under, or on behalf of any of the Highland Releasors, ever had, now has, or hereafter can, shall, or may have against any of the HMIT Released Parties by reason of, arising from, relating to, or in connection with, any fact, matter, or transaction that occurred prior to the AgreementBankruptcy Court Approval Date, including any fact, matter, transaction, or occurrence in connection with, relating to, or with respect to the Bankruptcy Case, the management or operation of any of the HMIT Released Parties, or the HMIT Released Parties' property and including any defense, affirmative defenses, and right to setoff arising out of, or otherwise related to, any of the foregoing (collectively, the "**Initial Highland Released Claims**"). For the avoidance of doubt and notwithstanding anything herein to the contrary, the HMIT Note Claims shall not be released until Final Court Approval Date, at which time the HMIT Note will be applied to calculate the allowed HMIT Class 10 Interest set forth in Section 4 and the balance of the HMIT Note and any HMIT Note Claims shall be released pursuant to Section 10(b).

(b)10. Upon the Final Court Approval Date, and to the maximum extent permitted by law, each of the Highland Releasors hereby forever, finally, fully, unconditionally, and completely releases, relieves, acquits, discharges, remises, and exonerates each HMIT Released Party from, and waives and relinquishes, the HMIT Note Claims (the "**Subsequent Highland Released Claims**" and together with the Initial Highland Released Claims, the "**Highland Entity Released Claims**" and together with the HMIT Entity Released Claims, the "**Released Claims**").Highland Released Claims").

11. <u>Further Provisions Concerning The General Releases</u>.

(a) **FOR THE AVOIDANCE OF DOUBT, THE FOREGOING RELEASES ARE INTENDED TO BE GENERAL AND INCLUDE A RELEASE OF ALL RELEASED CLAIMS, WHETHER KNOWN OR UNKNOWN, SUSPECTED OR UNSUSPECTED, ARISING OR EXISTING FROM THE BEGINNING OF TIME THROUGH AND INCLUDING THE AGREEMENT DATE.**

(b) To the maximum extent permitted by law, each of the HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, waives the benefit of any statute or other principle of law or equity that limits the applicability of a release with respect to Claims that the releasing party does not know or suspect to exist in his, her or its favor at the time of executing the release.

(c) Without limiting the scope of the foregoing waiver, in connection with the foregoing release, each of the HMIT Entities and the Highland Entities, on its own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, waives the benefits of

001082

HCMLPHMIT00000182

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
~~DRAFT 4/28/25~~

5/14/2025

Section 1542 of the California Civil Code (to the extent, if any, that Section 1542 might apply to the foregoing release), which provides as follows:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

Each of the HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, hereby agrees that the provisions of Section 1542 of the Civil Code of the State of California and all similar federal or state law, rights, rules or legal principles, legal or equitable, in each case solely to the extent such provisions apply, **ARE HEREBY KNOWINGLY AND VOLUNTARILY WAIVED AND RELINQUISHED BY EACH OF THE HMIT ENTITIES AND THE HIGHLAND ENTITIES, ON THEIR OWN BEHALF AND ON BEHALF OF THE OTHER HMIT RELEASORS AND HIGHLAND RELEASORS, RESPECTIVELY,** in each and every capacity, to the full extent that such rights and benefits pertaining to the matters released herein may be waived, and each of the HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, hereby agrees and acknowledges that this waiver and relinquishment is an essential term of this Agreement, without which the consideration provided would not have been given.

In connection with such waiver and relinquishment, each of the HMIT Entities and Highland Entities acknowledges that it is aware that it may hereafter discover Claims presently unknown or unsuspected, or facts in addition to or different from those which it now knows or believes to be true, with respect to the matters released herein. Nevertheless, it is the intent of each of the HMIT Entities and the Highland Entities, on its own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, in executing this Agreement fully, finally, and forever to settle and release all such matters, and all Claims related thereto, which exist, may exist or might have existed (whether or not previously or currently asserted in any action) which are the subject to the releases granted above.

(d)    As an integral component of this Agreement, and notwithstanding the Parties' intent set forth in the preamble hereto and the general nature of the releases in <u>Sections 9 and 10</u>, should:

(i)    any HMIT Releasor contend or assert that any Claim of any kind whatsoever held by any HMIT Releasor against any Highland Released Party survives this Agreement and is in any way related to or arising from or in connection with any HMIT Entity Released Claim (such claim or cause of action, a "**HMIT Alleged Claim**"), such HMIT Releasor will be deemed to have irrevocably, fully, and finally assigned such HMIT Alleged Claim to the Highland Entities and the Highland Entities will be deemed to have forever, finally, full, unconditionally, and irrevocably, and completely released such HMIT Alleged Claim.

001083
HCMLPHMIT00000183

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
~~DRAFT 4/28/25~~

5/14/2025

(ii)      any Highland Releasor contend or assert that any Claim of any kind whatsoever held by any Highland Releasor against any HMIT Released Party survives this Agreement and is in any way related to or arising from or in connection with any Highland Entity Released Claim (such claim or cause of action, a "**Highland Alleged Claim**"), such Highland Releasor will be deemed to have irrevocably, fully, and finally assigned such Highland Alleged Claim to the HMIT Entities and the HMIT Entities will be deemed to have forever, finally, full, unconditionally, and irrevocably, and completely released such Highland Alleged Claim.

12.     <u>Covenant Not To Sue; Limitation on Standing</u>. Upon the Agreement Date:

(a)      Each of the HMIT Releasors covenants and agrees that it will not institute or prosecute any Action, in law, in equity or otherwise, against any of the Highland Released Parties, to recover, enforce, or collect any HMIT Entity Released Claim and will not (i) induce, encourage or direct any other Person to do so or (ii) act in concert with or assist (financially or otherwise) any other Person in doing so.

(b)      Each of the Highland Releasors covenants and agrees that it will not institute or prosecute any Action, in law, in equity or otherwise, against any of the HMIT Released Parties, to recover, enforce, or collect any Highland Entity Released Claim and will not (i) induce, encourage or direct any other Person to do so or (ii) act in concert with or assist (financially or otherwise) any other Person in doing so.

(c)      For the avoidance of doubt, this Agreement shall not operate to give any HMIT Entity standing for any purpose in connection with the Bankruptcy Case (or in connection with any appeal arising from any order entered by the Bankruptcy Court), except for the limited purpose of seeking Court approval of this Agreement (including with respect to any appeal concerning any order entered granting or denying such approval), and except for the limited purpose of enforcing this Agreement, no HMIT Entity shall commence any Action in connection with the HMIT Class 10 Interest.

13.     <u>Representations and Warranties</u>.

(a)      Each of the HMIT Entities hereby represents and warrants that every HMIT Entity Released Claim has not heretofore been assigned or encumbered and is not the subject of a transfer (as such term is defined in 11 U.S.C. § 101(54)), by any HMIT Releasor.

(b)      The HMIT Entities, on their own behalf and on behalf of the other HMIT Releasors, acknowledge and agree that each Plan Provision is lawful, effective, and binding on the HMIT Releasors.  The HMIT Entities further agree, on their own behalf and on behalf of the other HMIT Releasors, that the HMIT Releasors will never, in any way, challenge or seek to modify, nullify, vacate, or revoke, or induce, encourage or direct any other Person to do so or act in concert with or assist (financially or otherwise) any other Person in doing so the Confirmation Order, the Plan, the Plan Protections, or any Plan Document, including the Claimant Trust Agreement, the LPA, the Indemnity Trust Agreement or the Litigation Sub-Trust Agreement, in the Bankruptcy Court, in any other state or federal court, in any other forum or tribunal, or otherwise, including administrative or regulatory tribunals and foreign courts.

001084
HCMLPHMIT00000184

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

5/14/2025

   (c)  Each of the Highland Entities hereby represents and warrants that every Highland Entity Released Claim has not heretofore been assigned or encumbered and is not the subject of a transfer (as such term is defined in 11 U.S.C. § 101(54)), by any Highland Releasor.

   (d)  Each Party severally represents and warrants as to itself only that: (i) it has taken all necessary action to authorize and approve the execution, delivery and performance of this Agreement; (ii) such Party has full power and authority to execute and deliver this Agreement; and (iii) this Agreement constitutes a valid, legal and binding obligation of such Party, and is enforceable subject to its terms.  Each individual signatory hereto individually warrants and represents to all Parties hereto that such individual has full power and authority to act on behalf of and bind the Party for which he or she has executed this Agreement; provided, however that no signatory shall otherwise provide any warranty or representation or otherwise be a party to this Agreement on an individual basis.

  14.  <u>No Continuing Rights, Duties or Obligations</u>.  Except for the rights, duties, and obligations expressly set forth in this Agreement, all Rights and Obligations that existed or may have existed shall be deemed terminated, extinguished, and released upon the Agreement Date. For the avoidance of doubt, from and after the Agreement Date, (a) the Highland Released Parties, individually and collectively, shall owe no duty, past or present, including with respect to the Kirchner Claims, to the HMIT Releasors, individually and collectively, whether contractual, fiduciary, equitable, statutory or otherwise, except as arising out of this Agreement, and (b) the HMIT Released Parties, individually and collectively, shall owe no duty to the Highland Releasors, individually and collectively, whether contractual, fiduciary, equitable, statutory or otherwise, except as arising out of this Agreement.

  15.  <u>Gatekeeper Standard</u>.

   (a)  The HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, acknowledge and agree that, notwithstanding the United States Court of Appeals for the Fifth Circuit's decision in *Highland Capital Management Fund Advisors, L.P. v. Highland Capital Management, L.P.*, No. 23-10534 (5th Cir. Mar. 18, 2025), the "Gatekeeper" provisions contained in Highland's Original Plan is forever binding on each of the HMIT Entities and for a claim or cause of action to be "colorable" for purposes of the Gatekeeper, it must be found by final order of the Bankruptcy Court (the "**Gatekeeper Court**"), which order shall be subject to appeal to a court of competent jurisdiction, to have satisfied the "Gatekeeper Colorability Test" as such term is defined in *In re Highland Capital Management, L.P.*, 2023 Bankr. LEXIS 2104 at *124-36 (Bankr. N.D. Tex. Aug. 24, 2023).

   (b)  The HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, acknowledge and agree that compliance with the Gatekeeper requires (i) a motion seeking leave to sue an Exculpated Party (as that term is defined in Highland's original Plan) and a finding that the litigant's claims and causes of action are "colorable" attaching a complaint setting forth the basis for such claims or causes of action and (ii), in the Gatekeeper Court's sole discretion, an evidentiary hearing (during

001085
HCMLPHMIT00000185

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

5/14/2025

which the Gatekeeper Court may, among other things, hear testimony and assess the credibility of any witness(es)) to determine whether a proposed claim or cause of action is "colorable."

(c)     The HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, further acknowledge and agree that the moving party under the Gatekeeper has the burden of satisfying the "Gatekeeper Colorability Test."

16.     <u>Indemnification</u>.

(a)     Without in any manner limiting the available remedies for any breach of this Agreement, the HMIT Entities, severally but not jointly, agree to indemnify, defend, and hold the Highland Released Parties harmless from and against any and all Liability, that may arise or result from or on account of, or that are otherwise related or attributable to (x) any breach of this Agreement or of any representation or warranty contained in the Agreement, including the representations and warranties of any HMIT Entity set forth in <u>Section 13</u> or (y) any Actions brought or prosecuted by or on behalf of, any HMIT Releasor or that are induced, encouraged, assisted  or directed by any HMIT Releasor or brought or prosecuted in concert with any HMIT Releasor against any Highland Released Party with respect to or related to any HMIT Entity Released Claims.  Without limiting the scope of the foregoing in any manner, any HMIT Entity that breaches <u>Section 12</u> shall be liable to the Highland Released Party against whom the applicable Action has been brought or prosecuted in violation of <u>Section 12</u> for the reasonable attorneys' fees and costs incurred by such Highland Released Party in defending against or otherwise responding to such Action.  Each HMIT Entity acknowledges and agrees that the HMIT Entities are and shall be severally but not jointly liable for any Liability arising from or out of any breach of this Agreement or of any representation or warranty set forth in this Agreement.

(b)     Without in any manner limiting the available remedies for any breach of this Agreement, the Highland Entities, severally but not jointly, agree to indemnify, defend, and hold the HMIT Released Parties harmless from and against any and all Liability, that may arise or result from or on account of, or that are otherwise related or attributable to (x) any breach of this Agreement or of any representation or warranty contained in the Agreement, including the representations and warranties of any Highland Entity set forth in <u>Section 13</u> or (y) any suits, proceedings, or other actions brought or prosecuted by or on behalf of, any Highland Releasor or that are induced, encouraged, assisted  or directed by any Highland Releasor or brought or prosecuted in concert with any Highland Releasor against any HMIT Released Party with respect to or related to any Highland Entity Released Claims.  Without in any manner limiting the scope of the foregoing, any Highland Entity that breaches <u>Section 12</u> shall be liable to the HMIT Released Party against whom the applicable Action has been brought or prosecuted in violation of <u>Section 12</u> for the reasonable attorneys' fees and costs incurred by such HMIT Released Party in defending against or otherwise responding to such Action.  Each Highland Entity acknowledges and agrees that the Highland Entities are and shall be severally but not jointly liable for any Liability arising from or out of any breach of this Agreement or of any representation or warranty set forth in this Agreement.

001086
HCMLPHMIT00000186

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

5/14/2025

17.     Execution.  This Agreement may be executed by the exchange of signatures by facsimile or by PDF attachment to an email transmittal and in counterparts, and if so executed, shall be fully executed when a counterpart has been executed and delivered by all Parties hereto through counsel.  All counterparts taken together shall constitute one and the same agreement and shall be fully enforceable as such.

18.     Bankruptcy Court Order.  The allowance of the allowed HMIT Class 10 Interest pursuant to Section 4 is subject to the entry of the Bankruptcy Court Order.  To that end, the Highland Entities shall file the 9019 Motion no later than five (5) Business Days after the Agreement Date.  Each Party shall, and shall cause each of their respective Affiliates to, undertake any and all actions in compliance with applicable law to obtain the Bankruptcy Court Order as promptly as practicable, and without limiting the foregoing, if an Action is threatened or instituted by any Person opposing the 9019 Motion or otherwise challenging the validity or legality, or seeking to restrain the consummation, of the transactions contemplated by this Agreement or the Bankruptcy Court Order, each Party shall, and shall cause its respective Affiliates to, use their commercially reasonable best efforts to avoid, resist, resolve or, if necessary, and defend to effectuate this Agreement and consummate the transactions hereby.  If the 9019 Motion is not approved by entry of the Bankruptcy Court Order or if the Bankruptcy Court Approval is precluded from becoming a Final Order, (a) there will be no affect on, adjustment to, or impairment of, in any way, the validity and enforceability of the remainder of this Agreement, and the other transactions contemplated hereby, all of which shall remain in full force and effect and (b) each Party shall, and shall cause its respective Affiliates to, use their best efforts to seek the allowance of the HMIT Class 10 Interest in a substantially similar amount and on substantially similar terms as set forth in Section 4 to the fullest extent possible so as to give effect to the original intent of the Parties as closely as possible.

19.     Fees and Expenses.  Whether or not the transactions contemplated hereby are consummated or the Bankruptcy Court Order is obtained, and except as otherwise expressly provided in this Agreement, each Party will bear its respective fees, costs and expenses (including legal, accounting and other professional fees) incurred in connection with the preparation, negotiation, execution and performance of this Agreement or the transactions contemplated hereby, including with respect to each Party's respective obligations pursuant to Section 18. Notwithstanding the foregoing, if any Party hereto brings an Action to enforce or interpret the terms and provisions of this Agreement, the prevailing Party in that Action shall be entitled to have and recover from the non-prevailing Party all such fees, costs and expenses (including all court costs and reasonable attorneys' fees) as the prevailing Party may suffer or incur in the pursuit or defense of such action or proceeding.

20.     Entire Agreement; No Other Representations.  **THIS AGREEMENT CONTAINS THE ENTIRE AGREEMENT BETWEEN THE PARTIES, AND NO RIGHTS ARE CREATED IN FAVOR OF ANY PARTY OTHER THAN AS SPECIFIED OR EXPRESSLY SET FORTH IN THIS AGREEMENT.  THERE ARE NO REPRESENTATIONS, CONDITIONS, WARRANTIES, STATEMENTS, OR UNDERSTANDINGS (COLLECTIVELY, "REPRESENTATIONS"), EITHER ORAL OR WRITTEN, BETWEEN THE PARTIES OTHER THAN THOSE EXPRESSLY SET FORTH IN THIS AGREEMENT.  THE PARTIES EXPRESSLY AGREE THAT THEY**

001087

HCMLPHMIT00000187

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
~~DRAFT 4/28/25~~

5/14/2025

**HAVE NOT BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY ANY REPRESENTATIONS NOT SET FORTH IN THIS AGREEMENT; AND THE PARTIES EXPRESSLY AGREE THAT THEY HAVE NOT RELIED ON ANY REPRESENTATIONS NOT EXPRESSLY SET FORTH IN THIS AGREEMENT. THE PARTIES EXPRESSLY AGREE THAT THEY ARE ENTERING INTO THIS AGREEMENT RELYING SOLELY ON THEIR OWN JUDGMENT AND NOT ON ANY REPRESENTATIONS BY ANY PARTY, EXCEPT FOR THOSE REPRESENTATIONS EXPRESSLY SET FORTH IN THIS AGREEMENT. THE PARTIES AGREE THAT REPRESENTATIONS NOT EXPRESSLY SET FORTH IN THIS AGREEMENT SHALL NOT BE USED IN THE INTERPRETATION OR CONSTRUCTION OF THIS AGREEMENT, AND NEITHER THE HMIT RELEASED PARTIES NOR THE HIGHLAND RELEASED PARTIES SHALL HAVE ANY LIABILITY FOR ANY CONSEQUENCES ARISING AS A RESULT OF ANY REPRESENTATIONS NOT SET FORTH IN THIS AGREEMENT**.

21.  <u>Agreement and Release Knowing and Voluntary</u>.  The Parties acknowledge that they have considered this Agreement with their respective attorneys and have carefully read this Agreement, that it has been fully explained by their attorneys, and that they have had a reasonable opportunity to consider this Agreement.  The Parties further represent that they know and fully understand the contents of this Agreement, that they intend to be legally bound by this Agreement and the releases and covenants contained herein, and that they are signing this Agreement, including the release provisions herein, voluntarily and of their own free will and without coercion, and with the benefit of advice of counsel.

22.  <u>Cooperation</u>.  The Parties agree to perform any services or actions reasonably necessary to carry out the terms and conditions of this Agreement or the transactions contemplated hereby, including the execution and delivery of reasonable additional documents, instruments, conveyances and/or assurances, in good faith, and to reasonably communicate and cooperate with one another in this regard.  For the avoidance of doubt, nothing in this Section shall obligate the Highland Entities to assist the HMIT Entities in any way with respect to the Kirschner Claims, including the prosecution thereof.

23.  <u>Governing Law</u>.  This Agreement shall be construed pursuant to and governed by the laws of the State of Delaware (substantive and procedural) without reference to principles of conflicts of law that would result in the application of any other State's laws.

24.  <u>Jurisdiction/Venue</u>.  The Parties hereby irrevocably submit to the jurisdiction and venue of the Bankruptcy Court with respect to any action or proceeding arising out of or related to this Agreement or the subject matter hereof; if (and only if) the Bankruptcy Court lacks personal or subject matter jurisdiction to adjudicate an action or proceeding arising out of or related to this Agreement or the subject matter hereof, then the Parties irrevocably submit to the jurisdiction and venue of the United States District Court for the Northern District of Texas.

25.  <u>No Admissions</u>.  All Parties acknowledge and agree that the matters set forth in this Agreement constitute the settlement and compromise of disputed Claims and that this Agreement shall not constitute the admission of any fact or liability by any of them regarding any Claim,

001088

HCMLPHMIT00000188

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
~~DRAFT 4/28/25~~

5/14/2025

including the Claims released hereunder, and neither the terms hereof, nor the fact of this Agreement itself, shall be evidence of any kind in any Action, other than an Action to enforce the terms of the Agreement or any instrument executed in connection herewith or any claim for damages or other relief for breach of any representation or warranty contained herein or in any instrument executed in connection herewith.

26. <u>Other Provisions</u>.

(a) This Agreement contains the entire agreement and understanding of the parties and supersedes any and all prior or contemporaneous agreements, arrangements, and understandings relating to the subject matter of this Agreement. No representation, inducement, agreement, promise or understandings altering, modifying, amending, taking from or adding to, the terms and conditions hereof shall have any force or effect unless the same is in writing and validly executed by each of the Parties hereto.

(b) The waiver by any Party of any breach of, or default under, any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach or default; provided, however, that for any such waiver to be enforceable, it shall be in writing and executed by the non-breaching Party.

(c) The headings contained in this Agreement are for convenience only and shall in no way restrict or otherwise affect the construction of the provisions hereof.

(d) The Parties shall each execute all documents and perform all acts necessary and proper to effectuate the terms of this Agreement.

27. <u>Notices</u>. All notices required or permitted to be provided hereunder shall be afforded to the respective parties to and through their counsel, and shall be transmitted simultaneously by electronic mail (with PDF attachments, as necessary) and by telefax, addressed as follows:

To the Highland Entities:

**PACHULSKI STANG ZIEHL AND JONES LLP**
Jeffrey N. Pomerantz
John A. Morris
10100 Santa Monica Boulevard
Los Angeles, California 90067-4003
310.277.6910
jpomerantz@pszjlaw.com
jmorris@pszjlaw.com

To the HMIT Entities:

**KELLY HART PITRE**
Louis M. Phillips
Amelia Hurt

001089

HCMLPHMIT00000189

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

5/14/2025

301 Main Street, Suite 1600
225.381.9643
Louis.Phillips@Kellyhart.com
Amelia.Hurt@Kellyhart.com

28.     Severability. Should any term, provision or paragraph of this Agreement be determined to be illegal or void or of no force and effect, the balance of the Agreement shall survive. The invalidity or unenforceability of any provision of this Agreement shall not affect the validity and enforceability of any other provision of this Agreement. For the avoidance of doubt, if any provision of this Agreement is overturned on appeal after the Bankruptcy Court Approval Date, any portion that is not overturned on appeal shall remain in full force and effect.

29.     Interpretive Provisions. Unless the express context otherwise requires: (a) the words "hereof," "herein" and "hereunder" and words of similar import, when used in this Agreement, shall refer to this Agreement as a whole and not to any particular provision of this Agreement; (b) words defined in the singular shall have a comparable meaning when used in the plural, and vice versa; (c) the words "Dollars" and "$" mean U.S. dollars; (d) references herein to a specific Section, Subsection, Recital, Schedule or Exhibit shall refer, respectively, to Sections, Subsections, Recitals, Schedules or Exhibits of this Agreement; (e) wherever the word "include," "includes" or "including" is used in this Agreement, it shall be deemed to be followed by the words ",without limitation,"; (f) references herein to any gender shall include each other gender; (g) references herein to any Person shall include such Person's heirs, executors, personal representatives, administrators, successors and assigns; provided, however, that nothing contained in this clause (g) is intended to authorize any assignment or transfer not otherwise permitted by this Agreement; (h) with respect to the determination of any period of time, the word "from" means "from and including" and the words "to" and "until" each means "to but excluding"; (i) the word "or" shall be disjunctive but not exclusive; (j) the headings contained in this Agreement are intended solely for convenience and shall not affect the rights of the Parties; and (k) if the last day for the giving of any notice or the performance of any act required or permitted under this Agreement is a day that is not a Business Day, then the time for the giving of such notice or the performance of such action shall be extended to the next succeeding Business Day.

[*Signature page follows*]

001090
HCMLPHMIT00000190

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first written above.

**HUNTER MOUNTAIN INVESTMENT TRUST**

By _____
    Name:     Mark Patrick
    Title:      Administrator
    Date:     ~~April~~May __, 2025

**RAND ADVISORS, LLC**

By _____
    Name:     Mark Patrick
    Title:      President
    Date:     ~~April~~May __, 2025

**RAND PE FUND I, LP**
By: Rand PE Fund Management, LLC, its General Partner

By _____
    Name:     Mark Patrick
    Title:      President
    Date:     ~~April~~May __, 2025

**RAND PE FUND MANAGEMENT, LLC**

By _____
    Name:     Mark Patrick
    Title:      President
    Date:     ~~April~~May __, 2025

**ATLAS IDF, LP**
By: Atlas IDF GP, LLC, its General Partner

By _____

001091
HCMLPHMIT00000191

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

Name:       Mark Patrick
Title:      President
Date:       ~~April~~May __, 2025

**ATLAS IDF GP, LLC**


By  _____
Name:       Mark Patrick
Title:      President
Date:       ~~April~~May __, 2025


**HIGHLAND CAPITAL MANAGEMENT, L.P.**


By  _____
Name:       James. P. Seery, Jr.
Title:      Chief Executive Officer
Date:       ~~April~~May __, 2025


**HIGHLAND CLAIMANT TRUST**


By  _____
Name:       James P. Seery, Jr.
Title:      Claimant Trustee
Date:       ~~April~~May __, 2025

**HIGHLAND LITIGATION SUB-TRUST**


By  _____
Name:       Marc S. Kirschner
Title:      Litigation Trustee
Date:       ~~April~~May __, 2025

001092

HCMLPHMIT00000192

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

**HIGHLAND INDEMNITY TRUST**

By    _____

    Name:     James P. Seery, Jr.
    Title:      Indemnity Trust Administrator
    Date:     ~~April~~May __, 2025

001093
HCMLPHMIT00000193

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/25/25
5/14/2025

## SETTLEMENT AGREEMENT & GENERAL RELEASE

THIS SETTLEMENT AGREEMENT & GENERAL RELEASE (this "**Agreement**") is entered into as of April [__], May [], 2025 (the "**Agreement Date**"), by and among Highland Capital Management, L.P., a Delaware limited partnership ("**Highland**"), the Highland Claimant Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act (the "**Claimant Trust**"), the Highland Litigation Sub-Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act (the "**Litigation Sub-Trust**"), and the Highland Indemnity Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act (the "**Indemnity Trust**", and together with Highland, the Claimant Trust and the Litigation Sub-Trust, the "**Highland Entities**"), on the one hand, and Hunter Mountain Investment Trust, a Delaware statutory trust ("**HMIT**"), Rand Advisors, LLC, a Delaware limited liability company ("**Rand Advisors**"), Rand PE Fund I, LP, a Delaware series limited partnership ("**Rand PE Fund**"), Rand PE Fund Management, LLC, a Delaware limited liability company ("**Rand GP**"), Atlas IDF, LP, a Delaware limited partnership ("**Atlas IDF**"), Atlas IDF GP, LLC, a Delaware limited liability company ("**Atlas GP**" and together with HMIT, Rand Advisors, Rand PE Fund, Rand GP and Atlas IDF, the "**HMIT Entities**"), on the other hand.  The Highland Entities and the HMIT Entities are collectively referred to as the "**Parties**," and each individually, as a "**Party**".

## DEFINITIONS

"**9019 Motion**" means the motion seeking entry of the Bankruptcy Court Order pursuant to Bankruptcy Rule 9019 and in accordance with <u>Section 18</u>.

"**Action**" means any action, claim, demand, arbitration, hearing, charge, complaint, investigation, examination, indictment, litigation, suit or other civil, criminal, administrative or investigative proceedings.

"**Affiliate**" means a Person that, directly or indirectly, through one or more intermediaries, controls or is controlled by, or is under common control with, a specified Person as of the date on which, or at any time during the period for which, the determination of affiliation is being made.  The term "control" (including, with correlative meanings, the terms "controlled by" and "under common control with"), as applied to any Person, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting securities or other ownership interest, by contract or otherwise.

"**Amended Complaint**" means the *Amended Complaint and Objection to Claims*, filed as docket number 158 in *Kirschner v. Dondero*, Adv. Pro. No. 21-03076-sgj (Bankr. N.D. Tex. May 19, 2022).

"**Bankruptcy Case**" means *In re Highland Capital Management, L.P.*, Case No. 19-34054-sgj (Bankr. N.D. Tex.) and its related proceedings.

"**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended).

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
~~DRAFT 4/28/25~~

5/14/2025

"**Bankruptcy Court**" means the U.S. Bankruptcy Court for the Northern District of Texas, Dallas Division.

"**Bankruptcy Court Approval Date**" means the date on which the Bankruptcy Court Order is issued.

"**Bankruptcy Court Order**" means an order of the Bankruptcy Court approving the allowance of the HMIT's Class 10 Interest as provided in this Agreement pursuant to the 9019 Motion.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure.

"**Business Day**" means any day other than (i) a Saturday or a Sunday, (ii) a day on which the Federal Reserve Bank of New York or the New York Stock Exchange is closed, or (iii) a day on which banks in the States of Texas are required, or authorized by law, to close.

"**Claimant Trust Agreement**" means that certain Claimant Trust Agreement of the Claimant Trust (as may have been or may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), effective as of August 11, 2021, by and among Highland, as settlor, James P. Seery, Jr., a Claimant Trustee, and Wilmington Trust, National Association, a national banking association, as Delaware trustee.

"**Claims**" means any claims, debts, liabilities, demands, obligations, breaches of contract, breaches of duty or any relationship, misfeasance, malfeasance, promises, acts, omissions, agreements, liens, losses, costs and expenses (including attorney's fees and related costs), damages, injuries, suits, actions, and causes of action of whatever kind or nature, whenever and however, arising, whether known or unknown, suspected or unsuspected, matured or unmatured, liquidated or unliquidated, contingent or fixed, at law or in equity, statutory or otherwise.

"**Class 10**" means the class of Claims or Equity Interests described in Article II. Section H.10. of the Plan.

"**Class 11**" means the class of Claims or Equity Interests described in Article II. Section H.11. of the Plan.

"**Committee**" means the official committee of unsecured creditors appointed in the Bankruptcy Case.

"**Confirmation Order**" means that certain *Order Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (ii) Granting Related Relief* [Docket No. 1943], as conformed in accordance with the Fifth Circuit's rulings.

"**Dugaboy Note**" means that certain Promissory Note dated May 31, 2017, in the original face amount of $24,268,621.69, from The Dugaboy Investment Trust, as Maker, and Highland Capital Management, L.P. and The Get Good Non-Exempt Trust, collectively as Payee.

4923-8662-5850.9 36027.003

2

001095

HCMLPHMIT00000195

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

5/14/2025

"**Final Court Approval Date**" means the date on which the Bankruptcy Court Order becomes a Final Order.

"**Final Order**" means an order or judgment of the Bankruptcy Court, which is in full force and effect, and as to which the time to appeal, petition for certiorari, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, new trial, reargument, or rehearing shall have been waived in writing in form and substance satisfactory to the Highland Entities, as applicable, or, in the event that an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order of the Bankruptcy Court shall have been determined by the highest court to which such order was appealed, or certiorari, new trial, reargument or rehearing shall have been denied and the time to take any further appeal, petition for certiorari, or move for a new trial, reargument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be Filed with respect to such order shall not preclude such order from being a Final Order.

Formatted: Font color: Auto

"**Gatekeeper**" means the gatekeeping provision contained in Article IX. F of the Plan as of August 11, 2021.

"**Governmental Authority**" means any federal, provincial, state, local or foreign government or political subdivision thereof, court of competent jurisdiction, administrative agency, judicial or arbitral body, or commission or other governmental or regulatory authority or instrumentality.

"**Highland Released Parties**" means collectively (i) the Highland Entities, (ii) any Affiliate of any Highland Entity and any Person directly or indirectly majority-owned by any Highland Entity or any of their respective Affiliates, (iii) any Person directly or indirectly managed by any Highland Entity or any of their respective Affiliates, whether by contract or otherwise (the entities described in clauses (i)-(iii), collectively, the "**Highland Parties**"), (iv) each of the Highland Parties' current and former trustees and administrators (including the trustees of any of the Claimant Trust, the Litigation Sub-Trust, or the Indemnity Trust), officers, executives, agents, directors, advisors, advisory representatives, consultants, administrators, managers, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns, (v) the current and former members of the Oversight Board of the Claimant Trust in any capacity (including Richard Katz) and their Affiliates, including Farallon Capital Management, LLC, Stonehill Capital Management, LLC, Muck Holdings LLC, and Jessup Holdings LLC, (vi) the Independent Board and its members John Dubel, James P. Seery, Jr., and Russell Nelms, (vii) James P. Seery, Jr., individually and in all capacities for any Highland Released Party, including as Chief Executive Officer of Highland Capital Management, L.P., Claimant Trustee of the Claimant Trust, and the Indemnity Trust Administrator of the Indemnity Trust, (viii) Marc S. Kirschner, individually and as Trustee of the Litigation Sub-Trust, (ix) the Committee and each of its members, (x) the professionals (and their respective firms) (a) retained by Highland or the Committee during the Bankruptcy Case or which provided services to Highland or the Committee during the Bankruptcy Case or (b) retained by any Highland Released Party on

001096

HCMLPHMIT00000196

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
~~DRAFT 4/28/25~~

5/14/2025

or after August 11, 2021, (xi) any Person indemnified by any Highland Party (the Persons described in clauses (i)-(xi), collectively, the "**Highland Covered Parties**"), and (xii) each Highland Covered Party's current and former officers, executives, agents, directors, advisors, consultants, administrators, managers, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns, if not otherwise included in the defined term "Highland Covered Parties;" provided, however, and for the avoidance of doubt, and without in any way limiting the scope of the foregoing, "Highland Covered Parties" shall include Highland CLO Funding, Ltd., Highland HCF Advisor, Ltd., Highland Multi Strategy Credit Fund, L.P., Highland Multi Strategy Credit Fund GP, L.P., Highland Multi Strategy Credit GP, LLC, Highland Multi Strategy Credit Fund, Ltd., Highland Select Equity Master Fund, L.P., Highland Select Equity Fund GP, L.P., Highland Select Equity Fund, L.P., Highland Restoration Capital Partners Master, L.P., Highland Restoration Capital Partners GP, LLC, Highland Restoration Capital Partners, L.P., Highland Restoration Capital Partners Offshore, L.P., Highland Offshore Director, LLC, Acis CLO Management, LLC, Neutra, LLC, Pollack, Ltd., Acis CLO Management Holdings, L.P., Acis CLO Management Intermediate Holdings I, LLC, Acis CLO Management Intermediate Holdings II, LLC, Acis CLO Assets Holdings Limited, CHG Houston Holdings, LLC, Penant Management, L.P., Penant Management GP, LLC, Gunwale, LLC, HE Capital, LLC, Gleneagles CLO, Ltd., Aberdeen Loan Funding, Ltd. Highland Argentina Regional Opportunity Fund GP, LLC, Highland Argentina Regional Opportunity Fund, L.P., Highland Argentina Regional Opportunity Fund, Ltd., Highland Argentina Regional Opportunity Master Fund, L.P., Highland Latin America Consulting, Ltd., Highland Capital Management Korea Limited, Highland Capital Management Latin America, L.P., Highland Latin America GP, Ltd., Highland Latin America LP, Ltd., Highland Offshore Partners, L.P. (Diversified), Brentwood CLO, Ltd., Eastland CLO, Ltd., Bristol Bay Funding Ltd., Jasper CLO Ltd., Highland Legacy Limited, Grayson CLO, Ltd., Greenbriar CLO, Ltd., Highland Loan Funding V Ltd., Highland Park CDO I, Ltd., Liberty CLO, Ltd., Valhalla CLO, Ltd., Stratford CLO Ltd., Southfork CLO, Ltd., Pam Capital Funding, L.P., Stonebridge-Highland Healthcare Private Equity Fund, Pamco Cayman Ltd., Red River CLO, Ltd., Rockwall CDO II Ltd., Rockwall CDO, Ltd., Westchester CLO, Ltd. Longhorn Credit Funding, LLC, PensionDanmark Pensionsforsikringsaktieselskab, Highland Dynamic Income Master Fund L.P., Highland Dynamic Income Fund GP, LLC, Highland Dynamic Income Fund, L.P., Highland Dynamic Income Fund, Ltd., Highland JHT Holdings, LLC, Highland Prometheus Master Fund, L.P., Highland Prometheus Feeder Fund I, L.P., Highland Prometheus Feeder Fund II, L.P., Highland Sunbridge GP, LLC, Trussway Holdings, LLC, Trussway Industries, LLC, TW Company, Inc., T-Way Investments, LLC, SSP Holdings, LLC, Highland Flexible Income UCITS Fund, and Acis CLO 2017-7, Ltd. *Notwithstanding the forgoing or anything herein to the contrary*, none of "Highland Released Parties", "Highland Parties", nor "Highland Covered Parties" shall include James Dondero, Scott Ellington, Isaac Leventon, or any Person directly or indirectly owned as of the date hereof (in whole or in part) by, and/or Affiliated as of the date hereof with, any of Mr. Dondero, Mr. Ellington, or Mr. Leventon in any manner and none of such Persons are released from any Claim by any Person in connection with this Agreement.

"**HMIT Class 10 Interest**" means the unvested, contingent Class 10 interest in the Claimant Trust (a) to be allowed on account of HMIT's pre-petition equity interest in Highland,

001097

HCMLPHMIT00000197

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
~~DRAFT 4/28/25~~

5/14/2025

and (b) subject to the terms and conditions, as applicable, of the Plan, the Plan Documents, the Claimant Trust Agreement, and in accordance with this Agreement, and applicable law.

"**HMIT Note**" means that certain Secured Promissory Note dated December 21, 2015, in the original face amount of $63,000,000 from HMIT, as maker, and Highland, as payee.

"**HMIT Note Claims**" means any Claim related to, in connection with or arising out of the HMIT Note.

"**HMIT Released Parties**" means collectively (i) the HMIT Entities, (ii) any Affiliate of any HMIT Entity and any Person directly or indirectly majority owned by any HMIT Entity or any of their respective Affiliates, (iii) any Person directly or indirectly managed by any HMIT Entity or any of their respective Affiliates, whether by contract or otherwise (the entities described in clauses (i) – (iii), collectively, the "**HMIT Parties**"), (iv) each of the HMIT Parties' current and former trustees, administrators, officer, executives, agents, directors, advisors, consultants, manager, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns (v) the professionals (and their respective firms (a) retained by any HMIT Party during the Bankruptcy Case or which provided services to any HMIT Party during the Bankruptcy Case or (b) retained by any HMIT Released Party on or after August 11, 2021, (vi) any Person indemnified by any HMIT Party (the Persons described in clauses (i) – (vi), collectively, the "**HMIT Covered Parties**"), and (vii) each HMIT Covered Party's current and former officers, executives, agents, directors, advisors, consultants, administrators, managers, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect parents, Affiliates, successors, designees, and assigns, if not otherwise included in the defined term "HMIT Covered Parties." *Notwithstanding the forgoing*, none of "HMIT Released Parties", "HMIT Parties", nor "HMIT Covered Parties" shall include James Dondero, Scott Ellington, Isaac Leventon, or any Person directly or indirectly owned as of the date hereof (in whole or in part) by, and/or Affiliated as of the date hereof with, any of Mr. Dondero, Mr. Ellington, or Mr. Leventon in any manner, and none of such Persons are released from any Claims by any Person in connection with this Agreement.

"**Indemnity Trust Administrator**" has the meaning given to it in the Indemnity Trust Agreement.

"**Indemnity Trust Agreement**" means that certain *Second Amended and Restated Indemnity Trust Agreement of the Indemnity Trust* (as may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), effective as of [April 28], 2025, by and among the Claimant Trust, as grantor, James P. Seery, Jr., as indemnity trust administrator, and Wilmington Trust, National Association, a national banking association, as indemnity trustee and Delaware trustee.

"**Indemnity Trust Assets**" has the meaning set forth in the Indemnity Trust Agreement.

"**Independent Board**" means the independent board appointed by the Bankruptcy Court on January 9, 2020, pursuant to that certain *Order Approving Settlement with Official Committee*

001098
HCMLPHMIT00000198

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
~~DRAFT 4/28/25~~

5/14/2025

*of Unsecured Creditors Regarding Governance of the Debtor and Procedures for Operations in the Ordinary Course* [Docket No. 339].

"**Kirschner Claims**" means all Claims and causes of action ~~other than the HMIT Note Claims~~ that were asserted or could have been asserted by the Litigation Trustee of the Litigation Sub-Trust, in the Amended Complaint.

"**Liability**" means any liability, debt, obligation, loss, damage, claim, cost or expense (including costs of investigation and defense and attorney's fees, costs and expenses), in each case, whether direct or indirect, whether accrued or contingent, whether or not involving a third-party claim, and including incidental and consequential damages and diminution of value.

"**Litigation Protections**" means, individually and collectively, the rights, duties, and obligations set forth in Section 1 and Sections 9 - 16.

"**Litigation Sub-Trust**" means the Highland Litigation Sub-Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act.

"**Litigation Sub-Trust Agreement**" means that certain Litigation Sub-Trust Agreement of the Litigation Sub-Trust (as may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), effective as of August 16, 2021, by and among James P. Seery, Jr., as Claimant Trustee of the Claimant Trust, Wilmington Trust, National Association, a national banking association, as Delaware Trustee, and the Litigation Trustee.

"**Litigation Trustee**" means Marc S. Kirschner, as Litigation Trustee of the Litigation Sub-Trust.

"**LPA**" means that certain *Sixth Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P.* (as may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), dated as of October 4, 2021.

"Operating Expenses" means the expenses of operation and administration of the Highland Entities except for the Indemnity Trust, including legal expenses, employee compensation, Claimant Trustee/CEO and other trust and trustee related compensation, incentive compensation, and customary general and administrative expenses.

"**Original Plan**" means that certain *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* attached as Exhibit A to the *Order (A) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as modified) and (B) Granting Related Relief*, filed at Docket No. 1943 on the Bankruptcy Court's docket.

"**Oversight Board**" means the oversight board of the Highland Claimant Trust.

"**Pending Litigation**" means (i) *Hunter Mountain Investment Trust v. Highland Cap. Mgmt., L.P.*, Case No. 3:23-cv-02071-E (N.D. Tex.), on remand to the Bankruptcy Court (including *Hunter Mountain Investment Trust's Emergency Motion for Leave to File Adversary Proceeding* filed at Bankruptcy Court Docket No. 3699 and all proceedings, decisions, and orders

**Formatted:** Font: Not Italic

001099

HCMLPHMIT00000199

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
~~DRAFT 4/28/25~~

5/14/2025

relating there); (ii) *Dugaboy Investment Trust v. Highland Cap. Mgmt, L.P.*, 3:24-cv-01531-X (N.D. Tex.) (only as to HMIT), and (iii) *Hunter Mountain Investment Trust v. Highland Cap. Mgmt., L.P.*, Case No. 3:24-cv-01786-L (N.D. Tex.).

"**Permitted Investments**" has the meaning set forth in the Indemnity Trust Agreement.

"**Person**" means any natural person, partnership, limited liability partnership, corporation, limited liability company, association, joint stock company, trust, estate, joint venture, unincorporated organization or Governmental Authority.

"**Plan**" means that certain *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* as conformed in accordance with the Fifth Circuit's rulings.

"**Plan Documents**" has the meaning given to it in the Plan.

"**Plan Protections**" means, collectively, the provisions of the Plan contained in Article IX thereof.

"**Pro Rata**" means the proportion that (a) the allowed amount of a particular Claim or Equity Interest in Class 10 bears to (b) the aggregate allowed amount of all Claims or Equity Interests in Class 10.

"**Threats**" means any written threats, of legal action, legal demands, filed complaints, petitions for pre-suit discovery, suits, litigations, arbitrations, actual or threated restraining orders or injunctions made in writing, or similar written actions of any kind in any forum against any Trust Indemnified Parties or Indemnified Party (both as defined in the Indemnity Trust Agreement), excluding any such action that would otherwise be a Threat except that any applicable Statute of Limitations that could be applicable to such action has expired.

"**Threats Notice**" means the written notice of any Threats made to any Trust Indemnified Parties or Indemnified Party (both as defined in the Indemnity Trust Agreement), that is hereby required to be provided by such Party to the HMIT Entities, within Five (5) business days after receipt of such Threat.

## RECITALS

**WHEREAS**, as of the Petition Date, HMIT held Class B and Class C Limited Partnerships Interests in Highland;

**WHEREAS**, on December 21, 2015, HMIT entered into the HMIT Note with Highland, which had a total outstanding principal balance of Fifty-Seven Million Six Hundred Ninety Thousand Six Hundred Forty and 95/100 Dollars ($57,690,640.95) as of the Petition Date (the "**HMIT Note Balance**");

**WHEREAS**, HMIT's Class B and Class C Limited Partnership Interests in Highland were extinguished on August 11, 2021, in accordance with the Plan;

001100

HCMLPHMIT00000200

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
~~DRAFT 4/28/25~~

5/14/2025

**WHEREAS**, pursuant to the LPA, HMIT's capital account balance at Highland on account of its Class B and Class C Limited Partnership Interests on the Petition Date was Three Hundred Ninety-Four Million Six Hundred Thirty Thousand Eight Hundred Seventy-One and 53/100 Dollars ($394,630,871.53) (the "**HMIT Capital Account Balance**");

**WHEREAS**, some or all of the HMIT Entities have asserted certain Claims against certain Highland Entities, including those asserted in the Pending Litigation;

**WHEREAS**, some or all of the Highland Entities have asserted certain Claims against certain HMIT Entities, including the HMIT Note Claims;

**WHEREAS**, the Parties wish to terminate, extinguish, and release any and all rights, duties, obligations and Claims that (a) any of the Highland Released Parties owed or have, or may have owed or have, to or with respect to any of the HMIT Released Parties, and (b) any of the HMIT Released Parties owed or have, or may have owed or have, to or with respect to any of the Highland Released Parties, as provided in this Agreement (collectively, the "**Rights and Obligations**");

**WHEREAS**, the Parties agree that the Litigation Protections are intended to enact a permanent cessation of all litigation concerning or related to the Highland Released Parties through and including the Agreement Date; and

**WHEREAS**, the Parties, individually and collectively, wish to (a) resolve all disputes between and/or among any of the Highland Entities, on the one hand, and any of the HMIT Entities, on the other hand, including those asserted in the Pending Litigation, (b) fix and allow HMIT's Class 10 Interest at the amount and on the terms provided herein; and (c) terminate, extinguish, and release all Rights and Obligations on the terms provided herein.

**NOW THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree as follows:

**AGREEMENT**

1.        Abatement and Dismissal of Pending Litigation With Prejudice.

(a)        Within three (3) Business Days after the Agreement Date, the HMIT Entities shall take all steps necessary (at their own cost) to abate the Pending Litigation.

~~1.~~(b)    Within three (3) Business Days after the Bankruptcy Court Approval Date, the HMIT Entities shall take all steps necessary (at their own cost) to dismiss the Pending Litigation with prejudice.

2.        Maintenance of Abatement and Dismissal of Certain Defendants from the Amended Complaint.

~~(a)        Within three (3) Business Days after the Effective Date, the Litigation Trustee shall take all steps necessary (at its own cost) to dismiss, with prejudice, HMIT and Rand~~

| Formatted: Level 2, Indent: First line: 0" |

4923-8662-5850.9 36027.003                    8

001101

HCMLPHMIT00000201

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
~~DRAFT 4/28/25~~

5/14/2025
~~PE Fund from Counts I, II, and III of the Amended Complaint. For the avoidance of doubt, Counts I, II, and III constitute all Kirschner Claims that are not HMIT Note Claims, and such dismissal shall not affect or impair any HMIT Note Claims or any liability or obligation of HMIT with respect to the HMIT Note, if any.~~

~~(b)~~(a)   ~~Within three (3) Business Days after the Final~~The Litigation Trustee shall continue to maintain the abatement of Adv. Proc. No. 21-03076-sgj and all related proceedings arising therefrom through the Bankruptcy Court Approval Date. Within three (3) Business Days after the Bankruptcy Court Approval Date, the Litigation Sub-Trust shall take all steps necessary (at its own cost) to dismiss, with prejudice, HMIT and Rand PE from ~~Count~~ Counts I, II, III, and XXIV of the Amended Complaint~~, which constitutes all HMIT Note Claims against HMIT and Rand PE.~~.

3.   <u>Cash Payment to HMIT</u>.  In consideration for the dismissal of the Pending Litigation, within three (3) Business Days following the ~~Agreement~~Bankruptcy Court Approval Date, Highland shall pay HMIT a one-time, lump sum of [~~Five Hundred Thousand Dollars (US$500,000.00)~~] (the "**Payment**") by wire transfer:

[wire instructions]

> **Formatted:** Not Highlight

> **Formatted:** Not Highlight

4.   <u>HMIT Class 10 Interest</u>.

(a)   Subject to entry of the Bankruptcy Court Order, and the terms of this Agreement, the HMIT Class 10 Interest shall be deemed allowed in the amount of Three Hundred Thirty-Six Million Nine Hundred Forty Thousand Two Hundred Thirty and 58/100 Dollars (US$336,940,230.58), which amount represents the HMIT Capital Account Balance, <u>less</u> the HMIT Note Balance.

(b)   Notwithstanding anything to the contrary in the Plan or the Claimant Trust Agreement, as an integral part of this Agreement to consent to the allowance of the HMIT Class 10 Interest and the other considerations in this Agreement, HMIT shall not be deemed, and no holder of the HMIT Class 10 Interest shall be, a Claimant Trust Beneficiary or a "Beneficiary" under the Claimant Trust Agreement, and the Highland Released Parties, individually and collectively, shall owe no duty to any HMIT Releasor (whether contractual, fiduciary, equitable, statutory or otherwise), including with respect to the HMIT Class 10 Interest, in each case, except as expressly set forth in this Agreement.  Furthermore, without limiting the foregoing and for the avoidance of doubt, the contractual right of the holder of the HMIT Class 10 Interest to receive or recover any payments or Indemnity Trust Assets from the Indemnity Trust as set forth in this Agreement or the Indemnity Trust Agreement does not make any HMIT Releasor or any other Person a beneficiary of the Indemnity Trust or under the Indemnity Trust Agreement.

(c)   Notwithstanding anything to the contrary in the Plan, the Claimant Trust Agreement or the Indemnity Trust Agreement, in no event shall HMIT sell, transfer, assign, pledge, hypothecate, participate or otherwise dispose of the HMIT Class 10 Interest or any rights (including any right to payment) with respect thereto.

001102

HCMLPHMIT00000202

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
~~DRAFT 4/28/25~~

5/14/2025

(d)    For the avoidance of doubt, the HMIT Class 10 Interest is and shall remain senior to the not yet allowed, unvested contingent Class 11 Claims of Equity Interests as provided for in the Plan, the Plan Documents, and the Claimant Trust Agreement.

5.    <u>Initial Interim ~~Cash~~ Distributions on the Allowed Class 10 Interests.</u>

(a)    Within ten (10) Business Days ~~of~~after the ~~Final~~Bankruptcy Court Approval Date, the Indemnity Trust shall distribute (the date on which such distribution is made, the "**Initial Interim Distribution Date**") Pro Rata to the Holders of allowed Class 10 Claims or Equity Interests~~: (i)~~ cash in the aggregate amount of ~~[Ten~~Twelve Million Dollars (US$~~10~~12,000,000.00)~~]~~ (the "**Initial Interim Cash Distribution Amount**")~~; and (ii) cash in the aggregate amount of all principal and interest payments paid on the Dugaboy Note and actually received by Highland or the Indemnity Trust from and after the Bankruptcy Court Approval Date (the "Initial Interim Dugaboy Distribution Amount"). "~~).

(b)    ~~Upon~~HMIT shall deposit and hold Ten Million Dollars (US$10,000,000) of the Initial Interim Cash Distirbution Amount in an interest bearing escrow account (the "**HMIT Escrow Account**") pending the Final Court Approval Date.

~~(b)~~    Within ten (10) Business Days after the Bankruptcy Court Approval Date~~, the Indemnity Trust shall establish a balance sheet reserve in respect of the Initial Interim Cash Distribution Amount and the Initial Interim Dugaboy Distribution Amount (if and when received), which reserve will be held solely in cash or Permitted Investments and otherwise on~~ ("**Note Assignment Date**"). ~~the same terms as other Indemnity Trust Assets pursuant to the Indemnity Trust Agreement pending distribution in accordance with Section 5(a).~~

6.    ~~Subsequent Distribution(s) on~~Highland Entities shall cause the Dugaboy Note to be assigned to HMIT and take all actions necessary for HMIT to become the ~~Allowed Class 10 Interests.~~

~~(a)~~(c)    ~~On the later~~holder of the ~~Final Court Approval Date and April 1, 2028, the Indemnity Trust shall distribute (such distribution, collectively, the "Subsequent Distribution", and the date on which such Subsequent Distribution is made, the "Subsequent Distribution Date") Pro Rata to the Holders of allowed Class 10 Claims or Equity Interests: (i) cash in the aggregate amount of [Five Million Dollars (US$5,000,000.00)]; and (ii)~~(x)(1) if HMIT elects in writing that it desires for the Indemnity Trust to sell the Dugaboy Note, ~~the net proceeds, if any, actually received by the Indemnity Trust from such sale, or (2) if HMIT instead elects that it desires~~and shall in addition pay ~~to receive the Dugaboy Note in kind, the Dugaboy Note in kind, plus (y)~~HMIT cash in the aggregate amount of all principal and interest payments actually received on the Dugaboy Note by the ~~the Highland Entities including the~~ Indemnity Trust ~~from and after the Initial Interim Distribution~~as of the Note Assignment Date ~~(the amount pursuant~~. Prior ~~to subclause (y), the "Subsequent Dugaboy P+I Amount"). If~~ the ~~Dugaboy Note is distributed in kind~~Bankruptcy Court Approval Date, HMIT will engage an independent valuation service provider to value the Dugaboy Note for purposes of determining the magnitude of reduction to the outstanding allowed Class 10 Interests on account of such in-kind distribution. which shall not be less than Fifty percent (50%) of the current balance owed under the Dugaboy Note. The HMIT Entities acknowledge and agree that none of the Highland Entities are representing or warranting

4923-8662-5850.9 36027.003

10

001103

HCMLPHMIT00000203

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
~~DRAFT 4/28/25~~

5/14/2025

that the Dugaboy Note can ~~or will~~ be sold, or the price, if any, that could be received for the Dugaboy Note and further acknowledge and agree that any such purchase price may be de minimis.

> **Formatted:** Not Highlight

~~(b)        Upon the Initial Interim Distribution Date, the Indemnity Trust shall establish a balance sheet reserve in respect of the cash portion of the Subsequent Dugaboy P+I Amount, which will be held solely in cash or Permitted Investments and otherwise on the same terms as other Indemnity Trust Assets pursuant to the Indemnity Trust Agreement pending distribution in accordance with Section 6(a).~~

6.        Subsequent Distribution(s) on the Allowed Class 10 Interests.

(a)        On December 1, 2027, the Indemnity Trust shall distribute (such distribution, collectively, the "**First Subsequent Distribution**", and the date on which such Subsequent Distribution is made, the "**First Subsequent Distribution Date**") Pro Rata to the Holders of allowed Class 10 Claims or Equity Interests: cash in the aggregate amount of Eight Million Dollars (US$8,000,000.00).   HMIT shall deposit and hold Six Million Dollars (US$6,000,000) of the First Subequent Distribution in the HMIT Escrow Account pending the Final Court Approval Date.

(b)        On Decemeber 1, 2028, the Indemnity Trust shall distribute (such distribution, collectively, the "**Second Subsequent Distribution**", and the date on which such Subsequent Distribution is made, the "**Second Subsequent Distribution Date**") Pro Rata to the Holders of allowed Class 10 Claims or Equity Interests cash in the aggregate amount of Eight Million Dollars (US$8,000,000.00).

(c)        HMIT shall deposit and hold Six Million Dollars (US$6,000,000) of the Second Subequent Distribution in the HMIT Escrow Account pending the Final Court Approval Date.

~~(c)~~(d)    Notwithstanding anything herein to the contrary, the obligations of the Indemnity Trust to make the First Subsequent Distribution~~, including any Cash, the Dugaboy Note,~~ or ~~the~~Second Subsequent ~~Dugaboy P+I Amount,~~Distribution is subject in all respects to (i) there being no Threats and (ii) a determination in accordance with Article VIII, Section 8.1(c) of the Indemnity Trust Agreement that the Indemnity Trust Assets comprising such distributions are not reasonably necessary to satisfy current or potential Indemnification Obligations (as defined in the Indemnity Trust Agreement) to all persons who are or might become Beneficiaries (as defined in the Indemnity Trust Agreement).

7.        Final Distribution on the Allowed Class 10 Interests.

(a)        On the later of the Final Court Approval Date and April 1, 2029, the Indemnity Trust will distribute all excess remaining Indemnity Trust Assets in accordance with Article VIII of the Indemnity Trust Agreement; provided, however, that the obligation of the Indemnity Trust to make any such distributions and/or dissolve and wind up the affairs of the Indemnity Trust is subject in all respects to (i) there being no Threats and (ii) a determination in accordance with Article VIII of the Indemnity Trust Agreement that (1) a Final Order(s) (as defined in the Indemnity Trust Agreement) has been entered resolving all litigation, claims or

001104

HCMLPHMIT00000204

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
~~DRAFT 4/28/25~~

<u>5/14/2025</u>

proceedings in any forum of any kind which could give rise to Indemnity Obligations (as defined in the Indemnity Trust Agreement) and payment in full of all such Indemnity Obligations and (2) all applicable statutes of limitations and any applicable tolling of such statutes of limitation have expired.

(b)     The Indemnity Trust agrees to not use Indemnity Trust Assets to fund ~~the operating expenses of Highland.~~Operating Expenses.

(c)     Following the Bankruptcy Court Approval Date, at the request of Mark Patrick, solely in his capacity, and to the extent he remains, as administrator of HMIT, but not more often than quarterly, Highland and the Indemnity Trust Administrator agree to review (i) the status of their respective assets, (ii) the balance of cash held, (iii) the status of any claims made for indemnification and any resolutions thereof, (iv) the status of any litigation, and (v) forecasted operating expenses with Mr. Patrick, and will each work in good faith to reduce operating expenses where reasonably practicable; provided, however, that all such reporting shall be subject to Mr. Patrick's agreement to maintain confidentiality with respect to any non-public information.

8.     <u>Transfer Kirschner Claims; Dismissal of HMIT Note Claims.</u>

(a)     In consideration of the dismissal of the Pending Litigation and the releases provided herein, within ten (10) Business Days ~~of~~after the ~~Agreement~~Bankruptcy Court Approval Date, but after the dismissal provided for in <u>Section 2</u>~~, and solely to the extent permitted by the Plan, the Litigation Sub-Trust Agreement and applicable law~~, the Litigation Sub-Trust shall execute an assignment in the form attached hereto as **Exhibit [_]** in favor of the HMIT Entities transferring all of the Litigation Sub-Trust's right, title, and interest in and to the Kirschner Claims ~~(which, for the avoidance of doubt, shall not include any HMIT Note Claims)~~ (the "**Kirschner Transfer**").[‡] Each HMIT Entity acknowledges and agrees that none of the Highland Entities will have any duty or obligation to assist the HMIT Entities in any way with respect to the Kirschner Claims, including the prosecution thereof, except as provided in this Agreement, including without limitation the terms of Section 8(c) below.

[Formatted: Not Highlight]

(b)     THE HMIT ENTITIES SPECIFICALLY ACKNOWLEDGE AND AGREE THAT THE LITIGATION SUB-TRUST IS TRANSFERRING THE KIRSCHNER CLAIMS ON AN "AS IS AND WITH ALL FAULTS" BASIS AND THAT THE HMIT ENTITIES ARE NOT RELYING ON ANY REPRESENTATIONS OR WARRANTIES OF ANY KIND WHATSOEVER, EXPRESS OR IMPLIED, FROM THE HIGHLAND ENTITIES OR THEIR REPRESENTATIVES AS TO ANY MATTERS CONCERNING THE KIRSCHNER CLAIMS AND AMENDED COMPLAINT, INCLUDING WITH RESPECT TO THE ENFORCEABILITY, TRANSFERABILITY, VIABILITY, STRENGTH, OR VALUE OF ANY OF THE KIRSCHNER CLAIMS OR THE AMENDED COMPLAINT.  The HMIT Entities hereby specifically acknowledge that they have carefully reviewed this Section and have had the opportunity to discuss its import with legal counsel and that the provisions of this Section are a material part of this Agreement.  Thus, if for any reason HMIT is precluded from or is otherwise unable to prosecute all or any of the Kirschner Claims, (i) the HMIT Releasors shall have no

---

[‡] ~~NTD: HMIT Claim to be dismissed without prejudice.~~

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
~~DRAFT 4/28/25~~

5/14/2025

recourse against the Highland Released Parties whatsoever and shall not be entitled to compensation of any kind, it being agreed that the HMIT Entities are otherwise receiving adequate consideration for the duties and obligations they are undertaking pursuant to this Agreement and (ii) there will be no effect whatsoever on the validity and enforceability of this Agreement or any of the other transactions contemplated hereby.

(c)    As promptly as reasonably practicable following the ~~Effective~~Bankruptcy Court Approval Date, the Highland Entities shall provide to the HMIT Entities electronic copies of written discovery requests and responses thereto, and documents produced in discovery in respect of the Kirschner Claims and the Amended Complaint.  The Highland Entities will not provide any other documents regarding the Kirschner Claims including any attorney-client communications and any documents subject to the attorney work-product doctrine or similar privileges or immunities concerning the Kirschner Claims (collectively, the "**Kirschner Privileges**"), it being understood and agreed that the Highland Entities are retaining, and not transferring or waiving, the Kirschner Privileges.

(d)    Each Party acknowledges and agrees that if (a) the Kirschner Transfer is found or deemed to be impermissible or invalid, for any reason, or (b) the Final Court Approval Date does not occur, the Kirschner Claims and Amended Complaint will revert to, and remain an asset of, the Litigation Sub-Trust.

9.    General Release By The HMIT Entities. On the ~~Agreement~~Bankruptcy Court Approval Date, and to the maximum extent permitted by law, each of the HMIT Entities, on behalf of itself and each of its respective Affiliates (including Affiliated and/or managed funds, accounts and other investment vehicles) and its and their respective current and former advisors, consultants, administrators, trustees, directors, officers, managers, executives, members, partners (including limited and general partners), employees, beneficiaries, direct and indirect shareholders and other equity holders, agents, participants, direct and indirect subsidiaries and parents, successors, predecessors, designees, and assigns (whether by operation of law or otherwise) (collectively with the HMIT Entities, the "**HMIT Releasors**") hereby forever, finally, fully, unconditionally, and completely releases, relieves, acquits, discharges, remises, and exonerates each Highland Released Party from, and waives and relinquishes, any and all Claims, which the HMIT Releasors, or any Person claiming through, under, or on behalf of any of the HMIT Releasors, ever had, now has, or hereafter can, shall, or may have against any of the Highland Released Parties by reason of, arising from, relating to, or in connection with, any fact, matter, or transaction that occurred prior to the Agreement Date, including any fact, matter, transaction, or occurrence in connection with, relating to, or with respect to the Bankruptcy Case, the management or operation of any of the Highland Released Parties, or the Highland Released Parties' property and including any defense, affirmative defenses, and right to setoff arising out of, or otherwise related to, any of the foregoing (collectively, the "**HMIT Entity Released Claims**").

~~10.~~    General Release By The Highland Entities.

~~(a)~~    On the ~~Agreement~~Bankruptcy Court Approval Date, and to the maximum extent permitted by law, each of the Highland Entities, on behalf of itself and each of its respective Affiliates (including Affiliated and/or managed funds, accounts and other investment vehicles) and

001106

HCMLPHMIT00000206

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

5/14/2025

its or their respective current and former advisors, consultants, administrators, trustees, directors, officers, managers, executives, members, partners (including limited and general partners), employees, beneficiaries, direct and indirect shareholders and other equity holders, agents, participants, direct and indirect subsidiaries and parents, successors, predecessors, designees, and assigns (whether by operation of law or otherwise)(collectively with the Highland Entities, the "**Highland Releasors**") hereby forever, finally, fully, unconditionally, and completely releases, relieves, acquits, discharges, remises, and exonerates each HMIT Released Party from, and waives and relinquishes, any and all Claims, excepting any HMIT Note Claims, which the Highland Releasors, or any Person claiming through, under, or on behalf of any of the Highland Releasors, ever had, now has, or hereafter can, shall, or may have against any of the HMIT Released Parties by reason of, arising from, relating to, or in connection with, any fact, matter, or transaction that occurred prior to the AgreementBankruptcy Court Approval Date, including any fact, matter, transaction, or occurrence in connection with, relating to, or with respect to the Bankruptcy Case, the management or operation of any of the HMIT Released Parties, or the HMIT Released Parties' property and including any defense, affirmative defenses, and right to setoff arising out of, or otherwise related to, any of the foregoing (collectively, the "Initial Highland Released Claims"). For the avoidance of doubt and notwithstanding anything herein to the contrary, the HMIT Note Claims shall not be released until Final Court Approval Date, at which time the HMIT Note will be applied to calculate the allowed HMIT Class 10 Interest set forth in Section 4 and the balance of the HMIT Note and any HMIT Note Claims shall be released pursuant to Section 10(b).

(b)10.   Upon the Final Court Approval Date, and to the maximum extent permitted by law, each of the Highland Releasors hereby forever, finally, fully, unconditionally, and completely releases, relieves, acquits, discharges, remises, and exonerates each HMIT Released Party from, and waives and relinquishes, the HMIT Note Claims (the "Subsequent Highland Released Claims" and together with the Initial Highland Released Claims, the "Highland Entity Released Claims" and together with the HMIT Entity Released Claims, the "Released Claims").Highland Released Claims").

11.   Further Provisions Concerning The General Releases.

(a)   FOR THE AVOIDANCE OF DOUBT, THE FOREGOING RELEASES ARE INTENDED TO BE GENERAL AND INCLUDE A RELEASE OF ALL RELEASED CLAIMS, WHETHER KNOWN OR UNKNOWN, SUSPECTED OR UNSUSPECTED, ARISING OR EXISTING FROM THE BEGINNING OF TIME THROUGH AND INCLUDING THE AGREEMENT DATE.

(b)   To the maximum extent permitted by law, each of the HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, waives the benefit of any statute or other principle of law or equity that limits the applicability of a release with respect to Claims that the releasing party does not know or suspect to exist in his, her or its favor at the time of executing the release.

(c)   Without limiting the scope of the foregoing waiver, in connection with the foregoing release, each of the HMIT Entities and the Highland Entities, on its own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, waives the benefits of

4923-8662-5850.9 36027.003

14

> **Formatted:** Level 1, Indent: First line:  0.5", Keep with next, Keep lines together

001107
HCMLPHMIT00000207

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
~~DRAFT 4/28/25~~

5/14/2025

Section 1542 of the California Civil Code (to the extent, if any, that Section 1542 might apply to the foregoing release), which provides as follows:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

Each of the HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, hereby agrees that the provisions of Section 1542 of the Civil Code of the State of California and all similar federal or state law, rights, rules or legal principles, legal or equitable, in each case solely to the extent such provisions apply, **ARE HEREBY KNOWINGLY AND VOLUNTARILY WAIVED AND RELINQUISHED BY EACH OF THE HMIT ENTITIES AND THE HIGHLAND ENTITIES, ON THEIR OWN BEHALF AND ON BEHALF OF THE OTHER HMIT RELEASORS AND HIGHLAND RELEASORS, RESPECTIVELY,** in each and every capacity, to the full extent that such rights and benefits pertaining to the matters released herein may be waived, and each of the HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, hereby agrees and acknowledges that this waiver and relinquishment is an essential term of this Agreement, without which the consideration provided would not have been given.

In connection with such waiver and relinquishment, each of the HMIT Entities and Highland Entities acknowledges that it is aware that it may hereafter discover Claims presently unknown or unsuspected, or facts in addition to or different from those which it now knows or believes to be true, with respect to the matters released herein. Nevertheless, it is the intent of each of the HMIT Entities and the Highland Entities, on its own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, in executing this Agreement fully, finally, and forever to settle and release all such matters, and all Claims related thereto, which exist, may exist or might have existed (whether or not previously or currently asserted in any action) which are the subject to the releases granted above.

(d)    As an integral component of this Agreement, and notwithstanding the Parties' intent set forth in the preamble hereto and the general nature of the releases in Sections 9 and 10, should:

(i)    any HMIT Releasor contend or assert that any Claim of any kind whatsoever held by any HMIT Releasor against any Highland Released Party survives this Agreement and is in any way related to or arising from or in connection with any HMIT Entity Released Claim (such claim or cause of action, a "**HMIT Alleged Claim**"), such HMIT Releasor will be deemed to have irrevocably, fully, and finally assigned such HMIT Alleged Claim to the Highland Entities and the Highland Entities will be deemed to have forever, finally, full, unconditionally, and irrevocably, and completely released such HMIT Alleged Claim.

4923-8662-5850.9 36027.003

15

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
~~DRAFT 4/28/25~~

5/14/2025

(ii)      any Highland Releasor contend or assert that any Claim of any kind whatsoever held by any Highland Releasor against any HMIT Released Party survives this Agreement and is in any way related to or arising from or in connection with any Highland Entity Released Claim (such claim or cause of action, a "**Highland Alleged Claim**"), such Highland Releasor will be deemed to have irrevocably, fully, and finally assigned such Highland Alleged Claim to the HMIT Entities and the HMIT Entities will be deemed to have forever, finally, full, unconditionally, and irrevocably, and completely released such Highland Alleged Claim.

12.      <u>Covenant Not To Sue; Limitation on Standing</u>. Upon the Agreement Date:

(a)      Each of the HMIT Releasors covenants and agrees that it will not institute or prosecute any Action, in law, in equity or otherwise, against any of the Highland Released Parties, to recover, enforce, or collect any HMIT Entity Released Claim and will not (i) induce, encourage or direct any other Person to do so or (ii) act in concert with or assist (financially or otherwise) any other Person in doing so.

(b)      Each of the Highland Releasors covenants and agrees that it will not institute or prosecute any Action, in law, in equity or otherwise, against any of the HMIT Released Parties, to recover, enforce, or collect any Highland Entity Released Claim and will not (i) induce, encourage or direct any other Person to do so or (ii) act in concert with or assist (financially or otherwise) any other Person in doing so.

(c)      For the avoidance of doubt, this Agreement shall not operate to give any HMIT Entity standing for any purpose in connection with the Bankruptcy Case (or in connection with any appeal arising from any order entered by the Bankruptcy Court), except for the limited purpose of seeking Court approval of this Agreement (including with respect to any appeal concerning any order entered granting or denying such approval), and except for the limited purpose of enforcing this Agreement, no HMIT Entity shall commence any Action in connection with the HMIT Class 10 Interest.

13.      <u>Representations and Warranties</u>.

(a)      Each of the HMIT Entities hereby represents and warrants that every HMIT Entity Released Claim has not heretofore been assigned or encumbered and is not the subject of a transfer (as such term is defined in 11 U.S.C. § 101(54)), by any HMIT Releasor.

(b)      The HMIT Entities, on their own behalf and on behalf of the other HMIT Releasors, acknowledge and agree that each Plan Provision is lawful, effective, and binding on the HMIT Releasors.  The HMIT Entities further agree, on their own behalf and on behalf of the other HMIT Releasors, that the HMIT Releasors will never, in any way, challenge or seek to modify, nullify, vacate, or revoke, or induce, encourage or direct any other Person to do so or act in concert with or assist (financially or otherwise) any other Person in doing so the Confirmation Order, the Plan, the Plan Protections, or any Plan Document, including the Claimant Trust Agreement, the LPA, the Indemnity Trust Agreement or the Litigation Sub-Trust Agreement, in the Bankruptcy Court, in any other state or federal court, in any other forum or tribunal, or otherwise, including administrative or regulatory tribunals and foreign courts.

001109
HCMLPHMIT00000209

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
~~DRAFT 4/28/25~~

5/14/2025

(c)    Each of the Highland Entities hereby represents and warrants that every Highland Entity Released Claim has not heretofore been assigned or encumbered and is not the subject of a transfer (as such term is defined in 11 U.S.C. § 101(54)), by any Highland Releasor.

(d)    Each Party severally represents and warrants as to itself only that: (i) it has taken all necessary action to authorize and approve the execution, delivery and performance of this Agreement; (ii) such Party has full power and authority to execute and deliver this Agreement; and (iii) this Agreement constitutes a valid, legal and binding obligation of such Party, and is enforceable subject to its terms.  Each individual signatory hereto individually warrants and represents to all Parties hereto that such individual has full power and authority to act on behalf of and bind the Party for which he or she has executed this Agreement; provided, however that no signatory shall otherwise provide any warranty or representation or otherwise be a party to this Agreement on an individual basis.

14.    No Continuing Rights, Duties or Obligations.  Except for the rights, duties, and obligations expressly set forth in this Agreement, all Rights and Obligations that existed or may have existed shall be deemed terminated, extinguished, and released upon the Agreement Date. For the avoidance of doubt, from and after the Agreement Date, (a) the Highland Released Parties, individually and collectively, shall owe no duty, past or present, including with respect to the Kirchner Claims, to the HMIT Releasors, individually and collectively, whether contractual, fiduciary, equitable, statutory or otherwise, except as arising out of this Agreement, and (b) the HMIT Released Parties, individually and collectively, shall owe no duty to the Highland Releasors, individually and collectively, whether contractual, fiduciary, equitable, statutory or otherwise, except as arising out of this Agreement.

15.    Gatekeeper Standard.

(a)    The HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, acknowledge and agree that, notwithstanding the United States Court of Appeals for the Fifth Circuit's decision in *Highland Capital Management Fund Advisors, L.P. v. Highland Capital Management, L.P.*, No. 23-10$^{53}$4 (5th Cir. Mar. 18, 2025), the "Gatekeeper" provisions contained in Highland's Original Plan is forever binding on each of the HMIT Entities and for a claim or cause of action to be "colorable" for purposes of the Gatekeeper, it must be found by final order of the Bankruptcy Court (the "**Gatekeeper Court**"), which order shall be subject to appeal to a court of competent jurisdiction, to have satisfied the "Gatekeeper Colorability Test" as such term is defined in *In re Highland Capital Management, L.P.*, 2023 Bankr. LEXIS 2104 at *124-36 (Bankr. N.D. Tex. Aug. 24, 2023).

(b)    The HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, acknowledge and agree that compliance with the Gatekeeper requires (i) a motion seeking leave to sue an Exculpated Party (as that term is defined in Highland's original Plan) and a finding that the litigant's claims and causes of action are "colorable" attaching a complaint setting forth the basis for such claims or causes of action and (ii), in the Gatekeeper Court's sole discretion, an evidentiary hearing (during

4923-8662-5850.9 36027.003

17

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

5/14/2025

which the Gatekeeper Court may, among other things, hear testimony and assess the credibility of any witness(es)) to determine whether a proposed claim or cause of action is "colorable."

(c)    The HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, further acknowledge and agree that the moving party under the Gatekeeper has the burden of satisfying the "Gatekeeper Colorability Test."

16.    Indemnification.

(a)    Without in any manner limiting the available remedies for any breach of this Agreement, the HMIT Entities, severally but not jointly, agree to indemnify, defend, and hold the Highland Released Parties harmless from and against any and all Liability, that may arise or result from or on account of, or that are otherwise related or attributable to (x) any breach of this Agreement or of any representation or warranty contained in the Agreement, including the representations and warranties of any HMIT Entity set forth in Section 13 or (y) any Actions brought or prosecuted by or on behalf of, any HMIT Releasor or that are induced, encouraged, assisted  or directed by any HMIT Releasor or brought or prosecuted in concert with any HMIT Releasor against any Highland Released Party with respect to or related to any HMIT Entity Released Claims.  Without limiting the scope of the foregoing in any manner, any HMIT Entity that breaches Section 12 shall be liable to the Highland Released Party against whom the applicable Action has been brought or prosecuted in violation of Section 12 for the reasonable attorneys' fees and costs incurred by such Highland Released Party in defending against or otherwise responding to such Action.  Each HMIT Entity acknowledges and agrees that the HMIT Entities are and shall be severally but not jointly liable for any Liability arising from or out of any breach of this Agreement or of any representation or warranty set forth in this Agreement.

(b)    Without in any manner limiting the available remedies for any breach of this Agreement, the Highland Entities, severally but not jointly, agree to indemnify, defend, and hold the HMIT Released Parties harmless from and against any and all Liability, that may arise or result from or on account of, or that are otherwise related or attributable to (x) any breach of this Agreement or of any representation or warranty contained in the Agreement, including the representations and warranties of any Highland Entity set forth in Section 13 or (y) any suits, proceedings, or other actions brought or prosecuted by or on behalf of, any Highland Releasor or that are induced, encouraged, assisted  or directed by any Highland Releasor or brought or prosecuted in concert with any Highland Releasor against any HMIT Released Party with respect to or related to any Highland Entity Released Claims.  Without in any manner limiting the scope of the foregoing, any Highland Entity that breaches Section 12 shall be liable to the HMIT Released Party against whom the applicable Action has been brought or prosecuted in violation of Section 12 for the reasonable attorneys' fees and costs incurred by such HMIT Released Party in defending against or otherwise responding to such Action.  Each Highland Entity acknowledges and agrees that the Highland Entities are and shall be severally but not jointly liable for any Liability arising from or out of any breach of this Agreement or of any representation or warranty set forth in this Agreement.

001111
HCMLPHMIT00000211

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

5/14/2025

17.    Execution.  This Agreement may be executed by the exchange of signatures by facsimile or by PDF attachment to an email transmittal and in counterparts, and if so executed, shall be fully executed when a counterpart has been executed and delivered by all Parties hereto through counsel.  All counterparts taken together shall constitute one and the same agreement and shall be fully enforceable as such.

18.    Bankruptcy Court Order.  The allowance of the allowed HMIT Class 10 Interest pursuant to Section 4 is subject to the entry of the Bankruptcy Court Order.  To that end, the Highland Entities shall file the 9019 Motion no later than five (5) Business Days after the Agreement Date.  Each Party shall, and shall cause each of their respective Affiliates to, undertake any and all actions in compliance with applicable law to obtain the Bankruptcy Court Order as promptly as practicable, and without limiting the foregoing, if an Action is threatened or instituted by any Person opposing the 9019 Motion or otherwise challenging the validity or legality, or seeking to restrain the consummation, of the transactions contemplated by this Agreement or the Bankruptcy Court Order, each Party shall, and shall cause its respective Affiliates to, use their commercially reasonable best efforts to avoid, resist, resolve or, if necessary, and defend to effectuate this Agreement and consummate the transactions hereby.  If the 9019 Motion is not approved by entry of the Bankruptcy Court Order or if the Bankruptcy Court Approval is precluded from becoming a Final Order, (a) there will be no affect on, adjustment to, or impairment of, in any way, the validity and enforceability of the remainder of this Agreement, and the other transactions contemplated hereby, all of which shall remain in full force and effect and (b) each Party shall, and shall cause its respective Affiliates to, use their best efforts to seek the allowance of the HMIT Class 10 Interest in a substantially similar amount and on substantially similar terms as set forth in Section 4 to the fullest extent possible so as to give effect to the original intent of the Parties as closely as possible.

19.    Fees and Expenses.  Whether or not the transactions contemplated hereby are consummated or the Bankruptcy Court Order is obtained, and except as otherwise expressly provided in this Agreement, each Party will bear its respective fees, costs and expenses (including legal, accounting and other professional fees) incurred in connection with the preparation, negotiation, execution and performance of this Agreement or the transactions contemplated hereby, including with respect to each Party's respective obligations pursuant to Section 18.  Notwithstanding the foregoing, if any Party hereto brings an Action to enforce or interpret the terms and provisions of this Agreement, the prevailing Party in that Action shall be entitled to have and recover from the non-prevailing Party all such fees, costs and expenses (including all court costs and reasonable attorneys' fees) as the prevailing Party may suffer or incur in the pursuit or defense of such action or proceeding.

20.    Entire Agreement; No Other Representations.  **THIS AGREEMENT CONTAINS THE ENTIRE AGREEMENT BETWEEN THE PARTIES, AND NO RIGHTS ARE CREATED IN FAVOR OF ANY PARTY OTHER THAN AS SPECIFIED OR EXPRESSLY SET FORTH IN THIS AGREEMENT.  THERE ARE NO REPRESENTATIONS, CONDITIONS, WARRANTIES, STATEMENTS, OR UNDERSTANDINGS (COLLECTIVELY, "REPRESENTATIONS"), EITHER ORAL OR WRITTEN, BETWEEN THE PARTIES OTHER THAN THOSE EXPRESSLY SET FORTH IN THIS AGREEMENT.  THE PARTIES EXPRESSLY AGREE THAT THEY**

> Formatted: No underline

001112
HCMLPHMIT00000212

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
~~DRAFT 4/28/25~~

5/14/2025

**HAVE NOT BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY ANY REPRESENTATIONS NOT SET FORTH IN THIS AGREEMENT; AND THE PARTIES EXPRESSLY AGREE THAT THEY HAVE NOT RELIED ON ANY REPRESENTATIONS NOT EXPRESSLY SET FORTH IN THIS AGREEMENT. THE PARTIES EXPRESSLY AGREE THAT THEY ARE ENTERING INTO THIS AGREEMENT RELYING SOLELY ON THEIR OWN JUDGMENT AND NOT ON ANY REPRESENTATIONS BY ANY PARTY, EXCEPT FOR THOSE REPRESENTATIONS EXPRESSLY SET FORTH IN THIS AGREEMENT. THE PARTIES AGREE THAT REPRESENTATIONS NOT EXPRESSLY SET FORTH IN THIS AGREEMENT SHALL NOT BE USED IN THE INTERPRETATION OR CONSTRUCTION OF THIS AGREEMENT, AND NEITHER THE HMIT RELEASED PARTIES NOR THE HIGHLAND RELEASED PARTIES SHALL HAVE ANY LIABILITY FOR ANY CONSEQUENCES ARISING AS A RESULT OF ANY REPRESENTATIONS NOT SET FORTH IN THIS AGREEMENT**.

21.     Agreement and Release Knowing and Voluntary.  The Parties acknowledge that they have considered this Agreement with their respective attorneys and have carefully read this Agreement, that it has been fully explained by their attorneys, and that they have had a reasonable opportunity to consider this Agreement.  The Parties further represent that they know and fully understand the contents of this Agreement, that they intend to be legally bound by this Agreement and the releases and covenants contained herein, and that they are signing this Agreement, including the release provisions herein, voluntarily and of their own free will and without coercion, and with the benefit of advice of counsel.

22.     Cooperation.  The Parties agree to perform any services or actions reasonably necessary to carry out the terms and conditions of this Agreement or the transactions contemplated hereby, including the execution and delivery of reasonable additional documents, instruments, conveyances and/or assurances, in good faith, and to reasonably communicate and cooperate with one another in this regard.  For the avoidance of doubt, nothing in this Section shall obligate the Highland Entities to assist the HMIT Entities in any way with respect to the Kirschner Claims, including the prosecution thereof.

23.     Governing Law.  This Agreement shall be construed pursuant to and governed by the laws of the State of Delaware (substantive and procedural) without reference to principles of conflicts of law that would result in the application of any other State's laws.

24.     Jurisdiction/Venue.  The Parties hereby irrevocably submit to the jurisdiction and venue of the Bankruptcy Court with respect to any action or proceeding arising out of or related to this Agreement or the subject matter hereof; if (and only if) the Bankruptcy Court lacks personal or subject matter jurisdiction to adjudicate an action or proceeding arising out of or related to this Agreement or the subject matter hereof, then the Parties irrevocably submit to the jurisdiction and venue of the United States District Court for the Northern District of Texas.

25.     No Admissions.  All Parties acknowledge and agree that the matters set forth in this Agreement constitute the settlement and compromise of disputed Claims and that this Agreement shall not constitute the admission of any fact or liability by any of them regarding any Claim,

4923-8662-5850.9 36027.003

20

HCMLPHMIT00000213

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
~~DRAFT 4/28/25~~

5/14/2025

including the Claims released hereunder, and neither the terms hereof, nor the fact of this Agreement itself, shall be evidence of any kind in any Action, other than an Action to enforce the terms of the Agreement or any instrument executed in connection herewith or any claim for damages or other relief for breach of any representation or warranty contained herein or in any instrument executed in connection herewith.

26.    Other Provisions.

(a)    This Agreement contains the entire agreement and understanding of the parties and supersedes any and all prior or contemporaneous agreements, arrangements, and understandings relating to the subject matter of this Agreement.  No representation, inducement, agreement, promise or understandings altering, modifying, amending, taking from or adding to, the terms and conditions hereof shall have any force or effect unless the same is in writing and validly executed by each of the Parties hereto.

(b)    The waiver by any Party of any breach of, or default under, any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach or default; provided, however, that for any such waiver to be enforceable, it shall be in writing and executed by the non-breaching Party.

(c)    The headings contained in this Agreement are for convenience only and shall in no way restrict or otherwise affect the construction of the provisions hereof.

(d)    The Parties shall each execute all documents and perform all acts necessary and proper to effectuate the terms of this Agreement.

27.    Notices.  All notices required or permitted to be provided hereunder shall be afforded to the respective parties to and through their counsel, and shall be transmitted simultaneously by electronic mail (with PDF attachments, as necessary) and by telefax, addressed as follows:

To the Highland Entities:

**PACHULSKI STANG ZIEHL AND JONES LLP**
Jeffrey N. Pomerantz
John A. Morris
10100 Santa Monica Boulevard
Los Angeles, California 90067-4003
310.277.6910
jpomerantz@pszjlaw.com
jmorris@pszjlaw.com

To the HMIT Entities:

**KELLY HART PITRE**
Louis M. Phillips
Amelia Hurt

4923-8662-5850.9 36027.003                                   21

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
~~DRAFT 4/28/25~~

5/14/2025

301 Main Street, Suite 1600
225.381.9643
Louis.Phillips@Kellyhart.com
Amelia.Hurt@Kellyhart.com

28.  <u>Severability</u>. Should any term, provision or paragraph of this Agreement be determined to be illegal or void or of no force and effect, the balance of the Agreement shall survive.  The invalidity or unenforceability of any provision of this Agreement shall not affect the validity and enforceability of any other provision of this Agreement.  For the avoidance of doubt, if any provision of this Agreement is overturned on appeal after the Bankruptcy Court Approval Date, any portion that is not overturned on appeal shall remain in full force and effect.

29.  <u>Interpretive Provisions</u>. Unless the express context otherwise requires: (a) the words "hereof," "herein" and "hereunder" and words of similar import, when used in this Agreement, shall refer to this Agreement as a whole and not to any particular provision of this Agreement; (b) words defined in the singular shall have a comparable meaning when used in the plural, and vice versa; (c) the words "Dollars" and "$" mean U.S. dollars; (d) references herein to a specific Section, Subsection, Recital, Schedule or Exhibit shall refer, respectively, to Sections, Subsections, Recitals, Schedules or Exhibits of this Agreement; (e) wherever the word "include," "includes" or "including" is used in this Agreement, it shall be deemed to be followed by the words ",without limitation,"; (f) references herein to any gender shall include each other gender; (g) references herein to any Person shall include such Person's heirs, executors, personal representatives, administrators, successors and assigns; provided, however, that nothing contained in this clause (g) is intended to authorize any assignment or transfer not otherwise permitted by this Agreement; (h) with respect to the determination of any period of time, the word "from" means "from and including" and the words "to" and "until" each means "to but excluding"; (i) the word "or" shall be disjunctive but not exclusive; (j) the headings contained in this Agreement are intended solely for convenience and shall not affect the rights of the Parties; and (k) if the last day for the giving of any notice or the performance of any act required or permitted under this Agreement is a day that is not a Business Day, then the time for the giving of such notice or the performance of such action shall be extended to the next succeeding Business Day.

*[Signature page follows]*

001115

HCMLPHMIT00000215

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first written above.

**HUNTER MOUNTAIN INVESTMENT TRUST**

By _____
     Name:    Mark Patrick
     Title:     Administrator
     Date:   ~~April~~May __, 2025

**RAND ADVISORS, LLC**

By _____
     Name:    Mark Patrick
     Title:     President
     Date:   ~~April~~May __, 2025

**RAND PE FUND I, LP**
By: Rand PE Fund Management, LLC, its General Partner

By _____
     Name:    Mark Patrick
     Title:     President
     Date:   ~~April~~May __, 2025

**RAND PE FUND MANAGEMENT, LLC**

By _____
     Name:    Mark Patrick
     Title:     President
     Date:   ~~April~~May __, 2025

**ATLAS IDF, LP**
By: Atlas IDF GP, LLC, its General Partner

By _____

001116

HCMLPHMIT00000216

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

Name:     Mark Patrick
Title:     President
Date:     ~~April~~May __, 2025

**ATLAS IDF GP, LLC**

By  _____

Name:     Mark Patrick
Title:     President
Date:     ~~April~~May __, 2025

**HIGHLAND CAPITAL MANAGEMENT, L.P.**

By  _____

Name:     James. P. Seery, Jr.
Title:     Chief Executive Officer
Date:     ~~April~~May __, 2025

**HIGHLAND CLAIMANT TRUST**

By  _____

Name:     James P. Seery, Jr.
Title:     Claimant Trustee
Date:     ~~April~~May __, 2025

**HIGHLAND LITIGATION SUB-TRUST**

By  _____

Name:     Marc S. Kirschner
Title:     Litigation Trustee
Date:     ~~April~~May __, 2025

4923-8662-5850.9 36027.003

001117

HCMLPHMIT00000217

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

**HIGHLAND INDEMNITY TRUST**


By  _____
     Name:     James P. Seery, Jr.
     Title:     Indemnity Trust Administrator
     Date:     ~~April~~May __, 2025

4923-8662-5850.9 36027.003

25

001118

HCMLPHMIT00000218

**EXHIBIT 3**

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**To:** "John A. Morris" <jmorris@pszjlaw.com>
**Cc:** "Jeff Pomerantz" <jpomerantz@pszjlaw.com>, "Amelia L. Hurt"
<Amelia.Hurt@kellyhart.com>
**Subject:** RE: Highland/HMIT: Settlement Agreement (HCMLP comments)
**Date:** Thu, 15 May 2025 18:22:12 +0000
**Importance:** Normal
**Inline-Images:** image006.jpg; image007.png; image008.png; image002.png

---

Thanks

**Louis M. Phillips**
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

*louis.phillips@kellyhart.com*
*www.kellyhart.com*

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

---

**From:** John A. Morris <jmorris@pszjlaw.com>
**Sent:** Thursday, May 15, 2025 1:21 PM
**To:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>; Amelia L. Hurt <Amelia.Hurt@kellyhart.com>
**Subject:** RE: Highland/HMIT: Settlement Agreement (HCMLP comments)

HCMLPHMIT00000226

EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.

Louis,

The Highland team will send a Teams invite for 4:00 pm Eastern Time.

Chat soon,

John

**John A. Morris**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 212.561.7760
Tel: 212.561.7700 | Fax: 212.561.7777
jmorris@pszjlaw.com
vCard | Bio | LinkedIn



Los Angeles | San Francisco | Wilmington, DE | New York | Houston

---

**From:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Sent:** Thursday, May 15, 2025 2:08 PM
**To:** John A. Morris <jmorris@pszjlaw.com>
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>; Amelia L. Hurt <Amelia.Hurt@kellyhart.com>
**Subject:** RE: Highland/HMIT: Settlement Agreement (HCMLP comments)

John,

We are available at either time.  Let us know which you prefer.  Thanks

**Louis M. Phillips**
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

louis.phillips@kellyhart.com
www.kellyhart.com

**001121**

HCMLPHMIT00000227

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

---

**From:** John A. Morris <jmorris@pszjlaw.com>
**Sent:** Thursday, May 15, 2025 12:07 PM
**To:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>; Amelia L. Hurt <Amelia.Hurt@kellyhart.com>
**Subject:** Highland/HMIT: Settlement Agreement (HCMLP comments)

**EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.**

---

SETTLEMENT COMMUNICATION PURSUANT TO FED. R. EVID. 408
<u>WITHOUT PREJUDICE</u>

Louis:

Thank you for sending the revised version of the draft agreement.

Attached is another black line, this one showing Highland's changes to HMIT's last draft.

Are you and your team available at either **4 or 6 pm Eastern Time today** so we can walk you through this?

Please let me know.

Regards,

John

**John A. Morris**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 212.561.7760
Tel: 212.561.7700 | Fax: 212.561.7777
jmorris@pszjlaw.com
vCard | Bio | LinkedIn



Los Angeles | San Francisco | Wilmington, DE | New York | Houston

---

**From:** Tim Cournoyer <TCournoyer@HighlandCapital.com>
**Sent:** Thursday, May 15, 2025 12:45 PM

HCMLPHMIT00000228

**To:** jpseeryjr@gmail.com <jpseeryjr@gmail.com>; David Klos <DKlos@HighlandCapital.com>; Matthew Gray
<MGray@HighlandCapital.com>; Jeff Pomerantz <jpomerantz@pszjlaw.com>; John A. Morris <jmorris@pszjlaw.com>;
Gregory V. Demo <GDemo@pszjlaw.com>
**Subject:** RE: PRIVILEGED: RE: KH clean of Redline of v9 Settlement Agreement after comments 5.14.DOCX; Redline KH
5.14 against Highland v9.PDF

Revised draft attached incorporating the change to Section 8(a).  Thanks

**From:** jpseeryjr@gmail.com <jpseeryjr@gmail.com>
**Sent:** Thursday, May 15, 2025 11:42 AM
**To:** David Klos <DKlos@HighlandCapital.com>; Tim Cournoyer <TCournoyer@HighlandCapital.com>; Matthew Gray
<MGray@HighlandCapital.com>; Jeff Pomerantz <jpomerantz@pszjlaw.com>; John A. Morris <jmorris@pszjlaw.com>;
Gregory V. Demo <GDemo@pszjlaw.com>
**Subject:** Re: PRIVILEGED: RE: KH clean of Redline of v9 Settlement Agreement after comments 5.14.DOCX; Redline KH
5.14 against Highland v9.PDF

Makes sense.  New version coming now

Best.  Jim

Jim Seery
631-804-2049
jpseeryjr@gmail.com

---

**From:** David Klos <DKlos@HighlandCapital.com>
**Date:** Thursday, May 15, 2025 at 12:40 PM
**To:** Tim Cournoyer <TCournoyer@highlandcapital.com>, Jim Seery <jpseeryjr@gmail.com>, Matthew Gray
<MGray@highlandcapital.com>, Jeff Pomerantz <jpomerantz@pszjlaw.com>, John A. Morris
<jmorris@pszjlaw.com>, Gregory V. Demo <GDemo@pszjlaw.com>
**Subject:** RE: PRIVILEGED: RE: KH clean of Redline of v9 Settlement Agreement after comments
5.14.DOCX; Redline KH 5.14 against Highland v9.PDF

The deleted provision in Section 3 is similar to a remaining provision in the lead in to Section 8.  Should that be
removed as well?

---

**From:** Tim Cournoyer <TCournoyer@HighlandCapital.com>
**Sent:** Thursday, May 15, 2025 11:35 AM
**To:** Jim Seery <jpseeryjr@gmail.com>; David Klos <DKlos@HighlandCapital.com>; Matthew Gray
<MGray@HighlandCapital.com>; 'Jeff Pomerantz' <jpomerantz@pszjlaw.com>; 'John A. Morris'
<jmorris@pszjlaw.com>; 'Gregory V. Demo' <GDemo@pszjlaw.com>
**Subject:** RE: PRIVILEGED: RE: KH clean of Redline of v9 Settlement Agreement after comments 5.14.DOCX; Redline KH
5.14 against Highland v9.PDF

Jim – As discussed with you and Dave, attached is a revised draft with one change to Section 3 (removing the
provision tying the $500k payment to any specific component of the settlement).

@Jeff Pomerantz, @John A. Morris, @Gregory V. Demo – Please let us know if you expect to have any
comments and expected timeframe.

We need to circulate drafts to Class 9's, CTOB and HMIT.  We can likely send a draft to Class 9's and CTOB
now subject to ongoing review, since I don't believe you will have any changes to the economic proposal we're
making, but obviously want everyone signed off asap for purposes of getting a draft back to HMIT.

001123

Thank you.

---

**From:** Tim Cournoyer <TCournoyer@HighlandCapital.com>
**Sent:** Thursday, May 15, 2025 10:40 AM
**To:** Jim Seery <jpseeryjr@gmail.com>; David Klos <DKlos@HighlandCapital.com>; Matthew Gray <MGray@HighlandCapital.com>; 'Jeff Pomerantz' <jpomerantz@pszjlaw.com>; 'John A. Morris' <jmorris@pszjlaw.com>; 'Gregory V. Demo' <GDemo@pszjlaw.com>
**Subject:** RE: PRIVILEGED: RE: KH clean of Redline of v9 Settlement Agreement after comments 5.14.DOCX; Redline KH 5.14 against Highland v9.PDF

All,

Attached are revised drafts of the Settlement Agreement and the Class 9 Written Consent, together with redlines in PDF.  Please let me know if you have any comments ASAP.

---

**From:** Tim Cournoyer <TCournoyer@HighlandCapital.com>
**Sent:** Thursday, May 15, 2025 8:23 AM
**To:** Matthew Gray <MGray@HighlandCapital.com>; Jim Seery <jpseeryjr@gmail.com>; 'John A. Morris' <jmorris@pszjlaw.com>
**Cc:** David Klos <DKlos@HighlandCapital.com>; 'Gregory V. Demo' <GDemo@pszjlaw.com>; 'Jeff Pomerantz' <jpomerantz@pszjlaw.com>
**Subject:** PRIVILEGED: RE: KH clean of Redline of v9 Settlement Agreement after comments 5.14.DOCX; Redline KH 5.14 against Highland v9.PDF

Below is a quick checklist items to be accomplished.  Please respond if anyone can think of others:

- Settlement Agreement
  - Finalize internal comments among Highland, PSZJ and QE
  - **<u>Need to draft Form of Assignment for Kirschner Claims</u>**
  - Circulate revised draft to:
    - HMIT
    - CTOB
    - Class 9 Holders
- 9019 Motion
  - PSZJ to draft
  - Finalize comments among Highland, QE and PSZJ
  - Circulate final draft to HMIT

- CTOB Resolutions
  - Finalize internal comments among Highland and PSZJ
  - Circulate to:
    - CTOB
    - QE

- Class 9 Consent
  - Finalize internal comments to written consent among Highland and PSZJ
  - Finalize payment schedule to be attached as Exhibit
  - Circulate to:
    - Muck
    - Jessup
    - UBS

- Pay Daugherty Class 9 Claim (can likely happen post-signing)

001124

HCMLPHMIT00000230

To be completed promptly following receipt of Class 9 Consent

---

**From:** Tim Cournoyer <TCournoyer@HighlandCapital.com>
**Sent:** Wednesday, May 14, 2025 10:19 PM
**To:** Matthew Gray <MGray@HighlandCapital.com>; Jim Seery <jpseeryjr@gmail.com>; 'John A. Morris' <jmorris@pszjlaw.com>
**Cc:** David Klos <DKlos@HighlandCapital.com>; 'Gregory V. Demo' <GDemo@pszjlaw.com>; 'Jeff Pomerantz' <jpomerantz@pszjlaw.com>
**Subject:** Re: KH clean of Redline of v9 Settlement Agreement after comments 5.14.DOCX; Redline KH 5.14 against Highland v9.PDF

Thanks - I got those on the issues list as well.

TIMOTHY J. COURNOYER
D: 972.628.4153 | M: 305.479.0804

---

**From:** Matthew Gray <MGray@HighlandCapital.com>
**Sent:** Wednesday, May 14, 2025 10:18 PM
**To:** Tim Cournoyer <TCournoyer@HighlandCapital.com>; Jim Seery <jpseeryjr@gmail.com>; 'John A. Morris' <jmorris@pszjlaw.com>
**Cc:** David Klos <DKlos@HighlandCapital.com>; 'Gregory V. Demo' <GDemo@pszjlaw.com>; 'Jeff Pomerantz' <jpomerantz@pszjlaw.com>
**Subject:** RE: KH clean of Redline of v9 Settlement Agreement after comments 5.14.DOCX; Redline KH 5.14 against Highland v9.PDF

Two principal comments: 1) we don't own the entire Dugaboy Note as defined in the agreement, so we can't assign the amount of the note owed to Get Good. If language as drafted is fine then no worries, 2) clarifying we pay all P&I received on Dugaboy note between execution date and assignment date.

---

**From:** Tim Cournoyer <TCournoyer@HighlandCapital.com>
**Sent:** Wednesday, May 14, 2025 9:42 PM
**To:** Matthew Gray <MGray@HighlandCapital.com>; Jim Seery <jpseeryjr@gmail.com>; 'John A. Morris' <jmorris@pszjlaw.com>
**Cc:** David Klos <DKlos@HighlandCapital.com>; 'Gregory V. Demo' <GDemo@pszjlaw.com>; 'Jeff Pomerantz' <jpomerantz@pszjlaw.com>
**Subject:** RE: KH clean of Redline of v9 Settlement Agreement after comments 5.14.DOCX; Redline KH 5.14 against Highland v9.PDF

Matt – can you send a PDF of your comments?  I think the colors of the various comments is dependent on each user's individual Word settings.

---

**From:** Matthew Gray <MGray@HighlandCapital.com>
**Sent:** Wednesday, May 14, 2025 8:59 PM
**To:** Jim Seery <jpseeryjr@gmail.com>; 'John A. Morris' <jmorris@pszjlaw.com>
**Cc:** Tim Cournoyer <TCournoyer@HighlandCapital.com>; David Klos <DKlos@HighlandCapital.com>; 'Gregory V. Demo' <GDemo@pszjlaw.com>; 'Jeff Pomerantz' <jpomerantz@pszjlaw.com>
**Subject:** RE: KH clean of Redline of v9 Settlement Agreement after comments 5.14.DOCX; Redline KH 5.14 against Highland v9.PDF

Apologies, for some reason my red comments did not show up in prior version. Attached has comments in red.

001125

**From:** Matthew Gray
**Sent:** Wednesday, May 14, 2025 8:46 PM
**To:** jpseeryjr@gmail.com; John A. Morris <jmorris@pszjlaw.com>
**Cc:** Tim Cournoyer <TCournoyer@HighlandCapital.com>; David Klos <DKlos@HighlandCapital.com>; 'Gregory V. Demo' <GDemo@pszjlaw.com>; Jeff Pomerantz <jpomerantz@pszjlaw.com>
**Subject:** RE: KH clean of Redline of v9 Settlement Agreement after comments 5.14.DOCX; Redline KH 5.14 against Highland v9.PDF

I've attached a few comments in red, mostly on the Dugaboy note. Continuing to review.

---

**From:** jpseeryjr@gmail.com <jpseeryjr@gmail.com>
**Sent:** Wednesday, May 14, 2025 7:26 PM
**To:** Matthew Gray <MGray@HighlandCapital.com>
**Subject:** FW: KH clean of Redline of v9 Settlement Agreement after comments 5.14.DOCX; Redline KH 5.14 against Highland v9.PDF

Best.  Jim

Jim Seery
631-804-2049
jpseeryjr@gmail.com

---

**From:** John A. Morris <jmorris@pszjlaw.com>
**Date:** Wednesday, May 14, 2025 at 7:33 PM
**To:** James Seery <jpseeryjr@gmail.com>, Tim Cournoyer <TCournoyer@highlandcapital.com>, David Klos <DKlos@highlandcapital.com>, Jeff Pomerantz <jpomerantz@pszjlaw.com>, Gregory V. Demo <GDemo@pszjlaw.com>
**Subject:** Fwd: KH clean of Redline of v9 Settlement Agreement after comments 5.14.DOCX; Redline KH 5.14 against Highland v9.PDF

Sent from my iPhone

Begin forwarded message:

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**Date:** May 14, 2025 at 7:21:19 PM EDT
**To:** "John A. Morris" <jmorris@pszjlaw.com>, Jeff Pomerantz <jpomerantz@pszjlaw.com>
**Cc:** "Amelia L. Hurt" <Amelia.Hurt@kellyhart.com>, Jim Shields <jshields@shieldslegal.com>
**Subject: KH clean of Redline of v9 Settlement Agreement after comments 5.14.DOCX; Redline KH 5.14 against Highland v9.PDF**

John,

Please see the HMIT Entities' responsive version of the settlement agreement along with the redline from your version 9.  First, I apologize for the delay, as the last version, sent by Mr. Seery, arrived on the day I landed in Istanbul, and scheduling on my side plus my schedule while overseas made it difficult to get things done.  And then I just took longer to get over the lag from traveling back.

We have made some proposed changes.  First major change is that we are willing to have the releases made effective as of bankruptcy court approval, and live with that in the event of an appeal.

HCMLPHMIT00000232

We also think, because the bankruptcy court will have approved the agreement, that the assignment of the Dugaboy Note and the Kirchner litigation should be done within the revised timeline set forth, and that there is no reason for any reservation of HMIT Note Claims by the Litigation Sub Trust (and no reason that we can see for continued day to day activity of the sub-trust, as the litigation would only be returned if an appeal is successful (which none of us think will be the case – at least I think none of us do)).  We have added an agreed abatement of everything pending bankruptcy court approval.  We have also accelerated funding, though propose an agreement to escrow funds in the event of reversal on appeal.  We have reviewed the information provided by Mr. Seery and his group and think our structure and timing of funding leaves plenty of money aside for indemnification.  We also have tried to identify and make clear what a Threat would be, to get something objective we can rely on and receive notice of.

I am around tomorrow and Friday.  I will be working this weekend (without jet lag) and in my New Orleans office Monday preparing for an all day trial on Tuesday. We should be able to corral my side quickly.

There are some other tweaks that are minor we think, with the changes mentioned above being the major changes in structure.

Also, John, while the parties have discussed this matter the attached draft agreement does not contain any reference.  That is ok with us, but my clients request from your side an answer to the following question:  "Did any of the Highland Entities or their affiliates, for their own account or on behalf of Highland CDO Holding Company, affirmatively give consent to the transfer by Sentinel Reinsurance, Ltd. or its affiliates of that certain promissory note in the original principal amount of app.$32.8M and dated December 13, 2010, and executed by CLO Holdco, Ltd.?"

I really appreciate your patience. Look forward to visiting soon.


**Louis M. Phillips**
*Partner*


KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

*louis.phillips@kellyhart.com*
*www.kellyhart.com*

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

HCMLPHMIT00000233

PRIVILEGE WARNING: The sender or recipient of this message is a member of the legal department at Highland Capital Management. This message and any attachments hereto may constitute attorney work product or be protected by the attorney-client privilege. Do not disclose this message or any attachments hereto without prior consent of a member of the legal department at Highland Capital Management.

DISCLAIMER- This email is intended for the recipient(s) only and should not be copied or reproduced without explicit permission. The material provided herein is for informational purposes only and does not constitute an offer or commitment, a solicitation of an offer, or any advice or recommendation, to enter into or conclude any transaction. It may contain confidential, proprietary or legally privileged information. If you receive this message in error, please immediately delete it.

001128

HCMLPHMIT00000234

**EXHIBIT 3**

001129

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>

**To:** "John A. Morris" <jmorris@pszjlaw.com>, "Jeff Pomerantz" <jpomerantz@pszjlaw.com>

**Cc:** "Amelia L. Hurt" <Amelia.Hurt@kellyhart.com>, "Jim Shields" <jshields@shieldslegal.com>

**Subject:** SETTLEMENT AND RELEASE AGREEMENT KHH FINAL REDLINE COMMENTS 5.16.PDF; Highland HMIT-Rand Settlement Agreement.012(Highland Draft 05.15.25) KHH Clean for Execution 5.16.DOCX

**Date:** Fri, 16 May 2025 15:39:55 +0000

**Importance:** Normal

**Attachments:** SETTLEMENT_AND_RELEASE_AGREEMENT_KHH_FINAL_REDLINE_COMMENTS_5.16.PDF; Highland_HMIT-Rand_Settlement_Agreement.012(Highland_Draft_05.15.25)_KHH_Clean_for_Execution_5.16.DOCX

---

John and Jeff,

Please see a final redline with wire instructions added, a bold of a WHEREAS, and references to payments being made by Wire Transfer.  I did not add the Wire Transfer to the final distribution part because of the reference to "assets" versus payment and did not want to go into the body of the document to deal with that.  Also the attached PDF (redlined against John's clean from yesterday) does not include the header clean up contained in the word version.  We are prepared to execute this version.  Mark will be out for a while today so just let us know if we can get his signatures or whether you have any further comments.  Thank you.

HCMLPHMIT00000235

EXECUTION VERSION

## SETTLEMENT AGREEMENT & GENERAL RELEASE

THIS SETTLEMENT AGREEMENT & GENERAL RELEASE (this "**Agreement**") is entered into as of May 16, 2025 (the "**Agreement Date**"), by and among Highland Capital Management, L.P., a Delaware limited partnership ("**Highland**"), the Highland Claimant Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act (the "**Claimant Trust**"), the Highland Litigation Sub-Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act (the "**Litigation Sub-Trust**"), and the Highland Indemnity Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act (the "**Indemnity Trust**", and together with Highland, the Claimant Trust and the Litigation Sub-Trust, the "**Highland Entities**"), on the one hand, and Hunter Mountain Investment Trust, a Delaware statutory trust ("**HMIT**"), Beacon Mountain LLC, a Delaware limited liability company ("**Beacon Mountain**"), Rand Advisors, LLC, a Delaware limited liability company ("**Rand Advisors**"), Rand PE Fund I, LP, a Delaware series limited partnership ("**Rand PE Fund**"), Rand PE Fund Management, LLC, a Delaware limited liability company ("**Rand GP**"), Atlas IDF, LP, a Delaware limited partnership ("**Atlas IDF**"), Atlas IDF GP, LLC, a Delaware limited liability company ("**Atlas GP**" and together with HMIT, Beacon Mountain, Rand Advisors, Rand PE Fund, Rand GP and Atlas IDF, the "**HMIT Entities**"), on the other hand.  The Highland Entities and the HMIT Entities are collectively referred to as the "**Parties**," and each individually, as a "**Party**".

## DEFINITIONS

Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Claimant Trust Agreement or the Plan, as applicable (in each case, as hereinafter defined). For purposes of this Agreement, the following capitalized terms have the following meanings:

"**9019 Motion**" means the motion seeking entry of the Bankruptcy Court Order pursuant to Bankruptcy Rule 9019 and in accordance with Section 18.

"**Action**" means any action, claim, demand, arbitration, hearing, charge, complaint, investigation, examination, indictment, litigation, suit or other civil, criminal, administrative or investigative proceedings, including any petition under Rule 202 of the Texas Rules of Civil Procedure.

"**Affiliate**" means a Person that, directly or indirectly, through one or more intermediaries, controls or is controlled by, or is under common control with, a specified Person as of the date on which, or at any time during the period for which, the determination of affiliation is being made. The term "control" (including, with correlative meanings, the terms "controlled by" and "under common control with"), as applied to any Person, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting securities or other ownership interest, by contract or otherwise.

"**Amended Complaint**" means the *Amended Complaint and Objection to Claims*, filed as docket number 158 in *Kirschner v. Dondero*, Adv. Pro. No. 21-03076-sgj (Bankr. N.D. Tex. May 19, 2022).

"**Bankruptcy Case**" means *In re Highland Capital Management, L.P.*, Case No. 19-34054-sgj (Bankr. N.D. Tex.) and its related proceedings.

HCMLPHMIT00000236

"**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended).

"**Bankruptcy Court**" means the U.S. Bankruptcy Court for the Northern District of Texas, Dallas Division.

"**Bankruptcy Court Approval Date**" means the date on which the Bankruptcy Court Order is issued.

"**Bankruptcy Court Order**" means an order of the Bankruptcy Court approving the allowance of the HMIT's Class 10 Interest as provided in this Agreement pursuant to the 9019 Motion.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure.

"**Business Day**" means any day other than (i) a Saturday or a Sunday, (ii) a day on which the Federal Reserve Bank of New York or the New York Stock Exchange is closed, or (iii) a day on which banks in the States of Texas are required, or authorized by law, to close.

"**Claimant Trust Agreement**" means that certain Claimant Trust Agreement of the Claimant Trust (as may have been or may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), effective as of August 11, 2021, by and among Highland, as settlor, James P. Seery, Jr., a Claimant Trustee, and Wilmington Trust, National Association, a national banking association, as Delaware trustee.

"**Claims**" means any claims, debts, liabilities, demands, obligations, breaches of contract, breaches of duty or any relationship, misfeasance, malfeasance, promises, acts, omissions, agreements, liens, losses, costs and expenses (including attorney's fees and related costs), damages, injuries, suits, Actions, and causes of action of whatever kind or nature, whenever and however, arising, whether known or unknown, suspected or unsuspected, matured or unmatured, liquidated or unliquidated, contingent or fixed, at law or in equity, statutory or otherwise.

"**Class 10**" means the class of Claims or Equity Interests described in Article II. Section H.10. of the Plan.

"**Class 11**" means the class of Claims or Equity Interests described in Article II. Section H.11. of the Plan.

"**Committee**" means the official committee of unsecured creditors appointed in the Bankruptcy Case.

"**Confirmation Order**" means that certain *Order Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (ii) Granting Related Relief* [Docket No. 1943], as conformed in accordance with the Fifth Circuit's rulings.

"**Dugaboy Note**" means that certain Promissory Note dated May 31, 2017, in the original face amount of $24,268,621.69, from The Dugaboy Investment Trust, as Maker, and Highland Capital Management, L.P. and The Get Good Non-Exempt Trust, collectively as Payee.

001132

HCMLPHMIT00000237

"**Final Court Approval Date**" means the date on which the Bankruptcy Court Order becomes a Final Order.

"**Final Order**" means an order or judgment of the Bankruptcy Court, which is in full force and effect, and as to which the time to appeal, petition for certiorari, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, new trial, reargument, or rehearing shall have been waived in writing in form and substance satisfactory to the Highland Entities, as applicable, or, in the event that an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order of the Bankruptcy Court shall have been determined by the highest court to which such order was appealed, or certiorari, new trial, reargument or rehearing shall have been denied and the time to take any further appeal, petition for certiorari, or move for a new trial, reargument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be Filed with respect to such order shall not preclude such order from being a Final Order.

"**Gatekeeper**" means the gatekeeping provision contained in Article IX. F of the Plan as of August 11, 2021.

"**Governmental Authority**" means any federal, provincial, state, local or foreign government or political subdivision thereof, court of competent jurisdiction, administrative agency, judicial or arbitral body, or commission or other governmental or regulatory authority or instrumentality.

"**Highland Released Parties**" means collectively (i) the Highland Entities, (ii) any Affiliate of any Highland Entity and any Person directly or indirectly majority-owned by any Highland Entity or any of their respective Affiliates, (iii) any Person directly or indirectly managed by any Highland Entity or any of their respective Affiliates, whether by contract or otherwise (the entities described in clauses (i)-(iii), collectively, the "**Highland Parties**"), (iv) each of the Highland Parties' current and former trustees and administrators (including the trustees of any of the Claimant Trust, the Litigation Sub-Trust, or the Indemnity Trust), officers, executives, agents, directors, advisors, advisory representatives, consultants, administrators, managers, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns, (v) the current and former members of the Oversight Board of the Claimant Trust in any capacity (including Richard Katz) and their Affiliates, (vi) Farallon Capital Management, LLC, Stonehill Capital Management, LLC, Muck Holdings LLC, and Jessup Holdings LLC, in each case, in any capacity, (vii) the Independent Board and its members John Dubel, James P. Seery, Jr., and Russell Nelms, (viii) James P. Seery, Jr., individually and in all capacities for any Highland Released Party, including as Chief Executive Officer of Highland Capital Management, L.P., Claimant Trustee of the Claimant Trust, and the Indemnity Trust Administrator of the Indemnity Trust, (ix) Marc S. Kirschner, individually and as Trustee of the Litigation Sub-Trust, (x) the Committee and each of its members, (xi) the professionals (and their respective firms) (a) retained by Highland or the Committee during the Bankruptcy Case or which provided services to Highland or the Committee during the Bankruptcy Case or (b) retained by any Highland Released Party on or after August 11, 2021, (xii) any Person indemnified by any

3

001133

HCMLPHMIT00000238

Highland Party (the Persons described in clauses (i)-(xii), collectively, the "**Highland Covered Parties**"), and (xii) each Highland Covered Party's current and former officers, executives, agents, attorneys (and their respective firms), directors, advisors, consultants, administrators, managers, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns, if not otherwise included in the defined term "Highland Covered Parties;" provided, however, and for the avoidance of doubt, and without in any way limiting the scope of the foregoing, "Highland Covered Parties" shall include Highland CLO Funding, Ltd., Highland HCF Advisor, Ltd., Highland Multi Strategy Credit Fund, L.P., Highland Multi Strategy Credit Fund GP, L.P., Highland Multi Strategy Credit GP, LLC, Highland Multi Strategy Credit Fund, Ltd., Highland Select Equity Master Fund, L.P., Highland Select Equity Fund GP, L.P., Highland Select Equity Fund, L.P., Highland Restoration Capital Partners Master, L.P., Highland Restoration Capital Partners GP, LLC, Highland Restoration Capital Partners, L.P., Highland Restoration Capital Partners Offshore, L.P., Highland Offshore Director, LLC, Acis CLO Management, LLC, Neutra, Ltd., Pollack, Ltd., Acis CLO Management Holdings, L.P., Acis CLO Management Intermediate Holdings I, LLC, Acis CLO Management Intermediate Holdings II, LLC, Acis CLO Assets Holdings Limited, CHG Houston Holdings, LLC, Penant Management, L.P., Penant Management GP, LLC, Gunwale, LLC, HE Capital, LLC, Gleneagles CLO, Ltd., Aberdeen Loan Funding, Ltd. Highland Argentina Regional Opportunity Fund GP, LLC, Highland Argentina Regional Opportunity Fund, L.P., Highland Argentina Regional Opportunity Fund, Ltd., Highland Argentina Regional Opportunity Master Fund, L.P., Highland Latin America Consulting, Ltd., Highland Capital Management Korea Limited, Highland Capital Management Latin America, L.P., Highland Latin America GP, Ltd., Highland Latin America LP, Ltd., Highland Offshore Partners, L.P. (Diversified), Brentwood CLO, Ltd., Eastland CLO, Ltd., Bristol Bay Funding Ltd., Jasper CLO Ltd., Highland Legacy Limited, Grayson CLO, Ltd., Greenbriar CLO, Ltd., Highland Loan Funding V Ltd., Highland Park CDO I, Ltd., Liberty CLO, Ltd., Valhalla CLO, Ltd., Stratford CLO Ltd., Southfork CLO, Ltd., Pam Capital Funding, L.P., Stonebridge-Highland Healthcare Private Equity Fund, Pamco Cayman Ltd., Red River CLO, Ltd., Rockwall CDO II Ltd., Rockwall CDO, Ltd., Westchester CLO, Ltd. Longhorn Credit Funding, LLC, PensionDanmark Pensionsforsikringsaktieselskab, Highland Dynamic Income Master Fund L.P., Highland Dynamic Income Fund GP, LLC, Highland Dynamic Income Fund, L.P., Highland Dynamic Income Fund, Ltd., Highland JHT Holdings, LLC, Highland Prometheus Master Fund, L.P., Highland Prometheus Feeder Fund I, L.P., Highland Prometheus Feeder Fund II, L.P., Highland Sunbridge GP, LLC, Trussway Holdings, LLC, Trussway Industries, LLC, TW Company, Inc., T-Way Investments, LLC, SSP Holdings, LLC, Highland Flexible Income UCITS Fund, and Acis CLO 2017-7, Ltd. *Notwithstanding the forgoing or anything herein to the contrary,* none of "Highland Released Parties", "Highland Parties", nor "Highland Covered Parties" shall include James Dondero, Scott Ellington, Isaac Leventon, or any Person directly or indirectly owned as of the date hereof (in whole or in part) by, and/or Affiliated as of the date hereof with, or claiming through, under or on behalf of, any of Mr. Dondero, Mr. Ellington, or Mr. Leventon in any manner and none of such Persons are released from any Claim by any Person in connection with this Agreement.

"**HMIT Class 10 Interest**" means the unvested, contingent Class 10 interest in the Claimant Trust (a) to be allowed on account of HMIT's pre-petition equity interest in Highland, and (b) subject to the terms and conditions, as applicable, of the Plan, the Plan Documents, the Claimant Trust Agreement, and in accordance with this Agreement, and applicable law.

4

001134

HCMLPHMIT00000239

"**HMIT Note**" means that certain Secured Promissory Note dated December 21, 2015, in the original face amount of $63,000,000 from HMIT, as maker, and Highland, as payee.

"**HMIT Note Claims**" means any Claim related to, in connection with or arising out of the HMIT Note.

"**HMIT Released Parties**" means collectively (i) the HMIT Entities, (ii) any Affiliate of any HMIT Entity and any Person directly or indirectly majority owned by any HMIT Entity or any of their respective Affiliates, (iii) any Person directly or indirectly managed by any HMIT Entity or any of their respective Affiliates, whether by contract or otherwise (the entities described in clauses (i) – (iii), collectively, the "**HMIT Parties**"), (iv) each of the HMIT Parties' current and former trustees, administrators, officer, executives, agents, directors, advisors, consultants, manager, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns (v) the professionals (and their respective firms (a) retained by any HMIT Party during the Bankruptcy Case or which provided services to any HMIT Party during the Bankruptcy Case or (b) retained by any HMIT Released Party on or after August 11, 2021, (vi) any Person indemnified by any HMIT Party (the Persons described in clauses (i) – (vi), collectively, the "**HMIT Covered Parties**"), and (vii) each HMIT Covered Party's current and former officers, executives, agents, directors, advisors, consultants, administrators, managers, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns, if not otherwise included in the defined term "HMIT Covered Parties." *Notwithstanding the forgoing*, none of "HMIT Released Parties", "HMIT Parties", nor "HMIT Covered Parties" shall include James Dondero, Scott Ellington, Isaac Leventon, or any Person directly or indirectly owned as of the date hereof (in whole or in part) by, and/or Affiliated as of the date hereof with, or claiming through, under or on behalf of, any of Mr. Dondero, Mr. Ellington, or Mr. Leventon in any manner, and none of such Persons are released from any Claims by any Person in connection with this Agreement.

"**Indemnity Trust Administrator**" has the meaning given to it in the Indemnity Trust Agreement.

"**Indemnity Trust Agreement**" means that certain *Second Amended and Restated Indemnity Trust Agreement of the Indemnity Trust* (as may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), effective as of [April 28], 2025, by and among the Claimant Trust, as grantor, James P. Seery, Jr., as indemnity trust administrator, and Wilmington Trust, National Association, a national banking association, as indemnity trustee and Delaware trustee.

"**Indemnity Trust Assets**" has the meaning set forth in the Indemnity Trust Agreement, but excluding Highland, the Claimant Trust, and their respective assets.

"**Independent Board**" means the independent board appointed by the Bankruptcy Court on January 9, 2020, pursuant to that certain *Order Approving Settlement with Official Committee of Unsecured Creditors Regarding Governance of the Debtor and Procedures for Operations in the Ordinary Course* [Docket No. 339].

001135

HCMLPHMIT00000240

"**Kirschner Claims**" means all Claims and causes of action that were asserted or could have been asserted by the Litigation Trustee of the Litigation Sub-Trust, in the Amended Complaint.

"**Liability**" means any liability, debt, obligation, loss, damage, claim, cost or expense (including costs of investigation and defense and attorney's fees, costs and expenses), in each case, whether direct or indirect, whether accrued or contingent, whether or not involving a third-party claim, and including incidental and consequential damages and diminution of value.

"**Litigation Protections**" means, individually and collectively, the rights, duties, and obligations set forth in Sections 1 – 2 and Sections 9 - 16.

"**Litigation Sub-Trust**" means the Highland Litigation Sub-Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act.

"**Litigation Sub-Trust Agreement**" means that certain Litigation Sub-Trust Agreement of the Litigation Sub-Trust (as may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), effective as of August 16, 2021, by and among James P. Seery, Jr., as Claimant Trustee of the Claimant Trust, Wilmington Trust, National Association, a national banking association, as Delaware Trustee, and the Litigation Trustee.

"**Litigation Trustee**" means Marc S. Kirschner, as Litigation Trustee of the Litigation Sub-Trust.

"**LPA**" means that certain *Sixth Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P.* (as may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), dated as of October 4, 2021.

"Operating Expenses" means, except for the expenses of the Indemnity Trust (including any payments to Trust Indemnified Parties or Indemnified Parties (in each case, as defined, and pursuant to the terms and conditions set forth, in the Indemnity Trust Agreement)), the expenses of operating and administering the Highland Entities, including legal expenses, employee compensation, Claimant Trustee/CEO and other trust and trustee related compensation, incentive compensation, and customary general and administrative expenses.

"**Original Plan**" means that certain *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* attached as Exhibit A to the *Order (A) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as modified) and (B) Granting Related Relief*, filed at Docket No. 1943 on the Bankruptcy Court's docket.

"**Oversight Board**" means the oversight board of the Highland Claimant Trust.

"**Pending Litigation**" means (i) *Hunter Mountain Investment Trust v. Highland Cap. Mgmt., L.P.*, Case No. 3:23-cv-02071-E (N.D. Tex.), on remand to the Bankruptcy Court (including *Hunter Mountain Investment Trust's Emergency Motion for Leave to File Adversary Proceeding* filed at Bankruptcy Court Docket No. 3699 and all proceedings, decisions, and orders relating there); (ii) *Dugaboy Investment Trust v. Highland Cap. Mgmt, L.P.*, 3:24-cv-01531-X

001136

HCMLPHMIT00000241

(N.D. Tex.) (only as to HMIT), and (iii) *Hunter Mountain Investment Trust v. Highland Cap. Mgmt., L.P.*, Case No. 3:24-cv-01786-L (N.D. Tex.).

"**Permitted Investments**" has the meaning set forth in the Indemnity Trust Agreement.

"**Person**" means any natural person, partnership, limited liability partnership, corporation, limited liability company, association, joint stock company, trust, estate, joint venture, unincorporated organization or Governmental Authority.

"**Plan**" means that certain *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* as conformed in accordance with the Fifth Circuit's rulings.

"**Plan Documents**" has the meaning given to it in the Plan.

"**Plan Protections**" means, collectively, the provisions of the Plan contained in Article IX thereof.

"**Pro Rata**" means the proportion that (a) the allowed amount of a particular Claim or Equity Interest in Class 10 bears to (b) the aggregate allowed amount of all Claims or Equity Interests in Class 10.

"**Threats**" means any written threats of legal action, legal demands, filed complaints, petitions for pre-suit discovery, suits, litigations, arbitrations, actual or threated restraining orders or injunctions made in writing, or similar written actions of any kind, or sworn statements evidencing the same, in any forum against any Trust Indemnified Parties or Indemnified Party (both as defined in the Indemnity Trust Agreement), excluding any such action that would otherwise be a Threat except that any applicable statute of limitations that could be applicable to such action has expired.

"**Threats Notice**" means the written notice of any Threats received by the Indemnity Trust with respect to any Trust Indemnified Parties or Indemnified Party (both as defined in the Indemnity Trust Agreement), that is hereby required to be provided by the Indemnity Trust to the HMIT Entities, within five (5) Business Days after receipt of such Threat.

<div align="center">

### RECITALS

</div>

**WHEREAS**, as of the Petition Date, HMIT held Class B and Class C Limited Partnerships Interests in Highland;

**WHEREAS**, on December 21, 2015, HMIT entered into the HMIT Note with Highland, which had a total outstanding principal balance of Fifty-Seven Million Six Hundred Ninety Thousand Six Hundred Forty and 95/100 Dollars ($57,690,640.95) as of the Petition Date (the "**HMIT Note Balance**");

**WHEREAS**, HMIT's Class B and Class C Limited Partnership Interests in Highland were extinguished on August 11, 2021, in accordance with the Plan;

<div align="center">7</div>

HCMLPHMIT00000242

**WHEREAS**, pursuant to the LPA, HMIT's capital account balance at Highland on account of its Class B and Class C Limited Partnership Interests on the Petition Date was Three Hundred Ninety-Four Million Six Hundred Thirty Thousand Eight Hundred Seventy-One and 53/100 Dollars ($394,630,871.53) (the "**HMIT Capital Account Balance**");

**WHEREAS**, some or all of the HMIT Entities have asserted certain Claims against certain Highland Entities and certain other Highland Covered Parties, including those asserted in the Pending Litigation;

**WHEREAS**, certain distributions to be made to the holders of allowed Class 10 Claims or Equity Interests pursuant to the terms and subject to the conditions set forth herein are premised on the consent of certain Highland Covered Parties in their capacity as Holders of Class 9 Interests, and such Persons are only willing to provide such consent in exchange for the releases as set forth in this Agreement;

**WHEREAS**, some or all of the Highland Entities have asserted certain Claims against certain HMIT Entities, including the HMIT Note Claims;

**WHEREAS**, the Parties wish to terminate, extinguish, and release any and all rights, duties, obligations and Claims that (a) any of the Highland Released Parties owed or have, or may have owed or have, to or with respect to any of the HMIT Released Parties, and (b) any of the HMIT Released Parties owed or have, or may have owed or have, to or with respect to any of the Highland Released Parties, as provided in this Agreement (collectively, the "**Rights and Obligations**");

**WHEREAS**, the Parties agree that the Litigation Protections are intended to enact a permanent cessation of all litigation concerning or related to the Highland Released Parties through and including the Agreement Date; and

**WHEREAS**, the Parties, individually and collectively, wish to (a) resolve all disputes between and/or among any of the Highland Entities and their respective indemnitees, on the one hand, and any of the HMIT Entities, on the other hand, including those asserted or attempted to be asserted in the Pending Litigation, (b) fix and allow HMIT's Class 10 Interest at the amount and on the terms provided herein; and (c) terminate, extinguish, and release all Rights and Obligations on the terms provided herein.

**NOW THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree as follows:

<div align="center">

**AGREEMENT**

</div>

1.    <u>Stay and Dismissal of Pending Litigation With Prejudice</u>.

(a)    Within five (5) Business Days after the Agreement Date, the HMIT Entities shall take all steps necessary (at their own cost) to stay the Pending Litigation.

<div align="center">8</div>

HCMLPHMIT00000243

(b)     Within five (5) Business Days after the Bankruptcy Court Approval Date, the HMIT Entities shall take all steps necessary (at their own cost) to dismiss the Pending Litigation with prejudice.

2.    <u>Maintenance of Stay and Dismissal of Certain Defendants from the Amended Complaint</u>.

(a)     The Litigation Trustee shall continue to maintain the stay of Adv. Proc. No. 21-03076-sgj and all related proceedings arising therefrom through the Bankruptcy Court Approval Date. Within five (5) Business Days after the Bankruptcy Court Approval Date, the Litigation Sub-Trust shall take all steps necessary (at its own cost) to dismiss, with prejudice, HMIT and Rand PE from Counts I, II, III, and XXIV of the Amended Complaint.

3.    <u>Cash Payment to HMIT</u>.  Within five (5) Business Days following the Bankruptcy Court Approval Date, Highland shall pay HMIT a one-time, lump sum of Five Hundred Thousand Dollars (US$500,000.00) (the "**Payment**") by wire transfer:

Hunter Mountain Investment Trust
C/o CLO Holdco, LLC
Hancock Whitney
Account # - 071173413
Routing # - 113000968
(469) 604-0955

4.    <u>HMIT Class 10 Interest</u>.

(a)     Subject to entry of the Bankruptcy Court Order, and the terms of this Agreement, the HMIT Class 10 Interest shall be deemed allowed in the amount of Three Hundred Thirty-Six Million Nine Hundred Forty Thousand Two Hundred Thirty and 58/100 Dollars (US$336,940,230.58), which amount represents the HMIT Capital Account Balance, <u>less</u> the HMIT Note Balance.

(b)     Notwithstanding anything to the contrary in the Plan or the Claimant Trust Agreement, as an integral part of this Agreement to consent to the allowance of the HMIT Class 10 Interest and the other considerations in this Agreement, HMIT shall not be deemed, and no holder of the HMIT Class 10 Interest shall be, a Claimant Trust Beneficiary or a "Beneficiary" under the Claimant Trust Agreement, and the Highland Released Parties, individually and collectively, shall owe no duty to any HMIT Releasor (whether contractual, fiduciary, equitable, statutory or otherwise), including with respect to the HMIT Class 10 Interest, in each case, except as expressly set forth in this Agreement.  Furthermore, without limiting the foregoing and for the avoidance of doubt, the contractual right of the holder of the HMIT Class 10 Interest to receive or recover any payments or Indemnity Trust Assets from the Indemnity Trust as set forth in this Agreement or the Indemnity Trust Agreement does not make any HMIT Releasor or any other Person a beneficiary of the Indemnity Trust or under the Indemnity Trust Agreement.

(c)     Notwithstanding anything to the contrary in the Plan, the Claimant Trust Agreement or the Indemnity Trust Agreement, in no event shall HMIT sell, transfer, assign, pledge, hypothecate, participate or otherwise dispose of or encumber the HMIT Class 10 Interest

001139

HCMLPHMIT00000244

or any rights (including any right to payment) with respect thereto (collectively, a "**Class 10 Assignment**"), and any attempted Class 10 Assignment shall be null and void.

(d)     For the avoidance of doubt, the HMIT Class 10 Interest is and shall remain senior to the not yet allowed, unvested contingent Class 11 Claims of Equity Interests as provided for in the Plan, the Plan Documents, and the Claimant Trust Agreement.

5.     <u>Initial Interim Distributions on the Allowed Class 10 Interests</u>.

(a)     Within five (5) Business Days after the Bankruptcy Court Approval Date, the Indemnity Trust shall distribute (the date on which such distribution is made, the "**Initial Interim Distribution Date**") Pro Rata to the Holders of allowed Class 10 Claims or Equity Interests cash in the aggregate amount of Ten Million Dollars (US$10,000,000.00) (the "**Initial Interim Cash Distribution Amount**"), by means of wire transfer through the address contained in Section 3 ("**Wire Transfer**").

(b)     Within five (5) Business Days after the Bankruptcy Court Approval Date (the "**Note Assignment Date**"), the Highland Entities shall cause the portion of the Dugaboy Note held by the Highland Entities to be distributed to HMIT in-kind and take all actions necessary for HMIT to become the holder of such portion of the Dugaboy Note, and shall in addition pay to HMIT cash in the aggregate amount of all principal and interest payments actually received on the Dugaboy Note by the Highland Entities, including the Indemnity Trust, from the Agreement Date to the Note Assignment Date.  Prior to the Bankruptcy Court Approval Date, HMIT will engage an independent valuation service provider to value the Dugaboy Note for purposes of determining the magnitude of reduction to the outstanding allowed Class 10 Interests on account of such in-kind distribution, which shall not be less than Fifty percent (50%) of the current balance owed under the Dugaboy Note. The HMIT Entities acknowledge and agree that none of the Highland Entities are representing or warranting that the Dugaboy Note can be sold, or the price, if any, that could be received for the Dugaboy Note and further acknowledge and agree that any such purchase price may be de minimis.

6.     <u>Subsequent Distribution(s) on the Allowed Class 10 Interests.</u>

(a)     On December 1, 2027, the Indemnity Trust shall distribute (such distribution, collectively, the "**First Subsequent Distribution**", and the date on which such Subsequent Distribution is made, the "**First Subsequent Distribution Date**") Pro Rata to the Holders of allowed Class 10 Claims or Equity Interests: cash in the aggregate amount of Six Million Five Hundred Thousand Dollars (US$6,500,000.00), by Wire Transfer.

(b)     On December 1, 2028, the Indemnity Trust shall distribute (such distribution, collectively, the "**Second Subsequent Distribution**", and the date on which such Subsequent Distribution is made, the "**Second Subsequent Distribution Date**") Pro Rata to the Holders of allowed Class 10 Claims or Equity Interests cash in the aggregate amount of Six Million Five Hundred Thousand Dollars (US$6,500,000.00) by Wire Transfer.

(c)     Notwithstanding anything herein to the contrary, the obligations of the Indemnity Trust to make the First Subsequent Distribution or Second Subsequent Distribution is subject in all respects to (i) there being no Threats and (ii) a determination in accordance with

001140


HCMLPHMIT00000245

Article VIII, Section 8.1(c) of the Indemnity Trust Agreement that the Indemnity Trust Assets comprising such distributions are not reasonably necessary to satisfy current or potential Indemnification Obligations (as defined in the Indemnity Trust Agreement) to all persons who are or might become Beneficiaries (as defined in the Indemnity Trust Agreement).

       7.     <u>Final Distribution on the Allowed Class 10 Interests</u>.

       (a)     On the later of the Final Court Approval Date and April 1, 2029, the Indemnity Trust will distribute all excess remaining Indemnity Trust Assets in accordance with Article VIII of the Indemnity Trust Agreement; <u>provided</u>, <u>however</u>, that the obligation of the Indemnity Trust to make any such distributions and/or dissolve and wind up the affairs of the Indemnity Trust is subject in all respects to (i) there being no Threats and (ii) a determination in accordance with Article VIII of the Indemnity Trust Agreement that (1) a Final Order(s) (as defined in the Indemnity Trust Agreement) has been entered resolving all litigation, claims or proceedings in any forum of any kind which could give rise to Indemnity Obligations (as defined in the Indemnity Trust Agreement) and payment in full of all such Indemnity Obligations and (2) all applicable statutes of limitations and any applicable tolling of such statutes of limitation have expired.

       (b)     The Indemnity Trust agrees to not use Indemnity Trust Assets to fund Operating Expenses.

       (c)     Following the Bankruptcy Court Approval Date, at the request of Mark Patrick, solely in his capacity, and to the extent he remains, as administrator of HMIT, but not more often than quarterly, Highland and the Indemnity Trust Administrator agree to review (i) the status of their respective assets, (ii) the balance of cash held, (iii) the status of any claims made for indemnification and any resolutions thereof, (iv) the status of any litigation, and (v) forecasted operating expenses with Mr. Patrick, and will each work in good faith to reduce operating expenses where reasonably practicable; provided, however, that all such reporting shall be subject to Mr. Patrick's agreement to maintain confidentiality with respect to any non-public information.

       8.     <u>Transfer Kirschner Claims; Dismissal of HMIT Note Claims</u>.

       (a)     Within five (5) Business Days after the Bankruptcy Court Approval Date, but after the dismissal provided for in <u>Section 2</u>, the Litigation Sub-Trust shall execute a short-form assignment in in favor of the HMIT Entities transferring all of the Litigation Sub-Trust's right, title, and interest in and to the Kirschner Claims (the "**<u>Kirschner Transfer</u>**"). Such assignment shall be in a form mutually acceptable to the Parties and its substance shall be consistent with the terms, conditions and limitations set forth in this Agreement, including <u>Section 8(b)</u> below. Each HMIT Entity acknowledges and agrees that none of the Highland Entities will have any duty or obligation to assist the HMIT Entities in any way with respect to the Kirschner Claims, including the prosecution thereof, except as provided in this Agreement, including the terms of <u>Section 8(c)</u> below.

       (b)     THE HMIT ENTITIES SPECIFICALLY ACKNOWLEDGE AND AGREE THAT THE LITIGATION SUB-TRUST IS TRANSFERRING THE KIRSCHNER CLAIMS ON AN "AS IS AND WITH ALL FAULTS" BASIS AND THAT THE HMIT

001141

HCMLPHMIT00000246

ENTITIES ARE NOT RELYING ON ANY REPRESENTATIONS OR WARRANTIES OF ANY KIND WHATSOEVER, EXPRESS OR IMPLIED, FROM THE HIGHLAND ENTITIES OR THEIR REPRESENTATIVES AS TO ANY MATTERS CONCERNING THE KIRSCHNER CLAIMS AND AMENDED COMPLAINT, INCLUDING WITH RESPECT TO THE ENFORCEABILITY, TRANSFERABILITY, VIABILITY, STRENGTH, OR VALUE OF ANY OF THE KIRSCHNER CLAIMS OR THE AMENDED COMPLAINT.  The HMIT Entities hereby specifically acknowledge that they have carefully reviewed this Section and have had the opportunity to discuss its import with legal counsel and that the provisions of this Section are a material part of this Agreement.  Thus, if for any reason HMIT is precluded from or is otherwise unable to prosecute all or any of the Kirschner Claims, (i) the HMIT Releasors shall have no recourse against any Highland Released Parties whatsoever and shall not be entitled to compensation of any kind, it being agreed that the HMIT Entities are otherwise receiving adequate consideration for the duties and obligations they are undertaking pursuant to this Agreement and (ii) there will be no effect whatsoever on the validity and enforceability of this Agreement or any of the other transactions contemplated hereby.

        (c)    As promptly as reasonably practicable following the Bankruptcy Court Approval Date, the Highland Entities shall provide to the HMIT Entities electronic copies of written discovery requests and responses thereto, and documents produced in discovery in respect of the Kirschner Claims and the Amended Complaint.  The Highland Entities will not provide any other documents regarding the Kirschner Claims including any attorney-client communications and any documents subject to the attorney work-product doctrine or similar privileges or immunities concerning the Kirschner Claims (collectively, the "**Kirschner Privileges**"), it being understood and agreed that the Highland Entities are retaining, and not transferring or waiving, the Kirschner Privileges.

        (d)    Each Party acknowledges and agrees that if (i) the Kirschner Transfer is found or deemed to be impermissible or invalid, for any reason, or (ii) any HMIT Entity materially breaches this Agreement, the Kirschner Claims and Amended Complaint will revert to, and remain an asset of, the Litigation Sub-Trust.

    9.    <u>General Release By The HMIT Entities</u>. On the Bankruptcy Court Approval Date, and to the maximum extent permitted by law, each of the HMIT Entities, on behalf of itself and each of its respective Affiliates (including Affiliated and/or managed funds, accounts and other investment vehicles) and its and their respective current and former advisors, consultants, administrators, trustees, directors, officers, managers, executives, members, partners (including limited and general partners), employees, beneficiaries, direct and indirect shareholders and other equity holders, agents, participants, direct and indirect subsidiaries and parents, successors, predecessors, designees, and assigns (whether by operation of law or otherwise) and all Persons claiming through, under or on their behalf (collectively with the HMIT Entities, the "**HMIT Releasors**") hereby forever, finally, fully, unconditionally, and completely releases, relieves, acquits, discharges, remises, and exonerates each Highland Released Party from, and waives and relinquishes, any and all Claims, which the HMIT Releasors, or any Person claiming through, under, or on behalf of any of the HMIT Releasors, ever had, now has, or hereafter can, shall, or may have against any of the Highland Released Parties by reason of, arising from, relating to, or in connection with, any fact, matter, or transaction that occurred prior to the Agreement Date, including any fact, matter, transaction, or occurrence asserted by any HMIT Entity in the Pending

001142

HCMLPHMIT00000247

Litigation or in connection with, relating to, or with respect to the Bankruptcy Case, the management or operation of any of the Highland Released Parties, or the Highland Released Parties' property and including any defense, affirmative defenses, and right to setoff arising out of, or otherwise related to, any of the foregoing (collectively, the "**HMIT Entity Released Claims**").

10.     General Release By The Highland Entities. On the Bankruptcy Court Approval Date, and to the maximum extent permitted by law, each of the Highland Entities, on behalf of itself and each of its respective Affiliates (including Affiliated and/or managed funds, accounts and other investment vehicles) and its or their respective current and former advisors, consultants, administrators, trustees, directors, officers, managers, executives, members, partners (including limited and general partners), employees, beneficiaries, direct and indirect shareholders and other equity holders, agents, participants, direct and indirect subsidiaries and parents, successors, predecessors, designees, and assigns (whether by operation of law or otherwise) and all Persons claiming through, under or on their behalf (collectively with the Highland Entities, the "**Highland Releasors**") hereby forever, finally, fully, unconditionally, and completely releases, relieves, acquits, discharges, remises, and exonerates each HMIT Released Party from, and waives and relinquishes, any and all Claims which the Highland Releasors, or any Person claiming through, under, or on behalf of any of the Highland Releasors, ever had, now has, or hereafter can, shall, or may have against any of the HMIT Released Parties by reason of, arising from, relating to, or in connection with, any fact, matter, or transaction that occurred prior to the Bankruptcy Court Approval Date, including any fact, matter, transaction, or occurrence in connection with, relating to, or with respect to the Bankruptcy Case, the management or operation of any of the HMIT Released Parties, or the HMIT Released Parties' property and including any defense, affirmative defenses, and right to setoff arising out of, or otherwise related to, any of the foregoing (collectively, the "**Highland Released Claims**").

11.     Further Provisions Concerning The General Releases.

(a)     **FOR THE AVOIDANCE OF DOUBT, THE FOREGOING RELEASES ARE INTENDED TO BE GENERAL AND INCLUDE A RELEASE OF ALL RELEASED CLAIMS, WHETHER KNOWN OR UNKNOWN, SUSPECTED OR UNSUSPECTED, ARISING OR EXISTING FROM THE BEGINNING OF TIME THROUGH AND INCLUDING THE AGREEMENT DATE.**

(b)     To the maximum extent permitted by law, each of the HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, waives the benefit of any statute or other principle of law or equity that limits the applicability of a release with respect to Claims that the releasing party does not know or suspect to exist in his, her or its favor at the time of executing the release.

(c)     Without limiting the scope of the foregoing waiver, in connection with the foregoing release, each of the HMIT Entities and the Highland Entities, on its own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, waives the benefits of Section 1542 of the California Civil Code (to the extent, if any, that Section 1542 might apply to the foregoing release), which provides as follows:

001143

HCMLPHMIT00000248

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

Each of the HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, hereby agrees that the provisions of Section 1542 of the Civil Code of the State of California and all similar federal or state law, rights, rules or legal principles, legal or equitable, in each case solely to the extent such provisions apply, **ARE HEREBY KNOWINGLY AND VOLUNTARILY WAIVED AND RELINQUISHED BY EACH OF THE HMIT ENTITIES AND THE HIGHLAND ENTITIES, ON THEIR OWN BEHALF AND ON BEHALF OF THE OTHER HMIT RELEASORS AND HIGHLAND RELEASORS, RESPECTIVELY,** in each and every capacity, to the full extent that such rights and benefits pertaining to the matters released herein may be waived, and each of the HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, hereby agrees and acknowledges that this waiver and relinquishment is an essential term of this Agreement, without which the consideration provided would not have been given.

In connection with such waiver and relinquishment, each of the HMIT Entities and Highland Entities acknowledges that it is aware that it may hereafter discover Claims presently unknown or unsuspected, or facts in addition to or different from those which it now knows or believes to be true, with respect to the matters released herein. Nevertheless, it is the intent of each of the HMIT Entities and the Highland Entities, on its own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, in executing this Agreement fully, finally, and forever to settle and release all such matters, and all Claims related thereto, which exist, may exist or might have existed (whether or not previously or currently asserted in any action) which are the subject to the releases granted above.

(d)    As an integral component of this Agreement, and notwithstanding the Parties' intent set forth in the preamble hereto and the general nature of the releases in <u>Sections 9 and 10</u>, should:

(i)    any HMIT Releasor contend or assert that any Claim of any kind whatsoever held by any HMIT Releasor against any Highland Released Party survives this Agreement and is in any way related to or arising from or in connection with any HMIT Entity Released Claim (such claim or cause of action, a "**HMIT Alleged Claim**"), such HMIT Releasor will be deemed to have irrevocably, fully, and finally assigned such HMIT Alleged Claim to the Highland Entities and the Highland Entities will be deemed to have forever, finally, full, unconditionally, and irrevocably, and completely released such HMIT Alleged Claim.

(ii)    any Highland Releasor contend or assert that any Claim of any kind whatsoever held by any Highland Releasor against any HMIT Released Party survives this Agreement and is in any way related to or arising from or in connection with any Highland Entity Released Claim (such claim or cause of action, a "**Highland Alleged Claim**"), such Highland

14

001144

HCMLPHMIT00000249

Releasor will be deemed to have irrevocably, fully, and finally assigned such Highland Alleged Claim to the HMIT Entities and the HMIT Entities will be deemed to have forever, finally, full, unconditionally, and irrevocably, and completely released such Highland Alleged Claim.

12.    Covenant Not To Sue; Limitation on Standing. Upon the Agreement Date:

(a)    Each of the HMIT Releasors covenants and agrees that it will not institute or prosecute any Action, in law, in equity or otherwise, against any of the Highland Released Parties, to recover, enforce, investigate, or collect any HMIT Entity Released Claim and will not (i) induce, encourage or direct any other Person to do so or (ii) act in concert with or assist (financially or otherwise) any other Person in doing so.

(b)    Each of the Highland Releasors covenants and agrees that it will not institute or prosecute any Action, in law, in equity or otherwise, against any of the HMIT Released Parties, to recover, enforce, investigate, or collect any Highland Entity Released Claim and will not (i) induce, encourage or direct any other Person to do so or (ii) act in concert with or assist (financially or otherwise) any other Person in doing so.

(c)    For the avoidance of doubt, this Agreement shall not operate to give any HMIT Entity standing for any purpose in connection with the Bankruptcy Case (or in connection with any appeal arising from any order entered by the Bankruptcy Court), except for the limited purpose of seeking Court approval of this Agreement (including with respect to any appeal concerning any order entered granting or denying such approval), and except for the limited purpose of enforcing this Agreement, no HMIT Entity shall commence any Action in connection with the HMIT Class 10 Interest.

13.    Representations and Warranties.

(a)    Each of the HMIT Entities hereby represents and warrants that every HMIT Entity Released Claim has not heretofore been assigned or encumbered and is not the subject of a transfer (as such term is defined in 11 U.S.C. § 101(54)), by any HMIT Releasor.

(b)    The HMIT Entities, on their own behalf and on behalf of the other HMIT Releasors, acknowledge and agree that each Plan Provision is lawful, effective, and binding on the HMIT Releasors.  The HMIT Entities further agree, on their own behalf and on behalf of the other HMIT Releasors, that the HMIT Releasors will never, in any way, challenge or seek to modify, nullify, vacate, or revoke, or induce, encourage or direct any other Person to do so or act in concert with or assist (financially or otherwise) any other Person in doing so the Confirmation Order, the Plan, the Plan Protections, or any Plan Document, including the Claimant Trust Agreement, the LPA, the Indemnity Trust Agreement or the Litigation Sub-Trust Agreement, in the Bankruptcy Court, in any other state or federal court, in any other forum or tribunal, or otherwise, including administrative or regulatory tribunals and foreign courts.

(c)    Each of the Highland Entities hereby represents and warrants that every Highland Entity Released Claim has not heretofore been assigned or encumbered and is not the subject of a transfer (as such term is defined in 11 U.S.C. § 101(54)), by any Highland Releasor.

001145
HCMLPHMIT00000250

(d)    Each Party severally represents and warrants as to itself only that: (i) it has taken all necessary action to authorize and approve the execution, delivery and performance of this Agreement; (ii) such Party has full power and authority to execute and deliver this Agreement; and (iii) this Agreement constitutes a valid, legal and binding obligation of such Party, and is enforceable subject to its terms. Each individual signatory hereto individually warrants and represents to all Parties hereto that such individual has full power and authority to act on behalf of and bind the Party for which he or she has executed this Agreement; provided, however that no signatory shall otherwise provide any warranty or representation or otherwise be a party to this Agreement on an individual basis.

14.    <u>No Continuing Rights, Duties or Obligations</u>.  Except for the rights, duties, and obligations expressly set forth in this Agreement, all Rights and Obligations that existed or may have existed shall be deemed terminated, extinguished, and released upon the Agreement Date. For the avoidance of doubt, from and after the Agreement Date, (a) the Highland Released Parties, individually and collectively, shall owe no duty, past or present, including with respect to the Kirchner Claims, to the HMIT Released Parties, individually and collectively, whether contractual, fiduciary, equitable, statutory or otherwise, except as arising out of this Agreement, and (b) the HMIT Released Parties, individually and collectively, shall owe no duty to the Highland Released Parties, individually and collectively, whether contractual, fiduciary, equitable, statutory or otherwise, except as arising out of this Agreement.

15.    <u>Gatekeeper Standard</u>.

(a)    The HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, acknowledge and agree that, notwithstanding the United States Court of Appeals for the Fifth Circuit's decision in *Highland Capital Management Fund Advisors, L.P. v. Highland Capital Management, L.P.*, No. 23-10534 (5th Cir. Mar. 18, 2025), the "Gatekeeper" provisions contained in Highland's Original Plan is forever binding on each of the HMIT Entities and any Persons claiming through, under or on behalf of any of them, and for a claim or cause of action to be  "colorable" for purposes of the Gatekeeper, it must be found by final order of the Bankruptcy Court (the "**Gatekeeper Court**"), which order shall be subject to appeal to a court of competent jurisdiction, to have satisfied the "Gatekeeper Colorability Test" as such term is defined in *In re Highland Capital Management, L.P.*, 2023 Bankr. LEXIS 2104 at *124-36 (Bankr. N.D. Tex. Aug. 24, 2023).

(b)    The HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, acknowledge and agree that compliance with the Gatekeeper requires (i) a motion seeking leave to sue an Exculpated Party (as that term is defined in Highland's original Plan) and a finding that the litigant's claims and causes of action are "colorable" attaching a complaint setting forth the basis for such claims or causes of action and (ii), in the Gatekeeper Court's sole discretion, an evidentiary hearing (during which the Gatekeeper Court may, among other things, hear testimony and assess the credibility of any witness(es)) to determine whether a proposed claim or cause of action is "colorable."

(c)    The HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, further acknowledge

001146

HCMLPHMIT00000251

and agree that the moving party under the Gatekeeper has the burden of satisfying the "Gatekeeper Colorability Test," and that the dismissal of the Pending Litigation shall have res judicata effect.

16.    <u>Indemnification</u>.

(a)    Without in any manner limiting the available remedies for any breach of this Agreement, the HMIT Entities, severally but not jointly, agree to indemnify, defend, and hold the Highland Released Parties harmless from and against any and all Liability, that may arise or result from or on account of, or that are otherwise related or attributable to (x) any breach of this Agreement or of any representation or warranty contained in the Agreement, including the representations and warranties of any HMIT Entity set forth in <u>Section 13</u> or (y) any Actions brought or prosecuted by or on behalf of, any HMIT Releasor or that are induced, encouraged, assisted  or directed by any HMIT Releasor or brought or prosecuted in concert with any HMIT Releasor against any Highland Released Party with respect to or related to any HMIT Entity Released Claims.  Without limiting the scope of the foregoing in any manner, any HMIT Entity that breaches <u>Section 12</u> shall be liable to the Highland Released Party against whom the applicable Action has been brought or prosecuted in violation of <u>Section 12</u> for the reasonable attorneys' fees and costs incurred by such Highland Released Party in defending against or otherwise responding to such Action.  Each HMIT Entity acknowledges and agrees that the HMIT Entities are and shall be severally but not jointly liable for any Liability arising from or out of any breach of this Agreement or of any representation or warranty set forth in this Agreement.

(b)    Without in any manner limiting the available remedies for any breach of this Agreement, the Highland Entities, severally but not jointly, agree to indemnify, defend, and hold the HMIT Released Parties harmless from and against any and all Liability, that may arise or result from or on account of, or that are otherwise related or attributable to (x) any breach of this Agreement or of any representation or warranty contained in the Agreement, including the representations and warranties of any Highland Entity set forth in <u>Section 13</u> or (y) any suits, proceedings, or other actions brought or prosecuted by or on behalf of, any Highland Releasor or that are induced, encouraged, assisted  or directed by any Highland Releasor or brought or prosecuted in concert with any Highland Releasor against any HMIT Released Party with respect to or related to any Highland Entity Released Claims.  Without in any manner limiting the scope of the foregoing, any Highland Entity that breaches <u>Section 12</u> shall be liable to the HMIT Released Party against whom the applicable Action has been brought or prosecuted in violation of <u>Section 12</u> for the reasonable attorneys' fees and costs incurred by such HMIT Released Party in defending against or otherwise responding to such Action.  Each Highland Entity acknowledges and agrees that the Highland Entities are and shall be severally but not jointly liable for any Liability arising from or out of any breach of this Agreement or of any representation or warranty set forth in this Agreement.

17.    <u>Execution</u>.  This Agreement may be executed by the exchange of signatures by facsimile or by PDF attachment to an email transmittal and in counterparts, and if so executed, shall be fully executed when a counterpart has been executed and delivered by all Parties hereto through counsel.  All counterparts taken together shall constitute one and the same agreement and shall be fully enforceable as such.

001147

HCMLPHMIT00000252

18. <u>Bankruptcy Court Order</u>. The allowance of the allowed HMIT Class 10 Interest pursuant to <u>Section 4</u> is subject to the entry of the Bankruptcy Court Order. To that end, the Highland Entities shall file the 9019 Motion no later than five (5) Business Days after the Agreement Date. Each Party shall, and shall cause each of their respective Affiliates to, undertake any and all actions in compliance with applicable law to obtain the Bankruptcy Court Order as promptly as practicable, and without limiting the foregoing, if an Action is threatened or instituted by any Person opposing the 9019 Motion or otherwise challenging the validity or legality, or seeking to restrain the consummation, of the transactions contemplated by this Agreement or the Bankruptcy Court Order, each Party shall, and shall cause its respective Affiliates to, use their commercially reasonable best efforts to avoid, resist, resolve or, if necessary, and defend to effectuate this Agreement and consummate the transactions hereby. If the 9019 Motion is not approved by entry of the Bankruptcy Court Order or if the Bankruptcy Court Approval is precluded from becoming a Final Order, (a) there will be no affect on, adjustment to, or impairment of, in any way, the validity and enforceability of the remainder of this Agreement, and the other transactions contemplated hereby, all of which shall remain in full force and effect and (b) each Party shall, and shall cause its respective Affiliates to, use their best efforts to seek the allowance of the HMIT Class 10 Interest in a substantially similar amount and on substantially similar terms as set forth in <u>Section 4</u> to the fullest extent possible so as to give effect to the original intent of the Parties as closely as possible.

19. <u>Fees and Expenses</u>. Whether or not the transactions contemplated hereby are consummated or the Bankruptcy Court Order is obtained, and except as otherwise expressly provided in this Agreement, each Party will bear its respective fees, costs and expenses (including legal, accounting and other professional fees) incurred in connection with the preparation, negotiation, execution and performance of this Agreement or the transactions contemplated hereby, including with respect to each Party's respective obligations pursuant to <u>Section 18</u>. Notwithstanding the foregoing, if any Party hereto brings an Action to enforce or interpret the terms and provisions of this Agreement, the prevailing Party in that Action shall be entitled to have and recover from the non-prevailing Party all such fees, costs and expenses (including all court costs and reasonable attorneys' fees) as the prevailing Party may suffer or incur in the pursuit or defense of such action or proceeding.

20. <u>Entire Agreement; No Other Representations</u>. **THIS AGREEMENT CONTAINS THE ENTIRE AGREEMENT BETWEEN THE PARTIES, AND NO RIGHTS ARE CREATED IN FAVOR OF ANY PERSON OTHER THAN AS SPECIFIED OR EXPRESSLY SET FORTH IN THIS AGREEMENT. THERE ARE NO REPRESENTATIONS, CONDITIONS, WARRANTIES, STATEMENTS, OR UNDERSTANDINGS (COLLECTIVELY, "<u>REPRESENTATIONS</u>"), EITHER ORAL OR WRITTEN, BETWEEN THE PARTIES OTHER THAN THOSE EXPRESSLY SET FORTH IN THIS AGREEMENT. THE PARTIES EXPRESSLY AGREE THAT THEY HAVE NOT BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY ANY REPRESENTATIONS NOT SET FORTH IN THIS AGREEMENT; AND THE PARTIES EXPRESSLY AGREE THAT THEY HAVE NOT RELIED ON ANY REPRESENTATIONS NOT EXPRESSLY SET FORTH IN THIS AGREEMENT. THE PARTIES EXPRESSLY AGREE THAT THEY ARE ENTERING INTO THIS AGREEMENT RELYING SOLELY ON THEIR OWN JUDGMENT AND NOT ON ANY REPRESENTATIONS BY ANY PARTY, EXCEPT FOR THOSE REPRESENTATIONS**

001148

HCMLPHMIT00000253

**EXPRESSLY SET FORTH IN THIS AGREEMENT. THE PARTIES AGREE THAT REPRESENTATIONS NOT EXPRESSLY SET FORTH IN THIS AGREEMENT SHALL NOT BE USED IN THE INTERPRETATION OR CONSTRUCTION OF THIS AGREEMENT, AND NEITHER THE HMIT RELEASED PARTIES NOR THE HIGHLAND RELEASED PARTIES SHALL HAVE ANY LIABILITY FOR ANY CONSEQUENCES ARISING AS A RESULT OF ANY REPRESENTATIONS NOT SET FORTH IN THIS AGREEMENT**.

21.    <u>Agreement and Release Knowing and Voluntary</u>.  The Parties acknowledge that they have considered this Agreement with their respective attorneys and have carefully read this Agreement, that it has been fully explained by their attorneys, and that they have had a reasonable opportunity to consider this Agreement.  The Parties further represent that they know and fully understand the contents of this Agreement, that they intend to be legally bound by this Agreement and the releases and covenants contained herein, and that they are signing this Agreement, including the release provisions herein, voluntarily and of their own free will and without coercion, and with the benefit of advice of counsel.

22.    <u>Cooperation</u>.  The Parties agree to perform any services or actions reasonably necessary to carry out the terms and conditions of this Agreement or the transactions contemplated hereby, including the execution and delivery of reasonable additional documents, instruments, conveyances and/or assurances, in good faith, and to reasonably communicate and cooperate with one another in this regard.  For the avoidance of doubt, nothing in this Section shall obligate the Highland Entities to assist the HMIT Entities in any way with respect to the Kirschner Claims, including the prosecution thereof.

23.    <u>Governing Law</u>.  This Agreement shall be construed pursuant to and governed by the laws of the State of Delaware (substantive and procedural) without reference to principles of conflicts of law that would result in the application of any other State's laws.

24.    <u>Jurisdiction/Venue</u>.  The Parties hereby irrevocably submit to the jurisdiction and venue of the Bankruptcy Court with respect to any Action arising out of or related to this Agreement or the subject matter hereof; if (and only if) the Bankruptcy Court lacks personal or subject matter jurisdiction to adjudicate an Action arising out of or related to this Agreement or the subject matter hereof, then the Parties irrevocably submit to the jurisdiction and venue of the United States District Court for the Northern District of Texas.

25.    <u>No Admissions</u>.  All Parties acknowledge and agree that the matters set forth in this Agreement constitute the settlement and compromise of disputed Claims and that this Agreement shall not constitute the admission of any fact or liability by any of them regarding any Claim, including the Claims released hereunder, and neither the terms hereof, nor the fact of this Agreement itself, shall be evidence of any kind in any Action, other than an Action to enforce the terms of the Agreement or any instrument executed in connection herewith or any claim for damages or other relief for breach of any representation or warranty contained herein or in any instrument executed in connection herewith.

26.    <u>Other Provisions</u>.

19

001149

      (a)     No representation, inducement, agreement, promise or understandings altering, modifying, amending, taking from or adding to, the terms and conditions hereof shall have any force or effect unless the same is in writing and validly executed by each of the Parties hereto.

      (b)     The waiver by any Party of any breach of, or default under, any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach or default; provided, however, that for any such waiver to be enforceable, it shall be in writing and executed by the non-breaching Party.

      (c)     The headings contained in this Agreement are for convenience only and shall in no way restrict or otherwise affect the construction of the provisions hereof.

      (d)     The Parties shall each execute all documents and perform all acts necessary and proper to effectuate the terms of this Agreement.

27.    <u>Notices</u>.  All notices required or permitted to be provided hereunder shall be afforded to the respective parties to and through their counsel, and shall be transmitted simultaneously by electronic mail (with PDF attachments, as necessary) and by telefax, addressed as follows:

To the Highland Entities:

**PACHULSKI STANG ZIEHL AND JONES LLP**
Jeffrey N. Pomerantz
John A. Morris
10100 Santa Monica Boulevard
Los Angeles, California 90067-4003
310.277.6910
jpomerantz@pszjlaw.com
jmorris@pszjlaw.com

To the HMIT Entities:

**KELLY HART PITRE**
Louis M. Phillips
Amelia Hurt
301 Main Street, Suite 1600
225.381.9643
Louis.Phillips@Kellyhart.com
Amelia.Hurt@Kellyhart.com

28.    <u>Severability</u>. Should any term, provision or paragraph of this Agreement be determined to be illegal or void or of no force and effect, the balance of the Agreement shall survive. The invalidity or unenforceability of any provision of this Agreement shall not affect the validity and enforceability of any other provision of this Agreement.

001150

HCMLPHMIT00000255

29.    <u>Interpretive Provisions</u>. Unless the express context otherwise requires: (a) the words "hereof," "herein" and "hereunder" and words of similar import, when used in this Agreement, shall refer to this Agreement as a whole and not to any particular provision of this Agreement; (b) words defined in the singular shall have a comparable meaning when used in the plural, and vice versa; (c) the words "Dollars" and "$" mean U.S. dollars; (d) references herein to a specific Section, Subsection, Recital, Schedule or Exhibit shall refer, respectively, to Sections, Subsections, Recitals, Schedules or Exhibits of this Agreement; (e) wherever the word "include," "includes" or "including" is used in this Agreement, it shall be deemed to be followed by the words ",without limitation,"; (f) references herein to any gender shall include each other gender; (g) references herein to any Person shall include such Person's heirs, executors, personal representatives, administrators, successors and assigns; provided, however, that nothing contained in this clause (g) is intended to authorize any assignment or transfer not otherwise permitted by this Agreement; (h) with respect to the determination of any period of time, the word "from" means "from and including" and the words "to" and "until" each means "to but excluding"; (i) the word "or" shall be disjunctive but not exclusive; (j) the headings contained in this Agreement are intended solely for convenience and shall not affect the rights of the Parties; and (k) if the last day for the giving of any notice or the performance of any act required or permitted under this Agreement is a day that is not a Business Day, then the time for the giving of such notice or the performance of such action shall be extended to the next succeeding Business Day.

*[Signature page follows]*

001151

HCMLPHMIT00000256

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first written above.

**HUNTER MOUNTAIN INVESTMENT TRUST**

By _____

Name:    Mark Patrick
Title:     Administrator
Date:    May __, 2025

**BEACON MOUNTAIN LLC**

By _____

Name:
Title:
Date:    May __, 2025

**RAND ADVISORS, LLC**

By _____

Name:    Mark Patrick
Title:     President
Date:    May __, 2025

**RAND PE FUND I, LP**
By: Rand PE Fund Management, LLC, its General Partner

By _____

Name:    Mark Patrick
Title:     President
Date:    May __, 2025

**RAND PE FUND MANAGEMENT, LLC**

By _____

Name:    Mark Patrick
Title:     President

001152

HCMLPHMIT00000257

Date: May __, 2025

**ATLAS IDF, LP**
By: Atlas IDF GP, LLC, its General Partner

By _____
     Name:     Mark Patrick
     Title:     President
     Date:     May __, 2025

**ATLAS IDF GP, LLC**

By _____
     Name:     Mark Patrick
     Title:     President
     Date:     May __, 2025

**HIGHLAND CAPITAL MANAGEMENT, L.P.**

By _____
     Name:     James. P. Seery, Jr.
     Title:     Chief Executive Officer
     Date:     May __, 2025

**HIGHLAND CLAIMANT TRUST**

By _____
     Name:     James P. Seery, Jr.
     Title:     Claimant Trustee
     Date:     May __, 2025

**HIGHLAND LITIGATION SUB-TRUST**

By _____
     Name:     Marc S. Kirschner
     Title:     Litigation Trustee

001153

HCMLPHMIT00000258

Date: May __, 2025

**HIGHLAND INDEMNITY TRUST**

By _____

      Name: James P. Seery, Jr.
      Title: Indemnity Trust Administrator
      Date: May __, 2025

SIGNATURE PAGE TO SETTLEMENT AGREEMENT & GENERAL RELEASE

001154

HCMLPHMIT00000259

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/16/2025 EXECUTION VERSION

## SETTLEMENT AGREEMENT & GENERAL RELEASE

THIS SETTLEMENT AGREEMENT & GENERAL RELEASE (this "**Agreement**") is entered into as of May 16, 2025 (the "**Agreement Date**"), by and among Highland Capital Management, L.P., a Delaware limited partnership ("**Highland**"), the Highland Claimant Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act (the "**Claimant Trust**"), the Highland Litigation Sub-Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act (the "**Litigation Sub-Trust**"), and the Highland Indemnity Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act (the "**Indemnity Trust**", and together with Highland, the Claimant Trust and the Litigation Sub-Trust, the "**Highland Entities**"), on the one hand, and Hunter Mountain Investment Trust, a Delaware statutory trust ("**HMIT**"), Beacon Mountain LLC, a Delaware limited liability company ("**Beacon Mountain**"), Rand Advisors, LLC, a Delaware limited liability company ("**Rand Advisors**"), Rand PE Fund I, LP, a Delaware series limited partnership ("**Rand PE Fund**"), Rand PE Fund Management, LLC, a Delaware limited liability company ("**Rand GP**"), Atlas IDF, LP, a Delaware limited partnership ("**Atlas IDF**"), Atlas IDF GP, LLC, a Delaware limited liability company ("**Atlas GP**" and together with HMIT, Beacon Mountain, Rand Advisors, Rand PE Fund, Rand GP and Atlas IDF, the "**HMIT Entities**"), on the other hand.  The Highland Entities and the HMIT Entities are collectively referred to as the "**Parties**," and each individually, as a "**Party**".

### DEFINITIONS

Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Claimant Trust Agreement or the Plan, as applicable (in each case, as hereinafter defined). For purposes of this Agreement, the following capitalized terms have the following meanings:

"**9019 Motion**" means the motion seeking entry of the Bankruptcy Court Order pursuant to Bankruptcy Rule 9019 and in accordance with Section 18.

"**Action**" means any action, claim, demand, arbitration, hearing, charge, complaint, investigation, examination, indictment, litigation, suit or other civil, criminal, administrative or investigative proceedings, including any petition under Rule 202 of the Texas Rules of Civil Procedure.

"**Affiliate**" means a Person that, directly or indirectly, through one or more intermediaries, controls or is controlled by, or is under common control with, a specified Person as of the date on which, or at any time during the period for which, the determination of affiliation is being made. The term "control" (including, with correlative meanings, the terms "controlled by" and "under common control with"), as applied to any Person, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting securities or other ownership interest, by contract or otherwise.

"**Amended Complaint**" means the *Amended Complaint and Objection to Claims*, filed as docket number 158 in *Kirschner v. Dondero*, Adv. Pro. No. 21-03076-sgj (Bankr. N.D. Tex. May 19, 2022).

"**Bankruptcy Case**" means *In re Highland Capital Management, L.P.*, Case No. 19-34054-sgj (Bankr. N.D. Tex.) and its related proceedings.

4923-8662-5850.9 36027.003

HCMLPHMIT00000260

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/16/2025

"**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended).

"**Bankruptcy Court**" means the U.S. Bankruptcy Court for the Northern District of Texas, Dallas Division.

"**Bankruptcy Court Approval Date**" means the date on which the Bankruptcy Court Order is issued.

"**Bankruptcy Court Order**" means an order of the Bankruptcy Court approving the allowance of the HMIT's Class 10 Interest as provided in this Agreement pursuant to the 9019 Motion.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure.

"**Business Day**" means any day other than (i) a Saturday or a Sunday, (ii) a day on which the Federal Reserve Bank of New York or the New York Stock Exchange is closed, or (iii) a day on which banks in the States of Texas are required, or authorized by law, to close.

"**Claimant Trust Agreement**" means that certain Claimant Trust Agreement of the Claimant Trust (as may have been or may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), effective as of August 11, 2021, by and among Highland, as settlor, James P. Seery, Jr., a Claimant Trustee, and Wilmington Trust, National Association, a national banking association, as Delaware trustee.

"**Claims**" means any claims, debts, liabilities, demands, obligations, breaches of contract, breaches of duty or any relationship, misfeasance, malfeasance, promises, acts, omissions, agreements, liens, losses, costs and expenses (including attorney's fees and related costs), damages, injuries, suits, Actions, and causes of action of whatever kind or nature, whenever and however, arising, whether known or unknown, suspected or unsuspected, matured or unmatured, liquidated or unliquidated, contingent or fixed, at law or in equity, statutory or otherwise.

"**Class 10**" means the class of Claims or Equity Interests described in Article II. Section H.10. of the Plan.

"**Class 11**" means the class of Claims or Equity Interests described in Article II. Section H.11. of the Plan.

"**Committee**" means the official committee of unsecured creditors appointed in the Bankruptcy Case.

"**Confirmation Order**" means that certain *Order Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (ii) Granting Related Relief* [Docket No. 1943], as conformed in accordance with the Fifth Circuit's rulings.

"**Dugaboy Note**" means that certain Promissory Note dated May 31, 2017, in the original face amount of $24,268,621.69, from The Dugaboy Investment Trust, as Maker, and Highland Capital Management, L.P. and The Get Good Non-Exempt Trust, collectively as Payee.

001156
HCMLPHMIT00000261

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/16/2025

"**Final Court Approval Date**" means the date on which the Bankruptcy Court Order becomes a Final Order.

"**Final Order**" means an order or judgment of the Bankruptcy Court, which is in full force and effect, and as to which the time to appeal, petition for certiorari, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, new trial, reargument, or rehearing shall have been waived in writing in form and substance satisfactory to the Highland Entities, as applicable, or, in the event that an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order of the Bankruptcy Court shall have been determined by the highest court to which such order was appealed, or certiorari, new trial, reargument or rehearing shall have been denied and the time to take any further appeal, petition for certiorari, or move for a new trial, reargument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be Filed with respect to such order shall not preclude such order from being a Final Order.

"**Gatekeeper**" means the gatekeeping provision contained in Article IX. F of the Plan as of August 11, 2021.

"**Governmental Authority**" means any federal, provincial, state, local or foreign government or political subdivision thereof, court of competent jurisdiction, administrative agency, judicial or arbitral body, or commission or other governmental or regulatory authority or instrumentality.

"**Highland Released Parties**" means collectively (i) the Highland Entities, (ii) any Affiliate of any Highland Entity and any Person directly or indirectly majority-owned by any Highland Entity or any of their respective Affiliates, (iii) any Person directly or indirectly managed by any Highland Entity or any of their respective Affiliates, whether by contract or otherwise (the entities described in clauses (i)-(iii), collectively, the "**Highland Parties**"), (iv) each of the Highland Parties' current and former trustees and administrators (including the trustees of any of the Claimant Trust, the Litigation Sub-Trust, or the Indemnity Trust), officers, executives, agents, directors, advisors, advisory representatives, consultants, administrators, managers, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns, (v) the current and former members of the Oversight Board of the Claimant Trust in any capacity (including Richard Katz) and their Affiliates, (vi) Farallon Capital Management, LLC, Stonehill Capital Management, LLC, Muck Holdings LLC, and Jessup Holdings LLC, in each case, in any capacity, (vii) the Independent Board and its members John Dubel, James P. Seery, Jr., and Russell Nelms, (viii) James P. Seery, Jr., individually and in all capacities for any Highland Released Party, including as Chief Executive Officer of Highland Capital Management, L.P., Claimant Trustee of the Claimant Trust, and the Indemnity Trust Administrator of the Indemnity Trust, (ix) Marc S. Kirschner, individually and as Trustee of the Litigation Sub-Trust, (x) the Committee and each of its members, (xi) the professionals (and their respective firms) (a) retained by Highland or the Committee during the Bankruptcy Case or which provided services to Highland or the Committee during the Bankruptcy Case or (b) retained by any Highland Released Party on or after August 11, 2021, (xii) any Person indemnified by any

3

001157

HCMLPHMIT00000262

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/16/2025

Highland Party (the Persons described in clauses (i)-(xii), collectively, the "**Highland Covered Parties**"), and (xii) each Highland Covered Party's current and former officers, executives, agents, attorneys (and their respective firms), directors, advisors, consultants, administrators, managers, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns, if not otherwise included in the defined term "Highland Covered Parties;" provided, however, and for the avoidance of doubt, and without in any way limiting the scope of the foregoing, "Highland Covered Parties" shall include Highland CLO Funding, Ltd., Highland HCF Advisor, Ltd., Highland Multi Strategy Credit Fund, L.P., Highland Multi Strategy Credit Fund GP, L.P., Highland Multi Strategy Credit GP, LLC, Highland Multi Strategy Credit Fund, Ltd., Highland Select Equity Master Fund, L.P., Highland Select Equity Fund GP, L.P., Highland Select Equity Fund, L.P., Highland Restoration Capital Partners Master, L.P., Highland Restoration Capital Partners GP, LLC, Highland Restoration Capital Partners, L.P., Highland Restoration Capital Partners Offshore, L.P., Highland Offshore Director, LLC, Acis CLO Management, LLC, Neutra, Ltd., Pollack, Ltd., Acis CLO Management Holdings, L.P., Acis CLO Management Intermediate Holdings I, LLC, Acis CLO Management Intermediate Holdings II, LLC, Acis CLO Assets Holdings Limited, CHG Houston Holdings, LLC, Penant Management, L.P., Penant Management GP, LLC, Gunwale, LLC, HE Capital, LLC, Gleneagles CLO, Ltd., Aberdeen Loan Funding, Ltd. Highland Argentina Regional Opportunity Fund GP, LLC, Highland Argentina Regional Opportunity Fund, L.P., Highland Argentina Regional Opportunity Fund, Ltd., Highland Argentina Regional Opportunity Master Fund, L.P., Highland Latin America Consulting, Ltd., Highland Capital Management Korea Limited, Highland Capital Management Latin America, L.P., Highland Latin America GP, Ltd., Highland Latin America LP, Ltd., Highland Offshore Partners, L.P. (Diversified), Brentwood CLO, Ltd., Eastland CLO, Ltd., Bristol Bay Funding Ltd., Jasper CLO Ltd., Highland Legacy Limited, Grayson CLO, Ltd., Greenbriar CLO, Ltd., Highland Loan Funding V Ltd., Highland Park CDO I, Ltd., Liberty CLO, Ltd., Valhalla CLO, Ltd., Stratford CLO Ltd., Southfork CLO, Ltd., Pam Capital Funding, L.P., Stonebridge-Highland Healthcare Private Equity Fund, Pamco Cayman Ltd., Red River CLO, Ltd., Rockwall CDO II Ltd., Rockwall CDO, Ltd., Westchester CLO, Ltd. Longhorn Credit Funding, LLC, PensionDanmark Pensionsforsikringsaktieselskab, Highland Dynamic Income Master Fund L.P., Highland Dynamic Income Fund GP, LLC, Highland Dynamic Income Fund, L.P., Highland Dynamic Income Fund, Ltd., Highland JHT Holdings, LLC, Highland Prometheus Master Fund, L.P., Highland Prometheus Feeder Fund I, L.P., Highland Prometheus Feeder Fund II, L.P., Highland Sunbridge GP, LLC, Trussway Holdings, LLC, Trussway Industries, LLC, TW Company, Inc., T-Way Investments, LLC, SSP Holdings, LLC, Highland Flexible Income UCITS Fund, and Acis CLO 2017-7, Ltd. *Notwithstanding the forgoing or anything herein to the contrary*, none of "Highland Released Parties", "Highland Parties", nor "Highland Covered Parties" shall include James Dondero, Scott Ellington, Isaac Leventon, or any Person directly or indirectly owned as of the date hereof (in whole or in part) by, and/or Affiliated as of the date hereof with, or claiming through, under or on behalf of, any of Mr. Dondero, Mr. Ellington, or Mr. Leventon in any manner and none of such Persons are released from any Claim by any Person in connection with this Agreement.

"**HMIT Class 10 Interest**" means the unvested, contingent Class 10 interest in the Claimant Trust (a) to be allowed on account of HMIT's pre-petition equity interest in Highland, and (b) subject to the terms and conditions, as applicable, of the Plan, the Plan Documents, the Claimant Trust Agreement, and in accordance with this Agreement, and applicable law.

001158

HCMLPHMIT00000263

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/16/2025

"**HMIT Note**" means that certain Secured Promissory Note dated December 21, 2015, in the original face amount of $63,000,000 from HMIT, as maker, and Highland, as payee.

"**HMIT Note Claims**" means any Claim related to, in connection with or arising out of the HMIT Note.

"**HMIT Released Parties**" means collectively (i) the HMIT Entities, (ii) any Affiliate of any HMIT Entity and any Person directly or indirectly majority owned by any HMIT Entity or any of their respective Affiliates, (iii) any Person directly or indirectly managed by any HMIT Entity or any of their respective Affiliates, whether by contract or otherwise (the entities described in clauses (i) – (iii), collectively, the "**HMIT Parties**"), (iv) each of the HMIT Parties' current and former trustees, administrators, officer, executives, agents, directors, advisors, consultants, manager, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns (v) the professionals (and their respective firms (a) retained by any HMIT Party during the Bankruptcy Case or which provided services to any HMIT Party during the Bankruptcy Case or (b) retained by any HMIT Released Party on or after August 11, 2021, (vi) any Person indemnified by any HMIT Party (the Persons described in clauses (i) – (vi), collectively, the "**HMIT Covered Parties**"), and (vii) each HMIT Covered Party's current and former officers, executives, agents, directors, advisors, consultants, administrators, managers, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns, if not otherwise included in the defined term "HMIT Covered Parties." *Notwithstanding the forgoing*, none of "HMIT Released Parties", "HMIT Parties", nor "HMIT Covered Parties" shall include James Dondero, Scott Ellington, Isaac Leventon, or any Person directly or indirectly owned as of the date hereof (in whole or in part) by, and/or Affiliated as of the date hereof with, or claiming through, under or on behalf of, any of Mr. Dondero, Mr. Ellington, or Mr. Leventon in any manner, and none of such Persons are released from any Claims by any Person in connection with this Agreement.

"**Indemnity Trust Administrator**" has the meaning given to it in the Indemnity Trust Agreement.

"**Indemnity Trust Agreement**" means that certain *Second Amended and Restated Indemnity Trust Agreement of the Indemnity Trust* (as may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), effective as of [April 28], 2025, by and among the Claimant Trust, as grantor, James P. Seery, Jr., as indemnity trust administrator, and Wilmington Trust, National Association, a national banking association, as indemnity trustee and Delaware trustee.

"**Indemnity Trust Assets**" has the meaning set forth in the Indemnity Trust Agreement, but excluding Highland, the Claimant Trust, and their respective assets.

"**Independent Board**" means the independent board appointed by the Bankruptcy Court on January 9, 2020, pursuant to that certain *Order Approving Settlement with Official Committee of Unsecured Creditors Regarding Governance of the Debtor and Procedures for Operations in the Ordinary Course* [Docket No. 339].

001159
HCMLPHMIT00000264

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/16/2025

"**Kirschner Claims**" means all Claims and causes of action that were asserted or could have been asserted by the Litigation Trustee of the Litigation Sub-Trust, in the Amended Complaint.

"**Liability**" means any liability, debt, obligation, loss, damage, claim, cost or expense (including costs of investigation and defense and attorney's fees, costs and expenses), in each case, whether direct or indirect, whether accrued or contingent, whether or not involving a third-party claim, and including incidental and consequential damages and diminution of value.

"**Litigation Protections**" means, individually and collectively, the rights, duties, and obligations set forth in Sections 1 – 2 and Sections 9 - 16.

"**Litigation Sub-Trust**" means the Highland Litigation Sub-Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act.

"**Litigation Sub-Trust Agreement**" means that certain Litigation Sub-Trust Agreement of the Litigation Sub-Trust (as may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), effective as of August 16, 2021, by and among James P. Seery, Jr., as Claimant Trustee of the Claimant Trust, Wilmington Trust, National Association, a national banking association, as Delaware Trustee, and the Litigation Trustee.

"**Litigation Trustee**" means Marc S. Kirschner, as Litigation Trustee of the Litigation Sub-Trust.

"**LPA**" means that certain *Sixth Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P.* (as may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), dated as of October 4, 2021.

"Operating Expenses" means, except for the expenses of the Indemnity Trust (including any payments to Trust Indemnified Parties or Indemnified Parties (in each case, as defined, and pursuant to the terms and conditions set forth, in the Indemnity Trust Agreement)), the expenses of operating and administering the Highland Entities, including legal expenses, employee compensation, Claimant Trustee/CEO and other trust and trustee related compensation, incentive compensation, and customary general and administrative expenses.

"**Original Plan**" means that certain *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* attached as Exhibit A to the *Order (A) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as modified) and (B) Granting Related Relief*, filed at Docket No. 1943 on the Bankruptcy Court's docket.

"**Oversight Board**" means the oversight board of the Highland Claimant Trust.

"**Pending Litigation**" means (i) *Hunter Mountain Investment Trust v. Highland Cap. Mgmt., L.P.*, Case No. 3:23-cv-02071-E (N.D. Tex.), on remand to the Bankruptcy Court (including *Hunter Mountain Investment Trust's Emergency Motion for Leave to File Adversary Proceeding* filed at Bankruptcy Court Docket No. 3699 and all proceedings, decisions, and orders relating there); (ii) *Dugaboy Investment Trust v. Highland Cap. Mgmt, L.P.*, 3:24-cv-01531-X

6

HCMLPHMIT00000265

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/16/2025

(N.D. Tex.) (only as to HMIT), and (iii) *Hunter Mountain Investment Trust v. Highland Cap. Mgmt., L.P.*, Case No. 3:24-cv-01786-L (N.D. Tex.).

"**Permitted Investments**" has the meaning set forth in the Indemnity Trust Agreement.

"**Person**" means any natural person, partnership, limited liability partnership, corporation, limited liability company, association, joint stock company, trust, estate, joint venture, unincorporated organization or Governmental Authority.

"**Plan**" means that certain *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* as conformed in accordance with the Fifth Circuit's rulings.

"**Plan Documents**" has the meaning given to it in the Plan.

"**Plan Protections**" means, collectively, the provisions of the Plan contained in Article IX thereof.

"**Pro Rata**" means the proportion that (a) the allowed amount of a particular Claim or Equity Interest in Class 10 bears to (b) the aggregate allowed amount of all Claims or Equity Interests in Class 10.

"**Threats**" means any written threats of legal action, legal demands, filed complaints, petitions for pre-suit discovery, suits, litigations, arbitrations, actual or threated restraining orders or injunctions made in writing, or similar written actions of any kind, or sworn statements evidencing the same, in any forum against any Trust Indemnified Parties or Indemnified Party (both as defined in the Indemnity Trust Agreement), excluding any such action that would otherwise be a Threat except that any applicable statute of limitations that could be applicable to such action has expired.

"**Threats Notice**" means the written notice of any Threats received by the Indemnity Trust with respect to any Trust Indemnified Parties or Indemnified Party (both as defined in the Indemnity Trust Agreement), that is hereby required to be provided by the Indemnity Trust to the HMIT Entities, within five (5) Business Days after receipt of such Threat.

## RECITALS

**WHEREAS**, as of the Petition Date, HMIT held Class B and Class C Limited Partnerships Interests in Highland;

**WHEREAS**, on December 21, 2015, HMIT entered into the HMIT Note with Highland, which had a total outstanding principal balance of Fifty-Seven Million Six Hundred Ninety Thousand Six Hundred Forty and 95/100 Dollars ($57,690,640.95) as of the Petition Date (the "**HMIT Note Balance**");

**WHEREAS**, HMIT's Class B and Class C Limited Partnership Interests in Highland were extinguished on August 11, 2021, in accordance with the Plan;

001161
HCMLPHMIT00000266

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/16/2025

**WHEREAS**, pursuant to the LPA, HMIT's capital account balance at Highland on account of its Class B and Class C Limited Partnership Interests on the Petition Date was Three Hundred Ninety-Four Million Six Hundred Thirty Thousand Eight Hundred Seventy-One and 53/100 Dollars ($394,630,871.53) (the "**HMIT Capital Account Balance**");

**WHEREAS**, some or all of the HMIT Entities have asserted certain Claims against certain Highland Entities and certain other Highland Covered Parties, including those asserted in the Pending Litigation;

**WHEREAS**, certain distributions to be made to the holders of allowed Class 10 Claims or Equity Interests pursuant to the terms and subject to the conditions set forth herein are premised on the consent of certain Highland Covered Parties in their capacity as Holders of Class 9 Interests, and such Persons are only willing to provide such consent in exchange for the releases as set forth in this Agreement;

| Formatted: Font: Bold |
|---|

**WHEREAS**, some or all of the Highland Entities have asserted certain Claims against certain HMIT Entities, including the HMIT Note Claims;

**WHEREAS**, the Parties wish to terminate, extinguish, and release any and all rights, duties, obligations and Claims that (a) any of the Highland Released Parties owed or have, or may have owed or have, to or with respect to any of the HMIT Released Parties, and (b) any of the HMIT Released Parties owed or have, or may have owed or have, to or with respect to any of the Highland Released Parties, as provided in this Agreement (collectively, the "**Rights and Obligations**");

**WHEREAS**, the Parties agree that the Litigation Protections are intended to enact a permanent cessation of all litigation concerning or related to the Highland Released Parties through and including the Agreement Date; and

**WHEREAS**, the Parties, individually and collectively, wish to (a) resolve all disputes between and/or among any of the Highland Entities and their respective indemnitees, on the one hand, and any of the HMIT Entities, on the other hand, including those asserted or attempted to be asserted in the Pending Litigation, (b) fix and allow HMIT's Class 10 Interest at the amount and on the terms provided herein; and (c) terminate, extinguish, and release all Rights and Obligations on the terms provided herein.

**NOW THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree as follows:

## AGREEMENT

1. <u>Stay and Dismissal of Pending Litigation With Prejudice</u>.

(a) Within five (5) Business Days after the Agreement Date, the HMIT Entities shall take all steps necessary (at their own cost) to stay the Pending Litigation.

001162
HCMLPHMIT00000267

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/16/2025

(b)     Within five (5) Business Days after the Bankruptcy Court Approval Date, the HMIT Entities shall take all steps necessary (at their own cost) to dismiss the Pending Litigation with prejudice.

2.     <u>Maintenance of Stay and Dismissal of Certain Defendants from the Amended Complaint</u>.

(a)     The Litigation Trustee shall continue to maintain the stay of Adv. Proc. No. 21-03076-sgj and all related proceedings arising therefrom through the Bankruptcy Court Approval Date. Within five (5) Business Days after the Bankruptcy Court Approval Date, the Litigation Sub-Trust shall take all steps necessary (at its own cost) to dismiss, with prejudice, HMIT and Rand PE from Counts I, II, III, and XXIV of the Amended Complaint.

3.     <u>Cash Payment to HMIT</u>.  Within five (5) Business Days following the Bankruptcy Court Approval Date, Highland shall pay HMIT a one-time, lump sum of Five Hundred Thousand Dollars (US$500,000.00) (the "**Payment**") by wire transfer:

Hunter Mountain Investment Trust
C/o CLO Holdco, LLC
Hancock Whitney
Account # - 071173413
Routing # - 113000968
(469) 604-0955 [wire instructions]

4.     <u>HMIT Class 10 Interest</u>.

(a)     Subject to entry of the Bankruptcy Court Order, and the terms of this Agreement, the HMIT Class 10 Interest shall be deemed allowed in the amount of Three Hundred Thirty-Six Million Nine Hundred Forty Thousand Two Hundred Thirty and 58/100 Dollars (US$336,940,230.58), which amount represents the HMIT Capital Account Balance, <u>less</u> the HMIT Note Balance.

(b)     Notwithstanding anything to the contrary in the Plan or the Claimant Trust Agreement, as an integral part of this Agreement to consent to the allowance of the HMIT Class 10 Interest and the other considerations in this Agreement, HMIT shall not be deemed, and no holder of the HMIT Class 10 Interest shall be, a Claimant Trust Beneficiary or a "Beneficiary" under the Claimant Trust Agreement, and the Highland Released Parties, individually and collectively, shall owe no duty to any HMIT Releasor (whether contractual, fiduciary, equitable, statutory or otherwise), including with respect to the HMIT Class 10 Interest, in each case, except as expressly set forth in this Agreement.  Furthermore, without limiting the foregoing and for the avoidance of doubt, the contractual right of the holder of the HMIT Class 10 Interest to receive or recover any payments or Indemnity Trust Assets from the Indemnity Trust as set forth in this Agreement or the Indemnity Trust Agreement does not make any HMIT Releasor or any other Person a beneficiary of the Indemnity Trust or under the Indemnity Trust Agreement.

(c)     Notwithstanding anything to the contrary in the Plan, the Claimant Trust Agreement or the Indemnity Trust Agreement, in no event shall HMIT sell, transfer, assign, pledge, hypothecate, participate or otherwise dispose of or encumber the HMIT Class 10 Interest

9

HCMLPHMIT00000268

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/16/2025

or any rights (including any right to payment) with respect thereto (collectively, a "**Class 10 Assignment**"), and any attempted Class 10 Assignment shall be null and void.

(d)      For the avoidance of doubt, the HMIT Class 10 Interest is and shall remain senior to the not yet allowed, unvested contingent Class 11 Claims of Equity Interests as provided for in the Plan, the Plan Documents, and the Claimant Trust Agreement.

5.      Initial Interim Distributions on the Allowed Class 10 Interests.

(a)      Within five (5) Business Days after the Bankruptcy Court Approval Date, the Indemnity Trust shall distribute (the date on which such distribution is made, the "**Initial Interim Distribution Date**") Pro Rata to the Holders of allowed Class 10 Claims or Equity Interests cash in the aggregate amount of Ten Million Dollars (US$10,000,000.00) (the "**Initial Interim Cash Distribution Amount**"), by means of wire transfer through the address contained in Section 3 ("Wire Transfer").

| | Formatted: Font: Bold, Underline |

(b)      Within five (5) Business Days after the Bankruptcy Court Approval Date (the "**Note Assignment Date**"), the Highland Entities shall cause the portion of the Dugaboy Note held by the Highland Entities to be distributed to HMIT in-kind and take all actions necessary for HMIT to become the holder of such portion of the Dugaboy Note, and shall in addition pay to HMIT cash in the aggregate amount of all principal and interest payments actually received on the Dugaboy Note by the Highland Entities, including the Indemnity Trust, from the Agreement Date to the Note Assignment Date.  Prior to the Bankruptcy Court Approval Date, HMIT will engage an independent valuation service provider to value the Dugaboy Note for purposes of determining the magnitude of reduction to the outstanding allowed Class 10 Interests on account of such in-kind distribution, which shall not be less than Fifty percent (50%) of the current balance owed under the Dugaboy Note. The HMIT Entities acknowledge and agree that none of the Highland Entities are representing or warranting that the Dugaboy Note can be sold, or the price, if any, that could be received for the Dugaboy Note and further acknowledge and agree that any such purchase price may be de minimis.

6.      Subsequent Distribution(s) on the Allowed Class 10 Interests.

(a)      On December 1, 2027, the Indemnity Trust shall distribute (such distribution, collectively, the "**First Subsequent Distribution**", and the date on which such Subsequent Distribution is made, the "**First Subsequent Distribution Date**") Pro Rata to the Holders of allowed Class 10 Claims or Equity Interests: cash in the aggregate amount of Six Million Five Hundred Thousand Dollars (US$6,500,000.00), by Wire Transfer.

(b)      On December 1, 2028, the Indemnity Trust shall distribute (such distribution, collectively, the "**Second Subsequent Distribution**", and the date on which such Subsequent Distribution is made, the "**Second Subsequent Distribution Date**") Pro Rata to the Holders of allowed Class 10 Claims or Equity Interests cash in the aggregate amount of Six Million Five Hundred Thousand Dollars (US$6,500,000.00) by Wire Transfer.

(c)      Notwithstanding anything herein to the contrary, the obligations of the Indemnity Trust to make the First Subsequent Distribution or Second Subsequent Distribution is subject in all respects to (i) there being no Threats and (ii) a determination in accordance with

001164

HCMLPHMIT00000269

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/16/2025

Article VIII, Section 8.1(c) of the Indemnity Trust Agreement that the Indemnity Trust Assets comprising such distributions are not reasonably necessary to satisfy current or potential Indemnification Obligations (as defined in the Indemnity Trust Agreement) to all persons who are or might become Beneficiaries (as defined in the Indemnity Trust Agreement).

7.  <u>Final Distribution on the Allowed Class 10 Interests</u>.

(a)  On the later of the Final Court Approval Date and April 1, 2029, the Indemnity Trust will distribute all excess remaining Indemnity Trust Assets in accordance with Article VIII of the Indemnity Trust Agreement; <u>provided</u>, <u>however</u>, that the obligation of the Indemnity Trust to make any such distributions and/or dissolve and wind up the affairs of the Indemnity Trust is subject in all respects to (i) there being no Threats and (ii) a determination in accordance with Article VIII of the Indemnity Trust Agreement that (1) a Final Order(s) (as defined in the Indemnity Trust Agreement) has been entered resolving all litigation, claims or proceedings in any forum of any kind which could give rise to Indemnity Obligations (as defined in the Indemnity Trust Agreement) and payment in full of all such Indemnity Obligations and (2) all applicable statutes of limitations and any applicable tolling of such statutes of limitation have expired.

(b)  The Indemnity Trust agrees to not use Indemnity Trust Assets to fund Operating Expenses.

(c)  Following the Bankruptcy Court Approval Date, at the request of Mark Patrick, solely in his capacity, and to the extent he remains, as administrator of HMIT, but not more often than quarterly, Highland and the Indemnity Trust Administrator agree to review (i) the status of their respective assets, (ii) the balance of cash held, (iii) the status of any claims made for indemnification and any resolutions thereof, (iv) the status of any litigation, and (v) forecasted operating expenses with Mr. Patrick, and will each work in good faith to reduce operating expenses where reasonably practicable; provided, however, that all such reporting shall be subject to Mr. Patrick's agreement to maintain confidentiality with respect to any non-public information.

8.  <u>Transfer Kirschner Claims; Dismissal of HMIT Note Claims</u>.

(a)  Within five (5) Business Days after the Bankruptcy Court Approval Date, but after the dismissal provided for in <u>Section 2</u>, the Litigation Sub-Trust shall execute a short-form assignment in in favor of the HMIT Entities transferring all of the Litigation Sub-Trust's right, title, and interest in and to the Kirschner Claims (the "**Kirschner Transfer**"). Such assignment shall be in a form mutually acceptable to the Parties and its substance shall be consistent with the terms, conditions and limitations set forth in this Agreement, including <u>Section 8(b)</u> below. Each HMIT Entity acknowledges and agrees that none of the Highland Entities will have any duty or obligation to assist the HMIT Entities in any way with respect to the Kirschner Claims, including the prosecution thereof, except as provided in this Agreement, including the terms of <u>Section 8(c)</u> below.

(b)  THE HMIT ENTITIES SPECIFICALLY ACKNOWLEDGE AND AGREE THAT THE LITIGATION SUB-TRUST IS TRANSFERRING THE KIRSCHNER CLAIMS ON AN "AS IS AND WITH ALL FAULTS" BASIS AND THAT THE HMIT

001165
HCMLPHMIT00000270

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/16/2025

ENTITIES ARE NOT RELYING ON ANY REPRESENTATIONS OR WARRANTIES OF ANY KIND WHATSOEVER, EXPRESS OR IMPLIED, FROM THE HIGHLAND ENTITIES OR THEIR REPRESENTATIVES AS TO ANY MATTERS CONCERNING THE KIRSCHNER CLAIMS AND AMENDED COMPLAINT, INCLUDING WITH RESPECT TO THE ENFORCEABILITY, TRANSFERABILITY, VIABILITY, STRENGTH, OR VALUE OF ANY OF THE KIRSCHNER CLAIMS OR THE AMENDED COMPLAINT. The HMIT Entities hereby specifically acknowledge that they have carefully reviewed this Section and have had the opportunity to discuss its import with legal counsel and that the provisions of this Section are a material part of this Agreement. Thus, if for any reason HMIT is precluded from or is otherwise unable to prosecute all or any of the Kirschner Claims, (i) the HMIT Releasors shall have no recourse against any Highland Released Parties whatsoever and shall not be entitled to compensation of any kind, it being agreed that the HMIT Entities are otherwise receiving adequate consideration for the duties and obligations they are undertaking pursuant to this Agreement and (ii) there will be no effect whatsoever on the validity and enforceability of this Agreement or any of the other transactions contemplated hereby.

(c)    As promptly as reasonably practicable following the Bankruptcy Court Approval Date, the Highland Entities shall provide to the HMIT Entities electronic copies of written discovery requests and responses thereto, and documents produced in discovery in respect of the Kirschner Claims and the Amended Complaint. The Highland Entities will not provide any other documents regarding the Kirschner Claims including any attorney-client communications and any documents subject to the attorney work-product doctrine or similar privileges or immunities concerning the Kirschner Claims (collectively, the "**Kirschner Privileges**"), it being understood and agreed that the Highland Entities are retaining, and not transferring or waiving, the Kirschner Privileges.

(d)    Each Party acknowledges and agrees that if (i) the Kirschner Transfer is found or deemed to be impermissible or invalid, for any reason, or (ii) any HMIT Entity materially breaches this Agreement, the Kirschner Claims and Amended Complaint will revert to, and remain an asset of, the Litigation Sub-Trust.

9.    <u>General Release By The HMIT Entities</u>. On the Bankruptcy Court Approval Date, and to the maximum extent permitted by law, each of the HMIT Entities, on behalf of itself and each of its respective Affiliates (including Affiliated and/or managed funds, accounts and other investment vehicles) and its and their respective current and former advisors, consultants, administrators, trustees, directors, officers, managers, executives, members, partners (including limited and general partners), employees, beneficiaries, direct and indirect shareholders and other equity holders, agents, participants, direct and indirect subsidiaries and parents, successors, predecessors, designees, and assigns (whether by operation of law or otherwise) and all Persons claiming through, under or on their behalf (collectively with the HMIT Entities, the "**HMIT Releasors**") hereby forever, finally, fully, unconditionally, and completely releases, relieves, acquits, discharges, remises, and exonerates each Highland Released Party from, and waives and relinquishes, any and all Claims, which the HMIT Releasors, or any Person claiming through, under, or on behalf of any of the HMIT Releasors, ever had, now has, or hereafter can, shall, or may have against any of the Highland Released Parties by reason of, arising from, relating to, or in connection with, any fact, matter, or transaction that occurred prior to the Agreement Date, including any fact, matter, transaction, or occurrence asserted by any HMIT Entity in the Pending

12

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/16/2025

Litigation or in connection with, relating to, or with respect to the Bankruptcy Case, the management or operation of any of the Highland Released Parties, or the Highland Released Parties' property and including any defense, affirmative defenses, and right to setoff arising out of, or otherwise related to, any of the foregoing (collectively, the "**HMIT Entity Released Claims**").

10.     General Release By The Highland Entities. On the Bankruptcy Court Approval Date, and to the maximum extent permitted by law, each of the Highland Entities, on behalf of itself and each of its respective Affiliates (including Affiliated and/or managed funds, accounts and other investment vehicles) and its or their respective current and former advisors, consultants, administrators, trustees, directors, officers, managers, executives, members, partners (including limited and general partners), employees, beneficiaries, direct and indirect shareholders and other equity holders, agents, participants, direct and indirect subsidiaries and parents, successors, predecessors, designees, and assigns (whether by operation of law or otherwise) and all Persons claiming through, under or on their behalf (collectively with the Highland Entities, the "**Highland Releasors**") hereby forever, finally, fully, unconditionally, and completely releases, relieves, acquits, discharges, remises, and exonerates each HMIT Released Party from, and waives and relinquishes, any and all Claims which the Highland Releasors, or any Person claiming through, under, or on behalf of any of the Highland Releasors, ever had, now has, or hereafter can, shall, or may have against any of the HMIT Released Parties by reason of, arising from, relating to, or in connection with, any fact, matter, or transaction that occurred prior to the Bankruptcy Court Approval Date, including any fact, matter, transaction, or occurrence in connection with, relating to, or with respect to the Bankruptcy Case, the management or operation of any of the HMIT Released Parties, or the HMIT Released Parties' property and including any defense, affirmative defenses, and right to setoff arising out of, or otherwise related to, any of the foregoing (collectively, the "**Highland Released Claims**").

11.     Further Provisions Concerning The General Releases.

(a)     **FOR THE AVOIDANCE OF DOUBT, THE FOREGOING RELEASES ARE INTENDED TO BE GENERAL AND INCLUDE A RELEASE OF ALL RELEASED CLAIMS, WHETHER KNOWN OR UNKNOWN, SUSPECTED OR UNSUSPECTED, ARISING OR EXISTING FROM THE BEGINNING OF TIME THROUGH AND INCLUDING THE AGREEMENT DATE.**

(b)     To the maximum extent permitted by law, each of the HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, waives the benefit of any statute or other principle of law or equity that limits the applicability of a release with respect to Claims that the releasing party does not know or suspect to exist in his, her or its favor at the time of executing the release.

(c)     Without limiting the scope of the foregoing waiver, in connection with the foregoing release, each of the HMIT Entities and the Highland Entities, on its own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, waives the benefits of Section 1542 of the California Civil Code (to the extent, if any, that Section 1542 might apply to the foregoing release), which provides as follows:

13

HCMLPHMIT00000272

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/16/2025

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

Each of the HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, hereby agrees that the provisions of Section 1542 of the Civil Code of the State of California and all similar federal or state law, rights, rules or legal principles, legal or equitable, in each case solely to the extent such provisions apply, **ARE HEREBY KNOWINGLY AND VOLUNTARILY WAIVED AND RELINQUISHED BY EACH OF THE HMIT ENTITIES AND THE HIGHLAND ENTITIES, ON THEIR OWN BEHALF AND ON BEHALF OF THE OTHER HMIT RELEASORS AND HIGHLAND RELEASORS, RESPECTIVELY,** in each and every capacity, to the full extent that such rights and benefits pertaining to the matters released herein may be waived, and each of the HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, hereby agrees and acknowledges that this waiver and relinquishment is an essential term of this Agreement, without which the consideration provided would not have been given.

In connection with such waiver and relinquishment, each of the HMIT Entities and Highland Entities acknowledges that it is aware that it may hereafter discover Claims presently unknown or unsuspected, or facts in addition to or different from those which it now knows or believes to be true, with respect to the matters released herein. Nevertheless, it is the intent of each of the HMIT Entities and the Highland Entities, on its own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, in executing this Agreement fully, finally, and forever to settle and release all such matters, and all Claims related thereto, which exist, may exist or might have existed (whether or not previously or currently asserted in any action) which are the subject to the releases granted above.

(d)      As an integral component of this Agreement, and notwithstanding the Parties' intent set forth in the preamble hereto and the general nature of the releases in Sections 9 and 10, should:

(i)      any HMIT Releasor contend or assert that any Claim of any kind whatsoever held by any HMIT Releasor against any Highland Released Party survives this Agreement and is in any way related to or arising from or in connection with any HMIT Entity Released Claim (such claim or cause of action, a "**HMIT Alleged Claim**"), such HMIT Releasor will be deemed to have irrevocably, fully, and finally assigned such HMIT Alleged Claim to the Highland Entities and the Highland Entities will be deemed to have forever, finally, full, unconditionally, and irrevocably, and completely released such HMIT Alleged Claim.

(ii)      any Highland Releasor contend or assert that any Claim of any kind whatsoever held by any Highland Releasor against any HMIT Released Party survives this Agreement and is in any way related to or arising from or in connection with any Highland Entity Released Claim (such claim or cause of action, a "**Highland Alleged Claim**"), such Highland

14

HCMLPHMIT00000273

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/16/2025

Releasor will be deemed to have irrevocably, fully, and finally assigned such Highland Alleged Claim to the HMIT Entities and the HMIT Entities will be deemed to have forever, finally, full, unconditionally, and irrevocably, and completely released such Highland Alleged Claim.

12.   <u>Covenant Not To Sue; Limitation on Standing</u>. Upon the Agreement Date:

(a)   Each of the HMIT Releasors covenants and agrees that it will not institute or prosecute any Action, in law, in equity or otherwise, against any of the Highland Released Parties, to recover, enforce, investigate, or collect any HMIT Entity Released Claim and will not (i) induce, encourage or direct any other Person to do so or (ii) act in concert with or assist (financially or otherwise) any other Person in doing so.

(b)   Each of the Highland Releasors covenants and agrees that it will not institute or prosecute any Action, in law, in equity or otherwise, against any of the HMIT Released Parties, to recover, enforce, investigate, or collect any Highland Entity Released Claim and will not (i) induce, encourage or direct any other Person to do so or (ii) act in concert with or assist (financially or otherwise) any other Person in doing so.

(c)   For the avoidance of doubt, this Agreement shall not operate to give any HMIT Entity standing for any purpose in connection with the Bankruptcy Case (or in connection with any appeal arising from any order entered by the Bankruptcy Court), except for the limited purpose of seeking Court approval of this Agreement (including with respect to any appeal concerning any order entered granting or denying such approval), and except for the limited purpose of enforcing this Agreement, no HMIT Entity shall commence any Action in connection with the HMIT Class 10 Interest.

13.   <u>Representations and Warranties</u>.

(a)   Each of the HMIT Entities hereby represents and warrants that every HMIT Entity Released Claim has not heretofore been assigned or encumbered and is not the subject of a transfer (as such term is defined in 11 U.S.C. § 101(54)), by any HMIT Releasor.

(b)   The HMIT Entities, on their own behalf and on behalf of the other HMIT Releasors, acknowledge and agree that each Plan Provision is lawful, effective, and binding on the HMIT Releasors.  The HMIT Entities further agree, on their own behalf and on behalf of the other HMIT Releasors, that the HMIT Releasors will never, in any way, challenge or seek to modify, nullify, vacate, or revoke, or induce, encourage or direct any other Person to do so or act in concert with or assist (financially or otherwise) any other Person in doing so the Confirmation Order, the Plan, the Plan Protections, or any Plan Document, including the Claimant Trust Agreement, the LPA, the Indemnity Trust Agreement or the Litigation Sub-Trust Agreement, in the Bankruptcy Court, in any other state or federal court, in any other forum or tribunal, or otherwise, including administrative or regulatory tribunals and foreign courts.

(c)   Each of the Highland Entities hereby represents and warrants that every Highland Entity Released Claim has not heretofore been assigned or encumbered and is not the subject of a transfer (as such term is defined in 11 U.S.C. § 101(54)), by any Highland Releasor.

001169
HCMLPHMIT00000274

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/16/2025

(d)      Each Party severally represents and warrants as to itself only that: (i) it has taken all necessary action to authorize and approve the execution, delivery and performance of this Agreement; (ii) such Party has full power and authority to execute and deliver this Agreement; and (iii) this Agreement constitutes a valid, legal and binding obligation of such Party, and is enforceable subject to its terms.  Each individual signatory hereto individually warrants and represents to all Parties hereto that such individual has full power and authority to act on behalf of and bind the Party for which he or she has executed this Agreement; provided, however that no signatory shall otherwise provide any warranty or representation or otherwise be a party to this Agreement on an individual basis.

14.      No Continuing Rights, Duties or Obligations.  Except for the rights, duties, and obligations expressly set forth in this Agreement, all Rights and Obligations that existed or may have existed shall be deemed terminated, extinguished, and released upon the Agreement Date. For the avoidance of doubt, from and after the Agreement Date, (a) the Highland Released Parties, individually and collectively, shall owe no duty, past or present, including with respect to the Kirchner Claims, to the HMIT Released Parties, individually and collectively, whether contractual, fiduciary, equitable, statutory or otherwise, except as arising out of this Agreement, and (b) the HMIT Released Parties, individually and collectively, shall owe no duty to the Highland Released Parties, individually and collectively, whether contractual, fiduciary, equitable, statutory or otherwise, except as arising out of this Agreement.

15.      Gatekeeper Standard.

(a)      The HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, acknowledge and agree that, notwithstanding the United States Court of Appeals for the Fifth Circuit's decision in *Highland Capital Management Fund Advisors, L.P. v. Highland Capital Management, L.P.*, No. 23-10534 (5th Cir. Mar. 18, 2025), the "Gatekeeper" provisions contained in Highland's Original Plan is forever binding on each of the HMIT Entities and any Persons claiming through, under or on behalf of any of them, and for a claim or cause of action to be "colorable" for purposes of the Gatekeeper, it must be found by final order of the Bankruptcy Court (the "**Gatekeeper Court**"), which order shall be subject to appeal to a court of competent jurisdiction, to have satisfied the "Gatekeeper Colorability Test" as such term is defined in *In re Highland Capital Management, L.P.*, 2023 Bankr. LEXIS 2104 at *124-36 (Bankr. N.D. Tex. Aug. 24, 2023).

(b)      The HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, acknowledge and agree that compliance with the Gatekeeper requires (i) a motion seeking leave to sue an Exculpated Party (as that term is defined in Highland's original Plan) and a finding that the litigant's claims and causes of action are "colorable" attaching a complaint setting forth the basis for such claims or causes of action and (ii), in the Gatekeeper Court's sole discretion, an evidentiary hearing (during which the Gatekeeper Court may, among other things, hear testimony and assess the credibility of any witness(es)) to determine whether a proposed claim or cause of action is "colorable."

(c)      The HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, further acknowledge

001170
HCMLPHMIT00000275

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/16/2025

and agree that the moving party under the Gatekeeper has the burden of satisfying the "Gatekeeper Colorability Test," and that the dismissal of the Pending Litigation shall have res judicata effect.

16.    <u>Indemnification</u>.

(a)    Without in any manner limiting the available remedies for any breach of this Agreement, the HMIT Entities, severally but not jointly, agree to indemnify, defend, and hold the Highland Released Parties harmless from and against any and all Liability, that may arise or result from or on account of, or that are otherwise related or attributable to (x) any breach of this Agreement or of any representation or warranty contained in the Agreement, including the representations and warranties of any HMIT Entity set forth in <u>Section 13</u> or (y) any Actions brought or prosecuted by or on behalf of, any HMIT Releasor or that are induced, encouraged, assisted  or directed by any HMIT Releasor or brought or prosecuted in concert with any HMIT Releasor against any Highland Released Party with respect to or related to any HMIT Entity Released Claims.  Without limiting the scope of the foregoing in any manner, any HMIT Entity that breaches <u>Section 12</u> shall be liable to the Highland Released Party against whom the applicable Action has been brought or prosecuted in violation of <u>Section 12</u> for the reasonable attorneys' fees and costs incurred by such Highland Released Party in defending against or otherwise responding to such Action.  Each HMIT Entity acknowledges and agrees that the HMIT Entities are and shall be severally but not jointly liable for any Liability arising from or out of any breach of this Agreement or of any representation or warranty set forth in this Agreement.

(b)    Without in any manner limiting the available remedies for any breach of this Agreement, the Highland Entities, severally but not jointly, agree to indemnify, defend, and hold the HMIT Released Parties harmless from and against any and all Liability, that may arise or result from or on account of, or that are otherwise related or attributable to (x) any breach of this Agreement or of any representation or warranty contained in the Agreement, including the representations and warranties of any Highland Entity set forth in <u>Section 13</u> or (y) any suits, proceedings, or other actions brought or prosecuted by or on behalf of, any Highland Releasor or that are induced, encouraged, assisted  or directed by any Highland Releasor or brought or prosecuted in concert with any Highland Releasor against any HMIT Released Party with respect to or related to any HMIT Entity Released Claims.  Without in any manner limiting the scope of the foregoing, any Highland Entity that breaches <u>Section 12</u> shall be liable to the HMIT Released Party against whom the applicable Action has been brought or prosecuted in violation of <u>Section 12</u> for the reasonable attorneys' fees and costs incurred by such HMIT Released Party in defending against or otherwise responding to such Action.  Each Highland Entity acknowledges and agrees that the Highland Entities are and shall be severally but not jointly liable for any Liability arising from or out of any breach of this Agreement or of any representation or warranty set forth in this Agreement.

17.    <u>Execution</u>.  This Agreement may be executed by the exchange of signatures by facsimile or by PDF attachment to an email transmittal and in counterparts, and if so executed, shall be fully executed when a counterpart has been executed and delivered by all Parties hereto through counsel.  All counterparts taken together shall constitute one and the same agreement and shall be fully enforceable as such.

17

HCMLPHMIT00000276

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/16/2025

18.    Bankruptcy Court Order.  The allowance of the allowed HMIT Class 10 Interest pursuant to Section 4 is subject to the entry of the Bankruptcy Court Order.  To that end, the Highland Entities shall file the 9019 Motion no later than five (5) Business Days after the Agreement Date.  Each Party shall, and shall cause each of their respective Affiliates to, undertake any and all actions in compliance with applicable law to obtain the Bankruptcy Court Order as promptly as practicable, and without limiting the foregoing, if an Action is threatened or instituted by any Person opposing the 9019 Motion or otherwise challenging the validity or legality, or seeking to restrain the consummation, of the transactions contemplated by this Agreement or the Bankruptcy Court Order, each Party shall, and shall cause its respective Affiliates to, use their commercially reasonable best efforts to avoid, resist, resolve or, if necessary, and defend to effectuate this Agreement and consummate the transactions hereby.  If the 9019 Motion is not approved by entry of the Bankruptcy Court Order or if the Bankruptcy Court Approval is precluded from becoming a Final Order, (a) there will be no affect on, adjustment to, or impairment of, in any way, the validity and enforceability of the remainder of this Agreement, and the other transactions contemplated hereby, all of which shall remain in full force and effect and (b) each Party shall, and shall cause its respective Affiliates to, use their best efforts to seek the allowance of the HMIT Class 10 Interest in a substantially similar amount and on substantially similar terms as set forth in Section 4 to the fullest extent possible so as to give effect to the original intent of the Parties as closely as possible.

19.    Fees and Expenses.  Whether or not the transactions contemplated hereby are consummated or the Bankruptcy Court Order is obtained, and except as otherwise expressly provided in this Agreement, each Party will bear its respective fees, costs and expenses (including legal, accounting and other professional fees) incurred in connection with the preparation, negotiation, execution and performance of this Agreement or the transactions contemplated hereby, including with respect to each Party's respective obligations pursuant to Section 18.  Notwithstanding the foregoing, if any Party hereto brings an Action to enforce or interpret the terms and provisions of this Agreement, the prevailing Party in that Action shall be entitled to have and recover from the non-prevailing Party all such fees, costs and expenses (including all court costs and reasonable attorneys' fees) as the prevailing Party may suffer or incur in the pursuit or defense of such action or proceeding.

20.    Entire Agreement; No Other Representations.  **THIS AGREEMENT CONTAINS THE ENTIRE AGREEMENT BETWEEN THE PARTIES, AND NO RIGHTS ARE CREATED IN FAVOR OF ANY PERSON OTHER THAN AS SPECIFIED OR EXPRESSLY SET FORTH IN THIS AGREEMENT.  THERE ARE NO REPRESENTATIONS, CONDITIONS, WARRANTIES, STATEMENTS, OR UNDERSTANDINGS (COLLECTIVELY, "REPRESENTATIONS"), EITHER ORAL OR WRITTEN, BETWEEN THE PARTIES OTHER THAN THOSE EXPRESSLY SET FORTH IN THIS AGREEMENT.  THE PARTIES EXPRESSLY AGREE THAT THEY HAVE NOT BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY ANY REPRESENTATIONS NOT SET FORTH IN THIS AGREEMENT; AND THE PARTIES EXPRESSLY AGREE THAT THEY HAVE NOT RELIED ON ANY REPRESENTATIONS NOT EXPRESSLY SET FORTH IN THIS AGREEMENT. THE PARTIES EXPRESSLY AGREE THAT THEY ARE ENTERING INTO THIS AGREEMENT RELYING SOLELY ON THEIR OWN JUDGMENT AND NOT ON ANY REPRESENTATIONS BY ANY PARTY, EXCEPT FOR THOSE REPRESENTATIONS**

18

HCMLPHMIT00000277

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/16/2025

EXPRESSLY SET FORTH IN THIS AGREEMENT.  THE PARTIES AGREE THAT
REPRESENTATIONS NOT EXPRESSLY SET FORTH IN THIS AGREEMENT SHALL
NOT BE USED IN THE INTERPRETATION OR CONSTRUCTION OF THIS
AGREEMENT, AND NEITHER THE HMIT RELEASED PARTIES NOR THE
HIGHLAND RELEASED PARTIES SHALL HAVE ANY LIABILITY FOR ANY
CONSEQUENCES ARISING AS A RESULT OF ANY REPRESENTATIONS NOT SET
FORTH IN THIS AGREEMENT.

21.    <u>Agreement and Release Knowing and Voluntary</u>.  The Parties acknowledge that
they have considered this Agreement with their respective attorneys and have carefully read this
Agreement, that it has been fully explained by their attorneys, and that they have had a reasonable
opportunity to consider this Agreement.  The Parties further represent that they know and fully
understand the contents of this Agreement, that they intend to be legally bound by this Agreement
and the releases and covenants contained herein, and that they are signing this Agreement,
including the release provisions herein, voluntarily and of their own free will and without coercion,
and with the benefit of advice of counsel.

22.    <u>Cooperation</u>.  The Parties agree to perform any services or actions reasonably
necessary to carry out the terms and conditions of this Agreement or the transactions contemplated
hereby, including the execution and delivery of reasonable additional documents, instruments,
conveyances and/or assurances, in good faith, and to reasonably communicate and cooperate with
one another in this regard.  For the avoidance of doubt, nothing in this Section shall obligate the
Highland Entities to assist the HMIT Entities in any way with respect to the Kirschner Claims,
including the prosecution thereof.

23.    <u>Governing Law</u>.  This Agreement shall be construed pursuant to and governed by
the laws of the State of Delaware (substantive and procedural) without reference to principles of
conflicts of law that would result in the application of any other State's laws.

24.    <u>Jurisdiction/Venue</u>.  The Parties hereby irrevocably submit to the jurisdiction and
venue of the Bankruptcy Court with respect to any Action arising out of or related to this
Agreement or the subject matter hereof; if (and only if) the Bankruptcy Court lacks personal or
subject matter jurisdiction to adjudicate an Action arising out of or related to this Agreement or
the subject matter hereof, then the Parties irrevocably submit to the jurisdiction and venue of the
United States District Court for the Northern District of Texas.

25.    <u>No Admissions</u>.  All Parties acknowledge and agree that the matters set forth in this
Agreement constitute the settlement and compromise of disputed Claims and that this Agreement
shall not constitute the admission of any fact or liability by any of them regarding any Claim,
including the Claims released hereunder, and neither the terms hereof, nor the fact of this
Agreement itself, shall be evidence of any kind in any Action, other than an Action to enforce the
terms of the Agreement or any instrument executed in connection herewith or any claim for
damages or other relief for breach of any representation or warranty contained herein or in any
instrument executed in connection herewith.

26.    <u>Other Provisions</u>.

19

001173

HCMLPHMIT00000278

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/16/2025

(a)     No representation, inducement, agreement, promise or understandings altering, modifying, amending, taking from or adding to, the terms and conditions hereof shall have any force or effect unless the same is in writing and validly executed by each of the Parties hereto.

(b)     The waiver by any Party of any breach of, or default under, any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach or default; provided, however, that for any such waiver to be enforceable, it shall be in writing and executed by the non-breaching Party.

(c)     The headings contained in this Agreement are for convenience only and shall in no way restrict or otherwise affect the construction of the provisions hereof.

(d)     The Parties shall each execute all documents and perform all acts necessary and proper to effectuate the terms of this Agreement.

27.     Notices.  All notices required or permitted to be provided hereunder shall be afforded to the respective parties to and through their counsel, and shall be transmitted simultaneously by electronic mail (with PDF attachments, as necessary) and by telefax, addressed as follows:

To the Highland Entities:

**PACHULSKI STANG ZIEHL AND JONES LLP**
Jeffrey N. Pomerantz
John A. Morris
10100 Santa Monica Boulevard
Los Angeles, California 90067-4003
310.277.6910
jpomerantz@pszjlaw.com
jmorris@pszjlaw.com

To the HMIT Entities:

**KELLY HART PITRE**
Louis M. Phillips
Amelia Hurt
301 Main Street, Suite 1600
225.381.9643
Louis.Phillips@Kellyhart.com
Amelia.Hurt@Kellyhart.com

28.     Severability. Should any term, provision or paragraph of this Agreement be determined to be illegal or void or of no force and effect, the balance of the Agreement shall survive.  The invalidity or unenforceability of any provision of this Agreement shall not affect the validity and enforceability of any other provision of this Agreement.

20

001174
HCMLPHMIT00000279

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/16/2025

29.    <u>Interpretive Provisions</u>. Unless the express context otherwise requires: (a) the words "hereof," "herein" and "hereunder" and words of similar import, when used in this Agreement, shall refer to this Agreement as a whole and not to any particular provision of this Agreement; (b) words defined in the singular shall have a comparable meaning when used in the plural, and vice versa; (c) the words "Dollars" and "$" mean U.S. dollars; (d) references herein to a specific Section, Subsection, Recital, Schedule or Exhibit shall refer, respectively, to Sections, Subsections, Recitals, Schedules or Exhibits of this Agreement; (e) wherever the word "include," "includes" or "including" is used in this Agreement, it shall be deemed to be followed by the words ",without limitation,"; (f) references herein to any gender shall include each other gender; (g) references herein to any Person shall include such Person's heirs, executors, personal representatives, administrators, successors and assigns; provided, however, that nothing contained in this clause (g) is intended to authorize any assignment or transfer not otherwise permitted by this Agreement; (h) with respect to the determination of any period of time, the word "from" means "from and including" and the words "to" and "until" each means "to but excluding"; (i) the word "or" shall be disjunctive but not exclusive; (j) the headings contained in this Agreement are intended solely for convenience and shall not affect the rights of the Parties; and (k) if the last day for the giving of any notice or the performance of any act required or permitted under this Agreement is a day that is not a Business Day, then the time for the giving of such notice or the performance of such action shall be extended to the next succeeding Business Day.

*[Signature page follows]*

21

001175

HCMLPHMIT00000280

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first written above.

**HUNTER MOUNTAIN INVESTMENT TRUST**

By _____
    Name:    Mark Patrick
    Title:    Administrator
    Date:    May __, 2025

**BEACON MOUNTAIN LLC**

By _____
    Name:
    Title:
    Date:    May __, 2025

**RAND ADVISORS, LLC**

By _____
    Name:    Mark Patrick
    Title:    President
    Date:    May __, 2025

**RAND PE FUND I, LP**
By: Rand PE Fund Management, LLC, its General Partner

By _____
    Name:    Mark Patrick
    Title:    President
    Date:    May __, 2025

**RAND PE FUND MANAGEMENT, LLC**

By _____
    Name:    Mark Patrick
    Title:    President

SIGNATURE PAGE TO SETTLEMENT AGREEMENT & GENERAL RELEASE

HCMLPHMIT00000281

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

Date:        May __, 2025

**ATLAS IDF, LP**
By: Atlas IDF GP, LLC, its General Partner


By   _____
     Name:      Mark Patrick
     Title:     President
     Date:      May __, 2025

**ATLAS IDF GP, LLC**


By   _____
     Name:      Mark Patrick
     Title:     President
     Date:      May __, 2025


**HIGHLAND CAPITAL MANAGEMENT, L.P.**


By   _____
     Name:      James. P. Seery, Jr.
     Title:     Chief Executive Officer
     Date:      May __, 2025


**HIGHLAND CLAIMANT TRUST**


By   _____
     Name:      James P. Seery, Jr.
     Title:     Claimant Trustee
     Date:      May __, 2025

**HIGHLAND LITIGATION SUB-TRUST**


By   _____
     Name:      Marc S. Kirschner
     Title:     Litigation Trustee


SIGNATURE PAGE TO SETTLEMENT AGREEMENT & GENERAL RELEASE

001177
HCMLPHMIT00000282

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

Date:        May ___, 2025

**HIGHLAND INDEMNITY TRUST**


By    _____
      Name:      James P. Seery, Jr.
      Title:     Indemnity Trust Administrator
      Date:      May ___, 2025

SIGNATURE PAGE TO SETTLEMENT AGREEMENT & GENERAL RELEASE

001178

HCMLPHMIT00000283

**EXHIBIT 32**

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**To:** "Tim Cournoyer" <TCournoyer@HighlandCapital.com>
**Cc:** "Amelia L. Hurt" <Amelia.Hurt@kellyhart.com>, "Jim Shields" <jshields@shieldslegal.com>, "John A. Morris" <jmorris@pszjlaw.com>, "Jeff Pomerantz" <jpomerantz@pszjlaw.com>
**Subject:** RE: SETTLEMENT AND RELEASE AGREEMENT KHH FINAL REDLINE COMMENTS 5.16.PDF; Highland HMIT-Rand Settlement Agreement.012(Highland Draft 05.15.25) KHH Clean for Execution 5.16.DOCX
**Date:** Fri, 16 May 2025 20:15:55 +0000
**Importance:** Normal
**Inline-Images:** image004.jpg; image001.png

---

Everyone,

I am holding Mark's signatures.

**Louis M. Phillips**
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

*louis.phillips@kellyhart.com*
*www.kellyhart.com*

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

---

**From:** Tim Cournoyer <TCournoyer@HighlandCapital.com>
**Sent:** Friday, May 16, 2025 1:24 PM

HCMLPHMIT00000287

**To:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Cc:** Amelia L. Hurt <Amelia.Hurt@kellyhart.com>; Jim Shields <jshields@shieldslegal.com>; John A. Morris <jmorris@pszjlaw.com>; Jeff Pomerantz <jpomerantz@pszjlaw.com>
**Subject:** FW: SETTLEMENT AND RELEASE AGREEMENT KHH FINAL REDLINE COMMENTS 5.16.PDF; Highland HMIT-Rand Settlement Agreement.012(Highland Draft 05.15.25) KHH Clean for Execution 5.16.DOCX

---

**EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.**

---

Louis,

Please find attached a revised draft with just two clean-up changes as reflected in the Redline.

We have received verbal approval of the Claimant Trust's Oversight Board to proceed, and we are in the process of collecting signatures to the written consents of the Class 9 holders and the Oversight Board, and our internal signatures to the Settlement Agreement.  If you could begin to do the same on your end, we will confirm once we are ready to exchange signature pages.

Thanks and please let us know if you have any questions or concerns.

Best,

TIMOTHY J. COURNOYER
MANAGING DIRECTOR AND ASSISTANT GENERAL COUNSEL



100 Crescent Court  |  Suite 1850  |  Dallas, Texas 75201
D: 972.628.4153  |  M: 305.479.0804  |  F: 972.628.4147
TCournoyer@HighlandCapital.com  |  www.highlandcapital.com

---

**From:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Sent:** Friday, May 16, 2025 11:40 AM
**To:** John A. Morris <jmorris@pszjlaw.com>; Jeff Pomerantz <jpomerantz@pszjlaw.com>
**Cc:** Amelia L. Hurt <Amelia.Hurt@kellyhart.com>; Jim Shields <jshields@shieldslegal.com>
**Subject:** SETTLEMENT AND RELEASE AGREEMENT KHH FINAL REDLINE COMMENTS 5.16.PDF; Highland HMIT-Rand Settlement Agreement.012(Highland Draft 05.15.25) KHH Clean for Execution 5.16.DOCX

John and Jeff,

Please see a final redline with wire instructions added, a bold of a WHEREAS, and references to payments being made by Wire Transfer.  I did not add the Wire Transfer to the final distribution part because of the reference to "assets" versus payment and did not want to go into the body of the document to deal with that.  Also the attached PDF (redlined against John's clean from yesterday) does not include the header clean up contained in the word version.  We are prepared to execute this version.  Mark will be out for a while today so just let us know if we can get his signatures or whether you have any further comments.  Thank you.

---

PRIVILEGE WARNING: The sender or recipient of this message is a member of the legal department at Highland Capital Management. This message and any attachments hereto may constitute attorney work product or be protected by the attorney-client privilege. Do not disclose this message or any attachments hereto without prior consent of a member of the legal department at Highland Capital Management.

---

HCMLPHMIT00000288

DISCLAIMER- This email is intended for the recipient(s) only and should not be copied or reproduced without explicit permission. The material provided herein is for
informational purposes only and does not constitute an offer or commitment, a solicitation of an offer, or any advice or recommendation, to enter into or conclude
any transaction. It may contain confidential, proprietary or legally privileged information. If you receive this message in error, please immediately delete it.

001182
HCMLPHMIT00000289

**EXHIBIT 33**

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**To:** "jpseeryjr@gmail.com" <jpseeryjr@gmail.com>, "mpatricktax1040@gmail.com"
<mpatricktax1040@gmail.com>, "Shawn Raver" <sraver@dafholdco.com>,
"jshields@shieldslegal.com" <jshields@shieldslegal.com>, "Amelia L. Hurt"
<Amelia.Hurt@kellyhart.com>
**Cc:** "John A. Morris" <jmorris@pszjlaw.com>, "Tim Cournoyer"
<TCournoyer@HighlandCapital.com>, "David Klos" <DKlos@HighlandCapital.com>,
"Matthew Gray" <MGray@HighlandCapital.com>
**Subject:** Re: Timing
**Date:** Sat, 17 May 2025 00:50:45 +0000
**Importance:** Normal

---

We will review the 9019 this weekend

Louis M. Phillips
On May 16, 2025 at 5:14:22 PM CDT, jpseeryjr@gmail.com wrote:

EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.

All:

We have approvals on our side except UBS which is going through its process. I expect them to be done and approved on Monday.

John plans to circulate the 9019 tomorrow.

If we are set on the 9019 and get our last approval, we would like to release signatures and file the 9019 on Monday afternoon.

Thank you.


Best. Jim

Jim Seery
631-804-2049
jpseeryjr@gmail.com

HCMLPHMIT00000290

**EXHIBIT 3**

001185

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**To:** "John A. Morris" <jmorris@pszjlaw.com>
**Cc:** "Jeff Pomerantz" <jpomerantz@pszjlaw.com>, "Gregory V. Demo"
<GDemo@pszjlaw.com>, "Amelia L. Hurt" <Amelia.Hurt@kellyhart.com>
**Subject:** Re: Highland: Rule 9019 Motion (revised)
**Date:** Sat, 17 May 2025 13:16:39 +0000
**Importance:** Normal
**Inline-Images:** image001.jpg; image002.png; image001(1).jpg; image002(1).png

---

Thanks

Louis M. Phillips
On May 17, 2025 at 7:43:19 AM CDT, John A. Morris <jmorris@pszjlaw.com> wrote:

**EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.**

---

Further changes have been made, Louis.

Please review this version.

Chat soon,

John

**John A. Morris**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 212.561.7760
Tel: 212.561.7700 | Fax: 212.561.7777
jmorris@pszjlaw.com
vCard | Bio | LinkedIn



Los Angeles | San Francisco | Wilmington, DE | New York | Houston

---

**From:** John A. Morris
**Sent:** Saturday, May 17, 2025 8:42 AM
**To:** James Seery <jpseeryjr@gmail.com>
**Cc:** Tim Cournoyer <TCournoyer@HighlandCapital.com>; David Klos (dklos@highlandcapital.com)
<DKlos@HighlandCapital.com>; Jeff Pomerantz <jpomerantz@pszjlaw.com>; Gregory V. Demo
<GDemo@pszjlaw.com>
**Subject:** Highland: Rule 9019 Motion (revised)

Sorry.

HCMLPHMIT00000291

I did not realize HCMLP's changes had not been incorporated.

They have been now.

**John A. Morris**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 212.561.7760
Tel: 212.561.7700 | Fax: 212.561.7777
jmorris@pszjlaw.com
vCard | Bio | LinkedIn



Los Angeles | San Francisco | Wilmington, DE | New York | Houston





HCMLPHMIT00000292

**EXHIBIT 3**

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**To:** "John A. Morris" <jmorris@pszjlaw.com>, "Jeff Pomerantz" <jpomerantz@pszjlaw.com>
**Cc:** "Amelia L. Hurt" <Amelia.Hurt@kellyhart.com>, "Jim Shields" <jshields@shieldslegal.com>
**Subject:** FW: Highland: HMIT Settlement Agreement (final change?)
**Date:** Mon, 19 May 2025 11:36:33 +0000
**Importance:** Normal
**Attachments:** CHANGED_PAGE_ONLY_-_HMIT_Settlement_Agreement.pdf
**Inline-Images:** image002.jpg; image003.png; image005.png

---

John and Jeff,

These changes are fine.


**Louis M. Phillips**
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

*louis.phillips@kellyhart.com*
*www.kellyhart.com*

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

---

**From:** John A. Morris <jmorris@pszjlaw.com>
**Sent:** Sunday, May 18, 2025 8:47 AM
**To:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>; Gregory V. Demo <GDemo@pszjlaw.com>; Amelia L. Hurt

HCMLPHMIT00000295

**Subject:** Highland: HMIT Settlement Agreement (final change?)

EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.

Good morning, Louis.

One of our Oversight Board members requested that paragraph 19 be modified to include all "Highland Released Parties."

While the issue is arguably addressed in Section 16(a), we see no harm and attach a proposed revision that is, of course, reciprocal.

Please let us know if this is acceptable.  If so, we'll send a fully revised agreement.

Please also let us know if you have any comments on the draft Rule 9019 motion.  If we can obtain UBS' consent tomorrow, we want to get this filed.

Thank you,

John

**John A. Morris**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 212.561.7760
Tel: 212.561.7700 | Fax: 212.561.7777
jmorris@pszjlaw.com
vCard | Bio | LinkedIn



Los Angeles | San Francisco | Wilmington, DE | New York | Houston

HCMLPHMIT00000296

18.   <u>Bankruptcy Court Order</u>.   The allowance of the allowed HMIT Class 10 Interest pursuant to <u>Section 4</u> is subject to the entry of the Bankruptcy Court Order.   To that end, the Highland Entities shall file the 9019 Motion no later than five (5) Business Days after the Agreement Date.   Each Party shall, and shall cause each of their respective Affiliates to, undertake any and all actions in compliance with applicable law to obtain the Bankruptcy Court Order as promptly as practicable, and without limiting the foregoing, if an Action is threatened or instituted by any Person opposing the 9019 Motion or otherwise challenging the validity or legality, or seeking to restrain the consummation, of the transactions contemplated by this Agreement or the Bankruptcy Court Order, each Party shall, and shall cause its respective Affiliates to, use their commercially reasonable best efforts to avoid, resist, resolve or, if necessary, and defend to effectuate this Agreement and consummate the transactions hereby.   If the 9019 Motion is not approved by entry of the Bankruptcy Court Order or if the Bankruptcy Court Approval is precluded from becoming a Final Order, (a) there will be no effect on, adjustment to, or impairment of, in any way, the validity and enforceability of the remainder of this Agreement, and the other transactions contemplated hereby, all of which shall remain in full force and effect and (b) each Party shall, and shall cause its respective Affiliates to, use their best efforts to seek the allowance of the HMIT Class 10 Interest in a substantially similar amount and on substantially similar terms as set forth in <u>Section 4</u> to the fullest extent possible so as to give effect to the original intent of the Parties as closely as possible.

19.   <u>Fees and Expenses</u>.   Whether or not the transactions contemplated hereby are consummated or the Bankruptcy Court Order is obtained, and except as otherwise expressly provided in this Agreement, each Party will bear its respective fees, costs and expenses (including legal, accounting and other professional fees) incurred in connection with the preparation, negotiation, execution and performance of this Agreement or the transactions contemplated hereby, including with respect to each Party's respective obligations pursuant to <u>Section 18</u>. Notwithstanding the foregoing, if any Party hereto, any Highland Released Party, or any HMIT Released Party brings an Action to enforce or interpret the terms and provisions of this Agreement, the prevailing ~~Party~~Person in that Action shall be entitled to have and recover from the non-prevailing ~~Party~~Person all such fees, costs and expenses (including all court costs and reasonable attorneys' fees) as the prevailing ~~Party~~Person may suffer or incur in the pursuit or defense of such action or proceeding.

20.   <u>Entire Agreement; No Other Representations</u>.   **THIS AGREEMENT CONTAINS THE ENTIRE AGREEMENT BETWEEN THE PARTIES, AND NO RIGHTS ARE CREATED IN FAVOR OF ANY PERSON OTHER THAN AS SPECIFIED OR EXPRESSLY SET FORTH IN THIS AGREEMENT.   THERE ARE NO REPRESENTATIONS, CONDITIONS, WARRANTIES, STATEMENTS, OR UNDERSTANDINGS (COLLECTIVELY, "<u>REPRESENTATIONS</u>"), EITHER ORAL OR WRITTEN, BETWEEN THE PARTIES OTHER THAN THOSE EXPRESSLY SET FORTH IN THIS AGREEMENT.   THE PARTIES EXPRESSLY AGREE THAT THEY HAVE NOT BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY ANY REPRESENTATIONS NOT SET FORTH IN THIS AGREEMENT; AND THE PARTIES EXPRESSLY AGREE THAT THEY HAVE NOT RELIED ON ANY REPRESENTATIONS NOT EXPRESSLY SET FORTH IN THIS AGREEMENT. THE PARTIES EXPRESSLY AGREE THAT THEY ARE ENTERING INTO THIS AGREEMENT RELYING SOLELY ON THEIR OWN JUDGMENT AND NOT ON ANY**

001191

HCMLPHMIT00000297

**EXHIBIT 3**

001192

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**To:** "Gregory V. Demo" <GDemo@pszjlaw.com>, "Amelia L. Hurt"
<Amelia.Hurt@kellyhart.com>, "Jim Shields" <jshields@shieldslegal.com>
**Cc:** "John A. Morris" <jmorris@pszjlaw.com>, "Jeff Pomerantz" <jpomerantz@pszjlaw.com>
**Subject:** RE: Highland - 9019 Motion (HMIT)
**Date:** Mon, 19 May 2025 14:42:26 +0000
**Importance:** Normal
**Inline-Images:** image005.jpg; image006.png; image002.png

---

I can get those to you in a bit.

**Louis M. Phillips**
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT: 225-338-5308

*louis.phillips@kellyhart.com*
*www.kellyhart.com*

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

---

**From:** Gregory V. Demo <GDemo@pszjlaw.com>
**Sent:** Monday, May 19, 2025 9:41 AM
**To:** Louis M. Phillips <Louis.Phillips@kellyhart.com>; Amelia L. Hurt <Amelia.Hurt@kellyhart.com>; Jim Shields <jshields@shieldslegal.com>
**Cc:** John A. Morris <jmorris@pszjlaw.com>; Jeff Pomerantz <jpomerantz@pszjlaw.com>
**Subject:** RE: Highland - 9019 Motion (HMIT)

HCMLPHMIT00000342

**EXTERNAL SENDER ALERT** - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.

Louis,

We can use Mark's prior signatures.  Can you send them to me know and we'll hold them in escrow pending your release?

Best,
Greg

**Gregory V. Demo**
Pachulski Stang Ziehl & Jones LLP
Tel: 212.561.7730 | Cell: 312.662.3573 | Fax: 212.561.7777
GDemo@pszjlaw.com
vCard | Bio | LinkedIn



Los Angeles | New York | Wilmington, DE | Houston | San Francisco

**From:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Sent:** Monday, May 19, 2025 10:37 AM
**To:** Gregory V. Demo <GDemo@pszjlaw.com>; Amelia L. Hurt <Amelia.Hurt@kellyhart.com>; Jim Shields <jshields@shieldslegal.com>
**Cc:** John A. Morris <jmorris@pszjlaw.com>; Jeff Pomerantz <jpomerantz@pszjlaw.com>
**Subject:** RE: Highland - 9019 Motion (HMIT)

Thanks Greg.  Will get back shortly.  Also, I asked John this morning (I improvidently left you off the message) about whether Mark will need to sign a final execution version (I have his signatures ion the version immediately prior to the few changes made Saturday).

**Louis M. Phillips**
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

louis.phillips@kellyhart.com
www.kellyhart.com

*Licensed to Practice in the State of Louisiana*

001194

Confidential: This information is protected legally under applicable law as a confidential communication and is privileged, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

**From:** Gregory V. Demo <GDemo@pszjlaw.com>
**Sent:** Monday, May 19, 2025 9:27 AM
**To:** Louis M. Phillips <Louis.Phillips@kellyhart.com>; Amelia L. Hurt <Amelia.Hurt@kellyhart.com>; Jim Shields <jshields@shieldslegal.com>
**Cc:** John A. Morris <jmorris@pszjlaw.com>; Jeff Pomerantz <jpomerantz@pszjlaw.com>
**Subject:** Highland - 9019 Motion (HMIT)

**EXTERNAL SENDER ALERT** - **This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.**

Louis,

Attached is a revised draft of the 9019 motion with a redline against what you sent this morning.  We accepted all your changes—with a few stylistic modifications—and include a few additional changes.

With John traveling, please keep me copied on future emails.

Best,
Greg

**Gregory V. Demo**
Pachulski Stang Ziehl & Jones LLP
Tel: 212.561.7730 | Cell: 312.662.3573 | Fax: 212.561.7777
GDemo@pszjlaw.com
vCard | Bio | LinkedIn



Los Angeles | New York | Wilmington, DE | Houston | San Francisco

**EXHIBIT 3**

001196

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**To:** "Gregory V. Demo" <GDemo@pszjlaw.com>, "John A. Morris" <jmorris@pszjlaw.com>, "Jeff Pomerantz" <jpomerantz@pszjlaw.com>
**Cc:** "Amelia L. Hurt" <Amelia.Hurt@kellyhart.com>, "Jim Shields" <jshields@shieldslegal.com>
**Subject:** Settlement Agreement Executed by Mark Patrick
**Date:** Mon, 19 May 2025 16:09:14 +0000
**Importance:** Normal
**Attachments:** Highland_HMIT-Rand_Settlement_Agreement.014(Execution_Version).docx; CHANGED_PAGE_ONLY_-_HMIT_Settlement_Agreement.pdf
**Inline-Images:** image001.png

---

Greg,

Attached is the version of the Settlement Agreement executed by Mark Patrick.  You are authorized to hold in escrow, pending a written release from escrow from me.  You are also authorized to substitute the changed page attached for purposes of a final execution version.

**Louis M. Phillips**
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

louis.phillips@kellyhart.com
www.kellyhart.com

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

HCMLPHMIT00000345

EXECUTION VERSION

## SETTLEMENT AGREEMENT & GENERAL RELEASE

THIS SETTLEMENT AGREEMENT & GENERAL RELEASE (this "**Agreement**") is entered into as of May 16, 2025 (the "**Agreement Date**"), by and among Highland Capital Management, L.P., a Delaware limited partnership ("**Highland**"), the Highland Claimant Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act (the "**Claimant Trust**"), the Highland Litigation Sub-Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act (the "**Litigation Sub-Trust**"), and the Highland Indemnity Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act (the "**Indemnity Trust**", and together with Highland, the Claimant Trust and the Litigation Sub-Trust, the "**Highland Entities**"), on the one hand, and Hunter Mountain Investment Trust, a Delaware statutory trust ("**HMIT**"), Beacon Mountain LLC, a Delaware limited liability company ("**Beacon Mountain**"), Rand Advisors, LLC, a Delaware limited liability company ("**Rand Advisors**"), Rand PE Fund I, LP, a Delaware series limited partnership ("**Rand PE Fund**"), Rand PE Fund Management, LLC, a Delaware limited liability company ("**Rand GP**"), Atlas IDF, LP, a Delaware limited partnership ("**Atlas IDF**"), Atlas IDF GP, LLC, a Delaware limited liability company ("**Atlas GP**" and together with HMIT, Beacon Mountain, Rand Advisors, Rand PE Fund, Rand GP and Atlas IDF, the "**HMIT Entities**"), on the other hand.  The Highland Entities and the HMIT Entities are collectively referred to as the "**Parties**," and each individually, as a "**Party**".

## DEFINITIONS

Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Claimant Trust Agreement or the Plan, as applicable (in each case, as hereinafter defined). For purposes of this Agreement, the following capitalized terms have the following meanings:

"**9019 Motion**" means the motion seeking entry of the Bankruptcy Court Order pursuant to Bankruptcy Rule 9019 and in accordance with Section 18.

"**Action**" means any action, claim, demand, arbitration, hearing, charge, complaint, investigation, examination, indictment, litigation, suit or other civil, criminal, administrative or investigative proceedings, including any petition under Rule 202 of the Texas Rules of Civil Procedure.

"**Affiliate**" means a Person that, directly or indirectly, through one or more intermediaries, controls or is controlled by, or is under common control with, a specified Person as of the date on which, or at any time during the period for which, the determination of affiliation is being made. The term "control" (including, with correlative meanings, the terms "controlled by" and "under common control with"), as applied to any Person, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting securities or other ownership interest, by contract or otherwise.

"**Amended Complaint**" means the *Amended Complaint and Objection to Claims*, filed as docket number 158 in *Kirschner v. Dondero*, Adv. Pro. No. 21-03076-sgj (Bankr. N.D. Tex. May 19, 2022).

"**Bankruptcy Case**" means *In re Highland Capital Management, L.P.*, Case No. 19-34054-sgj (Bankr. N.D. Tex.) and its related proceedings.

001198


HCMLPHMIT00000347

"**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended).

"**Bankruptcy Court**" means the U.S. Bankruptcy Court for the Northern District of Texas, Dallas Division.

"**Bankruptcy Court Approval Date**" means the date on which the Bankruptcy Court Order is issued.

"**Bankruptcy Court Order**" means an order of the Bankruptcy Court approving the allowance of the HMIT's Class 10 Interest as provided in this Agreement pursuant to the 9019 Motion.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure.

"**Business Day**" means any day other than (i) a Saturday or a Sunday, (ii) a day on which the Federal Reserve Bank of New York or the New York Stock Exchange is closed, or (iii) a day on which banks in the States of Texas are required, or authorized by law, to close.

"**Claimant Trust Agreement**" means that certain Claimant Trust Agreement of the Claimant Trust (as may have been or may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), effective as of August 11, 2021, by and among Highland, as settlor, James P. Seery, Jr., a Claimant Trustee, and Wilmington Trust, National Association, a national banking association, as Delaware trustee.

"**Claims**" means any claims, debts, liabilities, demands, obligations, breaches of contract, breaches of duty or any relationship, misfeasance, malfeasance, promises, acts, omissions, agreements, liens, losses, costs and expenses (including attorney's fees and related costs), damages, injuries, suits, Actions, and causes of action of whatever kind or nature, whenever and however, arising, whether known or unknown, suspected or unsuspected, matured or unmatured, liquidated or unliquidated, contingent or fixed, at law or in equity, statutory or otherwise.

"**Class 10**" means the class of Claims or Equity Interests described in Article II. Section H.10. of the Plan.

"**Class 11**" means the class of Claims or Equity Interests described in Article II. Section H.11. of the Plan.

"**Committee**" means the official committee of unsecured creditors appointed in the Bankruptcy Case.

"**Confirmation Order**" means that certain *Order Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (ii) Granting Related Relief* [Docket No. 1943], as conformed in accordance with the Fifth Circuit's rulings.

"**Dugaboy Note**" means that certain Promissory Note dated May 31, 2017, in the original face amount of $24,268,621.69, from The Dugaboy Investment Trust, as Maker, and Highland Capital Management, L.P. and The Get Good Non-Exempt Trust, collectively as Payee.

001199

HCMLPHMIT00000348

"**Final Court Approval Date**" means the date on which the Bankruptcy Court Order becomes a Final Order.

"**Final Order**" means an order or judgment of the Bankruptcy Court, which is in full force and effect, and as to which the time to appeal, petition for certiorari, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, new trial, reargument, or rehearing shall have been waived in writing in form and substance satisfactory to the Highland Entities, as applicable, or, in the event that an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order of the Bankruptcy Court shall have been determined by the highest court to which such order was appealed, or certiorari, new trial, reargument or rehearing shall have been denied and the time to take any further appeal, petition for certiorari, or move for a new trial, reargument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be Filed with respect to such order shall not preclude such order from being a Final Order.

"**Gatekeeper**" means the gatekeeping provision contained in Article IX. F of the Plan as of August 11, 2021.

"**Governmental Authority**" means any federal, provincial, state, local or foreign government or political subdivision thereof, court of competent jurisdiction, administrative agency, judicial or arbitral body, or commission or other governmental or regulatory authority or instrumentality.

"**Highland Released Parties**" means collectively (i) the Highland Entities, (ii) any Affiliate of any Highland Entity and any Person directly or indirectly majority-owned by any Highland Entity or any of their respective Affiliates, (iii) any Person directly or indirectly managed by any Highland Entity or any of their respective Affiliates, whether by contract or otherwise (the entities described in clauses (i)-(iii), collectively, the "**Highland Parties**"), (iv) each of the Highland Parties' current and former trustees and administrators (including the trustees of any of the Claimant Trust, the Litigation Sub-Trust, or the Indemnity Trust), officers, executives, agents, directors, advisors, advisory representatives, consultants, administrators, managers, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns, (v) the current and former members of the Oversight Board of the Claimant Trust in any capacity (including Richard Katz) and their Affiliates, (vi) Farallon Capital Management, LLC, Stonehill Capital Management, LLC, Muck Holdings LLC, and Jessup Holdings LLC, in each case, in any capacity, (vii) the Independent Board and its members John Dubel, James P. Seery, Jr., and Russell Nelms, (viii) James P. Seery, Jr., individually and in all capacities for any Highland Released Party, including as Chief Executive Officer of Highland Capital Management, L.P., Claimant Trustee of the Claimant Trust, and the Indemnity Trust Administrator of the Indemnity Trust, (ix) Marc S. Kirschner, individually and as Trustee of the Litigation Sub-Trust, (x) the Committee and each of its members, (xi) the professionals (and their respective firms) (a) retained by Highland or the Committee during the Bankruptcy Case or which provided services to Highland or the Committee during the Bankruptcy Case or (b) retained by any Highland Released Party on or after August 11, 2021, (xii) any Person indemnified by any

3

001200

HCMLPHMIT00000349

Highland Party (the Persons described in clauses (i)-(xii), collectively, the "**Highland Covered Parties**"), and (xii) each Highland Covered Party's current and former officers, executives, agents, attorneys (and their respective firms), directors, advisors, consultants, administrators, managers, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns, if not otherwise included in the defined term "Highland Covered Parties;" provided, however, and for the avoidance of doubt, and without in any way limiting the scope of the foregoing, "Highland Covered Parties" shall include Highland CLO Funding, Ltd., Highland HCF Advisor, Ltd., Highland Multi Strategy Credit Fund, L.P., Highland Multi Strategy Credit Fund GP, L.P., Highland Multi Strategy Credit GP, LLC, Highland Multi Strategy Credit Fund, Ltd., Highland Select Equity Master Fund, L.P., Highland Select Equity Fund GP, L.P., Highland Select Equity Fund, L.P., Highland Restoration Capital Partners Master, L.P., Highland Restoration Capital Partners GP, LLC, Highland Restoration Capital Partners, L.P., Highland Restoration Capital Partners Offshore, L.P., Highland Offshore Director, LLC, Acis CLO Management, LLC, Neutra, Ltd., Pollack, Ltd., Acis CLO Management Holdings, L.P., Acis CLO Management Intermediate Holdings I, LLC, Acis CLO Management Intermediate Holdings II, LLC, Acis CLO Assets Holdings Limited, CHG Houston Holdings, LLC, Penant Management, L.P., Penant Management GP, LLC, Gunwale, LLC, HE Capital, LLC, Gleneagles CLO, Ltd., Aberdeen Loan Funding, Ltd. Highland Argentina Regional Opportunity Fund GP, LLC, Highland Argentina Regional Opportunity Fund, L.P., Highland Argentina Regional Opportunity Fund, Ltd., Highland Argentina Regional Opportunity Master Fund, L.P., Highland Latin America Consulting, Ltd., Highland Capital Management Korea Limited, Highland Capital Management Latin America, L.P., Highland Latin America GP, Ltd., Highland Latin America LP, Ltd., Highland Offshore Partners, L.P. (Diversified), Brentwood CLO, Ltd., Eastland CLO, Ltd., Bristol Bay Funding Ltd., Jasper CLO Ltd., Highland Legacy Limited, Grayson CLO, Ltd., Greenbriar CLO, Ltd., Highland Loan Funding V Ltd., Highland Park CDO I, Ltd., Liberty CLO, Ltd., Valhalla CLO, Ltd., Stratford CLO Ltd., Southfork CLO, Ltd., Pam Capital Funding, L.P., Stonebridge-Highland Healthcare Private Equity Fund, Pamco Cayman Ltd., Red River CLO, Ltd., Rockwall CDO II Ltd., Rockwall CDO, Ltd., Westchester CLO, Ltd. Longhorn Credit Funding, LLC, PensionDanmark Pensionsforsikringsaktieselskab, Highland Dynamic Income Master Fund L.P., Highland Dynamic Income Fund GP, LLC, Highland Dynamic Income Fund, L.P., Highland Dynamic Income Fund, Ltd., Highland JHT Holdings, LLC, Highland Prometheus Master Fund, L.P., Highland Prometheus Feeder Fund I, L.P., Highland Prometheus Feeder Fund II, L.P., Highland Sunbridge GP, LLC, Trussway Holdings, LLC, Trussway Industries, LLC, TW Company, Inc., T-Way Investments, LLC, SSP Holdings, LLC, Highland Flexible Income UCITS Fund, and Acis CLO 2017-7, Ltd. *Notwithstanding the forgoing or anything herein to the contrary*, none of "Highland Released Parties", "Highland Parties", nor "Highland Covered Parties" shall include James Dondero, Scott Ellington, Isaac Leventon, or any Person directly or indirectly owned as of the date hereof (in whole or in part) by, and/or Affiliated as of the date hereof with, or claiming through, under or on behalf of, any of Mr. Dondero, Mr. Ellington, or Mr. Leventon in any manner and none of such Persons are released from any Claim by any Person in connection with this Agreement.

"**HMIT Class 10 Interest**" means the unvested, contingent Class 10 interest in the Claimant Trust (a) to be allowed on account of HMIT's pre-petition equity interest in Highland, and (b) subject to the terms and conditions, as applicable, of the Plan, the Plan Documents, the Claimant Trust Agreement, and in accordance with this Agreement, and applicable law.

001201

HCMLPHMIT00000350

"**HMIT Note**" means that certain Secured Promissory Note dated December 21, 2015, in the original face amount of $63,000,000 from HMIT, as maker, and Highland, as payee.

"**HMIT Note Claims**" means any Claim related to, in connection with or arising out of the HMIT Note.

"**HMIT Released Parties**" means collectively (i) the HMIT Entities, (ii) any Affiliate of any HMIT Entity and any Person directly or indirectly majority owned by any HMIT Entity or any of their respective Affiliates, (iii) any Person directly or indirectly managed by any HMIT Entity or any of their respective Affiliates, whether by contract or otherwise (the entities described in clauses (i) – (iii), collectively, the "**HMIT Parties**"), (iv) each of the HMIT Parties' current and former trustees, administrators, officer, executives, agents, directors, advisors, consultants, manager, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns (v) the professionals (and their respective firms (a) retained by any HMIT Party during the Bankruptcy Case or which provided services to any HMIT Party during the Bankruptcy Case or (b) retained by any HMIT Released Party on or after August 11, 2021, (vi) any Person indemnified by any HMIT Party (the Persons described in clauses (i) – (vi), collectively, the "**HMIT Covered Parties**"), and (vii) each HMIT Covered Party's current and former officers, executives, agents, directors, advisors, consultants, administrators, managers, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns, if not otherwise included in the defined term "HMIT Covered Parties." *Notwithstanding the forgoing*, none of "HMIT Released Parties", "HMIT Parties", nor "HMIT Covered Parties" shall include James Dondero, Scott Ellington, Isaac Leventon, or any Person directly or indirectly owned as of the date hereof (in whole or in part) by, and/or Affiliated as of the date hereof with, or claiming through, under or on behalf of, any of Mr. Dondero, Mr. Ellington, or Mr. Leventon in any manner, and none of such Persons are released from any Claims by any Person in connection with this Agreement.

"**Indemnity Trust Administrator**" has the meaning given to it in the Indemnity Trust Agreement.

"**Indemnity Trust Agreement**" means that certain *Second Amended and Restated Indemnity Trust Agreement of the Indemnity Trust* (as may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), effective as of [April 28], 2025, by and among the Claimant Trust, as grantor, James P. Seery, Jr., as indemnity trust administrator, and Wilmington Trust, National Association, a national banking association, as indemnity trustee and Delaware trustee.

"**Indemnity Trust Assets**" has the meaning set forth in the Indemnity Trust Agreement, but excluding Highland, the Claimant Trust, and their respective assets.

"**Independent Board**" means the independent board appointed by the Bankruptcy Court on January 9, 2020, pursuant to that certain *Order Approving Settlement with Official Committee of Unsecured Creditors Regarding Governance of the Debtor and Procedures for Operations in the Ordinary Course* [Docket No. 339].

001202

HCMLPHMIT00000351

"**Kirschner Claims**" means all Claims and causes of action that were asserted or could have been asserted by the Litigation Trustee of the Litigation Sub-Trust, in the Amended Complaint.

"**Liability**" means any liability, debt, obligation, loss, damage, claim, cost or expense (including costs of investigation and defense and attorney's fees, costs and expenses), in each case, whether direct or indirect, whether accrued or contingent, whether or not involving a third-party claim, and including incidental and consequential damages and diminution of value.

"**Litigation Protections**" means, individually and collectively, the rights, duties, and obligations set forth in <u>Sections 1 – 2</u> and <u>Sections 9 - 16</u>.

"**Litigation Sub-Trust**" means the Highland Litigation Sub-Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act.

"**Litigation Sub-Trust Agreement**" means that certain Litigation Sub-Trust Agreement of the Litigation Sub-Trust (as may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), effective as of August 16, 2021, by and among James P. Seery, Jr., as Claimant Trustee of the Claimant Trust, Wilmington Trust, National Association, a national banking association, as Delaware Trustee, and the Litigation Trustee.

"**Litigation Trustee**" means Marc S. Kirschner, as Litigation Trustee of the Litigation Sub-Trust.

"**LPA**" means that certain *Sixth Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P.* (as may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), dated as of October 4, 2021.

"**Operating Expenses**" means, except for the expenses of the Indemnity Trust (including any payments to Trust Indemnified Parties or Indemnified Parties (in each case, as defined, and pursuant to the terms and conditions set forth, in the Indemnity Trust Agreement)), the expenses of operating and administering the Highland Entities, including legal expenses, employee compensation, Claimant Trustee/CEO and other trust and trustee related compensation, incentive compensation, and customary general and administrative expenses.

"**Original Plan**" means that certain *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* attached as Exhibit A to the *Order (A) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as modified) and (B) Granting Related Relief*, filed at Docket No. 1943 on the Bankruptcy Court's docket.

"**Oversight Board**" means the oversight board of the Highland Claimant Trust.

"**Pending Litigation**" means (i) *Hunter Mountain Investment Trust v. Highland Cap. Mgmt., L.P.*, Case No. 3:23-cv-02071-E (N.D. Tex.), on remand to the Bankruptcy Court (including *Hunter Mountain Investment Trust's Emergency Motion for Leave to File Adversary Proceeding* filed at Bankruptcy Court Docket No. 3699 and all proceedings, decisions, and orders relating there); (ii) *Dugaboy Investment Trust v. Highland Cap. Mgmt, L.P.*, 3:24-cv-01531-X

6

001203

HCMLPHMIT00000352

(N.D. Tex.) (only as to HMIT), and (iii) *Hunter Mountain Investment Trust v. Highland Cap. Mgmt., L.P.*, Case No. 3:24-cv-01786-L (N.D. Tex.).

"**Permitted Investments**" has the meaning set forth in the Indemnity Trust Agreement.

"**Person**" means any natural person, partnership, limited liability partnership, corporation, limited liability company, association, joint stock company, trust, estate, joint venture, unincorporated organization or Governmental Authority.

"**Plan**" means that certain *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* as conformed in accordance with the Fifth Circuit's rulings.

"**Plan Documents**" has the meaning given to it in the Plan.

"**Plan Protections**" means, collectively, the provisions of the Plan contained in Article IX thereof.

"**Pro Rata**" means the proportion that (a) the allowed amount of a particular Claim or Equity Interest in Class 10 bears to (b) the aggregate allowed amount of all Claims or Equity Interests in Class 10.

"**Threats**" means any written threats of legal action, legal demands, filed complaints, petitions for pre-suit discovery, suits, litigations, arbitrations, actual or threated restraining orders or injunctions made in writing, or similar written actions of any kind, or sworn statements evidencing the same, in any forum against any Trust Indemnified Parties or Indemnified Party (both as defined in the Indemnity Trust Agreement), excluding any such action that would otherwise be a Threat except that any applicable statute of limitations that could be applicable to such action has expired.

"**Threats Notice**" means the written notice of any Threats received by the Indemnity Trust with respect to any Trust Indemnified Parties or Indemnified Party (both as defined in the Indemnity Trust Agreement), that is hereby required to be provided by the Indemnity Trust to the HMIT Entities, within five (5) Business Days after receipt of such Threat.

## RECITALS

**WHEREAS**, as of the Petition Date, HMIT held Class B and Class C Limited Partnerships Interests in Highland;

**WHEREAS**, on December 21, 2015, HMIT entered into the HMIT Note with Highland, which had a total outstanding principal balance of Fifty-Seven Million Six Hundred Ninety Thousand Six Hundred Forty and 95/100 Dollars ($57,690,640.95) as of the Petition Date (the "**HMIT Note Balance**");

**WHEREAS**, HMIT's Class B and Class C Limited Partnership Interests in Highland were extinguished on August 11, 2021, in accordance with the Plan;

001204
HCMLPHMIT00000353

**WHEREAS**, pursuant to the LPA, HMIT's capital account balance at Highland on account of its Class B and Class C Limited Partnership Interests on the Petition Date was Three Hundred Ninety-Four Million Six Hundred Thirty Thousand Eight Hundred Seventy-One and 53/100 Dollars ($394,630,871.53) (the "**HMIT Capital Account Balance**");

**WHEREAS**, some or all of the HMIT Entities have asserted certain Claims against certain Highland Entities and certain other Highland Covered Parties, including those asserted in the Pending Litigation;

**WHEREAS**, certain distributions to be made to the holders of allowed Class 10 Claims or Equity Interests pursuant to the terms and subject to the conditions set forth herein are premised on the consent of certain Highland Covered Parties in their capacity as Holders of Class 9 Interests, and such Persons are only willing to provide such consent in exchange for the releases as set forth in this Agreement;

**WHEREAS**, some or all of the Highland Entities have asserted certain Claims against certain HMIT Entities, including the HMIT Note Claims;

**WHEREAS**, the Parties wish to terminate, extinguish, and release any and all rights, duties, obligations and Claims that (a) any of the Highland Released Parties owed or have, or may have owed or have, to or with respect to any of the HMIT Released Parties, and (b) any of the HMIT Released Parties owed or have, or may have owed or have, to or with respect to any of the Highland Released Parties, as provided in this Agreement (collectively, the "**Rights and Obligations**");

**WHEREAS**, the Parties agree that the Litigation Protections are intended to enact a permanent cessation of all litigation concerning or related to the Highland Released Parties through and including the Agreement Date; and

**WHEREAS**, the Parties, individually and collectively, wish to (a) resolve all disputes between and/or among any of the Highland Entities and their respective indemnitees, on the one hand, and any of the HMIT Entities, on the other hand, including those asserted or attempted to be asserted in the Pending Litigation, (b) fix and allow HMIT's Class 10 Interest at the amount and on the terms provided herein; and (c) terminate, extinguish, and release all Rights and Obligations on the terms provided herein.

**NOW THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree as follows:

## AGREEMENT

1.    Stay and Dismissal of Pending Litigation With Prejudice.

(a)    Within five (5) Business Days after the Agreement Date, the HMIT Entities shall take all steps necessary (at their own cost) to stay the Pending Litigation.

001205
HCMLPHMIT00000354

(b)    Within five (5) Business Days after the Bankruptcy Court Approval Date, the HMIT Entities shall take all steps necessary (at their own cost) to dismiss the Pending Litigation with prejudice.

2.    <u>Maintenance of Stay and Dismissal of Certain Defendants from the Amended Complaint</u>.

(a)    The Litigation Trustee shall continue to maintain the stay of Adv. Proc. No. 21-03076-sgj and all related proceedings arising therefrom through the Bankruptcy Court Approval Date. Within five (5) Business Days after the Bankruptcy Court Approval Date, the Litigation Sub-Trust shall take all steps necessary (at its own cost) to dismiss, with prejudice, HMIT and Rand PE from Counts I, II, III, and XXIV of the Amended Complaint.

3.    <u>Cash Payment to HMIT</u>.  Within five (5) Business Days following the Bankruptcy Court Approval Date, Highland shall pay HMIT a one-time, lump sum of Five Hundred Thousand Dollars (US$500,000.00) (the "**Payment**") by wire transfer:

Hunter Mountain Investment Trust
C/o CLO Holdco, LLC
Hancock Whitney
Account # - 071173413
Routing # - 113000968
(469) 604-0955

4.    <u>HMIT Class 10 Interest</u>.

(a)    Subject to entry of the Bankruptcy Court Order, and the terms of this Agreement, the HMIT Class 10 Interest shall be deemed allowed in the amount of Three Hundred Thirty-Six Million Nine Hundred Forty Thousand Two Hundred Thirty and 58/100 Dollars (US$336,940,230.58), which amount represents the HMIT Capital Account Balance, <u>less</u> the HMIT Note Balance.

(b)    Notwithstanding anything to the contrary in the Plan or the Claimant Trust Agreement, as an integral part of this Agreement to consent to the allowance of the HMIT Class 10 Interest and the other considerations in this Agreement, HMIT shall not be deemed, and no holder of the HMIT Class 10 Interest shall be, a Claimant Trust Beneficiary or a "Beneficiary" under the Claimant Trust Agreement, and the Highland Released Parties, individually and collectively, shall owe no duty to any HMIT Releasor (whether contractual, fiduciary, equitable, statutory or otherwise), including with respect to the HMIT Class 10 Interest, in each case, except as expressly set forth in this Agreement.  Furthermore, without limiting the foregoing and for the avoidance of doubt, the contractual right of the holder of the HMIT Class 10 Interest to receive or recover any payments or Indemnity Trust Assets from the Indemnity Trust as set forth in this Agreement or the Indemnity Trust Agreement does not make any HMIT Releasor or any other Person a beneficiary of the Indemnity Trust or under the Indemnity Trust Agreement.

(c)    Notwithstanding anything to the contrary in the Plan, the Claimant Trust Agreement or the Indemnity Trust Agreement, in no event shall HMIT sell, transfer, assign, pledge, hypothecate, participate or otherwise dispose of or encumber the HMIT Class 10 Interest

9

HCMLPHMIT00000355

or any rights (including any right to payment) with respect thereto (collectively, a "**Class 10 Assignment**"), and any attempted Class 10 Assignment shall be null and void.

(d)      For the avoidance of doubt, the HMIT Class 10 Interest is and shall remain senior to the not yet allowed, unvested contingent Class 11 Claims of Equity Interests as provided for in the Plan, the Plan Documents, and the Claimant Trust Agreement.

5.      Initial Interim Distributions on the Allowed Class 10 Interests.

(a)      Within five (5) Business Days after the Bankruptcy Court Approval Date, the Indemnity Trust shall distribute (the date on which such distribution is made, the "**Initial Interim Distribution Date**") Pro Rata to the Holders of allowed Class 10 Claims or Equity Interests cash in the aggregate amount of Ten Million Dollars (US$10,000,000.00) (the "**Initial Interim Cash Distribution Amount**"), by means of wire transfer with the Pro Rata portion in respect of the HMIT Class 10 Interest sent to the wire instructions contained in Section 3 ("**Wire Transfer**").

(b)      Within five (5) Business Days after the Bankruptcy Court Approval Date (the "**Note Assignment Date**"), the Highland Entities shall cause the portion of the Dugaboy Note held by the Highland Entities to be distributed to HMIT in-kind and take all actions necessary for HMIT to become the holder of such portion of the Dugaboy Note, and shall in addition pay to HMIT cash in the aggregate amount of all principal and interest payments actually received on the Dugaboy Note by the Highland Entities, including the Indemnity Trust, from the Agreement Date to the Note Assignment Date.  Prior to the Bankruptcy Court Approval Date, HMIT will engage an independent valuation service provider to value the Dugaboy Note for purposes of determining the magnitude of reduction to the outstanding allowed Class 10 Interests on account of such in-kind distribution, which shall not be less than Fifty percent (50%) of the current balance owed under the Dugaboy Note. The HMIT Entities acknowledge and agree that none of the Highland Entities are representing or warranting that the Dugaboy Note can be sold, or the price, if any, that could be received for the Dugaboy Note and further acknowledge and agree that any such purchase price may be de minimis.

6.      Subsequent Distribution(s) on the Allowed Class 10 Interests.

(a)      On December 1, 2027, the Indemnity Trust shall distribute (such distribution, collectively, the "**First Subsequent Distribution**", and the date on which such Subsequent Distribution is made, the "**First Subsequent Distribution Date**") Pro Rata to the Holders of allowed Class 10 Claims or Equity Interests: cash in the aggregate amount of Six Million Five Hundred Thousand Dollars (US$6,500,000.00), by Wire Transfer.

(b)      On December 1, 2028, the Indemnity Trust shall distribute (such distribution, collectively, the "**Second Subsequent Distribution**", and the date on which such Subsequent Distribution is made, the "**Second Subsequent Distribution Date**") Pro Rata to the Holders of allowed Class 10 Claims or Equity Interests cash in the aggregate amount of Six Million Five Hundred Thousand Dollars (US$6,500,000.00) by Wire Transfer.

(c)      Notwithstanding anything herein to the contrary, the obligations of the Indemnity Trust to make the First Subsequent Distribution or Second Subsequent Distribution is

001207

HCMLPHMIT00000356

subject in all respects to (i) there being no Threats and (ii) a determination in accordance with Article VIII, Section 8.1(c) of the Indemnity Trust Agreement that the Indemnity Trust Assets comprising such distributions are not reasonably necessary to satisfy current or potential Indemnification Obligations (as defined in the Indemnity Trust Agreement) to all persons who are or might become Beneficiaries (as defined in the Indemnity Trust Agreement).

    7.    <u>Final Distribution on the Allowed Class 10 Interests</u>.

    (a)    On the later of the Final Court Approval Date and April 1, 2029, the Indemnity Trust will distribute all excess remaining Indemnity Trust Assets in accordance with Article VIII of the Indemnity Trust Agreement; <u>provided</u>, <u>however</u>, that the obligation of the Indemnity Trust to make any such distributions and/or dissolve and wind up the affairs of the Indemnity Trust is subject in all respects to (i) there being no Threats and (ii) a determination in accordance with Article VIII of the Indemnity Trust Agreement that (1) a Final Order(s) (as defined in the Indemnity Trust Agreement) has been entered resolving all litigation, claims or proceedings in any forum of any kind which could give rise to Indemnity Obligations (as defined in the Indemnity Trust Agreement) and payment in full of all such Indemnity Obligations and (2) all applicable statutes of limitations and any applicable tolling of such statutes of limitation have expired.

    (b)    The Indemnity Trust agrees to not use Indemnity Trust Assets to fund Operating Expenses.

    (c)    Following the Bankruptcy Court Approval Date, at the request of Mark Patrick, solely in his capacity, and to the extent he remains, as administrator of HMIT, but not more often than quarterly, Highland and the Indemnity Trust Administrator agree to review (i) the status of their respective assets, (ii) the balance of cash held, (iii) the status of any claims made for indemnification and any resolutions thereof, (iv) the status of any litigation, and (v) forecasted operating expenses with Mr. Patrick, and will each work in good faith to reduce operating expenses where reasonably practicable; provided, however, that all such reporting shall be subject to Mr. Patrick's agreement to maintain confidentiality with respect to any non-public information.

    8.    <u>Transfer Kirschner Claims; Dismissal of HMIT Note Claims</u>.

    (a)    Within five (5) Business Days after the Bankruptcy Court Approval Date, but after the dismissal provided for in <u>Section 2</u>, the Litigation Sub-Trust shall execute a short-form assignment in in favor of the HMIT Entities transferring all of the Litigation Sub-Trust's right, title, and interest in and to the Kirschner Claims (the "**Kirschner Transfer**"). Such assignment shall be in a form mutually acceptable to the Parties and its substance shall be consistent with the terms, conditions and limitations set forth in this Agreement, including <u>Section 8(b)</u> below. Each HMIT Entity acknowledges and agrees that none of the Highland Entities will have any duty or obligation to assist the HMIT Entities in any way with respect to the Kirschner Claims, including the prosecution thereof, except as provided in this Agreement, including the terms of <u>Section 8(c)</u> below.

    (b)    THE HMIT ENTITIES SPECIFICALLY ACKNOWLEDGE AND AGREE THAT THE LITIGATION SUB-TRUST IS TRANSFERRING THE KIRSCHNER

001208
HCMLPHMIT00000357

CLAIMS ON AN "AS IS AND WITH ALL FAULTS" BASIS AND THAT THE HMIT ENTITIES ARE NOT RELYING ON ANY REPRESENTATIONS OR WARRANTIES OF ANY KIND WHATSOEVER, EXPRESS OR IMPLIED, FROM THE HIGHLAND ENTITIES OR THEIR REPRESENTATIVES AS TO ANY MATTERS CONCERNING THE KIRSCHNER CLAIMS AND AMENDED COMPLAINT, INCLUDING WITH RESPECT TO THE ENFORCEABILITY, TRANSFERABILITY, VIABILITY, STRENGTH, OR VALUE OF ANY OF THE KIRSCHNER CLAIMS OR THE AMENDED COMPLAINT. The HMIT Entities hereby specifically acknowledge that they have carefully reviewed this Section and have had the opportunity to discuss its import with legal counsel and that the provisions of this Section are a material part of this Agreement. Thus, if for any reason HMIT is precluded from or is otherwise unable to prosecute all or any of the Kirschner Claims, (i) the HMIT Releasors shall have no recourse against any Highland Released Parties whatsoever and shall not be entitled to compensation of any kind, it being agreed that the HMIT Entities are otherwise receiving adequate consideration for the duties and obligations they are undertaking pursuant to this Agreement and (ii) there will be no effect whatsoever on the validity and enforceability of this Agreement or any of the other transactions contemplated hereby.

(c)     As promptly as reasonably practicable following the Bankruptcy Court Approval Date, the Highland Entities shall provide to the HMIT Entities electronic copies of written discovery requests and responses thereto, and documents produced in discovery in respect of the Kirschner Claims and the Amended Complaint. The Highland Entities will not provide any other documents regarding the Kirschner Claims including any attorney-client communications and any documents subject to the attorney work-product doctrine or similar privileges or immunities concerning the Kirschner Claims (collectively, the "**Kirschner Privileges**"), it being understood and agreed that the Highland Entities are retaining, and not transferring or waiving, the Kirschner Privileges.

(d)     Each Party acknowledges and agrees that if (i) the Kirschner Transfer is found or deemed to be impermissible or invalid, for any reason, or (ii) any HMIT Entity materially breaches this Agreement, the Kirschner Claims and Amended Complaint will revert to, and remain an asset of, the Litigation Sub-Trust.

9.     <u>General Release By The HMIT Entities</u>. On the Bankruptcy Court Approval Date, and to the maximum extent permitted by law, each of the HMIT Entities, on behalf of itself and each of its respective Affiliates (including Affiliated and/or managed funds, accounts and other investment vehicles) and its and their respective current and former advisors, consultants, administrators, trustees, directors, officers, managers, executives, members, partners (including limited and general partners), employees, beneficiaries, direct and indirect shareholders and other equity holders, agents, participants, direct and indirect subsidiaries and parents, successors, predecessors, designees, and assigns (whether by operation of law or otherwise) and all Persons claiming through, under or on their behalf (collectively with the HMIT Entities, the "**HMIT Releasors**") hereby forever, finally, fully, unconditionally, and completely releases, relieves, acquits, discharges, remises, and exonerates each Highland Released Party from, and waives and relinquishes, any and all Claims, which the HMIT Releasors, or any Person claiming through, under, or on behalf of any of the HMIT Releasors, ever had, now has, or hereafter can, shall, or may have against any of the Highland Released Parties by reason of, arising from, relating to, or in connection with, any fact, matter, or transaction that occurred prior to the Agreement Date,

001209
HCMLPHMIT00000358

including any fact, matter, transaction, or occurrence asserted by any HMIT Entity in the Pending Litigation or in connection with, relating to, or with respect to the Bankruptcy Case, the management or operation of any of the Highland Released Parties, or the Highland Released Parties' property and including any defense, affirmative defenses, and right to setoff arising out of, or otherwise related to, any of the foregoing (collectively, the "**HMIT Entity Released Claims**").

10. <u>General Release By The Highland Entities</u>. On the Bankruptcy Court Approval Date, and to the maximum extent permitted by law, each of the Highland Entities, on behalf of itself and each of its respective Affiliates (including Affiliated and/or managed funds, accounts and other investment vehicles) and its or their respective current and former advisors, consultants, administrators, trustees, directors, officers, managers, executives, members, partners (including limited and general partners), employees, beneficiaries, direct and indirect shareholders and other equity holders, agents, participants, direct and indirect subsidiaries and parents, successors, predecessors, designees, and assigns (whether by operation of law or otherwise) and all Persons claiming through, under or on their behalf (collectively with the Highland Entities, the "**Highland Releasors**") hereby forever, finally, fully, unconditionally, and completely releases, relieves, acquits, discharges, remises, and exonerates each HMIT Released Party from, and waives and relinquishes, any and all Claims which the Highland Releasors, or any Person claiming through, under, or on behalf of any of the Highland Releasors, ever had, now has, or hereafter can, shall, or may have against any of the HMIT Released Parties by reason of, arising from, relating to, or in connection with, any fact, matter, or transaction that occurred prior to the Bankruptcy Court Approval Date, including any fact, matter, transaction, or occurrence in connection with, relating to, or with respect to the Bankruptcy Case, the management or operation of any of the HMIT Released Parties, or the HMIT Released Parties' property and including any defense, affirmative defenses, and right to setoff arising out of, or otherwise related to, any of the foregoing (collectively, the "**Highland Released Claims**").

11. <u>Further Provisions Concerning The General Releases</u>.

(a) **FOR THE AVOIDANCE OF DOUBT, THE FOREGOING RELEASES ARE INTENDED TO BE GENERAL AND INCLUDE A RELEASE OF ALL RELEASED CLAIMS, WHETHER KNOWN OR UNKNOWN, SUSPECTED OR UNSUSPECTED, ARISING OR EXISTING FROM THE BEGINNING OF TIME THROUGH AND INCLUDING THE AGREEMENT DATE.**

(b) To the maximum extent permitted by law, each of the HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, waives the benefit of any statute or other principle of law or equity that limits the applicability of a release with respect to Claims that the releasing party does not know or suspect to exist in his, her or its favor at the time of executing the release.

(c) Without limiting the scope of the foregoing waiver, in connection with the foregoing release, each of the HMIT Entities and the Highland Entities, on its own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, waives the benefits of Section 1542 of the California Civil Code (to the extent, if any, that Section 1542 might apply to the foregoing release), which provides as follows:

001210
HCMLPHMIT00000359

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

Each of the HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, hereby agrees that the provisions of Section 1542 of the Civil Code of the State of California and all similar federal or state law, rights, rules or legal principles, legal or equitable, in each case solely to the extent such provisions apply, **ARE HEREBY KNOWINGLY AND VOLUNTARILY WAIVED AND RELINQUISHED BY EACH OF THE HMIT ENTITIES AND THE HIGHLAND ENTITIES, ON THEIR OWN BEHALF AND ON BEHALF OF THE OTHER HMIT RELEASORS AND HIGHLAND RELEASORS, RESPECTIVELY,** in each and every capacity, to the full extent that such rights and benefits pertaining to the matters released herein may be waived, and each of the HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, hereby agrees and acknowledges that this waiver and relinquishment is an essential term of this Agreement, without which the consideration provided would not have been given.

In connection with such waiver and relinquishment, each of the HMIT Entities and Highland Entities acknowledges that it is aware that it may hereafter discover Claims presently unknown or unsuspected, or facts in addition to or different from those which it now knows or believes to be true, with respect to the matters released herein. Nevertheless, it is the intent of each of the HMIT Entities and the Highland Entities, on its own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, in executing this Agreement fully, finally, and forever to settle and release all such matters, and all Claims related thereto, which exist, may exist or might have existed (whether or not previously or currently asserted in any action) which are the subject to the releases granted above.

(d)    As an integral component of this Agreement, and notwithstanding the Parties' intent set forth in the preamble hereto and the general nature of the releases in <u>Sections 9 and 10</u>, should:

(i)    any HMIT Releasor contend or assert that any Claim of any kind whatsoever held by any HMIT Releasor against any Highland Released Party survives this Agreement and is in any way related to or arising from or in connection with any HMIT Entity Released Claim (such claim or cause of action, a "**HMIT Alleged Claim**"), such HMIT Releasor will be deemed to have irrevocably, fully, and finally assigned such HMIT Alleged Claim to the Highland Entities and the Highland Entities will be deemed to have forever, finally, full, unconditionally, and irrevocably, and completely released such HMIT Alleged Claim.

(ii)    any Highland Releasor contend or assert that any Claim of any kind whatsoever held by any Highland Releasor against any HMIT Released Party survives this Agreement and is in any way related to or arising from or in connection with any Highland Entity Released Claim (such claim or cause of action, a "**Highland Alleged Claim**"), such Highland

14

HCMLPHMIT00000360

Releasor will be deemed to have irrevocably, fully, and finally assigned such Highland Alleged Claim to the HMIT Entities and the HMIT Entities will be deemed to have forever, finally, full, unconditionally, and irrevocably, and completely released such Highland Alleged Claim.

12.     <u>Covenant Not To Sue; Limitation on Standing</u>. Upon the Agreement Date:

(a)     Each of the HMIT Releasors covenants and agrees that it will not institute or prosecute any Action, in law, in equity or otherwise, against any of the Highland Released Parties, to recover, enforce, investigate, or collect any HMIT Entity Released Claim and will not (i) induce, encourage or direct any other Person to do so or (ii) act in concert with or assist (financially or otherwise) any other Person in doing so.

(b)     Each of the Highland Releasors covenants and agrees that it will not institute or prosecute any Action, in law, in equity or otherwise, against any of the HMIT Released Parties, to recover, enforce, investigate, or collect any Highland Entity Released Claim and will not (i) induce, encourage or direct any other Person to do so or (ii) act in concert with or assist (financially or otherwise) any other Person in doing so.

(c)     For the avoidance of doubt, this Agreement shall not operate to give any HMIT Entity standing for any purpose in connection with the Bankruptcy Case (or in connection with any appeal arising from any order entered by the Bankruptcy Court), except for the limited purpose of seeking Court approval of this Agreement (including with respect to any appeal concerning any order entered granting or denying such approval), and except for the limited purpose of enforcing this Agreement, no HMIT Entity shall commence any Action in connection with the HMIT Class 10 Interest.

13.     <u>Representations and Warranties</u>.

(a)     Each of the HMIT Entities hereby represents and warrants that every HMIT Entity Released Claim has not heretofore been assigned or encumbered and is not the subject of a transfer (as such term is defined in 11 U.S.C. § 101(54)), by any HMIT Releasor.

(b)     The HMIT Entities, on their own behalf and on behalf of the other HMIT Releasors, acknowledge and agree that each Plan Provision is lawful, effective, and binding on the HMIT Releasors.  The HMIT Entities further agree, on their own behalf and on behalf of the other HMIT Releasors, that the HMIT Releasors will never, in any way, challenge or seek to modify, nullify, vacate, or revoke, or induce, encourage or direct any other Person to do so or act in concert with or assist (financially or otherwise) any other Person in doing so the Confirmation Order, the Plan, the Plan Protections, or any Plan Document, including the Claimant Trust Agreement, the LPA, the Indemnity Trust Agreement or the Litigation Sub-Trust Agreement, in the Bankruptcy Court, in any other state or federal court, in any other forum or tribunal, or otherwise, including administrative or regulatory tribunals and foreign courts.

(c)     Each of the Highland Entities hereby represents and warrants that every Highland Entity Released Claim has not heretofore been assigned or encumbered and is not the subject of a transfer (as such term is defined in 11 U.S.C. § 101(54)), by any Highland Releasor.

001212
HCMLPHMIT00000361

(d)    Each Party severally represents and warrants as to itself only that: (i) it has taken all necessary action to authorize and approve the execution, delivery and performance of this Agreement; (ii) such Party has full power and authority to execute and deliver this Agreement; and (iii) this Agreement constitutes a valid, legal and binding obligation of such Party, and is enforceable to its terms. Each individual signatory hereto individually warrants and represents to all Parties hereto that such individual has full power and authority to act on behalf of and bind the Party for which he or she has executed this Agreement; provided, however that no signatory shall otherwise provide any warranty or representation or otherwise be a party to this Agreement on an individual basis.

14.    <u>No Continuing Rights, Duties or Obligations</u>.  Except for the rights, duties, and obligations expressly set forth in this Agreement, all Rights and Obligations that existed or may have existed shall be deemed terminated, extinguished, and released upon the Agreement Date. For the avoidance of doubt, from and after the Agreement Date, (a) the Highland Released Parties, individually and collectively, shall owe no duty, past or present, including with respect to the Kirchner Claims, to the HMIT Released Parties, individually and collectively, whether contractual, fiduciary, equitable, statutory or otherwise, except as arising out of this Agreement, and (b) the HMIT Released Parties, individually and collectively, shall owe no duty to the Highland Released Parties, individually and collectively, whether contractual, fiduciary, equitable, statutory or otherwise, except as arising out of this Agreement.

15.    <u>Gatekeeper Standard</u>.

(a)    The HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, acknowledge and agree that, notwithstanding the United States Court of Appeals for the Fifth Circuit's decision in *Highland Capital Management Fund Advisors, L.P. v. Highland Capital Management, L.P.*, No. 23-10534 (5th Cir. Mar. 18, 2025), the "Gatekeeper" provisions contained in Highland's Original Plan is forever binding on each of the HMIT Entities and any Persons claiming through, under or on behalf of any of them, and for a claim or cause of action to be  "colorable" for purposes of the Gatekeeper, it must be found by final order of the Bankruptcy Court (the "**Gatekeeper Court**"), which order shall be subject to appeal to a court of competent jurisdiction, to have satisfied the "Gatekeeper Colorability Test" as such term is defined in *In re Highland Capital Management, L.P.*, 2023 Bankr. LEXIS 2104 at \*124-36 (Bankr. N.D. Tex. Aug. 24, 2023).

(b)    The HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, acknowledge and agree that compliance with the Gatekeeper requires (i) a motion seeking leave to sue an Exculpated Party (as that term is defined in Highland's original Plan) and a finding that the litigant's claims and causes of action are "colorable" attaching a complaint setting forth the basis for such claims or causes of action and (ii), in the Gatekeeper Court's sole discretion, an evidentiary hearing (during which the Gatekeeper Court may, among other things, hear testimony and assess the credibility of any witness(es)) to determine whether a proposed claim or cause of action is "colorable."

(c)    The HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, further acknowledge

001213
HCMLPHMIT00000362

and agree that the moving party under the Gatekeeper has the burden of satisfying the "Gatekeeper Colorability Test," and that the dismissal of the Pending Litigation shall have res judicata effect.

16.  <u>Indemnification</u>.

(a)  Without in any manner limiting the available remedies for any breach of this Agreement, the HMIT Entities, severally but not jointly, agree to indemnify, defend, and hold the Highland Released Parties harmless from and against any and all Liability, that may arise or result from or on account of, or that are otherwise related or attributable to (x) any breach of this Agreement or of any representation or warranty contained in the Agreement, including the representations and warranties of any HMIT Entity set forth in <u>Section 13</u> or (y) any Actions brought or prosecuted by or on behalf of, any HMIT Releasor or that are induced, encouraged, assisted  or directed by any HMIT Releasor or brought or prosecuted in concert with any HMIT Releasor against any Highland Released Party with respect to or related to any HMIT Entity Released Claims.  Without limiting the scope of the foregoing in any manner, any HMIT Entity that breaches <u>Section 12</u> shall be liable to the Highland Released Party against whom the applicable Action has been brought or prosecuted in violation of <u>Section 12</u> for the reasonable attorneys' fees and costs incurred by such Highland Released Party in defending against or otherwise responding to such Action.  Each HMIT Entity acknowledges and agrees that the HMIT Entities are and shall be severally but not jointly liable for any Liability arising from or out of any breach of this Agreement or of any representation or warranty set forth in this Agreement.

(b)  Without in any manner limiting the available remedies for any breach of this Agreement, the Highland Entities, severally but not jointly, agree to indemnify, defend, and hold the HMIT Released Parties harmless from and against any and all Liability, that may arise or result from or on account of, or that are otherwise related or attributable to (x) any breach of this Agreement or of any representation or warranty contained in the Agreement, including the representations and warranties of any Highland Entity set forth in <u>Section 13</u> or (y) any suits, proceedings, or other actions brought or prosecuted by or on behalf of, any Highland Releasor or that are induced, encouraged, assisted  or directed by any Highland Releasor or brought or prosecuted in concert with any Highland Releasor against any HMIT Released Party with respect to or related to any Highland Entity Released Claims.  Without in any manner limiting the scope of the foregoing, any Highland Entity that breaches <u>Section 12</u> shall be liable to the HMIT Released Party against whom the applicable Action has been brought or prosecuted in violation of <u>Section 12</u> for the reasonable attorneys' fees and costs incurred by such HMIT Released Party in defending against or otherwise responding to such Action.  Each Highland Entity acknowledges and agrees that the Highland Entities are and shall be severally but not jointly liable for any Liability arising from or out of any breach of this Agreement or of any representation or warranty set forth in this Agreement.

17.  <u>Execution</u>.  This Agreement may be executed by the exchange of signatures by facsimile or by PDF attachment to an email transmittal and in counterparts, and if so executed, shall be fully executed when a counterpart has been executed and delivered by all Parties hereto through counsel.  All counterparts taken together shall constitute one and the same agreement and shall be fully enforceable as such.

001214

HCMLPHMIT00000363

18.    <u>Bankruptcy Court Order</u>.  The allowance of the allowed HMIT Class 10 Interest pursuant to <u>Section 4</u> is subject to the entry of the Bankruptcy Court Order.  To that end, the Highland Entities shall file the 9019 Motion no later than five (5) Business Days after the Agreement Date.  Each Party shall, and shall cause each of their respective Affiliates to, undertake any and all actions in compliance with applicable law to obtain the Bankruptcy Court Order as promptly as practicable, and without limiting the foregoing, if an Action is threatened or instituted by any Person opposing the 9019 Motion or otherwise challenging the validity or legality, or seeking to restrain the consummation, of the transactions contemplated by this Agreement or the Bankruptcy Court Order, each Party shall, and shall cause its respective Affiliates to, use their commercially reasonable best efforts to avoid, resist, resolve or, if necessary, and defend to effectuate this Agreement and consummate the transactions hereby.  If the 9019 Motion is not approved by entry of the Bankruptcy Court Order or if the Bankruptcy Court Approval is precluded from becoming a Final Order, (a) there will be no effect on, adjustment to, or impairment of, in any way, the validity and enforceability of the remainder of this Agreement, and the other transactions contemplated hereby, all of which shall remain in full force and effect and (b) each Party shall, and shall cause its respective Affiliates to, use their best efforts to seek the allowance of the HMIT Class 10 Interest in a substantially similar amount and on substantially similar terms as set forth in <u>Section 4</u> to the fullest extent possible so as to give effect to the original intent of the Parties as closely as possible.

19.    <u>Fees and Expenses</u>.  Whether or not the transactions contemplated hereby are consummated or the Bankruptcy Court Order is obtained, and except as otherwise expressly provided in this Agreement, each Party will bear its respective fees, costs and expenses (including legal, accounting and other professional fees) incurred in connection with the preparation, negotiation, execution and performance of this Agreement or the transactions contemplated hereby, including with respect to each Party's respective obligations pursuant to <u>Section 18</u>.  Notwithstanding the foregoing, if any Party hereto brings an Action to enforce or interpret the terms and provisions of this Agreement, the prevailing Party in that Action shall be entitled to have and recover from the non-prevailing Party all such fees, costs and expenses (including all court costs and reasonable attorneys' fees) as the prevailing Party may suffer or incur in the pursuit or defense of such action or proceeding.

20.    <u>Entire Agreement; No Other Representations</u>.  **THIS AGREEMENT CONTAINS THE ENTIRE AGREEMENT BETWEEN THE PARTIES, AND NO RIGHTS ARE CREATED IN FAVOR OF ANY PERSON OTHER THAN AS SPECIFIED OR EXPRESSLY SET FORTH IN THIS AGREEMENT.  THERE ARE NO REPRESENTATIONS, CONDITIONS, WARRANTIES, STATEMENTS, OR UNDERSTANDINGS (COLLECTIVELY, "<u>REPRESENTATIONS</u>"), EITHER ORAL OR WRITTEN, BETWEEN THE PARTIES OTHER THAN THOSE EXPRESSLY SET FORTH IN THIS AGREEMENT.  THE PARTIES EXPRESSLY AGREE THAT THEY HAVE NOT BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY ANY REPRESENTATIONS NOT SET FORTH IN THIS AGREEMENT; AND THE PARTIES EXPRESSLY AGREE THAT THEY HAVE NOT RELIED ON ANY REPRESENTATIONS NOT EXPRESSLY SET FORTH IN THIS AGREEMENT. THE PARTIES EXPRESSLY AGREE THAT THEY ARE ENTERING INTO THIS AGREEMENT RELYING SOLELY ON THEIR OWN JUDGMENT AND NOT ON ANY REPRESENTATIONS BY ANY PARTY, EXCEPT FOR THOSE REPRESENTATIONS**

001215

HCMLPHMIT00000364

EXPRESSLY SET FORTH IN THIS AGREEMENT. THE PARTIES AGREE THAT REPRESENTATIONS NOT EXPRESSLY SET FORTH IN THIS AGREEMENT SHALL NOT BE USED IN THE INTERPRETATION OR CONSTRUCTION OF THIS AGREEMENT, AND NEITHER THE HMIT RELEASED PARTIES NOR THE HIGHLAND RELEASED PARTIES SHALL HAVE ANY LIABILITY FOR ANY CONSEQUENCES ARISING AS A RESULT OF ANY REPRESENTATIONS NOT SET FORTH IN THIS AGREEMENT.

21.     <u>Agreement and Release Knowing and Voluntary</u>.  The Parties acknowledge that they have considered this Agreement with their respective attorneys and have carefully read this Agreement, that it has been fully explained by their attorneys, and that they have had a reasonable opportunity to consider this Agreement.  The Parties further represent that they know and fully understand the contents of this Agreement, that they intend to be legally bound by this Agreement and the releases and covenants contained herein, and that they are signing this Agreement, including the release provisions herein, voluntarily and of their own free will and without coercion, and with the benefit of advice of counsel.

22.     <u>Cooperation</u>.  The Parties agree to perform any services or actions reasonably necessary to carry out the terms and conditions of this Agreement or the transactions contemplated hereby, including the execution and delivery of reasonable additional documents, instruments, conveyances and/or assurances, in good faith, and to reasonably communicate and cooperate with one another in this regard.  For the avoidance of doubt, nothing in this Section shall obligate the Highland Entities to assist the HMIT Entities in any way with respect to the Kirschner Claims, including the prosecution thereof.

23.     <u>Governing Law</u>.  This Agreement shall be construed pursuant to and governed by the laws of the State of Delaware (substantive and procedural) without reference to principles of conflicts of law that would result in the application of any other State's laws.

24.     <u>Jurisdiction/Venue</u>.  The Parties hereby irrevocably submit to the jurisdiction and venue of the Bankruptcy Court with respect to any Action arising out of or related to this Agreement or the subject matter hereof; if (and only if) the Bankruptcy Court lacks personal or subject matter jurisdiction to adjudicate an Action arising out of or related to this Agreement or the subject matter hereof, then the Parties irrevocably submit to the jurisdiction and venue of the United States District Court for the Northern District of Texas.

25.     <u>No Admissions</u>.  All Parties acknowledge and agree that the matters set forth in this Agreement constitute the settlement and compromise of disputed Claims and that this Agreement shall not constitute the admission of any fact or liability by any of them regarding any Claim, including the Claims released hereunder, and neither the terms hereof, nor the fact of this Agreement itself, shall be evidence of any kind in any Action, other than an Action to enforce the terms of the Agreement or any instrument executed in connection herewith or any claim for damages or other relief for breach of any representation or warranty contained herein or in any instrument executed in connection herewith.

26.     <u>Other Provisions</u>.

19

HCMLPHMIT00000365

(a)    No representation, inducement, agreement, promise or understandings altering, modifying, amending, taking from or adding to, the terms and conditions hereof shall have any force or effect unless the same is in writing and validly executed by each of the Parties hereto.

(b)    The waiver by any Party of any breach of, or default under, any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach or default; provided, however, that for any such waiver to be enforceable, it shall be in writing and executed by the non-breaching Party.

(c)    The headings contained in this Agreement are for convenience only and shall in no way restrict or otherwise affect the construction of the provisions hereof.

(d)    The Parties shall each execute all documents and perform all acts necessary and proper to effectuate the terms of this Agreement.

27.    <u>Notices</u>.  All notices required or permitted to be provided hereunder shall be afforded to the respective parties to and through their counsel, and shall be transmitted simultaneously by electronic mail (with PDF attachments, as necessary) and by telefax, addressed as follows:

To the Highland Entities:

**PACHULSKI STANG ZIEHL AND JONES LLP**
Jeffrey N. Pomerantz
John A. Morris
10100 Santa Monica Boulevard
Los Angeles, California 90067-4003
310.277.6910
jpomerantz@pszjlaw.com
jmorris@pszjlaw.com

To the HMIT Entities:

**KELLY HART PITRE**
Louis M. Phillips
Amelia Hurt
301 Main Street, Suite 1600
225.381.9643
Louis.Phillips@Kellyhart.com
Amelia.Hurt@Kellyhart.com

28.    <u>Severability</u>. Should any term, provision or paragraph of this Agreement be determined to be illegal or void or of no force and effect, the balance of the Agreement shall survive.  The invalidity or unenforceability of any provision of this Agreement shall not affect the validity and enforceability of any other provision of this Agreement.

001217

HCMLPHMIT00000366

29.   <u>Interpretive Provisions</u>. Unless the express context otherwise requires: (a) the words "hereof," "herein" and "hereunder" and words of similar import, when used in this Agreement, shall refer to this Agreement as a whole and not to any particular provision of this Agreement; (b) words defined in the singular shall have a comparable meaning when used in the plural, and vice versa; (c) the words "Dollars" and "$" mean U.S. dollars; (d) references herein to a specific Section, Subsection, Recital, Schedule or Exhibit shall refer, respectively, to Sections, Subsections, Recitals, Schedules or Exhibits of this Agreement; (e) wherever the word "include," "includes" or "including" is used in this Agreement, it shall be deemed to be followed by the words ",without limitation,"; (f) references herein to any gender shall include each other gender; (g) references herein to any Person shall include such Person's heirs, executors, personal representatives, administrators, successors and assigns; provided, however, that nothing contained in this clause (g) is intended to authorize any assignment or transfer not otherwise permitted by this Agreement; (h) with respect to the determination of any period of time, the word "from" means "from and including" and the words "to" and "until" each means "to but excluding"; (i) the word "or" shall be disjunctive but not exclusive; (j) the headings contained in this Agreement are intended solely for convenience and shall not affect the rights of the Parties; and (k) if the last day for the giving of any notice or the performance of any act required or permitted under this Agreement is a day that is not a Business Day, then the time for the giving of such notice or the performance of such action shall be extended to the next succeeding Business Day.

*[Signature page follows]*

21

001218

HCMLPHMIT00000367

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first written above.

**HUNTER MOUNTAIN INVESTMENT TRUST**

By    _____

        Name:      Mark Patrick
        Title:       Administrator
        Date:       May 16, 2025

**BEACON MOUNTAIN LLC**

By    _____

        Name:      Mark Patrick
        Title:       President
        Date:       May 16, 2025

**RAND ADVISORS, LLC**

By    _____

        Name:      Mark Patrick
        Title:       President
        Date:       May 16, 2025

**RAND PE FUND I, LP**
By: Rand PE Fund Management, LLC, its General Partner

By    _____

        Name:      Mark Patrick
        Title:       President
        Date:       May 16, 2025

001219

HCMLPHMIT00000368

**RAND PE FUND MANAGEMENT, LLC**

By _____
    Name:      Mark Patrick
    Title:       President
    Date:      May 16, 2025

**ATLAS IDF, LP**
By: Atlas IDF GP, LLC, its General Partner

By _____
    Name:      Mark Patrick
    Title:       President
    Date:      May 16, 2025

**ATLAS IDF GP, LLC**

By _____
    Name:      Mark Patrick
    Title:       President
    Date:      May 16, 2025

**HIGHLAND CAPITAL MANAGEMENT, L.P.**

By _____
    Name:      James. P. Seery, Jr.
    Title:       Chief Executive Officer
    Date:      May __, 2025

SIGNATURE PAGE TO SETTLEMENT AGREEMENT & GENERAL RELEASE

001220

HCMLPHMIT00000369

# HIGHLAND CLAIMANT TRUST

By _____
    Name:    James P. Seery, Jr.
    Title:    Claimant Trustee
    Date:    May __, 2025

# HIGHLAND LITIGATION SUB-TRUST

By _____
    Name:    Marc S. Kirschner
    Title:    Litigation Trustee
    Date:    May __, 2025

# HIGHLAND INDEMNITY TRUST

By _____
    Name:    James P. Seery, Jr.
    Title:    Indemnity Trust Administrator
    Date:    May __, 2025

001221

HCMLPHMIT00000370

**EXHIBIT 3**

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**To:** "Gregory V. Demo" <GDemo@pszjlaw.com>, "John A. Morris" <jmorris@pszjlaw.com>, "Jeff Pomerantz" <jpomerantz@pszjlaw.com>
**Cc:** "Amelia L. Hurt" <Amelia.Hurt@kellyhart.com>, "Jim Shields" <jshields@shieldslegal.com>
**Subject:** Re: Settlement Agreement Executed by Mark Patrick
**Date:** Mon, 19 May 2025 16:14:16 +0000
**Importance:** Normal
**Inline-Images:** image002.jpg; image003.png; image002(1).jpg; image003(1).png

---

That is fine

Louis M. Phillips
On May 19, 2025 at 11:12:52 AM CDT, Gregory V. Demo <GDemo@pszjlaw.com> wrote:

> **EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.**
>
> ---
>
> Thank you.  Can I roll forward the dates on the signature pages to May 19?
>
> We are planning on filing a version of the settlement agreement with /s/ signatures rather than formal signatures.  We'll still have a version with actual signatures that I'll circulate once everyone is released.
>
> **Gregory V. Demo**
> Pachulski Stang Ziehl & Jones LLP
> Tel: 212.561.7730 | Cell: 312.662.3573 | Fax: 212.561.7777
> GDemo@pszjlaw.com
> vCard | Bio | LinkedIn
>
> 
>
> Los Angeles | New York | Wilmington, DE | Houston | San Francisco
>
> ---
>
> **From:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
> **Sent:** Monday, May 19, 2025 12:09 PM
> **To:** Gregory V. Demo <GDemo@pszjlaw.com>; John A. Morris <jmorris@pszjlaw.com>; Jeff Pomerantz <jpomerantz@pszjlaw.com>
> **Cc:** Amelia L. Hurt <Amelia.Hurt@kellyhart.com>; Jim Shields <jshields@shieldslegal.com>
> **Subject:** Settlement Agreement Executed by Mark Patrick
>
> Greg,
>
> Attached is the version of the Settlement Agreement executed by Mark Patrick.  You are authorized to hold in escrow, pending a written release from escrow from me.  You are also authorized to substitute the changed page attached for purposes of a final execution version.

HCMLPHMIT00000371

Louis M. Phillips
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT: 225-338-5308

*louis.phillips@kellyhart.com*
*www.kellyhart.com*

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.



001224

HCMLPHMIT00000372

**EXHIBIT 3**

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**To:** "Gregory V. Demo" <GDemo@pszjlaw.com>, "John A. Morris" <jmorris@pszjlaw.com>,
"Jeff Pomerantz" <jpomerantz@pszjlaw.com>
**Cc:** "Amelia L. Hurt" <Amelia.Hurt@kellyhart.com>, "Jim Shields"
<jshields@shieldslegal.com>
**Subject:** FW: Highland - 9019 Motion (HMIT)
**Date:** Mon, 19 May 2025 16:29:10 +0000
**Importance:** Normal
**Attachments:** 4911-7411-2063.v9_HCMLP_-_9019_Motion_(HMIT).docx; Redline_-_HCMLP_-
_9019_Motion_(HMIT)_KHH_final_responsive_version_Clean_5.19-4898-9315-1301-
v1_and_HCMLP_-_9019_Motion_(HMIT)-4911-7411-2063-v9.pdf
**Inline-Images:** image001.jpg; image003.png

---

Greg,

These changes are approved.

**Louis M. Phillips**
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT: 225-338-5308

*louis.phillips@kellyhart.com*
*www.kellyhart.com*

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18
U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the
use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually
receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the
communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225)
381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be
used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose
of marketing or recommending to any other party any transaction or other matter.

HCMLPHMIT00000373

**From:** Gregory V. Demo <GDemo@pszjlaw.com>
**Sent:** Monday, May 19, 2025 9:27 AM
**To:** Louis M. Phillips <Louis.Phillips@kellyhart.com>; Amelia L. Hurt <Amelia.Hurt@kellyhart.com>; Jim Shields <jshields@shieldslegal.com>
**Cc:** John A. Morris <jmorris@pszjlaw.com>; Jeff Pomerantz <jpomerantz@pszjlaw.com>
**Subject:** Highland - 9019 Motion (HMIT)

**EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.**

Louis,

Attached is a revised draft of the 9019 motion with a redline against what you sent this morning.  We accepted all your changes—with a few stylistic modifications—and include a few additional changes.

With John traveling, please keep me copied on future emails.

Best,
Greg

**Gregory V. Demo**
Pachulski Stang Ziehl & Jones LLP
Tel: 212.561.7730 | Cell: 312.662.3573 | Fax: 212.561.7777
GDemo@pszjlaw.com
vCard | Bio | LinkedIn



Los Angeles | New York | Wilmington, DE | Houston | San Francisco

HCMLPHMIT00000374

**EXHIBIT**

001228

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**To:** "Gregory V. Demo" <GDemo@pszjlaw.com>, "John A. Morris" <jmorris@pszjlaw.com>, "Jeff Pomerantz" <jpomerantz@pszjlaw.com>
**Cc:** "Amelia L. Hurt" <Amelia.Hurt@kellyhart.com>, "Jim Shields" <jshields@shieldslegal.com>
**Subject:** RE: Highland - 9019 Motion (HMIT)
**Date:** Mon, 19 May 2025 21:47:28 +0000
**Importance:** Normal
**Inline-Images:** image007.jpg; image008.png; image009.png; image010.png; image001.png

---

Thank you Greg.


**Louis M. Phillips**
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT: 225-338-5308

louis.phillips@kellyhart.com
www.kellyhart.com

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

---

**From:** Gregory V. Demo <GDemo@pszjlaw.com>
**Sent:** Monday, May 19, 2025 4:44 PM
**To:** Louis M. Phillips <Louis.Phillips@kellyhart.com>; John A. Morris <jmorris@pszjlaw.com>; Jeff Pomerantz <jpomerantz@pszjlaw.com>
**Cc:** Amelia L. Hurt <Amelia.Hurt@kellyhart.com>; Jim Shields <jshields@shieldslegal.com>
**Subject:** RE: Highland - 9019 Motion (HMIT)

HCMLPHMIT00000423

**EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.**

Louis,

Attached is a fully executed copy of the settlement agreement. All signatures are released.

We are filing now.

Best,
Greg

**Gregory V. Demo**
Pachulski Stang Ziehl & Jones LLP
Tel: 212.561.7730 | Cell: 312.662.3573 | Fax: 212.561.7777
GDemo@pszjlaw.com
vCard | Bio | LinkedIn



Los Angeles | New York | Wilmington, DE | Houston | San Francisco

**From:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Sent:** Monday, May 19, 2025 1:24 PM
**To:** Gregory V. Demo <GDemo@pszjlaw.com>; John A. Morris <jmorris@pszjlaw.com>; Jeff Pomerantz <jpomerantz@pszjlaw.com>
**Cc:** Amelia L. Hurt <Amelia.Hurt@kellyhart.com>; Jim Shields <jshields@shieldslegal.com>
**Subject:** RE: Highland - 9019 Motion (HMIT)

Thank you Greg.

**Louis M. Phillips**
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT: 225-338-5308

louis.phillips@kellyhart.com
www.kellyhart.com

*Licensed to Practice in the State of Louisiana*

HCMLPHMIT00000424

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

**From:** Gregory V. Demo <GDemo@pszjlaw.com>
**Sent:** Monday, May 19, 2025 12:18 PM
**To:** Louis M. Phillips <Louis.Phillips@kellyhart.com>; John A. Morris <jmorris@pszjlaw.com>; Jeff Pomerantz <jpomerantz@pszjlaw.com>
**Cc:** Amelia L. Hurt <Amelia.Hurt@kellyhart.com>; Jim Shields <jshields@shieldslegal.com>
**Subject:** RE: Highland - 9019 Motion (HMIT)

**EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.**

Louis,

Attached are the Highland Entities' signatures, which are to be held in escrow.  Once we get final sign off on the Highland side, all signatures will be released and we'll file everything per your email below.  I'll also send a fully compiled settlement agreement for your records.

Best,
Greg

**Gregory V. Demo**
Pachulski Stang Ziehl & Jones LLP
Tel: 212.561.7730 | Cell: 312.662.3573 | Fax: 212.561.7777
GDemo@pszjlaw.com
vCard | Bio | LinkedIn



Los Angeles | New York | Wilmington, DE | Houston | San Francisco

**From:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Sent:** Monday, May 19, 2025 12:45 PM
**To:** Gregory V. Demo <GDemo@pszjlaw.com>; John A. Morris <jmorris@pszjlaw.com>; Jeff Pomerantz <jpomerantz@pszjlaw.com>
**Cc:** Amelia L. Hurt <Amelia.Hurt@kellyhart.com>; Jim Shields <jshields@shieldslegal.com>
**Subject:** RE: Highland - 9019 Motion (HMIT)

Movants' counsel is authorized to file the agreed version of the 9019 Motion and to affix my electronic signature to it. Mark Patrick's signatures are released upon full execution by the signing parties after obtaining the represented required consents.  Please send me the Highland parties' signatures once received.

HCMLPHMIT00000425

And I guess you will send around a full version of the fully executed version, correct?

**Louis M. Phillips**
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

*louis.phillips@kellyhart.com*
*www.kellyhart.com*

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

---

**From:** Gregory V. Demo <GDemo@pszjlaw.com>
**Sent:** Monday, May 19, 2025 11:30 AM
**To:** Louis M. Phillips <Louis.Phillips@kellyhart.com>; John A. Morris <jmorris@pszjlaw.com>; Jeff Pomerantz <jpomerantz@pszjlaw.com>
**Cc:** Amelia L. Hurt <Amelia.Hurt@kellyhart.com>; Jim Shields <jshields@shieldslegal.com>
**Subject:** RE: Highland - 9019 Motion (HMIT)

**EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.**

---

Thank you.  Can you please confirm that we can file and that Mr. Patrick's signatures are released upon final approval on the Highland side?

**Gregory V. Demo**
Pachulski Stang Ziehl & Jones LLP
Tel: 212.561.7730 | Cell: 312.662.3573 | Fax: 212.561.7777
GDemo@pszjlaw.com
vCard | Bio | LinkedIn

001232

HCMLPHMIT00000426



Los Angeles | New York | Wilmington, DE | Houston | San Francisco

---

**From:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Sent:** Monday, May 19, 2025 12:29 PM
**To:** Gregory V. Demo <GDemo@pszjlaw.com>; John A. Morris <jmorris@pszjlaw.com>; Jeff Pomerantz
<jpomerantz@pszjlaw.com>
**Cc:** Amelia L. Hurt <Amelia.Hurt@kellyhart.com>; Jim Shields <jshields@shieldslegal.com>
**Subject:** FW: Highland - 9019 Motion (HMIT)

Greg,

These changes are approved.


**Louis M. Phillips**
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT: 225-338-5308

*louis.phillips@kellyhart.com*
*www.kellyhart.com*

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18
U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the
use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually
receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the
communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225)
381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be
used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose
of marketing or recommending to any other party any transaction or other matter.

---

**From:** Gregory V. Demo <GDemo@pszjlaw.com>
**Sent:** Monday, May 19, 2025 9:27 AM
**To:** Louis M. Phillips <Louis.Phillips@kellyhart.com>; Amelia L. Hurt <Amelia.Hurt@kellyhart.com>; Jim Shields

HCMLPHMIT00000427

<jstrasburg@sidley.com>

**Cc:** John A. Morris <jmorris@pszjlaw.com>; Jeff Pomerantz <jpomerantz@pszjlaw.com>
**Subject:** Highland - 9019 Motion (HMIT)

**EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.**

Louis,

Attached is a revised draft of the 9019 motion with a redline against what you sent this morning.  We accepted all your changes—with a few stylistic modifications—and include a few additional changes.

With John traveling, please keep me copied on future emails.

Best,
Greg

**Gregory V. Demo**
Pachulski Stang Ziehl & Jones LLP
Tel: 212.561.7730 | Cell: 312.662.3573 | Fax: 212.561.7777
GDemo@pszjlaw.com
vCard | Bio | LinkedIn



Los Angeles | New York | Wilmington, DE | Houston | San Francisco

HCMLPHMIT00000428

**EXHIBIT**

**From:** "John A. Morris" <jmorris@pszjlaw.com>
**To:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**Cc:** "Amelia L. Hurt" <Amelia.Hurt@kellyhart.com>
**Subject:** RE: Confidentiality Agreement
**Date:** Sat, 22 Mar 2025 14:13:07 +0000
**Importance:** Normal
**Inline-Images:** image001.png

---

Louis,

Can you either send a black line or confirm that the only change from the version I sent to you on Wednesday is that the reference to Dugaboy was deleted from item 3 on Exhibit A?

Thanks.

---

**From:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Sent:** Saturday, March 22, 2025 8:45 AM
**To:** John A. Morris <jmorris@pszjlaw.com>
**Cc:** Amelia L. Hurt <Amelia.Hurt@kellyhart.com>
**Subject:** Confidentiality Agreement

John,

I missed that Mark had executed a slightly revised version (word document attached), but found it last evening.  Apologies.  Please get mean executed version from Mr. Seery.  Thanks.

**Louis M. Phillips**
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

*louis.phillips@kellyhart.com*
*www.kellyhart.com*

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually

HCMLPHMIT00000562

received in error by any other than the intended recipient(s), any review, use, dissemination, distribution, copying or disclosure of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

HCMLPHMIT00000563

**EXHIBIT  2**

001238

**From:** "John A. Morris" <jmorris@pszjlaw.com>
**To:** "Louis M. Phillips" <louis.phillips@kellyhart.com>, "Amelia L. Hurt"
<amelia.hurt@kellyhart.com>
**Cc:** "Jeff Pomerantz" <jpomerantz@pszjlaw.com>
**Subject:** FW: Confidentiality Agreement
**Date:** Sat, 22 Mar 2025 16:35:15 +0000
**Importance:** Normal
**Attachments:** EXECUTED_Confidentiality_Agreement_-
_M_Patrick_and_Related_Entities_(Execution_Version).pdf
**Inline-Images:** image002.png; image001.jpg

---

Louis and Amelia,

Attached is a fully executed copy of the Confidentiality Agreement.

Please let us know when you expect to send a proposal.  We are prepared to meet with you and Mark (and any other Representatives who sign the NDA) in Dallas or New York promptly thereafter.

I'm available if you want to discuss anything in the interim.  Otherwise, have a good weekend.

Regards,

John

**John A. Morris**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 212.561.7760
Tel: 212.561.7700 | Fax: 212.561.7777
jmorris@pszjlaw.com
vCard | Bio | LinkedIn



Los Angeles | New York | Wilmington, DE | Houston | San Francisco

---

**From:** jpseeryjr@gmail.com <jpseeryjr@gmail.com>
**Sent:** Saturday, March 22, 2025 11:34 AM
**To:** John A. Morris <jmorris@pszjlaw.com>
**Cc:** David Klos <DKlos@highlandcapital.com>; Tim Cournoyer <TCournoyer@highlandcapital.com>; Jeff Pomerantz <jpomerantz@pszjlaw.com>; Gregory V. Demo <GDemo@pszjlaw.com>; Hayley R. Winograd <hwinograd@pszjlaw.com>; Jordan A. Kroop <Jkroop@pszjlaw.com>
**Subject:** Re: Confidentiality Agreement

EXECUTED

Best.  Jim

001239

HCMLPHMIT00000564

Jim Seery
631-804-2049
jpseeryjr@gmail.com

---

**From:** John A. Morris <jmorris@pszjlaw.com>
**Date:** Saturday, March 22, 2025 at 10:20 AM
**To:** jpseeryjr@gmail.com <jpseeryjr@gmail.com>
**Cc:** David Klos <DKlos@highlandcapital.com>, Tim Cournoyer <TCournoyer@highlandcapital.com>,
Jeff Pomerantz <jpomerantz@pszjlaw.com>, Gregory V. Demo <GDemo@pszjlaw.com>, Hayley R.
Winograd <hwinograd@pszjlaw.com>, Jordan A. Kroop <Jkroop@pszjlaw.com>
**Subject:** FW: Confidentiality Agreement

Jim,

Louis sent back a signed NDA.

There is at least one change (the deletion of the word "Dugaboy" from item 3 of Exhibit A, which is fine), but he didn't
send a black line so I'm trying to confirm there is nothing else.

If anyone knows how to compare, please do so.

But send me the signed version in the meantime at your convenience.

Also, it might make sense to dust off the "litigation protections" and conform them to the Patrick parties.  Please let me
know if you and Tim want to handle that or if you want us to do so; I'm not sure when we present them to Louis, but
we should be prepared.

I'll be available to talk between 11:30 and 5 pm today.

Chat soon,

John

---

**From:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Sent:** Saturday, March 22, 2025 8:45 AM
**To:** John A. Morris <jmorris@pszjlaw.com>
**Cc:** Amelia L. Hurt <Amelia.Hurt@kellyhart.com>
**Subject:** Confidentiality Agreement

John,

I missed that Mark had executed a slightly revised version (word document attached), but found it last
evening.  Apologies.  Please get mean executed version from Mr. Seery.  Thanks.

**Louis M. Phillips**
*Partner*

HCMLPHMIT00000565

KELLY HART & PITRE

**KELLY HART & PITRE**
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

*louis.phillips@kellyhart.com*
*www.kellyhart.com*

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

HCMLPHMIT00000566

# CONFIDENTIALITY AGREEMENT

This CONFIDENTIALITY AGREEMENT (this "Agreement") is entered into as of March 18, 2025 (the "Effective Date") by and among Highland Capital Management, L.P., a Delaware limited partnership ("Highland" or the "Disclosing Party"), on the one hand, and Mark Patrick, a United States citizen and resident of Dallas, Texas ("Mr. Patrick"), Hunter Mountain Investment Trust, a Delaware statutory trust ("Hunter Mountain"), Charitable DAF Holdco, Ltd., a Cayman Islands exempted company ("DAF Holdco"), CDH GP, Ltd., a Cayman Islands exempted company ("DAF GP"), Charitable DAF Fund, L.P., a Cayman Islands exempted limited partnership ("DAF Fund"), and CLO Holdco, Ltd., a Cayman Islands exempted company ("CLO Holdco", and together with DAF Holdco, DAF GP and DAF Fund, the "DAF Entities"), Rand Advisors, LLC, a Delaware limited liability company ("Rand Advisors"), Rand PE Fund I, LP, a Delaware series limited partnership ("Rand PE Fund"), Rand PE Fund Management, LLC, a Delaware limited liability company ("Rand GP"), Atlas IDF, LP, a Delaware limited partnership ("Atlas IDF"), Atlas IDF GP, LLC, a Delaware limited liability company ("Atlas GP" and together with Rand Advisors, Rand PE Fund, Rand GP and Atlas IDF, the "Rand Entities", and the Rand Entities together with Mr. Patrick, Hunter Mountain and the DAF Entities, the "Recipients"), on the other hand.  Highland and the Recipients are sometimes referred to herein individually as a "Party" and collectively as the "Parties."

## Recitals

WHEREAS, Mr. Patrick hereby represents and warrants that he is a control person for each of Hunter Mountain, the DAF Entities and the Rand Entities;

WHEREAS, there are several active litigations to which Highland or one of its affiliates, on the one hand, and one or more of the Recipients, on the other hand, are parties, including, without limitation, the matters set forth on Exhibit A hereto (collectively, the "Pending Litigations");

WHEREAS, the Parties desire to enter into good faith settlement discussions in an effort to reach a mutually acceptable global resolution to the Pending Litigations and all potential claims and causes of action against each other (the "Potential Settlement");

WHEREAS, in connection with negotiating the Potential Settlement, it is anticipated that Highland will provide the Recipients with certain Confidential Information (as hereinafter defined); and

WHEREAS, as a condition to Highland providing Recipients with any such Confidential Information, the Recipients agree to the terms and conditions set forth in this Agreement.

## Agreement

NOW, THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and agreed, the Parties, intending to be legally bound, hereby agree as follows:

001242

1.      Representations and Warranties

(a)      Each Party hereby represents and warrants to the other Parties as follows:

(i)      Existence and Good Standing.  Such Party is a legal entity duly organized, validly existing and, to the extent applicable in such jurisdiction, in good standing under the Laws (as hereinafter defined) of the jurisdiction in which it is incorporated or formed.  Such Party has all requisite corporate or similar right, power, authority and capacity to own, lease and operate the properties and assets it owns, leases and operates.  Each Party is qualified to do business as a foreign entity in each jurisdiction in which its ownership of property or the conduct of its business as now conducted requires it to qualify.

(ii)      Authority; Enforceability. Such Party has the full power and authority to execute this Agreement and to perform its obligations under this Agreement.  The execution, delivery and performance of this Agreement have been duly and validly authorized by all required action on behalf of such Party in accordance with its respective Organizational Documents (as hereinafter defined) and applicable Law.  This Agreement constitute the valid and binding obligations of, and enforceable against, such Party.

(iii)      No Violations.  The execution and delivery by such Party of this Agreement, the performance and compliance with the terms and conditions hereof and thereof by such Party, and the performance by such Parent of its obligations contemplated hereby, in each case, will not (with or without notice or passage of time, or both):

(1) violate, conflict with, result in a breach of or constitute a default under any of the provisions of the Organizational Documents of such Party; or

(2) breach, violate or conflict with any provision of any Law or Permit applicable to such Party.

(iv)      Legal Proceedings.  There are no judicial, administrative or arbitral actions, suits, hearings, inquiries, charges, investigations, administrative proceedings, grievances or formal complaints or other proceedings (public or private) commenced, brought, conducted or heard before, or otherwise involving, any Governmental Entity or arbitrator, in each case, pending nor threatened that (i) challenge the validity or enforceability of Party's obligations under this Agreement or (b) seek to prevent or delay, or otherwise would reasonably be expected to adversely affect, the performance by such Party of its obligations hereunder.

(b)      Each Recipient hereby represents and warrants to Highland as follows:

(i) None of James Dondero, nor any Person directly or indirectly owned or controlled by Mr. Dondero (including, without limitation, Dugaboy Investment Trust) nor or any attorney, agent, employee, or representative engaged or working for benefit of Mr. Dondero nor any Person directly or indirectly owned or controlled by him (collectively, the "Dondero Related Parties") directly or indirectly owns any interest in, or directly or indirectly has any control over, such Recipient, including, without limitation, as the result of any written or oral contract, agreement, arrangement or obligation.

001243

HCMLPHMIT00000568

(ii)  Such Recipient does not represent and is not acting on behalf of any Dondero Related Party.

(iii) Such Recipient has no duty or obligation to provide any Confidential Information to any Person not a party to this Agreement, whether through a common or joint interest agreement or otherwise, and is not representing or acting on behalf of any Person with such a duty or obligation.

2.    Confidential and Proprietary Nature of the Information

Recipients acknowledge the confidential and proprietary nature of the Confidential Information, agree to hold and keep the Confidential Information in strict confidence as provided in this Agreement, agree that the use of any such Confidential Information is expressly limited to the pursuit of a Potential Settlement and shall not be used for any other purpose or in any other manner except as expressly provided in this Agreement, and otherwise agree to each and every restriction and obligation in this Agreement.

3.    Confidential Information

As used in this Agreement, the term "Confidential Information" means and includes (a) any and all of the following items that will be disclosed to any Recipient or any of their respective Representatives (as hereinafter defined) by or on behalf of Highland, whether orally or in writing and without regard to whether Highland has specifically designated such item as confidential, proprietary or non-public: any and all confidential, proprietary or non-public information concerning the business or affairs of Highland or any of its affiliates or related accounts, or other Persons (as hereinafter defined) (which includes, for the avoidance of doubt and without limitation, Highland Claimant Trust, Highland Litigation Sub-Trust, Highland Indemnity Trust, each of their and Highland's direct and indirect subsidiaries, and each of their respective affiliates, and its and their respective parent entities, beneficiaries, members, shareholders, owners, creditors, trustees, oversight boards, directors, managers, officers, employees, agents, advisors and representatives (collectively, the "Highland Related Parties")), including, without limitation, any written or oral information, reports and data concerning financial statements, assets, liabilities, indemnity and other obligations, cash flow, income, and expenses; past, current or planned investment or portfolio information; contracts and agreements; know-how, inventions and ideas, whether past, current or planned; partner, beneficiary, owner or investor lists; partner, beneficiary, owner or investor information; business plans; entity structure details; all compliance-related reports, records and information; and any other information, however documented, that is proprietary or non-public or is a trade secret within the meaning of applicable state trade secret Law, and (b) any and all statements or representations made in the course of discussing, negotiating or evaluating a Potential Settlement, including, without limitation, the terms of any Potential Settlement and the fact that (i) Confidential Information has been disclosed to Recipient and (ii) any discussions or negotiations are taking place concerning a Potential Settlement.

To the extent that any Confidential Information includes information or materials subject to the attorney-client privilege, work-product doctrine, or any other applicable privilege concerning pending or threatened legal proceedings or governmental investigations, the Parties understand and agree that they have a commonality of interest with respect to such matters, and it

3

is their desire, intention, and mutual understanding that the sharing of such information or materials is not intended to, and shall not, waive or diminish in any way the confidentiality of such information or material or its continued protection under the attorney-client privilege, work-product doctrine, or other applicable privilege.  Accordingly, all Confidential Information disclosed by or on behalf of Highland that is entitled to protection under the attorney-client privilege, work-product doctrine, or other applicable privilege shall remain entitled to such protection under these privileges and this Agreement.

4.      Restricted Use of Confidential Information

        Recipients agree that the Confidential Information (a) shall be kept strictly confidential by each Recipient and (b) without limiting the foregoing, shall not be disclosed by or on behalf of any Recipient to any Person (as hereinafter defined) except as otherwise expressly permitted by this Agreement.  It is understood and the Recipients agree that Confidential Information may only be disclosed to Mr. Patrick and such specific legal counsel, accountants and financial advisors of the Recipients to whom such disclosure has been consented to in writing by Highland in its sole discretion (which consent may be given via email) (collectively "Representatives") and who (i) require such Confidential Information for the purpose of evaluating, negotiating or consummating a Proposed Settlement (ii) are informed by Recipient of the confidential nature of the Confidential Information and the obligations set forth in this Agreement, and (iii) execute a written joinder in the form annexed hereto as Exhibit B pursuant to which the Representative agrees to be bound to this Agreement as if they were an original Party hereto, with such joinder including, without limitation, a representation and warranty that such Representative (1) does not currently represent any Dondero Related Party and (2) has no duty or obligation to provide any Confidential Information to any Person not a party to this Agreement, whether through a common or joint interest agreement or otherwise, and does not represent any Person with such a duty or obligation. Recipients further agree that Recipients and their Representatives shall not use any of the Confidential Information to the detriment of Highland or any Highland Related Party or for any reason or purpose other than evaluating, negotiating or consummating a Proposed Settlement. Recipients shall enforce this Agreement as to its Representatives and take such action, legal or otherwise, to the extent necessary to cause them to comply with this Agreement and thereby prevent any disclosure of Confidential Information by any of its Representatives (including, without limitation, all actions that any Recipient would take to protect its own confidential information).

        Without limiting the generality of the foregoing and for the avoidance of doubt, the Recipients and their Representatives shall not disclose or refer to any Confidential Information to (a) subject to Section 5 below, any Governmental Entity (as hereinafter defined), including, without limitation, in any pleadings or submissions, or (b) any Dondero Related Party. The Parties acknowledge that it is their collective intent that no Confidential Information disclosed hereunder may be examined in any proceeding of a Governmental Entity (or any discovery relating to any such proceeding), and all Confidential Information shall be entitled to all protections applicable under Federal Rule of Evidence 408 and any other protections afforded to settlement and compromise communications under any other applicable Law.

4

5.      Legally Compelled Disclosure

If any Recipient or any of its Representatives becomes compelled by Law (whether by oral questions, interrogatories, requests for information or documents, subpoena, civil or criminal investigative demand, or similar process) to make any disclosure that is prohibited or otherwise constrained by this Agreement, such Recipient or its Representative, as the case may be, shall provide Highland with immediate notice of such legal proceedings, including all related documentation, so Highland may (a) seek an appropriate protective order or other appropriate relief, or (b) waive compliance with the provisions of this Agreement.  In the absence of a protective order or Recipients receiving a written waiver from Highland, Recipients or their Representatives are permitted (with Highland's cooperation but at Recipient's expense) to disclose that portion (and only that portion) of the Confidential Information that Recipient or its Representative is legally compelled by an order of an applicable Governmental Entity of competent jurisdiction to disclose; provided, however, that Recipient and its Representatives must use best efforts to obtain reliable assurance that confidential treatment will be accorded by any Person to whom any Confidential Information is so disclosed.

6.      Return or Destruction of Confidential Information

If Highland notifies Recipients that it wishes Recipients to return all Confidential Information, then Recipients (i) shall promptly deliver to Highland all documents or other materials disclosed by or on behalf of Highland to Recipient or its Representatives constituting Confidential Information, together with all copies and summaries thereof in the possession or under the control of Recipients or their Representatives, and (ii) will destroy materials generated by Recipients or their Representatives that include or refer to any part of the Confidential Information, without retaining any copies, including, without limitation, any electronically stored copies or attachments to emails, of any such documents or materials.  Written notice of return or destruction shall constitute a valid termination of access to Confidential Information and shall be deemed to have been given at the time Highland sends such notice.  Such notice may be sent in any manner reasonably calculated to notify Recipients of the termination.

7.      No Obligation to Negotiate a Potential Settlement

None of the Parties shall have rights or obligations of any kind whatsoever with respect to any Potential Settlement by virtue of this Agreement other than for the matters specifically agreed to herein.  Without limiting the preceding sentence, nothing in this Agreement requires any Party to enter into any Potential Settlement or to negotiate the same for any specified period of time or on any specific terms.

8.      No Representations or Warranties

Highland shall have no obligation to provide any information—confidential or otherwise—to the Recipients and retains the right to determine, in its sole discretion, what information, if any, it wishes to make available to Recipients, and neither Highland nor any Highland Related Party makes any representation or warranty (express or implied) concerning the completeness or accuracy of the Confidential Information.

001246
HCMLPHMIT00000571

9.    Miscellaneous

(a)   <u>Modification</u>. This Agreement may only be modified or waived by a separate writing signed by the Party or Parties expressly modifying or waiving this Agreement.

(b)   <u>Waiver</u>. Neither the failure nor any delay by any Party in exercising any right, power, or privilege under this Agreement will operate as a waiver of such right, power, or privilege, and no single or partial exercise of any such right, power, or privilege will preclude any other or further exercise of such right, power, or privilege or the exercise of any other right, power, or privilege.

(c)   <u>Certain Definitions</u>.

(i) The term "Governmental Entity" means any federal, national, state, foreign, provincial, local or other government or any governmental, regulatory, administrative or self-regulatory authority, agency, bureau, board, commission, court, judicial or arbitral body, department, political subdivision, tribunal or other instrumentality thereof, including any fiscal intermediary or administrative contractor acting on behalf of any of the foregoing.

(ii) The term "Law" means any law, rule, regulation, statute, code, ordinance, decree or other restriction of any Governmental Entity or any order, injunction, judgment, decree, ruling, writ, assessment or award of a Governmental Entity.

(iii) The term "Organizational Documents" means certificates of incorporation, bylaws, certificates of formation, certificates of trust, limited liability company agreements, limited liability partnership agreements, partnership or limited partnership agreements, trust agreements or other similar formation or governing documents of any Person, in each case, as amended, restated or otherwise modified to date.

(iv) The term "Person" means any individual, corporation (including any non-profit corporation), general or limited partnership, limited liability company, joint venture, estate, trust, association, organization, labor union, any other business entity, or a Governmental Entity.

(d)   <u>Severability</u>. The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provisions of this Agreement, which shall remain in full force and effect. If any of the terms, covenants or provisions of this Agreement are determined to be unenforceable by reason of its extent, duration, scope or otherwise, then the Parties contemplate and intend that the authority making such determination shall reduce such extent, duration, scope or other provision and enforce them in their reduced form for all purposes contemplated by this Agreement.

(e)   <u>Breach</u>. Recipients agree that Highland will be irreparably injured by a breach of this Agreement by any Recipient or its Representatives, that monetary remedies will be inadequate to protect Highland against any actual or threatened breach of this Agreement by any Recipient or by its Representatives, and that Highland shall be entitled to an injunction or other equitable relief as a remedy for any breach as a matter of right and without the necessity of having to post a bond. Such remedy shall not be deemed to be the exclusive remedy for a breach of this Agreement, but

6

001247

HCMLPHMIT00000572

shall be in addition to all other remedies available at law or equity. The non-prevailing Party shall pay the other Party's costs and expenses in any action to enforce the terms of this Agreement.

(f)     Liability and Indemnity. Recipients shall, jointly and severally, be liable to and shall indemnify and hold Highland and the Highland Related Parties harmless from and against any and all claims, suits, losses, damages, costs or expenses, including reasonable attorney fees, incurred or suffered by Highland or any Highland Related Party as a result of any Recipient or its Representatives violation of this Agreement, including, without limitation, using or disclosing any Confidential Information other than in accordance with this Agreement, whether such use or disclosure is performed negligently or otherwise.

(g)     Notices. All notices, requests, demands, claims, and other communications hereunder shall be in writing. Any notice, request, demand, claim or other communication hereunder shall be deemed duly delivered: (a) four (4) business days after it is sent by registered or certified mail, return receipt requested, postage prepaid; (b) one (1) business day after it is sent for next business day delivery via a reputable nationwide overnight courier service; (c) when sent, if emailed on a business day; and (d) the next business day following the day on which the email is sent if emailed on a day that is not a business day, in each case to the intended recipient as set forth below:

If to Highland:          Highland Capital Management, L.P.
                         100 Crescent Court, Suite 1850
                         Dallas, Texas 75201
                         Attention: James P. Seery, Jr.
                         Email: jpseeryjr@gmail.com AND notices@highlandcapital.com

                         With copies to:

                         Pachulski Stang Ziehl & Jones LLP
                         780 3rd Avenue #34
                         New York, New York 10017
                         Attention: John A. Morris
                         Email: jmorris@pszjlaw.com

If to Recipients:        c/o Mark Patrick
                         6716 Glenhurst Dr.
                         Dallas, Texas 75254
                         Email: mpatrick@dafholdco.com

                         With copies to:

                         Kelly Hart & Pitre
                         301 Main Street Suite 1600
                         Baton Rouge, Louisiana 70801
                         Attention: Louis M. Phillips
                         Email: Louis.Phillips@kellyhart.com

001248

HCMLPHMIT00000573

(h)     <u>Governing Law; Jurisdiction</u>.  This Agreement shall be interpreted and construed in accordance with the laws of the State of Delaware, without regard to conflict of laws provisions. Each Party hereby irrevocably submits and acknowledges and recognizes the exclusive jurisdiction of the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (which court, for purposes of this Agreement, is the only court of competent jurisdiction), over any suit, action or other proceeding arising out of, under or in connection with this Agreement or its subject matter.  Each Party irrevocably consents to service of process in any action or proceeding arising out of or relating to this Agreement in the manner provided for notices in <u>Section 9(g)</u> above. Nothing in this Agreement shall affect the right of any Party to serve process in any manner permitted by law.

(i)     <u>Execution of Agreement</u>.  This Agreement may be executed in one or more counterparts, each of which will be deemed to be an original copy of this Agreement, and all of which, when taken together, shall be deemed to constitute one and the same agreement.  The exchange of copies of this Agreement and of signature pages by email shall constitute effective execution and delivery of this Agreement as to the Parties and may be used in lieu of the original Agreement for all purposes.  Signatures of the Parties transmitted by email shall be deemed to be their original signatures for any purpose whatsoever.

(j)     <u>Headings</u>.  The headings of the sections of this Agreement are inserted for convenience of reference only and shall not control or affect the meaning or construction of any of the terms of this Agreement in any manner.

(k)     <u>Construction</u>.  This Agreement has been fully negotiated by the Parties. Accordingly, in interpreting this Agreement, no weight shall be placed on which Party to this Agreement or its counsel drafted the provision being interpreted.

<div style="text-align:center">[SIGNATURES ON FOLLOWING PAGE]</div>

<div style="text-align:center">8</div>

<div style="text-align:right">001249</div>

HCMLPHMIT00000574

IN WITNESS WHEREOF, the Parties have executed this Agreement to be effective as of the Effective Date.

HIGHLAND:

HIGHLAND CAPITAL MANAGEMENT, L.P.

By: _____
Name: James P. Seery, Jr.
Title: Chief Executive Officer


RECIPIENTS:

_____

MARK PATRICK


HUNTER MOUNTAIN INVESTMENT TRUST

By: _____
Name: Mark Patrick
Title: Administrator


CHARITABLE DAF HOLDCO, LTD.

By: _____
Name: Mark Patrick
Title: Director


CDH GP, LTD.

By: _____
Name: Mark Patrick
Title: Director


SIGNATURE PAGE TO CONFIDENTIALITY AGREEMENT

001250

HCMLPHMIT00000575

CHARITABLE DAF FUND, L.P.
By: CDH GP, Ltd., its General Partner

By: _____
Name: Mark Patrick
Title: Managing Member


CLO HOLDCO, LTD.

By: _____
Name: Mark Patrick
Title: Director


RAND ADVISORS, LLC

By: _____
Name: Mark Patrick
Title: President


RAND PE FUND I, L.P.
By: Rand PE Fund Management, LLC, its General Partner

By: _____
Name: Mark Patrick
Title: President


RAND PE FUND MANAGEMENT, LLC

By: _____
Name: Mark Patrick
Title: President


Type text here


SIGNATURE PAGE TO CONFIDENTIALITY AGREEMENT

001251

HCMLPHMIT00000576

ATLAS IDF, LP
By: Atlas IDF GP, LLC its General Partner

By: _____

Name: Mark Patrick
Title: President

Type text here

ATLAS IDF GP, LLC

By: _____

Name: Mark Patrick
Title: President

SIGNATURE PAGE TO CONFIDENTIALITY AGREEMENT

001252

HCMLPHMIT00000577

EXHIBIT A

<u>PENDING LITIGATION</u>

1.  DAF/CLOH appeal of Seery Retention Order (21-cv-01585-S)

2.  HMIT appeal of Order denying leave to file Claims Trading Complaint (23-cv-02071-E)

3.  HMIT appeal of Order dismissing Valuation Complaint (24-cv-01531-X)

4.  HMIT appeal of Order staying motion for leave to remove Seery (24-cv-01786)

5.  DAF appeal of decision affirming dismissal of HarbourVest Complaint (24-10880)

EXHIBIT B

JOINDER TO CONFIDENTIALITY AGREEMENT

This JOINDER TO CONFIDENTIALITY AGREEMENT (this "Joinder") is entered into as of _____, _____, 2025 (the "Effective Date") by and between Highland Capital Management, L.P., a Delaware limited partnership ("Highland"), and _____ (the "Joining Party"). Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Confidentiality Agreement (as hereinafter defined).

WHEREAS, reference is made to that certain Confidentiality Agreement as of March 18, 2025 by and among Highland, on the one hand, and Mark Patrick, a United States citizen and resident of Dallas, Texas, Hunter Mountain Investment Trust, a Delaware statutory trust, Charitable DAF Holdco, Ltd., a Cayman Islands exempted company, CDH GP, Ltd., a Cayman Islands exempted company, Charitable DAF Fund, L.P., a Cayman Islands exempted limited partnership, and CLO Holdco, Ltd., a Cayman Islands exempted company, Rand Advisors, LLC, a Delaware limited liability company, Rand PE Fund I, LP, a Delaware series limited partnership, Rand PE Fund Management, LLC, a Delaware limited liability company, Atlas IDF, LP, a Delaware limited partnership, Atlas IDF GP, LLC, a Delaware limited liability company, on the other hand (the "Confidentiality Agreement");

WHEREAS, the Joining Party is a Representative of Recipients and desires to receive certain Confidential Information for the sole limited purpose of advising Recipients in connection with its evaluation, negotiation and consummation of a Proposed Settlement; and

WHEREAS, in accordance with Section 4 of the Confidentiality Agreement and as a condition to Highland providing, or permitting Recipients to provide, such Confidential Information to the Joining Party, the Joining Party agrees to the terms and conditions set forth in this Joinder.

NOW, THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and agreed, the parties hereto, intending to be legally bound, hereby agree as follows:

1.      The Joining Party acknowledges that it has received and reviewed a copy of the Confidentiality Agreement. The Joining Party hereby joins as a Party to, and agrees to be bound by all of the terms, provisions and conditions set forth in, the Confidentiality Agreement as a "Recipient" thereunder, with the same force and effect as if originally named therein as a "Recipient."

2.      Without limiting the generality of the foregoing, the Joining Party hereby (a) makes each of the representations and warranties set forth in Section 1 of the Confidentiality Agreement to Highland and (b) represents and warrants to Highland that such Joining Party (i) does not currently represent any Dondero Related Party and (ii) has no duty or obligation to provide any

001254

HCMLPHMIT00000579

Confidential Information to any Person not a party to this Agreement, whether through a common or joint interest agreement or otherwise, and does not represent any Person with such a duty or obligation.

3.      Each of the terms, provisions and conditions set forth in Section 9 of the Confidentiality Agreement are incorporated herein by reference in their entirety and shall apply to this Agreement *mutatis mutandis*.

IN WITNESS WHEREOF, the parties hereto have executed this Joinder to be effective as of the Effective Date.

HIGHLAND:

HIGHLAND CAPITAL MANAGEMENT, L.P.

By: _____
Name: James P. Seery, Jr.
Title: Chief Executive Officer

JOINING PARTY:

_____
Name: _____

001255

HCMLPHMIT00000580

**EXHIBIT  3**

001256

**From:** "John A. Morris" <jmorris@pszjlaw.com>
**To:** "Louis Phillips" <Louis.Phillips@kellyhart.com>
**Cc:** "Jeff Pomerantz" <jpomerantz@pszjlaw.com>, "amelia.hurt@kellyhart.com"
    <Amelia.Hurt@kellyhart.com>
**Subject:** Highland/DAF/HMIT: Follow up
**Date:** Fri, 4 Apr 2025 20:54:20 +0000
**Importance:** Normal
**Attachments:** 4923-0508-6766.v3_Litigation_Protections_M._Patrick.docx
**Inline-Images:** image001.jpg

---

Louis:

I'm writing to follow up on several things.

1. Litigation Protections. Attached are the "Litigation Protections" I mentioned. They are still subject to review and material change but wanted to share them now.

2. Follow up information. It sounds like yesterday's Zoom meeting was helpful. Please let us know if there is any other information your clients need to assess the situation.

3. HCMLP's diligence. We'll have some questions on our end, but for now, please send us the Remittance Agreement referred to in the Intercreditor Agreement.

4. Joinder signature. For completeness, please send us Shawn's signature page.

5. Preliminary terms/structure. We hope to provide over the weekend a set of bullet points concerning possible terms and structure of an agreement.

6. Further meeting. Some or all of us are prepared to meet in Dallas on Tuesday at a time to be determined (some may participate by Zoom). Please let us know if that is possible as soon as you're able so we can make travel arrangements.

Please let me know if you have any questions and thank you for your continued cooperation.

Regards,

John

**John A. Morris**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 212.561.7760
Tel: 212.561.7700 | Fax: 212.561.7777
jmorris@pszjlaw.com
vCard | Bio | LinkedIn

001257

HCMLPHMIT00000621



Los Angeles | New York | Wilmington, DE | Houston | San Francisco

HCMLPHMIT00000622

## PREAMBLE

The provisions below are collectively referred to as the "Litigation Protections."  The Parties agree that the intent of the Litigation Protections is to enact a permanent cessation of all litigation concerning or related to the Highland Entities through and including the Effective Date.

## GENERAL AND UNCONDITIONAL RELEASE

Upon the Effective Date, and to the maximum extent permitted by law, each of the DAF/HMIT Entities[1] on behalf of himself, herself, or itself and each of its respective current or former advisors, trustees, directors, officers, managers, members, partners (including limited and general partners), employees, beneficiaries, direct and indirect shareholders and other equity holders, agents, participants, direct and indirect subsidiaries and parents, affiliates (including affiliated and/or controlled funds and other investment vehicles), successors, predecessors, designees, and assigns (whether by operation of law or otherwise) (collectively with the DAF/HMIT Entities, the "DAF/HMIT Releasors") hereby forever, finally, fully, unconditionally, and completely releases, relieves, acquits, discharges, remises, and exonerates each Highland Released Party from, and waives and relinquishes, any and all Claims, which the DAF/HMIT Releasors, or any person or entity claiming through, under, or on behalf of any of the DAF/HMIT Releasors, ever had, now has, or hereafter can, shall, or may have against any of the Highland Released Parties by reason of, arising from, relating to, or in connection with, any fact, matter, or transaction that occurred prior to the Effective Date, including any fact, matter, transaction, or occurrence in connection with, relating to, or with respect to the Bankruptcy Case, the management of the Highland Entities, or the Highland Entities' property and including any defense, affirmative defenses, and right to setoff arising out of, or otherwise related to, any of the foregoing (collectively, the "DAF/HMIT Entity Released Claims").

Upon the Effective Date, and to the maximum extent permitted by law, each of the Highland Entities on behalf of itself and each of its respective current or former advisors, trustees, directors, officers, managers, members, partners (including limited and general partners), employees, beneficiaries, direct and indirect shareholders and other equity holders, agents, participants, direct and indirect subsidiaries and parents, affiliates (including affiliated and/or controlled funds and other investment vehicles), successors, predecessors, designees, and assigns (whether by operation of law or otherwise) in each case from and including August 11, 2021 (collectively with the Highland Entities, the "Highland Releasors") hereby forever, finally, fully, unconditionally, and completely releases, relieves, acquits, discharges, remises, and exonerates each DAF/HMIT Released Party from, and waives and relinquishes, any and all Claims, which the Highland Releasors, or any person or entity claiming through, under, or on behalf of any of the Highland Releasors, ever had, now has, or hereafter can, shall, or may have against any of the DAF/HMIT

---

[1] The "DAF/HMIT Entities" means, individually and collectively, Mr. Mark Patrick, Mr. Shawn Raver, Mr. Paul Murphy, Hunter Mountain Investment Trust, a Delaware statutory trust, Beacon Mountain LLC, a Delaware limited liability compay, Charitable DAF Holdco, Ltd., a Cayman Islands exempted company, CDH GP, Ltd., a Cayman Islands exempted company, Charitable DAF Fund, L.P., a Cayman Islands exempted limited partnership, Liberty CLO Holdco, Ltd, [a Cayman Islands, exempted company], and CLO Holdco, Ltd., a Cayman Islands exempted company, Rand Advisors, LLC, a Delaware limited liability company, Rand PE Fund I, LP, a Delaware series limited partnership, Rand PE Fund Management, LLC, a Delaware limited liability company, Atlas IDF, LP, a Delaware limited partnership, and Atlas IDF GP, LLC, a Delaware limited liability company.

001259

HCMLPHMIT00000623

Released Parties by reason of, arising from, relating to, or in connection with, any fact, matter, or transaction that occurred prior to the Effective Date, including any fact, matter, transaction, or occurrence in connection with, relating to, or with respect to the Bankruptcy Case, the management of the Highland Entities, or the Highland Entities' property and including any defense, affirmative defenses, and right to setoff arising out of, or otherwise related to, any of the foregoing (collectively, the "Highland Entity Released Claims" and together with the DAF/HMIT Entity Released Claims, the "Released Claims"). *Notwithstanding the forgoing*, "Highland Releasors" does not include James Dondero, Scott Ellington, Isaac Leventon, or any entity directly or indirectly owned (in whole or in part) and/or controlled by Mr. Dondero or Mr. Ellington or Mr. Leventon.

**FOR THE AVOIDANCE OF DOUBT, THE FOREGOING RELEASE IS INTENDED TO BE GENERAL AND INCLUDES, WITHOUT LIMITATION, A RELEASE OF ALL RELEASED CLAIMS, WHETHER KNOWN OR UNKNOWN, SUSPECTED OR UNSUSPECTED, ARISING OR EXISTING FROM THE BEGINNING OF TIME THROUGH AND INCLUDING THE EFFECTIVE DATE.**

To the maximum extent permitted by law, each of the DAF/HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other DAF/HMIT Releasors and Highland Releasors, respectively, waives the benefit of any statute or other principle of law or equity that limits the applicability of a release with respect to claims that the releasing party does not know or suspect to exist in his, her or its favor at the time of executing the release.

Without limiting the scope of the foregoing waiver, in connection with the foregoing release, each of the DAF/HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other DAF/HMIT Releasors and Highland Releasors, respectively, waive the benefits of Section 1542 of the California Civil Code (to the extent, if any, that Section 1542 might apply to the foregoing release), which provides as follows:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

Each of the DAF/HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other DAF/HMIT Releasors and Highland Releasors, respectively, hereby agrees that the provisions of Section 1542 of the Civil Code of the State of California and all similar federal or state law, rights, rules or legal principles, legal or equitable, in each case solely to the extent such provisions apply, **ARE HEREBY KNOWINGLY AND VOLUNTARILY WAIVED AND RELINQUISHED BY EACH OF THE DAF/HMIT ENTITIES AND THE HIGHLAND ENTITIES, ON THEIR OWN BEHALF AND ON BEHALF OF THE OTHER DAF/HMIT RELEASORS AND HIGHLAND RELEASORS, RESPECTIVELY,** in each and every capacity, to the full extent that such rights and benefits pertaining to the matters released herein may be waived, and each of the DAF/HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other DAF/HMIT Releasors and Highland Releasors, respectively, hereby

001260
HCMLPHMIT00000624

agrees and acknowledges that this waiver and relinquishment is an essential term of this Agreement, without which the consideration provided would not have been given.

In connection with such waiver and relinquishment, each of the DAF/HMIT Entities and Highland Entities acknowledges that it is aware that it may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those which it now knows or believes to be true, with respect to the matters released herein. Nevertheless, it is the intent of each of the DAF/HMIT Entities and the Highland Entities in executing this Agreement fully, finally, and forever to settle and release all such matters, and all claims related thereto, which exist, may exist or might have existed (whether or not previously or currently asserted in any action) which are the subject to the releases granted above.

As an integral component of this Agreement, and notwithstanding the Parties' intent set forth in the preamble hereto and the general nature of the releases in Section [_] hereof, should:

    (a) any DAF/HMIT Releasor contend or assert that any Claim of any kind whatsoever held by any DAF/HMIT Releasor against any Highland Released Party survives this Agreement and is in any way related to or arising from or in connection with any DAF/HMIT Entity Released Claim (such claim or cause of action, a "Patrick Alleged Claim"), such DAF/HMIT Releasor will be deemed to have irrevocably, fully, and finally assigned such Patrick Alleged Claim to the Highland Claimant Trust and the Highland Claimant Trust will be deemed to have forever, finally, full, unconditionally, and irrevocably, and completely released such Patrick Alleged Claim.

    (b) any Highland Releasor contend or assert that any Claim of any kind whatsoever held by any Highland Releasor against any DAF/HMIT Released Party survives this Agreement and is in any way related to or arising from or in connection with any Highland Entity Released Claim (such claim or cause of action, a "Highland Alleged Claim"), such Highland Releasor will be deemed to have irrevocably, fully, and finally assigned such Highland Alleged Claim to Mr. Mark Patrick and Mr. Mark Patrick will be deemed to have forever, finally, full, unconditionally, and irrevocably, and completely released such Highland Alleged Claim.

**THIS AGREEMENT CONTAINS THE ENTIRE AGREEMENT BETWEEN THE PARTIES, AND NO RIGHTS ARE CREATED IN FAVOR OF EITHER PARTY OTHER THAN AS SPECIFIED OR EXPRESSLY SET FORTH IN THIS AGREEMENT. THERE ARE NO REPRESENTATIONS, CONDITIONS, WARRANTIES, STATEMENTS, OR UNDERSTANDINGS (COLLECTIVELY, "REPRESENTATIONS"), EITHER ORAL OR WRITTEN, BETWEEN THE PARTIES OTHER THAN THOSE EXPRESSLY SET FORTH IN THIS AGREEMENT. THE PARTIES EXPRESSLY AGREE THAT THEY HAVE NOT BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY ANY REPRESENTATIONS NOT SET FORTH IN THIS AGREEMENT; AND THE PARTIES EXPRESSLY AGREE THAT THEY HAVE NOT RELIED ON ANY REPRESENTATIONS NOT EXPRESSLY SET FORTH IN THIS AGREEMENT. THE PARTIES EXPRESSLY AGREE THAT THEY ARE ENTERING INTO THIS AGREEMENT RELYING SOLELY ON THEIR OWN JUDGMENT AND NOT ON ANY REPRESENTATIONS BY ANY PARTY, EXCEPT FOR THOSE REPRESENTATIONS EXPRESSLY SET FORTH IN THIS AGREEMENT. THE PARTIES AGREE THAT REPRESENTATIONS NOT EXPRESSLY SET FORTH IN THIS AGREEMENT SHALL NOT BE USED IN THE INTERPRETATION OR CONSTRUCTION OF THIS AGREEMENT, AND NEITHER THE DAF/HMIT RELEASED PARTIES NOR THE HIGHLAND RELEASED PARTIES SHALL HAVE ANY LIABILITY FOR ANY CONSEQUENCES ARISING AS A RESULT OF ANY REPRESENTATIONS NOT SET FORTH IN THIS AGREEMENT.**

001261
HCMLPHMIT00000625

**COVENANT NOT TO SUE; LIMITATION ON STANDING**

Subject to the occurrence of the Effective Date:

(a) each of the DAF/HMIT Releasors covenants and agrees that it will not institute or prosecute any action, suit, or proceeding, in law, in equity or otherwise, against any of the Highland Released Parties, to recover, enforce, or collect any DAF/HMIT Entity Released Claim and will not (i) induce, encourage or direct any other party to do so or (ii) act in concert with or assist (financially or otherwise) any other party in doing so.

(b) each of the Highland Releasors covenants and agrees that it will not institute or prosecute any action, suit, or proceeding, in law, in equity or otherwise, against any of the DAF/HMIT Released Parties, to recover, enforce, or collect any Highland Entity Released Claim and will not (i) induce, encourage or direct any other party to do so or (ii) act in concert with or assist (financially or otherwise) any other party in doing so.

(c) For the avoidance of doubt, (i) except for the limited purpose of seeking Court approval of this Agreement (including with respect to any appeal concerning any order entered granting or denying such approval), no DAF/HMIT Entity shall file any pleading, motion, adversary proceeding, or other paper in the Bankruptcy Case (or in connection with any appeal arising from any order entered by the Bankruptcy Court expect with respect to any order granting or denying the motion to approve this Settlement), including but not limited to, in connection with HMIT's status as a holder of a Class 10 interest; and (ii) this Agreement shall not operate to give any Patrick Party standing for any purpose in connection with the Bankruptcy Case (or in connection with any appeal arising from any order entered by the Bankruptcy Court), except for the limited purpose of seeking Court approval of this Agreement (including with respect to any appeal concerning any order entered granting or denying such approval).

**NO PRIOR ASSIGNMENT OF CLAIMS**

Each of the DAF/HMIT Entities hereby represents and warrants that every DAF/HMIT Entity Released Claim has not heretofore been assigned or encumbered, and is not the subject of a transfer (as such term is defined in 11 U.S.C. § 101(54)), by any DAF/HMIT Releasor.

Each of the Highland Entities hereby represents and warrants that every Highland Entity Released Claim has not heretofore been assigned or encumbered, and is not the subject of a transfer (as such term is defined in 11 U.S.C. § 101(54)), by any Highland Releasor.

**ACKNOWLEDGEMENT OF IRREVOCABLY BINDING AND ENFORCEABLE NATURE OF ALL PLAN PROTECTIONS; DISMISSAL WITH PREJUDICE BY DAF/HMIT ENTITIES OF ALL PENDING LITIGATION**

The DAF/HMIT Entities, on their own behalf and on behalf of the other DAF/HMIT Releasors, acknowledge and agree that each Plan Provision is lawful, effective, and binding on the DAF/HMIT Releasors. The DAF/HMIT Entities further agree, on their own behalf and on behalf of the other DAF/HMIT Releasors, that the DAF/HMIT Releasors will never, in any way, challenge or seek to modify, nullify, vacate, or revoke, or induce, encourage or direct any other party to do so or act in concert with or assist (financially or otherwise) any other party in doing so the Confirmation Order, the Plan, the Plan Protections, or any Plan Document, including the Trust

001262

HCMLPHMIT00000626

Agreement, the LPA, or the Sub-Trust Agreement, in the Bankruptcy Court, in any other state or federal court, in any other forum or tribunal, or otherwise, including administrative or regulatory tribunals and foreign courts.

Within two Business Days following the Effective Date, the DAF/HMIT Entities will dismiss, or cause to be dismissed, with prejudice any action, suit, or proceeding, in law, in equity or otherwise, or withdraw, or cause to be withdrawn, with prejudice any claim or cause of action against, affecting, or related to any Released Party or any DAF/HMIT Entity Released Claim, including (i) *Charitable DAF Fund v. Highland Capital Management, L.P.*, 24-10880 (Fifth Circuit), (ii) *Charitable DAF Fund, L.P., et al v. Highland Cap. Mgmt., L.P.*, Case No. 3:21-cv-01585-S (N.D. Tex.), (iii) *Hunter Mountain Investment Trust v. Highland Capital Management, L.P.*, 3:23-cv-02071-E (N.D. Tex.), on remand to the Bankruptcy Court; (iv) *Dugaboy Investment Trust v. Highland Capital Management, L.P.*, 3:24-cv-01531-X (N.D. Tex.) (dismissal only of plaintiff Hunter Mountain Investment Trust); and (v) *Hunter Mountain Investment Trust v. Highland Capital Management, L.P.*, 3:24-cv-01786-L (N.D. Tex.).

## NO INDEPENDENT DUTY OWED

The Highland Entities, individually and collectively, shall owe no duty to the DAF/HMIT Entities, individually and collectively, whether contractual, fiduciary, equitable, statutory or otherwise, except as arising out of this Agreement.

## GATEKEEPER STANDARD

The DAF/HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other DAF/HMIT Releasors and Highland Releasors, respectively, acknowledge and agree that, notwithstanding the United States Court of Appeals for the Fifth Circuit's decision in *Highland Capital Management Fund Advisors, L.P. v. Highland Capital Management, L.P.*, No. 23-10534 (5th Cir. Mar. 18, 2025), the "Gatekeeper" provisions contained in Highland's Original Plan is forever binding on each of the DAF/HMIT Entities and for a claim or cause of action to be "colorable" for purposes of the Gatekeeper, it must be found by final order of the Bankruptcy Court (the "Gatekeeper Court"), which order shall be subject to appeal to a court of competent jurisdiction, to have satisfied the "Gatekeeper Colorability Test" as such term is defined in *In re Highland Capital Management, L.P.*, 2023 Bankr. LEXIS 2104 at *124-36 (Bankr. N.D. Tex. Aug. 24, 2023).

The DAF/HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other DAF/HMIT Releasors and Highland Releasors, respectively, acknowledge and agree that compliance with the Gatekeeper requires (i) a motion seeking leave to sue an Exculpated Party (as that term is defined in Highland's Original Plan) and a finding that the litigant's claims and causes of action are "colorable" attaching a complaint setting forth the basis for such claims or causes of action and (ii), in the Gatekeeper Court's sole discretion, an evidentiary hearing (during which the Gatekeeper Court may, among other things, hear testimony and assess the credibility of any witness(es)) to determine whether a proposed claim or cause of action is "colorable."

The DAF/HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other DAF/HMIT Releasors and Highland Releasors, respectively, further acknowledge and agree that

001263

HCMLPHMIT00000627

the moving party under the Gatekeeper has the burden of satisfying the "Gatekeeper Colorability Test."

## INDEMNIFICATION

Without in any manner limiting the available remedies for any breach of this Agreement, the DAF/HMIT Entities, severally but not jointly, agree to indemnify, defend, and hold the Highland Released Parties harmless from and against any and all liability, actions, claims, demands, liens, losses, damages, judgments, and expenses, including attorneys' fees and costs, that may arise or result from or on account of, or that are otherwise related or attributable to (x) any breach of this Agreement or of any representation or warranty contained in the Agreement, including the representations and warranties set forth in [NON-ASSIGNMENT PROVISION] or (y) any suits, proceedings, or other actions brought or prosecuted by or on behalf of, any DAF/HMIT Releasor or that are induced, encouraged, assisted  or directed by any DAF/HMIT Releasor or brought or prosecuted in concert with any DAF/HMIT Releasor against any Highland Released Party with respect to or related to any DAF/HMIT Entity Released Claims.  Without in any manner limiting the scope of the foregoing, any DAF/HMIT Entity that breaches Section [COVENANT NOT TO SUE] of this Agreement shall be liable to the Highland Released Party against whom the applicable suit, action, or other proceeding has been brought or prosecuted in violation of Section [_] for the reasonable attorneys' fees and costs incurred by such Highland Released Party in defending against or otherwise responding to such suit, action, or proceeding.  Each DAF/HMIT Entity acknowledges and agrees that the DAF/HMIT Entities are and shall be severally but not jointly liable for any costs, liabilities, or damages arising from or out of any breach of this Agreement or of any representation or warranty set forth in this Agreement as set forth in this Section [_].

Without in any manner limiting the available remedies for any breach of this Agreement, the Highland Entities, severally but not jointly, agree to indemnify, defend, and hold the DAF/HMIT Released Parties harmless from and against any and all liability, actions, claims, demands, liens, losses, damages, judgments, and expenses, including attorneys' fees and costs, that may arise or result from or on account of, or that are otherwise related or attributable to (x) any breach of this Agreement or of any representation or warranty contained in the Agreement, including the representations and warranties set forth in [NON-ASSIGNMENT PROVISION] or (y) any suits, proceedings, or other actions brought or prosecuted by or on behalf of, any Highland Releasor or that are induced, encouraged, assisted  or directed by any Highland Releasor or brought or prosecuted in concert with any Highland Releasor against any DAF/HMIT Released Party with respect to or related to any Highland Entity Released Claims.  Without in any manner limiting the scope of the foregoing, any Highland Entity that breaches Section [COVENANT NOT TO SUE] of this Agreement shall be liable to the DAF/HMIT Released Party against whom the applicable suit, action, or other proceeding has been brought or prosecuted in violation of Section [_] for the reasonable attorneys' fees and costs incurred by such DAF/HMIT Released Party in defending against or otherwise responding to such suit, action, or proceeding.  Each Highland Entity acknowledges and agrees that the Highland Entities are and shall be severally but not jointly liable for any costs, liabilities, or damages arising from or out of any breach of this Agreement or of any representation or warranty set forth in this Agreement as set forth in this Section [_].

001264

HCMLPHMIT00000628

## DEFINITIONS

"Bankruptcy Case" means *In re Highland Capital Management, L.P.*, Case No. 19-34054-sgj (Bankr. N.D. Tex.) and its related proceedings.

"Bankruptcy Court" means the U.S. Bankruptcy Court for the Northern District of Texas, Dallas Division.

"Business Day" means any day other than (i) a Saturday or a Sunday, (ii) a day on which the Federal Reserve Bank of New York or the New York Stock Exchange is closed, or (iii) a day on which banks in the States of Texas are required, or authorized by law, to close.

"Claims" means any claims, debts, liabilities, demands, obligations, breaches of contract, breaches of duty or any relationship, misfeasance, malfeasance, promises, acts, omissions, agreements, liens, losses, costs and expenses (including attorney's fees and related costs), damages, injuries, suits, actions, and causes of action of whatever kind or nature, whenever and however, arising, whether known or unknown, suspected or unsuspected, matured or unmatured, liquidated or unliquidated, contingent or fixed, at law or in equity, statutory or otherwise.

"Committee" means the official committee of unsecured creditors appointed in the Bankruptcy Case.

"Confirmation Order" means that certain *Order Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (ii) Granting Related Relief* [Docket No. 1943], as conformed in accordance with the Fifth Circuit's rulings.

"DAF/HMIT Released Parties" means [PATRICK TO PROVIDE].

"Effective Date" means the date on which the Bankruptcy Court enters an order approving the material terms of this Agreement.

"Gatekeeper" means the gatekeeping provision contained in Article IX. F of the Plan as of August 11, 2021.

"Highland" means Highland Capital Management, L.P.

"Highland Entities" means collectively Highland, the Highland Claimant Trust, the Highland Litigation Sub-Trust, and the Highland Indemnity Trust.

"Highland Released Parties" means collectively (i) the Highland Entities, (ii) any entity directly or indirectly majority-owned and/or controlled by any Highland Entity, (iii) any entity directly or indirectly managed by any Highland Entity whether by contract or otherwise (the entities described in clauses (i)-(iii), collectively, the "Highland Parties"), (iv) each of the Highland Parties' trustees and administrators (including the trustees of the Highland Claimant Trust, Highland Litigation Sub-Trust, and Highland Indemnity Trust), current and former officers, executives, agents, directors, advisors, administrators, managers, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, affiliates, successors, designees, and assigns, (v) the current and

001265

HCMLPHMIT00000629

former members of the Oversight Board of the Highland Claimant Trust and their affiliates, including Farallon Capital Management, LLC, Stonehill Capital Management, LLC, Muck Holdings LLC, and Jessup Holdings LLC, (vi) the Independent Board and its members John Dubel, James P. Seery, Jr., and Russell Nelms, (vii) James P. Seery, Jr., individually and in all capacities for any Highland Released Party or Covered Party, including, but not limited to, as Chief Executive Officer of Highland Capital Management, L.P., Claimant Trustee of the Highland Claimant Trust, and the Indemnity Trust Administrator of the Highland Indemnity Trust, (viii) the Committee and each of its members, (ix) the professionals (and their respective firms) (a) retained by Highland or the Committee during the Bankruptcy Case or which provided services to Highland or the Committee during the Bankruptcy Case and (b) retained by any Highland Party on or after August 11, 2021, (x) any person or entity indemnified by any Highland Entity (the entities described in clauses (i)-(x), collectively, the "Covered Parties"), and (xi) each Covered Party's current and former officers, executives, agents, directors, advisors, managers, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, affiliates, successors, designees, and assigns, if not otherwise included in the defined term "Covered Parties;" provided, however, and for the avoidance of doubt, and without in any way limiting the scope of the foregoing, "Covered Parties" include Highland CLO Funding Ltd., Highland Multi Strategy Credit Fund, L.P., Highland Multi Strategy Credit Fund GP, L.P., Highland Multi Strategy Credit Fund, Ltd., Highland Select Equity Master Fund, L.P., Highland Select Equity Fund GP, L.P., Highland Select Equity Fund, L.P., Highland Restoration Capital Partners Master, L.P., Highland Restoration Capital Partners GP, LLC, Highland Restoration Capital Partners, L.P., Gleneagles CLO, Ltd., Aberdeen Loan Funding, Ltd. Argentina Regional Opportunity Fund, Highland Offshore Partners, L.P. (Diversified), Brentwood CLO, Ltd., Eastland CLO, Ltd., Bristol Bay Funding Ltd., Jasper CLO Ltd., Highland Legacy Limited, Grayson CLO, Ltd., Greenbriar CLO, Ltd., Highland Loan Funding V Ltd., Highland Park CDO I, Ltd., Liberty CLO, Ltd., Valhalla CLO, Ltd., Stratford CLO Ltd., South fork CLO, Ltd., Pam Capital Funding, L.P., Stonebridge-Highland Healthcare Private Equity Fund, Pamco Cayman Ltd., Red River CLO, Ltd., Rockwall CDO II Ltd., Rockwall CDO, Ltd., Westchester CLO, Ltd. Longhorn Credit Funding A, Longhorn Credit Funding B, PensionDanmark Pensionsforsikringsaktieselskab, Highland Dynamic Income Master Fund L.P., Highland Prometheus Master Fund, L.P., Highland Flexible Income UCITS Fund, and Acis CLO 2017-7, Ltd. *Notwithstanding the forgoing*, "Highland Released Parties" does not include James Dondero, Scott Ellington, Isaac Leventon, or any entity directly or indirectly owned (in whole or in part) and/or controlled by Mr. Dondero or Mr. Ellington or Mr. Leventon.

"Indemnity Trust Administrator" has the meaning given to it in the Indemnity Trust Agreement.

"Indemnity Trust Agreement" means that certain *Indemnity Trust Agreement*, effective as of August 16, 2021.

"Independent Board" means the independent board appointed by the Bankruptcy Court on January 9, 2020, pursuant to that certain *Order Approving Settlement with Official Committee of Unsecured Creditors Regarding Governance of the Debtor and Procedures for Operations in the Ordinary Course* [Docket No. 339].

"LPA" means that certain *Fifth Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P.*

001266

HCMLPHMIT00000630

"<u>Original Plan</u>" means that certain *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* attached as Exhibit A to the *Order (A) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as modified) and (B) Granting Related Relief*, filed at Docket No. 1943 on the Bankruptcy Court's docket.

"<u>Oversight Board</u>" means the oversight board of the Highland Claimant Trust.

"<u>Parties</u>" means [insert signatories].

"<u>Plan</u>" means that certain *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* as conformed in accordance with the Fifth Circuit's rulings.

"<u>Plan Documents</u>" has the meaning given to it in the Plan.

"<u>Plan Protections</u>" means, collectively, the provisions of the Plan contained in Article IX thereof.

"<u>Sub-Trust Agreement</u>" means that certain *Highland Litigation Sub-Trust Agreement*.

"<u>Trust Agreement</u>" means that certain *Highland Claimant Trust Agreement.*

001267

HCMLPHMIT00000631

**EXHIBIT**

001268

**From:** "John A. Morris" <jmorris@pszjlaw.com>
**To:** "Louis M. Phillips" <louis.phillips@kellyhart.com>
**Cc:** "Jeff Pomerantz" <jpomerantz@pszjlaw.com>, "Amelia L. Hurt"
<amelia.hurt@kellyhart.com>
**Subject:** Highland/DAF/HMIT: Follow up
**Date:** Mon, 7 Apr 2025 15:09:00 +0000
**Importance:** Normal
**Inline-Images:** image001.png; image002.jpg

---

Louis,

Following up.

1. <u>Meeting</u>.  We propose that the business folks (including Mark and Jim) meet in person at Highland's offices at 10:30 am Central Time tomorrow (casual dress, no suits), with lawyers participating by Zoom; if you want to attend in person, Jeff may attend in person as well so let me know (I am unable to attend in person because of other commitments).

2. <u>DAF/HMIT information request</u>.  During tomorrow's meeting, Highland will provide the information requested below (and can quickly walk through the same information that was presented the other day for your benefit if that would be helpful).

3. <u>Highland information request</u>.  As requested, please provide a copy of the Remittance Agreement referred to in the Intercreditor Agreement and share with us any other agreements or information concerning any current or former connection between DAF/CLOH/HMIT and Dondero/Okada/Dugaboy, including the funding of the HMIT litigation (that Mark testified to in June 2023) and the disposition of the HMIT Notes made in favor of Dugaboy and Okada. We just need to know how any agreement may impact the Dondero side, if at all.

4. <u>NDA signatures</u>.  Please let us know who will be participating on your side and send any Joinders not previously sent (I'm not sure we received one for you and Amelia).

We look forward to your prompt response.

Regards,

John

**John A. Morris**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 212.561.7760
Tel: 212.561.7700 | Fax: 212.561.7777
jmorris@pszjlaw.com
vCard | Bio | LinkedIn



Los Angeles | New York | Wilmington, DE | Houston | San Francisco

HCMLPHMIT00000642

**From:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Sent:** Monday, April 7, 2025 8:12 AM
**To:** John A. Morris <jmorris@pszjlaw.com>
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>; Amelia L. Hurt <Amelia.Hurt@kellyhart.com>
**Subject:** RE: Highland/DAF/HMIT: Follow up

John,

As I mentioned on the phone Friday, we request a breakdown and documentation with specificity of any (i) accrued liabilities, (ii) anticipated success or severance (or completion) payments or bonuses, (iii) continuing admin budget for the Claimant trust, Indemnification sub trust and/or litigation sub trust, and (iv) the identity and amount and basis for any holdback(s).

We are available Tuesday in Dallas. How many from your side would be participating in person? I am trying to get my travel plans situated and to make sure my travel might add to the process (for example if you, Jeff, et al from Pachulski are attending remotely so might I). I believe I can get an early flight out in the morning arriving around 7:00 am or a bit later one arriving around 8:45.

**Louis M. Phillips**
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT: 225-338-5308

louis.phillips@kellyhart.com
www.kellyhart.com

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

HCMLPHMIT00000643

**From:** John A. Morris <jmorris@pszjlaw.com>
**Sent:** Friday, April 4, 2025 3:54 PM
**To:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>; Amelia L. Hurt <Amelia.Hurt@kellyhart.com>
**Subject:** Highland/DAF/HMIT: Follow up

EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.

Louis:

I'm writing to follow up on several things.

1. <u>Litigation Protections</u>.  Attached are the "Litigation Protections" I mentioned.  They are still subject to review and material change but wanted to share them now.

2. <u>Follow up information</u>.  It sounds like yesterday's Zoom meeting was helpful.  Please let us know if there is any other information your clients need to assess the situation.

3. <u>HCMLP's diligence</u>.  We'll have some questions on our end, but for now, please send us the Remittance Agreement referred to in the Intercreditor Agreement.

4. <u>Joinder signature</u>.  For completeness, please send us Shawn's signature page.

5. <u>Preliminary terms/structure</u>.  We hope to provide over the weekend a set of bullet points concerning possible terms and structure of an agreement.

6. <u>Further meeting</u>.  Some or all of us are prepared to meet in Dallas on Tuesday at a time to be determined (some may participate by Zoom).  Please let us know if that is possible as soon as you're able so we can make travel arrangements.

Please let me know if you have any questions and thank you for your continued cooperation.

Regards,

John


**John A. Morris**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 212.561.7760
Tel: 212.561.7700 | Fax: 212.561.7777
jmorris@pszjlaw.com
vCard | Bio | LinkedIn



Los Angeles | New York | Wilmington, DE | Houston | San Francisco

001271

HCMLPHMIT00000644

**EXHIBIT**

**From:** "John A. Morris" <jmorris@pszjlaw.com>
**To:** "Louis Phillips" <Louis.Phillips@kellyhart.com>
**Cc:** "Jeff Pomerantz" <jpomerantz@pszjlaw.com>, "amelia.hurt@kellyhart.com" <Amelia.Hurt@kellyhart.com>
**Subject:** Highland: Privileged and confidential settlement communication and materials
**Date:** Tue, 8 Apr 2025 20:22:22 +0000
**Importance:** Normal
**Attachments:** Privileged_and_confidential_-_DRAFT_4.8.25_discussion_materials.pdf; PRIVILEGED_AND_CONFIDENTIAL_DRAFT_SETTLEMENT_STRUCTURE_4.8.25.pdf; HFP_-_Entity_Chart_-_2011.pdf
**Inline-Images:** image001.jpg

---

E-MAIL AND ATTACHMENTS DELIVERED PURSUANT TO FED. R. EVID. 408
AND APPLICABLE CONFIDENTIALITY AGREEMENT

Louis,

Thank you and your team for your time today.

As a follow up, attached are the following:

1. Discussion materials from today (draft numbers)
2. Discussion materials from today (draft structure)
3. HFP entity chart from 2011

On your end, please send us the following at your earliest convenience:

1. Copy of settlement agreement circa 2022 between HMIT and Dugaboy/Okada entities
2. Copy of operative document relating to the [redemption] of the Dolomiti/Hakusan entities limited partnership interest in Rand PE Fund I
3. Copy of operative document providing for the [extinguishment] of participating shares of the supporting organizations of Charitable DAF Holdco, Ltd.

Let's confer as soon as you've had a chance to consider these matters with your team.

Please let us know if you have any questions in the interim.

Regards,

John

**John A. Morris**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 212.561.7760
Tel: 212.561.7700 | Fax: 212.561.7777
jmorris@pszjlaw.com
vCard | Bio | LinkedIn

001273

HCMLPHMIT00000656



Los Angeles | New York | Wilmington, DE | Houston | San Francisco

001274
HCMLPHMIT00000657

Privileged and confidential - provided pursuant to Rule 408 and the binding Confidentiality Agreement executed amongst the Parties

**Current Snapshot - remaining assets [1]**
*in USD millions, except percentages*

| Asset description | Ref | Claimant Trust [2] | Indemnity Trust [3] | Combined |
|---|---|---|---|---|
| Cash/treasuries | [4] | $    20.3 | $    67.9 | $    88.1 |
| Disputed Claims Reserve | [5] | 2.7 | - | 2.7 |
| Dugaboy Note receivable | [6] | - | 17.6 | 17.6 |
| HCM Korea (note and equity) | [7] | 3.0 | - | 3.0 |
| HCLOF shares | [8] | 2.5 | - | 2.5 |
| HCRE bad faith sanction | [9] | 0.9 | - | 0.9 |
| Kirschner Litigation (main adversary) | [10] | *See footnote* | - | - |
| HMIT note | [11] | *See footnote* | - | - |
| **Total assets** | | **$    29.4** | **$    85.5** | **$    114.8** |

[1] As of April 3, 2025.  This disclosure is NOT a balance sheet prepared in accordance with US GAAP.  In some instances, values are estimated and actual amounts retained may ultimately differ materially.  No liabilities are included herein, including existing liabilities, contingent liabilities, indemnification obligations, or considerations for future expenses, including costs of liquidation that have not yet been, but will be incurred.

[2] Claimant Trust, including consolidation of the various "Plan" entities other than the Indemnity Trust (HCMLP GP, LLC, Highland Capital Management, LP, Litigation Sub-Trust), each on a standalone basis, with intercompany balances eliminated.

[3] Stand-alone assets retained by the Indemnity Trust.  Other than less than <$1M retained in cash, remainder of cash is invested in US treasuries with maturities less than 1 year.  Excludes <$1M of cash/treasuries on account of the Okada settlement.  Pursuant to the Okada settlement, these funds are segregated and are to be repaid to Okada as first-out funds to the extent that any excess exists in the Indemnity Trust.  Accordingly, in a settlement scenario, these funds would not be available to Class 10 interest holders.

[4] Cash and treasuries includes full face amount of treasuries maturing within 6 months and has also been adjusted up to assume the near-term receipt of approximately $5 million from Highland CLO Funding, Ltd.

[5] Segregated funds invested in US treasuries with near-term maturities.  Funds are reserved for the Daugherty tax proof of claim, which remains pending.  If Highland successfully objects to the proof of claim, funds would be released from the Disputed Claims Reserve.  If the claim is ultimately allowed in full or in part, funds would be paid to Daugherty on account of the allowed claim and any excess remaining would be released from the Disputed Claims Reserve.

[6] Note receivable from The Dugaboy Investment Trust ("Dugaboy").  ~$17.4M principal and ~$0.2M interest currently outstanding, accruing at approximately $1,553/day.  Fair value is less than face value as the note is long-dated, accruing interest at 3.26% and makes annual principal and interest payments through 2046, with the last of such payments due December 31, 2046.  Dugaboy is current on its payments, including with the most recent payment completed for year-end 2024.  Principal payments due are $790,215 yearly, plus accrued interest, which declines each year as principal declines.  The next interest payment due December 31, 2025 is $566,677.  No assurance that Dugaboy will continue making the annual principal and interest payments when due, although the holder of the note could accelerate and pursue collection in that event.

[7] 100% equity interest in Highland Capital Management Korea Limited ("HCM Korea"), plus $2.5 million note from HCM Korea.  Ultimate value dependent on the monetization of the Caris Life Sciences investment through an expected 2025 IPO, which is expected to be in the range of $2 million to $5 million, but could also exceed or fall short of this range.

[8] Shares of Highland CLO Funding, Ltd. ("HCLOF"), a Guernsey company.  Value has been adjusted down to assume a near-term cash dividend of approximately $5 million.  Remaining value is primarily tied up in the "Acis 6" asset, for which a NexPoint entity has recently initiated an appeal in the 2nd Circuit Court of Appeals.  Ultimate value dependent on the Acis 6 litigation and costs of winding down HCLOF and expected to be in the range of $2 million to $4 million, but could also exceed or fall short of this range.

[9] Bad faith sanction against HCRE of $825,940.55, currently on appeal in the District Court.  Fully briefed since November 2024.  Award was posted in the court registry and is accruing post-judgment interest at a rate of $118.80/day.  Approximately $870k is outstanding, including post-judgment interest currently.  No assurance that the appeal will resolve favorably and as a result, there is no assurance that any amounts will ultimately be collected.

[10] Litigation brought by Marc Kirschner as Litigation Trustee to the Litigation Sub-Trust.  Adversary proceeding is currently stayed.  The value of the claims, their collectibility, and the costs of their continued pursuit is ultimately unknown.  For purposes of aggregating the current value of assets for this illustrative presentation, no value has been ascribed.

[11] Within the litigation brought by Marc Kirschner as Litigation Trustee to the Litigation Sub-Trust were claims against HMIT relating to the "HMIT note" receivable, which had originally been a portion of the consideration HMIT paid for acquiring limited partnership interests in Highland in 2015.  These claims are also stayed as part of the overall stay in the case.  The value of the note, its collectibility, and the costs of their continued pursuit is ultimately unknown.  For purposes of aggregating the current value of assets for this illustrative presentation, no value has been ascribed.

001275
HCMLPHMIT00000658

Case 19-34054-sgj11    Doc 4255-45    Filed 06/20/25    Entered 06/20/25 21:39:29    Desc
Exhibit 45    Page 5 of 7

**Privileged and confidential - provided pursuant to Rule 408 and the binding Confidentiality Agreement executed amongst the Parties**

**Uses: how much could be left after satisfying Class 9 claims?**
*in USD millions*

| | | |
|---|---|---|
| **Total combined assets** | $ | **114.8** *see "current snapshot"* |
| *Less:* | | |
| Oustanding Class 9, including interest | | (21.0) |
| Existing Incentive Compensation triggered through full payment of Class 9 | | (2.5) |
| Long-dated assets - Dugaboy Note receivable | | (17.6) [1] |
| Wind down expenses and accrued liabilities | | (20.0) [2] |
| Pending Class 8 claims (Daugherty tax) | | *See footnote* [3] |
| Indemnification obligations | | *See footnote* [4] |
| **Net expected cash prior to any indemnification considerations and necessary reserves** | $ | **53.7** [5] |
| **Plus: Non-cash assets - Dugaboy Note receivable** | $ | **17.6** |

[1] Note receivable from The Dugaboy Investment Trust ("Dugaboy"). ~$17.4M principal and ~$0.2M interest currently outstanding, accruing at approximately $1,553/day. Fair value is less than face value as the note is long-dated, accruing interest at 3.26% and makes annual principal and interest payments through 2046, with the last of such payments due December 31, 2046. Dugaboy is current on its payments, including with the most recent payment completed for year-end 2024. Principal payments due are $790,215 yearly, plus accrued interest, which declines each year as principal declines. The next interest payment due December 31, 2025 is $566,677. No assurance that Dugaboy will continue making the annual principal and interest payments when due, although the holder of the note could accelerate and pursue collection in that event.

[2] Amount is ultimately TBD and will ultimately depend on litigation, timing of monetization of remaining assets, and operational needs. For example, if additional litigation is brought forth, outside counsel will incur additional time and expense and certain employees may need to be retained for a longer period of time. If actual expenses exceed $20 million, less cash would be potentially available after Class 9; if actual expenses fall short of $20 million, more cash would be potentially available after Class 9.

[3] For illustrative purposes of this presentation, $0 is assumed. However, if the claim is ultimately allowed in full or in part, funds would be paid to Daugherty on account of the allowed claim, which would reduce cash potentially available after Class 9. No assurances can be provided that the claim will be completely disallowed.

[4] For illustrative purposes of this presentation, $0 is assumed. Thus, all funds utilized for purposes of satisfying indemnification obligations will reduce the funds available dollar for dollar. Under current conditions, it is believed that at least $100 million may be needed for indemnification obligations and as a result, there is not sufficient liquidity at this time to even make any further payments to Class 9 interest holders. Assuming a final/non-appealable order, providing for among other things, a complete cessation of litigation and comprehensive releases from the HMIT/DAF parties, the need for indemnification reserves could be greatly reduced.

[5] Assumes HCM Korea, HCLOF, and HCRE bad faith sanctions are monetized for the amounts described on the "current snapshot" ($6.4 million in aggregate). Monetization in excess of these amounts would result in more cash remaining; monetization below those amounts would result in less cash remaining.

2

001276

HCMLPHMIT00000659

*Privileged and confidential - provided pursuant to Rule 408 and the binding Confidentiality Agreement executed amongst the Parties*
**Information request made April 7, 2025**

**(i) Accrued liabilities**

| | Entity | | Amount | |
|---|---|---|---|---|
| End of case/severance bonuses - remaining employees | HCMLP | $ | 1,230,000 | |
| Accounts payable book balance (as of March 31, 2025) | HCMLP | | 576,207 | |
| Estimate of other incurred, but not invoiced for work performed | HCMLP | | 500,000 | general estimate |
| **Sub-total (i)** | | **$** | **2,306,207** | A |

| **Other liabilities not included in section totals above** | **Entity** | | **Amount** | |
|---|---|---|---|---|
| Distribution payable | HCT | $ | 2,656,732 | previously authorized distributions related to pending Daugherty claim (has offsetting cash reserve; see current snapshot); to be released following resolution of the pending claim |
| Okada settlement payable | Indemnity Trust | $ | 870,000 | first-out dollars in treasuries (amount is face of such treasuries) - for purposes of settlement discussions, the cash reserved related to the Okada settlement and the potential first-out dollars are excluded as irrelevant |

**(ii) Anticipated success or severance (or completion) payments or bonuses**

| | Entity | | Amount | |
|---|---|---|---|---|
| Incentive Compensation Plan | HCMLP/HCT | $ | 2,480,088 | assuming full payment of the Class 9's; calc'd as 14.71516% on remaining distributions to Class 9 with a time discount applied to the gross dollars distributed |
| Retention Date payments - employees | HCMLP | | 925,000 | Retention Date is 9/30/2025 |
| Nate Burns (employee) incentive comp | HCMLP | | --- | Note receives a portion of the performance fees earned related to HCM Korea; assuming zero for presentation purposes as amounts would be a percentage of incremental value received from HCM Korea |
| **Sub-total (ii)** | | **$** | **3,405,088** | B |

**(iii) Continuing admin budget for the Claimant Trust, Indemnification sub trust and/or litigation sub trust**

| | | | | |
|---|---|---|---|---|
| See subsequent page; Sub-total (iii) | | $ | 16,768,874 | C - additional detail contained on separate page |

| **Sum of A, B, and C** | | **$** | **22,480,169** | |
|---|---|---|---|---|

**(iv) Identity and amount and basis for any holdback(s)**

| **Identity:** | | | **Amount** | **Basis for amount** |
|---|---|---|---|---|
| Sum of A, B, and C from above | | $ | 22,480,169 | from above; See notes and assumptions related to items A, B, and C |
| Incremental operational reserve | | | 5,000,000 | Excess cash to retain to cover potential cost overages - largest risk is incremental litigation and resulting time and expense of PSZJ plus longer retention of employees/CEO to assist with litigation, if applicable |
| Indemnification reserves | | | 35,000,000 | Assumes comprehensive releases and settlement amongst the HMIT/DAF Parties; at least $100 million if no settlement |
| Sum of items above | | $ | 62,480,169 | to below |

| Calc of estimated cash available for a prelim distribution to Class 10, assuming settlement | | | $ millions | |
|---|---|---|---|---|
| Current cash/treasuries (see previous page) | | $ | 88.1 | Cash and treasuries (including all Plan entities) |
| Assets expected to monetize in next 12 months | | | 6.4 | HCM Korea, remainder of HCLOF, bad faith sanction (But excluding near-term Dugaboy Note P&I amortization due December 2025) |
| **Sub-total** | | **$** | **94.5** | |
| less: outstanding Class 9, including interest | | | (21.0) | current outstanding Class 9 with interest |
| less: holdbacks (from above) | | | (62.5) | from above |
| Remaining cash available for initial distribution to Class 10 | | $ | 11.1 | [1] |
| **Round to nearest million** | | **$** | **11.0** | |

[1] Possibility of incremental amount of up to $2.7 million in the event of a successful opposition to the pending Daugherty tax POC, along with incremental interim cash received from Dugaboy Note P&I amortization. Amount also does not include non-cash assets (litigation, outstanding Dugaboy Note, etc).

001277
HCMLP-HMIT00000660

Case 19-34054-sgj11   Doc 4255-45   Filed 06/20/25   Entered 06/20/25 21:39:29   Desc
Exhibit 45   Page 7 of 7

*Privileged and confidential - provided pursuant to Rule 408 and the binding Confidentiality Agreement executed amongst the Parties*
**Projected Budget Build-Up**

Remaining expected budget assuming a comprehensive settlement with HMIT/DAF Parties (excluding accrued liabilities and contingencies separately discussed)

| Description | Total for budget | Notes and assumptions |
|---|---|---|
| Pachulski Stang and other litigation or BK-related | $    5,000,000 | Primary issues: expected new litigation to defend (actual causes of action unknown) from Dondero parties, incorporation of HMIT/DAF settlement and approval/appeals of same, appeals of "valuation complaint" and "HCRE bad faith", extension of the Trust for 1 yr. and dissolution issues. Ultimate amount required could vary materially higher or lower. |
| HCMLP employees salary and benefits (other than CEO) | 4,084,354 | Assumes declining headcount from 6 to 3, ending August 2026 (monthly trending from approx. $300k/month currently to approx. $200k/month at end) |
| Claimant Trustee/CEO salary | 2,700,000 | Assumes 18 months at $150k/month |
| Litigation Trustee | 360,000 | Assumes 18 months at $20k/month |
| Independent Member | 225,000 | Assumes 18 months at $12.5k/month |
| Litigation trust (other than Trustee) | 250,000 | Assuming minimal time and expense other than in conjunction with transfer of main case |
| Incentive Compensation on distributions to Cl. 10 | TBD | Provide for alignment in regards to quantum and timing of distributions and management of costs |
| | | |
| *Overhead related* | | |
| Facilities/offsite storage and related | 1,079,121 | Office space through end of 2026 and offsite document retention through 2028 |
| External tax | 1,000,000 | Declining each year with final year for tax year 2027 |
| IT costs | 701,760 | Cloud storage, network infrastructure through 2027, email storage through 2030 |
| Accounting systems and information | 331,045 | General retention and maintenance through 2028 (primarily Oracle maintenance) |
| Other professionals | 200,000 | Misc reserve for other professionals |
| Other misc overhead | 200,000 | Misc reserve for other overhead, T&E, entity wind-up costs, etc |
| Indemnification expenses | 200,000 | Assuming misc. expenses from misc. matters |
| US Trustee | 437,594 | Assuming 0.8% of budget + accruals + distributions (assuming $30M total) |
| | | |
| **Grand total** | $    16,768,874 | *to previous page* |

001278
HCMLPHMIT00000661

**EXHIBIT**

001279

**From:** "John A. Morris" <jmorris@pszjlaw.com>
**To:** "Louis Phillips" <Louis.Phillips@kellyhart.com>
**Cc:** "Jeff Pomerantz" <jpomerantz@pszjlaw.com>, "amelia.hurt@kellyhart.com"
<Amelia.Hurt@kellyhart.com>
**Subject:** Highland: Confidential Settlement Communication
**Date:** Wed, 16 Apr 2025 20:58:17 +0000
**Importance:** Normal
**Attachments:** PRIVILEGED_AND_CONFIDENTIAL_DRAFT_SETTLEMENT_STRUCTURE_CLEAN
_4.16.25.pdf;
PRIVILEGED_AND_CONFIDENTIAL_DRAFT_SETTLEMENT_STRUCTURE_REDLI
NE_4.16.25.pdf; Privileged_and_Confidential_-_Indemnity_Trust_2025-4-16_Draft.pdf;
Highland_Indemnity_Trust_-
_Second_Amended_and_Restated_Indemnity_Trust_Agreement.pdf
**Inline-Images:** image001.jpg

---

COMMUNICATION TENDERED PURSUANT TO FED. R. EVID. 408
AND THE PARTIES' CONFIDENTIALITY AGREEMENT

Louis,

We're following up on recent discussions, including the call last Friday between Mark Patrick and Jim Seery.

We are providing three groups of documents: (a) a revised settlement structure (and black line) that takes into account the discussion between Mark and Jim; (b) an illustration of sources/uses and plausible timeline for payments; and (c) the Second Amended and Restated Indemnity Trust Agreement (which we expect to be executed in the coming days).

Specifically, please find attached the following:

1. Revised draft of settlement structure (Clean)
2. Revised draft of settlement structure (Redlined against version from last week)
3. Illustrative sources and uses of timing/amounts of potential future Indemnity Trust payouts
4. Second Amended and Restated Indemnity Trust Agreement
    a. The provisions we believe the HMIT team should focus on to understand the uses and limitations of the Indemnity Trust are:
        i.   Intro and First Whereas Clause with certain definitions
        ii.  Section 1.1

        1. Beneficiaries
        2. Indemnified Parties
        3. Indemnity Obligations
        4. Indemnity Trust Account
        5. Indemnity Trust Assets
        6. Trust Indemnified Parties
        iii. Section 2.1(c)
        iv.  Section 2.4
        v.   Section 3.5
        vi.  Article VIII
        vii. Section 9.12 (Okada)

HCMLPHMIT00000672

Jim and his team would like to walk you and your team through these documents. We have a Board call tomorrow afternoon so if we could speak tomorrow until 3:00 pm Eastern, that would be ideal (we believe 90 minutes is sufficient). If that is not feasible, we can also be available until 1:00 pm Eastern on Friday.

Finally, if Mr. Shields is going to review any of the attached documents or participate in our discussions, please be sure to send his Joinder in advance.

Please let us know what works for your side.

Regards,

John

**John A. Morris**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 212.561.7760
Tel: 212.561.7700 | Fax: 212.561.7777
jmorris@pszjlaw.com
vCard | Bio | LinkedIn



Los Angeles | New York | Wilmington, DE | Houston | San Francisco

---

DISCLAIMER- This email is intended for the recipient(s) only and should not be copied or reproduced without explicit permission. The material provided herein is for informational purposes only and does not constitute an offer or commitment, a solicitation of an offer, or any advice or recommendation, to enter into or conclude any transaction. It may contain confidential, proprietary or legally privileged information. If you receive this message in error, please immediately delete it.

HCMLPHMIT00000673

## SECOND AMENDED AND RESTATED INDEMNITY TRUST AGREEMENT

This Second Amended and Restated Indemnity Trust Agreement (this "Agreement"), dated as of [●], 2025, by and among the Highland Claimant Trust, a Delaware statutory trust, as grantor (the "Grantor"), James P. Seery, Jr., as indemnity trust administrator (the "Indemnity Trust Administrator," which term shall include any successor Indemnity Trust Administrator), Wilmington Trust, National Association, a national banking association ("WTNA"), as indemnity trustee, for the benefit of the Beneficiaries (in such capacity hereunder, and not in its individual capacity, the "Indemnity Trustee"), and WTNA, as the Delaware trustee (in such capacity hereunder, and not in its individual capacity, the "Delaware Trustee") (collectively, the "Parties"), amends and restates the First Amended and Restated Indemnity Trust Agreement entered into by and among the Parties, effective as of July 1, 2024 (the "Prior Agreement"). Capitalized terms used herein but not defined shall have the respective meanings assigned thereto in Section 1.1.

## RECITALS

WHEREAS, the Parties entered into the Indemnity Trust Agreement, effective as of August 16, 2021 (the "Original Indemnity Trust Agreement") to establish a Delaware statutory trust, the Indemnity Trust, for the benefit of the Beneficiaries, (a) to secure the performance by each of the Claimant Trust, the Litigation Sub-Trust and the Reorganized Debtor of its indemnity obligations as specified in (i) Section 8.2 of that certain Claimant Trust Agreement, (ii) Section 8.2 of the Litigation Sub-Trust Agreement and (iii) Section 10 of the Reorganized Limited Partnership Agreement, establishing the Reorganized Debtor pursuant to the Plan (the foregoing (i)-(iii), the "Indemnity Obligations"), and (b) following the dissolution of the Claimant Trust, the Litigation Sub-Trust or the Reorganized Debtor, as applicable, to be the primary source of indemnification for the respective Indemnity Obligations, in each case regardless of whether such Indemnity Obligations survive the dissolution of the Claimant Trust, the Litigation Sub-Trust or the Reorganized Debtor, as applicable;

WHEREAS, the Indemnity Trust Administrator agreed to act as administrator hereunder to direct the Indemnity Trustee with respect to the transfer, distribution and release of Indemnity Trust Assets;

WHEREAS, the Indemnity Trustee agreed to act as trustee hereunder to hold and apply the Indemnity Trust Assets on behalf of the Indemnity Trust, as specified herein, for the sole use and exclusive benefit of the Beneficiaries;

WHEREAS, the Indemnity Trust is the payee under the Indemnification Funding Note;

WHEREAS, the Indemnification Funding Note requires the payors thereunder to make payments on the Indemnification Funding Note so that the Indemnity Trust Assets are not less than $25 million;

WHEREAS, the Grantor initially funded the Indemnity Trust by depositing $2.5 million in cash and the Indemnification Funding Note into the Indemnity Trust Account;

001282

HCMLPHMIT00000674

WHEREAS, the payors funded the Indemnification Funding Note so that the Indemnity Trust Account held approximately $25 million in cash Assets;

WHEREAS, Section 2.3(b) of the Original Indemnity Trust Agreement authorized the Grantor to transfer Assets into the Indemnity Trust Account in excess of the amount due on the Indemnification Funding Note;

WHEREAS, the Grantor regularly assesses the potential magnitude of Indemnity Obligations and whether the Indemnity Trust Assets are sufficient to cover all current or potential Indemnity Obligations;

WHEREAS, the Grantor's assessment and re-assessment of the magnitude of potential Indemnity Obligations is continually informed by developments in litigations related to the Plan, and the costs related thereto, taken against the Grantor and other Trust Indemnified Parties, as well as actions against third-parties that relate to the Plan or Trust Indemnified Parties;

WHEREAS, based upon the Grantor's initial re-assessment of the potential magnitude of Indemnity Obligations, the Grantor determined that $25 million in the Indemnity Trust Account was likely insufficient to satisfy all Indemnity Obligations then existing or arising in the future, on March 13, 2023, the Grantor transferred an additional interim amount of $7 million in cash into the Indemnity Trust Account;

WHEREAS, effective May 3, 2023, the Parties amended the Original Indemnity Trust Agreement by entering into the First Amendment to Indemnity Trust Agreement to clarify that the transfer of additional Assets to the Indemnity Trust and any additional transfers of Assets to the Indemnity Trust will be subject to the Indemnity Trust Administrator's ability to transfer Indemnity Trust Assets from the Indemnity Trust Account to the Claimant Trust if he determines, in his sole and absolute discretion, that amounts in excess of $32 million (the then approximate amount of Indemnity Trust Assets) in cash or other Assets are not then required to satisfy potential Indemnity Obligations;

WHEREAS, based upon the Grantor's further re-assessment of Indemnity Obligations and its determination that the Indemnity Trust Assets were then likely insufficient to satisfy all Indemnity Obligations then existing or arising in the future, on May 3, 2023, the Grantor transferred an additional interim amount of $3 million in cash into the Indemnity Trust Account;

WHEREAS, based upon the Grantor's further re-assessment of Indemnity Obligations and its determination that the Indemnity Trust Assets were then likely insufficient to satisfy all Indemnity Obligations then existing or arising in the future, on August 29, 2023, the Grantor transferred an additional interim amount of $15 million in cash into the Indemnity Trust Account;

WHEREAS, that certain Settlement Agreement was entered into as of January 11, 2024, by and among (a) Highland Capital Management, L.P.; (b) the Litigation Trustee; (c) the Claimant Trust; (d) the Indemnity Trust; (e) Mark K. Okada ("Okada"); (f) Mark & Pamela Okada Family Trust – Exempt Trust # 1 ("MAP Trust 1"); (g) Mark & Pamela Okada Family Trust – Exempt Trust #2 ("MAP Trust 2"); and (h) Lawrence Tonomura, solely in his capacity as Trustee of MAP

2

001283

HCMLPHMIT00000675

Trust 1 and MAP Trust 2 ("Tonomura," and together with Okada, MAP Trust 1, and MAP Trust 2, the "Okada Parties"), and such Settlement Agreement became effective when approved by the Bankruptcy Court on February 7, 2024 (as so approved by the Bankruptcy Court, the "Okada Settlement Agreement");

WHEREAS, based upon the Grantor's further re-assessment of Indemnity Obligations and its determination that the Indemnity Trust Assets were then likely insufficient to satisfy all Indemnity Obligations then existing or arising in the future, on December 24, 2024, the Grantor transferred an additional interim amount of $10 million in cash into the Indemnity Trust Account;

WHEREAS, the Grantor continually re-assesses all existing and potential Indemnity Obligations, and based on developing litigation threats and litigation actions involving Trust Indemnified Parties it has determined the current cash and US Treasury balance of the Indemnity Trust Account of approximately $68.7 million (including the face value of US Treasuries with maturities of less than 1 (one) year, but excluding non-cash assets) is likely insufficient to satisfy existing and potential future Indemnification Obligations and additional Assets will be required to satisfy all Indemnification Obligations absent final court resolution of certain litigation issues and/or comprehensive settlements;

WHEREAS, the Grantor has a limited life and (a) certain of the books and records and privileges of its subsidiaries are required by regulation to be maintained beyond its permitted life, and (b) certain of its books and records and privileges and the books and records and privileges of its subsidiaries are essential to support Indemnified Obligations for the benefit of Beneficiaries;

WHEREAS, in order for the Indemnity Trust to efficiently support its obligation to satisfy all Indemnity Obligations for the benefit of the Beneficiaries, it must maintain records and privileges currently maintained for the benefit of the Beneficiaries beyond the life of the Grantor, including by owning additional non-cash Assets contributed to it by the Grantor;

WHEREAS, the Parties desire to make additional amendments consistent with the Prior Agreement in order to facilitate the efficient management of the Indemnity Trust and the Indemnity Trust Assets for the benefit of the Beneficiaries; and

WHEREAS, in consideration of the mutual covenants and promises, and upon the terms and conditions, set forth herein, the Parties agree to amend and restate the Prior Agreement in its entirety as follows:

## DECLARATION OF TRUST

NOW, THEREFORE, in order to declare the terms and conditions hereof, and in consideration of the premises and mutual agreements and covenants herein contained and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the Parties, each of the Grantor, the Indemnity Trust Administrator, and the Indemnity Trustee have executed this Agreement for the benefit of the Beneficiaries.

3

001284

HCMLPHMIT00000676

TO HAVE AND TO HOLD unto the Indemnity Trustee and his successors or assigns in trust, under and subject to the terms and conditions set forth herein and for the benefit of the Beneficiaries, and for the performance of and compliance with the terms hereof.

IT IS FURTHER COVENANTED AND DECLARED that the Indemnity Trust Assets are to be strictly held and applied by the Indemnity Trustee on behalf of the Indemnity Trust subject to the specific terms set forth below.

## ARTICLE I.
## DEFINITION AND TERMS

1.1     Certain Definitions.   Unless the context shall otherwise require and except as contained in this Section 1.1 or as otherwise defined herein, the capitalized terms used herein shall have the respective meanings assigned thereto in the "Definitions," Section 1.1 of the Claimant Trust Agreement, or if not defined therein, shall have the respective meanings assigned thereto in the Plan.   For all purposes of this Agreement, the following terms shall have the following meanings:

(a)     "Acis 7 Proceeds" has the meaning ascribed to it in the Okada Settlement Agreement.

(b)     "Advisory Representatives" means the following individuals who are also current Oversight Board representatives as of the date of this Agreement: (i) independent member Richard Katz, (ii) Muck Holdings LLC representative Michael Linn, and (iii) Jessup Holdings LLC representative Christopher Provost, each to the extent they desire to and do act as Advisory Representatives hereunder.

(c)     "Agreement" has the meaning set forth in the preamble hereto.

(d)     "Assets" means all assets, property, rights, benefits, or privileges that a "liquidated trust" within the meaning of Treasury Regulation Section 301.7701-4(d) may be permitted to hold, which, for the avoidance of doubt, need not be in the form of cash or cash equivalents.

(e)     "Bankruptcy Court" means the Bankruptcy Court for the Northern District of Texas, Dallas Division.

(f)     "Beneficiaries" means the Trust Indemnified Parties.

(g)     "Beneficiary Withdrawal Request" has the meaning set forth in Section 2.4(c).

(h)     "Business Day" means any day other than a Saturday, a Sunday or a day on which banking institutions or trust companies in Wilmington, Delaware are authorized or obligated by law, regulation or executive order to remain closed.

(i)     "Cause" means (i) a person's willful failure to perform his material duties hereunder, which is not remedied within thirty (30) days of notice; (ii) a person's commission of

4

001285
HCMLPHMIT00000677

an act of fraud, theft, or embezzlement during the performance of his or her duties hereunder; (iii) a person's conviction of a felony (other than a felony that does not involve fraud, theft, embezzlement, or jail time) with all appeals having been exhausted or appeal periods lapsed; or (iv) a person's gross negligence, bad faith, willful misconduct, or knowing violation of law in the performance of his or her duties hereunder.

(j)     "Claimant Trust Agreement" means that certain agreement effective as of the Effective Date of the Plan (as may be amended, supplemented, or otherwise modified in accordance with the terms thereof), by and among Highland Capital Management, L.P., the Claimant Trustee, and the Delaware Trustee (as defined in the Claimant Trust Agreement) for the benefit of the Claimant Trust Beneficiaries (as defined in the Claimant Trust Agreement) filed with the Plan Supplement [Docket No. 1811].

(k)     "Claimant Trustee" means James P. Seery, Jr., as the initial "Claimant Trustee" under the Claimant Trust Agreement and as defined in the Plan, and any successor Claimant Trustee that may be appointed pursuant to the terms of the Claimant Trust Agreement.

(l)     "Claimant Trust" means the "Highland Claimant Trust" established in accordance with the Delaware Statutory Trust Act and Treasury Regulation Section 301.7701-4(d) pursuant to the Claimant Trust Agreement.

(m)     "Delaware Statutory Trust Act" means the Delaware Statutory Trust Act, 12 Del. C. §3801, et seq.

(n)     "Delaware Trustee" has the meaning set forth in the preamble hereto.

(o)     "Final Order" means an order or judgment of a court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, seek reconsideration, seek a new trial, reargument, or rehearing and, where applicable, petition for certiorari has expired and no appeal, motion for reconsideration, motion for a new trial, reargument or rehearing or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought, or as to which any motion for reconsideration that has been filed or any motion for a new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice.

(p)     "Indemnification Funding Note" means that certain $25 million note made by Highland Capital Management, L.P., Grantor, and Litigation Sub-Trust, dated August 11, 2021, in favor of the Indemnity Trust, a form of which is attached hereto as Exhibit A.

(q)     "Indemnified Amount" has the meaning set forth in Section 2.4(c).

(r)     "Indemnified Party" has the meaning set forth in Section 7.2(a).

(s)     "Indemnity Obligations" has the meaning set forth in the Recitals hereof.

5

001286

HCMLPHMIT00000678

(t)    "<u>Indemnity Trust</u>" means the "Highland Indemnity Trust" established in accordance with the Delaware Statutory Trust Act and Treasury Regulation Section 301.7701-4(d) pursuant to this Agreement.

(u)    "<u>Indemnity Trust Account</u>" has the meaning set forth in <u>Section 2.1(c)</u>.

(v)    "<u>Indemnity Trust Administrator</u>" has the meaning set forth in the preamble hereto.

(w)    "<u>Indemnity Trust Assets</u>" means (i) all Assets, including, but not limited to, cash, the Indemnification Funding Note, and any cash equivalents, notes, or other Assets held in the Indemnity Trust Account or otherwise owned by the Indemnity Trust or held for the benefit of the Indemnity Trust, and any proceeds realized or received from or with respect to such Assets, and (ii) any Assets transferred by or on behalf of the Grantor to the Indemnity Trust Account on or after the Effective Date.

(x)    "<u>Indemnity Trustee</u>" has the meaning set forth in the preamble hereto.

(y)    "<u>Investment Company Act</u>" means the Investment Company Act of 1940.

(z)    "<u>IRS</u>" means the Internal Revenue Service.

(aa)    "<u>Liability</u>" means any claim, expense, debt, obligation, liability, loss, damages, injury (to person, property or natural resources), penalty, stamp or other similar tax, action, suits, judgment, cost and expense (including costs of investigation and defense and attorneys' fees, costs and expenses), in each case, whether direct or indirect and whether accrued or contingent.

(bb)    "<u>Litigation Sub-Trust</u>" means the sub-trust created pursuant to the Litigation Sub-Trust Agreement, which shall hold the Claimant Trust Assets that are Estate Claims (as defined in the Plan) and investigate, litigate, and/or settle the Estate Claims for the benefit of the Claimant Trust.

(cc)    "<u>Litigation Sub-Trust Agreement</u>" means the litigation sub-trust agreement to be entered into by and between the Claimant Trustee and Litigation Trustee establishing and setting forth the terms and conditions of the Litigation Sub-Trust and governing the rights and responsibilities of the Litigation Trustee.

(dd)    "<u>Litigation Trustee</u>" means Marc S. Kirschner, and any successor Litigation Trustee that may be appointed pursuant to the terms of the Litigation Sub-Trust Agreement, who shall be responsible for investigating, litigating, and settling the Estate Claims for the benefit of the Claimant Trust in accordance with the terms and conditions set forth in the Litigation Sub-Trust Agreement.

(ee)    "<u>MAP Trust 1</u>" has the meaning set forth in the Recitals hereof.

(ff)    "<u>MAP Trust 2</u>" has the meaning set forth in the Recitals hereof.

001287

HCMLPHMIT00000679

(gg)    "<u>Okada</u>" has the meaning set forth in the Recitals hereof.

(hh)    "<u>Okada Parties</u>" has the meaning set forth in the Recitals hereof.

(ii)    "<u>Okada Settlement Agreement</u>" has the meaning set forth in the Recitals hereof.

(jj)    "<u>Original Indemnity Trust Agreement</u>" has the meaning set forth in the preamble hereto.

(kk)    "<u>Oversight Board</u>" means the Oversight Board of the Claimant Trust consisting of (x) independent member Richard Katz, (y) Jessup Holdings LLC, and (z) Muck Holdings LLC.

(ll)    "<u>Permitted Investments</u>" has the meaning set forth in <u>Section 3.1(b)</u>.

(mm)   "<u>PetroCap Proceeds</u>" has the meaning set forth in <u>Section 9.12(a)</u>.

(nn)    "<u>PetroCap Proceeds Demand</u>" has the meaning set forth in <u>Section 9.12(a)</u>.

(oo)    "<u>Plan</u>" means the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) [Docket No. 1808] (as amended [Docket No. 1875]) confirmed pursuant to that certain *Order (i) Confirming the Fifth Amended Plan of Reorganization (as Modified) and (ii) Granting Related Relief* [Docket No. 1943].

(pp)    "<u>Prior Agreement</u>" has the meaning set forth in the preamble hereto.

(qq)    "<u>SLP</u>" has the meaning set forth in <u>Section 9.12(a)</u>.

(rr)    "<u>Termination Date</u>" has the meaning set forth in <u>Section 8.1(d)</u>.

(ss)    "<u>Tonomura</u>" has the meaning set forth in the Recitals hereof.

(tt)    "<u>Trust Indemnified Parties</u>" means the following:

(i)    "Indemnified Parties" under Section 8.2 of the Claimant Trust Agreement and their respective employees, agents and professionals, which are also indemnitees under the same provision;

(ii)    "Indemnified Parties" under Section 8.2 of the Litigation Sub-Trust Agreement and their respective employees, agents and professionals, which are also indemnitees under the same provision; and

(iii)    "Covered Persons" under Section 10 of the Reorganized Limited Partnership Agreement.

(uu)    "<u>Withdrawal Notice</u>" has the meaning set forth in <u>Section 2.4(e)</u>.

7

001288

HCMLPHMIT00000680

(vv)   "<u>WTNA</u>" has the meaning set forth in the preamble hereto.

1.2   <u>General Construction</u>.  As used in this Agreement, the masculine, feminine and neuter genders, and the plural and singular terms or numbers shall be deemed to include the others in all cases where they would apply.  Terms defined in the current tense shall have a comparable meaning when used in the past or future tense and vice versa.  "Includes" and "including" are not limiting and "or" is not exclusive.  References to "Articles," "Sections" and other subdivisions, unless referring specifically to the Plan or provisions of the Bankruptcy Code, the Bankruptcy Rules, or other law, statute or regulation, refer to the corresponding Articles, Sections and other subdivisions of this Agreement, and the words "herein," "hereafter," "hereof" and words of similar import refer to this Agreement as a whole and not to any particular Article, Section, or subdivision of this Agreement.  Amounts expressed in dollars or following the symbol "$" shall be deemed to be in United States dollars.  References to agreements, instruments or other documents shall be deemed to refer to such agreements, instruments or other documents as the same may be amended, restated, supplemented or otherwise modified in accordance with the terms thereof.  Any statute or regulation referred to herein means such statute or regulation as amended, modified, supplemented or replaced from time to time (and, in the case of any statute, includes any rules and regulations promulgated under such statute), and references to any section of any statute or regulation include any successor to such section.

## ARTICLE II.
## INDEMNITY TRUST AND INDEMNITY TRUST ACCOUNT

2.1   <u>Creation of Trust and Establishment of Account</u>.

(a)   Pursuant to the Original Indemnity Trust Agreement, the Indemnity Trust was created as a statutory trust under the Delaware Statutory Trust Act and shall be called the "Highland Indemnity Trust", and the Indemnity Trust is hereby continued.  The Indemnity Trustee shall be empowered to conduct all business and hold all property constituting the Indemnity Trust Assets in such name in accordance with the terms and conditions set forth herein.

(b)   Pursuant to the Original Indemnity Trust Agreement, the Delaware Trustee and the Indemnity Trustee have caused to be executed and filed in the office of the Secretary of State of the State of Delaware a Certificate of Trust for the Indemnity Trust, and each of them agree to execute, such certificates as may from time to time be required under the Delaware Statutory Trust Act or any other Delaware law, in accordance with the terms and conditions set forth herein.

(c)   Pursuant to the Original Indemnity Trust Agreement, the Grantor established a trust account with the Indemnity Trustee in the name of the Indemnity Trust with account no. 150474-000 (the "<u>Indemnity Trust Account</u>"), which shall be a segregated non-interest bearing trust account for the sole use and exclusive benefit of the Beneficiaries upon the terms and conditions hereinafter set forth.  For all purposes of this Agreement, the term "<u>Indemnity Trust Account</u>" means the funds and Assets held by the Indemnity Trustee on behalf of the Indemnity Trust hereunder constituting the corpus of the Indemnity Trust, upon the terms and conditions hereinafter set forth.

8

001289

HCMLPHMIT00000681

2.2     Authorization to Receive Assets.  The Indemnity Trustee and its lawfully appointed successors are authorized and shall have the power to receive such Assets as the Grantor shall transfer or cause to be transferred to the Indemnity Trustee on behalf of the Indemnity Trust, and to hold, invest, reinvest, manage and dispose of the same for the uses and purposes and in the manner and according to the provisions hereinafter set forth.  All such Assets placed in the Indemnity Trust shall at all times be maintained in the Indemnity Trust Account, separate and distinct from all other assets of the Grantor, and within the dominion and control of the Indemnity Trustee on behalf of the Indemnity Trust for the benefit of the Beneficiaries.

2.3     Deposit of Assets to the Indemnity Trust Account.

(a)     Pursuant to the Original Indemnity Trust Agreement, the Grantor transferred to the Indemnity Trustee on behalf of the Indemnity Trust, for deposit in the Indemnity Trust Account, cash in an amount equal to $2,500,000 and an Indemnification Funding Note, the form of which is attached hereto as Exhibit A.

(b)     Thereafter, the Grantor (or any other person on behalf of the Grantor) may from time to time transfer to the Indemnity Trustee on behalf of the Indemnity Trust, for deposit to the Indemnity Trust Account or to be otherwise held by the Indemnity Trustee for the benefit of the Beneficiaries, any Assets, including pursuant to Section 9.12(a) or Section 9.12(b), as payments under the Indemnification Funding Note or otherwise for the benefit of the Beneficiaries; provided that such Assets shall be valued according to their current fair market value.  Any interest or investment income on such Assets, to the extent not invested or reinvested, shall be retained in the Indemnity Trust Account and will be considered a part of the corpus of the Indemnity Trust and included in the balance of the Indemnity Trust Account.  The Indemnity Trustee shall not be responsible for valuing any Indemnity Trust Assets.

(c)     Upon receipt at any time of a contribution or payment from the Grantor (or any other person on behalf of the Grantor) and after giving effect to any payments required to be made hereunder, the Indemnity Trustee shall invest available Indemnity Trust Assets in Permitted Investments but only at and in accordance with the written direction of the Indemnity Trust Administrator; provided, that whether any Indemnity Trust Asset should be held in its original form, disposed of or liquidated, or invested in Permitted Investments shall be determined by the Indemnity Trust Administrator in his sole and absolute discretion.  The Indemnity Trustee may conclusively and exclusively rely on any such investment direction and shall bear no Liability for any loss or other injury based on acting or omitting to act in accordance with such investment direction.  All such Permitted Investments shall constitute Indemnity Trust Assets and be held by the Indemnity Trustee on behalf of the Indemnity Trust in the Indemnity Trust Account for the benefit of the Beneficiaries.  In the absence of such written direction, the Indemnity Trust Assets including any available funds shall be held uninvested in the Indemnity Trust Account.  Any earnings and income shall become part of the Indemnity Trust Assets and disbursed in accordance with this Agreement.  The Indemnity Trustee is hereby authorized and directed to sell or redeem any such investments as it deems necessary to make any payments or distributions required or permitted under this Agreement; provided that the Acis 7 Proceeds and any PetroCap Proceeds may be expended only in the order contemplated in Section 9.12(d) as instructed in writing by the Indemnity Trust Administrator.  The Indemnity Trustee shall have no responsibility or Liability for any loss which may result from any investment or sale of

9

HCMLPHMIT00000682

investment made pursuant to this Agreement or any disbursement instructed by the Indemnity Trust Administrator. The Indemnity Trustee is hereby authorized, in making or disposing of any investment permitted by this Agreement, to deal with itself (in its individual capacity) or with any one or more of its affiliates, whether it or any such affiliate is acting as agent of the Indemnity Trustee or for any third person or dealing as principal for its own account. The Parties acknowledge that the Indemnity Trustee is not providing investment supervision, recommendations, or advice.

2.4     <u>Withdrawals on Behalf of the Beneficiaries</u>.

(a)     The Indemnity Trust shall pay or reimburse the applicable Beneficiary for the amounts requested by such Beneficiary (i) to be paid by the Claimant Trust, the Litigation Sub-Trust or the Reorganized Debtor, as applicable, with respect to its Indemnity Obligations to the extent not otherwise paid by the Claimant Trust, the Litigation Sub-Trust or the Reorganized Debtor, as applicable, and (ii) following the dissolution of the Claimant Trust, the Litigation Sub-Trust or the Reorganized Debtor, as applicable, for any claims that if brought against such Beneficiary would have been subject to indemnification under Section 8.2 of the Claimant Trust Agreement, Section 8.2 of the Litigation Sub-Trust or Section 10 of the Reorganized Limited Partnership Agreement, as applicable, in each case regardless of whether such Indemnity Obligations survive the dissolution or termination and cancellation of the Claimant Trust, the Litigation Sub-Trust or the Reorganized Debtor, as applicable, pursuant to the procedures set forth below. With respect to clause (ii) above, the Indemnity Trust shall assume for the benefit of the Beneficiaries the Indemnity Obligations on the terms set forth herein.

(b)     The Indemnity Trustee shall (i) make withdrawals of Indemnity Trust Assets, as instructed in writing by the Indemnity Trust Administrator as described herein pursuant to a Withdrawal Notice, to satisfy amounts due under the Indemnity Obligations in accordance with this Agreement, and (ii) take any action with respect to the Indemnity Trust Assets, as instructed by the Indemnity Trust Administrator, promptly and, in any event, within three (3) Business Days following receipt of such instruction. The Indemnity Trustee shall be entitled to conclusively and exclusively rely upon any Withdrawal Notice or other written instruction provided to it by the Indemnity Trust Administrator with respect to any withdrawals of Indemnity Trust Assets or other action with respect to the Indemnity Trust Assets in accordance with this Agreement without further inquiry or Liability.

(c)     At any time prior to the dissolution of the Claimant Trust, any Beneficiary who has made a claim for indemnity to the Claimant Trust pursuant to Section 8.2 of the Claimant Trust Agreement, Section 8.2 of the Litigation Sub Trust Agreement or Section 10 of the Reorganized Limited Partnership Agreement, as applicable, but has not been paid in full within fourteen (14) days of such claim for indemnification may make a request for withdrawal of Indemnity Trust Assets from the Indemnity Trust Account by delivering a written notice to the Indemnity Trust Administrator (with a copy to the Indemnity Trustee), substantially in the form attached hereto as <u>Exhibit B</u> ("<u>Beneficiary Withdrawal Request</u>"), setting forth (i) a certification that such Beneficiary has made a claim for indemnification to the Claimant Trust, the Litigation Sub-Trust or the Reorganized Debtor, as the case may be, which was not paid in full within fourteen (14) days of such claim for indemnification and (ii) the amount owed to such Beneficiary with respect to such claim for indemnification (the "<u>Indemnified Amount</u>"). For the

10

001291

HCMLPHMIT00000683

avoidance of doubt, the Indemnity Trustee shall have no duty or Liability to review any Beneficiary Withdrawal Request or verify any information contained therein, it being understood and agreed that the Indemnity Trust Administrator shall be solely responsible for doing so.

(d)     At any time following the dissolution of the Claimant Trust, the Litigation Sub-Trust or the Reorganized Debtor, as applicable, any Beneficiary may make a claim for the Indemnified Amount by making a request for withdrawal of Indemnity Trust Assets from the Indemnity Trust Account by delivering a Beneficiary Withdrawal Request to the Indemnity Trust Administrator (with a copy to the Indemnity Trustee);

(e)     Following receipt of a Beneficiary Withdrawal Request, the Indemnity Trust Administrator shall (i) verify whether such Beneficiary has made a claim for indemnification and has not been paid in full by the Claimant Trust, the Litigation Sub-Trust or the Reorganized Debtor, within fourteen (14) days of such claim for indemnification (provided that this clause (i) shall not be applicable to claims made pursuant to Section 2.4(d)); (ii) review the supporting documents attached to such Beneficiary Withdrawal Request; and (iii) deliver a written notice to the Indemnity Trustee (with a copy to the applicable Beneficiary) in the form attached hereto as Exhibit C (the "Withdrawal Notice"). The Withdrawal Notice shall specify the amount to be paid to the applicable Beneficiary and any applicable wire transfer instructions as may be required by the Indemnity Trustee to make such payment. All payments by the Indemnity Trustee to any Beneficiary hereunder shall be sent by wire transfer. The Indemnity Trustee shall have no obligation to determine whether the Indemnity Trust Administrator has complied with the provisions of this Section 2.4(e). If the Indemnity Trust Administrator does not issue a Withdrawal Notice within two (2) Business Days of receipt of a Beneficiary Withdrawal Request, the Indemnity Trust Administrator shall provide the applicable Beneficiary, no later than the third (3rd) Business Day following receipt of the Beneficiary Withdrawal Request, with an explanation in writing of the reasons for the denial of the Beneficiary Withdrawal Request. All disputes related to Beneficiary Withdrawal Requests shall be resolved by the Bankruptcy Court, or another court of competent jurisdiction, in accordance with Section 9.10 of this Agreement. The Indemnity Trustee is entitled to conclusively rely on any order from the Bankruptcy Court or other court of competent jurisdiction concerning any such disputes.

(f)     Within three (3) Business Days of receipt of such Withdrawal Notice, the Indemnity Trustee shall pay by wire transfer of immediately available funds to the applicable Beneficiary the lesser of (i) the Indemnified Amount and (ii) the amount of funds in the Indemnity Trust Account, provided that if the Indemnity Trust Account contains insufficient funds to pay the amounts set forth in such Withdrawal Notice, any such unpaid amounts will be paid by the Indemnity Trustee within three (3) Business Days of receipt by the Indemnity Trustee in the Indemnity Trust Account of sufficient funds (including, for the avoidance of doubt, from any funds subsequently received as payments on the Indemnification Funding Note) to pay any portion thereof.

(g)     If any Beneficiary who has made a claim for indemnification hereunder receives payment with respect to such claim for indemnification from the Claimant Trust or any other source, such Beneficiary must promptly notify the Indemnity Trust Administrator (with a copy to the Indemnity Trustee), upon which the applicable request for payment from the

11

001292
HCMLPHMIT00000684

Indemnity Trust will be revised accordingly, and to the extent that any such amounts were already received from the Indemnity Trust, the Indemnity Trust Administrator, in his reasonable discretion, shall cause such Beneficiary to repay or return such amounts to the Indemnity Trust Account, without interest, or offset such amounts against any future requests for indemnification.

(h)     For the avoidance of doubt, the Indemnity Trustee shall withdraw Indemnity Trust Assets credited to the Indemnity Trust Account without notice to or the consent of the Grantor at any time and from time to time upon a Withdrawal Notice or other written instructions from the Indemnity Trust Administrator in accordance with the terms of this <u>Section 2.4</u>. No other statement or document need be presented to the Indemnity Trustee by the Indemnity Trust Administrator in order to withdraw Indemnity Trust Assets credited to the Indemnity Trust Account. Upon receipt of a Withdrawal Notice or other written instructions from the Indemnity Trust Administrator in accordance with the terms of this <u>Section 2.4</u> by the Indemnity Trustee, the Indemnity Trustee shall promptly take any and all necessary steps to pay the applicable Beneficiary and, when appropriate, to liquidate (but only at the written direction of the Indemnity Trust Administrator) non-cash Indemnity Trust Assets in the Indemnity Trust to pay the applicable Beneficiary. The Indemnity Trustee shall be fully protected in conclusively relying upon any such Withdrawal Notice or other written instructions from the Indemnity Trust Administrator delivered in accordance with this Agreement for such withdrawal and shall not be obligated to investigate or ascertain that the applicable Beneficiary intends to use or uses the Indemnity Trust Assets withdrawn for the purposes set forth herein. Except for acts or omissions involving its own gross negligence or willful misconduct, the Indemnity Trustee shall not be liable to the Grantor, any Beneficiary, the Indemnity Trust Administrator or any third party, for any withdrawals or payments made pursuant to a Withdrawal Notice or other written instructions from the Indemnity Trust Administrator delivered in accordance with this Agreement.

## ARTICLE III.
## INDEMNITY TRUST ADMINISTRATOR

3.1   <u>Authority</u>.

(a)     For any action contemplated or required in connection with the operation of the Indemnity Trust, and for any guidance or instruction to be provided to the Indemnity Trustee, such function, rights and responsibility shall be vested in the Indemnity Trust Administrator. The Indemnity Trust Administrator is an express agent of the Indemnity Trust and is not a delegatee of the Indemnity Trustee.

(b)     The Indemnity Trust Administrator shall have the power to take any actions the Indemnity Trust Administrator, in his sole and absolute discretion, deems desirable or necessary in connection with the operation of the Indemnity Trust. Notwithstanding the foregoing, the right and power of the Indemnity Trust Administrator to direct the Indemnity Trustee to invest the Indemnity Trust Assets, the proceeds thereof, or any income earned by the Indemnity Trust shall be limited to the right and power to invest such Indemnity Trust Assets only in cash and U.S. Government securities as defined in section 29(a)(16) of the Investment Company Act; <u>provided</u>, <u>however</u>, that the scope of any such permissible investments shall be further limited to include only those investments that a "liquidating trust" within the meaning of Treasury Regulation Section 301.7701-4(d) may be permitted to hold pursuant to the Treasury

12

001293
HCMLPHMIT00000685

Regulations, or any modification in the Internal Revenue Guidelines, whether set forth in IRS rulings, other IRS pronouncements, or otherwise; including, for the avoidance of doubt, any obligations of the United States Treasury, including bills, notes, bonds, or TIPS having a remaining maturity of less than one year at the time of investment ("Permitted Investments"). The Indemnity Trustee shall have no duty to determine if any investment direction provided to it by the Indemnity Trust Administrator satisfies the definition of "Permitted Investments" hereunder.  In the event that market conditions are such that negative interest applies to amounts deposited in the Indemnity Trust Account, the Grantor shall be responsible for the payment of such interest and the Indemnity Trustee shall be entitled to deduct from amounts on deposit with it an amount necessary to pay such negative interest.  For the avoidance of doubt, the indemnification protections afforded to the Indemnity Trustee under Section 7.2 shall cover any interest-related expenses (including, but not limited to, negative interest) incurred by the Indemnity Trustee in the performance of its duties hereunder.

(c)      The Indemnity Trust Administrator shall have the power and authority to retain counsel, tax advisors, consultants, brokers and other experts or advisors, as he considers appropriate to address any matter relating to the Indemnity Trust.  Without limiting the generality of the foregoing, to the extent the Indemnity Trust Administrator identifies any conflict of interest in his capacity as a Beneficiary, on the one hand, and the Indemnity Trust Administrator, on the other, or otherwise relating to the Indemnity Trust, the Indemnity Trust Administrator may retain such advisors or experts, as he, in his sole and absolute discretion, considers appropriate to evaluate and resolve any such conflict of interest.  The cost of any such advisors or experts will be paid by the Claimant Trust, and if not paid in a timely fashion, may represent a claim for indemnity under this Agreement.  The Indemnity Trust Administrator shall keep a record of such fees and expenses incurred and upon the request of the Grantor or any Beneficiary, the Indemnity Trust Administrator shall promptly permit the requesting Party or Beneficiary, its respective agents, employees or independent auditors to examine, audit, excerpt, transcribe and copy such records, during normal business hours at the expense of such requesting Party or Beneficiary.

3.2      Records; Reporting.

(a)      The Indemnity Trust Administrator shall create and maintain a record of any Beneficiary who makes a claim hereunder at his office or at such other place or places as it shall designate from time to time, which shall be subject to inspection by any Beneficiary upon request; provided that such Beneficiary may be required to agree to maintain confidentiality with respect to any non-public information.

(b)      The Indemnity Trust Administrator shall provide quarterly reporting to the Oversight Board (for so long as it exists) of the Claimant Trust and the Advisory Representatives of (i) the status of the Indemnity Trust Assets, (ii) the balance of cash held by the Indemnity Trust, (iii) the status of any claims made by Beneficiaries and any resolutions thereof, (iv) the status of any litigation, and (vii) operating expenses; provided, however, that the Indemnity Trust Administrator may, with respect to any member of the Oversight Board of the Claimant Trust or Advisory Representative, redact any portion of such reports that relate to such person's or entity's claim for indemnification hereunder, as applicable, and any reporting provided hereunder may be subject to such member of the Oversight Board of the Claimant Trust

13

001294

HCMLPHMIT00000686

or Advisory Representative's agreement to maintain confidentiality with respect to any non-public information.

3.3     Term of Service.  The Indemnity Trust Administrator shall serve as the Indemnity Trust Administrator for the duration of the Indemnity Trust, subject to death, disability, resignation or removal.

3.4     Resignation or Removal of the Indemnity Trust Administrator.

(a)     The Indemnity Trust Administrator may resign as Indemnity Trust Administrator at any time by giving not less than thirty (30) days' written notice thereof to the Grantor and the Indemnity Trustee.  Upon the resignation of the Indemnity Trust Administrator, the successor Indemnity Trust Administrator will be appointed in accordance with Section 3.4(d).  The resignation of the Indemnity Trust Administrator shall become effective on the acceptance of appointment by a successor Indemnity Trust Administrator.

(b)     The Indemnity Trust Administrator may be removed for Cause immediately upon notice thereof by the Grantor as the Grantor deems appropriate or upon the request of a Beneficiary; provided that such notice shall be accompanied by a final order of the Bankruptcy Court or, if the Bankruptcy Court either declines to exercise jurisdiction over such action, or cannot exercise jurisdiction over such action, by a final order of such other court of competent jurisdiction establishing Cause.

(c)     [Reserved]

(d)     In the event of a vacancy by reason of Cause, or the death or Disability of the Indemnity Trust Administrator or prospective vacancy by reason of resignation, the successor Indemnity Trust Administrator shall be Richard Katz (the Independent Member of the Oversight Board of Grantor as of the date hereof), and in the event of a vacancy by reason of Cause, or the death or Disability of the fallback successor Indemnity Trust Administrator, the contingent successor shall be David Klos (the CFO of Highland Capital Management, L.P. as of the date hereof).  In the event that neither Richard Katz nor David Klos is able or willing to serve as Indemnity Trust Administrator, a majority of the Advisory Representatives willing to vote shall select the successor.  Any such successor Indemnity Trust Administrator shall be appointed as soon as practicable, but in any event no later than thirty (30) days after the occurrence of the vacancy or, in the case of resignation, on the effective date of the resignation of the-then acting Indemnity Trust Administrator.

3.5     Expenses and Other Payments to the Indemnity Trust Administrator.

(a)     The Indemnity Trust Administrator shall not be compensated for its services under this Agreement; provided that the Indemnity Trust Administrator shall be paid or reimbursed for all of the Indemnity Trust Administrator's reasonable and documented out-of-pocket expenses and disbursements in connection with his duties under this Agreement (including reasonable attorney's fees and expenses in his capacity as such), except any such expense or disbursement as may arise from the Indemnity Trustee's fraud, willful misconduct or gross negligence.  The Indemnity Trust Administrator shall keep a record of such expenses and upon the request of the Grantor or any Beneficiary, the Indemnity Trust Administrator shall

14

HCMLPHMIT00000687

promptly permit the requesting Party or Beneficiary, its respective agents, employees or independent auditors to examine, audit, excerpt, transcribe and copy such records, during normal business hours at the expense of such requesting Party or Beneficiary.

(b)    In the event that the Grantor is dissolved and Assets or Liabilities are transferred to the Indemnity Trust in accordance with this Agreement, nothing in this Agreement shall prohibit the Indemnity Trust from (i) compensating the Indemnity Trust Administrator in his capacity as an officer, other employee, or agent of such Assets or Liabilities for managing such Assets or Liabilities or (ii) compensating any other officers, employees, or agents of such Assets or Liabilities in assisting in the management of such Assets or Liabilities; provided, however, that any such compensation shall be paid solely from funds advanced to the Indemnity Trust with (or in connection with) the Assets or Liabilities transferred, and such funds shall be accounted for and managed by the Indemnity Trust Administrator separate and apart from the Indemnity Trust Assets.

## ARTICLE IV.
## THE INDEMNITY TRUSTEE AND DELAWARE TRUSTEE

4.1    Indemnity Trustee Authority and Duties.

(a)    The Indemnity Trustee shall have the power and authority to hold legal title on behalf of the Indemnity Trust to any and all Assets and rights of the Indemnity Trust in accordance with the terms hereof.  For the avoidance of doubt, the Beneficiaries shall be the sole beneficiaries of the Indemnity Trust and the Indemnity Trustee on behalf of the Indemnity Trust shall retain only such incidents of ownership as are necessary to undertake the actions and transactions authorized herein.

(b)    The Indemnity Trustee shall take written directions from the Indemnity Trust Administrator, in such form specified herein and otherwise satisfactory to the Indemnity Trustee, and shall be entitled to conclusively and exclusively rely upon any such written directions from the Indemnity Trust Administrator without further inquiry or Liability.

(c)    The Indemnity Trustee's duties and responsibilities hereunder shall be determined solely by the express provisions of this Agreement and no other or further duties or responsibilities shall be implied.  The duties and responsibilities of the Indemnity Trustee hereunder shall be deemed purely ministerial in nature, and the Indemnity Trustee shall not be liable except for the performance of such duties, and no implied covenants or obligations shall be read into this Agreement against the Indemnity Trustee.  The Indemnity Trustee shall not be liable or responsible for any loss to the Indemnity Trust Account unless the same is caused by its own willful misconduct or gross negligence.  In no event shall the Indemnity Trustee be responsible or liable for special, indirect, punitive, incidental or consequential loss or damage of any kind whatsoever (including, but not limited to, loss of profit) irrespective of whether the Indemnity Trustee has been advised of the likelihood of such loss or damage and regardless of the form of action.  To the extent that, at law or in equity, the Indemnity Trustee has duties (including fiduciary duties) and Liabilities relating thereto to the Indemnity Trust, the other parties hereto or any beneficiary of the Indemnity Trust, it is hereby understood and agreed by the other parties hereto that such duties and Liabilities are replaced by the duties and Liabilities

15

001296
HCMLPHMIT00000688

of the Indemnity Trustee expressly set forth in this Agreement. The Indemnity Trustee shall have no Liability for any action taken, or errors in judgment made, in good faith by it or any of its officers, employees or agents, unless it shall have been grossly negligent in ascertaining the pertinent facts. The permissive rights of the Indemnity Trustee to do things enumerated in this Agreement shall not be construed as a duty and, with respect to such permissive rights, the Indemnity Trustee shall not be answerable for other than its gross negligence or willful misconduct. The Indemnity Trustee shall not be liable for any amount in excess of the value of the Indemnity Trust Assets.

(d)     The Indemnity Trustee shall take all steps and execute all instruments and documents necessary to effectuate the purpose of the Indemnity Trust and the activities contemplated herein, and take all actions necessary to comply with this Agreement and the obligations hereunder, but only upon receipt of appropriate written instructions from the Indemnity Trust Administrator. The Indemnity Trustee shall be under no obligation to exercise any of the rights or powers vested in it by this Agreement at the request or direction of the Indemnity Trust Administrator, pursuant to the provisions of this Agreement, if the Indemnity Trustee is not satisfied that reasonable security or indemnity (satisfactory to the Indemnity Trustee in its sole and absolute discretion) against the costs, expenses and Liabilities which may be incurred by it in compliance with such request or direction is available to the Indemnity Trustee.

(e)     The Indemnity Trustee shall have no duty or responsibility whatsoever to determine that any Indemnity Trust Assets withdrawn from the Indemnity Trust Account pursuant to this Agreement will be used and applied in the manner provided for by this Agreement. The Indemnity Trustee shall only be liable for such losses, damages or expenses which have been finally adjudicated by a court of competent jurisdiction to have directly resulted from its own fraud, willful misconduct, or gross negligence.

(f)     The Indemnity Trustee shall not be responsible for the existence, genuineness or value of any of the Indemnity Trust Assets, for the validity of title to the Indemnity Trust Assets, or for insuring the Indemnity Trust Assets or for the payment of taxes, charges, assessments or liens upon the Indemnity Trust Assets.

(g)     The Indemnity Trustee shall be paid such compensation as agreed to pursuant to a separate fee agreement. The Indemnity Trust shall promptly advance and reimburse the Indemnity Trustee for all reasonable out-of-pocket costs and expenses (including reasonable legal fees and expenses) incurred by the Indemnity Trustee in connection with the performance of its duties hereunder. The terms of this paragraph shall survive termination of this Agreement and/or the earlier resignation or removal of the Indemnity Trustee.

(h)     The Indemnity Trustee shall not be required to risk or expend its own funds in performing its obligations under this Agreement.

(i)     The Indemnity Trustee shall not be bound to make any investigation into the facts or matters stated in any resolution, certificate, statement, instrument, opinion, report, notice, request, direction, consent, order, bond, debenture, note, other evidence of indebtedness or other paper or document provided to the Indemnity Trustee by the Indemnity Trust

16

001297

HCMLPHMIT00000689

Administrator or the Beneficiaries. The Indemnity Trustee may execute any of the trusts or powers hereunder or perform any duties hereunder either directly or by or through agents, attorneys, custodians or nominees, and the Indemnity Trustee shall not be responsible for any misconduct or negligence on the part of, or for the supervision of, any such agent, attorney, custodian or nominee appointed with due care by it.

(j) The Indemnity Trustee shall be protected in acting upon any statement, notice, resolution, request, consent, order, certificate, report, appraisal, opinion, facsimile, electronic media, letter or other paper or document believed by the Indemnity Trustee to be genuine and to have been signed, sent or presented by the proper Party or Parties. All notices to the Indemnity Trustee (unless otherwise provided therein) shall be deemed to be effective when received by an officer of the Indemnity Trustee with direct responsibility for the administration of this Agreement.

(k) Unless otherwise provided in this Agreement, the Indemnity Trustee is authorized to follow and rely upon all written instructions given by the Indemnity Trust Administrator and by attorneys-in-fact acting under written authority furnished to the Indemnity Trustee by the Indemnity Trust Administrator, including instructions given by electronic media, letter and facsimile transmission, if the Indemnity Trustee believes such instructions to be genuine and to have been signed by the proper party or parties. The Indemnity Trustee shall not incur any Liability to anyone resulting from actions taken by the Indemnity Trustee in reliance in good faith on such written instructions.

(l) The Indemnity Trustee represents and warrants that (i) it is a national banking association; and (ii) it is not a parent, subsidiary or affiliate of the Grantor, any Beneficiary or the Indemnity Trust Administrator.

(m) The Indemnity Trustee shall be entitled to rely on and shall not be liable for any action taken or omitted to be taken by the Indemnity Trustee in accordance with the advice of counsel or other professionals retained or consulted by the Indemnity Trustee.

(n) The Indemnity Trustee shall neither be responsible for, nor chargeable with, knowledge of the terms and conditions of any other agreement, instrument, or document other than this Agreement, whether or not an original or a copy of such agreement has been provided to the Indemnity Trustee. The Indemnity Trustee shall have no duty to know or inquire as to the performance or nonperformance of any provision of any other agreement, instrument, or document other than this Agreement.

(o) Neither the Indemnity Trustee nor any of its directors, officers, employees, agents or affiliates shall be responsible for nor have any duty to monitor the performance or any action of the Grantor or the Indemnity Trust Administrator, or any of their directors, members, officers, agents, affiliates or employee, nor shall it have any Liability in connection with the malfeasance or nonfeasance by such party. The Indemnity Trustee may assume performance by all such Persons of their respective obligations. The Indemnity Trustee shall have no enforcement or notification obligations relating to breaches of representations or warranties of any other Person.

001298

HCMLPHMIT00000690

(p)     In the event that any Indemnity Trust Assets or other Assets of the Indemnity Trust shall be attached, garnished or levied upon by any court order, or the delivery thereof shall be stayed or enjoined by an order of a court, or any order, judgment or decree shall be made or entered by any court order affecting the Indemnity Trust Assets or other Assets of the Indemnity Trust, the Indemnity Trustee is hereby expressly authorized, in its sole discretion, to respond as it deems appropriate or to comply with all writs, orders or decrees so entered or issued, or which it is advised by legal counsel of its own choosing is binding upon it, whether with or without jurisdiction.  In the event that the Indemnity Trustee obeys or complies with any such writ, order or decree it shall not be liable to any of the Parties or to any other person, firm or corporation, should, by reason of such compliance notwithstanding, such writ, order or decree be subsequently reversed, modified, annulled, set aside or vacated.

(q)     The Indemnity Trustee shall be entitled to request and receive written instructions from the Indemnity Trust Administrator and shall have no responsibility or Liability for any losses or damages of any nature that may arise from any action taken or not taken by the Indemnity Trustee in accordance with the written direction of the Indemnity Trust Administrator.

(r)     Notwithstanding anything to the contrary herein, the Indemnity Trustee shall have no duty to prepare or file any Federal or state tax report or return with respect to any funds held pursuant to this Agreement or any income earned thereon, except for the delivery and filing of tax information reporting forms required to be delivered and filed with the Internal Revenue Service.  With respect to the preparation, delivery and filing of such required tax information reporting forms and all matters pertaining to the reporting of earnings on funds held under this Agreement, the Indemnity Trustee shall be entitled to request and receive written instructions from the Indemnity Trust Administrator, and the Indemnity Trustee shall be entitled to rely conclusively and without further inquiry on such written instructions.   With respect to any other payments made under this Agreement, the Indemnity Trustee shall not be deemed the payer and shall have no responsibility for performing tax reporting.  The Indemnity Trustee's function of making such payments is solely ministerial and upon express direction of the Indemnity Trust Administrator.

4.2     Term of Service.  The Indemnity Trustee shall serve as the Indemnity Trustee for the duration of the Indemnity Trust, subject to resignation or removal.

4.3     Resignation or Removal of the Indemnity Trustee.

(a)     The Indemnity Trustee may resign at any time by giving not less than thirty (30) days' written notice thereof to the Indemnity Trust Administrator.  The Indemnity Trustee may be removed by the Indemnity Trust Administrator's delivery of not less than thirty (30) days' written notice of removal to the Indemnity Trustee.  Such resignation or removal shall become effective on the acceptance of appointment by a successor Indemnity Trustee and the transfer to such successor Indemnity Trustee of all Indemnity Trust Assets in accordance with Section 4.3(b) and any undisputed fees, expenses and indemnity due to the outgoing Indemnity Trustee are paid.  If the Indemnity Trust Administrator does not act within such 30-day period, the Indemnity Trustee may apply to the Court of Chancery of the State of Delaware for the appointment of a successor Indemnity Trustee.

001299
HCMLPHMIT00000691

(b)     Upon receipt of the Indemnity Trustee's notice of resignation or delivery of notice of Indemnity Trustee's removal, the Indemnity Trust Administrator shall appoint a successor Indemnity Trustee.  Any successor Indemnity Trustee shall be a bank or trust company that is a member of the Federal Reserve System or chartered in the State of Delaware and shall not be a parent, a subsidiary or an affiliate of the Grantor or any of the Beneficiaries.  Upon the acceptance of the appointment as Indemnity Trustee hereunder by a successor Indemnity Trustee and the transfer to such successor Indemnity Trustee of all Indemnity Trust Assets, the resignation or removal of the Indemnity Trustee shall become effective.  Thereupon, such successor Indemnity Trustee shall succeed to and become vested with all the rights, powers, privileges and duties of the resigning or removed Indemnity Trustee, and the resigning or removed Indemnity Trustee shall be discharged from any future duties and obligations under this Agreement.

4.4     <u>Reporting</u>.     The Indemnity Trustee shall provide the Indemnity Trust Administrator, upon the inception of the Indemnity Trust Account, online electronic access to view the Indemnity Trust Account.  Thereafter, the Indemnity Trust Administrator will make available to any Beneficiary a written statement identifying in reasonable detail the balance of the Indemnity Trust Assets as of the applicable reporting date, plus a full accounting of all deposits (including amounts collected under the Indemnification Funding Note and any interest or investment income) and any withdrawals made during the applicable period and the effect of any investment losses; <u>provided</u>, <u>however</u>, that such written statements may be redacted for any sensitive information, as determined by the Indemnity Trust Administrator, in his sole and absolute discretion.

4.5     <u>Books and Records</u>.

(a)     The Indemnity Trustee shall maintain in respect of the Indemnity Trust books and records reflecting Indemnity Trust Assets in its possession and the income of the Indemnity Trust and payment of expenses, Liabilities, and claims against or assumed by the Indemnity Trust in such detail and for such period of time as is customary for the Indemnity Trustee in accordance with its ordinary and customary corporate trust business.  Such books and records shall be maintained as reasonably necessary to facilitate compliance with the tax reporting requirements of the Indemnity Trust.  Except as otherwise provided herein, nothing in this Agreement requires the Indemnity Trustee to file any accounting or seek approval of any court with respect to the administration of the Indemnity Trust, or as a condition for managing any payment or distribution out of the Indemnity Trust Assets.

(b)     The Indemnity Trustee will provide the Indemnity Trust Administrator any books and records concerning the Indemnity Trust Assets upon the Indemnity Trustee's receipt of written direction from the Indemnity Trust Administrator.  The Indemnity Trust Administrator will thereafter promptly permit the Grantor, any Beneficiary or its respective agents, employees or independent auditors to examine, audit, excerpt, transcribe and copy, any non-privileged and non-confidential books, documents, papers and records relating to the Indemnity Trust Account or the Indemnity Trust Assets at the expense of such requesting Party or Beneficiary.  It is understood and agreed that the Indemnity Trustee shall only provide the information in its possession to the Indemnity Trust Administrator and shall have no duty or obligation to provide such information to any other person or entity.

001300

HCMLPHMIT00000692

4.6     [Reserved]

4.7     WTNA, as Indemnity Trustee or Delaware Trustee, shall not be responsible or liable for any failure or delay in the performance of its obligations under this Agreement arising out of or caused, directly or indirectly, by circumstances beyond its control, including without limitation, any act or provision of any present or future law or regulation or governmental authority; acts of God; earthquakes; fires; floods; wars; terrorism; civil or military disturbances; sabotage; epidemics; riots; interruptions, loss or malfunctions of utilities, computer (hardware or software) or communications service; accidents; labor disputes; acts of civil or military authority or governmental actions; or the unavailability of the Federal Reserve Bank wire or telex or other wire or communication facility.

4.8     Any corporation or association into which WTNA may be converted or merged, or with which it may be consolidated, or to which it may sell or transfer all or substantially all of its corporate trust business and assets as a whole or substantially as a whole, or any corporation or association resulting from any such conversion, sale, merger, consolidation or transfer to which the Delaware Trustee or the Indemnity Trustee is a party, will be and become the successor Delaware Trustee or Indemnity Trustee, as applicable, under this Agreement and will have and succeed to the rights, powers, duties, immunities and privileges as its predecessor, without the execution or filing of any instrument or paper or the performance of any further act.

4.9     Delaware Trustee.

        (a)     The Delaware Trustee shall have the limited power and authority, and is hereby authorized and empowered, to (i) accept legal process served on the Indemnity Trust in the State of Delaware; and (ii) execute any certificates that are required to be executed under the Delaware Statutory Trust Act and file such certificates in the office of the Secretary of State of the State of Delaware, and take such action or refrain from taking such action under this Agreement, in either case as may be directed in a writing delivered to the Delaware Trustee by the Indemnity Trust Administrator and upon which the Delaware Trustee shall be entitled to conclusively and exclusively rely; provided, however, that the Delaware Trustee shall not be required to take or to refrain from taking any such action if the Delaware Trustee shall believe, or shall have been advised by counsel, that such performance is likely to involve the Delaware Trustee in personal Liability or to result in personal Liability to the Delaware Trustee, or is contrary to the terms of this Agreement or of any document contemplated hereby to which the Indemnity Trust or the Delaware Trustee is or becomes a party or is otherwise contrary to law. The Parties agree not to instruct the Delaware Trustee to take any action or to refrain from taking any action that is contrary to the terms of this Agreement or of any document contemplated hereby to which the Indemnity Trust or the Delaware Trustee is or becomes party or that is otherwise contrary to law. Other than as expressly provided for in this Agreement, the Delaware Trustee shall have no duty or power to take any action for or on behalf of the Indemnity Trust. For the avoidance of doubt, the Delaware Trustee will only have such rights and obligations as expressly provided by reference to the Delaware Trustee hereunder. The Delaware Trustee shall not be entitled to exercise any powers, nor shall the Delaware Trustee have any of the duties and responsibilities, of the Indemnity Trustee or the Indemnity Trust Administrator set forth herein. The Delaware Trustee shall be one of the trustees of the Indemnity Trust for the sole and limited purpose of fulfilling the requirements of Section 3807 of the Delaware Statutory Trust Act and

001301

HCMLPHMIT00000693

for taking such actions as are required to be taken by a Delaware Trustee under the Delaware Statutory Trust Act. The duties (including fiduciary duties), Liabilities and obligations of the Delaware Trustee shall be limited to those expressly set forth in this Section 4.9(a) and there shall be no other duties (including fiduciary duties) or obligations, express or implied, at law or in equity, of the Delaware Trustee. To the extent that, at law or in equity, the Delaware Trustee has duties (including fiduciary duties) and Liabilities relating thereto to the Indemnity Trust, the other parties hereto or any beneficiary of the Indemnity Trust, it is hereby understood and agreed by the other parties hereto that such duties and Liabilities are replaced by the duties and Liabilities of the Delaware Trustee expressly set forth in this Agreement.

(b)    The Delaware Trustee shall serve until such time as the Indemnity Trust Administrator removes the Delaware Trustee or the Delaware Trustee resigns and a successor Delaware Trustee is appointed by the Indemnity Trust Administrator in accordance with the terms hereof. The Delaware Trustee may resign at any time upon the giving of at least thirty (30) days' advance written notice to the Indemnity Trust Administrator; provided, that such resignation shall not become effective unless and until a successor Delaware Trustee shall have been appointed by the Indemnity Trust Administrator in accordance with the terms hereof. If the Claimant Trustee does not act within such 30-day period, the Delaware Trustee may apply to the Court of Chancery of the State of Delaware for the appointment of a successor Delaware Trustee.

(c)    Upon the resignation or removal of the Delaware Trustee, the Indemnity Trust Administrator shall appoint a successor Delaware Trustee by delivering a written instrument to the outgoing Delaware Trustee. Any successor Delaware Trustee must satisfy the requirements of Section 3807 of the Delaware Statutory Trust Act. Any resignation or removal of the Delaware Trustee and appointment of a successor Delaware Trustee shall not become effective until a written acceptance of appointment is delivered by the successor Delaware Trustee to the outgoing Delaware Trustee and the Indemnity Trust Administrator and any undisputed fees, expenses and indemnity due to the outgoing Delaware Trustee are paid. Following compliance with the preceding sentence, the successor Delaware Trustee shall become fully vested with all of the rights, powers, duties and obligations of the outgoing Delaware Trustee under this Agreement, with like effect as if originally named as Delaware Trustee, and the outgoing Delaware Trustee shall be discharged of its duties and obligations under this Agreement.

(d)    The Delaware Trustee shall be paid such compensation as agreed to pursuant to a separate fee agreement. The Indemnity Trust shall promptly advance and reimburse the Delaware Trustee for all reasonable out-of-pocket costs and expenses (including reasonable legal fees and expenses) incurred by the Delaware Trustee in connection with the performance of its duties hereunder. The terms of this paragraph shall survive termination of this Agreement and/or the earlier resignation or removal of the Delaware Trustee.

## ARTICLE V.
## TRUST INTERESTS

5.1    Interests Beneficial Only. The beneficial interests afforded a Beneficiary hereunder shall not entitle the Beneficiaries to any title in or to the Indemnity Trust Assets (which title shall

21

001302
HCMLPHMIT00000694

be vested in the Indemnity Trust) or to any right with respect to the administration of the Indemnity Trust except with respect to reporting and the review of books and records as set forth in this Agreement. Further, the Beneficiaries (other than the Indemnity Trustee in such capacity) shall not have any right to direct the actions of the Indemnity Trustee with respect to the Indemnity Trust Assets or the Indemnity Trust Account, or to direct the actions of the Indemnity Trust Administrator.

5.2     Transferability of Trust Interests. No transfer, assignment, pledge, hypothecation, or other disposition of a Beneficiary's interest in the Indemnity Trust may be effected without the consent of the Indemnity Trust Administrator in his sole and absolute discretion, provided that any such transfer, assignment or hypothecation does not confer upon such assignee status as a Beneficiary under the Indemnity Trust. The Indemnity Trust Administrator may impose such conditions and other terms upon any transfer, assignment or hypothecation as he considers appropriate, in his sole and absolute discretion. In the event of an assignment pledge, hypothecation, or other disposition, the foregoing limitations on transferability shall continue to apply in all respects to such beneficial interest and shall be binding on the assignee of such beneficial interest.

5.3     Effect of Death, Incapacity, or Bankruptcy. The death, incapacity, or bankruptcy of any Beneficiary during the term of the Indemnity Trust shall not (i) entitle the representatives or creditors of the deceased Beneficiary to any additional rights under this Agreement, or (ii) otherwise affect the rights and obligations of any of other Beneficiary under this Agreement.

5.4     Change of Address. Any Beneficiary may, after the Effective Date, select an alternative address by providing notice to the Indemnity Trust Administrator and the Indemnity Trustee identifying such alternative address. Such notification shall be effective only upon receipt by the Indemnity Trust Administrator and the Indemnity Trustee. Absent actual receipt of such notice by the Indemnity Trust Administrator and an officer of the Indemnity Trustee responsible for the administration of this Agreement, neither the Indemnity Trust Administrator nor the Indemnity Trustee shall recognize any such change of distribution address.

## ARTICLE VI.
## TAX MATTERS

6.1     Tax Treatment and Tax Returns. It is intended that the Indemnity Trust Assets shall be treated as owned by the Grantor for federal and applicable state and local income tax purposes. The Grantor shall be responsible for causing to be prepared and filed in a timely fashion all tax returns of the Indemnity Trust relating to the transactions contemplated by this Agreement or otherwise contemplated hereby, and it shall send a copy of each such tax return to the Indemnity Trustee. The Indemnity Trustee, acting only upon the written direction of the Indemnity Trust Administrator, shall furnish to the Grantor all such information as it has in its possession and as may be reasonably required in connection with the preparation of such tax returns and shall execute such returns if required to do so by the applicable taxing authority. The Indemnity Trustee shall not be liable for any tax due and payable in connection with this Agreement except for any tax based on or measured by the income of the institution or person acting as the Indemnity Trustee resulting from the amounts paid to the Indemnity Trustee as fees or compensation for acting as the Indemnity Trustee hereunder. Each Party (other than the Indemnity Trustee and the Delaware

22

001303
HCMLPHMIT00000695

Trustee) shall provide the Indemnity Trustee with certified tax identification numbers by furnishing appropriate forms W-9 or W-8 and such other forms and documents that the Indemnity Trustee may request.  Each such Party understands that if such tax reporting documentation is not provided and certified to the Indemnity Trustee, the Indemnity Trustee may be required by the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, to withhold a portion of any interest or other income earned on the investment of the Indemnity Trust Assets.

## ARTICLE VII.
## STANDARD OF CARE AND INDEMNIFICATION

7.1     Standard of Care.  Neither the Indemnity Trustee acting in its capacity as Indemnity Trustee nor the Indemnity Trust Administrator, acting in his capacity as the Indemnity Trust Administrator, shall be personally liable to the Indemnity Trust or to any person (including any Beneficiary) in connection with the affairs of the Indemnity Trust, unless it is ultimately determined by order of the Bankruptcy Court or, if the Bankruptcy Court either declines to exercise jurisdiction over such action or cannot exercise jurisdiction over such action, such other court of competent jurisdiction, that the acts or omissions of the Indemnity Trustee or the Indemnity Trust Administrator, as the case may be, constituted fraud, willful misconduct, or gross negligence.

7.2     Indemnification.

(a)     At any time prior to the dissolution of the Grantor, the Grantor shall indemnify, defend and hold harmless the Indemnity Trustee, the Delaware Trustee, the Indemnity Trust Administrator, the Advisory Representatives and all current, former and future officers, directors, employees, representatives and/or agents of any of the Indemnity Trust, the Indemnity Trustee, the Delaware Trustee, the Indemnity Trust Administrator or any of their respective subsidiaries (each, an "Indemnified Party"), from and against and reimburse each Indemnified Party for any and all Liabilities of whatever kind or nature regardless of their merit, demanded, asserted or claimed against such Indemnified Party directly or indirectly relating to, or arising from, claims against such Indemnified Party by reason of its participation in the transactions contemplated hereby, including without limitation all reasonable costs associated with claims for damages to persons or property, and reasonable attorneys' and consultants' fees and expenses and court costs except to the extent caused by such Indemnified Party's fraud, willful misconduct, or gross negligence.  Promptly after receipt by an Indemnified Party of notification of the commencement of any proceeding, such Indemnified Party will promptly notify the Grantor in writing of such matter; provided, however, that the failure to provide such prompt notice to the Grantor shall not relieve the Grantor of Liability which it may have to such Indemnified Party hereunder.

(b)     At any time upon or following (i) the dissolution of Grantor or (ii) the Grantor's failure to satisfy a claim for indemnification of an Indemnified Party pursuant to Section 7.2(a), the Indemnity Trust shall indemnify, defend and hold harmless the Indemnified Parties, from and against and reimburse each Indemnified Party for any and all Liabilities of whatever kind or nature regardless of their merit, demanded, asserted or claimed against such Indemnified Party directly or indirectly relating to, or arising from, claims against such Indemnified Party by reason of its participation in the transactions contemplated hereby,

23

001304
HCMLPHMIT00000696

including without limitation all reasonable costs associated with claims for damages to persons or property, and reasonable attorneys' and consultants' fees and expenses and court costs except to the extent caused by such Indemnified Party's fraud, willful misconduct, or gross negligence. Promptly after receipt by an Indemnified Party of notification of the commencement of any proceeding, such Indemnified Party will promptly notify the Indemnity Trust in writing of such matter; provided, however, that the failure to provide such prompt notice to the Indemnity Trust shall not relieve the Indemnity Trust of Liability which it may have to such Indemnified Party hereunder.

(c)     The provisions of this Section 7.2 shall survive the termination of this Agreement or the earlier of the resignation or removal of the Indemnity Trustee or the Indemnity Trust Administrator, as applicable.

7.3     Tax Indemnification.

(a)     To the extent that the Indemnity Trustee becomes liable for the payment of any taxes in respect of income derived from the investment of the Indemnity Trust Assets, the Indemnity Trustee shall satisfy such Liability to the extent possible from the Indemnity Trust Assets.

(b)     At any time prior to the dissolution of the Grantor, the Grantor shall indemnify, defend and hold the Indemnity Trustee harmless from and against any tax, late payment, interest, penalty or other Liability that may be assessed against the Indemnity Trustee on or with respect to the Indemnity Trust Assets and the investment thereof unless such tax, late payment, interest, penalty or other expense was finally adjudicated to have been directly caused by the gross negligence or willful misconduct of the Indemnity Trustee.

(c)     At any time upon or following (i) the dissolution of Grantor or (ii) the Grantor's failure to satisfy a claim for indemnification pursuant to Section 7.3(b), the Indemnity Trust shall indemnify, defend and hold the Indemnity Trustee harmless from and against any tax, late payment, interest, penalty or other Liability that may be assessed against the Indemnity Trustee on or with respect to the Indemnity Trust Assets and the investment thereof unless such tax, late payment, interest, penalty or other expense was finally adjudicated to have been directly caused by the gross negligence or willful misconduct of the Indemnity Trustee.

(d)     The indemnification provided by this Section 7.3 is in addition to the indemnification provided in Section 7.2 and shall survive the resignation or removal of the Indemnity Trustee and the termination of this Agreement.

## ARTICLE VIII.
## TERMINATION

8.1     Term.

(a)     The Indemnity Trust shall be dissolved and its affairs shall be wound up in accordance with this Agreement and Delaware Statutory Trust Act upon the earlier of (i) the later of (x) the resolution by Final Order of all litigation, claims or proceedings in any forum of any kind which could give rise to an Indemnity Obligation and the payment in full of all

24

001305

HCMLPHMIT00000697

Indemnity Obligations related thereto and (y) the expiration of all applicable statutes of limitations and any applicable tolling of any such statutes of limitations (in either case of (x) or (y), as determined by agreement of (A) the Indemnity Trust Administrator (in his sole, absolute discretion) and (B) a majority of the remaining Advisory Representatives willing to act (in their respective sole absolute discretion)) for any claims that if brought against a Beneficiary would be or would have been subject to indemnification under Section 8.2 of the Claimant Trust Agreement, Section 8.2 of the Litigation Sub-Trust Agreement or Section 10 of the Reorganized Limited Partnership Agreement, as applicable, and (ii) the mutual agreement to dissolve the Indemnity Trust by (A) the Indemnity Trust Administrator and (B) a majority of the remaining Advisory Representatives willing to act, and, if required, entry of an order by the Bankruptcy Court or another court of competent jurisdiction authorizing the termination of the Indemnity Trust. Notwithstanding the foregoing, if the Indemnity Trust is to be dissolved pursuant to Section 8.1(a)(ii) hereof prior to the expiry of all Indemnification Obligations, (x) if the Grantor is still in existence, then the Grantor, at its expense, shall obtain insurance coverage acceptable to (A) the Indemnity Trust Administrator and (B) a majority of the remaining Advisory Representatives willing to act prior to such dissolution; or (y) if the Grantor is no longer in existence, then the Indemnity Trust Administrator shall, using Indemnity Trust Assets, obtain insurance coverage acceptable to (A) the Indemnity Trust Administrator and (B) a majority of the remaining Advisory Representatives willing to act prior to such dissolution. For the avoidance of doubt, neither the liquidation, dissolution nor termination and cancellation of the Claimant Trust, the Litigation Sub-Trust or the Reorganized Debtor, as applicable, nor the legal existence of the Grantor or any other party will have any effect on the legal existence of the Indemnity Trust.

(b)     Upon the determination of the Indemnity Trust Administrator that the Claimant Trust has substantially completed its efforts to monetize and distribute its assets or such earlier date that the Indemnity Trust Administrator shall determine in his sole and absolute discretion, the Indemnity Trust Administrator and majority of the remaining Advisory Representatives willing to act shall work in good faith to replace the Indemnity Trust with a suitable third-party insurance policy providing then suitable protections to Beneficiaries, in each case, as determined in the sole, absolute discretion of (i) the Indemnity Trust Administrator and (ii) a majority of the remaining Advisory Representatives willing to act.

(c)     At any time prior to the dissolution of the Indemnity Trust as described in Section 8.1(d), if (i) the Indemnity Trust Administrator (in his sole and absolute discretion) and (ii) a majority of the remaining Advisory Representatives willing to act (in their respective sole and absolute discretion) determine that the Indemnity Trust Assets are not reasonably necessary to satisfy current or potential Indemnification Obligations to all persons who are or might become Beneficiaries, the Indemnity Trust Administrator may transfer such excess Indemnity Trust Assets (A) at any time prior to the dissolution of the Claimant Trust, to the Claimant Trust for use by the Claimant Trust in accordance with the Claimant Trust Agreement, and (B) at any time upon or following the dissolution of the Claimant Trust, according to the same distribution methodology contemplated in Section 9.2 of the Claimant Trust Agreement in effect as of the effective date of the dissolution of the Claimant Trust; provided, however, that in no event will any such transferee be entitled to the books, records and or privileges of the Indemnity Trust; provided, further, that for the avoidance of doubt, any person or entity's contractual right to receive or recover any such remaining Indemnity Trust Assets as set forth herein does not make

25

001306

HCMLPHMIT00000698

them or any other person a beneficiary of the Indemnity Trust or this Agreement; and <u>provided</u>, <u>further</u>, that the Indemnity Trust Assets shall at no time be less than $32 million (valued according to their market value at the time of transfer into the Indemnity Trust Account) unless otherwise provided by <u>Section 8.1(a) or (b)</u> of this Agreement. Any such determination by the (i) the Indemnity Trust Administrator and (ii) a majority of the remaining Advisory Representatives willing to act is final and not subject to review, and in relation to any such determination and transfer, the Indemnity Trust Administrator, the Advisory Representatives, the Oversight Board, the Indemnity Trustee, and the Delaware Trustee will be entitled to the protections of this Agreement, including but not limited to <u>Article VII</u>, <u>Article VIII</u>, and <u>Article IX</u>.

(d) Upon the dissolution of the Indemnity Trust and in connection with winding up the Indemnity Trust's affairs, any remaining Indemnity Trust Assets (as reduced by payments (actual and reserved) and provisions to pay all claims and obligations of the Indemnity Trust, payments to any Beneficiary or as used to purchase insurance for the benefit of the Beneficiaries to augment or replace the Indemnity Trust or as paid out in accordance with <u>Section 9.12</u> hereof) will be transferred at the written direction of the Indemnity Trust Administrator (i) at any time prior to the dissolution of the Claimant Trust, to the Claimant Trust and (ii) at any time following the dissolution of the Claimant Trust, according to the same distribution methodology contemplated in Section 9.2 of the Claimant Trust Agreement in effect as of the effective date of the dissolution of the Claimant Trust <u>provided</u>, <u>however</u>, that in no event will any such transferee be entitled to the books, records and or privileges of the Indemnity Trust; <u>provided</u>, <u>further</u>, that for the avoidance of doubt, any person or entity's contractual right to receive or recover any such remaining Indemnity Trust Assets as set forth herein does not make them or any other person a beneficiary of the Indemnity Trust or this Agreement. The Indemnity Trust Administrator shall be solely responsible for the dissolution, liquidation and winding up of the affairs of the Indemnity Trust. Upon the dissolution of the Indemnity Trust and completion of the winding up of the Assets, Liabilities and affairs of the Indemnity Trust pursuant to the Delaware Statutory Trust Act, the Indemnity Trustee (acting only at the written direction of the Indemnity Trust Administrator) shall prepare, execute and file a certificate of cancellation with the State of Delaware to terminate the Indemnity Trust pursuant to Section 3810 of the Delaware Statutory Trust Act (such date upon which the certificate of cancellation is filed shall be referred to as the "<u>Termination Date</u>"). If the Delaware Trustee's signature is required for purposes of filing such certificate of cancellation, the Indemnity Trust Administrator shall provide the Delaware Trustee with written direction to execute such certificate of cancellation, and the Delaware Trustee shall be entitled to conclusively and exclusively rely upon such written direction without further inquiry.

8.2 <u>Termination of Duties</u>. Except as otherwise specifically provided herein, upon the Termination Date of the Indemnity Trust, the Indemnity Trustee, the Indemnity Trust Administrator and the Delaware Trustee shall have no further duties or obligations hereunder.

8.3 <u>No Survival</u>. The rights of Beneficiaries hereunder shall not survive the Termination Date.

001307
HCMLPHMIT00000699

## ARTICLE IX. MISCELLANEOUS

9.1     <u>Trust Irrevocable</u>.  Except as set forth in this Agreement, establishment of the Indemnity Trust by this Agreement shall be irrevocable and shall not be subject to revocation, cancellation or rescission by the Beneficiaries.

9.2     <u>Beneficiaries have No Legal Title to the Indemnity Trust Assets</u>.  No Beneficiary shall have legal title to any part of the Indemnity Trust Assets.

9.3     <u>Agreement for Benefit of Parties Only</u>.  Nothing herein, whether expressed or implied, shall be construed to give any person other than the Parties, the Beneficiaries and the Indemnified Parties any legal or equitable right, remedy or claim under or in respect of this Agreement.  The Indemnity Trust Assets shall be held for the sole and exclusive benefit of the Beneficiaries.  The Beneficiaries and the Indemnified Parties will have the right to enforce the terms of this Agreement in case the Indemnity Trust Administrator fails to perform its obligations hereunder as determined by the Bankruptcy Court or another court of competent jurisdiction.

9.4     <u>Limited Recourse</u>.  Notwithstanding anything herein to the contrary, all obligations of the Indemnity Trust under this Agreement shall be limited recourse obligations of the Indemnity Trust payable solely from the Indemnity Trust Assets.  All obligations of and any claims against the Indemnity Trust hereunder shall be extinguished and not thereafter revive in the event that, at any time, all of the Indemnity Trust Assets are exhausted (including, for the avoidance of doubt, after giving effect to funds subsequently received as payments on the Indemnification Funding Note or otherwise) or distributed pursuant to Section 8.1(d).  None of the Beneficiaries nor any other person or entity entitled to payments hereunder (including, without limitation pursuant to <u>Sections 7.2, 7.3 and 8.1(c) and (d)</u> hereof) will have recourse to the Indemnity Trust Administrator, the Advisory Representatives, the Oversight Board, Indemnity Trustee or the Delaware Trustee or any of their respective affiliates or their respective officers, directors, employees, representatives or their respective assets.

9.5     <u>Notices</u>.  All notices, directions, instructions, confirmations, consents and requests required or permitted by the terms hereof shall, unless otherwise specifically provided herein, be in writing and shall be sent by first class mail, facsimile, overnight mail or in the case of mailing to a non-United States address, air mail, postage prepaid, addressed to:

(a)     If to the Grantor:

> Grantor
> c/o Highland Capital Management, L.P.
> 100 Crescent Court, Suite 1850
> Dallas, Texas 75201

With a copy to:

> Pachulski Stang Ziehl & Jones LLP
> 10100 Santa Monica Blvd, 13th Floor
> Los Angeles, CA 90067
> Attn:  Jeffrey Pomerantz (jpomerantz@pszjlaw.com)

27



001308

HCMLPHMIT00000700

Ira Kharasch (ikharasch@pszjlaw.com)
Gregory Demo (gdemo@pszjlaw.com)

(b)    If to the Indemnity Trust Administrator:

Indemnity Trust Administrator
c/o Highland Capital Management, L.P.
100 Crescent Court, Suite 1850
Dallas, Texas 75201
Attention:  James P. Seery, Jr.

With a copy to:

Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd, 13th Floor
Los Angeles, CA 90067
Attn:  Jeffrey Pomerantz (jpomerantz@pszjlaw.com)
     Ira Kharasch (ikharasch@pszjlaw.com)
     Gregory Demo (gdemo@pszjlaw.com)

(c)    If to the Indemnity Trustee:

Indemnity Trustee
Wilmington Trust, National Association
1100 North Market Street
Wilmington, DE 19890
Attn:  Corporate Trust Administration/Neumann Marlett III
Email:  nmarlett@wilmingtontrust.com
Phone:  (302) 636-6728
Fax:  (302) 636-4145

(d)    If to the Delaware Trustee:

Wilmington Trust, National Association
1100 North Market Street
Wilmington, DE 19890
Attn:  Corporate Trust Administration/Neumann Marlett III
Email:  nmarlett@wilmingtontrust.com
Phone:  (302) 636-6728
Fax:  (302) 636-4145

Notice mailed shall be effective on the date mailed or sent.  Any Party may change the address at which it is to receive notices under this Agreement by furnishing written notice pursuant to the provisions of this Section 9.4 to the other Parties of such change.

9.6    Amendments.  Any change or modification to this Agreement will be made by written amendment to this Agreement and signed by the Parties hereto; provided, however, that

28

001309
HCMLPHMIT00000701

any amendment to this Agreement that is materially detrimental to a Beneficiary will not be effective unless consented to in writing by such Beneficiary.

9.7     Severability.  Any provision hereof which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provisions in another jurisdiction.

9.8     Counterparts.  This Agreement may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.  This Agreement and the exhibits hereto set forth the entire agreement and understanding of the parties related to this transaction and supersedes all prior agreements and understandings, oral or written.

9.9     Headings; References.  The headings of the various Sections herein are for convenience of reference only and shall not define or limit any of the terms or provisions hereof.

9.10     Governing Law; Waiver of Jury Trial.  This Agreement shall in all respects be governed by, and construed in accordance with the laws of the State of Delaware, including all matters of constructions, validity and performance, but without reference to its conflict of law provisions.  Each Party hereto irrevocably waives, to the fullest extent permitted by applicable law, any and all right to trial by jury in any legal proceeding arising out of or relating to this Agreement or the transactions contemplated hereby.  Beneficiaries are deemed to have waived any right to a trial by jury.

9.11     Consent to Jurisdiction.  Any action brought by a Beneficiary must be brought in the Bankruptcy Court.  Each of the Parties hereto consents and submits to the exclusive jurisdiction of the Bankruptcy Court for any action or proceeding instituted for the enforcement and construction of any right, remedy, obligation, or Liability arising under or by reason of this Agreement, or any act or omission of the Indemnity Trustee or the Indemnity Trust Administrator. If the Bankruptcy Court either declines to exercise jurisdiction over such action or cannot exercise jurisdiction over such action, such action may be brought in the state or federal courts located in the State of Delaware.

9.12     Okada Settlement.

(a)     On January 21, 2025 and pursuant to the Okada Settlement Agreement, Okada has  transferred, or has cause to be transferred, to the Indemnity Trust, Acis 7 Proceeds, which were transferred and used in accordance with the Okada Settlement Agreement and this Section 9.12.  On January 22, 2025 and in accordance with the Okada Settlement Agreement, the Indemnity Trust Administrator provide written notice to Okada of such receipt by the Indemnity Trust, including the amount of gross proceeds received.  Further, within five (5) Business Days of receipt of any funds on account of Okada's Special Limited Partnership Interest ("SLP") in PetroCap Incentive Partners II, LP (the "PetroCap Proceeds"), Okada will provide written notice to the Indemnity Trust Administrator of such receipt and the amount of gross proceeds received, whereupon a written request from the Indemnity Trust Administrator, Okada

SUBJECT TO CONFIDENTIALITY AGREEMENT

001310
HCMLPHMIT00000702

will provide information reasonably related to SLP that Okada is permitted to provide consistent with his confidentiality or other obligations, for the limited purpose of the Indemnity Trust Administrator assessing the value of and funds received on account of the SLP. If Okada determines that he is unable to provide any such information to the Indemnity Trust Administrator based on confidentiality or other obligations, he will cooperate with the Indemnity Trust Administrator to address those concerns to enable such information to be provided.

(b)     On or after January 1, 2025, the Indemnity Trust Administrator may in writing demand that Okada provide to the Indemnity Trust the lesser of (i) $1,000,000 and (ii) 50% of the gross amount of PetroCap Proceeds Okada actually received as of the date of such demand (the "PetroCap Proceeds Demand"); provided that the PetroCap Proceeds Demand include a written representation by the Indemnity Trust Administrator that all Indemnity Trust Assets have been or will imminently be exhausted and that such demand be made no more than once (assuming the timely and full satisfaction of such demand) by the Indemnity Trust Administrator. If the PetroCap Proceeds Demand is fully satisfied by Okada in a timely manner, Okada's contingent funding obligation under the Okada Settlement Agreement shall be extinguished and no further PetroCap Proceeds Demand may be made by the Indemnity Trust Administrator.

(c)     The Acis 7 Proceeds and any PetroCap Proceeds shall be maintained as part of the Indemnity Trust Account, but accounted for and tracked separately from other Indemnity Trust Assets. The Acis 7 Proceeds and any PetroCap Proceeds transferred to the Indemnity Trust Account may be used in the same authorized manner as other Indemnity Trust Assets, but used only as "last out" funds after all other cash and other Indemnity Trust Assets are expended or otherwise disbursed in accordance with the terms of this Agreement. Further, upon written request from Okada to the Indemnity Trust Administrator, the Indemnity Trust Administrator or the Trust Administrator, as applicable, shall provide information as to the remaining amounts of Acis 7 Proceeds and/or PetroCap Proceeds held by the Indemnity Trust.

(d)     On the earlier of (x) the winding-up of the Indemnity Trust and (y) any disbursement of Indemnity Trust Assets to the Claimant Trust (or any other disbursement in accordance with Article VIII), any unused portion of the Acis 7 Proceeds or the PetroCap Proceeds, plus any interest earned on those proceeds, shall be paid to Okada prior to any distributions of other Indemnity Trust Assets in accordance with Section 8.1(d); provided, that Okada shall provide to the Indemnity Trust and the Indemnity Trust Administrator a bring down of the release provided in paragraph 10 of the Okada Settlement Agreement as a condition to the release of such Indemnity Trust Assets to Okada.

(e)     The Parties acknowledge that Okada retains a reversionary interest in the Acis 7 Proceeds and the PetroCap Proceeds (to the extent they actually exist and are deposited into the Indemnity Trust Account), and to the extent they are not expended or disbursed pursuant to the terms of this Agreement, any unused portion of the Acis 7 Proceeds and/or PetroCap Proceeds shall be returned to Okada in accordance with Section 9(d). For the avoidance of doubt, Okada's right to recover any unused portion of Acis 7 Proceeds and/or PetroCap Proceeds as set forth herein does not make Okada or any of the Okada Parties a beneficiary of the Indemnity Trust or this Agreement.

001311

HCMLPHMIT00000703

[Remainder of Page Intentionally Blank]

001312
HCMLPHMIT00000704

IN WITNESS HEREOF, the Parties hereto have caused this Agreement to be duly executed by their respective officers thereunto duly authorized on the day and year first written above.

Claimant Trust, as Grantor

By:  _____
        James P. Seery, Jr., not individually but solely in his capacity as the Claimant Trustee

James P. Seery, Jr., as Indemnity Trust Administrator

By:  _____
        James P. Seery, Jr., not individually but solely in his capacity as the Indemnity Trust Administrator

Wilmington Trust, National Association, as Indemnity Trustee

By:  _____

Wilmington Trust, National Association, as Delaware Trustee

By:  _____

001313

HCMLPHMIT00000705

<u>**EXHIBIT A**</u>

**Form of Indemnification Funding Note**

<u>**UNSECURED PROMISSORY NOTE**</u>

August [●], 2021

FOR VALUE RECEIVED, the undersigned, Highland Capital Management L.P., Claimant Trust, and Litigation Sub-Trust, (collectively, "<u>Payors</u>") jointly and severally hereby promise to pay to the Indemnity Trust (the "<u>Payee</u>") the Principal Amount (defined below), as provided in this promissory note (this "<u>Indemnification Funding Note</u>").

<u>**Principal Amount**</u>

At all times, the amount owed under this Indemnification Funding Note (the "<u>Principal Amount</u>") shall be equal to TWENTY FIVE MILLION DOLLARS ($25,000,000) **less** the value of any Assets held by the Indemnity Trust. The Principal Amount shall be determined and documented by the Indemnity Trust Administrator and paid in accordance with the payment terms herein. Capitalized terms utilized herein, but not defined have the meanings ascribed to them in the Indemnity Trust Agreement, effective as of August 16, 2021 (the "<u>Agreement</u>").

<u>**Payment**</u>

Payment of the Principal Amount shall be made, in full or in part, on the earlier of (a) demand for payment from the Indemnity Trust Administrator or (b) the date at which the combined Net Asset Value of Highland Capital Management L.P., the Claimant Trust, and the Litigation Sub-Trust is less than 200% of the Principal Amount. Subject to the foregoing, the Claimant Trustee will have sole and absolute discretion to determine the timing and amount of payments of the Principal Amount consistent with his view of liquidity needs of the Claimant Trust and related entities and the requirements of any financing agreement binding on the Claimant Trust. Upon the Claimant Trustee's determination that a payment of the Principal Amount in whole or in part should be made, the amount of the payment shall be due within five (5) days of such a determination. *Notwithstanding anything in the foregoing*, no payment shall be required to be made at any time if such payment would cause Highland Capital Management L.P., the Claimant Trust, or the Litigation Sub-Trust to be in default under or in violation of that certain *Financing Agreement*, dated as of August 11, 2021, by and among, Highland Capital Management, L.P. and Trussway Industries, LLC, as borrowers, each of the entities listed as guarantors thereon, the lenders from time to time party thereto, and Blue Torch Finance LLC (the "<u>Exit Financing Agreement</u>").

For the avoidance of doubt, the foregoing payments of Principal Amount will be senior to any distribution to beneficiaries under the Claimant Trust. In the event that the liquid assets of the Claimant Trust, the Litigation Sub-Trust, and Highland Capital Management L.P. are insufficient to satisfy the foregoing payments, the Claimant Trustee must take all reasonable action, subject in all respects to the terms of the Exit Financing Agreement, to satisfy such obligations under the Indemnification Funding Note, including accessing any available credit lines or third party

001314

HCMLPHMIT00000706

leverage, and no current payments to Claimant Trust beneficiaries will be made until all current amounts of Principal Amount due have been made.

## Interest

The Indemnification Funding Note shall not bear interest, other than that which must be imputed under applicable law.

## Governing Law

This Indemnification Funding Note shall in all respects be governed by, and construed in accordance with the laws of the State of Delaware, including all matters of constructions, validity and performance, but without reference to its conflict of law provisions.

Executed as of August [●], 2021

*Payors*:

**HIGHLAND CLAIMANT TRUST**

By:   _____
James P. Seery, Jr., not individually but solely in his capacity as the Claimant Trustee

**HIGHLAND CAPITAL MANAGEMENT, L.P.**

By:   _____
James P. Seery, Jr., not individually but solely in his capacity as Chief Executive Officer

**HIGHLAND LITIGATION TRUST**

By:   _____
Marc Kirschner, not individually but solely in his capacity as the Litigation Trustee

A-2

001315

HCMLPHMIT00000707

## EXHIBIT B

## Form of Beneficiary Withdrawal Request

Indemnity Trust Administrator
[insert contact info for Indemnity Trust Administrator]

with a copy to:

[_____]
[insert contact info for the applicable Beneficiary]

[DATE]

Reference is made to the Indemnity Trust Agreement, effective as of _____, 2021 (as amended from time to time, the "Indemnity Trust Agreement"), by and among the Claimant Trust, as grantor (the "Grantor"), the Indemnity Trust Administrator, Wilmington Trust, National Association ("WTNA"), as indemnity trustee (the "Indemnity Trustee"), and WTNA, as the Delaware Trustee. Capitalized terms used herein shall have the meanings assigned thereto in the Indemnity Trust Agreement.

[In accordance with Section 2.4(c) of the Indemnity Trust Agreement, the undersigned hereby certifies that a claim for indemnification was made under [Section 8.2 of the Claimant Trust Agreement][Section 8.2 of the Litigation Sub-Trust Agreement][Section 10 of the Reorganized Limited Partnership Agreement], but that [he][she][entity name] did not receive full payment within fourteen (14) days of submitting such claim for indemnification.  A copy of such claim and all underlying documentation is attached hereto as Schedule A.][1]

The undersigned hereby requests the Indemnity Trustee to pay an amount equal to $[_____] out of the funds on deposit in the Indemnity Trust Account.  A breakdown of the amounts payable by the Claimant Trust, the Litigation Sub-Trust or the Reorganized Debtor, as applicable, to the undersigned with respect to the Indemnity Obligations is attached hereto as Schedule B.

Wire instructions for the undersigned are attached hereto as Schedule C.

By executing and delivering this Beneficiary Withdrawal Request, the undersigned acknowledges and agrees that any claim for indemnification made hereby is made pursuant to, and is subject in all respects to, the express terms of the [Claimant Trust Agreement] [Litigation Sub-Trust Agreement] [Reorganized Limited Partnership Agreement].

The undersigned irrevocably waives, to the fullest extent permitted by applicable law, any and all right to trial by jury in any legal proceeding arising out of or relating to this request for indemnification and consents and submits to the exclusive jurisdiction of the Bankruptcy Court for any action or proceeding instituted for the enforcement and construction of any right, remedy, obligation, or Liability arising hereunder.  If the Bankruptcy Court either declines to exercise

---

[1] To be omitted from any Beneficiary Withdrawal Requests made pursuant to Section 2.4(d).

001316

HCMLPHMIT00000708

jurisdiction over such action or cannot exercise jurisdiction over such action, such action may be brought in the state or federal courts located in the Northern District of Texas.


[_____], as Beneficiary


By:_____
  Name:
  Title:

B-2

001317

HCMLPHMIT00000709

Schedule A[2]

_SUBJECT TO CONFIDENTIALITY AGREEMENT_

---

[2] To be omitted from any Beneficiary Withdrawal Requests made pursuant to Section 2.4(d).

B-3

Schedule B

SUBJECT TO CONFIDENTIALITY AGREEMENT

001319
HCMLPHMIT00000711

**EXHIBIT C**

**Form of Withdrawal Notice**

Indemnity Trustee
[insert contact info for Indemnity Trustee]

with a copy to:

[_____]
[insert contact info for the applicable Beneficiary]


[DATE]

Reference is made to the Indemnity Trust Agreement, effective as of August 16, 2021 (as amended from time to time, the "Indemnity Trust Agreement"), by and among the Claimant Trust, as grantor, the Indemnity Trust Administrator, Wilmington Trust, National Association ("WTNA"), as indemnity trustee (the "Indemnity Trustee"), and WTNA, as the Delaware Trustee, and (ii) the Beneficiary Withdrawal Request from [insert Beneficiary name] dated [insert date]. Capitalized terms used herein shall have the meanings assigned thereto in the Indemnity Trust Agreement.

In accordance with Section 2.4(e) of the Indemnity Trust Agreement, the Indemnity Trust Administrator hereby directs the Indemnity Trustee to pay an amount equal to $[_____] out of the funds on deposit in the Indemnity Trust Account by wire transfer to the following account:

[Insert wire instructions for the applicable Beneficiary]


Indemnity Trust Administrator


By: _____
James P. Seery, Jr., not individually but solely in his capacity as the Indemnity Trust Administrator

C-1

001320

HCMLPHMIT00000712

REVISED DRAFT

**PRIVILEGED AND CONFIDENTIAL ATTORNEY CLIENT COMMUNICATON**

**PREPARED AT THE DIRECTION OF COUNSEL IN CONNECTION WITH EXISTING
LITIGATION AND IN ANTICIPATION OF FUTURE LITIGATION**

**PROTECTED BY FRE 408 AND SIMILAR STATE LAW PROTECTIONS.  PROVIDED
PURSUANT TO NDA**

**April 15, 2025**

DRAFT Potential Settlement Structure with DAF and HMIT

**HMIT**

- **Settlement of remanded motion to sue** – HCMLP, the Claimant Trust, and HMIT settle existing motion to sue and all other claims with prejudice for a cash payment of [$500k]
- **Allowance of claim** - HCMLP to allow HMIT Class 10 interest in the amount of ~$337mm (calculated as ~$395mm Petition Date capital account, less ~$58mm P&I outstanding on HMIT note as of Petition Date), subject to:
    - The HMIT allowed Class 10 interest is not transferable
    - HMIT releases all claims and accepts the "Litigation Protections" – see separate document containing the releases and other required provisions – which eliminate claims and limit the Class 10 allowed interest
    - LT releases HMIT from all other claims in the LT litigation and otherwise
    - LT transfers to holders of allowed Class 10 interests all remaining LT litigation (after HMIT and DAF/CLO Holdco releases) "as-is, where-is" along with all documents produced in the LT case to date
        - Such causes of action are limited to the currently stayed litigation and other causes of action that may exist related to former employees Ellington and Leventon
        - If for any reason the transfer of the LT litigation is nullified, the settlement will not be affected
    - Complete cessation and withdrawal of any other litigation among the parties
    - Class 10 remains senior to Class 11 as required by the Plan
- **Court Approval –** Settlement and allowance of Class 10 Claim subject to approval of the Bankruptcy Court

**DAF**

- **Settlement of DAF Claims** – HCMLP, the Claimant Trust, and DAF/CLO Holdco settle all claims underlying the current Fifth Circuit appeal and all other claims with

HCMLPHMIT00000713

prejudice for a cash payment of $[2mm] within [10] business days of execution of the settlement; the Fifth Circuit appeal will be dismissed with prejudice within [10] business days of execution of the settlement

- o HCMLP will purchase DAF's right to distribution from HCLOF related to Acis 6, as is - where is, without representation except for unencumbered ownership, for $[3mm] cash, to be paid within [10] business days of execution of the settlement; DAF releases HCLOF from any claims related to Acis 6 distributions
- o DAF/CLO Holdco release all claims and accept the "Litigation Protections" – see separate document containing the releases and other required provisions
- o LT releases DAF/CLO Holdco from all other claims in the LT litigation and otherwise
- o Complete cessation and withdrawal of any other litigation among the parties
- o Settlement will be filed with the Bankruptcy Court and "so ordered"

## Distributions

- **Initial Interim Cash Distributions** – Within [91] days of the receipt of a final/non-appealable order not subject to certiorari:
  - o The Indemnity Trust will distribute $[10]mm cash directly to Class 9 Claimant Trust Beneficiaries in accordance with the waterfall and the Indemnity Trust Agreement
  - o [Subject to Class 9 Approval], the Indemnity Trust will distribute $[10]mm cash directly to holders of allowed Class 10 interests
    - ▪ On approval of the settlement by the Bankruptcy Court, the Indemnity Trust will set up a separate $[10]mm reserve for the Initial Interim Cash Distribution which reserve will be held in UST on the same terms as other Indemnity Trust holdings pending distribution to Class 10 interest holders or reversal/remand of the settlement
    - ▪ Any payments on the Dugaboy Note from the date of Bankruptcy Court approval of the settlement to the date of the Initial Interim Cash Distributions will be held by the Indemnity Trust in a separate account and also be paid to holders of allowed Class 10 interests
      - • The actual dollar amount of any such P+I payments paid will reduce the Class 10 interests outstanding

001322

HCMLPHMIT00000714

- **Subsequent Distribution(s)** - Following the Initial Interim Cash Distributions, most, if not all remaining assets will be held by the Indemnity Trust, except for potentially the Disputed Claims Reserve (if the pending claim is not fully resolved) and cash at the Claimant Trust and HCMLP (indirectly owned by the Indemnity Trust) to be used in the wind-down of those entities with any excess amounts contributed/distributed to the Indemnity Trust
  - On April 1, 2028, if no threats, demands, or litigations have been brought against the Indemnity Trust or its beneficiaries:
    - The Indemnity Trust will distribute ~$[11]mm cash directly to Class 9 Claimant Trust Beneficiaries in accordance with the waterfall and the Indemnity Trust Agreement, satisfying the remainder of the Class 9 interests outstanding
    - The Indemnity Trust will distribute $[5]mm cash directly to holders of allowed Class 10 interests
    - Note Cash or In-Kind Distribution – At the election of HMIT, the Indemnity Trust will either (a) sell the currently $[17.6]mm face value (P+I) promissory note receivable from Dugaboy Investment Trust to HCMLP that has been irrevocably participated (and may be assigned if it defaults) to the Indemnity Trust (the "Dugaboy Note") and distribute the net proceeds (plus all P+I payments on the Dugaboy Note from the Interim Cash Distribution Date to April 1, 2028) to holders of allowed Class 10 interests or (b) assign the Dugaboy Note directly to holders of allowed Class 10 interests
      - For purposes of tracking progress toward the ~$337mm Class 10 interest:
        - if the Dugaboy Note is sold, the distribution will be valued at the amount of cash distributed;
        - if the Dugaboy Note is distributed in kind, the distribution will be valued at fair market value as determined by the Indemnity Trust Administrator
      - Assumes the Dugaboy Note continues to perform; if there is a default prior to April 1, 2028, the Indemnity Trust will accelerate the Dugaboy Note and pursue full collection plus cost of collection
        - If distribution of the Dugaboy Note is to be effected on April 1, 2028 and collection litigation has been commenced, at its election, holders of allowed Class 10 interests can receive, the collected balance or the

DRAFT - SUBJECT TO CONFIDENTIALITY AGREEMENT

001323

litigation or elect to have the Indemnity Trust continue the litigation and subsequently pay the proceeds to holders of allowed Class 10 interests

  o As it pertains to the Disputed Claims Reserve, Highland will object to the Daugherty tax POC (final remaining pending claim).  Following a final non-appealable order resolving the claim, any remaining funds will be distributed to Class 9 or, if Class 9 has been paid in full, to holders of allowed Class 10 interests

- **"Final Distribution"**  - After April 1, 2029, if no threats, demands, or litigations have been brought against beneficiaries of the Indemnity Trust and all statutes of limitation (SOLs) and any potentially applicable tolling thereof have expired, at the Indemnity Trust Administrator's sole discretion, any excess remaining funds in the Indemnity Trust shall be paid out in accordance with the Plan and the Indemnity Trust Agreement (i.e. to holders of allowed Class 10 interests, up to allowed amounts) in conjunction with the dissolution, wind down and cancellation of the Indemnity Trust
  o The Indemnity Trust Administrator will consult with [Mark Patrick] regarding potentially applicable SOLs and tolling

- **Other**
  o **Extension of Claimant Trust –** A one-year extension for the Claimant Trust will be sought in the bankruptcy court.  During the 1-year extension period, the Claimant Trust will be placed into dissolution and begin its winding up.
    ▪ The Indemnity Trust will covenant not to transfer any funds to the Claimant Trust following the date of final non-appealable approval of the HMIT settlement
  o **HCMLP wind down –** the remaining unliquidated assets of the estate, including HCMLP, itself, will be retained within the Indemnity Trust and will be liquidated.
    ▪ HCMLP personnel will complete the liquidation, dissolution, cancellation, tax compliance, and any other winding up activities for the remaining entities under its purview, including HCMLP.
    ▪ Any excess amounts remaining at cancellation of HCMLP will be distributed to the Indemnity Trust.

001324

HCMLPHMIT00000716

**REVISED DRAFT**

- ▪ The Indemnity Trust will covenant not to transfer any funds to HCMLP following the date of final non-appealable approval of the HMIT settlement
  - • HCMLP will have a funding agreement with the Claimant Trust to assure that the Claimant Trust has sufficient funds to complete its wind-down
  - • Any excess funds in the Claimant Trust at its cancellation will be contributed to the Indemnity Trust; excess funds at HMLP will be distributed to the Indemnity Trust
- o **HCMLP and its general partner –** While HCMLP will be placed into dissolution, the entity will continue to survive during its winding up period, during which time it may continue to defend inbound litigation, prosecute outbound litigation, maintain its books and records, and monetize its remaining assets.  HCMLP's general partner will be dissolved, wound-down and cancelled along with HCMLP
- o **Claimant Trust Oversight Board –** Subject to the Plan and Claimant Trust agreement, it is anticipated that the members of the Oversight Board will continue in their existing roles until the final/non-appealable order approving the HMIT settlement is received
- o **Information rights to HMIT –** After Bankruptcy Court approval of the HMIT settlement, per the Claimant Trust Agreement, except that:
  - ▪ HCMLP will review forecasted expenses with [Mark Patrick] at his request, but not more often than quarterly, and will work in good faith to reduce expenses where possible
- o **Approval rights –** None, other than as specified elsewhere
- o **Duties to HMIT –** None before or after vesting/Bankruptcy Court approval of the HMIT settlement
- o **Compensation –** CEO and employee compensation remains governed by existing agreements with the oversight of the Claimant Trust Oversight Board; following the vesting of HMIT's interests, no changes will be permitted to those agreements without HMIT written consent; CEO maintains ability to maintain or reduce headcount in his absolute discretion

001325

HCMLPHMIT00000717

REVISED DRAFT

PRIVILEGED AND CONFIDENTIAL ATTORNEY CLIENT COMMUNICATON

PREPARED AT THE DIRECTION OF COUNSEL IN CONNECTION WITH EXISTING
LITIGATION AND IN ANTICIPATION OF FUTURE LITIGATION

PROTECTED BY FRE 408 AND SIMILAR STATE LAW PROTECTIONS.  PROVIDED
PURSUANT TO NDA

April ~~815~~, 2025

~~DRAFT~~ Potential Settlement Structure with DAF and HMIT

**HMIT**

- **Settlement of remanded motion to sue** – HCMLP, the Claimant Trust, and HMIT
  settle existing motion to sue and all other claims with prejudice for a cash payment
  of [$500k]
- **Allowance of claim** - HCMLP to allow HMIT Class 10 interest in the amount of
  ~$337mm (calculated as ~$395mm Petition Date capital account, less ~$58mm P&I
  outstanding on HMIT note as of Petition Date), subject to:
  - The HMIT allowed Class 10 interest is not transferable
  - HMIT ~~release~~releases all claims and accepts the "Litigation Protections" –
    see separate document containing the releases and other required
    provisions – which eliminate claims and limit the Class 10 allowed interest
  - LT releases HMIT from all other claims in the LT litigation and otherwise
  - LT transfers to ~~HMIT~~holders of allowed Class 10 interests all remaining LT
    litigation (after HMIT and DAF/CLO Holdco releases) "as-is, where-is" along
    with all documents produced in the LT case to date
    - Such causes of action are limited to the currently stayed litigation and
      other causes of action that may exist related to former employees
      Ellington and Leventon
    - If for any reason the transfer of the LT litigation is nullified, the
      settlement will not be affected
  - Complete cessation and withdrawal of any other litigation among the parties
  - Class 10 remains senior to Class 11 as required by the Plan
- **Court Approval –** Settlement and allowance of Class 10 Claim subject to approval
  of the Bankruptcy Court

**DAF**

- **Settlement of DAF Claims** – HCMLP, the Claimant Trust, and DAF/CLO Holdco ~~will~~
  settle ~~the~~all claims underlying the current Fifth Circuit appeal and all other claims

001326

HCMLPHMIT00000718

REVISED DRAFT

with prejudice for a cash payment of [$250k]; $[2mm] within [10] business days of execution of the settlement; the Fifth Circuit appeal will be dismissed with prejudice within [10] business days of execution of the settlement

- o HCMLP will purchase DAF's right to distribution from HCLOF related to Acis 6, as is - where is, without representation except for unencumbered ownership, for [$2.5mm $[3mm] cash, to be paid within [10] business days of approval execution of the settlement by the Bankruptcy Court; DAF releases HCLOF from any claims related to Acis 6 distributions
- o DAF/CLO Holdco release all claims and accept the "Litigation Protections" – see separate document containing the releases and other required provisions
- o LT releases DAF/CLO Holdco from all other claims in the LT litigation and otherwise
- o Complete cessation and withdrawal of any other litigation among the parties
- o Settlement will be filed with the Bankruptcy Court and "so ordered"

## Distributions

- **Initial Interim Cash Distributions** – Within [91] days of the receipt of a final/non-appealable order not subject to certiorari:
  - o The Indemnity Trust will distribute $[10]mm cash directly to Class 9 Claimant Trust Beneficiaries in accordance with the waterfall and the Indemnity Trust Agreement
  - o [Subject to Class 9 Approval], the Indemnity Trust will distribute $[11 10]mm cash directly to HMIT on account holders of its allowed Class 10 interest interests
    - On approval of the settlement by the Bankruptcy Court, the Indemnity Trust will set up a separate $[11 10]mm reserve for the HMIT Initial Interim Cash Distribution which reserve will be held in UST on the same terms as other Indemnity Trust holdings pending distribution to HMIT Class 10 interest holders or reversal/remand of the settlement
    - Any payments on the Dugaboy Note from the date of Bankruptcy Court approval of the settlement to the date of the Initial Interim Cash Distributions will be held by the Indemnity Trust in a separate account and also be paid to holders of allowed Class 10 interests
      - The actual dollar amount of any such P+I payments paid will reduce the Class 10 interests outstanding

DRAFT - SUBJECT TO CONFIDENTIALITY AGREEMENT

001327

REVISED DRAFT

- **Subsequent Distribution(s)** - Following the Initial Interim ~~Cash~~ Distributions, most, if not all remaining assets will be held by the Indemnity Trust, except for potentially the Disputed Claims Reserve (if the pending claim is not fully resolved) and cash at the Claimant Trust and HCMLP (indirectly owned by the Indemnity Trust) to be used in the wind-down of those entities with  any excess amounts contributed/distributed to the Indemnity Trust
  - On ~~January 14~~April 1, 2028~~],~~, if no threats, demands, or litigations have been brought against the Indemnity Trust or its beneficiaries ~~of the Indemnity Trust~~:
    - The Indemnity Trust will distribute ~$[11]mm cash directly to Class 9 Claimant Trust Beneficiaries in accordance with the waterfall and the Indemnity Trust Agreement, satisfying the remainder of the Class 9 interests outstanding
    - The Indemnity Trust will distribute $[5]mm cash directly to ~~HMIT on account~~holders of ~~its~~allowed Class 10 ~~interest~~interests
    - ~~The indemnity~~Note Cash or In-Kind Distribution – At the election of HMIT, the Indemnity Trust will ~~assign directly to HMIT~~either (a) sell the currently $[17.~~5~~6]mm face value (P+I) promissory note receivable from Dugaboy Investment Trust to HCMLP that has been irrevocably participated ~~to the Indemnity Trust~~(and may be assigned if it defaults) to the Indemnity Trust (the "Dugaboy Note") and distribute the net proceeds (plus all P+I payments on the Dugaboy Note from the Interim Cash Distribution Date to April 1, 2028) to holders of allowed Class 10 interests or (b) assign the Dugaboy Note directly to holders of allowed Class 10 interests
      - ~~Note will be valued at $[4]mm for~~For purposes of tracking progress toward the ~$337mm Class 10 interest:
      - ~~Any payments on~~if the Dugaboy Note ~~from~~is sold, the ~~date of approval of~~distribution will be valued at the ~~settlement to the date of assignment of the Dugaboy note will also be paid to HMIT on account of its Class 10 interest~~
        - ~~The actual dollar~~amount of ~~any such P+I payments paid to HMIT will reduce the HMIT Class 10 interest.~~ cash distributed;
        - if the Dugaboy Note is distributed in kind, the distribution will be valued at fair market value as determined by the Indemnity Trust Administrator

001328

REVISED DRAFT

- Assumes the Dugaboy Note continues to perform; if there is a default prior to April 1, 2028, the Indemnity Trust will accelerate the Dugaboy Note and pursue full collection plus cost of collection
  - If distribution of the Dugaboy Note is to be effected on April 1, 2028 and collection litigation has been commenced, at its election, holders of allowed Class 10 interests can receive, the collected balance of the litigation or elect to have the Indemnity Trust continue the litigation and subsequently pay the proceeds to holders of allowed Class 10 interests
- As it pertains to the Disputed Claims Reserve, Highland will object to the Daugherty tax POC (final remaining pending claim).  Following a final non-appealable order resolving the claim, any remaining funds will be distributed to Class 9 or, if Class 9 has been paid in full, to ~~HMIT on account~~holders of ~~its~~allowed Class 10 ~~interest.~~interests

- **"Final Distribution"**  - After ~~January 31~~April 1, 2029, if no threats, demands, or litigations have been brought against beneficiaries of the Indemnity Trust and all statutes of limitation (SOLs) and any potentially applicable tolling thereof have expired, at the Indemnity Trust Administrator's sole discretion, any excess remaining funds in the Indemnity Trust shall be paid out in accordance with the Plan and the Indemnity Trust Agreement (i.e. to ~~HMIT on account~~holders of ~~its~~allowed Class 10 ~~interest~~interests, up to ~~its~~ allowed ~~amount~~amounts) in conjunction with the dissolution, wind down and cancellation of the Indemnity Trust~~.~~
  - The Indemnity Trust Administrator will consult with [Mark Patrick] regarding potentially applicable SOLs and tolling

- **Other**
  - **Extension of Claimant Trust –** A one-year extension for the Claimant Trust will be sought in the bankruptcy court.  During the 1-year extension period, the Claimant Trust will be placed into dissolution and begin its winding up.
    - The Indemnity Trust will covenant not to transfer any funds to the Claimant Trust following the date of final non-appealable approval of the HMIT settlement

001329

HCMLPHMIT00000721

o   **HCMLP wind down –** the remaining unliquidated assets of the estate, including HCMLP, itself, will be retained within the Indemnity Trust and will be liquidated.

▪   HCMLP personnel will complete the liquidation, dissolution, cancellation, tax compliance, and any other winding up activities for the remaining entities under its purview, including HCMLP.  ~~Any excess amounts remaining at cancellation of HCMLP will be distributed to the Indemnity Trust.~~

▪   Any excess amounts remaining at cancellation of HCMLP will be distributed to the Indemnity Trust.

▪   The Indemnity Trust will covenant not to transfer any funds to HCMLP following the date of final non-appealable approval of the HMIT settlement

•   HCMLP will have a funding agreement with the Claimant Trust to assure that the Claimant Trust has sufficient funds to complete its wind-down

•   Any excess funds in the Claimant Trust at its cancellation will be contributed to the Indemnity Trust; excess funds at HMLP will be distributed to the Indemnity Trust

o   **HCMLP and its general partner –** While HCMLP will be placed into dissolution, the entity will continue to survive during its winding up period, during which time it may continue to defend inbound litigation, prosecute outbound litigation, maintain its books and records, and monetize its remaining assets.  HCMLP's general partner will be dissolved, wound-down and cancelled along with HCMLP~~.~~

o   **Claimant Trust Oversight Board –** Subject to the Plan and Claimant Trust agreement, it is anticipated that the members of the Oversight Board will continue in their existing roles until the final/non-appealable order approving the HMIT settlement is received~~.~~

o   **Information rights to HMIT –** ~~None prior to vesting; After vesting~~Bankruptcy Court approval of the HMIT settlement, per the Claimant Trust Agreement, except that:

▪   HCMLP will review forecasted expenses with [Mark Patrick] at his request, but not more often than quarterly, and will work in good faith to reduce expenses where possible

o   **Approval rights –** None, other than as specified elsewhere

o   **Duties to HMIT –** None before or after vesting/Bankruptcy Court approval of the HMIT settlement

HCMLPHMIT00000722

REVISED DRAFT

- o **Compensation –** CEO and employee compensation remains governed by existing agreements with the oversight of the Claimant Trust Oversight Board; following the vesting of HMIT's interests, no changes will be permitted to those agreements without HMIT written consent; CEO maintains ability to maintain or reduce headcount in his absolute discretion.

DRAFT - SUBJECT TO CONFIDENTIALITY AGREEMENT

001331

HCMLPHMIT00000723

PRIVILEGED AND CONFIDENTIAL ATTORNEY CLIENT COMMUNICATON

PREPARED AT THE DIRECTION OF COUNSEL IN CONNECTION WITH EXISTING LITIGATION AND IN ANTICIPATION OF FUTURE LITIGATION

PROTECTED BY FRE 408 AND SIMILAR STATE LAW PROTECTIONS.  PROVIDED PURSUANT TO NDA

# ILLUSTRATIVE HIGHLAND INDEMNITY TRUST PAYOUT SCHEDULE

EXPERIENCED. DISCIPLINED. **BOLD.**

HIGHLAND CAPITAL
M A N A G E M E N T

001332

HCMLPHMIT00000724



**HIGHLAND INDEMNITY TRUST**

PRIVILEGED AND CONFIDENTIAL. ATTORNEYS' EYES ONLY. PREPARED AT THE DIRECTION OF COUNSEL IN CONNECTION WITH LITIGATION AND IN ANTICIPATION OF FUTURE LITIGATION PROTECTED BY FRE 408 AND SIMILAR STATE LAW PROTECTIONS. PROVIDED PURSUANT TO NDA

| Total Illustrative Sources and Uses (4/1/26 - 4/1/29) | | |
|---|---|---|

| **Sources** | | **Uses** | |
|---|---|---|---|
| Beginning Cash | $ 67,850,000 | Cash to repay 9s in Full | $ 21,029,073 |
| Interest Received on Cash (4% annual) | $ 6,970,471 | Cash distributions to 10s [2] | $ 60,439,653 |
| Dugaboy Note P&I Received | $ 3,991,523 | | |
| Disputed Claim Reserve [1] | $ 2,656,732 | | |
| Total Cash Sources | $ 81,468,726 | Total Cash Uses | $ 81,468,726 |
| | | | |
| Dugaboy Note (P& Accrued I) 4/1/28 [3] | $ 15,137,110 | Dugaboy Note to 10s [3] | $ 15,137,110 |
| Total Sources | $ 96,605,837 | Total Uses | $ 96,605,837 |
| | | | |
| | | Total to 9s | $ 21,029,073 |
| | | Total to 10s (incl Dugaboy Note) [3 4] | $ 75,576,763 |

Notes

[1] HCMLP will object to this claim. If claim is disallowed, following a final non-appealable order, any remaining funds will be distributed to Class 9, or if Class 9 has been paid in full, Class 10.

[2] Assumes no indemnification costs are expended throughout the period.

[3] Assumes Dugaboy Note FMV at face with no discounting.

[4] Excludes any net value ultimately obtained from the Kirschner Litigation

DRAFT - SUBJECT TO CONFIDENTIALITY AGREEMENT

PRIVILEGED AND CONFIDENTIAL

1

001333

HCMLPHMIT00000725



**HIGHLAND INDEMNITY TRUST**

PRIVILEGED AND CONFIDENTIAL ATTORNEY WORK PRODUCT PREPARED AT THE DIRECTION OF COUNSEL IN CONNECTION WITH MEDIATION AND IN ANTICIPATION OF FUTURE LITIGATIONPROTECTED BY FRE 408 AND SIMILAR STATE LAW PROTECTIONS.  PROVIDED PURSUANT TO NDA

### Interim Cash Distribution Sources and Uses (4/1/26)

| Sources | | Uses | |
|---|---|---|---|
| Beginning Cash | $ 67,850,000 | Distribution to 9s - IT | $ 10,000,000 |
| Interest Received on Cash | $ 1,360,718 | Distribution to 9s - DCR | $ 2,656,732 |
| Dugaboy Note P&I Received | $ 1,354,892 | Distribution to 10s - IT | $ 10,000,000 |
| Disputed Claim Reserve | $ 2,656,732 | Distribution to 10s - Dugaboy Note P&I | $ 1,354,892 |
| | | Remaining Indemnity Trust Cash | $ 49,210,718 |
| Total Cash Sources | $ 73,222,342 | Total Cash Uses | $ 73,222,342 |

### Subsequent Distribution(s) Sources and Uses (4/1/28) [1]

| Sources | | Uses | |
|---|---|---|---|
| Beginning Cash | $ 49,210,718 | Distribution to 9s - IT | $ 8,372,341 |
| Interest Received on Cash | $ 4,015,595 | Distribution to 10s - IT | $ 5,000,000 |
| Dugaboy Note P&I Received | $ 2,636,631 | Distribution to 10s - Dugaboy Note P&I | $ 2,636,631 |
| | | Remaining Indemnity Trust Cash | $ 39,853,972 |
| Total Cash Sources | $ 55,862,943 | Total Cash Uses | $ 55,862,943 |
| | | | |
| Dugaboy Note (P&I Accrued |) 4/1/28 | $ 15,137,110 | Dugaboy Note to 10s | $ 15,137,110 |
| Total Sources | $ 71,000,054 | Total Uses | $ 71,000,054 |

### Final Distribution (4/1/29) [1] [2]

| Sources | | Uses | |
|---|---|---|---|
| Beginning Cash | $ 39,853,972 | Distribution to 10s | $ 41,448,130 |
| Interest Received on Cash | $ 1,594,159 | | |
| Total Cash Sources | $ 41,448,130 | Total Cash Uses | $ 41,448,130 |

[1] Assumes no threats, demands or litigations.

[2] Assumes all SOL (and any applicable tolling) expired.

DRAFT - SUBJECT TO CONFIDENTIALITY AGREEMENT

PRIVILEGED AND CONFIDENTIAL

2

001334

HCMLPHMIT00000726



## HIGHLAND INDEMNITY TRUST

PRIVILEGED AND CONFIDENTIAL COMMUNICATION PREPARED AT THE DIRECTION OF COUNSEL IN CONNECTION WITH LITIGATION AND IN ANTICIPATION OF FUTURE LITIGATIONPROTECTED BY FRE 408 AND SIMILAR STATE LAW PROTECTIONS.  PROVIDED PURSUANT TO NDA

**Illustrative Indemnity Trust Payout - Draft**
**4/15/2025**

| Period Ending | Start Date 9/30/2025 | Assumed Final Order Year 1 4/1/2026 | Year 2 4/1/2027 | Subsequent Distribution(s) [1] Year 3 4/1/2028 | Final Distribution [1][2] Year 4 4/1/2029 | Total |
|---|---|---|---|---|---|---|
| Indemnity Trust Cash Balance [3] | $ 67,850,000 | $ 49,210,718 | $ 51,179,147 | $ 39,853,972 | $ - | |
| Dugaboy Note Balance (P & and Accrued I) [4] | $ 17,806,565 | $ 16,729,382 | $ 15,932,744 | $ - | $ - | |
| TOTAL INDEMNITY TRUST | $ 85,656,565 | $ 65,940,100 | $ 67,111,891 | $ 39,853,972 | $ | |
| | | | | | | |
| Disputed Claim Reserve | $ 2,656,732 | $ - | $ - | $ - | $ - | |
| | | | | | | |
| Class 9 Payment of Disputed Claim Reserve [5] | | $ (2,656,732) | $ - | $ - | $ - | $ (2,656,732) |
| Class 9 Payments Indemnity Trust | | $ (10,000,000) | $ - | $ (8,372,341) | $ - | $ (18,372,341) |
| Class 9 Total Payments | | $ (12,656,732) | $ - | $ (8,372,341) | $ - | $ (21,029,073) |
| Class 9 Balance [6] | $ 21,009,022 | $ 8,352,290 | 8,358,972 | $ - | $ - | |
| | | | | | | |
| Class 10 Payments Indemnity Trust | | $ (10,000,000) | $ - | $ (5,000,000) | $ (41,448,130) | $ (56,448,130) |
| Class 10 Payments Dugaboy Note [7] | | $ (1,354,892) | $ - | $ (17,773,741) | $ - | $ (19,128,633) |
| Class 10 Total Payments | | $ (11,354,892) | $ - | $ (22,773,741) | $ (41,448,130) | $ (75,576,763) |
| Class 10 Balance | $ 336,940,231 | $ 325,585,339 | $ 325,585,339 | $ 302,811,598 | $ 261,363,467 | |

Notes

[1] Assumes no threats, demands or litigations.

[2] Assumes all SOL (and any applicatable tolling) expired.

[3] Assumes no threats, demands or litigations. Assumes 4% Interest earned each period.

[4] 3.26% Interest and $790k Amort due 12/31 each year

[5] HCMLP will object to this claim. If claim is disallowed, following a final non-appealable order, any remaining funds will be distributed to Class 9, or if Class 9 has been paid in full, Class 10.

[6] Interest on balance accrues at 0.08%. Start Date face value of claims outstanding is $20,584,958.56.

[7] Assumes Dugaboy Note FMV at face with no discounting. Payment Year 3 includes P&I received after Initial Interim Cash Distribution.

**EXHIBIT**

001336

PRIVILEGED AND CONFIDENTIAL ATTORNEY CLIENT COMMUNICATON

PREPARED AT THE DIRECTION OF COUNSEL IN CONNECTION WITH EXISTING LITIGATION AND IN ANTICIPATION OF FUTURE LITIGATION

PROTECTED BY FRE 408 AND SIMILAR STATE LAW PROTECTIONS.  PROVIDED PURSUANT TO NDA



# ILLUSTRATIVE HIGHLAND INDEMNITY TRUST PAYOUT SCHEDULE

EXPERIENCED. DISCIPLINED. **BOLD.**



001337

HCMLPHMIT00000724



**HIGHLAND INDEMNITY TRUST**

PRIVILEGED AND CONFIDENTIAL. THIS DOCUMENT WAS PREPARED AT THE DIRECTION OF COUNSEL IN CONNECTION WITH PENDING LITIGATION AND IN ANTICIPATION OF FUTURE LITIGATION PROTECTED BY FRE 408 AND SIMILAR STATE LAW PROTECTIONS.  PROVIDED PURSUANT TO NDA

| Total Illustrative Sources and Uses (4/1/26 - 4/1/29) | | | |
|---|---|---|---|
| **Sources** | | **Uses** | |
| Beginning Cash | $ 67,850,000 | Cash to repay 9s in Full | $ 21,029,073 |
| Interest Received on Cash (4% annual) | $ 6,970,471 | Cash distributions to 10s [2] | $ 60,439,653 |
| Dugaboy Note P&I Received | $ 3,991,523 | | |
| Disputed Claim Reserve [1] | $ 2,656,732 | | |
| Total Cash Sources | $ 81,468,726 | Total Cash Uses | $ 81,468,726 |
| | | | |
| Dugaboy Note (P& Accrued I) 4/1/28 [3] | $ 15,137,110 | Dugaboy Note to 10s [3] | $ 15,137,110 |
| Total Sources | $ 96,605,837 | Total Uses | $ 96,605,837 |
| | | | |
| | | Total to 9s | $ 21,029,073 |
| | | Total to 10s (incl Dugaboy Note) [3][4] | $ 75,576,763 |

DRAFT - SUBJECT TO CONFIDENTIALITY AGREEMENT

Notes
[1] HCMLP will object to this claim. If claim is disallowed, following a final non-appealable order, any remaining funds will be
   distributed to Class 9, or if Class 9 has been paid in full, Class 10.
[2] Assumes no indemnification costs are expended throughout the period.
[3] Assumes Dugaboy Note FMV at face with no discounting.
[4] Excludes any net value ultimately obtained from the Kirschner Litigation

001338
HCMLPHMIT00000725



**HIGHLAND INDEMNITY TRUST**

PRIVILEGED & CONFIDENTIAL. ALL INFORMATION CONTAINED HEREIN IS PREPARED AT THE DIRECTION OF COUNSEL IN CONNECTION WITH PENDING LITIGATION AND IN ANTICIPATION OF FUTURE LITIGATIONPROTECTED BY FRE 408 AND SIMILAR STATE LAW PROTECTIONS.  PROVIDED PURSUANT TO NDA

| Interim Cash Distribution Sources and Uses (4/1/26) | | | |
|---|---|---|---|
| **Sources** | | **Uses** | |
| Beginning Cash | $ 67,850,000 | Distribution to 9s - IT | $ 10,000,000 |
| Interest Received on Cash | $ 1,360,718 | Distribution to 9s - DCR | $ 2,656,732 |
| Dugaboy Note P&I Received | $ 1,354,892 | Distribution to 10s - IT | $ 10,000,000 |
| Disputed Claim Reserve | $ 2,656,732 | Distribution to 10s - Dugaboy Note P&I | $ 1,354,892 |
| | | Remaining Indemnity Trust Cash | $ 49,210,718 |
| Total Cash Sources | $ 73,222,342 | Total Cash Uses | $ 73,222,342 |

| Subsequent Distribution(s) Sources and Uses (4/1/28) [1] | | | |
|---|---|---|---|
| **Sources** | | **Uses** | |
| Beginning Cash | $ 49,210,718 | Distribution to 9s - IT | $ 8,372,341 |
| Interest Received on Cash | $ 4,015,595 | Distribution to 10s - IT | $ 5,000,000 |
| Dugaboy Note P&I Received | $ 2,636,631 | Distribution to 10s - Dugaboy Note P&I | $ 2,636,631 |
| | | Remaining Indemnity Trust Cash | $ 39,853,972 |
| Total Cash Sources | $ 55,862,943 | Total Cash Uses | $ 55,862,943 |
| | | | |
| Dugaboy Note (P&I Accrued)) 4/1/28 | $ 15,137,110 | Dugaboy Note to 10s | $ 15,137,110 |
| Total Sources | $ 71,000,054 | Total Uses | $ 71,000,054 |

| Final Distribution (4/1/29) [1] [2] | | | |
|---|---|---|---|
| **Sources** | | **Uses** | |
| Beginning Cash | $ 39,853,972 | Distribution to 10s | $ 41,448,130 |
| Interest Received on Cash | $ 1,594,159 | | |
| Total Cash Sources | $ 41,448,130 | Total Cash Uses | $ 41,448,130 |

[1] Assumes no threats, demands or litigations.

[2] Assumes all SOL (and any applicable tolling) expired.

DRAFT - SUBJECT TO CONFIDENTIALITY AGREEMENT

001339

HCMLPHMIT00000726

Case 19-34054-sgj11    Doc 4255-47    Filed 06/20/25    Entered 06/20/25 21:39:29    Desc
Exhibit 47    Page 3 of 5

 **HIGHLAND INDEMNITY TRUST**

PRIVILEGED AND CONFIDENTIAL    ATTORNEY-CLIENT PRIVILEGED    PREPARED AT THE DIRECTION OF COUNSEL IN CONNECTION WITH LITIGATION AND IN ANTICIPATION OF FUTURE LITIGATION    PROTECTED BY FRE 408 AND SIMILAR STATE LAW PROTECTIONS.  PROVIDED PURSUANT TO NDA

**Illustrative Indemnity Trust Payout - Draft**
**4/15/2025**

| | Start Date | Assumed Final Order | | Subsequent Distribution(s) [1] | Final Distribution [1] [2] | Total |
|---|---|---|---|---|---|---|
| | | Year 1 | Year 2 | Year 3 | Year 4 | |
| Period Ending | 9/30/2025 | 4/1/2026 | 4/1/2027 | 4/1/2028 | 4/1/2029 | |
| Indemnity Trust Cash Balance [3] | $ 67,850,000 | $ 49,210,718 | $ 51,179,147 | $ 39,853,972 | $ - | |
| Dugaboy Note Balance (P & and Accrued I) [4] | $ 17,806,565 | $ 16,729,382 | $ 15,932,744 | $ - | $ - | |
| TOTAL INDEMNITY TRUST | $ 85,656,565 | $ 65,940,100 | $ 67,111,891 | $ 39,853,972 | $ - | |
| | | | | | | |
| Disputed Claim Reserve | $ 2,656,732 | $ - | $ - | $ - | $ - | |
| | | | | | | |
| Class 9 Payment of Disputed Claim Reserve [5] | | $ (2,656,732) | $ - | $ - | $ - | $ (2,656,732) |
| Class 9 Payments Indemnity Trust | | $ (10,000,000) | $ - | $ (8,372,341) | $ - | $ (18,372,341) |
| Class 9 Total Payments | | $ (12,656,732) | $ - | $ (8,372,341) | $ - | $ (21,029,073) |
| Class 9 Balance [6] | $ 21,009,022 | $ 8,352,290 | 8,358,972 | $ - | $ - | |
| | | | | | | |
| Class 10 Payments Indemnity Trust | | $ (10,000,000) | $ - | $ (5,000,000) | $ (41,448,130) | $ (56,448,130) |
| Class 10 Payments Dugaboy Note [7] | | $ (1,354,892) | $ - | $ (17,773,741) | $ - | $ (19,128,633) |
| Class 10 Total Payments | | $ (11,354,892) | $ - | $ (22,773,741) | $ (41,448,130) | $ (75,576,763) |
| Class 10 Balance | $ 336,940,231 | $ 325,585,339 | $ 325,585,339 | $ 302,811,598 | $ 261,363,467 | |

Notes

[1] Assumes no threats, demands or litigations.

[2] Assumes all SOL (and any applicatable tolling) expired.

[3] Assumes no threats, demands or litigations. Assumes 4% Interest earned each period.

[4] 3.26% Interest and $790k Amort due 12/31 each year

[5] HCMLP will object to this claim. If claim is disallowed, following a final non-appealable order, any remaining funds will be distributed to Class 9, or if Class 9 has been paid in full, Class 10.

[6] Interest on balance accrues at 0.08%. Start Date face value of claims outstanding is $20,584,958.56.

[7] Assumes Dugaboy Note FMV at face with no discounting. Payment Year 3 includes P&I received after Initial Interim Cash Distribution.

DRAFT - SUBJECT TO CONFIDENTIALITY AGREEMENT

PRIVILEGED AND CONFIDENTIAL

3

001340

HCMLPHMIT00000727

**EXHIBIT**

001341

**From:** "John A. Morris" <jmorris@pszjlaw.com>
**To:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**Cc:** "Jeff Pomerantz" <jpomerantz@pszjlaw.com>, "Amelia L. Hurt"
<Amelia.Hurt@kellyhart.com>
**Subject:** Highland/HMIT: Settlement Agreement (HCMLP comments)
**Date:** Thu, 15 May 2025 17:07:04 +0000
**Importance:** Normal
**Attachments:** Highland_HMIT-Rand_Settlement_Agreement.011(Highland_Draft_05.15.25).docx;
REDLINE_-_HMIT_Settlement_Agreement.pdf
**Inline-Images:** image001.jpg; image002.png

---

SETTLEMENT COMMUNICATION PURSUANT TO FED. R. EVID. 408
<u>WITHOUT PREJUDICE</u>

Louis:

Thank you for sending the revised version of the draft agreement.

Attached is another black line, this one showing Highland's changes to HMIT's last draft.

Are you and your team available at either **4 or 6 pm Eastern Time today** so we can walk you through this?

Please let me know.

Regards,

John

**John A. Morris**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 212.561.7760
Tel: 212.561.7700 | Fax: 212.561.7777
jmorris@pszjlaw.com
vCard | Bio | LinkedIn



Los Angeles | San Francisco | Wilmington, DE | New York | Houston

---

**From:** Tim Cournoyer <TCournoyer@HighlandCapital.com>
**Sent:** Thursday, May 15, 2025 12:45 PM
**To:** Jim Seery <jpseeryjr@gmail.com>; David Klos <DKlos@HighlandCapital.com>; Matthew Gray
<MGray@HighlandCapital.com>; Jeff Pomerantz <jpomerantz@pszjlaw.com>; John A. Morris <jmorris@pszjlaw.com>;
Gregory V. Demo <GDemo@pszjlaw.com>
**Subject:** RE: PRIVILEGED: RE: KH clean of Redline of v9 Settlement Agreement after comments 5.14.DOCX; Redline KH
5.14 against Highland v9.PDF

Revised draft attached incorporating the change to Section 8(a).  Thanks

HCMLPHMIT00000766

**From:** jpseeryjr@gmail.com <jpseeryjr@gmail.com>
**Sent:** Thursday, May 15, 2025 11:42 AM
**To:** David Klos <DKlos@HighlandCapital.com>; Tim Cournoyer <TCournoyer@HighlandCapital.com>; Matthew Gray <MGray@HighlandCapital.com>; Jeff Pomerantz <jpomerantz@pszjlaw.com>; John A. Morris <jmorris@pszjlaw.com>; Gregory V. Demo <GDemo@pszjlaw.com>
**Subject:** Re: PRIVILEGED: RE: KH clean of Redline of v9 Settlement Agreement after comments 5.14.DOCX; Redline KH 5.14 against Highland v9.PDF

Makes sense. New version coming now

Best. Jim

Jim Seery
631-804-2049
jpseeryjr@gmail.com

---

**From:** David Klos <DKlos@HighlandCapital.com>
**Date:** Thursday, May 15, 2025 at 12:40 PM
**To:** Tim Cournoyer <TCournoyer@highlandcapital.com>, Jim Seery <jpseeryjr@gmail.com>, Matthew Gray <MGray@highlandcapital.com>, Jeff Pomerantz <jpomerantz@pszjlaw.com>, John A. Morris <jmorris@pszjlaw.com>, Gregory V. Demo <GDemo@pszjlaw.com>
**Subject:** RE: PRIVILEGED: RE: KH clean of Redline of v9 Settlement Agreement after comments 5.14.DOCX; Redline KH 5.14 against Highland v9.PDF

The deleted provision in Section 3 is similar to a remaining provision in the lead in to Section 8. Should that be removed as well?

---

**From:** Tim Cournoyer <TCournoyer@HighlandCapital.com>
**Sent:** Thursday, May 15, 2025 11:35 AM
**To:** Jim Seery <jpseeryjr@gmail.com>; David Klos <DKlos@HighlandCapital.com>; Matthew Gray <MGray@HighlandCapital.com>; 'Jeff Pomerantz' <jpomerantz@pszjlaw.com>; 'John A. Morris' <jmorris@pszjlaw.com>; 'Gregory V. Demo' <GDemo@pszjlaw.com>
**Subject:** RE: PRIVILEGED: RE: KH clean of Redline of v9 Settlement Agreement after comments 5.14.DOCX; Redline KH 5.14 against Highland v9.PDF

Jim – As discussed with you and Dave, attached is a revised draft with one change to Section 3 (removing the provision tying the $500k payment to any specific component of the settlement).

@Jeff Pomerantz, @John A. Morris, @Gregory V. Demo – Please let us know if you expect to have any comments and expected timeframe.

We need to circulate drafts to Class 9's, CTOB and HMIT. We can likely send a draft to Class 9's and CTOB now subject to ongoing review, since I don't believe you will have any changes to the economic proposal we're making, but obviously want everyone signed off asap for purposes of getting a draft back to HMIT.

Thank you.

---

**From:** Tim Cournoyer <TCournoyer@HighlandCapital.com>
**Sent:** Thursday, May 15, 2025 10:40 AM
**To:** Jim Seery <jpseeryjr@gmail.com>; David Klos <DKlos@HighlandCapital.com>; Matthew Gray <MGray@HighlandCapital.com>; 'Jeff Pomerantz' <jpomerantz@pszjlaw.com>; 'John A. Morris'

001343

HCMLPHMIT00000767


**Subject:** RE: PRIVILEGED: RE: KH clean of Redline of v9 Settlement Agreement after comments 5.14.DOCX; Redline KH 5.14 against Highland v9.PDF

All,

Attached are revised drafts of the Settlement Agreement and the Class 9 Written Consent, together with redlines in PDF. Please let me know if you have any comments ASAP.

_____

**From:** Tim Cournoyer <TCournoyer@HighlandCapital.com>
**Sent:** Thursday, May 15, 2025 8:23 AM
**To:** Matthew Gray <MGray@HighlandCapital.com>; Jim Seery <jpseeryjr@gmail.com>; 'John A. Morris' <jmorris@pszjlaw.com>
**Cc:** David Klos <DKlos@HighlandCapital.com>; 'Gregory V. Demo' <GDemo@pszjlaw.com>; 'Jeff Pomerantz' <jpomerantz@pszjlaw.com>
**Subject:** PRIVILEGED: RE: KH clean of Redline of v9 Settlement Agreement after comments 5.14.DOCX; Redline KH 5.14 against Highland v9.PDF

Below is a quick checklist items to be accomplished. Please respond if anyone can think of others:

- Settlement Agreement
  - Finalize internal comments among Highland, PSZJ and QE
  - **Need to draft Form of Assignment for Kirschner Claims**
  - Circulate revised draft to:
    - HMIT
    - CTOB
    - Class 9 Holders
- 9019 Motion
  - PSZJ to draft
  - Finalize comments among Highland, QE and PSZJ
  - Circulate final draft to HMIT

- CTOB Resolutions
  - Finalize internal comments among Highland and PSZJ
  - Circulate to:
    - CTOB
    - QE

- Class 9 Consent
  - Finalize internal comments to written consent among Highland and PSZJ
  - Finalize payment schedule to be attached as Exhibit
  - Circulate to:
    - Muck
    - Jessup
    - UBS

- Pay Daugherty Class 9 Claim (can likely happen post-signing)
  - To be completed promptly following receipt of Class 9 Consent

_____

**From:** Tim Cournoyer <TCournoyer@HighlandCapital.com>
**Sent:** Wednesday, May 14, 2025 10:19 PM
**To:** Matthew Gray <MGray@HighlandCapital.com>; Jim Seery <jpseeryjr@gmail.com>; 'John A. Morris' <jmorris@pszjlaw.com>
**Cc:** David Klos <DKlos@HighlandCapital.com>; 'Gregory V. Demo' <GDemo@pszjlaw.com>; 'Jeff Pomerantz'

HCMLPHMIT00000768

**Subject:** Re: KH clean of Redline of v9 Settlement Agreement after comments 5.14.DOCX; Redline KH 5.14 against Highland v9.PDF

Thanks - I got those on the issues list as well.

TIMOTHY J. COURNOYER
D: 972.628.4153 | M: 305.479.0804

---

**From:** Matthew Gray <MGray@HighlandCapital.com>
**Sent:** Wednesday, May 14, 2025 10:18 PM
**To:** Tim Cournoyer <TCournoyer@HighlandCapital.com>; Jim Seery <jpseeryjr@gmail.com>; 'John A. Morris' <jmorris@pszjlaw.com>
**Cc:** David Klos <DKlos@HighlandCapital.com>; 'Gregory V. Demo' <GDemo@pszjlaw.com>; 'Jeff Pomerantz' <jpomerantz@pszjlaw.com>
**Subject:** RE: KH clean of Redline of v9 Settlement Agreement after comments 5.14.DOCX; Redline KH 5.14 against Highland v9.PDF

Two principal comments: 1) we don't own the entire Dugaboy Note as defined in the agreement, so we can't assign the amount of the note owed to Get Good. If language as drafted is fine then no worries, 2) clarifying we pay all P&I received on Dugaboy note between execution date and assignment date.

---

**From:** Tim Cournoyer <TCournoyer@HighlandCapital.com>
**Sent:** Wednesday, May 14, 2025 9:42 PM
**To:** Matthew Gray <MGray@HighlandCapital.com>; Jim Seery <jpseeryjr@gmail.com>; 'John A. Morris' <jmorris@pszjlaw.com>
**Cc:** David Klos <DKlos@HighlandCapital.com>; 'Gregory V. Demo' <GDemo@pszjlaw.com>; 'Jeff Pomerantz' <jpomerantz@pszjlaw.com>
**Subject:** RE: KH clean of Redline of v9 Settlement Agreement after comments 5.14.DOCX; Redline KH 5.14 against Highland v9.PDF

Matt – can you send a PDF of your comments? I think the colors of the various comments is dependent on each user's individual Word settings.

---

**From:** Matthew Gray <MGray@HighlandCapital.com>
**Sent:** Wednesday, May 14, 2025 8:59 PM
**To:** Jim Seery <jpseeryjr@gmail.com>; 'John A. Morris' <jmorris@pszjlaw.com>
**Cc:** Tim Cournoyer <TCournoyer@HighlandCapital.com>; David Klos <DKlos@HighlandCapital.com>; 'Gregory V. Demo' <GDemo@pszjlaw.com>; 'Jeff Pomerantz' <jpomerantz@pszjlaw.com>
**Subject:** RE: KH clean of Redline of v9 Settlement Agreement after comments 5.14.DOCX; Redline KH 5.14 against Highland v9.PDF

Apologies, for some reason my red comments did not show up in prior version. Attached has comments in red.

---

**From:** Matthew Gray
**Sent:** Wednesday, May 14, 2025 8:46 PM
**To:** jpseeryjr@gmail.com; John A. Morris <jmorris@pszjlaw.com>
**Cc:** Tim Cournoyer <TCournoyer@HighlandCapital.com>; David Klos <DKlos@HighlandCapital.com>; 'Gregory V. Demo' <GDemo@pszjlaw.com>; Jeff Pomerantz <jpomerantz@pszjlaw.com>
**Subject:** RE: KH clean of Redline of v9 Settlement Agreement after comments 5.14.DOCX; Redline KH 5.14 against Highland v9.PDF

I've attached a few comments in red, mostly on the Dugaboy note. Continuing to review.

HCMLPHMIT00000769

**From:** jpseeryjr@gmail.com <jpseeryjr@gmail.com>
**Sent:** Wednesday, May 14, 2025 7:26 PM
**To:** Matthew Gray <MGray@HighlandCapital.com>
**Subject:** FW: KH clean of Redline of v9 Settlement Agreement after comments 5.14.DOCX; Redline KH 5.14 against Highland v9.PDF


Best.  Jim


Jim Seery
631-804-2049
jpseeryjr@gmail.com

---

**From:** John A. Morris <jmorris@pszjlaw.com>
**Date:** Wednesday, May 14, 2025 at 7:33 PM
**To:** James Seery <jpseeryjr@gmail.com>, Tim Cournoyer <TCournoyer@highlandcapital.com>, David Klos <DKlos@highlandcapital.com>, Jeff Pomerantz <jpomerantz@pszjlaw.com>, Gregory V. Demo <GDemo@pszjlaw.com>
**Subject:** Fwd: KH clean of Redline of v9 Settlement Agreement after comments 5.14.DOCX; Redline KH 5.14 against Highland v9.PDF

Sent from my iPhone

Begin forwarded message:

> **From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
> **Date:** May 14, 2025 at 7:21:19 PM EDT
> **To:** "John A. Morris" <jmorris@pszjlaw.com>, Jeff Pomerantz <jpomerantz@pszjlaw.com>
> **Cc:** "Amelia L. Hurt" <Amelia.Hurt@kellyhart.com>, Jim Shields <jshields@shieldslegal.com>
> **Subject: KH clean of Redline of v9 Settlement Agreement after comments 5.14.DOCX; Redline KH 5.14 against Highland v9.PDF**

John,

Please see the HMIT Entities' responsive version of the settlement agreement along with the redline from your version 9.  First, I apologize for the delay, as the last version, sent by Mr. Seery, arrived on the day I landed in Istanbul, and scheduling on my side plus my schedule while overseas made it difficult to get things done.  And then I just took longer to get over the lag from traveling back.

We have made some proposed changes.  First major change is that we are willing to have the releases made effective as of bankruptcy court approval, and live with that in the event of an appeal. We also think, because the bankruptcy court will have approved the agreement, that the assignment of the Dugaboy Note and the Kirchner litigation should be done within the revised timeline set forth, and that there is no reason for any reservation of HMIT Note Claims by the Litigation Sub Trust (and no reason that we can see for continued day to day activity of the sub-trust, as the litigation would only be returned if an appeal is successful (which none of us think will be the case – at least I think none of us do)).  We have added an agreed abatement of everything pending bankruptcy court approval.  We have also accelerated funding, though propose an agreement to escrow funds in the event of reversal on appeal.  We have reviewed the information provided by Mr. Seery and his group and think our structure and timing of funding leaves plenty of money aside for indemnification.  We

also have freed to identify and make clear what a Threat would be, to get something objective we can rely on and receive notice of.

I am around tomorrow and Friday.  I will be working this weekend (without jet lag) and in my New Orleans office Monday preparing for an all day trial on Tuesday. We should be able to corral my side quickly.

There are some other tweaks that are minor we think, with the changes mentioned above being the major changes in structure.

Also, John, while the parties have discussed this matter the attached draft agreement does not contain any reference.  That is ok with us, but my clients request from your side an answer to the following question:  "Did any of the Highland Entities or their affiliates, for their own account or on behalf of Highland CDO Holding Company, affirmatively give consent to the transfer by Sentinel Reinsurance, Ltd. or its affiliates of that certain promissory note in the original principal amount of app.$32.8M and dated December 13, 2010, and executed by CLO Holdco, Ltd.?"

I really appreciate your patience. Look forward to visiting soon.



**Louis M. Phillips**
*Partner*


KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

*louis.phillips@kellyhart.com*
*www.kellyhart.com*

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

PRIVILEGE WARNING: The sender or recipient of this message is a member of the legal department at Highland Capital Management. This message and any attachments hereto may constitute attorney work product or be protected by the attorney-client privilege. Do not disclose this message or any attachments hereto without prior consent of a member of the legal department at Highland Capital Management.

001347

HCMLPHMIT00000771

DISCLAIMER- This email is intended for the recipient(s) only and should not be copied or reproduced without explicit permission. The material provided herein is for informational purposes only and does not constitute an offer or commitment, a solicitation of an offer, or any advice or recommendation, to enter into or conclude any transaction. It may contain confidential, proprietary or legally privileged information. If you receive this message in error, please immediately delete it.

001348

HCMLPHMIT00000772

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

## SETTLEMENT AGREEMENT & GENERAL RELEASE

THIS SETTLEMENT AGREEMENT & GENERAL RELEASE (this "**Agreement**") is entered into as of May 16, 2025 (the "**Agreement Date**"), by and among Highland Capital Management, L.P., a Delaware limited partnership ("**Highland**"), the Highland Claimant Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act (the "**Claimant Trust**"), the Highland Litigation Sub-Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act (the "**Litigation Sub-Trust**"), and the Highland Indemnity Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act (the "**Indemnity Trust**", and together with Highland, the Claimant Trust and the Litigation Sub-Trust, the "**Highland Entities**"), on the one hand, and Hunter Mountain Investment Trust, a Delaware statutory trust ("**HMIT**"), Beacon Mountain LLC, a Delaware limited liability company ("**Beacon Mountain**"), Rand Advisors, LLC, a Delaware limited liability company ("**Rand Advisors**"), Rand PE Fund I, LP, a Delaware series limited partnership ("**Rand PE Fund**"), Rand PE Fund Management, LLC, a Delaware limited liability company ("**Rand GP**"), Atlas IDF, LP, a Delaware limited partnership ("**Atlas IDF**"), Atlas IDF GP, LLC, a Delaware limited liability company ("**Atlas GP**" and together with HMIT, Beacon Mountain, Rand Advisors, Rand PE Fund, Rand GP and Atlas IDF, the "**HMIT Entities**"), on the other hand.  The Highland Entities and the HMIT Entities are collectively referred to as the "**Parties**," and each individually, as a "**Party**".

## DEFINITIONS

Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Claimant Trust Agreement or the Plan, as applicable (in each case, as hereinafter defined). For purposes of this Agreement, the following capitalized terms have the following meanings:

"**9019 Motion**" means the motion seeking entry of the Bankruptcy Court Order pursuant to Bankruptcy Rule 9019 and in accordance with Section 18.

"**Action**" means any action, claim, demand, arbitration, hearing, charge, complaint, investigation, examination, indictment, litigation, suit or other civil, criminal, administrative or investigative proceedings, including any petition under Rule 202 of the Texas Rules of Civil Procedure.

"**Affiliate**" means a Person that, directly or indirectly, through one or more intermediaries, controls or is controlled by, or is under common control with, a specified Person as of the date on which, or at any time during the period for which, the determination of affiliation is being made. The term "control" (including, with correlative meanings, the terms "controlled by" and "under common control with"), as applied to any Person, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting securities or other ownership interest, by contract or otherwise.

"**Amended Complaint**" means the *Amended Complaint and Objection to Claims*, filed as docket number 158 in *Kirschner v. Dondero*, Adv. Pro. No. 21-03076-sgj (Bankr. N.D. Tex. May 19, 2022).

"**Bankruptcy Case**" means *In re Highland Capital Management, L.P.*, Case No. 19-34054-sgj (Bankr. N.D. Tex.) and its related proceedings.

001349
HCMLPHMIT00000773

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

"**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended).

"**Bankruptcy Court**" means the U.S. Bankruptcy Court for the Northern District of Texas, Dallas Division.

"**Bankruptcy Court Approval Date**" means the date on which the Bankruptcy Court Order is issued.

"**Bankruptcy Court Order**" means an order of the Bankruptcy Court approving the allowance of the HMIT's Class 10 Interest as provided in this Agreement pursuant to the 9019 Motion.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure.

"**Business Day**" means any day other than (i) a Saturday or a Sunday, (ii) a day on which the Federal Reserve Bank of New York or the New York Stock Exchange is closed, or (iii) a day on which banks in the States of Texas are required, or authorized by law, to close.

"**Claimant Trust Agreement**" means that certain Claimant Trust Agreement of the Claimant Trust (as may have been or may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), effective as of August 11, 2021, by and among Highland, as settlor, James P. Seery, Jr., a Claimant Trustee, and Wilmington Trust, National Association, a national banking association, as Delaware trustee.

"**Claims**" means any claims, debts, liabilities, demands, obligations, breaches of contract, breaches of duty or any relationship, misfeasance, malfeasance, promises, acts, omissions, agreements, liens, losses, costs and expenses (including attorney's fees and related costs), damages, injuries, suits, Actions, and causes of action of whatever kind or nature, whenever and however, arising, whether known or unknown, suspected or unsuspected, matured or unmatured, liquidated or unliquidated, contingent or fixed, at law or in equity, statutory or otherwise.

"**Class 10**" means the class of Claims or Equity Interests described in Article II. Section H.10. of the Plan.

"**Class 11**" means the class of Claims or Equity Interests described in Article II. Section H.11. of the Plan.

"**Committee**" means the official committee of unsecured creditors appointed in the Bankruptcy Case.

"**Confirmation Order**" means that certain *Order Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (ii) Granting Related Relief* [Docket No. 1943], as conformed in accordance with the Fifth Circuit's rulings.

"**Dugaboy Note**" means that certain Promissory Note dated May 31, 2017, in the original face amount of $24,268,621.69, from The Dugaboy Investment Trust, as Maker, and Highland Capital Management, L.P. and The Get Good Non-Exempt Trust, collectively as Payee.

001350

HCMLPHMIT00000774

"**Final Court Approval Date**" means the date on which the Bankruptcy Court Order becomes a Final Order.

"**Final Order**" means an order or judgment of the Bankruptcy Court, which is in full force and effect, and as to which the time to appeal, petition for certiorari, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, new trial, reargument, or rehearing shall have been waived in writing in form and substance satisfactory to the Highland Entities, as applicable, or, in the event that an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order of the Bankruptcy Court shall have been determined by the highest court to which such order was appealed, or certiorari, new trial, reargument or rehearing shall have been denied and the time to take any further appeal, petition for certiorari, or move for a new trial, reargument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be Filed with respect to such order shall not preclude such order from being a Final Order.

"**Gatekeeper**" means the gatekeeping provision contained in Article IX. F of the Plan as of August 11, 2021.

"**Governmental Authority**" means any federal, provincial, state, local or foreign government or political subdivision thereof, court of competent jurisdiction, administrative agency, judicial or arbitral body, or commission or other governmental or regulatory authority or instrumentality.

"**Highland Released Parties**" means collectively (i) the Highland Entities, (ii) any Affiliate of any Highland Entity and any Person directly or indirectly majority-owned by any Highland Entity or any of their respective Affiliates, (iii) any Person directly or indirectly managed by any Highland Entity or any of their respective Affiliates, whether by contract or otherwise (the entities described in clauses (i)-(iii), collectively, the "**Highland Parties**"), (iv) each of the Highland Parties' current and former trustees and administrators (including the trustees of any of the Claimant Trust, the Litigation Sub-Trust, or the Indemnity Trust), officers, executives, agents, directors, advisors, advisory representatives, consultants, administrators, managers, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns, (v) the current and former members of the Oversight Board of the Claimant Trust in any capacity (including Richard Katz) and their Affiliates, (vi) Farallon Capital Management, LLC, Stonehill Capital Management, LLC, Muck Holdings LLC, and Jessup Holdings LLC, in each case, in any capacity, (vii) the Independent Board and its members John Dubel, James P. Seery, Jr., and Russell Nelms, (viii) James P. Seery, Jr., individually and in all capacities for any Highland Released Party, including as Chief Executive Officer of Highland Capital Management, L.P., Claimant Trustee of the Claimant Trust, and the Indemnity Trust Administrator of the Indemnity Trust, (ix) Marc S. Kirschner, individually and as Trustee of the Litigation Sub-Trust, (x) the Committee and each of its members, (xi) the professionals (and their respective firms) (a) retained by Highland or the Committee during the Bankruptcy Case or which provided services to Highland or the Committee during the Bankruptcy Case or (b) retained by any Highland Released Party on or after August 11, 2021, (xii) any Person indemnified by any

3

HCMLPHMIT00000775

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

Highland Party (the Persons described in clauses (i)-(xii), collectively, the "**Highland Covered Parties**"), and (xii) each Highland Covered Party's current and former officers, executives, agents, attorneys (and their respective firms), directors, advisors, consultants, administrators, managers, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns, if not otherwise included in the defined term "Highland Covered Parties;" provided, however, and for the avoidance of doubt, and without in any way limiting the scope of the foregoing, "Highland Covered Parties" shall include Highland CLO Funding, Ltd., Highland HCF Advisor, Ltd., Highland Multi Strategy Credit Fund, L.P., Highland Multi Strategy Credit Fund GP, L.P., Highland Multi Strategy Credit GP, LLC, Highland Multi Strategy Credit Fund, Ltd., Highland Select Equity Master Fund, L.P., Highland Select Equity Fund GP, L.P., Highland Select Equity Fund, L.P., Highland Restoration Capital Partners Master, L.P., Highland Restoration Capital Partners GP, LLC, Highland Restoration Capital Partners, L.P., Highland Restoration Capital Partners Offshore, L.P., Highland Offshore Director, LLC, Acis CLO Management, LLC, Neutra, Ltd., Pollack, Ltd., Acis CLO Management Holdings, L.P., Acis CLO Management Intermediate Holdings I, LLC, Acis CLO Management Intermediate Holdings II, LLC, Acis CLO Assets Holdings Limited, CHG Houston Holdings, LLC, Penant Management, L.P., Penant Management GP, LLC, Gunwale, LLC, HE Capital, LLC, Gleneagles CLO, Ltd., Aberdeen Loan Funding, Ltd. Highland Argentina Regional Opportunity Fund GP, LLC, Highland Argentina Regional Opportunity Fund, L.P., Highland Argentina Regional Opportunity Fund, Ltd., Highland Argentina Regional Opportunity Master Fund, L.P., Highland Latin America Consulting, Ltd., Highland Capital Management Korea Limited, Highland Capital Management Latin America, L.P., Highland Latin America GP, Ltd., Highland Latin America LP, Ltd., Highland Offshore Partners, L.P. (Diversified), Brentwood CLO, Ltd., Eastland CLO, Ltd., Bristol Bay Funding Ltd., Jasper CLO Ltd., Highland Legacy Limited, Grayson CLO, Ltd., Greenbriar CLO, Ltd., Highland Loan Funding V Ltd., Highland Park CDO I, Ltd., Liberty CLO, Ltd., Valhalla CLO, Ltd., Stratford CLO Ltd., Southfork CLO, Ltd., Pam Capital Funding, L.P., Stonebridge-Highland Healthcare Private Equity Fund, Pamco Cayman Ltd., Red River CLO, Ltd., Rockwall CDO II Ltd., Rockwall CDO Ltd., Westchester CLO, Ltd. Longhorn Credit Funding, LLC, PensionDanmark Pensionsforsikringsaktieselskab, Highland Dynamic Income Master Fund L.P., Highland Dynamic Income Fund GP, LLC, Highland Dynamic Income Fund, L.P., Highland Dynamic Income Fund, Ltd., Highland JHT Holdings, LLC, Highland Prometheus Master Fund, L.P., Highland Prometheus Feeder Fund I, L.P., Highland Prometheus Feeder Fund II, L.P., Highland Sunbridge GP, LLC, Trussway Holdings, LLC, Trussway Industries, LLC, TW Company, Inc., T-Way Investments, LLC, SSP Holdings, LLC, Highland Flexible Income UCITS Fund, and Acis CLO 2017-7, Ltd. *Notwithstanding the forgoing or anything herein to the contrary*, none of "Highland Released Parties", "Highland Parties", nor "Highland Covered Parties" shall include James Dondero, Scott Ellington, Isaac Leventon, or any Person directly or indirectly owned as of the date hereof (in whole or in part) by, and/or Affiliated as of the date hereof with, or claiming through, under or on behalf of, any of Mr. Dondero, Mr. Ellington, or Mr. Leventon in any manner and none of such Persons are released from any Claim by any Person in connection with this Agreement.

"**HMIT Class 10 Interest**" means the unvested, contingent Class 10 interest in the Claimant Trust (a) to be allowed on account of HMIT's pre-petition equity interest in Highland, and (b) subject to the terms and conditions, as applicable, of the Plan, the Plan Documents, the Claimant Trust Agreement, and in accordance with this Agreement, and applicable law.

001352

HCMLPHMIT00000776

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

"**HMIT Note**" means that certain Secured Promissory Note dated December 21, 2015, in the original face amount of $63,000,000 from HMIT, as maker, and Highland, as payee.

"**HMIT Note Claims**" means any Claim related to, in connection with or arising out of the HMIT Note.

"**HMIT Released Parties**" means collectively (i) the HMIT Entities, (ii) any Affiliate of any HMIT Entity and any Person directly or indirectly majority owned by any HMIT Entity or any of their respective Affiliates, (iii) any Person directly or indirectly managed by any HMIT Entity or any of their respective Affiliates, whether by contract or otherwise (the entities described in clauses (i) – (iii), collectively, the "**HMIT Parties**"), (iv) each of the HMIT Parties' current and former trustees, administrators, officer, executives, agents, directors, advisors, consultants, manager, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns (v) the professionals (and their respective firms (a) retained by any HMIT Party during the Bankruptcy Case or which provided services to any HMIT Party during the Bankruptcy Case or (b) retained by any HMIT Released Party on or after August 11, 2021, (vi) any Person indemnified by any HMIT Party (the Persons described in clauses (i) – (vi), collectively, the "**HMIT Covered Parties**"), and (vii) each HMIT Covered Party's current and former officers, executives, agents, directors, advisors, consultants, administrators, managers, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns, if not otherwise included in the defined term "HMIT Covered Parties." *Notwithstanding the forgoing*, none of "HMIT Released Parties", "HMIT Parties", nor "HMIT Covered Parties" shall include James Dondero, Scott Ellington, Isaac Leventon, or any Person directly or indirectly owned as of the date hereof (in whole or in part) by, and/or Affiliated as of the date hereof with, or claiming through, under or on behalf of, any of Mr. Dondero, Mr. Ellington, or Mr. Leventon in any manner, and none of such Persons are released from any Claims by any Person in connection with this Agreement.

"**Indemnity Trust Administrator**" has the meaning given to it in the Indemnity Trust Agreement.

"**Indemnity Trust Agreement**" means that certain *Second Amended and Restated Indemnity Trust Agreement of the Indemnity Trust* (as may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), effective as of [April 28], 2025, by and among the Claimant Trust, as grantor, James P. Seery, Jr., as indemnity trust administrator, and Wilmington Trust, National Association, a national banking association, as indemnity trustee and Delaware trustee.

"**Indemnity Trust Assets**" has the meaning set forth in the Indemnity Trust Agreement, but excluding Highland, the Claimant Trust, and their respective assets.

"**Independent Board**" means the independent board appointed by the Bankruptcy Court on January 9, 2020, pursuant to that certain *Order Approving Settlement with Official Committee of Unsecured Creditors Regarding Governance of the Debtor and Procedures for Operations in the Ordinary Course* [Docket No. 339].

001353

HCMLPHMIT00000777

"**Kirschner Claims**" means all Claims and causes of action that were asserted or could have been asserted by the Litigation Trustee of the Litigation Sub-Trust, in the Amended Complaint.

"**Liability**" means any liability, debt, obligation, loss, damage, claim, cost or expense (including costs of investigation and defense and attorney's fees, costs and expenses), in each case, whether direct or indirect, whether accrued or contingent, whether or not involving a third-party claim, and including incidental and consequential damages and diminution of value.

"**Litigation Protections**" means, individually and collectively, the rights, duties, and obligations set forth in <u>Sections 1 – 2</u> and <u>Sections 9 - 16</u>.

"**Litigation Sub-Trust**" means the Highland Litigation Sub-Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act.

"**Litigation Sub-Trust Agreement**" means that certain Litigation Sub-Trust Agreement of the Litigation Sub-Trust (as may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), effective as of August 16, 2021, by and among James P. Seery, Jr., as Claimant Trustee of the Claimant Trust, Wilmington Trust, National Association, a national banking association, as Delaware Trustee, and the Litigation Trustee.

"**Litigation Trustee**" means Marc S. Kirschner, as Litigation Trustee of the Litigation Sub-Trust.

"**LPA**" means that certain *Sixth Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P.* (as may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), dated as of October 4, 2021.

"Operating Expenses" means, except for the expenses of the Indemnity Trust (including any payments to Trust Indemnified Parties or Indemnified Parties (in each case, as defined, and pursuant to the terms and conditions set forth, in the Indemnity Trust Agreement)), the expenses of operating and administering the Highland Entities, including legal expenses, employee compensation, Claimant Trustee/CEO and other trust and trustee related compensation, incentive compensation, and customary general and administrative expenses.

"**Original Plan**" means that certain *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* attached as Exhibit A to the *Order (A) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as modified) and (B) Granting Related Relief*, filed at Docket No. 1943 on the Bankruptcy Court's docket.

"**Oversight Board**" means the oversight board of the Highland Claimant Trust.

"**Pending Litigation**" means (i) *Hunter Mountain Investment Trust v. Highland Cap. Mgmt., L.P.*, Case No. 3:23-cv-02071-E (N.D. Tex.), on remand to the Bankruptcy Court (including *Hunter Mountain Investment Trust's Emergency Motion for Leave to File Adversary Proceeding* filed at Bankruptcy Court Docket No. 3699 and all proceedings, decisions, and orders relating there); (ii) *Dugaboy Investment Trust v. Highland Cap. Mgmt, L.P.*, 3:24-cv-01531-X

001354

HCMLPHMIT00000778

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

(N.D. Tex.) (only as to HMIT), and (iii) *Hunter Mountain Investment Trust v. Highland Cap. Mgmt., L.P.*, Case No. 3:24-cv-01786-L (N.D. Tex.).

"**Permitted Investments**" has the meaning set forth in the Indemnity Trust Agreement.

"**Person**" means any natural person, partnership, limited liability partnership, corporation, limited liability company, association, joint stock company, trust, estate, joint venture, unincorporated organization or Governmental Authority.

"**Plan**" means that certain *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* as conformed in accordance with the Fifth Circuit's rulings.

"**Plan Documents**" has the meaning given to it in the Plan.

"**Plan Protections**" means, collectively, the provisions of the Plan contained in Article IX thereof.

"**Pro Rata**" means the proportion that (a) the allowed amount of a particular Claim or Equity Interest in Class 10 bears to (b) the aggregate allowed amount of all Claims or Equity Interests in Class 10.

"**Threats**" means any written threats of legal action, legal demands, filed complaints, petitions for pre-suit discovery, suits, litigations, arbitrations, actual or threated restraining orders or injunctions made in writing, or similar written actions of any kind, or sworn statements evidencing the same, in any forum against any Trust Indemnified Parties or Indemnified Party (both as defined in the Indemnity Trust Agreement), excluding any such action that would otherwise be a Threat except that any applicable statute of limitations that could be applicable to such action has expired.

"**Threats Notice**" means the written notice of any Threats received by the Indemnity Trust with respect to any Trust Indemnified Parties or Indemnified Party (both as defined in the Indemnity Trust Agreement), that is hereby required to be provided by the Indemnity Trust to the HMIT Entities, within five (5) Business Days after receipt of such Threat.

## RECITALS

**WHEREAS**, as of the Petition Date, HMIT held Class B and Class C Limited Partnerships Interests in Highland;

**WHEREAS**, on December 21, 2015, HMIT entered into the HMIT Note with Highland, which had a total outstanding principal balance of Fifty-Seven Million Six Hundred Ninety Thousand Six Hundred Forty and 95/100 Dollars ($57,690,640.95) as of the Petition Date (the "**HMIT Note Balance**");

**WHEREAS**, HMIT's Class B and Class C Limited Partnership Interests in Highland were extinguished on August 11, 2021, in accordance with the Plan;

001355

HCMLPHMIT00000779

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

**WHEREAS**, pursuant to the LPA, HMIT's capital account balance at Highland on account of its Class B and Class C Limited Partnership Interests on the Petition Date was Three Hundred Ninety-Four Million Six Hundred Thirty Thousand Eight Hundred Seventy-One and 53/100 Dollars ($394,630,871.53) (the "**HMIT Capital Account Balance**");

**WHEREAS**, some or all of the HMIT Entities have asserted certain Claims against certain Highland Entities and certain other Highland Covered Parties, including those asserted in the Pending Litigation;

WHEREAS, certain distributions to be made to the holders of allowed Class 10 Claims or Equity Interests pursuant to the terms and subject to the conditions set forth herein are premised on the consent of certain Highland Covered Parties in their capacity as Holders of Class 9 Interests, and such Persons are only willing to provide such consent in exchange for the releases as set forth in this Agreement;

**WHEREAS**, some or all of the Highland Entities have asserted certain Claims against certain HMIT Entities, including the HMIT Note Claims;

**WHEREAS**, the Parties wish to terminate, extinguish, and release any and all rights, duties, obligations and Claims that (a) any of the Highland Released Parties owed or have, or may have owed or have, to or with respect to any of the HMIT Released Parties, and (b) any of the HMIT Released Parties owed or have, or may have owed or have, to or with respect to any of the Highland Released Parties, as provided in this Agreement (collectively, the "**Rights and Obligations**");

**WHEREAS**, the Parties agree that the Litigation Protections are intended to enact a permanent cessation of all litigation concerning or related to the Highland Released Parties through and including the Agreement Date; and

**WHEREAS**, the Parties, individually and collectively, wish to (a) resolve all disputes between and/or among any of the Highland Entities and their respective indemnitees, on the one hand, and any of the HMIT Entities, on the other hand, including those asserted or attempted to be asserted in the Pending Litigation, (b) fix and allow HMIT's Class 10 Interest at the amount and on the terms provided herein; and (c) terminate, extinguish, and release all Rights and Obligations on the terms provided herein.

**NOW THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree as follows:

<u>**AGREEMENT**</u>

1. <u>Stay and Dismissal of Pending Litigation With Prejudice</u>.

(a)    Within five (5) Business Days after the Agreement Date, the HMIT Entities shall take all steps necessary (at their own cost) to stay the Pending Litigation.

001356

HCMLPHMIT00000780

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

(b)     Within five (5) Business Days after the Bankruptcy Court Approval Date, the HMIT Entities shall take all steps necessary (at their own cost) to dismiss the Pending Litigation with prejudice.

2.     <u>Maintenance of Stay and Dismissal of Certain Defendants from the Amended Complaint</u>.

(a)     The Litigation Trustee shall continue to maintain the stay of Adv. Proc. No. 21-03076-sgj and all related proceedings arising therefrom through the Bankruptcy Court Approval Date. Within five (5) Business Days after the Bankruptcy Court Approval Date, the Litigation Sub-Trust shall take all steps necessary (at its own cost) to dismiss, with prejudice, HMIT and Rand PE from Counts I, II, III, and XXIV of the Amended Complaint.

3.     <u>Cash Payment to HMIT</u>.  Within five (5) Business Days following the Bankruptcy Court Approval Date, Highland shall pay HMIT a one-time, lump sum of Five Hundred Thousand Dollars (US$500,000.00) (the "**Payment**") by wire transfer:

[wire instructions]

4.     <u>HMIT Class 10 Interest</u>.

(a)     Subject to entry of the Bankruptcy Court Order, and the terms of this Agreement, the HMIT Class 10 Interest shall be deemed allowed in the amount of Three Hundred Thirty-Six Million Nine Hundred Forty Thousand Two Hundred Thirty and 58/100 Dollars (US$336,940,230.58), which amount represents the HMIT Capital Account Balance, <u>less</u> the HMIT Note Balance.

(b)     Notwithstanding anything to the contrary in the Plan or the Claimant Trust Agreement, as an integral part of this Agreement to consent to the allowance of the HMIT Class 10 Interest and the other considerations in this Agreement, HMIT shall not be deemed, and no holder of the HMIT Class 10 Interest shall be, a Claimant Trust Beneficiary or a "Beneficiary" under the Claimant Trust Agreement, and the Highland Released Parties, individually and collectively, shall owe no duty to any HMIT Releasor (whether contractual, fiduciary, equitable, statutory or otherwise), including with respect to the HMIT Class 10 Interest, in each case, except as expressly set forth in this Agreement.  Furthermore, without limiting the foregoing and for the avoidance of doubt, the contractual right of the holder of the HMIT Class 10 Interest to receive or recover any payments or Indemnity Trust Assets from the Indemnity Trust as set forth in this Agreement or the Indemnity Trust Agreement does not make any HMIT Releasor or any other Person a beneficiary of the Indemnity Trust or under the Indemnity Trust Agreement.

(c)     Notwithstanding anything to the contrary in the Plan, the Claimant Trust Agreement or the Indemnity Trust Agreement, in no event shall HMIT sell, transfer, assign, pledge, hypothecate, participate or otherwise dispose of or encumber the HMIT Class 10 Interest or any rights (including any right to payment) with respect thereto (collectively, a "**Class 10 Assignment**"), and any attempted Class 10 Assignment shall be null and void.

001357

HCMLPHMIT00000781

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

(d)    For the avoidance of doubt, the HMIT Class 10 Interest is and shall remain senior to the not yet allowed, unvested contingent Class 11 Claims of Equity Interests as provided for in the Plan, the Plan Documents, and the Claimant Trust Agreement.

5.    <u>Initial Interim Distributions on the Allowed Class 10 Interests</u>.

(a)    Within five (5) Business Days after the Bankruptcy Court Approval Date, the Indemnity Trust shall distribute (the date on which such distribution is made, the "**Initial Interim Distribution Date**") Pro Rata to the Holders of allowed Class 10 Claims or Equity Interests cash in the aggregate amount of Ten Million Dollars (US$10,000,000.00) (the "**Initial Interim Cash Distribution Amount**").

(b)    Within five (5) Business Days after the Bankruptcy Court Approval Date (the "**Note Assignment Date**"), the Highland Entities shall cause the portion of the Dugaboy Note held by the Highland Entities to be distributed to HMIT in-kind and take all actions necessary for HMIT to become the holder of such portion of the Dugaboy Note, and shall in addition pay to HMIT cash in the aggregate amount of all principal and interest payments actually received on the Dugaboy Note by the Highland Entities, including the Indemnity Trust, from the Agreement Date to the Note Assignment Date.  Prior to the Bankruptcy Court Approval Date, HMIT will engage an independent valuation service provider to value the Dugaboy Note for purposes of determining the magnitude of reduction to the outstanding allowed Class 10 Interests on account of such in-kind distribution, which shall not be less than Fifty percent (50%) of the current balance owed under the Dugaboy Note. The HMIT Entities acknowledge and agree that none of the Highland Entities are representing or warranting that the Dugaboy Note can be sold, or the price, if any, that could be received for the Dugaboy Note and further acknowledge and agree that any such purchase price may be de minimis.

6.    <u>Subsequent Distribution(s) on the Allowed Class 10 Interests</u>.

(a)    On December 1, 2027, the Indemnity Trust shall distribute (such distribution, collectively, the "**First Subsequent Distribution**", and the date on which such Subsequent Distribution is made, the "**First Subsequent Distribution Date**") Pro Rata to the Holders of allowed Class 10 Claims or Equity Interests: cash in the aggregate amount of Five Million Dollars (US$5,000,000.00).

(b)    On December 1, 2028, the Indemnity Trust shall distribute (such distribution, collectively, the "**Second Subsequent Distribution**", and the date on which such Subsequent Distribution is made, the "**Second Subsequent Distribution Date**") Pro Rata to the Holders of allowed Class 10 Claims or Equity Interests cash in the aggregate amount of Five Million Dollars (US$5,000,000.00).

(c)    Notwithstanding anything herein to the contrary, the obligations of the Indemnity Trust to make the First Subsequent Distribution or Second Subsequent Distribution is subject in all respects to (i) there being no Threats and (ii) a determination in accordance with Article VIII, Section 8.1(c) of the Indemnity Trust Agreement that the Indemnity Trust Assets comprising such distributions are not reasonably necessary to satisfy current or potential

001358

HCMLPHMIT00000782

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

Indemnification Obligations (as defined in the Indemnity Trust Agreement) to all persons who are or might become Beneficiaries (as defined in the Indemnity Trust Agreement).

7.     <u>Final Distribution on the Allowed Class 10 Interests</u>.

(a)     On the later of the Final Court Approval Date and April 1, 2029, the Indemnity Trust will distribute all excess remaining Indemnity Trust Assets in accordance with Article VIII of the Indemnity Trust Agreement; <u>provided</u>, <u>however</u>, that the obligation of the Indemnity Trust to make any such distributions and/or dissolve and wind up the affairs of the Indemnity Trust is subject in all respects to (i) there being no Threats and (ii) a determination in accordance with Article VIII of the Indemnity Trust Agreement that (1) a Final Order(s) (as defined in the Indemnity Trust Agreement) has been entered resolving all litigation, claims or proceedings in any forum of any kind which could give rise to Indemnity Obligations (as defined in the Indemnity Trust Agreement) and payment in full of all such Indemnity Obligations and (2) all applicable statutes of limitations and any applicable tolling of such statutes of limitation have expired.

(b)     The Indemnity Trust agrees to not use Indemnity Trust Assets to fund Operating Expenses.

(c)     Following the Bankruptcy Court Approval Date, at the request of Mark Patrick, solely in his capacity, and to the extent he remains, as administrator of HMIT, but not more often than quarterly, Highland and the Indemnity Trust Administrator agree to review (i) the status of their respective assets, (ii) the balance of cash held, (iii) the status of any claims made for indemnification and any resolutions thereof, (iv) the status of any litigation, and (v) forecasted operating expenses with Mr. Patrick, and will each work in good faith to reduce operating expenses where reasonably practicable; provided, however, that all such reporting shall be subject to Mr. Patrick's agreement to maintain confidentiality with respect to any non-public information.

8.     <u>Transfer Kirschner Claims; Dismissal of HMIT Note Claims</u>.

(a)     Within five (5) Business Days after the Bankruptcy Court Approval Date, but after the dismissal provided for in <u>Section 2</u>, the Litigation Sub-Trust shall execute a short-form assignment in in favor of the HMIT Entities transferring all of the Litigation Sub-Trust's right, title, and interest in and to the Kirschner Claims (the "**Kirschner Transfer**"). Such assignment shall be in a form mutually acceptable to the Parties and its substance shall be consistent with the terms, conditions and limitations set forth in this Agreement, including <u>Section 8(b)</u> below. Each HMIT Entity acknowledges and agrees that none of the Highland Entities will have any duty or obligation to assist the HMIT Entities in any way with respect to the Kirschner Claims, including the prosecution thereof, except as provided in this Agreement, including the terms of <u>Section 8(c)</u> below.

(b)     THE HMIT ENTITIES SPECIFICALLY ACKNOWLEDGE AND AGREE THAT THE LITIGATION SUB-TRUST IS TRANSFERRING THE KIRSCHNER CLAIMS ON AN "AS IS AND WITH ALL FAULTS" BASIS AND THAT THE HMIT ENTITIES ARE NOT RELYING ON ANY REPRESENTATIONS OR WARRANTIES OF ANY KIND WHATSOEVER, EXPRESS OR IMPLIED, FROM THE HIGHLAND ENTITIES OR

001359

HCMLPHMIT00000783

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

THEIR REPRESENTATIVES AS TO ANY MATTERS CONCERNING THE KIRSCHNER CLAIMS AND AMENDED COMPLAINT, INCLUDING WITH RESPECT TO THE ENFORCEABILITY, TRANSFERABILITY, VIABILITY, STRENGTH, OR VALUE OF ANY OF THE KIRSCHNER CLAIMS OR THE AMENDED COMPLAINT.  The HMIT Entities hereby specifically acknowledge that they have carefully reviewed this Section and have had the opportunity to discuss its import with legal counsel and that the provisions of this Section are a material part of this Agreement.  Thus, if for any reason HMIT is precluded from or is otherwise unable to prosecute all or any of the Kirschner Claims, (i) the HMIT Releasors shall have no recourse against any Highland Released Parties whatsoever and shall not be entitled to compensation of any kind, it being agreed that the HMIT Entities are otherwise receiving adequate consideration for the duties and obligations they are undertaking pursuant to this Agreement and (ii) there will be no effect whatsoever on the validity and enforceability of this Agreement or any of the other transactions contemplated hereby.

(c)     As promptly as reasonably practicable following the Bankruptcy Court Approval Date, the Highland Entities shall provide to the HMIT Entities electronic copies of written discovery requests and responses thereto, and documents produced in discovery in respect of the Kirschner Claims and the Amended Complaint.  The Highland Entities will not provide any other documents regarding the Kirschner Claims including any attorney-client communications and any documents subject to the attorney work-product doctrine or similar privileges or immunities concerning the Kirschner Claims (collectively, the "**Kirschner Privileges**"), it being understood and agreed that the Highland Entities are retaining, and not transferring or waiving, the Kirschner Privileges.

(d)     Each Party acknowledges and agrees that if the Kirschner Transfer is found or deemed to be impermissible or invalid, for any reason, the Kirschner Claims and Amended Complaint will revert to, and remain an asset of, the Litigation Sub-Trust.

9.     <u>General Release By The HMIT Entities</u>. On the Bankruptcy Court Approval Date, and to the maximum extent permitted by law, each of the HMIT Entities, on behalf of itself and each of its respective Affiliates (including Affiliated and/or managed funds, accounts and other investment vehicles) and its and their respective current and former advisors, consultants, administrators, trustees, directors, officers, managers, executives, members, partners (including limited and general partners), employees, beneficiaries, direct and indirect shareholders and other equity holders, agents, participants, direct and indirect subsidiaries and parents, successors, predecessors, designees, and assigns (whether by operation of law or otherwise) and all Persons claiming through, under or on their behalf (collectively with the HMIT Entities, the "**HMIT Releasors**") hereby forever, finally, fully, unconditionally, and completely releases, relieves, acquits, discharges, remises, and exonerates each Highland Released Party from, and waives and relinquishes, any and all Claims, which the HMIT Releasors, or any Person claiming through, under, or on behalf of any of the HMIT Releasors, ever had, now has, or hereafter can, shall, or may have against any of the Highland Released Parties by reason of, arising from, relating to, or in connection with, any fact, matter, or transaction that occurred prior to the Agreement Date, including any fact, matter, transaction, or occurrence asserted by any HMIT Entity in the Pending Litigation or in connection with, relating to, or with respect to the Bankruptcy Case, the management or operation of any of the Highland Released Parties, or the Highland Released Parties' property and including any defense, affirmative defenses, and right to setoff arising out

001360

HCMLPHMIT00000784

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

of, or otherwise related to, any of the foregoing (collectively, the "**HMIT Entity Released Claims**").

10.   General Release By The Highland Entities. On the Bankruptcy Court Approval Date, and to the maximum extent permitted by law, each of the Highland Entities, on behalf of itself and each of its respective Affiliates (including Affiliated and/or managed funds, accounts and other investment vehicles) and its or their respective current and former advisors, consultants, administrators, trustees, directors, officers, managers, executives, members, partners (including limited and general partners), employees, beneficiaries, direct and indirect shareholders and other equity holders, agents, participants, direct and indirect subsidiaries and parents, successors, predecessors, designees, and assigns (whether by operation of law or otherwise) and all Persons claiming through, under or on their behalf (collectively with the Highland Entities, the "**Highland Releasors**") hereby forever, finally, fully, unconditionally, and completely releases, relieves, acquits, discharges, remises, and exonerates each HMIT Released Party from, and waives and relinquishes, any and all Claims which the Highland Releasors, or any Person claiming through, under, or on behalf of any of the Highland Releasors, ever had, now has, or hereafter can, shall, or may have against any of the HMIT Released Parties by reason of, arising from, relating to, or in connection with, any fact, matter, or transaction that occurred prior to the Bankruptcy Court Approval Date, including any fact, matter, transaction, or occurrence in connection with, relating to, or with respect to the Bankruptcy Case, the management or operation of any of the HMIT Released Parties, or the HMIT Released Parties' property and including any defense, affirmative defenses, and right to setoff arising out of, or otherwise related to, any of the foregoing (collectively, the "**Highland Released Claims**").

11.   Further Provisions Concerning The General Releases.

(a)   **FOR THE AVOIDANCE OF DOUBT, THE FOREGOING RELEASES ARE INTENDED TO BE GENERAL AND INCLUDE A RELEASE OF ALL RELEASED CLAIMS, WHETHER KNOWN OR UNKNOWN, SUSPECTED OR UNSUSPECTED, ARISING OR EXISTING FROM THE BEGINNING OF TIME THROUGH AND INCLUDING THE AGREEMENT DATE.**

(b)   To the maximum extent permitted by law, each of the HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, waives the benefit of any statute or other principle of law or equity that limits the applicability of a release with respect to Claims that the releasing party does not know or suspect to exist in his, her or its favor at the time of executing the release.

(c)   Without limiting the scope of the foregoing waiver, in connection with the foregoing release, each of the HMIT Entities and the Highland Entities, on its own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, waives the benefits of Section 1542 of the California Civil Code (to the extent, if any, that Section 1542 might apply to the foregoing release), which provides as follows:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE**

001361
HCMLPHMIT00000785

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

**RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

Each of the HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, hereby agrees that the provisions of Section 1542 of the Civil Code of the State of California and all similar federal or state law, rights, rules or legal principles, legal or equitable, in each case solely to the extent such provisions apply, **ARE HEREBY KNOWINGLY AND VOLUNTARILY WAIVED AND RELINQUISHED BY EACH OF THE HMIT ENTITIES AND THE HIGHLAND ENTITIES, ON THEIR OWN BEHALF AND ON BEHALF OF THE OTHER HMIT RELEASORS AND HIGHLAND RELEASORS, RESPECTIVELY,** in each and every capacity, to the full extent that such rights and benefits pertaining to the matters released herein may be waived, and each of the HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, hereby agrees and acknowledges that this waiver and relinquishment is an essential term of this Agreement, without which the consideration provided would not have been given.

In connection with such waiver and relinquishment, each of the HMIT Entities and Highland Entities acknowledges that it is aware that it may hereafter discover Claims presently unknown or unsuspected, or facts in addition to or different from those which it now knows or believes to be true, with respect to the matters released herein. Nevertheless, it is the intent of each of the HMIT Entities and the Highland Entities, on its own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, in executing this Agreement fully, finally, and forever to settle and release all such matters, and all Claims related thereto, which exist, may exist or might have existed (whether or not previously or currently asserted in any action) which are the subject to the releases granted above.

      (d)    As an integral component of this Agreement, and notwithstanding the Parties' intent set forth in the preamble hereto and the general nature of the releases in <u>Sections 9 and 10</u>, should:

      (i)    any HMIT Releasor contend or assert that any Claim of any kind whatsoever held by any HMIT Releasor against any Highland Released Party survives this Agreement and is in any way related to or arising from or in connection with any HMIT Entity Released Claim (such claim or cause of action, a "**HMIT Alleged Claim**"), such HMIT Releasor will be deemed to have irrevocably, fully, and finally assigned such HMIT Alleged Claim to the Highland Entities and the Highland Entities will be deemed to have forever, finally, full, unconditionally, and irrevocably, and completely released such HMIT Alleged Claim.

      (ii)    any Highland Releasor contend or assert that any Claim of any kind whatsoever held by any Highland Releasor against any HMIT Released Party survives this Agreement and is in any way related to or arising from or in connection with any Highland Entity Released Claim (such claim or cause of action, a "**Highland Alleged Claim**"), such Highland Releasor will be deemed to have irrevocably, fully, and finally assigned such Highland Alleged Claim to the HMIT Entities and the HMIT Entities will be deemed to have forever, finally, full, unconditionally, and irrevocably, and completely released such Highland Alleged Claim.

001362

HCMLPHMIT00000786

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

12.    <u>Covenant Not To Sue; Limitation on Standing</u>. Upon the Agreement Date:

(a)    Each of the HMIT Releasors covenants and agrees that it will not institute or prosecute any Action, in law, in equity or otherwise, against any of the Highland Released Parties, to recover, enforce, investigate, or collect any HMIT Entity Released Claim and will not (i) induce, encourage or direct any other Person to do so or (ii) act in concert with or assist (financially or otherwise) any other Person in doing so.

(b)    Each of the Highland Releasors covenants and agrees that it will not institute or prosecute any Action, in law, in equity or otherwise, against any of the HMIT Released Parties, to recover, enforce, investigate, or collect any Highland Entity Released Claim and will not (i) induce, encourage or direct any other Person to do so or (ii) act in concert with or assist (financially or otherwise) any other Person in doing so.

(c)    For the avoidance of doubt, this Agreement shall not operate to give any HMIT Entity standing for any purpose in connection with the Bankruptcy Case (or in connection with any appeal arising from any order entered by the Bankruptcy Court), except for the limited purpose of seeking Court approval of this Agreement (including with respect to any appeal concerning any order entered granting or denying such approval), and except for the limited purpose of enforcing this Agreement, no HMIT Entity shall commence any Action in connection with the HMIT Class 10 Interest.

13.    <u>Representations and Warranties</u>.

(a)    Each of the HMIT Entities hereby represents and warrants that every HMIT Entity Released Claim has not heretofore been assigned or encumbered and is not the subject of a transfer (as such term is defined in 11 U.S.C. § 101(54)), by any HMIT Releasor.

(b)    The HMIT Entities, on their own behalf and on behalf of the other HMIT Releasors, acknowledge and agree that each Plan Provision is lawful, effective, and binding on the HMIT Releasors. The HMIT Entities further agree, on their own behalf and on behalf of the other HMIT Releasors, that the HMIT Releasors will never, in any way, challenge or seek to modify, nullify, vacate, or revoke, or induce, encourage or direct any other Person to do so or act in concert with or assist (financially or otherwise) any other Person in doing so the Confirmation Order, the Plan, the Plan Protections, or any Plan Document, including the Claimant Trust Agreement, the LPA, the Indemnity Trust Agreement or the Litigation Sub-Trust Agreement, in the Bankruptcy Court, in any other state or federal court, in any other forum or tribunal, or otherwise, including administrative or regulatory tribunals and foreign courts.

(c)    Each of the Highland Entities hereby represents and warrants that every Highland Entity Released Claim has not heretofore been assigned or encumbered and is not the subject of a transfer (as such term is defined in 11 U.S.C. § 101(54)), by any Highland Releasor.

(d)    Each Party severally represents and warrants as to itself only that: (i) it has taken all necessary action to authorize and approve the execution, delivery and performance of this Agreement; (ii) such Party has full power and authority to execute and deliver this Agreement; and (iii) this Agreement constitutes a valid, legal and binding obligation of such Party, and is enforceable subject to its terms. Each individual signatory hereto individually warrants and

001363

HCMLPHMIT00000787

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

represents to all Parties hereto that such individual has full power and authority to act on behalf of and bind the Party for which he or she has executed this Agreement; provided, however that no signatory shall otherwise provide any warranty or representation or otherwise be a party to this Agreement on an individual basis.

14.   <u>No Continuing Rights, Duties or Obligations</u>.   Except for the rights, duties, and obligations expressly set forth in this Agreement, all Rights and Obligations that existed or may have existed shall be deemed terminated, extinguished, and released upon the Agreement Date. For the avoidance of doubt, from and after the Agreement Date, (a) the Highland Released Parties, individually and collectively, shall owe no duty, past or present, including with respect to the Kirchner Claims, to the HMIT Released Parties, individually and collectively, whether contractual, fiduciary, equitable, statutory or otherwise, except as arising out of this Agreement, and (b) the HMIT Released Parties, individually and collectively, shall owe no duty to the Highland Released Parties, individually and collectively, whether contractual, fiduciary, equitable, statutory or otherwise, except as arising out of this Agreement.

15.   <u>Gatekeeper Standard</u>.

(a)   The HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, acknowledge and agree that, notwithstanding the United States Court of Appeals for the Fifth Circuit's decision in *Highland Capital Management Fund Advisors, L.P. v. Highland Capital Management, L.P.*, No. 23-10534 (5th Cir. Mar. 18, 2025), the "Gatekeeper" provisions contained in Highland's Original Plan is forever binding on each of the HMIT Entities and any Persons claiming through, under or on behalf of any of them, and for a claim or cause of action to be  "colorable" for purposes of the Gatekeeper, it must be found by final order of the Bankruptcy Court (the "**Gatekeeper Court**"), which order shall be subject to appeal to a court of competent jurisdiction, to have satisfied the "Gatekeeper Colorability Test" as such term is defined in *In re Highland Capital Management, L.P.*, 2023 Bankr. LEXIS 2104 at *124-36 (Bankr. N.D. Tex. Aug. 24, 2023).

(b)   The HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, acknowledge and agree that compliance with the Gatekeeper requires (i) a motion seeking leave to sue an Exculpated Party (as that term is defined in Highland's original Plan) and a finding that the litigant's claims and causes of action are "colorable" attaching a complaint setting forth the basis for such claims or causes of action and (ii), in the Gatekeeper Court's sole discretion, an evidentiary hearing (during which the Gatekeeper Court may, among other things, hear testimony and assess the credibility of any witness(es)) to determine whether a proposed claim or cause of action is "colorable."

(c)   The HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, further acknowledge and agree that the moving party under the Gatekeeper has the burden of satisfying the "Gatekeeper Colorability Test," and that the dismissal of the Pending Litigation shall have res judicata effect.

16.   <u>Indemnification</u>.

001364

HCMLPHMIT00000788

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

(a)    Without in any manner limiting the available remedies for any breach of this Agreement, the HMIT Entities, severally but not jointly, agree to indemnify, defend, and hold the Highland Released Parties harmless from and against any and all Liability, that may arise or result from or on account of, or that are otherwise related or attributable to (x) any breach of this Agreement or of any representation or warranty contained in the Agreement, including the representations and warranties of any HMIT Entity set forth in <u>Section 13</u> or (y) any Actions brought or prosecuted by or on behalf of, any HMIT Releasor or that are induced, encouraged, assisted  or directed by any HMIT Releasor or brought or prosecuted in concert with any HMIT Releasor against any Highland Released Party with respect to or related to any HMIT Entity Released Claims.  Without limiting the scope of the foregoing in any manner, any HMIT Entity that breaches <u>Section 12</u> shall be liable to the Highland Released Party against whom the applicable Action has been brought or prosecuted in violation of <u>Section 12</u> for the reasonable attorneys' fees and costs incurred by such Highland Released Party in defending against or otherwise responding to such Action.  Each HMIT Entity acknowledges and agrees that the HMIT Entities are and shall be severally but not jointly liable for any Liability arising from or out of any breach of this Agreement or of any representation or warranty set forth in this Agreement.

(b)    Without in any manner limiting the available remedies for any breach of this Agreement, the Highland Entities, severally but not jointly, agree to indemnify, defend, and hold the HMIT Released Parties harmless from and against any and all Liability, that may arise or result from or on account of, or that are otherwise related or attributable to (x) any breach of this Agreement or of any representation or warranty contained in the Agreement, including the representations and warranties of any Highland Entity set forth in <u>Section 13</u> or (y) any suits, proceedings, or other actions brought or prosecuted by or on behalf of, any Highland Releasor or that are induced, encouraged, assisted  or directed by any Highland Releasor or brought or prosecuted in concert with any Highland Releasor against any HMIT Released Party with respect to or related to any Highland Entity Released Claims.  Without in any manner limiting the scope of the foregoing, any Highland Entity that breaches <u>Section 12</u> shall be liable to the HMIT Released Party against whom the applicable Action has been brought or prosecuted in violation of <u>Section 12</u> for the reasonable attorneys' fees and costs incurred by such HMIT Released Party in defending against or otherwise responding to such Action.  Each Highland Entity acknowledges and agrees that the Highland Entities are and shall be severally but not jointly liable for any Liability arising from or out of any breach of this Agreement or of any representation or warranty set forth in this Agreement.

17.    <u>Execution</u>.  This Agreement may be executed by the exchange of signatures by facsimile or by PDF attachment to an email transmittal and in counterparts, and if so executed, shall be fully executed when a counterpart has been executed and delivered by all Parties hereto through counsel.  All counterparts taken together shall constitute one and the same agreement and shall be fully enforceable as such.

18.    <u>Bankruptcy Court Order</u>.  This Agreement and the transactions contemplated hereby is subject to the entry of the Bankruptcy Court Order.  To that end, the Highland Entities shall file the 9019 Motion no later than five (5) Business Days after the Agreement Date.  Each Party shall, and shall cause each of their respective Affiliates to, undertake any and all actions in compliance with applicable law to obtain the Bankruptcy Court Order as promptly as practicable, and without limiting the foregoing, if an Action is threatened or instituted by any Person opposing

001365

HCMLPHMIT00000789

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

the 9019 Motion or otherwise challenging the validity or legality, or seeking to restrain the consummation, of the transactions contemplated by this Agreement or the Bankruptcy Court Order, each Party shall, and shall cause its respective Affiliates to, use their commercially reasonable best efforts to avoid, resist, resolve or, if necessary, and defend to effectuate this Agreement and consummate the transactions hereby.  If the 9019 Motion is not approved by entry of the Bankruptcy Court Order or if the Bankruptcy Court Approval is precluded from becoming a Final Order, each Party shall, and shall cause its respective Affiliates to, use their best efforts to seek the entry of a Final Order of the Bankruptcy Court approving this Agreement and the transactions contemplated hereby in a substantially similar form and on substantially similar terms as set forth herein to the fullest extent possible so as to give effect to the original intent of the Parties as closely as possible.

19.    <u>Fees and Expenses</u>.  Whether or not the transactions contemplated hereby are consummated or the Bankruptcy Court Order is obtained, and except as otherwise expressly provided in this Agreement, each Party will bear its respective fees, costs and expenses (including legal, accounting and other professional fees) incurred in connection with the preparation, negotiation, execution and performance of this Agreement or the transactions contemplated hereby, including with respect to each Party's respective obligations pursuant to <u>Section 18</u>.  Notwithstanding the foregoing, if any Party hereto brings an Action to enforce or interpret the terms and provisions of this Agreement, the prevailing Party in that Action shall be entitled to have and recover from the non-prevailing Party all such fees, costs and expenses (including all court costs and reasonable attorneys' fees) as the prevailing Party may suffer or incur in the pursuit or defense of such action or proceeding.

20.    <u>Entire Agreement; No Other Representations</u>.  **THIS AGREEMENT CONTAINS THE ENTIRE AGREEMENT BETWEEN THE PARTIES, AND NO RIGHTS ARE CREATED IN FAVOR OF ANY PERSON OTHER THAN AS SPECIFIED OR EXPRESSLY SET FORTH IN THIS AGREEMENT.  THERE ARE NO REPRESENTATIONS, CONDITIONS, WARRANTIES, STATEMENTS, OR UNDERSTANDINGS (COLLECTIVELY, "<u>REPRESENTATIONS</u>"), EITHER ORAL OR WRITTEN, BETWEEN THE PARTIES OTHER THAN THOSE EXPRESSLY SET FORTH IN THIS AGREEMENT.  THE PARTIES EXPRESSLY AGREE THAT THEY HAVE NOT BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY ANY REPRESENTATIONS NOT SET FORTH IN THIS AGREEMENT; AND THE PARTIES EXPRESSLY AGREE THAT THEY HAVE NOT RELIED ON ANY REPRESENTATIONS NOT EXPRESSLY SET FORTH IN THIS AGREEMENT. THE PARTIES EXPRESSLY AGREE THAT THEY ARE ENTERING INTO THIS AGREEMENT RELYING SOLELY ON THEIR OWN JUDGMENT AND NOT ON ANY REPRESENTATIONS BY ANY PARTY, EXCEPT FOR THOSE REPRESENTATIONS EXPRESSLY SET FORTH IN THIS AGREEMENT.  THE PARTIES AGREE THAT REPRESENTATIONS NOT EXPRESSLY SET FORTH IN THIS AGREEMENT SHALL NOT BE USED IN THE INTERPRETATION OR CONSTRUCTION OF THIS AGREEMENT, AND NEITHER THE HMIT RELEASED PARTIES NOR THE HIGHLAND RELEASED PARTIES SHALL HAVE ANY LIABILITY FOR ANY CONSEQUENCES ARISING AS A RESULT OF ANY REPRESENTATIONS NOT SET FORTH IN THIS AGREEMENT.**

001366

HCMLPHMIT00000790

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

21.    <u>Agreement and Release Knowing and Voluntary</u>.  The Parties acknowledge that they have considered this Agreement with their respective attorneys and have carefully read this Agreement, that it has been fully explained by their attorneys, and that they have had a reasonable opportunity to consider this Agreement.  The Parties further represent that they know and fully understand the contents of this Agreement, that they intend to be legally bound by this Agreement and the releases and covenants contained herein, and that they are signing this Agreement, including the release provisions herein, voluntarily and of their own free will and without coercion, and with the benefit of advice of counsel.

22.    <u>Cooperation</u>.  The Parties agree to perform any services or actions reasonably necessary to carry out the terms and conditions of this Agreement or the transactions contemplated hereby, including the execution and delivery of reasonable additional documents, instruments, conveyances and/or assurances, in good faith, and to reasonably communicate and cooperate with one another in this regard.  For the avoidance of doubt, nothing in this Section shall obligate the Highland Entities to assist the HMIT Entities in any way with respect to the Kirschner Claims, including the prosecution thereof.

23.    <u>Governing Law</u>.  This Agreement shall be construed pursuant to and governed by the laws of the State of Delaware (substantive and procedural) without reference to principles of conflicts of law that would result in the application of any other State's laws.

24.    <u>Jurisdiction/Venue</u>.  The Parties hereby irrevocably submit to the jurisdiction and venue of the Bankruptcy Court with respect to any Action arising out of or related to this Agreement or the subject matter hereof; if (and only if) the Bankruptcy Court lacks personal or subject matter jurisdiction to adjudicate an Action arising out of or related to this Agreement or the subject matter hereof, then the Parties irrevocably submit to the jurisdiction and venue of the United States District Court for the Northern District of Texas.

25.    <u>No Admissions</u>.  All Parties acknowledge and agree that the matters set forth in this Agreement constitute the settlement and compromise of disputed Claims and that this Agreement shall not constitute the admission of any fact or liability by any of them regarding any Claim, including the Claims released hereunder, and neither the terms hereof, nor the fact of this Agreement itself, shall be evidence of any kind in any Action, other than an Action to enforce the terms of the Agreement or any instrument executed in connection herewith or any claim for damages or other relief for breach of any representation or warranty contained herein or in any instrument executed in connection herewith.

26.    <u>Other Provisions</u>.

(a)    No representation, inducement, agreement, promise or understandings altering, modifying, amending, taking from or adding to, the terms and conditions hereof shall have any force or effect unless the same is in writing and validly executed by each of the Parties hereto.

(b)    The waiver by any Party of any breach of, or default under, any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach or default;

001367
HCMLPHMIT00000791

provided, however, that for any such waiver to be enforceable, it shall be in writing and executed by the non-breaching Party.

(c)    The headings contained in this Agreement are for convenience only and shall in no way restrict or otherwise affect the construction of the provisions hereof.

(d)    The Parties shall each execute all documents and perform all acts necessary and proper to effectuate the terms of this Agreement.

27.    <u>Notices</u>.  All notices required or permitted to be provided hereunder shall be afforded to the respective parties to and through their counsel, and shall be transmitted simultaneously by electronic mail (with PDF attachments, as necessary) and by telefax, addressed as follows:

To the Highland Entities:

**PACHULSKI STANG ZIEHL AND JONES LLP**
Jeffrey N. Pomerantz
John A. Morris
10100 Santa Monica Boulevard
Los Angeles, California 90067-4003
310.277.6910
jpomerantz@pszjlaw.com
jmorris@pszjlaw.com

To the HMIT Entities:

**KELLY HART PITRE**
Louis M. Phillips
Amelia Hurt
301 Main Street, Suite 1600
225.381.9643
Louis.Phillips@Kellyhart.com
Amelia.Hurt@Kellyhart.com

28.    <u>Interpretive Provisions</u>. Unless the express context otherwise requires: (a) the words "hereof," "herein" and "hereunder" and words of similar import, when used in this Agreement, shall refer to this Agreement as a whole and not to any particular provision of this Agreement; (b) words defined in the singular shall have a comparable meaning when used in the plural, and vice versa; (c) the words "Dollars" and "$" mean U.S. dollars; (d) references herein to a specific Section, Subsection, Recital, Schedule or Exhibit shall refer, respectively, to Sections, Subsections, Recitals, Schedules or Exhibits of this Agreement; (e) wherever the word "include," "includes" or "including" is used in this Agreement, it shall be deemed to be followed by the words ",without limitation,"; (f) references herein to any gender shall include each other gender; (g) references herein to any Person shall include such Person's heirs, executors, personal representatives, administrators, successors and assigns; provided, however, that nothing contained in this clause (g) is intended to authorize any assignment or transfer not otherwise permitted by

001368
HCMLPHMIT00000792

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

this Agreement; (h) with respect to the determination of any period of time, the word "from" means "from and including" and the words "to" and "until" each means "to but excluding"; (i) the word "or" shall be disjunctive but not exclusive; (j) the headings contained in this Agreement are intended solely for convenience and shall not affect the rights of the Parties; and (k) if the last day for the giving of any notice or the performance of any act required or permitted under this Agreement is a day that is not a Business Day, then the time for the giving of such notice or the performance of such action shall be extended to the next succeeding Business Day.

[*Signature page follows*]

001369
HCMLPHMIT00000793

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first written above.

**HUNTER MOUNTAIN INVESTMENT TRUST**

By _____
Name:       Mark Patrick
Title:       Administrator
Date:       May __, 2025

**BEACON MOUNTAIN LLC**

By _____
Name:
Title:
Date:       May __, 2025

**RAND ADVISORS, LLC**

By _____
Name:       Mark Patrick
Title:       President
Date:       May __, 2025

**RAND PE FUND I, LP**
By: Rand PE Fund Management, LLC, its General Partner

By _____
Name:       Mark Patrick
Title:       President
Date:       May __, 2025

**RAND PE FUND MANAGEMENT, LLC**

By _____
Name:       Mark Patrick
Title:       President

001370

HCMLPHMIT00000794

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

Date:        May __, 2025

**ATLAS IDF, LP**
By: Atlas IDF GP, LLC, its General Partner


By    _____
        Name:        Mark Patrick
        Title:        President
        Date:        May __, 2025

**ATLAS IDF GP, LLC**


By    _____
        Name:        Mark Patrick
        Title:        President
        Date:        May __, 2025


**HIGHLAND CAPITAL MANAGEMENT, L.P.**


By    _____
        Name:        James. P. Seery, Jr.
        Title:        Chief Executive Officer
        Date:        May __, 2025


**HIGHLAND CLAIMANT TRUST**


By    _____
        Name:        James P. Seery, Jr.
        Title:        Claimant Trustee
        Date:        May __, 2025

**HIGHLAND LITIGATION SUB-TRUST**


By    _____
        Name:        Marc S. Kirschner
        Title:        Litigation Trustee


SIGNATURE PAGE TO SETTLEMENT AGREEMENT & GENERAL RELEASE

HCMLPHMIT00000795

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

Date:      May __, 2025

**HIGHLAND INDEMNITY TRUST**


By    _____
      Name:     James P. Seery, Jr.
      Title:    Indemnity Trust Administrator
      Date:     May __, 2025

001372

HCMLPHMIT00000796

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

## SETTLEMENT AGREEMENT & GENERAL RELEASE

THIS SETTLEMENT AGREEMENT & GENERAL RELEASE (this "**Agreement**") is entered into as of May [], 16, 2025 (the "**Agreement Date**"), by and among Highland Capital Management, L.P., a Delaware limited partnership ("**Highland**"), the Highland Claimant Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act (the "**Claimant Trust**"), the Highland Litigation Sub-Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act (the "**Litigation Sub-Trust**"), and the Highland Indemnity Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act (the "**Indemnity Trust**", and together with Highland, the Claimant Trust and the Litigation Sub-Trust, the "**Highland Entities**"), on the one hand, and Hunter Mountain Investment Trust, a Delaware statutory trust ("**HMIT**"), Beacon Mountain LLC, a Delaware limited liability company ("**Beacon Mountain**"), Rand Advisors, LLC, a Delaware limited liability company ("**Rand Advisors**"), Rand PE Fund I, LP, a Delaware series limited partnership ("**Rand PE Fund**"), Rand PE Fund Management, LLC, a Delaware limited liability company ("**Rand GP**"), Atlas IDF, LP, a Delaware limited partnership ("**Atlas IDF**"), Atlas IDF GP, LLC, a Delaware limited liability company ("**Atlas GP**" and together with HMIT, Beacon Mountain, Rand Advisors, Rand PE Fund, Rand GP and Atlas IDF, the "**HMIT Entities**"), on the other hand.  The Highland Entities and the HMIT Entities are collectively referred to as the "**Parties**," and each individually, as a "**Party**".

## DEFINITIONS

Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Claimant Trust Agreement or the Plan, as applicable (in each case, as hereinafter defined). For purposes of this Agreement, the following capitalized terms have the following meanings:

"**9019 Motion**" means the motion seeking entry of the Bankruptcy Court Order pursuant to Bankruptcy Rule 9019 and in accordance with Section 18.

"**Action**" means any action, claim, demand, arbitration, hearing, charge, complaint, investigation, examination, indictment, litigation, suit or other civil, criminal, administrative or investigative proceedings, including any petition under Rule 202 of the Texas Rules of Civil Procedure.

"**Affiliate**" means a Person that, directly or indirectly, through one or more intermediaries, controls or is controlled by, or is under common control with, a specified Person as of the date on which, or at any time during the period for which, the determination of affiliation is being made. The term "control" (including, with correlative meanings, the terms "controlled by" and "under common control with"), as applied to any Person, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting securities or other ownership interest, by contract or otherwise.

"**Amended Complaint**" means the *Amended Complaint and Objection to Claims*, filed as docket number 158 in *Kirschner v. Dondero*, Adv. Pro. No. 21-03076-sgj (Bankr. N.D. Tex. May 19, 2022).

"**Bankruptcy Case**" means *In re Highland Capital Management, L.P.*, Case No. 19-34054-sgj (Bankr. N.D. Tex.) and its related proceedings.

001373
HCMLPHMIT00000797

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

"**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended).

"**Bankruptcy Court**" means the U.S. Bankruptcy Court for the Northern District of Texas, Dallas Division.

"**Bankruptcy Court Approval Date**" means the date on which the Bankruptcy Court Order is issued.

"**Bankruptcy Court Order**" means an order of the Bankruptcy Court approving the allowance of the HMIT's Class 10 Interest as provided in this Agreement pursuant to the 9019 Motion.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure.

"**Business Day**" means any day other than (i) a Saturday or a Sunday, (ii) a day on which the Federal Reserve Bank of New York or the New York Stock Exchange is closed, or (iii) a day on which banks in the States of Texas are required, or authorized by law, to close.

"**Claimant Trust Agreement**" means that certain Claimant Trust Agreement of the Claimant Trust (as may have been or may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), effective as of August 11, 2021, by and among Highland, as settlor, James P. Seery, Jr., a Claimant Trustee, and Wilmington Trust, National Association, a national banking association, as Delaware trustee.

"**Claims**" means any claims, debts, liabilities, demands, obligations, breaches of contract, breaches of duty or any relationship, misfeasance, malfeasance, promises, acts, omissions, agreements, liens, losses, costs and expenses (including attorney's fees and related costs), damages, injuries, suits, ~~actions~~Actions, and causes of action of whatever kind or nature, whenever and however, arising, whether known or unknown, suspected or unsuspected, matured or unmatured, liquidated or unliquidated, contingent or fixed, at law or in equity, statutory or otherwise.

"**Class 10**" means the class of Claims or Equity Interests described in Article II. Section H.10. of the Plan.

"**Class 11**" means the class of Claims or Equity Interests described in Article II. Section H.11. of the Plan.

"**Committee**" means the official committee of unsecured creditors appointed in the Bankruptcy Case.

"**Confirmation Order**" means that certain *Order Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (ii) Granting Related Relief* [Docket No. 1943], as conformed in accordance with the Fifth Circuit's rulings.

001374

HCMLPHMIT00000798

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

"**Dugaboy Note**" means that certain Promissory Note dated May 31, 2017, in the original face amount of $24,268,621.69, from The Dugaboy Investment Trust, as Maker, and Highland Capital Management, L.P. and The Get Good Non-Exempt Trust, collectively as Payee.

"**Final Court Approval Date**" means the date on which the Bankruptcy Court Order becomes a Final Order.

"**Final Order**" means an order or judgment of the Bankruptcy Court, which is in full force and effect, and as to which the time to appeal, petition for certiorari, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, new trial, reargument, or rehearing shall have been waived in writing in form and substance satisfactory to the Highland Entities, as applicable, or, in the event that an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order of the Bankruptcy Court shall have been determined by the highest court to which such order was appealed, or certiorari, new trial, reargument or rehearing shall have been denied and the time to take any further appeal, petition for certiorari, or move for a new trial, reargument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be Filed with respect to such order shall not preclude such order from being a Final Order.

"**Gatekeeper**" means the gatekeeping provision contained in Article IX. F of the Plan as of August 11, 2021.

"**Governmental Authority**" means any federal, provincial, state, local or foreign government or political subdivision thereof, court of competent jurisdiction, administrative agency, judicial or arbitral body, or commission or other governmental or regulatory authority or instrumentality.

"**Highland Released Parties**" means collectively (i) the Highland Entities, (ii) any Affiliate of any Highland Entity and any Person directly or indirectly majority-owned by any Highland Entity or any of their respective Affiliates, (iii) any Person directly or indirectly managed by any Highland Entity or any of their respective Affiliates, whether by contract or otherwise (the entities described in clauses (i)-(iii), collectively, the "**Highland Parties**"), (iv) each of the Highland Parties' current and former trustees and administrators (including the trustees of any of the Claimant Trust, the Litigation Sub-Trust, or the Indemnity Trust), officers, executives, agents, directors, advisors, advisory representatives, consultants, administrators, managers, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns, (v) the current and former members of the Oversight Board of the Claimant Trust in any capacity (including Richard Katz) and their Affiliates, ~~including~~(vi) Farallon Capital Management, LLC, Stonehill Capital Management, LLC, Muck Holdings LLC, and Jessup Holdings LLC, ~~(vi)~~in each case, in any capacity, (vii) the Independent Board and its members John Dubel, James P. Seery, Jr., and Russell Nelms, (~~vii~~viii) James P. Seery, Jr., individually and in all capacities for any Highland Released Party, including as Chief Executive Officer of Highland Capital Management, L.P., Claimant Trustee of the Claimant Trust, and the Indemnity Trust Administrator of the Indemnity Trust, (~~viii~~ix) Marc S. Kirschner, individually and as Trustee of

001375

HCMLPHMIT00000799

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

the Litigation Sub-Trust, (ixx) the Committee and each of its members, (xxi) the professionals (and their respective firms) (a) retained by Highland or the Committee during the Bankruptcy Case or which provided services to Highland or the Committee during the Bankruptcy Case or (b) retained by any Highland Released Party on or after August 11, 2021, (xixii) any Person indemnified by any Highland Party (the Persons described in clauses (i)-(xixii), collectively, the "**Highland Covered Parties**"), and (xii) each Highland Covered Party's current and former officers, executives, agents, attorneys (and their respective firms), directors, advisors, consultants, administrators, managers, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns, if not otherwise included in the defined term "Highland Covered Parties;" provided, however, and for the avoidance of doubt, and without in any way limiting the scope of the foregoing, "Highland Covered Parties" shall include Highland CLO Funding, Ltd., Highland HCF Advisor, Ltd., Highland Multi Strategy Credit Fund, L.P., Highland Multi Strategy Credit Fund GP, L.P., Highland Multi Strategy Credit GP, LLC, Highland Multi Strategy Credit Fund, Ltd., Highland Select Equity Master Fund, L.P., Highland Select Equity Fund GP, L.P., Highland Select Equity Fund, L.P., Highland Restoration Capital Partners Master, L.P., Highland Restoration Capital Partners GP, LLC, Highland Restoration Capital Partners, L.P., Highland Restoration Capital Partners Offshore, L.P., Highland Offshore Director, LLC, Acis CLO Management, LLC, Neutra, Ltd., Pollack, Ltd., Acis CLO Management Holdings, L.P., Acis CLO Management Intermediate Holdings I, LLC, Acis CLO Management Intermediate Holdings II, LLC, Acis CLO Assets Holdings Limited, CHG Houston Holdings, LLC, Penant Management, L.P., Penant Management GP, LLC, Gunwale, LLC, HE Capital, LLC, Gleneagles CLO, Ltd., Aberdeen Loan Funding, Ltd. Highland Argentina Regional Opportunity Fund GP, LLC, Highland Argentina Regional Opportunity Fund, L.P., Highland Argentina Regional Opportunity Fund, Ltd., Highland Argentina Regional Opportunity Master Fund, L.P., Highland Latin America Consulting, Ltd., Highland Capital Management Korea Limited, Highland Capital Management Latin America, L.P., Highland Latin America GP, Ltd., Highland Latin America LP, Ltd., Highland Offshore Partners, L.P. (Diversified), Brentwood CLO, Ltd., Eastland CLO, Ltd., Bristol Bay Funding Ltd., Jasper CLO Ltd., Highland Legacy Limited, Grayson CLO, Ltd., Greenbriar CLO, Ltd., Highland Loan Funding V Ltd., Highland Park CDO I, Ltd., Liberty CLO, Ltd., Valhalla CLO, Ltd., Stratford CLO Ltd., Southfork CLO, Ltd., Pam Capital Funding, L.P., Stonebridge-Highland Healthcare Private Equity Fund, Pamco Cayman Ltd., Red River CLO, Ltd., Rockwall CDO II Ltd., Rockwall CLO Ltd., Westchester CLO, Ltd. Longhorn Credit Funding, LLC, PensionDanmark Pensionsforsikringsaktieselskab, Highland Dynamic Income Master Fund L.P., Highland Dynamic Income Fund GP, LLC, Highland Dynamic Income Fund, L.P., Highland Dynamic Income Fund, Ltd., Highland JHT Holdings, LLC, Highland Prometheus Master Fund, L.P., Highland Prometheus Feeder Fund I, L.P., Highland Prometheus Feeder Fund II, L.P., Highland Sunbridge GP, LLC, Trussway Holdings, LLC, Trussway Industries, LLC, TW Company, Inc., T-Way Investments, LLC, SSP Holdings, LLC, Highland Flexible Income UCITS Fund, and Acis CLO 2017-7, Ltd. *Notwithstanding the forgoing or anything herein to the contrary*, none of "Highland Released Parties", "Highland Parties", nor "Highland Covered Parties" shall include James Dondero, Scott Ellington, Isaac Leventon, or any Person directly or indirectly owned as of the date hereof (in whole or in part) by, and/or Affiliated as of the date hereof with, or claiming through, under or on behalf of, any of Mr. Dondero, Mr. Ellington, or Mr. Leventon in any manner and none of such Persons are released from any Claim by any Person in connection with this Agreement.

001376
HCMLPHMIT00000800

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

"**HMIT Class 10 Interest**" means the unvested, contingent Class 10 interest in the Claimant Trust (a) to be allowed on account of HMIT's pre-petition equity interest in Highland, and (b) subject to the terms and conditions, as applicable, of the Plan, the Plan Documents, the Claimant Trust Agreement, and in accordance with this Agreement, and applicable law.

"**HMIT Note**" means that certain Secured Promissory Note dated December 21, 2015, in the original face amount of $63,000,000 from HMIT, as maker, and Highland, as payee.

"**HMIT Note Claims**" means any Claim related to, in connection with or arising out of the HMIT Note.

"**HMIT Released Parties**" means collectively (i) the HMIT Entities, (ii) any Affiliate of any HMIT Entity and any Person directly or indirectly majority owned by any HMIT Entity or any of their respective Affiliates, (iii) any Person directly or indirectly managed by any HMIT Entity or any of their respective Affiliates, whether by contract or otherwise (the entities described in clauses (i) – (iii), collectively, the "**HMIT Parties**"), (iv) each of the HMIT Parties' current and former trustees, administrators, officer, executives, agents, directors, advisors, consultants, manager, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns (v) the professionals (and their respective firms (a) retained by any HMIT Party during the Bankruptcy Case or which provided services to any HMIT Party during the Bankruptcy Case or (b) retained by any HMIT Released Party on or after August 11, 2021, (vi) any Person indemnified by any HMIT Party (the Persons described in clauses (i) – (vi), collectively, the "**HMIT Covered Parties**"), and (vii) each HMIT Covered Party's current and former officers, executives, agents, directors, advisors, consultants, administrators, managers, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns, if not otherwise included in the defined term "HMIT Covered Parties." *Notwithstanding the forgoing*, none of "HMIT Released Parties", "HMIT Parties", nor "HMIT Covered Parties" shall include James Dondero, Scott Ellington, Isaac Leventon, or any Person directly or indirectly owned as of the date hereof (in whole or in part) by, and/or Affiliated as of the date hereof with, or claiming through, under or on behalf of, any of Mr. Dondero, Mr. Ellington, or Mr. Leventon in any manner, and none of such Persons are released from any Claims by any Person in connection with this Agreement.

"**Indemnity Trust Administrator**" has the meaning given to it in the Indemnity Trust Agreement.

"**Indemnity Trust Agreement**" means that certain *Second Amended and Restated Indemnity Trust Agreement of the Indemnity Trust* (as may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), effective as of [April 28], 2025, by and among the Claimant Trust, as grantor, James P. Seery, Jr., as indemnity trust administrator, and Wilmington Trust, National Association, a national banking association, as indemnity trustee and Delaware trustee.

"**Indemnity Trust Assets**" has the meaning set forth in the Indemnity Trust Agreement, but excluding Highland, the Claimant Trust, and their respective assets.

001377
HCMLPHMIT00000801

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

"**Independent Board**" means the independent board appointed by the Bankruptcy Court on January 9, 2020, pursuant to that certain *Order Approving Settlement with Official Committee of Unsecured Creditors Regarding Governance of the Debtor and Procedures for Operations in the Ordinary Course* [Docket No. 339].

"**Kirschner Claims**" means all Claims and causes of action that were asserted or could have been asserted by the Litigation Trustee of the Litigation Sub-Trust, in the Amended Complaint.

"**Liability**" means any liability, debt, obligation, loss, damage, claim, cost or expense (including costs of investigation and defense and attorney's fees, costs and expenses), in each case, whether direct or indirect, whether accrued or contingent, whether or not involving a third-party claim, and including incidental and consequential damages and diminution of value.

"**Litigation Protections**" means, individually and collectively, the rights, duties, and obligations set forth in ~~Section~~Sections 1 – 2 and Sections 9 - 16.

"**Litigation Sub-Trust**" means the Highland Litigation Sub-Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act.

"**Litigation Sub-Trust Agreement**" means that certain Litigation Sub-Trust Agreement of the Litigation Sub-Trust (as may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), effective as of August 16, 2021, by and among James P. Seery, Jr., as Claimant Trustee of the Claimant Trust, Wilmington Trust, National Association, a national banking association, as Delaware Trustee, and the Litigation Trustee.

"**Litigation Trustee**" means Marc S. Kirschner, as Litigation Trustee of the Litigation Sub-Trust.

"**LPA**" means that certain *Sixth Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P.* (as may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), dated as of October 4, 2021.

"Operating Expenses" means ~~the expenses of operation and administration of the Highland Entities except for the Indemnity Trust~~, except for the expenses of the Indemnity Trust (including any payments to Trust Indemnified Parties or Indemnified Parties (in each case, as defined, and pursuant to the terms and conditions set forth, in the Indemnity Trust Agreement)), the expenses of operating and administering the Highland Entities, including legal expenses, employee compensation, Claimant Trustee/CEO and other trust and trustee related compensation, incentive compensation, and customary general and administrative expenses.

"**Original Plan**" means that certain *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* attached as Exhibit A to the *Order (A) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as modified) and (B) Granting Related Relief*, filed at Docket No. 1943 on the Bankruptcy Court's docket.

"**Oversight Board**" means the oversight board of the Highland Claimant Trust.

001378
HCMLPHMIT00000802

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

"**Pending Litigation**" means (i) *Hunter Mountain Investment Trust v. Highland Cap. Mgmt., L.P.*, Case No. 3:23-cv-02071-E (N.D. Tex.), on remand to the Bankruptcy Court (including *Hunter Mountain Investment Trust's Emergency Motion for Leave to File Adversary Proceeding* filed at Bankruptcy Court Docket No. 3699 and all proceedings, decisions, and orders relating there); (ii) *Dugaboy Investment Trust v. Highland Cap. Mgmt, L.P.*, 3:24-cv-01531-X (N.D. Tex.) (only as to HMIT), and (iii) *Hunter Mountain Investment Trust v. Highland Cap. Mgmt., L.P.*, Case No. 3:24-cv-01786-L (N.D. Tex.).

"**Permitted Investments**" has the meaning set forth in the Indemnity Trust Agreement.

"**Person**" means any natural person, partnership, limited liability partnership, corporation, limited liability company, association, joint stock company, trust, estate, joint venture, unincorporated organization or Governmental Authority.

"**Plan**" means that certain *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* as conformed in accordance with the Fifth Circuit's rulings.

"**Plan Documents**" has the meaning given to it in the Plan.

"**Plan Protections**" means, collectively, the provisions of the Plan contained in Article IX thereof.

"**Pro Rata**" means the proportion that (a) the allowed amount of a particular Claim or Equity Interest in Class 10 bears to (b) the aggregate allowed amount of all Claims or Equity Interests in Class 10.

"**Threats**" means any written threats of legal action, legal demands, filed complaints, petitions for pre-suit discovery, suits, litigations, arbitrations, actual or threatened restraining orders or injunctions made in writing, or similar written actions of any kind, or sworn statements evidencing the same, in any forum against any Trust Indemnified Parties or Indemnified Party (both as defined in the Indemnity Trust Agreement), excluding any such action that would otherwise be a Threat except that any applicable ~~Statute~~statute of ~~Limitations~~limitations that could be applicable to such action has expired.

"**Threats Notice**" means the written notice of any Threats ~~made~~received by the Indemnity Trust with respect to any Trust Indemnified Parties or Indemnified Party (both as defined in the Indemnity Trust Agreement), that is hereby required to be provided by ~~such Party~~the Indemnity Trust to the HMIT Entities, within ~~Five~~five (5) ~~business days~~Business Days after receipt of such Threat.

## RECITALS

**WHEREAS**, as of the Petition Date, HMIT held Class B and Class C Limited Partnerships Interests in Highland;

**WHEREAS**, on December 21, 2015, HMIT entered into the HMIT Note with Highland, which had a total outstanding principal balance of Fifty-Seven Million Six Hundred Ninety

001379

HCMLPHMIT00000803

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

Thousand Six Hundred Forty and 95/100 Dollars ($57,690,640.95) as of the Petition Date (the "**HMIT Note Balance**");

**WHEREAS**, HMIT's Class B and Class C Limited Partnership Interests in Highland were extinguished on August 11, 2021, in accordance with the Plan;

**WHEREAS**, pursuant to the LPA, HMIT's capital account balance at Highland on account of its Class B and Class C Limited Partnership Interests on the Petition Date was Three Hundred Ninety-Four Million Six Hundred Thirty Thousand Eight Hundred Seventy-One and 53/100 Dollars ($394,630,871.53) (the "**HMIT Capital Account Balance**");

**WHEREAS**, some or all of the HMIT Entities have asserted certain Claims against certain Highland Entities and certain other Highland Covered Parties, including those asserted in the Pending Litigation;

WHEREAS, certain distributions to be made to the holders of allowed Class 10 Claims or Equity Interests pursuant to the terms and subject to the conditions set forth herein are premised on the consent of certain Highland Covered Parties in their capacity as Holders of Class 9 Interests, and such Persons are only willing to provide such consent in exchange for the releases as set forth in this Agreement;

**WHEREAS**, some or all of the Highland Entities have asserted certain Claims against certain HMIT Entities, including the HMIT Note Claims;

**WHEREAS**, the Parties wish to terminate, extinguish, and release any and all rights, duties, obligations and Claims that (a) any of the Highland Released Parties owed or have, or may have owed or have, to or with respect to any of the HMIT Released Parties, and (b) any of the HMIT Released Parties owed or have, or may have owed or have, to or with respect to any of the Highland Released Parties, as provided in this Agreement (collectively, the "**Rights and Obligations**");

**WHEREAS**, the Parties agree that the Litigation Protections are intended to enact a permanent cessation of all litigation concerning or related to the Highland Released Parties through and including the Agreement Date; and

**WHEREAS**, the Parties, individually and collectively, wish to (a) resolve all disputes between and/or among any of the Highland Entities and their respective indemnitees, on the one hand, and any of the HMIT Entities, on the other hand, including those asserted or attempted to be asserted in the Pending Litigation, (b) fix and allow HMIT's Class 10 Interest at the amount and on the terms provided herein; and (c) terminate, extinguish, and release all Rights and Obligations on the terms provided herein.

**NOW THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree as follows:

## AGREEMENT

1.     ~~Abatement~~Stay and Dismissal of Pending Litigation With Prejudice.

001380

HCMLPHMIT00000804

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

(a)     Within ~~three (3~~five (5) Business Days after the Agreement Date, the HMIT Entities shall take all steps necessary (at their own cost) to ~~abate~~stay the Pending Litigation.

(b)     Within ~~three (3~~five (5) Business Days after the Bankruptcy Court Approval Date, the HMIT Entities shall take all steps necessary (at their own cost) to dismiss the Pending Litigation with prejudice.

2.     <u>Maintenance of ~~Abatement~~Stay and Dismissal of Certain Defendants from the Amended Complaint</u>.

(a)     The Litigation Trustee shall continue to maintain the ~~abatement~~stay of Adv. Proc. No. 21-03076-sgj and all related proceedings arising therefrom through the Bankruptcy Court Approval Date. Within ~~three (3~~five (5) Business Days after the Bankruptcy Court Approval Date, the Litigation Sub-Trust shall take all steps necessary (at its own cost) to dismiss, with prejudice, HMIT and Rand PE from Counts I, II, III, and XXIV of the Amended Complaint.

3.     <u>Cash Payment to HMIT</u>.  ~~In consideration for the dismissal of the Pending Litigation, within three (3~~Within five (5) Business Days following the Bankruptcy Court Approval Date, Highland shall pay HMIT a one-time, lump sum of Five Hundred Thousand Dollars (US$500,000.00) (the "**Payment**") by wire transfer:

[wire instructions]

4.     <u>HMIT Class 10 Interest</u>.

(a)     Subject to entry of the Bankruptcy Court Order, and the terms of this Agreement, the HMIT Class 10 Interest shall be deemed allowed in the amount of Three Hundred Thirty-Six Million Nine Hundred Forty Thousand Two Hundred Thirty and 58/100 Dollars (US$336,940,230.58), which amount represents the HMIT Capital Account Balance, <u>less</u> the HMIT Note Balance.

(b)     Notwithstanding anything to the contrary in the Plan or the Claimant Trust Agreement, as an integral part of this Agreement to consent to the allowance of the HMIT Class 10 Interest and the other considerations in this Agreement, HMIT shall not be deemed, and no holder of the HMIT Class 10 Interest shall be, a Claimant Trust Beneficiary or a "Beneficiary" under the Claimant Trust Agreement, and the Highland Released Parties, individually and collectively, shall owe no duty to any HMIT Releasor (whether contractual, fiduciary, equitable, statutory or otherwise), including with respect to the HMIT Class 10 Interest, in each case, except as expressly set forth in this Agreement.  Furthermore, without limiting the foregoing and for the avoidance of doubt, the contractual right of the holder of the HMIT Class 10 Interest to receive or recover any payments or Indemnity Trust Assets from the Indemnity Trust as set forth in this Agreement or the Indemnity Trust Agreement does not make any HMIT Releasor or any other Person a beneficiary of the Indemnity Trust or under the Indemnity Trust Agreement.

(c)     Notwithstanding anything to the contrary in the Plan, the Claimant Trust Agreement or the Indemnity Trust Agreement, in no event shall HMIT sell, transfer, assign, pledge, hypothecate, participate or otherwise dispose of <u>or encumber</u> the HMIT Class 10 Interest

001381
HCMLPHMIT00000805

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

or any rights (including any right to payment) with respect thereto (collectively, a "**Class 10 Assignment**"), and any attempted Class 10 Assignment shall be null and void.

(d)     For the avoidance of doubt, the HMIT Class 10 Interest is and shall remain senior to the not yet allowed, unvested contingent Class 11 Claims of Equity Interests as provided for in the Plan, the Plan Documents, and the Claimant Trust Agreement.

5.     <u>Initial Interim Distributions on the Allowed Class 10 Interests</u>.

(a)     Within ten (10)five (5) Business Days after the Bankruptcy Court Approval Date, the Indemnity Trust shall distribute (the date on which such distribution is made, the "**Initial Interim Distribution Date**") Pro Rata to the Holders of allowed Class 10 Claims or Equity Interests cash in the aggregate amount of TwelveTen Million Dollars (US$1210,000,000.00) (the "**Initial Interim Cash Distribution Amount**").

(b)     HMIT shall deposit and hold Ten Million Dollars (US$10,000,000) of the Initial Interim Cash Distirbution Amount in an interest bearing escrow account (the "**HMIT Escrow Account**") pending the Final Court Approval Date.

(c)(b)   Within ten (10)five (5) Business Days after the Bankruptcy Court Approval Date ("(the "**Note Assignment Date**"), the Highland Entities shall cause the portion of the Dugaboy Note held by the Highland Entities to be assigneddistributed to HMIT in-kind and take all actions necessary for HMIT to become the holder of such portion of the Dugaboy Note, and shall in addition pay to HMIT cash in the aggregate amount of all principal and interest payments actually received on the Dugaboy Note by the the Highland Entities, including the Indemnity Trust as of, from the Agreement Date to the Note Assignment Date.  Prior to the Bankruptcy Court Approval Date, HMIT will engage an independent valuation service provider to value the Dugaboy Note for purposes of determining the magnitude of reduction to the outstanding allowed Class 10 Interests on account of such in-kind distribution, which shall not be less than Fifty percent (50%) of the current balance owed under the Dugaboy Note. The HMIT Entities acknowledge and agree that none of the Highland Entities are representing or warranting that the Dugaboy Note can be sold, or the price, if any, that could be received for the Dugaboy Note and further acknowledge and agree that any such purchase price may be de minimis.

6.     <u>Subsequent Distribution(s) on the Allowed Class 10 Interests</u>.

(a)     On December 1, 2027, the Indemnity Trust shall distribute (such distribution, collectively, the "**First Subsequent Distribution**", and the date on which such Subsequent Distribution is made, the "**First Subsequent Distribution Date**") Pro Rata to the Holders of allowed Class 10 Claims or Equity Interests: cash in the aggregate amount of EightFive Million Dollars (US$85,000,000.00).  . HMIT shall deposit and hold Six Million Dollars (US$6,000,000) of the First Subsequent Distribution in the HMIT Escrow Account pending the Final Court Approval Date.

(b)     On DecemeberDecember 1, 2028, the Indemnity Trust shall distribute (such distribution, collectively, the "**Second Subsequent Distribution**", and the date on which such Subsequent Distribution is made, the "**Second Subsequent Distribution Date**") Pro Rata to the

001382

HCMLPHMIT00000806

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
~~DRAFT~~ 5/15/2025

Holders of allowed Class 10 Claims or Equity Interests cash in the aggregate amount of ~~Eight~~Five Million Dollars (US$~~8~~5,000,000.00).

(c)   ~~HMIT shall deposit and hold Six Million Dollars (US$6,000,000) of the Second Subsequent Distribution in the HMIT Escrow Account pending the Final Court Approval Date.~~

~~(d)~~(c)   Notwithstanding anything herein to the contrary, the obligations of the Indemnity Trust to make the First Subsequent Distribution or Second Subsequent Distribution is subject in all respects to (i) there being no Threats and (ii) a determination in accordance with Article VIII, Section 8.1(c) of the Indemnity Trust Agreement that the Indemnity Trust Assets comprising such distributions are not reasonably necessary to satisfy current or potential Indemnification Obligations (as defined in the Indemnity Trust Agreement) to all persons who are or might become Beneficiaries (as defined in the Indemnity Trust Agreement).

7.   Final Distribution on the Allowed Class 10 Interests.

(a)   On the later of the Final Court Approval Date and April 1, 2029, the Indemnity Trust will distribute all excess remaining Indemnity Trust Assets in accordance with Article VIII of the Indemnity Trust Agreement; provided, however, that the obligation of the Indemnity Trust to make any such distributions and/or dissolve and wind up the affairs of the Indemnity Trust is subject in all respects to (i) there being no Threats and (ii) a determination in accordance with Article VIII of the Indemnity Trust Agreement that (1) a Final Order(s) (as defined in the Indemnity Trust Agreement) has been entered resolving all litigation, claims or proceedings in any forum of any kind which could give rise to Indemnity Obligations (as defined in the Indemnity Trust Agreement) and payment in full of all such Indemnity Obligations and (2) all applicable statutes of limitations and any applicable tolling of such statutes of limitation have expired.

(b)   The Indemnity Trust agrees to not use Indemnity Trust Assets to fund Operating Expenses.

(c)   Following the Bankruptcy Court Approval Date, at the request of Mark Patrick, solely in his capacity, and to the extent he remains, as administrator of HMIT, but not more often than quarterly, Highland and the Indemnity Trust Administrator agree to review (i) the status of their respective assets, (ii) the balance of cash held, (iii) the status of any claims made for indemnification and any resolutions thereof, (iv) the status of any litigation, and (v) forecasted operating expenses with Mr. Patrick, and will each work in good faith to reduce operating expenses where reasonably practicable; provided, however, that all such reporting shall be subject to Mr. Patrick's agreement to maintain confidentiality with respect to any non-public information.

8.   Transfer Kirschner Claims; Dismissal of HMIT Note Claims.

(a)   ~~In consideration of the dismissal of the Pending Litigation and the releases provided herein, within ten (10~~Within five (5) Business Days after the Bankruptcy Court Approval Date, but after the dismissal provided for in Section 2, the Litigation Sub-Trust shall execute ~~an~~a short-form assignment in ~~the form attached hereto as~~ **Exhibit [_]** in favor of the HMIT Entities transferring all of the Litigation Sub-Trust's right, title, and interest in and to the Kirschner Claims

001383

HCMLPHMIT00000807

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

(the "**Kirschner Transfer**"). Such assignment shall be in a form mutually acceptable to the Parties and its substance shall be consistent with the terms, conditions and limitations set forth in this Agreement, including Section 8(b) below. Each HMIT Entity acknowledges and agrees that none of the Highland Entities will have any duty or obligation to assist the HMIT Entities in any way with respect to the Kirschner Claims, including the prosecution thereof, except as provided in this Agreement, including ~~without limitation~~ the terms of Section 8(c) below.

(b)    THE HMIT ENTITIES SPECIFICALLY ACKNOWLEDGE AND AGREE THAT THE LITIGATION SUB-TRUST IS TRANSFERRING THE KIRSCHNER CLAIMS ON AN "AS IS AND WITH ALL FAULTS" BASIS AND THAT THE HMIT ENTITIES ARE NOT RELYING ON ANY REPRESENTATIONS OR WARRANTIES OF ANY KIND WHATSOEVER, EXPRESS OR IMPLIED, FROM THE HIGHLAND ENTITIES OR THEIR REPRESENTATIVES AS TO ANY MATTERS CONCERNING THE KIRSCHNER CLAIMS AND AMENDED COMPLAINT, INCLUDING WITH RESPECT TO THE ENFORCEABILITY, TRANSFERABILITY, VIABILITY, STRENGTH, OR VALUE OF ANY OF THE KIRSCHNER CLAIMS OR THE AMENDED COMPLAINT.  The HMIT Entities hereby specifically acknowledge that they have carefully reviewed this Section and have had the opportunity to discuss its import with legal counsel and that the provisions of this Section are a material part of this Agreement.  Thus, if for any reason HMIT is precluded from or is otherwise unable to prosecute all or any of the Kirschner Claims, (i) the HMIT Releasors shall have no recourse against ~~the~~any Highland Released Parties whatsoever and shall not be entitled to compensation of any kind, it being agreed that the HMIT Entities are otherwise receiving adequate consideration for the duties and obligations they are undertaking pursuant to this Agreement and (ii) there will be no effect whatsoever on the validity and enforceability of this Agreement or any of the other transactions contemplated hereby.

(c)    As promptly as reasonably practicable following the Bankruptcy Court Approval Date, the Highland Entities shall provide to the HMIT Entities electronic copies of written discovery requests and responses thereto, and documents produced in discovery in respect of the Kirschner Claims and the Amended Complaint.  The Highland Entities will not provide any other documents regarding the Kirschner Claims including any attorney-client communications and any documents subject to the attorney work-product doctrine or similar privileges or immunities concerning the Kirschner Claims (collectively, the "**Kirschner Privileges**"), it being understood and agreed that the Highland Entities are retaining, and not transferring or waiving, the Kirschner Privileges.

(d)    Each Party acknowledges and agrees that if ~~(a)~~ the Kirschner Transfer is found or deemed to be impermissible or invalid, for any reason~~, or (b) the Final Court Approval Date does not occur~~, the Kirschner Claims and Amended Complaint will revert to, and remain an asset of, the Litigation Sub-Trust.

9.    <u>General Release By The HMIT Entities</u>. On the Bankruptcy Court Approval Date, and to the maximum extent permitted by law, each of the HMIT Entities, on behalf of itself and each of its respective Affiliates (including Affiliated and/or managed funds, accounts and other investment vehicles) and its and their respective current and former advisors, consultants, administrators, trustees, directors, officers, managers, executives, members, partners (including limited and general partners), employees, beneficiaries, direct and indirect shareholders and other

001384
HCMLPHMIT00000808

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

equity holders, agents, participants, direct and indirect subsidiaries and parents, successors, predecessors, designees, and assigns (whether by operation of law or otherwise) and all Persons claiming through, under or on their behalf (collectively with the HMIT Entities, the "**HMIT Releasors**") hereby forever, finally, fully, unconditionally, and completely releases, relieves, acquits, discharges, remises, and exonerates each Highland Released Party from, and waives and relinquishes, any and all Claims, which the HMIT Releasors, or any Person claiming through, under, or on behalf of any of the HMIT Releasors, ever had, now has, or hereafter can, shall, or may have against any of the Highland Released Parties by reason of, arising from, relating to, or in connection with, any fact, matter, or transaction that occurred prior to the Agreement Date, including any fact, matter, transaction, or occurrence asserted by any HMIT Entity in the Pending Litigation or in connection with, relating to, or with respect to the Bankruptcy Case, the management or operation of any of the Highland Released Parties, or the Highland Released Parties' property and including any defense, affirmative defenses, and right to setoff arising out of, or otherwise related to, any of the foregoing (collectively, the "**HMIT Entity Released Claims**").

10. <u>General Release By The Highland Entities</u>. On the Bankruptcy Court Approval Date, and to the maximum extent permitted by law, each of the Highland Entities, on behalf of itself and each of its respective Affiliates (including Affiliated and/or managed funds, accounts and other investment vehicles) and its or their respective current and former advisors, consultants, administrators, trustees, directors, officers, managers, executives, members, partners (including limited and general partners), employees, beneficiaries, direct and indirect shareholders and other equity holders, agents, participants, direct and indirect subsidiaries and parents, successors, predecessors, designees, and assigns (whether by operation of law or otherwise)() and all Persons claiming through, under or on their behalf (collectively with the Highland Entities, the "**Highland Releasors**") hereby forever, finally, fully, unconditionally, and completely releases, relieves, acquits, discharges, remises, and exonerates each HMIT Released Party from, and waives and relinquishes, any and all Claims which the Highland Releasors, or any Person claiming through, under, or on behalf of any of the Highland Releasors, ever had, now has, or hereafter can, shall, or may have against any of the HMIT Released Parties by reason of, arising from, relating to, or in connection with, any fact, matter, or transaction that occurred prior to the Bankruptcy Court Approval Date, including any fact, matter, transaction, or occurrence in connection with, relating to, or with respect to the Bankruptcy Case, the management or operation of any of the HMIT Released Parties, or the HMIT Released Parties' property and including any defense, affirmative defenses, and right to setoff arising out of, or otherwise related to, any of the foregoing (collectively, the "**Highland Released Claims**").

11. <u>Further Provisions Concerning The General Releases</u>.

(a) **FOR THE AVOIDANCE OF DOUBT, THE FOREGOING RELEASES ARE INTENDED TO BE GENERAL AND INCLUDE A RELEASE OF ALL RELEASED CLAIMS, WHETHER KNOWN OR UNKNOWN, SUSPECTED OR UNSUSPECTED, ARISING OR EXISTING FROM THE BEGINNING OF TIME THROUGH AND INCLUDING THE AGREEMENT DATE.**

(b) To the maximum extent permitted by law, each of the HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland

001385
HCMLPHMIT00000809

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

Releasors, respectively, waives the benefit of any statute or other principle of law or equity that limits the applicability of a release with respect to Claims that the releasing party does not know or suspect to exist in his, her or its favor at the time of executing the release.

(c)     Without limiting the scope of the foregoing waiver, in connection with the foregoing release, each of the HMIT Entities and the Highland Entities, on its own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, waives the benefits of Section 1542 of the California Civil Code (to the extent, if any, that Section 1542 might apply to the foregoing release), which provides as follows:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

Each of the HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, hereby agrees that the provisions of Section 1542 of the Civil Code of the State of California and all similar federal or state law, rights, rules or legal principles, legal or equitable, in each case solely to the extent such provisions apply, **ARE HEREBY KNOWINGLY AND VOLUNTARILY WAIVED AND RELINQUISHED BY EACH OF THE HMIT ENTITIES AND THE HIGHLAND ENTITIES, ON THEIR OWN BEHALF AND ON BEHALF OF THE OTHER HMIT RELEASORS AND HIGHLAND RELEASORS, RESPECTIVELY,** in each and every capacity, to the full extent that such rights and benefits pertaining to the matters released herein may be waived, and each of the HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, hereby agrees and acknowledges that this waiver and relinquishment is an essential term of this Agreement, without which the consideration provided would not have been given.

In connection with such waiver and relinquishment, each of the HMIT Entities and Highland Entities acknowledges that it is aware that it may hereafter discover Claims presently unknown or unsuspected, or facts in addition to or different from those which it now knows or believes to be true, with respect to the matters released herein. Nevertheless, it is the intent of each of the HMIT Entities and the Highland Entities, on its own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, in executing this Agreement fully, finally, and forever to settle and release all such matters, and all Claims related thereto, which exist, may exist or might have existed (whether or not previously or currently asserted in any action) which are the subject to the releases granted above.

(d)     As an integral component of this Agreement, and notwithstanding the Parties' intent set forth in the preamble hereto and the general nature of the releases in Sections 9 and 10, should:

(i)     any HMIT Releasor contend or assert that any Claim of any kind whatsoever held by any HMIT Releasor against any Highland Released Party survives this

001386
HCMLPHMIT00000810

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

Agreement and is in any way related to or arising from or in connection with any HMIT Entity Released Claim (such claim or cause of action, a "**HMIT Alleged Claim**"), such HMIT Releasor will be deemed to have irrevocably, fully, and finally assigned such HMIT Alleged Claim to the Highland Entities and the Highland Entities will be deemed to have forever, finally, full, unconditionally, and irrevocably, and completely released such HMIT Alleged Claim.

(ii)    any Highland Releasor contend or assert that any Claim of any kind whatsoever held by any Highland Releasor against any HMIT Released Party survives this Agreement and is in any way related to or arising from or in connection with any Highland Entity Released Claim (such claim or cause of action, a "**Highland Alleged Claim**"), such Highland Releasor will be deemed to have irrevocably, fully, and finally assigned such Highland Alleged Claim to the HMIT Entities and the HMIT Entities will be deemed to have forever, finally, full, unconditionally, and irrevocably, and completely released such Highland Alleged Claim.

12.    <u>Covenant Not To Sue; Limitation on Standing</u>. Upon the Agreement Date:

(a)    Each of the HMIT Releasors covenants and agrees that it will not institute or prosecute any Action, in law, in equity or otherwise, against any of the Highland Released Parties, to recover, enforce, investigate, or collect any HMIT Entity Released Claim and will not (i) induce, encourage or direct any other Person to do so or (ii) act in concert with or assist (financially or otherwise) any other Person in doing so.

(b)    Each of the Highland Releasors covenants and agrees that it will not institute or prosecute any Action, in law, in equity or otherwise, against any of the HMIT Released Parties, to recover, enforce, investigate, or collect any Highland Entity Released Claim and will not (i) induce, encourage or direct any other Person to do so or (ii) act in concert with or assist (financially or otherwise) any other Person in doing so.

(c)    For the avoidance of doubt, this Agreement shall not operate to give any HMIT Entity standing for any purpose in connection with the Bankruptcy Case (or in connection with any appeal arising from any order entered by the Bankruptcy Court), except for the limited purpose of seeking Court approval of this Agreement (including with respect to any appeal concerning any order entered granting or denying such approval), and except for the limited purpose of enforcing this Agreement, no HMIT Entity shall commence any Action in connection with the HMIT Class 10 Interest.

13.    <u>Representations and Warranties</u>.

(a)    Each of the HMIT Entities hereby represents and warrants that every HMIT Entity Released Claim has not heretofore been assigned or encumbered and is not the subject of a transfer (as such term is defined in 11 U.S.C. § 101(54)), by any HMIT Releasor.

(b)    The HMIT Entities, on their own behalf and on behalf of the other HMIT Releasors, acknowledge and agree that each Plan Provision is lawful, effective, and binding on the HMIT Releasors. The HMIT Entities further agree, on their own behalf and on behalf of the other HMIT Releasors, that the HMIT Releasors will never, in any way, challenge or seek to modify, nullify, vacate, or revoke, or induce, encourage or direct any other Person to do so or act in concert with or assist (financially or otherwise) any other Person in doing so the Confirmation Order, the

001387
HCMLPHMIT00000811

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

Plan, the Plan Protections, or any Plan Document, including the Claimant Trust Agreement, the LPA, the Indemnity Trust Agreement or the Litigation Sub-Trust Agreement, in the Bankruptcy Court, in any other state or federal court, in any other forum or tribunal, or otherwise, including administrative or regulatory tribunals and foreign courts.

(c)    Each of the Highland Entities hereby represents and warrants that every Highland Entity Released Claim has not heretofore been assigned or encumbered and is not the subject of a transfer (as such term is defined in 11 U.S.C. § 101(54)), by any Highland Releasor.

(d)    Each Party severally represents and warrants as to itself only that: (i) it has taken all necessary action to authorize and approve the execution, delivery and performance of this Agreement; (ii) such Party has full power and authority to execute and deliver this Agreement; and (iii) this Agreement constitutes a valid, legal and binding obligation of such Party, and is enforceable subject to its terms. Each individual signatory hereto individually warrants and represents to all Parties hereto that such individual has full power and authority to act on behalf of and bind the Party for which he or she has executed this Agreement; provided, however that no signatory shall otherwise provide any warranty or representation or otherwise be a party to this Agreement on an individual basis.

14.    <u>No Continuing Rights, Duties or Obligations</u>.  Except for the rights, duties, and obligations expressly set forth in this Agreement, all Rights and Obligations that existed or may have existed shall be deemed terminated, extinguished, and released upon the Agreement Date. For the avoidance of doubt, from and after the Agreement Date, (a) the Highland Released Parties, individually and collectively, shall owe no duty, past or present, including with respect to the Kirchner Claims, to the HMIT ~~Releasors~~Released Parties, individually and collectively, whether contractual, fiduciary, equitable, statutory or otherwise, except as arising out of this Agreement, and (b) the HMIT Released Parties, individually and collectively, shall owe no duty to the Highland ~~Releasors~~Released Parties, individually and collectively, whether contractual, fiduciary, equitable, statutory or otherwise, except as arising out of this Agreement.

15.    <u>Gatekeeper Standard</u>.

(a)    The HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, acknowledge and agree that, notwithstanding the United States Court of Appeals for the Fifth Circuit's decision in *Highland Capital Management Fund Advisors, L.P. v. Highland Capital Management, L.P.*, No. 23-10~~53~~4 (5th Cir. Mar. 18, 2025), the "Gatekeeper" provisions contained in Highland's Original Plan is forever binding on each of the HMIT Entities <u>and any Persons claiming through, under or on behalf of any of them,</u> and for a claim or cause of action to be  "colorable" for purposes of the Gatekeeper, it must be found by final order of the Bankruptcy Court (the "**Gatekeeper Court**"), which order shall be subject to appeal to a court of competent jurisdiction, to have satisfied the "Gatekeeper Colorability Test" as such term is defined in *In re Highland Capital Management, L.P.*, 2023 Bankr. LEXIS 2104 at *124-36 (Bankr. N.D. Tex. Aug. 24, 2023).

(b)    The HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, acknowledge and agree that compliance with the Gatekeeper requires (i) a motion seeking leave to sue an Exculpated Party

001388
HCMLPHMIT00000812

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

(as that term is defined in Highland's original Plan) and a finding that the litigant's claims and causes of action are "colorable" attaching a complaint setting forth the basis for such claims or causes of action and (ii), in the Gatekeeper Court's sole discretion, an evidentiary hearing (during which the Gatekeeper Court may, among other things, hear testimony and assess the credibility of any witness(es)) to determine whether a proposed claim or cause of action is "colorable."

(c)    The HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, further acknowledge and agree that the moving party under the Gatekeeper has the burden of satisfying the "Gatekeeper Colorability Test." and that the dismissal of the Pending Litigation shall have res judicata effect.

16.    <u>Indemnification</u>.

(a)    Without in any manner limiting the available remedies for any breach of this Agreement, the HMIT Entities, severally but not jointly, agree to indemnify, defend, and hold the Highland Released Parties harmless from and against any and all Liability, that may arise or result from or on account of, or that are otherwise related or attributable to (x) any breach of this Agreement or of any representation or warranty contained in the Agreement, including the representations and warranties of any HMIT Entity set forth in <u>Section 13</u> or (y) any Actions brought or prosecuted by or on behalf of, any HMIT Releasor or that are induced, encouraged, assisted or directed by any HMIT Releasor or brought or prosecuted in concert with any HMIT Releasor against any Highland Released Party with respect to or related to any HMIT Entity Released Claims.  Without limiting the scope of the foregoing in any manner, any HMIT Entity that breaches <u>Section 12</u> shall be liable to the Highland Released Party against whom the applicable Action has been brought or prosecuted in violation of <u>Section 12</u> for the reasonable attorneys' fees and costs incurred by such Highland Released Party in defending against or otherwise responding to such Action.  Each HMIT Entity acknowledges and agrees that the HMIT Entities are and shall be severally but not jointly liable for any Liability arising from or out of any breach of this Agreement or of any representation or warranty set forth in this Agreement.

(b)    Without in any manner limiting the available remedies for any breach of this Agreement, the Highland Entities, severally but not jointly, agree to indemnify, defend, and hold the HMIT Released Parties harmless from and against any and all Liability, that may arise or result from or on account of, or that are otherwise related or attributable to (x) any breach of this Agreement or of any representation or warranty contained in the Agreement, including the representations and warranties of any Highland Entity set forth in <u>Section 13</u> or (y) any suits, proceedings, or other actions brought or prosecuted by or on behalf of, any Highland Releasor or that are induced, encouraged, assisted or directed by any Highland Releasor or brought or prosecuted in concert with any Highland Releasor against any HMIT Released Party with respect to or related to any Highland Entity Released Claims.  Without in any manner limiting the scope of the foregoing, any Highland Entity that breaches <u>Section 12</u> shall be liable to the HMIT Released Party against whom the applicable Action has been brought or prosecuted in violation of <u>Section 12</u> for the reasonable attorneys' fees and costs incurred by such HMIT Released Party in defending against or otherwise responding to such action.  Each Highland Entity acknowledges and agrees that the Highland Entities are and shall be severally but not jointly liable for any Liability arising from or out of any breach of this Agreement or of any representation or warranty set forth in this Agreement.

001389
HCMLPHMIT00000813

17.  <u>Execution</u>.  This Agreement may be executed by the exchange of signatures by facsimile or by PDF attachment to an email transmittal and in counterparts, and if so executed, shall be fully executed when a counterpart has been executed and delivered by all Parties hereto through counsel.  All counterparts taken together shall constitute one and the same agreement and shall be fully enforceable as such.

18.  <u>Bankruptcy Court Order</u>.  ~~The allowance of~~This Agreement and the ~~allowed HMIT Class 10 Interest pursuant to Section 4~~transactions contemplated hereby is subject to the entry of the Bankruptcy Court Order.  To that end, the Highland Entities shall file the 9019 Motion no later than five (5) Business Days after the Agreement Date.  Each Party shall, and shall cause each of their respective Affiliates to, undertake any and all actions in compliance with applicable law to obtain the Bankruptcy Court Order as promptly as practicable, and without limiting the foregoing, if an Action is threatened or instituted by any Person opposing the 9019 Motion or otherwise challenging the validity or legality, or seeking to restrain the consummation, of the transactions contemplated by this Agreement or the Bankruptcy Court Order, each Party shall, and shall cause its respective Affiliates to, use their commercially reasonable best efforts to avoid, resist, resolve or, if necessary, and defend to effectuate this Agreement and consummate the transactions hereby.  If the 9019 Motion is not approved by entry of the Bankruptcy Court Order or if the Bankruptcy Court Approval is precluded from becoming a Final Order, ~~(a) there will be no affect on, adjustment to, or impairment of, in any way, the validity and enforceability of the remainder of this Agreement, and the other transactions contemplated hereby, all of which shall remain in full force and effect and (b)~~ each Party shall, and shall cause its respective Affiliates to, use their best efforts to seek the ~~allowance of the HMIT Class 10 Interest~~entry of a Final Order of the Bankruptcy Court approving this Agreement and the transactions contemplated hereby in a substantially similar ~~amount~~form and on substantially similar terms as set forth ~~in Section 4~~herein to the fullest extent possible so as to give effect to the original intent of the Parties as closely as possible.

19.  <u>Fees and Expenses</u>.  Whether or not the transactions contemplated hereby are consummated or the Bankruptcy Court Order is obtained, and except as otherwise expressly provided in this Agreement, each Party will bear its respective fees, costs and expenses (including legal, accounting and other professional fees) incurred in connection with the preparation, negotiation, execution and performance of this Agreement or the transactions contemplated hereby, including with respect to each Party's respective obligations pursuant to <u>Section 18</u>.  Notwithstanding the foregoing, if any Party hereto brings an Action to enforce or interpret the terms and provisions of this Agreement, the prevailing Party in that Action shall be entitled to have and recover from the non-prevailing Party all such fees, costs and expenses (including all court costs and reasonable attorneys' fees) as the prevailing Party may suffer or incur in the pursuit or defense of such action or proceeding.

20.  <u>Entire Agreement; No Other Representations</u>.  **THIS AGREEMENT CONTAINS THE ENTIRE AGREEMENT BETWEEN THE PARTIES, AND NO RIGHTS ARE CREATED IN FAVOR OF ANY ~~PARTY~~PERSON OTHER THAN AS SPECIFIED OR EXPRESSLY SET FORTH IN THIS AGREEMENT.  THERE ARE NO REPRESENTATIONS, CONDITIONS, WARRANTIES, STATEMENTS, OR UNDERSTANDINGS (COLLECTIVELY, "<u>REPRESENTATIONS</u>"), EITHER ORAL OR WRITTEN, BETWEEN THE PARTIES OTHER THAN THOSE EXPRESSLY SET FORTH IN THIS AGREEMENT.  THE PARTIES EXPRESSLY AGREE THAT THEY**

001390
HCMLPHMIT00000814

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

**HAVE NOT BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY ANY REPRESENTATIONS NOT SET FORTH IN THIS AGREEMENT; AND THE PARTIES EXPRESSLY AGREE THAT THEY HAVE NOT RELIED ON ANY REPRESENTATIONS NOT EXPRESSLY SET FORTH IN THIS AGREEMENT. THE PARTIES EXPRESSLY AGREE THAT THEY ARE ENTERING INTO THIS AGREEMENT RELYING SOLELY ON THEIR OWN JUDGMENT AND NOT ON ANY REPRESENTATIONS BY ANY PARTY, EXCEPT FOR THOSE REPRESENTATIONS EXPRESSLY SET FORTH IN THIS AGREEMENT. THE PARTIES AGREE THAT REPRESENTATIONS NOT EXPRESSLY SET FORTH IN THIS AGREEMENT SHALL NOT BE USED IN THE INTERPRETATION OR CONSTRUCTION OF THIS AGREEMENT, AND NEITHER THE HMIT RELEASED PARTIES NOR THE HIGHLAND RELEASED PARTIES SHALL HAVE ANY LIABILITY FOR ANY CONSEQUENCES ARISING AS A RESULT OF ANY REPRESENTATIONS NOT SET FORTH IN THIS AGREEMENT.**

21. <u>Agreement and Release Knowing and Voluntary</u>. The Parties acknowledge that they have considered this Agreement with their respective attorneys and have carefully read this Agreement, that it has been fully explained by their attorneys, and that they have had a reasonable opportunity to consider this Agreement. The Parties further represent that they know and fully understand the contents of this Agreement, that they intend to be legally bound by this Agreement and the releases and covenants contained herein, and that they are signing this Agreement, including the release provisions herein, voluntarily and of their own free will and without coercion, and with the benefit of advice of counsel.

22. <u>Cooperation</u>. The Parties agree to perform any services or actions reasonably necessary to carry out the terms and conditions of this Agreement or the transactions contemplated hereby, including the execution and delivery of reasonable additional documents, instruments, conveyances and/or assurances, in good faith, and to reasonably communicate and cooperate with one another in this regard. For the avoidance of doubt, nothing in this Section shall obligate the Highland Entities to assist the HMIT Entities in any way with respect to the Kirschner Claims, including the prosecution thereof.

23. <u>Governing Law</u>. This Agreement shall be construed pursuant to and governed by the laws of the State of Delaware (substantive and procedural) without reference to principles of conflicts of law that would result in the application of any other State's laws.

24. <u>Jurisdiction/Venue</u>. The Parties hereby irrevocably submit to the jurisdiction and venue of the Bankruptcy Court with respect to any ~~action or proceeding~~Action arising out of or related to this Agreement or the subject matter hereof; if (and only if) the Bankruptcy Court lacks personal or subject matter jurisdiction to adjudicate an ~~action or proceeding~~Action arising out of or related to this Agreement or the subject matter hereof, then the Parties irrevocably submit to the jurisdiction and venue of the United States District Court for the Northern District of Texas.

25. <u>No Admissions</u>. All Parties acknowledge and agree that the matters set forth in this Agreement constitute the settlement and compromise of disputed Claims and that this Agreement shall not constitute the admission of any fact or liability by any of them regarding any Claim, including the Claims released hereunder, and neither the terms hereof, nor the fact of this

001391
HCMLPHMIT00000815

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

Agreement itself, shall be evidence of any kind in any Action, other than an Action to enforce the terms of the Agreement or any instrument executed in connection herewith or any claim for damages or other relief for breach of any representation or warranty contained herein or in any instrument executed in connection herewith.

26.    <u>Other Provisions</u>.

(a)    ~~This Agreement contains the entire agreement and understanding of the parties and supersedes any and all prior or contemporaneous agreements, arrangements, and understandings relating to the subject matter of this Agreement.~~ No representation, inducement, agreement, promise or understandings altering, modifying, amending, taking from or adding to, the terms and conditions hereof shall have any force or effect unless the same is in writing and validly executed by each of the Parties hereto.

(b)    The waiver by any Party of any breach of, or default under, any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach or default; provided, however, that for any such waiver to be enforceable, it shall be in writing and executed by the non-breaching Party.

(c)    The headings contained in this Agreement are for convenience only and shall in no way restrict or otherwise affect the construction of the provisions hereof.

(d)    The Parties shall each execute all documents and perform all acts necessary and proper to effectuate the terms of this Agreement.

27.    <u>Notices</u>.  All notices required or permitted to be provided hereunder shall be afforded to the respective parties to and through their counsel, and shall be transmitted simultaneously by electronic mail (with PDF attachments, as necessary) and by telefax, addressed as follows:

To the Highland Entities:

**PACHULSKI STANG ZIEHL AND JONES LLP**
Jeffrey N. Pomerantz
John A. Morris
10100 Santa Monica Boulevard
Los Angeles, California 90067-4003
310.277.6910
jpomerantz@pszjlaw.com
jmorris@pszjlaw.com

To the HMIT Entities:

**KELLY HART PITRE**
Louis M. Phillips
Amelia Hurt
301 Main Street, Suite 1600
225.381.9643

4923-8662-5850.9 36027.003

001392
HCMLPHMIT00000816

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

Louis.Phillips@Kellyhart.com
Amelia.Hurt@Kellyhart.com

~~28.     Severability. Should any term, provision or paragraph of this Agreement be determined to be illegal or void or of no force and effect, the balance of the Agreement shall survive.  The invalidity or unenforceability of any provision of this Agreement shall not affect the validity and enforceability of any other provision of this Agreement.  For the avoidance of doubt, if any provision of this Agreement is overturned on appeal after the Bankruptcy Court Approval Date, any portion that is not overturned on appeal shall remain in full force and effect.~~

~~29.~~28.     Interpretive Provisions. Unless the express context otherwise requires: (a) the words "hereof," "herein" and "hereunder" and words of similar import, when used in this Agreement, shall refer to this Agreement as a whole and not to any particular provision of this Agreement; (b) words defined in the singular shall have a comparable meaning when used in the plural, and vice versa; (c) the words "Dollars" and "$" mean U.S. dollars; (d) references herein to a specific Section, Subsection, Recital, Schedule or Exhibit shall refer, respectively, to Sections, Subsections, Recitals, Schedules or Exhibits of this Agreement; (e) wherever the word "include," "includes" or "including" is used in this Agreement, it shall be deemed to be followed by the words ",without limitation,"; (f) references herein to any gender shall include each other gender; (g) references herein to any Person shall include such Person's heirs, executors, personal representatives, administrators, successors and assigns; provided, however, that nothing contained in this clause (g) is intended to authorize any assignment or transfer not otherwise permitted by this Agreement; (h) with respect to the determination of any period of time, the word "from" means "from and including" and the words "to" and "until" each means "to but excluding"; (i) the word "or" shall be disjunctive but not exclusive; (j) the headings contained in this Agreement are intended solely for convenience and shall not affect the rights of the Parties; and (k) if the last day for the giving of any notice or the performance of any act required or permitted under this Agreement is a day that is not a Business Day, then the time for the giving of such notice or the performance of such action shall be extended to the next succeeding Business Day.

*[Signature page follows]*

001393

HCMLPHMIT00000817

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first written above.

**HUNTER MOUNTAIN INVESTMENT TRUST**

By _____
Name:    Mark Patrick
Title:     Administrator
Date:    May __, 2025

**BEACON MOUNTAIN LLC**

By _____
Name:
Title:
Date:    May __, 2025

**RAND ADVISORS, LLC**

By _____
Name:    Mark Patrick
Title:     President
Date:    May __, 2025

**RAND PE FUND I, LP**
By: Rand PE Fund Management, LLC, its General Partner

By _____
Name:    Mark Patrick
Title:     President
Date:    May __, 2025

**RAND PE FUND MANAGEMENT, LLC**

By _____
Name:    Mark Patrick
Title:     President

001394

HCMLPHMIT00000818

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

Date:     May __, 2025

**ATLAS IDF, LP**
By: Atlas IDF GP, LLC, its General Partner

By    _____
      Name:     Mark Patrick
      Title:      President
      Date:      May __, 2025

**ATLAS IDF GP, LLC**

By    _____
      Name:     Mark Patrick
      Title:      President
      Date:      May __, 2025

**HIGHLAND CAPITAL MANAGEMENT, L.P.**

By    _____
      Name:     James. P. Seery, Jr.
      Title:      Chief Executive Officer
      Date:      May __, 2025

**HIGHLAND CLAIMANT TRUST**

By    _____
      Name:     James P. Seery, Jr.
      Title:      Claimant Trustee
      Date:      May __, 2025

**HIGHLAND LITIGATION SUB-TRUST**

By    _____
      Name:     Marc S. Kirschner
      Title:      Litigation Trustee

001395

HCMLPHMIT00000819

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

Date: May __, 2025

**HIGHLAND INDEMNITY TRUST**


By _____
    Name: James P. Seery, Jr.
    Title: Indemnity Trust Administrator
    Date: May __, 2025

001396
HCMLPHMIT00000820

**EXHIBIT**

001397

**From:** "John A. Morris" <jmorris@pszjlaw.com>

**To:** "Louis M. Phillips" <louis.phillips@kellyhart.com>

**Cc:** "Jeff Pomerantz" <jpomerantz@pszjlaw.com>, "Amelia L. Hurt" <Amelia.Hurt@kellyhart.com>

**Subject:** Highland/HMIT: Settlement Agreement (HCMLP comments--5/15, 6:52 pm)

**Date:** Thu, 15 May 2025 22:52:44 +0000

**Importance:** Normal

**Attachments:** Highland_HMIT-Rand_Settlement_Agreement.012(Highland_Draft_05.15.25).docx; CUMULATIVE_REDLINE_-_HMIT_Settlement_Agreement.pdf; INCREMENTAL_REDLINE_-_HMIT_Settlement_Agreement.pdf

**Inline-Images:** image001.jpg; image002.png

---

Louis,

Attached is a revised agreement and black lines showing cumulative and incremental changes.

We're continuing to review this, and it remains subject to Claimant Oversight Board review and approval in all respects, but please let us know if you have any questions or comments.

Regards,

John
**John A. Morris**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 212.561.7760
Tel: 212.561.7700 | Fax: 212.561.7777
jmorris@pszjlaw.com
vCard | Bio | LinkedIn



Los Angeles | San Francisco | Wilmington, DE | New York | Houston

HCMLPHMIT00000829

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

## SETTLEMENT AGREEMENT & GENERAL RELEASE

THIS SETTLEMENT AGREEMENT & GENERAL RELEASE (this "**Agreement**") is entered into as of May [], 16, 2025 (the "**Agreement Date**"), by and among Highland Capital Management, L.P., a Delaware limited partnership ("**Highland**"), the Highland Claimant Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act (the "**Claimant Trust**"), the Highland Litigation Sub-Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act (the "**Litigation Sub-Trust**"), and the Highland Indemnity Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act (the "**Indemnity Trust**", and together with Highland, the Claimant Trust and the Litigation Sub-Trust, the "**Highland Entities**"), on the one hand, and Hunter Mountain Investment Trust, a Delaware statutory trust ("**HMIT**"), Beacon Mountain LLC, a Delaware limited liability company ("**Beacon Mountain**"), Rand Advisors, LLC, a Delaware limited liability company ("**Rand Advisors**"), Rand PE Fund I, LP, a Delaware series limited partnership ("**Rand PE Fund**"), Rand PE Fund Management, LLC, a Delaware limited liability company ("**Rand GP**"), Atlas IDF, LP, a Delaware limited partnership ("**Atlas IDF**"), Atlas IDF GP, LLC, a Delaware limited liability company ("**Atlas GP**" and together with HMIT, Beacon Mountain, Rand Advisors, Rand PE Fund, Rand GP and Atlas IDF, the "**HMIT Entities**"), on the other hand.  The Highland Entities and the HMIT Entities are collectively referred to as the "**Parties**," and each individually, as a "**Party**".

## DEFINITIONS

Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Claimant Trust Agreement or the Plan, as applicable (in each case, as hereinafter defined). For purposes of this Agreement, the following capitalized terms have the following meanings:

"**9019 Motion**" means the motion seeking entry of the Bankruptcy Court Order pursuant to Bankruptcy Rule 9019 and in accordance with Section 18.

"**Action**" means any action, claim, demand, arbitration, hearing, charge, complaint, investigation, examination, indictment, litigation, suit or other civil, criminal, administrative or investigative proceedings, including any petition under Rule 202 of the Texas Rules of Civil Procedure.

"**Affiliate**" means a Person that, directly or indirectly, through one or more intermediaries, controls or is controlled by, or is under common control with, a specified Person as of the date on which, or at any time during the period for which, the determination of affiliation is being made. The term "control" (including, with correlative meanings, the terms "controlled by" and "under common control with"), as applied to any Person, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting securities or other ownership interest, by contract or otherwise.

"**Amended Complaint**" means the *Amended Complaint and Objection to Claims*, filed as docket number 158 in *Kirschner v. Dondero*, Adv. Pro. No. 21-03076-sgj (Bankr. N.D. Tex. May 19, 2022).

"**Bankruptcy Case**" means *In re Highland Capital Management, L.P.*, Case No. 19-34054-sgj (Bankr. N.D. Tex.) and its related proceedings.

HCMLPHMIT00000830

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

"**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended).

"**Bankruptcy Court**" means the U.S. Bankruptcy Court for the Northern District of Texas, Dallas Division.

"**Bankruptcy Court Approval Date**" means the date on which the Bankruptcy Court Order is issued.

"**Bankruptcy Court Order**" means an order of the Bankruptcy Court approving the allowance of the HMIT's Class 10 Interest as provided in this Agreement pursuant to the 9019 Motion.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure.

"**Business Day**" means any day other than (i) a Saturday or a Sunday, (ii) a day on which the Federal Reserve Bank of New York or the New York Stock Exchange is closed, or (iii) a day on which banks in the States of Texas are required, or authorized by law, to close.

"**Claimant Trust Agreement**" means that certain Claimant Trust Agreement of the Claimant Trust (as may have been or may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), effective as of August 11, 2021, by and among Highland, as settlor, James P. Seery, Jr., a Claimant Trustee, and Wilmington Trust, National Association, a national banking association, as Delaware trustee.

"**Claims**" means any claims, debts, liabilities, demands, obligations, breaches of contract, breaches of duty or any relationship, misfeasance, malfeasance, promises, acts, omissions, agreements, liens, losses, costs and expenses (including attorney's fees and related costs), damages, injuries, suits, ~~actions~~Actions, and causes of action of whatever kind or nature, whenever and however, arising, whether known or unknown, suspected or unsuspected, matured or unmatured, liquidated or unliquidated, contingent or fixed, at law or in equity, statutory or otherwise.

"**Class 10**" means the class of Claims or Equity Interests described in Article II. Section H.10. of the Plan.

"**Class 11**" means the class of Claims or Equity Interests described in Article II. Section H.11. of the Plan.

"**Committee**" means the official committee of unsecured creditors appointed in the Bankruptcy Case.

"**Confirmation Order**" means that certain *Order Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (ii) Granting Related Relief* [Docket No. 1943], as conformed in accordance with the Fifth Circuit's rulings.

001400
HCMLPHMIT00000831

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

"**Dugaboy Note**" means that certain Promissory Note dated May 31, 2017, in the original face amount of $24,268,621.69, from The Dugaboy Investment Trust, as Maker, and Highland Capital Management, L.P. and The Get Good Non-Exempt Trust, collectively as Payee.

"**Final Court Approval Date**" means the date on which the Bankruptcy Court Order becomes a Final Order.

"**Final Order**" means an order or judgment of the Bankruptcy Court, which is in full force and effect, and as to which the time to appeal, petition for certiorari, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, new trial, reargument, or rehearing shall have been waived in writing in form and substance satisfactory to the Highland Entities, as applicable, or, in the event that an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order of the Bankruptcy Court shall have been determined by the highest court to which such order was appealed, or certiorari, new trial, reargument or rehearing shall have been denied and the time to take any further appeal, petition for certiorari, or move for a new trial, reargument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be Filed with respect to such order shall not preclude such order from being a Final Order.

"**Gatekeeper**" means the gatekeeping provision contained in Article IX. F. of the Plan as of August 11, 2021.

"**Governmental Authority**" means any federal, provincial, state, local or foreign government or political subdivision thereof, court of competent jurisdiction, administrative agency, judicial or arbitral body, or commission or other governmental or regulatory authority or instrumentality.

"**Highland Released Parties**" means collectively (i) the Highland Entities, (ii) any Affiliate of any Highland Entity and any Person directly or indirectly majority-owned by any Highland Entity or any of their respective Affiliates, (iii) any Person directly or indirectly managed by any Highland Entity or any of their respective Affiliates, whether by contract or otherwise (the entities described in clauses (i)-(iii), collectively, the "**Highland Parties**"), (iv) each of the Highland Parties' current and former trustees and administrators (including the trustees of any of the Claimant Trust, the Litigation Sub-Trust, or the Indemnity Trust), officers, executives, agents, directors, advisors, advisory representatives, consultants, administrators, managers, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns, (v) the current and former members of the Oversight Board of the Claimant Trust in any capacity (including Richard Katz) and their Affiliates, ~~including~~(vi) Farallon Capital Management, LLC, Stonehill Capital Management, LLC, Muck Holdings LLC, and Jessup Holdings LLC, ~~(vi)~~ in each case, in any capacity, (vii) the Independent Board and its members John Dubel, James P. Seery, Jr., and Russell Nelms, (~~vii~~viii) James P. Seery, Jr., individually and in all capacities for any Highland Released Party, including as Chief Executive Officer of Highland Capital Management, L.P., Claimant Trustee of the Claimant Trust, and the Indemnity Trust Administrator of the Indemnity Trust, (~~viii~~ix) Marc S. Kirschner, individually and as Trustee of

001401
HCMLPHMIT00000832

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

the Litigation Sub-Trust, (ix)(x) the Committee and each of its members, (xi)(xi) the professionals (and their respective firms) (a) retained by Highland or the Committee during the Bankruptcy Case or which provided services to Highland or the Committee during the Bankruptcy Case or (b) retained by any Highland Released Party on or after August 11, 2021, (xii)(xii) any Person indemnified by any Highland Party (the Persons described in clauses (i)-(xi)(xii), collectively, the "**Highland Covered Parties**"), and (xii) each Highland Covered Party's current and former officers, executives, agents, attorneys (and their respective firms), directors, advisors, consultants, administrators, managers, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns, if not otherwise included in the defined term "Highland Covered Parties;" provided, however, and for the avoidance of doubt, and without in any way limiting the scope of the foregoing, "Highland Covered Parties" shall include Highland CLO Funding, Ltd., Highland HCF Advisor, Ltd., Highland Multi Strategy Credit Fund, L.P., Highland Multi Strategy Credit Fund GP, L.P., Highland Multi Strategy Credit GP, LLC, Highland Multi Strategy Credit Fund, Ltd., Highland Select Equity Master Fund, L.P., Highland Select Equity Fund GP, L.P., Highland Select Equity Fund, L.P., Highland Restoration Capital Partners Master, L.P., Highland Restoration Capital Partners GP, LLC, Highland Restoration Capital Partners, L.P., Highland Restoration Capital Partners Offshore, L.P., Highland Offshore Director, LLC, Acis CLO Management, LLC, Neutra, Ltd., Pollack, Ltd., Acis CLO Management Holdings, L.P., Acis CLO Management Intermediate Holdings I, LLC, Acis CLO Management Intermediate Holdings II, LLC, Acis CLO Assets Holdings Limited, CHG Houston Holdings, LLC, Penant Management, L.P., Penant Management GP, LLC, Gunwale, LLC, HE Capital, LLC, Gleneagles CLO, Ltd., Aberdeen Loan Funding, Ltd. Highland Argentina Regional Opportunity Fund GP, LLC, Highland Argentina Regional Opportunity Fund, L.P., Highland Argentina Regional Opportunity Fund, Ltd., Highland Argentina Regional Opportunity Master Fund, L.P., Highland Latin America Consulting, Ltd., Highland Capital Management Korea Limited, Highland Capital Management Latin America, L.P., Highland Latin America GP, Ltd., Highland Latin America LP, Ltd., Highland Offshore Partners, L.P. (Diversified), Brentwood CLO, Ltd., Eastland CLO, Ltd., Bristol Bay Funding Ltd., Jasper CLO Ltd., Highland Legacy Limited, Grayson CLO, Ltd., Greenbriar CLO, Ltd., Highland Loan Funding V Ltd., Highland Park CDO I, Ltd., Liberty CLO, Ltd., Valhalla CLO, Ltd., Stratford CLO Ltd., Southfork CLO, Ltd., Pam Capital Funding, L.P., Stonebridge-Highland Healthcare Private Equity Fund, Pamco Cayman Ltd., Red River CLO, Ltd., Rockwall CDO II Ltd., Rockwall CLO Ltd., Westchester CLO, Ltd. Longhorn Credit Funding, LLC, PensionDanmark Pensionsforsikringsaktieselskab, Highland Dynamic Income Master Fund L.P., Highland Dynamic Income Fund GP, LLC, Highland Dynamic Income Fund, L.P., Highland Dynamic Income Fund, Ltd., Highland JHT Holdings, LLC, Highland Prometheus Master Fund, L.P., Highland Prometheus Feeder Fund I, L.P., Highland Prometheus Feeder Fund II, L.P., Highland Sunbridge GP, LLC, Trussway Holdings, LLC, Trussway Industries, LLC, TW Company, Inc., T-Way Investments, LLC, SSP Holdings, LLC, Highland Flexible Income UCITS Fund, and Acis CLO 2017-7, Ltd. *Notwithstanding the forgoing or anything herein to the contrary*, none of "Highland Released Parties", "Highland Parties", nor "Highland Covered Parties" shall include James Dondero, Scott Ellington, Isaac Leventon, or any Person directly or indirectly owned as of the date hereof (in whole or in part) by, and/or Affiliated as of the date hereof with, or claiming through, under or on behalf of, any of Mr. Dondero, Mr. Ellington, or Mr. Leventon in any manner and none of such Persons are released from any Claim by any Person in connection with this Agreement.

001402

HCMLPHMIT00000833

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

"**HMIT Class 10 Interest**" means the unvested, contingent Class 10 interest in the Claimant Trust (a) to be allowed on account of HMIT's pre-petition equity interest in Highland, and (b) subject to the terms and conditions, as applicable, of the Plan, the Plan Documents, the Claimant Trust Agreement, and in accordance with this Agreement, and applicable law.

"**HMIT Note**" means that certain Secured Promissory Note dated December 21, 2015, in the original face amount of $63,000,000 from HMIT, as maker, and Highland, as payee.

"**HMIT Note Claims**" means any Claim related to, in connection with or arising out of the HMIT Note.

"**HMIT Released Parties**" means collectively (i) the HMIT Entities, (ii) any Affiliate of any HMIT Entity and any Person directly or indirectly majority owned by any HMIT Entity or any of their respective Affiliates, (iii) any Person directly or indirectly managed by any HMIT Entity or any of their respective Affiliates, whether by contract or otherwise (the entities described in clauses (i) – (iii), collectively, the "**HMIT Parties**"), (iv) each of the HMIT Parties' current and former trustees, administrators, officer, executives, agents, directors, advisors, consultants, manager, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns (v) the representatives (and their respective firms (a) retained by any HMIT Party during the Bankruptcy Case or which provided services to any HMIT Party during the Bankruptcy Case or (b) retained by any HMIT Released Party on or after August 11, 2021, (vi) any Person indemnified by any HMIT Party (the Persons described in clauses (i) – (vi), collectively, the "**HMIT Covered Parties**"), and (vii) each HMIT Covered Party's current and former officers, executives, agents, directors, advisors, consultants, administrators, managers, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns, if not otherwise included in the defined term "HMIT Covered Parties." *Notwithstanding the forgoing*, none of "HMIT Released Parties", "HMIT Parties", nor "HMIT Covered Parties" shall include James Dondero, Scott Ellington, Isaac Leventon, or any Person directly or indirectly owned as of the date hereof (in whole or in part) by, and/or Affiliated as of the date hereof with, or claiming through, under or on behalf of, any of Mr. Dondero, Mr. Ellington, or Mr. Leventon in any manner, and none of such Persons are released from any Claims by any Person in connection with this Agreement.

"**Indemnity Trust Administrator**" has the meaning given to it in the Indemnity Trust Agreement.

"**Indemnity Trust Agreement**" means that certain *Second Amended and Restated Indemnity Trust Agreement of the Indemnity Trust* (as may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), effective as of [April 28], 2025, by and among the Claimant Trust, as grantor, James P. Seery, Jr., as indemnity trust administrator, and Wilmington Trust, National Association, a national banking association, as indemnity trustee and Delaware trustee.

"**Indemnity Trust Assets**" has the meaning set forth in the Indemnity Trust Agreement, but excluding Highland, the Claimant Trust, and their respective assets.

001403
HCMLPHMIT00000834

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

"**Independent Board**" means the independent board appointed by the Bankruptcy Court on January 9, 2020, pursuant to that certain *Order Approving Settlement with Official Committee of Unsecured Creditors Regarding Governance of the Debtor and Procedures for Operations in the Ordinary Course* [Docket No. 339].

"**Kirschner Claims**" means all Claims and causes of action that were asserted or could have been asserted by the Litigation Trustee of the Litigation Sub-Trust, in the Amended Complaint.

"**Liability**" means any liability, debt, obligation, loss, damage, claim, cost or expense (including costs of investigation and defense and attorney's fees, costs and expenses), in each case, whether direct or indirect, whether accrued or contingent, whether or not involving a third-party claim, and including incidental and consequential damages and diminution of value.

"**Litigation Protections**" means, individually and collectively, the rights, duties, and obligations set forth in ~~Section~~Sections 1 – 2 and Sections 9 - 16.

"**Litigation Sub-Trust**" means the Highland Litigation Sub-Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act.

"**Litigation Sub-Trust Agreement**" means that certain Litigation Sub-Trust Agreement of the Litigation Sub-Trust (as may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), effective as of August 16, 2021, by and among James P. Seery, Jr., as Claimant Trustee of the Claimant Trust, Wilmington Trust, National Association, a national banking association, as Delaware Trustee, and the Litigation Trustee.

"**Litigation Trustee**" means Marc S. Kirschner, as Litigation Trustee of the Litigation Sub-Trust.

"**LPA**" means that certain *Sixth Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P.* (as may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), dated as of October 4, 2021.

"Operating Expenses" means ~~the expenses of operation and administration of the Highland Entities except for the Indemnity Trust~~, except for the expenses of the Indemnity Trust (including any payments to Trust Indemnified Parties or Indemnified Parties (in each case, as defined, and pursuant to the terms and conditions set forth, in the Indemnity Trust Agreement)), the expenses of operating and administering the Highland Entities, including legal expenses, employee compensation, Claimant Trustee/CEO and other trust and trustee related compensation, incentive compensation, and customary general and administrative expenses.

"**Original Plan**" means that certain *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* attached as Exhibit A to the *Order (A) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as modified) and (B) Granting Related Relief*, filed at Docket No. 1943 on the Bankruptcy Court's docket.

"**Oversight Board**" means the oversight board of the Highland Claimant Trust.

001404

HCMLPHMIT00000835

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

"**Pending Litigation**" means (i) *Hunter Mountain Investment Trust v. Highland Cap. Mgmt., L.P.*, Case No. 3:23-cv-02071-E (N.D. Tex.), on remand to the Bankruptcy Court (including *Hunter Mountain Investment Trust's Emergency Motion for Leave to File Adversary Proceeding* filed at Bankruptcy Court Docket No. 3699 and all proceedings, decisions, and orders relating there); (ii) *Dugaboy Investment Trust v. Highland Cap. Mgmt, L.P.*, 3:24-cv-01531-X (N.D. Tex.) (only as to HMIT), and (iii) *Hunter Mountain Investment Trust v. Highland Cap. Mgmt., L.P.*, Case No. 3:24-cv-01786-L (N.D. Tex.).

"**Permitted Investments**" has the meaning set forth in the Indemnity Trust Agreement.

"**Person**" means any natural person, partnership, limited liability partnership, corporation, limited liability company, association, joint stock company, trust, estate, joint venture, unincorporated organization or Governmental Authority.

"**Plan**" means that certain *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* as conformed in accordance with the Fifth Circuit's rulings.

"**Plan Documents**" has the meaning given to it in the Plan.

"**Plan Protections**" means, collectively, the provisions of the Plan contained in Article IX thereof.

"**Pro Rata**" means the proportion that (a) the allowed amount of a particular Claim or Equity Interest in Class 10 bears to (b) the aggregate allowed amount of all Claims or Equity Interests in Class 10.

"**Threats**" means any written threats of legal action, legal demands, filed complaints, petitions for pre-suit discovery, suits, litigations, arbitrations, actual or threatened restraining orders or injunctions made in writing, or similar written actions of any kind, or sworn statements evidencing the same, in any forum against any Trust Indemnified Parties or Indemnified Party (both as defined in the Indemnity Trust Agreement), excluding any such action that would otherwise be a Threat except that any applicable ~~Statute~~statute of ~~Limitations~~limitations that could be applicable to such action has expired.

"**Threats Notice**" means the written notice of any Threats ~~made~~received by the Indemnity Trust with respect to any Trust Indemnified Parties or Indemnified Party (both as defined in the Indemnity Trust Agreement), that is hereby required to be provided by ~~such Party~~the Indemnity Trust to the HMIT Entities, within ~~Five~~five (5) ~~business days~~Business Days after receipt of such Threat.

## RECITALS

**WHEREAS**, as of the Petition Date, HMIT held Class B and Class C Limited Partnerships Interests in Highland;

**WHEREAS**, on December 21, 2015, HMIT entered into the HMIT Note with Highland, which had a total outstanding principal balance of Fifty-Seven Million Six Hundred Ninety

001405
HCMLPHMIT00000836

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

Thousand Six Hundred Forty and 95/100 Dollars ($57,690,640.95) as of the Petition Date (the "**HMIT Note Balance**");

**WHEREAS**, HMIT's Class B and Class C Limited Partnership Interests in Highland were extinguished on August 11, 2021, in accordance with the Plan;

**WHEREAS**, pursuant to the LPA, HMIT's capital account balance at Highland on account of its Class B and Class C Limited Partnership Interests on the Petition Date was Three Hundred Ninety-Four Million Six Hundred Thirty Thousand Eight Hundred Seventy-One and 53/100 Dollars ($394,630,871.53) (the "**HMIT Capital Account Balance**");

**WHEREAS**, some or all of the HMIT Entities have asserted certain Claims against certain Highland Entities and certain other Highland Covered Parties, including those asserted in the Pending Litigation;

WHEREAS, certain distributions to be made to the holders of allowed Class 10 Claims or Equity Interests pursuant to the terms and subject to the conditions set forth herein are premised on the consent of certain Highland Covered Parties in their capacity as Holders of Class 9 Interests, and such Persons are only willing to provide such consent in exchange for the releases as set forth in this Agreement;

**WHEREAS**, some or all of the Highland Entities have asserted certain Claims against certain HMIT Entities, including the HMIT Note Claims;

**WHEREAS**, the Parties wish to terminate, extinguish, and release any and all rights, duties, obligations and Claims that (a) any of the Highland Released Parties owed or have, or may have owed or have, to or with respect to any of the HMIT Released Parties, and (b) any of the HMIT Released Parties owed or have, or may have owed or have, to or with respect to any of the Highland Released Parties, as provided in this Agreement (collectively, the "**Rights and Obligations**");

**WHEREAS**, the Parties agree that the Litigation Protections are intended to enact a permanent cessation of all litigation concerning or related to the Highland Released Parties through and including the Agreement Date; and

**WHEREAS**, the Parties, individually and collectively, wish to (a) resolve all disputes between and/or among any of the Highland Entities and their respective indemnitees, on the one hand, and any of the HMIT Entities, on the other hand, including those asserted or attempted to be asserted in the Pending Litigation, (b) fix and allow HMIT's Class 10 Interest at the amount and on the terms provided herein; and (c) terminate, extinguish, and release all Rights and Obligations on the terms provided herein.

**NOW THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree as follows:

**AGREEMENT**

1.    ~~Abatement~~Stay and Dismissal of Pending Litigation With Prejudice.

001406
HCMLPHMIT00000837

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

(a) Within ~~three (3~~five (5) Business Days after the Agreement Date, the HMIT Entities shall take all steps necessary (at their own cost) to ~~abate~~stay the Pending Litigation.

(b) Within ~~three (3~~five (5) Business Days after the Bankruptcy Court Approval Date, the HMIT Entities shall take all steps necessary (at their own cost) to dismiss the Pending Litigation with prejudice.

2. <u>Maintenance of ~~Abatement~~Stay and Dismissal of Certain Defendants from the Amended Complaint</u>.

(a) The Litigation Trustee shall continue to maintain the ~~abatement~~stay of Adv. Proc. No. 21-03076-sgj and all related proceedings arising therefrom through the Bankruptcy Court Approval Date. Within ~~three (3~~five (5) Business Days after the Bankruptcy Court Approval Date, the Litigation Sub-Trust shall take all steps necessary (at its own cost) to dismiss, with prejudice, HMIT and Rand PE from Counts I, II, III, and XXIV of the Amended Complaint.

3. <u>Cash Payment to HMIT</u>. ~~In consideration for the dismissal of the Pending Litigation, within three (3~~Within five (5) Business Days following the Bankruptcy Court Approval Date, Highland shall pay HMIT a one-time, lump sum of Five Hundred Thousand Dollars (US$500,000.00) (the "**Payment**") by wire transfer:

[wire instructions]

4. <u>HMIT Class 10 Interest</u>.

(a) Subject to entry of the Bankruptcy Court Order, and the terms of this Agreement, the HMIT Class 10 Interest shall be deemed allowed in the amount of Three Hundred Thirty-Six Million Nine Hundred Forty Thousand Two Hundred Thirty and 58/100 Dollars (US$336,940,230.58), which amount represents the HMIT Capital Account Balance, <u>less</u> the HMIT Note Balance.

(b) Notwithstanding anything to the contrary in the Plan or the Claimant Trust Agreement, as an integral part of this Agreement to consent to the allowance of the HMIT Class 10 Interest and the other considerations in this Agreement, HMIT shall not be deemed, and no holder of the HMIT Class 10 Interest shall be, a Claimant Trust Beneficiary or a "Beneficiary" under the Claimant Trust Agreement, and the Highland Released Parties, individually and collectively, shall owe no duty to any HMIT Releasor (whether contractual, fiduciary, equitable, statutory or otherwise), including with respect to the HMIT Class 10 Interest, in each case, except as expressly set forth in this Agreement. Furthermore, without limiting the foregoing and for the avoidance of doubt, the contractual right of the holder of the HMIT Class 10 Interest to receive or recover any payments or Indemnity Trust Assets from the Indemnity Trust as set forth in this Agreement or the Indemnity Trust Agreement does not make any HMIT Releasor or any other Person a beneficiary of the Indemnity Trust or under the Indemnity Trust Agreement.

(c) Notwithstanding anything to the contrary in the Plan, the Claimant Trust Agreement or the Indemnity Trust Agreement, in no event shall HMIT sell, transfer, assign, pledge, hypothecate, participate or otherwise dispose of <u>or encumber</u> the HMIT Class 10 Interest

001407
HCMLPHMIT00000838

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

or any rights (including any right to payment) with respect thereto (collectively, a "**Class 10 Assignment**"), and any attempted Class 10 Assignment shall be null and void.

(d)    For the avoidance of doubt, the HMIT Class 10 Interest is and shall remain senior to the not yet allowed, unvested contingent Class 11 Claims of Equity Interests as provided for in the Plan, the Plan Documents, and the Claimant Trust Agreement.

5.    <u>Initial Interim Distributions on the Allowed Class 10 Interests</u>.

(a)    Within ~~ten (10~~five (5) Business Days after the Bankruptcy Court Approval Date, the Indemnity Trust shall distribute (the date on which such distribution is made, the "**Initial Interim Distribution Date**") Pro Rata to the Holders of allowed Class 10 Claims or Equity Interests cash in the aggregate amount of ~~Twelve~~Ten Million Dollars (US$~~12~~10,000,000.00) (the "**Initial Interim Cash Distribution Amount**").

~~(b)    HMIT shall deposit and hold Ten Million Dollars (US$10,000,000) of the Initial Interim Cash Distirbution Amount in an interest bearing escrow account (the "**HMIT Escrow Account**") pending the Final Court Approval Date.~~

~~(c)~~(b)    Within ~~ten (10~~five (5) Business Days after the Bankruptcy Court Approval Date ~~("the~~(the "**Note Assignment Date**"), the Highland Entities shall cause the portion of the Dugaboy Note held by the Highland Entities to be ~~assigned~~distributed to HMIT in-kind and take all actions necessary for HMIT to become the holder of such portion of the Dugaboy Note, and shall in addition pay to HMIT cash in the aggregate amount of all principal and interest payments actually received on the Dugaboy Note by the ~~the~~Highland Entities, including the Indemnity Trust ~~as of~~, from the Agreement Date to the Note Assignment Date.  Prior to the Bankruptcy Court Approval Date, HMIT will engage an independent valuation service provider to value the Dugaboy Note for purposes of determining the magnitude of reduction to the outstanding allowed Class 10 Interests on account of such in-kind distribution, which shall not be less than Fifty percent (50%) of the current balance owed under the Dugaboy Note. The HMIT Entities acknowledge and agree that none of the Highland Entities are representing or warranting that the Dugaboy Note can be sold, or the price, if any, that could be received for the Dugaboy Note and further acknowledge and agree that any such purchase price may be de minimis.

6.    <u>Subsequent Distribution(s) on the Allowed Class 10 Interests</u>.

(a)    On December 1, 2027, the Indemnity Trust shall distribute (such distribution, collectively, the "**First Subsequent Distribution**", and the date on which such Subsequent Distribution is made, the "**First Subsequent Distribution Date**") Pro Rata to the Holders of allowed Class 10 Claims or Equity Interests: cash in the aggregate amount of ~~Eight Million Dollars (US$8,000,000.00).  .  HMIT shall deposit and hold Six Million Dollars (US$6,000,000) of the First Subsequent Distribution in the HMIT Escrow Account pending the Final Court Approval Date.~~Six Million Five Hundred Thousand Dollars (US$6,500,000.00).

(b)    On ~~Decemeber~~December 1, 2028, the Indemnity Trust shall distribute (such distribution, collectively, the "**Second Subsequent Distribution**", and the date on which such Subsequent Distribution is made, the "**Second Subsequent Distribution Date**") Pro Rata to the

001408

HCMLPHMIT00000839

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

Holders of allowed Class 10 Claims or Equity Interests cash in the aggregate amount of ~~Eight~~Six Million ~~Five Hundred Thousand~~ Dollars (US$~~8,000~~6,500,000.00).

~~(c)     HMIT shall deposit and hold Six Million Dollars (US$6,000,000) of the Second Subsequent Distribution in the HMIT Escrow Account pending the Final Court Approval Date.~~

~~(d)~~(c)   Notwithstanding anything herein to the contrary, the obligations of the Indemnity Trust to make the First Subsequent Distribution or Second Subsequent Distribution is subject in all respects to (i) there being no Threats and (ii) a determination in accordance with Article VIII, Section 8.1(c) of the Indemnity Trust Agreement that the Indemnity Trust Assets comprising such distributions are not reasonably necessary to satisfy current or potential Indemnification Obligations (as defined in the Indemnity Trust Agreement) to all persons who are or might become Beneficiaries (as defined in the Indemnity Trust Agreement).

7.      Final Distribution on the Allowed Class 10 Interests.

(a)     On the later of the Final Court Approval Date and April 1, 2029, the Indemnity Trust will distribute all excess remaining Indemnity Trust Assets in accordance with Article VIII of the Indemnity Trust Agreement; provided, however, that the obligation of the Indemnity Trust to make any such distributions and/or dissolve and wind up the affairs of the Indemnity Trust is subject in all respects to (i) there being no Threats and (ii) a determination in accordance with Article VIII of the Indemnity Trust Agreement that (1) a Final Order(s) (as defined in the Indemnity Trust Agreement) has been entered resolving all litigation, claims or proceedings in any forum of any kind which could give rise to Indemnity Obligations (as defined in the Indemnity Trust Agreement) and payment in full of all such Indemnity Obligations and (2) all applicable statutes of limitations and any applicable tolling of such statutes of limitation have expired.

(b)     The Indemnity Trust agrees to not use Indemnity Trust Assets to fund Operating Expenses.

(c)     Following the Bankruptcy Court Approval Date, at the request of Mark Patrick, solely in his capacity, and to the extent he remains, as administrator of HMIT, but not more often than quarterly, Highland and the Indemnity Trust Administrator agree to review (i) the status of their respective assets, (ii) the balance of cash held, (iii) the status of any claims made for indemnification and any resolutions thereof, (iv) the status of any litigation, and (v) forecasted operating expenses with Mr. Patrick, and will each work in good faith to reduce operating expenses where reasonably practicable; provided, however, that all such reporting shall be subject to Mr. Patrick's agreement to maintain confidentiality with respect to any non-public information.

8.      Transfer Kirschner Claims; Dismissal of HMIT Note Claims.

(a)     ~~In consideration of the dismissal of the Pending Litigation and the releases provided herein, within ten (10~~Within five (5) Business Days after the Bankruptcy Court Approval Date, but after the dismissal provided for in Section 2, the Litigation Sub-Trust shall execute ~~an~~a short-form assignment in ~~the form attached hereto as~~ **Exhibit [_]** in favor of the HMIT Entities transferring all of the Litigation Sub-Trust's right, title, and interest in and to the Kirschner Claims

001409
HCMLPHMIT00000840

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

(the "**Kirschner Transfer**"). Such assignment shall be in a form mutually acceptable to the Parties and its substance shall be consistent with the terms, conditions and limitations set forth in this Agreement, including Section 8(b) below. Each HMIT Entity acknowledges and agrees that none of the Highland Entities will have any duty or obligation to assist the HMIT Entities in any way with respect to the Kirschner Claims, including the prosecution thereof, except as provided in this Agreement, including without limitation the terms of Section 8(c) below.

(b)     THE HMIT ENTITIES SPECIFICALLY ACKNOWLEDGE AND AGREE THAT THE LITIGATION SUB-TRUST IS TRANSFERRING THE KIRSCHNER CLAIMS ON AN "AS IS AND WITH ALL FAULTS" BASIS AND THAT THE HMIT ENTITIES ARE NOT RELYING ON ANY REPRESENTATIONS OR WARRANTIES OF ANY KIND WHATSOEVER, EXPRESS OR IMPLIED, FROM THE HIGHLAND ENTITIES OR THEIR REPRESENTATIVES AS TO ANY MATTERS CONCERNING THE KIRSCHNER CLAIMS AND AMENDED COMPLAINT, INCLUDING WITH RESPECT TO THE ENFORCEABILITY, TRANSFERABILITY, VIABILITY, STRENGTH, OR VALUE OF ANY OF THE KIRSCHNER CLAIMS OR THE AMENDED COMPLAINT.  The HMIT Entities hereby specifically acknowledge that they have carefully reviewed this Section and have had the opportunity to discuss its import with legal counsel and that the provisions of this Section are a material part of this Agreement.  Thus, if for any reason HMIT is precluded from or is otherwise unable to prosecute all or any of the Kirschner Claims, (i) the HMIT Releasors shall have no recourse against theany Highland Released Parties whatsoever and shall not be entitled to compensation of any kind, it being agreed that the HMIT Entities are otherwise receiving adequate consideration for the duties and obligations they are undertaking pursuant to this Agreement and (ii) there will be no effect whatsoever on the validity and enforceability of this Agreement or any of the other transactions contemplated hereby.

(c)     As promptly as reasonably practicable following the Bankruptcy Court Approval Date, the Highland Entities shall provide to the HMIT Entities electronic copies of written discovery requests and responses thereto, and documents produced in discovery in respect of the Kirschner Claims and the Amended Complaint.  The Highland Entities will not provide any other documents regarding the Kirschner Claims including any attorney-client communications and any documents subject to the attorney work-product doctrine or similar privileges or immunities concerning the Kirschner Claims (collectively, the "**Kirschner Privileges**"), it being understood and agreed that the Highland Entities are retaining, and not transferring or waiving, the Kirschner Privileges.

(d)     Each Party acknowledges and agrees that if (ai) the Kirschner Transfer is found or deemed to be impermissible or invalid, for any reason, or (b) the Final Court Approval Date does not occurii) any HMIT Entity materially breaches this Agreement, the Kirschner Claims and Amended Complaint will revert to, and remain an asset of, the Litigation Sub-Trust.

9.     <u>General Release By The HMIT Entities</u>. On the Bankruptcy Court Approval Date, and to the maximum extent permitted by law, each of the HMIT Entities, on behalf of itself and each of its respective Affiliates (including Affiliated and/or managed funds, accounts and other investment vehicles) and its and their respective current and former advisors, consultants, administrators, trustees, directors, officers, managers, executives, members, partners (including limited and general partners), employees, beneficiaries, direct and indirect shareholders and other

001410

HCMLPHMIT00000841

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

equity holders, agents, participants, direct and indirect subsidiaries and parents, successors, predecessors, designees, and assigns (whether by operation of law or otherwise) and all Persons claiming through, under or on their behalf (collectively with the HMIT Entities, the "**HMIT Releasors**") hereby forever, finally, fully, unconditionally, and completely releases, relieves, acquits, discharges, remises, and exonerates each Highland Released Party from, and waives and relinquishes, any and all Claims, which the HMIT Releasors, or any Person claiming through, under, or on behalf of any of the HMIT Releasors, ever had, now has, or hereafter can, shall, or may have against any of the Highland Released Parties by reason of, arising from, relating to, or in connection with, any fact, matter, or transaction that occurred prior to the Agreement Date, including any fact, matter, transaction, or occurrence asserted by any HMIT Entity in the Pending Litigation or in connection with, relating to, or with respect to the Bankruptcy Case, the management or operation of any of the Highland Released Parties, or the Highland Released Parties' property and including any defense, affirmative defenses, and right to setoff arising out of, or otherwise related to, any of the foregoing (collectively, the "**HMIT Entity Released Claims**").

10.    <u>General Release By The Highland Entities</u>. On the Bankruptcy Court Approval Date, and to the maximum extent permitted by law, each of the Highland Entities, on behalf of itself and each of its respective Affiliates (including Affiliated and/or managed funds, accounts and other investment vehicles) and its or their respective current and former advisors, consultants, administrators, trustees, directors, officers, managers, executives, members, partners (including limited and general partners), employees, beneficiaries, direct and indirect shareholders and other equity holders, agents, participants, direct and indirect subsidiaries and parents, successors, predecessors, designees, and assigns (whether by operation of law or otherwise)() and all Persons claiming through, under or on their behalf (collectively with the Highland Entities, the "**Highland Releasors**") hereby forever, finally, fully, unconditionally, and completely releases, relieves, acquits, discharges, remises, and exonerates each HMIT Released Party from, and waives and relinquishes, any and all Claims which the Highland Releasors, or any Person claiming through, under, or on behalf of any of the Highland Releasors, ever had, now has, or hereafter can, shall, or may have against any of the HMIT Released Parties by reason of, arising from, relating to, or in connection with, any fact, matter, or transaction that occurred prior to the Bankruptcy Court Approval Date, including any fact, matter, transaction, or occurrence in connection with, relating to, or with respect to the Bankruptcy Case, the management or operation of any of the HMIT Released Parties, or the HMIT Released Parties' property and including any defense, affirmative defenses, and right to setoff arising out of, or otherwise related to, any of the foregoing (collectively, the "**Highland Released Claims**").

11.    <u>Further Provisions Concerning The General Releases</u>.

(a)    **FOR THE AVOIDANCE OF DOUBT, THE FOREGOING RELEASES ARE INTENDED TO BE GENERAL AND INCLUDE A RELEASE OF ALL RELEASED CLAIMS, WHETHER KNOWN OR UNKNOWN, SUSPECTED OR UNSUSPECTED, ARISING OR EXISTING FROM THE BEGINNING OF TIME THROUGH AND INCLUDING THE AGREEMENT DATE.**

(b)    To the maximum extent permitted by law, each of the HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland

001411
HCMLPHMIT00000842

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

Releasors, respectively, waives the benefit of any statute or other principle of law or equity that limits the applicability of a release with respect to Claims that the releasing party does not know or suspect to exist in his, her or its favor at the time of executing the release.

(c)    Without limiting the scope of the foregoing waiver, in connection with the foregoing release, each of the HMIT Entities and the Highland Entities, on its own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, waives the benefits of Section 1542 of the California Civil Code (to the extent, if any, that Section 1542 might apply to the foregoing release), which provides as follows:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

Each of the HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, hereby agrees that the provisions of Section 1542 of the Civil Code of the State of California and all similar federal or state law, rights, rules or legal principles, legal or equitable, in each case solely to the extent such provisions apply, **ARE HEREBY KNOWINGLY AND VOLUNTARILY WAIVED AND RELINQUISHED BY EACH OF THE HMIT ENTITIES AND THE HIGHLAND ENTITIES, ON THEIR OWN BEHALF AND ON BEHALF OF THE OTHER HMIT RELEASORS AND HIGHLAND RELEASORS, RESPECTIVELY,** in each and every capacity, to the full extent that such rights and benefits pertaining to the matters released herein may be waived, and each of the HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, hereby agrees and acknowledges that this waiver and relinquishment is an essential term of this Agreement, without which the consideration provided would not have been given.

In connection with such waiver and relinquishment, each of the HMIT Entities and Highland Entities acknowledges that it is aware that it may hereafter discover Claims presently unknown or unsuspected, or facts in addition to or different from those which it now knows or believes to be true, with respect to the matters released herein.  Nevertheless, it is the intent of each of the HMIT Entities and the Highland Entities, on its own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, in executing this Agreement fully, finally, and forever to settle and release all such matters, and all Claims related thereto, which exist, may exist or might have existed (whether or not previously or currently asserted in any action) which are the subject to the releases granted above.

(d)    As an integral component of this Agreement, and notwithstanding the Parties' intent set forth in the preamble hereto and the general nature of the releases in <u>Sections 9 and 10</u>, should:

(i)    any HMIT Releasor contend or assert that any Claim of any kind whatsoever held by any HMIT Releasor against any Highland Released Party survives this

001412
HCMLPHMIT00000843

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

Agreement and is in any way related to or arising from or in connection with any HMIT Entity Released Claim (such claim or cause of action, a "**HMIT Alleged Claim**"), such HMIT Releasor will be deemed to have irrevocably, fully, and finally assigned such HMIT Alleged Claim to the Highland Entities and the Highland Entities will be deemed to have forever, finally, full, unconditionally, and irrevocably, and completely released such HMIT Alleged Claim.

(ii) any Highland Releasor contend or assert that any Claim of any kind whatsoever held by any Highland Releasor against any HMIT Released Party survives this Agreement and is in any way related to or arising from or in connection with any Highland Entity Released Claim (such claim or cause of action, a "**Highland Alleged Claim**"), such Highland Releasor will be deemed to have irrevocably, fully, and finally assigned such Highland Alleged Claim to the HMIT Entities and the HMIT Entities will be deemed to have forever, finally, full, unconditionally, and irrevocably, and completely released such Highland Alleged Claim.

12. <u>Covenant Not To Sue; Limitation on Standing</u>. Upon the Agreement Date:

(a) Each of the HMIT Releasors covenants and agrees that it will not institute or prosecute any Action, in law, in equity or otherwise, against any of the Highland Released Parties, to recover, enforce, investigate, or collect any HMIT Entity Released Claim and will not (i) induce, encourage or direct any other Person to do so or (ii) act in concert with or assist (financially or otherwise) any other Person in doing so.

(b) Each of the Highland Releasors covenants and agrees that it will not institute or prosecute any Action, in law, in equity or otherwise, against any of the HMIT Released Parties, to recover, enforce, investigate, or collect any Highland Entity Released Claim and will not (i) induce, encourage or direct any other Person to do so or (ii) act in concert with or assist (financially or otherwise) any other Person in doing so.

(c) For the avoidance of doubt, this Agreement shall not operate to give any HMIT Entity standing for any purpose in connection with the Bankruptcy Case (or in connection with any appeal arising from any order entered by the Bankruptcy Court), except for the limited purpose of seeking Court approval of this Agreement (including with respect to any appeal concerning any order entered granting or denying such approval), and except for the limited purpose of enforcing this Agreement, no HMIT Entity shall commence any Action in connection with the HMIT Class 10 Interest.

13. <u>Representations and Warranties</u>.

(a) Each of the HMIT Entities hereby represents and warrants that every HMIT Entity Released Claim has not heretofore been assigned or encumbered and is not the subject of a transfer (as such term is defined in 11 U.S.C. § 101(54)), by any HMIT Releasor.

(b) The HMIT Entities, on their own behalf and on behalf of the other HMIT Releasors, acknowledge and agree that each Plan Provision is lawful, effective, and binding on the HMIT Releasors. The HMIT Entities further agree, on their own behalf and on behalf of the other HMIT Releasors, that the HMIT Releasors will never, in any way, challenge or seek to modify, nullify, vacate, or revoke, or induce, encourage or direct any other Person to do so or act in concert with or assist (financially or otherwise) any other Person in doing so the Confirmation Order, the

001413
HCMLPHMIT00000844

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

Plan, the Plan Protections, or any Plan Document, including the Claimant Trust Agreement, the LPA, the Indemnity Trust Agreement or the Litigation Sub-Trust Agreement, in the Bankruptcy Court, in any other state or federal court, in any other forum or tribunal, or otherwise, including administrative or regulatory tribunals and foreign courts.

(c)    Each of the Highland Entities hereby represents and warrants that every Highland Entity Released Claim has not heretofore been assigned or encumbered and is not the subject of a transfer (as such term is defined in 11 U.S.C. § 101(54)), by any Highland Releasor.

(d)    Each Party severally represents and warrants as to itself only that: (i) it has taken all necessary action to authorize and approve the execution, delivery and performance of this Agreement; (ii) such Party has full power and authority to execute and deliver this Agreement; and (iii) this Agreement constitutes a valid, legal and binding obligation of such Party, and is enforceable subject to its terms. Each individual signatory hereto individually warrants and represents to all Parties hereto that such individual has full power and authority to act on behalf of and bind the Party for which he or she has executed this Agreement; provided, however that no signatory shall otherwise provide any warranty or representation or otherwise be a party to this Agreement on an individual basis.

14.    <u>No Continuing Rights, Duties or Obligations</u>.  Except for the rights, duties, and obligations expressly set forth in this Agreement, all Rights and Obligations that existed or may have existed shall be deemed terminated, extinguished, and released upon the Agreement Date. For the avoidance of doubt, from and after the Agreement Date, (a) the Highland Released Parties, individually and collectively, shall owe no duty, past or present, including with respect to the Kirchner Claims, to the HMIT ~~Releasors~~Released Parties, individually and collectively, whether contractual, fiduciary, equitable, statutory or otherwise, except as arising out of this Agreement, and (b) the HMIT Released Parties, individually and collectively, shall owe no duty to the Highland ~~Releasors~~Released Parties, individually and collectively, whether contractual, fiduciary, equitable, statutory or otherwise, except as arising out of this Agreement.

15.    <u>Gatekeeper Standard</u>.

(a)    The HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, acknowledge and agree that, notwithstanding the United States Court of Appeals for the Fifth Circuit's decision in *Highland Capital Management Fund Advisors, L.P. v. Highland Capital Management, L.P.*, No. 23-10<sup>5</sup>34 (5th Cir. Mar. 18, 2025), the "Gatekeeper" provisions contained in Highland's Original Plan is forever binding on each of the HMIT Entities and any Persons claiming through, under or on behalf of any of them, and for a claim or cause of action to be "colorable" for purposes of the Gatekeeper, it must be found by final order of the Bankruptcy Court (the "**Gatekeeper Court**"), which order shall be subject to appeal to a court of competent jurisdiction, to have satisfied the "Gatekeeper Colorability Test" as such term is defined in *In re Highland Capital Management, L.P.*, 2023 Bankr. LEXIS 2104 at *124-36 (Bankr. N.D. Tex. Aug. 24, 2023).

(b)    The HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, acknowledge and agree that compliance with the Gatekeeper requires (i) a motion seeking leave to sue an Exculpated Party

001414
HCMLPHMIT00000845

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

(as that term is defined in Highland's original Plan) and a finding that the litigant's claims and causes of action are "colorable" attaching a complaint setting forth the basis for such claims or causes of action and (ii), in the Gatekeeper Court's sole discretion, an evidentiary hearing (during which the Gatekeeper Court may, among other things, hear testimony and assess the credibility of any witness(es)) to determine whether a proposed claim or cause of action is "colorable."

(c)     The HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, further acknowledge and agree that the moving party under the Gatekeeper has the burden of satisfying the "Gatekeeper Colorability Test.", " and that the dismissal of the Pending Litigation shall have res judicata effect.

16.     <u>Indemnification</u>.

(a)     Without in any manner limiting the available remedies for any breach of this Agreement, the HMIT Entities, severally but not jointly, agree to indemnify, defend, and hold the Highland Released Parties harmless from and against any and all Liability, that may arise or result from or on account of, or that are otherwise related or attributable to (x) any breach of this Agreement or of any representation or warranty contained in the Agreement, including the representations and warranties of any HMIT Entity set forth in <u>Section 13</u> or (y) any Actions brought or prosecuted by or on behalf of, any HMIT Releasor or that are induced, encouraged, assisted  or directed by any HMIT Releasor or brought or prosecuted in concert with any HMIT Releasor against any Highland Released Party with respect to or related to any HMIT Entity Released Claims.  Without limiting the scope of the foregoing in any manner, any HMIT Entity that breaches <u>Section 12</u> shall be liable to the Highland Released Party against whom the applicable Action has been brought or prosecuted in violation of <u>Section 12</u> for the reasonable attorneys' fees and costs incurred by such Highland Released Party in defending against or otherwise responding to such Action.  Each HMIT Entity acknowledges and agrees that the HMIT Entities are and shall be severally but not jointly liable for any Liability arising from or out of any breach of this Agreement or of any representation or warranty set forth in this Agreement.

(b)     Without in any manner limiting the available remedies for any breach of this Agreement, the Highland Entities, severally but not jointly, agree to indemnify, defend, and hold the HMIT Released Parties harmless from and against any and all Liability, that may arise or result from or on account of, or that are otherwise related or attributable to (x) any breach of this Agreement or of any representation or warranty contained in the Agreement, including the representations and warranties of any Highland Entity set forth in <u>Section 13</u> or (y) any suits, proceedings, or other actions brought or prosecuted by or on behalf of, any Highland Releasor or that are induced, encouraged, assisted  or directed by any Highland Releasor or brought or prosecuted in concert with any Highland Releasor against any HMIT Released Party with respect to or related to any Highland Entity Released Claims.  Without in any manner limiting the scope of the foregoing, any Highland Entity that breaches <u>Section 12</u> shall be liable to the HMIT Released Party against whom the applicable Action has been brought or prosecuted in violation of <u>Section 12</u> for the reasonable attorneys' fees and costs incurred by such HMIT Released Party in defending against or otherwise responding to such Action.  Each Highland Entity acknowledges and agrees that the Highland Entities are and shall be severally but not jointly liable for any Liability arising from or out of any breach of this Agreement or of any representation or warranty set forth in this Agreement.

001415

HCMLPHMIT00000846

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

17.  <u>Execution</u>.  This Agreement may be executed by the exchange of signatures by facsimile or by PDF attachment to an email transmittal and in counterparts, and if so executed, shall be fully executed when a counterpart has been executed and delivered by all Parties hereto through counsel.  All counterparts taken together shall constitute one and the same agreement and shall be fully enforceable as such.

18.  <u>Bankruptcy Court Order</u>.  The allowance of the allowed HMIT Class 10 Interest pursuant to <u>Section 4</u> is subject to the entry of the Bankruptcy Court Order.  To that end, the Highland Entities shall file the 9019 Motion no later than five (5) Business Days after the Agreement Date.  Each Party shall, and shall cause each of their respective Affiliates to, undertake any and all actions in compliance with applicable law to obtain the Bankruptcy Court Order as promptly as practicable, and without limiting the foregoing, if an Action is threatened or instituted by any Person opposing the 9019 Motion or otherwise challenging the validity or legality, or seeking to restrain the consummation, of the transactions contemplated by this Agreement or the Bankruptcy Court Order, each Party shall, and shall cause its respective Affiliates to, use their commercially reasonable best efforts to avoid, resist, resolve or, if necessary, and defend to effectuate this Agreement and consummate the transactions hereby.  If the 9019 Motion is not approved by entry of the Bankruptcy Court Order or if the Bankruptcy Court Approval is precluded from becoming a Final Order, (a) there will be no affect on, adjustment to, or impairment of, in any way, the validity and enforceability of the remainder of this Agreement, and the other transactions contemplated hereby, all of which shall remain in full force and effect and (b) each Party shall, and shall cause its respective Affiliates to, use their best efforts to seek the allowance of the HMIT Class 10 Interest in a substantially similar amount and on substantially similar terms as set forth in <u>Section 4</u> to the fullest extent possible so as to give effect to the original intent of the Parties as closely as possible.

19.  <u>Fees and Expenses</u>.  Whether or not the transactions contemplated hereby are consummated or the Bankruptcy Court Order is obtained, and except as otherwise expressly provided in this Agreement, each Party will bear its respective fees, costs and expenses (including legal, accounting and other professional fees) incurred in connection with the preparation, negotiation, execution and performance of this Agreement or the transactions contemplated hereby, including with respect to each Party's respective obligations pursuant to <u>Section 18</u>. Notwithstanding the foregoing, if any Party hereto brings an Action to enforce or interpret the terms and provisions of this Agreement, the prevailing Party in that Action shall be entitled to have and recover from the non-prevailing Party all such fees, costs and expenses (including all court costs and reasonable attorneys' fees) as the prevailing Party may suffer or incur in the pursuit or defense of such action or proceeding.

20.  <u>Entire Agreement; No Other Representations</u>.  **THIS AGREEMENT CONTAINS THE ENTIRE AGREEMENT BETWEEN THE PARTIES, AND NO RIGHTS ARE CREATED IN FAVOR OF ANY ~~PARTY~~PERSON OTHER THAN AS SPECIFIED OR EXPRESSLY SET FORTH IN THIS AGREEMENT.  THERE ARE NO REPRESENTATIONS, CONDITIONS, WARRANTIES, STATEMENTS, OR UNDERSTANDINGS (COLLECTIVELY, "<u>REPRESENTATIONS</u>"), EITHER ORAL OR WRITTEN, BETWEEN THE PARTIES OTHER THAN THOSE EXPRESSLY SET FORTH IN THIS AGREEMENT.  THE PARTIES EXPRESSLY AGREE THAT THEY HAVE NOT BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY ANY**

001416
HCMLPHMIT00000847

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

**REPRESENTATIONS NOT SET FORTH IN THIS AGREEMENT; AND THE PARTIES EXPRESSLY AGREE THAT THEY HAVE NOT RELIED ON ANY REPRESENTATIONS NOT EXPRESSLY SET FORTH IN THIS AGREEMENT. THE PARTIES EXPRESSLY AGREE THAT THEY ARE ENTERING INTO THIS AGREEMENT RELYING SOLELY ON THEIR OWN JUDGMENT AND NOT ON ANY REPRESENTATIONS BY ANY PARTY, EXCEPT FOR THOSE REPRESENTATIONS EXPRESSLY SET FORTH IN THIS AGREEMENT. THE PARTIES AGREE THAT REPRESENTATIONS NOT EXPRESSLY SET FORTH IN THIS AGREEMENT SHALL NOT BE USED IN THE INTERPRETATION OR CONSTRUCTION OF THIS AGREEMENT, AND NEITHER THE HMIT RELEASED PARTIES NOR THE HIGHLAND RELEASED PARTIES SHALL HAVE ANY LIABILITY FOR ANY CONSEQUENCES ARISING AS A RESULT OF ANY REPRESENTATIONS NOT SET FORTH IN THIS AGREEMENT**.

21.     <u>Agreement and Release Knowing and Voluntary</u>.  The Parties acknowledge that they have considered this Agreement with their respective attorneys and have carefully read this Agreement, that it has been fully explained by their attorneys, and that they have had a reasonable opportunity to consider this Agreement.  The Parties further represent that they know and fully understand the contents of this Agreement, that they intend to be legally bound by this Agreement and the releases and covenants contained herein, and that they are signing this Agreement, including the release provisions herein, voluntarily and of their own free will and without coercion, and with the benefit of advice of counsel.

22.     <u>Cooperation</u>.  The Parties agree to perform any services or actions reasonably necessary to carry out the terms and conditions of this Agreement or the transactions contemplated hereby, including the execution and delivery of reasonable additional documents, instruments, conveyances and/or assurances, in good faith, and to reasonably communicate and cooperate with one another in this regard.  For the avoidance of doubt, nothing in this Section shall obligate the Highland Entities to assist the HMIT Entities in any way with respect to the Kirschner Claims, including the prosecution thereof.

23.     <u>Governing Law</u>.  This Agreement shall be construed pursuant to and governed by the laws of the State of Delaware (substantive and procedural) without reference to principles of conflicts of law that would result in the application of any other State's laws.

24.     <u>Jurisdiction/Venue</u>.  The Parties hereby irrevocably submit to the jurisdiction and venue of the Bankruptcy Court with respect to any ~~action or proceeding~~Action arising out of or related to this Agreement or the subject matter hereof; if (and only if) the Bankruptcy Court lacks personal or subject matter jurisdiction to adjudicate an ~~action or proceeding~~Action arising out of or related to this Agreement or the subject matter hereof, then the Parties irrevocably submit to the jurisdiction and venue of the United States District Court for the Northern District of Texas.

25.     <u>No Admissions</u>.  All Parties acknowledge and agree that the matters set forth in this Agreement constitute the settlement and compromise of disputed Claims and that this Agreement shall not constitute the admission of any fact or liability by any of them regarding any Claim, including the Claims released hereunder, and neither the terms hereof, nor the fact of this Agreement itself, shall be evidence of any kind in any Action, other than an Action to enforce the

001417

HCMLPHMIT00000848

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

terms of the Agreement or any instrument executed in connection herewith or any claim for damages or other relief for breach of any representation or warranty contained herein or in any instrument executed in connection herewith.

26.    <u>Other Provisions</u>.

(a)    ~~This Agreement contains the entire agreement and understanding of the parties and supersedes any and all prior or contemporaneous agreements, arrangements, and understandings relating to the subject matter of this Agreement.~~ No representation, inducement, agreement, promise or understandings altering, modifying, amending, taking from or adding to, the terms and conditions hereof shall have any force or effect unless the same is in writing and validly executed by each of the Parties hereto.

(b)    The waiver by any Party of any breach of, or default under, any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach or default; provided, however, that for any such waiver to be enforceable, it shall be in writing and executed by the non-breaching Party.

(c)    The headings contained in this Agreement are for convenience only and shall in no way restrict or otherwise affect the construction of the provisions hereof.

(d)    The Parties shall each execute all documents and perform all acts necessary and proper to effectuate the terms of this Agreement.

27.    <u>Notices</u>.    All notices required or permitted to be provided hereunder shall be afforded to the respective parties to and through their counsel, and shall be transmitted simultaneously by electronic mail (with PDF attachments, as necessary) and by telefax, addressed as follows:

To the Highland Entities:

**PACHULSKI STANG ZIEHL AND JONES LLP**
Jeffrey N. Pomerantz
John A. Morris
10100 Santa Monica Boulevard
Los Angeles, California 90067-4003
310.277.6910
jpomerantz@pszjlaw.com
jmorris@pszjlaw.com

To the HMIT Entities:

**KELLY HART PITRE**
Louis M. Phillips
Amelia Hurt
301 Main Street, Suite 1600
225.381.9643
Louis.Phillips@Kellyhart.com

001418

HCMLPHMIT00000849

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

Amelia.Hurt@Kellyhart.com

28. <u>Severability</u>. Should any term, provision or paragraph of this Agreement be determined to be illegal or void or of no force and effect, the balance of the Agreement shall survive. The invalidity or unenforceability of any provision of this Agreement shall not affect the validity and enforceability of any other provision of this Agreement. ~~For the avoidance of doubt, if any provision of this Agreement is overturned on appeal after the Bankruptcy Court Approval Date, any portion that is not overturned on appeal shall remain in full force and effect.~~

29. <u>Interpretive Provisions</u>. Unless the express context otherwise requires: (a) the words "hereof," "herein" and "hereunder" and words of similar import, when used in this Agreement, shall refer to this Agreement as a whole and not to any particular provision of this Agreement; (b) words defined in the singular shall have a comparable meaning when used in the plural, and vice versa; (c) the words "Dollars" and "$" mean U.S. dollars; (d) references herein to a specific Section, Subsection, Recital, Schedule or Exhibit shall refer, respectively, to Sections, Subsections, Recitals, Schedules or Exhibits of this Agreement; (e) wherever the word "include," "includes" or "including" is used in this Agreement, it shall be deemed to be followed by the words ",without limitation,"; (f) references herein to any gender shall include each other gender; (g) references herein to any Person shall include such Person's heirs, executors, personal representatives, administrators, successors and assigns; provided, however, that nothing contained in this clause (g) is intended to authorize any assignment or transfer not otherwise permitted by this Agreement; (h) with respect to the determination of any period of time, the word "from" means "from and including" and the words "to" and "until" each means "to but excluding"; (i) the word "or" shall be disjunctive but not exclusive; (j) the headings contained in this Agreement are intended solely for convenience and shall not affect the rights of the Parties; and (k) if the last day for the giving of any notice or the performance of any act required or permitted under this Agreement is a day that is not a Business Day, then the time for the giving of such notice or the performance of such action shall be extended to the next succeeding Business Day.

*[Signature page follows]*

001419
HCMLPHMIT00000850

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first written above.

**HUNTER MOUNTAIN INVESTMENT TRUST**

By _____
     Name:    Mark Patrick
     Title:    Administrator
     Date:    May ___, 2025

**BEACON MOUNTAIN LLC**

By _____
     Name:
     Title:
     Date:    May ___, 2025

**RAND ADVISORS, LLC**

By _____
     Name:    Mark Patrick
     Title:    President
     Date:    May ___, 2025

**RAND PE FUND I, LP**
By: Rand PE Fund Management, LLC, its General Partner

By _____
     Name:    Mark Patrick
     Title:    President
     Date:    May ___, 2025

**RAND PE FUND MANAGEMENT, LLC**

By _____
     Name:    Mark Patrick
     Title:    President

001420

HCMLPHMIT00000851

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

Date:        May ___, 2025

**ATLAS IDF, LP**
By: Atlas IDF GP, LLC, its General Partner

By    _____
      Name:        Mark Patrick
      Title:        President
      Date:        May ___, 2025

**ATLAS IDF GP, LLC**

By    _____
      Name:        Mark Patrick
      Title:        President
      Date:        May ___, 2025

**HIGHLAND CAPITAL MANAGEMENT, L.P.**

By    _____
      Name:        James. P. Seery, Jr.
      Title:        Chief Executive Officer
      Date:        May ___, 2025

**HIGHLAND CLAIMANT TRUST**

By    _____
      Name:        James P. Seery, Jr.
      Title:        Claimant Trustee
      Date:        May ___, 2025

**HIGHLAND LITIGATION SUB-TRUST**

By    _____
      Name:        Marc S. Kirschner
      Title:        Litigation Trustee

001421

HCMLPHMIT00000852

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

Date:        May __, 2025

**HIGHLAND INDEMNITY TRUST**


By    _____
      Name:    James P. Seery, Jr.
      Title:    Indemnity Trust Administrator
      Date:    May __, 2025

001422

HCMLPHMIT00000853

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

## SETTLEMENT AGREEMENT & GENERAL RELEASE

THIS SETTLEMENT AGREEMENT & GENERAL RELEASE (this "**Agreement**") is entered into as of May 16, 2025 (the "**Agreement Date**"), by and among Highland Capital Management, L.P., a Delaware limited partnership ("**Highland**"), the Highland Claimant Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act (the "**Claimant Trust**"), the Highland Litigation Sub-Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act (the "**Litigation Sub-Trust**"), and the Highland Indemnity Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act (the "**Indemnity Trust**", and together with Highland, the Claimant Trust and the Litigation Sub-Trust, the "**Highland Entities**"), on the one hand, and Hunter Mountain Investment Trust, a Delaware statutory trust ("**HMIT**"), Beacon Mountain LLC, a Delaware limited liability company ("**Beacon Mountain**"), Rand Advisors, LLC, a Delaware limited liability company ("**Rand Advisors**"), Rand PE Fund I, LP, a Delaware series limited partnership ("**Rand PE Fund**"), Rand PE Fund Management, LLC, a Delaware limited liability company ("**Rand GP**"), Atlas IDF, LP, a Delaware limited partnership ("**Atlas IDF**"), Atlas IDF GP, LLC, a Delaware limited liability company ("**Atlas GP**" and together with HMIT, Beacon Mountain, Rand Advisors, Rand PE Fund, Rand GP and Atlas IDF, the "**HMIT Entities**"), on the other hand.  The Highland Entities and the HMIT Entities are collectively referred to as the "**Parties**," and each individually, as a "**Party**".

### DEFINITIONS

Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Claimant Trust Agreement or the Plan, as applicable (in each case, as hereinafter defined). For purposes of this Agreement, the following capitalized terms have the following meanings:

"**9019 Motion**" means the motion seeking entry of the Bankruptcy Court Order pursuant to Bankruptcy Rule 9019 and in accordance with Section 18.

"**Action**" means any action, claim, demand, arbitration, hearing, charge, complaint, investigation, examination, indictment, litigation, suit or other civil, criminal, administrative or investigative proceedings, including any petition under Rule 202 of the Texas Rules of Civil Procedure.

"**Affiliate**" means a Person that, directly or indirectly, through one or more intermediaries, controls or is controlled by, or is under common control with, a specified Person as of the date on which, or at any time during the period for which, the determination of affiliation is being made. The term "control" (including, with correlative meanings, the terms "controlled by" and "under common control with"), as applied to any Person, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting securities or other ownership interest, by contract or otherwise.

"**Amended Complaint**" means the *Amended Complaint and Objection to Claims*, filed as docket number 158 in *Kirschner v. Dondero*, Adv. Pro. No. 21-03076-sgj (Bankr. N.D. Tex. May 19, 2022).

"**Bankruptcy Case**" means *In re Highland Capital Management, L.P.*, Case No. 19-34054-sgj (Bankr. N.D. Tex.) and its related proceedings.

001423

HCMLPHMIT00000854

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

"**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended).

"**Bankruptcy Court**" means the U.S. Bankruptcy Court for the Northern District of Texas, Dallas Division.

"**Bankruptcy Court Approval Date**" means the date on which the Bankruptcy Court Order is issued.

"**Bankruptcy Court Order**" means an order of the Bankruptcy Court approving the allowance of the HMIT's Class 10 Interest as provided in this Agreement pursuant to the 9019 Motion.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure.

"**Business Day**" means any day other than (i) a Saturday or a Sunday, (ii) a day on which the Federal Reserve Bank of New York or the New York Stock Exchange is closed, or (iii) a day on which banks in the States of Texas are required, or authorized by law, to close.

"**Claimant Trust Agreement**" means that certain Claimant Trust Agreement of the Claimant Trust (as may have been or may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), effective as of August 11, 2021, by and among Highland, as settlor, James P. Seery, Jr., a Claimant Trustee, and Wilmington Trust, National Association, a national banking association, as Delaware trustee.

"**Claims**" means any claims, debts, liabilities, demands, obligations, breaches of contract, breaches of duty or any relationship, misfeasance, malfeasance, promises, acts, omissions, agreements, liens, losses, costs and expenses (including attorney's fees and related costs), damages, injuries, suits, Actions, and causes of action of whatever kind or nature, whenever and however, arising, whether known or unknown, suspected or unsuspected, matured or unmatured, liquidated or unliquidated, contingent or fixed, at law or in equity, statutory or otherwise.

"**Class 10**" means the class of Claims or Equity Interests described in Article II. Section H.10. of the Plan.

"**Class 11**" means the class of Claims or Equity Interests described in Article II. Section H.11. of the Plan.

"**Committee**" means the official committee of unsecured creditors appointed in the Bankruptcy Case.

"**Confirmation Order**" means that certain *Order Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (ii) Granting Related Relief* [Docket No. 1943], as conformed in accordance with the Fifth Circuit's rulings.

"**Dugaboy Note**" means that certain Promissory Note dated May 31, 2017, in the original face amount of $24,268,621.69, from The Dugaboy Investment Trust, as Maker, and Highland Capital Management, L.P. and The Get Good Non-Exempt Trust, collectively as Payee.

001424
HCMLPHMIT00000855

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

"**Final Court Approval Date**" means the date on which the Bankruptcy Court Order becomes a Final Order.

"**Final Order**" means an order or judgment of the Bankruptcy Court, which is in full force and effect, and as to which the time to appeal, petition for certiorari, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, new trial, reargument, or rehearing shall have been waived in writing in form and substance satisfactory to the Highland Entities, as applicable, or, in the event that an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order of the Bankruptcy Court shall have been determined by the highest court to which such order was appealed, or certiorari, new trial, reargument or rehearing shall have been denied and the time to take any further appeal, petition for certiorari, or move for a new trial, reargument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be Filed with respect to such order shall not preclude such order from being a Final Order.

"**Gatekeeper**" means the gatekeeping provision contained in Article IX. F of the Plan as of August 11, 2021.

"**Governmental Authority**" means any federal, provincial, state, local or foreign government or political subdivision thereof, court of competent jurisdiction, administrative agency, judicial or arbitral body, or commission or other governmental or regulatory authority or instrumentality.

"**Highland Released Parties**" means collectively (i) the Highland Entities, (ii) any Affiliate of any Highland Entity and any Person directly or indirectly majority-owned by any Highland Entity or any of their respective Affiliates, (iii) any Person directly or indirectly managed by any Highland Entity or any of their respective Affiliates, whether by contract or otherwise (the entities described in clauses (i)-(iii), collectively, the "**Highland Parties**"), (iv) each of the Highland Parties' current and former trustees and administrators (including the trustees of any of the Claimant Trust, the Litigation Sub-Trust, or the Indemnity Trust), officers, executives, agents, directors, advisors, advisory representatives, consultants, administrators, managers, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns, (v) the current and former members of the Oversight Board of the Claimant Trust in any capacity (including Richard Katz) and their Affiliates, (vi) Farallon Capital Management, LLC, Stonehill Capital Management, LLC, Muck Holdings LLC, and Jessup Holdings LLC, in each case, in any capacity, (vii) the Independent Board and its members John Dubel, James P. Seery, Jr., and Russell Nelms, (viii) James P. Seery, Jr., individually and in all capacities for any Highland Released Party, including as Chief Executive Officer of Highland Capital Management, L.P., Claimant Trustee of the Claimant Trust, and the Indemnity Trust Administrator of the Indemnity Trust, (ix) Marc S. Kirschner, individually and as Trustee of the Litigation Sub-Trust, (x) the Committee and each of its members, (xi) the professionals (and their respective firms) (a) retained by Highland or the Committee during the Bankruptcy Case or which provided services to Highland or the Committee during the Bankruptcy Case or (b) retained by any Highland Released Party on or after August 11, 2021, (xii) any Person indemnified by any

3

001425

HCMLPHMIT00000856

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

Highland Party (the Persons described in clauses (i)-(xii), collectively, the "**Highland Covered Parties**"), and (xii) each Highland Covered Party's current and former officers, executives, agents, attorneys (and their respective firms), directors, advisors, consultants, administrators, managers, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns, if not otherwise included in the defined term "Highland Covered Parties;" provided, however, and for the avoidance of doubt, and without in any way limiting the scope of the foregoing, "Highland Covered Parties" shall include Highland CLO Funding, Ltd., Highland HCF Advisor, Ltd., Highland Multi Strategy Credit Fund, L.P., Highland Multi Strategy Credit Fund GP, L.P., Highland Multi Strategy Credit GP, LLC, Highland Multi Strategy Credit Fund, Ltd., Highland Select Equity Master Fund, L.P., Highland Select Equity Fund GP, L.P., Highland Select Equity Fund, L.P., Highland Restoration Capital Partners Master, L.P., Highland Restoration Capital Partners GP, LLC, Highland Restoration Capital Partners, L.P., Highland Restoration Capital Partners Offshore, L.P., Highland Offshore Director, LLC, Acis CLO Management, LLC, Neutra, Ltd., Pollack, Ltd., Acis CLO Management Holdings, L.P., Acis CLO Management Intermediate Holdings I, LLC, Acis CLO Management Intermediate Holdings II, LLC, Acis CLO Assets Holdings Limited, CHG Houston Holdings, LLC, Penant Management, L.P., Penant Management GP, LLC, Gunwale, LLC, HE Capital, LLC, Gleneagles CLO, Ltd., Aberdeen Loan Funding, Ltd. Highland Argentina Regional Opportunity Fund GP, LLC, Highland Argentina Regional Opportunity Fund, L.P., Highland Argentina Regional Opportunity Fund, Ltd., Highland Argentina Regional Opportunity Master Fund, L.P., Highland Latin America Consulting, Ltd., Highland Capital Management Korea Limited, Highland Capital Management Latin America, L.P., Highland Latin America GP, Ltd., Highland Latin America LP, Ltd., Highland Offshore Partners, L.P. (Diversified), Brentwood CLO, Ltd., Eastland CLO, Ltd., Bristol Bay Funding Ltd., Jasper CLO Ltd., Highland Legacy Limited, Grayson CLO, Ltd., Greenbriar CLO, Ltd., Highland Loan Funding V Ltd., Highland Park CDO I, Ltd., Liberty CLO, Ltd., Valhalla CLO, Ltd., Stratford CLO Ltd., Southfork CLO, Ltd., Pam Capital Funding, L.P., Stonebridge-Highland Healthcare Private Equity Fund, Pamco Cayman Ltd., Red River CLO, Ltd., Rockwall CDO II Ltd., Rockwall CDO, Ltd., Westchester CLO, Ltd. Longhorn Credit Funding, LLC, PensionDanmark Pensionsforsikringsaktieselskab, Highland Dynamic Income Master Fund L.P., Highland Dynamic Income Fund GP, LLC, Highland Dynamic Income Fund, L.P., Highland Dynamic Income Fund, Ltd., Highland JHT Holdings, LLC, Highland Prometheus Master Fund, L.P., Highland Prometheus Feeder Fund I, L.P., Highland Prometheus Feeder Fund II, L.P., Highland Sunbridge GP, LLC, Trussway Holdings, LLC, Trussway Industries, LLC, TW Company, Inc., T-Way Investments, LLC, SSP Holdings, LLC, Highland Flexible Income UCITS Fund, and Acis CLO 2017-7, Ltd. *Notwithstanding the forgoing or anything herein to the contrary*, none of "Highland Released Parties", "Highland Parties", nor "Highland Covered Parties" shall include James Dondero, Scott Ellington, Isaac Leventon, or any Person directly or indirectly owned as of the date hereof (in whole or in part) by, and/or Affiliated as of the date hereof with, or claiming through, under or on behalf of, any of Mr. Dondero, Mr. Ellington, or Mr. Leventon in any manner and none of such Persons are released from any Claim by any Person in connection with this Agreement.

"**HMIT Class 10 Interest**" means the unvested, contingent Class 10 interest in the Claimant Trust (a) to be allowed on account of HMIT's pre-petition equity interest in Highland, and (b) subject to the terms and conditions, as applicable, of the Plan, the Plan Documents, the Claimant Trust Agreement, and in accordance with this Agreement, and applicable law.

001426
HCMLPHMIT00000857

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

"**HMIT Note**" means that certain Secured Promissory Note dated December 21, 2015, in the original face amount of $63,000,000 from HMIT, as maker, and Highland, as payee.

"**HMIT Note Claims**" means any Claim related to, in connection with or arising out of the HMIT Note.

"**HMIT Released Parties**" means collectively (i) the HMIT Entities, (ii) any Affiliate of any HMIT Entity and any Person directly or indirectly majority owned by any HMIT Entity or any of their respective Affiliates, (iii) any Person directly or indirectly managed by any HMIT Entity or any of their respective Affiliates, whether by contract or otherwise (the entities described in clauses (i) – (iii), collectively, the "**HMIT Parties**"), (iv) each of the HMIT Parties' current and former trustees, administrators, officer, executives, agents, directors, advisors, consultants, manager, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns (v) the professionals (and their respective firms (a) retained by any HMIT Party during the Bankruptcy Case or which provided services to any HMIT Party during the Bankruptcy Case or (b) retained by any HMIT Released Party on or after August 11, 2021, (vi) any Person indemnified by any HMIT Party (the Persons described in clauses (i) – (vi), collectively, the "**HMIT Covered Parties**"), and (vii) each HMIT Covered Party's current and former officers, executives, agents, directors, advisors, consultants, administrators, managers, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns, if not otherwise included in the defined term "HMIT Covered Parties." *Notwithstanding the forgoing*, none of "HMIT Released Parties", "HMIT Parties", nor "HMIT Covered Parties" shall include James Dondero, Scott Ellington, Isaac Leventon, or any Person directly or indirectly owned as of the date hereof (in whole or in part) by, and/or Affiliated as of the date hereof with, or claiming through, under or on behalf of, any of Mr. Dondero, Mr. Ellington, or Mr. Leventon in any manner, and none of such Persons are released from any Claims by any Person in connection with this Agreement.

"**Indemnity Trust Administrator**" has the meaning given to it in the Indemnity Trust Agreement.

"**Indemnity Trust Agreement**" means that certain *Second Amended and Restated Indemnity Trust Agreement of the Indemnity Trust* (as may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), effective as of [April 28], 2025, by and among the Claimant Trust, as grantor, James P. Seery, Jr., as indemnity trust administrator, and Wilmington Trust, National Association, a national banking association, as indemnity trustee and Delaware trustee.

"**Indemnity Trust Assets**" has the meaning set forth in the Indemnity Trust Agreement, but excluding Highland, the Claimant Trust, and their respective assets.

"**Independent Board**" means the independent board appointed by the Bankruptcy Court on January 9, 2020, pursuant to that certain *Order Approving Settlement with Official Committee of Unsecured Creditors Regarding Governance of the Debtor and Procedures for Operations in the Ordinary Course* [Docket No. 339].

001427

HCMLPHMIT00000858

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

"**Kirschner Claims**" means all Claims and causes of action that were asserted or could have been asserted by the Litigation Trustee of the Litigation Sub-Trust, in the Amended Complaint.

"**Liability**" means any liability, debt, obligation, loss, damage, claim, cost or expense (including costs of investigation and defense and attorney's fees, costs and expenses), in each case, whether direct or indirect, whether accrued or contingent, whether or not involving a third-party claim, and including incidental and consequential damages and diminution of value.

"**Litigation Protections**" means, individually and collectively, the rights, duties, and obligations set forth in Sections 1 – 2 and Sections 9 - 16.

"**Litigation Sub-Trust**" means the Highland Litigation Sub-Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act.

"**Litigation Sub-Trust Agreement**" means that certain Litigation Sub-Trust Agreement of the Litigation Sub-Trust (as may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), effective as of August 16, 2021, by and among James P. Seery, Jr., as Claimant Trustee of the Claimant Trust, Wilmington Trust, National Association, a national banking association, as Delaware Trustee, and the Litigation Trustee.

"**Litigation Trustee**" means Marc S. Kirschner, as Litigation Trustee of the Litigation Sub-Trust.

"**LPA**" means that certain *Sixth Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P.* (as may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), dated as of October 4, 2021.

"Operating Expenses" means, except for the expenses of the Indemnity Trust (including any payments to Trust Indemnified Parties or Indemnified Parties (in each case, as defined, and pursuant to the terms and conditions set forth, in the Indemnity Trust Agreement)), the expenses of operating and administering the Highland Entities, including legal expenses, employee compensation, Claimant Trustee/CEO and other trust and trustee related compensation, incentive compensation, and customary general and administrative expenses.

"**Original Plan**" means that certain *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* attached as Exhibit A to the *Order (A) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as modified) and (B) Granting Related Relief*, filed at Docket No. 1943 on the Bankruptcy Court's docket.

"**Oversight Board**" means the oversight board of the Highland Claimant Trust.

"**Pending Litigation**" means (i) *Hunter Mountain Investment Trust v. Highland Cap. Mgmt., L.P.*, Case No. 3:23-cv-02071-E (N.D. Tex.), on remand to the Bankruptcy Court (including *Hunter Mountain Investment Trust's Emergency Motion for Leave to File Adversary Proceeding* filed at Bankruptcy Court Docket No. 3699 and all proceedings, decisions, and orders relating there); (ii) *Dugaboy Investment Trust v. Highland Cap. Mgmt, L.P.*, 3:24-cv-01531-X

001428

HCMLPHMIT00000859

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

(N.D. Tex.) (only as to HMIT), and (iii) *Hunter Mountain Investment Trust v. Highland Cap. Mgmt., L.P.*, Case No. 3:24-cv-01786-L (N.D. Tex.).

"**Permitted Investments**" has the meaning set forth in the Indemnity Trust Agreement.

"**Person**" means any natural person, partnership, limited liability partnership, corporation, limited liability company, association, joint stock company, trust, estate, joint venture, unincorporated organization or Governmental Authority.

"**Plan**" means that certain *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* as conformed in accordance with the Fifth Circuit's rulings.

"**Plan Documents**" has the meaning given to it in the Plan.

"**Plan Protections**" means, collectively, the provisions of the Plan contained in Article IX thereof.

"**Pro Rata**" means the proportion that (a) the allowed amount of a particular Claim or Equity Interest in Class 10 bears to (b) the aggregate allowed amount of all Claims or Equity Interests in Class 10.

"**Threats**" means any written threats of legal action, legal demands, filed complaints, petitions for pre-suit discovery, suits, litigations, arbitrations, actual or threated restraining orders or injunctions made in writing, or similar written actions of any kind, or sworn statements evidencing the same, in any forum against any Trust Indemnified Parties or Indemnified Party (both as defined in the Indemnity Trust Agreement), excluding any such action that would otherwise be a Threat except that any applicable statute of limitations that could be applicable to such action has expired.

"**Threats Notice**" means the written notice of any Threats received by the Indemnity Trust with respect to any Trust Indemnified Parties or Indemnified Party (both as defined in the Indemnity Trust Agreement), that is hereby required to be provided by the Indemnity Trust to the HMIT Entities, within five (5) Business Days after receipt of such Threat.

## RECITALS

**WHEREAS**, as of the Petition Date, HMIT held Class B and Class C Limited Partnerships Interests in Highland;

**WHEREAS**, on December 21, 2015, HMIT entered into the HMIT Note with Highland, which had a total outstanding principal balance of Fifty-Seven Million Six Hundred Ninety Thousand Six Hundred Forty and 95/100 Dollars ($57,690,640.95) as of the Petition Date (the "**HMIT Note Balance**");

**WHEREAS**, HMIT's Class B and Class C Limited Partnership Interests in Highland were extinguished on August 11, 2021, in accordance with the Plan;

001429

HCMLPHMIT00000860

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

**WHEREAS**, pursuant to the LPA, HMIT's capital account balance at Highland on account of its Class B and Class C Limited Partnership Interests on the Petition Date was Three Hundred Ninety-Four Million Six Hundred Thirty Thousand Eight Hundred Seventy-One and 53/100 Dollars ($394,630,871.53) (the "**HMIT Capital Account Balance**");

**WHEREAS**, some or all of the HMIT Entities have asserted certain Claims against certain Highland Entities and certain other Highland Covered Parties, including those asserted in the Pending Litigation;

WHEREAS, certain distributions to be made to the holders of allowed Class 10 Claims or Equity Interests pursuant to the terms and subject to the conditions set forth herein are premised on the consent of certain Highland Covered Parties in their capacity as Holders of Class 9 Interests, and such Persons are only willing to provide such consent in exchange for the releases as set forth in this Agreement;

**WHEREAS**, some or all of the Highland Entities have asserted certain Claims against certain HMIT Entities, including the HMIT Note Claims;

**WHEREAS**, the Parties wish to terminate, extinguish, and release any and all rights, duties, obligations and Claims that (a) any of the Highland Released Parties owed or have, or may have owed or have, to or with respect to any of the HMIT Released Parties, and (b) any of the HMIT Released Parties owed or have, or may have owed or have, to or with respect to any of the Highland Released Parties, as provided in this Agreement (collectively, the "**Rights and Obligations**");

**WHEREAS**, the Parties agree that the Litigation Protections are intended to enact a permanent cessation of all litigation concerning or related to the Highland Released Parties through and including the Agreement Date; and

**WHEREAS**, the Parties, individually and collectively, wish to (a) resolve all disputes between and/or among any of the Highland Entities and their respective indemnitees, on the one hand, and any of the HMIT Entities, on the other hand, including those asserted or attempted to be asserted in the Pending Litigation, (b) fix and allow HMIT's Class 10 Interest at the amount and on the terms provided herein; and (c) terminate, extinguish, and release all Rights and Obligations on the terms provided herein.

**NOW THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree as follows:

<u>**AGREEMENT**</u>

1.    <u>Stay and Dismissal of Pending Litigation With Prejudice</u>.

(a)    Within five (5) Business Days after the Agreement Date, the HMIT Entities shall take all steps necessary (at their own cost) to stay the Pending Litigation.

001430

HCMLPHMIT00000861

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

(b)    Within five (5) Business Days after the Bankruptcy Court Approval Date, the HMIT Entities shall take all steps necessary (at their own cost) to dismiss the Pending Litigation with prejudice.

2.    <u>Maintenance of Stay and Dismissal of Certain Defendants from the Amended Complaint</u>.

(a)    The Litigation Trustee shall continue to maintain the stay of Adv. Proc. No. 21-03076-sgj and all related proceedings arising therefrom through the Bankruptcy Court Approval Date. Within five (5) Business Days after the Bankruptcy Court Approval Date, the Litigation Sub-Trust shall take all steps necessary (at its own cost) to dismiss, with prejudice, HMIT and Rand PE from Counts I, II, III, and XXIV of the Amended Complaint.

3.    <u>Cash Payment to HMIT</u>.  Within five (5) Business Days following the Bankruptcy Court Approval Date, Highland shall pay HMIT a one-time, lump sum of Five Hundred Thousand Dollars (US$500,000.00) (the "**Payment**") by wire transfer:

[wire instructions]

4.    <u>HMIT Class 10 Interest</u>.

(a)    Subject to entry of the Bankruptcy Court Order, and the terms of this Agreement, the HMIT Class 10 Interest shall be deemed allowed in the amount of Three Hundred Thirty-Six Million Nine Hundred Forty Thousand Two Hundred Thirty and 58/100 Dollars (US$336,940,230.58), which amount represents the HMIT Capital Account Balance, <u>less</u> the HMIT Note Balance.

(b)    Notwithstanding anything to the contrary in the Plan or the Claimant Trust Agreement, as an integral part of this Agreement to consent to the allowance of the HMIT Class 10 Interest and the other considerations in this Agreement, HMIT shall not be deemed, and no holder of the HMIT Class 10 Interest shall be, a Claimant Trust Beneficiary or a "Beneficiary" under the Claimant Trust Agreement, and the Highland Released Parties, individually and collectively, shall owe no duty to any HMIT Releasor (whether contractual, fiduciary, equitable, statutory or otherwise), including with respect to the HMIT Class 10 Interest, in each case, except as expressly set forth in this Agreement.  Furthermore, without limiting the foregoing and for the avoidance of doubt, the contractual right of the holder of the HMIT Class 10 Interest to receive or recover any payments or Indemnity Trust Assets from the Indemnity Trust as set forth in this Agreement or the Indemnity Trust Agreement does not make any HMIT Releasor or any other Person a beneficiary of the Indemnity Trust or under the Indemnity Trust Agreement.

(c)    Notwithstanding anything to the contrary in the Plan, the Claimant Trust Agreement or the Indemnity Trust Agreement, in no event shall HMIT sell, transfer, assign, pledge, hypothecate, participate or otherwise dispose of or encumber the HMIT Class 10 Interest or any rights (including any right to payment) with respect thereto (collectively, a "**Class 10 Assignment**"), and any attempted Class 10 Assignment shall be null and void.

001431

HCMLPHMIT00000862

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

(d)     For the avoidance of doubt, the HMIT Class 10 Interest is and shall remain senior to the not yet allowed, unvested contingent Class 11 Claims of Equity Interests as provided for in the Plan, the Plan Documents, and the Claimant Trust Agreement.

5.     <u>Initial Interim Distributions on the Allowed Class 10 Interests</u>.

(a)     Within five (5) Business Days after the Bankruptcy Court Approval Date, the Indemnity Trust shall distribute (the date on which such distribution is made, the "**Initial Interim Distribution Date**") Pro Rata to the Holders of allowed Class 10 Claims or Equity Interests cash in the aggregate amount of Ten Million Dollars (US$10,000,000.00) (the "**Initial Interim Cash Distribution Amount**").

(b)     Within five (5) Business Days after the Bankruptcy Court Approval Date (the "**Note Assignment Date**"), the Highland Entities shall cause the portion of the Dugaboy Note held by the Highland Entities to be distributed to HMIT in-kind and take all actions necessary for HMIT to become the holder of such portion of the Dugaboy Note, and shall in addition pay to HMIT cash in the aggregate amount of all principal and interest payments actually received on the Dugaboy Note by the Highland Entities, including the Indemnity Trust, from the Agreement Date to the Note Assignment Date.  Prior to the Bankruptcy Court Approval Date, HMIT will engage an independent valuation service provider to value the Dugaboy Note for purposes of determining the magnitude of reduction to the outstanding allowed Class 10 Interests on account of such in-kind distribution, which shall not be less than Fifty percent (50%) of the current balance owed under the Dugaboy Note. The HMIT Entities acknowledge and agree that none of the Highland Entities are representing or warranting that the Dugaboy Note can be sold, or the price, if any, that could be received for the Dugaboy Note and further acknowledge and agree that any such purchase price may be de minimis.

6.     <u>Subsequent Distribution(s) on the Allowed Class 10 Interests</u>.

(a)     On December 1, 2027, the Indemnity Trust shall distribute (such distribution, collectively, the "**First Subsequent Distribution**", and the date on which such Subsequent Distribution is made, the "**First Subsequent Distribution Date**") Pro Rata to the Holders of allowed Class 10 Claims or Equity Interests: cash in the aggregate amount of Six Million Five Hundred Thousand Dollars (US$6,500,000.00).

(b)     On December 1, 2028, the Indemnity Trust shall distribute (such distribution, collectively, the "**Second Subsequent Distribution**", and the date on which such Subsequent Distribution is made, the "**Second Subsequent Distribution Date**") Pro Rata to the Holders of allowed Class 10 Claims or Equity Interests cash in the aggregate amount of Six Million Five Hundred Thousand Dollars (US$6,500,000.00).

(c)     Notwithstanding anything herein to the contrary, the obligations of the Indemnity Trust to make the First Subsequent Distribution or Second Subsequent Distribution is subject in all respects to (i) there being no Threats and (ii) a determination in accordance with Article VIII, Section 8.1(c) of the Indemnity Trust Agreement that the Indemnity Trust Assets comprising such distributions are not reasonably necessary to satisfy current or potential

001432

HCMLPHMIT00000863

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

Indemnification Obligations (as defined in the Indemnity Trust Agreement) to all persons who are or might become Beneficiaries (as defined in the Indemnity Trust Agreement).

7.     <u>Final Distribution on the Allowed Class 10 Interests</u>.

(a)     On the later of the Final Court Approval Date and April 1, 2029, the Indemnity Trust will distribute all excess remaining Indemnity Trust Assets in accordance with Article VIII of the Indemnity Trust Agreement; <u>provided</u>, <u>however</u>, that the obligation of the Indemnity Trust to make any such distributions and/or dissolve and wind up the affairs of the Indemnity Trust is subject in all respects to (i) there being no Threats and (ii) a determination in accordance with Article VIII of the Indemnity Trust Agreement that (1) a Final Order(s) (as defined in the Indemnity Trust Agreement) has been entered resolving all litigation, claims or proceedings in any forum of any kind which could give rise to Indemnity Obligations (as defined in the Indemnity Trust Agreement) and payment in full of all such Indemnity Obligations and (2) all applicable statutes of limitations and any applicable tolling of such statutes of limitation have expired.

(b)     The Indemnity Trust agrees to not use Indemnity Trust Assets to fund Operating Expenses.

(c)     Following the Bankruptcy Court Approval Date, at the request of Mark Patrick, solely in his capacity, and to the extent he remains, as administrator of HMIT, but not more often than quarterly, Highland and the Indemnity Trust Administrator agree to review (i) the status of their respective assets, (ii) the balance of cash held, (iii) the status of any claims made for indemnification and any resolutions thereof, (iv) the status of any litigation, and (v) forecasted operating expenses with Mr. Patrick, and will each work in good faith to reduce operating expenses where reasonably practicable; provided, however, that all such reporting shall be subject to Mr. Patrick's agreement to maintain confidentiality with respect to any non-public information.

8.     <u>Transfer Kirschner Claims; Dismissal of HMIT Note Claims</u>.

(a)     Within five (5) Business Days after the Bankruptcy Court Approval Date, but after the dismissal provided for in <u>Section 2</u>, the Litigation Sub-Trust shall execute a short-form assignment in in favor of the HMIT Entities transferring all of the Litigation Sub-Trust's right, title, and interest in and to the Kirschner Claims (the "**Kirschner Transfer**"). Such assignment shall be in a form mutually acceptable to the Parties and its substance shall be consistent with the terms, conditions and limitations set forth in this Agreement, including <u>Section 8(b)</u> below. Each HMIT Entity acknowledges and agrees that none of the Highland Entities will have any duty or obligation to assist the HMIT Entities in any way with respect to the Kirschner Claims, including the prosecution thereof, except as provided in this Agreement, including the terms of <u>Section 8(c)</u> below.

(b)     THE HMIT ENTITIES SPECIFICALLY ACKNOWLEDGE AND AGREE THAT THE LITIGATION SUB-TRUST IS TRANSFERRING THE KIRSCHNER CLAIMS ON AN "AS IS AND WITH ALL FAULTS" BASIS AND THAT THE HMIT ENTITIES ARE NOT RELYING ON ANY REPRESENTATIONS OR WARRANTIES OF ANY KIND WHATSOEVER, EXPRESS OR IMPLIED, FROM THE HIGHLAND ENTITIES OR

001433

HCMLPHMIT00000864

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

THEIR REPRESENTATIVES AS TO ANY MATTERS CONCERNING THE KIRSCHNER CLAIMS AND AMENDED COMPLAINT, INCLUDING WITH RESPECT TO THE ENFORCEABILITY, TRANSFERABILITY, VIABILITY, STRENGTH, OR VALUE OF ANY OF THE KIRSCHNER CLAIMS OR THE AMENDED COMPLAINT.  The HMIT Entities hereby specifically acknowledge that they have carefully reviewed this Section and have had the opportunity to discuss its import with legal counsel and that the provisions of this Section are a material part of this Agreement.  Thus, if for any reason HMIT is precluded from or is otherwise unable to prosecute all or any of the Kirschner Claims, (i) the HMIT Releasors shall have no recourse against any Highland Released Parties whatsoever and shall not be entitled to compensation of any kind, it being agreed that the HMIT Entities are otherwise receiving adequate consideration for the duties and obligations they are undertaking pursuant to this Agreement and (ii) there will be no effect whatsoever on the validity and enforceability of this Agreement or any of the other transactions contemplated hereby.

(c)    As promptly as reasonably practicable following the Bankruptcy Court Approval Date, the Highland Entities shall provide to the HMIT Entities electronic copies of written discovery requests and responses thereto, and documents produced in discovery in respect of the Kirschner Claims and the Amended Complaint.  The Highland Entities will not provide any other documents regarding the Kirschner Claims including any attorney-client communications and any documents subject to the attorney work-product doctrine or similar privileges or immunities concerning the Kirschner Claims (collectively, the "**Kirschner Privileges**"), it being understood and agreed that the Highland Entities are retaining, and not transferring or waiving, the Kirschner Privileges.

(d)    Each Party acknowledges and agrees that if (i) the Kirschner Transfer is found or deemed to be impermissible or invalid, for any reason, or (ii) any HMIT Entity materially breaches this Agreement, the Kirschner Claims and Amended Complaint will revert to, and remain an asset of, the Litigation Sub-Trust.

9.    <u>General Release By The HMIT Entities</u>. On the Bankruptcy Court Approval Date, and to the maximum extent permitted by law, each of the HMIT Entities, on behalf of itself and each of its respective Affiliates (including Affiliated and/or managed funds, accounts and other investment vehicles) and its and their respective current and former advisors, consultants, administrators, trustees, directors, officers, managers, executives, members, partners (including limited and general partners), employees, beneficiaries, direct and indirect shareholders and other equity holders, agents, participants, direct and indirect subsidiaries and parents, successors, predecessors, designees, and assigns (whether by operation of law or otherwise) and all Persons claiming through, under or on their behalf (collectively with the HMIT Entities, the "**HMIT Releasors**") hereby forever, finally, fully, unconditionally, and completely releases, relieves, acquits, discharges, remises, and exonerates each Highland Released Party from, and waives and relinquishes, any and all Claims, which the HMIT Releasors, or any Person claiming through, under, or on behalf of any of the HMIT Releasors, ever had, now has, or hereafter can, shall, or may have against any of the Highland Released Parties by reason of, arising from, relating to, or in connection with, any fact, matter, or transaction that occurred prior to the Agreement Date, including any fact, matter, transaction, or occurrence asserted by any HMIT Entity in the Pending Litigation or in connection with, relating to, or with respect to the Bankruptcy Case, the management or operation of any of the Highland Released Parties, or the Highland Released

001434
HCMLPHMIT00000865

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

Parties' property and including any defense, affirmative defenses, and right to setoff arising out of, or otherwise related to, any of the foregoing (collectively, the "**HMIT Entity Released Claims**").

10.    <u>General Release By The Highland Entities</u>. On the Bankruptcy Court Approval Date, and to the maximum extent permitted by law, each of the Highland Entities, on behalf of itself and each of its respective Affiliates (including Affiliated and/or managed funds, accounts and other investment vehicles) and its or their respective current and former advisors, consultants, administrators, trustees, directors, officers, managers, executives, members, partners (including limited and general partners), employees, beneficiaries, direct and indirect shareholders and other equity holders, agents, participants, direct and indirect subsidiaries and parents, successors, predecessors, designees, and assigns (whether by operation of law or otherwise) and all Persons claiming through, under or on their behalf (collectively with the Highland Entities, the "**Highland Releasors**") hereby forever, finally, fully, unconditionally, and completely releases, relieves, acquits, discharges, remises, and exonerates each HMIT Released Party from, and waives and relinquishes, any and all Claims which the Highland Releasors, or any Person claiming through, under, or on behalf of any of the Highland Releasors, ever had, now has, or hereafter can, shall, or may have against any of the HMIT Released Parties by reason of, arising from, relating to, or in connection with, any fact, matter, or transaction that occurred prior to the Bankruptcy Court Approval Date, including any fact, matter, transaction, or occurrence in connection with, relating to, or with respect to the Bankruptcy Case, the management or operation of any of the HMIT Released Parties, or the HMIT Released Parties' property and including any defense, affirmative defenses, and right to setoff arising out of, or otherwise related to, any of the foregoing (collectively, the "**Highland Released Claims**").

11.    <u>Further Provisions Concerning The General Releases</u>.

(a)    **FOR THE AVOIDANCE OF DOUBT, THE FOREGOING RELEASES ARE INTENDED TO BE GENERAL AND INCLUDE A RELEASE OF ALL RELEASED CLAIMS, WHETHER KNOWN OR UNKNOWN, SUSPECTED OR UNSUSPECTED, ARISING OR EXISTING FROM THE BEGINNING OF TIME THROUGH AND INCLUDING THE AGREEMENT DATE.**

(b)    To the maximum extent permitted by law, each of the HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, waives the benefit of any statute or other principle of law or equity that limits the applicability of a release with respect to Claims that the releasing party does not know or suspect to exist in his, her or its favor at the time of executing the release.

(c)    Without limiting the scope of the foregoing waiver, in connection with the foregoing release, each of the HMIT Entities and the Highland Entities, on its own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, waives the benefits of Section 1542 of the California Civil Code (to the extent, if any, that Section 1542 might apply to the foregoing release), which provides as follows:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT**

001435
HCMLPHMIT00000866

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

**TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

Each of the HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, hereby agrees that the provisions of Section 1542 of the Civil Code of the State of California and all similar federal or state law, rights, rules or legal principles, legal or equitable, in each case solely to the full extent such provisions apply, **ARE HEREBY KNOWINGLY AND VOLUNTARILY WAIVED AND RELINQUISHED BY EACH OF THE HMIT ENTITIES AND THE HIGHLAND ENTITIES**, **ON THEIR OWN BEHALF AND ON BEHALF OF THE OTHER HMIT RELEASORS AND HIGHLAND RELEASORS, RESPECTIVELY,** in each and every capacity, to the full extent that such rights and benefits pertaining to the matters released herein may be waived, and each of the HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, hereby agrees and acknowledges that this waiver and relinquishment is an essential term of this Agreement, without which the consideration provided would not have been given.

In connection with such waiver and relinquishment, each of the HMIT Entities and Highland Entities acknowledges that it is aware that it may hereafter discover Claims presently unknown or unsuspected, or facts in addition to or different from those which it now knows or believes to be true, with respect to the matters released herein. Nevertheless, it is the intent of each of the HMIT Entities and the Highland Entities, on its own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, in executing this Agreement fully, finally, and forever to settle and release all such matters, and all Claims related thereto, which exist, may exist or might have existed (whether or not previously or currently asserted in any action) which are the subject to the releases granted above.

(d)     As an integral component of this Agreement, and notwithstanding the Parties' intent set forth in the preamble hereto and the general nature of the releases in <u>Sections 9 and 10</u>, should:

(i)     any HMIT Releasor contend or assert that any Claim of any kind whatsoever held by any HMIT Releasor against any Highland Released Party survives this Agreement and is in any way related to or arising from or in connection with any HMIT Entity Released Claim (such claim or cause of action, a "**HMIT Alleged Claim**"), such HMIT Releasor will be deemed to have irrevocably, fully, and finally assigned such HMIT Alleged Claim to the Highland Entities and the Highland Entities will be deemed to have forever, finally, full, unconditionally, and irrevocably, and completely released such HMIT Alleged Claim.

(ii)     any Highland Releasor contend or assert that any Claim of any kind whatsoever held by any Highland Releasor against any HMIT Released Party survives this Agreement and is in any way related to or arising from or in connection with any Highland Entity Released Claim (such claim or cause of action, a "**Highland Alleged Claim**"), such Highland Releasor will be deemed to have irrevocably, fully, and finally assigned such Highland Alleged

001436

HCMLPHMIT00000867

Claim to the HMIT Entities and the HMIT Entities will be deemed to have forever, finally, full, unconditionally, and irrevocably, and completely released such Highland Alleged Claim.

12.    <u>Covenant Not To Sue; Limitation on Standing</u>. Upon the Agreement Date:

(a)    Each of the HMIT Releasors covenants and agrees that it will not institute or prosecute any Action, in law, in equity or otherwise, against any of the Highland Released Parties, to recover, enforce, investigate, or collect any HMIT Entity Released Claim and will not (i) induce, encourage or direct any other Person to do so or (ii) act in concert with or assist (financially or otherwise) any other Person in doing so.

(b)    Each of the Highland Releasors covenants and agrees that it will not institute or prosecute any Action, in law, in equity or otherwise, against any of the HMIT Released Parties, to recover, enforce, investigate, or collect any Highland Entity Released Claim and will not (i) induce, encourage or direct any other Person to do so or (ii) act in concert with or assist (financially or otherwise) any other Person in doing so.

(c)    For the avoidance of doubt, this Agreement shall not operate to give any HMIT Entity standing for any purpose in connection with the Bankruptcy Case (or in connection with any appeal arising from any order entered by the Bankruptcy Court), except for the limited purpose of seeking Court approval of this Agreement (including with respect to any appeal concerning any order entered granting or denying such approval), and except for the limited purpose of enforcing this Agreement, no HMIT Entity shall commence any Action in connection with the HMIT Class 10 Interest.

13.    <u>Representations and Warranties</u>.

(a)    Each of the HMIT Entities hereby represents and warrants that every HMIT Entity Released Claim has not heretofore been assigned or encumbered and is not the subject of a transfer (as such term is defined in 11 U.S.C. § 101(54)), by any HMIT Releasor.

(b)    The HMIT Entities, on their own behalf and on behalf of the other HMIT Releasors, acknowledge and agree that each Plan Provision is lawful, effective, and binding on the HMIT Releasors.  The HMIT Entities further agree, on their own behalf and on behalf of the other HMIT Releasors, that the HMIT Releasors will never, in any way, challenge or seek to modify, nullify, vacate, or revoke, or induce, encourage or direct any other Person to do so or act in concert with or assist (financially or otherwise) any other Person in doing so the Confirmation Order, the Plan, the Plan Protections, or any Plan Document, including the Claimant Trust Agreement, the LPA, the Indemnity Trust Agreement or the Litigation Sub-Trust Agreement, in the Bankruptcy Court, in any other state or federal court, in any other forum or tribunal, or otherwise, including administrative or regulatory tribunals and foreign courts.

(c)    Each of the Highland Entities hereby represents and warrants that every Highland Entity Released Claim has not heretofore been assigned or encumbered and is not the subject of a transfer (as such term is defined in 11 U.S.C. § 101(54)), by any Highland Releasor.

(d)    Each Party severally represents and warrants as to itself only that: (i) it has taken all necessary action to authorize and approve the execution, delivery and performance of this

001437

HCMLPHMIT00000868

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

Agreement; (ii) such Party has full power and authority to execute and deliver this Agreement; and (iii) this Agreement constitutes a valid, legal and binding obligation of such Party, and is enforceable subject to its terms. Each individual signatory hereto individually warrants and represents to all Parties hereto that such individual has full power and authority to act on behalf of and bind the Party for which he or she has executed this Agreement; provided, however that no signatory shall otherwise provide any warranty or representation or otherwise be a party to this Agreement on an individual basis.

14.    No Continuing Rights, Duties or Obligations.  Except for the rights, duties, and obligations expressly set forth in this Agreement, all Rights and Obligations that existed or may have existed shall be deemed terminated, extinguished, and released upon the Agreement Date. For the avoidance of doubt, from and after the Agreement Date, (a) the Highland Released Parties, individually and collectively, shall owe no duty, past or present, including with respect to the Kirchner Claims, to the HMIT Released Parties, individually and collectively, whether contractual, fiduciary, equitable, statutory or otherwise, except as arising out of this Agreement, and (b) the HMIT Released Parties, individually and collectively, shall owe no duty to the Highland Released Parties, individually and collectively, whether contractual, fiduciary, equitable, statutory or otherwise, except as arising out of this Agreement.

15.    Gatekeeper Standard.

(a)    The HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, acknowledge and agree that, notwithstanding the United States Court of Appeals for the Fifth Circuit's decision in *Highland Capital Management Fund Advisors, L.P. v. Highland Capital Management, L.P.*, No. 23-10534 (5th Cir. Mar. 18, 2025), the "Gatekeeper" provisions contained in Highland's Original Plan is forever binding on each of the HMIT Entities and any Persons claiming through, under or on behalf of any of them, and for a claim or cause of action to be  "colorable" for purposes of the Gatekeeper, it must be found by final order of the Bankruptcy Court (the "**Gatekeeper Court**"), which order shall be subject to appeal to a court of competent jurisdiction, to have satisfied the "Gatekeeper Colorability Test" as such term is defined in *In re Highland Capital Management, L.P.*, 2023 Bankr. LEXIS 2104 at *124-36 (Bankr. N.D. Tex. Aug. 24, 2023).

(b)    The HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, acknowledge and agree that compliance with the Gatekeeper requires (i) a motion seeking leave to sue an Exculpated Party (as that term is defined in Highland's original Plan) and a finding that the litigant's claims and causes of action are "colorable" attaching a complaint setting forth the basis for such claims or causes of action and (ii), in the Gatekeeper Court's sole discretion, an evidentiary hearing (during which the Gatekeeper Court may, among other things, hear testimony and assess the credibility of any witness(es)) to determine whether a proposed claim or cause of action is "colorable."

(c)    The HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, further acknowledge and agree that the moving party under the Gatekeeper has the burden of satisfying the "Gatekeeper Colorability Test," and that the dismissal of the Pending Litigation shall have res judicata effect.

001438

HCMLPHMIT00000869

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

16.    Indemnification.

(a)    Without in any manner limiting the available remedies for any breach of this Agreement, the HMIT Entities, severally but not jointly, agree to indemnify, defend, and hold the Highland Released Parties harmless from and against any and all Liability, that may arise or result from or on account of, or that are otherwise related or attributable to (x) any breach of this Agreement or of any representation or warranty contained in the Agreement, including the representations and warranties of any HMIT Entity set forth in Section 13 or (y) any Actions brought or prosecuted by or on behalf of, any HMIT Releasor or that are induced, encouraged, assisted  or directed by any HMIT Releasor or brought or prosecuted in concert with any HMIT Releasor against any Highland Released Party with respect to or related to any HMIT Entity Released Claims.  Without limiting the scope of the foregoing in any manner, any HMIT Entity that breaches Section 12 shall be liable to the Highland Released Party against whom the applicable Action has been brought or prosecuted in violation of Section 12 for the reasonable attorneys' fees and costs incurred by such Highland Released Party in defending against or otherwise responding to such Action.  Each HMIT Entity acknowledges and agrees that the HMIT Entities are and shall be severally but not jointly liable for any Liability arising from or out of any breach of this Agreement or of any representation or warranty set forth in this Agreement.

(b)    Without in any manner limiting the available remedies for any breach of this Agreement, the Highland Entities, severally but not jointly, agree to indemnify, defend, and hold the HMIT Released Parties harmless from and against any and all Liability, that may arise or result from or on account of, or that are otherwise related or attributable to (x) any breach of this Agreement or of any representation or warranty contained in the Agreement, including the representations and warranties of any Highland Entity set forth in Section 13 or (y) any suits, proceedings, or other actions brought or prosecuted by or on behalf of, any Highland Releasor or that are induced, encouraged, assisted  or directed by any Highland Releasor or brought or prosecuted in concert with any Highland Releasor against any HMIT Released Party with respect to or related to any Highland Entity Released Claims.  Without in any manner limiting the scope of the foregoing, any Highland Entity that breaches Section 12 shall be liable to the HMIT Released Party against whom the applicable Action has been brought or prosecuted in violation of Section 12 for the reasonable attorneys' fees and costs incurred by such HMIT Released Party in defending against or otherwise responding to such Action.  Each Highland Entity acknowledges and agrees that the Highland Entities are and shall be severally but not jointly liable for any Liability arising from or out of any breach of this Agreement or of any representation or warranty set forth in this Agreement.

17.    Execution.  This Agreement may be executed by the exchange of signatures by facsimile or by PDF attachment to an email transmittal and in counterparts, and if so executed, shall be fully executed when a counterpart has been executed and delivered by all Parties hereto through counsel.  All counterparts taken together shall constitute one and the same agreement and shall be fully enforceable as such.

18.    Bankruptcy Court Order.  The allowance of the allowed HMIT Class 10 Interest pursuant to Section 4 is subject to the entry of the Bankruptcy Court Order.  To that end, the Highland Entities shall file the 9019 Motion no later than five (5) Business Days after the Agreement Date.  Each Party shall, and shall cause each of their respective Affiliates to, undertake

001439
HCMLPHMIT00000870

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

any and all actions in compliance with applicable law to obtain the Bankruptcy Court Order as promptly as practicable, and without limiting the foregoing, if an Action is threatened or instituted by any Person opposing the 9019 Motion or otherwise challenging the validity or legality, or seeking to restrain the consummation, of the transactions contemplated by this Agreement or the Bankruptcy Court Order, each Party shall, and shall cause its respective Affiliates to, use their commercially reasonable best efforts to avoid, resist, resolve or, if necessary, and defend to effectuate this Agreement and consummate the transactions hereby.  If the 9019 Motion is not approved by entry of the Bankruptcy Court Order or if the Bankruptcy Court Approval is precluded from becoming a Final Order, (a) there will be no affect on, adjustment to, or impairment of, in any way, the validity and enforceability of the remainder of this Agreement, and the other transactions contemplated hereby, all of which shall remain in full force and effect and (b) each Party shall, and shall cause its respective Affiliates to, use their best efforts to seek the allowance of the HMIT Class 10 Interest in a substantially similar amount and on substantially similar terms as set forth in Section 4 to the fullest extent possible so as to give effect to the original intent of the Parties as closely as possible.

19.    Fees and Expenses.  Whether or not the transactions contemplated hereby are consummated or the Bankruptcy Court Order is obtained, and except as otherwise expressly provided in this Agreement, each Party will bear its respective fees, costs and expenses (including legal, accounting and other professional fees) incurred in connection with the preparation, negotiation, execution and performance of this Agreement or the transactions contemplated hereby, including with respect to each Party's respective obligations pursuant to Section 18. Notwithstanding the foregoing, if any Party hereto brings an Action to enforce or interpret the terms and provisions of this Agreement, the prevailing Party in that Action shall be entitled to have and recover from the non-prevailing Party all such fees, costs and expenses (including all court costs and reasonable attorneys' fees) as the prevailing Party may suffer or incur in the pursuit or defense of such action or proceeding.

20.    Entire Agreement; No Other Representations.  **THIS AGREEMENT CONTAINS THE ENTIRE AGREEMENT BETWEEN THE PARTIES, AND NO RIGHTS ARE CREATED IN FAVOR OF ANY PERSON OTHER THAN AS SPECIFIED OR EXPRESSLY SET FORTH IN THIS AGREEMENT.  THERE ARE NO REPRESENTATIONS, CONDITIONS, WARRANTIES, STATEMENTS, OR UNDERSTANDINGS (COLLECTIVELY, "REPRESENTATIONS") , EITHER ORAL OR WRITTEN, BETWEEN THE PARTIES OTHER THAN THOSE EXPRESSLY SET FORTH IN THIS AGREEMENT.  THE PARTIES EXPRESSLY AGREE THAT THEY HAVE NOT BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY ANY REPRESENTATIONS NOT SET FORTH IN THIS AGREEMENT; AND THE PARTIES EXPRESSLY AGREE THAT THEY HAVE NOT RELIED ON ANY REPRESENTATIONS NOT EXPRESSLY SET FORTH IN THIS AGREEMENT. THE PARTIES EXPRESSLY AGREE THAT THEY ARE ENTERING INTO THIS AGREEMENT RELYING SOLELY ON THEIR OWN JUDGMENT AND NOT ON ANY REPRESENTATIONS BY ANY PARTY, EXCEPT FOR THOSE REPRESENTATIONS EXPRESSLY SET FORTH IN THIS AGREEMENT.  THE PARTIES AGREE THAT REPRESENTATIONS NOT EXPRESSLY SET FORTH IN THIS AGREEMENT SHALL NOT BE USED IN THE INTERPRETATION OR CONSTRUCTION OF THIS AGREEMENT, AND NEITHER THE HMIT RELEASED PARTIES NOR THE**

001440
HCMLPHMIT00000871

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

**HIGHLAND RELEASED PARTIES SHALL HAVE ANY LIABILITY FOR ANY CONSEQUENCES ARISING AS A RESULT OF ANY REPRESENTATIONS NOT SET FORTH IN THIS AGREEMENT**.

21.     <u>Agreement and Release Knowing and Voluntary</u>.  The Parties acknowledge that they have considered this Agreement with their respective attorneys and have carefully read this Agreement, that it has been fully explained by their attorneys, and that they have had a reasonable opportunity to consider this Agreement.  The Parties further represent that they know and fully understand the contents of this Agreement, that they intend to be legally bound by this Agreement and the releases and covenants contained herein, and that they are signing this Agreement, including the release provisions herein, voluntarily and of their own free will and without coercion, and with the benefit of advice of counsel.

22.     <u>Cooperation</u>.  The Parties agree to perform any services or actions reasonably necessary to carry out the terms and conditions of this Agreement or the transactions contemplated hereby, including the execution and delivery of reasonable additional documents, instruments, conveyances and/or assurances, in good faith, and to reasonably communicate and cooperate with one another in this regard.  For the avoidance of doubt, nothing in this Section shall obligate the Highland Entities to assist the HMIT Entities in any way with respect to the Kirschner Claims, including the prosecution thereof.

23.     <u>Governing Law</u>.  This Agreement shall be construed pursuant to and governed by the laws of the State of Delaware (substantive and procedural) without reference to principles of conflicts of law that would result in the application of any other State's laws.

24.     <u>Jurisdiction/Venue</u>.  The Parties hereby irrevocably submit to the jurisdiction and venue of the Bankruptcy Court with respect to any Action arising out of or related to this Agreement or the subject matter hereof; if (and only if) the Bankruptcy Court lacks personal or subject matter jurisdiction to adjudicate an Action arising out of or related to this Agreement or the subject matter hereof, then the Parties irrevocably submit to the jurisdiction and venue of the United States District Court for the Northern District of Texas.

25.     <u>No Admissions</u>.  All Parties acknowledge and agree that the matters set forth in this Agreement constitute the settlement and compromise of disputed Claims and that this Agreement shall not constitute the admission of any fact or liability by any of them regarding any Claim, including the Claims released hereunder, and neither the terms hereof, nor the fact of this Agreement itself, shall be evidence of any kind in any Action, other than an Action to enforce the terms of the Agreement or any instrument executed in connection herewith or any claim for damages or other relief for breach of any representation or warranty contained herein or in any instrument executed in connection herewith.

26.     <u>Other Provisions</u>.

(a)     No representation, inducement, agreement, promise or understandings altering, modifying, amending, taking from or adding to, the terms and conditions hereof shall have any force or effect unless the same is in writing and validly executed by each of the Parties hereto.

001441

HCMLPHMIT00000872

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

(b)    The waiver by any Party of any breach of, or default under, any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach or default; provided, however, that for any such waiver to be enforceable, it shall be in writing and executed by the non-breaching Party.

(c)    The headings contained in this Agreement are for convenience only and shall in no way restrict or otherwise affect the construction of the provisions hereof.

(d)    The Parties shall each execute all documents and perform all acts necessary and proper to effectuate the terms of this Agreement.

27.    <u>Notices</u>.  All notices required or permitted to be provided hereunder shall be afforded to the respective parties to and through their counsel, and shall be transmitted simultaneously by electronic mail (with PDF attachments, as necessary) and by telefax, addressed as follows:

To the Highland Entities:

**PACHULSKI STANG ZIEHL AND JONES LLP**
Jeffrey N. Pomerantz
John A. Morris
10100 Santa Monica Boulevard
Los Angeles, California 90067-4003
310.277.6910
jpomerantz@pszjlaw.com
jmorris@pszjlaw.com

To the HMIT Entities:

**KELLY HART PITRE**
Louis M. Phillips
Amelia Hurt
301 Main Street, Suite 1600
225.381.9643
Louis.Phillips@Kellyhart.com
Amelia.Hurt@Kellyhart.com

28.    <u>Severability</u>. Should any term, provision or paragraph of this Agreement be determined to be illegal or void or of no force and effect, the balance of the Agreement shall survive.  The invalidity or unenforceability of any provision of this Agreement shall not affect the validity and enforceability of any other provision of this Agreement.

29.    <u>Interpretive Provisions</u>. Unless the express context otherwise requires: (a) the words "hereof," "herein" and "hereunder" and words of similar import, when used in this Agreement, shall refer to this Agreement as a whole and not to any particular provision of this Agreement; (b) words defined in the singular shall have a comparable meaning when used in the plural, and vice versa; (c) the words "Dollars" and "$" mean U.S. dollars; (d) references herein to

001442
HCMLPHMIT00000873

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

a specific Section, Subsection, Recital, Schedule or Exhibit shall refer, respectively, to Sections, Subsections, Recitals, Schedules or Exhibits of this Agreement; (e) wherever the word "include," "includes" or "including" is used in this Agreement, it shall be deemed to be followed by the words ",without limitation,"; (f) references herein to any gender shall include each other gender; (g) references herein to any Person shall include such Person's heirs, executors, personal representatives, administrators, successors and assigns; provided, however, that nothing contained in this clause (g) is intended to authorize any assignment or transfer not otherwise permitted by this Agreement; (h) with respect to the determination of any period of time, the word "from" means "from and including" and the words "to" and "until" each means "to but excluding"; (i) the word "or" shall be disjunctive but not exclusive; (j) the headings contained in this Agreement are intended solely for convenience and shall not affect the rights of the Parties; and (k) if the last day for the giving of any notice or the performance of any act required or permitted under this Agreement is a day that is not a Business Day, then the time for the giving of such notice or the performance of such action shall be extended to the next succeeding Business Day.

[*Signature page follows*]

001443
HCMLPHMIT00000874

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first written above.

**HUNTER MOUNTAIN INVESTMENT TRUST**

By _____
    Name:    Mark Patrick
    Title:    Administrator
    Date:    May __, 2025

**BEACON MOUNTAIN LLC**

By _____
    Name:
    Title:
    Date:    May __, 2025

**RAND ADVISORS, LLC**

By _____
    Name:    Mark Patrick
    Title:    President
    Date:    May __, 2025

**RAND PE FUND I, LP**
By: Rand PE Fund Management, LLC, its General Partner

By _____
    Name:    Mark Patrick
    Title:    President
    Date:    May __, 2025

**RAND PE FUND MANAGEMENT, LLC**

By _____
    Name:    Mark Patrick
    Title:    President

SIGNATURE PAGE TO SETTLEMENT AGREEMENT & GENERAL RELEASE

HCMLPHMIT00000875

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

Date:        May __, 2025

**ATLAS IDF, LP**
By: Atlas IDF GP, LLC, its General Partner


By  _____
     Name:        Mark Patrick
     Title:        President
     Date:        May __, 2025

**ATLAS IDF GP, LLC**


By  _____
     Name:        Mark Patrick
     Title:        President
     Date:        May __, 2025


**HIGHLAND CAPITAL MANAGEMENT, L.P.**


By  _____
     Name:        James. P. Seery, Jr.
     Title:        Chief Executive Officer
     Date:        May __, 2025


**HIGHLAND CLAIMANT TRUST**


By  _____
     Name:        James P. Seery, Jr.
     Title:        Claimant Trustee
     Date:        May __, 2025

**HIGHLAND LITIGATION SUB-TRUST**


By  _____
     Name:        Marc S. Kirschner
     Title:        Litigation Trustee


SIGNATURE PAGE TO SETTLEMENT AGREEMENT & GENERAL RELEASE

001445

HCMLPHMIT00000876

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

Date:        May __, 2025

**HIGHLAND INDEMNITY TRUST**

By    _____
      Name:      James P. Seery, Jr.
      Title:     Indemnity Trust Administrator
      Date:      May __, 2025

SIGNATURE PAGE TO SETTLEMENT AGREEMENT & GENERAL RELEASE

001446

HCMLPHMIT00000877

**EXHIBIT**

001447

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**To:** David Klos <DKlos@HighlandCapital.com>
**Subject:** Accepted: Confidential discussion - subject to Rule 408 and Confidentiality Agreement
**Date:** Thu, 17 Apr 2025 18:05:44 +0000
**Importance:** Normal
**Attachments:** unnamed

HCMLPHMIT00000947

**EXHIBIT**

001449

**From:** David Klos <DKlos@HighlandCapital.com>
**To:** Jim Seery <jpseeryjr@gmail.com>, Tim Cournoyer <TCournoyer@HighlandCapital.com>, Kristin Hendrix <KHendrix@HighlandCapital.com>, "John A. Morris" <jmorris@pszjlaw.com>, Jeff Pomerantz <jpomerantz@pszjlaw.com>, "Gregory V. Demo" <GDemo@pszjlaw.com>, Mark Patrick <mpatrick@dafholdco.com>, Shawn Raver <sraver@dafholdco.com>, "paul@gkmanagement.com.ky" <paul@gkmanagement.com.ky>, "Louis.Phillips@kellyhart.com" <Louis.Phillips@kellyhart.com>, "amelia.hurt@kellyhart.com" <amelia.hurt@kellyhart.com>
**Subject:** Confidential discussion - subject to Rule 408 and Confidentiality Agreement
**Date:** Mon, 7 Apr 2025 19:08:47 +0000
**Importance:** Normal
**Attachments:** unnamed

---

For in-person attendees:

**Location: 100 Crescent Court, Suite 1850, Dallas, TX 75201**

Physical directions for in-person attendees: Take the elevator bank in the "100 building" to Floor 17; then exit and find the small single elevator located around the corner, which will take you to Floor 18; then ring the doorbell at the Highland suite, which can be found around the corner from the elevator.

---

# Microsoft Teams Need help?

## Join the meeting now

Meeting ID: 215 023 216 231

Passcode: Qj7fS3Zb

---

**Dial in by phone**

+1 469-844-8017,,386721907# United States, Dallas

Find a local number

Phone conference ID: 386 721 907#

For organizers: Meeting options | Reset dial-in PIN

---

DISCLAIMER- This email is intended for the recipient(s) only and should not be copied or reproduced without explicit permission. The material provided herein is for informational purposes only and does not constitute an offer or commitment, a solicitation of an offer, or any advice or recommendation, to enter into or conclude any transaction. It may contain confidential, proprietary or legally privileged information. If you receive this message in error, please immediately delete it.

EXHIBIT  2

001451

**Event:** Confidential discussion - subject to Rule 408 and Confidentiality Agreement

**Start Date:** 2025-04-08 15:30:00 +0000

**End Date:** 2025-04-08 17:30:00 +0000

**Organizer:** David Klos <DKlos@HighlandCapital.com>

**Location:** Microsoft Teams Meeting

**Class:** X-PERSONAL

**Date Created:** 2025-06-12 16:05:40 +0000

**Date Modified:** 2025-06-12 16:05:40 +0000

**Priority:** 5

**DTSTAMP:** 2025-04-07 19:08:45 +0000

**Attendee:** Jim Seery <jpseeryjr@gmail.com>; Tim Cournoyer <TCournoyer@HighlandCapital.com>; Kristin Hendrix <KHendrix@HighlandCapital.com>; John A. Morris <jmorris@pszjlaw.com>; Jeff Pomerantz <jpomerantz@pszjlaw.com>; Gregory V. Demo <GDemo@pszjlaw.com>; Mark Patrick <mpatrick@dafholdco.com>; Shawn Raver <sraver@dafholdco.com>; paul@gkmanagement.com.ky <paul@gkmanagement.com.ky>; Louis.Phillips@kellyhart.com <Louis.Phillips@kellyhart.com>; amelia.hurt@kellyhart.com <amelia.hurt@kellyhart.com>

**Alarm:** Display the following message 15m before start

| Reminder

For in-person attendees:

**Location: 100 Crescent Court, Suite 1850, Dallas, TX 75201**

Physical directions for in-person attendees: Take the elevator bank in the "100 building" to Floor 17; then exit and find the small single elevator located around the corner, which will take you to Floor 18; then ring the doorbell at the Highland suite, which can be found around the corner from the elevator.

_____

# Microsoft Teams  Need help?

001452

HCMLPHMIT00000950

## Join the meeting now

Meeting ID: 215 023 216 231

Passcode: Qj7fS3Zb

---

### Dial in by phone

+1 469-844-8017,,386721907# United States, Dallas

Find a local number

Phone conference ID: 386 721 907#

For organizers: Meeting options | Reset dial-in PIN

---

DISCLAIMER- This email is intended for the recipient(s) only and should not be copied or reproduced without explicit permission. The material provided herein is for informational purposes only and does not constitute an offer or commitment, a solicitation of an offer, or any advice or recommendation, to enter into or conclude any transaction. It may contain confidential, proprietary or legally privileged information. If you receive this message in error, please immediately delete it.

**EXHIBIT 3**

001454

**From:** David Klos <DKlos@HighlandCapital.com>
**To:** Jim Shields <jshields@shieldslegal.com>
**Cc:** "John A. Morris" <jmorris@pszjlaw.com>, Jim Seery <jpseeryjr@gmail.com>, "Louis.Phillips@kellyhart.com" <Louis.Phillips@kellyhart.com>
**Subject:** Confidential - Subject to Rule 408 and Confidentiality Agreement
**Date:** Tue, 22 Apr 2025 16:20:33 +0000
**Importance:** Normal
**Attachments:** Privileged_and_confidential_-_DRAFT_4.8.25_discussion_materials.pdf; PRIVILEGED_AND_CONFIDENTIAL_DRAFT_SETTLEMENT_STRUCTURE_CLEAN_4.16.25.pdf; Privileged_and_Confidential_-_Indemnity_Trust_2025-4-16_Draft.pdf
**Inline-Images:** image001.jpg

---

Jim,

It was nice meeting you virtually this morning.  As a follow-up to our discussion, I understand the attached materials have already been provided to Louis, but I am re-sending this subset to you as well as I understand he's heading out of the country soon.

Attached are:

1. Discussion materials from April 8 meeting (<u>the projected budget build-up can be found on p. 4</u>)
2. Clean draft of settlement structure
3. Illustrative sources and uses of timing/amounts of potential future Indemnity Trust payouts

If you have other follow-ups or clarifications needed, feel free to reach out to John, Jim, or me.

Thank you,

-Dave

**DAVID KLOS**



100 Crescent Court  |  Suite 1850  |  Dallas, Texas 75201
C: 214.674.2926  |  O: 972.419.4478  |  F: 972.628.4147
<u>dklos@highlandcapital.com</u>  |  <u>www.highlandcapital.com</u>

---

DISCLAIMER- This email is intended for the recipient(s) only and should not be copied or reproduced without explicit permission. The material provided herein is for informational purposes only and does not constitute an offer or commitment, a solicitation of an offer, or any advice or recommendation, to enter into or conclude any transaction. It may contain confidential, proprietary or legally privileged information. If you receive this message in error, please immediately delete it.

REVISED DRAFT

**PRIVILEGED AND CONFIDENTIAL ATTORNEY CLIENT COMMUNICATON**

**PREPARED AT THE DIRECTION OF COUNSEL IN CONNECTION WITH EXISTING LITIGATION AND IN ANTICIPATION OF FUTURE LITIGATION**

**PROTECTED BY FRE 408 AND SIMILAR STATE LAW PROTECTIONS. PROVIDED PURSUANT TO NDA**

**April 15, 2025**

DRAFT Potential Settlement Structure with DAF and HMIT

**HMIT**

- **Settlement of remanded motion to sue** – HCMLP, the Claimant Trust, and HMIT settle existing motion to sue and all other claims with prejudice for a cash payment of [$500k]
- **Allowance of claim** - HCMLP to allow HMIT Class 10 interest in the amount of ~$337mm (calculated as ~$395mm Petition Date capital account, less ~$58mm P&I outstanding on HMIT note as of Petition Date) subject to:
  - o  The HMIT allowed Class 10 interest is not transferable
  - o  HMIT releases all claims and accepts the "Litigation Protections" – see separate document containing the releases and other required provisions – which eliminate claims and limit the Class 10 allowed interest
  - o  LT releases HMIT from all other claims in the LT litigation and otherwise
  - o  LT transfers to holders of allowed Class 10 interests all remaining LT litigation (after HMIT and DAF/CLO Holdco releases) "as-is, where-is" along with all documents produced in the LT case to date
    - ▪  Such causes of action are limited to the currently stayed litigation and other causes of action that may exist related to former employees Ellington and Leventon
    - ▪  If for any reason the transfer of the LT litigation is nullified, the settlement will not be affected
  - o  Complete cessation and withdrawal of any other litigation among the parties
  - o  Class 10 remains senior to Class 11 as required by the Plan
- **Court Approval –** Settlement and allowance of Class 10 Claim subject to approval of the Bankruptcy Court

**DAF**

- **Settlement of DAF Claims** – HCMLP, the Claimant Trust, and DAF/CLO Holdco settle all claims underlying the current Fifth Circuit appeal and all other claims with

001456

**REVISED DRAFT**

prejudice for a cash payment of $[2mm] within [10] business days of execution of the settlement; the Fifth Circuit appeal will be dismissed with prejudice within [10] business days of execution of the settlement

- o  HCMLP will purchase DAF's right to distribution from HCLOF related to Acis 6, as is - where is, without representation except for unencumbered ownership, for $[3mm] cash, to be paid within [10] business days of execution of the settlement; DAF releases HCLOF from any claims related to Acis 6 distributions
- o  DAF/CLO Holdco release all claims and accept the "Litigation Protections" – see separate document containing the releases and other required provisions
- o  LT releases DAF/CLO Holdco from all other claims in the LT litigation and otherwise
- o  Complete cessation and withdrawal of any other litigation among the parties
- o  Settlement will be filed with the Bankruptcy Court and "so ordered"

**Distributions**

- **Initial Interim Cash Distributions** – Within [91] days of the receipt of a final/non-appealable order not subject to certiorari:
  - o  The Indemnity Trust will distribute $[10]mm cash directly to Class 9 Claimant Trust Beneficiaries in accordance with the waterfall and the Indemnity Trust Agreement
  - o  [Subject to Class 9 Approval], the Indemnity Trust will distribute $[10]mm cash directly to holders of allowed Class 10 interests
    - ▪  On approval of the settlement by the Bankruptcy Court, the Indemnity Trust will set up a separate $[10]mm reserve for the Initial Interim Cash Distribution which reserve will be held in UST on the same terms as other Indemnity Trust holdings pending distribution to Class 10 interest holders or reversal/remand of the settlement
    - ▪  Any payments on the Dugaboy Note from the date of Bankruptcy Court approval of the settlement to the date of the Initial Interim Cash Distributions will be held by the Indemnity Trust in a separate account and also be paid to holders of allowed Class 10 interests
      - • The actual dollar amount of any such P+I payments paid will reduce the Class 10 interests outstanding

001457

HCMLPHMIT00000989

**REVISED DRAFT**

- **Subsequent Distribution(s)** - Following the Initial Interim Cash Distributions, most, if not all remaining assets will be held by the Indemnity Trust, except for potentially the Disputed Claims Reserve (if the pending claim is not fully resolved) and cash at the Claimant Trust and HCMLP (indirectly owned by the Indemnity Trust) to be used in the wind-down of those entities with any excess amounts contributed/distributed to the Indemnity Trust
    - On April 1, 2028, if no threats, demands, or litigations have been brought against the Indemnity Trust or its beneficiaries:
        - The Indemnity Trust will distribute ~$[11]mm cash directly to Class 9 Claimant Trust Beneficiaries in accordance with the waterfall and the Indemnity Trust Agreement, satisfying the remainder of the Class 9 interests outstanding
        - The Indemnity Trust will distribute $[5]mm cash directly to holders of allowed Class 10 interests
        - Note Cash or In-Kind Distribution – At the election of HMIT, the Indemnity Trust will either (a) sell the currently $[17.6]mm face value (P+I) promissory note receivable from Dugaboy Investment Trust to HCMLP that has been irrevocably participated (and may be assigned if it defaults) to the Indemnity Trust (the "Dugaboy Note") and distribute the net proceeds (plus all P+I payments on the Dugaboy Note from the Interim Cash Distribution Date to April 1, 2028) to holders of allowed Class 10 interests or (b) assign the Dugaboy Note directly to holders of allowed Class 10 interests
            - For purposes of tracking progress toward the ~$337mm Class 10 interest:
                - if the Dugaboy Note is sold, the distribution will be valued at the amount of cash distributed;
                - if the Dugaboy Note is distributed in kind, the distribution will be valued at fair market value as determined by the Indemnity Trust Administrator
            - Assumes the Dugaboy Note continues to perform; if there is a default prior to April 1, 2028, the Indemnity Trust will accelerate the Dugaboy Note and pursue full collection plus cost of collection
                - If distribution of the Dugaboy Note is to be effected on April 1, 2028 and collection litigation has been commenced, at its election, holders of allowed Class 10 interests can receive, the collected balance or the

HCMLPHMIT00000990

litigation or elect to have the Indemnity Trust continue the litigation and subsequently pay the proceeds to holders of allowed Class 10 interests

- o As it pertains to the Disputed Claims Reserve, Highland will object to the Daugherty tax POC (final remaining pending claim). Following a final non-appealable order resolving the claim, any remaining funds will be distributed to Class 9 or, if Class 9 has been paid in full, to holders of allowed Class 10 interests

- **"Final Distribution"** - After April 1, 2029, if no threats, demands, or litigations have been brought against beneficiaries of the Indemnity Trust and all statutes of limitation (SOLs) and any potentially applicable tolling thereof have expired, at the Indemnity Trust Administrator's sole discretion, any excess remaining funds in the Indemnity Trust shall be paid out in accordance with the Plan and the Indemnity Trust Agreement (i.e. to holders of allowed Class 10 interests, up to allowed amounts) in conjunction with the dissolution, wind down and cancellation of the Indemnity Trust
  - o The Indemnity Trust Administrator will consult with [Mark Patrick] regarding potentially applicable SOLs and tolling

- **Other**
  - o **Extension of Claimant Trust –** A one-year extension for the Claimant Trust will be sought in the bankruptcy court. During the 1-year extension period, the Claimant Trust will be placed into dissolution and begin its winding up.
    - ▪ The Indemnity Trust will covenant not to transfer any funds to the Claimant Trust following the date of final non-appealable approval of the HMIT settlement
  - o **HCMLP wind down –** the remaining unliquidated assets of the estate, including HCMLP, itself, will be retained within the Indemnity Trust and will be liquidated.
    - ▪ HCMLP personnel will complete the liquidation, dissolution, cancellation, tax compliance, and any other winding up activities for the remaining entities under its purview, including HCMLP.
    - ▪ Any excess amounts remaining at cancellation of HCMLP will be distributed to the Indemnity Trust.

001459

- The Indemnity Trust will covenant not to transfer any funds to HCMLP following the date of final non-appealable approval of the HMIT settlement
  - HCMLP will have a funding agreement with the Claimant Trust to assure that the Claimant Trust has sufficient funds to complete its wind-down
  - Any excess funds in the Claimant Trust at its cancellation will be contributed to the Indemnity Trust; excess funds at HMLP will be distributed to the Indemnity Trust
- **HCMLP and its general partner –** While HCMLP will be placed into dissolution, the entity will continue to survive during its winding up period, during which time it may continue to defend inbound litigation, prosecute outbound litigation, maintain its books and records, and monetize its remaining assets.  HCMLP's general partner will be dissolved, wound-down and cancelled along with HCMLP
- **Claimant Trust Oversight Board –** Subject to the Plan and Claimant Trust agreement, it is anticipated that the members of the Oversight Board will continue in their existing roles until the final/non-appealable order approving the HMIT settlement is received
- **Information rights to HMIT –** After Bankruptcy Court approval of the HMIT settlement, per the Claimant Trust Agreement, except that:
  - HCMLP will review forecasted expenses with [Mark Patrick] at his request, but not more often than quarterly, and will work in good faith to reduce expenses where possible
- **Approval rights –** None, other than as specified elsewhere
- **Duties to HMIT –** None before or after vesting/Bankruptcy Court approval of the HMIT settlement
- **Compensation –** CEO and employee compensation remains governed by existing agreements with the oversight of the Claimant Trust Oversight Board; following the vesting of HMIT's interests, no changes will be permitted to those agreements without HMIT written consent; CEO maintains ability to maintain or reduce headcount in his absolute discretion

DRAFT – SUBJECT TO CONFIDENTIALITY AGREEMENT

HCMLPHMIT00000992

PRIVILEGED AND CONFIDENTIAL ATTORNEY CLIENT COMMUNICATON

PREPARED AT THE DIRECTION OF COUNSEL IN CONNECTION WITH EXISTING LITIGATION AND IN ANTICIPATION OF FUTURE LITIGATION

PROTECTED BY FRE 408 AND SIMILAR STATE LAW PROTECTIONS.  PROVIDED PURSUANT TO NDA

# ILLUSTRATIVE HIGHLAND INDEMNITY TRUST PAYOUT SCHEDULE

EXPERIENCED. DISCIPLINED. **BOLD.**

HIGHLAND CAPITAL
M A N A G E M E N T

001461

HCMLPHMIT00000993



HIGHLAND INDEMNITY TRUST

PRIVILEGED AND CONFIDENTIAL.  ILLUSTRATIVE EXAMPLE.  PREPARED AT THE DIRECTION OF COUNSEL IN CONNECTION WITH LITIGATION AND IN ANTICIPATION OF FUTURE LITIGATION.PROTECTED BY FRE 408 AND SIMILAR STATE LAW PROTECTIONS.  PROVIDED PURSUANT TO NDA

| Total Illustrative Sources and Uses (4/1/26 - 4/1/29) | | |
|---|---|---|

| **Sources** | | **Uses** | |
|---|---|---|---|
| Beginning Cash | $ 67,850,000 | Cash to repay 9s in Full | $ 21,029,073 |
| Interest Received on Cash (4% annual) | $ 6,970,471 | Cash distributions to 10s [2] | $ 60,439,653 |
| Dugaboy Note P&I Received | $ 3,991,523 | | |
| Disputed Claim Reserve [1] | $ 2,656,732 | | |
| Total Cash Sources | $ 81,468,726 | Total Cash Uses | $ 81,468,726 |
| | | | |
| Dugaboy Note (P& Accrued I)  4/1/28 [3] | $ 15,137,110 | Dugaboy Note to 10s [3] | $ 15,137,110 |
| Total Sources | $ 96,605,837 | Total Uses | $ 96,605,837 |
| | | | |
| | | Total to 9s | $ 21,029,073 |
| | | Total to 10s (incl Dugaboy Note) [3][4] | $ 75,576,763 |

*DRAFT - SUBJECT TO CONFIDENTIALITY AGREEMENT*

Notes

[1] HCMLP will object to this claim. If claim is disallowed, following a final non-appealable order, any remaining funds will be distributed to Class 9, or if Class 9 has been paid in full, Class 10.

[2] Assumes no indemnification costs are expended throughout the period.

[3] Assumes Dugaboy Note FMV at face with no discounting.

[4] Excludes any net value ultimately obtained from the Kirschner Litigation

PRIVILEGED AND CONFIDENTIAL

1

001462

HCMLPHMIT00000994



**HIGHLAND INDEMNITY TRUST**

PRIVILEGED, CONFIDENTIAL AND PREPARED BY COUNSEL OR AT THE DIRECTION OF COUNSEL IN CONNECTION WITH LITIGATION AND IN ANTICIPATION OF FUTURE LITIGATION PROTECTED BY FRE 408 AND SIMILAR STATE LAW PROTECTIONS.  PROVIDED PURSUANT TO NDA

| Interim Cash Distribution Sources and Uses (4/1/26) | | | | |
|---|---|---|---|---|
| **Sources** | | | **Uses** | |
| Beginning Cash | $ 67,850,000 | | Distribution to 9s - IT | $ 10,000,000 |
| Interest Received on Cash | $ 1,360,718 | | Distribution to 9s - DCR | $ 2,656,732 |
| Dugaboy Note P&I Received | $ 1,354,892 | | Distribution to 10s - IT | $ 10,000,000 |
| Disputed Claim Reserve | $ 2,656,732 | | Distribution to 10s - Dugaboy Note P&I | $ 1,354,892 |
| | | | Remaining Indemnity Trust Cash | $ 49,210,718 |
| Total Cash Sources | $ 73,222,342 | | Total Cash Uses | $ 73,222,342 |

| Subsequent Distribution(s) Sources and Uses (4/1/28) [1] | | | | |
|---|---|---|---|---|
| **Sources** | | | **Uses** | |
| Beginning Cash | $ 49,210,718 | | Distribution to 9s - IT | $ 8,372,341 |
| Interest Received on Cash | $ 4,015,595 | | Distribution to 10s - IT | $ 5,000,000 |
| Dugaboy Note P&I Received | $ 2,636,631 | | Distribution to 10s - Dugaboy Note P&I | $ 2,636,631 |
| | | | Remaining Indemnity Trust Cash | $ 39,853,972 |
| Total Cash Sources | $ 55,862,943 | | Total Cash Uses | $ 55,862,943 |
| | | | | |
| Dugaboy Note (P&I Accrued)) 4/1/28 | $ 15,137,110 | | Dugaboy Note to 10s | $ 15,137,110 |
| Total Sources | $ 71,000,054 | | Total Uses | $ 71,000,054 |

| Final Distribution (4/1/29) [1] [2] | | | | |
|---|---|---|---|---|
| **Sources** | | | **Uses** | |
| Beginning Cash | $ 39,853,972 | | Distribution to 10s | $ 41,448,130 |
| Interest Received on Cash | $ 1,594,159 | | | |
| Total Cash Sources | $ 41,448,130 | | Total Cash Uses | $ 41,448,130 |

[1] Assumes no threats, demands or litigations.

[2] Assumes all SOL (and any applicable tolling) expired.

DRAFT - SUBJECT TO CONFIDENTIALITY AGREEMENT

001463

HCMLPHMIT00000995

Case 19-34054-sgj11    Doc 4255-53    Filed 06/20/25    Entered 06/20/25 21:39:29    Desc
Exhibit 53    Page 11 of 15

 **HIGHLAND INDEMNITY TRUST**

PRIVILEGED AND CONFIDENTIAL. THIS DOCUMENT WAS PREPARED AT THE DIRECTION OF COUNSEL IN CONNECTION WITH MEDIATION AND IN ANTICIPATION OF FUTURE LITIGATIONPROTECTED BY FRE 408 AND SIMILAR STATE LAW PROTECTIONS.  PROVIDED PURSUANT TO NDA

**Illustrative Indemnity Trust Payout - Draft**
**4/15/2025**

| Period Ending | Start Date 9/30/2025 | Assumed Final Order Year 1 4/1/2026 | Year 2 4/1/2027 | Subsequent Distribution(s) [1] Year 3 4/1/2028 | Final Distribution [1] [2] Year 4 4/1/2029 | Total |
|---|---|---|---|---|---|---|
| Indemnity Trust Cash Balance [3] | $ 67,850,000 | $ 49,210,718 | $ 51,179,147 | $ 39,853,972 | $ - | |
| Dugaboy Note Balance (P & and Accrued I) [4] | $ 17,806,565 | $ 16,729,382 | $ 15,932,744 | $ - | $ - | |
| TOTAL INDEMNITY TRUST | $ 85,656,565 | $ 65,940,100 | $ 67,111,891 | $ 39,853,972 | $ - | |
| | | | | | | |
| Disputed Claim Reserve | $ 2,656,732 | $ - | $ - | $ - | $ - | |
| | | | | | | |
| Class 9 Payment of Disputed Claim Reserve [5] | | $ (2,656,732) | $ - | $ - | $ - | $ (2,656,732) |
| Class 9 Payments Indemnity Trust | | $ (10,000,000) | $ - | $ (8,372,341) | $ - | $ (18,372,341) |
| Class 9 Total Payments | | $ (12,656,732) | $ - | $ (8,372,341) | $ - | $ (21,029,073) |
| Class 9 Balance [6] | $ 21,009,022 | $ 8,352,290 | $ 8,358,972 | $ - | $ - | |
| | | | | | | |
| Class 10 Payments Indemnity Trust | | $ (10,000,000) | $ - | $ (5,000,000) | $ (41,448,130) | $ (56,448,130) |
| Class 10 Payments Dugaboy Note [7] | | $ (1,354,892) | $ - | $ (17,773,741) | $ - | $ (19,128,633) |
| Class 10 Total Payments | | $ (11,354,892) | $ - | $ (22,773,741) | $ (41,448,130) | $ (75,576,763) |
| Class 10 Balance | $ 336,940,231 | $ 325,585,339 | $ 325,585,339 | $ 302,811,598 | $ 261,363,467 | |

Notes

[1] Assumes no threats, demands or litigations.

[2] Assumes all SOL (and any applicatable tolling) expired.

[3] Assumes no threats, demands or litigations. Assumes 4% Interest earned each period.

[4] 3.26% Interest and $790k Amort due 12/31 each year

[5] HCMLP will object to this claim. If claim is disallowed, following a final non-appealable order, any remaining funds will be distributed to Class 9, or if Class 9 has been paid in full, Class 10.

[6] Interest on balance accrues at 0.08%. Start Date face value of claims outstanding is $20,584,958.56.

[7] Assumes Dugaboy Note FMV at face with no discounting. Payment Year 3 includes P&I received after Initial Interim Cash Distribution.

001464
HCMLPHMIT00000996

Case 19-34054-sgj11    Doc 4255-53    Filed 06/20/25    Entered 06/20/25 21:39:29    Desc
Exhibit 53    Page 12 of 15

Privileged and confidential - provided pursuant to Rule 408 and the binding Confidentiality Agreement executed amongst the Parties

**Current Snapshot - remaining assets [1]**
*in USD millions, except percentages*

| Asset description | Ref | Claimant Trust [2] | Indemnity Trust [3] | Combined |
|---|---|---|---|---|
| Cash/treasuries | [4] | $    20.3 | $    67.9 | $    88.1 |
| Disputed Claims Reserve | [5] | 2.7 | - | 2.7 |
| Dugaboy Note receivable | [6] | - | 17.6 | 17.6 |
| HCM Korea (note and equity) | [7] | 3.0 | - | 3.0 |
| HCLOF shares | [8] | 2.5 | - | 2.5 |
| HCRE bad faith sanction | [9] | 0.9 | - | 0.9 |
| Kirschner Litigation (main adversary) | [10] | *See footnote* | - | - |
| HMIT note | [11] | *See footnote* | - | - |
| **Total assets** | | **$    29.4** | **$    85.5** | **$    114.8** |

[1] As of April 3, 2025.  This disclosure is NOT a balance sheet prepared in accordance with US GAAP.  In some instances, values are estimated and actual amounts retained may ultimately differ materially.  No liabilities are included herein, including existing liabilities, contingent liabilities, indemnification obligations, or considerations for future expenses, including costs of liquidation that have not yet been, but will be incurred.

[2] Claimant Trust, including consolidation of the various "Plan" entities other than the Indemnity Trust (HCMLP GP, LLC, Highland Capital Management, LP, Litigation Sub-Trust), each on a standalone basis, with intercompany balances eliminated.

[3] Stand-alone assets retained by the Indemnity Trust.  Other than less than <$1M retained in cash, remainder of cash is invested in US treasuries with maturities less than 1 year.  Excludes <$1M of cash/treasuries on account of the Okada settlement.  Pursuant to the Okada settlement, these funds are segregated and are to be repaid to Okada as first-out funds to the extent that any excess exists in the Indemnity Trust.  Accordingly, in a settlement scenario, these funds would not be available to Class 10 interest holders.

[4] Cash and treasuries includes full face amount of treasuries maturing within 6 months and has also been adjusted up to assume the near-term receipt of approximately $5 million from Highland CLO Funding, Ltd.

[5] Segregated funds invested in US treasuries with near-term maturities.  Funds are reserved for the Daugherty tax proof of claim, which remains pending.  If Highland successfully objects to the proof of claim, funds would be released from the Disputed Claims Reserve.  If the claim is ultimately allowed in full or in part, funds would be paid to Daugherty on account of the allowed claim and any excess remaining would be released from the Disputed Claims Reserve.

[6] Note receivable from The Dugaboy Investment Trust ("Dugaboy").  ~$17.4M principal and ~$0.2M interest currently outstanding, accruing at approximately $1,553/day.  Fair value is less than face value as the note is long-dated, accruing interest at 3.26% and makes annual principal and interest payments through 2046, with the last of such payments due December 31, 2046.  Dugaboy is current on its payments, including with the most recent payment completed for year-end 2024.  Principal payments due are $790,215 yearly, plus accrued interest, which declines each year as principal declines.  The next interest payment due December 31, 2025 is $566,677.  No assurance that Dugaboy will continue making the annual principal and interest payments when due, although the holder of the note could accelerate and pursue collection in that event.

[7] 100% equity interest in Highland Capital Management Korea Limited ("HCM Korea"), plus $2.5 million note from HCM Korea.  Ultimate value dependent on the monetization of the Caris Life Sciences investment through an expected 2025 IPO, which is expected to be in the range of $2 million to $5 million, but could also exceed or fall short of this range.

[8] Shares of Highland CLO Funding, Ltd. ("HCLOF"), a Guernsey company.  Value has been adjusted down to assume a near-term cash dividend of approximately $5 million.  Remaining value is primarily tied up in the "Acis 6" asset, for which a NexPoint entity has recently initiated an appeal in the 2nd Circuit Court of Appeals.  Ultimate value dependent on the Acis 6 litigation and costs of winding down HCLOF and expected to be in the range of $2 million to $4 million, but could also exceed or fall short of this range.

[9] Bad faith sanction against HCRE of $825,940.55, currently on appeal in the District Court.  Fully briefed since November 2024.  Award was posted in the court registry and is accruing post-judgment interest at a rate of $118.80/day.  Approximately $870k is outstanding, including post-judgment interest currently.  No assurance that the appeal will resolve favorably and as a result, there is no assurance that any amounts will ultimately be collected.

[10] Litigation brought by Marc Kirschner as Litigation Trustee to the Litigation Sub-Trust.  Adversary proceeding is currently stayed.  The value of the claims, their collectibility, and the costs of their continued pursuit is ultimately unknown.  For purposes of aggregating the current value of assets for this illustrative presentation, no value has been ascribed.

[11] Within the litigation brought by Marc Kirschner as Litigation Trustee to the Litigation Sub-Trust were claims against HMIT relating to the "HMIT note" receivable, which had originally been a portion of the consideration HMIT paid for acquiring limited partnership interests in Highland in 2015.  These claims are also stayed as part of the overall stay in the case.  The value of the note, its collectibility, and the costs of their continued pursuit is ultimately unknown.  For purposes of aggregating the current value of assets for this illustrative presentation, no value has been ascribed.

Case 19-34054-sgj11    Doc 4255-53    Filed 06/20/25    Entered 06/20/25 21:39:29    Desc
Exhibit 53    Page 13 of 15

**Privileged and confidential - provided pursuant to Rule 408 and the binding Confidentiality Agreement executed amongst the Parties**

**Uses: how much could be left after satisfying Class 9 claims?**
*in USD millions*

| | | |
|---|---|---|
| **Total combined assets** | $ | **114.8** *see "current snapshot"* |
| Less: | | |
| Oustanding Class 9, including interest | | (21.0) |
| Existing Incentive Compensation triggered through full payment of Class 9 | | (2.5) |
| Long-dated assets - Dugaboy Note receivable | | (17.6) [1] |
| Wind down expenses and accrued liabilities | | (20.0) [2] |
| Pending Class 8 claims (Daugherty tax) | | *See footnote*  [3] |
| Indemnification obligations | | *See footnote*  [4] |
| **Net expected cash prior to any indemnification considerations and necessary reserves** | $ | **53.7** [5] |
| **Plus: Non-cash assets - Dugaboy Note receivable** | $ | **17.6** |

[1] Note receivable from The Dugaboy Investment Trust ("Dugaboy"). ~$17.4M principal and ~$0.2M interest currently outstanding, accruing at approximately $1,553/day.  Fair value is less than face value as the note is long-dated, accruing interest at 3.26% and makes annual principal and interest payments through 2046, with the last of such payments due December 31, 2046.  Dugaboy is current on its payments, including with the most recent payment completed for year-end 2024.  Principal payments due are $790,215 yearly, plus accrued interest, which declines each year as principal declines.  The next interest payment due December 31, 2025 is $566,677.  No assurance that Dugaboy will continue making the annual principal and interest payments when due, although the holder of the note could accelerate and pursue collection in that event.

[2] Amount is ultimately TBD and will ultimately depend on litigation, timing of monetization of remaining assets, and operational needs.  For example, if additional litigation is brought forth, outside counsel will incur additional time and expense and certain employees may need to be retained for a longer period of time.  If actual expenses exceed $20 million, less cash would be potentially available after Class 9; if actual expenses fall short of $20 million, more cash would be potentially available after Class 9.

[3] For illustrative purposes of this presentation, $0 is assumed.  However, if the claim is ultimately allowed in full or in part, funds would be paid to Daugherty on account of the allowed claim, which would reduce cash potentially available after Class 9.  No assurances can be provided that the claim will be completely disallowed.

[4] For illustrative purposes of this presentation, $0 is assumed.  Thus, all funds utilized for purposes of satisfying indemnification obligations will reduce the funds available dollar for dollar.  Under current conditions, it is believed that at least $100 million may be needed for indemnification obligations and as a result, there is not sufficient liquidity at this time to even make any further payments to Class 9 interest holders.  Assuming a final/non-appealable order, providing for among other things, a complete cessation of litigation and comprehensive releases from the HMIT/DAF parties, the need for indemnification reserves could be greatly reduced.

[5] Assumes HCM Korea, HCLOF, and HCRE bad faith sanctions are monetized for the amounts described on the "current snapshot" ($6.4 million in aggregate).  Monetization in excess of these amounts would result in more cash remaining; monetization below those amounts would result in less cash remaining.

DRAFT - SUBJECT TO ... MENT


HCMLPHMIT00000998

*Privileged and confidential - provided pursuant to Rule 408 and the binding Confidentiality Agreement executed amongst the Parties*
**Information request made April 7, 2025**

**(i) Accrued liabilities**

| | Entity | Amount | |
|---|---|---|---|
| End of case/severance bonuses - remaining employees | HCMLP | $ 1,230,000 | |
| Accounts payable book balance (as of March 31, 2025) | HCMLP | 576,207 | |
| Estimate of other incurred, but not invoiced for work performed | HCMLP | 500,000 | general estimate |
| **Sub-total (i)** | | **$ 2,306,207** | A |

| **Other liabilities not included in section totals above** | Entity | Amount | |
|---|---|---|---|
| Distribution payable | HCT | $ 2,656,732 | previously authorized distributions related to pending Daugherty claim (has offsetting cash reserve; see current snapshot); to be released following resolution of the pending claim |
| Okada settlement payable | Indemnity Trust | 870,000 | first-out dollars in treasuries (amount is face of such treasuries) - for purposes of settlement discussions, the cash reserved related to the Okada settlement and the potential first-out dollars are excluded as irrelevant |

**(ii) Anticipated success or severance (or completion) payments or bonuses**

| | Entity | Amount | |
|---|---|---|---|
| Incentive Compensation Plan | HCMLP/HCT | $ 2,480,088 | assuming full payment of the Class 9's; calc'd as 14.7516% on remaining distributions to Class 9 with a time discount applied to the gross dollars distributed |
| Retention Date payments - employees | HCMLP | 925,000 | Retention Date is 9/30/2025 |
| Nate Burns (employee) incentive comp | HCMLP | --- | Nate receives a portion of the performance fees earned related to HCM Korea; assuming zero for presentation purposes as amounts would be a percentage of incremental value received from HCM Korea |
| **Sub-total (ii)** | | **$ 3,405,088** | B |

**(iii) Continuing admin budget for the Claimant Trust, Indemnification sub trust and/or litigation sub trust**

| | | | |
|---|---|---|---|
| See subsequent page; Sub-total (iii) | | $ 16,768,874 | C - additional detail contained on separate page |

| **Sum of A, B, and C** | | **$ 22,480,169** | |
|---|---|---|---|

**(iv) Identity and amount and basis for any holdback(s)**

| **Identity:** | Amount | Basis for amount |
|---|---|---|
| Sum of A, B, and C from above | $ 22,480,169 | from above; See notes and assumptions related to items A, B, and C |
| Incremental operational reserve | 5,000,000 | Excess cash to retain to cover potential cost overages - largest risk is incremental litigation and resulting time and expense of PSZJ plus longer retention of employees/CEO to assist with litigation, if applicable |
| Indemnification reserves | 35,000,000 | Assumes comprehensive releases and settlement amongst the HMIT/DAF Parties; at least $100 million if no settlement |
| Sum of items above | $ 62,480,169 | to below |

| Calc of estimated cash available for a prelim distribution to Class 10, assuming settlement | $ millions | |
|---|---|---|
| Current cash/treasuries (see previous page) | 88.1 | Cash and treasuries (including all Plan entities) |
| Assets expected to monetize in next 12 months | 6.4 | HCM Korea, remainder of HCLOF, bad faith sanction (but excluding near-term Dugaboy Note P&I amortization due December 2025) |
| **Sub-total** | **94.5** | |
| less: outstanding Class 9, including interest | (21.0) | current outstanding Class 9 with interest |
| less: holdbacks (from above) | (62.5) | from above |
| Remaining cash available for initial distribution to Class 10 | $ 11.1 | [1] |
| **Round to nearest million** | **$ 11.0** | |

[1] Possibility of incremental amount of up to $2.7 million in the event of a successful opposition to the pending Daugherty tax POC, along with incremental interim cash received from Dugaboy Note P&I amortization.  Amount also does not include non-cash assets (litigation, outstanding Dugaboy Note, etc).

001467
HCMLP.HMIT00000999



Case 19-34054-sgj11    Doc 4255-53    Filed 06/20/25    Entered 06/20/25 21:39:29    Desc
Exhibit 53    Page 15 of 15

*Privileged and confidential - provided pursuant to Rule 408 and the binding Confidentiality Agreement executed amongst the Parties*
**Projected Budget Build-Up**

**Remaining expected budget assuming a comprehensive settlement with HMIT/DAF Parties (excluding accrued liabilities and contingencies separately discussed)**

| Description | Total for budget | Notes and assumptions |
|---|---|---|
| Pachulski Stang and other litigation or BK-related | $  5,000,000 | Primary issues: expected new litigation to defend (actual causes of action unknown) from Dondero parties, incorporation of HMIT/DAF settlement and approval/appeals of same, appeals of "valuation complaint" and "HCRE bad faith", extension of the Trust for 1 yr. and dissolution issues. Ultimate amount required could vary materially higher or lower. |
| HCMLP employees salary and benefits (other than CEO) | 4,084,354 | Assumes declining headcount from 6 to 3, ending August 2026 (monthly trending from approx. $300k/month currently to approx. $200k/month at end) |
| Claimant Trustee/CEO salary | 2,700,000 | Assumes 18 months at $150k/month |
| Litigation Trustee | 360,000 | Assumes 18 months at $20k/month |
| Independent Member | 225,000 | Assumes 18 months at $12.5k/month |
| Litigation trust (other than Trustee) | 250,000 | Assuming minimal time and expense other than in conjunction with transfer of main case |
| Incentive Compensation on distributions to Cl. 10 | TBD | Provide for alignment in regards to quantum and timing of distributions and management of costs |
| | | |
| _Overhead related_ | | |
| Facilities/offsite storage and related | 1,079,121 | Office space through end of 2026 and offsite document retention through 2028 |
| External tax | 1,000,000 | Declining each year with final year for tax year 2027 |
| IT costs | 701,760 | Cloud storage, network infrastructure through 2027, email storage through 2030 |
| Accounting systems and information | 331,045 | General retention and maintenance through 2028 (primarily Oracle maintenance) |
| Other professionals | 200,000 | Misc reserve for other professionals |
| Other misc overhead | 200,000 | Misc reserve for other overhead, T&E, entity wind-up costs, etc |
| Indemnification expenses | 200,000 | Assuming misc. expenses from misc. matters |
| US Trustee | 437,594 | Assuming 0.8% of budget + accruals + distributions (assuming $30M total) |
| | | |
| **Grand total** | $   16,768,874 | _to previous page_ |

DRAFT - SUBJECT TO CONFIDENTIALITY AGREEMENT

001468

HCMLPHMIT00001000

**EXHIBIT**

001469

**From:** "jpseeryjr@gmail.com" <jpseeryjr@gmail.com>

**To:** <mpatrick@dafholdco.com>, Shawn Raver <sraver@dafholdco.com>, "Louis M. Phillips" <Louis.Phillips@kellyhart.com>, <amelia.hurt@kellyhart.com>, <jshields@shieldslegal.com>

**Cc:** "John A. Morris" <jmorris@pszjlaw.com>, David Klos <DKlos@HighlandCapital.com>, Tim Cournoyer <TCournoyer@HighlandCapital.com>, Jeff Pomerantz <jpomerantz@pszjlaw.com>, "Gregory V. Demo" <GDemo@pszjlaw.com>

**Subject:** PRIVILEGED AND CONFIDENTIAL

**Date:** Mon, 28 Apr 2025 19:34:04 -0400

**Importance:** Normal

**Attachments:** 4923-8662-5850.v9_Highland-HMIT-Rand_Settlement_Agreement.doc

---

HMIT Team:

Subject to our NDA, and further to our prior discussions, attached please find a draft settlement agreement.

The draft is consistent with the term sheet and the illustrative payment deck we reviewed with you.

However, we changed the timing of certain of the "gives" and "gets" so that the payments, reserves, releases, and litigation assignments, as well as a best-efforts undertaking are exchanged at or around execution. This is consistent with the DAF agreement, and these exchanges do not require Bankruptcy Court approval. We believe that an immediate exchange of as much of the material value of the settlement as possible is in the best interests of both sides.

The Class 10 claim allowance and the application of the HMIT Note to fix the amount requires court approval and is set up that way with future Indemnity Trust payments keyed to the Bankruptcy Court order becoming final. To assure that the order is timely procured and the expectations of the parties protected, we have included the aforementioned best efforts undertaking to reconstruct the essential terms of the deal and deliver it to the parties if for any reason the claim allowance is not approved or is overturned . We do believe there is much risk to either denial or reversal.

We are at your disposal. It may make sense for us to walk some or all of you through draft, and we can do that tomorrow. (We understand that Louis is away and do not presume to intrude on a well-earned holiday.) Nonetheless, if an overview is appealing, please let me know.

Thank you for your consideration. Please call me with any questions or issues. We look forward to working with you to resolve our disputes and reach a mutually satisfactory resolution.

Best. Jim

Jim Seery
631-804-2049
jpseeryjr@gmail.com

HCMLPHMIT00001001

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/25/25

## SETTLEMENT AGREEMENT & GENERAL RELEASE

THIS SETTLEMENT AGREEMENT & GENERAL RELEASE (this "**Agreement**") is entered into as of April [__], 2025 (the "**Agreement Date**"), by and among Highland Capital Management, L.P., a Delaware limited partnership ("**Highland**"), the Highland Claimant Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act (the "**Claimant Trust**"), the Highland Litigation Sub-Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act (the "**Litigation Sub-Trust**"), and the Highland Indemnity Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act (the "**Indemnity Trust**", and together with Highland, the Claimant Trust and the Litigation Sub-Trust, the "**Highland Entities**"), on the one hand, and Hunter Mountain Investment Trust, a Delaware statutory trust ("**HMIT**"), Rand Advisors, LLC, a Delaware limited liability company ("**Rand Advisors**"), Rand PE Fund I, LP, a Delaware series limited partnership ("**Rand PE Fund**"), Rand PE Fund Management, LLC, a Delaware limited liability company ("**Rand GP**"), Atlas IDF, LP, a Delaware limited partnership ("**Atlas IDF**"), Atlas IDF GP, LLC, a Delaware limited liability company ("**Atlas GP**" and together with HMIT, Rand Advisors, Rand PE Fund, Rand GP and Atlas IDF, the  "**HMIT Entities**"), on the other hand.  The Highland Entities and the HMIT Entities are collectively referred to as the "**Parties**," and each individually, as a "**Party**".

## DEFINITIONS

"**9019 Motion**" means the motion seeking entry of the Bankruptcy Court Order pursuant to Bankruptcy Rule 9019 and in accordance with Section 18.

"**Action**" means any action, claim, demand, arbitration, hearing, charge, complaint, investigation, examination, indictment, litigation, suit or other civil, criminal, administrative or investigative proceedings.

"**Affiliate**" means a Person that, directly or indirectly, through one or more intermediaries, controls or is controlled by, or is under common control with, a specified Person as of the date on which, or at any time during the period for which, the determination of affiliation is being made. The term "control" (including, with correlative meanings, the terms "controlled by" and "under common control with"), as applied to any Person, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting securities or other ownership interest, by contract or otherwise.

"**Amended Complaint**" means the *Amended Complaint and Objection to Claims*, filed as docket number 158 in *Kirschner v. Dondero*, Adv. Pro. No. 21-03076-sgj (Bankr. N.D. Tex. May 19, 2022).

"**Bankruptcy Case**" means *In re Highland Capital Management, L.P.*, Case No. 19-34054-sgj (Bankr. N.D. Tex.) and its related proceedings.

"**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended).

HCMLPHMIT00001002

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

"**Bankruptcy Court**" means the U.S. Bankruptcy Court for the Northern District of Texas, Dallas Division.

"**Bankruptcy Court Approval Date**" means the date on which the Bankruptcy Court Order is issued.

"**Bankruptcy Court Order**" means an order of the Bankruptcy Court approving the allowance of the HMIT's Class 10 Interest as provided in this Agreement pursuant to the 9019 Motion.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure.

"**Business Day**" means any day other than (i) a Saturday or a Sunday, (ii) a day on which the Federal Reserve Bank of New York or the New York Stock Exchange is closed, or (iii) a day on which banks in the States of Texas are required, or authorized by law, to close.

"**Claimant Trust Agreement**" means that certain Claimant Trust Agreement of the Claimant Trust (as may have been or may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), effective as of August 11, 2021, by and among Highland, as settlor, James P. Seery, Jr., a Claimant Trustee, and Wilmington Trust, National Association, a national banking association, as Delaware trustee.

"**Claims**" means any claims, debts, liabilities, demands, obligations, breaches of contract, breaches of duty or any relationship, misfeasance, malfeasance, promises, acts, omissions, agreements, liens, losses, costs and expenses (including attorney's fees and related costs), damages, injuries, suits, actions, and causes of action of whatever kind or nature, whenever and however, arising, whether known or unknown, suspected or unsuspected, matured or unmatured, liquidated or unliquidated, contingent or fixed, at law or in equity, statutory or otherwise.

"**Class 10**" means the class of Claims or Equity Interests described in Article II. Section H.10. of the Plan.

"**Class 11**" means the class of Claims or Equity Interests described in Article II. Section H.11. of the Plan.

"**Committee**" means the official committee of unsecured creditors appointed in the Bankruptcy Case.

"**Confirmation Order**" means that certain *Order Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (ii) Granting Related Relief* [Docket No. 1943], as conformed in accordance with the Fifth Circuit's rulings.

"**Dugaboy Note**" means that certain Promissory Note dated May 31, 2017, in the original face amount of $24,268,621.69, from The Dugaboy Investment Trust, as Maker, and Highland Capital Management, L.P. and The Get Good Non-Exempt Trust, collectively as Payee.

001472

HCMLPHMIT00001003

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

"**Final Court Approval Date**" means the date on which the Bankruptcy Court Order becomes a Final Order.

"**Final Order**" means an order or judgment of the Bankruptcy Court, which is in full force and effect, and as to which the time to appeal, petition for certiorari, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, new trial, reargument, or rehearing shall have been waived in writing in form and substance satisfactory to the Highland Entities, as applicable, or, in the event that an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order of the Bankruptcy Court shall have been determined by the highest court to which such order was appealed, or certiorari, new trial, reargument or rehearing shall have been denied and the time to take any further appeal, petition for certiorari, or move for a new trial, reargument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be Filed with respect to such order shall not preclude such order from being a Final Order.

"**Gatekeeper**" means the gatekeeping provision contained in Article IX. F of the Plan as of August 11, 2021.

"**Governmental Authority**" means any federal, provincial, state, local or foreign government or political subdivision thereof, court of competent jurisdiction, administrative agency, judicial or arbitral body, or commission or other governmental or regulatory authority or instrumentality.

"**Highland Released Parties**" means collectively (i) the Highland Entities, (ii) any Affiliate of any Highland Entity and any Person directly or indirectly majority-owned by any Highland Entity or any of their respective Affiliates, (iii) any Person directly or indirectly managed by any Highland Entity or any of their respective Affiliates, whether by contract or otherwise (the entities described in clauses (i)-(iii), collectively, the "**Highland Parties**"), (iv) each of the Highland Parties' current and former trustees and administrators (including the trustees of any of the Claimant Trust, the Litigation Sub-Trust, or the Indemnity Trust), officers, executives, agents, directors, advisors, advisory representatives, consultants, administrators, managers, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns, (v) the current and former members of the Oversight Board of the Claimant Trust in any capacity (including Richard Katz) and their Affiliates, including Farallon Capital Management, LLC, Stonehill Capital Management, LLC, Muck Holdings LLC, and Jessup Holdings LLC, (vi) the Independent Board and its members John Dubel, James P. Seery, Jr., and Russell Nelms, (vii) James P. Seery, Jr., individually and in all capacities for any Highland Released Party, including as Chief Executive Officer of Highland Capital Management, L.P., Claimant Trustee of the Claimant Trust, and the Indemnity Trust Administrator of the Indemnity Trust, (viii) Marc S. Kirschner, individually and as Trustee of the Litigation Sub-Trust, (ix) the Committee and each of its members, (x) the professionals (and their respective firms) (a) retained by Highland or the Committee during the Bankruptcy Case or

001473
HCMLPHMIT00001004

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

which provided services to Highland or the Committee during the Bankruptcy Case or (b) retained by any Highland Released Party on or after August 11, 2021, (xi) any Person indemnified by any Highland Party (the Persons described in clauses (i)-(xi), collectively, the "**Highland Covered Parties**"), and (xii) each Highland Covered Party's current and former officers, executives, agents, directors, advisors, consultants, administrators, managers, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns, if not otherwise included in the defined term "Highland Covered Parties;" provided, however, and for the avoidance of doubt, and without in any way limiting the scope of the foregoing, "Highland Covered Parties" shall include Highland CLO Funding, Ltd., Highland HCF Advisor, Ltd., Highland Multi Strategy Credit Fund, L.P., Highland Multi Strategy Credit Fund GP, L.P., Highland Multi Strategy Credit GP, LLC, Highland Multi Strategy Credit Fund, Ltd., Highland Select Equity Master Fund, L.P., Highland Select Equity Fund GP, L.P., Highland Select Equity Fund, L.P., Highland Restoration Capital Partners Master, L.P., Highland Restoration Capital Partners GP, LLC, Highland Restoration Capital Partners, L.P., Highland Restoration Capital Partners Offshore, L.P., Highland Offshore Director, LLC, Acis CLO Management, LLC, Neutra, Ltd., Pollack, Ltd., Acis CLO Management Holdings, L.P., Acis CLO Management Intermediate Holdings I, LLC, Acis CLO Management Intermediate Holdings II, LLC, Acis CLO Assets Holdings Limited, CHG Houston Holdings, LLC, Penant Management, L.P., Penant Management GP, LLC, Gunwale, LLC, HE Capital, LLC, Gleneagles CLO, Ltd., Aberdeen Loan Funding, Ltd. Highland Argentina Regional Opportunity Fund GP, LLC, Highland Argentina Regional Opportunity Fund, L.P., Highland Argentina Regional Opportunity Fund, Ltd., Highland Argentina Regional Opportunity Master Fund, L.P., Highland Latin America Consulting, Ltd., Highland Capital Management Korea Limited, Highland Capital Management Latin America, L.P., Highland Latin America GP, Ltd., Highland Latin America LP, Ltd., Highland Offshore Partners, L.P. (Diversified), Brentwood CLO, Ltd., Eastland CLO, Ltd., Bristol Bay Funding Ltd., Jasper CLO Ltd., Highland Legacy Limited, Grayson CLO, Ltd., Greenbriar CLO, Ltd.,  Highland Loan Funding V Ltd., Highland Park CDO I, Ltd., Liberty CLO, Ltd., Valhalla CLO, Ltd., Stratford CLO Ltd., Southfork CLO, Ltd., Pam Capital Funding, L.P., Stonebridge-Highland Healthcare Private Equity Fund, Pamco Cayman Ltd., Red River CLO, Ltd., Rockwall CDO II Ltd., Rockwall CDO, Ltd., Westchester CLO, Ltd. Longhorn Credit Funding, LLC, PensionDanmark Pensionsforsikringsaktieselskab, Highland Dynamic Income Master Fund L.P., Highland Dynamic Income Fund GP, LLC, Highland Dynamic Income Fund, L.P., Highland Dynamic Income Fund, Ltd., Highland JHT Holdings, LLC, Highland Prometheus Master Fund, L.P., Highland Prometheus Feeder Fund I, L.P., Highland Prometheus Feeder Fund II, L.P., Highland Sunbridge GP, LLC, Trussway Holdings, LLC, Trussway Industries, LLC, TW Company, Inc., T-Way Investments, LLC, SSP Holdings, LLC, Highland Flexible Income UCITS Fund, and Acis CLO 2017-7, Ltd.  *Notwithstanding the forgoing or anything herein to the contrary*, none of "Highland Released Parties", "Highland Parties", nor "Highland Covered Parties" shall include James Dondero, Scott Ellington, Isaac Leventon, or any Person directly or indirectly owned as of the date hereof (in whole or in part) by, and/or Affiliated as of the date hereof with, any of Mr. Dondero, Mr. Ellington, or Mr. Leventon in any manner and none of such Persons are released from any Claim by any Person in connection with this Agreement.

001474

HCMLPHMIT00001005

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

"**HMIT Class 10 Interest**" means the unvested, contingent Class 10 interest in the Claimant Trust (a) to be allowed on account of HMIT's pre-petition equity interest in Highland, and (b) subject to the terms and conditions of the Plan, the Plan Documents, the Claimant Trust Agreement, this Agreement, and applicable law.

"**HMIT Note**" means that certain Secured Promissory Note dated December 21, 2015, in the original face amount of $63,000,000 from HMIT, as maker, and Highland, as payee.

"**HMIT Note Claims**" means any Claim related to, in connection with or arising out of the HMIT Note.

"**HMIT Released Parties**" means collectively (i) the HMIT Entities, (ii) any Affiliate of any HMIT Entity and any Person directly or indirectly majority owned by any HMIT Entity or any of their respective Affiliates, (iii) any Person directly or indirectly managed by any HMIT Entity or any of their respective Affiliates, whether by contract or otherwise (the entities described in clauses (i) – (iii), collectively, the "**HMIT Parties**"), (iv) each of the HMIT Parties' current and former trustees, administrators, officer, executives, agents, directors, advisors, consultants, manager, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns (v) the professionals (and their respective firms (a) retained by any HMIT Party during the Bankruptcy Case or which provided services to any HMIT Party during the Bankruptcy Case or (b) retained by any HMIT Released Party on or after August 11, 2021, (vi) any Person indemnified by any HMIT Party (the Persons described in clauses (i) – (vi), collectively, the "**HMIT Covered Parties**"), and (vii) each HMIT Covered Party's current and former officers, executives, agents, directors, advisors, consultants, administrators, managers, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns, if not otherwise included in the defined term "HMIT Covered Parties." *Notwithstanding the forgoing*, none of "HMIT Released Parties", "HMIT Parties", nor "HMIT Covered Parties" shall include James Dondero, Scott Ellington, Isaac Leventon, or any Person directly or indirectly owned as of the date hereof (in whole or in part) by, and/or Affiliated as of the date hereof with, any of Mr. Dondero, Mr. Ellington, or Mr. Leventon in any manner, and none of such Persons are released from any Claims by any Person in connection with this Agreement.

"**Indemnity Trust Administrator**" has the meaning given to it in the Indemnity Trust Agreement.

"**Indemnity Trust Agreement**" means that certain *Second Amended and Restated Indemnity Trust Agreement of the Indemnity Trust* (as may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), effective as of [April 28], 2025, by and among the Claimant Trust, as grantor, James P. Seery, Jr., as indemnity trust administrator, and Wilmington Trust, National Association, a national banking association, as indemnity trustee and Delaware trustee.

"**Indemnity Trust Assets**" has the meaning set forth in the Indemnity Trust Agreement.

001475

HCMLPHMIT00001006

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

"**Independent Board**" means the independent board appointed by the Bankruptcy Court on January 9, 2020, pursuant to that certain *Order Approving Settlement with Official Committee of Unsecured Creditors Regarding Governance of the Debtor and Procedures for Operations in the Ordinary Course* [Docket No. 339].

"**Kirschner Claims**" means all Claims and causes of action other than the HMIT Note Claims that were asserted or could have been asserted by the Litigation Trustee of the Litigation Sub-Trust, in the Amended Complaint.

"**Liability**" means any liability, debt, obligation, loss, damage, claim, cost or expense (including costs of investigation and defense and attorney's fees, costs and expenses), in each case, whether direct or indirect, whether accrued or contingent, whether or not involving a third-party claim, and including incidental and consequential damages and diminution of value.

"**Litigation Protections**" means, individually and collectively, the rights, duties, and obligations set forth in Section 1 and Sections 9 - 16.

"**Litigation Sub-Trust**" means the Highland Litigation Sub-Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act.

"**Litigation Sub-Trust Agreement**" means that certain Litigation Sub-Trust Agreement of the Litigation Sub-Trust (as may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), effective as of August 16, 2021, by and among James P. Seery, Jr., as Claimant Trustee of the Claimant Trust, Wilmington Trust, National Association, a national banking association, as Delaware Trustee, and the Litigation Trustee.

"**Litigation Trustee**" means Marc S. Kirschner, as Litigation Trustee of the Litigation Sub-Trust.

"**LPA**" means that certain *Sixth Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P.* (as may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), dated as of October 4, 2021.

"**Original Plan**" means that certain *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* attached as Exhibit A to the *Order (A) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as modified) and (B) Granting Related Relief,* filed at Docket No. 1943 on the Bankruptcy Court's docket.

"**Oversight Board**" means the oversight board of the Highland Claimant Trust.

"**Pending Litigation**" means (i) *Hunter Mountain Investment Trust v. Highland Cap. Mgmt., L.P.,* Case No. 3:23-cv-02071-E (N.D. Tex.), on remand to the Bankruptcy Court (including *Hunter Mountain Investment Trust's Emergency Motion for Leave to File Adversary Proceeding* filed at Bankruptcy Court Docket No. 3699 and all proceedings, decisions, and orders relating there); (ii) *Dugaboy Investment Trust v. Highland Cap. Mgmt, L.P.,* 3:24-cv-

001476

HCMLPHMIT00001007

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

01531-X (N.D. Tex.) (only as to HMIT), and (iii) *Hunter Mountain Investment Trust v. Highland Cap. Mgmt., L.P.*, Case No. 3:24-cv-01786-L (N.D. Tex.).

"**Permitted Investments**" has the meaning set forth in the Indemnity Trust Agreement.

"**Person**" means any natural person, partnership, limited liability partnership, corporation, limited liability company, association, joint stock company, trust, estate, joint venture, unincorporated organization or Governmental Authority.

"**Plan**" means that certain *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* as conformed in accordance with the Fifth Circuit's rulings.

"**Plan Documents**" has the meaning given to it in the Plan.

"**Plan Protections**" means, collectively, the provisions of the Plan contained in Article IX thereof.

"**Pro Rata**" means the proportion that (a) the allowed amount of a particular Claim or Equity Interest in Class 10 bears to (b) the aggregate allowed amount of all Claims or Equity Interests in Class 10.

"**Threats**" means any threats, demands, complaints, petitions for pre-suit discovery, suits, litigations, arbitrations, actual or threatened restraining orders or injunctions, or similar actions of any kind in any forum against any Trust Indemnified Parties or Indemnified Party (both as defined in the Indemnity Trust Agreement).

## RECITALS

**WHEREAS**, as of the Petition Date, HMIT held Class B and Class C Limited Partnerships Interests in Highland;

**WHEREAS**, on December 21, 2015, HMIT entered into the HMIT Note with Highland, which had a total outstanding principal balance of Fifty-Seven Million Six Hundred Ninety Thousand Six Hundred Forty and 95/100 Dollars ($57,690,640.95) as of the Petition Date (the "**HMIT Note Balance**");

**WHEREAS**, HMIT's Class B and Class C Limited Partnership Interests in Highland were extinguished on August 11, 2021, in accordance with the Plan;

**WHEREAS**, pursuant to the LPA, HMIT's capital account balance at Highland on account of its Class B and Class C Limited Partnership Interests on the Petition Date was Three Hundred Ninety-Four Million Six Hundred Thirty Thousand Eight Hundred Seventy-One and 53/100 Dollars ($394,630,871.53) (the "**HMIT Capital Account Balance**");

**WHEREAS**, some or all of the HMIT Entities have asserted certain Claims against certain Highland Entities, including those asserted in the Pending Litigation;

001477
HCMLPHMIT00001008

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

**WHEREAS**, some or all of the Highland Entities have asserted certain Claims against certain HMIT Entities, including the HMIT Note Claims;

**WHEREAS**, the Parties wish to terminate, extinguish, and release any and all rights, duties, obligations and Claims that (a) any of the Highland Released Parties owed or have, or may have owed or have, to or with respect to any of the HMIT Released Parties, and (b) any of the HMIT Released Parties owed or have, or may have owed or have, to or with respect to any of the Highland Released Parties (collectively, the "**Rights and Obligations**");

**WHEREAS**, the Parties agree that the Litigation Protections are intended to enact a permanent cessation of all litigation concerning or related to the Highland Released Parties through and including the Agreement Date; and

**WHEREAS**, the Parties, individually and collectively, wish to (a) resolve all disputes between and/or among any of the Highland Entities, on the one hand, and any of the HMIT Entities, on the other hand, including those asserted in the Pending Litigation, (b) fix and allow HMIT's Class 10 Interest at the amount and on the terms provided herein; and (c) terminate, extinguish, and release all Rights and Obligations on the terms provided herein.

**NOW THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree as follows:

<u>**AGREEMENT**</u>

1.     <u>Dismissal of Pending Litigation With Prejudice</u>.  Within three (3) Business Days after the Agreement Date, the HMIT Entities shall take all steps necessary (at their own cost) to dismiss the Pending Litigation with prejudice.

2.     <u>Dismissal of Certain Defendants from the Amended Complaint</u>.

(a)     Within three (3) Business Days after the Effective Date, the Litigation Trustee shall take all steps necessary (at its own cost) to dismiss, with prejudice, HMIT and Rand PE Fund from Counts I, II, and III of the Amended Complaint.  For the avoidance of doubt, Counts I, II, and III constitute all Kirschner Claims that are not HMIT Note Claims, and such dismissal shall not affect or impair any HMIT Note Claims or any liability or obligation of HMIT with respect to the HMIT Note, if any.

(b)     Within three (3) Business Days after the Final Court Approval Date, the Litigation Sub-Trust shall take all steps necessary (at its own cost) to dismiss, with prejudice, HMIT and Rand PE from Count XXIV of the Amended Complaint, which constitutes all HMIT Note Claims against HMIT and Rand PE.

3.     <u>Cash Payment to HMIT</u>.  In consideration for the dismissal of the Pending Litigation, within three (3) Business Days following the Agreement Date, Highland shall pay HMIT a one-time, lump sum of [Five Hundred Thousand Dollars (US$500,000.00)] (the "**Payment**") by wire transfer:

001478
HCMLPHMIT00001009

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

[wire instructions]

4.    <u>HMIT Class 10 Interest</u>.

(a)    Subject to entry of the Bankruptcy Court Order, and the terms of this Agreement, the HMIT Class 10 Interest shall be deemed allowed in the amount of Three Hundred Thirty-Six Million Nine Hundred Forty Thousand Two Hundred Thirty and 58/100 Dollars (US$336,940,230.58), which amount represents the HMIT Capital Account Balance, <u>less</u> the HMIT Note Balance.

(b)    Notwithstanding anything to the contrary in the Plan or the Claimant Trust Agreement, as an integral part of this Agreement to consent to the allowance of the HMIT Class 10 Interest and the other considerations in this Agreement, HMIT shall not be deemed, and no holder of the HMIT Class 10 Interest shall be, a Claimant Trust Beneficiary or a "Beneficiary" under the Claimant Trust Agreement, and the Highland Released Parties, individually and collectively, shall owe no duty to any HMIT Releasor (whether contractual, fiduciary, equitable, statutory or otherwise), including with respect to the HMIT Class 10 Interest, in each case, except as expressly set forth in this Agreement.  Furthermore, without limiting the foregoing and for the avoidance of doubt, the contractual right of the holder of the HMIT Class 10 Interest to receive or recover any payments or Indemnity Trust Assets from the Indemnity Trust as set forth in this Agreement or the Indemnity Trust Agreement does not make any HMIT Releasor or any other Person a beneficiary of the Indemnity Trust or under the Indemnity Trust Agreement.

(c)    Notwithstanding anything to the contrary in the Plan, the Claimant Trust Agreement or the Indemnity Trust Agreement, in no event shall HMIT sell, transfer, assign, pledge, hypothecate, participate or otherwise dispose of the HMIT Class 10 Interest or any rights (including any right to payment) with respect thereto.

(d)    For the avoidance of doubt, the HMIT Class 10 Interest is and shall remain senior to the not yet allowed, unvested contingent Class 11 Claims of Equity Interests as provided for in the Plan, the Plan Documents, and the Claimant Trust Agreement.

5.    <u>Initial Interim Cash Distributions on the Allowed Class 10 Interests</u>.

(a)    Within ten (10) Business Days of the Final Court Approval Date, the Indemnity Trust shall distribute (the date on which such distribution is made, the "**Initial Interim Distribution Date**") Pro Rata to the Holders of allowed Class 10 Claims or Equity Interests: (i) cash in the aggregate amount of [Ten Million Dollars (US$10,000,000.00)] (the "**Initial Interim Cash Distribution Amount**"); and (ii) cash in the aggregate amount of all principal and interest payments paid on the Dugaboy Note and actually received by Highland or the Indemnity Trust from and after the Bankruptcy Court Approval Date (the "**Initial Interim Dugaboy Distribution Amount**").

(b)    Upon the Bankruptcy Court Approval Date, the Indemnity Trust shall establish a balance sheet reserve in respect of the Initial Interim Cash Distribution Amount and the Initial Interim Dugaboy Distribution Amount (if and when received), which reserve will be held solely in cash or Permitted Investments and otherwise on the same terms as other Indemnity

001479

HCMLPHMIT00001010

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

Trust Assets pursuant to the Indemnity Trust Agreement pending distribution in accordance with <u>Section 5(a)</u>.

6.    <u>Subsequent Distribution(s) on the Allowed Class 10 Interests.</u>

(a)    On the later of the Final Court Approval Date and April 1, 2028, the Indemnity Trust shall distribute (such distribution, collectively, the "**Subsequent Distribution**", and the date on which such Subsequent Distribution is made, the "**Subsequent Distribution Date**") Pro Rata to the Holders of allowed Class 10 Claims or Equity Interests: (i) cash in the aggregate amount of [Five Million Dollars (US$5,000,000.00)]; and (ii)(x)(1) if HMIT elects in writing that it desires for the Indemnity Trust to sell the Dugaboy Note, the net proceeds, if any, actually received by the Indemnity Trust from such sale, or (2) if HMIT instead elects that it desires to receive the Dugaboy Note in kind, the Dugaboy Note in kind, plus (y) cash in the aggregate amount of all principal and interest payments actually received on the Dugaboy Note by the Indemnity Trust from and after the Initial Interim Distribution Date (the amount pursuant to subclause (y), the "**Subsequent Dugaboy P+I Amount**"). If the Dugaboy Note is distributed in kind, HMIT will engage an independent valuation service provider to value the Dugaboy Note for purposes of determining the magnitude of reduction to the outstanding allowed Class 10 Interests on account of such in-kind distribution. The HMIT Entities acknowledge and agree that none of the Highland Entities are representing or warranting that the Dugaboy Note can or will be sold or the price, if any, received for the Dugaboy Note and further acknowledge and agree that any such purchase price may be de minimis.

(b)    Upon the Initial Interim Distribution Date, the Indemnity Trust shall establish a balance sheet reserve in respect of the cash portion of the Subsequent Dugaboy P+I Amount, which will be held solely in cash or Permitted Investments and otherwise on the same terms as other Indemnity Trust Assets pursuant to the Indemnity Trust Agreement pending distribution in accordance with <u>Section 6(a)</u>.

(c)    Notwithstanding anything herein to the contrary, the obligations of the Indemnity Trust to make the Subsequent Distribution, including any Cash, the Dugaboy Note, or the Subsequent Dugaboy P+I Amount, is subject in all respects to (i) there being no Threats and (ii) a determination in accordance with Article VIII, Section 8.1(c) of the Indemnity Trust Agreement that the Indemnity Trust Assets comprising such distributions are not reasonably necessary to satisfy current or potential Indemnification Obligations (as defined in the Indemnity Trust Agreement) to all persons who are or might become Beneficiaries (as defined in the Indemnity Trust Agreement).

7.    <u>Final Distribution on the Allowed Class 10 Interests.</u>

(a)    On the later of the Final Court Approval Date and April 1, 2029, the Indemnity Trust will distribute all excess remaining Indemnity Trust Assets in accordance with Article VIII of the Indemnity Trust Agreement; <u>provided</u>, <u>however</u>, that the obligation of the Indemnity Trust to make any such distributions and/or dissolve and wind up the affairs of the Indemnity Trust is subject in all respects to (i) there being no Threats and (ii) a determination in accordance with Article VIII of the Indemnity Trust Agreement that (1) a Final Order(s) (as

001480
HCMLPHMIT00001011

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

defined in the Indemnity Trust Agreement) has been entered resolving all litigation, claims or proceedings in any forum of any kind which could give rise to Indemnity Obligations (as defined in the Indemnity Trust Agreement) and payment in full of all such Indemnity Obligations and (2) all applicable statutes of limitations and any applicable tolling of such statutes of limitation have expired.

(b)     The Indemnity Trust agrees to not use Indemnity Trust Assets to fund the operating expenses of Highland.

(c)     Following the Bankruptcy Court Approval Date, at the request of Mark Patrick, solely in his capacity, and to the extent he remains, as administrator of HMIT, but not more often than quarterly, Highland and the Indemnity Trust Administrator agree to review (i) the status of their respective assets, (ii) the balance of cash held, (iii) the status of any claims made for indemnification and any resolutions thereof, (iv) the status of any litigation, and (v) forecasted operating expenses with Mr. Patrick, and will each work in good faith to reduce operating expenses where reasonably practicable; provided, however, that all such reporting shall be subject to Mr. Patrick's agreement to maintain confidentiality with respect to any non-public information.

8.     Transfer Kirschner Claims; Dismissal of HMIT Note Claims.

(a)     In consideration of the dismissal of the Pending Litigation and the releases provided herein, within ten (10) Business Days of the Agreement Date, but after the dismissal provided for in Section 2, and solely to the extent permitted by the Plan, the Litigation Sub-Trust Agreement and applicable law, the Litigation Sub-Trust shall execute an assignment in the form attached hereto as **Exhibit [_]** in favor of the HMIT Entities transferring all of the Litigation Sub-Trust's right, title, and interest in and to the Kirschner Claims (which, for the avoidance of doubt, shall not include any HMIT Note Claims) (the "**Kirschner Transfer**").[1] Each HMIT Entity acknowledges and agrees that none of the Highland Entities will have any duty or obligation to assist the HMIT Entities in any way with respect to the Kirschner Claims, including the prosecution thereof.

(b)     THE HMIT ENTITIES SPECIFICALLY ACKNOWLEDGE AND AGREE THAT THE LITIGATION SUB-TRUST IS TRANSFERRING THE KIRSCHNER CLAIMS ON AN "AS IS AND WITH ALL FAULTS" BASIS AND THAT THE HMIT ENTITIES ARE NOT RELYING ON ANY REPRESENTATIONS OR WARRANTIES OF ANY KIND WHATSOEVER, EXPRESS OR IMPLIED, FROM THE HIGHLAND ENTITIES OR THEIR REPRESENTATIVES AS TO ANY MATTERS CONCERNING THE KIRSCHNER CLAIMS AND AMENDED COMPLAINT, INCLUDING WITH RESPECT TO THE ENFORCEABILITY, TRANSFERABILITY, VIABILITY, STRENGTH, OR VALUE OF ANY OF THE KIRSCHNER CLAIMS OR THE AMENDED COMPLAINT.  The HMIT Entities hereby specifically acknowledge that they have carefully reviewed this Section and have had the opportunity to discuss its import with legal counsel and that the provisions of this Section are a material part of this Agreement.  Thus, if for any reason HMIT is precluded from or is

_____

[1] NTD: HMIT Claim to be dismissed without prejudice.

001481
HCMLPHMIT00001012

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

otherwise unable to prosecute all or any of the Kirschner Claims, (i) the HMIT Releasors shall have no recourse against the Highland Released Parties whatsoever and shall not be entitled to compensation of any kind, it being agreed that the HMIT Entities are otherwise receiving adequate consideration for the duties and obligations they are undertaking pursuant to this Agreement and (ii) there will be no effect whatsoever on the validity and enforceability of this Agreement or any of the other transactions contemplated hereby.

(c)    As promptly as reasonably practicable following the Effective Date, the Highland Entities shall provide to the HMIT Entities electronic copies of written discovery requests and responses thereto, and documents produced in discovery in respect of the Kirschner Claims and the Amended Complaint. The Highland Entities will not provide any other documents regarding the Kirschner Claims including any attorney-client communications and any documents subject to the attorney work-product doctrine or similar privileges or immunities concerning the Kirschner Claims (collectively, the "**Kirschner Privileges**"), it being understood and agreed that the Highland Entities are retaining, and not transferring or waiving, the Kirschner Privileges.

(d)    Each Party acknowledges and agrees that if (a) the Kirschner Transfer is found or deemed to be impermissible or invalid, for any reason, or (b) the Final Court Approval Date does not occur, the Kirschner Claims and Amended Complaint will revert to, and remain an asset of, the Litigation Sub-Trust.

9.    <u>General Release By The HMIT Entities</u>. On the Agreement Date, and to the maximum extent permitted by law, each of the HMIT Entities, on behalf of itself and each of its respective Affiliates (including Affiliated and/or managed funds, accounts and other investment vehicles) and its and their respective current and former advisors, consultants, administrators, trustees, directors, officers, managers, executives, members, partners (including limited and general partners), employees, beneficiaries, direct and indirect shareholders and other equity holders, agents, participants, direct and indirect subsidiaries and parents, successors, predecessors, designees, and assigns (whether by operation of law or otherwise) (collectively with the HMIT Entities, the "**HMIT Releasors**") hereby forever, finally, fully, unconditionally, and completely releases, relieves, acquits, discharges, remises, and exonerates each Highland Released Party from, and waives and relinquishes, any and all Claims, which the HMIT Releasors, or any Person claiming through, under, or on behalf of any of the HMIT Releasors, ever had, now has, or hereafter can, shall, or may have against any of the Highland Released Parties by reason of, arising from, relating to, or in connection with, any fact, matter, or transaction that occurred prior to the Agreement Date, including any fact, matter, transaction, or occurrence in connection with, relating to, or with respect to the Bankruptcy Case, the management or operation of any of the Highland Released Parties, or the Highland Released Parties' property and including any defense, affirmative defenses, and right to setoff arising out of, or otherwise related to, any of the foregoing (collectively, the "**HMIT Entity Released Claims**").

001482
HCMLPHMIT00001013

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

10.    <u>General Release By The Highland Entities</u>.

(a)    On the Agreement Date, and to the maximum extent permitted by law, each of the Highland Entities, on behalf of itself and each of its respective Affiliates (including Affiliated and/or managed funds, accounts and other investment vehicles) and its or their respective current and former advisors, consultants, administrators, trustees, directors, officers, managers, executives, members, partners (including limited and general partners), employees, beneficiaries, direct and indirect shareholders and other equity holders, agents, participants, direct and indirect subsidiaries and parents, successors, predecessors, designees, and assigns (whether by operation of law or otherwise)(collectively with the Highland Entities, the "**Highland Releasors**") hereby forever, finally, fully, unconditionally, and completely releases, relieves, acquits, discharges, remises, and exonerates each HMIT Released Party from, and waives and relinquishes, any and all Claims, excepting any HMIT Note Claims, which the Highland Releasors, or any Person claiming through, under, or on behalf of any of the Highland Releasors, ever had, now has, or hereafter can, shall, or may have against any of the HMIT Released Parties by reason of, arising from, relating to, or in connection with, any fact, matter, or transaction that occurred prior to the Agreement Date, including any fact, matter, transaction, or occurrence in connection with, relating to, or with respect to the Bankruptcy Case, the management or operation of any of the HMIT Released Parties, or the HMIT Released Parties' property and including any defense, affirmative defenses, and right to setoff arising out of, or otherwise related to, any of the foregoing (collectively, the "**Initial Highland Released Claims**"). For the avoidance of doubt and notwithstanding anything herein to the contrary, the HMIT Note Claims shall not be released until Final Court Approval Date, at which time the HMIT Note will be applied to calculate the allowed HMIT Class 10 Interest set forth in <u>Section 4</u> and the balance of the HMIT Note and any HMIT Note Claims shall be released pursuant to <u>Section 10(b)</u>.

(b)    Upon the Final Court Approval Date, and to the maximum extent permitted by law, each of the Highland Releasors hereby forever, finally, fully, unconditionally, and completely releases, relieves, acquits, discharges, remises, and exonerates each HMIT Released Party from, and waives and relinquishes, the HMIT Note Claims (the "**Subsequent Highland Released Claims**" and together with the Initial Highland Released Claims, the "**Highland Entity Released Claims**" and together with the HMIT Entity Released Claims, the "**Released Claims**").

11.    <u>Further Provisions Concerning The General Releases</u>.

(a)    **FOR THE AVOIDANCE OF DOUBT, THE FOREGOING RELEASES ARE INTENDED TO BE GENERAL AND INCLUDE A RELEASE OF ALL RELEASED CLAIMS, WHETHER KNOWN OR UNKNOWN, SUSPECTED OR UNSUSPECTED, ARISING OR EXISTING FROM THE BEGINNING OF TIME THROUGH AND INCLUDING THE AGREEMENT DATE.**

(b)    To the maximum extent permitted by law, each of the HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, waives the benefit of any statute or other principle of law or

001483
HCMLPHMIT00001014

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

equity that limits the applicability of a release with respect to Claims that the releasing party does not know or suspect to exist in his, her or its favor at the time of executing the release.

(c)   Without limiting the scope of the foregoing waiver, in connection with the foregoing release, each of the HMIT Entities and the Highland Entities, on its own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, waives the benefits of Section 1542 of the California Civil Code (to the extent, if any, that Section 1542 might apply to the foregoing release), which provides as follows:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

Each of the HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, hereby agrees that the provisions of Section 1542 of the Civil Code of the State of California and all similar federal or state law, rights, rules or legal principles, legal or equitable, in each case solely to the extent such provisions apply, **ARE HEREBY KNOWINGLY AND VOLUNTARILY WAIVED AND RELINQUISHED BY EACH OF THE HMIT ENTITIES AND THE HIGHLAND ENTITIES, ON THEIR OWN BEHALF AND ON BEHALF OF THE OTHER HMIT RELEASORS AND HIGHLAND RELEASORS, RESPECTIVELY,** in each and every capacity, to the full extent that such rights and benefits pertaining to the matters released herein may be waived, and each of the HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, hereby agrees and acknowledges that this waiver and relinquishment is an essential term of this Agreement, without which the consideration provided would not have been given.

In connection with such waiver and relinquishment, each of the HMIT Entities and Highland Entities acknowledges that it is aware that it may hereafter discover Claims presently unknown or unsuspected, or facts in addition to or different from those which it now knows or believes to be true, with respect to the matters released herein. Nevertheless, it is the intent of each of the HMIT Entities and the Highland Entities, on its own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, in executing this Agreement fully, finally, and forever to settle and release all such matters, and all Claims related thereto, which exist, may exist or might have existed (whether or not previously or currently asserted in any action) which are the subject to the releases granted above.

(d)   As an integral component of this Agreement, and notwithstanding the Parties' intent set forth in the preamble hereto and the general nature of the releases in <u>Sections 9 and 10</u>, should:

(i)   any HMIT Releasor contend or assert that any Claim of any kind whatsoever held by any HMIT Releasor against any Highland Released Party survives this

001484
HCMLPHMIT00001015

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

Agreement and is in any way related to or arising from or in connection with any HMIT Entity Released Claim (such claim or cause of action, a "**HMIT Alleged Claim**"), such HMIT Releasor will be deemed to have irrevocably, fully, and finally assigned such HMIT Alleged Claim to the Highland Entities and the Highland Entities will be deemed to have forever, finally, full, unconditionally, and irrevocably, and completely released such HMIT Alleged Claim.

(ii)     any Highland Releasor contend or assert that any Claim of any kind whatsoever held by any Highland Releasor against any HMIT Released Party survives this Agreement and is in any way related to or arising from or in connection with any Highland Entity Released Claim (such claim or cause of action, a "**Highland Alleged Claim**"), such Highland Alleged Claim to the HMIT Entities and the HMIT Entities will be deemed to have forever, finally, full, unconditionally, and irrevocably, and completely released such Highland Alleged Claim.

12.     <u>Covenant Not To Sue; Limitation on Standing</u>. Upon the Agreement Date:

(a)     Each of the HMIT Releasors covenants and agrees that it will not institute or prosecute any Action, in law, in equity or otherwise, against any of the Highland Released Parties, to recover, enforce, or collect any HMIT Entity Released Claim and will not (i) induce, encourage or direct any other Person to do so or (ii) act in concert with or assist (financially or otherwise) any other Person in doing so.

(b)     Each of the Highland Releasors covenants and agrees that it will not institute or prosecute any Action, in law, in equity or otherwise, against any of the HMIT Released Parties, to recover, enforce, or collect any Highland Entity Released Claim and will not (i) induce, encourage or direct any other Person to do so or (ii) act in concert with or assist (financially or otherwise) any other Person in doing so.

(c)     For the avoidance of doubt, this Agreement shall not operate to give any HMIT Entity standing for any purpose in connection with the Bankruptcy Case (or in connection with any appeal arising from any order entered by the Bankruptcy Court), except for the limited purpose of seeking Court approval of this Agreement (including with respect to any appeal concerning any order entered granting or denying such approval), and except for the limited purpose of enforcing this Agreement, no HMIT Entity shall commence any Action in connection with the HMIT Class 10 Interest.

13.     <u>Representations and Warranties</u>.

(a)     Each of the HMIT Entities hereby represents and warrants that every HMIT Entity Released Claim has not heretofore been assigned or encumbered and is not the subject of a transfer (as such term is defined in 11 U.S.C. § 101(54)), by any HMIT Releasor.

(b)     The HMIT Entities, on their own behalf and on behalf of the other HMIT Releasors, acknowledge and agree that each Plan Provision is lawful, effective, and binding on the HMIT Releasors. The HMIT Entities further agree, on their own behalf and on behalf of the other HMIT Releasors, that the HMIT Releasors will never, in any way, challenge or seek to

001485
HCMLPHMIT00001016

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

modify, nullify, vacate, or revoke, or induce, encourage or direct any other Person to do so or act in concert with or assist (financially or otherwise) any other Person in doing so the Confirmation Order, the Plan, the Plan Protections, or any Plan Document, including the Claimant Trust Agreement, the LPA, the Indemnity Trust Agreement or the Litigation Sub-Trust Agreement, in the Bankruptcy Court, in any other state or federal court, in any other forum or tribunal, or otherwise, including administrative or regulatory tribunals and foreign courts.

(c)    Each of the Highland Entities hereby represents and warrants that every Highland Entity Released Claim has not heretofore been assigned or encumbered and is not the subject of a transfer (as such term is defined in 11 U.S.C. § 101(54)), by any Highland Releasor.

(d)    Each Party severally represents and warrants as to itself only that: (i) it has taken all necessary action to authorize and approve the execution, delivery and performance of this Agreement; (ii) such Party has full power and authority to execute and deliver this Agreement; and (iii) this Agreement constitutes a valid, legal and binding obligation of such Party, and is enforceable subject to its terms. Each individual signatory hereto individually warrants and represents to all Parties hereto that such individual has full power and authority to act on behalf of and bind the Party for which he or she has executed this Agreement; provided, however that no signatory shall otherwise provide any warranty or representation or otherwise be a party to this Agreement on an individual basis.

14.    No Continuing Rights, Duties or Obligations.  Except for the rights, duties, and obligations expressly set forth in this Agreement, all Rights and Obligations that existed or may have existed shall be deemed terminated, extinguished, and released upon the Agreement Date. For the avoidance of doubt, from and after the Agreement Date, (a) the Highland Released Parties, individually and collectively, shall owe no duty, past or present, including with respect to the Kirchner Claims, to the HMIT Releasors, individually and collectively, whether contractual, fiduciary, equitable, statutory or otherwise, except as arising out of this Agreement, and (b) the HMIT Released Parties, individually and collectively, shall owe no duty to the Highland Releasors, individually and collectively, whether contractual, fiduciary, equitable, statutory or otherwise, except as arising out of this Agreement.

15.    Gatekeeper Standard.

(a)    The HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, acknowledge and agree that, notwithstanding the United States Court of Appeals for the Fifth Circuit's decision in *Highland Capital Management Fund Advisors, L.P. v. Highland Capital Management, L.P.*, No. 23-10$^{534}$ (5th Cir. Mar. 18, 2025), the "Gatekeeper" provisions contained in Highland's Original Plan is forever binding on each of the HMIT Entities and for a claim or cause of action to be "colorable" for purposes of the Gatekeeper, it must be found by final order of the Bankruptcy Court (the "**Gatekeeper Court**"), which order shall be subject to appeal to a court of competent jurisdiction, to have satisfied the "Gatekeeper Colorability Test" as such term is defined in *In re Highland Capital Management, L.P.*, 2023 Bankr. LEXIS 2104 at *124-36 (Bankr. N.D. Tex. Aug. 24, 2023).

001486
HCMLPHMIT00001017

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

(b)    The HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, acknowledge and agree that compliance with the Gatekeeper requires (i) a motion seeking leave to sue an Exculpated Party (as that term is defined in Highland's original Plan) and a finding that the litigant's claims and causes of action are "colorable" attaching a complaint setting forth the basis for such claims or causes of action and (ii), in the Gatekeeper Court's sole discretion, an evidentiary hearing (during which the Gatekeeper Court may, among other things, hear testimony and assess the credibility of any witness(es)) to determine whether a proposed claim or cause of action is "colorable."

(c)    The HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, further acknowledge and agree that the moving party under the Gatekeeper has the burden of satisfying the "Gatekeeper Colorability Test."

16.    <u>Indemnification</u>.

(a)    Without in any manner limiting the available remedies for any breach of this Agreement, the HMIT Entities, severally but not jointly, agree to indemnify, defend, and hold the Highland Released Parties harmless from and against any and all Liability, that may arise or result from or on account of, or that are otherwise related or attributable to (x) any breach of this Agreement or of any representation or warranty contained in the Agreement, including the representations and warranties of any HMIT Entity set forth in <u>Section 13</u> or (y) any Actions brought or prosecuted by or on behalf of, any HMIT Releasor or that are induced, encouraged, assisted or directed by any HMIT Releasor or brought or prosecuted in concert with any HMIT Releasor against any Highland Released Party with respect to or related to any HMIT Entity Released Claims.  Without limiting the scope of the foregoing in any manner, any HMIT Entity that breaches <u>Section 12</u> shall be liable to the Highland Released Party against whom the applicable Action has been brought or prosecuted in violation of <u>Section 12</u> for the reasonable attorneys' fees and costs incurred by such Highland Released Party in defending against or otherwise responding to such Action.  Each HMIT Entity acknowledges and agrees that the HMIT Entities are and shall be severally but not jointly liable for any Liability arising from or out of any breach of this Agreement or of any representation or warranty set forth in this Agreement.

(b)    Without in any manner limiting the available remedies for any breach of this Agreement, the Highland Entities, severally but not jointly, agree to indemnify, defend, and hold the HMIT Released Parties harmless from and against any and all Liability, that may arise or result from or on account of, or that are otherwise related or attributable to (x) any breach of this Agreement or of any representation or warranty contained in the Agreement, including the representations and warranties of any Highland Entity set forth in <u>Section 13</u> or (y) any suits, proceedings, or other actions brought or prosecuted by or on behalf of, any Highland Releasor or that are induced, encouraged, assisted or directed by any Highland Releasor or brought or prosecuted in concert with any Highland Releasor against any HMIT Released Party with respect to or related to any Highland Entity Released Claims.  Without in any manner limiting the scope of the foregoing, any Highland Entity that breaches <u>Section 12</u> shall be liable to the HMIT

001487
HCMLPHMIT00001018

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

Released Party against whom the applicable Action has been brought or prosecuted in violation of <u>Section 12</u> for the reasonable attorneys' fees and costs incurred by such HMIT Released Party in defending against or otherwise responding to such Action. Each Highland Entity acknowledges and agrees that the Highland Entities are and shall be severally but not jointly liable for any Liability arising from or out of any breach of this Agreement or of any representation or warranty set forth in this Agreement.

17. <u>Execution</u>. This Agreement may be executed by the exchange of signatures by facsimile or by PDF attachment to an email transmittal and in counterparts, and if so executed, shall be fully executed when a counterpart has been executed and delivered by all Parties hereto through counsel. All counterparts taken together shall constitute one and the same agreement and shall be fully enforceable as such.

18. <u>Bankruptcy Court Order</u>. The allowance of the allowed HMIT Class 10 Interest pursuant to <u>Section 4</u> is subject to the entry of the Bankruptcy Court Order. To that end, the Highland Entities shall file the 9019 Motion no later than five (5) Business Days after the Agreement Date. Each Party shall, and shall cause each of their respective Affiliates to, undertake any and all actions in compliance with applicable law to obtain the Bankruptcy Court Order as promptly as practicable, and without limiting the foregoing, if an Action is threatened or instituted by any Person opposing the 9019 Motion or otherwise challenging the validity or legality, or seeking to restrain the consummation, of the transactions contemplated by this Agreement or the Bankruptcy Court Order, each Party shall, and shall cause its respective Affiliates to, use their commercially reasonable best efforts to avoid, resist, resolve or, if necessary, and defend to effectuate this Agreement and consummate the transactions hereby. If the 9019 Motion is not approved by entry of the Bankruptcy Court Order or if the Bankruptcy Court Approval is precluded from becoming a Final Order, (a) there will be no affect on, adjustment to, or impairment of, in any way, the validity and enforceability of the remainder of this Agreement, and the other transactions contemplated hereby, all of which shall remain in full force and effect and (b) each Party shall, and shall cause its respective Affiliates to, use their best efforts to seek the allowance of the HMIT Class 10 Interest in a substantially similar amount and on substantially similar terms as set forth in Section 4 to the fullest extent possible so as to give effect to the original intent of the Parties as closely as possible.

19. <u>Fees and Expenses</u>. Whether or not the transactions contemplated hereby are consummated or the Bankruptcy Court Order is obtained, and except as otherwise expressly provided in this Agreement, each Party will bear its respective fees, costs and expenses (including legal, accounting and other professional fees) incurred in connection with the preparation, negotiation, execution and performance of this Agreement or the transactions contemplated hereby, including with respect to each Party's respective obligations pursuant to <u>Section 18</u>. Notwithstanding the foregoing, if any Party hereto brings an Action to enforce or interpret the terms and provisions of this Agreement, the prevailing Party in that Action shall be entitled to have and recover from the non-prevailing Party all such fees, costs and expenses (including all court costs and reasonable attorneys' fees) as the prevailing Party may suffer or incur in the pursuit or defense of such action or proceeding.

001488

HCMLPHMIT00001019

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

20. <u>Entire Agreement; No Other Representations</u>. **THIS AGREEMENT CONTAINS THE ENTIRE AGREEMENT BETWEEN THE PARTIES, AND NO RIGHTS ARE CREATED IN FAVOR OF ANY PARTY OTHER THAN AS SPECIFIED OR EXPRESSLY SET FORTH IN THIS AGREEMENT. THERE ARE NO REPRESENTATIONS, CONDITIONS, WARRANTIES, STATEMENTS, OR UNDERSTANDINGS (COLLECTIVELY, "<u>REPRESENTATIONS</u>"), EITHER ORAL OR WRITTEN, BETWEEN THE PARTIES OTHER THAN THOSE EXPRESSLY SET FORTH IN THIS AGREEMENT. THE PARTIES EXPRESSLY AGREE THAT THEY HAVE NOT BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY ANY REPRESENTATIONS NOT SET FORTH IN THIS AGREEMENT; AND THE PARTIES EXPRESSLY AGREE THAT THEY HAVE NOT RELIED ON ANY REPRESENTATIONS NOT EXPRESSLY SET FORTH IN THIS AGREEMENT. THE PARTIES EXPRESSLY AGREE THAT THEY ARE ENTERING INTO THIS AGREEMENT RELYING SOLELY ON THEIR OWN JUDGMENT AND NOT ON ANY REPRESENTATIONS BY ANY PARTY, EXCEPT FOR THOSE REPRESENTATIONS EXPRESSLY SET FORTH IN THIS AGREEMENT. THE PARTIES AGREE THAT REPRESENTATIONS NOT EXPRESSLY SET FORTH IN THIS AGREEMENT SHALL NOT BE USED IN THE INTERPRETATION OR CONSTRUCTION OF THIS AGREEMENT, AND NEITHER THE HMIT RELEASED PARTIES NOR THE HIGHLAND RELEASED PARTIES SHALL HAVE ANY LIABILITY FOR ANY CONSEQUENCES ARISING AS A RESULT OF ANY REPRESENTATIONS NOT SET FORTH IN THIS AGREEMENT**.

21. <u>Agreement and Release Knowing and Voluntary</u>. The Parties acknowledge that they have considered this Agreement with their respective attorneys and have carefully read this Agreement, that it has been fully explained by their attorneys, and that they have had a reasonable opportunity to consider this Agreement. The Parties further represent that they know and fully understand the contents of this Agreement, that they intend to be legally bound by this Agreement and the releases and covenants contained herein, and that they are signing this Agreement, including the release provisions herein, voluntarily and of their own free will and without coercion, and with the benefit of advice of counsel.

22. <u>Cooperation</u>. The Parties agree to perform any services or actions reasonably necessary to carry out the terms and conditions of this Agreement or the transactions contemplated hereby, including the execution and delivery of reasonable additional documents, instruments, conveyances and/or assurances, in good faith, and to reasonably communicate and cooperate with one another in this regard. For the avoidance of doubt, nothing in this Section shall obligate the Highland Entities to assist the HMIT Entities in any way with respect to the Kirschner Claims, including the prosecution thereof.

23. <u>Governing Law</u>. This Agreement shall be construed pursuant to and governed by the laws of the State of Delaware (substantive and procedural) without reference to principles of conflicts of law that would result in the application of any other State's laws.

24. <u>Jurisdiction/Venue</u>. The Parties hereby irrevocably submit to the jurisdiction and venue of the Bankruptcy Court with respect to any action or proceeding arising out of or related

001489

HCMLPHMIT00001020

to this Agreement or the subject matter hereof; if (and only if) the Bankruptcy Court lacks personal or subject matter jurisdiction to adjudicate an action or proceeding arising out of or related to this Agreement or the subject matter hereof, then the Parties irrevocably submit to the jurisdiction and venue of the United States District Court for the Northern District of Texas.

25. <u>No Admissions</u>. All Parties acknowledge and agree that the matters set forth in this Agreement constitute the settlement and compromise of disputed Claims and that this Agreement shall not constitute the admission of any fact or liability by any of them regarding any Claim, including the Claims released hereunder, and neither the terms hereof, nor the fact of this Agreement itself, shall be evidence of any kind in any Action, other than an Action to enforce the terms of the Agreement or any instrument executed in connection herewith or any claim for damages or other relief for breach of any representation or warranty contained herein or in any instrument executed in connection herewith.

26. <u>Other Provisions</u>.

(a) This Agreement contains the entire agreement and understanding of the parties and supersedes any and all prior or contemporaneous agreements, arrangements, and understandings relating to the subject matter of this Agreement. No representation, inducement, agreement, promise or understandings altering, modifying, amending, taking from or adding to, the terms and conditions hereof shall have any force or effect unless the same is in writing and validly executed by each of the Parties hereto.

(b) The waiver by any Party of any breach of, or default under, any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach or default; provided, however, that for any such waiver to be enforceable, it shall be in writing and executed by the non-breaching Party.

(c) The headings contained in this Agreement are for convenience only and shall in no way restrict or otherwise affect the construction of the provisions hereof.

(d) The Parties shall each execute all documents and perform all acts necessary and proper to effectuate the terms of this Agreement.

27. <u>Notices</u>. All notices required or permitted to be provided hereunder shall be afforded to the respective parties to and through their counsel, and shall be transmitted simultaneously by electronic mail (with PDF attachments, as necessary) and by telefax, addressed as follows:

To the Highland Entities:

**PACHULSKI STANG ZIEHL AND JONES LLP**
Jeffrey N. Pomerantz
John A. Morris
10100 Santa Monica Boulevard
Los Angeles, California 90067-4003
310.277.6910

001490
HCMLPHMIT00001021

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

jpomerantz@pszjlaw.com
jmorris@pszjlaw.com

To the HMIT Entities:

**KELLY HART PITRE**
Louis M. Phillips
Amelia Hurt
301 Main Street, Suite 1600
225.381.9643
Louis.Phillips@Kellyhart.com
Amelia.Hurt@Kellyhart.com

28.    <u>Severability</u>. Should any term, provision or paragraph of this Agreement be determined to be illegal or void or of no force and effect, the balance of the Agreement shall survive.  The invalidity or unenforceability of any provision of this Agreement shall not affect the validity and enforceability of any other provision of this Agreement.

29.    <u>Interpretive Provisions</u>. Unless the express context otherwise requires: (a) the words "hereof," "herein" and "hereunder" and words of similar import, when used in this Agreement, shall refer to this Agreement as a whole and not to any particular provision of this Agreement; (b) words defined in the singular shall have a comparable meaning when used in the plural, and vice versa; (c) the words "Dollars" and "$" mean U.S. dollars; (d) references herein to a specific Section, Subsection, Recital, Schedule or Exhibit shall refer, respectively, to Sections, Subsections, Recitals, Schedules or Exhibits of this Agreement; (e) wherever the word "include," "includes" or "including" is used in this Agreement, it shall be deemed to be followed by the words ",without limitation,"; (f) references herein to any gender shall include each other gender; (g) references herein to any Person shall include such Person's heirs, executors, personal representatives, administrators, successors and assigns; provided, however, that nothing contained in this clause (g) is intended to authorize any assignment or transfer not otherwise permitted by this Agreement; (h) with respect to the determination of any period of time, the word "from" means "from and including" and the words "to" and "until" each means "to but excluding"; (i) the word "or" shall be disjunctive but not exclusive; (j) the headings contained in this Agreement are intended solely for convenience and shall not affect the rights of the Parties; and (k) if the last day for the giving of any notice or the performance of any act required or permitted under this Agreement is a day that is not a Business Day, then the time for the giving of such notice or the performance of such action shall be extended to the next succeeding Business Day.

*[Signature page follows]*

001491
HCMLPHMIT00001022

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first written above.

**HUNTER MOUNTAIN INVESTMENT TRUST**

By _____
    Name:    Mark Patrick
    Title:    Administrator
    Date:    April __, 2025

**RAND ADVISORS, LLC**

By _____
    Name:    Mark Patrick
    Title:    President
    Date:    April __, 2025

**RAND PE FUND I, LP**
By: Rand PE Fund Management, LLC, its General Partner

By _____
    Name:    Mark Patrick
    Title:    President
    Date:    April __, 2025

**RAND PE FUND MANAGEMENT, LLC**

By _____
    Name:    Mark Patrick
    Title:    President
    Date:    April __, 2025

**ATLAS IDF, LP**
By: Atlas IDF GP, LLC, its General Partner

By _____

001492

HCMLPHMIT00001023

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

Name:     Mark Patrick
Title:      President
Date:      April __, 2025

**ATLAS IDF GP, LLC**

By    _____
Name:     Mark Patrick
Title:      President
Date:      April __, 2025

**HIGHLAND CAPITAL MANAGEMENT, L.P.**

By    _____
Name:     James. P. Seery, Jr.
Title:      Chief Executive Officer
Date:      April __, 2025

**HIGHLAND CLAIMANT TRUST**

By    _____
Name:     James P. Seery, Jr.
Title:      Claimant Trustee
Date:      April __, 2025

**HIGHLAND LITIGATION SUB-TRUST**

By    _____
Name:     Marc S. Kirschner
Title:      Litigation Trustee
Date:      April __, 2025

001493

HCMLPHMIT00001024

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

**HIGHLAND INDEMNITY TRUST**


By _____
       Name:    James P. Seery, Jr.
       Title:     Indemnity Trust Administrator
       Date:    April __, 2025

001494

HCMLPHMIT00001025

**EXHIBIT**

001495

**From:** David Klos <DKlos@HighlandCapital.com>
**To:** Jim Seery <jpseeryjr@gmail.com>, Kristin Hendrix <KHendrix@HighlandCapital.com>, "mpatrick@dafholdco.com" <mpatrick@dafholdco.com>, Shawn Raver <sraver@dafholdco.com>, "paul@gkmanagement.com.ky" <paul@gkmanagement.com.ky>
**Subject:** Confidential discussion - Subject to Rule 408 and Confidentiality Agreement
**Date:** Thu, 3 Apr 2025 13:16:34 +0000
**Importance:** Normal
**Attachments:** unnamed

---

# Microsoft Teams Need help?

## Join the meeting now

Meeting ID: 226 527 188 989

Passcode: tT6tZ9dz

---

## Dial in by phone

+1 469-844-8017,,153081385# United States, Dallas

Find a local number

Phone conference ID: 153 081 385#

For organizers: Meeting options | Reset dial-in PIN

---

HCMLPHMIT00001037

**EXHIBIT**

**From:** David Klos <DKlos@HighlandCapital.com>
**To:** Mark Patrick <MPatrick@CharitableDAF.com>
**Cc:** Kristin Hendrix <KHendrix@HighlandCapital.com>, Jim Seery <jpseeryjr@gmail.com>
**Subject:** Time tomorrow for a Teams
**Date:** Wed, 2 Apr 2025 20:29:42 +0000
**Importance:** Normal

---

Mark,

It's been a long time - I hope this email finds you doing well.

I understand that you have some time tomorrow for a Teams call for an initial discussion around financial information.  Could I propose an hour starting at 11:30 CT?

We plan to have Kristin and Jim on (cc'd), in addition to me.  I don't know that I have a good email for Shawn, so in addition to confirming the time works for you, could you also provide his email or just confirm that you will be able to forward him the invite?  Once I hear from you, I'll circulate a Teams.  Thanks and looking forward to speaking with you soon.

-Dave
214-674-2926

HCMLPHMIT00001042

**EXHIBIT**

001499

**From:** Jim Seery <jpseeryjr@gmail.com>
**To:** "John A. Morris" <jmorris@pszjlaw.com>, Tim Cournoyer
<TCournoyer@HighlandCapital.com>, David Klos <DKlos@HighlandCapital.com>,
Matthew Gray <MGray@HighlandCapital.com>
**Subject:** FW: PRIVILEGED AND CONFIDENTIAL
**Date:** Wed, 11 Jun 2025 17:29:13 +0000
**Importance:** Normal
**Attachments:** Highland_HMIT-Rand_Settlement_Agreement.012(Highland_Draft_05.15.25).docx;
Written_Consent_-_Class_9_Holders_.docx

---

Best.  Jim

Jim Seery
631-804-2049
jpseeryjr@gmail.com

---

**From:** jpseeryjr@gmail.com <jpseeryjr@gmail.com>
**Date:** Friday, May 16, 2025 at 9:45 AM
**To:** Nader Attalla <nader.attalla@ubs.com>, Katie.George@lw.com <Katie.George@lw.com>, Gregory V. Demo
<GDemo@pszjlaw.com>
**Cc:** David Klos <DKlos@highlandcapital.com>, Tim Cournoyer <TCournoyer@highlandcapital.com>
**Subject:** Re: PRIVILEGED AND CONFIDENTIAL

Nader and Katie:

Attached is final version of the Class 9 consent with Exhibit B showing the proposed payments to
Class 9 and Class 10.  I have also attached the latest version of the Settlement Agreement which will
be an exhibit to the consent.  Aside from the timing of the Class 10 payments, there are no provisions
in the agreement that affect UBS.

As discussed, assuming final agreement on the settlement and filing of the approval motion this
evening, we anticipate Bankruptcy Court approval in mid-July.  After court approval, the first $10mm
would be paid to Class 9 and Class 10 simultaneously.

Class 9 will also receive the proceeds from the Daugherty Class 8 reserve when that claim is
disallowed.  We filed our objection/complaint last week and expect resolution around September 30.

The balance of Class 9 will be paid off with the First Subsequent Distribution to Class 10 on December
1, 2027.

Please call me if you have any questions.

We appreciate your assistance trying to get the consent approved as soon as possible.

Thank you.

Best.  Jim

001500

Jim Seery
631-804-2049
jpseeryjr@gmail.com

---

**Fr**

HCMLPHMIT00001221

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/16/2025

## SETTLEMENT AGREEMENT & GENERAL RELEASE

THIS SETTLEMENT AGREEMENT & GENERAL RELEASE (this "**Agreement**") is entered into as of May 16, 2025 (the "**Agreement Date**"), by and among Highland Capital Management, L.P., a Delaware limited partnership ("**Highland**"), the Highland Claimant Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act (the "**Claimant Trust**"), the Highland Litigation Sub-Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act (the "**Litigation Sub-Trust**"), and the Highland Indemnity Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act (the "**Indemnity Trust**", and together with Highland, the Claimant Trust and the Litigation Sub-Trust, the "**Highland Entities**"), on the one hand, and Hunter Mountain Investment Trust, a Delaware statutory trust ("**HMIT**"), Beacon Mountain LLC, a Delaware limited liability company ("**Beacon Mountain**"), Rand Advisors, LLC, a Delaware limited liability company ("**Rand Advisors**"), Rand PE Fund I, LP, a Delaware series limited partnership ("**Rand PE Fund**"), Rand PE Fund Management, LLC, a Delaware limited liability company ("**Rand GP**"), Atlas IDF, LP, a Delaware limited partnership ("**Atlas IDF**"), Atlas IDF GP, LLC, a Delaware limited liability company ("**Atlas GP**" and together with HMIT, Beacon Mountain, Rand Advisors, Rand PE Fund, Rand GP and Atlas IDF, the "**HMIT Entities**"), on the other hand.  The Highland Entities and the HMIT Entities are collectively referred to as the "**Parties**," and each individually, as a "**Party**".

## DEFINITIONS

Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Claimant Trust Agreement or the Plan, as applicable (in each case, as hereinafter defined). For purposes of this Agreement, the following capitalized terms have the following meanings:

"**9019 Motion**" means the motion seeking entry of the Bankruptcy Court Order pursuant to Bankruptcy Rule 9019 and in accordance with Section 18.

"**Action**" means any action, claim, demand, arbitration, hearing, charge, complaint, investigation, examination, indictment, litigation, suit or other civil, criminal, administrative or investigative proceedings, including any petition under Rule 202 of the Texas Rules of Civil Procedure.

"**Affiliate**" means a Person that, directly or indirectly, through one or more intermediaries, controls or is controlled by, or is under common control with, a specified Person as of the date on which, or at any time during the period for which, the determination of affiliation is being made. The term "control" (including, with correlative meanings, the terms "controlled by" and "under common control with"), as applied to any Person, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting securities or other ownership interest, by contract or otherwise.

"**Amended Complaint**" means the *Amended Complaint and Objection to Claims*, filed as docket number 158 in *Kirschner v. Dondero*, Adv. Pro. No. 21-03076-sgj (Bankr. N.D. Tex. May 19, 2022).

"**Bankruptcy Case**" means *In re Highland Capital Management, L.P.*, Case No. 19-34054-sgj (Bankr. N.D. Tex.) and its related proceedings.

001502

HCMLPHMIT00001222

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/16/2025

"**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended).

"**Bankruptcy Court**" means the U.S. Bankruptcy Court for the Northern District of Texas, Dallas Division.

"**Bankruptcy Court Approval Date**" means the date on which the Bankruptcy Court Order is issued.

"**Bankruptcy Court Order**" means an order of the Bankruptcy Court approving the allowance of the HMIT's Class 10 Interest as provided in this Agreement pursuant to the 9019 Motion.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure.

"**Business Day**" means any day other than (i) a Saturday or a Sunday, (ii) a day on which the Federal Reserve Bank of New York or the New York Stock Exchange is closed, or (iii) a day on which banks in the States of Texas are required, or authorized by law, to close.

"**Claimant Trust Agreement**" means that certain Claimant Trust Agreement of the Claimant Trust (as may have been or may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), effective as of August 11, 2021, by and among Highland, as settlor, James P. Seery, Jr., a Claimant Trustee, and Wilmington Trust, National Association, a national banking association, as Delaware trustee.

"**Claims**" means any claims, debts, liabilities, demands, obligations, breaches of contract, breaches of duty or any relationship, misfeasance, malfeasance, promises, acts, omissions, agreements, liens, losses, costs and expenses (including attorney's fees and related costs), damages, injuries, suits, Actions, and causes of action of whatever kind or nature, whenever and however, arising, whether known or unknown, suspected or unsuspected, matured or unmatured, liquidated or unliquidated, contingent or fixed, at law or in equity, statutory or otherwise.

"**Class 10**" means the class of Claims or Equity Interests described in Article II. Section H.10. of the Plan.

"**Class 11**" means the class of Claims or Equity Interests described in Article II. Section H.11. of the Plan.

"**Committee**" means the official committee of unsecured creditors appointed in the Bankruptcy Case.

"**Confirmation Order**" means that certain *Order Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (ii) Granting Related Relief* [Docket No. 1943], as conformed in accordance with the Fifth Circuit's rulings.

"**Dugaboy Note**" means that certain Promissory Note dated May 31, 2017, in the original face amount of $24,268,621.69, from The Dugaboy Investment Trust, as Maker, and Highland Capital Management, L.P. and The Get Good Non-Exempt Trust, collectively as Payee.

001503

HCMLPHMIT00001223

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/16/2025

"**Final Court Approval Date**" means the date on which the Bankruptcy Court Order becomes a Final Order.

"**Final Order**" means an order or judgment of the Bankruptcy Court, which is in full force and effect, and as to which the time to appeal, petition for certiorari, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, new trial, reargument, or rehearing shall have been waived in writing in form and substance satisfactory to the Highland Entities, as applicable, or, in the event that an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order of the Bankruptcy Court shall have been determined by the highest court to which such order was appealed, or certiorari, new trial, reargument or rehearing shall have been denied and the time to take any further appeal, petition for certiorari, or move for a new trial, reargument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be Filed with respect to such order shall not preclude such order from being a Final Order.

"**Gatekeeper**" means the gatekeeping provision contained in Article IX. F of the Plan as of August 11, 2021.

"**Governmental Authority**" means any federal, provincial, state, local or foreign government or political subdivision thereof, court of competent jurisdiction, administrative agency, judicial or arbitral body, or commission or other governmental or regulatory authority or instrumentality.

"**Highland Released Parties**" means collectively (i) the Highland Entities, (ii) any Affiliate of any Highland Entity and any Person directly or indirectly majority-owned by any Highland Entity or any of their respective Affiliates, (iii) any Person directly or indirectly managed by any Highland Entity or any of their respective Affiliates, whether by contract or otherwise (the entities described in clauses (i)-(iii), collectively, the "**Highland Parties**"), (iv) each of the Highland Parties' current and former trustees and administrators (including the trustees of any of the Claimant Trust, the Litigation Sub-Trust, or the Indemnity Trust), officers, executives, agents, directors, advisors, advisory representatives, consultants, administrators, managers, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns, (v) the current and former members of the Oversight Board of the Claimant Trust in any capacity (including Richard Katz) and their Affiliates, (vi) Farallon Capital Management, LLC, Stonehill Capital Management, LLC, Muck Holdings LLC, and Jessup Holdings LLC, in each case, in any capacity, (vii) the Independent Board and its members John Dubel, James P. Seery, Jr., and Russell Nelms, (viii) James P. Seery, Jr., individually and in all capacities for any Highland Released Party, including as Chief Executive Officer of Highland Capital Management, L.P., Claimant Trustee of the Claimant Trust, and the Indemnity Trust Administrator of the Indemnity Trust, (ix) Marc S. Kirschner, individually and as Trustee of the Litigation Sub-Trust, (x) the Committee and each of its members, (xi) the professionals (and their respective firms) (a) retained by Highland or the Committee during the Bankruptcy Case or which provided services to Highland or the Committee during the Bankruptcy Case or (b) retained by any Highland Released Party on or after August 11, 2021, (xii) any Person indemnified by any

3

001504

HCMLPHMIT00001224

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/16/2025

Highland Party (the Persons described in clauses (i)-(xii), collectively, the "**Highland Covered Parties**"), and (xii) each Highland Covered Party's current and former officers, executives, agents, attorneys (and their respective firms), directors, advisors, consultants, administrators, managers, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns, if not otherwise included in the defined term "Highland Covered Parties;" provided, however, and for the avoidance of doubt, and without in any way limiting the scope of the foregoing, "Highland Covered Parties" shall include Highland CLO Funding, Ltd., Highland HCF Advisor, Ltd., Highland Multi Strategy Credit Fund, L.P., Highland Multi Strategy Credit Fund GP, L.P., Highland Multi Strategy Credit GP, LLC, Highland Multi Strategy Credit Fund, Ltd., Highland Select Equity Master Fund, L.P., Highland Select Equity Fund GP, L.P., Highland Select Equity Fund, L.P., Highland Restoration Capital Partners Master, L.P., Highland Restoration Capital Partners GP, LLC, Highland Restoration Capital Partners, L.P., Highland Restoration Capital Partners Offshore, L.P., Highland Offshore Director, LLC, Acis CLO Management, LLC, Neutra, Ltd., Pollack, Ltd., Acis CLO Management Holdings, L.P., Acis CLO Management Intermediate Holdings I, LLC, Acis CLO Management Intermediate Holdings II, LLC, Acis CLO Assets Holdings Limited, CHG Houston Holdings, LLC, Penant Management, L.P., Penant Management GP, LLC, Gunwale, LLC, HE Capital, LLC, Gleneagles CLO, Ltd., Aberdeen Loan Funding, Ltd. Highland Argentina Regional Opportunity Fund GP, LLC, Highland Argentina Regional Opportunity Fund, L.P., Highland Argentina Regional Opportunity Fund, Ltd., Highland Argentina Regional Opportunity Master Fund, L.P., Highland Latin America Consulting, Ltd., Highland Capital Management Korea Limited, Highland Capital Management Latin America, L.P., Highland Latin America GP, Ltd., Highland Latin America LP, Ltd., Highland Offshore Partners, L.P. (Diversified), Brentwood CLO, Ltd., Eastland CLO, Ltd., Bristol Bay Funding Ltd., Jasper CLO Ltd., Highland Legacy Limited, Grayson CLO, Ltd., Greenbriar CLO, Ltd., Highland Loan Funding V Ltd., Highland Park CDO I, Ltd., Liberty CLO, Ltd., Valhalla CLO, Ltd., Stratford CLO Ltd., Southfork CLO, Ltd., Pam Capital Funding, L.P., Stonebridge-Highland Healthcare Private Equity Fund, Pamco Cayman Ltd., Red River CLO, Ltd., Rockwall CDO II Ltd., Rockwall CDO, Ltd., Westchester CLO, Ltd. Longhorn Credit Funding, LLC, PensionDanmark Pensionsforsikringsaktieselskab, Highland Dynamic Income Master Fund L.P., Highland Dynamic Income Fund GP, LLC, Highland Dynamic Income Fund, L.P., Highland Dynamic Income Fund, Ltd., Highland JHT Holdings, LLC, Highland Prometheus Master Fund, L.P., Highland Prometheus Feeder Fund I, L.P., Highland Prometheus Feeder Fund II, L.P., Highland Sunbridge GP, LLC, Trussway Holdings, LLC, Trussway Industries, LLC, TW Company, Inc., T-Way Investments, LLC, SSP Holdings, LLC, Highland Flexible Income UCITS Fund, and Acis CLO 2017-7, Ltd. *Notwithstanding the forgoing or anything herein to the contrary*, none of "Highland Released Parties", "Highland Parties", nor "Highland Covered Parties" shall include James Dondero, Scott Ellington, Isaac Leventon, or any Person directly or indirectly owned as of the date hereof (in whole or in part) by, and/or Affiliated as of the date hereof with, or claiming through, under or on behalf of, any of Mr. Dondero, Mr. Ellington, or Mr. Leventon in any manner and none of such Persons are released from any Claim by any Person in connection with this Agreement.

"**HMIT Class 10 Interest**" means the unvested, contingent Class 10 interest in the Claimant Trust (a) to be allowed on account of HMIT's pre-petition equity interest in Highland, and (b) subject to the terms and conditions, as applicable, of the Plan, the Plan Documents, the Claimant Trust Agreement, and in accordance with this Agreement, and applicable law.

001505

HCMLPHMIT00001225

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/16/2025

"**HMIT Note**" means that certain Secured Promissory Note dated December 21, 2015, in the original face amount of $63,000,000 from HMIT, as maker, and Highland, as payee.

"**HMIT Note Claims**" means any Claim related to, in connection with or arising out of the HMIT Note.

"**HMIT Released Parties**" means collectively (i) the HMIT Entities, (ii) any Affiliate of any HMIT Entity and any Person directly or indirectly majority owned by any HMIT Entity or any of their respective Affiliates, (iii) any Person directly or indirectly managed by any HMIT Entity or any of their respective Affiliates, whether by contract or otherwise (the entities described in clauses (i) – (iii), collectively, the "**HMIT Parties**"), (iv) each of the HMIT Parties' current and former trustees, administrators, officer, executives, agents, directors, advisors, consultants, manager, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns (v) the professionals (and their respective firms (a) retained by any HMIT Party during the Bankruptcy Case or which provided services to any HMIT Party during the Bankruptcy Case or (b) retained by any HMIT Released Party on or after August 11, 2021, (vi) any Person indemnified by any HMIT Party (the Persons described in clauses (i) – (vi), collectively, the "**HMIT Covered Parties**"), and (vii) each HMIT Covered Party's current and former officers, executives, agents, directors, advisors, consultants, administrators, managers, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns, if not otherwise included in the defined term "HMIT Covered Parties." *Notwithstanding the forgoing*, none of "HMIT Released Parties", "HMIT Parties", nor "HMIT Covered Parties" shall include James Dondero, Scott Ellington, Isaac Leventon, or any Person directly or indirectly owned as of the date hereof (in whole or in part) by, and/or Affiliated as of the date hereof with, or claiming through, under or on behalf of, any of Mr. Dondero, Mr. Ellington, or Mr. Leventon in any manner, and none of such Persons are released from any Claims by any Person in connection with this Agreement.

"**Indemnity Trust Administrator**" has the meaning given to it in the Indemnity Trust Agreement.

"**Indemnity Trust Agreement**" means that certain *Second Amended and Restated Indemnity Trust Agreement of the Indemnity Trust* (as may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), effective as of [April 28], 2025, by and among the Claimant Trust, as grantor, James P. Seery, Jr., as indemnity trust administrator, and Wilmington Trust, National Association, a national banking association, as indemnity trustee and Delaware trustee.

"**Indemnity Trust Assets**" has the meaning set forth in the Indemnity Trust Agreement, but excluding Highland, the Claimant Trust, and their respective assets.

"**Independent Board**" means the independent board appointed by the Bankruptcy Court on January 9, 2020, pursuant to that certain *Order Approving Settlement with Official Committee of Unsecured Creditors Regarding Governance of the Debtor and Procedures for Operations in the Ordinary Course* [Docket No. 339].

001506

HCMLPHMIT00001226

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/16/2025

"**Kirschner Claims**" means all Claims and causes of action that were asserted or could have been asserted by the Litigation Trustee of the Litigation Sub-Trust, in the Amended Complaint.

"**Liability**" means any liability, debt, obligation, loss, damage, claim, cost or expense (including costs of investigation and defense and attorney's fees, costs and expenses), in each case, whether direct or indirect, whether accrued or contingent, whether or not involving a third-party claim, and including incidental and consequential damages and diminution of value.

"**Litigation Protections**" means, individually and collectively, the rights, duties, and obligations set forth in Sections 1 – 2 and Sections 9 - 16.

"**Litigation Sub-Trust**" means the Highland Litigation Sub-Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act.

"**Litigation Sub-Trust Agreement**" means that certain Litigation Sub-Trust Agreement of the Litigation Sub-Trust (as may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), effective as of August 16, 2021, by and among James P. Seery, Jr., as Claimant Trustee of the Claimant Trust, Wilmington Trust, National Association, a national banking association, as Delaware Trustee, and the Litigation Trustee.

"**Litigation Trustee**" means Marc S. Kirschner, as Litigation Trustee of the Litigation Sub-Trust.

"**LPA**" means that certain *Sixth Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P.* (as may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), dated as of October 4, 2021.

"Operating Expenses" means, except for the expenses of the Indemnity Trust (including any payments to Trust Indemnified Parties or Indemnified Parties (in each case, as defined, and pursuant to the terms and conditions set forth, in the Indemnity Trust Agreement)), the expenses of operating and administering the Highland Entities, including legal expenses, employee compensation, Claimant Trustee/CEO and other trust and trustee related compensation, incentive compensation, and customary general and administrative expenses.

"**Original Plan**" means that certain *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* attached as Exhibit A to the *Order (A) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as modified) and (B) Granting Related Relief*, filed at Docket No. 1943 on the Bankruptcy Court's docket.

"**Oversight Board**" means the oversight board of the Highland Claimant Trust.

"**Pending Litigation**" means (i) *Hunter Mountain Investment Trust v. Highland Cap. Mgmt., L.P.*, Case No. 3:23-cv-02071-E (N.D. Tex.), on remand to the Bankruptcy Court (including *Hunter Mountain Investment Trust's Emergency Motion for Leave to File Adversary Proceeding* filed at Bankruptcy Court Docket No. 3699 and all proceedings, decisions, and orders relating there); (ii) *Dugaboy Investment Trust v. Highland Cap. Mgmt, L.P.*, 3:24-cv-01531-X

001507
HCMLPHMIT00001227

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/16/2025

(N.D. Tex.) (only as to HMIT), and (iii) *Hunter Mountain Investment Trust v. Highland Cap. Mgmt., L.P.*, Case No. 3:24-cv-01786-L (N.D. Tex.).

"**Permitted Investments**" has the meaning set forth in the Indemnity Trust Agreement.

"**Person**" means any natural person, partnership, limited liability partnership, corporation, limited liability company, association, joint stock company, trust, estate, joint venture, unincorporated organization or Governmental Authority.

"**Plan**" means that certain *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* as conformed in accordance with the Fifth Circuit's rulings.

"**Plan Documents**" has the meaning given to it in the Plan.

"**Plan Protections**" means, collectively, the provisions of the Plan contained in Article IX thereof.

"**Pro Rata**" means the proportion that (a) the allowed amount of a particular Claim or Equity Interest in Class 10 bears to (b) the aggregate allowed amount of all Claims or Equity Interests in Class 10.

"**Threats**" means any written threats of legal action, legal demands, filed complaints, petitions for pre-suit discovery, suits, litigations, arbitrations, actual or threated restraining orders or injunctions made in writing, or similar written actions of any kind, or sworn statements evidencing the same, in any forum against any Trust Indemnified Parties or Indemnified Party (both as defined in the Indemnity Trust Agreement), excluding any such action that would otherwise be a Threat except that any applicable statute of limitations that could be applicable to such action has expired.

"**Threats Notice**" means the written notice of any Threats received by the Indemnity Trust with respect to any Trust Indemnified Parties or Indemnified Party (both as defined in the Indemnity Trust Agreement), that is hereby required to be provided by the Indemnity Trust to the HMIT Entities, within five (5) Business Days after receipt of such Threat.

## RECITALS

**WHEREAS**, as of the Petition Date, HMIT held Class B and Class C Limited Partnerships Interests in Highland;

**WHEREAS**, on December 21, 2015, HMIT entered into the HMIT Note with Highland, which had a total outstanding principal balance of Fifty-Seven Million Six Hundred Ninety Thousand Six Hundred Forty and 95/100 Dollars ($57,690,640.95) as of the Petition Date (the "**HMIT Note Balance**");

**WHEREAS**, HMIT's Class B and Class C Limited Partnership Interests in Highland were extinguished on August 11, 2021, in accordance with the Plan;

001508

HCMLPHMIT00001228

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/16/2025

**WHEREAS**, pursuant to the LPA, HMIT's capital account balance at Highland on account of its Class B and Class C Limited Partnership Interests on the Petition Date was Three Hundred Ninety-Four Million Six Hundred Thirty Thousand Eight Hundred Seventy-One and 53/100 Dollars ($394,630,871.53) (the "**HMIT Capital Account Balance**");

**WHEREAS**, some or all of the HMIT Entities have asserted certain Claims against certain Highland Entities and certain other Highland Covered Parties, including those asserted in the Pending Litigation;

WHEREAS, certain distributions to be made to the holders of allowed Class 10 Claims or Equity Interests pursuant to the terms and subject to the conditions set forth herein are premised on the consent of certain Highland Covered Parties in their capacity as Holders of Class 9 Interests, and such Persons are only willing to provide such consent in exchange for the releases as set forth in this Agreement;

**WHEREAS**, some or all of the Highland Entities have asserted certain Claims against certain HMIT Entities, including the HMIT Note Claims;

**WHEREAS**, the Parties wish to terminate, extinguish, and release any and all rights, duties, obligations and Claims that (a) any of the Highland Released Parties owed or have, or may have owed or have, to or with respect to any of the HMIT Released Parties, and (b) any of the HMIT Released Parties owed or have, or may have owed or have, to or with respect to any of the Highland Released Parties, as provided in this Agreement (collectively, the "**Rights and Obligations**");

**WHEREAS**, the Parties agree that the Litigation Protections are intended to enact a permanent cessation of all litigation concerning or related to the Highland Released Parties through and including the Agreement Date; and

**WHEREAS**, the Parties, individually and collectively, wish to (a) resolve all disputes between and/or among any of the Highland Entities and their respective indemnitees, on the one hand, and any of the HMIT Entities, on the other hand, including those asserted or attempted to be asserted in the Pending Litigation, (b) fix and allow HMIT's Class 10 Interest at the amount and on the terms provided herein; and (c) terminate, extinguish, and release all Rights and Obligations on the terms provided herein.

**NOW THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree as follows:

## AGREEMENT

1.   Stay and Dismissal of Pending Litigation With Prejudice.

(a)   Within five (5) Business Days after the Agreement Date, the HMIT Entities shall take all steps necessary (at their own cost) to stay the Pending Litigation.

001509

HCMLPHMIT00001229

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/16/2025

(b)    Within five (5) Business Days after the Bankruptcy Court Approval Date, the HMIT Entities shall take all steps necessary (at their own cost) to dismiss the Pending Litigation with prejudice.

2.    <u>Maintenance of Stay and Dismissal of Certain Defendants from the Amended Complaint</u>.

(a)    The Litigation Trustee shall continue to maintain the stay of Adv. Proc. No. 21-03076-sgj and all related proceedings arising therefrom through the Bankruptcy Court Approval Date. Within five (5) Business Days after the Bankruptcy Court Approval Date, the Litigation Sub-Trust shall take all steps necessary (at its own cost) to dismiss, with prejudice, HMIT and Rand PE from Counts I, II, III, and XXIV of the Amended Complaint.

3.    <u>Cash Payment to HMIT</u>.  Within five (5) Business Days following the Bankruptcy Court Approval Date, Highland shall pay HMIT a one-time, lump sum of Five Hundred Thousand Dollars (US$500,000.00) (the "**Payment**") by wire transfer:

[wire instructions]

4.    <u>HMIT Class 10 Interest</u>.

(a)    Subject to entry of the Bankruptcy Court Order, and the terms of this Agreement, the HMIT Class 10 Interest shall be deemed allowed in the amount of Three Hundred Thirty-Six Million Nine Hundred Forty Thousand Two Hundred Thirty and 58/100 Dollars (US$336,940,230.58), which amount represents the HMIT Capital Account Balance, <u>less</u> the HMIT Note Balance.

(b)    Notwithstanding anything to the contrary in the Plan or the Claimant Trust Agreement, as an integral part of this Agreement to consent to the allowance of the HMIT Class 10 Interest and the other considerations in this Agreement, HMIT shall not be deemed, and no holder of the HMIT Class 10 Interest shall be, a Claimant Trust Beneficiary or a "Beneficiary" under the Claimant Trust Agreement, and the Highland Released Parties, individually and collectively, shall owe no duty to any HMIT Releasor (whether contractual, fiduciary, equitable, statutory or otherwise), including with respect to the HMIT Class 10 Interest, in each case, except as expressly set forth in this Agreement.  Furthermore, without limiting the foregoing and for the avoidance of doubt, the contractual right of the holder of the HMIT Class 10 Interest to receive or recover any payments or Indemnity Trust Assets from the Indemnity Trust as set forth in this Agreement or the Indemnity Trust Agreement does not make any HMIT Releasor or any other Person a beneficiary of the Indemnity Trust or under the Indemnity Trust Agreement.

(c)    Notwithstanding anything to the contrary in the Plan, the Claimant Trust Agreement or the Indemnity Trust Agreement, in no event shall HMIT sell, transfer, assign, pledge, hypothecate, participate or otherwise dispose of or encumber the HMIT Class 10 Interest or any rights (including any right to payment) with respect thereto (collectively, a "**Class 10 Assignment**"), and any attempted Class 10 Assignment shall be null and void.

001510

HCMLPHMIT00001230

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/16/2025

(d)     For the avoidance of doubt, the HMIT Class 10 Interest is and shall remain senior to the not yet allowed, unvested contingent Class 11 Claims of Equity Interests as provided for in the Plan, the Plan Documents, and the Claimant Trust Agreement.

5.     <u>Initial Interim Distributions on the Allowed Class 10 Interests</u>.

(a)     Within five (5) Business Days after the Bankruptcy Court Approval Date, the Indemnity Trust shall distribute (the date on which such distribution is made, the "**Initial Interim Distribution Date**") Pro Rata to the Holders of allowed Class 10 Claims or Equity Interests cash in the aggregate amount of Ten Million Dollars (US$10,000,000.00) (the "**Initial Interim Cash Distribution Amount**").

(b)     Within five (5) Business Days after the Bankruptcy Court Approval Date (the "**Note Assignment Date**"), the Highland Entities shall cause the portion of the Dugaboy Note held by the Highland Entities to be distributed to HMIT in-kind and take all actions necessary for HMIT to become the holder of such portion of the Dugaboy Note, and shall in addition pay to HMIT cash in the aggregate amount of all principal and interest payments actually received on the Dugaboy Note by the Highland Entities, including the Indemnity Trust, from the Agreement Date to the Note Assignment Date.  Prior to the Bankruptcy Court Approval Date, HMIT will engage an independent valuation service provider to value the Dugaboy Note for purposes of determining the magnitude of reduction to the outstanding allowed Class 10 Interests on account of such in-kind distribution, which shall not be less than Fifty percent (50%) of the current balance owed under the Dugaboy Note. The HMIT Entities acknowledge and agree that none of the Highland Entities are representing or warranting that the Dugaboy Note can be sold, or the price, if any, that could be received for the Dugaboy Note and further acknowledge and agree that any such purchase price may be de minimis.

6.     <u>Subsequent Distribution(s) on the Allowed Class 10 Interests</u>.

(a)     On December 1, 2027, the Indemnity Trust shall distribute (such distribution, collectively, the "**First Subsequent Distribution**", and the date on which such Subsequent Distribution is made, the "**First Subsequent Distribution Date**") Pro Rata to the Holders of allowed Class 10 Claims or Equity Interests: cash in the aggregate amount of Six Million Five Hundred Thousand Dollars (US$6,500,000.00).

(b)     On December 1, 2028, the Indemnity Trust shall distribute (such distribution, collectively, the "**Second Subsequent Distribution**", and the date on which such Subsequent Distribution is made, the "**Second Subsequent Distribution Date**") Pro Rata to the Holders of allowed Class 10 Claims or Equity Interests cash in the aggregate amount of Six Million Five Hundred Thousand Dollars (US$6,500,000.00).

(c)     Notwithstanding anything herein to the contrary, the obligations of the Indemnity Trust to make the First Subsequent Distribution or Second Subsequent Distribution is subject in all respects to (i) there being no Threats and (ii) a determination in accordance with Article VIII, Section 8.1(c) of the Indemnity Trust Agreement that the Indemnity Trust Assets comprising such distributions are not reasonably necessary to satisfy current or potential

001511
HCMLPHMIT00001231

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/16/2025

Indemnification Obligations (as defined in the Indemnity Trust Agreement) to all persons who are or might become Beneficiaries (as defined in the Indemnity Trust Agreement).

7.  <u>Final Distribution on the Allowed Class 10 Interests</u>.

(a)    On the later of the Final Court Approval Date and April 1, 2029, the Indemnity Trust will distribute all excess remaining Indemnity Trust Assets in accordance with Article VIII of the Indemnity Trust Agreement; <u>provided</u>, <u>however</u>, that the obligation of the Indemnity Trust to make any such distributions and/or dissolve and wind up the affairs of the Indemnity Trust is subject in all respects to (i) there being no Threats and (ii) a determination in accordance with Article VIII of the Indemnity Trust Agreement that (1) a Final Order(s) (as defined in the Indemnity Trust Agreement) has been entered resolving all litigation, claims or proceedings in any forum of any kind which could give rise to Indemnity Obligations (as defined in the Indemnity Trust Agreement) and payment in full of all such Indemnity Obligations and (2) all applicable statutes of limitations and any applicable tolling of such statutes of limitation have expired.

(b)    The Indemnity Trust agrees to not use Indemnity Trust Assets to fund Operating Expenses.

(c)    Following the Bankruptcy Court Approval Date, at the request of Mark Patrick, solely in his capacity, and to the extent he remains, as administrator of HMIT, but not more often than quarterly, Highland and the Indemnity Trust Administrator agree to review (i) the status of their respective assets, (ii) the balance of cash held, (iii) the status of any claims made for indemnification and any resolutions thereof, (iv) the status of any litigation, and (v) forecasted operating expenses with Mr. Patrick, and will each work in good faith to reduce operating expenses where reasonably practicable; provided, however, that all such reporting shall be subject to Mr. Patrick's agreement to maintain confidentiality with respect to any non-public information.

8.  <u>Transfer Kirschner Claims; Dismissal of HMIT Note Claims</u>.

(a)    Within five (5) Business Days after the Bankruptcy Court Approval Date, but after the dismissal provided for in <u>Section 2</u>, the Litigation Sub-Trust shall execute a short-form assignment in in favor of the HMIT Entities transferring all of the Litigation Sub-Trust's right, title, and interest in and to the Kirschner Claims (the "**Kirschner Transfer**"). Such assignment shall be in a form mutually acceptable to the Parties and its substance shall be consistent with the terms, conditions and limitations set forth in this Agreement, including <u>Section 8(b)</u> below. Each HMIT Entity acknowledges and agrees that none of the Highland Entities will have any duty or obligation to assist the HMIT Entities in any way with respect to the Kirschner Claims, including the prosecution thereof, except as provided in this Agreement, including the terms of <u>Section 8(c)</u> below.

(b)    THE HMIT ENTITIES SPECIFICALLY ACKNOWLEDGE AND AGREE THAT THE LITIGATION SUB-TRUST IS TRANSFERRING THE KIRSCHNER CLAIMS ON AN "AS IS AND WITH ALL FAULTS" BASIS AND THAT THE HMIT ENTITIES ARE NOT RELYING ON ANY REPRESENTATIONS OR WARRANTIES OF ANY KIND WHATSOEVER, EXPRESS OR IMPLIED, FROM THE HIGHLAND ENTITIES OR

001512
HCMLPHMIT00001232

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/16/2025

THEIR REPRESENTATIVES AS TO ANY MATTERS CONCERNING THE KIRSCHNER CLAIMS AND AMENDED COMPLAINT, INCLUDING WITH RESPECT TO THE ENFORCEABILITY, TRANSFERABILITY, VIABILITY, STRENGTH, OR VALUE OF ANY OF THE KIRSCHNER CLAIMS OR THE AMENDED COMPLAINT. The HMIT Entities hereby specifically acknowledge that they have carefully reviewed this Section and have had the opportunity to discuss its import with legal counsel and that the provisions of this Section are a material part of this Agreement. Thus, if for any reason HMIT is precluded from or is otherwise unable to prosecute all or any of the Kirschner Claims, (i) the HMIT Releasors shall have no recourse against any Highland Released Parties whatsoever and shall not be entitled to compensation of any kind, it being agreed that the HMIT Entities are otherwise receiving adequate consideration for the duties and obligations they are undertaking pursuant to this Agreement and (ii) there will be no effect whatsoever on the validity and enforceability of this Agreement or any of the other transactions contemplated hereby.

(c)     As promptly as reasonably practicable following the Bankruptcy Court Approval Date, the Highland Entities shall provide to the HMIT Entities electronic copies of written discovery requests and responses thereto, and documents produced in discovery in respect of the Kirschner Claims and the Amended Complaint. The Highland Entities will not provide any other documents regarding the Kirschner Claims including any attorney-client communications and any documents subject to the attorney work-product doctrine or similar privileges or immunities concerning the Kirschner Claims (collectively, the "**Kirschner Privileges**"), it being understood and agreed that the Highland Entities are retaining, and not transferring or waiving, the Kirschner Privileges.

(d)     Each Party acknowledges and agrees that if (i) the Kirschner Transfer is found or deemed to be impermissible or invalid, for any reason, or (ii) any HMIT Entity materially breaches this Agreement, the Kirschner Claims and Amended Complaint will revert to, and remain an asset of, the Litigation Sub-Trust.

9.     <u>General Release By The HMIT Entities</u>. On the Bankruptcy Court Approval Date, and to the maximum extent permitted by law, each of the HMIT Entities, on behalf of itself and each of its respective Affiliates (including Affiliated and/or managed funds, accounts and other investment vehicles) and its and their respective current and former advisors, consultants, administrators, trustees, directors, officers, managers, executives, members, partners (including limited and general partners), employees, beneficiaries, direct and indirect shareholders and other equity holders, agents, participants, direct and indirect subsidiaries and parents, successors, predecessors, designees, and assigns (whether by operation of law or otherwise) and all Persons claiming through, under or on their behalf (collectively with the HMIT Entities, the "**HMIT Releasors**") hereby forever, finally, fully, unconditionally, and completely releases, relieves, acquits, discharges, remises, and exonerates each Highland Released Party from, and waives and relinquishes, any and all Claims, which the HMIT Releasors, or any Person claiming through, under, or on behalf of any of the HMIT Releasors, ever had, now has, or hereafter can, shall, or may have against any of the Highland Released Parties by reason of, arising from, relating to, or in connection with, any fact, matter, or transaction that occurred prior to the Agreement Date, including any fact, matter, transaction, or occurrence asserted by any HMIT Entity in the Pending Litigation or in connection with, relating to, or with respect to the Bankruptcy Case, the management or operation of any of the Highland Released Parties, or the Highland Released

001513

HCMLPHMIT00001233

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/16/2025

Parties' property and including any defense, affirmative defenses, and right to setoff arising out of, or otherwise related to, any of the foregoing (collectively, the "**HMIT Entity Released Claims**").

10.    <u>General Release By The Highland Entities</u>. On the Bankruptcy Court Approval Date, and to the maximum extent permitted by law, each of the Highland Entities, on behalf of itself and each of its respective Affiliates (including Affiliated and/or managed funds, accounts and other investment vehicles) and its or their respective current and former advisors, consultants, administrators, trustees, directors, officers, managers, executives, members, partners (including limited and general partners), employees, beneficiaries, direct and indirect shareholders and other equity holders, agents, participants, direct and indirect subsidiaries and parents, successors, predecessors, designees, and assigns (whether by operation of law or otherwise) and all Persons claiming through, under or on their behalf (collectively with the Highland Entities, the "**Highland Releasors**") hereby forever, finally, fully, unconditionally, and completely releases, relieves, acquits, discharges, remises, and exonerates each HMIT Released Party from, and waives and relinquishes, any and all Claims which the Highland Releasors, or any Person claiming through, under, or on behalf of any of the Highland Releasors, ever had, now has, or hereafter can, shall, or may have against any of the HMIT Released Parties by reason of, arising from, relating to, or in connection with, any fact, matter, or transaction that occurred prior to the Bankruptcy Court Approval Date, including any fact, matter, transaction, or occurrence in connection with, relating to, or with respect to the Bankruptcy Case, the management or operation of any of the HMIT Released Parties, or the HMIT Released Parties' property and including any defense, affirmative defenses, and right to setoff arising out of, or otherwise related to, any of the foregoing (collectively, the "**Highland Released Claims**").

11.    <u>Further Provisions Concerning The General Releases</u>.

(a)    **FOR THE AVOIDANCE OF DOUBT, THE FOREGOING RELEASES ARE INTENDED TO BE GENERAL AND INCLUDE A RELEASE OF ALL RELEASED CLAIMS, WHETHER KNOWN OR UNKNOWN, SUSPECTED OR UNSUSPECTED, ARISING OR EXISTING FROM THE BEGINNING OF TIME THROUGH AND INCLUDING THE AGREEMENT DATE.**

(b)    To the maximum extent permitted by law, each of the HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, waives the benefit of any statute or other principle of law or equity that limits the applicability of a release with respect to Claims that the releasing party does not know or suspect to exist in his, her or its favor at the time of executing the release.

(c)    Without limiting the scope of the foregoing waiver, in connection with the foregoing release, each of the HMIT Entities and the Highland Entities, on its own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, waives the benefits of Section 1542 of the California Civil Code (to the extent, if any, that Section 1542 might apply to the foregoing release), which provides as follows:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT**

001514
HCMLPHMIT00001234

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/16/2025

**TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

Each of the HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, hereby agrees that the provisions of Section 1542 of the Civil Code of the State of California and all similar federal or state law, rights, rules or legal principles, legal or equitable, in each case solely to the extent such provisions apply, **ARE HEREBY KNOWINGLY AND VOLUNTARILY WAIVED AND RELINQUISHED BY EACH OF THE HMIT ENTITIES AND THE HIGHLAND ENTITIES**, **ON THEIR OWN BEHALF AND ON BEHALF OF THE OTHER HMIT RELEASORS AND HIGHLAND RELEASORS, RESPECTIVELY,** in each and every capacity, to the full extent that such rights and benefits pertaining to the matters released herein may be waived, and each of the HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, hereby agrees and acknowledges that this waiver and relinquishment is an essential term of this Agreement, without which the consideration provided would not have been given.

In connection with such waiver and relinquishment, each of the HMIT Entities and Highland Entities acknowledges that it is aware that it may hereafter discover Claims presently unknown or unsuspected, or facts in addition to or different from those which it now knows or believes to be true, with respect to the matters released herein.  Nevertheless, it is the intent of each of the HMIT Entities and the Highland Entities, on its own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, in executing this Agreement fully, finally, and forever to settle and release all such matters, and all Claims related thereto, which exist, may exist or might have existed (whether or not previously or currently asserted in any action) which are the subject to the releases granted above.

(d)    As an integral component of this Agreement, and notwithstanding the Parties' intent set forth in the preamble hereto and the general nature of the releases in Sections 9 and 10, should:

(i)    any HMIT Releasor contend or assert that any Claim of any kind whatsoever held by any HMIT Releasor against any Highland Released Party survives this Agreement and is in any way related to or arising from or in connection with any HMIT Entity Released Claim (such claim or cause of action, a "**HMIT Alleged Claim**"), such HMIT Releasor will be deemed to have irrevocably, fully, and finally assigned such HMIT Alleged Claim to the Highland Entities and the Highland Entities will be deemed to have forever, finally, full, unconditionally, and irrevocably, and completely released such HMIT Alleged Claim.

(ii)    any Highland Releasor contend or assert that any Claim of any kind whatsoever held by any Highland Releasor against any HMIT Released Party survives this Agreement and is in any way related to or arising from or in connection with any Highland Entity Released Claim (such claim or cause of action, a "**Highland Alleged Claim**"), such Highland Releasor will be deemed to have irrevocably, fully, and finally assigned such Highland Alleged

001515

HCMLPHMIT00001235

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/16/2025

Claim to the HMIT Entities and the HMIT Entities will be deemed to have forever, finally, full, unconditionally, and irrevocably, and completely released such Highland Alleged Claim.

12. <u>Covenant Not To Sue; Limitation on Standing</u>. Upon the Agreement Date:

(a) Each of the HMIT Releasors covenants and agrees that it will not institute or prosecute any Action, in law, in equity or otherwise, against any of the Highland Released Parties, to recover, enforce, investigate, or collect any HMIT Entity Released Claim and will not (i) induce, encourage or direct any other Person to do so or (ii) act in concert with or assist (financially or otherwise) any other Person in doing so.

(b) Each of the Highland Releasors covenants and agrees that it will not institute or prosecute any Action, in law, in equity or otherwise, against any of the HMIT Released Parties, to recover, enforce, investigate, or collect any Highland Entity Released Claim and will not (i) induce, encourage or direct any other Person to do so or (ii) act in concert with or assist (financially or otherwise) any other Person in doing so.

(c) For the avoidance of doubt, this Agreement shall not operate to give any HMIT Entity standing for any purpose in connection with the Bankruptcy Case (or in connection with any appeal arising from any order entered by the Bankruptcy Court), except for the limited purpose of seeking Court approval of this Agreement (including with respect to any appeal concerning any order entered granting or denying such approval), and except for the limited purpose of enforcing this Agreement, no HMIT Entity shall commence any Action in connection with the HMIT Class 10 Interest.

13. <u>Representations and Warranties</u>.

(a) Each of the HMIT Entities hereby represents and warrants that every HMIT Entity Released Claim has not heretofore been assigned or encumbered and is not the subject of a transfer (as such term is defined in 11 U.S.C. § 101(54)), by any HMIT Releasor.

(b) The HMIT Entities, on their own behalf and on behalf of the other HMIT Releasors, acknowledge and agree that each Plan Provision is lawful, effective, and binding on the HMIT Releasors. The HMIT Entities further agree, on their own behalf and on behalf of the other HMIT Releasors, that the HMIT Releasors will never, in any way, challenge or seek to modify, nullify, vacate, or revoke, or induce, encourage or direct any other Person to do so or act in concert with or assist (financially or otherwise) any other Person in doing so the Confirmation Order, the Plan, the Plan Protections, or any Plan Document, including the Claimant Trust Agreement, the LPA, the Indemnity Trust Agreement or the Litigation Sub-Trust Agreement, in the Bankruptcy Court, in any other state or federal court, in any other forum or tribunal, or otherwise, including administrative or regulatory tribunals and foreign courts.

(c) Each of the Highland Entities hereby represents and warrants that every Highland Entity Released Claim has not heretofore been assigned or encumbered and is not the subject of a transfer (as such term is defined in 11 U.S.C. § 101(54)), by any Highland Releasor.

(d) Each Party severally represents and warrants as to itself only that: (i) it has taken all necessary action to authorize and approve the execution, delivery and performance of this

001516
HCMLPHMIT00001236

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/16/2025

Agreement; (ii) such Party has full power and authority to execute and deliver this Agreement; and (iii) this Agreement constitutes a valid, legal and binding obligation of such Party, and is enforceable subject to its terms. Each individual signatory hereto individually warrants and represents to all Parties hereto that such individual has full power and authority to act on behalf of and bind the Party for which he or she has executed this Agreement; provided, however that no signatory shall otherwise provide any warranty or representation or otherwise be a party to this Agreement on an individual basis.

14. <u>No Continuing Rights, Duties or Obligations</u>. Except for the rights, duties, and obligations expressly set forth in this Agreement, all Rights and Obligations that existed or may have existed shall be deemed terminated, extinguished, and released upon the Agreement Date. For the avoidance of doubt, from and after the Agreement Date, (a) the Highland Released Parties, individually and collectively, shall owe no duty, past or present, including with respect to the Kirchner Claims, to the HMIT Released Parties, individually and collectively, whether contractual, fiduciary, equitable, statutory or otherwise, except as arising out of this Agreement, and (b) the HMIT Released Parties, individually and collectively, shall owe no duty to the Highland Released Parties, individually and collectively, whether contractual, fiduciary, equitable, statutory or otherwise, except as arising out of this Agreement.

15. <u>Gatekeeper Standard</u>.

(a) The HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, acknowledge and agree that, notwithstanding the United States Court of Appeals for the Fifth Circuit's decision in *Highland Capital Management Fund Advisors, L.P. v. Highland Capital Management, L.P.*, No. 23-10534 (5th Cir. Mar. 18, 2025), the "Gatekeeper" provisions contained in Highland's Original Plan is forever binding on each of the HMIT Entities and any Persons claiming through, under or on behalf of any of them, and for a claim or cause of action to be "colorable" for purposes of the Gatekeeper, it must be found by final order of the Bankruptcy Court (the "**Gatekeeper Court**"), which order shall be subject to appeal to a court of competent jurisdiction, to have satisfied the "Gatekeeper Colorability Test" as such term is defined in *In re Highland Capital Management, L.P.*, 2023 Bankr. LEXIS 2104 at *124-36 (Bankr. N.D. Tex. Aug. 24, 2023).

(b) The HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, acknowledge and agree that compliance with the Gatekeeper requires (i) a motion seeking leave to sue an Exculpated Party (as that term is defined in Highland's original Plan) and a finding that the litigant's claims and causes of action are "colorable" attaching a complaint setting forth the basis for such claims or causes of action and (ii), in the Gatekeeper Court's sole discretion, an evidentiary hearing (during which the Gatekeeper Court may, among other things, hear testimony and assess the credibility of any witness(es)) to determine whether a proposed claim or cause of action is "colorable."

(c) The HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, further acknowledge and agree that the moving party under the Gatekeeper has the burden of satisfying the "Gatekeeper Colorability Test," and that the dismissal of the Pending Litigation shall have res judicata effect.

001517

HCMLPHMIT00001237

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/16/2025

16.    <u>Indemnification</u>.

(a)    Without in any manner limiting the available remedies for any breach of this Agreement, the HMIT Entities, severally but not jointly, agree to indemnify, defend, and hold the Highland Released Parties harmless from and against any and all Liability, that may arise or result from or on account of, or that are otherwise related or attributable to (x) any breach of this Agreement or of any representation or warranty contained in the Agreement, including the representations and warranties of any HMIT Entity set forth in <u>Section 13</u> or (y) any Actions brought or prosecuted by or on behalf of, any HMIT Entity or that are induced, encouraged, assisted  or directed by any HMIT Releasor or brought or prosecuted in concert with any HMIT Releasor against any Highland Released Party with respect to or related to any HMIT Entity Released Claims.  Without limiting the scope of the foregoing in any manner, any HMIT Entity that breaches <u>Section 12</u> shall be liable to the Highland Released Party against whom the applicable Action has been brought or prosecuted in violation of <u>Section 12</u> for the reasonable attorneys' fees and costs incurred by such Highland Released Party in defending against or otherwise responding to such Action.  Each HMIT Entity acknowledges and agrees that the HMIT Entities are and shall be severally but not jointly liable for any Liability arising from or out of any breach of this Agreement or of any representation or warranty set forth in this Agreement.

(b)    Without in any manner limiting the available remedies for any breach of this Agreement, the Highland Entities, severally but not jointly, agree to indemnify, defend, and hold the HMIT Released Parties harmless from and against any and all Liability, that may arise or result from or on account of, or that are otherwise related or attributable to (x) any breach of this Agreement or of any representation or warranty contained in the Agreement, including the representations and warranties of any Highland Entity set forth in <u>Section 13</u> or (y) any suits, proceedings, or other actions brought or prosecuted by or on behalf of, any Highland Releasor or that are induced, encouraged, assisted  or directed by any Highland Releasor or brought or prosecuted in concert with any Highland Releasor against any HMIT Released Party with respect to or related to any Highland Entity Released Claims.  Without in any manner limiting the scope of the foregoing, any Highland Entity that breaches <u>Section 12</u> shall be liable to the HMIT Released Party against whom the applicable Action has been brought or prosecuted in violation of <u>Section 12</u> for the reasonable attorneys' fees and costs incurred by such HMIT Released Party in defending against or otherwise responding to such Action.  Each Highland Entity acknowledges and agrees that the Highland Entities are and shall be severally but not jointly liable for any Liability arising from or out of any breach of this Agreement or of any representation or warranty set forth in this Agreement.

17.    <u>Execution</u>.  This Agreement may be executed by the exchange of signatures by facsimile or by PDF attachment to an email transmittal and in counterparts, and if so executed, shall be fully executed when a counterpart has been executed and delivered by all Parties hereto through counsel.  All counterparts taken together shall constitute one and the same agreement and shall be fully enforceable as such.

18.    <u>Bankruptcy Court Order</u>.  The allowance of the allowed HMIT Class 10 Interest pursuant to <u>Section 4</u> is subject to the entry of the Bankruptcy Court Order.  To that end, the Highland Entities shall file the 9019 Motion no later than five (5) Business Days after the Agreement Date.  Each Party shall, and shall cause each of their respective Affiliates to, undertake

001518

HCMLPHMIT00001238

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/16/2025

any and all actions in compliance with applicable law to obtain the Bankruptcy Court Order as promptly as practicable, and without limiting the foregoing, if an Action is threatened or instituted by any Person opposing the 9019 Motion or otherwise challenging the validity or legality, or seeking to restrain the consummation, of the transactions contemplated by this Agreement or the Bankruptcy Court Order, each Party shall, and shall cause its respective Affiliates to, use their commercially reasonable best efforts to avoid, resist, resolve or, if necessary, and defend to effectuate this Agreement and consummate the transactions hereby.  If the 9019 Motion is not approved by entry of the Bankruptcy Court Order or if the Bankruptcy Court Approval is precluded from becoming a Final Order, (a) there will be no affect on, adjustment to, or impairment of, in any way, the validity and enforceability of the remainder of this Agreement, and the other transactions contemplated hereby, all of which shall remain in full force and effect and (b) each Party shall, and shall cause its respective Affiliates to, use their best efforts to seek the allowance of the HMIT Class 10 Interest in a substantially similar amount and on substantially similar terms as set forth in Section 4 to the fullest extent possible so as to give effect to the original intent of the Parties as closely as possible.

19.    Fees and Expenses.  Whether or not the transactions contemplated hereby are consummated or the Bankruptcy Court Order is obtained, and except as otherwise expressly provided in this Agreement, each Party will bear its respective fees, costs and expenses (including legal, accounting and other professional fees) incurred in connection with the preparation, negotiation, execution and performance of this Agreement or the transactions contemplated hereby, including with respect to each Party's respective obligations pursuant to Section 18.  Notwithstanding the foregoing, if any Party hereto brings an Action to enforce or interpret the terms and provisions of this Agreement, the prevailing Party in that Action shall be entitled to have and recover from the non-prevailing Party all such fees, costs and expenses (including all court costs and reasonable attorneys' fees) as the prevailing Party may suffer or incur in the pursuit or defense of such action or proceeding.

20.    Entire Agreement; No Other Representations.  **THIS AGREEMENT CONTAINS THE ENTIRE AGREEMENT BETWEEN THE PARTIES, AND NO RIGHTS ARE CREATED IN FAVOR OF ANY PERSON OTHER THAN AS SPECIFIED OR EXPRESSLY SET FORTH IN THIS AGREEMENT.  THERE ARE NO REPRESENTATIONS, CONDITIONS, WARRANTIES, STATEMENTS, OR UNDERSTANDINGS (COLLECTIVELY, "REPRESENTATIONS") , EITHER ORAL OR WRITTEN, BETWEEN THE PARTIES OTHER THAN THOSE EXPRESSLY SET FORTH IN THIS AGREEMENT.  THE PARTIES EXPRESSLY AGREE THAT THEY HAVE NOT BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY ANY REPRESENTATIONS NOT SET FORTH IN THIS AGREEMENT; AND THE PARTIES EXPRESSLY AGREE THAT THEY HAVE NOT RELIED ON ANY REPRESENTATIONS NOT EXPRESSLY SET FORTH IN THIS AGREEMENT. THE PARTIES EXPRESSLY AGREE THAT THEY ARE ENTERING INTO THIS AGREEMENT RELYING SOLELY ON THEIR OWN JUDGMENT AND NOT ON ANY REPRESENTATIONS BY ANY PARTY, EXCEPT FOR THOSE REPRESENTATIONS EXPRESSLY SET FORTH IN THIS AGREEMENT.  THE PARTIES AGREE THAT REPRESENTATIONS NOT EXPRESSLY SET FORTH IN THIS AGREEMENT SHALL NOT BE USED IN THE INTERPRETATION OR CONSTRUCTION OF THIS AGREEMENT, AND NEITHER THE HMIT RELEASED PARTIES NOR THE**

18

HCMLPHMIT00001239

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/16/2025

**HIGHLAND RELEASED PARTIES SHALL HAVE ANY LIABILITY FOR ANY CONSEQUENCES ARISING AS A RESULT OF ANY REPRESENTATIONS NOT SET FORTH IN THIS AGREEMENT**.

21.    <u>Agreement and Release Knowing and Voluntary</u>.  The Parties acknowledge that they have considered this Agreement with their respective attorneys and have carefully read this Agreement, that it has been fully explained by their attorneys, and that they have had a reasonable opportunity to consider this Agreement.  The Parties further represent that they know and fully understand the contents of this Agreement, that they intend to be legally bound by this Agreement and the releases and covenants contained herein, and that they are signing this Agreement, including the release provisions herein, voluntarily and of their own free will and without coercion, and with the benefit of advice of counsel.

22.    <u>Cooperation</u>.  The Parties agree to perform any services or actions reasonably necessary to carry out the terms and conditions of this Agreement or the transactions contemplated hereby, including the execution and delivery of reasonable additional documents, instruments, conveyances and/or assurances, in good faith, and to reasonably communicate and cooperate with one another in this regard.  For the avoidance of doubt, nothing in this Section shall obligate the Highland Entities to assist the HMIT Entities in any way with respect to the Kirschner Claims, including the prosecution thereof.

23.    <u>Governing Law</u>.  This Agreement shall be construed pursuant to and governed by the laws of the State of Delaware (substantive and procedural) without reference to principles of conflicts of law that would result in the application of any other State's laws.

24.    <u>Jurisdiction/Venue</u>.  The Parties hereby irrevocably submit to the jurisdiction and venue of the Bankruptcy Court with respect to any Action arising out of or related to this Agreement or the subject matter hereof; if (and only if) the Bankruptcy Court lacks personal or subject matter jurisdiction to adjudicate an Action arising out of or related to this Agreement or the subject matter hereof, then the Parties irrevocably submit to the jurisdiction and venue of the United States District Court for the Northern District of Texas.

25.    <u>No Admissions</u>.  All Parties acknowledge and agree that the matters set forth in this Agreement constitute the settlement and compromise of disputed Claims and that this Agreement shall not constitute the admission of any fact or liability by any of them regarding any Claim, including the Claims released hereunder, and neither the terms hereof, nor the fact of this Agreement itself, shall be evidence of any kind in any Action, other than an Action to enforce the terms of the Agreement or any instrument executed in connection herewith or any claim for damages or other relief for breach of any representation or warranty contained herein or in any instrument executed in connection herewith.

26.    <u>Other Provisions</u>.

(a)    No representation, inducement, agreement, promise or understandings altering, modifying, amending, taking from or adding to, the terms and conditions hereof shall have any force or effect unless the same is in writing and validly executed by each of the Parties hereto.

001520

HCMLPHMIT00001240

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/16/2025

(b)     The waiver by any Party of any breach of, or default under, any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach or default; provided, however, that for any such waiver to be enforceable, it shall be in writing and executed by the non-breaching Party.

(c)     The headings contained in this Agreement are for convenience only and shall in no way restrict or otherwise affect the construction of the provisions hereof.

(d)     The Parties shall each execute all documents and perform all acts necessary and proper to effectuate the terms of this Agreement.

27.     <u>Notices</u>.  All notices required or permitted to be provided hereunder shall be afforded to the respective parties to and through their counsel, and shall be transmitted simultaneously by electronic mail (with PDF attachments, as necessary) and by telefax, addressed as follows:

To the Highland Entities:

**PACHULSKI STANG ZIEHL AND JONES LLP**
Jeffrey N. Pomerantz
John A. Morris
10100 Santa Monica Boulevard
Los Angeles, California 90067-4003
310.277.6910
jpomerantz@pszjlaw.com
jmorris@pszjlaw.com

To the HMIT Entities:

**KELLY HART PITRE**
Louis M. Phillips
Amelia Hurt
301 Main Street, Suite 1600
225.381.9643
Louis.Phillips@Kellyhart.com
Amelia.Hurt@Kellyhart.com

28.     <u>Severability</u>. Should any term, provision or paragraph of this Agreement be determined to be illegal or void or of no force and effect, the balance of the Agreement shall survive.  The invalidity or unenforceability of any provision of this Agreement shall not affect the validity and enforceability of any other provision of this Agreement.

29.     <u>Interpretive Provisions</u>. Unless the express context otherwise requires: (a) the words "hereof," "herein" and "hereunder" and words of similar import, when used in this Agreement, shall refer to this Agreement as a whole and not to any particular provision of this Agreement; (b) words defined in the singular shall have a comparable meaning when used in the plural, and vice versa; (c) the words "Dollars" and "$" mean U.S. dollars; (d) references herein to

001521
HCMLPHMIT00001241

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/16/2025

a specific Section, Subsection, Recital, Schedule or Exhibit shall refer, respectively, to Sections, Subsections, Recitals, Schedules or Exhibits of this Agreement; (e) wherever the word "include," "includes" or "including" is used in this Agreement, it shall be deemed to be followed by the words ",without limitation,"; (f) references herein to any gender shall include each other gender; (g) references herein to any Person shall include such Person's heirs, executors, personal representatives, administrators, successors and assigns; provided, however, that nothing contained in this clause (g) is intended to authorize any assignment or transfer not otherwise permitted by this Agreement; (h) with respect to the determination of any period of time, the word "from" means "from and including" and the words "to" and "until" each means "to but excluding"; (i) the word "or" shall be disjunctive but not exclusive; (j) the headings contained in this Agreement are intended solely for convenience and shall not affect the rights of the Parties; and (k) if the last day for the giving of any notice or the performance of any act required or permitted under this Agreement is a day that is not a Business Day, then the time for the giving of such notice or the performance of such action shall be extended to the next succeeding Business Day.

*[Signature page follows]*

001522

HCMLPHMIT00001242

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first written above.

**HUNTER MOUNTAIN INVESTMENT TRUST**

By _____
    Name:     Mark Patrick
    Title:     Administrator
    Date:     May __, 2025

**BEACON MOUNTAIN LLC**

By _____
    Name:
    Title:
    Date:     May __, 2025

**RAND ADVISORS, LLC**

By _____
    Name:     Mark Patrick
    Title:     President
    Date:     May __, 2025

**RAND PE FUND I, LP**
By: Rand PE Fund Management, LLC, its General Partner

By _____
    Name:     Mark Patrick
    Title:     President
    Date:     May __, 2025

**RAND PE FUND MANAGEMENT, LLC**

By _____
    Name:     Mark Patrick
    Title:     President

SIGNATURE PAGE TO SETTLEMENT AGREEMENT & GENERAL RELEASE

HCMLPHMIT00001243

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

Date:            May __, 2025

**ATLAS IDF, LP**
By: Atlas IDF GP, LLC, its General Partner

By  _____
     Name:        Mark Patrick
     Title:        President
     Date:        May __, 2025

**ATLAS IDF GP, LLC**

By  _____
     Name:        Mark Patrick
     Title:        President
     Date:        May __, 2025

**HIGHLAND CAPITAL MANAGEMENT, L.P.**

By  _____
     Name:        James. P. Seery, Jr.
     Title:        Chief Executive Officer
     Date:        May __, 2025

**HIGHLAND CLAIMANT TRUST**

By  _____
     Name:        James P. Seery, Jr.
     Title:        Claimant Trustee
     Date:        May __, 2025

**HIGHLAND LITIGATION SUB-TRUST**

By  _____
     Name:        Marc S. Kirschner
     Title:        Litigation Trustee

SIGNATURE PAGE TO SETTLEMENT AGREEMENT & GENERAL RELEASE

001524

HCMLPHMIT00001244

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

Date:        May __, 2025

## HIGHLAND INDEMNITY TRUST


By     _____
       Name:     James P. Seery, Jr.
       Title:    Indemnity Trust Administrator
       Date:     May __, 2025

001525

HCMLPHMIT00001245

**EXHIBIT**

001526

CONFIDENTIAL

Highland Claimant Trust
100 Crescent Court, Suite 1850
Dallas, TX 75201

May 20, 2025

Patrick Daugherty
3621 Cornell Ave, Ste 830
Dallas, TX 75205

Dear Patrick Daugherty:

Highland Claimant Trust is making a distribution (the "**Eighth Distribution**") of cash proceeds to holders of Claimant Trust Interests in accordance with Article VI of the Claimant Trust Agreement.

Your share of the Eighth Distribution is $797,269.56, of which $781,707.29 represents the remaining portion of your previously allowed Class 9 claim and $15,562.27 represents all accrued interest with respect to such claim. No further distributions will be made on account of your allowed Class 9 claim after the Eighth Distribution, provided however that you still have an unresolved and pending claim that is separate from your allowed Class 9 claim, which has neither been allowed nor disallowed as of the date of this notice. The Eighth Distribution will be paid out to you on or about May 20, 2025.

The foregoing is not intended to provide, and should not be relied on for, tax, legal or accounting advice. You should consult your own tax, legal and accounting advisors regarding treatment of the Eighth Distribution. This notice contains confidential information and is intended only for the addressee named herein. If you are not named addressee, you should not disseminate, distribute, or copy this notice. If you have received this notice by mistake, please notify David Klos immediately by e-mail (dklos@highlandcapital.com) and delete it along with any copies in your possession. If you are not the intended recipient, you are notified that disclosing, copying, distributing, or taking any action in reliance on the contents of this information is strictly prohibited.

Sincerely,

James P. Seery, Jr.
Claimant Trustee, Highland Claimant Trust

001527

HCMLPHMIT00002329

**EXHIBIT**

001528

**WRITTEN CONSENT**
**OF THE**
**HOLDERS OF CLASS 9 SUBORINDATED CLAIM TRUST INTERESTS**
**IN THE**
**HIGHLAND CLAIMANT TRUST**

May 16, 2025

The undersigned, constituting all of the holders of the Class 9 Subordinated Claim Trust Interests (as defined in the Claimant Trust Agreement (as hereinafter defined)) in the Highland Claimant Trust, a Delaware statutory trust (the "**Claimant Trust**"), except for Mr. Patrick Hagaman Daugherty (such holders, the "**Consenting Holders**"), having waived any requirement for or notice of a meeting, hereby adopt and approve the following written consent:

WHEREAS, on October 16, 2019, Highland Capital Management, L.P. (the "**Debtor**" or "**HCMLP**") filed with the United States Bankruptcy Court for the District of Delaware, a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, which case was subsequently transferred to the Bankruptcy Court for the Northern District of Texas, Dallas Division (the "**Bankruptcy Court**") and captioned In re Highland Capital Management, L.P., Case No. 19-34054-sgj11 (the "**Chapter 11 Case**");

WHEREAS, on January 22, 2021, the Debtor filed the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* [Docket No. 1808] (as may be amended, supplemented, or otherwise modified from time to time, the "**Plan**"), which was confirmed by the Bankruptcy Court on February 22, 2021, pursuant to the *Findings of Fact and Order Confirming Plan of Reorganization for the Debtor* [ Docket No. 1943] (the "**Confirmation Order**");

WHEREAS, pursuant to the terms of the Plan, each of the Consenting Holders hold Allowed Class 9 Subordinated Claims entitled to the treatment provided in the Plan or such other less favorable treatment as such Holder and the Claimant Trustee may agree in writing;

WHEREAS, on August 11, 2021, the Effective Date as defined in the Plan occurred, the Debtor emerged from bankruptcy and the Claimant Trust was established pursuant to the Plan and that certain Claimant Trust Agreement, effective as of August 11, 2021 (as may be amended, supplemented, or otherwise modified from time to time, the "**Claimant Trust Agreement**"), by and among the Debtor, as settlor, James P. Seery, Jr. as trustee, and Wilmington Trust, National Association, as Delaware trustee;

WHEREAS, capitalized terms used but not otherwise defined herein or obvious from the context in which they are used have the meanings ascribed to such terms in the Plan and the Claimant Trust Agreement, as applicable.

1

001529

HCMLPHMIT00002677

**Payment in Satisfaction of Mr. Daugherty's Subordinated Claim Trust Interest**

WHEREAS, Mr. Patrick Hagaman Daugherty is the holder of a Class 9 Subordinated Claim Trust Interest in the Claimant Trust in the original amount of Three Million Seven Hundred Fifty Thousand Dollars ($3,750,000) with the current aggregate outstanding amount of Seven Hundred Eighty-One Thousand Seven Hundred Seven and 29/100 DOLLARS ($781,707.29), exclusive of interest (the "**Daugherty Class 9 Interest**");

WHEREAS, interest of Fifteen Thousand Five Hundred Fifty-Three and 71/100 Dollars ($15,553.71) has accrued in respect of the Daugherty Class 9 Interest as of May 15, 2025 and interest continues to accrue at approximately $1.71 per calendar day.

WHEREAS, the Claimant Trust desires to make a non-ratable distribution in respect of the Daugherty Class 9 Interest in order to pay such Daugherty Class 9 Interest in full, along with applicable interest (the "**Final Daugherty Distribution**"); and

WHEREAS, none of the Consenting Holders will receive a distribution at the time the Final Daugherty Distribution is made, but such Consenting Holders will retain all other rights related to their respective Subordinated Claim Trust Interests as set forth in the Plan and the Claimant Trust Agreement.

NOW, THEREFORE, BE IT RESOLVED AND CONSENTED TO that notwithstanding anything in the Plan or the Claimant Trust Agreement to the contrary, the Consenting Holders hereby approve, consent to and waive the Final Daugherty Distribution.

**Payments to Holders of Allowed Class 10 Interests**

WHEREAS, reference is made to the Settlement Agreement & General Release materially in the form attached hereto as <u>Exhibit A</u> (the "**HMIT Settlement Agreement**") to be entered into by and among HCMLP, the Claimant Trust, the Highland Litigation Sub-Trust, a Delaware statutory trust, and the Highland Indemnity Trust, a Delaware statutory trust (the "**Indemnity Trust**"), Hunter Mountain Investment Trust, a Delaware statutory trust ("**HMIT**"), Rand Advisors, LLC, a Delaware limited liability company, Rand PE Fund I, LP, a Delaware series limited partnership, Rand PE Fund Management, LLC, a Delaware limited liability company, Atlas IDF, LP, a Delaware limited partnership, and Atlas IDF GP, LLC, a Delaware limited liability company;

WHEREAS, as of the Petition Date, HMIT held the only Class B and Class C Limited Partnership Interests in HCMLP;

WHEREAS, on December 21, 2015, HMIT entered into the HMIT Note (as defined in the HMIT Settlement Agreement) with HCMLP, which had a total outstanding principal balance of Fifty-Seven Million Six Hundred Ninety Thousand Six Hundred Forty and 95/100 Dollars ($57,690,640.95) as of the Petition Date (the "**HMIT Note Balance**");

WHEREAS, HMIT's Class B and Class C Limited Partnership Interests in HCMLP were extinguished on August 11, 2021, in accordance with the Plan;

001530

HCMLPHMIT00002678

WHEREAS, pursuant to the Limited Partnership Agreement, HMIT's capital account balance at HCMLP on account of its Class B and Class C Limited Partnership Interests on the Petition Date was Three Hundred Ninety-Four Million Six Hundred Thirty Thousand Eight Hundred Seventy-One and 53/100 Dollars ($394,630,871.53) (the "**HMIT Capital Account Balance**");

WHEREAS, pursuant to the terms and subject to the conditions set forth in the HMIT Settlement Agreement, including, without limitation, the entry of the Bankruptcy Court Order (as defined in the HMIT Settlement Agreement), the HMIT Class 10 Interest (as defined in the HMIT Settlement Agreement) will be deemed allowed in the amount of Three Hundred Thirty-Six Million Nine Hundred Forty Thousand Two Hundred Thirty and 58/100 Dollars (US$336,940,230.58), which amount represents the HMIT Capital Account Balance, <u>less</u> the HMIT Note Balance; and

WHEREAS, pursuant to the HMIT Settlement Agreement and subject to the conditions set forth therein, the Indemnity Trust will make certain distributions to the Holders of allowed Class 10 Claims or Equity Interests prior to the Claimant Trust having repaid in full with applicable interest the holders of Class 9 Subordinated Claim Trust Interests (all of whom are Consenting Holders), including, the Initial Interim Cash Distribution Amount, the assignment of the Dugaboy Note in-kind to HMIT and a corresponding pro rata cash distribution to the other Holder of an allowed Class 10 Claim or Equity Interest, the First Subsequent Distribution, and the Second Subsequent Distribution (each as defined in the HMIT Settlement Agreement, and any such payment pursuant to the HMIT Settlement Agreement, a "**Class 10 Distribution**").

NOW, THEREFORE, BE IT RESOLVED AND CONSENTED TO that notwithstanding anything in the Plan or the Claimant Trust Agreement to the contrary, the Consenting Holders hereby approve, consent to all Class 10 Distributions, in each case, in accordance with the terms and conditions set forth in the HMIT Settlement Agreement; <u>provided</u>, that, and such consent by the Consenting Holders being expressly conditioned upon, at the time each Class 10 Distribution is made, if any, the Claimant Trust or the Indemnity Trust, as applicable, shall make the corresponding distribution set forth on <u>Exhibit B</u> on a pro rata basis to the holders of Class 9 Subordinated Claim Trust Interests.

*[Signature Page Follows.]*

001531

HCMLPHMIT00002679

IN WITNESS WHEREOF, the undersigned Consenting Holders have executed this Written Consent to be effective as of the date first written above.

MUCK HOLDINGS, LLC

By: _____

Name: Michael Linn
Title:  Michael Linn


JESSUP HOLDINGS, LLC

By: _____

Name: Paul Malek
Title:  Authorized Signatory


UBS SECURITIES LLC

By: _____

Name: Michael Parniawski
Title: Authorized Signatory

By: _____

Name: Nader Attalla
Title: Authorized Signatory


UBS AG LONDON BRANCH

By: _____

Name: Michael Parniawski
Title: Authorized Signatory

By: _____

Name: Nader Attalla
Title: Authorized Signatory


ACCEPTED AND AGREED:


_____

James P. Seery, Jr., solely in his capacity as
Claimant Trustee of the Highland Claimant
Trust


WRITTEN CONSENT OF THE HOLDERS OF CLASS 9 SUBORDINATED CLAIM TRUST INTERESTS

001532

HCMLPHMIT00002680

**EXHIBIT A**

**Form of HMIT Settlement Agreement**

[*Attached*.]

# EXHIBIT B

## Class 9/10 Distribution Schedule

| General description | Event | Amount to Class 9 | Amount to Class 10 |
|---|---|---|---|
| Retirement of Daugherty Class 9 | After receipt of written consent | $797,261, plus daily interest if applicable [1] | - |
| Disputed Claims Reserve distribution | Resolution of pending "Daugherty tax claim" | Up to $2,656,732.31 [2] | - |
| Initial Interim Distribution (cash) | Within 5 Business Days after Bankruptcy Court Approval | $10,000,000.00 | $10,000,000.00 |
| Initial Interim Distribution (in-kind) | Within 5 Business Days after Bankruptcy Court Approval | | n/a Assignment of Dugaboy Note [3] |
| First Subsequent Distribution | December 1, 2027, subject to Section 6(c) of settlement agreement | Remaining outstanding w/interest | $6,500,000.00 |
| Second Subsequent Distribution | December 1, 2028, subject to Section 6(c) of settlement agreement | n/a | $6,500,000.00 |
| Final Distribution | April 1, 2029, subject to Section 7(c) of settlement agreement | n/a | Remaining assets |

[1] Payable to Daugherty only in respect of his allowed Class 9 claim, pursuant to the written consent.

[2] Disputed Claims Reserve of up to $2,656,732.31 (representing the reserved Class 8 Daugherty tax claim, including interest) will be released upon resolution of the claim. Payment of the reserve to allowed claimholders will follow the terms of the Plan. For example, if the claim is completely disallowed, the entire reserve will be promptly paid to holders of Class 9 interests up to the holders' remaining unpaid face amount plus interest. Similarly, if the claim is partially allowed, any excess of the reserve over the partially allowed amount will be promptly paid to holders of Class 9 interests up to the holders' remaining unpaid face amount plus interest.

[3] Dugaboy Note to be assigned to HMIT. Cash of up to $550k to be distributed pro rata to other Class 10 holder.

001534

HCMLPHMIT00002682

**EXHIBIT**

001535

*EXECUTION VERSION*

## TOLLING AGREEMENT EXTENDING CLAIM
## OBJECTION DEADLINE

This Tolling Agreement (the "Agreement") is made as of July 27, 2022 (the "Effective Date"), by and between Patrick Hagaman Daugherty ("Mr. Daugherty"), on the one hand, and Highland Capital Management, L.P. ("Highland" or the "Debtor," as applicable) and the Highland Claimant Trust (the "Claimant Trust," and together with Highland, the "Highland Parties"), on the other.  Each of Mr. Daugherty, Highland, and the Claimant Trust are individually referred to herein as a "Party" and collectively as the "Parties."

## RECITALS

WHEREAS, Mr. Daugherty is a former employee and limited partner of Highland and served in other positions with affiliates and former affiliates of Highland from time to time;

WHEREAS, on October 16, 2019, Highland filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Case"), which is pending in the U.S. Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court");

WHEREAS, on April 1, 2020, Mr. Daugherty filed a general, unsecured, non-priority claim against Highland in the amount of at "least $37,483,876.59," and such claim was denoted by Highland's claims agent as Proof of Claim No. 67 ("Claim No. 67");

WHEREAS, on April 6, 2020, Mr. Daugherty filed a general, unsecured, non-priority claim against Highland in the amount of at "least $37,482,876.62" that superseded Claim No. 67 and that was denoted by Highland's claims agent as Proof of Claim No. 77 ("Claim No. 77");

WHEREAS, on August 31, 2020, Highland commenced an adversary proceeding, Adv. Proc. No. 20-03107-sgj (Bankr. N.D. Tex.) (the "Adversary Proceeding"), against Mr. Daugherty by filing a complaint [Adv. Dkt. No. 1][1] (the "Complaint") in which Highland (a) objected to Claim No. 77 on various grounds, and (b) asserted a cause of action for the subordination of part of Mr. Daugherty's claim pursuant to 11 U.S.C. § 510(b);

WHEREAS, on September 29, 2020, Mr. Daugherty filed his answer to the Complaint [Adv. Dkt. No. 8] in the Adversary Proceeding;

WHEREAS, on October 23, 2020, Mr. Daugherty filed a motion seeking leave to amend Claim No. 77 [Bankr. Dkt. No. 1280][2] (the "POC Amendment Motion") and attached an amended proof of claim to the POC Amendment Motion increasing Mr. Daugherty's general, unsecured, non-priority claim against Highland to the amount of at "least $40,410,819.42" and sought to supersede Claim No. 67 and Claim No. 77;

---

[1] Adv. Dkt. No. refers to the docket maintained in the Adversary Proceeding.

[2] Bankr. Dkt. No. refers to the docket maintained in the Bankruptcy Case.

WHEREAS, on December 10, 2020, the Bankruptcy Court entered an order [Bankr. Dkt. No. 1533] granting the POC Amendment Motion, and Mr. Daugherty was permitted to file an amendment to his proof of claim;

WHEREAS, on December 23, 2020, Mr. Daugherty filed an amended proof of claim, designated by Highland's claims agent as Proof of Claim No. 205 ("Claim No. 205," and together with Claim No. 67 Claim No. 77, the "Daugherty Claim");

WHEREAS, Claim No. 205 superseded Claim No. 77 and increased the Daugherty Claim to $40,710,819.42;

WHEREAS, on February 22, 2021, the Bankruptcy Court entered its *Order (i) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (ii) Granting Related Relief* [Bankr. Dkt. No. 1943] (the "Confirmation Order") confirming the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* [Bankr. Dkt. No. 1808] (as amended, supplemented, or modified, the "Plan");

WHEREAS, on August 11, 2021, the Effective Date (as defined in the Plan) occurred [Bankr. Dkt. No. 2700];

WHEREAS, on or about November 22, 2021, Highland and Mr. Daugherty executed that certain Settlement Agreement (the "Settlement Agreement") attached as Exhibit 1 to the *Declaration of John A. Morris in Support of the Reorganized Debtor's Motion for Entry of an Order Approving Settlement with Patrick Hagaman Daugherty (Claim No. 205) and Authorizing Actions Consistent Therewith* [Bankr. Dkt. No. 3089] filed in support of the *Reorganized Debtor's Motion for Entry of an Order Approving Settlement with Patrick Hagaman Daugherty (Claim No. 205) and Authorizing Actions Consistent Therewith* [Bankr. Dkt. No. 3088] (the "Settlement Motion");

WHEREAS, following an evidentiary hearing on the Settlement Motion held on March 1, 2022, the Bankruptcy Court entered its order [Bankr. Dkt. No. 3298] (the "Settlement Order") approving the Settlement Motion and the Parties' entry into the Settlement Agreement;

WHEREAS, pursuant to the Settlement Order, the Daugherty Claim, excluding the Reserved Claim,[3] was satisfied in its entirety;

WHEREAS, the Highland Parties dispute the validity and amount of the Reserved Claim and, pursuant to Section 9 of the Settlement Agreement, Mr. Daugherty and Highland reserved all rights with respect to the Reserved Claim; *provided, however*, that any litigation between Highland and Mr. Daugherty concerning the Reserved Claim was stayed until the IRS makes a final determination with respect to the dispute between the Debtor and the IRS (the "IRS Dispute") or the Highland Parties and Mr. Daugherty otherwise agree;

---

[3] "Reserved Claim" means the contingent and unliquidated claim as referenced in Proof of Claim No. 205 that related to an alleged claim for compensation and an audit/dispute between the Debtor and the Internal Revenue Service (the "IRS") in an amount estimated to be $2,650,353.00 as of October 23, 2020.

001537

WHEREAS, pursuant to the Confirmation Order, the deadline to object to claims was 180 days after the Effective Date, *i.e.*, February 7, 2022, unless extended by the Bankruptcy Court (the "Claim Objection Deadline");

WHEREAS, the Claim Objection Deadline was extended by order of the Bankruptcy Court [Bankr. Dkt. No. 3198] to August 8, 2022;

WHEREAS, the Highland Parties were vested with the exclusive authority to compromise, settle, withdrew, or resolve all claims against the Debtor, including the Reserved Claim, without further order of the Bankruptcy Court pursuant to Article VII.B of the Plan;

WHEREAS, on July 6, 2022, the Highland Parties filed the *Reorganized Debtor and Claimant Trustee Joint Motion for Entry of an Order Further Extending the Claim Objection Deadline Pursuant to Confirmed Chapter 11 Plan by which Reorganized Debtor May Object to Certain Claims* [Bankr. Dkt. No. 3387] (the "Second Extension Motion");

WHEREAS, Mr. Daugherty and the Highland Parties continue to consider potential resolutions of the Reserved Claim in the absence of a resolution of the IRS Dispute;

WHEREAS, it is unknown when the IRS Dispute may be resolved; and

WHEREAS, solely to avoid the expense, inconvenience, and uncertainty associated with litigation, and without any Party admitting liability, fault, or wrongdoing, or releasing or waiving any rights or defenses with respect to the Reserved Claim, the Parties desire to enter into this Agreement to extend the Claim Objection Deadline, solely with respect to the Reserved Claim, to January 11, 2023, at 5:00 p.m. (Central Time) (the "Objection Deadline").

NOW, THEREFORE, effective as of the Effective Date, each of the Parties agrees as follows:

1.     Covenant to Reserve.  In consideration of Mr. Daugherty's agreement to extend the Claim Objection Deadline (as set forth in paragraph 2 of this Agreement), the Highland Parties agree not to commence any lawsuit, action or proceeding to further object to the Reserved Claim at any time until the Objection Deadline (notwithstanding Mr. Daugherty's position that the Highland Parties would have no right to do so in any event under the Settlement Agreement until such time that the IRS resolves the IRS Dispute) and further agree to reserve $2,650,353.00 on account of the Reserved Claim in the "Disputed Claim Reserve" as such term is defined in the Plan until the Parties resolve the Reserved Claim pursuant to a signed agreement, or, alternatively, an order of the Bankruptcy Court.

2.     Extension of Claim Objection Deadline.  In consideration of the Highland Parties' "Covenant to Reserve" (as set forth in paragraph 1 of this Agreement), Mr. Daugherty agrees that the Claim Objection Deadline applicable to the Reserved Claim is hereby tolled as of, and extended from, the Effective Date to the Objection Deadline.

3.     Acknowledgement and Waiver.  Mr. Daugherty acknowledges and agrees that:

001538

a.    Regardless of whether the Second Extension Motion is approved by the Bankruptcy Court, Mr. Daugherty waives any right or ability to argue (x) that the terms of this Agreement and the extension of the Claim Objection Deadline required an order of the Bankruptcy Court; or (y) the application of the expiration of the Claims Objection Deadline to the Reserved Claim; and

b.    Mr. Daugherty is estopped from arguing that this Agreement is ineffective to extend the time within which the Highland Parties must object to the Reserved Claim.

4.    <u>Acknowledgement and Waiver</u>.  The Highland Parties acknowledge and agree that regardless of whether the Second Extension Motion is approved by the Bankruptcy Court, the Highland Parties waive any right or ability to argue that the terms of this Agreement and the extension of the Claim Objection Deadline required an order of the Bankruptcy Court.

5.    <u>Representations and Warranties</u>.

a.    Mr. Daugherty represents and warrants that he has not sold, transferred, hypothecated, pledged, or assigned the Reserved Claim to any other person or entity, and that no person or entity other than Mr. Daugherty has been, is, or will be authorized to bring, pursue, or enforce the Reserved Claim on behalf of, for the benefit of, or in the name of (whether directly or derivatively) Mr. Daugherty.

b.    Each Party represents and warrants to the other Party that such Party is fully authorized to enter into and perform the terms of this Agreement and that, as of the Effective Date, this Agreement will be fully binding upon each Party in accordance with its terms.

6.    <u>Miscellaneous</u>.

a.    <u>Binding Effect; Successors-in-Interest</u>.  Each of the Parties agrees that this Agreement will be binding upon the Parties, and, as applicable, upon their predecessors, successors, subsidiaries, divisions, alter egos, affiliated and related entities, and their past or present officers, directors, partners, employees, attorneys, assigns, agents, representatives, and any or all of them.

b.    <u>No Admission of Liability</u>.  The Parties acknowledge that there is a bona fide dispute with respect to the validity and amount of the Reserved Claim.  Nothing in this Agreement will imply an admission of liability, fault or wrongdoing by the Highland Parties, Mr. Daugherty, or any other person and the execution of this Agreement does not constitute an admission of liability, fault, or wrongdoing on the part of the Highland Parties, Mr. Daugherty, or any other person.

c.    <u>Notice</u>.  Each notice and other communication hereunder will be in writing and will be sent by email and delivered or mailed by registered mail, receipt requested, and will be deemed to have been given on the date of its delivery, if delivered, and on the fifth full business day following the date of the mailing, if mailed to each of the Parties thereto at the following respective addresses or such other address as may be specified in any notice delivered or mailed as set forth below:

001539

**Mr. Daugherty**

Patrick Hagaman Daugherty
3621 Cornell Avenue, Suite 830
Dallas, TX  75205
Email:  pdaugherty@glacierlakecap.com

with a copy (which shall not constitute notice) to:

McCollom D'Emilio Smith Uebler LLC
Attn: Thomas Uebler, Esquire
2751 Centerville Road, Suite 401
Wilmington, DE 19808
E-mail: tuebler@mdsulaw.com

**Highland Parties**

Highland Capital Management, L.P.
100 Crescent Court, Suite 1850
Dallas, Texas 75201
Attention: David Klos
E-mail: dklos@HighlandCapital.com

Highland Claimant Trust
100 Crescent Court, Suite 1850
Dallas, Texas 75201
Attention: David Klos
E-mail: dklos@HighlandCapital.com

with a copy (which shall not constitute notice) to:

Pachulski Stang Ziehl & Jones LLP
Attention: Gregory Demo, Esq.
780 Third Avenue, 34th Floor
New York, NY 10017
E-mail: gdemo@pszjlaw.com

      d.     <u>Advice of Counsel</u>.  Each of the Parties represents that such Party has: (a) been adequately represented by independent legal counsel of its own choice, in the negotiation of this Agreement; (b) executed this Agreement upon the advice of such counsel; (c) read this Agreement, and understands and assents to all the terms and conditions contained herein without reservation; and (d) had the opportunity to have the terms and conditions of this Agreement explained by independent counsel, who has answered any and all questions asked of such counsel, or which could have been asked of such counsel, including, but not limited to, with regard to the meaning and effect of any of the provisions of this Agreement.

001540

   e. <u>Counterparts</u>.  This Agreement may be signed in counterparts and such signatures may be delivered by facsimile or other electronic means.

   f. <u>Entire Agreement</u>.  This Agreement sets forth the entire agreement between the Parties with respect to the subject matter hereof and supersedes all prior and contemporaneous written and oral agreements and discussions.  This Agreement may only be amended by an agreement in writing signed by the Parties.

   g. <u>No Waiver and Reservation of Rights</u>.  Except as otherwise provided herein, nothing in this Agreement shall be, or deemed to be, a waiver of any rights, remedies or privileges of any of the Parties, and each Party hereby reserves all of such rights, privileges and remedies under applicable law.

   h. <u>No Waiver if Breach</u>.  The Parties agree that no breach of any provision hereof can be waived except in writing.  The waiver of a breach of any provision hereof shall not be deemed a waiver of any other breach of any provision hereof.

   i. <u>Governing Law</u>.  This Agreement will be exclusively governed by and construed and enforced in accordance with the laws of the State of Delaware, without regard to its conflicts of law principles, and all claims relating to or arising out of this Agreement, or the breach thereof, whether sounding in contract, tort, or otherwise, will likewise be governed by the laws of the State of Delaware, excluding Delaware's conflicts of law principles.

   j. <u>Jurisdiction</u>.  The Bankruptcy Court will retain exclusive jurisdiction over disputes relating to this Agreement.

*[REMAINDER OF PAGE INTENTIONALLY BLANK]*

001541