**UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION**

**In Re: Highland Capital Management, L.P.**

§
§   Case No   **19-34054-SGJ-11**

**The Dugaboy Investment Trust
- Appellant**

§
vs.                                  §

**Highland Claimant Trust**
-Appellee

§                    **3:25-CV-02724-L**
§

**[4401] Order Granting Motion for Order Fixing Allowed Amount of Class 11 Interests (related document # 4362) Entered on 9/22/2025.**

# Volume 10
# APPELLANT RECORD

Geoffrey S. Harper
Texas Bar No. 00795408
gharper@winston.com
John Michael Gaddis
Texas Bar No. 24069747
mgaddis@winston.com
WINSTON & STRAWN LLP
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
(214) 453-6500
(214) 453-6400 (fax)

*Counsel for Appellant The Dugaboy Investment Trust*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | Case No. 19-34054-sgj |
| | § | |
| Reorganized Debtor. | § | |
| | § | |
| | § | |

*INDEX*

**Appellant The Dugaboy Investment Trust's Statement of Issues to be Presented and
Amended Designation of Items to be Included in the Record on Appeal From the
Bankruptcy Court's Order Fixing Allowed Amount of Class 11 Interests**

Pursuant to Rule 8009(a)(1) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Appellant The Dugaboy Investment Trust ("Appellant"), having filed a Notice of Appeal [Docket No. 4423] on October 6, 2025, from the Bankruptcy Court's September 22, 2025 *Order Fixing Allowed Amount of Class 11 Interests* [Docket No. 4401], and having received the Clerk's letter of October 23, 2025 requesting corrections to the record designations, submits this *Statement of Issues to be Presented and Amended Designation of Items to be Included in the Record on Appeal*, and respectfully requests that the Clerk prepare and forward the listed items to the District Court for inclusion in the record in connection with this appeal.[1]

## STATEMENT OF ISSUES TO BE PRESENTED ON APPEAL

1.    Did the Bankruptcy Court misapply the absolute-priority rule in determining that the Hunter Mountain Investment Trust's (HMIT's) Class 10 interests were entitled to 100% of any excess funds left over after all senior creditor classes were paid in full, in disregard of equity interests that allocated 99.5% to HMIT and 0.5% to Dugaboy?

2.    Did the Bankruptcy Court err when it allocated potential excess funds in a way that effectively gave HMIT *more than* 100% of what it was entitled to, in contravention of black-letter law holding that a senior class cannot receive more than 100% without the consent of the junior class? *See In re Idearc, Inc.*, 423 B.R. 138, 170 (Bankr. N.D. Tex. 2009).

3.    Did the Bankruptcy Court err in determining the value of Dugaboy's interest only as a fixed dollar amount, rather than a *pro rata* percentage reflecting its equity ownership share?

4.    Did the Bankruptcy Court err in allowing Highland to use a valuation methodology for determining the allowed amount of Dugaboy's claim based on limited partners' pre-petition capital accounts, which were derived from untested and unvetted figures created for tax purposes that bore little if any relation to true market value, when nothing in the confirmed Reorganization Plan allowed for such a method?

5.    Did the Bankruptcy Court err in believing that "res judicata" required it to use the same methodology to value Dugaboy's Class 11 interests as it had previously used to value HMIT's Class 10 interests?

---

[1] Because of its voluminous nature, Docket No. 4255 will be delivered to the Clerk on a flash drive that will arrive tomorrow.

1

6.  Did the Bankruptcy Court err at the hearing on September 18, 2025, when it invoked "res judicata" to threaten Dugaboy's counsel with Rule 11 sanctions for "recycling" arguments previously made by the "revolving door of lawyers" that had represented Dugaboy over the previous several years, thus seeking to impose a chilling effect on Dugaboy's right to zealous advocacy by its chosen counsel?

7.  Did the Bankruptcy Court's Order Fixing Allowed Amount of Class 11 Interests (Docket No. 4401) constitute a "final" judgment or order, thereby giving the District Court jurisdiction for appellate review of the Bankruptcy Court's Order denying Dugaboy's Motion to Recuse?

## DESIGNATION OF ITEMS TO BE INCLUDED IN THE RECORD ON APPEAL

1.  Notice of Appeal for Bankruptcy Case No. 19-34054-sgj11 [Docket No. 4423] filed by Appellant;

2.  Bankruptcy Court's *Order Fixing Allowed Amount of Class 11 Interests* [Docket No. 4401];

3.  Docket entries kept by the bankruptcy clerk in case no. 19-34054-sg11;

4.  Any opinion, findings of fact, and conclusions of law of the bankruptcy court relating to the issues on appeal, including transcripts of all oral rulings; and

5.  Each of the additional documents and items designated below:

| Date Filed | Docket No. | Description/Docket Text |
|---|---|---|
| 2/22/2021 | 1943 | Order confirming the fifth amended chapter 11 plan, as modified and granting related relief (RE: related document(s) 1472 Chapter 11 plan filed by Debtor Highland Capital Management, L.P., 1808 Chapter 11 plan filed by Debtor Highland Capital Management, L.P.). Entered on 2/22/2021 (Okafor, M.) |
| 9/14/2022 | 3521-5 | Claimant Trust Agreement |
| 2/27/2024 | 4199 | Stipulated and Agreed Order resolving (A) HCLOM, Ltd.'s Scheduled claims 3.65 and 3.66; and (B) Highland Capital Management, L.P.'s (1) Objection and (2) Motion for a bad faith |

Handwritten annotations:
- Vol. 1
- 000001
- 000009
- 000013
- Vol. 2
- 000619
- 000780
- 000820

*Vol. 2*

| | | | finding and an award of attorney's fees against HCLOM, Ltd., and James Dondero in connection therewith (related document #3657, 4176) Entered on 12/27/2024. (Dugan, Sue) |
|---|---|---|---|
*000827* | | 5/19/2025 | 4216 | Motion to compromise controversy with the HMIT Entities. (Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith) Filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust (Attachments: #1 Exhibit A--Proposed Order (Annable, Zachery) |
*000845* | | 5/19/2025 | 4217 | Declaration re: (Declaration of Gregory V. Demo in Support of Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith) filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust (RE: related document(s) 4216 Motion to compromise controversy with the HMIT Entities. (Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith)). (Attachments: #1 Exhibit 1 (Annable, Zachery) |
*000848* | | 5/19/2025 | 4217-1 | Proposed Settlement Agreement |
*Vol. 3* *000873* | | 6/9/2025 | 4230 | Objection to (related document(s): 4216 Motion to compromise controversy with the HMIT Entities. (Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith) filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust) filed by Partner Dugaboy Investment Trust. (Hesse, Gregory) |
*000881* | | 6/20/2025 | 4251 | Exhibit List for the June 25, 2025 Hearing filed by Partner Dugaboy Investment Trust (RE: related document(s) 4230 Objection). (Lang, Michael) |
*000883* | | 6/20/2025 | 4252 | Witness List for the June 25, 2025 Hearing filed by Partner Dugaboy Investment Trust (RE: related document(s) 4230 Objection). (Lang, Michael) |
*000885* *Thru Vol 5* | | 6/20/2025 | 4255 (*to be submitted to* | Witness and Exhibit List filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust (RE: related |

| | *Clerk on flash drive*) | document(s) 4216 Motion to compromise controversy with the HMIT Entities. (Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith)). (Attachments: #1 Exhibit 1 , #2 Exhibit 2 , #3 Exhibit 3 , #4 Exhibit 4 , #5 Exhibit 5 , #6 Exhibit 6 , #7 Exhibit 7 , #8 Exhibit 8 , #9 Exhibit 9 , #10 Exhibit 10 , #11 Exhibit 11 , #12 Exhibit 12 , #13 Exhibit 13 , #14 Exhibit 14 , #15 Exhibit 15 , #16 Exhibit 16 , #17 Exhibit 17 , #18 Exhibit 18 , #19 Exhibit 19 , #20 Exhibit 20 , #21 Exhibit 21 , #22 Exhibit 22 , #23 Exhibit 23 , #24 Exhibit 24 , #25 Exhibit 25 , #26 Exhibit 26 , #27 Exhibit 27 , #28 Exhibit 28 , #29 Exhibit 29 , #30 Exhibit 30 , #31 Exhibit 31 , #32 Exhibit 32 , #33 Exhibit 33 , #34 Exhibit 34 , #35 Exhibit 35 , #36 Exhibit 36 , #37 Exhibit 37 , #38 Exhibit 38 , #39 Exhibit 39 , #40 Exhibit 40 , #41 Exhibit 41 , #42 Exhibit 42 , #43 Exhibit 43 , #44 Exhibit 44 , #45 Exhibit 45 , #46 Exhibit 46 , #47 Exhibit 47 , #48 Exhibit 48 , #49 Exhibit 49 , #50 Exhibit 50 , #51 Exhibit 51 , #52 Exhibit 52 , #53 Exhibit 53 , #54 Exhibit 54 , #55 Exhibit 55 , #56 Exhibit 56 , #57 Exhibit 57 , #58 Exhibit 58 , #59 Exhibit 59 , #60 Exhibit 60 , #61 Exhibit 61 , #62 Exhibit 62 , #63 Exhibit 63 , #64 Exhibit 64 , #65 Exhibit 65 , #66 Exhibit 66 , #67 Exhibit 67 , #68 Exhibit 68 , #69 Exhibit 69 , #70 Exhibit 70 , #71 Exhibit 71 , #72 Exhibit 72 , #73 Exhibit 73 , #74 Exhibit 74 , #75 Exhibit 75 , #76 Exhibit 76 , #77 Exhibit 77 , #78 Exhibit 78 , #79 Exhibit 79 , #80 Exhibit 80 , #81 Exhibit 81 , #82 Exhibit 82 , #83 Exhibit 83 , #84 Exhibit 84 , #85 Exhibit 85 , #86 Exhibit 86 , #87 Exhibit 87 , #88 Exhibit 88 , #89 Exhibit 89 , #90 Exhibit 90 , #91 Exhibit 91 , #92 Exhibit 92 , #93 Exhibit 93 , #94 Exhibit 94 , #95 Exhibit 95 , #96 Exhibit 96 , #97 Exhibit 97 , #98 Exhibit 98 , #99 Exhibit 99 , #100 Exhibit 100 , #101 Exhibit 101 , #102 Exhibit 102 , #103 Exhibit 103 , #104 Exhibit 104 , #105 Exhibit 105 , #106 Exhibit 106 , #107 Exhibit 107 , #108 Exhibit 108 , #109 Exhibit 109 , #110 Exhibit 110 , #111 Exhibit 111 , #112 Exhibit 112 , #113 Exhibit 113 , #114 Exhibit 114 , #115 Exhibit 115 , #116 Exhibit 116 , #117 Exhibit 117 , #118 Exhibit 118 , #119 Exhibit 119 , #120 Exhibit 120 , #121 Exhibit 121 , #122 Exhibit 122 , #123 Exhibit 123 (Annable, Zachery) |
| 6/20/2025 | 4256 | Witness and Exhibit List filed by Creditor Hunter Mountain Investment Trust (RE: related document(s) 4216 Motion to compromise controversy with the HMIT Entities. (Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 |

VOL. 6
003542

| | | | U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith)). (Phillips, Louis) |
|---|---|---|---|
| *Vol. 6* 003545 | 6/20/2025 | 4257 | Witness and Exhibit List filed by Interested Parties Crown Global Life Insurance, Ltd, The Dallas Foundation (RE: related document(s) 4216 Motion to compromise controversy with the HMIT Entities. (Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith)). (Attachments: #1 Exhibit 1 - Charitable DAF/CLO HoldCo Organization Chart, #2 Exhibit 2 - Rand Structure Chart, #3 Exhibit 3 - July 9, 2021 Memo on DAFs and Sponsoring Orgs, #4 Exhibit 4 - Charitable Respondents Response and Disclosures (Okin, Matthew) |
| *Vol. 7* 003865 | 6/23/2025 | 4271 | Amended Witness and Exhibit List filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust (RE: related document(s) 4253 List (witness/exhibit/generic)). (Attachments: #1 Exhibit 66, #2 Exhibit 67 (Annable, Zachery) |
| 003889 | 6/23/2025 | 4272 | Amended Witness and Exhibit List filed by Interested Parties Crown Global Life Insurance, Ltd, The Dallas Foundation (RE: related document(s) 4257 List (witness/exhibit/generic)). (Attachments: #1 Exhibit 5, #2 Exhibit 66, #3 Exhibit 7 7,4 Exhibit 8, 8, Exhibit 9 (Curry, David) |
| 004016 | 6/23/2025 | 4273 | Objection to (related document(s)): 4255 List (witness/exhibit/generic) filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust) filed by Partner Dugaboy Investment Trust. (Ohlinger, Ali) |
| 004031 | 6/23/2025 | 4275 | Omnibus Reply to (related document(s): 4229 Objection filed by Creditor Patrick Daugherty, 4230 Objection filed by Partner Dugaboy Investment Trust, 4231 Objection filed by Interested Party The Dallas Foundation, Interested Party Crown Global Life Insurance, Ltd) filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust. (Annable, Zachery) |
| 004042 | 6/23/2025 | 4277 | Amended Witness and Exhibit List filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust (RE: related document(s) 4255 List (witness/exhibit/generic)). (Attachments: #1 Exhibit 124 , #2 Exhibit 125 (Annable, Zachery) |

*Vol. B*

*004259*

| | 6/24/2025 | 4279 | Witness and Exhibit List with Respect to Hearing to be Held on June 25, 2025 filed by Partner Dugaboy Investment Trust (RE: related document(s) 4213 Motion to extend time to (Motion for an Order Further Extending Duration of Trusts) (RE: related document(s) 4144 Order on motion to extend/shorten time)). (Attachments: #1 Exhibit 1 (Deitsch-Perez, Deborah) |
|---|---|---|---|
| *004270* | 6/24/2025 | 4280 | Amended Witness and Exhibit List (Highland Capital Management, L.P., Highland Claimant Trust, and Litigation Sub-Trust Second Amended Witness and Exhibit List with Respect to Hearing to Be Held on June 25, 2025) filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust (RE: related document(s) 4255 List (witness/exhibit/generic), 4277 List (witness/exhibit/generic)).          (Attachments:#1 Exhibit 126 (Annable, Zachery) |
| *004295* | 6/25/2025 | 4293 | Court admitted exhibits date of hearing June 25, 2025 (RE: related document(s) 4216 Motion to compromise controversy with the HMIT Entities. (Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith) Filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust (Court Admitted Debtors Exhibits #1 through #9; #11 through #56 & #58 through #123 & #126 offered by attorney John Morris; Court Also Admitted Patrick Daugherty Exhibits #1 through #42 offered by attorney Drew K. York: Court also admitted Dugaboy Investment Trust Exhibit #3, which was a letter offered by attorney Michael J. Lang.) (Edmond, Michael) Modified on 6/30/2025 (emi).Modified on 6/30/2025 (emi). (Entered: 06/27/2025) |
| *004296* | 6/25/2025 | 4296 | Transcript of hearing held June 25, 2025, before Chief Judge Stacey C.G. Jernigan [Docket No. 4296] re: Motion for Entry of an Order Approving Settlement with HMIT Entities (4216) [Docket No. 4297] |
| *004562* | 6/27/2025 | 4290 | Stipulation by Highland Claimant Trust, Highland Litigation Sub-Trust and The Dugaboy Investment Trust. filed by Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust (RE: related document(s) 4223 Objection). (Annable, Zachery) |
| *004291* | 6/27/2025 | 4291 | Stipulation withdrawing objection of The Dallas Foundation and Crown Global Life Insurance, LTD to Motion for Entry of an |

6

| | | | |
|---|---|---|---|
| | | | order pursuant to Bankruptcy Rule 9019 and 11 U.S.C. Section 363 approving settlement with the HMIT Entities and authorizing actions consistent therewith (RE: related document(s) 4232 Response filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust, 4282 Stipulation filed by Creditor Hunter Mountain Investment Trust). Entered on 6/27/2025 (Okafor, M.) |
| | 6/30/2025 | 4297 | Order approving settlement between the Highland Entities and the HMIT Entities and authorizing actions consistent therewith (related document # 4216) Entered on 6/30/2025. (Okafor, M.) |
| | 7/10/2025 | 4308 | Notice Letter from the Office of the Texas Attorney General Requesting a Stay filed by Interested Party State of Texas. (Stone, Johnathan) |
| | 7/14/2025 | 4311 | Notice of appeal of Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C § 363 Approving Settlement Between the Highland Entities and the HMIT Entities and Authorizing Actions Consistent Therewith. Fee Amount $298 filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4297 Order on motion to compromise controversy). Appellant Designation due by 07/28/2025. (Lang, Michael) |
| | 7/16/2025 | 4323 | Notice regarding the record for a bankruptcy appeal to the U.S. District Court. (RE: related document(s) 4311 Notice of appeal of Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C § 363 Approving Settlement Between the Highland Entities and the HMIT Entities and Authorizing Actions Consistent Therewith. filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4297 Order on motion to compromise controversy). Appellant Designation due by 07/28/2025.) (Whitaker, Sheniqua) |
| | 7/17/2025 | 4326 | Motion to Stay 9019 Order filed by Creditor The Dugaboy Investment Trust. Objections due by 8/7/2025. (Lang, Michael) Modified text on 7/21/2025 (mdo) |
| | 7/17/2025 | 4329 | Notice of docketing notice of appeal. Civil Action Number: 3:25-cv-01876-K. (RE: related document(s) 4311 Notice of appeal of Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C § 363 Approving Settlement Between the Highland Entities and the HMIT Entities and Authorizing Actions Consistent Therewith. filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4297 Order on motion to compromise controversy). Appellant Designation due by 07/28/2025.) (Whitaker, Sheniqua) |

*Handwritten annotations in left margin:* Vol. 8; 0004577; 0004581; 0004583; 0004592; 0004594; Vol. 9; 0004690

*Vol 10*

*0049963*

*0049979*

*0050001*

*0050012*

*0050023*

*0050029*

*0050032*

*0050047*

*0050051*

| | | | |
|---|---|---|---|
| 7/21/2025 | 4333 | Memorandum of opinion (RE: related document(s) 4308 Notice (generic) filed by Interested Party State of Texas, 4326 The Dugaboy Investment Trust's Motion to Stay 9019 Order filed by Creditor The Dugaboy Investment Trust). Entered on 7/21/2025 (Okafor, M.) | |
| 8/4/2025 | 4353 | Notice of appeal. Fee Amount $298 filed by Partner Dugaboy Investment Trust (RE: related document(s) 4333 Memorandum of opinion). Appellant Designation due by 08/18/2025. (Attachments: # 1 Exhibit A) (Harper, Geoffrey) | |
| 8/8/2025 | 4362 | Motion to allow claims (Motion for Order Fixing Allowed Amount of Class 11 Interests) Filed by Other Professional Highland Claimant Trust (Attachments: # 1 Exhibit A--Proposed Order) (Annable, Zachery) | |
| 8/12/2025 | 4368 | Amended appellant designation of contents for inclusion in record on appeal and statement of issues on appeal. filed by Partner Dugaboy Investment Trust (RE: related document(s) 4365 Appellant designation). (Harper, Geoffrey) | |
| 8/15/2025 | 4371 | Notice of hearing filed by Other Professional Highland Claimant Trust (RE: related document(s) 4362 Motion to allow claims (Motion for Order Fixing Allowed Amount of Class 11 Interests) Filed by Other Professional Highland Claimant Trust (Attachments: # 1 Exhibit A--Proposed Order)). Hearing to be held on 9/18/2025 at 02:30 PM at https://us-courts.webex.com/meet/jerniga for 4362, (Annable, Zachery) | |
| 8/29/2025 | 4378 | Order Approving Motion to Conform Plan to Fifth Circuit Mandate (related document # 4302) Entered on 8/29/2025. (Okafor, M.) | |
| 9/8/2025 | 4384 | Response opposed to (related document(s): 4362 Motion to allow claims (Motion for Order Fixing Allowed Amount of Class 11 Interests) filed by Other Professional Highland Claimant Trust) filed by Creditor The Dugaboy Investment Trust. (Harper, Geoffrey) | |
| 9/11/2025 | 4389 | Stipulation by Highland Claimant Trust and The Dugaboy Investment Trust. filed by Other Professional Highland Claimant Trust (RE: related document(s) 4384 Response). (Annable, Zachery) | |
| 9/15/2025 | 4393 | Reply to (related document(s): 4384 Response filed by Creditor The Dugaboy Investment Trust) (Reply in Support of Motion for Order Fixing Allowed Amount of Class 11 Interests) filed by Other Professional Highland Claimant Trust. (Annable, Zachery) | |

| | 9/15/2025 | 4394 | Amended Witness and Exhibit List (Highland Claimant Trust's Witness and Exhibit List with Respect to Hearing to Be Held on September 18, 2025) filed by Other Professional Highland Claimant Trust (RE: related document(s) 4362 Motion to allow claims (Motion for Order Fixing Allowed Amount of Class 11 Interests)). (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5 # 6 Exhibit 6 # 7 Exhibit 7 # 8 Exhibit 8 # 9 Exhibit 9 # 10 Exhibit 10) (Annable, Zachery) |
|---|---|---|---|
| | 9/15/2025 | 4395 | Witness and Exhibit List for Hearing to be Held on September 18, 2025 filed by Partner Dugaboy Investment Trust (RE: related document(s) 4362 Motion to allow claims (Motion for Order Fixing Allowed Amount of Class 11 Interests)). (Harper, Geoffrey) |
| | 9/18/2025 | 4398 | Court admitted exhibits date of hearing September 18, 2025 (RE: related document(s) 4362 Motion to allow claims (Motion for Order Fixing Allowed Amount of Class 11 Interests) filed by Other Professional Highland Claimant Trust (Court Admitted Debtors/Highland Capital Mgmt., L.P. exhibits #1, #2, #3, #4, #5, #6, #7, #8, #9 & #10 offered by attorney John Morris, found at doc. #4394.) (Edmond, Michael) |
| | 9/22/2025 | 4401 | Order Granting Motion for Order Fixing Allowed Amount of Class 11 Interests (related document # 4362) Entered on 9/22/2025. (Grandstaff, Travis) |

*Handwritten annotations in left margin: Vol 10, 005061, 005213, 005216, 005217*

9

Dated: October 23, 2025                    Respectfully submitted,

                                           **WINSTON & STRAWN LLP**

                                           By:  */s/ Geoffrey S. Harper*

                                           Geoffrey S. Harper
                                           Texas Bar No. 00795408
                                           gharper@winston.com
                                           John Michael Gaddis
                                           Texas Bar No. 24069747
                                           mgaddis@winston.com
                                           2121 N. Pearl Street, Suite 900
                                           Dallas, TX 75201
                                           (214) 453-6500
                                           (214) 453-6400 (fax)

                                           ***Counsel for Appellant***
                                           ***The Dugaboy Investment Trust***

### CERTIFICATE OF SERVICE

I certify that on October 23, 2025, a copy of this document was served electronically via the Court's CM/ECF system to the parties registered or otherwise entitled to receive electronic notices in this case.

                                            */s/ Geoffrey S. Harper*
                                           Geoffrey S. Harper



CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed July 21, 2025**

_____
**United States Bankruptcy Judge**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

-----------------------------------------------------------------

| | |
|---|---|
| In re: § | Chapter 11 |
| § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., § | Case No. 19-34054-sgj11 |
| § | |
| Reorganized Debtor. § | |

-----------------------------------------------------------------

## MEMORANDUM OPINION AND ORDER REGARDING STAY REQUESTS
## [ADDRESSING DE ## 4326 & 4308]

### I.    INTRODUCTION

This Order addresses the "Motion to Stay 9019 Order" filed July 17, 2025, by the Dugaboy

Investment Trust (the "Dugaboy Stay Motion"). DE # 4326. This Order also addresses a letter

sent to this court by Texas Attorney General Ken Paxton, which letter was dated July 9, 2025, and

was docketed on July 10, 2025, at DE # 4308 (the "Texas AG Letter"). This court will sometimes

refer to the Dugaboy Stay Motion and the Texas AG Letter jointly as the "Stay Requests."

1

004963

<u>The Dugaboy Stay Motion</u>. The Dugaboy Stay Motion was filed by the Dugaboy Investment Trust ("Dugaboy"). Dugaboy is a trust whose beneficiaries are James Dondero and his children/descendants. Mr. Dondero is a co-founder and former CEO of the above-referenced Reorganized Debtor ("Highland" or Reorganized Debtor"). As later discussed, Dugaboy was a former owner of a *de minimis* equity interest in Highland (less than .5%). The Dugaboy Stay Motion asks the bankruptcy court to stay **for 90 days** the court's June 30, 2025 "Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. § 363 Approving Settlement Between the Highland Entities and the HMIT Entities and Authorizing Actions Consistent Therewith" (the "Rule 9019 Settlement Order"). DE # 4297. The Rule 9019 Settlement Order approved a settlement ("Settlement Agreement") between the Reorganized Debtor (and certain post-confirmation plan trusts), on the one hand, and Hunter Mountain Investment Trust ("HMIT" or "Hunter Mountain") and certain of its affiliates, on the other. **Hunter Mountain was the 99.5% equity owner of Highland**. Dugaboy desires a 90-day stay of the Rule 9019 Settlement Order so that Dugaboy and other parties can investigate what it asserts was a fraud committed by an individual named Mark Patrick in connection with a Cayman Islands charitable foundation structure ("Cayman Islands Charitable Foundation Structure") that Mark Patrick manages. There are currently liquidation proceedings ongoing in the Cayman Islands, involving this Cayman Islands Charitable Foundation Structure, where these fraud allegations have been raised and presumably will be litigated. *See* Exh. A to the Dugaboy Stay Motion (which is an 83-page Writ of Summons and Statement of Claim filed on or about July 15, 2025, in the Grand Court of the Cayman Islands (the "Cayman Islands Action").

***What on earth does this litigation in the Cayman Islands have to do with the Rule 9019 Settlement Order (and the underlying Settlement Agreement approved therein)?*** Well, as it turns out, this same Mark Patrick that is being accused of fraud in the Cayman Islands Action signed the

004964

Settlement Agreement (on behalf of the Hunter Mountain entities). ***To be sure, the Hunter Mountain entities are not themselves charitable organizations***. Mark Patrick just happens to be a representative of both Hunter Mountain and the Cayman Islands charitable entities that are the subject of the Cayman Islands Action. Note that Dugaboy appealed this bankruptcy court's Rule 9019 Settlement Order on July 14, 2025. The Dugaboy Stay Motion is not a standard request for a stay pending appeal, pursuant to Fed. R. Bankr. Proc. 8007. Rather, a stay is sought, pursuant to Bankruptcy Code section 105, "to provide all stakeholders with time to investigate a motion under Rule 60 to vacate the [Rule] 9019 [Settlement] Order."[1]

The Texas AG Letter. The Texas AG Letter is not a properly filed motion. *See* Fed. R. Bankr. Proc. 5005. In any event, the court has considered it. It has a similar theme, only it asks for ***a stay of the entire bankruptcy proceedings*** (which are now more than four years post-confirmation). The Texas AG notes in his letter that, as the representative of the public's interest in charity, he is charged under Texas law with the power and duty to protect and enforce the public interest in nonprofit organizations, foundations, and charitable trusts.[2] The Texas AG Letter states that the Texas AG Office is investigating "persons and entities, some of whom are involved in this bankruptcy proceeding, in response to complaints"[3] and that "[o]ne of the complaints under investigation involves conduct allegedly taken by persons or entities during this bankruptcy proceeding."[4] The timing and statements in the Texas AG Letter suggest that the person being investigated is the same Mark Patrick addressed in the Dugaboy Stay Motion.

---

[1] Dugaboy Stay Motion, ¶ 3.
[2] Texas AG Letter, 1 (citing Tex. Prop. Code § 123.002 (authorizing the Attorney General to intervene in a "proceeding involving a charitable trust.") and *Tex. v. Veterans Support Org.*, 166 F. Supp. 3d 816, 820-21 (W.D. Tex. 2015)).
[3] Texas AG Letter, 1 (citing Tex. Bus. & Com. Code § 17.61).
[4] Texas AG Letter, 1.

004965

     <u>Summary of Ruling.</u>  For the reasons set forth below, this bankruptcy court will not grant a stay. ***Whatever the misdeeds may or may not be of Mark Patrick, they are not sufficiently intertwined with the Highland bankruptcy estate (or the Settlement Agreement) to justify a stay***. Neither this bankruptcy case, nor the contested matter involving the Settlement Agreement, is a "proceeding involving a charitable trust."  As further described herein, there happens to be a "proceeding involving a charitable trust" ongoing in the Cayman Islands. Mark Patrick is apparently accused of misdeeds therein. But, in the bankruptcy case, Mark Patrick is merely a signatory for a counter-party to a settlement agreement with the bankruptcy estate (that counter-party being the former 99.5% equity owner of Highland, namely Hunter Mountain). This court evaluated the Settlement Agreement in the manner that jurisprudence requires[5] (and weighed the evidence presented, including witness testimony from four witnesses). As noted, this court's Rule 9019 Settlement Order is now subject to appeal. This court determined that the Settlement Agreement was fair and equitable, within the range of reasonableness, and in the best interest of the Highland bankruptcy estate being administered under a confirmed plan with disinterested fiduciaries. The Stay Requests do not articulate a bona fide reason to stay the Rule 9019 Settlement Order or, for that matter, a bankruptcy case that is now more than four years past confirmation. Importantly, it would appear that the parties have other avenues to address any malfeasance of Mark Patrick *vis-à-vis* the liquidation proceedings involving the Cayman Islands Charitable Foundation Structure.

---

[5] *In re Jackson Brewing Co.,* 624 F.2d 599, 603 (5th Cir. 1980); *Official Comm. of Unsecured Creditors v. Moeller (In re Age Ref., Inc.),* 801 F.3d 530, 540 (5th Cir. 2015); *Official Comm. of Unsecured Creditors v. Cajun Elec. Power Coop. (In re Cajun Elec. Power Coop.),* 119 F.3d 349, 356 (5th Cir. 1997); *Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortg. Corp.),* 68 F.3d 914, 917-18 (5th Cir. 1995); *Gluckstadt Holdings, L.L.C. v. VCR I, L.L.C. (In re VCR I, L.L.C.),* 922 F.3d 323, 327 (5th Cir. 2019) (quoting *Cadle Co. v. Mims (In re Moore),* 608 F.3d 253, 263 (5th Cir. 2010)).

004966

## II.    <u>THE RULE 9019 SETTLEMENT MOTION</u>

On May 19, 2025, a Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. § 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith [DE # 4216] (the "Rule 9019 Motion") was filed by the Reorganized Debtor, the Highland Claimant Trust (the "Claimant Trust"), and the Highland Litigation Sub-Trust (the "Litigation Sub-Trust") (collectively, the "Highland Entities").[6]

The Rule 9019 Motion proposed a broad settlement (the aforementioned Settlement Agreement) that would resolve most of the remaining issues outstanding in the long-running Highland bankruptcy case. The other parties to the Settlement Agreement, besides the Highland Entities, were the so-called "HMIT Entities"—defined in the Settlement Agreement as Hunter Mountain Investment Trust, Beacon Mountain LLC, Rand Advisors, LLC, Rand PE Fund I, LP, Rand PE Fund Management, LLC, Atlas IDF, LP, and Atlas IDF GP, LLC. These HMIT Entities, other than Hunter Mountain itself, are affiliates of Hunter Mountain. As earlier noted, ***Hunter Mountain was the majority equity owner of Highland, prepetition.*** Hunter Mountain owned 100% of Highland's Class B & C limited partnership interests. This represented 99.5% of the overall equity of Highland. Hunter Mountain acquired all of Highland's Class B and Class C limited partnership interests (the "Class B/C Interests") in December 2015, from James Dondero (the aforementioned co-founder and former CEO of Highland—whose family trust Dugaboy is now wanting a stay); Mark Okada (another co-founder of Highland); and certain entities affiliated with them. These Class B/C Interests—again, held entirely by Hunter Mountain at this point— were categorized in Class 10 of Highland's confirmed Chapter 11 plan.

---

[6] The Claimant Trust and Litigation Sub-Trust are entities created pursuant to the confirmed Highland Chapter 11 plan, to handle various post-confirmation matters.

004967

Among other things, the Settlement Agreement contemplated, in pertinent part: (a) the dismissal with prejudice of all pending litigation between and among the Highland Entities and the HMIT Entities (by way of example, Hunter Mountain had asserted claims for breach of fiduciary duty, conspiracy, and unjust enrichment against Highland and its new CEO, James P. Seery); (b) the disposition of bankruptcy estate claims asserted against certain of the HMIT Entities by the Claimant Trust and/or the Litigation Sub-Trust, and the assignment of the balance of the remaining estate claims to the HMIT Entities (by way of example, Highland had argued that Hunter Mountain owed Highland more than $57 million on a note payable to Highland); (c) the allowance of the Hunter Mountain Class 10 Interest in a fixed amount; (d) cash distributions to Hunter Mountain on account of its Class 10 Interest of about $10.5 Million, plus the assignment of an approximately $24 million note receivable owed to Highland known as the "Dugaboy Note," subject to certain conditions, set forth in the Settlement Agreement; and (e) the exchange of mutual general and broad releases and other protections consistent with the parties' intent to end all current, and avoid all future, litigation between and among them.

As previously mentioned, the current representative of Hunter Mountain is an individual named Mark Patrick. Mark Patrick assumed this role in March 2021, replacing an individual named Grant Scott. Mark Patrick was a long-time Highland employee. Mark Patrick had been employed by Highland as tax counsel since 2008. Mark Patrick had also provided personal tax advice to Mr. Dondero. In February 2021, as part of the Highland bankruptcy case, the employment contracts of many of Highland's employees, including Mark Patrick, were terminated. Mark Patrick, along with many other former back-office employees of Highland, thereafter became employees of a newly formed company called Skyview Group ("Skyview"), that provides middle and back-office services to various clients.

Apparently, Mark Patrick and Mr. Dondero (and/or perhaps others at Skyview) got into disagreements of some sort in mid-2024, and Mark Patrick is no longer employed at Skyview.

### III.    THE OBJECTIONS TO THE RULE 9019 SETTLEMENT AGREEMENT

There were three objections to the Rule 9019 Settlement Motion/Settlement Agreement filed. Accordingly, the court presided over a contested evidentiary hearing on June 25, 2025 (the "Rule 9019 Settlement Hearing").  The court heard testimony from four witnesses: James Seery, Mark Patrick, James Dondero, and Patrick Daugherty.  The court admitted documentary evidence as well.

The Patrick Daugherty Objection.  One objection was filed by Patrick Daugherty (a former general counsel of Highland that has been in litigation for more than 15 years in several courts with Highland, Dondero, and others related to Highland) [DE # 4229]. Daugherty has already been paid on a large claim he was allowed in the Highland bankruptcy case but still has an unresolved, contingent, unsecured claim that is categorized in Class 8 of the confirmed Highland plan. Mr. Daugherty argued that the absolute priority rule and the Chapter 11 plan terms were being violated by the Settlement Agreement, since an equity interest (Hunter Mountain's Class 10 Interest) was receiving a distribution before Daugherty's Class 8 general unsecured claim. The court disagreed with these arguments, since Mr. Daugherty's unpaid, contingent Class 8 claim is highly speculative and has been fully reserved for, pending an ultimate hearing on the allowance of this claim. This Objection was overruled at the Rule 9019 Settlement Hearing.

The Dugaboy Objection.  Another objection was filed by Dugaboy [DE # 4230]. As earlier noted, Dugaboy owned a very small amount of the equity in Highland—specifically, a .1866% share of the Class A limited partnership interests—and these Class A limited partnership interests, in turn, represented a merely .5% of the overall equity of Highland. Thus, Dugaboy owned well-

under 1% of the equity of Highland. These Class A interests were categorized in Class 11 of the confirmed Highland plan. Note that two other parties besides Dugaboy owned Class A equity interests in Highland: Strand Advisors, Inc. ("Strand") and Mark Okada directly and indirectly (the other co-founder of Highland). The Dugaboy objection essentially argued that the Settlement Agreement violated the confirmed Plan, the Claimant Trust Agreement and the Confirmation Order, without much more detail than this. The Dugaboy objection was surprising to this court, because Hunter Mountain and Dugaboy have seemed to be at all times friendly—seemingly in lockstep—throughout the Highland bankruptcy case.  They have shared the same legal positions and the same legal counsel at times. On the day of the Rule 9019 Settlement Hearing, Dugaboy orally made additional arguments, beyond those made in its written objection. Specifically, Dugaboy argued that the existence of the Cayman Islands Action should cause the bankruptcy court to continue the Rule 9019 Settlement Hearing (which Cayman Islands Action is further discussed below). The court declined to continue the Rule 9019 Settlement Hearing, and Dugaboy's Objection was overruled at the hearing.

The Dallas Foundation Objection.  Another objection ("Dallas Foundation Objection") to the Settlement was filed by The Dallas Foundation [DE # 4231] (the "Dallas Foundation"), on behalf of Empower Dallas Foundation ("EDF") and The Okada Family Foundation (the "Okada Foundation"), and Crown Global Life Insurance, Ltd. ("Crown,"), not individually, but solely in respect of Segregated Accounts 30218 & 30219 (collectively, for ease of reference, the "Dallas Foundation"). The Dallas Foundation argued that "the Settlement is potentially tainted by the actions of Mark Patrick, the apparent sole manager and director of the HMIT Entities."[7]  It further stated that "upon information and belief, Mr. Patrick illicitly restructured *the ownership* of the

---

[7] Dallas Foundation Objection, ¶ 2.

HMIT Entities in a manner that seemed to facilitate the diversion of millions of dollars in assets from ***the charitable entities that are the beneficial owners of the HMIT Entities***."[8]

What did this mean?  How exactly does the Dallas Foundation factor into all of this?  How was the Dallas Foundation a party-in-interest with standing to object to a settlement in the Highland bankruptcy case at this juncture?  ***It did not purport to be a creditor or equity interest holder***. Rather, the Dallas Foundation was referring to itself as ***"a Beneficial Owner of the HMIT Entities."***[9]  Since HMIT owns 99.5% of Highland, does the Dallas Foundation also consider itself an indirect beneficial owner of Highland? Suddenly this is mind-numbing.

Not to worry.  The Dallas Foundation Objection further explained how it is a "Beneficial Owner" of Hunter Mountain. The explanation involves a complex charitable entity structure that is organized in the Cayman Islands. One has to carefully follow the bouncing ball to make the connection.

## IV.    THE CAYMAN ISLANDS CHARITABLE FOUNDATION STRUCTURE[10]

<u>DAF Holdco (a "corporate blocker")</u>. First, there is an entity called Charitable DAF HoldCo, Ltd. (the "DAF Holdco"), that is a Cayman Islands exempted company, incorporated on October 27, 2011, having its registered office at HSM Corporate Services Ltd, 68 Fort Street, George Town, PO Box 31726, Grand Cayman KY1-1207, that happens to currently be in liquidation proceedings in the Cayman Islands Action. The shares of DAF Holdco are divided into Participating Shares and Management Shares. DAF Holdco is apparently what's known as a "corporate blocker" in the Cayman Islands Charitable Foundation Structure. Mark Patrick has been the manager of it since March 2021.

---

[8] Dallas Foundation Objection, ¶ 2 (emphasis added).
[9] Dallas Foundation Objection, 4 (emphasis added).
[10] The following is gleaned from an Exbibit A attachment to the Dugaboy Stay Motion.

004971

The DAF Fund. Second, DAF Holdco has historically been the sole limited partner of another entity called Charitable DAF Fund, LP (the "DAF Fund"). The DAF Fund is a Cayman Islands exempted limited partnership formed to invest and manage assets *for the ultimate benefit of three or four registered charitable organizations in the U.S., including the Dallas Foundation* (the "Charitable Entities").[11] The DAF Fund has sometimes been represented in filings (organizational charts) presented to the bankruptcy court as a Cayman Islands hedge fund. The general partner of the DAF Fund was historically Charitable DAF GP, LLC (the "DAF GP"), a Delaware limited liability company registered as a foreign company in the Cayman Islands. Mark Patrick has been the manager of DAF GP since March 2021.

CLO Holdco (another "corporate blocker"). Third, the sole asset of the DAF Fund is its 100% equity ownership in yet another entity called CLO HoldCo, Ltd. ("CLO HoldCo"), which is yet another Cayman Islands exempted company incorporated with limited liability, having its registered office address located at Campbells Corporate Services Limited, Floor 4, Willow House, Cricket Square, Grand Cayman KY1-9010, Cayman Islands. CLO HoldCo is another "corporate blocker" entity in the Cayman Islands Charitable Foundation Structure. *Interestingly, CLO HoldCo owns Hunter Mountain, and, as previously stated, Hunter Mountain was the 99.5% owner of Highland.*

It seems rather interesting that Highland—an alternative investment advisor (sometimes referred to as a hedge fund) that was managing billions of assets—was owned ultimately by an offshore structure designed for charitable purposes. However, this court has no expertise as to

---

[11] The Charitable Entities of which this court is aware are: The Dallas Foundation, The Greater Kansas City Foundation, The Santa Barbara Foundation, and the Community Foundation of North Texas (the "Charitable Entities" or sometimes the "Participating Shareholders"). The court has every reason to believe that these are respectable organizations dedicated to supporting charitable causes in their communities. The court has never heard anything to the contrary. Nothing herein should be construed as disparaging them in any way.

004972

whether this is an unusual structure or one that is common to facilitate/enhance tax-exempt ownership and charitable giving. The court is simply presenting the information available to it that it thinks explains why a stay is not appropriate here: namely, *since other litigation exists involving Mark Patrick and the Charitable Entities*.

In any event, structurally, the three or four Charitable Entities (including the Dallas Foundation) are the ultimate beneficial owners of Participating Shares in DAF Holdco (one of the "corporate blockers"). This essentially means that the Charitable Entities are at the top of the whole structure.

The documentation supporting this whole structure apparently requires that the Participating Shareholders (i.e., the Charitable Entities such as the Dallas Foundation) must at all times qualify as a tax-exempt organizations, pursuant to section 501(c)(3) of the United States Internal Revenue Code of 1986 ("IRC"). The Participating Shares do not have voting rights but have the right to participate in the profits or assets of the DAF Holdco. Meanwhile, the Management Shares (which have been held by Mark Patrick) have voting rights but do not have the right to participate in the profits or assets of the DAF Holdco. In other words, the Participating Shareholders have the entirety of the economic interest in DAF Holdco, whereas the sole Management Shareholder has the control rights.

Bottom line, the Dallas Foundation argued that they had reason to believe that Mark Patrick engaged in some illicit actions recently that changed up some of the structure set forth above (i.e., including the insertion of newly created entities into the DAF Fund's structure). *As a result, the Dallas Foundation feared that a significant portion of the economic interests derived by the HMIT Entities from the Settlement Agreement would flow to Mark Patrick rather than to the Charitable Entities for whose benefit the DAF Fund was established*. The Dallas Foundation

004973

questioned Mark Patrick's requisite corporate authority to cause the HMIT Entities to enter into the Settlement Agreement. The Dallas Foundation asserted that many of Mark Patrick's alleged actions, including the apparent insertion of newly created entities into the DAF Fund's structure, would be subject to claw back or other avoidance actions in the Cayman Islands Action or such other tribunal as has jurisdiction. The Dallas Foundation wanted the bankruptcy court to defer to that process.

Significantly, the Dallas Foundation withdrew its objection the morning of the June 25, 2025 Rule 9019 Settlement Hearing. It made its announcement through counsel on the record at the hearing.

## V.    THE RULE 9019 SETTLEMENT HEARING

After hearing evidence and argument on June 25, 2025, the court approved the Settlement Agreement. Bankruptcy Rule 9019 provides that "[o]n motion … and after notice and a hearing, the court may approve a compromise or settlement."[12] Settlements are favored in the bankruptcy context to "minimize litigation and expedite the administration of a bankruptcy estate."[13] The approval of a settlement is within the "sound discretion" of the trial court.[14] Pursuant to Bankruptcy Rule 9019(a), the court may approve a settlement if it is fair, reasonable, and in the best interests of the estate.[15] A settlement should be approved unless it falls below the lowest point in the range of reasonableness, based on a comparison between the terms of the settlement and the costs and benefits of further litigation.[16]

---

[12] Fed. R. Bankr. Proc. 9019(a).
[13] *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996).
[14] *In re Jackson Brewing Co.*, 624 F.2d 599, 603 (5th Cir. 1980).
[15] *See, e.g., Official Comm. of Unsecured Creditors v. Moeller (In re Age Ref., Inc.)*, 801 F.3d 530, 540 (5th Cir. 2015).
[16] *See, e.g., Jackson Brewing Co.*, 624 F.2d at 602 (court must compare the "terms of the compromise with the likely rewards of litigation"); *Cook v. Waldron,* 2006 U.S. Dist. LEXIS 31411, at *10 (S.D. Tex. April 18, 2006) (court should "canvass the issues" to decide if settlement falls "below the lowest point in the range of reasonableness").

004974

In evaluating a proposed settlement, courts consider (i) the "probability of success in the litigation, with due consideration for the uncertainty in fact and law," (ii) the "complexity and likely duration of the litigation and any attendant expense, inconvenience and delay," and (iii) "[a]ll other factors bearing on the wisdom of the compromise."[17] Assessing the first factor—success on the merits—does not require a "mini-trial" on the merits.[18] The "other factors" include "the best interests of the creditors, 'with proper deference to their reasonable views,'" as well as "'the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion.'"[19]

A trustee or other estate representative also "is permitted to settle lawsuits pursuant to section 363(b)" of the Bankruptcy Code.[20] Section 363(b) provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."[21] A sale involving a transaction outside the ordinary course of business "'must be supported by an articulated business justification, good business judgment, or sound business reasons.'"[22]

The court determined, based on this jurisprudence, that the factors to be considered pursuant to Bankruptcy Rule 9019 and Bankruptcy Code section 363(b) weighed in favor of approving the Settlement Agreement in this case. The Highland Entities believed they had strong and meritorious defenses to all of the then-pending HMIT litigation, and history has shown that defending the then-pending HMIT litigation, including the appeals that could result therefrom,

---

[17] *Official Comm. of Unsecured Creditors v. Cajun Elec. Power Coop. (In re Cajun Elec. Power Coop.)*, 119 F.3d 349, 356 (5th Cir. 1997) (quoting *Jackson Brewing Co.,* 624 F.2d at 602).
[18] *Cajun Elec. Power Coop.*, 119 F.3d at 356.
[19] *Id.* (quoting *Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortg. Corp.)*, 68 F.3d 914, 917-18 (5th Cir. 1995)).
[20] *Id.* at 354.
[21] 11 U.S.C. § 363(b)(1).
[22] *Gluckstadt Holdings, L.L.C. v. VCR I, L.L.C. (In re VCR I, L.L.C.)*, 922 F.3d 323, 327 (5th Cir. 2019) (quoting *Cadle Co. v. Mims (In re Moore)*, 608 F.3d 253, 263 (5th Cir. 2010)).

would be costly, time-consuming and value-destructive to the estate and creditor recoveries. Further, there was no guarantee that the Highland Entities would continue to be successful in defending the then-pending HMIT litigation—or that the HMIT Entities would not file additional litigation against the Highland Entities and their indemnified parties.

The second factor—complexity, duration, and costs of litigation—also weighed heavily in favor of approval of the Settlement Agreement. The cost of defending against the litigation in this case, including the then-pending HMIT litigation, had been significant. The litigation and its attendant costs have also significantly delayed and reduced distributions to the Reorganized Debtor's constituents. The HMIT litigation began in 2023 and is subject to at least two pending appeals which showed no signs of resolving absent this Settlement Agreement. If the Settlement Agreement was not approved, the Highland Entities would be faced with significant appellate litigation and potentially additional litigation in this court and other courts.

Third, approval of the Settlement Agreement was justified by the paramount interests of Highland's creditors and constituents. The Settlement Agreement resolved the pending HMIT litigation, resolved all disputes in connection with the HMIT Class 10 Interest; would sell, transfer, and assign the Estate Claims asserted in the so-called Kirschner Adversary Proceeding—which has been pending since 2021 (until it was stayed in 2023, at significant cost to the estate)—to the HMIT Entities; and would provide for broad mutual releases and a cessation of the litigation and acrimony that, in significant part, has delayed completion of the Plan and the overall bankruptcy case.

The preponderance of the evidence suggested that the Settlement Agreement was a rational exercise of the Highland Entities' business judgment and was negotiated in good faith and at arm's length.

The court signed the Rule 9019 Settlement Order on June 30, 2025 [DE # 4297].

Then, on July 17, 2025, Dugaboy filed the Dugaboy Stay Motion. This was preceded by the filing of the Texas AG Letter on July 10, 2025. As earlier noted, both of these Stay Requests urge that this court should halt things while they or others investigate matters that should be hashed out in the Cayman Islands Action. The Dugaboy Stay Motion says this

> is necessary to provide all stakeholders with time to investigate a motion under Rule 60 to vacate the 9019 Order (and all resulting orders, such as the dismissals effected as a result of the 9019 Order) in light of evidence suggesting that the settlement approved by this Court was a key element of [Mark Patrick's] alleged fraudulent scheme. Transfers of assets to companies controlled by Mr. Patrick must be halted, lest those assets are moved to companies "hard to find or track."[23]

## VI.   DENIAL OF STAY REQUESTS

As noted earlier, the Dugaboy Stay Motion and the Texas AG Letter are not motions for stay pending appeal pursuant to Rule 8007 of the Federal Rules of Bankruptcy Procedure. Dugaboy requests some sort of discretionary stay, for 90 days, while proceedings in the Cayman Islands Action go forward and, perhaps, reach a conclusion that improprieties by Mark Patrick occurred with regard to the Cayman Islands Charitable Foundation Structure. To be clear, the request is made by Dugaboy, whose party-in-interest status in the Highland estate is quite *de minimis*. The Texas AG apparently is of the impression (as a result of whomever filed a complaint with him) that this bankruptcy case, or the contested matter involving the Settlement Agreement, is a "proceeding involving a charitable trust." But that simply is not the case. While the assets of Hunter Mountain—remember, the former 99.5% equity owner of Highland—may ultimately be part of a *res* that indirectly benefits (or was intended to benefit) the Charitable Entities such as Dallas Foundation (as a result of the manner in which the Cayman Islands Charitable Foundation

---

[23] Dugaboy Stay Motion, ¶ 3.

Structure was designed), this does not mean that the Highland bankruptcy case is a proceeding involving a charitable trust. This court believes it applied the correct analysis required for a bankruptcy settlement.  Nothing about the bankruptcy court's ruling impacts the Cayman Islands Action or the Texas AG actions it might seek to take on behalf of the Charitable Entities such as the Dallas Foundation. Accordingly,

**IT IS ORDERED** that the Stay Requests by Dugaboy and the Texas attorney general be, and hereby are, **DENIED.**

**#### END OF MEMORANDUM OPINION AND ORDER ####**

004978

Geoffrey S. Harper
Texas Bar No. 00795408
gharper@winston.com
WINSTON & STRAWN LLP
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
(214) 453-6500
(214) 453-6400 (fax)

Michael J. Lang
Texas State Bar No. 24036944
mlang@cwl.law
Alexandra Ohlinger
Texas State Bar No. 24091423
aohlinger@cwl.law
CRAWFORD, WISHNEW & LANG PLLC
1700 Pacific Ave, Suite 2390
Dallas, Texas 75201
Telephone: (214) 817-4500

*Counsel for The Dugaboy Investment Trust*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.,** | § | **Case No. 19-34054-sgj** |
| | § | |
| **Reorganized Debtor.** | § | |
| | § | |

## NOTICE OF APPEAL OF ORDER REGARDING STAY REQUESTS [ADDRESSING DE ## 4326 & 4308]

**Part 1: Identify the appellant(s)**

1. Name(s) of appellant(s):

**The Dugaboy Investment Trust**

2. Position of appellant(s) in the adversary proceeding or bankruptcy case that is the subject of this appeal:

004979

For appeals in an adversary proceeding:
□ Plaintiff
□ Defendant
□ Other (describe)

For appeals in a bankruptcy case and not in an adversary proceeding:
□ Debtor
X **Creditor**
□ Trustee
□ Other (describe)

**Part 2: Identify the subject of this appeal**

1.  Describe the judgment, order, or decree appealed from:

    **ORDER REGARDING STAY REQUESTS [ADDRESSING DE ## 4326 & 4308]**

    A true and correct copy of the Order is attached hereto as Exhibit A.

**2.** State the date on which the judgment, order, or decree was entered: **entered July 21, 2025 [Dkt. No. 4333]**

3.  **Part 3: Identify the other parties to the appeal**

List the names of all parties to the judgment, order, or decree appealed from and the names, addresses, and telephone numbers of their attorneys:

1. *Party/Appellee:*    Highland Capital Management, L.P.

Attorneys:

PACHULSKI STANG ZIEHL & JONES LLP
Jeffery N. Pomerantz
John A. Morris
Gregory V. Demo
Hayley R. Winograd
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
T: (310) 277-6910
F: (212) 561-7777

And

Hayward & Associates PLLC
Melissa S. Hayward
Zachery Z. Annable
10501 N. Central Expy. Ste. 106
Dallas, TX 75231
T: (972) 755-7100
F: (972) 755-7110

2. *Party/Appellee:*   Highland Claimant Trust

Attorneys:

PACHULSKI STANG ZIEHL & JONES LLP
Jeffery N. Pomerantz
John A. Morris
Gregory V. Demo
Hayley R. Winograd
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
T: (310) 277-6910
F: (212) 561-7777

And

Hayward & Associates PLLC
Melissa S. Hayward
Zachery Z. Annable
10501 N. Central Expy. Ste. 106
Dallas, TX 75231
T: (972) 755-7100
F: (972) 755-7110


3. *Party/Appellee:* The Highland Litigation Sub-Trust

Attorneys:

QUINN EMANUEL URQUHART & SULLIVAN LLP
Deborah J. Newman (admitted pro hac vice)
Robert S. Loigman (admitted pro hac vice)
51 Madison Avenue, 22nd Floor New York, NY 10010
T: (212) 849-7000

And

SIDLEY AUSTIN LLP
Paige Holden Montgomery
2021 McKinney Avenue
Suite 2000
Dallas, Texas 75201
T: (214) 981-3300

004981

4. Party/Appellee: Hunter Mountain Investment Trust

KELLY HART PITRE
Louis M. Phillips (#10505)
One American Place
301 Main Street, Suite 1600
Baton Rouge, LA 70801-1916
T: (225) 381-9643
F: (225) 336-9763
Email: louis.phillips@kellyhart.com

Amelia L. Hurt (LA #36817, TX #24092553)
400 Poydras Street, Suite 1812
New Orleans, LA 70130
T: (504) 522-1812
F: (504) 522-1813
Email: amelia.hurt@kellyhart.com

Dated: August 4, 2025                          Respectfully submitted,

                                               WINSTON & STRAWN LLP

                                               By: /s/ Geoffrey S. Harper

                                               Geoffrey S. Harper
                                               Texas Bar No. 00795408
                                               gharper@winston.com
                                               2121 N. Pearl Street, Suite 900
                                               Dallas, TX 75201
                                               (214) 453-6500
                                               (214) 453-6400 (fax)

                                               Michael J. Lang
                                               Texas State Bar No. 24036944
                                               mlang@cwl.law
                                               Alexandra Ohlinger
                                               Texas State Bar No. 24091423
                                               aohlinger@cwl.law
                                               CRAWFORD, WISHNEW & LANG PLLC
                                               1700 Pacific Ave, Suite 2390
                                               Dallas, Texas 75201
                                               Telephone: (214) 817-4500

                                               Counsel for The Dugaboy Investment Trust

004982

## <u>CERTIFICATE OF SERVICE</u>

     The undersigned hereby certifies that on August 4, 2025, a true and correct copy of this document was served electronically via the Court's CM/ECF system to the parties registered or otherwise entitled to receive electronic notices in this case.


                      */s/ Geoffrey S. Harper*_____

                      Geoffrey S. Harper

004983

# EXHIBIT A



**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**THE DATE OF ENTRY IS ON**
**THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed July 21, 2025**

_____
**United States Bankruptcy Judge**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

----------------------------------------------------------------

In re:

HIGHLAND CAPITAL MANAGEMENT, L.P.,

                          Reorganized Debtor.

----------------------------------------------------------------

§
§   Chapter 11
§
§   Case No. 19-34054-sgj11
§
§

### MEMORANDUM OPINION AND ORDER REGARDING STAY REQUESTS
### [ADDRESSING DE ## 4326 & 4308]

### I.        INTRODUCTION

This Order addresses the "Motion to Stay 9019 Order" filed July 17, 2025, by the Dugaboy

Investment Trust (the "Dugaboy Stay Motion").  DE # 4326.  This Order also addresses a letter

sent to this court by Texas Attorney General Ken Paxton, which letter was dated July 9, 2025, and

was docketed on July 10, 2025, at DE # 4308 (the "Texas AG Letter"). This court will sometimes

refer to the Dugaboy Stay Motion and the Texas AG Letter jointly as the "Stay Requests."

1

004985

The Dugaboy Stay Motion. The Dugaboy Stay Motion was filed by the Dugaboy
Investment Trust ("Dugaboy"). Dugaboy is a trust whose beneficiaries are James Dondero and his
children/descendants. Mr. Dondero is a co-founder and former CEO of the above-referenced
Reorganized Debtor ("Highland" or Reorganized Debtor"). As later discussed, Dugaboy was a
former owner of a *de minimis* equity interest in Highland (less than .5%). The Dugaboy Stay
Motion asks the bankruptcy court to stay **for 90 days** the court's June 30, 2025 "Order Pursuant to
Bankruptcy Rule 9019 and 11 U.S.C. § 363 Approving Settlement Between the Highland Entities
and the HMIT Entities and Authorizing Actions Consistent Therewith" (the "Rule 9019 Settlement
Order"). DE # 4297. The Rule 9019 Settlement Order approved a settlement ("Settlement
Agreement") between the Reorganized Debtor (and certain post-confirmation plan trusts), on the
one hand, and Hunter Mountain Investment Trust ("HMIT" or "Hunter Mountain") and certain of
its affiliates, on the other. **Hunter Mountain was the 99.5% equity owner of Highland**. Dugaboy
desires a 90-day stay of the Rule 9019 Settlement Order so that Dugaboy and other parties can
investigate what it asserts was a fraud committed by an individual named Mark Patrick in
connection with a Cayman Islands charitable foundation structure ("Cayman Islands Charitable
Foundation Structure") that Mark Patrick manages. There are currently liquidation proceedings
ongoing in the Cayman Islands, involving this Cayman Islands Charitable Foundation Structure,
where these fraud allegations have been raised and presumably will be litigated. *See* Exh. A to the
Dugaboy Stay Motion (which is an 83-page Writ of Summons and Statement of Claim filed on or
about July 15, 2025, in the Grand Court of the Cayman Islands (the "Cayman Islands Action").

**What on earth does this litigation in the Cayman Islands have to do with the Rule 9019
Settlement Order (and the underlying Settlement Agreement approved therein)?** Well, as it turns
out, this same Mark Patrick that is being accused of fraud in the Cayman Islands Action signed the

004986

Settlement Agreement (on behalf of the Hunter Mountain entities). ***To be sure, the Hunter Mountain entities are not themselves charitable organizations***. Mark Patrick just happens to be a representative of both Hunter Mountain and the Cayman Islands charitable entities that are the subject of the Cayman Islands Action. Note that Dugaboy appealed this bankruptcy court's Rule 9019 Settlement Order on July 14, 2025. The Dugaboy Stay Motion is not a standard request for a stay pending appeal, pursuant to Fed. R. Bankr. Proc. 8007. Rather, a stay is sought, pursuant to Bankruptcy Code section 105, "to provide all stakeholders with time to investigate a motion under Rule 60 to vacate the [Rule] 9019 [Settlement] Order."[1]

<u>The Texas AG Letter</u>. The Texas AG Letter is not a properly filed motion. *See* Fed. R. Bankr. Proc. 5005. In any event, the court has considered it. It has a similar theme, only it asks for ***a stay of the entire bankruptcy proceedings*** (which are now more than four years post-confirmation). The Texas AG notes in his letter that, as the representative of the public's interest in charity, he is charged under Texas law with the power and duty to protect and enforce the public interest in nonprofit organizations, foundations, and charitable trusts.[2] The Texas AG Letter states that the Texas AG Office is investigating "persons and entities, some of whom are involved in this bankruptcy proceeding, in response to complaints"[3] and that "[o]ne of the complaints under investigation involves conduct allegedly taken by persons or entities during this bankruptcy proceeding."[4] The timing and statements in the Texas AG Letter suggest that the person being investigated is the same Mark Patrick addressed in the Dugaboy Stay Motion.

---

[1] Dugaboy Stay Motion, ¶ 3.
[2] Texas AG Letter, 1 (citing Tex. Prop. Code § 123.002 (authorizing the Attorney General to intervene in a "proceeding involving a charitable trust.") and *Tex. v. Veterans Support Org.*, 166 F. Supp. 3d 816, 820-21 (W.D. Tex. 2015)).
[3] Texas AG Letter, 1 (citing Tex. Bus. & Com. Code § 17.61).
[4] Texas AG Letter, 1.

3

    <u>Summary of Ruling.</u>  For the reasons set forth below, this bankruptcy court will not grant a stay. ***Whatever the misdeeds may or may not be of Mark Patrick, they are not sufficiently intertwined with the Highland bankruptcy estate (or the Settlement Agreement) to justify a stay***. Neither this bankruptcy case, nor the contested matter involving the Settlement Agreement, is a "proceeding involving a charitable trust."  As further described herein, there happens to be a "proceeding involving a charitable trust" ongoing in the Cayman Islands. Mark Patrick is apparently accused of misdeeds therein. But, in the bankruptcy case, Mark Patrick is merely a signatory for a counter-party to a settlement agreement with the bankruptcy estate (that counter-party being the former 99.5% equity owner of Highland, namely Hunter Mountain). This court evaluated the Settlement Agreement in the manner that jurisprudence requires[5] (and weighed the evidence presented, including witness testimony from four witnesses). As noted, this court's Rule 9019 Settlement Order is now subject to appeal. This court determined that the Settlement Agreement was fair and equitable, within the range of reasonableness, and in the best interest of the Highland bankruptcy estate being administered under a confirmed plan with disinterested fiduciaries. The Stay Requests do not articulate a bona fide reason to stay the Rule 9019 Settlement Order or, for that matter, a bankruptcy case that is now more than four years past confirmation. Importantly, it would appear that the parties have other avenues to address any malfeasance of Mark Patrick *vis-à-vis* the liquidation proceedings involving the Cayman Islands Charitable Foundation Structure.

---

[5] *In re Jackson Brewing Co.,* 624 F.2d 599, 603 (5th Cir. 1980); *Official Comm. of Unsecured Creditors v. Moeller (In re Age Ref., Inc.),* 801 F.3d 530, 540 (5th Cir. 2015); *Official Comm. of Unsecured Creditors v. Cajun Elec. Power Coop. (In re Cajun Elec. Power Coop.),* 119 F.3d 349, 356 (5th Cir. 1997); *Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortg. Corp.),* 68 F.3d 914, 917-18 (5th Cir. 1995); *Gluckstadt Holdings, L.L.C. v. VCR I, L.L.C. (In re VCR I, L.L.C.),* 922 F.3d 323, 327 (5th Cir. 2019) (quoting *Cadle Co. v. Mims (In re Moore),* 608 F.3d 253, 263 (5th Cir. 2010)).

## II.   <u>THE RULE 9019 SETTLEMENT MOTION</u>

On May 19, 2025, a Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and

11 U.S.C. § 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent

Therewith [DE # 4216] (the "Rule 9019 Motion") was filed by the Reorganized Debtor, the

Highland Claimant Trust (the "Claimant Trust"), and the Highland Litigation Sub-Trust (the

"Litigation Sub-Trust") (collectively, the "Highland Entities").[6]

The Rule 9019 Motion proposed a broad settlement (the aforementioned Settlement

Agreement) that would resolve most of the remaining issues outstanding in the long-running

Highland bankruptcy case. The other parties to the Settlement Agreement, besides the Highland

Entities, were the so-called "HMIT Entities"—defined in the Settlement Agreement as Hunter

Mountain Investment Trust, Beacon Mountain LLC, Rand Advisors, LLC, Rand PE Fund I, LP,

Rand PE Fund Management, LLC, Atlas IDF, LP, and Atlas IDF GP, LLC. These HMIT Entities,

other than Hunter Mountain itself, are affiliates of Hunter Mountain. As earlier noted, ***Hunter***

***Mountain was the majority equity owner of Highland, prepetition.*** Hunter Mountain owned

100% of Highland's Class B & C limited partnership interests. This represented 99.5% of the

overall equity of Highland. Hunter Mountain acquired all of Highland's Class B and Class C

limited partnership interests (the "Class B/C Interests") in December 2015, from James Dondero

(the aforementioned co-founder and former CEO of Highland—whose family trust Dugaboy is

now wanting a stay); Mark Okada (another co-founder of Highland); and certain entities affiliated

with them.  These Class B/C Interests—again, held entirely by Hunter Mountain at this point—

were categorized in Class 10 of Highland's confirmed Chapter 11 plan.

---

[6] The Claimant Trust and Litigation Sub-Trust are entities created pursuant to the confirmed Highland Chapter 11 plan,
to handle various post-confirmation matters.

004989

Among other things, the Settlement Agreement contemplated, in pertinent part: (a) the dismissal with prejudice of all pending litigation between and among the Highland Entities and the HMIT Entities (by way of example, Hunter Mountain had asserted claims for breach of fiduciary duty, conspiracy, and unjust enrichment against Highland and its new CEO, James P. Seery); (b) the disposition of bankruptcy estate claims asserted against certain of the HMIT Entities by the Claimant Trust and/or the Litigation Sub-Trust, and the assignment of the balance of the remaining estate claims to the HMIT Entities (by way of example, Highland had argued that Hunter Mountain owed Highland more than $57 million on a note payable to Highland); (c) the allowance of the Hunter Mountain Class 10 Interest in a fixed amount; (d) cash distributions to Hunter Mountain on account of its Class 10 Interest of about $10.5 Million, plus the assignment of an approximately $24 million note receivable owed to Highland known as the "Dugaboy Note," subject to certain conditions, set forth in the Settlement Agreement; and (e) the exchange of mutual general and broad releases and other protections consistent with the parties' intent to end all current, and avoid all future, litigation between and among them.

As previously mentioned, the current representative of Hunter Mountain is an individual named Mark Patrick. Mark Patrick assumed this role in March 2021, replacing an individual named Grant Scott. Mark Patrick was a long-time Highland employee. Mark Patrick had been employed by Highland as tax counsel since 2008. Mark Patrick had also provided personal tax advice to Mr. Dondero. In February 2021, as part of the Highland bankruptcy case, the employment contracts of many of Highland's employees, including Mark Patrick, were terminated. Mark Patrick, along with many other former back-office employees of Highland, thereafter became employees of a newly formed company called Skyview Group ("Skyview"), that provides middle and back-office services to various clients.

6

004990

Apparently, Mark Patrick and Mr. Dondero (and/or perhaps others at Skyview) got into disagreements of some sort in mid-2024, and Mark Patrick is no longer employed at Skyview.

### III.      THE OBJECTIONS TO THE RULE 9019 SETTLEMENT AGREEMENT

There were three objections to the Rule 9019 Settlement Motion/Settlement Agreement filed. Accordingly, the court presided over a contested evidentiary hearing on June 25, 2025 (the "Rule 9019 Settlement Hearing").  The court heard testimony from four witnesses: James Seery, Mark Patrick, James Dondero, and Patrick Daugherty.  The court admitted documentary evidence as well.

The Patrick Daugherty Objection.  One objection was filed by Patrick Daugherty (a former general counsel of Highland that has been in litigation for more than 15 years in several courts with Highland, Dondero, and others related to Highland) [DE # 4229]. Daugherty has already been paid on a large claim he was allowed in the Highland bankruptcy case but still has an unresolved, contingent, unsecured claim that is categorized in Class 8 of the confirmed Highland plan. Mr. Daugherty argued that the absolute priority rule and the Chapter 11 plan terms were being violated by the Settlement Agreement, since an equity interest (Hunter Mountain's Class 10 Interest) was receiving a distribution before Daugherty's Class 8 general unsecured claim. The court disagreed with these arguments, since Mr. Daugherty's unpaid, contingent Class 8 claim is highly speculative and has been fully reserved for, pending an ultimate hearing on the allowance of this claim. This Objection was overruled at the Rule 9019 Settlement Hearing.

The Dugaboy Objection.  Another objection was filed by Dugaboy [DE # 4230]. As earlier noted, Dugaboy owned a very small amount of the equity in Highland—specifically, a .1866% share of the Class A limited partnership interests—and these Class A limited partnership interests, in turn, represented a merely .5% of the overall equity of Highland. Thus, Dugaboy owned well-

under 1% of the equity of Highland. These Class A interests were categorized in Class 11 of the confirmed Highland plan. Note that two other parties besides Dugaboy owned Class A equity interests in Highland: Strand Advisors, Inc. ("Strand") and Mark Okada directly and indirectly (the other co-founder of Highland). The Dugaboy objection essentially argued that the Settlement Agreement violated the confirmed Plan, the Claimant Trust Agreement and the Confirmation Order, without much more detail than this. The Dugaboy objection was surprising to this court, because Hunter Mountain and Dugaboy have seemed to be at all times friendly—seemingly in lockstep—throughout the Highland bankruptcy case.  They have shared the same legal positions and the same legal counsel at times. On the day of the Rule 9019 Settlement Hearing, Dugaboy orally made additional arguments, beyond those made in its written objection. Specifically, Dugaboy argued that the existence of the Cayman Islands Action should cause the bankruptcy court to continue the Rule 9019 Settlement Hearing (which Cayman Islands Action is further discussed below). The court declined to continue the Rule 9019 Settlement Hearing, and Dugaboy's Objection was overruled at the hearing.

The Dallas Foundation Objection.  Another objection ("Dallas Foundation Objection") to the Settlement was filed by The Dallas Foundation [DE # 4231] (the "Dallas Foundation"), on behalf of Empower Dallas Foundation ("EDF") and The Okada Family Foundation (the "Okada Foundation"), and Crown Global Life Insurance, Ltd. ("Crown,"), not individually, but solely in respect of Segregated Accounts 30218 & 30219 (collectively, for ease of reference, the "Dallas Foundation"). The Dallas Foundation argued that "the Settlement is potentially tainted by the actions of Mark Patrick, the apparent sole manager and director of the HMIT Entities."[7]  It further stated that "upon information and belief, Mr. Patrick illicitly restructured *the ownership* of the

---

[7] Dallas Foundation Objection, ¶ 2.

HMIT Entities in a manner that seemed to facilitate the diversion of millions of dollars in assets from ***the charitable entities that are the beneficial owners of the HMIT Entities***."[8]

What did this mean?  How exactly does the Dallas Foundation factor into all of this?  How was the Dallas Foundation a party-in-interest with standing to object to a settlement in the Highland bankruptcy case at this juncture?  ***It did not purport to be a creditor or equity interest holder***. Rather, the Dallas Foundation was referring to itself as ***"a Beneficial Owner of the HMIT Entities."***[9]  Since HMIT owns 99.5% of Highland, does the Dallas Foundation also consider itself an indirect beneficial owner of Highland? Suddenly this is mind-numbing.

Not to worry.  The Dallas Foundation Objection further explained how it is a "Beneficial Owner" of Hunter Mountain. The explanation involves a complex charitable entity structure that is organized in the Cayman Islands. One has to carefully follow the bouncing ball to make the connection.

## IV.    THE CAYMAN ISLANDS CHARITABLE FOUNDATION STRUCTURE[10]

DAF Holdco (a "corporate blocker"). First, there is an entity called Charitable DAF HoldCo, Ltd. (the "DAF Holdco"), that is a Cayman Islands exempted company, incorporated on October 27, 2011, having its registered office at HSM Corporate Services Ltd, 68 Fort Street, George Town, PO Box 31726, Grand Cayman KY1-1207, that happens to currently be in liquidation proceedings in the Cayman Islands Action. The shares of DAF Holdco are divided into Participating Shares and Management Shares. DAF Holdco is apparently what's known as a "corporate blocker" in the Cayman Islands Charitable Foundation Structure. Mark Patrick has been the manager of it since March 2021.

---

[8] Dallas Foundation Objection, ¶ 2 (emphasis added).
[9] Dallas Foundation Objection, 4 (emphasis added).
[10] The following is gleaned from an Exbibit A attachment to the Dugaboy Stay Motion.

The DAF Fund. Second, DAF Holdco has historically been the sole limited partner of another entity called Charitable DAF Fund, LP (the "DAF Fund"). The DAF Fund is a Cayman Islands exempted limited partnership formed to invest and manage assets *for the ultimate benefit of three or four registered charitable organizations in the U.S., including the Dallas Foundation* (the "Charitable Entities").[11] The DAF Fund has sometimes been represented in filings (organizational charts) presented to the bankruptcy court as a Cayman Islands hedge fund. The general partner of the DAF Fund was historically Charitable DAF GP, LLC (the "DAF GP"), a Delaware limited liability company registered as a foreign company in the Cayman Islands. Mark Patrick has been the manager of DAF GP since March 2021.

CLO Holdco (another "corporate blocker"). Third, the sole asset of the DAF Fund is its 100% equity ownership in yet another entity called CLO HoldCo, Ltd. ("CLO HoldCo"), which is yet another Cayman Islands exempted company incorporated with limited liability, having its registered office address located at Campbells Corporate Services Limited, Floor 4, Willow House, Cricket Square, Grand Cayman KY1-9010, Cayman Islands. CLO HoldCo is another "corporate blocker" entity in the Cayman Islands Charitable Foundation Structure. *Interestingly, CLO HoldCo owns Hunter Mountain, and, as previously stated, Hunter Mountain was the 99.5% owner of Highland.*

It seems rather interesting that Highland—an alternative investment advisor (sometimes referred to as a hedge fund) that was managing billions of assets—was owned ultimately by an offshore structure designed for charitable purposes. However, this court has no expertise as to

---

[11] The Charitable Entities of which this court is aware are: The Dallas Foundation, The Greater Kansas City Foundation, The Santa Barbara Foundation, and the Community Foundation of North Texas (the "Charitable Entities" or sometimes the "Participating Shareholders"). The court has every reason to believe that these are respectable organizations dedicated to supporting charitable causes in their communities. The court has never heard anything to the contrary. Nothing herein should be construed as disparaging them in any way.

004994

whether this is an unusual structure or one that is common to facilitate/enhance tax-exempt ownership and charitable giving. The court is simply presenting the information available to it that it thinks explains why a stay is not appropriate here: namely, *since other litigation exists involving Mark Patrick and the Charitable Entities*.

In any event, structurally, the three or four Charitable Entities (including the Dallas Foundation) are the ultimate beneficial owners of Participating Shares in DAF Holdco (one of the "corporate blockers"). This essentially means that the Charitable Entities are at the top of the whole structure.

The documentation supporting this whole structure apparently requires that the Participating Shareholders (i.e., the Charitable Entities such as the Dallas Foundation) must at all times qualify as a tax-exempt organizations, pursuant to section 501(c)(3) of the United States Internal Revenue Code of 1986 ("IRC"). The Participating Shares do not have voting rights but have the right to participate in the profits or assets of the DAF Holdco. Meanwhile, the Management Shares (which have been held by Mark Patrick) have voting rights but do not have the right to participate in the profits or assets of the DAF Holdco. In other words, the Participating Shareholders have the entirety of the economic interest in DAF Holdco, whereas the sole Management Shareholder has the control rights.

Bottom line, the Dallas Foundation argued that they had reason to believe that Mark Patrick engaged in some illicit actions recently that changed up some of the structure set forth above (i.e., including the insertion of newly created entities into the DAF Fund's structure). *As a result, the Dallas Foundation feared that a significant portion of the economic interests derived by the HMIT Entities from the Settlement Agreement would flow to Mark Patrick rather than to the Charitable Entities for whose benefit the DAF Fund was established*. The Dallas Foundation

004995

questioned Mark Patrick's requisite corporate authority to cause the HMIT Entities to enter into the Settlement Agreement. The Dallas Foundation asserted that many of Mark Patrick's alleged actions, including the apparent insertion of newly created entities into the DAF Fund's structure, would be subject to claw back or other avoidance actions in the Cayman Islands Action or such other tribunal as has jurisdiction. The Dallas Foundation wanted the bankruptcy court to defer to that process.

Significantly, the Dallas Foundation withdrew its objection the morning of the June 25, 2025 Rule 9019 Settlement Hearing.  It made its announcement through counsel on the record at the hearing.

## V.    THE RULE 9019 SETTLEMENT HEARING

After hearing evidence and argument on June 25, 2025, the court approved the Settlement Agreement.  Bankruptcy Rule 9019 provides that "[o]n motion … and after notice and a hearing, the court may approve a compromise or settlement."[12] Settlements are favored in the bankruptcy context to "minimize litigation and expedite the administration of a bankruptcy estate."[13] The approval of a settlement is within the "sound discretion" of the trial court.[14] Pursuant to Bankruptcy Rule 9019(a), the court may approve a settlement if it is fair, reasonable, and in the best interests of the estate.[15] A settlement should be approved unless it falls below the lowest point in the range of reasonableness, based on a comparison between the terms of the settlement and the costs and benefits of further litigation.[16]

---

[12] Fed. R. Bankr. Proc. 9019(a).
[13] *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996).
[14] *In re Jackson Brewing Co.*, 624 F.2d 599, 603 (5th Cir. 1980).
[15] *See, e.g., Official Comm. of Unsecured Creditors v. Moeller (In re Age Ref., Inc.)*, 801 F.3d 530, 540 (5th Cir. 2015).
[16] *See, e.g., Jackson Brewing Co.*, 624 F.2d at 602 (court must compare the "terms of the compromise with the likely rewards of litigation"); *Cook v. Waldron,* 2006 U.S. Dist. LEXIS 31411, at *10 (S.D. Tex. April 18, 2006) (court should "canvass the issues" to decide if settlement falls "below the lowest point in the range of reasonableness").

004996

In evaluating a proposed settlement, courts consider (i) the "probability of success in the litigation, with due consideration for the uncertainty in fact and law," (ii) the "complexity and likely duration of the litigation and any attendant expense, inconvenience and delay," and (iii) "[a]ll other factors bearing on the wisdom of the compromise."[17] Assessing the first factor— success on the merits—does not require a "mini-trial" on the merits.[18] The "other factors" include "the best interests of the creditors, 'with proper deference to their reasonable views,'" as well as "'the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion.'"[19]

A trustee or other estate representative also "is permitted to settle lawsuits pursuant to section 363(b)" of the Bankruptcy Code.[20] Section 363(b) provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."[21] A sale involving a transaction outside the ordinary course of business "'must be supported by an articulated business justification, good business judgment, or sound business reasons.'"[22]

The court determined, based on this jurisprudence, that the factors to be considered pursuant to Bankruptcy Rule 9019 and Bankruptcy Code section 363(b) weighed in favor of approving the Settlement Agreement in this case. The Highland Entities believed they had strong and meritorious defenses to all of the then-pending HMIT litigation, and history has shown that defending the then-pending HMIT litigation, including the appeals that could result therefrom,

---

[17] *Official Comm. of Unsecured Creditors v. Cajun Elec. Power Coop. (In re Cajun Elec. Power Coop.)*, 119 F.3d 349, 356 (5th Cir. 1997) (quoting *Jackson Brewing Co.*, 624 F.2d at 602).
[18] *Cajun Elec. Power Coop.*, 119 F.3d at 356.
[19] *Id.* (quoting *Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortg. Corp.)*, 68 F.3d 914, 917-18 (5th Cir. 1995)).
[20] *Id.* at 354.
[21] 11 U.S.C. § 363(b)(1).
[22] *Gluckstadt Holdings, L.L.C. v. VCR I, L.L.C. (In re VCR I, L.L.C.)*, 922 F.3d 323, 327 (5th Cir. 2019) (quoting *Cadle Co. v. Mims (In re Moore)*, 608 F.3d 253, 263 (5th Cir. 2010)).

004997

would be costly, time-consuming and value-destructive to the estate and creditor recoveries. Further, there was no guarantee that the Highland Entities would continue to be successful in defending the then-pending HMIT litigation—or that the HMIT Entities would not file additional litigation against the Highland Entities and their indemnified parties.

The second factor—complexity, duration, and costs of litigation—also weighed heavily in favor of approval of the Settlement Agreement. The cost of defending against the litigation in this case, including the then-pending HMIT litigation, had been significant. The litigation and its attendant costs have also significantly delayed and reduced distributions to the Reorganized Debtor's constituents. The HMIT litigation began in 2023 and is subject to at least two pending appeals which showed no signs of resolving absent this Settlement Agreement. If the Settlement Agreement was not approved, the Highland Entities would be faced with significant appellate litigation and potentially additional litigation in this court and other courts.

Third, approval of the Settlement Agreement was justified by the paramount interests of Highland's creditors and constituents. The Settlement Agreement resolved the pending HMIT litigation, resolved all disputes in connection with the HMIT Class 10 Interest; would sell, transfer, and assign the Estate Claims asserted in the so-called Kirschner Adversary Proceeding—which has been pending since 2021 (until it was stayed in 2023, at significant cost to the estate)—to the HMIT Entities; and would provide for broad mutual releases and a cessation of the litigation and acrimony that, in significant part, has delayed completion of the Plan and the overall bankruptcy case.

The preponderance of the evidence suggested that the Settlement Agreement was a rational exercise of the Highland Entities' business judgment and was negotiated in good faith and at arm's length.

004998

The court signed the Rule 9019 Settlement Order on June 30, 2025 [DE # 4297].

Then, on July 17, 2025, Dugaboy filed the Dugaboy Stay Motion. This was preceded by the filing of the Texas AG Letter on July 10, 2025. As earlier noted, both of these Stay Requests urge that this court should halt things while they or others investigate matters that should be hashed out in the Cayman Islands Action. The Dugaboy Stay Motion says this

> is necessary to provide all stakeholders with time to investigate a motion under Rule 60 to vacate the 9019 Order (and all resulting orders, such as the dismissals effected as a result of the 9019 Order) in light of evidence suggesting that the settlement approved by this Court was a key element of [Mark Patrick's] alleged fraudulent scheme. Transfers of assets to companies controlled by Mr. Patrick must be halted, lest those assets are moved to companies "hard to find or track."[23]

## VI.    DENIAL OF STAY REQUESTS

As noted earlier, the Dugaboy Stay Motion and the Texas AG Letter are not motions for stay pending appeal pursuant to Rule 8007 of the Federal Rules of Bankruptcy Procedure. Dugaboy requests some sort of discretionary stay, for 90 days, while proceedings in the Cayman Islands Action go forward and, perhaps, reach a conclusion that improprieties by Mark Patrick occurred with regard to the Cayman Islands Charitable Foundation Structure. To be clear, the request is made by Dugaboy, whose party-in-interest status in the Highland estate is quite *de minimis*. The Texas AG apparently is of the impression (as a result of whomever filed a complaint with him) that this bankruptcy case, or the contested matter involving the Settlement Agreement, is a "proceeding involving a charitable trust." But that simply is not the case. While the assets of Hunter Mountain—remember, the former 99.5% equity owner of Highland—may ultimately be part of a *res* that indirectly benefits (or was intended to benefit) the Charitable Entities such as Dallas Foundation (as a result of the manner in which the Cayman Islands Charitable Foundation

---
[23] Dugaboy Stay Motion, ¶ 3.

004999

Structure was designed), this does not mean that the Highland bankruptcy case is a proceeding involving a charitable trust. This court believes it applied the correct analysis required for a bankruptcy settlement. Nothing about the bankruptcy court's ruling impacts the Cayman Islands Action or the Texas AG actions it might seek to take on behalf of the Charitable Entities such as the Dallas Foundation. Accordingly,

**IT IS ORDERED** that the Stay Requests by Dugaboy and the Texas attorney general be, and hereby are, **DENIED.**

**#### END OF MEMORANDUM OPINION AND ORDER ####**

005000

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717) (*admitted pro hac vice*)
John A. Morris (NY Bar No. 2405397) *(admitted pro hac vice)*
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
Hayley R. Winograd (NY Bar No. 5612569) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910

HAYWARD PLLC
Melissa S. Hayward (Texas Bar No. 24044908)
MHayward@HaywardFirm.com
Zachery Z. Annable (Texas Bar No. 24053075)
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100

*Counsel for Highland Capital Management, L.P.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.,<br><br>Reorganized Debtor. | Chapter 11<br><br>Case No. 19-34054-sgj11 |

## MOTION FOR ORDER FIXING
## ALLOWED AMOUNT OF CLASS 11 INTERESTS[1]

The Highland Claimant Trust ("**Claimant Trust**") files this Motion (the "**Motion**") for

entry of an order pursuant to 11 U.S.C. § 502(b), substantially in the form attached as **Exhibit A**,

fixing the allowed amount of the unvested Class 11 Contingent Claimant Trust Interests of: (a) The

Dugaboy Investment Trust ("**Dugaboy**") in the amount of $740,081.61; (b) Strand Advisors, Inc.

---

[1] Capitalized terms used but not defined herein have the meanings given to them in the Claimant Trust Agreement or the Plan, as applicable.

("**Strand**"), in the amount of $994,707.76; (c) Mark K. Okada ("**Okada Individual**") in the amount of $192,754.38; (d) The Mark and Pamela Okada Family Trust – Exempt Trust #1 ("**Okada Trust #1**") in the amount of $38,868.17; and (d) The Mark and Pamela Okada Family Trust – Exempt Trust #2 ("**Okada Trust #2**") in the amount of $16,657.79 (Dugaboy, Strand, Okada Individual, Okada Trust #1 and Okada Trust #2 are collectively referred to as the "**Class 11 Holders**"), in each case, on account of their respective pre-petition Class A Limited Partnership Interests in Highland Capital Management, L.P. ("**Highland**")

## PRELIMINARY STATEMENT

1.      Before the Claimant Trust can complete the dissolution and wind-up process, it must, among other things, fully resolve all Disputed Claims and Equity Interests.[2] With this Court's recent Order[3] approving the settlement with HMIT and allowing its Class 10 interest in the Claimant Trust on account of its pre-petition equity interest in Highland in the amount of $336,940,230.58, the only unresolved Claims and Equity Interests are (a) the alleged Class 8 Claim held by Patrick Daugherty (which is fully reserved-for), and (b) the unvested Class 11 Contingent Claimant Trust Interests to be issued to the Class 11 Holders.[4] This Motion addresses the Class 11 interests.

2.      Specifically, the Claimant Trust asks the Court to fix the allowed amount of each unvested Class 11 Contingent Claimant Trust Interest to be issued to each Class 11 Holder as required by the Plan and the Claimant Trust Agreement and pursuant to Section 502 of the Bankruptcy Code. The Court should determine the amount of each Class 11 Contingent Claimant

---

[2] Claimant Trust Agreement § 9.1(d).

[3] *Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. § 363 Approving Settlement Between the Highland Entities and the HMIT Entities and Authorizing Actions Consistent Therewith* [Docket No. 4297] (the "**HMIT Order**").

[4] Earlier this year, Highland commenced an adversary proceeding (Adv. Pro. No. 25-03055-sgj) to resolve Mr. Daugherty's remaining claim, leaving the Class 11 Interests as the only Disputed Claim or Equity Interest.

005002

Trust Interest consistent with HMIT's Class 10 Contingent Claimant Trust Interest—that is, the allowed amount of each unvested Class 11 Contingent Claimant Trust Interest should be fixed in the amount of each Class 11 Holder's Petition Date capital account balance.[5]

3. Accordingly, the Claimant Trust respectfully requests that the Court enter an order in the form annexed as **Exhibit A** granting the Motion and fixing the amount of each unvested Class 11 Contingent Claimant Trust Interest as set forth in Exhibit A.

## RELEVANT BACKGROUND

### I. Highland's Partnership Structure

4. Highland was a limited partnership organized under the laws of the State of Delaware. In December 2015, Highland, through a series of transactions, restructured its limited partnership interests into three classes: Class A Limited Partnership Interests, Class B Limited Partnership Interests, and Class C Limited Partnership Interests. The Hunter Mountain Investment Trust ("**HMIT**") acquired 100% of Highland's Class B/C Limited Partnership Interests by contributing funds into Highland as well as by purchasing interests from James Dondero, Mark Okada, and certain entities affiliated with them.[6] The HMIT Class B/C Limited Partnership Interests accounted for 99.5% of the pre-petition partnership interests in Highland and entitled the holders thereof to priority distributions. Mr. Dondero (through Dugaboy and Strand) and Mr. Okada (through Okada Individual, Okada Trust #1, and Okada Trust #2) retained Highland's Class A Limited Partnership Interests, which accounted for 0.5% of Highland's pre-petition partnership interests.

---

[5] HMIT's Class 10 Contingent Claimant Trust Interest was fixed based on the amount of its limited partner capital account as of the Petition Date, offset by the HMIT Note Balance (as defined below).

[6] Concurrent with its acquisition of the Class B/C Limited Partnership Interests, HMIT executed the *Secured Promissory Note*, dated December 21, 2015, in the original face amount of $63,000,000 in favor of Highland (the "**HMIT Note**"), which, as of the Petition Date, had an outstanding principal and interest balance of $57,690,640.95 (the "**HMIT Note Balance**").

**005003**

5.      On December 24, 2015, Highland and its limited partners entered into the Limited Partnership Agreement, which governed the rights and obligations of the Class A and Class B/C limited partners and remained in effect until the Effective Date. Consistent with the requirements of the Internal Revenue Code and IRS regulations promulgated thereunder,[7] the Limited Partnership Agreement required the establishment and maintenance of a capital account at Highland reflecting each partner's economic interest in the partnership and the amounts the partners would receive – after payment of senior obligations – in a liquidation or buyout. The capital accounts for each partner were consistently adjusted based on partnership economic activity and were maintained in accordance with IRS regulations and the Limited Partnership Agreement, and Schedule K-1s were distributed to the partners annually.[8]

6.      Between year-end 2018 (as reflected in the 2018 Tax Return and accompanying K-1s) and the Petition Date, the capital accounts of the Highland partners fluctuated in accordance with the requirements of the Limited Partnership Agreement based on Highland's 2019 year-to-date economic performance. As of the Petition Date: (a) HMIT's capital account balance on account of its Class B/C Limited Partnership Interests was $394,630,871.53; (b) Dugaboy's capital account on account of its Class A Limited Partnership Interest was $740,081.61; (c) Strand's capital account on account of its Class A Interest was $994,707.76; (d) Okada Individual's capital account on account of its Class A Limited Partnership Interest was $192,754.38; (e) Okada #1's capital account on account of its Class A Limited Partnership Interest was $38,868.17; and (f)

---

[7] IRC § 704 *et seq.*; IRS Reg. 1.704-1(b)(2)(iv); LPA § 3.7.

[8] Each of the Class 11 Holders received a Highland Schedule K-1 each year (including 2018 and 2019) reflecting, among other things, their respective share of Highland's calendar year income and losses as well as each partner's beginning and year-end capital accounts. The K-1s were derived from Highland's IRS Form 1065 U.S. Return of Partnership Income for each year (a "**Tax Return**") and were to be used by each Class 11 Holder in preparation of their own respective tax returns. Under penalty of perjury, the 2018 Tax Return was executed by Mr. Dondero (9/15/19), and the 2019 Tax Return was executed by Frank Waterhouse (9/10/20). *See* Claimant Trust's Exhibits 115 and 116, admitted into evidence during the June 25, 2025, hearing resulting in the HMIT Order [Doc. 4293].

005004

Okada #2's capital account on account of its Class A Limited Partnership Interest was $16,657.79.

The total of these six capital accounts was $396,613,941.24.[9]

## II.    The Bankruptcy Case

7.      Highland commenced the Bankruptcy Case in the District of Delaware on October

16, 2019, by filing its voluntary petition for relief under chapter 11 of the Bankruptcy Code. The

Bankruptcy Case was subsequently transferred to this Court.

8.      On February 22, 2021, the Bankruptcy Court entered the *Order (I) Confirming the*

*Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and*

*(II) Granting Related Relief* [Doc. 1943], which confirmed the *Fifth Amended Plan of*

*Reorganization of Highland Capital Management, L.P. (as Modified)* [Doc. 1943-1] (the "**Plan**").

The Plan went effective on August 11, 2021 [Doc. 2700] (the "**Effective Date**").

9.      On the Effective Date and in accordance with the Plan, the Claimant Trust was

created pursuant to the terms of the Claimant Trust Agreement (the "**CTA**"). Pursuant to Section

5.1(c) of the CTA and in accordance with the Plan (Art. III.H.10 and 11): (a) the pre-petition Class

B/C Limited Partnership Interests and the Class A Limited Partnership Interests in Highland were

extinguished; (b) the Holders of allowed Class B/C Limited Partnership Interests would receive

unvested Class 10 Contingent Claimant Trust Interests if and when their Equity Interests were

allowed in amounts as determined under the Plan; and (c) Holders of allowed Class A Limited

Partnership Interests would receive unvested Class 11 Contingent Claimant Trust Interests if and

when their Equity Interests were allowed in amounts as determined under the Plan.

10.     The Plan requires that Holders of Class 10 and Class 11 whose interests are allowed

receive a Pro Rata share of the Contingent Claimant Trust Interest. Pro Rata means the allowed

---

[9] *See, e.g.*, Debtor's Monthly Op. Rpt. Nov. 2019 at 2. Partners' Capital 10/15/2019 $396,614,000, Docket No. 289.
Each subsequent monthly operating report also contained the identical Petition Date balance.

005005

amount a holder's interest bears to the total allowed amount in the class.[10] To determine the amount of the Contingent Claimant Trust Interests to be issued to each Holder of allowed Class A Limited Partnership Interests and Class B/C Limited Partnership Interests, as applicable, the Plan and the CTA requires the calculation of a ratio equal to the amount of each Holder's allowed Class 10 or Class 11 Interest divided by the total amount of all allowed Class 10 and Class 11 Interests, as applicable.[11] Contingent Claimant Trust Interests distributed to the Holders of allowed Class A Limited Partnership Interests (*i.e.*, Class 11 Holders) are subordinated to the Contingent Claimant Trust Interests issued to the Holders of allowed Class B/C Limited Partnership Interests and receive nothing unless and until allowed Class 10 Interests are paid in full.[12]

11.     On June 30, 2025, this Court entered the HMIT Order allowing HMIT's Class 10 Contingent Claimant Trust Interest in the fixed amount of $336,940,230.58, based on HMIT's capital account balance in respect of its Class B/C Limited Partnership Interests as of the Petition Date ($394,630,871.53) minus the HMIT Note Balance ($57,690,640.95).

12.     Prior to the HMIT Order, on December 27, 2024, this Court approved and entered the stipulated and agreed order (the "**HCLOM Order**") relating to the claims of Highland CLO Management, Ltd. ("**HCLOM**") pursuant to which HCLOM's claim against Highland was subordinated and then allowed as a Class 10 Contingent Claimant Trust Interest in the fixed amount of $10,140,633.26, subject to the terms of that order.[13] HMIT and HCLOM are the only Holders of Class 10 Interests, subject to the terms of their respective allowance orders.

---

[10] Plan Art. I.B.97.

[11] *See* Plan Art. III.H.10 and 11; CTA § 5.1(c).

[12] *See* Plan Art. I.B.44 and CTA § 5.1(c).

[13] *Stipulated and Agreed Order Resolving (A) HCLOM Ltd.'s Scheduled Claims 3.65 and 3.66 and (B) Highland Capital Management, L.P.'s (1) Objection and (2) Motion for Bad Faith Finding and Award of Attorneys' Fees Against HCLOM Ltd. and James Dondero in Connection Therewith* [Doc. 4199]. HCLOM and its control person, Mr. Dondero, expressly agreed to all terms of the HCLOM Order, and Dugaboy and HMIT approved the HCLOM Order "as to form and substance." *Id.*

005006

13.     With Class 10 Interest amounts fixed, the Plan and the CTA require the fixing of the allowed amounts of the Holders of Class 11 Interests. Unless such amounts are fixed, it is impossible to calculate the Holders' Pro Rata share of the Contingent Claimant Trust Interests as required by the Plan and the CTA.

## BASIS FOR RELIEF REQUESTED

14.     Under 11 U.S.C. § 502(b), this Court, "after notice and hearing, shall determine the amount of [a] claim … as of the date of the filing of the petition, and shall allow such claim in such amount …." "In determining the amount of a claim, the court is guided by otherwise applicable state or federal law, whether the claim is liquidated or contingent or if any other issues exist which bear upon the amount of the claim. … If the claim is liquidated and properly existing under state law, the task of the court in determining the amount may be relatively straightforward." 4 COLLIER ON BANKRUPTCY ¶ 502.03.

15.     To enable the Claimant Trust to complete the issuance of unvested Class 11 Contingent Claimant Trust Interests to the Holders of pre-petition Class A Limited Partnership Interests, the Court should allow the Class 11 Holders' Contingent Claimant Trust Interest in the amount of their respective Highland Class A Limited Partnership Interest capital account balances as of the Petition Date, in a manner consistent with the HMIT Order.

## NO PRIOR REQUEST

16.     No previous request for the relief sought herein has been made to any court.

## PRAYER

17.     WHEREFORE, the Claimant Trust respectfully requests entry of an order, substantially in the form attached hereto as **Exhibit A**, granting the Motion and the relief requested herein as well as any further relief the Court deems just and proper.

Dated: August 8, 2025.

**PACHULSKI STANG ZIEHL & JONES LLP**
Jeffrey N. Pomerantz (CA Bar No. 143717)
John A. Morris (NY Bar No. 2405397)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Email: jpomerantz@pszjlaw.com
       jmorris@pszjlaw.com
       gdemo@pszjlaw.com
       hwinograd@pszjlaw.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100

*Counsel for Highland Claimant Trust*

005008

# EXHIBIT A

005009

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § | Case No. 19-34054-sgj11 |
| | § | |
| Reorganized Debtor. | § | |
| | § | |

**ORDER FIXING ALLOWED AMOUNT OF CLASS 11 INTERESTS**

This matter having come before the Court on the *Motion for Entry of Order Fixing Allowed Amount of Class 11 Interests* [Docket No. [_]] (the "Motion")[2] filed by the Highland Claimant Trust (the "Claimant Trust"); and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 as well as the retention of jurisdiction provisions of the Plan; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue in this District being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and

---

[1] The last four digits of the Reorganized Debtor's taxpayer identification number are 8357. The headquarters and service address for the Highland is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

[2] Capitalized terms not otherwise defined herein have the meanings ascribed to such terms in the Motion.

**005010**

the Court having considered the Motion; and the Court having found that the legal and factual bases set forth in the Motion establish sufficient cause for the relief granted herein; and adequate notice of the Motion having been given; and after due deliberation and good cause appearing therefor,

**NOW, THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Motion is **GRANTED**.

2.      The Dugaboy Investment Trust's Class 11 Interest is allowed in the amount of $740,081.61.

3.      Strand Advisors, Inc.'s Class 11 Interest is allowed in the amount of $994,707.76.

4.      Mark K. Okada's Class 11 Interest is allowed in the amount of $192,754.38.

5.      The Mark and Pamela Okada Family Trust – Exempt Trust #1's Class 11 Interest is allowed in the amount of $38,868.17.

6.      The Mark and Pamela Okada Family Trust – Exempt Trust #2's Class 11 Interest is allowed in the amount of $16,657.79.

7.      Nothing herein shall be deemed to vest the Class 11 Interests, and the Class 11 Interests will vest, if at all, pursuant to the terms of the Claimant Trust Agreement and the Plan.

8.      The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

### ### END OF ORDER ###

005011

Geoffrey S. Harper
Texas Bar No. 00795408
gharper@winston.com
John Michael Gaddis
Texas Bar No. 24069747
mgaddis@winston.com
WINSTON & STRAWN LLP
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
(214) 453-6500
(214) 453-6400 (fax)

Michael J. Lang
Texas State Bar No. 24036944
mlang@cwl.law
Alexandra Ohlinger
Texas State Bar No. 24091423
aohlinger@cwl.law
CRAWFORD, WISHNEW & LANG PLLC
1700 Pacific Ave, Suite 2390
Dallas, Texas 75201
Telephone: (214) 817-4500

*Counsel for Appellant The Dugaboy Investment Trust*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.,** | § | **Case No. 19-34054-sgj** |
| | § | |
| **Reorganized Debtor.** | § | |
| | § | |

## APPELLANT THE DUGABOY INVESTMENT TRUST'S AMENDED STATEMENT OF ISSUES TO BE PRESENTED AND DESIGNATION OF ITEMS TO BE INCLUDED IN THE RECORD ON APPEAL

005012

Pursuant to Rule 8009 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Appellant The Dugaboy Investment Trust ("Appellant"), having filed a Notice of Appeal [Docket No. 4311] on July 14, 2025; and having filed *Appellant The Dugaboy Investment Trust's Statement of Issues to be Presented and Designation of Items to be Included in the Record on Appeal* [Docket No. 4365] on August 11, 2025 in the above-captioned case; and having received correspondence from the Bankruptcy Clerk's Office [Docket No. 4367] asking Dugaboy to correct certain errors in its August 11, 2025 submission [Docket No. 4365]; hereby submits this *Amended Statement of Issues to be Presented and Designation of Items to be Included in the Record on Appeal*, and respectfully requests that the Clerk prepare and forward the items listed herein to the District Court for inclusion in the record in connection with this appeal.[1]

## STATEMENT OF ISSUES TO BE PRESENTED ON APPEAL

1. **Did the Bankruptcy Court err in approving the settlement agreement and release entered into between the Highland Entities and the HMIT Entities pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure as being fair, equitable, and in the best interest of the estate?**

2. **Did the Bankruptcy Court err by approving a settlement agreement utilizing an improper valuation methodology and without sufficient supporting evidence?**

3. **Did the Bankruptcy Court err in approving the overly broad and vague release provisions contained within the settlement agreement?**

4. **Did the Bankruptcy Court err in approving the settlement agreement without allowing adequate time for the Cayman Islands Joint Official Liquidators to complete their investigation?**

5. **Did the Bankruptcy Court err in concluding Mark Patrick had the requisite corporate authority to enter into and bind the HMIT entities to the settlement agreement?**

## DESIGNATION OF ITEMS TO BE INCLUDED IN THE RECORD ON APPEAL

---

[1] Because of its voluminous nature, Docket #4255 will be delivered to the Clerk on a flash drive which will arrive tomorrow, August 13, 2025.

005013

1. Notice of Appeal for Bankruptcy Case No. 19-34054-sgj11 [Docket No. 4311] filed by Appellant;

2. *Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. § 363 Approving Settlement Between the Highland Entities and the HMIT Entities and Authorizing Actions Consistent Therewith* [Docket No. 4297];

3. Docket entries kept by the bankruptcy clerk in case no. 19-34054-sg11;

4. Any opinion, findings of fact and conclusions of law of the bankruptcy court relating to the issues on appeal, including transcripts of all oral rulings: Transcript of hearing held June 25, 2025 before Judge Stacey C.G. Jernigan [Docket No. 4296] re: Motion for Entry of an Order Approving Settlement with HMIT Entities (4216) [Docket No. 4297]; and

5. Each of the additional documents and items designated below:

| Date Filed | Docket No. | Description/Docket Text |
|---|---|---|
| 2/22/2021 | 1943 | Order confirming the fifth amended chapter 11 plan, as modified and granting related relief (RE: related document(s)1472 Chapter 11 plan filed by Debtor Highland Capital Management, L.P., 1808 Chapter 11 plan filed by Debtor Highland Capital Management, L.P.). Entered on 2/22/2021 (Okafor, M.) |
| 5/19/2025 | 4216 | Motion to compromise controversy with the HMIT Entities. (Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith) Filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust (Attachments: #1 Exhibit A--Proposed Order (Annable, Zachery) |
| 5/19/2025 | 4217 | Declaration re: (Declaration of Gregory V. Demo in Support of Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith) filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust (RE: related document(s)4216 Motion to compromise controversy with the HMIT Entities. (Motion for Entry of an |

005014

| | | |
|---|---|---|
| | | Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith)). (Attachments: #1 Exhibit 1 (Annable, Zachery) |
| 5/19/2025 | 4217-1 | Proposed Settlement Agreement |
| 5/20/2025 | 4218 | Notice of hearing filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust (RE: related document(s)4213 Motion to extend time to (Motion for an Order Further Extending Duration of Trusts) (RE: related document(s)4144 Order on motion to extend/shorten time) Filed by Interested Party Highland Litigation Sub-Trust, Other Professional Highland Claimant Trust(Attachments: # 1 Exhibit A # 2 Exhibit B), 4216 Motion to compromise controversy with the HMIT Entities. (Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith) Filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust(Attachments: # 1 Exhibit A--Proposed Order)). Hearing to be held on 6/25/2025 at 09:30 AM at https://us-courts.webex.com/meet/jerniga for 4213 and for 4216, (Annable, Zachery) |
| 5/22/2025 | 4221 | Amended Notice of hearing filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust (RE: related document(s)4213 Motion to extend time to (Motion for an Order Further Extending Duration of Trusts) (RE: related document(s)4144 Order on motion to extend/shorten time) Filed by Interested Party Highland Litigation Sub-Trust, Other Professional Highland Claimant Trust(Attachments: # 1 Exhibit A # 2 Exhibit B), 4216 Motion to compromise controversy with the HMIT Entities. (Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith) Filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust(Attachments: # 1 Exhibit A--Proposed Order)). Hearing to be held on 6/25/2025 at 09:30 AM at https://us-courts.webex.com/meet/jerniga for 4213 and for 4216, (Annable, Zachery |

005015

| 6/9/2025 | 4228 | Motion for expedited hearing on Emergency Motion for an Order Extending Duration of Time to Respond to Trusts' Motion Filed by Partner Dugaboy Investment Trust (related document #4227 (Attachments: #1 Proposed Order Granting Motion for Expedited Hearing (Hesse, Gregory) Modified linkage on 6/10/2025 (mdo). |
|---|---|---|
| 6/9/2025 | 4230 | Objection to (related document(s): 4216 Motion to compromise controversy with the HMIT Entities. (Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith) filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust) filed by Partner Dugaboy Investment Trust. (Hesse, Gregory) |
| 6/10/2025 | 4232 | Response opposed to (related document(s): 4227 Motion to extend time to Time to Respond to Trusts' Motion filed by Partner Dugaboy Investment Trust, 4228 Motion for expedited hearing (related documents 4216 Motion to compromise controversy) on Emergency Motion for an Order Extending Duration of Time to Respond To Trusts' Motion filed by Partner Dugaboy Investment Trust) filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust. (Annable, Zachery) |
| 6/10/2025 | 4234 | Reply to (related document(s): 4232 Response filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust) to (I) Emergency Motion for an Order Extending Duration of Time to Respond to Trusts' Motion and (II) Motion for Expedited Hearing on Emergency Motion for an Order Extending Duration of Time to Respond to Trusts' Motion filed by Partner Dugaboy Investment Trust. (Hesse, Gregory) |
| 6/20/2025 | 4251 | Exhibit List for the June 25, 2025 Hearing filed by Partner Dugaboy Investment Trust (RE: related document(s)4230 Objection). (Lang, Michael) |
| 6/20/2025 | 4252 | Witness List for the June 25, 2025 Hearing filed by Partner Dugaboy Investment Trust (RE: related document(s)4230 Objection). (Lang, Michael) |
| 6/20/2025 | 4255 *(to be submitted to* | Witness and Exhibit List filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust (RE: related document(s) 4216 Motion to compromise controversy with the HMIT Entities. (Motion for Entry of an Order Pursuant to |

005016

| | | |
|---|---|---|
| | *Clerk on flash drive*) | Bankruptcy Rule 9019 and 11 U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith)). (Attachments: #1 Exhibit 1 , #2 Exhibit 2 , #3 Exhibit 3 , #4 Exhibit 4 , #5 Exhibit 5 , #6 Exhibit 6 , #7 Exhibit 7 , #8 Exhibit 8 , #9 Exhibit 9 , #10 Exhibit 10 , #11 Exhibit 11 , #12 Exhibit 12 , #13 Exhibit 13 , #14 Exhibit 14 , #15 Exhibit 15 , #16 Exhibit 16 , #17 Exhibit 17 , #18 Exhibit 18 , #19 Exhibit 19 , #20 Exhibit 20 , #21 Exhibit 21 , #22 Exhibit 22 , #23 Exhibit 23 , #24 Exhibit 24 , #25 Exhibit 25 , #26 Exhibit 26 , #27 Exhibit 27 , #28 Exhibit 28 , #29 Exhibit 29 , #30 Exhibit 30 , #31 Exhibit 31 , #32 Exhibit 32 , #33 Exhibit 33 , #34 Exhibit 34 , #35 Exhibit 35 , #36 Exhibit 36 , #37 Exhibit 37 , #38 Exhibit 38 , #39 Exhibit 39 , #40 Exhibit 40 , #41 Exhibit 41 , #42 Exhibit 42 , #43 Exhibit 43 , #44 Exhibit 44 , #45 Exhibit 45 , #46 Exhibit 46 , #47 Exhibit 47 , #48 Exhibit 48 , #49 Exhibit 49 , #50 Exhibit 50 , #51 Exhibit 51 , #52 Exhibit 52 , #53 Exhibit 53 , #54 Exhibit 54 , #55 Exhibit 55 , #56 Exhibit 56 , #57 Exhibit 57 , #58 Exhibit 58 , #59 Exhibit 59 , #60 Exhibit 60 , #61 Exhibit 61 , #62 Exhibit 62 , #63 Exhibit 63 , #64 Exhibit 64 , #65 Exhibit 65 , #66 Exhibit 66 , #67 Exhibit 67 , #68 Exhibit 68 , #69 Exhibit 69 , #70 Exhibit 70 , #71 Exhibit 71 , #72 Exhibit 72 , #73 Exhibit 73 , #74 Exhibit 74 , #75 Exhibit 75 , #76 Exhibit 76 , #77 Exhibit 77 , #78 Exhibit 78 , #79 Exhibit 79 , #80 Exhibit 80 , #81 Exhibit 81 , #82 Exhibit 82 , #83 Exhibit 83 , #84 Exhibit 84 , #85 Exhibit 85 , #86 Exhibit 86 , #87 Exhibit 87 , #88 Exhibit 88 , #89 Exhibit 89 , #90 Exhibit 90 , #91 Exhibit 91 , #92 Exhibit 92 , #93 Exhibit 93 , #94 Exhibit 94 , #95 Exhibit 95 , #96 Exhibit 96 , #97 Exhibit 97 , #98 Exhibit 98 , #99 Exhibit 99 , #100 Exhibit 100 , #101 Exhibit 101 , #102 Exhibit 102 , #103 Exhibit 103 , #104 Exhibit 104 , #105 Exhibit 105 , #106 Exhibit 106 , #107 Exhibit 107 , #108 Exhibit 108 , #109 Exhibit 109 , #110 Exhibit 110 , #111 Exhibit 111 , #112 Exhibit 112 , #113 Exhibit 113 , #114 Exhibit 114 , #115 Exhibit 115 , #116 Exhibit 116 , #117 Exhibit 117 , #118 Exhibit 118 , #119 Exhibit 119 , #120 Exhibit 120 , #121 Exhibit 121 , #122 Exhibit 122 , #123 Exhibit 123 (Annable, Zachery) |
| 6/20/2025 | 4256 | Witness and Exhibit List filed by Creditor Hunter Mountain Investment Trust (RE: related document(s)4216 Motion to compromise controversy with the HMIT Entities. (Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith)). (Phillips, Louis |

005017

| 6/20/2025 | 4257 | Witness and Exhibit List filed by Interested Parties Crown Global Life Insurance, Ltd, The Dallas Foundation (RE: related document(s)4216 Motion to compromise controversy with the HMIT Entities. (Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith)). (Attachments: #1 Exhibit 1 - Charitable DAF/CLO HoldCo Organization Chart, #2 Exhibit 2 - Rand Structure Chart,#3 Exhibit 3 - July 9, 2021 Memo on DAFs and Sponsoring Orgs, #4 Exhibit 4 - Charitable Respondents Response and Disclosures (Okin, Matthew) |
|---|---|---|
| 6/23/2025 | 4271 | Amended Witness and Exhibit List filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust (RE: related document(s)4253 List (witness/exhibit/generic)). (Attachments: #1 Exhibit 66, #2 Exhibit 67 (Annable, Zachery) |
| 6/23/2025 | 4272 | Amended Witness and Exhibit List filed by Interested Parties Crown Global Life Insurance, Ltd, The Dallas Foundation (RE: related document(s)4257 List (witness/exhibit/generic)). (Attachments: #1 Exhibit 1, #2 Exhibit 66, #3 Exhibit 7 7,4 Exhibit 8 ,8, Exhibit 9 (Curry, David) |
| 6/23/2025 | 4273 | Objection to (related document(s)): 4255 List (witness/exhibit/generic) filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust) filed by Partner Dugaboy Investment Trust. (Ohlinger, Ali) |
| 6/23/2025 | 4276 | Reply to (related document(s)): 4223 Objection filed by Creditor The Dugaboy Investment Trust) filed by Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust. (Annable, Zachery) |
| 6/24/2025 | 4277 | Amended Witness and Exhibit List filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust (RE: related document(s)4255 List (witness/exhibit/generic)). (Attachments: #1 Exhibit 124 , #2 Exhibit 125 (Annable, Zachery) |
| 6/24/2025 | 4279 | Witness and Exhibit List with Respect to Hearing to be Held on June 25, 2025 filed by Partner Dugaboy Investment Trust (RE: related document(s)4213 Motion to extend time to (Motion for an Order Further Extending Duration of Trusts) (RE: related document(s)4144 Order on motion to extend/shorten time)). (Attachments: #1 Exhibit 1 (Deitsch-Perez, Deborah) |

| 6/24/2025 | 4280 | Amended Witness and Exhibit List (Highland Capital Management, L.P., Highland Claimant Trust, and Litigation Sub-Trust Second Amended Witness and Exhibit List with Respect to Hearing to Be Held on June 25, 2025) filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust (RE: related document(s) 4255 List (witness/exhibit/generic), 4277 List (witness/exhibit/generic). (Attachments: #1 Exhibit 126 (Annable, Zachery) |
|---|---|---|
| 6/25/2025 | 4293 | Court admitted exhibits date of hearing June 25, 2025 (RE: related document(s) 4216 Motion to compromise controversy with the HMIT Entities. (Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith) Filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust (Court Admitted Debtors Exhibits #1 through #9; #11 through #56 & #58 through #123 & #126 offered by attorney John Morris; Court Also Admitted Patrick Daugherty Exhibits #1 through #42 offered by attorney Drew K. York: Court also admitted Dugaboy Investment Trust Exhibit #3, which was a letter offered by attorney Michael J. Lang.) (Edmond, Michael) Modified on 6/30/2025 (emi).Modified on 6/30/2025 (emi). (Entered: 06/27/2025) |
| 6/27/2025 | 4290 | Stipulation by Highland Claimant Trust, Highland Litigation Sub-Trust and The Dugaboy Investment Trust. filed by Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust (RE: related document(s)4223 Objection). (Annable, Zachery) |
| 6/27/2025 | 4291 | Stipulation withdrawing objection of The Dallas Foundation and Crown Global Life Insurance, LTD to Motion for Entry of an order pursuant to Bankruptcy Rule 9019 and 11 U.S.C. Section 363 approving settlement with the HMIT Entities and authorizing actions consistent therewith (RE: related document(s) 4232 Response filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust, 4282 Stipulation filed by Creditor Hunter Mountain Investment Trust). Entered on 6/27/2025 (Okafor, M.) |
| 7/1/2025 | 4299 | Motion to withdraw document Consent Motion to Dismiss HMIT Remand Proceedings with Prejudice (related document(s) 3699 |

| | | |
|---|---|---|
| | | Motion for leave) Filed by Creditor Hunter Mountain Investment Trust, Interested Party Hunter Mountain Trust (Attachments: #1 Proposed Order (Salzer, Ian) |
| 7/1/2025 | 4300 | Motion to withdraw document Consent Motion to Dismiss Delaware Action Proceedings with Prejudice (related document(s) 4000 Motion for leave) Filed by Creditor Hunter Mountain Investment Trust, Interested Party Hunter Mountain Trust (Attachments: #1 Proposed Order (Salzer, Ian) |
| 7/7/2025 | 4304 | Order withdrawing Emergency Motion for Leave to File Adversary Proceeding [Dkt. 3699] with prejudice (RE: related document(s)4299 Motion to withdraw document filed by Interested Party Hunter Mountain Trust, Creditor Hunter Mountain Investment Trust). IT IS THEREFORE ORDERED that the proceedings defined in the Dismissal Motion as: Hunter Mountain Investment Trust v. Highland Cap. Mgmt., L.P., Case No. 3:23-cv-02071-E (N.D. Tex.), on remand to the Bankruptcy Court (including Hunter Mountain Investment Trusts Emergency Motion for Leave to File Adversary Proceeding filed at Bankruptcy Court Docket No. 3699 and all proceedings, decisions, and orders relating thereto), are dismissed with prejudice. Entered on 7/7/2025 (Okafor, M.) |
| 7/14/2025 | 4311 | Notice of appeal of Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C § 363 Approving Settlement Between the Highland Entities and the HMIT Entities and Authorizing Actions Consistent Therewith. Fee Amount $298 filed by Creditor The Dugaboy Investment Trust (RE: related document(s)4297 Order on motion to compromise controversy). Appellant Designation due by 07/28/2025. (Lang, Michael) |
| 7/16/2025 | 4323 | Notice regarding the record for a bankruptcy appeal to the U.S. District Court. (RE: related document(s)4311 Notice of appeal of Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C § 363 Approving Settlement Between the Highland Entities and the HMIT Entities and Authorizing Actions Consistent Therewith. filed by Creditor The Dugaboy Investment Trust (RE: related document(s)4297 Order on motion to compromise controversy). Appellant Designation due by 07/28/2025.) (Whitaker, Sheniqua) |
| 7/17/2025 | 4326 | Motion to Stay 9019 Order filed by Creditor The Dugaboy Investment Trust. Objections due by 8/7/2025. (Lang, Michael) Modified text on 7/21/2025 (mdo). |
| 7/17/2025 | 4329 | Notice of docketing notice of appeal. Civil Action Number: 3:25-cv-01876-K. (RE: related document(s)4311 Notice of appeal of |

|  |  | Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C § 363 Approving Settlement Between the Highland Entities and the HMIT Entities and Authorizing Actions Consistent Therewith. filed by Creditor The Dugaboy Investment Trust (RE: related document(s)4297 Order on motion to compromise controversy). Appellant Designation due by 07/28/2025.) (Whitaker, Sheniqua) |
|---|---|---|
| 7/21/2025 | 4333 | Memorandum of opinion (RE: related document(s)4308 Notice (generic) filed by Interested Party State of Texas, 4326 The Dugaboy Investment Trust's Motion to Stay 9019 Order filed by Creditor The Dugaboy Investment Trust). Entered on 7/21/2025 (Okafor, M.) |
| 7/21/2025 | 4334 | Order denying stay requests (related document 4326 The Dugaboy Investment Trust's Motion to Stay 9019 Order and 4308 Notice). Entered on 7/21/2025. (Okafor, M.) Additional attachment(s) added on 7/21/2025 (Okafor, M. |
| 8/4/2025 | 4353 | Notice of appeal . Fee Amount $298 filed by Partner Dugaboy Investment Trust (RE: related document(s) 4333 Memorandum of opinion). Appellant Designation due by 08/18/2025. (Attachments: #1 Exhibit A (Harper, Geoffrey) |
| 8/5/2025 | 4359 | Notice of docketing notice of appeal. Civil Action Number: 3:25-cv-02072-S. (RE: related document(s)4353 Notice of appeal filed by Partner Dugaboy Investment Trust (RE: related document(s) 4333 Memorandum of opinion). (Almaraz, Jeanette) |
|  |  |  |

Dated: August 12, 2025

Respectfully submitted,

**WINSTON & STRAWN LLP**

By: */s/ Geoffrey S. Harper*

Geoffrey S. Harper
Texas Bar No. 00795408
gharper@winston.com
John Michael Gaddis
Texas Bar No. 24069747
mgaddis@winston.com
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
(214) 453-6500

10

005021

(214) 453-6400 (fax)

Michael J. Lang
Texas State Bar No. 24036944
mlang@cwl.law
Alexandra Ohlinger
Texas State Bar No. 24091423
aohlinger@cwl.law
**CRAWFORD, WISHNEW & LANG PLLC**
1700 Pacific Ave, Suite 2390
Dallas, Texas 75201
Telephone: (214) 817-4500

*Counsel for Appellant The Dugaboy Investment Trust*

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that on August 12, 2025, a true and correct copy of this document was served electronically via the Court's CM/ECF system to the parties registered or otherwise entitled to receive electronic notices in this case.

*/s/ Geoffrey S. Harper*
Geoffrey S. Harper

005022

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (admitted *pro hac vice*)
John A. Morris (admitted *pro hac vice*)
Gregory V. Demo (admitted *pro hac vice*)
Hayley R. Winograd (admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward (TX Bar No. 24044908)
MHayward@HaywardFirm.com
Zachery Z. Annable (TX Bar No. 24053075)
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, TX 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110

*Counsel for the Highland Claimant Trust*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

------------------------------------------------------------

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § | Case No. 19-34054-sgj11 |
| | § | |
| Reorganized Debtor. | § | |

------------------------------------------------------------

## NOTICE OF HEARING ON
## MOTION FOR ORDER FIXING ALLOWED AMOUNT OF CLASS 11 INTERESTS

**PLEASE TAKE NOTICE** that the following matter has been scheduled for hearing on

**Thursday, September 18, 2025, at 2:30 p.m. (Central Time)** (the "Hearing") in the above-

captioned bankruptcy case (the "Bankruptcy Case"):

    1.    *Motion for Order Fixing Allowed Amount of Class 11 Interests* [Docket No. 4362]
          (the "Motion").

---

[1] The last four digits of the Reorganized Debtor's taxpayer identification number are 8357. The headquarters and service address for the Reorganized Debtor is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

005023

The Hearing on the Motion will be a **HYBRID** hearing.  Parties participating in the Hearing may appear before The Honorable Stacey G. C. Jernigan, United States Bankruptcy Judge, (i) in person at the United States Bankruptcy Court for the Northern District of Texas (Dallas Division), Earle Cabell Federal Building, 1100 Commerce Street, 14th Floor, Courtroom No. 1, Dallas, Texas 75242-1496; or (ii) via WebEx videoconference through the following participation/attendance link: https://us-courts.webex.com/meet/jerniga.

A copy of the WebEx Hearing Instructions for the Hearing is attached hereto as **<u>Exhibit A</u>**; alternatively, the WebEx Hearing Instructions for the Hearing may be obtained from Judge Jernigan's hearing/calendar site at: https://www.txnb.uscourts.gov/judges-info/hearing-dates/chief-judge-jernigans-hearing-dates.

Any response (each, a "<u>Response</u>") to the relief requested in the Motion shall be filed with the Clerk of the Court on or before **Friday, September 5, 2025**.

The Highland Claimant Trust may file a reply (each, a "<u>Reply</u>") to any Response.  Any Reply shall be filed with the Clerk of the Court on or before **Friday, September 12, 2025**.

[*Remainder of Page Intentionally Left Blank*]

005024

Dated: August 15, 2025.

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (admitted *pro hac vice*)
John A. Morris (admitted *pro hac vice*)
Gregory V. Demo (admitted *pro hac vice*)
Hayley R. Winograd (admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email: jpomerantz@pszjlaw.com
     jmorris@pszjlaw.com
     gdemo@pszjlaw.com
     hwinograd@pszjlaw.com


-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for the Highland Claimant Trust*

005025

# EXHIBIT A

005026

# JUDGE STACEY G. JERNIGAN

**WebEx Meeting Link:**
**https://us-courts.webex.com/meet/jerniga**

**WebEx Teleconference Information:**
**Dial-in 650-479-3207 Access Code 2304 154 2638**

## NOTICE OF HEARING CONTENT AND FILING REQUIREMENTS

For remote and hybrid hearings in Judge Jernigan's court, the notice of hearing must (1) advise case participants that appearances by WebEx are permitted, (2) include notice of the WebEx Meeting Link https://us-courts.webex.com/meet/jerniga, and (3) refer participants to Judge Jernigan's webpage at https://www.txnb.uscourts.gov/judges-info/hearing-dates/chief-judge-jernigans-hearing-dates for WebEx Hearing Instructions and Helpful Hints and Etiquette. When filing the notice of hearing in ECF, the filer should select https://us-courts.webex.com/meet/jerniga as the hearing location for all remote and hybrid hearings. Select the hearing location *Dallas Judge Jernigan Ctrm* only if participants are **required** to attend in person.

## WEBEX HEARINGS – CONNECTION INSTRUCTIONS

Please connect at least 10 minutes prior to the hearing time using one of the two options below. It is recommended that attorneys discuss the logistics of the WebEx appearance with their clients/witnesses at least 48 hours prior to the hearing.

**Option 1: Using the WebEx app on your smartphone, tablet, laptop, or desktop.**
- It is strongly preferred that participants who wish to speak during a hearing use the WebEx application rather than using the "call-in" option described in Option 2.
- Attorneys offering legal argument or conducting examination and all witnesses are required to utilize the video function. The Court may consider special requests for other appearance options on a case-by-case basis.
- Please connect using only one device. Using two or more devices may cause audio feedback issues.
- If using a smartphone or tablet for video, it should be set in a stationary position. Holding a phone or tablet in your hand while speaking does not yield a good video for the Court or other participants.

**NOTE: If you are experiencing audio issues when using the WebEx application,** you may use the "Call Me" selection under "Audio Connection" to move just the audio portion of the WebEx conference to your telephone.

**Option 2: Call-in via phone (audio only).**
The meeting number/access code and dial-in number can be found on the attached WebEx Connection Information. Please use *6 or the mute function on your smartphone to mute your line.

005027

## HELPFUL HINTS AND ETIQUETTE

• Please use the mute function when you are not speaking. Please be aware that sometimes the Court mutes everyone when there is background noise. When you want to speak, make sure you are not muted. Call-in users should dial *6 to unmute your line.

• Remember to state your name for the record each time before speaking and speak slowly and clearly so the Court can get a good record. Also, use your proper name on your device or for your WebEx login when participating over video, so that the Court can more easily determine who is speaking.

• Use headphones whenever possible, especially if using a desktop PC with external speakers. We have found that newer iPhones provide the best visual and audio feed – better than most desktop computers. If you are on a personal computer, headphones or earbuds are required for those who need to speak during the hearing.

• During examination, attorneys and witnesses should use a separate camera and microphone when possible. To avoid feedback, parties using separate devices must not be in the same room. The Court may consider special requests on a case-by-case basis.

• WebEx participants may use the "share" button to easily share their screen or document with the Court or other WebEx participants. Press "stop sharing" to remove the presentation from the meeting.

• When making an appearance from a vehicle, please park in a safe location with windows rolled up (to minimize background distraction and noise) and use a headset that is ear-to-phone (not the vehicle's hands-free speaker-phone option).

• Suggestions for participating in a WebEx hearing from home: If you are having connectivity problems, turn off devices that may be using bandwidth on your home network. Devices or applications such as Facetime, Roku, streaming media players, video games, or large downloads can negatively impact the audio and video quality of the WebEx meeting.

• Participants are reminded that they should wear attire suitable for court.

• Participants who wish to test their WebEx connection or the share screen functionality in advance of the hearing may arrange a "practice run" by contacting the courtroom deputy at sgj_settings@txnb.uscourts.gov.

## EXHIBITS AND DEMONSTRATIVE AIDS

Exhibits should be filed ahead of time by the date that they would normally be exchanged pursuant to our local rules using the "notice" or "list (witness/exhibit/generic)" event in ECF, with a true and correct copy of each designated exhibit filed as a separate, individual attachment, so that the Court and all participants have ready access to all designated exhibits. For voluminous exhibits, please provide the Court with two exhibit notebooks in advance of the hearing. For any witness who is to be called to testify remotely, the party calling the witness is responsible for supplying the witness or counsel, as appropriate, with paper copies of all designated exhibits prior to the hearing.

Demonstrative aids and PowerPoints should also be filed prior to the hearing, if possible. If not, WebEx has the ability to allow you to share your screen, or a particular document, with everyone in the hearing. If these documents are admitted as exhibits, they would then have to be filed after the hearing.



CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed August 29, 2025**

_____

**United States Bankruptcy Judge**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | Case No. 19-34054-sgj11 |
| | § | |
| Reorganized Debtor. | § | |

### ORDER APPROVING MOTION TO CONFORM PLAN TO
### FIFTH CIRCUIT MANDATE

This matter having come before the Court on the *Motion to Conform Plan to Fifth Circuit Mandate* (the "Motion") filed by NexPoint Advisors, L.P. and NexPoint Asset Management, L.P. f/k/a Highland Capital Management Fund Advisors, L.P. ("NexPoint"); and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue in this District being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having considered the Motion, the Judgment issued on March 18, 2025 in *In re Highland Cap. Mgmt., L.P.*, 132 F.4th 353 (5th Cir. 2025) ("*Highland II*"); and the final mandate issued in *Highland II* on June 13, 2025; and the Court having determined that the legal and factual bases set forth in the Motion establish sufficient cause

005029

for the relief granted herein; and adequate notice of the Motion having been given; and after due

deliberation and good cause appearing therefor, it is hereby **ORDERED** that:

1.     The Motion is **GRANTED**.

2.     The definition of "Exculpated Parties" in Article I.B.62 of the Plan shall be deleted

in its entirety and replaced with the following:

"Exculpated Parties" means, collectively, (i) the Debtor, (ii) the
Independent Directors for conduct within the scope of their duties, (iii) the
Committee, and (iv) the members of the Committee in their official
capacities, for conduct within the scope of their duties.

3.     The definition of "Protected Parties" in Article I.B.105 of the Plan shall be deleted

in its entirety and replaced with the following:

"Protected Parties" means, collectively, (i) the Debtor; (ii) the Independent
Directors, for conduct within the scope of their duties; (iii) the Committee;
and (iv) the members of the Committee in their official capacities, for
conduct within the scope of their duties.

4.     Except as set forth herein, the Plan is unaffected and shall continue in full force and

effect in accordance with its terms and the terms of the Confirmation Order.

5.     The Court shall retain jurisdiction to hear and determine all matters arising from or

related to the implementation, interpretation, or enforcement of this Order.

### ### END OF ORDER ###

005030

**Presented and prepared by:**

**STINSON LLP**
Deborah Deitsch-Perez
Texas Bar No. 24036072
Christopher J. Harayda (admitted pro hac vice)
2200 Ross Avenue, Suite 2900
Dallas, Texas 75201
Telephone: (214) 560-2201
Facsimile: (214) 560-2203
Email: deborah.deitschperez@stinson.com
Email: cj.harayda@stinson.com

*Counsel for NexPoint Advisors, L.P. and*
*NexPoint Asset Management, L.P. f/k/a*
*Highland Capital Management Fund Advisors, L.P.*

005031

Geoffrey S. Harper
Texas Bar No. 00795408
gharper@winston.com
John Michael Gaddis
Texas Bar No. 24069747
mgaddis@winston.com
WINSTON & STRAWN LLP
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
(214) 453-6500
(214) 453-6400 (fax)

Michael J. Lang
Texas State Bar No. 24036944
mlang@cwl.law
Alexandra Ohlinger
Texas State Bar No. 24091423
aohlinger@cwl.law
CRAWFORD, WISHNEW & LANG PLLC
1700 Pacific Ave, Suite 2390
Dallas, Texas 75201
Telephone: (214) 817-4500

*Counsel for Appellant The Dugaboy Investment Trust*

## IN THE UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF TEXAS DALLAS DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| HIGHLAND CAPITAL | ) | Case No. 19-34054- |
| MANAGEMENT, L.P., | ) | sgj11 |
|      Reorganized Debtor. | ) | |
| | ) | |
| | ) | |

## DUGABOY INVESTMENT TRUST'S RESPONSE OPPOSING HIGHLAND CLAIMANT TRUST'S MOTION FOR ORDER FIXING ALLOWED AMOUNT OF CLASS 11 INTERESTS

005032

## <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION .................................................................................1

II.   BACKGROUND ..................................................................................3

III.  LEGAL STANDARD ...........................................................................5

IV.   ARGUMENT .......................................................................................6

   A.   Excess funds and surplus assets revert to the equity interest holders. ...........6

   B.   Dugaboy is entitled to its *pro rata* share of any excess funds. ......................7

   C.   The Absolute Priority Rule does not defeat Dugaboy's right to share in any surplus funds..........................................................................................8

   D.   No authority supports Highland's use of limited partner capital accounts to set the proposed allowed value of the claims of Classes 10 and 11. ...........10

V.    CONCLUSION AND PRAYER.................................................................11

005033

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Brints Cotton Marketing, Inc.*,
   737 F.2d 1338 (5th Cir. 1984) ..............................................................5, 7

*In re Granite Broadcasting Corp.*,
   369 B.R. 120 (Bankr. S.D.N.Y. 2007)..........................................................9, 11

*In re Idearc, Inc.*,
   423 B.R. 138 (Bankr. N.D. Tex. 2009)..........................................................9

*In re Introgen Therapeutics*,
   429 B.R. 570 (Bankr. W.D. Tex. 2010)..........................................................8

*In re Pacific Lumber Co.*,
   584 F.3d 229 (5th Cir. 2009) ..........................................................5

*In re Seaquest Diving, L.P.*,
   579 F.3d 411 (5th Cir. 2009) ..........................................................8

*In re Serta Simmons Bedding, Inc.*,
   125 F.4th 555 (5th Cir. 2024) ..........................................................7, 8

*Vanston Bondholders Protective Comm. v. Green*,
   329 U.S. 156 (1946)..........................................................7

**Statutes**

11 U.S.C. § 502..........................................................5

11 U.S.C. § 502(b)..........................................................5

11 U.S.C. § 502(c)..........................................................5

11 U.S.C. § 726(a)(6)..........................................................6

11 U.S.C. § 1129..........................................................5

11 U.S.C. § 1129(b)..........................................................5

11 U.S.C. § 1129(b)(2)(C)..........................................................8

005034

The Dugaboy Investment Trust ("Dugaboy") respectfully asks the Court to deny the *Motion for Order Fixing the Allowed Amount of Class 11 Interests*, filed by the Highland Claimant Trust ("Highland")[1] on August 8, 2025 (Dkt. 4362).

## I.    INTRODUCTION

This dispute is about more than just determining the amount of Dugaboy's[2] Class 11 allowed claim.  It will also determine the fate of any surplus funds or assets left over after all senior claimants have been paid in full.  Highland says Dugaboy's claim should be reduced to a fixed dollar amount that puts a hard ceiling on any potential recovery. Dkt. 4362 at 1–2.  Dugaboy instead contends Class 11 should share in any residual funds based on a *pro rata* percentage in proportion to its share of the equity ownership interests.[3]  This is not an extravagant request, as Dugaboy only owns 0.5%[4] of the equity compared to HMIT's 99.5%. Under Dugaboy's approach, it has a fair chance of getting some money. Under Highland's approach, Dugaboy gets no money.  Highland is wrong, and its Motion should be denied for four reasons.

---

[1] Except where otherwise specified, this Response uses "Highland" to refer to Highland Claimant Trust, the Movant on this Motion.

[2] For simplicity, this Response uses "Dugaboy" as a shorthand for all of the Class 11 interest-holders.  The claimants in Class 11 include Dugaboy, Strand Advisors, Mark Okada individually, and two Okada Family Trust entities.

[3] *See* June 30, 2025 Hearing Transcript 245:25–246:18 (Dugaboy's closing argument).

[4] The 0.5% figure represents the total equity owned by all the members of Class 11. For Dugaboy by itself, its equity share is 0.1866%. *See* Hrg. Tr. 81:1–5.

1

005035

*First*, both the confirmed Reorganization Plan ("Plan"), and the Claimant Trust Agreement ("CTA") require that any excess funds or surplus assets left over after all senior creditors have been paid in full must revert to the equity interest holders, which include Dugaboy as well as HMIT.

*Second*, longstanding principles of bankruptcy law and controlling precedent require that any distribution of excess funds be made on a *pro rata* or "ratable" basis, meaning that whatever the actual dollar amounts, Dugaboy is entitled to share in any such distribution in proportion to its 0.5% equity interest.

*Third*, the absolute priority rule does not block Dugaboy from sharing in a distribution of excess funds, because any such funds will only become available after all senior classes of creditors have been paid in full. To the contrary, the absolute priority rule helps Dugaboy because it prohibits senior creditors from receiving *more* than they are owed under the Plan and directs that excess value must be allocated to junior classes of creditors or equity.

*Finally*, Highland's proposed method for determining the value of Dugaboy's claim—the same method it previously used for HMIT's claim at the June 25, 2025 hearing[5]—must be rejected as both unreliable and contrary to the principles of

---

[5] Dugaboy acknowledges that the Court has already ruled on the allowed amount of HMIT's Class 10 claim.  *See* Dkt. 4297.  Dugaboy assures the Court that its continued argument on this issue is not meant to try the Court's patience but is merely for the sake of preserving error and avoiding waiver.  Discussion of HMIT is also relevant because Highland is asking the Court to take exactly the same approach to valuing Dugaboy's interest as it did with HMIT. *See* Dkt. 4362 at 7 (asking the Court to allow the Class 11 interests "in a manner consistent with the HMIT Order").

005036

bankruptcy law. Highland arbitrarily chose to calculate claim values based on the "value" given in the equity holders' limited partnership capital accounts, a number calculated for tax purposes that bears little relation to the market value of the partnership interest. And by limiting Dugaboy's claim to a fixed (and unreliable) number derived from its capital accounts, Highland improperly deprives Dugaboy of its right to *pro rata* treatment in proportion to its ownership share.

## II.    BACKGROUND

Before its bankruptcy filing on October 16, 2019, the original debtor existed as a limited partnership entity named Highland Capital Management, L.P. ("HCMLP"). Dkt. 1943. As relevant here, HCMLP structured its limited partnership interests into three classes named "A", "B", and "C." HMIT acquired all of the Class B and C interests, which amounted to 99.5% of HCMLP's partnership interests. Several other entities (including Dugaboy) retained the Class A interests which amounted to the remaining 0.5% of HCMLP's equity. Dkt. 4362 at 3. For tax purposes, HCMLP was required to maintain "limited partner capital accounts" that purported to track the value of each partner's interest. *Id*. at 6.

On February 22, 2021, this Court confirmed the *Fifth Amended Plan of Reorganization* for HCMLP ("Plan") [Dkt. 1943] with an effective date of August 11, 2021 [Dkt. 2700]. As relevant here, the pre-petition limited partnership interests in HCMLP would become unvested Contingent Claimant Trust interests when their equity interests were allowed by the Court under the Plan (and once allowed, those

005037

interests would only vest after more senior creditors were paid in full).  Dkt. 4362 at

5. The pre-filing Class B and C interests owned by HMIT became Class 10, and the

Class A interests owned by Dugaboy and others became Class 11. *Id*.

At the June 25, 2025 hearing, the Court heard argument and evidence on

determining an allowed amount for HMIT's Class 10 equity interests. Claimant

Trustee James Seery explained that he used the valuation in HMIT's capital account

on the date the petition was filed ($394,630,871.53) as the basis for calculating

HMIT's allowed amount for purposes of its bankruptcy claim. Hrg. Tr. 93:11–94:9.

After subtracting the balance of approximately $57 million on a note HMIT owed to

Highland, Seery arrived at a claim value of $336,940,230.58. *Id*.  Despite strenuous

objections from Dugaboy—which argued for calculating the allowed amounts for

both HMIT and Dugaboy by using a *pro rata* percentage based on their respective

99.5%/0.5% equity ownership shares—the Court sided with Highland and allowed

HMIT's Class 10 claim in the same fixed amount calculated by Seery. Dkt. 4297 ¶

12; *see* Hrg. Tr. 245:25–247:23; 249:20–250:1.

In this Motion, Highland asks the Court to calculate Dugaboy's Class 11

allowed amount using the same method—*i.e.*, the value of its limited partner capital

account as of the petition date—it has already used for HMIT. For the reasons

discussed below, the Court should decline that invitation.

## III.    LEGAL STANDARD

Section 502 of the Bankruptcy Code provides that (subject to various exceptions not relevant here) if a claim is objected to, the Court "after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount." 11 U.S.C. § 502(b). The Court may also "estimate" the amount of any contingent or unliquidated claim, if fixing or liquidating such claim would cause undue delay. *Id*. § 502(c). While § 502 requires the Court to determine a dollar value, it does not dictate any specific method for doing so. Instead, the Court should choose the methods and sources of information that is best suited to the circumstances. *See In re Brints Cotton Marketing, Inc.*, 737 F.2d 1338, 1341 (5th Cir. 1984) ("In estimating a claim, the bankruptcy court should use whatever method is best suited to the circumstances.").

Section 1129 of the Bankruptcy Code sets forth the requirements that must be met for a proposed reorganization Plan to be confirmed by the bankruptcy court. One is the "Absolute Priority Rule," which requires that the claims of each senior class of creditors be paid in full before holders of junior claims can receive anything. 11 U.S.C. § 1129(b); *In re Pacific Lumber Co.*, 584 F.3d 229, 244–45 (5th Cir. 2009). Another is that the Plan be "fair and equitable" with respect to each class of claim holders. *Id*. § 1129(b).

005039

## IV.    ARGUMENT

Imagine there is money left over after paying every senior class of creditors the full amounts they are owed under the Plan. This is not farfetched. After paying off Class 9, there could be as much as $45–$50 million left for distribution to Classes 10 and 11.  *See* Hrg. Tr. 81:15–18. HMIT has a significant interest in these funds, given its 99.5% equity ownership share. The question is whether Dugaboy can claim the remaining 0.5% of any excess funds based on its own equity rights, even if those funds exceed whatever fixed amount the Court may have used for valuing Dugaboy's allowed claim. The answer, as explained below, is a resounding yes.

### A.    Excess funds and surplus assets revert to the equity interest holders.

Both the Plan and the Contingency Trust Agreement make express provision for the disposition of any funds or assets that may be left over after all classes of creditors have been paid in full under the Plan. Upon the wind-down and dissolution of the Reorganized Debtor and the Claimant Trust, "any remaining Claimant Trust Assets ***that exceed the amounts required to be paid under the Plan***" will be transferred to the holders of the claimant trust interests, *i.e.*, the Class 10 and Class 11 claimants. Plan, Art. IV(B)(14) (emphasis added); *see* similar provisions at Plan IV(A), IV(C) and CTA ¶ 9.2.  This is consistent with the Bankruptcy Code, which provides that any distribution of estate property must go, in the last instance, to the debtor. *See* 11 U.S.C. § 726(a)(6).

6

005040

## B.    Dugaboy is entitled to its *pro rata* share of any excess funds.

Highland's proposal to put a fixed ceiling on Dugaboy's allowed claim and cut it off from any further share in excess funds is contrary to the letter and spirit of the Bankruptcy Code, the confirmed Reorganization Plan, and the Claimant Trust Agreement. All of these make clear that holders of contingent equity interests like Dugaboy are entitled to their *pro rata* proportionate ownership shares without being limited by any fixed ceiling. The Plan specifically provides that both Class 10 (HMIT) and Class 11 (Dugaboy and others) will receive their "Pro Rata share of the Contingent Claimant Trust Interests." Plan Art. III, H(10) and (11); *see* CTA ¶ 5.1(c) (providing that Class 10 and Class 11 holders will receive contingent trust interests "***equal to the ratio***" that each holder's allowed interest bears to the total amount of allowed interests for their respective class).

These requirements reflect the Bankruptcy Code's statutory interest in upholding the "important norm" in corporate finance of similar treatment for similarly situated creditors. *In re Serta Simmons Bedding, Inc.*, 125 F.4th 555, 565 (5th Cir. 2024). In bankruptcy, that statutory purpose takes the form of mandates to bring about a "ratable [*i.e.*, *pro rata*] distribution" of assets among the creditors. *Brints*, 737 F.2d at 1341; *see Vanston Bondholders Protective Comm. v. Green,* 329 U.S. 156, 162–63 (1946) ("[A] purpose of bankruptcy is to administer an estate as to bring about a ***ratable distribution*** of assets among the bankrupt's creditors.") (emphasis added). "Ratable treatment is such an important norm that it is often

described as a lender's 'sacred right' under syndicated loan agreements." *Serta Simmons*, 125 F.4th at 565.

Disregarding these clear and powerful authorities, Highland contends that because of the absolute priority rule and contractual subordination clauses, HMIT would get 100% of any excess leftover funds—regardless of their amount—and Dugaboy would get nothing beyond the fixed ceiling of the amount allowed by the Court. Hrg. Tr. 133:9–134:3 (Seery testimony); *see* Plan ¶ I(B)(44) (stating Class A interests will be subordinated to Class B/C interests); CTA ¶5.1(c) (same). This contention is wrong, as explained next.

### C. The Absolute Priority Rule does not defeat Dugaboy's right to share in any surplus funds.

Highland misunderstands the purpose of the absolute priority rule, which is to meet the statutory requirement for "fair and equitable" treatment by ensuring each class is fully paid in order of its priority before the next junior class gets anything at all. *See* 11 U.S.C. § 1129(b)(2)(C); *In re Seaquest Diving, L.P.*, 579 F.3d 411, 420 n.5 (5th Cir. 2009) ("The absolute priority rule requires that certain classes of claimants be paid in full before any member of a subordinate class is paid."). But in a scenario where excess cash remains after ***every creditor class has been paid in full***, the absolute priority rule has served its purpose and no longer poses an obstacle to distribution of residual funds. *See, e.g.*, *In re Introgen Therapeutics*, 429 B.R. 570, 585 (Bankr. W.D. Tex. 2010) (acknowledging that absolute priority "would not be an issue" after higher-priority classes are paid in full). Instead, here that distribution

005042

is governed by the terms of the Plan and the Claimant Trust Agreement, which provide that excess funds will eventually be distributed to the equity interest holders (*i.e.*, HMIT and Dugaboy) in proportion to their percentage interest. *See* Section IV(A) above. In that scenario, Dugaboy's designation under Class 11 and HMIT's Class 10 is not a subordination; the Plan and other legal principles require that all equity holders be paid pro rata from excess funds. The designations do not strip Dugaboy of its 0.5% equity share or the right to participate in distributions of excess funds that comes with it.

If the Court allows HMIT to collect 100% (rather than its pro rata share of 99.5%) of any residual funds, while barring Dugaboy's participation by holding it under the hard ceiling of a fixed dollar amount, it will violate an important corollary to the absolute priority rule that prohibits senior classes of claimholders from receiving **more than** the full amount they are owed under the Plan. *See, e.g.*, *In re Idearc, Inc.*, 423 B.R. 138, 170 (Bankr. N.D. Tex. 2009) ("The corollary of the absolute priority rule is that senior classes cannot receive more than a one hundred percent (100%) recovery for their claims."). Instead, the excess value "must be allocated to junior classes of debt or equity, as the case may be." *In re Granite Broadcasting Corp.*, 369 B.R. 120, 140–41 (Bankr. S.D.N.Y. 2007). This rule is intended to protect junior classes from greedy overreach by senior creditors. Because there is no class more junior than Dugaboy's Class 11, this rule is meant to protect

Dugaboy and ensure it is not wrongfully deprived of the rights and benefits of its 0.5% share.

**D.    No authority supports Highland's use of limited partner capital accounts to set the proposed allowed value of the claims of Classes 10 and 11.**

Although Highland's Claimant Trustee James Seery rejected the use of a *pro rata* approach in this case, he admitted under cross-examination that using equity ownership percentages was a "standard" methodology he had employed in other cases to value a partnership interest for sale or liquidation. Hrg. Tr. 132:24–133:8. Seery also admitted that the underlying limited partnership agreement expressed HMIT's and Dugaboy's relative equity interests as percentages (99.5% and 0.5% respectively) and not fixed dollar amounts. *Id*. 94:10–12.

By contrast, no authority supports Seery's arbitrary choice to use pre-petition limited partner capital accounts as the basis for calculating the value of allowed claims for equity interest holders. *See id*. 93:11–94:9. The Bankruptcy Code does not even mention (let alone require) such an approach, and it is similarly absent from both the Plan and the Claimant Trust Agreement. That's probably for a good reason. Because partnership capital accounts are maintained and calculated largely for tax purposes (*see* Dkt. 4362 at 4), the resulting book values may bear little relation to what an equity interest might command in a market sale.

Contrary to the usual practice in complex bankruptcies, no one has performed an expert valuation of HMIT's equity interest. *See, e.g.*, *Granite Broadcasting*, 369

005044

B.R. at 140–41 (describing the lengthy and detailed valuation analyses performed by both sides' experts). Thus, little reliance can be placed on Seery's back-of-the-envelope estimation that HMIT's claim is worth over $336 million. *See* Hrg. Tr. 110:14–111:6. And the Court can give no greater confidence to Highland's assertion (based on the same dubious methodology) that Dugaboy's interest should be capped at a fixed ceiling of $740,081.61. *See* Dkt. 4362 at 1. This approach unfairly and inequitably cuts off Dugaboy from its right to participate in any distributions of excess assets according to its 0.5% *pro rata* equity share. Even in a bankruptcy, equity deserves to be treated equitably.

All of this acceleration of the determination of the value of equity interests is untimely and unnecessary. It puts the cart before the horse. There is no reason—and Highland has offered none—for the Court to strain to adopt a methodology to value the claim of each equity holder. The Plan takes care of this, providing that each equity holder should be paid *pro rata* from excess funds that arise. When excess funds arise, they should be divided according to the equity ownership percentages. Highland's effort prematurely to make these determinations is without need or cause or reason and should be rejected.

## V.   CONCLUSION AND PRAYER

For the reasons above, Dugaboy respectfully asks the Court to deny Highland's Motion.

005045

Dated: September 8, 2025

Respectfully submitted,

**WINSTON & STRAWN LLP**

By: */s/ Geoffrey S. Harper*

Geoffrey S. Harper
Texas Bar No. 00795408
gharper@winston.com
John Michael Gaddis
Texas Bar No. 24069747
mgaddis@winston.com
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
(214) 453-6500
(214) 453-6400 (fax)

Michael J. Lang
Texas State Bar No. 24036944
mlang@cwl.law
Alexandra Ohlinger
Texas State Bar No. 24091423
aohlinger@cwl.law
**CRAWFORD, WISHNEW & LANG PLLC**
1700 Pacific Ave, Suite 2390
Dallas, Texas 75201
Telephone: (214) 817-4500

*Counsel for The Dugaboy Investment Trust*

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that on September 8, 2025, a true and correct copy of this document was served electronically via the Court's CM/ECF system to the parties registered or otherwise entitled to receive electronic notices in this case.

*/s/ Geoffrey S. Harper*
Geoffrey S. Harper

005046

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717) (*admitted pro hac vice*)
John A. Morris (NY Bar No. 2405397) (*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
Hayley R. Winograd (NY Bar No. 5612569) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910

HAYWARD PLLC
Melissa S. Hayward (Texas Bar No. 24044908)
MHayward@HaywardFirm.com
Zachery Z. Annable (Texas Bar No. 24053075)
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100

*Counsel for the Highland Claimant Trust*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | Case No. 19-34054-sgj11 |
| Reorganized Debtor. | |

## STIPULATION REGARDING THE HIGHLAND CLAIMANT TRUST'S DEADLINE TO FILE REPLY IN SUPPORT OF ITS MOTION FOR ORDER FIXING ALLOWED AMOUNT OF CLASS 11 INTERESTS

This stipulation (the "Stipulation") is made and entered into in the above-captioned bankruptcy case by and between the Highland Claimant Trust (the "Claimant Trust"), on the one hand, and The Dugaboy Investment Trust ("Dugaboy," and together with the Claimant Trust, the "Parties"), on the other hand, by and through their respective undersigned counsel. Through this Stipulation, the Parties respectfully state and stipulate as follows:

005047

## RECITALS

**WHEREAS**, on August 8, 2025, the Claimant Trust filed its *Motion for Order Fixing Allowed Amount of Class 11 Interests* [Docket No. 4362] (the "Motion")[1] seeking an order of the Court fixing the allowed amount of the unvested Class 11 Contingent Claimant Trust Interests of certain Class 11 Holders, including Dugaboy;

**WHEREAS**, on August 15, 2025, the Claimant Trust filed the *Notice of Hearing on Motion for Order Fixing Allowed Amount of Class 11 Interests* [Docket No. 4371] (the "Notice of Hearing") noticing the Motion for hearing on September 18, 2025. The Notice of Hearing also set forth (i) September 5, 2025, as the deadline for parties to respond to the relief requested in the Motion, and (ii) September 12, 2025, as the deadline for the Claimant Trust to reply to any response to the Motion;

**WHEREAS**, on September 5, 2025, via email correspondence, counsel for the Claimant Trust and counsel for Dugaboy agreed to extend (i) Dugaboy's deadline to file its response to the Motion to September 8, 2025, and (ii) the Claimant Trust's deadline to file its reply to Dugaboy's response to September 15, 2025;

**WHEREAS**, on September 5, 2025, Dugaboy filed its *Unopposed Motion to Extend Time to Respond to the Highland Claimant Trust's Motion for Order Fixing the Allowed Amount of Class Interests* [Docket No. 4383] (the "Extension Motion") seeking an order of the Court extending the deadlines for (i) Dugaboy to file its response to the Motion to September 8, 2025, and (ii) the Claimant Trust to file its reply to September 15, 2025;

**WHEREAS**, on September 8, 2025, Dugaboy filed its *Response Opposing Highland Claimant Trust's Motion for Order Fixing Allowed Amount of Class 11 Interests* [Docket No.

---

[1] Capitalized terms not otherwise defined in this Stipulation shall have the meanings ascribed to them in the Motion.

005048

4384] (the "Dugaboy Response"), and the Dugaboy Response is the only document that has been filed in response to the Motion; and

**WHEREAS**, the Parties are executing this Stipulation to clarify that the Claimant Trust's deadline to reply to the Dugaboy Response shall be extended to September 15, 2025.

**NOW, THEREFORE, IT IS HEREBY JOINTLY STIPULATED AND AGREED AS FOLLOWS:**

1.      The Claimant Trust's deadline to file its reply to the Dugaboy Response shall be extended to September 15, 2025.

2.      This Stipulation may be executed in counterparts. A facsimile, electronic, or photocopy of this Stipulation and the signatures hereto shall have the same effect and may be accepted with the same authority as if it were an original.

3.      The Parties agree that the Court shall retain jurisdiction with respect to all matters arising from or relating to the implementation, interpretation, and enforcement of this Stipulation and any order related thereto.

[*Remainder of Page Intentionally Blank*]

005049

**SO STIPULATED AND AGREED:**

Dated: September 11, 2025

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No. 143717)
John A. Morris (NY Bar No. 2405397)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Email: jpomerantz@pszjlaw.com
        jmorris@pszjlaw.com
        gdemo@pszjlaw.com
        hwinograd@pszjlaw.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100

*Counsel for the Highland Claimant Trust*

-and-

**WINSTON & STRAWN LLP**

*/s/ Geoffrey S. Harper (with permission)*
Steven H. Stodghill
Texas Bar No. 19261100
stodghill@winston.com
Geoffrey S. Harper
Texas Bar No. 00795408
gharper@winston.com
John Michael Gaddis
Texas Bar No. 24069747
mgaddis@winston.com
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
(214) 453-6500
(214) 453-6400 (fax)

*Attorneys for The Dugaboy Investment Trust*

005050

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (admitted *pro hac vice*)
John A. Morris (admitted *pro hac vice*)
Gregory V. Demo (admitted *pro hac vice*)
Hayley R. Winograd (admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Tel: (310) 277-6910

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100

*Counsel for the Highland Claimant Trust*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) | Case No. 19-34054-sgj11 |
| | ) | |
| Debtor. | ) | |
| | ) | |

**REPLY IN SUPPORT OF MOTION FOR ORDER FIXING ALLOWED AMOUNT**
**OF CLASS 11 INTERESTS**

The Highland Claimant Trust (the "Claimant Trust") submits this reply (the "Reply") in

further support of its *Motion for Order Fixing Allowed Amount of Class 11 Interests* [Docket No.

4362] (the "Motion") and in opposition to *Dugaboy Investment Trust's Response Opposing*

---

[1] Highland's last four digits of its taxpayer identification number are (8357). The headquarters and service address for Highland is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

005051

*Highland Claimant Trust's Motion for Order Fixing Allowed Amount of Class 11 Interests* [Docket No. 4384] (the "Objection") filed by The Dugaboy Investment Trust ("Dugaboy"). In further support of the Motion, the Claimant Trust states as follows:

## I.    PRELIMINARY STATEMENT[2]

1.     Dugaboy's Objection impermissibly requires the rewriting of the Plan and the Claimant Trust Agreement ("CTA") so that Class 10 and Class 11 would no longer be treated as distinct Classes of Contingent Claimant Trust Interests but instead would effectively be collapsed into a single Class with Class 11 treated *pari passu* with Class 10.  But Class 11 is not *pari passu* with Class 10; it is expressly subordinated to Class 10 and that Plan treatment cannot be changed.

2.     Dugaboy mischaracterizes the Plan, the CTA, and the Bankruptcy Code's absolute priority rule, ignores this Court's prior orders, and renders meaningless the mandated distinction between Classes 10 and 11; indeed, under Dugaboy's new approach, the rationale for Class 11 would cease to exist. Dugaboy's proposal has no basis in law or fact and must be rejected for several reasons.

3.     ***First***, Dugaboy's argument that the Plan and the CTA require *pro rata* distributions between Classes 10 and 11 is plainly wrong. The Debtor's prepetition limited partnership agreement created different classes of limited partnership interests, each of which had different rights. The Plan, the Confirmation Order, and the CTA respected these differences by, among other things, creating separate classes of interests—Classes 10 and 11—and expressly subordinating Class 11 to Class 10. As a result of this priority structure, Class 10 must be paid in full before Class 11 can receive anything. Dugaboy cannot now rewrite the plain language of the Plan.

---

[2] Capitalized terms used but not defined herein have the meanings given to them in the Motion or below.

4.      **Second**, Dugaboy ignores this Court's prior orders allowing the claims of the two Class 10 Interest holders (HMIT and HCLOM) in fixed dollar amounts. Consequently, Dugaboy's proposed Plan modification cannot work and would result in the disparate treatment among Class 10 Interest holders, since HCLOM is not a former limited partner and has no former prepetition percentage interest in the Debtor.

5.      **Third,** Dugaboy's legal arguments in support of its Objection are misplaced. Dugaboy argues that bankruptcy law requires *pro rata* distribution to ensure that similar claims are treated the same. But, Class 10 and Class 11 Interests are not the same, were properly separately classified in the Plan, and Class 11 is expressly subordinate to Class 10. The Confirmation Order cementing that treatment is final; and notably, Dugaboy never objected to the Plan's differing treatment of Classes 10 and 11. Dugaboy's new scheme would also turn the absolute priority rule on its head by forcibly gifting Class 11, a junior class, a distribution *before* Class 10, a senior class, is paid in full.

6.      Class 11 is subordinate to Class 10, and the Plan requires the fixing of the dollar amounts of the Class 10 and Class 11 Interests in order to satisfy that subordination.[3]  Section 502 requires the calculation of those interests as of the Petition Date, and using their respective Petition Date capital accounts is faithful to principles of partnership law, the Debtor's Limited Partnership Agreement as of the Petition Date, and the Plan. It is the only logical method to use in this case—as this Court ruled previously when fixing HMIT's Class 10 Interest.

7.      For the reasons set forth herein and that will be established at the hearing, Dugaboy's Objection should be overruled, and the Motion should be granted.

---

[3] As James Dondero and Dugaboy know, the fixing of the Class 10 Interests also enabled HMIT and HCLOM to share the prior Class 10 distributions consistent with the written agreement between them.

## II.    <u>REPLY</u>

8.      Notwithstanding the plain language of the Plan, Dugaboy argues the Class 10 and Class 11 Interests should not be reduced to a fixed amount and it should share in any distributions to Class 10 based on its 0.1866% prepetition Class A limited partnership percentage interest in the Debtor. Dugaboy ignores the seniority of the Class 10 Interests already held by HMIT and HCLOM (which had no prepetition percentage interest in the Debtor) and collapses Class 10 and Class 11 into a single Class with no distinctions whatsoever. Dugaboy's proposal is contrary to the Bankruptcy Code, the Plan, the CTA, and this Court's prior orders.

9.      Dugaboy pretends the Class 11 Interests are *pari passu* with the Class 10 Interests; they are not. On the Effective Date, all Highland limited partnership interests were extinguished, and the former limited partners became entitled to receive Class 10 Contingent Trust Interests if they held Class B/C Limited Partnership Interests and Class 11 Contingent Trust Interests if they held Class A Limited Partnership Interests.[4] Dugaboy's suggestion that the Plan provides for *pro rata* treatment among holders of Class 10 and Class 11 is simply false.

10.     The Plan and the CTA recognized the priorities in Highland's prepetition Limited Partnership Agreement by expressly subordinating holders of Class 11 Interests to holders of Class 10 Interests.[5] Although Dugaboy filed an extensive objection to the Plan [Docket No. 1667], it did not object to the separate classification of Class A Limited Partnership Interests in

---

[4] *See, e.g.*, Plan, Art. III.H.10, 11 (allocating Class 10 Interests to holders of Allowed Class B/C Limited Partnership Interests and Class 11 Interests to Holders of Allowed Class A Limited Partnership Interests); CTA, § 5.1(c) ("The Claimant Trustee shall allocate to each Holder of Allowed Class 10 Class B/C Limited Partnership Interests and each Holder of Allowed Class 11 Class A Limited Partnership Interests a Contingent Trust Interest equal to the ratio that the **amount** of each Holder's Allowed Class 10 or Class 11 Interest bears to the total **amount** of the Allowed Class 10 or Class 11 Interests, as applicable, under the Plan.") (emphasis added).

[5] Plan, Art. I.A.44 **("[T]he Contingent Claimant Trust Interests distributed to the Holders of Class A Limited Partnership Interests will be subordinated to the Contingent Claimant Trust Interests distributed to the Holders of Class B/C Limited Partnership Interests.")** (emphasis added); CTA, § 5.1(c) (**"The Equity Trust Interests distributed to Allowed Holders of Class A Limited Partnership Interests shall be subordinated to the Equity Trust Interests distributed to Allowed Holders of Class B/C Limited Partnership Interests.")** (emphasis added).

005054

Class 11 and Class B/C Limited Partnership Interests in Class 10 or the subordination of Class 11 to Class 10 (nor did anyone else). And, in the Confirmation Order, this Court found the separate classification of Interests into Class 10 and Class 11 was proper because the Class B/C Limited Partnership Interests and Class A Limited Partnership Interests were not similarly situated, had different payment priorities, and required different treatment.[6] Accordingly, Class 10 and Class 11 are not now (and never were) similarly situated and, to reflect the differences in the prepetition limited partnership interests, *the Plan expressly subordinated Class 11 to Class 10*. Class 11 cannot receive a penny until Class 10 is paid in full.

11. Dugaboy's proposed plan modification also ignores that the Class 10 Interests held by HMIT and HCLOM were previously allowed in fixed dollar amounts and are not subject to adjustment. The HCLOM Order, which Dugaboy approved, was entered on December 27, 2024, and granted HCLOM, an entity controlled by Dugaboy, an Allowed Class 10 Interest in a fixed dollar amount of $10,140,633.26. The HCLOM Order was not appealed and is final.[7]

12. On May 19, 2025, Highland and the Claimant Trust moved, *inter alia*, to allow HMIT's Class 10 Interest in an amount equal to its capital account balance in Highland as of the Petition Date, less amounts HMIT owed the estate [Docket No. 4216] (the "<u>HMIT Motion</u>").[8] On June 25, 2025, during the hearing on the HMIT Motion, Dugaboy orally objected (for the first time) to the methodology used to allow HMIT's Class 10 Interests and asked this Court not

---

[6] *See, e.g.*, Confirmation Order ¶ 36 ("The Plan properly separately classifies the Equity Interests in Class 10 … from the Equity Interests in Class 11 … because they represent different types of equity security interests in the Debtor and different payment priorities.").

[7] After the HCLOM Order was entered, HMIT and HCLOM agreed to an allocation of distributions between them as the holders of Class 10 Interests. *See Intercreditor and Participation Agreement* dated as of January 10, 2025, and filed as Exhibit 69 at Docket No. 4255. HMIT and HCLOM have already given effect to their agreement by actually sharing the distributions HMIT received under its settlement agreement with Highland.

[8] Dugaboy objected to the HMIT Motion [Docket No. 4230] and requested discovery. Highland and the Claimant Trust produced to Dugaboy voluminous discovery concerning Highland's remaining assets and liabilities and the current projected value of those assets and liabilities. Tr. (6/25/25 hearing) at 91:8-16.

005055

to fix HMIT's Class 10 Interests but to permit Class 10 and Class 11 to receive their supposed "*pro rata*" share of the estate's remaining assets, substantively the same plan modification raised in the Objection. *See, e.g.*, Tr. (6/25/25 hearing) at 79:24-80:19; 81:1-82:15.[9]

13.    On June 30, 2025, this Court entered the HMIT Order and allowed HMIT's Class 10 Interest "in the amount of $336,940,230.58," *i.e.*, the value of HMIT's capital account on the Petition Date ($394,630,871.53), minus the HMIT Note Balance ($57,690,640.95).[10]

14.    Dugaboy ignores the fixed dollar amount of HMIT's Interest and does not even consider how the final HCLOM order would be affected. The fixed amount of HCLOM's Class 10 Interest (a) was acknowledged and agreed to by Dugaboy, (b) is not subject to appeal, and (c) cannot be squared with Dugaboy's new proposal.  In contrast, fixing the dollar amount of the Allowed Class 11 Interests as the Claimant Trust proposes, allows for the calculation of (i) the dollar amount of distributions to each Class 10 holder, and (ii) once Class 10 has been paid in full, the dollar amount of any theoretical distributions to each Class 11 holder, in each case, as required by the Plan, the Confirmation Order, and the CTA.

15.    In short, Dugaboy fails to take into account that (a) HMIT and HCLOM's Class 10 Interests were previously allowed in a fixed amount and (b) HCLOM was never a limited partner of Highland and therefore could never receive its "*pro rata*" share of anything based on former limited partnership interests.

---

[9] At the hearing, Highland and the Claimant Trust introduced significant documentary evidence, including evidence showing the current value of Highland's assets and liabilities. James P. Seery, Jr., the trustee of the Claimant Trust, also described the methodology used to value HMIT's Class 10 Interest. The evidence showed that the respective capital accounts represented each limited partner's interest in the estate's profits and losses and the approximate amount they would have expected to receive if Highland were liquidated as of the Petition Date. The evidence also showed that (a) the capital accounts were maintained in the ordinary course of Highland's business; (b) both Mr. Dondero and Mr. Waterhouse were actively involved in the calculation of each limited partner's capital accounts; and (c) both Mr. Dondero and Mr. Waterhouse signed tax documents, under penalty of perjury, attesting to the calculation of the capital accounts and each partner's allocable share of Highland's value. *See* Tr. (6/25/25 hearing) at 93:8-97:11; 110:10-111:6; Exhibits 113-118 (Docket No. 4255).

[10] Dugaboy has appealed the HMIT Order; however, the HMIT Order is still binding unless and until overturned on appeal.

16.    Dugaboy also now argues that treating Class 10 and Class 11 differently violates the absolute priority rule because "where excess cash remains after *every creditor class has been paid in full*, the absolute priority rule has served its purpose and no longer poses an obstacle to distribution of residual funds."[11] Dugaboy is wrong because it ignores 11 U.S.C. § 1129(b)(2)(C)(ii), which provides that, absent consent, "[t]he holder of any interest that is junior to the interests of such class will not receive or retain under the plan on account of such junior interest any property." The Confirmation Order created Class 10 and Class 11 because the Class B/C Limited Partnership Interests (placed in Class 10) and the Class A Limited Partnership Interests (placed in Class 11) were not substantially similar and had different payment priorities.[12] The Plan accounted for the differences in Highland's limited partnership interests by subordinating Class 11 to Class 10. Allowing Class 11, a junior equity class, to receive anything of value before Class 10, a senior equity class, is paid in full violates the Plan and the absolute priority rule, too. Fixing the Class 11 amount and honoring the Plan subordination is not an option; it is required.

17.    Section 502(b) of the Bankruptcy Code provides for a determination of the amount of a claim or interest "as of the date of the filing of the petition …."[13] The Claimant Trust's detailed capital account methodology honors Section 502(b) and allows the Class 10 and Class 11 Interests at the gross amount such interest holders would have received in a hypothetical liquidation of Highland's assets *on the Petition Date* calculated consistently with amounts set and approved (and sworn to) by Mr. Dondero and Mr. Waterhouse. Dugaboy ignores the timing requirement in Section 502(b) and seeks to allow the Class 11 Interests in

---

[11] Objection at 8-9 (emphasis in original).
[12] *See, e.g.*, Confirmation Order ¶ 36.
[13] 11 U.S.C. § 502(b).

005057

amounts determined at some future date when the net assets are actually distributed.

18.     Using each former limited partner's respective Petition Date capital account to fix the dollar amount of its Interest respects (a) the way Highland allocated the value of its assets and liabilities to its limited partners prior to and on the Petition Date,[14] (b) the priorities in the Limited Partnership Agreement and the Plan, (c) this Court's prior orders, and (d) the requirements of 11 U.S.C. § 502(b). Using the capital accounts results in each former limited partner's Interest—regardless of whether in Class 10 or Class 11—being allowed in an amount consistent with the capital account balances delivered to the partners and reported to the IRS on their respective Form K-1s both before and after the Petition Date.

| Interest Holder | Class | Petition Date Capital Account Balance |
|---|---|---|
| HMIT | Class 10 | $394,630,871.53* |
| Dugaboy | Class 11 | $740,081.61 |
| Strand Advisors, Inc. | Class 11 | $994,707.76 |
| Mark K. Okada | Class 11 | $192,754.38 |
| The Mark and Pamela Okada Family Trust – Exempt Trust #1 | Class 11 | $38,868.17 |
| The Mark and Pamela Okada Family Trust – Exempt Trust #2 | Class 11 | $16,657.79 |
| | TOTALS: | $396,613,941.24 |

19.     In contrast, Dugaboy ignores (a) the priority provisions of the Limited Partnership Agreement and the resulting waterfall priorities in the Plan and CTA, (b) that HMIT's Class 10 Interest is fixed and HCLOM's Class 10 Interest is not only fixed but is incapable of being adjusted on a *pro rata* basis because it was never a limited partner, and (c) that the Class 11 Interests must be valued as of the Petition Date.

---

[14] The Limited Partnership Agreement required Highland to maintain a capital account for each limited partner that was (a) credited with (i) all property contributed to Highland by such limited partner and (ii) such limited partner's allocable share of Highland's profits and (b) debited by (i) all property distributed to the limited partner and (ii) the limited partner's allocable share of Highland's losses. LPA § 3.7(a); *see also Delaware Revised Uniform Partnership Act*, § 15-401(a). Consistent with that requirement, Highland, while under Mr. Dondero's control, continually updated each limited partner's capital account with its allocable share of profits and losses and reported such amounts to the Internal Revenue Service under penalty of perjury as "true, correct, and complete."

005058

20.      For the reasons set forth in the Motion and here, the Court should overrule

Dugaboy's Objection and grant the Motion.

*[Signature Page Follows]*

005059

WHEREFORE, for the reasons set forth above and in the Motion, the Claimant Trust respectfully requests that the Court overrule the Objection and grant the Motion.

September 15, 2025

**PACHULSKI STANG ZIEHL & JONES LLP**
Jeffrey N. Pomerantz (admitted *pro hac vice*)
John A. Morris (admitted *pro hac vice*)
Gregory V. Demo (admitted *pro hac vice*)
Hayley R. Winograd (admitted *pro hac vice*)
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067
Tel: (310) 277-6910
Fax: (310) 201-0760
Email:     jpomerantz@pszjlaw.com
           jmorris@pszjlaw.com
           gdemo@pszjlaw.com
           hwinograd@pszjlaw.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075 ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for the Highland Claimant Trust*

005060

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (admitted *pro hac vice*)
John A. Morris (admitted *pro hac vice*)
Gregory V. Demo (admitted *pro hac vice*)
Hayley R. Winograd (admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Tel: (310) 277-6910

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100

*Counsel for Highland Claimant Trust*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § | |
| | § | Case No. 19-34054-sgj11 |
| Reorganized Debtor. | § | |
| | § | |

## HIGHLAND CLAIMANT TRUST'S *AMENDED*[2] WITNESS AND EXHIBIT LIST WITH RESPECT TO HEARING TO BE HELD ON SEPTEMBER 18, 2025

Highland Capital Trust (the "<u>Claimant Trust</u>") for the above-captioned chapter 11 case

(the "<u>Bankruptcy Case</u>"), by and through its undersigned counsel, submits the following

amended witness and exhibit list with respect to its *Motion for Order Fixing Allowed Amount of*

---

[1] Highland's last four digits of its taxpayer identification number are (8357). The headquarters and service address for Highland is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

[2] **For ease of reference, amended items appear in bold font.**

**AMENDED WITNESS AND EXHIBIT LIST FOR HEARING ON SEPTEMBER 18, 2025**          **PAGE 1 OF 4**
SF 4900-8919-4089.1 36027.002 DOCS_NY:42648.1 36027/002

005061

*Class 11 Interests* [Docket No. 4362], which the Court has set for hearing at 2:30 p.m. (Central

Time) on September 18, 2025 (the "Hearing") in the Bankruptcy Case.

     **A.**    **Witnesses:**

          1.    James P. Seery, Jr.;

          2.    Any witness identified by or called by any other party; and

          3.    Any witness necessary for rebuttal.

     **B.**    **Exhibits:**

| Number | Exhibit | Offered | Admitted |
|---|---|---|---|
| 1. | *Fourth Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P.* [HCMLPHMIT00002641-HCMLPHMIT00002676] [Docket No. 4255-114] | | |
| 2. | **Excerpts from the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* [Docket No. 1943, Exhibit A]** | | |
| 3. | **Excerpts from the *Claimant Trust Agreement* [Docket No. 1811, Exhibit R]** | | |
| 4. | *Highland Capital Management, L.P. Consolidated Financial Statements and Supplemental Information, December 31, 2018* [HCMLPHMIT00002548-HCMLPHMIT00002593] [Docket No. 4255-113] | | |
| 5. | Excerpts from *2018 Tax Return for Highland Capital Management, LP* (sig page, p. 1 of return, p. 1 of each partner's Schedule K-1 (Strand, Okada, MAP 1, MAP 2, Dugaboy, HMIT) [HCMLPHMIT00001332; HCMLPHMIT00001336; HCMLPHMIT00001414; HCMLPHMIT00001419; HCMLPHMIT00001424; HCMLPHMIT00001429; HCMLPHMIT00001434; HCMLPHMIT00001439] [Docket No. 4255-115][3] | | |

---

[3] Highland Capital Management, L.P.'s complete tax return for 2018 was previously produced to Dugaboy.

**AMENDED WITNESS AND EXHIBIT LIST FOR HEARING ON SEPTEMBER 18, 2025**    **PAGE 2 OF 4**
SF 4900-8919-4089.1 36027.002 DOCS_NY:42648.1 36027/002

005062

| Number | Exhibit | Offered | Admitted |
|--------|---------|---------|----------|
| 6. | Excerpts from *2019 Tax Return for Highland Capital Management, LP* (sig page, p. 1 of return, p. 1 of each partners' Schedule K-1 (Strand, Okada, MAP 1, MAP 2, Dugaboy, HMIT) [HCMLPHMIT00001726; HCMLPHMIT00001766; HCMLPHMIT00001865; HCMLPHMIT00001870;  HCMLPHMIT00001875; HCMLPHMIT00001880; HCMLPHMIT00001885; HCMLPHMIT00001890] [Docket No. 4255-116][4] | | |
| 7. | *Monthly Operating Report – FINAL November 2019* [Docket No. 4255-117] | | |
| 8. | *Stipulated and Agreed Order Resolving (A) HCLOM, Ltd.'s Scheduled Claims 3.65 and 3.66; and (B) Highland Capital Management, L.P.'s (1) Objection and (2) Motion for a Bad Faith Finding and an Award for Attorney's Fees Against HCLOM, Ltd. and James Dondero in Connection Therewith* [HCMLPHMIT00003860-HCMLPHMIT00003866] [Docket Nos. 4199, 4255-68] | | |
| 9. | *Intercreditor and Participation Agreement with HCLOM* dated January 10, 2025 [HCMLPHMIT00003868-HCMLPHMIT00003871] [Docket No. 4255-69] | | |
| 10. | Email string from July 5, 2025 through September 3, 2025 concerning "Distributions to HCLOM" | | |
| 11. | Any document entered or filed in Highland Capital Management, L.P.'s chapter 11 bankruptcy case, including any exhibits thereto | | |
| 12. | All exhibits necessary for impeachment and/or rebuttal purposes | | |
| 13. | All exhibits identified by or offered by any other party at the Hearing | | |

---

[4] Highland Capital Management, L.P.'s complete tax return for 2019 was previously produced to Dugaboy.

**AMENDED WITNESS AND EXHIBIT LIST FOR HEARING ON SEPTEMBER 18, 2025**                **PAGE 3 OF 4**
SF 4900-8919-4089.1 36027.002 DOCS_NY:42648.1 36027/002

005063

Dated: September 15, 2025.

**PACHULSKI STANG ZIEHL & JONES LLP**
Jeffrey N. Pomerantz (CA Bar No. 143717)
John A. Morris (NY Bar No. 2405397)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email: jpomerantz@pszjlaw.com
        jmorris@pszjlaw.com
        gdemo@pszjlaw.com
        hwinograd@pszjlaw.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Claimant Trust*

**AMENDED WITNESS AND EXHIBIT LIST FOR HEARING ON SEPTEMBER 18, 2025**                    **PAGE 4 OF 4**
SF 4900-8919-4089.1 36027.002 DOCS_NY:42648.1 36027/002

005064

**EXHIBIT 1**

# FOURTH AMENDED AND RESTATED

## AGREEMENT OF LIMITED PARTNERSHIP

### OF

## HIGHLAND CAPITAL MANAGEMENT, L.P.

THE PARTNERSHIP INTERESTS REPRESENTED BY THIS LIMITED PARTNERSHIP AGREEMENT HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OP 1933 OR UNDER ANY STATE SECURITIES ACTS IN RELIANCE UPON EXEMPTIONS UNDER THOSE ACTS. THE SALE OR OTHER DISPOSITION OF THE PARTNERSHIP INTERESTS IS PROHIBITED UNLESS THAT SALE OR DISPOSITION IS MADE IN COMPLIANCE WITH ALL SUCH APPLICABLE ACTS. ADDITIONAL RESTRICTIONS ON TRANSFER OF THE PARTNERSHIP INTERESTS ARE SET FORTH IN THIS AGREEMENT.

005066

HCMLPHMIT00002641

# FOURTH AMENDED AND RESTATED
## AGREEMENT OF LIMITED PARTNERSHIP
### OF
## HIGHLAND CAPITAL MANAGEMENT, L.P.

### TABLE OF CONTENTS

| | | |
|---|---|---|
| ARTICLE 1 | GENERAL | 1 |
| 1.1. | Continuation | 1 |
| 1.2. | Name | 1 |
| 1.3. | Purpose | 1 |
| 1.4. | Term. | 1 |
| 1.5. | Partnership Offices; Addresses of Partners. | 1 |
| | | |
| ARTICLE 2 | DEFINITIONS | 2 |
| 2.1. | Definitions | 2 |
| 2.2. | Other Definitions | 6 |
| | | |
| ARTICLE 3 | FINANCIAL MATTERS | 6 |
| 3.1. | Capital Contributions | 6 |
| 3.2. | Allocations of Profits and Losses | 8 |
| 3.3. | Allocations on Transfers | 9 |
| 3.4. | Special Allocations | 9 |
| 3.5. | Curative Allocations | 10 |
| 3.6. | Code Section 704(c) Allocations | 10 |
| 3.7. | Capital Accounts | 11 |
| 3.8. | Distributive Share for Tax Purpose | 12 |
| 3.9. | Distributions | 12 |
| 3.10. | Compensation and Reimbursement of General Partner | 14 |
| 3.11. | Books, Records, Accounting, and Reports | 14 |
| 3.12. | Tax Matters | 14 |
| | | |
| ARTICLE 4 | RIGHTS AND OBLIGATIONS OF PARTNERS | 15 |
| 4.1. | Rights and Obligations of the General Partner | 15 |
| 4.2. | Rights and Obligations of Limited Partners | 19 |
| 4.3. | Transfer of Partnership Interests | 19 |
| 4.4. | Issuances of Partnership Interests to New and Existing Partners | 21 |
| 4.5. | Withdrawal of General Partner | 21 |
| 4.6. | Admission of Substitute Limited Partners and Successor General Partner | 21 |
| | | |
| ARTICLE 5 | DISSOLUTION AND WINDING UP | 22 |
| 5.1. | Dissolution | 22 |
| 5.2. | Continuation of the Partnership | 23 |
| 5.3. | Liquidation | 23 |
| 5.4. | Distribution in Kind | 24 |
| 5.5. | Cancellation of Certificate of Limited Partnership | 24 |
| 5.6. | Return of Capital | 24 |
| 5.7. | Waiver of Partition. | 24 |
| | | |
| ARTICLE 6 | GENERAL PROVISIONS | 24 |
| 6.1. | Amendments to Agreement | 24 |

i

005067

HCMLPHMIT00002642

| | | |
|---|---|---|
| 6.2. | Addresses and Notices | 25 |
| 6.3. | Titles and Captions | 25 |
| 6.4. | Pronouns and Plurals | 25 |
| 6.5. | Further Action | 25 |
| 6.6. | Binding Effect | 25 |
| 6.7. | Integration | 25 |
| 6.8. | Creditors | 25 |
| 6.9. | Waiver | 25 |
| 6.10. | Counterparts | 25 |
| 6.11. | Applicable Law | 25 |
| 6.12. | Invalidity of Provisions | 25 |
| 6.13. | Mandatory Arbitration | 26 |

ii

005068

HCMLPHMIT00002643

**FOURTH AMENDED AND RESTATED**
**AGREEMENT OF LIMITED PARTNERSHIP**
**OF**
**HIGHLAND CAPITAL MANAGEMENT, L.P.**

THIS FOURTH AMENDED AND RESTATED AGREEMENT OF LIMITED PARTNERSHIP is entered into on this 24th day of December, 2015, to be effective as of December 24, 2015, by and among Strand Advisors, Inc., a Delaware corporation (*"Strand"*), as General Partner, the Limited Partners party hereto, and any Person hereinafter admitted as a Limited Partner.

Certain terms used in this Agreement are defined in <u>Article 2</u>.

## ARTICLE 1

### GENERAL

**1.1.    Continuation.** Subject to the provisions of this Agreement, the Partners hereby continue the Partnership as a limited partnership pursuant to the provisions of the Delaware Act. Except as expressly provided herein, the rights and obligations of the Partners and the administration and termination of the Partnership shall be governed by the Delaware Act.

**1.2.    Name.** The name of the Partnership shall be, and the business of the Partnership shall be conducted under the name of Highland Capital Management, L.P. The General Partner, in its sole and unfettered discretion, may change the name of the Partnership at any time and from time to time and shall provide Limited Partners with written notice of such name change within twenty (20) days after such name change.

**1.3.    Purpose.** The purpose and business of the Partnership shall be the conduct of any business or activity that may lawfully be conducted by a limited partnership organized pursuant to the Delaware Act. Any or all of the foregoing activities may be conducted directly by the Partnership or indirectly through another partnership, joint venture, or other arrangement.

**1.4.    Term.** The Partnership was formed as a limited partnership on July 7, 1997, and shall continue until terminated pursuant to this Agreement.

**1.5.    Partnership Offices; Addresses of Partners.**

(a)    <u>Partnership Offices.</u> The registered office of the Partnership in the State of Delaware shall be 1013 Centre Road, Wilmington, Delaware 19805-1297, and its registered agent for service of process on the Partnership at that registered office shall be Corporation Service Company, or such other registered office or registered agent as the General Partner may from time to time designate. The principal office of the Partnership shall be 300 Crescent Court, Suite 700, Dallas, Texas 75201, or such other place as the General Partner may from time to time designate. The Partnership may maintain offices at such other place or places as the General Partner deems advisable.

(b)    <u>Addresses of Partners.</u> The address of the General Partner is 300 Crescent Court, Suite 700, Dallas, Texas 75201. The address of each Limited Partner shall be the address of that Limited Partner appearing on the books and records of the Partnership. Each Limited Partner agrees to provide the General Partner with prompt written notice of any change in his/her/its address.

005069

HCMLPHMIT00002644

## ARTICLE 2

## DEFINITIONS

    **2.1.**    **Definitions.** The following definitions shall apply to the terms used in this Agreement, unless otherwise clearly indicated to the contrary in this Agreement:

    "*Additional Capital Contribution*" has the meaning set forth in <u>Section 3.1(b)</u> of this Agreement.

    "*Adjusted Capital Account Deficit*" means, with respect *to* any Partner, the deficit balance, if any, in the Capital Account of that Partner as of the end of the relevant Fiscal Year, or other relevant period, giving effect to all adjustments previously made thereto pursuant to <u>Section 3.7</u> and further adjusted as follows: (i) credit to that Capital Account, any amounts which that Partner is obligated or deemed obligated to restore pursuant to any provision of this Agreement or pursuant to Treasury Regulations Section 1.704-1(b)(2)(ii)(c); (ii) debit to that Capital Account, the items described in Treasury Regulations Sections 1.704-1(b)(2)(ii)(d)(4), (5) and (6); and (iii) to the extent required under the Treasury Regulations, credit to that Capital Account (A) that Partner's share of "minimum gain" and (B) that Partner's share of "partner nonrecourse debt minimum gain." (Each Partner's share of the minimum gain and partner nonrecourse debt minimum gain shall be determined under Treasury Regulations Sections 1.704-2(g) and 1.704-2(i)(5), respectively.)

    "*Affiliate*" means any Person that directly or indirectly controls, is controlled by, or is under common control with the Person in question. As used in this definition, the term "*control*" means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a Person, whether through ownership of voting Securities, by contract or otherwise.

    "*Agreement*" means this Fourth Amended and Restated Agreement of Limited Partnership, as it may be amended, supplemented, or restated from time to time.

    "*Business Day*" means Monday through Friday of each week, except that a legal holiday recognized as such by the government of the United States or the State of Texas shall not be regarded as a Business Day.

    "*Capital Account*" means the capital account maintained for a Partner pursuant to <u>Section 3.7(a)</u>.

    "*Capital Contribution*" means, with respect to any Partner, the amount of money or property contributed to the Partnership with respect to the interest in the Partnership held by that Person.

    "*Certificate of Limited Partnership*" means the Certificate of Limited Partnership filed with the Secretary of State of Delaware by the General Partner, as that Certificate may be amended, supplemented or restated from time to time.

    "*Class A Limited Partners*" means those Partners holding a Class A Limited Partnership Interest, as shown on <u>Exhibit A</u>.

    "*Class A Limited Partnership Interest*" means a Partnership Interest held by a Partner in its capacity as a Class A Limited Partner."

2

005070



HCMLPHMIT00002645

"*Class B Limited Partner*" means those Partners holding a Class B Limited Partnership Interest, as shown on Exhibit A.

"*Class B Limited Partnership Interest*" means a Partnership Interest held by a Partner in its capacity as a Class B Limited Partner."

"*Class B NAV Ratio Trigger Period*" means any period during which the Class B Limited Partner's aggregate capital contributions, including the original principal balance of the Contribution Note, and reduced by the aggregate amount of distributions to the Class B Limited Partner, exceed 75 percent of the product of the Class B Limited Partner's Percentage Interest multiplied by the total book value of the Partnership; provided, however, that the General Partner shall only be required to test for a Class B NAV Ratio Trigger Period annually, as of the last day of each calendar year; provided further the General Partner must complete the testing within 180 days of the end of each calendar year; provided further that if the test results in a Class B NAV Ratio Trigger Period, the General Partner may, at its own election, retest at any time to determine the end date of the Class B NAV Ratio Trigger Period.

"*Class C Limited Partner*" means those Partners holding a Class C Limited Partnership Interest, as shown on Exhibit A.

"*Class C Limited Partnership Interest*" means a Partnership Interest held by a Partner in its capacity as a Class C Limited Partner."

"*Class C NAV Ratio Trigger Period*" means any period during which an amount equal to $93,000,000.00 reduced by the aggregate amount of distributions to the Class C Limited Partner after the Effective Date exceeds 75 percent of the product of the Class C Limited Partner's Percentage Interest multiplied by the total book value of the Partnership; provided, however, that the General Partner shall only be required to test for a Class C NAV Ratio Trigger Period annually, as of the last day of each calendar year; provided further the General Partner must complete the testing within 180 days of the end of each calendar year; provided further that if the test results in a Class C NAV Ratio Trigger Period, the General Partner may, at its own election, retest at any time to determine the end date of the Class C NAV Ratio Trigger Period.

"*Code*" means the Internal Revenue Code of 1986, as amended and in effect from time to time.

"*Contribution Note*" means that certain Secured Promissory Note dated December 21, 2015 by and among Hunter Mountain Investment Trust, as maker, and the Partnership as Payee.

"*Default Loan*" has the meaning set forth in Section 3.1(c)(i).

"*Defaulting Partner*" has the meaning set forth in Section 3.1(c).

"*Delaware Act*" means the Delaware Revised Uniform Limited Partnership Act, Part IV, Title C, Chapter 17 of the Delaware Corporation Law Annotated, as it may be amended, supplemented or restated from time to time, and any successor to that Act.

"*Effective Date*" means the date first recited above.

"*Fiscal Year*" has the meaning set forth in Section 3.11(b).

3

005071
HCMLPHMIT00002646

"*Founding Partner Group*" means, all partners holding partnership interests in the Partnership immediately before the Effective Date.

"*General Partner*" means any Person who (i) is referred to as such in the first paragraph of this Agreement, or has become a General Partner pursuant to the terms of this Agreement; and (ii) has not ceased to be a General Partner pursuant to the terms of this Agreement.

"*Limited Partner*" means any Person who (i) is referred to as such in the first paragraph of this Agreement, or has become a Limited Partner pursuant to the terms of this Agreement, and (ii) has not ceased to be a Limited Partner pursuant to the terms of this Agreement.

"*Liquidator*" has the meaning set forth in <u>Section 5.3</u>.

"*Losses*" means, for each Fiscal Year, the losses and deductions of the Partnership determined in accordance with accounting principles consistently applied from year to year employed under the Partnership's method of accounting and as reported, separately or in the aggregate, as appropriate, on the Partnership's information tax return filed for federal income tax purposes, plus any expenditures described in Code Section 705(a)(2)(B).

"*Majority Interest*" means the owners of more than fifty percent (50%) of the Percentage Interests of Class A Limited Partners.

"*NAV Ratio Trigger Period*" means a Class B NAV Ratio Trigger Period or a Class C NAV Ratio Trigger Period.

"*Net Increase in Working Capital Accounts*" means the excess of (i) Restricted Cash plus Management and Incentive Fees Receivable plus Other Assets plus Deferred Incentive Fees Receivable less Accounts Payable less Accrued and Other Liabilities as of the end of the period being measured over (ii) Restricted Cash plus Management and Incentive Fees Receivable plus Other Assets plus Deferred Incentive Fees Receivable less Accounts Payable less Accrued and Other Liabilities as of the beginning of the period being measured; <u>provided</u>, <u>however</u>, that amounts within each of the aforementioned categories shall be excluded from the calculation to the extent they are specifically identified as being derived from investing or financing activities. Each of the capitalized terms in this definition shall have the meaning given them in the books and records of the Partnership and appropriate adjustments may be made to the extent the Partnership adds new ledger accounts to its books and records that are current assets or current liabilities.

"*New Issues*" means Securities that are considered to be "new issues," as defined in the Conduct Rules of the National Association of Securities Dealers, Inc.

"*Nonrecourse Deduction*" has the meaning set forth in Treasury Regulations Section 1.704-2(b)(1), as computed under Treasury Regulations Section 1.704-2(c).

"*Nonrecourse* Liability" has the meaning set forth in Treasury Regulations Section 1.704-2(b)(3).

"*Operating Cash Flow*" means Total Revenue less Total Operating Expenses plus Depreciation & Amortization less Net Increase in Working Capital Accounts year over year. Each of the capitalized terms in this definition shall have the meaning given them in the books and records of the Partnership.

4

005072



HCMLPHMIT00002647

"*Partner*" means a General Partner or a Limited Partner.

"*Partner Nonrecourse Debt*" has the meaning set forth in Treasury Regulations Section 1.704-2(b)(4).

"*Partner Nonrecourse Deductions*" has the meaning set forth in Treasury Regulations Section 1.704-2(i)(2).

"*Partner Nonrecourse Debt Minimum Gain*" has the meaning set forth in Treasury Regulations Section 1.704-2(i)(5).

"*Partnership*" means Highland Capital Management, L.P., the Delaware limited partnership established pursuant to this Agreement.

"*Partnership Capital*" means, as of any relevant date, the net book value of the Partnership's assets.

"*Partnership Interest*" means the interest acquired by a Partner in the Partnership including, without limitation, that Partner's right: (a) to an allocable share of the Profits, Losses, deductions, and credits of the Partnership; (b) to a distributive share of the assets of the Partnership; (c) if a Limited Partner, to vote on those matters described in this Agreement; and (d) if the General Partner, to manage and operate the Partnership.

"*Partnership Minimum Gain*" has the meaning set forth in Treasury Regulations Section 1.704-2(d).

"*Percentage Interest*" means the percentage set forth opposite each Partner's name on Exhibit A as such Exhibit may be amended from time to time in accordance with this Agreement.

"*Person*" means an individual or a corporation, partnership, trust, estate, unincorporated organization, association, or other entity.

"*Priority Distributions*" has the meaning set forth in Section 3.9(b).

"*Profits*" means, for each Fiscal Year, the income and gains of the Partnership determined in accordance with accounting principles consistently applied from year to year employed under the Partnership's method of accounting and as reported, separately or in the aggregate, as appropriate, on the Partnership's information tax return filed for federal income tax purposes, plus any income described in Code Section 705(a)(1)(B).

"*Profits Interest Partner*" means any Person who is issued a Partnership Interest that is treated as a "profits interest" for federal income tax purposes.

"*Purchase Notes*" means those certain Secured Promissory Notes of even date herewith by and among Hunter Mountain Investment Trust, as maker, and The Dugaboy Investment Trust, The Mark K. Okada, The Mark and Pamela Okada Family Trust – Exempt Trust #1, and The Mark K. Okada, The Mark and Pamela Okada Family Trust – Exempt Trust #2, each as Payees of the respective Secured Promissory Notes.

5

HCMLPHMIT00002648

"*Record Date*" means the date established by the General Partner for determining the identity of Limited Partners entitled to vote or give consent to Partnership action or entitled to exercise rights in respect of any other lawful action of Limited Partners.

"*Second Amended Buy-Sell and Redemption Agreement*" means that certain Second Amended and Restated Buy-Sell and Redemption Agreement, dated December 21, 2015, to be effective as of December 21, 2015 by and between the Partnership and its Partners, as may be amended, supplemented, or restated from time to time.

"*Securities*" means the following: (i) securities of any kind (including, without limitation, "securities" as that term is defined in Section 2(a)(1) of the Securities Act); (ii) commodities of any kind (as that term is defined by the U.S. Securities Laws and the rules and regulations promulgated thereunder); (iii) any contracts for future or forward delivery of any security, commodity or currency; (iv) any contracts based on any securities or group of securities, commodities or currencies; (v) any options on any contracts referred to in clauses (iii) or (iv); or (vi) any evidences of indebtedness (including participations in or assignments of bank loans or trade credit claims). The items set forth in clauses (i) through (vi) herein include, but are not limited to, capital stock, common stock, preferred stock, convertible securities, reorganization certificates, subscriptions, warrants, rights, options, puts, calls, bonds, mutual fund interests, debentures, notes, certificates of deposit, letters of credit, bankers acceptances, trust receipts and other securities of any corporation or other entity, whether readily marketable or not, rights and options, whether granted or written by the Partnership or by others, treasury bills, bonds and notes, any securities or obligations issued or guaranteed by the United States or any foreign country or any state or possession of the United States or any foreign country or any political subdivision or agency or instrumentality of any of the foregoing, and derivatives of any of the foregoing.

"*Securities Act*" means the Securities Act of 1933, as amended, and any successor to such statute.

"*Substitute Limited Partner*" has the meaning set forth in Section 4.6(a).

"*Transfer*" or derivations thereof, of a Partnership Interest means, as a noun, the transfer, sale, assignment, exchange, pledge, hypothecation or other disposition of a Partnership Interest, or any part thereof, directly or indirectly, and as a verb, voluntarily or involuntarily to transfer, sell, assign, exchange, pledge, hypothecate or otherwise dispose of.

"*Treasury Regulations*" means the Department of Treasury Regulations promulgated under the Code, as amended and in effect (including corresponding provisions of succeeding regulations).

2.2.    **Other Definitions**. All terms used in this Agreement that are not defined in this Article 2 have the meanings contained elsewhere in this Agreement.

### ARTICLE 3

### FINANCIAL MATTERS

3.1.    **Capital Contributions**.

(a)    Initial Capital Contributions. The initial Capital Contribution of each Partner shall be set forth in the books and records of the Partnership.

(b)    Additional Capital Contributions.

6

005074

HCMLPHMIT00002649

(i)     The General Partner, in its reasonable discretion and for a *bona fide* business purpose, may request in writing that the Founding Partner Group make additional Capital Contributions in proportion to their Percentage Interests (each, an "***Additional Capital Contribution***").

(ii)     Any failure by a Partner to make an Additional Capital Contribution requested under Section 3.1(b)(i) on or before the date on which that Additional Capital Contribution was due shall result in the Partner being in default.

(c)     Consequences to Defaulting Partners. In the event a Partner is in default under Section 3.1(b) (a "***Defaulting Partner***"), the Defaulting Partner, in its sole and unfettered discretion, may elect to take either one of the option set forth below.

(i)     Default Loans. If the Defaulting Partner so elects, the General Partner shall make a loan to the Defaulting Partner in an amount equal to that Defaulting Partner's additional capital contribution (a "***Default Loan***"). A Default Loan shall be deemed advanced on the date actually advanced. Default Loans shall earn interest on the outstanding principal amount thereof at a rate equal to the Applicable Federal Mid-Term Rate (determined by the Internal Revenue Service for the month in which the loan is deemed made) from the date actually advanced until the same is repaid in full. The term of any Default Loan shall be six (6) months, unless otherwise extended by the General Partner in its sole and unfettered discretion. If the General Partner makes a Default Loan, the Defaulting Partner shall not receive any distributions pursuant to Section 3.9(a) or Section 5.3 or any proceeds from the Transfer of all or any part of its Partnership Interest while the Default Loan remains unpaid. Instead, the Defaulting Partner's share of distributions or such other proceeds shall (until all Default Loans and interest thereon shall have been repaid in full) first be paid to the General Partner. Such payments shall be applied first to the payment of interest on such Default Loans and then to the repayment of the principal amounts thereof, but shall be considered, for all other purposes of this Agreement, to have been distributed to the Defaulting Partner. The Defaulting Partner shall be liable for the reasonable fees and expenses incurred by the General Partner (including, without limitation, reasonable attorneys' fees and disbursements) in connection with any enforcement or foreclosure upon any Default Loan and such costs shall, to the extent enforceable under applicable law, be added to the principal amount of the applicable Default Loan. In addition, at any time during the term of such Default Loan, the Defaulting Partner shall have the right to repay, in full, the Default Loan (including interest and any other charges). If the General Partner makes a Default Loan, the Defaulting Partner shall be deemed to have pledged to the General Partner and granted to the General Partner a continuing first priority security interest in, all of the Defaulting Partner's Partnership Interest to secure the payment of the principal of, and interest on, such Default Loan in accordance with the provisions hereof, and for such purpose this Agreement shall constitute a security agreement. The Defaulting Partner shall promptly execute, acknowledge and deliver such financing statements, continuation statements or other documents and take such other actions as the General Partner shall request in writing in order to perfect or continue the perfection of such security interest; and, if the Defaulting Partner shall fail to do so within seven (7) days after the Defaulting Partner's receipt of a notice making demand therefor, the General Partner is hereby appointed the attorney-in-fact of, and is hereby authorized on behalf of, the Defaulting Partner, to execute, acknowledge and deliver all such documents and take all such other actions as may be required to perfect such security interest. Such appointment and authorization are coupled with an interest and shall be irrevocable. The General Partner shall, prior to exercising any right or remedy (whether at law, in equity or pursuant to the terms hereof) available to it in connection with such security interest, provide to the Defaulting Partner a notice, in reasonable detail, of the right or remedy to be exercised and the intended timing of such exercise which shall not be less than five (5) days following the date of such notice.

7

005075
HCMLPHMIT00002650

     (ii)   <u>Reduction of Percentage Interest</u>. If the Defaulting Partner does not elect to obtain a Default Loan pursuant to <u>Section 3.1(c)(i)</u>, the General Partner shall reduce the Defaulting Partner's Percentage Interest in accordance with the following formula:

The Defaulting Partner's new Percentage Interest shall equal the product of (1) the Defaulting Partner's current Percentage Interest, multiplied by (2) the quotient of (a) the current Capital Account of the Defaulting Partner (with such Capital Account determined after taking into account a revaluation of the Capital Accounts immediately prior to such determination), divided by (b) the sum of (i) the current Capital Account of the Defaulting Partner (with such Capital Account determined after taking into account a revaluation of the Capital Accounts immediately prior to such determination), plus (ii) the amount of the additional capital contribution that such Defaulting Partner failed to make when due.

To the extent any downward adjustment is made to the Percentage Interest of a Partner pursuant to this <u>Section 3.1(c)(ii)</u>, any resulting benefit shall accrue to the Partners (other than the Defaulting Partner) in proportion to their respective Percentage Interests.

    **3.2.**    **Allocations of Profits and Losses**.

     (a)   <u>Allocations of Profits</u>. Except as provided in <u>Sections 3.4</u>, <u>3.5</u>, and <u>3.6</u>, Profits for any Fiscal Year will be allocated to the Partners as follows:

     (i)   <u>First</u>, to the Partners until cumulative Profits allocated under this <u>Section 3.2(a)(i)</u> for all prior periods equal the cumulative Losses allocated to the Partners under <u>Section 3.2(b)(iii)</u> for all prior periods in the inverse order in which such Losses were allocated; and

     (ii)   <u>Next</u>, to the Partners until cumulative Profits allocated under this <u>Section 3.2(a)(ii)</u> for all prior periods equal the cumulative Losses allocated to the Partners under <u>Section 3.2(b)(ii)</u> for all prior periods in the inverse order in which such Losses were allocated; and

     (iii)   <u>Then</u>, to all Partners in proportion to their respective Percentage Interests.

     (b)   <u>Allocations of Losses</u>. Except as provided in <u>Sections 3.4</u>, <u>3.5</u>, and <u>3.6</u>, Losses for any Fiscal Year will be will be allocated as follows:

     (i)   <u>First</u>, to the Partners until cumulative Losses allocated under this <u>Section 3.2(b)(i)</u> for all prior periods equal the cumulative Profits allocated to the Partners under <u>Section 3.2(a)(iii)</u> for all prior periods in the inverse order in which such Profits were allocated; and

     (ii)   <u>Next</u>, to the Partners in proportion to their respective positive Capital Account balances until the aggregate Capital Account balances of the Partners (excluding any negative Capital Account balances) equal zero; *provided, however,* losses shall first be allocated to reduce amounts that were last allocated to the Capital Accounts of the Partners; and

     (iii)   <u>Then</u>, to all Partners in proportion to their respective Percentage Interests.

8

005076

HCMLPHMIT00002651

(c)    Limitation on Loss Allocations.    If any allocation of Losses would cause a Limited Partner to have an Adjusted Capital Account Deficit, those Losses instead shall be allocated to the General Partner.

3.3.    **Allocations on Transfers**.    Taxable items of the Partnership attributable to a Partnership Interest that has been Transferred (including the simultaneous decrease in the Partnership Interest of existing Partners resulting from the admission of a new Partner) shall be allocated in accordance with Section 4.3(d).

3.4.    **Special Allocations**.    If the requisite stated conditions or facts are present, the following special allocations shall be made in the following order:

(a)    Partnership Minimum Gain Chargeback.    Notwithstanding any other provision of this Article 3, if there is a net decrease in Partnership Minimum Gain during any taxable year or other period for which allocations are made, prior to any other allocation under this Agreement, each Partner shall be specially allocated items of Partnership income and gain for that period (and, if necessary, subsequent periods) in proportion to, and to the extent of, an amount equal to that Partner's share of the net decrease in Partnership Minimum Gain during that year determined in accordance with Treasury Regulations Section 1.704-2(g)(2).    The items to be allocated shall be determined in accordance with Treasury Regulations Section 1.704-2(g).    This Section 3.4(a) is intended to comply with the partnership minimum gain chargeback requirements of the Treasury Regulations and shall be subject to all exceptions provided therein.

(b)    Partner Nonrecourse Debt Minimum Gain Chargeback.    Notwithstanding any other provision of this Article 3 (other than Section 3.4(a)), if there is a net decrease in Partner Nonrecourse Debt Minimum Gain with respect to a Partner Nonrecourse Debt during any taxable year or other period for which allocations are made, any Partner with a share of such Partner Nonrecourse Debt Minimum Gain as of the beginning of the year shall be specially allocated items of Partnership income and gain for that period (and, if necessary, subsequent periods in an amount equal to that Partner's share of the net decrease in the Partner Nonrecourse Debt Minimum Gain during that year determined in accordance with Treasury Regulations Section 1.704-2(g)(2).    The items to be so allocated shall be determined in accordance with Treasury Regulations Section 1.704-2(g).    This Section 3.4(b) is intended to comply with the partner nonrecourse debt minimum gain chargeback requirements of the Treasury Regulations, shall be interpreted consistently with the Treasury Regulations and shall be subject to all exceptions provided therein.

(c)    Qualified Income Offset.    If a Partner unexpectedly receives any adjustments, allocations or distributions described in Treasury Regulations Sections 1.704-1(b)(2)(ii)(d)(4), (d)(5) or (d)(6), then items of Partnership income and gain shall be specially allocated to each such Partner in an amount and manner sufficient to eliminate, to the extent required by the Treasury Regulations, the Adjusted Capital Account Deficit of the Partner as quickly as possible; *provided, however,* an allocation pursuant to this Section 3.4(c) shall be made if and only to the extent that the Partner would have an Adjusted Capital Account Deficit after all other allocations provided for in this Article 3 have been tentatively made without considering this Section 3.4(c).

(d)    Gross Income Allocation.    If a Partner has a deficit Capital Account at the end of any Fiscal Year of the Partnership that exceeds the sum of (i) the amount the Partner is obligated to restore, and (ii) the amount the Partner is deemed to be obligated to restore pursuant to the penultimate sentences of Treasury Regulations Sections 1.704-2(g)(1) and 1.704-2(i)(5), then each such Partner shall be specially allocated items of income and gain of the Partnership in the amount of the excess as quickly as possible; *provided, however,* an allocation pursuant to this Section 3.4(d) shall be made if and only to

9

005077

HCMLPHMIT00002652

the extent that the Partner would have a deficit Capital Account in excess of that sum after all other allocations provided for in this Article 3 have been tentatively made without considering Section 3.4(c) or 3.4(d).

(e)  Nonrecourse Deductions. Nonrecourse Deductions for any taxable year or other period for which allocations are made shall he allocated among the Partners in accordance with their Percentage interests.

(f)  Partner Nonrecourse Deductions. Notwithstanding anything to the contrary in this Agreement, any Partner Nonrecourse Deductions for any taxable year or other period for which allocations are made will be allocated to the Partner who bears the economic risk of loss with respect to the Partner Nonrecourse Debt to which the Partner Nonrecourse Deductions are attributable in accordance with Treasury Regulations Section 1.704-2(i).

(g)  Section 754 Adjustments. To the extent an adjustment to the adjusted tax basis of any asset of the Partnership under Code Section 734(b) or Code Section 743(b) is required, pursuant to Treasury Regulations Section 1.704-1(b)(2)(iv)(m), to be taken into account in determining Capital Accounts, the amount of the adjustment to the Capital Accounts shall be treated as an item of gain (if the adjustment increases the basis of the asset) or loss (if the adjustment decreases the basis of the asset) and that gain or loss shall be specially allocated to the Partners in a manner consistent with the manner in which their Capital Accounts are required to be adjusted pursuant to that Section of the Treasury Regulations.

(h)  Section 481 Adjustments. Any allocable items of income, gain, expense, deduction or credit required to be made by Section 481 of the Code as the result of the sale, transfer, exchange or issuance of a Partnership Interest will be specially allocated to the Partner receiving said Partnership Interest whether such items are positive or negative in amount.

3.5.   Curative Allocations. The "*Basic Regulatory Allocations*" consist of (i) the allocations pursuant to Section 3.2(c), and (ii) the allocations pursuant to Sections 3.4. Notwithstanding any other provision of this Agreement, the Basic Regulatory Allocations shall be taken into account in allocating items of income, gain, loss and deduction among the Partners so that, to the extent possible, the net amount of the allocations of other items and the Basic Regulatory Allocations to each Partner shall be equal to the net amount that would have been allocated to each such Partner if the Basic Regulatory Allocations had not occurred. For purposes of applying the foregoing sentence, allocations pursuant to this Section 3.5 shall be made with respect to allocations pursuant to Section 3.4 (g) and (h) only to the extent that it is reasonably determined that those allocations will otherwise be inconsistent with the economic agreement among the Partners. To the extent that a special allocation under Section 3.4 is determined not to comply with applicable Treasury Regulations, then the Partners intend that the items shall be allocated in accordance with the Partners' varying Percentage Interests throughout each tax year during which such items are recognized for tax purposes.

3.6.   Code Section 704(c) Allocations. In accordance with Code Section 704(c) and the Treasury Regulations thereunder, income, gain, loss and deduction with respect to property contributed to the capital of the Partnership shall, solely for tax purposes, be allocated among the Partners so as to take account of any variation at the time of the contribution between the tax basis of the property to the Partnership and the fair market value of that property. Except as otherwise provided herein, any elections or other decisions relating to those allocations shall be made by the General Partner in any manner that reasonably reflects the purpose and intent of this Agreement. Allocations of income, gain, loss and deduction pursuant to this Section 3.6 are solely for purposes of federal, state and local taxes and shall not affect, or in any way be taken into account in computing, the Capital Account of any Partner or the share

10

005078
HCMLPHMIT00002653

of Profits, Losses, other tax items or distributions of any Partner pursuant to any provision of this Agreement.

**3.7.** **Capital Accounts**.

(a)   Maintenance of Capital Accounts.  The Partnership shall establish and maintain a separate capital account *("Capital Account")* for each Partner in accordance with the rules of Treasury Regulations Section 1.704-1(b)(2)(iv), subject to and in accordance with the provisions set forth in this Section 3.7.

(i)   The Capital Account balance of each Partner shall be credited (increased) by (A) the amount of cash contributed by that Partner to the capital of the Partnership, (B) the fair market value of property contributed by that Partner to the capital of the Partnership (net of liabilities secured by that contributed property that the Partnership assumes or takes subject to under Code Section 752), and (C) that Partner's allocable share of Profits and any items in the nature of income or gain which are specially allocated pursuant to Sections 3.4 and 3.5; and

(ii)   The Capital Account balance of each Partner shall be debited (decreased) by (A) the amount of cash distributed to that Partner by the Partnership, (B) the fair market value of property distributed to that Partner by the Partnership (net of liabilities secured by that distributed property that such Partner assumes or takes subject to under Code Section 752), (C) that Partner's allocable share of expenditures of the Partnership described in Code Section 705(a)(2)(B), and (D) that Partner's allocable share of Losses and any items in the nature of expenses or losses which are specially allocated pursuant to Sections 3.2, 3.4 and 3.5.

The provisions of this Section 3.7 and the other provisions of this Agreement relating to the maintenance of Capital Accounts have been included in this Agreement to comply with Code Section 704(b) and the Treasury Regulations promulgated thereunder and will be interpreted and applied in a manner consistent with those provisions.  The General Partner may modify the manner in which the Capital Accounts are maintained under this Section 3.7 in order to comply with those provisions, as well as upon the occurrence of events that might otherwise cause this Agreement not to comply with those provisions.

(b)   Negative Capital Accounts.  If any Partner has a deficit balance in its Capital Account, that Partner shall have no obligation to restore that negative balance or to make any Capital Contribution by reason thereof, and that negative balance shall not be considered an asset of the Partnership or of any Partner.

(c)   Interest.  No interest shall be paid by the Partnership on Capital Contributions or on balances in Capital Accounts.

(d)   No Withdrawal.  No Partner shall be entitled to withdraw any part of his/her/its Capital Contribution or his/her/its Capital Account or to receive any distribution from the Partnership, except as provided in Section 3.9 and Article 5.

(e)   Loans From Partners.   Loans by a Partner to the Partnership shall not be considered Capital Contributions.

(f)   Revaluations.  The Capital Accounts of the Partners shall not be "booked-up" or "booked-down" to their fair market values under Treasury Regulations Section 1.704(c)-1(b)(2)(iv)(f) or otherwise.

11

005079

HCMLPHMIT00002654

**3.8. Distributive Share for Tax Purpose.** All items of income, deduction, gain, loss or credit that are recognized for federal income tax purposes will be allocated among the Partners in accordance with the allocations of Profits and Losses hereunder as determined by the General Partner in its sole and unfettered discretion. Notwithstanding the foregoing, the General Partner may (i) as to each New Issue, specially allocate to the Partners who were allocated New Issue Profit from that New Issue any short-term capital gains realized during the Fiscal Year upon the disposition of such New Issue during that Fiscal Year, and (ii) specially allocate items of gain (or loss) to Partners who withdraw capital during any Fiscal Year in a manner designed to ensure that each withdrawing Partner is allocated gain (or loss) in an amount equal to the difference between that Partner's Capital Account balance (or portion thereof being withdrawn) at the time of the withdrawal and the tax basis for his/her/ its Partnership Interest at that time (or proportionate amount thereof); *provided, however,* that the General Partner may, without the consent of any other Partner, (a) alter the allocation of any item of taxable income, gain, loss, deduction or credit in any specific instance where the General Partner, in its sole and unfettered discretion, determines such alteration to be necessary or appropriate to avoid a materially inequitable result *(e.g.,* where the allocation would create an inappropriate tax liability); and/or (b) adopt whatever other method of allocating tax items as the General Partner determines is necessary or appropriate in order to be consistent with the spirit and intent of the Treasury Regulations under Code Sections 704(b) and 704(c).

**3.9. Distributions.**

(a) <u>General</u>. The General Partner may make such pro rata or non-pro rata distributions as it may determine in its sole and unfettered discretion, without being limited to current or accumulated income or gains, but no such distribution shall be made out of funds required to make current payments on Partnership indebtedness; provided, however, that the General Partner may not make non-pro rata distributions under this Section 3.9(a) during an NAV Ratio Trigger Period without the consent of the Class B Limited Partner (in the case of a Class B NAV Ratio Trigger Period) and/or the Class C Limited Partner (in the case of a Class C NAV Ratio Trigger Period); provided, further this provision should not be interpreted to limit in any way the General Partner's ability to make non-pro rata tax distributions under Section 3.9(c) and Section 3.9(f). The Partnership has entered into one or more credit facilities with financial institutions that may limit the amount and timing of distributions to the Partners. Thus, the Partners acknowledge that distributions from the Partnership may be limited. Any distributions made to the Class B Limited Partner or the Class C Limited Partner pursuant to Section 3.9(b) shall reduce distributions otherwise allocable to such Partners under this Section 3.9(a) until such aggregate reductions are equal to the aggregate distributions made to the Class B Partners and the Class C Partners under Section 3.9(b).

(b) <u>Priority Distributions</u>. Prior to the distribution of any amounts to Partners pursuant to Section 3.9(a), and notwithstanding any other provision in this Agreement to the contrary, the Partnership shall make the following distributions ("*Priority Distributions*") pro-rata among the Class B Limited Partner and the Class C Limited Partner in accordance with their relative Percentage Interests:

(i) No later than March 31st of each calendar year, commencing March 31, 2017, an amount equal to $1,600,000.00;

(ii) No later than March 31st of each year, commencing March 31, 2017, an amount equal to three percent (3%) of the Partnership's investment gain for the prior year, as reflected in the Partnership's books and records within ledger account number 90100 plus three percent (3%) of the gross realized investment gains for the prior year of Highland Select Equity Fund, as reflected in its books and records;

12

005080

HCMLPHMIT00002655

(iii)    No later than March 31st of each year, commencing March 31, 2017, an amount equal to ten percent (10%) of the Partnership's Operating Cash Flow for the prior year; and

(iv)    No later than December 24th of each year, commencing December 24, 2016, an amount equal to the aggregate annual principal and interest payments on the Purchase Notes for the then current year.

(c)    Tax Distributions.  The General Partner may, in its sole discretion, declare and make cash distributions pursuant hereto to the Partners to allow the federal and state income tax attributable to the Partnership's taxable income that is passed through the Partnership to the Partners to be paid by such Partners (a "**Tax Distribution**").  The General Partner may, in its discretion, make Tax Distributions to the Founding Partner Group without also making Tax Distributions to other Partners; provided, however, that if the General Partner makes Tax Distributions to the Founding Partner Group, Tax Distributions must also be made the Class B Limited Partner to the extent the Class B Limited Partner provides the Partnership with documentation showing it is subject to an entity-level federal income tax obligation.  Notwithstanding anything else in this Agreement, the General Partner may declare and pay Tax Distributions even if such Tax Distributions cause the Partnership to be unable to make Priority Distributions under Section 3.9(b).

(d)    Payments Not Deemed Distributions.    Any amounts paid pursuant to Sections 4.1(e) or 4.1(h) shall not be deemed to be distributions for purposes of this Agreement.

(e)    Withheld Amounts.  Notwithstanding any other provision of this Section 3.9 to the contrary, each Partner hereby authorizes the Partnership to withhold and to pay over, or otherwise pay, any withholding or other taxes payable by the Partnership with respect to that Partner as a result of that Partner's participation in the Partnership.  If and to the extent that the Partnership shall be required to withhold or pay any such taxes, that Partner shall be deemed for all purposes of this Agreement to have received a payment from the Partnership as of the time that withholding or tax is paid, which payment shall be deemed to be a distribution with respect to that Partner's Partnership Interest to the extent that the Partner (or any successor to that Partner's Partnership Interest) is then entitled to receive a distribution.  To the extent that the aggregate of such payments to a Partner for any period exceeds the distributions to which that Partner is entitled for that period, the amount of such excess shall be considered a loan from the Partnership to that Partner.  Such loan shall bear interest (which interest shall be treated as an item of income to the Partnership) at the "Applicable Federal Rate" (as defined in the Code), as determined hereunder from time to time, until discharged by that Partner by repayment, which may be made in the sole and unfettered discretion of the General Partner out of distributions to which that Partner would otherwise be subsequently entitled.  Any withholdings authorized by this Section 3.9(d) shall be made at the maximum applicable statutory rate under the applicable tax law unless the General Partner shall have received an opinion of counsel or other evidence satisfactory to the General Partner to the effect that a lower rate is applicable, or that no withholding is applicable.

(f)    Special Tax Distributions.  The Partnership shall, upon request of such Founding Partner, make distributions to the Founding Partners (or loans, at the election of the General Partner) in an amount necessary for each of them to pay their respective federal income tax obligations incurred through the effective date of the Third Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P., the predecessor to this Agreement.

(g)    Tolling of Priority Distributions.  In the event of a "Honis Trigger Event," as defined in the Second Amended Buy-Sell and Redemption Agreement, the Partnership shall not make any distributions, including priority distributions under Section 3.9(b), to the Class B Limited Partner or the Class C Limited Partner until such time as a replacement trust administrator, manager and general partner,

13

005081

HCMLPHMIT00002656

as applicable, acceptable to the Partnership in its sole discretion, as indicated by an affirmative vote of consent by a Majority Interest, shall be appointed to the Class B Limited Partner/Class C Limited Partner and any of its direct or indirect owners that have governing documents directly affected by a Honis Trigger Event.

### 3.10. Compensation and Reimbursement of General Partner.

(a)    Compensation.  The General Partner and any Affiliate of the General Partner shall receive no compensation from the Partnership for services rendered pursuant to this Agreement or any other agreements unless approved by a Majority Interest; provided, however, that no compensation above five million dollars per year may be approved, even by a Majority Interest, during a NAV Ratio Trigger Period.

(b)    Reimbursement for Expenses.  In addition to amounts paid under other Sections of this Agreement, the General Partner and its Affiliates shall be reimbursed for all expenses, disbursements, and advances incurred or made, and all fees, deposits, and other sums paid in connection with the organization and operation of the Partnership, the qualification of the Partnership to do business, and all related matters.

### 3.11. Books, Records, Accounting, and Reports.

(a)    Records and Accounting.  The General Partner shall keep or cause to be kept appropriate books and records with respect to the Partnership's business, which shall at all times be kept at the principal office of the Partnership or such other office as the General Partner may designate for such purpose.  The books of the Partnership shall be maintained for financial reporting purposes on the accrual basis or on a cash basis, as the General Partner shall determine in its sole and unfettered discretion, in accordance with generally accepted accounting principles and applicable law.  Upon reasonable request, the Class B Limited Partner or the Class C Limited Partner may inspect the books and records of the Partnership.

(b)    Fiscal Year.  The fiscal year of the Partnership shall be the calendar year unless otherwise determined by the General Partner in its sole and unfettered discretion.

(c)    Other Information.  The General Partner may release information concerning the operations of the Partnership to any financial institution or other Person that has loaned or may loan funds to the Partnership or the General Partner or any of its Affiliates, and may release such information to any other Person for reasons reasonably related to the business and operations of the Partnership or as required by law or regulation of any regulatory body.

(d)    Distribution Reporting to Class B Limited Partner and Class C Limited Partner.  Upon request, the Partnership shall provide the Class B Limited Partner and/or the Class C Limited Partner information on any non-pro rata distributions made under Section 3.9 to Partners other than the Partner requesting the information.

### 3.12. Tax Matters.

(a)    Tax Returns.  The General Partner shall arrange for the preparation and timely filing of all returns of Partnership income, gain, loss, deduction, credit and other items necessary for federal, state and local income tax purposes.  The General Partner shall deliver to each Partner as copy of his/her/its IRS Form K-1 as soon as practicable after the end of the Fiscal Year, but in no event later than October 1.  The classification, realization, and recognition of income, gain, loss, deduction, credit and

14

005082

HCMLPHMIT00002657

other items shall be on the cash or accrual method of accounting for federal income tax purposes, as the General Partner shall determine in its sole and unfettered discretion. The General Partner in its sole and unfettered discretion may pay state and local income taxes attributable to operations of the Partnership and treat such taxes as an expense of the Partnership.

(b)    Tax Elections. Except as otherwise provided herein, the General Partner shall, in its sole and unfettered discretion, determine whether to make any available tax election.

(c)    Tax Controversies. Subject to the provisions hereof, the General Partner is designated the Tax Matters Partner (as defined in Code Section 6231), and is authorized and required to represent the Partnership, at the Partnership's expense, in connection with all examinations of the Partnership's affairs by tax authorities, including resulting administrative and judicial proceedings, and to expend Partnership funds for professional services and costs associated therewith. Each Partner agrees to cooperate with the General Partner in connection with such proceedings.

(d)    Taxation as a Partnership. No election shall be made by the Partnership or any Partner for the Partnership to be excluded from the application of any of the provisions of Subchapter K, Chapter 1 of Subtitle A of the Code or from any similar provisions of any state tax laws.

### ARTICLE 4

### RIGHTS AND OBLIGATIONS OF PARTNERS

4.1.    **Rights and Obligations of the General Partner.** In addition to the rights and obligations set forth elsewhere in this Agreement, the General Partner shall have the following rights and obligations:

(a)    Management. The General Partner shall conduct, direct, and exercise full control of over all activities of the Partnership. Except as otherwise expressly provided in this Agreement, all management powers over the business and affairs of the Partnership shall be exclusively vested in the General Partner, and Limited Partners shall have no right of control over the business and affairs of the Partnership. In addition to the powers now or hereafter granted to a general partner of a limited partnership under applicable law or that are granted to the General Partner under any provision of this Agreement, the General Partner shall have full power and authority to do all things deemed necessary or desirable by it to conduct the business of the Partnership, including, without limitation: (i) the determination of the activities in which the Partnership will participate; (ii) the performance of any and all acts necessary or appropriate to the operation of any business of the Partnership (including, without limitation, purchasing and selling any asset, any debt instruments, any equity interests, any commercial paper, any note receivables and any other obligations); (iii) the procuring and maintaining of such insurance as may be available in such amounts and covering such risks as are deemed appropriate by the General Partner; (iv) the acquisition, disposition, sale, mortgage, pledge, encumbrance, hypothecation, of exchange of any or all of the assets of the Partnership; (v) the execution and delivery on behalf of, and in the name of the Partnership, deeds, deeds of trust, notes, leases, subleases, mortgages, bills of sale and any and all other contracts or instruments necessary or incidental to the conduct of the Partnership's business; (vi) the making of any expenditures, the borrowing of money, the guaranteeing of indebtedness and other liabilities, the issuance of evidences of indebtedness, and the incurrence of any obligations it deems necessary or advisable for the conduct of the activities of the Partnership, including, without limitation, the payment of compensation and reimbursement to the General Partner and its Affiliates pursuant to Section 3.10; (vii) the use of the assets of the Partnership (including, without limitation, cash on hand) for any Partnership purpose on any terms it sees fit, including, without limitation, the financing of operations of the Partnership, the lending of funds to other Persons, and the repayment of obligations

15

005083
HCMLPHMIT00002658

of the Partnership; (viii) the negotiation, execution, and performance of any contracts that it considers desirable, useful, or necessary to the conduct of the business or operations of the Partnership or the implementation of the General Partner's powers under this Agreement; (ix) the distribution of Partnership cash or other assets; (x) the selection, hiring and dismissal of employees, attorneys, accountants, consultants, contractors, agents and representatives and the determination of their compensation and other teens of employment or hiring; (xi) the formation of any further limited or general partnerships, joint ventures, or other relationships that it deems desirable and the contribution to such partnerships, ventures, or relationships of assets and properties of the Partnership; and (xii) the control of any matters affecting the rights and obligations of the Partnership, including, without limitation, the conduct of any litigation, the incurring of legal expenses, and the settlement of claims and suits.

(b)     Certificate of Limited Partnership. The General Partner caused the Certificate of Limited Partnership of the Partnership to be filed with the Secretary of State of Delaware as required by the Delaware Act and shall cause to be filed such other certificates or documents (including, without limitation, copies, amendments, or restatements of this Agreement) as may be determined by the General Partner to be reasonable and necessary or appropriate for the formation, qualification, or registration and operation of a limited partnership (or a partnership in which Limited Partners have limited liability) in the State of Delaware and in any other state where the Partnership may elect to do business.

(c)     Reliance by Third Parties. Notwithstanding any other provision of this Agreement to the contrary, no lender or purchaser or other Person, including any purchaser of property from the Partnership or any other Person dealing with the Partnership, shall be required to verify any representation by the General Partner as to its authority to encumber, sell, or otherwise use any assess or properties of the Partnership, and any such lender, purchaser, or other Person shall be entitled to rely exclusively on such representations and shall be entitled to deal with the General Partner as if it were the sole party in interest therein, both legally and beneficially. Each Limited Partner hereby waives any and all defenses or other remedies that may be available against any such lender, purchaser, or other Person to contest, negate, or disaffirm any action of the General Partner in connection with any such sale or financing. In no event shall any Person dealing with the General Partner or the General Partner's representative with respect to any business or property of the Partnership be obligated to ascertain that the terms of this Agreement have been complied with, and each such Person shall be entitled to rely on the assumptions that the Partnership has been duly formed and is validly in existence. In no event shall any such Person be obligated to inquire into the necessity or expedience of any act or action of the General Partner or the General Partner's representative, and every contract, agreement, deed, mortgage, security agreement, promissory note, or other instrument or document executed by the General Partner or the General Partner's representative with respect to any business or property of the Partnership shall be conclusive evidence in favor of any and every Person relying thereon or claiming thereunder that (i), at the time of the execution and delivery thereof, this Agreement was in full force and effect; (ii) such instrument or document was duly executed in accordance with the terms and provisions of this Agreement and is binding upon the Partnership; and (iii) the General Partner or the General Partner's representative was duly authorized and empowered to execute and deliver any and every such instrument or document for and on behalf of the Partnership.

(d)     Partnership Funds. The funds of the Partnership shall be deposited in such account or accounts as are designated by the General Partner. The General Partner may, in its sole and unfettered discretion, deposit funds of the Partnership in a central disbursing account maintained by or in the name of the General Partner, the Partnership, or any other Person into which funds of the General Partner, the Partnership, on other Persons are also deposited; *provided, however,* at all times books of account are maintained that show the amount of funds of the Partnership on deposit in such account and interest accrued with respect to such funds as credited to the Partnership. The General Partner may use the funds of the Partnership as compensating balances for its benefit; *provided, however,* such funds do

16

005084
HCMLPHMIT00002659

not directly or indirectly secure, and are not otherwise at risk on account of, any indebtedness or other obligation of the General Partner or any director, officer, employee, agent, representative, or Affiliate thereof. Nothing in this Section 4.1(d) shall be deemed to prohibit or limit in any manner the right of the Partnership to lend funds to the General Partner or any Affiliate thereof pursuant to Section 4.1(e)(i). All withdrawals from or charges against such accounts shall be made by the General Partner or by its representatives. Funds of the Partnership may be invested as determined by the General Partner in accordance with the terms and provisions of this Agreement.

(e)     Loans to or from General Partner; Contracts with Affiliates; Joint Ventures.

(i)     The General Partner or any Affiliate of the General Partner may lend to the Partnership funds needed by the Partnership for such periods of time as the General Partner may determine; *provided, however,* the General Partner or its Affiliate may not charge the Partnership interest at a rate greater than the rate (including points or other financing charges or fees) that would be charged the Partnership (without reference to the General Partner's financial abilities or guaranties) by unrelated lenders on comparable loans. The Partnership shall reimburse the General Partner or its Affiliate, as the case may be, for any costs incurred by the General Partner or that Affiliate in connection with the borrowing of funds obtained by the General Partner or that Affiliate and loaned to the Partnership. The Partnership may loan funds to the General Partner and any member of the Founding Partner Group at the General Partner's sole and exclusive discretion.

(ii)     The General Partner or any of its Affiliates may enter into an agreement with the Partnership to render services, including management services, for the Partnership. Any service rendered for the Partnership by the General Partner or any Affiliate thereof shall be on terms that are fair and reasonable to the Partnership.

(iii)     The Partnership may Transfer any assets to joint ventures or other partnerships in which it is or thereby becomes a participant upon terms and subject to such conditions consistent with applicable law as the General Partner deems appropriate; provided, however, that the Partnership may not transfer any asset to the General Partner or one of its Affiliates during any NAV Ratio Trigger Period for consideration less than such asset's fair market value.

(f)     Outside Activities' Conflicts of Interest. The General Partner or any Affiliate thereof and any director, officer, employee, agent, or representative of the General Partner or any Affiliate thereof shall be entitled to and may have business interests and engage in business activities in addition to those relating to the Partnership, including, without limitation, business interests and activities in direct competition with the Partnership. Neither the Partnership nor any of the Partners shall have any rights by virtue of this Agreement or the partnership relationship created hereby in any business ventures of the General Partner, any Affiliate thereof, or any director, officer, employee, agent, or representative of either the General Partner or any Affiliate thereof.

(g)     Resolution of Conflicts of Interest. Unless otherwise expressly provided in this Agreement or any other agreement contemplated herein, whenever a conflict of interest exists or arises between the General Partner or any of its Affiliates, on the one hand, and the Partnership or any Limited Partner, on the other hand, any action taken by the General Partner, in the absence of bad faith by the General Partner, shall not constitute a breach of this Agreement or any other agreement contemplated herein or a breach of any standard of care or duty imposed herein or therein or under the Delaware Act or any other applicable law, rule, or regulation.

(h)     Indemnification. The Partnership shall indemnify and hold harmless the General Partner and any director, officer, employee, agent, or representative of the General Partner (collectively,

17

005085

HCMLPHMIT00002660

the "*GP Party*"), against all liabilities, losses, and damages incurred by any of them by reason of any act performed or omitted to be performed in the name of or on behalf of the Partnership, or in connection with the Partnership's business, including, without limitation, attorneys' fees and any amounts expended in the settlement of any claims or liabilities, losses, or damages, to the fullest extent permitted by the Delaware Act; *provided, however,* the Partnership shall have no obligation to indemnify and hold harmless a GP Party for any action or inaction that constitutes gross negligence or willful or wanton misconduct. The Partnership, in the sole and unfettered discretion of the General Partner, may indemnify and hold harmless any Limited Partner, employee, agent, or representative of the Partnership, any Person who is or was serving at the request of the Partnership acting through the General Partner as a director, officer, partner, trustee, employee, agent, or representative of another corporation, partnership, joint venture, trust, or other enterprise, and any other Person to the extent determined by the General Partner in its sole and unfettered discretion, but in no event shall such indemnification exceed the indemnification permitted by the Delaware Act. Notwithstanding anything to the contrary in this <u>Section 4.1(h)</u> or elsewhere in this Agreement, no amendment to the Delaware Act after the date of this Agreement shall reduce or limit in any manner the indemnification provided for or permitted by this <u>Section 4.1(h)</u> unless such reduction or limitation is mandated by such amendment for limited partnerships formed prior to the enactment of such amendment. In no event shall Limited Partners be subject to personal liability by reason of the indemnification provisions of this Agreement.

      (i)    <u>Liability of General Partner.</u>

      (i)    Neither the General Partner nor its directors, officers, employees, agents, or representatives shall be liable to the Partnership or any Limited Partner for errors in judgment or for any acts or omissions that do not constitute gross negligence or willful or wanton misconduct.

      (ii)    The General Partner may exercise any of the powers granted to it by this Agreement and perform any of the duties imposed upon it hereunder either directly or by or through its directors, officers, employees, agents, or representatives, and the General Partner shall not be responsible for any misconduct or negligence on the part of any agent or representative appointed by the General Partner.

      (j)    <u>Reliance by General Partner.</u>

      (i)    The General Partner may rely and shall be protected in acting or refraining from acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, bond, debenture, or other paper or document believed by it to be genuine and to have been signed or presented by the proper party or parties.

      (ii)    The General Partner may consult with legal counsel, accountants, appraisers, management consultants, investment bankers, and other consultants and advisers selected by it, and any opinion of any such Person as to matters which the General Partner believes to be within such Person's professional or expert competence shall be full and complete authorization and protection in respect of any action taken or suffered or omitted by the General Partner hereunder in good faith and in accordance with such opinion.

      (k)    The General Partner may, from time to time, designate one or more Persons to be officers of the Partnership. No officer need be a Partner. Any officers so designated shall have such authority and perform such duties as the General Partner may, from time to time, delegate to them. The General Partner may assign titles to particular officers, including, without limitation, president, vice president, secretary, assistant secretary, treasurer and assistant treasurer. Each officer shall hold office until such Person's successor shall be duly designated and shall qualify or until such Person's death or

005086


HCMLPHMIT00002661

until such Person shall resign or shall have been removed in the manner hereinafter provided. Any number of offices may be held by the same Person. The salaries or other compensation, if any, of the officers and agents of the Partnership shall be fixed from time to time by the General Partner. Any officer may be removed as such, either with or without cause, by the General Partner whenever in the General Partner's judgment the best interests of the Partnership will be served thereby. Any vacancy occurring in any office of the Partnership may be filled by the General Partner.

    **4.2.**    **Rights and Obligations of Limited Partners.** In addition to the rights and obligations of Limited Partners set forth elsewhere in this Agreement, Limited Partners shall have the following rights and obligations:

        (a)    <u>Limitation of Liability</u>. Limited Partners shall have no liability under this Agreement except as provided herein or under the Delaware Act.

        (b)    <u>Management of Business</u>. No Limited Partner shall take part in the control (within the meaning of the Delaware Act) of the Partnership's business, transact any business in the Partnership's name, or have the power to sign documents for or otherwise bind the Partnership other than as specifically set forth in this Agreement.

        (c)    <u>Return of Capital</u>. No Limited Partner shall be entitled to the withdrawal or return of its Capital Contribution except to the extent, if any, that distributions made pursuant to this Agreement or upon termination of the Partnership may be considered as such by law and then only to the extent provided for in this Agreement.

        (d)    <u>Second Amended Buy-Sell and Redemption Agreement</u>. Each Limited Partner shall comply with the terms and conditions of the Second Amended Buy-Sell and Redemption Agreement.

        (e)    <u>Default on Priority Distributions</u>. If the Partnership fails to timely pay Priority Distributions pursuant to Section 3.9(b), and the Partnership does not subsequently make such Priority Distribution within ninety days of its due date, the Class B Limited Partner or the Class C Limited Partner may require the Partnership to liquidate publicly traded securities held by the Partnership or Highland Select Equity Master Fund, L.P., a Delaware limited partnership controlled by the Partnership; <u>provided, however</u>, that the General Partner may in its sole discretion elect instead to liquidate other non-publicly traded securities owned by the Partnership in order to satisfy the Partnership's obligations under <u>Section 3.9(b)</u> and this <u>Section 4.2(e)</u>. In either case, Affiliates of the General Partner shall have the right of first offer to purchase any securities liquidated under this <u>Section 4.2(e)</u>.

    **4.3.**    **Transfer of Partnership Interests.**

        (a)    <u>Transfer</u>. No Partnership Interest shall be Transferred, in whole or in part, except in accordance with the terms and conditions set forth in this <u>Section 4.3</u> and the Second Amended Buy-Sell and Redemption Agreement. Any Transfer or purported Transfer of any Partnership Interest not made in accordance with this <u>Section 4.3</u> and the Second Amended Buy-Sell and Redemption Agreement shall be null and void. An alleged transferee shall have no right to require any information or account of the Partnership's transactions or to inspect the Partnership's books. The Partnership shall be entitled to treat the alleged transferor of a Partnership Interest as the absolute owner thereof in all respects, and shall incur no liability to any alleged transferee for distributions to the Partner owning that Partnership Interest of record or for allocations of Profits, Losses, deductions or credits or for transmittal of reports and notices required to be given to holders of Partnership Interests.

19


005087
HCMLPHMIT00002662

(b)    Transfers by General Partner.  The General Partner may Transfer all, but not less than all, of its Partnership Interest to any Person only with the approval of a Majority Interest; provided, however, that the General Partner may not Transfer its Partnership Interest during any NAV Ratio Trigger Period except to the extent such Transfers are for estate planning purposes or resulting from the death of the individual owner of the General Partner.  Any Transfer by the General Partner of its Partnership Interest under this Section 4.3(b) to an Affiliate of the General Partner or any other Person shall not constitute a withdrawal of the General Partner under Section 4.5(a), Section 5.1(b), or any other provision of this Agreement.  If any such Transfer is deemed to constitute a withdrawal under such provisions or otherwise and results in the dissolution of the Partnership under this Agreement or the laws of any jurisdiction to which the Partnership of this Agreement is subject, the Partners hereby unanimously consent to the reconstitution and continuation of the Partnership immediately following such dissolution, pursuant to Section 5.2.

(c)    Transfers by Limited Partners.  The Partnership Interest of a Limited Partner may not be Transferred without the consent of the General Partner (which consent may be withheld in the sole and unfettered discretion of the General Partner), and in accordance with the Second Amended Buy-Sell and Redemption Agreement.

(d)    Distributions and Allocations in Respect of Transferred Partnership Interests.  If any Partnership Interest is Transferred during any Fiscal Year in compliance with the provisions of Article 4 and the Second Amended Buy-Sell and Redemption Agreement, Profits, Losses, and all other items attributable to the transferred interest for that period shall be divided and allocated between the transferor and the transferee by taking into account their varying interests during the period in accordance with Code Section 706(d), using any conventions permitted by law and selected by the General Partner; provided that no allocations shall be made under this Section 4.3(d) that would affect any special allocations made under Section 3.4.  All distributions declared on or before the date of that Transfer shall be made to the transferor.  Solely for purposes of making such allocations and distributions, the Partnership shall recognize that Transfer not later than the end of the calendar month during which it is given notice of that Transfer; *provided, however,* if the Partnership does not receive a notice stating the date that Partnership Interest was Transferred and such other information as the General Partner may reasonably require within thirty (30) days after the end of the Fiscal Year during which the Transfer occurs, then all of such items shall be allocated, and all distributions shall be made, to the person who, according to the books and records of the Partnership, on the last day of the Fiscal Year during which the Transfer occurs, was the owner of the Partnership Interest.  Neither the Partnership nor any Partner shall incur any liability for making allocations and distributions in accordance with the provisions of this Section 4.3(d), whether or not any Partner or the Partnership has knowledge of any Transfer of ownership of any Partnership Interest.

(e)    Forfeiture of Partnership Interests Pursuant to the Contribution Note.  In the event any Class B Limited Partnership Interests are forfeited in favor of the Partnership as a result of any default on the Contribution Note, the Capital Accounts and Percentage Interests associated with such Class B Limited Partnership Interests shall be allocated pro rata among the Class A Partners.  The Priority Distributions in Section 3.9(b) made after the date of such forfeiture shall each be reduced by an amount equal to the ratio of the Percentage Interest associated with the Class B Limited Partnership Interest transferred pursuant to this Section 4.3(e) over the aggregate Percentage Interests of all Class B Limited Partnership Interests and Class C Limited Partnership Interests, calculated immediately prior to any forfeiture of such Class B Limited Partnership Interest.

(f)    Transfers of Partnership Interests Pursuant to the Purchase Notes.  Notwithstanding any other provision in this Agreement, the Partnership shall respect, and the General Partner hereby provides automatic consent for, any transfers (in whole or transfers of partial interests) of

20

005088
HCMLPHMIT00002663

the Class C Limited Partnership Interests, or a portion thereof, if such transfer occurs as a result of a default on the Purchase Notes. Upon the transfer of any Class C Limited Partnership Interest to any member of the Founding Partner Group (or their assigns), such Class C Limited Partnership Interest shall automatically convert to a Class A Partnership Interest. The Priority Distributions in <u>Section 3.9(b)</u> shall each be reduced by an amount equal to the ratio of the Percentage Interest associated with the transferred Class C Limited Partnership Interest over the aggregate Percentage Interests of all Class B Limited Partnership Interests and Class C Limited Partnership Interests, calculated immediately prior to any transfer of such Class C Limited Partnership Interest.

### 4.4. Issuances of Partnership Interests to New and Existing Partners.

(a)    <u>Issuance of Partnership Interests to New Limited Partners</u>. The General Partner may admit one or more additional Persons as Limited Partners ("Additional Limited Partners") to the Partnership at such times and upon such terms as it deems appropriate in its sole and unfettered discretion; provided, however, that the General Partner may only admit additional Persons as Limited Partners in relation to the issuance of equity incentives to key employees of the Partnership; provided, further that the General Partner may not issue such equity incentives to the extent they entitle the holders, in the aggregate, to a Percentage Interest in excess of twenty percent without the consent of the Class B Limited Partner and the Class C Limited Partner. All Class A Limited Partners, the Class B Limited Partner and the Class C Limited Partner shall be diluted proportionately by the issuance of such limited partnership interests. No Person may be admitted to the Partnership as a Limited Partner until he/she/it executes an Addendum to this Agreement in the form attached as Exhibit B (which may be modified by the General Partner in its sole and unfettered discretion) and an addendum to the Second Amended Buy-Sell and Redemption Agreement.

(b)    <u>Issuance of an Additional Partnership Interest to an Existing Partner</u>. The General Partner may issue an additional Partnership Interest to any existing Partner at such times and upon such terms as it deems appropriate in its sole and unfettered discretion. Upon the issuance of an additional Partnership Interest to an existing Partner, the Percentage Interests of the members of the Founding Partner Group shall be diluted proportionately. Any additional Partnership Interest shall be subject to all the terms and conditions of this Agreement and the Second Amended Buy-Sell and Redemption Agreement.

### 4.5. Withdrawal of General Partner

(a)    <u>Option</u>. In the event of the withdrawal of the General Partner from the Partnership, the departing General Partner (the "***Departing Partner***") shall, at the option of its successor (if any) exercisable prior to the effective date of the departure of that Departing Partner, promptly receive from its successor in exchange for its Partnership Interest as the General Partner, an amount in cash equal to its Capital Account balance, determined as of the effective date of its departure.

(b)    <u>Conversion</u>. If the successor to a Departing Partner does not exercise the option described in <u>Section 4.5(a)</u>, the Partnership Interest of the Departing Partner as the General Partner of the Partnership shall be converted into a Partnership Interest as a Limited Partner.

### 4.6. Admission of Substitute Limited Partners and Successor General Partner.

(a)    <u>Admission of Substitute Limited Partners</u>. A transferee (which may be the heir or legatee of a Limited Partner) or assignee of a Limited Partner's Partnership Interest shall be entitled to receive only the distributive share of the Partnership's Profits, Losses, deductions, and credits attributable to that Partnership Interest. To become a substitute Limited Partner (a "***Substitute Limited Partner***"),

005089
HCMLPHMIT00002664

that transferee or assignee shall (1) obtain the consent of the General Partner (which consent may be withheld in the sole and unfettered discretion of the General Partner), (ii) comply with all the requirements of this Agreement and the Second Amended Buy-Sell and Redemption Agreement with respect to the Transfer of the Partnership Interest at issue, and (iii) execute an Addendum to this Agreement in the form attached as Exhibit B (which may be modified by the General Partner in its sole and unfettered discretion) and an addendum to the Second Amended Buy-Sell and Redemption Agreement. Upon admission of a Substitute Limited Partner, that Limited Partner shall be subject to all of the restrictions applicable to, shall assume all of the obligations of, and shall attain the status of a Limited Partner under and pursuant to this Agreement with respect to the Partnership Interest held by that Limited Partner.

(b)    Admission of Successor General Partner.  A successor General Partner selected pursuant to Section 5.2 or the transferee of or successor to all of the Partnership Interest of the General Partner pursuant to Section 4.3(b) shall be admitted to the Partnership as the General Partner, effective as of the date of the withdrawal or removal of the predecessor General Partner or the date of Transfer of that predecessor's Partnership Interest.

(c)    Action by General Partner.  In connection with the admission of any substitute Limited Partner or successor General Partner or any additional Limited Partner, the General Partner shall have the authority to take all such actions as it deems necessary or advisable in connection therewith, including the amendment of Exhibit A and the execution and filing with appropriate authorities of any necessary documentation.

## ARTICLE 5

### DISSOLUTION AND WINDING UP

**5.1.    Dissolution.** The Partnership shall be dissolved upon:

(a)    The withdrawal, bankruptcy, or dissolution of the General Partner, or any other event that results in its ceasing to be the General Partner (other than by reason of a Transfer pursuant to Section 4.3(b));

(b)    An election to dissolve the Partnership by the General Partner that is approved by the affirmative vote of a Majority Interest; *provided, however,* the General Partner may dissolve the Partnership without the approval of the Limited Partners in order to comply with Section 14 of the Second Amended Buy-Sell and Redemption Agreement; or

(c)    Any other event that, under the Delaware Act, would cause its dissolution.

For purposes of this Section 5.1, the bankruptcy of the General Partner shall be deemed to have occurred when the General Partner: (i) makes a general assignment for the benefit of creditors; (ii) files a voluntary bankruptcy petition; (iii) becomes the subject of an order for relief or is declared insolvent in any federal or state bankruptcy or insolvency proceeding:  (iv) files a petition or answer seeking a reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any law; (v) files an answer or other pleading admitting or failing to contest the material allegations of a petition filed against the General Partner in a proceeding of the type described in clauses (i) through (iv) of this paragraph; (vi) seeks, consents to, or acquiesces in the appointment of a trustee, receiver, or liquidator of the General Partner or of all or any substantial part of the General Partner's properties; or (vii) one hundred twenty (120) days expire after the date of the commencement of a proceeding against the General Partner seeking reorganization, arrangement, composition, readjustment, liquidation, dissolution, or

22

005090

HCMLPHMIT00002665

similar relief under any law if the proceeding has not been previously dismissed, or ninety (90) days expire after the date of the appointment, without the General Partner's consent or acquiescence, of a trustee, receiver, or liquidator of the General Partner or of all or any substantial part of the General Partner's properties if the appointment has not previously been vacated or stayed, or ninety (90) days expire after the date of expiration of a stay, if the appointment has not previously been vacated.

**5.2.    Continuation of the Partnership.**  Upon the occurrence of an event described in <u>Section 5.1(a)</u>, the Partnership shall be deemed to be dissolved and reconstituted if a Majority Interest elect to continue the Partnership within ninety (90) days of that event. If no election to continue the Partnership is made within ninety (90) days of that event, the Partnership shall conduct only activities necessary to wind up its affairs. If an election to continue the Partnership is made upon the occurrence of an event described in <u>Section 5.1(a)</u>, then:

(a)     Within that ninety (90)-day period a successor General Partner shall be selected by a Majority Interest;

(b)     The Partnership shall be deemed to be reconstituted and shall continue until the end of the term for which it is formed unless earlier dissolved in accordance with this <u>Article 5</u>;

(c)     The interest of the former General Partner shall be converted to an interest as a Limited Partner; and

(d)     All necessary steps shall be taken to amend or restate this Agreement and the Certificate of Limited Partnership, and the successor General Partner may for this purpose amend this Agreement and the Certificate of Limited Partnership, as appropriate, without the consent of any Partner.

**5.3.    Liquidation.**  Upon dissolution of the Partnership, unless the Partnership is continued under <u>Section 5.2</u>, the General Partner or, in the event the General Partner has been dissolved, becomes bankrupt (as defined in <u>Section 5.1</u>), or withdraws from the Partnership, a liquidator or liquidating committee selected by a Majority Interest, shall be the Liquidator. The Liquidator (if other than the General Partner) shall be entitled to receive such compensation for its services as may be approved by a Majority Interest. The Liquidator shall agree not to resign at any time without fifteen (15) days' prior written notice and (if other than the General Partner) may be removed at any time, with or without cause, by notice of removal approved by a Majority Interest. Upon dissolution, removal, or resignation of the Liquidator, a successor and substitute Liquidator (who shall have and succeed to all rights, powers, and duties of the original Liquidator) shall within thirty (30) days thereafter be selected by a Majority Interest. The right to appoint a successor or substitute Liquidator in the manner provided herein shall be recurring and continuing for so long as the functions and services of the Liquidator are authorized to continue under the provisions hereof, and every reference herein to the Liquidator shall be deemed to refer also to any such successor or substitute Liquidator appointed in the manner provided herein. Except as expressly provided in this <u>Article 5</u>, the Liquidator appointed in the manner provided herein shall have and may exercise, without further authorization or consent of any of the parties hereto, all of the powers conferred upon the General Partner under the terms of this Agreement (but subject to all of the applicable limitations, contractual and otherwise, upon the exercise of such powers) to the extent necessary or desirable in the good faith judgment of the Liquidator to carry out the duties and functions of the Liquidator hereunder for and during such period of time as shall be reasonably required in the good faith judgment of the Liquidator to complete the winding up and liquidation of the Partnership as provided herein. The Liquidator shall liquidate the assets of the Partnership and apply and distribute the proceeds of such liquidation in the following order of priority, unless otherwise required by mandatory provisions of applicable law:

005091

HCMLPHMIT00002666

(a)    To the payment of the expenses of the terminating transactions including, without limitation, brokerage commission, legal fees, accounting fees and closing costs;

(b)    To the payment of creditors of the Partnership, including Partners, in order of priority provided by law;

(c)    To the Partners and assignees to the extent of, and in proportion to, the positive balances in their respective Capital Accounts as provided in Treasury Regulations Section 1.704-1(b)(2)(ii)(b)(2); *provided, however,* the Liquidator may place in escrow a reserve of cash or other assets of the Partnership for contingent liabilities in an amount determined by the Liquidator to be appropriate for such purposes; and

(d)    To the Partners in proportion to their respective Percentage Interests.

5.4.    **Distribution in Kind.**  Notwithstanding the provisions of <u>Section 5.3</u> that require the liquidation of the assets of the Partnership, but subject to the order of priorities set forth therein, if on dissolution of the Partnership the Liquidator determines that an immediate sale of part or all of the Partnership's assets would be impractical or would cause undue loss to the Partners and assignees, the Liquidator may defer for a reasonable time the liquidation of any assets except those necessary to satisfy liabilities of the Partnership (other than those to Partners) and/or may distribute to the Partners and assignees, in lieu of cash, as tenants in common and in accordance with the provisions of <u>Section 5.3</u>, undivided interests in such Partnership assets as the Liquidator deems not suitable for liquidation. Any such distributions in kind shall be subject to such conditions relating to the disposition and management of such properties as the Liquidator deems reasonable and equitable and to any joint operating agreements or other agreements governing the operation of such properties at such time. The Liquidator shall determine the fair market value of any property distributed in kind using such reasonable method of valuation as it may adopt.

5.5.    **Cancellation of Certificate of Limited Partnership.**  Upon the completion of the distribution of Partnership property as provided in <u>Sections 5.3</u> and <u>5.4</u>, the Partnership shall be terminated, and the Liquidator (or the General Partner and Limited Partners if necessary) shall cause the cancellation of the Certificate of Limited Partnership in the State of Delaware and of all qualifications and registrations of the Partnership as a foreign limited partnership in jurisdictions other **than** the State of Delaware and shall take such other actions as may be necessary to terminate the Partnership.

5.6.    **Return of Capital.**  The General Partner shall not be personally liable for the return of the Capital Contributions of Limited Partners, or any portion thereof, it being expressly understood that any such return shall be **made** solely from Partnership assets.

5.7.    **Waiver of Partition.**  Each Partner hereby waives any rights to partition of the Partnership property.

## ARTICLE 6

## GENERAL PROVISIONS

6.1.    **Amendments to Agreement.**  The General Partner may amend this Agreement without the consent of any Partner if the General Partner reasonably determines that such amendment is necessary and appropriate; *provided, however, any* action taken by the General Partner shall be subject to its fiduciary duties to the Limited Partners under the Delaware Act; provided further that any amendments

24

HCMLPHMIT00002667

that adversely affect the Class B Limited Partner or the Class C Limited Partner may only be made with the consent of such Partner adversely affected.

6.2.  **Addresses and Notices.**  Any notice, demand, request, or report required or permitted to be given or made to a Partner under this Agreement shall be in writing and shall be deemed given or made when delivered in person or when sent by United States registered or certified mail to the Partner at his/her/its address as shown on the records of the Partnership, regardless of any claim of any Person who may have an interest in any Partnership Interest by reason of an assignment or otherwise.

6.3.  **Titles and Captions.**  All article and section titles and captions in the Agreement are for convenience only, shall not be deemed part of this Agreement, and in no way shall define, limit, extend, or describe the scope or intent of any provisions hereof.  Except as specifically provided otherwise, references to "Articles," "Sections" and "Exhibits" are to "Articles," "Sections" and "Exhibits" of this Agreement.  All Exhibits hereto are incorporated herein by reference.

6.4.  **Pronouns and Plurals.**  Whenever the context may require, any pronoun used in this Agreement shall include the corresponding masculine, feminine, or neuter forms, and the singular form of nouns, pronouns, and verbs shall include the plural and vice versa.

6.5.  **Further Action.**  The parties shall execute all documents, provide all information, and take or refrain from taking all actions as may be necessary or appropriate to achieve the purposes of this Agreement.

6.6.  **Binding Effect.**  This Agreement shall be binding upon and inure to the benefit of the parties hereto and their heirs, executors, administrators, successors, legal representatives, and permitted assigns.

6.7.  **Integration.**  This Agreement constitutes the entire agreement among the parties hereto pertaining to the subject matter hereof and supersedes all prior agreements and understandings pertaining thereto.

6.8.  **Creditors.**  None of the provisions of this Agreement shall be for the benefit of or enforceable by any creditors of the Partnership.

6.9.  **Waiver.**  No failure by any party to insist upon the strict performance of any covenant, duty, agreement, or condition of this Agreement or to exercise any right or remedy consequent upon a breach thereof shall constitute waiver of any such breach or any other covenant, duty, agreement, or condition.

6.10.  **Counterparts.**  This agreement may be executed in counterparts, all of which together shall constitute one agreement binding on all the parties hereto, notwithstanding that all such parties are not signatories to the original or the same counterpart.

6.11.  **Applicable Law.**  This Agreement shall be construed in accordance with and governed by the laws of the State of Delaware, without regard to the principles of conflicts of law.

6.12.  **Invalidity of Provisions.**  If any provision of this Agreement is declared or found to be illegal, unenforceable, or void, in whole or in part, then the parties shall be relieved of all obligations arising under that provision, but only to the extent that it is illegal, unenforceable, or void, it being the intent and agreement of the parties that this Agreement shall be deemed amended by modifying that provision to the extent necessary to make it legal and enforceable while preserving its intent or, if that is

25

005093

HCMLPHMIT00002668

not possible, by substituting therefor another provision that is legal and enforceable and achieves the same objectives.

6.13.    **General Partner Discretion.**    Whenever the General Partner may use its sole discretion, the General Partner may consider any items it deems relevant, including its own interest and that of its affiliates.

6.14.    **Mandatory Arbitration.**    In the event there is an unresolved legal dispute between the parties and/or any of their respective officers, directors, partners, employees, agents, affiliates or other representatives that involves legal rights or remedies arising from this Agreement, the parties agree to submit their dispute to binding arbitration under the authority of the Federal Arbitration Act; <u>provided, however,</u> that the Partnership or such applicable affiliate thereof may pursue a temporary restraining order and /or preliminary injunctive relief in connection with any confidentiality covenants or agreements binding on the other party, with related expedited discovery for the parties, in a court of law, and thereafter, require arbitration of all issues of final relief.    The arbitration will be conducted by the American Arbitration Association, or another mutually agreeable arbitration service.    A panel of three arbitrators will preside over the arbitration and will together deliberate, decide and issue the final award. The arbitrators shall be duly licensed to practice law in the state of Texas.    The discovery process shall be limited to the following:  Each side shall be permitted no more than (i) two party depositions of six hours each, each deposition to be taken pursuant to the Texas Rules of Civil Procedure; (ii) one non-party deposition of six hours; (iii) twenty-five interrogatories; (iv) twenty-five requests for admissions; (v) ten request for production (in response, the producing party shall not be obligated to produce in excess of 5,000 total pages of documents, including electronic documents); and (vi) one request for disclosure pursuant to the Texas Rules of Civil Procedure.    Any discovery not specifically provided for in this paragraph, whether to parties or non-parties, shall not be permitted.    The arbitrators shall be required to state in a written opinion all facts and conclusions of law relied upon to support any decision rendered. The arbitrators will not have the authority to render a decision that contains an outcome based on error of state or federal law or to fashion a cause of action or remedy not otherwise provided for under applicable state or federal law.    Any dispute over whether the arbitrators have failed to comply with the foregoing will be resolved by summary judgment in a court of law.    In all other respects, the arbitration process will be conducted in accordance with the American Arbitration Association's dispute resolution rules or other mutually agreeable arbitration services rules.    All proceedings shall be conducted in Dallas, Texas or another mutually agreeable site.    Each party shall bear its own attorneys fees, costs and expenses, including any costs of experts, witnesses and /or travel, subject to a final arbitration award on who should bear costs and fees.    The duty to arbitrate described above shall survive the termination of this Agreement.    Except as otherwise provided above, the parties hereby waive trial in a court of law or by jury.  All other rights, remedies, statutes of limitation and defenses applicable to claims asserted in a court of law will apply in the arbitration.

005094

HCMLPHMIT00002669

*Remainder of Page intentionally Left Blank.*
*Signature Page Follows.*

27

HCMLPHMIT00002670

IN WITNESS WHEREOF, the parties hereto have entered into this Agreement as of the date and year first written above.

GENERAL PARTNER:

**STRAND ADVISORS, INC.,**
a Delaware corporation

By: _____
    James D. Dondero,
    President

LIMITED PARTNERS:

**THE DUGABOY INVESTMENT TRUST**

By: _____
Name: Nancy M. Dondero
Its:    Trustee

**THE MARK AND PAMELA OKADA FAMILY
TRUST – EXEMPT TRUST #1**

By: _____
Name: Lawrence Tonomura
Its:    Trustee

**THE MARK AND PAMELA OKADA FAMILY
TRUST – EXEMPT TRUST #2**

By: _____
Name: Lawrence Tonomura
Its:    Trustee

**MARK K. OKADA**

_____
Mark K. Okada

*Signature Page to Fourth Amended and Restated
Agreement of Limited Partnership*

005096
HCMLPHMIT00002671

IN WITNESS WHEREOF, the parties hereto have entered into this Agreement as of the date and year first written above.

GENERAL PARTNER:

**STRAND ADVISORS, INC.,**
a Delaware corporation

By:    _____

        James D. Dondero,
        President

LIMITED PARTNERS:

**THE DUGABOY INVESTMENT TRUST**

By:    _____
Name: Nancy M. Dondero
Its:    Trustee

**THE MARK AND PAMELA OKADA FAMILY
TRUST – EXEMPT TRUST #1**

By:    _____
Name: Lawrence Tonomura
Its:    Trustee

**THE MARK AND PAMELA OKADA FAMILY
TRUST – EXEMPT TRUST #2**

By:    _____
Name: Lawrence Tonomura
Its:    Trustee

**MARK K. OKADA**

_____
Mark K. Okada

*Signature Page to Fourth Amended and Restated
Agreement of Limited Partnership*

**005097**

HCMLPHMIT00002672

**HUNTER MOUNTAIN INVESTMENT TRUST**
By: Beacon Mountain LLC, Administrator

By: _____
Name: John Honis
Its:      President

*Signature Page to Fourth Amended and Restated*
*Agreement of Limited Partnership*

HCMLPHMIT00002673

## EXHIBIT A

| | Percentage Interest | |
|---|---|---|
| **CLASS A PARTNERS** | **By Class** | **Effective %** |
| GENERAL PARTNER: | | |
| Strand Advisors | 0.5573% | 0.2508% |
| LIMITED PARTNERS: | | |
| The Dugaboy Investment Trust | 74.4426% | 0.1866% |
| Mark K. Okada | 19.4268% | 0.0487% |
| The Mark and Pamela Okada Family Trust - Exempt Trust #1 | 3.9013% | 0.0098% |
| The Mark and Pamela Okada Family Trust - Exempt Trust #2 | 1.6720% | 0.0042% |
| Total Class A Percentage Interest | 100.0000% | 0.500% |
| **CLASS B LIMITED PARTNERS** | | |
| Hunter Mountain Investment Trust | 100.0000% | 55.0000% |
| **CLASS C LIMITED PARTNERS** | | |
| Hunter Mountain Investment Trust | 100.0000% | 44.500% |
| **PROFIT AND LOSS AMONG CLASSES** | | |
| Class A Partners | 0.5000% | |
| Class B Partners | 55.0000% | |
| Class C Partners | 44.5000% | |

005099

HCMLPHMIT00002674

## EXHIBIT B

## ADDENDUM
## TO THE
## FOURTH AMENDED AND RESTATED AGREEMENT OF LIMITED PARTNERSHIP
## OF
## HIGHLAND CAPITAL MANAGEMENT, L.P.

THIS ADDENDUM (this "**Addendum**") to that certain Fourth Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P., dated December 24, 2015, to be effective as of December 24, 2015, as amended from time to time (the "Agreement"), is made and entered into as of the ___ day of _____, 20__, by and between Strand Advisors, Inc., as the sole General Partner (the "**General Partner**") of Highland Capital Management, L.P. (the "**Partnership**") and _____ ("_____") (except as otherwise provided herein, all capitalized terms used herein shall have the meanings set forth in the Agreement).

### RECITALS:

WHEREAS, the General Partner, in its sole and unfettered discretion, and without the consent of any Limited Partner, has the authority under (i) Section 4.4 of the Agreement to admit Additional Limited Partners, (ii) Section 4.6 of the Agreement to admit Substitute Limited Partners and (iii) Section 6.1 of the Agreement to amend the Agreement;

WHEREAS, the General Partner desires to admit _____ as a Class __ Limited Partner holding a __% Percentage Interest in the Partnership as of the date hereof;

WHEREAS, _____ desires to become a Class __ Limited Partner and be bound by the terms and conditions of the Agreement; and

WHEREAS, the General Partner desires to amend the Agreement to add _____ as a party thereto.

### AGREEMENT:

RESOLVED, as a condition to receiving a Partnership Interest in the Partnership, _____ acknowledges and agrees that he/she/it (i) has received and read a copy of the Agreement, (ii) shall be bound by the terms and conditions of the Agreement; and (iii) shall promptly execute an addendum to the Second Amended Buy-Sell and Redemption Agreement; and be it

FURTHER RESOLVED, the General Partner hereby amends the Agreement to add _____ as a Limited Partner, and the General Partner shall attach this Addendum to the Agreement and make it a part thereof; and be it

FURTHER RESOLVED, this Addendum may be executed in any number of counterparts, all of which together shall constitute one Addendum binding on all the parties hereto, notwithstanding that all such parties are not signatories to the original or the same counterpart.

HCMLPHMIT00002675

IN WITNESS WHEREOF, the undersigned have executed this Addendum as of the day and year above written.

GENERAL PARTNER:

**STRAND ADVISORS, INC.**

By: _____
Name: _____
Title: _____


NEW LIMITED PARTNER:

[_____]


AGREED AND ACCEPTED:

In consideration of the terms of this Addendum and the Agreement, in consideration of the Partnership's allowing the above signed Person to become a Limited Partner of the Partnership, and for other good and valuable consideration receipt of which is hereby acknowledged, the undersigned shall be bound by the terms and conditions of the Agreement as though a party thereto.

SPOUSE OF NEW LIMITED PARTNER:

[_____]

HCMLPHMIT00002676

**EXHIBIT 2**

005102

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) | Case No. 19-34054-sgj11 |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

## FIFTH AMENDED PLAN OF REORGANIZATION OF HIGHLAND CAPITAL MANAGEMENT, L.P. (AS MODIFIED)

**PACHULSKI STANG ZIEHL & JONES LLP**
Jeffrey N. Pomerantz (CA Bar No.143717)
Ira D. Kharasch (CA Bar No. 109084)
Gregory V. Demo (NY Bar No. 5371992)
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile:  (310) 201-0760
Email: jpomerantz@pszjlaw.com
        ikharasch@pszjlaw.com
        gdemo@pszjlaw.com

**HAYWARD & ASSOCIATES PLLC**
Melissa S. Hayward (TX Bar No. 24044908)
Zachery Z. Annable (TX Bar No. 24053075)
10501 N. Central Expy, Ste. 106
Dallas, TX 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110
Email: MHayward@HaywardFirm.com
        ZAnnable@HaywardFirm.com:

Counsel for the Debtor and Debtor-in-Possession

---

[1]  The Debtor's last four digits of its taxpayer identification number are (6725).  The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

**Plan – Article I.B.44**

42.  "*Convenience Claim Pool*" means the $13,150,000 in Cash that shall be available upon the Effective Date for distribution to Holders of Convenience Claims under the Plan as set forth herein.  Any Cash remaining in the Convenience Claim Pool after all distributions on account of Convenience Claims have been made will be transferred to the Claimant Trust and administered as a Claimant Trust Asset.

43.  "*Convenience Class Election*" means the option provided to each Holder of a General Unsecured Claim that is a liquidated Claim as of the Confirmation Date on their Ballot to elect to reduce their claim to $1,000,000 and receive the treatment provided to Convenience Claims.

44.  "*Contingent Claimant Trust Interests*" means the contingent Claimant Trust Interests to be distributed to Holders of Class A Limited Partnership Interests, Holders of Class B Limited Partnership Interests, and Holders of Class C Limited Partnership Interests in accordance with this Plan, the rights of which shall not vest, and consequently convert to Claimant Trust Interests, unless and until the Claimant Trustee Files a certification that all holders of Allowed General Unsecured Claims have been paid indefeasibly in full, plus, to the extent all Allowed unsecured Claims, excluding Subordinated Claims, have been paid in full, all accrued and unpaid post-petition interest from the Petition Date at the Federal Judgment Rate and all Disputed Claims in Class 8 and Class 9 have been resolved.  As set forth in the Claimant Trust Agreement, the Contingent Claimant Trust Interests distributed to the Holders of Class A Limited Partnership Interests will be subordinated to the Contingent Claimant Trust Interests distributed to the Holders of Class B/C Limited Partnership Interests.

45.  "*Debtor*" means Highland Capital Management, L.P. in its capacity as debtor and debtor in possession in the Chapter 11 Case.

46.  "*Delaware Bankruptcy Court*" means the United States Bankruptcy Court for the District of Delaware.

47.  "*Disclosure Statement*" means that certain *Disclosure Statement for Debtor's Fifth Amended Chapter 11 Plan of Reorganization*, as amended, supplemented, or modified from time to time, which describes this Plan, including all exhibits and schedules thereto and references therein that relate to this Plan.

48.  "*Disputed*" means with respect to any Claim or Equity Interest, any Claim or Equity Interest that is not yet Allowed.

49.  "*Disputed Claims Reserve*" means the appropriate reserve(s) or account(s) to be established on the Initial Distribution Date and maintained by the Claimant Trustee for distributions on account of Disputed Claims that may subsequently become an Allowed Claim.

50.  "*Disputed Claims Reserve Amount*" means, for purposes of determining the Disputed Claims Reserve, the Cash that would have otherwise been distributed to a Holder of a Disputed Claim at the time any distributions of Cash are made to the Holders of Allowed Claims. The amount of the Disputed Claim upon which the Disputed Claims Reserve is calculated shall be:  (a) the amount set forth on either the Schedules or the filed Proof of Claim, as applicable; (b) the amount agreed to by the Holder of the Disputed Claim and the Claimant Trustee or Reorganized

005105

Plan – Article I.B.97

005106

and schedules thereto, either in its present form or as the same may be altered, amended, modified or otherwise supplemented from time to time.

93.    "*Plan Distribution*" means the payment or distribution of consideration to Holders of Allowed Claims and Allowed Equity Interests under this Plan.

94.    "*Plan Documents*" means any of the documents, other than this Plan, but including, without limitation, the documents to be filed with the Plan Supplement, to be executed, delivered, assumed, or performed in connection with the occurrence of the Effective Date, and as may be modified consistent with the terms hereof with the consent of the Committee.

95.    "*Plan Supplement*" means the ancillary documents necessary for the implementation and effectuation of the Plan, including, without limitation, (i) the form of Claimant Trust Agreement, (ii) the forms of New GP LLC Documents, (iii) the form of Reorganized Limited Partnership Agreement, (iv) the Sub-Servicer Agreement (if applicable), (v) the identity of the initial members of the Claimant Trust Oversight Committee, (vi) the form of Litigation Sub-Trust Agreement; (vii) the schedule of retained Causes of Action; (viii) the New Frontier Note, (ix) the schedule of Employees; (x) the form of Senior Employee Stipulation,; and (xi) the schedule of Executory Contracts and Unexpired Leases to be assumed pursuant to this Plan, which, in each case, will be in form and substance reasonably acceptable to the Debtor and the Committee.

96.    "*Priority Non-Tax Claim*" means a Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code, including any Claims for paid time-off entitled to priority under section 507(a)(4) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

97.    "*Pro Rata*" means the proportion that (a) the Allowed amount of a Claim or Equity Interest in a particular Class bears to (b) the aggregate Allowed amount of all Claims or Equity Interests in such Class.

98.    "*Professional*" means (a) any Entity employed in the Chapter 11 Case pursuant to section 327, 328 363 or 1103 of the Bankruptcy Code or otherwise and (b) any Entity seeking compensation or reimbursement of expenses in connection with the Chapter 11 Case pursuant to sections 327, 328, 330, 331, 363, 503(b), 503(b)(4) and 1103 of the Bankruptcy Code.

99.    "*Professional Fee Claim*" means a Claim under sections 328, 330(a), 331, 363, 503 or 1103 of the Bankruptcy Code, with respect to a particular Professional, for compensation for services rendered or reimbursement of costs, expenses or other charges incurred after the Petition Date and prior to and including the Effective Date.

100.    "*Professional Fee Claims Bar Date*" means with respect to Professional Fee Claims, the Business Day which is sixty (60) days after the Effective Date or such other date as approved by order of the Bankruptcy Court.

101.    "*Professional Fee Claims Objection Deadline*" means, with respect to any Professional Fee Claim, thirty (30) days after the timely Filing of the applicable request for payment of such Professional Fee Claim.

005107

Plan – Article III H. 10 & 11

9.  *Class 9 – Subordinated Claims*

- *Classification*:  Class 9 consists of the Subordinated Claims.

  *Treatment*:  On the Effective Date, Holders of Subordinated Claims  shall receive either (i) their Pro Rata share of the Subordinated Claimant Trust Interests or, (ii) such other less favorable treatment as to which such Holder and the Claimant Trustee may agree upon in writing.

  Notwithstanding anything to the contrary herein, after the Effective Date and subject to the other provisions of this Plan, the Debtor, the Reorganized Debtor, and the Claimant Trust, as applicable, will have and will retain any and all rights and defenses under bankruptcy or nonbankruptcy law that the Debtor had with respect to any Subordinated Claim, except with respect to any Subordinated Claim Allowed by Final Order of the Bankruptcy Court.

- *Impairment and Voting*:  Class 9 is Impaired, and the Holders of Class 9 Claims are entitled to vote to accept or reject this Plan.

10.  *Class 10 – Class B/C Limited Partnership Interests*

- *Classification*:  Class 10 consists of the Class B/C Limited Partnership Interests.

- *Treatment*:  On or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Class 10 Claim, in full satisfaction, settlement, discharge and release of, and in exchange for, such Claim shall receive (i) its Pro Rata share of the Contingent Claimant Trust Interests or (ii) such other less favorable treatment as to which such Holder and the Claimant Trustee shall have agreed upon in writing.

  Notwithstanding anything to the contrary herein, after the Effective Date and subject to the other provisions of this Plan, the Debtor, the Reorganized Debtor, and the Claimant Trust, as applicable, will have and will retain any and all rights and defenses under bankruptcy or nonbankruptcy law that the Debtor had with respect to any Class B/C Limited Partnership Interest Claim, except with respect to any Class B/C Limited Partnership Interest Claim Allowed by Final Order of the Bankruptcy Court.

- *Impairment and Voting*:  Class 10 is Impaired, and the Holders of Class 10 Claims are entitled to vote to accept or reject this Plan.

11.  *Class 11 – Class A Limited Partnership Interests*

- *Classification*:  Class 11 consists of the Class A Limited Partnership Interests.

005109

- *Treatment*:  On or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Class 11 Claim, in full satisfaction, settlement, discharge and release of, and in exchange for, such Claim shall receive (i) its Pro Rata share of the Contingent Claimant Trust Interests or (ii) such other less favorable treatment as to which such Holder and the Claimant Trustee shall have agreed upon in writing.

  Notwithstanding anything to the contrary herein, after the Effective Date and subject to the other provisions of this Plan, the Debtor, the Reorganized Debtor, and the Claimant Trust, as applicable, will have and will retain any and all rights and defenses under bankruptcy or nonbankruptcy law that the Debtor had with respect to any Class A Limited Partnership Interest, except with respect to any Class A Limited Partnership Interest Allowed by Final Order of the Bankruptcy Court.

- *Impairment and Voting*:  Class 11 is Impaired, and the Holders of Class 11 Claims are entitled to vote to accept or reject this Plan.

**I.    Special Provision Governing Unimpaired Claims**

Except as otherwise provided in the Plan, nothing under the Plan will affect the Debtor's rights in respect of any Unimpaired Claims, including, without limitation, all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims.

**J.    Subordinated Claims**

The allowance, classification, and treatment of all Claims under the Plan shall take into account and conform to the contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Upon written notice and hearing, the Debtor the Reorganized Debtor, and the Claimant Trustee reserve the right to seek entry of an order by the Bankruptcy Court to re-classify or to subordinate any Claim in accordance with any contractual, legal, or equitable subordination relating thereto, and the treatment afforded any Claim under the Plan that becomes a subordinated Claim at any time shall be modified to reflect such subordination.

**ARTICLE IV.**
**MEANS FOR IMPLEMENTATION OF THIS PLAN**

**A.    Summary**

As discussed in the Disclosure Statement, the Plan will be implemented through (i) the Claimant Trust, (ii) the Litigation Sub-Trust, and (iii) the Reorganized Debtor.

On the Effective Date, all Class A Limited Partnership Interests, including the Class A Limited Partnership Interests held by Strand, as general partner, and Class B/C Limited Partnerships in the Debtor will be cancelled, and new Class A Limited Partnership Interests in the Reorganized Debtor will be issued to the Claimant Trust and New GP LLC – a newly-chartered limited liability company wholly-owned by the Claimant Trust.  The Claimant Trust, as limited

005110

**EXHIBIT 3**

005111

*DRAFT*

# CLAIMANT TRUST AGREEMENT

This Claimant Trust Agreement, effective as of _____ , 2021 (as may be amended, supplemented, or otherwise modified in accordance with the terms hereof, this "Agreement"), by and among Highland Capital Management, L.P. (as debtor and debtor-in-possession, the "Debtor"), as settlor, and James P. Seery, Jr., as trustee (the "Claimant Trustee"), and [____] as Delaware trustee (the "Delaware Trustee," and together with the Debtor and the Claimant Trustee, the "Parties") for the benefit of the Claimant Trust Beneficiaries entitled to the Claimant Trust Assets.

## RECITALS

WHEREAS, on October 16, 2019, Highland Capital Management, L.P. filed with the United States Bankruptcy Court for the District of Delaware, a voluntary petition for relief under chapter 11 of the Bankruptcy Code, which case was subsequently transferred to the Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court") and captioned *In re Highland Capital Management, L.P.*, Case No. 19-34054-sgj11 (the "Chapter 11 Case");

WHEREAS, on November 24, 2020, the Debtor filed the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Docket No. 1472] (as may be amended, supplemented, or otherwise modified from time to time, the "Plan"),[1] which was confirmed by the Bankruptcy Court on _____ , 2021, pursuant to the Findings of Fact and Order Confirming Plan of Reorganization for the Debtor [Docket No. •] (the "Confirmation Order");

WHEREAS, this Agreement, including all exhibits hereto, is the "Claimant Trust Agreement" described in the Plan and shall be executed on or before the Effective Date in order to facilitate implementation of the Plan; and

WHEREAS, pursuant to the Plan and Confirmation Order, the Claimant Trust Assets are to be transferred to the Claimant Trust (each as defined herein) created and evidenced by this Agreement so that (i) the Claimant Trust Assets can be held in a trust for the benefit of the Claimant Trust Beneficiaries entitled thereto in accordance with Treasury Regulation Section 301.7701-4(d) for the objectives and purposes set forth herein and in the Plan; (ii) the Claimant Trust Assets can be monetized; (iii) the Claimant Trust will transfer Estate Claims to the Litigation Sub-Trust to be prosecuted, settled, abandoned, or resolved as may be determined by the Litigation Trustee in accordance with the terms of the Litigation Sub-Trust Agreement, for the benefit of the Claimant Trust; (iv) proceeds of the Claimant Trust Assets, including Estate Claims, may be distributed to the Claimant Trust Beneficiaries[2] in accordance with the Plan; (v) the Claimant Trustee can resolve Disputed Claims as set forth herein and in the Plan; and

---

[1]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

[2]   For the avoidance of doubt, and as set forth in the Plan, Holders of Class A Limited Partnership Interests and Class B/C Limited Partnership Interests will be Claimant Trust Beneficiaries only upon certification by the Claimant Trustee that the Holders of such Claims have been paid indefeasibly in full plus, to the extent applicable, post-petition interest in accordance with the terms and conditions set forth herein and in the Plan.

005112

(d)     "Claimant Trust Agreement" means this Agreement.

(e)     "Claimant Trustee" means James P. Seery, Jr., as the initial "Claimant Trustee" hereunder and as defined in the Plan, and any successor Claimant Trustee that may be appointed pursuant to the terms of this Agreement.

(f)     "Claimant Trust" means the "Highland Claimant Trust" established in accordance with the Delaware Statutory Trust Act and Treasury Regulation Section 301.7701-4(d) pursuant to this Agreement.

(g)     "Claimant Trust Assets" means (i) other than the Reorganized Debtor Assets (which are expressly excluded from this definition), all other Assets of the Estate, including, but not limited to, all Causes of Action, Available Cash, any proceeds realized or received from such Assets, all rights of setoff, recoupment, and other defenses with respect, relating to, or arising from such Assets, (ii) any Assets transferred by the Reorganized Debtor to the Claimant Trust on or after the Effective Date, (iii) the limited partnership interests in the Reorganized Debtor, and (iv) the ownership interests in New GP LLC.  For the avoidance of doubt, any Causes of Action that, for any reason, are not capable of being transferred to the Claimant Trust shall constitute Reorganized Debtor Assets.

(h)     "Claimant Trust Beneficiaries" means the Holders of Allowed General Unsecured Claims, Holders of Allowed Subordinated Claims, and, only upon certification by the Claimant Trustee that the Holders of such Claims have been paid indefeasibly in full plus, to the extent applicable, post-petition interest at the federal judgment rate in accordance with the terms and conditions set forth herein, Holders of Allowed Class B/C Limited Partnership Interests, and Holders of Allowed Class A Limited Partnership Interests.

(i)     "Claimant Trust Expense Cash Reserve" means $[•] million in Cash to be funded pursuant to the Plan into a bank account of the Claimant Trust on or before the Effective Date for the purpose of paying Claimant Trust Expenses in accordance herewith.

(j)     "Claimant Trust Expenses" means the costs, expenses, liabilities and obligations incurred by the Claimant Trust and/or the Claimant Trustee in administering and conducting the affairs of the Claimant Trust, and otherwise carrying out the terms of the Claimant Trust and the Plan on behalf of the Claimant Trust, including without any limitation, any taxes owed by the Claimant Trust, and the fees and expenses of the Claimant Trustee and professional persons retained by the Claimant Trust or Claimant Trustee in accordance with this Agreement.

(k)     "Committee Member" means a Member who is/was also a member of the Creditors' Committee.

(l)     "Conflicted Member" has the meaning set forth in Section 4.6(c) hereof.

(m)     "Contingent Trust Interests" means the contingent interests in the Claimant Trust to be distributed to Holders of Class A Limited Partnership Interests and Class B/C Limited Partnership Interests in accordance with the Plan.

005113

evidenced by the Claimant Trustee's filing with the Bankruptcy Court (to the extent a final decree has not been entered) and posting on the Claimant Trustee's website a notice of appointment, at the direction of the Oversight Board, which notice will include the name, address, and telephone number of the successor Member.

(b)     Immediately upon the appointment of any successor Member, the successor Member shall assume all rights, powers, duties, authority, and privileges of a Member hereunder and such rights and privileges will be vested in and undertaken by the successor Member without any further act.  A successor Member will not be liable personally for any act or omission of a predecessor Member.

(c)     Every successor Member appointed hereunder shall execute, acknowledge, and deliver to the Claimant Trustee and other Members an instrument accepting the appointment under this Agreement and agreeing to be bound thereto, and thereupon the successor Member without any further act, deed, or conveyance, shall become vested with all rights, powers, trusts, and duties of a Member hereunder.

4.11     <u>Compensation and Reimbursement of Expenses</u>.  Unless determined by the Oversight Board, no Member shall be entitled to compensation in connection with his or her service to the Oversight Board; <u>provided</u>, <u>however</u>, that a Disinterested Member shall be compensated in a manner and amount initially set by the other Members and as thereafter amended from time to time by agreement between the Oversight Board and the Disinterested Member.  Notwithstanding the foregoing, the Claimant Trustee will reimburse the Members for all reasonable and documented out-of-pocket expenses incurred by the Members in connection with the performance of their duties hereunder (which shall not include fees, costs, and expenses of legal counsel).

4.12     <u>Confidentiality</u>.  Each Member shall, during the period that such Member serves as a Member under this Agreement and following the termination of this Agreement or following such Member's removal or resignation, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any Person to which any of the Claimant Trust Assets relates or of which such Member has become aware in the Member's capacity as a Member ("<u>Confidential Trust Information</u>"), except as otherwise required by law.  For the avoidance of doubt, a Member's Affiliates, employer, and employer's Affiliates (and collectively with such Persons' directors, officers, partners, principals and employees, "<u>Member Affiliates</u>") shall not be deemed to have received Confidential Trust Information solely due to the fact that a Member has received Confidential Trust Information in his or her capacity as a Member of the Oversight Board and to the extent that (a) a Member does not disclose any Confidential Trust Information to a Member Affiliate, (b) the business activities of such Member Affiliates are conducted without reference to, and without use of, Confidential Trust Information, and (c) no Member Affiliate is otherwise directed to take, or takes on behalf of a Member or Member Affiliate, any actions that are contrary to the terms of this Section 4.11.

**ARTICLE V.**
**TRUST INTERESTS**

5.1     <u>Claimant Trust Interests</u>.

25

005114

(a)  General Unsecured Claim Trust Interests.  On the date hereof, or on the date such Claim becomes Allowed under the Plan, the Claimant Trust shall issue General Unsecured Claim Trust Interests to Holders of Allowed Class 8 General Unsecured Claims (the "GUC Beneficiaries").  The Claimant Trustee shall allocate to each Holder of an Allowed Class 8 General Unsecured Claim a General Unsecured Claim Trust Interest equal to the ratio that the amount of each Holder's Allowed Class 8 Claim bears to the total amount of the Allowed Class 8 Claims.  The General Unsecured Claim Trust Interests shall be entitled to distributions from the Claimant Trust Assets in accordance with the terms of the Plan and this Agreement.

(b)  Subordinated Claim Trust Interests.  On the date hereof, or on the date such Claim becomes Allowed under the Plan, the Claimant Trust shall issue Subordinated Claim Trust Interests to Holders of Class 9 Subordinated Claims (the "Subordinated Beneficiaries"). The Claimant Trustee shall allocate to each Holder of an Allowed Class 9 Subordinated Claim a Subordinated Claim Trust Interest equal to the ratio that the amount of each Holder's Allowed Class 9 Claim bears to the total of amount of the Allowed Class 9.  The Subordinated Trust Interests shall be subordinated in right and priority to the General Unsecured Claim Trust Interests.  The Subordinated Beneficiaries shall only be entitled to distributions from the Claimant Trust Assets after each GUC Beneficiary has been repaid in full with applicable interest on account of such GUC Beneficiary's Allowed General Unsecured Claim, and all Disputed General Unsecured Claims have been resolved, in accordance with the terms of the Plan and this Agreement.

(c)  Contingent Trust Interests.  On the date hereof, or on the date such Interest becomes Allowed under the Plan, the Claimant Trust shall issue Contingent Interests to Holders of Allowed Class 10 Class B/C Limited Partnership Interests and Holders of Allowed Class 11 Class A Limited Partnership Interests (collectively, the "Equity Holders").  The Claimant Trustee shall allocate to each Holder of Allowed Class 10 Class B/C Limited Partnership Interests and each Holder of Allowed Class 11 Class A Limited Partnership Interests a Contingent Trust Interest equal to the ratio that the amount of each Holder's Allowed Class 10 or Class 11 Interest bears to the total amount of the Allowed Class 10 or Class 11 Interests, as applicable, under the Plan.  Contingent Trust Interests shall not vest, and the Equity Holders shall not have any rights under this Agreement, unless and until the Claimant Trustee files with the Bankruptcy Court a certification that all GUC Beneficiaries have been paid indefeasibly in full, including, to the extent applicable, all accrued and unpaid post-petition interest consistent with the Plan and all Disputed Claims have been resolved (the "GUC Payment Certification").  Equity Holders will only be deemed "Beneficiaries" under this Agreement upon the filing of a GUC Payment Certification with the Bankruptcy Court, at which time the Contingent Trust Interests will vest and be deemed "Equity Trust Interests."  The Equity Trust Interests shall be subordinated in right and priority to Subordinated Trust Interests, and distributions on account thereof shall only be made if and when Subordinated Beneficiaries have been repaid in full on account of such Subordinated Beneficiary's  Allowed Subordinated Claim, in accordance with the terms of the Plan, the Confirmation Order, and this Agreement.  The Equity Trust Interests distributed to Allowed Holders of Class A Limited Partnership Interests shall be subordinated to the Equity Trust Interests distributed to Allowed Holders of Class B/C Limited Partnership Interests.

5.2  Interests Beneficial Only.  The ownership of the beneficial interests in the Claimant Trust shall not entitle the Claimant Trust Beneficiaries to any title in or to the Claimant

005115

**EXHIBIT 4**

# Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Consolidated Financial Statements and**
**Supplemental Information**
**December 31, 2018**

HCMLPHMIT00002548

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
Index
**December 31, 2018**

| | Page |
|---|---|
| **Report of Independent Auditors**............................................................................................... | 1 |
| **Consolidated Financial Statements** | |
| Consolidated Balance Sheet.................................................................................................... | 2 |
| Consolidated Statement of Income........................................................................................... | 3 |
| Consolidated Statement of Changes in Partners' Capital......................................................... | 4 |
| Consolidated Statement of Cash Flows.................................................................................... | 5 |
| Notes to Consolidated Financial Statements .......................................................................... | 6-39 |
| Supplemental Information……………………………………………………………………………...40-44 |

005118

HCMLPHMIT00002549



**Report of Independent Auditors**

To the General Partner of Highland Capital Management, L.P.

We have audited the accompanying consolidated financial statements of Highland Capital Management, L.P. and its subsidiaries (collectively, the "Partnership"), which comprise the consolidated balance sheet as of December 31, 2018, and the related consolidated statements of income, of changes in partners' capital and of cash flows for the year then ended.

### *Management's Responsibility for the Consolidated Financial Statements*

Management is responsible for the preparation and fair presentation of the consolidated financial statements in accordance with accounting principles generally accepted in the United States of America; this includes the design, implementation, and maintenance of internal control relevant to the preparation and fair presentation of consolidated financial statements that are free from material misstatement, whether due to fraud or error.

### *Auditors' Responsibility*

Our responsibility is to express an opinion on the consolidated financial statements based on our audit. We conducted our audit in accordance with auditing standards generally accepted in the United States of America. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the consolidated financial statements are free from material misstatement.

An audit involves performing procedures to obtain audit evidence about the amounts and disclosures in the consolidated financial statements. The procedures selected depend on our judgment, including the assessment of the risks of material misstatement of the consolidated financial statements, whether due to fraud or error. In making those risk assessments, we consider internal control relevant to the Partnership's preparation and fair presentation of the consolidated financial statements in order to design audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the Partnership's internal control. Accordingly, we express no such opinion. An audit also includes evaluating the appropriateness of accounting policies used and the reasonableness of significant accounting estimates made by management, as well as evaluating the overall presentation of the consolidated financial statements. We believe that the audit evidence we have obtained is sufficient and appropriate to provide a basis for our audit opinion.

### *Opinion*

In our opinion, the consolidated financial statements referred to above present fairly, in all material respects, the financial position of Highland Capital Management, L.P. and its subsidiaries as of December 31. 2018, and the results of their operations, changes in their partners' capital and their cash flows for the year then ended, in accordance with accounting principles generally accepted in the United States of America.

### *Other Matter*

Our audit was conducted for the purpose of forming an opinion on the consolidated financial statements taken as a whole. The Supplemental Consolidating Balance Sheet, the Supplemental Consolidating Statement of Income, the Supplemental Unconsolidated Balance Sheet and the Supplemental Unconsolidated Statement of Income are presented for purposes of additional analysis and are not a required part of the consolidated financial statements. The information is the responsibility of management and was derived from and relates directly to the underlying accounting and other records used to prepare the consolidated financial statements. The information has been subjected to the auditing procedures applied in the audit of the financial statements and certain additional procedures, including comparing and reconciling such information directly to the underlying accounting and other records used to prepare the consolidated financial statements or to the consolidated financial statements themselves and other additional procedures, in accordance with auditing standards generally accepted in the United States of America. In our opinion, the information is fairly stated, in all material respects, in relation to the consolidated financial statements taken as a whole.

*PricewaterhouseCoopers LLP*

June 3, 2019

---

*PricewaterhouseCoopers LLP, 2121 N Pearl Street, Suite 2000, Dallas, Texas 75201*
*T: (214) 999 1400, F: (214) 754 7991, www.pwc.com/us*

HCMLPHMIT00002550

# Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Consolidated Balance Sheet**
**December 31, 2018**

(in thousands)

### Assets

| | | |
|---|---|---:|
| Cash and cash equivalents | $ | 5,034 |
| Investments at fair value (cost $922,027) | | 845,186 |
| Management and incentive fees receivable | | 2,393 |
| Due from broker for securities sold, not yet settled | | 598 |
| Other assets | | 9,255 |
| Notes and other amounts due from affiliates | | 173,398 |
| Intangible assets | | 3,022 |
| Fixed assets and leasehold improvements, net of accumulated depreciation of $11,197 | | 4,581 |
| **Total assets** | $ | 1,043,467 |

### Liabilities and partners' capital

#### Liabilities

| | | |
|---|---|---:|
| Accounts payable | $ | 4,983 |
| Securities sold, not yet purchased (proceeds $26,135) | | 32,357 |
| Withdrawals payable | | 57,009 |
| Due to brokers | | 116,560 |
| Due to brokers for securities purchased, not yet settled | | 1,640 |
| Accrued and other liabilities | | 40,246 |
| Notes payable | | 55,752 |
| Investment liabilities | | 46,092 |
| **Total liabilities** | | 354,639 |
| Non-controlling interest | | 316,867 |
| **Partners' capital** | | 371,961 |
| **Total liabilities and partners' capital** | $ | 1,043,467 |

The accompanying notes are an integral part of these consolidated financial statements.

005120

HCMLPHMIT00002551

# Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Consolidated Statement of Income**
**Year Ended December 31, 2018**

*(in thousands)*

| | | |
|---|---|---:|
| **Revenue:** | | |
| Management fees | $ | 36,600 |
| Interest and investment income | | 15,831 |
| Incentive fees | | 70 |
| Shared services fees | | 9,187 |
| Other income | | 2,622 |
| Total revenue | | 64,310 |
| | | |
| **Expenses:** | | |
| Compensation and benefits | | 34,475 |
| Professional fees | | 17,679 |
| Interest expense | | 5,670 |
| Marketing and advertising expense | | 2,413 |
| Depreciation and amortization | | 1,317 |
| Investment and research consulting | | 1,082 |
| Bad debt expense | | 7,862 |
| Other operating expenses | | 10,027 |
| Total expenses | | 80,525 |
| | | |
| **Other Income/(Expense):** | | |
| Other income | | 9,826 |
| Impairment on intangible assets | | (2,830) |
| Total other income | | 6,996 |
| | | |
| Loss before investment and derivative activities | | (9,219) |
| | | |
| **Realized and unrealized loss on investments and derivatives:** | | |
| Net realized loss on investments and derivatives | | (31,517) |
| Net change in unrealized loss on investments and derivatives | | (93,755) |
| Net realized and unrealized loss on investments and derivatives | | (125,272) |
| | | |
| Net loss | | (134,491) |
| | | |
| Net loss attributable to non-controlling interest | | (61,313) |
| | | |
| Net loss attributable to Highland Capital Management, L.P. | $ | (73,178) |

The accompanying notes are an integral part of these consolidated financial statements.

005121

HCMLPHMIT00002552

# Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Consolidated Statement of Changes in Partners' Capital**
**Year Ended December 31, 2018**

*(in thousands)*

|  | General Partner | | Limited Partners | | Total | |
|---|---|---|---|---|---|---|
| Partners' capital, December 31, 2017 | $ | 163 | $ | 450,014 | $ | 450,177 |
| Net loss attributable to Highland Capital Management, L.P. | $ | (183) | $ | (72,995) | $ | (73,178) |
| Partner distributions | $ | (13) | $ | (5,025) | $ | (5,038) |
| Partners' capital, December 31, 2018 | $ | (33) | $ | 371,994 | $ | 371,961 |

The accompanying notes are an integral part of these consolidated financial statements.

4

005122

HCMLPHMIT00002553

# Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Consolidated Statement of Cash Flows**
**Year Ended December 31, 2018**

*(in thousands)*

| | | |
|---|---|---:|
| **Cash flows from operating activities:** | | |
| Net loss | $ | (134,491) |
| Adjustment to reconcile net loss to net cash | | |
| provided from operating activities: | | |
| Net realized loss on investments and derivative transactions | | 31,517 |
| Net change in unrealized loss on investments and derivative transactions | | 93,755 |
| Amortization and depreciation | | 1,317 |
| Changes in assets and liabilities: | | |
| Management and incentive fee receivable | | 9,468 |
| Due from brokers | | 1,689 |
| Due from affiliate | | (10,989) |
| Other assets | | 4,272 |
| Intangible assets | | 3,308 |
| Accounts payable | | 546 |
| Accrued and other liabilities | | 1,214 |
| Due to brokers for securities purchased, not yet settled | | 1,886 |
| Due to brokers | | 11,665 |
| Net cash provided from operating activities | | 15,157 |
| **Cash flows from investing activities:** | | |
| Purchases of fixed assets and leasehold improvements, net | | (67) |
| Purchases of investments | | (195,263) |
| Proceeds from dispositions of investments | | 258,858 |
| Proceeds from securities sold, not yet purchased | | 46,550 |
| Issuance of notes receivable to affiliates | | (2,400) |
| Proceeds from repayments of notes receivable from affiliates | | 3,395 |
| Purchases of investments to cover securities sold, not yet purchased | | (127,954) |
| Net cash used in investing activities | | (16,881) |
| **Cash flows from financing activities:** | | |
| Payments on notes payable & investment liabilities | | (2,743) |
| Proceeds from long-term debt | | 38,501 |
| Capital contributions from minority interest investors of consolidated entities | | 14,615 |
| Capital withdrawals by minority interest investors of consolidated entities | | (141,986) |
| Partner distributions | | (5,060) |
| Net cash used in financing activities | | (96,673) |
| Net decrease in cash and cash equivalents | | (98,397) |
| **Cash and cash equivalents** | | |
| Beginning of year | | 103,479 |
| De-consolidating funds adjustment | | (48) |
| End of year | $ | 5,034 |
| **Supplemental disclosure of cash flow information:** | | |
| Interest paid during the year | $ | (5,629) |
| Taxes paid during the year | | (510,961) |
| Investments acquired for non-cash consideration | | 26,018 |
| Investments disposed for non-cash consideration | | 116 |

The accompanying notes are an integral part of these consolidated financial statements.

5

005123

HCMLPHMIT00002554

# Highland Capital Management, L.P.
## Notes to Consolidated Financial Statements
### December 31, 2018

---

**1. Description of Business**

Highland Capital Management, L.P. (the "Partnership") was formed on July 7, 1997 as a limited partnership in the state of Delaware. The Partnership is a registered investment adviser under the Investment Advisers Act of 1940 that manages collateralized loan obligations ("CLOs"), hedge funds, private equity funds, and other leveraged loan transactions that are collateralized predominately by senior secured bank debt and high-yield bonds. The Partnership and its subsidiaries make direct investments in debt, equity, and other securities in the normal course of business. The Partnership's general partner is Strand Advisors, Inc. (the "General Partner"). The Partnership is owned by an unaffiliated (other than through its direct ownership) trust as well as affiliated trusts and personal holdings of the senior management of the Partnership.

As of December 31, 2018, the Partnership provided investment advisory services for eighteen CLOs, five separate accounts, one master limited partnership, and nine hedge funds or private equity structures, with total fee-earning assets under management of approximately $3.1 billion. The Partnership also provides investment services on behalf of affiliate advisors.

**2. Summary of Significant Accounting Policies**

The following is a summary of the significant accounting policies followed by the Partnership in preparation of its consolidated financial statements.

**Basis of Accounting**
The Partnership's consolidated financial statements have been prepared in accordance with U.S. generally accepted accounting principles in the United States of America ("U.S. GAAP") as set forth in the Financial Accounting Standards Board's Accounting Standards Codification and are stated in the United States Dollar.

**Use of Estimates**
The preparation of the consolidated financial statements in conformity with U.S. GAAP requires management to make estimates and assumptions that affect the amounts and disclosures in the consolidated financial statements. Actual results could differ from those estimates and those differences could be material.

**Principles of Consolidation**
The consolidated financial statements include the accounts of the Partnership and the Partnership's consolidated subsidiaries ("Consolidated Entities"), which are comprised of (i) those entities in which it has controlling investment and has control over significant operating, financial and investing decisions, (ii) those entities in which it, as the general partner, has control over significant operating, financial and investing decisions, and (iii) variable interest entities ("VIEs") in which it is the primary beneficiary as described below.

The Partnership determines whether an entity has equity investors who lack the characteristics of a controlling financial interest or does not have sufficient equity at risk to finance its expected activities without additional subordinated financial support from other parties. If an entity has either of these characteristics, it is considered a VIE and must be consolidated by its primary beneficiary, which is the party that, along with its affiliates and de facto agents, absorbs a majority of the VIEs' expected losses or receives a majority of the expected residual returns as a result of holding variable interests.

005124

HCMLPHMIT00002555

# Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2018**

The Partnership assesses consolidation requirements pursuant to ASU 2015-02: Consolidation, which was adopted using the modified retrospective method and resulted in an effective date of adoption of January 1, 2016.

The Partnership and its affiliate's involvement with unconsolidated VIEs is generally limited to that of an advisory services provider, and their investment, if any, represents an insignificant interest in the relevant investment entities' assets under management. The Partnership's affiliate's exposure to risk in these entities is generally limited to any capital contribution it has made or is required to make and any earned but uncollected asset based and performance fees. The Partnership has not issued any investment performance guarantees to these VIEs or their investors, except that the Partnership has agreed to subject the full value of its equity interest in Highland Prometheus Fund to dollar-for-dollar reduction to the extent the third party investor in such fund does not achieve an annual target return.

As of December 31, 2018, the net assets of the unconsolidated VIEs and the Partnership's maximum risk of loss were as follows:

*(in thousands)*

|  | Unconsolidated VIE Net Assets | | Carrying Value and Maximum Risk of Loss | |
|---|---|---|---|---|
| Sponsored investment funds | $ | 206,329 | $ | 12,178 |

**Consolidation of Variable Interest Entities**

The Partnership consolidates the following VIEs (along with majority owned funds: Highland Diversified Credit Fund, L.P., and Highland Select Equity Fund, L.P., collectively the "Consolidated Investment Funds"), as the Partnership (or its wholly owned subsidiaries) controls the general partner of the respective entities and is responsible for the daily operations of the following entities:

- Highland Multi Strategy Credit Fund, L.P. ("Multi Strategy Master"), formerly Highland Credit Opportunities CDO, L.P., a Delaware limited partnership that commenced operations on December 15, 2005 and changed its name on August 26, 2014;

- Highland Multi-Strategy Master Fund, L.P. ("Multi-Strategy Master"), a Bermuda limited partnership that commenced operations on July 18, 2006;

- Highland Multi-Strategy Fund, L.P. ("Multi-Strat Domestic Feeder"), a Delaware limited partnership that commenced operations on July 6, 2006;

- Highland Restoration Capital Partners Offshore, L.P. ("Restoration Offshore"), a Cayman limited partnership that commenced operations on September 2, 2008;

- Highland Restoration Capital Partners, L.P. ("Restoration Onshore"), a Delaware limited partnership that commenced operations on September 2, 2008; and

005125

HCMLPHMIT00002556

## Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2018**

**Consolidation of Majority Owned Entities**

The Partnership consolidates the following entities as it has a controlling majority interest:

- 100% interest in Highland Capital Special Allocation, LLC ("HCSA"), a Delaware limited liability company that commenced operations on December 21, 2006;

- 100% interest in Highland Receivables Finance 1, LLC, a Delaware limited liability company that commenced operations on December 29, 2006;

- 100% interest in Highland Multi-Strategy Onshore Master SubFund, LLC, a Delaware limited liability company that commenced operations on July 19, 2006;

- 100% interest in Highland Multi-Strategy Onshore Master Subfund II, LLC, LLC, a Delaware limited liability company that commenced operations on February 22, 2007;

- 100% interest in Highland Brasil, LLC, a Delaware limited liability company that commenced operations on January 28, 2014;

- 100% interest in Highland Capital Management (Singapore) Pte, Ltd. ("HCM Singapore"), a company organized in the Republic of Singapore that commenced operations on April 2, 2008;

- 100% interest in Highland Capital Management Korea, Ltd. ("HCM Korea"), a company organized in the Republic of Korea that commenced operations on August 2, 2012;

- 100% interest in Highland Capital Management Latin America, L.P., ("HCM Latin America"), a Cayman company that was formed on April 13, 2017;

- 100% interest in HE Capital, LLC, a Delaware limited liability company that was formed on March 22, 2007;

- 100% interest in De Kooning, Ltd, a Cayman company that was formed on December 1, 2012;

- 100% interest in Hirst, Ltd., a Cayman company that was formed on December 1, 2012;

- 100% interest in Hockney, Ltd., a Cayman company that was formed on December 1, 2012;

- 100% interest in Oldenburg, Ltd., a Cayman company that was formed on December 1, 2012;

- 100% interest in Eames, Ltd, a Cayman company that was formed on December 12, 2012;

- 99.9% interest in Penant Management, L.P., a Delaware limited partnership that was formed on December 12, 2012;

- 100% interest in Pollack, Ltd., a Cayman company that was formed on December 1, 2012;

- 100% interest in Warhol, Ltd., a Cayman company that was formed on December 1, 2012;

005126


HCMLPHMIT00002557

# Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2018**

- 100% interest in HCREF-I Holding Corp., a Delaware company that was formed on December 13, 2012;

- 100% interest in HCREF-XI Holding Corp., a Delaware company that was formed on December 13, 2012;

- 100% interest in HCREF-XII Holding Corp., a Delaware company that was formed on December 13, 2012;

- 100% interest in Highland ERA Management, LLC, a Delaware limited liability company that was formed on February 1, 2013;

- 100% interest in The Dondero Insurance Rabbi Trust., a trust that was formed on May 27, 2004;

- 100% interest in The Okada Insurance Rabbi Trust, a trust that was formed on May 27, 2004;

- 100% interest in Highland Employee Retention Assets ("HERA"), LLC, a Delaware limited liability company that was formed on October 26, 2009;

- 100% interest in Highland Diversified Credit Fund, L.P. ("Highland Offshore Partners"), a Delaware limited partnership which began operations on February 29, 2000 and was organized for the sole purpose of investing substantially all of its assets in Highland Offshore Partners, L.P.;

- 99.6% interest in Highland Select Equity Master Fund, LP, and Highland Select Equity Fund, LP Delaware limited partnerships which began operations on January 1, 2002 and was organized for the purpose of investing and trading in large and small cap stocks that trade for less than intrinsic value;

- 100% interest in Highland Fund Holdings, LLC, a Delaware limited liability company that was formed on May 24, 2016;

- 100% interest in Maple Avenue Holdings, LLC, a Texas limited liability company formed on August  17, 2016;

- 100% interest in Highland HCF Advisor, Ltd., a Cayman company that was formed on October 27, 2017;

- 100% interest in Asury Holdings, LLC, a Delaware limited liability company formed on February 14, 2017 and;

- 100% interest in Highland CLO Management, Ltd., a Cayman company that was formed on October  27, 2017.

All inter-partnership and intercompany accounts and transactions involving the above listed Consolidated Entities have been eliminated in all of the aforementioned consolidating schedules. All the Consolidated Investment Funds are, for U.S. GAAP purposes, investment companies under the American Institute of Certified Public Accountants (AICPA) Audit and Accounting Guide - Investment Companies.  The Partnership has retained the specialized accounting of these funds required under U.S. GAAP.

9

005127

HCMLPHMIT00002558

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2018**

The following table includes a rollforward of non-controlling interests from December 31, 2017, to December 31, 2018.

*(in thousands)*

| | |
|---|---:|
| Noncontrolling interest, December 31, 2017 | $ 424,844 |
| Net loss attributable to noncontrolling interest | (61,313) |
| Noncontrolling partner contributions | 14,615 |
| Noncontrolling partner distributions | (58,061) |
| Noncontrolling interest of deconsolidated entities | (3,218) |
| Noncontrolling interest, December 31, 2018 | $ 316,867 |

**Investment Transactions**
Investment transactions are recorded on a trade date basis. Investments in securities are valued at market or fair value at the date of the consolidated financial statements with the resulting net unrealized appreciation or depreciation reflected in the Consolidated Statement of Income. Realized gains and losses on the transactions are determined based on either the first-in, first-out or specific identification method.

See Note 5 for the Partnership's fair value process and hierarchy disclosures.

**Management and Incentive Fee Revenue**
The Partnership recognizes revenue as earned in connection with services provided under collateral and investment management agreements. Under these agreements, the Partnership earns management fees calculated as a percentage of assets under management or net asset value. The Partnership also has an opportunity to earn additional incentive fees and incentive allocations related to certain management agreements depending ultimately on the financial performance of the underlying assets the Partnership manages. During the year ended December 31, 2018, the Partnership and its Consolidated Entities recognized management fees and incentive fees of approximately $36.6 million and $0.1 million, respectively.

**Shared Services Revenue**
The Partnership recognizes revenue as earned in connection with services provided to related parties under various shared services agreements. Under these agreements, the Partnership earns fees for services including, but not limited to, back office support functions, marketing, and investment advisory services. During the year ended December 31, 2018, the Partnership and its Consolidated Entities recognized shared services revenue of approximately $9.2 million, which has been presented in *Shared services fees* in the Consolidated Statement of Income. See further discussion in Note 8.

005128

HCMLPHMIT00002559

# Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2018**

**Income and Expense Recognition**
Interest on currently paying debt instruments is accrued as earned and dividend income and dividends on securities sold, not yet purchased are recorded on the ex-dividend date, net of withholding taxes. In certain instances where the asset has defaulted or some amount of the interest payment is deemed uncollectable, interest is recognized when received. Discounts and premiums associated with purchases of investments are accreted and amortized to interest income, except for deep-discounted debt where ultimate collection of interest and principal may be in doubt. Such accretion/amortization is calculated on an effective-yield basis over the life of the investment. Amendment fees are recognized when agreed to by the underlying company and all settlement contingencies are met. Operating expenses, including interest on securities sold short, not yet purchased, are recorded on the accrual basis as incurred.

**Income Taxes**
The Partnership is not subject to federal income taxes, and therefore, no provision has been made for such taxes in the accompanying consolidated financial statements. Income taxes are the responsibility of the partners. Certain consolidated subsidiaries are subject to federal income taxes.

Certain entities that are included in these consolidated financial statements are subject to federal and/or state income taxes. Deferred tax assets and liabilities are recognized for the future tax consequences attributable to differences between the financial statement carrying amounts of existing assets and liabilities and their respective tax bases. Deferred tax assets and liabilities are measured using enacted tax rates expected to apply to taxable income in the years in which those temporary differences are expected to be recovered or settled. The effect on deferred tax assets and liabilities of a change in tax rates is recognized in the period that includes the enactment date. See further discussion in Note 13.

**Cash and Cash Equivalents**
Cash and cash equivalents consist of cash held at U.S. and foreign banks, deposits with original maturities of less than 90 days, and money market funds. Cash equivalents are carried at cost, which approximates market value. At December 31, 2018, the Partnership and Consolidated Entities held cash balances at certain financial institutions in excess of the federally insured limit of $0.3 million. The Partnership and Consolidated Entities regularly monitor the credit quality of these institutions.

**Notes Receivable**
Notes receivable consists of secured promissory notes with maturities greater than one year. When available, the Partnership uses observable market data, including pricing on recent closed transactions to value notes. When appropriate, these notes may be valued using collateral values. Adjustments to the value may be performed in circumstances where attributes specific to the collateral exist suggesting impairment.

**Other Intangible Assets**
Goodwill and other intangible assets are recorded on the Consolidated Balance Sheet at current carrying values. The Partnership and its Consolidated Entities perform an impairment test on an annual basis. Any impairment in the value of other intangible assets is accounted for in the year when it occurs.

**Fixed Assets and Leasehold Improvements**
Fixed assets and leasehold improvements are carried at cost, less accumulated depreciation. Depreciation is provided using the straight-line method over the shorter of the estimated useful life of the assets or the lease term.

005129

HCMLPHMIT00002560

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Notes to Consolidated Financial Statements**
**December 31, 2018**

The Partnership and its Consolidated Entities are depreciating fixed assets as follows:

|  | Period |
|---|---|
| Leasehold improvements | Lease term |
| Buildings | 29 - 40 years |
| Furniture and fixtures | 7 years |
| Computer and equipment | 3 - 5 years |
| Computer software | 3 years |

**Securities Sold, Not Yet Purchased**
Certain of the Partnership's Consolidated Investment Funds engage in "short sales" as part of their investment strategies.  Short selling is the practice of selling securities that are borrowed from a third party.  The Consolidated Investment Funds are required to return securities equivalent to those borrowed for the short sale at the lender's demand.

Pending the return of such securities, the Consolidated Investment Funds deposit with the lender as collateral the proceeds of the short sale plus additional cash.  The amount of the required deposit, which earns interest, is adjusted periodically to reflect any change in the market price of the securities that the Consolidated Investment Funds are required to return to the lender. A gain (which cannot exceed the price at which the Consolidated Investment Funds sold the security short) or a loss (which theoretically could be unlimited in size) will be settled upon termination of a short sale.

**Due to/from Brokers**
Due to and from broker balances recorded on the Consolidated Balance Sheet include liquid assets maintained with brokers and counterparties for margin account balances and the amounts due for or due from the settlement of purchase and sales transactions. Certain due to and from broker balances have been reported on a net-by-counterparty basis where, in accordance with contractual rights and the Partnership's opinion, there is a right of offset in the event of bankruptcy or default by a counterparty.

**Options Contracts**
The Partnership and the Consolidated Entities may purchase and write call and put options to gain market exposure or to hedge investments.  A call option gives the purchaser of the option the right (but not the obligation) to buy, and obligates the seller to sell (when the option is exercised), the underlying position at the exercise price at any time or at a specified time during the option period. A put option gives the holder the right to sell and obligates the writer to buy the underlying position at the exercise price at any time or at a specified time during the option period.  When the Partnership or the Consolidated Entities purchase (write) an option, an amount equal to the premium paid (received) by the entity is reflected as an asset (liability).  The amount of the asset (liability) is subsequently marked-to-market to reflect the current market value of the option purchased (written). When a security is purchased (or sold) through an exercise of an option, the related premium paid (or received) is added to (or deducted from) the basis of the security acquired or deducted from (or added to) the proceeds of the security sold.  When an option expires (or the Partnership or the Consolidated Entities enter into a closing transaction), the entity realizes a gain or loss on the option to the extent of the premiums received or paid (or gain or loss to the extent the cost of the closing transaction exceeds the premium received or paid).  Exercise of a written option could result in the Partnership or the Consolidated Entities purchasing a security at a price different from the current market value.

005130

HCMLPHMIT00002561

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Notes to Consolidated Financial Statements**
**December 31, 2018**

The Partnership and the Consolidated Entities are exposed to counterparty risk from the potential that a seller of an option contract does not sell or purchase the underlying asset as agreed under the terms of the option contract. The maximum risk of loss from counterparty risk to the Partnership and the Consolidated Entities is the greater of the fair value of its open option contracts or the premiums paid to purchase the open option contracts. The Partnership and the Consolidated Entities consider the credit risk of the intermediary counterparties to its option transactions in evaluating potential credit risk.

**Margin Transactions**
To obtain more investable cash, certain of the Consolidated Entities may use various forms of leverage including purchasing securities on margin. A margin transaction consists of purchasing an investment with money loaned by a broker and agreeing to repay the broker at a later date. Interest expense on the outstanding margin balance is based on market rates at the time of the borrowing.

**Withdrawals Payable**
Withdrawals are recognized as liabilities, net of incentive allocations, when the amount requested in the withdrawal notice becomes fixed and determinable. This generally may occur either at the time of receipt of the notice, or on the last day of a fiscal period, depending on the nature of the request. As a result, withdrawals paid after the end of the year, but based upon year-end capital balances are reflected as withdrawals payable at December 31, 2018. Withdrawal notices received for which the dollar amount is not fixed remains in capital until the amount is determined. At December 31, 2018, the Consolidated Investment Funds had withdrawals payable of $57.0 million.

**Foreign Currency Transactions**
The Partnership's subsidiaries HCM Singapore and HCM Korea use Singapore dollars and Korean won, respectively, as their functional currency. All foreign currency asset and liability balances are presented in U.S. dollars in the consolidated financial statements, translated using the exchange rate as of December 31, 2018. Revenues and expenses are recorded in U.S. dollars using an average exchange rate for the relative period. Foreign currency transaction gains and losses resulting from transactions outside of the functional currency of an entity are included in *Other income* on the Consolidated Statement of Income.

The Consolidated Entities do not isolate that portion of the results of operations resulting from changes in foreign exchange rates or investment or fluctuations from changes in market prices of securities held. Such fluctuations are included within the *Net realized and unrealized gains or loss from investments* on the Consolidated Statement of Income.

**Life Settlement Contracts**
One of the Consolidated Investment Funds, through a subsidiary, holds life settlement contracts and accounts for them using the fair value method. These contracts are recorded as a component of "Investments at fair value" on the Consolidated Balance Sheet. Realized and unrealized gains (losses) on the contracts are recorded in the Consolidated Income Statement. Cash flows relating to the purchase and sale of the contracts are recorded as a component of *Purchase of investments* and *Proceeds from dispositions of investments* on the Consolidated Statement of Cash Flows. At December 31, 2018, the Consolidated Investment Fund was invested in 13 policies, which had a total face value of approximately $145.3 million and a fair value of $35.7 million.

005131
HCMLPHMIT00002562

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Notes to Consolidated Financial Statements**
**December 31, 2018**

**Financing**
The Partnership and its Consolidated Entities may finance the acquisition of its investments in securities and loans through financing arrangements which are classified in Notes payable and Investment liabilities on the Consolidated Balance Sheet. The Partnership and its Consolidated Entities recognize interest expense on all borrowings on the accrual basis in the Consolidated Statement of Income.

**Financial Instruments**
The Partnership and its Consolidated Entities determine fair value of financial instruments as required by U.S. GAAP. The carrying amounts for cash and cash equivalents, receivables, accounts payable, withdrawals payable, debt and notes payable, due to brokers, investment liabilities and accrued liabilities approximate their fair values. For fair value of investment, see Note 5.

**Accounts Payable, Accrued and Other Liabilities**
Expenses are recorded on an accrual basis, as incurred. Current liabilities are included in Accounts payable. Long-term liabilities are included in Accrued and other liabilities.

**Partners' Capital**
The Partnership agreement requires that income or loss of the Partnership be allocated to the partners in accordance with their respective partnership interests.

005132
HCMLPHMIT00002563

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Notes to Consolidated Financial Statements**
**December 31, 2018**

3.    **Fixed Assets and Leasehold Improvements**

Fixed assets and leasehold improvements are comprised of the following as of December 31, 2018:

*(in thousands)*

| | | |
|---|---:|---:|
| Leasehold improvements | $ | 7,193 |
| Buildings | | 2,595 |
| Furniture and fixtures | | 2,796 |
| Computer and equipment | | 2,863 |
| Computer software | | 331 |
| Accumulated depreciation | | (11,197) |
| | $ | 4,581 |

Depreciation expense in 2018 totaled approximately $1.3 million for the Partnership and its subsidiaries.

4.    **Investments**

Detailed below is a summary of the Partnership and its Consolidated Entities' investments at December 31, 2018:

| *(in thousands)* | Amortized Cost/Cost | | Fair Value | |
|---|---:|---|---:|---|
| Common equity securities | $ | 423,306 | $ | 535,374 |
| Closed-end mutual funds | | 100,788 | | 94,845 |
| Floating rate syndicated bank loans | | 142,586 | | 72,622 |
| Real Estate Investment Trusts | | 28,271 | | 57,475 |
| Life settlement contracts | | 65,276 | | 35,744 |
| Limited partnership interests | | 24,892 | | 30,521 |
| Rights & warrants | | 26,661 | | 7,446 |
| LLC interests | | 10,629 | | 2,775 |
| Preferred equity | | 258 | | 8,282 |
| Asset-backed securities | | 7,350 | | 102 |
| Participation interests | | 6,590 | | - |
| Corporate bonds | | 85,421 | | - |
| Total investments | $ | 922,027 | $ | 845,186 |

| | Proceeds | | Fair Value | |
|---|---:|---|---:|---|
| Securities sold, not yet purchased | $ | (26,135) | $ | (32,357) |

005133

HCMLPHMIT00002564

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2018**

---

5.    **Fair Value of Financial Instruments**

**Fair Value Measurement**

U.S. GAAP defines fair value as the price an entity would receive to sell an asset or pay to transfer a liability in an orderly transaction between market participants as of the measurement date. The standard requires fair value measurement techniques to reflect the assumptions market participants would use in pricing an asset or liability and, where possible, to maximize the use of observable inputs and minimize the use of unobservable inputs. It also establishes the following hierarchy that prioritizes the valuation inputs into three broad levels:

- Level 1 – Valuation based on unadjusted quoted prices in active markets for identical assets and liabilities that the Partnership and the Consolidated Entities have the ability to access as of the measurement date.  Valuations utilizing Level 1 inputs do not require any degree of judgment.

- Level 2 – Valuations based on (a) quoted prices for similar instruments in active markets; (b) quoted prices for identical or similar instruments in markets that are not active that are reflective of recent market transactions; or (c) models in which all significant inputs are observable, either directly or indirectly.

- Level 3 – Valuations based on indicative quotes that do not reflect recent market transactions and models or other valuation techniques in which the inputs are unobservable and significant to the fair value measurement, which includes situations where there is little, if any, market activity for the asset or liability.

The availability of observable inputs varies among financial instruments and is affected by numerous factors, including the type of instruments, the period of time in which the instrument has been established in the marketplace, market liquidity for an asset class and other characteristics particular to a transaction.  When the inputs used in a valuation model are unobservable, management is required to exercise a greater degree of judgment to determine fair value than it would for observable inputs.  For certain instruments, the inputs used to measure fair value may fall into different levels of the hierarchy discussed above.  In those cases, the instruments are categorized for disclosure purposes based on the lowest level of inputs that are significant to their fair value measurements.

The Partnership and Consolidated Entities use prices and inputs that are current as of the measurement dates.  The Partnership also considers the counterparty's non-performance risk when measuring the fair value of its investments.

During periods of market dislocation, the ability to observe prices and inputs for certain instruments may change. These circumstances may result in the instruments being reclassified to different levels within the hierarchy over time. They also create an inherent risk in the estimation of fair value that could cause actual amounts to differ from management's estimates. Whenever possible, the Partnership and its Consolidated Entities use actual market prices or relevant observable inputs to establish the fair value of its assets and liabilities. In cases where observable inputs are not available, the Partnership and Consolidated Entities  develop methodologies that provide appropriate fair value estimates.  These methodologies are reviewed on a continuous basis to account for changing market conditions.

005134

HCMLPHMIT00002565

# Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2018**

The Partnership has established policies, as described above, processes and procedures to ensure that valuation methodologies for investments and financial instruments that are categorized within all levels of the fair value hierarchy are fair and consistent. A Pricing Committee has been established to provide oversight of the valuation policies, processes and procedures, and is comprised of various personnel from the Partnership. The Pricing Committee meets monthly to review the proposed valuations for investments and financial instruments. The Pricing Committee is responsible for establishing the valuation policies and evaluating the overall fairness and consistent application of those policies.

As of December 31, 2018, the Partnership and its Consolidated Entities' investments consisted primarily of common equity securities, closed-end mutual funds, floating rate syndicated bank loans, real estate investment trusts, life settlement contracts, limited partnership interests, rights and warrants, LLC interests, asset-backed securities, and preferred equity. In addition, certain of the Consolidated Entities engage in short sale transactions. The majority of these financial instruments are not listed on national securities exchanges and management is required to use significant judgment to estimate their values.

**Public Equity Investments**
Publicly traded equities, including closed-end mutual funds and publicly traded REITs are valued at the closing price at the date of the financial statements. The fair value of equity investments that are not traded on national exchanges or through real-time quotation services are derived from methodologies that provide appropriate fair value estimates. Equity investments with quotes that are based on actual trades with a sufficient level of activity on or near the valuation date are classified as Level 2 assets.

**Private Equity Investments**
The Partnership and Consolidated Entities hold private equity investments which often resulted from the restructuring of other instruments which are classified as common equity securities.  These assets are valued using market data obtained from a third-party pricing service and/or quotes from other parties dealing in the specific assets when available.  In the event both a reliable market quote and third-party pricing service data are not available for such assets, the Partnership and Consolidated Entities  will fair value the assets using various methodologies, as appropriate for individual investments, including comparable transaction multiples, comparable trading multiples, and/or discounted cash flow analysis.  When utilizing comparable trading multiples, the Investment Manager determines comparable public companies (peers) based on industry, size, developmental stage, strategy, etc., and then calculates a trading multiple for each comparable company identified by using either a price to book ratio based on publically available information about the underlying comparable company or by dividing the enterprise value of the comparable company by its earnings before interest, taxes, depreciation and amortization (EBITDA) or similar metrics. In certain instances, the inputs used in the calculation of the trading multiples may vary based on the industry or development stage of the company. A multiple determined by the Investment Manager to be within a reasonable range as calculated amongst its peers is then applied to the underlying company's price to book ratio or EBITDA (which may be normalized to adjust for certain nonrecurring events), to calculate the fair value of the underlying company. The fair value may be further adjusted for entity specific facts and circumstances. Private equity investments with quotes that are based on actual trades with a sufficient level of activity on or near the valuation date are classified as Level 2 assets. Private equity investments that are priced using quotes derived from implied values, bid/ask prices for trades that were never consummated, or a limited amount of actual trades are classified as Level 3 assets because the inputs used by the brokers and pricing services to derive the values are not readily observable.

005135

HCMLPHMIT00002566

# Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2018**

The Consolidated Entities also invest in warrant securities of publicly–traded companies. The fair value of these investments is based on an option pricing model. The option model bases warrant value on a number of factors including underlying equity price as of the valuation date, strike price, exercise date, time to expiration and volatility. Warrant investments that have observable volatility are classified as Level 2 assets. Warrant investments where volatility inputs are not observable are valued using an estimated volatility input, and are classified as Level 3 assets.

## Debt Securities

The Partnership and Consolidated Entities invest in various types of debt, including floating rate syndicated bank loans, which are almost exclusively valued using market data obtained from one or more third-party pricing services or brokers. In instances where a third-party pricing service does not provide pricing for a specific asset, the Partnership and Consolidated Entities first seek to obtain reliable market quotes from other parties dealing in the specific asset. Loans and bonds with quotes that are based on actual trades with a sufficient level of activity on or near the valuation date are classified as Level 2 assets. Loans and bonds that are priced using quotes derived from implied values, bid/ask prices for trades that were never consummated, or a limited amount of actual trades are classified as Level 3 assets because the inputs used by the brokers and pricing services to derive the values are not readily observable.

Absent both a reliable market quote and third-party pricing service date, the Partnership and Consolidated Entities may use various models to establish an estimated exit price. These investments are classified as Level 3 assets. Models used for debt securities are primarily based on identifying comparable assets for which market data is available and pricing the target asset consistent with the yields of the comparable assets. As circumstances require, other industry accepted techniques may be used in modeling debt assets.

## Life Settlement Contracts

Life Settlement contracts are valued using mortality tables and interest rate assumptions that are deemed by management to be appropriate for the demographic characteristics of the parties insured under the policies. Management generally utilizes an independent third party firm to perform these calculations and provide the relevant inputs. Management evaluates the results based on visible market activity and market research. Since these inputs are not readily observable, these contracts are classified as Level 3 assets.

At December 31, 2018, the Consolidated Entities' investments in life settlement contracts consisted of the following:

(U.S. dollars in thousands, except number of policies)

| Remaining Life Expectancy (in years) | Number of Policies | Face Value | Fair Value |
|---|---|---|---|
| 1-2 | - | $   - | $   - |
| 2-3 | 3 | 33,785 | 16,940 |
| 3-4 | - | - | - |
| 4-5 | - | - | - |
| Thereafter | 10 | 111,500 | 18,804 |
| Total | 13 | $  145,285 | $  35,744 |

005136

HCMLPHMIT00002567

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Notes to Consolidated Financial Statements**
**December 31, 2018**

**Asset-Backed Securities**

The Consolidated Entities invest in a variety of asset-backed securities. Asset-backed securities are generally valued based on complex cash flow models that analyze the cash flows generated by the investment's underlying assets after adjusting for expected default rates, prepayment rates, collateral quality, market liquidity among other factors. These models are then adjusted based on spreads available in the market place from various research firms, dealers, and trading activity.  The Consolidated Entities generally utilize an independent third parties to provide the relevant inputs. The Consolidated Entities evaluate the results based on visible market activity and market research. When appropriate, the Consolidated Entities may apply other techniques based on a specific asset's characteristics. Asset-backed securities with quotes that are based on actual trades with a sufficient level of activity on or near the valuation date are classified as Level 2 assets. Asset-backed securities that are priced using quotes derived from implied values, bid/ask prices for trades that were never consummated, or a limited amount of actual trades are classified as Level 3 assets because the inputs used by the brokers and pricing services to derive the values are not readily observable.

**Limited Partnership and LLC Interests**

The Partnership and its Consolidated Entities hold limited partnership and LLC interests in various entities. These assets are valued as the net asset value of the limited partnership interests because the entities utilize fair value accounting for their own financial statements. These interests are classified as Level 3 assets.

The Partnership categorizes investments recorded at fair value in accordance with the hierarchy established under U.S. GAAP. The following table provides a summary of the financial instruments recorded at fair value on a recurring basis by level within the hierarchy as of December 31, 2018:

*(in thousands)*

| Assets | Level 1 | Level 2 | Level 3 | Total Fair Value at 12/31/18 |
|---|---|---|---|---|
| Common equity securities | $ 139,236 | $ 296,695 | $ 99,443 | $ 535,374 |
| Closed-end mutual funds | 94,845 | - | - | 94,845 |
| Floating rate syndicated bank loans | - | 21 | 72,601 | 72,622 |
| Real Estate Investment Trusts | 46,594 | 10,881 | - | 57,475 |
| Life settlement contracts | - | - | 35,744 | 35,744 |
| Limited partnership interests | - | - | 30,521 | 30,521 |
| Rights & warrants | 20 | 123 | 7,303 | 7,446 |
| LLC interests | - | - | 2,775 | 2,775 |
| Preferred equity | 8,282 | - | - | 8,282 |
| Asset-backed securities | - | - | 102 | 102 |
| **Total** | $ 288,977 | $ 307,720 | $ 248,489 | $ 845,186 |

| Liabilities | | | | |
|---|---|---|---|---|
| Common stock & Options sold short | $ 32,357 | $ - | - | $ 32,357 |

19

005137

HCMLPHMIT00002568

# Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2018**

The classification of a financial instrument within Level 3 is based on the significance of the unobservable inputs to the overall fair value measurement. The following table provides a roll forward of the investments classified within Level 3 for the year ended December 31, 2018:

(in thousands)

| | Fair Value at December 31, 2017 | Purchases | Sales and Maturities | Restructures | Transfers Into Level 3 | Net Realized Gains / (Losses) | Net Unrealized Gains / (Losses) | Fair Value at December 31, 2018 |
|---|---|---|---|---|---|---|---|---|
| Common equity securities | $ 141,201 | $ 1,058 | $ (116) | $ - | $ - | $ - | $ (42,700) | $ 99,443 |
| Floating rate syndicated bank loans | 64,307 | 12,146 | (1,952) | - | - | (2,799) | 899 | 72,601 |
| Life settlement contracts | 28,959 | 7,353 | - | - | - | - | (568) | 35,744 |
| Limited partnership interests | 27,863 | 4,600 | (4,766) | - | 928 | 351 | 1,545 | 30,521 |
| Rights & warrants | 8,013 | - | - | - | - | - | (710) | 7,303 |
| LLC interests | 3,352 | 165 | (1,312) | - | - | 985 | (415) | 2,775 |
| Asset-backed securities | 6,477 | 1 | (3,051) | (2,171) | (928) | (39,580) | 39,354 | 102 |
| | $ 280,172 | $ 25,323 | $ (11,197) | $ (2,171) | $ - | $ (41,043) | $ (2,595) | $ 248,489 |

All net realized and unrealized gains and losses in the tables above are reflected in the accompanying Consolidated Income Statement. Approximately $41.8 million of the net unrealized losses presented in the table above relate to investments held as of December 31, 2018.

The following page includes a summary of significant unobservable inputs used in the fair valuations of assets and liabilities categorized within Level 3 of the fair value hierarchy.

005138

HCMLPHMIT00002569

# Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2018**

| Category | Ending Balance at 12/31/2018 | Valuation Technique | Unobservable Inputs | Input Value(s) |
|---|---|---|---|---|
| Common equity securities | $  99,443 | Multiples Analysis | Multiple of EBITDA | 2.5x - 7.0x |
| | | | Cap Rate | 8.0 - 10.0% |
| | | | Multiple of Revenue | 0.20x - 0.30x |
| | | | Liquidity Discount | 25% |
| | | Discounted Cash Flow | Discount Rate | 10.5 - 40.0% |
| | | | Terminal Multiple | 1.25x - 6.50x |
| | | | Long-Term Growth Rate | 2% |
| | | Transaction Analysis | Multiple of EBITDA | 4.0x - 7.75x |
| | | | Cap Rate | 8 - 10% |
| | | Bid Indications | Enterprise Value ($mm) | $720.0 - $765.0 |
| | | Impairment Analysis | Recoverable Value | 0% |
| | | Appraisal | N/A | N/A |
| Floating rate syndicated bank loans | 72,601 | Multiples Analysis | Multiple of EBITDA | 2.0x - 5.0x |
| | | | Multiple of Revenue | 0.35x - 0.50x |
| | | Escrow Recovery Analysis | Risk Discount | 40% |
| | | Appraisal | N/A | N/A |
| | | Bid Indications | Transaction Price | 10% |
| | | Sales Proceeds Analysis | Discount Rate | 6.0% |
| | | Discounted Cash Flow | Discount Rate | 12.3% - 40.0% |
| | | | Terminal Multiple | 1.25x |
| | | | Spread Adjustment | 0.0% - 6.3% |
| Life settlement contracts | 35,744 | Discounted Cash Flow | Discount Rate | 15.0 - 16.0% |
| Limited partnership interests | 30,521 | Net Asset Value | Various models including liquidation analysis, and third-party pricing vendor | N/A |
| Rights & warrants | 7,303 | Discounted Cash Flow | Discount Rate | 11.0% - 17.0% |
| | | | Terminal Multiple | 6.5x |
| | | Multiples Analysis | Multiple of EBITDA | 6.0x - 7.0x |
| | | Transaction Analysis | Multiple of EBITDA | 7.25x - 7.75x |
| | | Bid Indication of Value | Enterprise Value (in millions) | $720.0 - $765.0 |
| LLC interests | 2,775 | Discounted Cash Flow | Discount Rate | 6% |
| | | Adjusted Appraisal | Minority Discount | 25% |
| | | Bid Indication | Total Purchase Price (in millions) | $130.00 |
| Asset-backed securities | 102 | Adjusted NAV | N/A | N/A |
| **Total** | **$    248,489** | | | |

In addition to the unobservable inputs utilized for various valuation methodologies, the Partnership often uses a combination of two or more valuation methodologies to determine fair value for a single holding. In such instances, the Partnership assesses the methodologies and ascribes weightings to each methodology. The selection of weightings is an inherently subjective process, dependent on professional judgement. These selections may have a material impact to the concluded fair value for such holdings.

The significant unobservable inputs used in the fair value measurement of the Partnership's assets could fluctuate significantly, resulting in a significantly higher or lower fair value measurement.

005139

HCMLPHMIT00002570

# Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2018**

---

6.  **Financial Instruments with Concentration of Credit and Other Risks**

**Financial Instruments**
The Partnership and its Consolidated Entities' investments include, among other things, equity securities, debt securities (both investment and non-investment grade) and bank loans. The Consolidated Entities may also invest in derivative instruments, including total return and credit default swaps. Investments in these derivative instruments throughout the year subject the Consolidated Entities to off-balance sheet market risk, where changes in the market or fair value of the financial instruments underlying the derivative instruments may be in excess of the amounts recognized in the Consolidated Balance Sheet.

**Market Risk**
Market risk represents the potential loss that may be incurred by the Partnership and its Consolidated Entities due to a change in the market value of its investments or the value of the investments underlying swap agreements. The Partnership and its Consolidated Entities' exposure to market risk is affected by a number of macroeconomic factors, such as interest rates, availability of credit, inflation rates, economic uncertainty and changes in laws and regulations. These factors may affect the level and volatility of securities prices and the liquidity of the Partnership and its Consolidated Entities investments. Volatility or illiquidity could impair the Partnership and its Consolidated Entities performance or result in losses. The Partnership and its Consolidated Entities may maintain substantial trading positions that can be adversely affected by the level of volatility in the financial markets. The performance of life settlement contracts may be adversely impacted by the under estimation of mortality and other rates.

**Credit Risk**
Credit risk is the potential loss the Partnership and its Consolidated Entities may incur as a result of the failure of a counterparty or an issuer to make payments according to the terms of a contract. Because the Consolidated Entities enter into over-the-counter derivatives such as swaps, it is exposed to the credit risk of their counterparties. To limit the credit risk associated with such transactions, the Consolidated Entities execute transactions with financial institutions that the Investment Manager believes to be financially viable.

**Liquidity Risk**
The Consolidated Entities' limited partner interests have not been registered under the Securities Act of 1933 or any other applicable securities law. There is no public market for the interests, and neither the Consolidated Entities nor their manager expects such a market to develop.

**Business Risk**
The Partnership provides advisory services to the Consolidated Entities. Consolidated Entities could be materially affected by the liquidity, credit and other events of the Partnership.

005140

HCMLPHMIT00002571

## Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2018**

**High Yield Bonds and Loans**

The Partnership and its Consolidated Entities' investment portfolios consist of floating rate syndicated bank loans and fixed income securities that are not listed on a national securities exchange. These investments trade in a limited market and it may not be possible to immediately liquidate them if needed. In addition, certain of the Partnership and its Consolidated Entities' investments have resale or transfer restrictions that further reduce their liquidity. Because of the inherent uncertainty of these investments, the Investment Manager's best estimates may differ significantly from values that would have been used had a broader market for the investments existed.

When the Partnership and its Consolidated Entities purchase a senior secured syndicated bank loan, it enters into a contractual relationship directly with the corporate borrower, and as such, is exposed to certain degrees of risk, including interest rate risk, market risk and the potential non-payment of principal and interest, including default or bankruptcy of the corporate borrower or early payment by the corporate borrower. Typically, senior secured syndicated bank loans are secured by the assets of the corporate borrower and the Partnership and its Consolidated Entities have a policy of regularly reviewing the adequacy of each corporate borrower's collateral.

The Partnership and its Consolidated Entities may invest in high-yield bonds that have been assigned lower rating categories or are not rated by the various credit rating agencies. Bonds in the lower rating categories are generally considered to be speculative with respect to the issuer's ability to repay principal and pay interest. They are also subject to greater risks than bonds with higher ratings in the case of deterioration of general economic conditions. Due to these risks, the yields and prices of lower-rated bonds are generally volatile, and the market for them is limited, which may affect the ability to liquidate them if needed.

**Debt Obligations**

The Partnership and its Consolidated Entities' investment portfolio consists of collateralized loan obligations that are not listed on a national securities exchange. These investments trade in a limited market and it may not be possible to immediately liquidate them if needed. Because of the inherent uncertainty of these investments, the Partnership's best estimates may differ significantly from values that would have been used had broader market for the investments existed.

**Distressed Investments**

A portion of the high yield corporate bonds and senior secured syndicated bank loans in which the Partnership and its Consolidated Entities invest have been issued by distressed companies in an unstable financial condition that have experienced poor operating performance and may be involved in bankruptcy or other reorganization and liquidation proceedings. These investments have substantial inherent risks. Many of these distressed companies are likely to have significantly leveraged capital structures, which make them highly sensitive to declines in revenue and to increases in expenses and interest rates. The leveraged capital structure also exposes the companies to adverse economic factors, including macroeconomic conditions, which may affect their ability to repay borrowed amounts on schedule.

005141

HCMLPHMIT00002572

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Notes to Consolidated Financial Statements**
**December 31, 2018**

**Corporate Bonds, Preferred Securities, and Loans**
The Consolidated Entities may invest in corporate bonds, floating rate syndicated bank loans, and preferred securities which are rated in the lower rating categories by the various credit rating agencies (or in comparable non-rated securities). Securities in the lower rating categories are subject to greater risk of loss of principal and interest than higher-rated securities and are generally considered to be predominantly speculative with respect to the issuer's capacity to pay interest and repay principal. They are also subject to greater risks than securities with higher ratings in the case of deterioration of general economic conditions. Because of these greater risks associated with the lower-rated securities, the yields and prices of such securities may be more volatile than those for higher-rated securities. The market for lower-rated securities is thinner and less active than that for higher-rated securities, which could adversely affect the prices at which these securities may be sold by the Consolidated Entities.

**Limited Diversification**
The Investment Manager attempts to diversify the Consolidated Entities' investments. However, the Consolidated Entities' portfolios could become significantly concentrated in any one issuer, industry, sector strategy, country or geographic region, and such concentration of credit risk may increase the losses suffered by the Consolidated Entities. In addition, it is possible that the Investment Manager may select investments that are concentrated in certain classes of financial instruments. This limited diversity could expose the Consolidated Entities to losses that are disproportionate to market movements as a whole.

At December 31, 2018, the Consolidated Entities' investments were predominantly concentrated in the United States and Cayman Islands.

**Exit Difficulties**
The Partnership and its Consolidated Entities cannot assure investors that it will be able to exit its investments by sale or other disposition at attractive prices, if at all. The mergers and acquisitions and public securities markets are highly cyclical, which means that the Consolidated Entities' investments, even its best performing investments, may be illiquid for extended periods of time despite the Consolidated Entities' efforts to identify attractive exit opportunities. Additionally, a significant portion of the Consolidated Entities' assets at any time will likely consist of debt obligations and other securities that are thinly-traded, for which no market exists and/or are restricted as to their transferability under applicable law and/or documents governing particular transactions of the Consolidated Entities. In some cases, the Consolidated Entities may be unable to realize an investment prior to the date on which the Consolidated Entities are scheduled to terminate and/or have to sell or otherwise dispose of one or more investments on disadvantageous terms as a result of the Consolidated Entities' termination, or distribute such investments in kind.

**Custody Risk**
The clearing operations for the Partnership and its Consolidated Entities are provided by major financial institutions. In addition, all of the Partnership and its Consolidated Entities' cash and investments are held with banks or brokerage firms, which have worldwide custody facilities and are members of all major securities exchanges. The Partnership or its Consolidated Entities may lose all or a portion of the assets held by these banks or brokerage firms if they become insolvent or fail to perform pursuant to the terms of their obligations. While both the U.S. Bankruptcy Code and the Securities Investor Protection Act of 1970 seek to protect customer property in the event of a broker-dealer's failure, insolvency or liquidation, the Partnership and its Consolidated Entities might be unable to recover the full value of their assets or incur losses due to their assets being unavailable for a period of time.

24

005142

HCMLPHMIT00002573

# Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2018**

**Leverage Risk**

The Consolidated Entities may borrow funds from brokers, banks and other lenders to finance its trading operations. The use of leverage can, in certain circumstances, magnify the losses to which the Consolidated Entities' investment portfolio may be subject. The use of margin and short-term borrowings creates several risks for the Consolidated Entities. If the value of the Consolidated Entities' securities fall below the margin level required by a counterparty, additional margin deposits would be required. If the Consolidated Entities are unable to satisfy a margin call, the counterparty could liquidate the Consolidated Entities' positions in some or all of the financial instruments that are in the account at the prime broker and cause the Consolidated Entities to incur significant losses. In addition, to the extent the Consolidated Entities have posted excess collateral for margin transactions, there is a risk that the counterparty will fail to fulfill its obligation to return the full value of that collateral.

The failure to satisfy a margin call, or the occurrence of other material defaults under margin or other financing agreements, may trigger cross-defaults under the Consolidated Entities' agreements with other brokers, lenders, clearing firms or other counterparties, multiplying the adverse impact to the Consolidated Entities. In addition, because the use of leverage allows the Consolidated Entities to control positions worth significantly more than its investment in those positions, the amount that the Consolidated Entities may lose in the event of adverse price movements is high in relation to the amount of their investment.

In the event of a sudden drop in the value of the Consolidated Entities' assets, the Consolidated Entities may not be able to liquidate assets quickly enough to satisfy their margin or collateral requirements. As a result, the Consolidated Entities may become subject to claims of financial intermediaries, and such claims could exceed the value of its assets. The banks and dealers that provide financing to the Consolidated Entities have the ability to apply discretionary margin, haircut, and financing and collateral valuation policies. Changes by banks and dealers in any of the foregoing may result in large margin calls, loss of financing and forced liquidations of positions and disadvantageous prices.

**Foreign Currency Risk**

The Partnership and its Consolidated Entities may invest in securities or maintain cash denominated in currencies other than the U.S. dollar. The Partnership and its Consolidated Entities are exposed to risk that the exchange rate of the U.S. dollar relative to other currencies may change in a manner that has an adverse effect on the reported value of the Partnership and its Consolidated Entities' assets and liabilities denominated in currencies other than the U.S. dollar.

**Concentration of Investments**

At December 31, 2018, the Consolidated Entities' investments and derivative contracts were predominantly concentrated in the United States and Cayman Islands and across several industries.

**Litigation Risk**

The Partnership and its Consolidated Entities are periodically subject to legal actions arising from the ordinary course of business. The ultimate outcome of these cases is inherently uncertain and could result in additional losses to the Partnership and/or its Consolidated Entities. Refer to Note 14 for a discussion of open litigation.

005143
HCMLPHMIT00002574

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Notes to Consolidated Financial Statements**
**December 31, 2018**

7.    **Intangible Assets**

On May 12, 2017, HCM Latin America, as manager, purchased all rights and obligations for management of a certain hedge fund. As of December 31, 2018, the current carrying value of these rights and obligations is $3.0 million, which consists of the original purchase price of $2.0 million and a deferred purchase price of $1.0 million and is reflected in the Consolidated Balance Sheet.

The Partnership and its Consolidated Entities perform an impairment test as required by U.S. GAAP on a yearly basis.  The Partnership has determined that an impairment charge was necessary for the value obtained on December 19, 2017, for subadvisory and shared servicing rights from an affiliate. As of December 31, 2018, the asset was determined to be fully impaired and an impairment expense of $2.8 million is reflected in the Consolidated Statement of Income.

8.    **Related Party Transactions**

**Investments Under Common Control**
Certain members of the Partnership's management serve as members on the Boards of Directors for some of the companies with which it invests.  Because these individuals participate in the management of these companies, investments held by the Partnership and its subsidiaries in these companies may, from time to time, not be freely tradable.  As of December 31, 2018, the Partnership and its Consolidated Entities held the following investments in these companies:

*(in thousands)*

| Issuer | Type of Investment | Fair Value |
|---|---|---|
| Metro-Goldwyn-Mayer, Inc. | Common Stock | 296,695 |
| Cornerstone Healthcare Group Holding, Inc. | Common Equity | 59,539 |
| OmniMax International, Inc. | Term Loan | 52,464 |
| JHT Holdings Inc. | Common Stock | 25,099 |
| OmniMax International, Inc. | Common Equity | 7,804 |
| Carey International, Inc. | Term Loan | 5,401 |
| CCS Medical, Inc. | Loan | 5,960 |
| Trussway Holdings, LLC | Common Equity | 4,582 |
| JHT Holdings Inc. | Term Loan | 4,160 |
| OmniMax International, Inc. | Warrants | 551 |

26

005144
HCMLPHMIT00002575

# Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2018**

Certain investments are issued and managed by affiliates of the Partnership. These investments are subject to the same valuation policies and procedures as similar investments within the same level of the fair value hierarchy. As of December 31, 2018, the Partnership and the Consolidated Entities held the following investments that were issued and managed by affiliates of the Partnership:

*(in thousands)*

| Issuer | Type of Investment | Fair Value |
|---|---|---:|
| Harko, LLC | LLC Units | $ 2,721 |
| Highland CLO Funding | Partnership Interest | 610 |
| Highland Energy MLP Fund | Mutual Fund Shares | 1,363 |
| Highland Floating Rate Opportunities Fund | Closed-end mutual fund shares | 832 |
| Highland Global Allocation Fund | Mutual Fund Shares | 2,173 |
| Highland Long/Short Equity Fund | Mutual Fund Shares | 267 |
| Highland Long/Short Healthcare Fund | Mutual Fund Shares | 2,963 |
| Highland Master Loan Fund | Limited Partnership interest | 106 |
| Highland Merger Arbitrage Fund | Mutual Fund Shares | 1,321 |
| Highland Opportunistic Credit Fund | Mutual Fund Shares | 5,477 |
| Highland Premier Growth Equity Fund | Mutual Fund Shares | 64 |
| Highland Small Cap Equity Fund | Mutual Fund Shares | 465 |
| NexPoint Strategic Opportunities Fund | Mutual Fund Shares | 36,563 |
| NexPoint Multi Family Capital Trust | REIT | 10,881 |
| NexPoint Real Estate Strategies Fund | Closed-end mutual fund shares | 1,454 |
| NexPoint Residential Trust | REIT | 85,223 |

## Expenses Reimbursable by Funds Managed
In the normal course of business, the Partnership typically pays invoices it receives from vendors for various services provided to the investment funds the Partnership manages. A summary of these eligible reimbursable expenses are then submitted to the trustee/administrator for each respective fund, typically on a quarterly basis, and the Partnership receives payment as reimbursement for paying the invoices on behalf of the respective funds. As of December 31, 2018, approximately $6.4 million in reimbursable expenses were due from various affiliated funds and entities for these eligible expenses, and is included in *Other Assets* in the accompanying Consolidated Balance Sheet.

## Accounts Held with Related Party
During the year the Partnership and its Consolidated Entities maintained bank accounts at NexBank, SSB ("NexBank"), a related party by way of common control. As of December 31, 2018, balances in these accounts were approximately $0.5 million, a portion of which exceeds Federal deposit insurance limits.

## Investment in Affiliated Loans
During the year, certain subsidiaries of the Partnership were invested in several bank loans in which NexBank was the agent bank. Interest earned on the loans during the year was approximately $10.4 million and is included in interest and investment income in the Consolidated Statement of Income. At December 31, 2018, these subsidiaries were invested in NexBank agented loans with commitments and market values totaling approximately $83.3 million and $56.5 million, respectively.

005145

HCMLPHMIT00002576

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2018**

**Notes and Other Amounts Due from Affiliates**

During the year ended December 31, 2018, Highland Capital Management Fund Advisors, L.P. ("HCMFA") did not issue any new promissory notes to the Partnership. The outstanding promissory notes accrue interest at a rate ranging from 1.97 - 2.62%, the mid-term applicable federal rate as promulgated by the Internal Revenue Service. As of December 31, 2018 total interest and principal due on outstanding promissory notes was approximately $5.3 million and is payable on demand. The Partnership will not demand payment on amounts owed that exceed HCMFA's excess cash availability prior to May 31, 2021. The fair value of the Partnership's outstanding notes receivable approximates the carrying value of the notes receivable.

During the year ended December 31, 2018, NexPoint Advisors, L.P. ("NPA") did not issue any new promissory notes to the Partnership. The outstanding promissory note accrues interest at a rate of 6.0%. As of December 31, 2018 total interest and principal due on the outstanding promissory note was approximately $28.6 million and is payable in annual installments throughout the term of the loan. The fair value of the Partnership's outstanding notes receivable approximates the carrying value of the notes receivable.

During the year ended December 31, 2018, HCRE Partners, LLC ("HCRE") issued a promissory note to the Partnership in the amount of $0.8 million. The note accrues interest at a rate of 8.0%. As of December 31, 2018 total interest and principal due on outstanding promissory notes was approximately $9.4 million and is generally payable in annual installments throughout the term of the note. The fair value of the Partnership's outstanding notes receivable approximates the carrying value of the notes receivable.

During the year ended December 31, 2018, Highland Capital Management Services, Inc. ("HCMSI") issued promissory notes to the Partnership in the aggregate amount of $0.4 million. All outstanding promissory notes accrue interest at a rate ranging from 2.75% – 3.05%, the long-term applicable federal rate as promulgated by the Internal Revenue Service. As of December 31, 2018 total interest and principal due on outstanding promissory notes was approximately $14.0 million and is generally payable in annual installments throughout the term of the notes. The fair value of the Partnership's outstanding notes receivable approximates the carrying value of the notes receivable.

During the year ended December 31, 2018, James Dondero ("Dondero") issued promissory notes to the Partnership in the aggregate amount of $14.9 million. The outstanding promissory notes accrue interest at a rate ranging from 2.03% – 2.95%, the average long-term applicable federal rate as promulgated by the Internal Revenue Service. As of December 31, 2018 total interest and principal due on outstanding promissory notes was approximately $29.2 million and is generally payable in annual installments throughout the term of the note. The fair value of the Partnership's outstanding notes receivable approximates the carrying value of the notes receivable.

During the year ended December 31, 2018, Mark Okada ("Okada") did not issue any new promissory notes to the Partnership. All outstanding promissory notes accrue interest at a rate of 2.25%, the average long-term applicable federal rate as promulgated by the Internal Revenue Service. As of December 31, 2018 total interest and principal due on outstanding promissory notes was approximately $1.3 million and is payable on demand. The fair value of the Partnership's outstanding notes receivable approximates the carrying value of the notes receivable.

005146
HCMLPHMIT00002577

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2018**

During the year ended December 31, 2018, The Dugaboy Investment Trust ("Dugaboy") did not issue any new promissory notes to the Partnership. All outstanding promissory notes accrue interest at a rate of 3.26%, the average long-term applicable federal rate as promulgated by the Internal Revenue Service. As of December 31, 2018 total interest and principal due on outstanding promissory notes was approximately $20.1 million and is payable in annual installments throughout the term of the note. The fair value of the Partnership's outstanding notes receivable approximates the carrying value of the notes receivable.

On December 21, 2015, the Partnership entered into a contribution agreement (the "Contribution Agreement") with an affiliated trust.  Pursuant to the Contribution Agreement, a note (the "Note Receivable") in the amount of $63.0 million was due to the Partnership.  The Note Receivable will mature on December 21, 2030.  The Note Receivable accrues interest at a rate of 2.61% per annum. Accrued interest is paid-in-kind, with principal receipts occurring pursuant to a note amortization schedule, with such annual receipts commencing December 21, 2019. During the year, the trust pre-paid $2.1 million. As of December 31, 2018 total interest and principal due on the Note Receivable was approximately $60.2 million.

**Services Performed by or on Behalf of an Affiliate**
In March 2007, Highland Capital of New York, Inc. a New York corporation ("Highland New York"), was formed and has performed marketing services for the Partnership and its affiliates in connection with the Partnership's investment management and advising business, including, but not limited to, assisting Highland Capital in the marketing and sales of interests in investment pools for which Highland Capital serves as the investment manager.  The Partnership is charged a marketing services fee for the services that Highland New York performs on the Partnership's behalf. Separately, the Partnership pays for, and seeks reimbursement for, various operating expenses on behalf of Highland New York. For the year ended December 31, 2018, total marketing fee expense charged to the Partnership by Highland New York was approximately $0.9 million. Because the Partnership funded Highland New York's operations, including amounts above the marketing fee, as of December 31, 2018, net amounts owed to the Partnership by Highland New York was approximately $4.9 million.

Effective December 15, 2011, the Partnership commenced performing services on behalf of HCMFA, a Delaware limited partnership and registered investment advisor. Services include, but are not limited to compliance, accounting, human resources, IT and other back office support functions. The Partnership charges a fee for the services performed. For the year ended December 31, 2018, the total fee charged by the Partnership to HCMFA was approximately $2.7 million and as of December 31, 2018, amount owed to the Partnership by HCMFA was approximately $0.2 million.

Effective July 29, 2010, the Partnership commenced performing services on behalf of Falcon E&P Opportunities GP, LLC. ("Falcon"), a Delaware limited liability company and registered investment advisor. Services include, but are not limited to compliance, accounting, human resources, IT and other back office support functions. The Partnership charges a fee for the services performed. For the year ended December 31, 2018, the total fee charged by the Partnership to Falcon was approximately $0.2 million and as of December 31, 2018, no amounts were owed to the Partnership by Falcon for services rendered.

005147
HCMLPHMIT00002578

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Notes to Consolidated Financial Statements**
**December 31, 2018**

Effective March 17, 2017, pursuant to the Third Amended and Restated Sub-Advisory Agreement and the Fourth Amended and Restated Shared Services Agreement, the Partnership continued performing services on behalf of Acis Capital Management, L.P. ("Acis"), a Delaware limited partnership and registered investment advisor. Subadvisory services include investment advisory services and shared services include, but are not limited to compliance, accounting, human resources, IT and other back office support functions. The Partnership charges a fee for the services performed. For the year ended December 31, 2018, the total fees charged by the Partnership to Acis for shared services and subadvisory fees were approximately $2.6 million and $3.4 million, respectively. As of December 31, 2018, amount owed to the Partnership by Acis was approximately $6.0 million. Although such fees were earned in 2018, all related revenues and receivables recorded by the Partnership have been fully reserved against based on estimated collectability.

Effective January 1, 2018, pursuant to the Third Amended and Restated Shared Services Agreement, the Partnership commenced performing services on behalf of NPA. Services include, but are not limited to compliance, accounting, human resources, IT and other back office support functions. The Partnership charges a fee for the services performed. For the year ended December 31, 2018, the total fee charged by the Partnership to NexPoint was approximately $2.0 million and as of December 31, 2018, no amounts were owed to the Partnership by NexPoint for services rendered.

Effective September 1, 2017, pursuant to the Third Amended and Restated Shared Services Agreement dated September 26, 2017, the Partnership commenced performing services on behalf of NexBank Capital, Inc. ("NexBank Capital"), financial services company. Services include, but are not limited to compliance, accounting, human resources, IT and other back office support functions. The Partnership charges a fee for the services performed. For the year ended December 31, 2018, the total fee charged by the Partnership to NexBank Capital was approximately $0.2 million and as of December 31, 2018, $0.1 million was owed to the Partnership by NexBank Capital for services rendered.

Effective September 1, 2017, pursuant to the Third Amended and Restated Investment Advisory Agreement dated September 26, 2017, the Partnership commenced performing services on behalf of NexBank SSB, ("NexBank"), a Texas savings bank. Services include investment advisory services. The Partnership charges a fee for the services performed. For the year ended December 31, 2018, the total fee charged by the Partnership to NexBank was approximately $3.6 million and as of December 31, 2018, amounts owed by NexBank to the Partnership for services rendered were approximately $0.9 million.

Effective April 1, 2015, the Partnership commenced performing services on behalf of NexPoint Real Estate Advisors, L.P. ("NREA"). Services include, but are not limited to compliance, accounting, human resources, IT and other back office support functions. NREA is charged a fee for the services provided. For the year ended December 31, 2018, the total fee charged to NREA by the Partnership was approximately $1.0 million and as of December 31, 2018, no amounts were owed by NREA to the Partnership for services rendered.

Effective January 1, 2018, the Partnership entered in to a Payroll Reimbursement Agreement (the "Agreement") with HCMFA. Under the Agreement, HCMFA reimburses the Partnership for the cost of any dual employees of the Partnership and HCMFA and who provide advice to registered investment companies advised by HCMFA. For the year ended December 31, 2018, the total fees charged by the Partnership to HCMFA was approximately $6.2 million and as of December 31, 2018, no amounts were owed by HCMFA to the Partnership for services rendered.

005148
HCMLPHMIT00002579

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2018**

Effective January 1, 2018, the Partnership entered in to a Payroll Reimbursement Agreement (the "Agreement") with NPA. Under the Agreement, NPA reimburses the Partnership for the cost of any dual employees of the Partnership and NPA and who provide advice to registered investment companies advised by NPA. For the year ended December 31, 2018, the total fees charged by the Partnership to NPA was approximately $4.3 million and as of December 31, 2018, no amounts were owed by NPA to the Partnership for services rendered.

**Investment liability**
On December 28, 2016, the Partnership entered into a purchase and sale agreement with The Get Good Nonexempt Trust ("Get Good"). In consideration for a note receivable from an affiliate, the Partnership sold or participated certain investments that it already held, with the participated investments carrying an aggregate market value of $21.3 million as of the date of the transaction. The fair value of the Agreement will fluctuate with the fair value of the securities, throughout the term of the Agreement. As of December 31, 2018, the fair value of the participated investments was $12.1 million.

On December 5, 2016, Select entered in to Stock Purchase Agreements with two counterparties for shares of Trussway Industries ("Trussway"), in exchange for promissory notes in the aggregate amount of $15.4 million. The promissory notes accrue interest at a rate of 2.07%, the long-term Applicable Federal Rate, compounded annually. Select must pay one-twenty-fifth of the initial note amounts, plus any additional principal attributable to the sale of Trussway, along with accumulated interest on an annual basis. The promissory notes will mature on December 5, 2041. As of December 31, 2018 the remaining principal payable on the promissory notes was $14.8 million. The fair value of Select's outstanding notes payable approximates the carrying value of the notes payable.

During 2014 and 2015, Select received multiple master securities loan agreements (the "Securities Agreements") for securities borrowed from an affiliate. The Securities Agreements accrue interest at a rate ranging from 0.38 - 0.48%, the short term Applicable Federal Rate. The fair value of the securities loans will fluctuate with the fair value of the borrowed securities, throughout the term of the Securities Agreements. As of December 31, 2018, the fair value of the loans was $19.2 million. The fair value of Select's securities loans approximates the carrying value of the securities loans.

9.    **Notes Payable**

**Promissory Notes and Loan Agreements**
On August 17, 2015, the Partnership entered in to a promissory note with Frontier State Bank ("Frontier") in the amount of $9.5 million. Pursuant to the First Amended and Restated Loan Agreement, dated March 29, 2018, Frontier made an additional loan to the Partnership in the amount of $1.0 million. The promissory note accrues interest at the 3 month LIBOR rate plus 4.75%, adjusted each date of change, per annum. Accrued interest shall be paid quarterly. The promissory note is collateralized by shares of voting common stock of MGM Holdings, Inc and will mature on August 17, 2021. As of December 31, 2018 the remaining principal payable on the promissory note was $7.2 million. The fair value of the Partnership's outstanding notes payable approximates the carrying value of the notes payable.

On August 25, 2015, Highland Select Equity Fund, L.P. ("Select") entered in to a promissory note with Dugaboy in the amount of $1.0 million. The promissory note accrues interest at a rate of 2.82%, the long-term Applicable Federal Rate, compounded annually. The accrued interest and principal of the promissory note is due and payable on demand. As of December 31, 2018 the remaining principal payable on the promissory note was $1.0 million.  The fair value of Select's outstanding notes payable approximates the carrying value of the notes payable.

31

005149

HCMLPHMIT00002580

# Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2018**

On October 7, 2016, the Partnership entered in to a promissory note with Acis in the amount of $12.7 million. The Partnership is required to make certain payments of the initial note amount, plus accumulated interest on May 31 of each year, until maturity. The promissory note is set to mature on May 31, 2020. The promissory note accrues interest at a rate of 3.00% per annum. Pursuant to an Assignment and Transfer Agreement dated November 3, 2017, between Acis and an affiliate of the Partnership, Acis transferred the promissory note to the affiliate. As of December 31, 2018 the remaining principal payable on the promissory note was $9.5 million.

On August 29, 2016, Maple Avenue Holdings, LLC ("Maple") entered in to a promissory note with Great Southern Bank in the amount of $3.9 million. Maple must pay principal and accrued interest installments on a monthly basis until maturity. The promissory note will mature on August 29, 2019. The promissory note accrues interest at a rate of 3.26% per annum. As of December 31, 2018 the remaining principal payable on the promissory note was $3.4 million. The fair value of Maple's outstanding notes payable approximates the carrying value of the notes payable.

On May 1, 2018, Multi Strategy Master executed a loan agreement (the "Loan Agreement") with NexBank SSB, an affiliate of the Partnership. The original principal borrowed under the Loan Agreement was $36.5 million. The loan bears interest at the 1-month LIBOR rate plus 3.25%. The maturity date is May 1, 2021. For the year ended December 31, 2018, the Multi Strategy Master incurred and paid approximately $1.3 million of interest expense, and made aggregate principal payments of approximately $1.9 million. Shares of Metro-Goldwyn Mayer, Inc. are pledged as collateral on the loan. The loan was used to purchase an outstanding redemption of $38.7 million at a discount resulting in a reallocation of partners' capital on the Statement of Changes in Partners' Capital. As of December 31, 2018 the remaining principal payable on the loan was $34.6 million. The fair value of Multi Strategy Master's outstanding loan approximates the carrying value of the loan.

## 10. Due to Broker

As of December 31, 2018 the due to broker balance of approximately $116.6 million is payable to financing counterparties for margin transactions.

## 11. Commitments and Contingencies

### Contracts in the Normal Course of Business

In the normal course of business the Partnership and its subsidiaries may enter into contracts which provide general indemnifications and contain a variety of presentations and warranties that may expose the Partnership and its subsidiaries to some risk of loss. The Partnership regularly co-invests in vehicles it advises. The amounts committed are within the Partnerships capacity to fund when capital is called. In addition to the other financial commitments discussed in the consolidated financial statements, the amount of future losses arising from such undertakings, while not quantifiable, is not expected to be significant. Also refer to Note 8 for commitments of certain subsidiaries in affiliated loans.

### Loans as Co-Borrower

The Partnership is a named co-borrower in a Bridge Loan Agreement ("Loan") dated September 26, 2018 with Key Bank for $556.3 million. The Loan accrues interest at the 3 month LIBOR rate plus 3.75%, per annum. Accrued interest shall be paid monthly by a borrower other than the Partnership ("Lead Borrower"). The Loan will mature on September 26, 2019. The carrying value of the Loan is reflected on the financial statements of the Lead Borrower.

005150

HCMLPHMIT00002581

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2018**

**Legal Proceedings**

The Partnership is a party to various legal proceedings arising in the ordinary course of business. While any proceeding or litigation has an element of uncertainty, management believes that the final outcome will not have a materially adverse effect on the Partnership's Consolidated Balance Sheet, Consolidated statement of Income, or its liquidity.  See Note 14.

**Operating Leases**

The Partnership has an operating lease and associated commitments related to its main office space. Future minimum lease payments under operating lease commitments with initial or non-cancelable terms in excess of one year, at inception, are as follows:

*(in thousands)*

**Years Ending December 31,**

| | |
|---|---:|
| 2019 | 1,550 |
| 2020 | 1,566 |
| 2021 | 1,567 |
| 2022 | 522 |
| Total | $ 5,205 |

Total rental expense of the Partnership and its Consolidated Entities for operating leases was approximately $1.5 million for the year ended December 31, 2018.

**12.    Post Retirement Benefits**

In December 2006, the Partnership created a defined benefit plan to which all employees and certain affiliated persons could participate if they met the eligibility requirements.  The Partnership uses a December 31 measurement date for its defined benefit plan.

Effective December 31, 2008, the Partnership amended the plan by freezing it to new participants and additional benefit accruals.  A new amendment became effective on January 1, 2011 in which a named participant was admitted to the plan and is eligible to earn benefit accrual. 2018 expense reflects a service cost charge for the value of the new participant's benefit earned during 2018.

The Partnership's benefit plan obligation and plan assets for the year ended December 31, 2018 are reconciled in the tables below.

005151
HCMLPHMIT00002582

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Notes to Consolidated Financial Statements**
**December 31, 2018**

*(in thousands)*

| Change in projected benefit obligation | | 2018 |
|---|---|---|
| Benefit obligation at beginning of year | $ | 2,578 |
| Service cost | | 6 |
| Interest cost | | 80 |
| Plan participants' contributions | | - |
| Amendments | | - |
| Actuarial loss/(gain) | | 386 |
| Acquisition/(divestiture) | | - |
| Benefits paid | | (121) |
| Benefit obligation at end of year | $ | 2,929 |

| Change in plan assets | | 2018 |
|---|---|---|
| Fair value of plan assets at beginning of year | $ | 2,924 |
| Actual return on plan assets | | 449 |
| Acquisition/(divestiture) | | - |
| Employer contribution | | - |
| Plan participants' contributions | | - |
| Benefits paid | | (121) |
| Other increase/(decrease) | | - |
| Fair value of plan assets at year end | $ | 3,252 |

| Reconciliation of Funded Status | | 2018 |
|---|---|---|
| Accumulated benefit obligation at end of year | $ | 2,929 |
| Projected benefit obligation at end of year | | 2,929 |
| Fair value of assets at end of year | | 3,252 |
| Funded status at end of year | $ | 323 |

The Partnership did not contribute to the plan during 2018.

**Assumptions**

Weighted-average assumptions used to determine benefit obligations at December 31, 2018:

| | |
|---|---|
| Discount rate | 3.19% |
| Rate of compensation increase | N/A |

34

005152

HCMLPHMIT00002583

# Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2018**

Weighted-average assumptions used to determine net periodic benefit cost at December 31, 2018:

| | |
|---|---|
| Discount rate | 3.19% |
| Expected long-term return on plan assets | 3.19% |
| Rate of compensation increase | N/A |

As of December 31, 2018, there were no plan assets categorized as Level 3.

## 13.    Income Taxes

**The Partnership**

For U.S. income tax purposes, the Partnership is treated as a pass-through-entity, which means it is not subject to income taxes under current Internal Revenue Service or state and local guidelines. Each partner is individually liable for income taxes, if any, on their share of the Partnership's net taxable income.

The Partnership files tax returns as prescribed by the tax laws of the jurisdictions in which it operates. In the normal course of business, the Partnership is subject to examination by federal and foreign jurisdictions, where applicable.  As of December 31, 2018, the tax years that remain subject to examination by the major tax jurisdictions under the statute of limitations is from the year 2015 forward (with limited exceptions).

Authoritative guidance on accounting for and disclosure of uncertainty in tax positions requires the General Partner to determine whether a tax position of the Partnership is more likely than not to be sustained upon examination, including resolution of any related appeals or litigation processes, based on the technical merits of the position.  For tax positions meeting the more likely than not threshold, the tax amount recognized in the financial statements is the largest benefit that as a greater than fifty percent likelihood of being realized upon ultimate settlement with the relative taxing authority.  The General Partner does not expect a significant change in uncertain tax positions during the twelve months subsequent to December 31, 2018.

**Multi Strategy Master**

For U.S. income tax purposes, Multi Strategy Master is treated as a pass-through entity, which means it is not subject to federal income taxes under current Internal Revenue Service guidelines. However, each investor may be individually liable for income taxes, if any, on its share of the partnership's net taxable income.

Multi Strategy Master trades in senior secured syndicated bank loans for its own account and, as such, non-U.S. Investment Vehicle investors are generally not subject to U.S. tax on such earnings (other than certain withholding taxes indicated below). The Partnership intends to conduct Multi Strategy Master business in such a manner that it does not constitute a U.S. trade or business, nor does it create a taxable presence in any of the jurisdictions in which the Partnership has offices.

Dividends as well as certain interest and other income received by Multi Strategy Master from sources within the United States may be subject to, and reflected net of, United States withholding tax at a rate of 30% for non-U.S. Investment Vehicles. Interest, dividend and other income realized by Multi Strategy Master from non-U.S. sources and capital gains realized on the sale of securities of non-U.S. issuers may be subject to withholding and other taxes levied by the jurisdiction in which the income is sourced. As of December 31, 2018, a minimal withholding tax liability of $0.9 million is classified within accrued and other liabilities on the Consolidated Balance Sheet.

005153

HCMLPHMIT00002584

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2018**

Multi Strategy Master applies authoritative guidance which requires management to determine whether a tax position Multi Strategy Master is more likely than not to be sustained upon examination, including resolution of any related appeals or litigation processes, based on the technical merits of the position. For tax positions meeting the more likely than not threshold, the tax amount recognized in the consolidated financial statements is the largest benefit that has a greater than fifty percent likelihood of being realized upon ultimate settlement with the relative taxing authority. Management does not expect a significant change in uncertain tax positions during the twelve months subsequent to December 31, 2018.

Multi Strategy Master files tax returns as prescribed by the tax laws of the jurisdictions in which it operates. In the normal course of business, Multi Strategy Master is subject to examination by federal and foreign jurisdictions, where applicable. As of December 31, 2018, the tax years that remain subject to examination by the major tax jurisdictions under the statute of limitations is from the year 2015 forward (with limited exceptions).

**Restoration Onshore**
Restoration Onshore is treated as a pass-through entity for tax purposes, which means it is not subject to U.S. income taxes under current Internal Revenue Service or state and local guidelines. Each Partner is individually liable for income taxes, if any, on its share of the Restoration Onshore's net taxable income. Interest, dividends and other income realized by Restoration Onshore from non-U.S. sources and capital gains realized on the sale of securities of non-U.S. issuers may be subject to withholding and other taxes levied by the jurisdiction in which the income is sourced.

Restoration Onshore applies the authoritative guidance on accounting for and disclosure of uncertainty in tax positions, which requires the General Partner to determine whether a tax position of Restoration Onshore is more likely than not to be sustained upon examination, including resolution of any related appeals or litigation processes, based on the technical merits of the position. For tax positions meeting the more likely than not threshold, the tax amount recognized in the financial statements is the largest benefit that has a greater than fifty percent likelihood of being realized upon ultimate settlement with the relevant taxing authority.

The General Partner has determined that there was no effect on the financial statements from the Partnership's application of this authoritative guidance. The General Partner does not expect a significant change in uncertain tax positions during the twelve months subsequent to December 31, 2018. Restoration Onshore files tax returns as prescribed by the tax laws of the jurisdictions in which it operates. In the normal course of business, the Partnership is subject to examination by federal, state, local and foreign jurisdictions, where applicable. As of December 31, 2018, the tax years that remain subject to examination by the major tax jurisdictions under the statute of limitations is from the year 2015 forward (with limited exceptions).

**Restoration Offshore**
Restoration Offshore is a Cayman Islands exempted company. Under the current laws of the Cayman Islands, there is no income, estate, transfer, sales or other tax payable by Restoration Offshore. Restoration Offshore has elected to be treated as a corporation for U.S. tax purposes and files a protective 1120-F.

The General Partner intends to conduct the business of Restoration Offshore in such a way that Restoration Offshore's activities do not constitute a U.S. trade or business and any income or realized gains earned by Restoration Offshore do not become "effectively connected" with a trade or business carried on in the United States for U.S. federal income tax purposes.

36

005154

HCMLPHMIT00002585

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Notes to Consolidated Financial Statements**
**December 31, 2018**

Dividends as well as certain interest and other income received by the master partnership of Restoration Offshore from sources within the United States may be subject to, and reflected net of, United States withholding tax at a rate of 30% for non-U.S. Investment Vehicles. Interest, dividend and other income realized by the master partnership of Restoration Offshore from non-U.S. sources and capital gains realized on the sale of securities of non-U.S. issuers may be subject to withholding and other taxes levied by the jurisdiction in which the income is sourced.

Restoration Offshore applies the authoritative guidance on accounting for and disclosure of uncertainty in tax positions, which requires the General Partner to determine whether a tax position of Restoration Offshore is more likely than not to be sustained upon examination, including resolution of any related appeals or litigation processes, based on the technical merits of the position. For tax positions meeting the more likely than not threshold, the tax amount recognized in the financial statements is the largest benefit that has a greater than fifty percent likelihood of being realized upon ultimate settlement with the relevant taxing authority. The General Partner has determined that there was no effect on the financial statements from the Partnership's application of this authoritative guidance. The General Partner does not expect a significant change in uncertain tax positions during the twelve months subsequent to December 31, 2018. As of December 31, 2018, the tax years that remain subject to examination by major tax jurisdictions under the statute of limitations is from the year 2015 forward (with limited exceptions).

The remaining entities consolidated by the Partnership had no uncertain tax positions which required accrual under U.S. GAAP.

005155

HCMLPHMIT00002586

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Notes to Consolidated Financial Statements**
**December 31, 2018**

---

14.   **Legal Proceedings**

The Partnership and certain affiliated investment vehicles are defendants in a complaint filed on February 24, 2009 New York state court by UBS Securities LLC and UBS AG, London Branch relating to a CLO warehouse facility with respect to which UBS is attempting to extend liability beyond the two entities that bore sole risk of loss under the governing documents. On February 19, 2010, the court dismissed all claims against the Partnership. UBS since has filed additional claims against the Partnership and certain additional investment vehicles. On July 21, 2011, the First Appellate Division again dismissed two of UBS's four claims against the Partnership, severely limiting the remaining two claims. Additional claims were dismissed in a further appellate ruling on October 31, 2017. Certain claims were tried in July 2018 against two Highland-affiliated defendants, but the trial court has neither ruled on those claims nor indicated when it will set UBS's remaining claims for trial. The second trial, if it occurs, will try all claims against the Partnership and certain affiliated investment vehicles.

From time to time the Partnership is party to disputes with disgruntled former employees. One such matter involves a former employee that improperly recorded internal conversations in violation of the Partnership's internal policies and procedures and potentially certain criminal and regulatory provisions. The former employee obtained a $7.9 million judgment against Highland affiliate Acis Capital Management, L.P. ("Acis"). The employee currently is attempting to collect this judgment through various proceedings in Texas state and federal court, including claims against Highland for receipt of assets from Acis.

In another matter, a Court ruled that a former employee breached his fiduciary duty to the Partnership, owed damages to the Partnership, and ordered the former employee to cease using or disclosing the Partnership's confidential information. Additionally, an award was entered in favor of the employee against a separate incentive compensation entity for an interest that was already escrowed in his name prior to trial and in which he was already vested. The dispute over the amount of his vested interest is on-going. Additionally, the Partnership from time to time must take action to enforce the permanent injunction against the former employee's continuing improper disclosures of the Partnership's confidential information.

The Partnership is engaged in litigation and arbitration with a group of investors relating to the post-financial crisis wind down and distribution of the remaining assets in the Crusader hedge fund vehicle.

The Partnership currently is and has been previously subject to various legal proceedings, many of which have been due to the nature of operating in the distressed loan business in the U.S. The legal process is often the route of last resort to recover amounts due from delinquent borrowers. We currently do not anticipate these proceedings will have a material negative impact to the Partnership.

15.   **Subsequent Events**

On March 18, 2019, SSP Holdings, LLC issued a promissory note to the Partnership in the amount of $2.0 million. The note accrues interest at a rate of 18%.

On March 26, 2019, Trussway Holdings, LLC issued a promissory note to the Partnership in the amount of $1.0 million. The note accrues interest at a rate of 10%.

005156

HCMLPHMIT00002587

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2018**

On March 28, 2019, the Partnership distributed equity to its partners in the aggregate amount of $3.7 million.

On March 28, 2019, the Partnership received a $3.7 million pay down on the outstanding Contribution Agreement.

Over the course of 2019, through the report date, HCMFA issued promissory notes to the Partnership in the aggregate amount of $7.4 million. The notes accrue interest at a rate of 2.39%.

The Partnership has performed an evaluation of subsequent events through June 3, 2019, which is the date the consolidated financial statements were available to be issued, and has determined that there are no other material subsequent events that would require disclosure in the Partnership's consolidated financial statements.

005157
HCMLPHMIT00002588

# Highland Capital Management, L.P.

## (A Delaware Limited Partnership)

## As of And Year Ended December 31, 2018

## Supplemental Information

005158

HCMLPHMIT00002589

# Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Supplemental Consolidating Balance Sheet**
**December 31, 2018**

| (in thousands) | Highland Capital Management, L.P. | | All Other Consolidated Entities | | Eliminations | | Total Consolidated | |
|---|---|---|---|---|---|---|---|---|
| **Assets** | | | | | | | | |
| Cash and cash equivalents | $ | 2,567 | $ | 2,467 | $ | - | $ | 5,034 |
| Investments at fair value (cost $922,027) | | 161,939 | | 683,247 | | - | | 845,186 |
| Equity method investees | | 121,936 | | - | | (121,936) | | - |
| Management and incentive fees receivable | | 2,242 | | 158 | | (7) | | 2,393 |
| Due from brokers | | - | | 598 | | - | | 598 |
| Other assets | | 8,421 | | 5,660 | | (4,826) | | 9,255 |
| Notes and other amounts due from affiliates | | 176,963 | | - | | (3,565) | | 173,398 |
| Intangible assets | | - | | 3,022 | | - | | 3,022 |
| Fixed assets and leasehold improvements, net of accumulated depreciation of $11,197 | | 4,538 | | 43 | | - | | 4,581 |
| **Total assets** | $ | 478,606 | $ | 695,195 | $ | (130,334) | $ | 1,043,467 |
| **Liabilities and partners' capital** | | | | | | | | |
| **Liabilities** | | | | | | | | |
| Accounts payable | $ | 4,838 | $ | 145 | $ | - | $ | 4,983 |
| Securities sold, not yet purchased (proceeds $26,135) | | - | | 32,357 | | - | | 32,357 |
| Withdrawals payable | | - | | 57,009 | | - | | 57,009 |
| Due to affiliates | | 4,542 | | - | | (4,542) | | - |
| Due to brokers | | 31,194 | | 86,108 | | (742) | | 116,560 |
| Due to brokers for securities purchased, not yet settled | | 1,640 | | - | | - | | 1,640 |
| Accrued and other liabilities | | 35,574 | | 4,276 | | 396 | | 40,246 |
| Notes payable | | 16,722 | | 42,540 | | (3,510) | | 55,752 |
| Investment liabilities | | 12,135 | | 33,957 | | - | | 46,092 |
| **Total liabilities** | | 106,645 | | 256,392 | | (8,398) | | 354,639 |
| Non-controlling interest | | - | | 316,867 | | - | | 316,867 |
| Commitments and contingencies | | | | | | | | |
| **Partners' capital** | | 371,961 | | 121,936 | | (121,936) | | 371,961 |
| **Total liabilities and partners' capital** | $ | 478,606 | $ | 695,195 | $ | (130,334) | $ | 1,043,467 |

005159

HCMLPHMIT00002590

# Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Supplemental Consolidating Statement of Income**
**Year Ended December 31, 2018**

| (in thousands) | Highland Capital Management, L.P. | All Other Consolidated Entities | Eliminations | Total Consolidated |
|---|---:|---:|---:|---:|
| **Revenue:** | | | | |
| Management fees | $    35,264 | $    1,336 | $    - | $    36,600 |
| Interest and investment income | 4,857 | 10,974 | - | 15,831 |
| Incentive fees | 17 | 53 | - | 70 |
| Shared services fees | 9,187 | - | - | 9,187 |
| Other income | 1,038 | 1,584 | - | 2,622 |
| Total revenue | 50,363 | 13,947 | - | 64,310 |
| **Expenses:** | | | | |
| Compensation and benefits | 33,670 | 805 | - | 34,475 |
| Professional fees | 14,624 | 3,055 | - | 17,679 |
| Interest expense | 1,695 | 3,975 | - | 5,670 |
| Marketing and advertising expense | 2,413 | - | - | 2,413 |
| Depreciation and amortization | 1,304 | 13 | - | 1,317 |
| Investment and research consulting | 1,082 | - | - | 1,082 |
| Bad debt expense | 7,862 | - | - | 7,862 |
| Other operating expenses | 6,786 | 3,241 | - | 10,027 |
| Total expenses | 69,436 | 11,089 | - | 80,525 |
| **Other Income/(Expense):** | | | | |
| Other income | 9,816 | 10 | - | 9,826 |
| Impairment on intangible assets | (2,830) | - | - | (2,830) |
| Total other income | 6,986 | 10 | - | 6,996 |
| Income/(loss) before investment and derivative activities | (12,087) | 2,868 | - | (9,219) |
| **Realized and unrealized gain/(loss) on investments and derivatives:** | | | | |
| Net realized gain/(loss) on investments and derivatives | 13,397 | (44,914) | - | (31,517) |
| Net change in unrealized loss on investments and derivatives | (406) | (93,349) | - | (93,755) |
| Net realized and unrealized loss on investments and derivatives | 12,991 | (138,263) | - | (125,272) |
| Net unrealized losses from equity method investees | (74,082) | - | 74,082 | - |
| Net loss | (73,178) | (135,395) | 74,082 | (134,491) |
| Net loss attributable to non-controlling interest | - | (61,313) | - | (61,313) |
| Net loss attributable to Highland Capital Management, L.P. | $    (73,178) | $    (74,082) | $    74,082 | $    (73,178) |

005160

HCMLPHMIT00002591

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Supplemental Unconsolidated Balance Sheet**
**December 31, 2018**

*(in thousands)*

**Assets**

Current assets:

| | | |
|---|---|---:|
| Cash and cash equivalents | $ | 2,567 |
| Investments at fair value (cost $263,008*) | | 259,460 |
| Equity method investees | | 24,415 |
| Management and incentive fees receivable | | 2,242 |
| Intangible assets | | 8,421 |
| Notes and other amounts due from affiliates | | 176,963 |
| Fixed assets and leasehold improvements, net of accumulated depreciation of $11,177 | | 4,538 |
| **Total assets** | $ | 478,606 |

**Liabilities and partners' capital**

**Liabilities**

| | | |
|---|---|---:|
| Accounts payable | $ | 4,838 |
| Due to affiliate | | 4,542 |
| Due to brokers | | 31,194 |
| Due to brokers for securities purchased not yet settled | | 1,640 |
| Accrued and other liabilities | | 35,574 |
| Notes payable | | 16,722 |
| Investment liabilities | | 12,135 |
| Total liabilities | | 106,645 |
| Partners' capital | | 371,961 |
| **Total liabilities and partners' capital** | $ | 478,606 |

*Investments, at fair value includes $97.5 million of limited partnership interest ownership of Consolidated Investment Funds, which are discussed in Footnote 2. These entities are consolidated because the Partnership controls the general partner of the respective entities and is responsible for the daily operations of the entities.

The above information was derived from the audited December 31, 2018 consolidated financial statements of Highland Capital Management, L.P. This information should be read in conjunction with such audited financial statements.

005161

HCMLPHMIT00002592

# Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Supplemental Unconsolidated Statement of Income**
**Year Ended December 31, 2018**

*(in thousands)*

| | | |
|---|---:|---:|
| **Revenue:** | | |
| Management fees | $ | 35,264 |
| Incentive fees | | 17 |
| Shared services fees | | 9,187 |
| Interest and investment income | | 4,857 |
| Miscellaneous income | | 1,038 |
| Total revenue | | 50,363 |
| | | |
| **Expenses:** | | |
| Compensation and benefits | | 33,670 |
| Professional fees | | 14,624 |
| Marketing and advertising expense | | 2,413 |
| Interest expense | | 1,695 |
| Depreciation and amortization | | 1,304 |
| Investment and research consulting | | 1,082 |
| Bad debt expense | | 7,862 |
| Other operating expenses | | 6,786 |
| Total expenses | | 69,436 |
| | | |
| **Other Income/(Expense):** | | |
| Other income | | 9,816 |
| Impairment on intangible assets | | (2,830) |
| Total other income | | 6,986 |
| | | |
| Loss before investment activities | | (12,087) |
| | | |
| **Realized and unrealized gains/losses on investments:** | | |
| Net realized gain on sale of investments | | 13,397 |
| Net change in unrealized loss on investments* | | (56,529) |
| Total realized and unrealized loss on investments | | (43,132) |
| | | |
| Loss from equity method investees: | | (17,959) |
| **Net loss** | $ | (73,178) |

*Net change in unrealized gain on investments includes $56.1 million of unrealized loss from holdings of limited partnership interests of Consolidated Investment Funds, which are discussed in Footnote 2. These entities are consolidated because the Partnership controls the general partner of the respective entities and is responsible for the daily operations of the entities.

The above information was derived from the audited December 31, 2018 consolidated financial statements of Highland Capital Management, L.P. This information should be read in conjunction with such audited consolidated financial statements.

005162

HCMLPHMIT00002593

**EXHIBIT 5**

| Form **1065** | | **U.S. Return of Partnership Income** | | | | OMB No. 1545-0123 | |
|---|---|---|---|---|---|---|---|
| Department of the Treasury Internal Revenue Service | | For calendar year 2018, or tax year beginning _____, 2018, ending _____, 20 ____. ▶ Go to *www.irs.gov/Form1065* for instructions and the latest information. | | | | **2018** | |

| A Principal business activity | | Name of partnership | | | | D Employer identification number | |
|---|---|---|---|---|---|---|---|
| INVESTMENT MANAGEMENT | | HIGHLAND CAPITAL MANAGEMENT, LP | | | | 75-2716725 | |
| B Principal product or service | Type or Print | Number, street, and room or suite no. If a P.O. box, see instructions. | | | | E Date business started | |
| INVESTMENT SERVICES | | 300 CRESCENT COURT, SUITE 700 | | | | 07/07/1997 | |
| C Business code number | | City or town, state or province, country, and ZIP or foreign postal code | | | | F Total assets (see instructions) | |
| 523900 | | DALLAS, TX 75201 | | | | $ 1,043,466,149. | |

G Check applicable boxes: **(1)** ☐ Initial return  **(2)** ☒ Final return  **(3)** ☐ Name change  **(4)** ☐ Address change  **(5)** ☐ Amended return

H Check accounting method: **(1)** ☐ Cash  **(2)** ☒ Accrual  **(3)** ☐ Other (specify) ▶ _____

I Number of Schedules K-1. Attach one for each person who was a partner at any time during the tax year. ▶ 6

J Check if Schedules C and M-3 are attached . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☒

**Caution:** Include **only** trade or business income and expenses on lines 1a through 22 below. See instructions for more information.

| | | | | | |
|---|---|---|---|---|---|
| **Income** | 1a | Gross receipts or sales . . . . . . . . . . . . . . . . | 1a | 45,840,305. | |
| | b | Returns and allowances . . . . . . . . . . . . . . . | 1b | | |
| | c | Balance. Subtract line 1b from line 1a . . . . . . . . . . . . . . . . . . . . . . | 1c | 45,840,305. |
| | 2 | Cost of goods sold (attach Form 1125-A) . . . . . . . . . . . . . . . . . . . . . | 2 | |
| | 3 | Gross profit. Subtract line 2 from line 1c . . . . . . . . . . . . . . . . . . . . | 3 | 45,840,305. |
| | 4 | Ordinary income (loss) from other partnerships, estates, and trusts (attach statement) STMT. 1 | 4 | -17,273,319. |
| | 5 | Net farm profit (loss) (attach Schedule F (Form 1040)) . . . . . . . . . . . . . . . | 5 | |
| | 6 | Net gain (loss) from Form 4797, Part II, line 17 (attach Form 4797) . . . . . . . . . . | 6 | |
| | 7 | Other income (loss) (attach statement) . . . . . . . . . . SEE STATEMENT 1 . | 7 | 1,286,935. |
| | 8 | **Total income (loss).** Combine lines 3 through 7 . . . . . . . . . . . . . . . . . | 8 | 29,853,921. |
| **Deductions** (see instructions for limitations) | 9 | Salaries and wages (other than to partners) (less employment credits) . . . . . . . . | 9 | 33,449,969. |
| | 10 | Guaranteed payments to partners . . . . . . . . . . . . . . . . . . . . . . . | 10 | |
| | 11 | Repairs and maintenance . . . . . . . . . . . . . . . . . . . . . . . . . . . | 11 | 26,410. |
| | 12 | Bad debts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 12 | 6,583,982. |
| | 13 | Rent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 13 | 1,615,192. |
| | 14 | Taxes and licenses . . . . . . . . . . . . . . . . SEE STATEMENT 1 . | 14 | 1,918,825. |
| | 15 | Interest (see instructions) . . . . . . . . . . . . . . SEE STATEMENT 1 . | 15 | 1,674,962. |
| | 16a | Depreciation (if required, attach Form 4562) . . . . | 16a | 539,809. | |
| | b | Less depreciation reported on Form 1125-A and elsewhere on return | 16b | | |
| | | | 16c | 539,809. |
| | 17 | Depletion (**Do not** deduct oil and gas depletion.) . . . . . . . . . . . . . . . . | 17 | |
| | 18 | Retirement plans, etc. . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 18 | |
| | 19 | Employee benefit programs . . . . . . . . . . . . . . . . . . . . . . . . . . | 19 | 1,890,053. |
| | 20 | Other deductions (attach statement) . . . . . . . . . . . . . . . . . . . . . . | 20 | 23,266,179. |
| | 21 | **Total deductions.** Add the amounts shown in the far right column for lines 9 through 20 . . . | 21 | 70,965,381. |
| | 22 | **Ordinary business income (loss).** Subtract line 21 from line 8 . . . . . . . . . . . | 22 | -41,111,460. |
| **Tax and Payment** | 23 | Interest due under the look-back method - completed long-term contracts (attach Form 8697) . | 23 | |
| | 24 | Interest due under the look-back method - income forecast method (attach Form 8866) . . . | 24 | |
| | 25 | BBA AAR imputed underpayment (see instructions) . . . . . . . . . . . . . . . . | 25 | |
| | 26 | Other taxes (see instructions) . . . . . . . . . . . . . . . . . . . . . . . . | 26 | |
| | 27 | Total balance due. Add lines 23 through 27 . . . . . . . . . . . . . . . . . . . | 27 | |
| | 28 | Payment (see instructions) . . . . . . . . . . . . . . . . . . . . . . . . . . | 28 | |
| | 29 | Amount owed. If line 28 is smaller than line 27, enter amount owed. . . . . . . . . . | 29 | |
| | 30 | Overpayment. If line 28 is larger than line 27, enter overpayment . . . . . . . . . . | 30 | |

| Sign Here | Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than partner or limited liability company member) is based on all information of which preparer has any knowledge. | | May the IRS discuss this return with the preparer shown below? See instructions. ☒ Yes ☐ No |
|---|---|---|---|
| | ▶ Signature of partner or limited liability company member | ▶ 9-15-19 Date | |

| Paid Preparer Use Only | Print/Type preparer's name | Preparer's signature | Date | Check ☐ if self-employed | PTIN |
|---|---|---|---|---|---|
| | TODD CRAWFORD | Todd Crawford | 09/12/2019 | | P00848788 |
| | Firm's name ▶ DELOITTE TAX LLP | | | Firm's EIN ▶ 86-1065772 | |
| | Firm's address ▶ 1111 BAGBY STREET, SUITE 4500 HOUSTON, TX 77002-2591 | | | Phone no. 713-982-2000 | |

For Paperwork Reduction Act Notice, see separate instructions.    Form **1065** (2018)

JSA 8P1010 2.000    1128CM    1216    V18-6.3F

005164

HCMLPHMIT00001332

| Form **1065** | | **U.S. Return of Partnership Income** | | | OMB No. 1545-0123 | |
|---|---|---|---|---|---|---|

Department of the Treasury
Internal Revenue Service

For calendar year 2018, or tax year beginning _____ , 2018, ending _____ , 20 ____ .
▶ Go to *www.irs.gov/Form1065* for instructions and the latest information.

**2018**

**A** Principal business activity
INVESTMENT MANAGEMENT

**B** Principal product or service
INVESTMENT SERVICES

**C** Business code number
523900

Type or Print

Name of partnership
HIGHLAND CAPITAL MANAGEMENT, LP

Number, street, and room or suite no. If a P.O. box, see instructions.
300 CRESCENT COURT, SUITE 700

City or town, state or province, country, and ZIP or foreign postal code
DALLAS, TX 75201

**D** Employer identification number
75-2716725

**E** Date business started
07/07/1997

**F** Total assets (see instructions)
$ 1,043,466,149.

**G** Check applicable boxes: **(1)** ☐ Initial return  **(2)** ☐ Final return  **(3)** ☐ Name change  **(4)** ☐ Address change  **(5)** ☐ Amended return

**H** Check accounting method: **(1)** ☐ Cash  **(2)** ☒ Accrual  **(3)** ☐ Other (specify) _____

**I** Number of Schedules K-1. Attach one for each person who was a partner at any time during the tax year. ▶ 6

**J** Check if Schedules C and M-3 are attached ................................ ▶ ☒

**Caution:** Include **only** trade or business income and expenses on lines 1a through 22 below. See instructions for more information.

| | | | | |
|---|---|---|---|---|
| **Income** | 1a | Gross receipts or sales . . . . . . . . . . . . . . . . | 1a | 45,840,305. |
| | b | Returns and allowances . . . . . . . . . . . . . . . . | 1b | |
| | c | Balance. Subtract line 1b from line 1a . . . . . . . . . . . . . . . . . . . . | 1c | 45,840,305. |
| | 2 | Cost of goods sold (attach Form 1125-A) . . . . . . . . . . . . . . . . . . | 2 | |
| | 3 | Gross profit. Subtract line 2 from line 1c . . . . . . . . . . . . . . . . . . | 3 | 45,840,305. |
| | 4 | Ordinary income (loss) from other partnerships, estates, and trusts (attach statement) STMT. 1 | 4 | -17,273,319. |
| | 5 | Net farm profit (loss) (attach Schedule F (Form 1040)) . . . . . . . . . . . . . | 5 | |
| | 6 | Net gain (loss) from Form 4797, Part II, line 17 (attach Form 4797) . . . . . . . . | 6 | |
| | 7 | Other income (loss) (attach statement) . . . . . . . . . . SEE STATEMENT 1 . | 7 | 1,286,935. |
| | 8 | **Total income (loss).** Combine lines 3 through 7 . . . . . . . . . . . . . . . | 8 | 29,853,921. |
| **Deductions** (see instructions for limitations) | 9 | Salaries and wages (other than to partners) (less employment credits) . . . . . . . | 9 | 33,449,969. |
| | 10 | Guaranteed payments to partners . . . . . . . . . . . . . . . . . . . . . | 10 | |
| | 11 | Repairs and maintenance . . . . . . . . . . . . . . . . . . . . . . . . | 11 | 26,410. |
| | 12 | Bad debts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 12 | 6,583,982. |
| | 13 | Rent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 13 | 1,615,192. |
| | 14 | Taxes and licenses . . . . . . . . . . . . . . . . . . SEE STATEMENT 1 . | 14 | 1,918,825. |
| | 15 | Interest (see instructions) . . . . . . . . . . . . . . . SEE STATEMENT 1 . | 15 | 1,674,962. |
| | 16a | Depreciation (if required, attach Form 4562) . . . . . . . | 16a | 539,809. | |
| | b | Less depreciation reported on Form 1125-A and elsewhere on return | 16b | | 16c | 539,809. |
| | 17 | Depletion (**Do not deduct oil and gas depletion.**) . . . . . . . . . . . . . | 17 | |
| | 18 | Retirement plans, etc. . . . . . . . . . . . . . . . . . . . . . . . . . | 18 | |
| | 19 | Employee benefit programs . . . . . . . . . . . . . . . . . . . . . . . | 19 | 1,890,053. |
| | 20 | Other deductions (attach statement) . . . . . . . . . . SEE STATEMENT 1 . | 20 | 23,266,179. |
| | 21 | **Total deductions.** Add the amounts shown in the far right column for lines 9 through 20 | 21 | 70,965,381. |
| | 22 | **Ordinary business income (loss).** Subtract line 21 from line 8 . . . . . . . . . | 22 | -41,111,460. |
| **Tax and Payment** | 23 | Interest due under the look-back method - completed long-term contracts (attach Form 8697) . | 23 | |
| | 24 | Interest due under the look-back method - income forecast method (attach Form 8866) . . . | 24 | |
| | 25 | BBA AAR imputed underpayment (see instructions) . . . . . . . . . . . . . . | 25 | |
| | 26 | Other taxes (see instructions) . . . . . . . . . . . . . . . . . . . . . . | 26 | |
| | 27 | **Total balance due.** Add lines 23 through 27 . . . . . . . . . . . . . . . . | 27 | |
| | 28 | Payment (see instructions) . . . . . . . . . . . . . . . . . . . . . . . | 28 | |
| | 29 | **Amount owed.** If line 28 is smaller than line 27, enter amount owed . . . . . . . | 29 | |
| | 30 | **Overpayment.** If line 28 is larger than line 27, enter overpayment . . . . . . . . | 30 | |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than partner or limited liability company member) is based on all information of which preparer has any knowledge.

▶ _____  _____
Signature of partner or limited liability company member   Date

May the IRS discuss this return with the preparer shown below? See instructions.   ☒ Yes  ☐ No

**Paid Preparer Use Only**

| Print/Type preparer's name | Preparer's signature | Date | Check ☐ if self-employed | PTIN |
|---|---|---|---|---|
| TODD CRAWFORD | *Todd Crawford* | 09/12/2019 | | P00848788 |

Firm's name ▶ DELOITTE TAX LLP   Firm's EIN ▶ 86-1065772

Firm's address ▶ 1111 BAGBY STREET, SUITE 4500
HOUSTON, TX 77002-2591   Phone no. 713-982-2000

**For Paperwork Reduction Act Notice, see separate instructions.**   Form **1065** (2018)

JSA
8P1010 2.000
1128CM   1216

V18-6.3F

005165

HCMLPHMIT00001336

# Schedule K-1
## (Form 1065)

Department of the Treasury
Internal Revenue Service

**2018**

For calendar year 2018, or tax year

beginning ___/___/**2018**    ending ___/___/___

## Partner's Share of Income, Deductions, Credits, etc.

➤ **See back of form and separate instructions.**

☐ Final K-1    ☐ Amended K-1    OMB No. 1545-0123

| | **Part III** | Partner's Share of Current Year Income, Deductions, Credits, and Other Items |
|---|---|---|

| # | Item | Amount |
|---|---|---|
| 1 | Ordinary business income (loss) | (103,105) |
| 2 | Net rental real estate income (loss) | 10,876 |
| 3 | Other net rental income (loss) | |
| 4 | Guaranteed payments | |
| 5 | Interest income | 25,256 |
| 6a | Ordinary dividends | 10,556 |
| 6b | Qualified dividends | 1,549 |
| 6c | Dividend equivalents | |
| 7 | Royalties | 2,603 |
| 8 | Net short-term capital gain (loss) | (80,700) |
| 9a | Net long-term capital gain (loss) | 68,910 |
| 9b | Collectibles (28%) gain (loss) | |
| 9c | Unrecaptured section 1250 gain | |
| 10 | Net section 1231 gain (loss) | 12,132 |
| 11 | Other income (loss) | |
| A | | 4,351 |
| I | | 5,119 |
| 12 | Section 179 deduction | |
| 13 | Other deductions | |
| A | | 89 |
| H | | 20,910 |
| * | SEE STMT | |

| # | Item | Amount |
|---|---|---|
| 15 | Credits | |
| 16 | Foreign transactions | |
| A | | VARIOUS |
| B | | 213,008 |
| C | | 203,560 |
| G | | 9,448 |
| I | | 25,111 |
| J | | 238,918 |
| * | SEE STMT | |
| 17 | Alternative minimum tax (AMT) items | |
| A | | 7 |
| D | | 5,475 |
| * | SEE STMT | |
| 18 | Tax-exempt income and nondeductible expenses | |
| C | | 9,036 |
| 19 | Distributions | |
| A | | 12,637 |
| 20 | Other information | |
| A | | 42,819 |
| B | | (2,330) |
| T | | 742 |
| 14 | Self-employment earnings (loss) | |
| * | SEE STMT | |

## Partner's Share of Income, Deductions, Credits, etc.

| | **Part I** | Information About the Partnership |
|---|---|---|

**A** Partnership's employer identification number
75-2716725

**B** Partnership's name, address, city, state, and ZIP code
HIGHLAND CAPITAL MANAGEMENT, LP
300 CRESCENT COURT, SUITE 700
DALLAS, TX 75201

**C** IRS Center where partnership filed return
OGDEN

**D** ☐ Check if this is a publicly traded partnership (PTP)

| | **Part II** | Information About the Partner |
|---|---|---|

**E** Partner's identifying number
95-4440863

**F** Partner's name, address, city, state, and ZIP code
STRAND ADVISORS, INC
300 CRESCENT COURT, SUITE 700
DALLAS, TX 75201

**G** ☒ General partner or LLC member-manager    ☐ Limited partner or other LLC member

**H** ☒ Domestic partner    ☐ Foreign partner

**I1** What type of entity is this partner?    S - CORPORATION

**I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ☐

**J** Partner's share of profit, loss, and capital (see instructions):

| | Beginning | Ending |
|---|---|---|
| Profit | 0.250795 % | 0.250795 % |
| Loss | NONE % | NONE % |
| Capital | 0.250795 % | 0.250795 % |

**K** Partner's share of liabilities:

| | Beginning | Ending |
|---|---|---|
| Nonrecourse | $ 467,696 | $ 310,721 |
| Qualified nonrecourse financing | $ NONE | $ 102,634 |
| Recourse | $ 150,598,314 | $ 136,641,607 |

**L** Partner's capital account analysis:

| | |
|---|---|
| Beginning capital account | $ 1,129,023 |
| Capital contributed during the year | $ |
| Current year increase (decrease) | $ (183,519) |
| Withdrawals & distributions | $ ( 12,637 ) |
| Ending capital account | $ 932,867 |

☐ Tax basis    ☐ GAAP    ☐ Section 704(b) book
☒ Other (explain) BOOK

**M** Did the partner contribute property with a built-in gain or loss?
☐ Yes    ☒ No
If "Yes," attach statement (see instructions)

*See attached statement for additional information.

For IRS Use Only

**For Paperwork Reduction Act Notice, see Instructions for Form 1065.**    www.irs.gov/Form1065    Cat. No. 11394R    Schedule K-1 (Form 1065) 2018

Partner # 1

P10180B265567 08/21/2019 14:26

005166

HCMLPHMIT00001414

| **Schedule K-1**<br>**(Form 1065)**<br>Department of the Treasury<br>Internal Revenue Service | **2018** | | | **Part III** | **Partner's Share of Current Year Income, Deductions, Credits, and Other Items** | |
|---|---|---|---|---|---|---|

Final K-1 ☐    Amended K-1 ☐    OMB No. 1545-0123

For calendar year 2018, or tax year

beginning ___/___/ 2018    ending ___/___/___

**Partner's Share of Income, Deductions, Credits, etc.** ► See back of form and separate instructions.

| Part III (Income items) | Part III (Right column) |
|---|---|
| **1** Ordinary business income (loss) **(20,015)** | **15** Credits |
| **2** Net rental real estate income (loss) **2,111** | |
| **3** Other net rental income (loss) | **16** Foreign transactions |
| | **A** VARIOUS |
| **4** Guaranteed payments | **B** 41,349 |
| **5** Interest income **4,903** | **C** 39,515 |
| **6a** Ordinary dividends **2,049** | **G** 1,834 |
| **6b** Qualified dividends **301** | **I** 4,875 |
| **6c** Dividend equivalents | **J** 46,378 |
| **7** Royalties **505** | **\*** SEE STMT |
| **8** Net short-term capital gain (loss) **(15,665)** | **17** Alternative minimum tax (AMT) items |
| **9a** Net long-term capital gain (loss) **13,377** | **A** 1 |
| **9b** Collectibles (28%) gain (loss) | **D** 1,063 |
| **9c** Unrecaptured section 1250 gain | **\*** SEE STMT |
| **10** Net section 1231 gain (loss) **2,355** | **18** Tax-exempt income and nondeductible expenses |
| **11** Other income (loss) | **C** 1,754 |
| **A** 845 | |
| **I** 994 | **19** Distributions |
| **12** Section 179 deduction | **A** 2,455 |
| **13** Other deductions | **20** Other information |
| **A** 17 | **A** 8,312 |
| **H** 4,059 | **B** (452) |
| **\*** SEE STMT | **T** 144 |
| **14** Self-employment earnings (loss) | **\*** SEE STMT |

## Part I  Information About the Partnership

**A** Partnership's employer identification number
75-2716725

**B** Partnership's name, address, city, state, and ZIP code
HIGHLAND CAPITAL MANAGEMENT, LP
300 CRESCENT COURT, SUITE 700
DALLAS, TX 75201

**C** IRS Center where partnership filed return
OGDEN

**D** ☐ Check if this is a publicly traded partnership (PTP)

## Part II  Information About the Partner

**E** Partner's identifying number
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

**F** Partner's name, address, city, state, and ZIP code
MARK OKADA
3800 WENTWOOD DRIVE
DALLAS, TX 75225

**G** ☐ General partner or LLC member-manager    ☒ Limited partner or other LLC member

**H** ☒ Domestic partner    ☐ Foreign partner

**I1** What type of entity is this partner?  INDIVIDUAL

**I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ☐

**J** Partner's share of profit, loss, and capital (see instructions):

| | Beginning | Ending |
|---|---|---|
| Profit | 0.048684 % | 0.048684 % |
| Loss | NONE % | NONE % |
| Capital | 0.048684 % | 0.048684 % |

**K** Partner's share of liabilities:

| | Beginning | Ending |
|---|---|---|
| Nonrecourse | $ 90,788 | $ 60,316 |
| Qualified nonrecourse financing | $ NONE | $ 19,923 |
| Recourse | $ 12,000,000 | $ 12,000,000 |

**L** Partner's capital account analysis:

| | |
|---|---|
| Beginning capital account | $ 219,163 |
| Capital contributed during the year | $ |
| Current year increase (decrease) | $ (35,622) |
| Withdrawals & distributions | $ ( 2,455 ) |
| Ending capital account | $ 181,086 |

☐ Tax basis    ☐ GAAP    ☐ Section 704(b) book
☒ Other (explain) BOOK

**M** Did the partner contribute property with a built-in gain or loss?
☐ Yes    ☒ No
If "Yes," attach statement (see instructions)

For IRS Use Only

\*See attached statement for additional information.

P10180B265567 08/21/2019 14:26

Partner # 2

005167

HCMLPHMIT00001419

# Schedule K-1
## (Form 1065)

Department of the Treasury
Internal Revenue Service

For calendar year 2018, or tax year

beginning ___/___/ 2018    ending ___/___/___

## Partner's Share of Income, Deductions, Credits, etc.

➤ See back of form and separate instructions.

**2018**

☐ Final K-1    ☐ Amended K-1    OMB No. 1545-0123

| Part III | Partner's Share of Current Year Income, Deductions, Credits, and Other Items |
|---|---|

| | | | |
|---|---|---|---|
| 1 | Ordinary business income (loss) (4,019) | 15 | Credits |
| 2 | Net rental real estate income (loss) 424 | | |
| 3 | Other net rental income (loss) | 16 | Foreign transactions |
| | | A | VARIOUS |
| 4 | Guaranteed payments | B | 8,304 |
| 5 | Interest income 985 | C | 7,936 |
| 6a | Ordinary dividends 412 | G | 368 |
| 6b | Qualified dividends 60 | I | 979 |
| 6c | Dividend equivalents | J | 9,314 |
| 7 | Royalties 101 | * | SEE STMT |
| 8 | Net short-term capital gain (loss) (3,146) | 17 | Alternative minimum tax (AMT) items |
| 9a | Net long-term capital gain (loss) 2,686 | A | |
| | | D | 213 |
| 9b | Collectibles (28%) gain (loss) | * | SEE STMT |
| 9c | Unrecaptured section 1250 gain | 18 | Tax-exempt income and nondeductible expenses |
| 10 | Net section 1231 gain (loss) 473 | C | 352 |
| 11 | Other income (loss) A 170 | | |
| | I 200 | 19 | Distributions A 494 |
| 12 | Section 179 deduction | 20 | Other information |
| 13 | Other deductions A 3 | A | 1,670 |
| | H 815 | B | (91) |
| | * SEE STMT | T | 29 |
| 14 | Self-employment earnings (loss) | * | SEE STMT |

## Part I — Information About the Partnership

**A** Partnership's employer identification number
75-2716725

**B** Partnership's name, address, city, state, and ZIP code
HIGHLAND CAPITAL MANAGEMENT, LP
300 CRESCENT COURT, SUITE 700
DALLAS, TX 75201

**C** IRS Center where partnership filed return
OGDEN

**D** ☐ Check if this is a publicly traded partnership (PTP)

## Part II — Information About the Partner

**E** Partner's identifying number
74-6494106

**F** Partner's name, address, city, state, and ZIP code
THE MARK AND PAMELA OKADA
FAMLY TRUST, EXEMPT TRUST #1
3800 WENTWOOD DRIVE
DALLAS, TX 75225

**G** ☐ General partner or LLC member-manager    ☒ Limited partner or other LLC member

**H** ☒ Domestic partner    ☐ Foreign partner

**I1** What type of entity is this partner?   TRUST

**I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ☐

**J** Partner's share of profit, loss, and capital (see instructions):

| | Beginning | Ending |
|---|---|---|
| Profit | 0.009777 % | 0.009777 % |
| Loss | NONE % | NONE % |
| Capital | 0.009777 % | 0.009777 % |

**K** Partner's share of liabilities:

| | Beginning | Ending |
|---|---|---|
| Nonrecourse | $ 18,232 | $ 12,113 |
| Qualified nonrecourse financing | $ NONE | $ 4,001 |
| Recourse | $ NONE | $ NONE |

**L** Partner's capital account analysis:

| | |
|---|---|
| Beginning capital account | $ 44,012 |
| Capital contributed during the year | $ |
| Current year increase (decrease) | $ (7,153) |
| Withdrawals & distributions | $ ( 494) |
| Ending capital account | $ 36,365 |

☐ Tax basis    ☐ GAAP    ☐ Section 704(b) book
☒ Other (explain)  BOOK

**M** Did the partner contribute property with a built-in gain or loss?
☐ Yes    ☒ No
If "Yes," attach statement (see instructions)

*See attached statement for additional information.

For IRS Use Only

**For Paperwork Reduction Act Notice, see Instructions for Form 1065.**    www.irs.gov/Form1065    Cat. No. 11394R    Schedule K-1 (Form 1065) 2018

Partner # 3

005168

HCMLPHMIT00001424

| | | |
|---|---|---|

**Schedule K-1**
**(Form 1065)**
Department of the Treasury
Internal Revenue Service

**20**__**18**__

For calendar year 2018, or tax year

beginning ___ / ___ / 2018    ending ___ / ___ /

OMB No. 1545-0123

☐ Final K-1    ☐ Amended K-1

**Partner's Share of Income, Deductions, Credits, etc.**    ▶ **See back of form and separate instructions.**

### Part I  Information About the Partnership

**A** Partnership's employer identification number
75-2716725

**B** Partnership's name, address, city, state, and ZIP code
HIGHLAND CAPITAL MANAGEMENT, LP
300 CRESCENT COURT, SUITE 700
DALLAS, TX 75201

**C** IRS Center where partnership filed return
OGDEN

**D** ☐ Check if this is a publicly traded partnership (PTP)

### Part II  Information About the Partner

**E** Partner's identifying number
68-6203494

**F** Partner's name, address, city, state, and ZIP code
THE MARK AND PAMELA OKADA
FAMLY TRUST, EXEMPT TRUST #2
3800 WENTWOOD DRIVE
DALLAS, TX 75225

**G** ☐ General partner or LLC member-manager    ☒ Limited partner or other LLC member

**H** ☒ Domestic partner    ☐ Foreign partner

**I1** What type of entity is this partner?  TRUST

**I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ☐

**J** Partner's share of profit, loss, and capital (see instructions):

| | Beginning | Ending |
|---|---|---|
| Profit | 0.004190 % | 0.004190 % |
| Loss | NONE % | NONE % |
| Capital | 0.004190 % | 0.004190 % |

**K** Partner's share of liabilities:

| | Beginning | Ending |
|---|---|---|
| Nonrecourse  $ | 7,814 | $ 5,191 |
| Qualified nonrecourse financing  $ | NONE | $ 1,715 |
| Recourse  $ | NONE | $ NONE |

**L** Partner's capital account analysis:

| | |
|---|---|
| Beginning capital account  $ | 18,862 |
| Capital contributed during the year  $ | |
| Current year increase (decrease)  $ | (3,065) |
| Withdrawals & distributions  $( | 212 ) |
| Ending capital account  $ | 15,585 |

☐ Tax basis    ☐ GAAP    ☐ Section 704(b) book
☒ Other (explain)  BOOK

**M** Did the partner contribute property with a built-in gain or loss?
☐ Yes    ☒ No
If "Yes," attach statement (see instructions)

### Part III  Partner's Share of Current Year Income, Deductions, Credits, and Other Items

| | | | |
|---|---|---|---|
| 1 | Ordinary business income (loss) | | (1,723) |
| 2 | Net rental real estate income (loss) | | 182 |
| 3 | Other net rental income (loss) | | |
| 4 | Guaranteed payments | | |
| 5 | Interest income | | 422 |
| 6a | Ordinary dividends | | 176 |
| 6b | Qualified dividends | | 26 |
| 6c | Dividend equivalents | | |
| 7 | Royalties | | 43 |
| 8 | Net short-term capital gain (loss) | | (1,348) |
| 9a | Net long-term capital gain (loss) | | 1,151 |
| 9b | Collectibles (28%) gain (loss) | | |
| 9c | Unrecaptured section 1250 gain | | |
| 10 | Net section 1231 gain (loss) | | 203 |
| 11 | Other income (loss) | A | 73 |
| | | I | 85 |
| 12 | Section 179 deduction | | |
| 13 | Other deductions | A | 1 |
| | | H | 349 |
| | | * | SEE STMT |
| 14 | Self-employment earnings (loss) | | |

| | | | |
|---|---|---|---|
| 15 | Credits | | |
| 16 | Foreign transactions | A | VARIOUS |
| | | B | 3,559 |
| | | C | 3,401 |
| | | G | 158 |
| | | I | 420 |
| | | J | 3,992 |
| | | * | SEE STMT |
| 17 | Alternative minimum tax (AMT) items | A | |
| | | D | 91 |
| | | * | SEE STMT |
| 18 | Tax-exempt income and nondeductible expenses | C | 151 |
| 19 | Distributions | A | 212 |
| 20 | Other information | A | 715 |
| | | B | (39) |
| | | T | 12 |
| | | * | SEE STMT |

*See attached statement for additional information.

For IRS Use Only

**For Paperwork Reduction Act Notice, see Instructions for Form 1065.**    www.irs.gov/Form1065    Cat. No. 11394R    **Schedule K-1 (Form 1065) 2018**

P10180B265567 08/21/2019 14:26

Partner # 4

005169

HCMLPHMIT00001429

**Schedule K-1**
**(Form 1065)**
Department of the Treasury
Internal Revenue Service

**20 18**

☐ Final K-1    ☐ Amended K-1    OMB No. 1545-0123

For calendar year 2018, or tax year

beginning ___/___/ 2018    ending ___/___/___

**Partner's Share of Income, Deductions, Credits, etc.**    ► See back of form and separate instructions.

| Part III | Partner's Share of Current Year Income, Deductions, Credits, and Other Items |
|---|---|

| | | | |
|---|---|---|---|
| 1 | Ordinary business income (loss) (76,695) | 15 | Credits |
| 2 | Net rental real estate income (loss) 8,090 | | |
| 3 | Other net rental income (loss) | 16 | Foreign transactions |
| | | A | VARIOUS |
| 4 | Guaranteed payments | B | 158,446 |
| 5 | Interest income 18,786 | C | 151,418 |
| 6a | Ordinary dividends 7,852 | G | 7,028 |
| 6b | Qualified dividends 1,153 | I | 18,679 |
| 6c | Dividend equivalents | J | 177,719 |
| 7 | Royalties 1,936 | * | SEE STMT |
| 8 | Net short-term capital gain (loss) (60,028) | 17 | Alternative minimum tax (AMT) items |
| 9a | Net long-term capital gain (loss) 51,259 | A | 5 |
| 9b | Collectibles (28%) gain (loss) | D | 4,073 |
| | | * | SEE STMT |
| 9c | Unrecaptured section 1250 gain | 18 | Tax-exempt income and nondeductible expenses |
| 10 | Net section 1231 gain (loss) 9,024 | C | 6,722 |
| 11 | Other income (loss) | | |
| A | 3,236 | | |
| I | 3,808 | 19 | Distributions |
| | | A | 9,406 |
| 12 | Section 179 deduction | 20 | Other information |
| 13 | Other deductions | A | 31,850 |
| A | 66 | B | (1,733) |
| H | 15,554 | T | 552 |
| * | SEE STMT | | |
| 14 | Self-employment earnings (loss) | * | SEE STMT |

## Part I    Information About the Partnership

**A**    Partnership's employer identification number
75-2716725

**B**    Partnership's name, address, city, state, and ZIP code
HIGHLAND CAPITAL MANAGEMENT, LP
300 CRESCENT COURT, SUITE 700
DALLAS, TX 75201

**C**    IRS Center where partnership filed return
OGDEN

**D**    ☐ Check if this is a publicly traded partnership (PTP)

## Part II    Information About the Partner

**E**    Partner's identifying number
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

**F**    Partner's name, address, city, state, and ZIP code
THE DUGABOY INVESTMENT TRUST
300 CRESCENT COURT, SUITE 700
DALLAS, TX 75201

**G**    ☐ General partner or LLC member-manager    ☒ Limited partner or other LLC member

**H**    ☒ Domestic partner    ☐ Foreign partner

**I1**    What type of entity is this partner?    TRUST

**I2**    If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ☐

**J**    Partner's share of profit, loss, and capital (see instructions):

| | Beginning | Ending |
|---|---|---|
| Profit | 0.186554 % | 0.186554 % |
| Loss | NONE % | NONE % |
| Capital | 0.186554 % | 0.186554 % |

**K**    Partner's share of liabilities:

| | Beginning | Ending |
|---|---|---|
| Nonrecourse . . $ | 347,896 | $ 231,130 |
| Qualified nonrecourse financing . . $ | NONE | $ 76,344 |
| Recourse . . $ | 35,000,000 | $ 35,000,000 |

**L**    Partner's capital account analysis:

| | |
|---|---|
| Beginning capital account . . . $ | 839,824 |
| Capital contributed during the year . $ | |
| Current year increase (decrease) . $ | (136,505) |
| Withdrawals & distributions . . $( | 9,406 ) |
| Ending capital account . . . . $ | 693,914 |

☐ Tax basis    ☐ GAAP    ☐ Section 704(b) book
☒ Other (explain) BOOK

**M**    Did the partner contribute property with a built-in gain or loss?
☐ Yes    ☒ No
If "Yes," attach statement (see instructions)

*See attached statement for additional information.

For IRS Use Only

**For Paperwork Reduction Act Notice, see Instructions for Form 1065.**    www.irs.gov/Form1065    Cat. No. 11394R    Schedule K-1 (Form 1065) 2018

**Schedule K-1**
**(Form 1065)**
Department of the Treasury
Internal Revenue Service

20**18**

For calendar year 2018, or tax year

beginning ___ / ___ / 2018    ending ___ / ___ / ___

**Partner's Share of Income, Deductions, Credits, etc.**    ► See back of form and separate instructions.

☐ Final K-1    ☐ Amended K-1    OMB No. 1545-0123

| Part III | Partner's Share of Current Year Income, Deductions, Credits, and Other Items |
|---|---|

| | | | |
|---|---|---|---|
| 1 | Ordinary business income (loss) (40,905,903) | 15 | Credits |
| 2 | Net rental real estate income (loss) 4,314,785 | | |
| 3 | Other net rental income (loss) | 16 | Foreign transactions |
| | | A | VARIOUS |
| 4 | Guaranteed payments | B | 84,508,257 |
| 5 | Interest income 10,019,919 | C | 80,759,899 |
| 6a | Ordinary dividends 4,187,952 | G | 3,748,358 |
| 6b | Qualified dividends 614,699 | I | 9,962,559 |
| 6c | Dividend equivalents | J | 94,787,981 |
| 7 | Royalties 1,032,631 | * | SEE STMT |
| 8 | Net short-term capital gain (loss) (32,016,601) | 17 | Alternative minimum tax (AMT) items |
| | | A | 2,588 |
| 9a | Net long-term capital gain (loss) 27,339,116 | D | 2,172,179 |
| 9b | Collectibles (28%) gain (loss) | * | SEE STMT |
| 9c | Unrecaptured section 1250 gain | 18 | Tax-exempt income and nondeductible expenses |
| 10 | Net section 1231 gain (loss) 4,813,197 | C | 3,585,104 |
| 11 | Other income (loss) A 1,726,088 | | |
| | I 2,030,832 | 19 | Distributions |
| | | A | 5,015,296 |
| 12 | Section 179 deduction | 20 | Other information |
| 13 | Other deductions A 35,183 | A | 16,987,726 |
| | H 8,295,974 | B | (924,462) |
| | * SEE STMT | T | 294,297 |
| 14 | Self-employment earnings (loss) | * | SEE STMT |

**Part I    Information About the Partnership**

**A** Partnership's employer identification number
75-2716725

**B** Partnership's name, address, city, state, and ZIP code
HIGHLAND CAPITAL MANAGEMENT, LP
300 CRESCENT COURT, SUITE 700
DALLAS, TX 75201

**C** IRS Center where partnership filed return
OGDEN

**D** ☐ Check if this is a publicly traded partnership (PTP)

**Part II    Information About the Partner**

**E** Partner's identifying number
47-5145562

**F** Partner's name, address, city, state, and ZIP code
HUNTER MOUNTAIN INVESTMENT TRUST
F/B/O BEACON MOUNTAIN, LLC
87 RAILROAD PLACE, SUITE 403
SARATOGA SPRINGS, NY 12866

**G** ☐ General partner or LLC member-manager    ☒ Limited partner or other LLC member

**H** ☒ Domestic partner    ☐ Foreign partner

**I1** What type of entity is this partner?    TRUST

**I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ☐

**J** Partner's share of profit, loss, and capital (see instructions):

| | Beginning | Ending |
|---|---|---|
| Profit | 99.500000 % | 99.500000 % |
| Loss | NONE % | NONE % |
| Capital | 99.500000 % | 99.500000 % |

**K** Partner's share of liabilities:

| | Beginning | Ending |
|---|---|---|
| Nonrecourse | $ 185,553,010 | $ 123,274,967 |
| Qualified nonrecourse financing | $ NONE | $ 40,718,835 |
| Recourse | $ NONE | $ NONE |

**L** Partner's capital account analysis:

| | |
|---|---|
| Beginning capital account | $ 447,926,317 |
| Capital contributed during the year | $ |
| Current year increase (decrease) | $ (72,807,286) |
| Withdrawals & distributions | $ ( 5,015,296 ) |
| Ending capital account | $ 370,103,735 |

☐ Tax basis    ☐ GAAP    ☐ Section 704(b) book
☒ Other (explain)    BOOK

**M** Did the partner contribute property with a built-in gain or loss?
☐ Yes    ☒ No
If "Yes," attach statement (see instructions)

For IRS Use Only

*See attached statement for additional information.

For Paperwork Reduction Act Notice, see Instructions for Form 1065.    www.irs.gov/Form1065    Cat. No. 11394R    **Schedule K-1 (Form 1065) 2018**

Partner # 6

005171

HCMLPHMIT00001439

**EXHIBIT 6**

005172

# Form 1065

Department of the Treasury
Internal Revenue Service

## U.S. Return of Partnership Income

For calendar year 2019, or tax year beginning _____, 2019, ending _____, 20 ___.
▶ Go to *www.irs.gov/Form1065* for instructions and the latest information.

OMB No. 1545-0123

**2019**

| A Principal business activity | | D Employer identification number |
|---|---|---|
| INVESTMENT MANAGEMENT | Name of partnership HIGHLAND CAPITAL MANAGEMENT, LP | 75-2716725 |
| B Principal product or service | Number, street, and room or suite no. If a P.O. box, see instructions. | E Date business started |
| INVESTMENT SERVICES | Type or Print | 300 CRESCENT COURT, SUITE 700 | 07/07/1997 |
| C Business code number | City or town, state or province, country, and ZIP or foreign postal code | F Total assets (see instructions) |
| 523900 | DALLAS, TX 75201 | $ 1,015,968,222. |

G Check applicable boxes: **(1)** ☐ Initial return **(2)** ☐ Final return **(3)** ☐ Name change **(4)** ☐ Address change **(5)** ☐ Amended return

H Check accounting method: **(1)** ☐ Cash **(2)** ☒ Accrual **(3)** ☐ Other (specify) ▶

I Number of Schedules K-1. Attach one for each person who was a partner at any time during the tax year ▶ 6

J Check if Schedules C and M-3 are attached . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☒

K Check if Partnership: **(1)** ☐ Aggregated activities for section 465 at-risk purposes **(2)** ☐ Grouped activities for section 469 passive activity purposes

**Caution:** Include **only** trade or business income and expenses on lines 1a through 22 below. See instructions for more information.

### Income

| | | | | |
|---|---|---|---|---|
| 1a | Gross receipts or sales . . . . . . . . . . . . . . . . . . . . . | 1a | 32,009,311. | |
| b | Returns and allowances . . . . . . . . . . . . . . . . . . . . | 1b | | |
| c | Balance. Subtract line 1b from line 1a . . . . . . . . . . . . . . . . . . . . . . . . . | 1c | 32,009,311. |
| 2 | Cost of goods sold (attach Form 1125-A) . . . . . . . . . . . . . . . . . . . . . . | 2 | |
| 3 | Gross profit. Subtract line 2 from line 1c . . . . . . . . . . . . . . . . . . . . . . | 3 | 32,009,311. |
| 4 | Ordinary income (loss) from other partnerships, estates, and trusts (attach statement) STMT. 1 | 4 | -3,799,517. |
| 5 | Net farm profit (loss) (attach Schedule F (Form 1040 or 1040-SR)) . . . . . . . . . . . . | 5 | |
| 6 | Net gain (loss) from Form 4797, Part II, line 17 (attach Form 4797) . . . . . . . . . . . | 6 | |
| 7 | Other income (loss) (attach statement) . . . . . . . . . . . SEE. STATEMENT. 1. | 7 | -2,886,805. |
| 8 | **Total income (loss).** Combine lines 3 through 7 . . . . . . . . . . . . . . . . . . . | 8 | 25,322,989. |

### Deductions (see instructions for limitations)

| | | | |
|---|---|---|---|
| 9 | Salaries and wages (other than to partners) (less employment credits) . . . . . . . . . . | 9 | 28,941,198. |
| 10 | Guaranteed payments to partners . . . . . . . . . . . . . . . . . . . . . . . . . | 10 | |
| 11 | Repairs and maintenance . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 11 | 18,389. |
| 12 | Bad debts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 12 | 5,139,915. |
| 13 | Rent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 13 | 1,377,540. |
| 14 | Taxes and licenses . . . . . . . . . . . . . . . . . . SEE. STATEMENT. 1. | 14 | 1,761,610. |
| 15 | Interest (see instructions) . . . . . . . . . . . . . . . SEE. STATEMENT. 1. | 15 | 1,910,445. |
| 16a | Depreciation (if required, attach Form 4562) . . . . . . . . | 16a | 423,258. | |
| b | Less depreciation reported on Form 1125-A and elsewhere on return | 16b | | 16c | 423,258. |
| 17 | Depletion **(Do not deduct oil and gas depletion.)** . . . . . . . . . . . . . . . . . . | 17 | |
| 18 | Retirement plans, etc. . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 18 | |
| 19 | Employee benefit programs . . . . . . . . . . . . . . . . . . . . . . . . . . | 19 | 1,808,577. |
| 20 | Other deductions (attach statement) . . . . . . . . . . . SEE. STATEMENT. 1. | 20 | 15,611,953. |
| 21 | Total deductions. Add the amounts shown in the far right column for lines 9 through 20 . . . | 21 | 56,992,885. |
| 22 | **Ordinary business income (loss).** Subtract line 21 from line 8 . . . . . . . . . . . . | 22 | -31,669,896. |

### Tax and Payment

| | | | |
|---|---|---|---|
| 23 | Interest due under the look-back method - completed long-term contracts (attach Form 8697) . | 23 | |
| 24 | Interest due under the look-back method - income forecast method (attach Form 8866) . . . . | 24 | |
| 25 | BBA AAR imputed underpayment (see instructions) . . . . . . . . . . . . . . . . . | 25 | |
| 26 | Other taxes (see instructions) . . . . . . . . . . . . . . . . . . . . . . . . . | 26 | |
| 27 | **Total balance due.** Add lines 23 through 26 . . . . . . . . . . . . . . . . . . . | 27 | |
| 28 | Payment (see instructions) . . . . . . . . . . . . . . . . . . . . . . . . . . | 28 | |
| 29 | **Amount owed.** If line 28 is smaller than line 27, enter amount owed . . . . . . . . . . | 29 | |
| 30 | **Overpayment.** If line 28 is larger than line 27, enter overpayment . . . . . . . . . . | 30 | |

### Sign Here

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than partner or limited liability company member) is based on all information of which preparer has any knowledge.

▶ _[signature]_    ▶ 9/10/20
Signature of partner or limited liability company member    Date

May the IRS discuss this return with the preparer shown below? See instructions. ☒ Yes ☐ No

### Paid Preparer Use Only

| Print/Type preparer's name | Preparer's signature | Date | Check ☐ if self-employed | PTIN |
|---|---|---|---|---|
| TODD CRAWFORD | _T W Crawford_ | 9/6/2020 | | P00848788 |
| Firm's name ▶ DELOITTE TAX LLP | | | Firm's EIN ▶ 86-1065772 |
| Firm's address ▶ 1111 BAGBY STREET, SUITE 4500 HOUSTON, TX 77002-2591 | | | Phone no. 713-982-2000 |

For Paperwork Reduction Act Notice, see separate instructions.

Form **1065** (2019)

JSA  9P1010 1.000

1128CM    1216    V19-6.4F

005173

HCMLPHMIT00001762

Form **1065**

Department of the Treasury
Internal Revenue Service

## U.S. Return of Partnership Income

For calendar year 2019, or tax year beginning _____, 2019, ending _____, 20 _____.

▶ Go to *www.irs.gov/Form1065* for instructions and the latest information.

**2019**

| | | |
|---|---|---|
| **A** Principal business activity <br> INVESTMENT <br> MANAGEMENT | Name of partnership <br> HIGHLAND CAPITAL MANAGEMENT, LP | **D** Employer identification number <br> 75-2716725 |
| **B** Principal product or service <br> INVESTMENT <br> SERVICES | **Type or Print** — Number, street, and room or suite no. If a P.O. box, see instructions. <br> 300 CRESCENT COURT, SUITE 700 | **E** Date business started <br> 07/07/1997 |
| **C** Business code number <br> 523900 | City or town, state or province, country, and ZIP or foreign postal code <br> DALLAS, TX 75201 | **F** Total assets (see instructions) <br> $ 1,015,968,222. |

**G** Check applicable boxes: **(1)** ☐ Initial return **(2)** ☒ Final return **(3)** ☐ Name change **(4)** ☐ Address change **(5)** ☐ Amended return

**H** Check accounting method: **(1)** ☐ Cash **(2)** ☒ Accrual **(3)** ☐ Other (specify) ▶

**I** Number of Schedules K-1. Attach one for each person who was a partner at any time during the tax year ▶ 6

**J** Check if Schedules C and M-3 are attached . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☒

**K** Check if Partnership: **(1)** ☐ Aggregated activities for section 465 at-risk purposes **(2)** ☐ Grouped activities for section 469 passive activity purposes

**Caution:** Include **only** trade or business income and expenses on lines 1a through 22 below. See instructions for more information.

### Income

| | | | | |
|---|---|---|---|---|
| **1a** | Gross receipts or sales . . . . . . . . . . . . . . . . | **1a** | 32,009,311. | |
| **b** | Returns and allowances . . . . . . . . . . . . . . . . | **1b** | | |
| **c** | Balance. Subtract line 1b from line 1a . . . . . . . . . . . . . . . . . . . . . | | | **1c** 32,009,311. |
| **2** | Cost of goods sold (attach Form 1125-A) . . . . . . . . . . . . . . . . . . . | | | **2** |
| **3** | Gross profit. Subtract line 2 from line 1c . . . . . . . . . . . . . . . . . . . | | | **3** 32,009,311. |
| **4** | Ordinary income (loss) from other partnerships, estates, and trusts (attach statement) STMT. 1 | | | **4** −3,799,517. |
| **5** | Net farm profit (loss) (attach Schedule F (Form 1040 or 1040-SR)) . . . . . . . | | | **5** |
| **6** | Net gain (loss) from Form 4797, Part II, line 17 (attach Form 4797) . . . . . . . | | | **6** |
| **7** | Other income (loss) (attach statement) . . . . . . . . . . SEE STATEMENT 1 . | | | **7** −2,886,805. |
| **8** | **Total income (loss).** Combine lines 3 through 7 . . . . . . . . . . . . . . . | | | **8** 25,322,989. |

### Deductions (see instructions for limitations)

| | | | |
|---|---|---|---|
| **9** | Salaries and wages (other than to partners) (less employment credits) . . . . . . | | **9** 28,941,198. |
| **10** | Guaranteed payments to partners . . . . . . . . . . . . . . . . . . . . . | | **10** |
| **11** | Repairs and maintenance . . . . . . . . . . . . . . . . . . . . . . . . | | **11** 18,389. |
| **12** | Bad debts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | **12** 5,139,915. |
| **13** | Rent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | **13** 1,377,540. |
| **14** | Taxes and licenses . . . . . . . . . . . . . . . . . SEE STATEMENT 1 . | | **14** 1,761,610. |
| **15** | Interest (see instructions) . . . . . . . . . . . . . . . SEE STATEMENT 1 . | | **15** 1,910,445. |
| **16a** | Depreciation (if required, attach Form 4562) . . . . . . . . | **16a** 423,258. | |
| **b** | Less depreciation reported on Form 1125-A and elsewhere on return | **16b** | **16c** 423,258. |
| **17** | Depletion (**Do not deduct oil and gas depletion.**) . . . . . . . . . . . . . | | **17** |
| **18** | Retirement plans, etc. . . . . . . . . . . . . . . . . . . . . . . . . | | **18** |
| **19** | Employee benefit programs . . . . . . . . . . . . . . . . . . . . . . . | | **19** 1,808,577. |
| **20** | Other deductions (attach statement) . . . . . . . . . . SEE STATEMENT 1 . | | **20** 15,611,953. |
| **21** | **Total deductions.** Add the amounts shown in the far right column for lines 9 through 20 | | **21** 56,992,885. |
| **22** | **Ordinary business income (loss).** Subtract line 21 from line 8 . . . . . . . . | | **22** −31,669,896. |

### Tax and Payment

| | | |
|---|---|---|
| **23** | Interest due under the look-back method - completed long-term contracts (attach Form 8697) . | **23** |
| **24** | Interest due under the look-back method - income forecast method (attach Form 8866) . . . | **24** |
| **25** | BBA AAR imputed underpayment (see instructions) . . . . . . . . . . . . . . . . | **25** |
| **26** | Other taxes (see instructions) . . . . . . . . . . . . . . . . . . . . . . . . | **26** |
| **27** | **Total balance due.** Add lines 23 through 26 . . . . . . . . . . . . . . . . . | **27** |
| **28** | Payment (see instructions) . . . . . . . . . . . . . . . . . . . . . . . . . | **28** |
| **29** | **Amount owed.** If line 28 is smaller than line 27, enter amount owed . . . . . . . . | **29** |
| **30** | **Overpayment.** If line 28 is larger than line 27, enter overpayment . . . . . . . . . | **30** |

### Sign Here

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than partner or limited liability company member) is based on all information of which preparer has any knowledge.

▶ _____
Signature of partner or limited liability company member

▶ _____
Date

May the IRS discuss this return with the preparer shown below? See instructions. ☒ Yes ☐ No

### Paid Preparer Use Only

| | | | | |
|---|---|---|---|---|
| Print/Type preparer's name <br> TODD CRAWFORD | Preparer's signature <br> *Todd Crawford* | Date <br> 9/6/2020 | Check ☐ if self-employed | PTIN <br> P00848788 |
| Firm's name ▶ DELOITTE TAX LLP | | | | Firm's EIN ▶ 86-1065772 |
| Firm's address ▶ 1111 BAGBY STREET, SUITE 4500 <br> HOUSTON, TX 77002-2591 | | | | Phone no. <br> 713-982-2000 |

For Paperwork Reduction Act Notice, see separate instructions.

JSA 9P1010 1.000

Form **1065** (2019)

1128CM    1216

V19-6.4F

005174

HCMLPHMIT00001766

# Schedule K-1
## (Form 1065)

Department of the Treasury
Internal Revenue Service

**2019**

For calendar year 2019, or tax year

beginning _____ / _____ / 2019  ending _____ / _____ / _____

### Partner's Share of Income, Deductions, Credits, etc.

▶ **See back of form and separate instructions.**

□ Final K-1    □ Amended K-1    OMB No. 1545-0123

---

## Part I — Information About the Partnership

**A** Partnership's employer identification number
75-2716725

**B** Partnership's name, address, city, state, and ZIP code
HIGHLAND CAPITAL MANAGEMENT, LP
300 CRESCENT COURT, SUITE 700
DALLAS, TX 75201

**C** IRS Center where partnership filed return ▶ OGDEN

**D** □ Check if this is a publicly traded partnership (PTP)

## Part II — Information About the Partner

**E** Partner's SSN or TIN (Do not use TIN if a disregarded entity. See inst.)
95-4440863

**F** Name, address, city, state, and ZIP code for partner entered in E. See instructions.
STRAND ADVISORS, INC
300 CRESCENT COURT, SUITE 700
DALLAS, TX 75201

**G** ☒ General partner or LLC member-manager   □ Limited partner or other LLC member

**H1** ☒ Domestic partner   □ Foreign partner

**H2** □ If the partner is a disregarded entity (DE), enter the partner's:
TIN _____ Name _____

**I1** What type of entity is this partner? S CORPORATION

**I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here □

**J** Partner's share of profit, loss, and capital (see instructions):

| | Beginning | Ending |
|---|---|---|
| Profit | 0.250795 % | 0.250795 % |
| Loss | NONE % | NONE % |
| Capital | 0.250795 % | 0.250795 % |

Check if decrease is due to sale or exchange of partnership interest . . □

**K** Partner's share of liabilities:

| | Beginning | Ending |
|---|---|---|
| Nonrecourse . . . $ | 310,721 | $ 294,988 |
| Qualified nonrecourse financing . . . $ | 102,634 | $ 352,799 |
| Recourse . . . $ | 136,641,607 | $ 211,263,413 |

☒ Check this box if Item K includes liability amounts from lower tier partnerships.

**L** Partner's Capital Account Analysis

| | |
|---|---|
| Beginning capital account . . . $ | 932,867 |
| Capital contributed during the year . . $ | |
| Current year net income (loss) . . . $ | (46,485) |
| Other increase (decrease) (attach explanation) $ | 95 |
| Withdrawals & distributions . . $ ( | 9,351 ) |
| Ending capital account . . . $ | 877,126 |

**M** Did the partner contribute property with a built-in gain or loss?
□ Yes   ☒ No   If "Yes," attach statement. See instructions.

**N** Partner's Share of Net Unrecognized Section 704(c) Gain or (Loss)
Beginning . . . . . . . $ _____
Ending . . . . . . . . $ _____

---

## Part III — Partner's Share of Current Year Income, Deductions, Credits, and Other Items

| # | Description | Amount |
|---|---|---|
| 1 | Ordinary business income (loss) | (79,427) |
| 2 | Net rental real estate income (loss) | 59,057 |
| 3 | Other net rental income (loss) | |
| 4a | Guaranteed payments for services | |
| 4b | Guaranteed payments for capital | |
| 4c | Total guaranteed payments | |
| 5 | Interest income | 24,413 |
| 6a | Ordinary dividends | 6,149 |
| 6b | Qualified dividends | 332 |
| 6c | Dividend equivalents | |
| 7 | Royalties | 2,891 |
| 8 | Net short-term capital gain (loss) | (22,160) |
| 9a | Net long-term capital gain (loss) | 53,724 |
| 9b | Collectibles (28%) gain (loss) | |
| 9c | Unrecaptured section 1250 gain | 7 |
| 10 | Net section 1231 gain (loss) | (3,439) |
| 11 | Other income (loss) | |
| A | | 38 |
| * | SEE STMT | |
| 12 | Section 179 deduction | |
| 13 | Other deductions | |
| A | | 11 |
| H | | 14,992 |
| * | SEE STMT | |
| 14 | Self-employment earnings (loss) | |

| # | Description | Amount |
|---|---|---|
| 15 | Credits | |
| 16 | Foreign transactions | |
| A | | VARIOUS |
| B | | 271,740 |
| C | | 275,214 |
| G | | (3,473) |
| I | | 19,783 |
| J | | 167,808 |
| * | SEE STMT | |
| 17 | Alternative minimum tax (AMT) items | |
| A | | (8) |
| D | | 5,336 |
| * | SEE STMT | |
| 18 | Tax-exempt income and nondeductible expenses | |
| C | | 14,285 |
| 19 | Distributions | |
| A | | 9,351 |
| 20 | Other information | |
| A | | 38,729 |
| B | | 623 |
| T | | 717 |
| * | SEE STMT | |

**21** □ More than one activity for at-risk purposes*
**22** □ More than one activity for passive activity purposes*

*See attached statement for additional information.*

*For IRS Use Only*

---

For Paperwork Reduction Act Notice, see Instructions for Form 1065.    www.irs.gov/Form1065    Cat. No. 11394R    Schedule K-1 (Form 1065) 2019

P14409B330613 08/26/2020 18:00

Partner # 1

005175

HCMLPHMIT00001865

# Schedule K-1
## (Form 1065)

Department of the Treasury
Internal Revenue Service

For calendar year 2019, or tax year

beginning ___ / ___ / 2019  ending ___ / ___ / ___

**Partner's Share of Income, Deductions, Credits, etc.** ► See back of form and separate instructions.

**20 19**

☐ Final K-1   ☐ Amended K-1   OMB No. 1545-0123

## Part I — Information About the Partnership

**A** Partnership's employer identification number
75-2716725

**B** Partnership's name, address, city, state, and ZIP code
HIGHLAND CAPITAL MANAGEMENT, LP
300 CRESCENT COURT, SUITE 700
DALLAS, TX 75201

**C** IRS Center where partnership filed return ► OGDEN

**D** ☐ Check if this is a publicly traded partnership (PTP)

## Part II — Information About the Partner

**E** Partner's SSN or TIN (Do not use TIN if a disregarded entity. See inst.)
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

**F** Name, address, city, state, and ZIP code for partner entered in E. See instructions.
MARK OKADA
3800 WENTWOOD DRIVE
DALLAS, TX 75225

**G** ☐ General partner or LLC member-manager   ☒ Limited partner or other LLC member

**H1** ☒ Domestic partner   ☐ Foreign partner

**H2** ☐ If the partner is a disregarded entity (DE), enter the partner's:
TIN ___   Name ___

**I1** What type of entity is this partner?   INDIVIDUAL

**I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ☐

**J** Partner's share of profit, loss, and capital (see instructions):

|  | Beginning | Ending |
|---|---|---|
| Profit | 0.048684 % | 0.048684 % |
| Loss | NONE % | NONE % |
| Capital | 0.048684 % | 0.048684 % |

Check if decrease is due to sale or exchange of partnership interest ☐

**K** Partner's share of liabilities:

|  | Beginning | Ending |
|---|---|---|
| Nonrecourse | $ 60,316 | $ 57,262 |
| Qualified nonrecourse financing | $ 19,923 | $ 68,484 |
| Recourse | $ 12,000,000 | $ 12,000,000 |

☒ Check this box if Item K includes liability amounts from lower tier partnerships.

**L** Partner's Capital Account Analysis

| | |
|---|---|
| Beginning capital account | $ 181,086 |
| Capital contributed during the year | $ ___ |
| Current year net income (loss) | $ (9,024) |
| Other increase (decrease) (attach explanation) | $ 16,149 |
| Withdrawals & distributions | $ ( 17,945 ) |
| Ending capital account | $ 170,265 |

**M** Did the partner contribute property with a built-in gain or loss?
☐ Yes   ☒ No   If "Yes," attach statement. See instructions.

**N** Partner's Share of Net Unrecognized Section 704(c) Gain or (Loss)
Beginning ___ $ ___
Ending ___ $ ___

## Part III — Partner's Share of Current Year Income, Deductions, Credits, and Other Items

| # | Description | Amount |
|---|---|---|
| 1 | Ordinary business income (loss) | (15,418) |
| 2 | Net rental real estate income (loss) | 11,464 |
| 3 | Other net rental income (loss) | |
| 4a | Guaranteed payments for services | |
| 4b | Guaranteed payments for capital | |
| 4c | Total guaranteed payments | |
| 5 | Interest income | 4,739 |
| 6a | Ordinary dividends | 1,194 |
| 6b | Qualified dividends | 64 |
| 6c | Dividend equivalents | |
| 7 | Royalties | 561 |
| 8 | Net short-term capital gain (loss) | (4,302) |
| 9a | Net long-term capital gain (loss) | 10,429 |
| 9b | Collectibles (28%) gain (loss) | |
| 9c | Unrecaptured section 1250 gain | 1 |
| 10 | Net section 1231 gain (loss) | (668) |
| 11 | Other income (loss) | |
| A | | 7 |
| * | SEE STMT | |
| 12 | Section 179 deduction | |
| 13 | Other deductions | |
| A | | 2 |
| H | | 2,910 |
| * | SEE STMT | |
| 14 | Self-employment earnings (loss) | |

| # | Description | Amount |
|---|---|---|
| 15 | Credits | |
| 16 | Foreign transactions | |
| A | | VARIOUS |
| B | | 52,750 |
| C | | 53,424 |
| G | | (674) |
| I | | 3,840 |
| J | | 32,575 |
| * | SEE STMT | |
| 17 | Alternative minimum tax (AMT) items | |
| A | | (2) |
| D | | 1,036 |
| * | SEE STMT | |
| 18 | Tax-exempt income and nondeductible expenses | |
| C | | 2,773 |
| 19 | Distributions | |
| A | | 17,945 |
| 20 | Other information | |
| A | | 7,518 |
| B | | 121 |
| T | | 139 |
| * | SEE STMT | |
| 21 | ☐ More than one activity for at-risk purposes* | |
| 22 | ☐ More than one activity for passive activity purposes* | |

*See attached statement for additional information.

For IRS Use Only

For Paperwork Reduction Act Notice, see Instructions for Form 1065.   www.irs.gov/Form1065   Cat. No. 11394R   **Schedule K-1 (Form 1065) 2019**

# Schedule K-1
## (Form 1065)

Department of the Treasury
Internal Revenue Service

For calendar year 2019, or tax year

beginning ___/___/ 2019   ending ___/___/___

## Partner's Share of Income, Deductions, Credits, etc.

► See back of form and separate instructions.

**2019**

| ☐ Final K-1 | ☐ Amended K-1 | OMB No. 1545-0123 |

## Part III Partner's Share of Current Year Income, Deductions, Credits, and Other Items

| | | | | |
|---|---|---|---|---|
| 1 | Ordinary business income (loss) | (3,096) | 15 | Credits |
| 2 | Net rental real estate income (loss) | 2,302 | | |
| 3 | Other net rental income (loss) | | 16 | Foreign transactions |
| 4a | Guaranteed payments for services | | A | VARIOUS |
| 4b | Guaranteed payments for capital | | B | 10,594 |
| 4c | Total guaranteed payments | | C | 10,729 |
| | | | G | (135) |
| 5 | Interest income | 952 | I | 771 |
| 6a | Ordinary dividends | 240 | J | 6,542 |
| 6b | Qualified dividends | 13 | * | SEE STMT |
| 6c | Dividend equivalents | | 17 | Alternative minimum tax (AMT) items |
| 7 | Royalties | 113 | A | NONE |
| | | | D | 208 |
| 8 | Net short-term capital gain (loss) | (864) | * | SEE STMT |
| 9a | Net long-term capital gain (loss) | 2,094 | 18 | Tax-exempt income and nondeductible expenses |
| 9b | Collectibles (28%) gain (loss) | | C | 557 |
| 9c | Unrecaptured section 1250 gain | NONE | | |
| 10 | Net section 1231 gain (loss) | (134) | 19 | Distributions |
| 11 | Other income (loss) | | A | 366 |
| A | | 1 | | |
| * | SEE STMT | | 20 | Other information |
| 12 | Section 179 deduction | | A | 1,510 |
| 13 | Other deductions | | B | 24 |
| A | NONE | | T | 28 |
| H | 584 | | * | SEE STMT |
| * | SEE STMT | | | |
| 14 | Self-employment earnings (loss) | | | |

## Partner's Share of Income, Deductions, Credits, etc.

## Part I Information About the Partnership

**A** Partnership's employer identification number
75-2716725

**B** Partnership's name, address, city, state, and ZIP code
HIGHLAND CAPITAL MANAGEMENT, LP
300 CRESCENT COURT, SUITE 700
DALLAS, TX 75201

**C** IRS Center where partnership filed return ► OGDEN

**D** ☐ Check if this is a publicly traded partnership (PTP)

## Part II Information About the Partner

**E** Partner's SSN or TIN (Do not use TIN of a disregarded entity. See inst.)
74-6494106

**F** Name, address, city, state, and ZIP code for partner entered in E. See instructions.
THE MARK AND PAMELA OKADA
FAMLY TRUST, EXEMPT TRUST #1
3800 WENTWOOD DRIVE
DALLAS, TX 75225

**G** ☐ General partner or LLC member-manager   ☒ Limited partner or other LLC member

**H1** ☒ Domestic partner   ☐ Foreign partner

**H2** ☐ If the partner is a disregarded entity (DE), enter the partner's:
TIN _____ Name _____

**I1** What type of entity is this partner?   TRUST

**I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ☐

**J** Partner's share of profit, loss, and capital (see instructions):

| | Beginning | Ending |
|---|---|---|
| Profit | 0.009777 % | 0.009777 % |
| Loss | NONE % | NONE % |
| Capital | 0.009777 % | 0.009777 % |

☐ Check if decrease is due to sale or exchange of partnership interest

**K** Partner's share of liabilities:

| | Beginning | Ending |
|---|---|---|
| Nonrecourse | $ 12,113 | $ 11,499 |
| Qualified nonrecourse financing | $ 4,001 | $ 13,753 |
| Recourse | $ NONE | $ NONE |

☒ Check this box if Item K includes liability amounts from lower tier partnerships.

**L** Partner's Capital Account Analysis

| | |
|---|---|
| Beginning capital account | $ 36,365 |
| Capital contributed during the year | $ |
| Current year net income (loss) | $ (1,812) |
| Other increase (decrease) (attach explanation) | $ 5 |
| Withdrawals & distributions | $ ( 366 ) |
| Ending capital account | $ 34,192 |

**M** Did the partner contribute property with a built-in gain or loss?
☐ Yes   ☒ No   If "Yes," attach statement. See instructions.

**N** Partner's Share of Net Unrecognized Section 704(c) Gain or (Loss)
Beginning . . . . $ _____
Ending . . . . $ _____

| 21 | ☐ More than one activity for at-risk purposes* |
| 22 | ☐ More than one activity for passive activity purposes* |

*See attached statement for additional information.

*For IRS Use Only*

# Schedule K-1
## (Form 1065)

Department of the Treasury
Internal Revenue Service

**2019**

For calendar year 2019, or tax year

beginning ____ / ____ / **2019** ending ____ / ____ / ____

### Partner's Share of Income, Deductions, Credits, etc.

☐ Final K-1    ☐ Amended K-1    OMB No. 1545-0123

**▶ See back of form and separate instructions.**

| Part III | Partner's Share of Current Year Income, Deductions, Credits, and Other Items |
|---|---|

| | | | |
|---|---|---|---|
| 1 | Ordinary business income (loss) | 15 | Credits |
| | (1,327) | | |
| 2 | Net rental real estate income (loss) | | |
| | K47 | 16 | Foreign transactions |
| 3 | Other net rental income (loss) | A | VARIOUS |
| | | B | 9,590 |
| 4a | Guaranteed payments for services | C | 9,5K4 |
| 4b | Guaranteed payments for capital | G | (54) |
| 4c | Total guaranteed payments | I | 331 |
| 5 | Interest income | J | 2,409 |
| | 904 | * | SEE STMT |
| 6a | Ordinary dividends | 17 | Alternative minimum tax (AMT) items |
| | 103 | A | NONE |
| 6b | Qualified dividends | D | 4K |
| | 6 | * | SEE STMT |
| 6c | Dividend equivalents | 18 | Tax-exempt income and nondeductible expenses |
| 7 | Royalties | C | 23K |
| | 94 | | |
| 8 | Net short-term capital gain (loss) | | |
| | (370) | | |
| 9a | Net long-term capital gain (loss) | 19 | Distributions |
| | 4K4 | A | 157 |
| 9b | Collectibles (28%) gain (loss) | | |
| 9c | Unrecaptured section 1250 gain | 20 | Other information |
| | NONE | A | 697 |
| 10 | Net section 1231 gain (loss) | B | 10 |
| | (57) | T | 12 |
| 11 | Other income (loss) | * | SEE STMT |
| A | 1 | | |
| * | SEE STMT | | |
| 12 | Section 179 deduction | | |
| 13 | Other deductions | | |
| A | NONE | | |
| H | 250 | | |
| * | SEE STMT | | |
| 14 | Self-employment earnings (loss) | | |
| 21 | ☐ More than one activity for at-risk purposes* | | |
| 22 | ☐ More than one activity for passive activity purposes* | | |

*See attached statement for additional information.

### Part I — Information About the Partnership

**A** Partnership's employer identification number
75-2716725

**B** Partnership's name, address, city, state, and ZIP code
HIGHLAND CAPITAL MANAGEMENT, LP
300 CRESCENT COURT, SUITE 700
DALLAS, TX 75201

**C** IRS Center where partnership filed return ▶ OGDEN

**D** ☐ Check if this is a publicly traded partnership (PTP)

### Part II — Information About the Partner

**E** Partner's SSN or TIN (Do not use TIN if a disregarded entity. See inst.)
64-62039K9

**F** Name, address, city, state, and ZIP code for partner entered in E. See instructions.
THE MARF AND PAMELA OFADA
YAML# TRUST, EXEMPT TRUST 82
3400 WENTWOOD DRIVE
DALLAS, TX 75225

**G** ☐ General partner or LLC member-manager    ☒ Limited partner or other LLC member

**H1** ☒ Domestic partner    ☐ Foreign partner

**H2** ☐ If the partner is a disregarded entity (DE), enter the partner's:
TIN _____ Name _____

**I1** What type of entity is this partner?   TRUST

**I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ☐

**J** Partner's share of profit, loss, and capital (see instructions):

| | Beginning | Ending |
|---|---|---|
| Profit | 0.0091K0 % | 0.0091K0 % |
| Loss | NONE % | NONE % |
| Capital | 0.0091K0 % | 0.0091K0 % |

Check if decrease is due to sale or exchange of partnership interest . . ☐

**K** Partner's share of liabilities:

| | Beginning | Ending |
|---|---|---|
| Nonrecourse . . $ | 5,1K1 | $ 9,K24 |
| Qualified nonrecourse financing . $ | 1,715 | $ 5,4K9 |
| Recourse . . $ | NONE | $ NONE |

☒ Check this box if Item K includes liability amounts from lower tier partnerships.

**L**      Partner's Capital Account Analysis

| | |
|---|---|
| Beginning capital account . . $ | 15,545 |
| Capital contributed during the year . $ | |
| Current year net income (loss) . . $ | (777) |
| Other increase (decrease) (attach explanation) $ | 3 |
| Withdrawals & distributions . . $ ( | 157 ) |
| **Ending capital account** . . $ | 19,659 |

**M** Did the partner contribute property with a built-in gain or loss?
☐ Yes    ☒ No   If "Yes," attach statement. See instructions.

**N**      Partner's Share of Net Unrecognized Section 704(c) Gain or (Loss)
Beginning . . . . . . . $ _____
Ending . . . . . . . . $ _____

*For IRS Use Only*

P1990KB330613 04/26/2020 14:00

Partner 8,9

005178

HCMLPHMIT00001880

**Schedule K-1**
**(Form 1065)**
Department of the Treasury
Internal Revenue Service

For calendar year 2019, or tax year

beginning _____ / _____ / 2019  ending _____ / _____ / _____

**2019** OMB No. 1545-0123

☐ Final K-1    ☐ Amended K-1

**Partner's Share of Income, Deductions, Credits, etc.**  ▶ See back of form and separate instructions.

| Part III | Partner's Share of Current Year Income, Deductions, Credits, and Other Items |
|---|---|

| # | Item | # | Item |
|---|---|---|---|
| 1 | Ordinary business income (loss) )5( ,0V1E | 15 | Credits |
| 2 | Net rental real estate income (loss) . 3,( 2( | | |
| 3 | Other net rental income (loss) | 16 | Foreign transactions |
| 4a | Guaranteed payments for services | A | 4 ARIOUS |
| | | / | 202,13. |
| 4b | Guaranteed payments for capital | C | 20. ,71V |
| 4c | Total guaranteed payments | G | )2,5V. E |
| 5 | Interest income 1V,160 | I | 1. ,716 |
| 6a | Ordinary dividends . ,57. | 9 | 12. ,V2. |
| 6b | Qualified dividends 2. 7 | ' | SEE STMT |
| 6c | Dividend equivalents | 17 | Alternative minimum tax (AMT) items |
| | | A | )6E |
| 7 | Royalties 2,151 | D | 3,( 6( |
| 8 | Net short-term capital gain (loss) )16,. V. E | | SEE STMT |
| 9a | Net long-term capital gain (loss) 3( ,( 63 | 18 | Tax-exempt income and nondeductible expenses |
| 9b | Collectibles (28%) gain (loss) | C | 10,626 |
| 9c | Unrecaptured section 1250 gain 5 | | |
| 10 | Net section 1231 gain (loss) )2,55VE | 19 | Distributions |
| 11 | Other income (loss) | A | 151,7V5 |
| A | 2V | | |
| ' | SEE STMT | 20 | Other information |
| 12 | Section 179 deduction | A | 2V,V0( |
| 13 | Other deductions | / | . 63 |
| A | V | T | 53. |
| H | 11,152 | | SEE STMT |
| | SEE STMT | | |
| 14 | Self-employment earnings (loss) | | |

| Part I | Information About the Partnership |
|---|---|

**A** Partnership's employer identification number
75-2716725

**B** Partnership's name, address, city, state, and ZIP code
HIGHLAND CAPITAL MANAGEMENT, LP
300 CRESCENT COURT, SUITE 700
DALLAS, TX 75201

**C** IRS Center where partnership filed return ▶ OGDEN

**D** ☐ Check if this is a publicly traded partnership (PTP)

| Part II | Information About the Partner |
|---|---|

**E** Partner's SSN or TIN (Do not use TIN of a disregarded entity. See inst.)
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

**F** Name, address, city, state, and ZIP code for partner entered in E. See instructions.
9AMES DONDERO
300 CRESCENT COURT, SUITE 700
DALLAS, TX 75201

**G** ☐ General partner or LLC member-manager   ☒ Limited partner or other LLC member

**H1** ☒ Domestic partner   ☐ Foreign partner

**H2** ☒ If the partner is a disregarded entity (DE), enter the partner's:
TIN NONE   Name THE DUGABOY INVESTMENT TRUST

**I1** What type of entity is this partner?   INDI4 IDUAL

**I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ☐

**J** Partner's share of profit, loss, and capital (see instructions):

| | Beginning | Ending |
|---|---|---|
| Profit | 08IV655. % | 08IV655. % |
| Loss | NONE % | NONE % |
| Capital | 08IV655. % | 08IV655. % |

☐ Check if decrease is due to sale or exchange of partnership interest

**K** Partner's share of liabilities:

| | Beginning | Ending |
|---|---|---|
| Nonrecourse . . . $ | 231,130 | $ 21( ,. 27 |
| Qualified nonrecourse financing . . . $ | 76,3. . | $ 262,. 30 |
| Recourse . . . $ | 35,000,000 | $ 35,000,000 |

☒ Check this box if Item K includes liability amounts from lower tier partnerships.

**L** **Partner's Capital Account Analysis**

| | |
|---|---|
| Beginning capital account . . . $ | 6( 3,( 1. |
| Capital contributed during the year . $ | |
| Current year net income (loss) . . $ | )3. ,57VE |
| Other increase (decrease) (attach explanation) $ | 1. . ,( 00 |
| Withdrawals & distributions . . $ | ( 151,7V5 ) |
| Ending capital account . . . $ | 652,. 51 |

**M** Did the partner contribute property with a built-in gain or loss?
☐ Yes   ☒ No   If "Yes," attach statement. See instructions.

**N** **Partner's Share of Net Unrecognized Section 704(c) Gain or (Loss)**
Beginning . . . . . . $
Ending . . . . . . . $

| 21 | ☐ More than one activity for at-risk purposes* |
|---|---|
| 22 | ☐ More than one activity for passive activity purposes* |

*See attached statement for additional information.

For IRS Use Only

P1. . 0( / 330613 0V:26:2020 1V:00

Prt Prt #_5

005179

HCMLPHMIT00001885

**Schedule K-1**
**(Form 1065)**

Department of the Treasury
Internal Revenue Service

For calendar year 2019, or tax year

beginning ___ / ___ / 2019    ending ___ / ___ / ___

**Partner's Share of Income, Deductions, Credits, etc.** ▶ See back of form and separate instructions.

**20 19**

☐ Final K-1    ☐ Amended K-1    OMB No. 1545-0123

## Part I — Information About the Partnership

A  Partnership's employer identification number
75-2716725

B  Partnership's name, address, city, state, and ZIP code
HIGHLAND CAPITAL MANAGEMENT, LP
300 CRESCENT COURT, SUITE 700
DALLAS, TX 75201

C  IRS Center where partnership filed return ▶ OGDEN

D  ☐ Check if this is a publicly traded partnership (PTP)

## Part II — Information About the Partner

E  Partner's SSN or TIN (Do not use TIN if a disregarded entity. See inst.)
47-5261938

F  Name, address, city, state, and ZIP code for partner entered in E. See instructions.
RAND PE FUND I, LP
87 RAILROAD PLACE, SUITE 403
SARATOGA SPRINGS, NY 12866

G  ☐ General partner or LLC member-manager    ☒ Limited partner or other LLC member

H1  ☒ Domestic partner    ☐ Foreign partner

H2  ☒ If the partner is a disregarded entity (DE), enter the partner's:
TIN 47-5145562    Name HNTR MNTN INV TRST FBO BCN MN

I1  What type of entity is this partner?  PARTNERSHIP

I2  If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ☐

J  Partner's share of profit, loss, and capital (see instructions):

| | Beginning | Ending |
|---|---|---|
| Profit | 99.500000 % | 99.500000 % |
| Loss | NONE % | NONE % |
| Capital | 99.500000 % | 99.500000 % |

Check if decrease is due to sale or exchange of partnership interest . ☐

K  Partner's share of liabilities:

| | Beginning | Ending |
|---|---|---|
| Nonrecourse . . $ | 123,274,967 | $ 117,033,004 |
| Qualified nonrecourse financing . . $ | 40,718,835 | $ 139,968,727 |
| Recourse . . $ | NONE | $ NONE |

☒ Check this box if Item K includes liability amounts from lower tier partnerships.

L  **Partner's Capital Account Analysis**

| | |
|---|---|
| Beginning capital account . . $ | 370,103,735 |
| Capital contributed during the year . . $ | |
| Current year net income (loss) . . $ | (18,442,312) |
| Other increase (decrease) (attach explanation) $ | 39,227 |
| Withdrawals & distributions . . $ ( | 3,711,456 ) |
| Ending capital account . . $ | 347,989,195 |

M  Did the partner contribute property with a built-in gain or loss?
☐ Yes    ☒ No    If "Yes," attach statement. See instructions.

N  **Partner's Share of Net Unrecognized Section 704(c) Gain or (Loss)**
Beginning . . . . . $
Ending . . . . . . $

## Part III — Partner's Share of Current Year Income, Deductions, Credits, and Other Items

| | | |
|---|---|---|
| 1 | Ordinary business income (loss) | (31,511,547) |
| 2 | Net rental real estate income (loss) | 23,429,983 |
| 3 | Other net rental income (loss) | |
| 4a | Guaranteed payments for services | |
| 4b | Guaranteed payments for capital | |
| 4c | Total guaranteed payments | |
| 5 | Interest income | 9,685,521 |
| 6a | Ordinary dividends | 2,439,576 |
| 6b | Qualified dividends | 131,590 |
| 6c | Dividend equivalents | |
| 7 | Royalties | 1,147,036 |
| 8 | Net short-term capital gain (loss) | (8,791,920) |
| 9a | Net long-term capital gain (loss) | 21,314,362 |
| 9b | Collectibles (28%) gain (loss) | |
| 9c | Unrecaptured section 1250 gain | 2,880 |
| 10 | Net section 1231 gain (loss) | (1,364,433) |
| 11 | Other income (loss) | |
| A | | 14,893 |
| * | | SEE STMT |
| 12 | Section 179 deduction | |
| 13 | Other deductions | |
| A | | 4,238 |
| H | | 5,947,873 |
| * | | SEE STMT |
| 14 | Self-employment earnings (loss) | |

| | | |
|---|---|---|
| 15 | Credits | |
| 16 | Foreign transactions | |
| A | | VARIOUS |
| B | | 107,809,792 |
| C | | 109,187,851 |
| G | | (1,378,061) |
| I | | 7,848,766 |
| J | | 66,575,961 |
| * | | SEE STMT |
| 17 | Alternative minimum tax (AMT) items | |
| A | | (3,101) |
| D | | 2,116,810 |
| * | | SEE STMT |
| 18 | Tax-exempt income and nondeductible expenses | |
| C | | 5,667,593 |
| 19 | Distributions | |
| A | | 3,711,456 |
| 20 | Other information | |
| A | | 15,365,420 |
| B | | 247,031 |
| T | | 284,597 |
| * | | SEE STMT |

21  ☐ More than one activity for at-risk purposes*
22  ☐ More than one activity for passive activity purposes*

*See attached statement for additional information.

For IRS Use Only

P14409B330613 08/26/2020 18:00

Partner # 6

005180

HCMLPHMIT00001890

**EXHIBIT 7**

005181

**Monthly Operating Report**
ACCRUAL BASIS-1

| CASE NAME: | Highland Capital Management, LP |
| --- | --- |
| CASE NUMBER: | 19-12239-CSS |

**Comparative Balance Sheet**
(in thousands)

| | 10/15/2019 | 10/31/2019 | 11/30/2019 |
| --- | --- | --- | --- |
| **Assets** | | | |
| Cash and cash equivalents | 2,529 | 2,286 | 6,343 |
| Investments, at fair value [3] | 232,620 | 235,144 | 233,776 |
| Equity method investees [3] | 161,819 | 161,813 | 175,381 |
| Management and incentive fee receivable | 2,579 | 3,202 | 1,223 |
| Fixed assets, net | 3,754 | 3,672 | 3,601 |
| Due from affiliates [1] | 151,901 | 152,124 | 152,523 |
| Other assets | 11,311 | 11,260 | 10,621 |
| **Total assets** | $ 566,513 | $ 569,501 | $ 583,468 |
| | | | |
| **Liabilities and Partners' Capital** | | | |
| Pre-petition accounts payable [4] | 1,176 | 1,135 | 1,250 |
| Post-petition accounts payable [4] | - | 102 | 236 |
| Secured debt: | | | |
| Frontier | 5,195 | 5,195 | 5,195 |
| Jefferies | 30,328 | 30,315 | 30,268 |
| Accrued expenses and other liabilities [4] | 59,203 | 59,184 | 60,848 |
| Accrued re-organization related fees [5] | - | - | - |
| Claim accrual [2] | 73,997 | 73,997 | 73,997 |
| Partners' capital | 396,614 | 399,573 | 411,674 |
| **Total liabilities and partners' capital** | $ 566,513 | $ 569,501 | $ 583,468 |

[1] Includes various notes receivable at carrying value (fv undetermined).

[2] Uncontested portion of claim less appplicable offsets. Potential for additional liability based on future events. No interest has been accrued beyond petition date.

[3] Mark to market gains/(losses) on investments include pricing updates for publicly traded securities and other positions with readily available market price information. Limited partnership interests normally marked to a NAV statement have not been updated as of period end as statements are generally available on a one-month lag.

[4] Note on accruals: expenses recorded in Accounts Payable and Accrued Expenses and Other Liabilities reflect invoices recorded through accounts payable, legal invoice accruals, and normal course operating accruals, but do not reflect estimates for other incurred, but not yet received invoices. For balance sheet dates other than the Petition Date, amounts include both pre-petition and post-petition liabilities.

[5] Debtor funded various retainers totaling $790k prior to the petition date, which were entirely expensed prior to the petition date. No additional amounts were accrued between October 16, 2019 and November 30, 2019

005182

Assets

Cash and cash equivalents

| Code | Code | Description | Amount |
|---|---|---|---|
| 10010 | 10010 | 10010 OPERATING | 4,399,685.76 |
| 10011 | 10011 | 10011 OPERATING - CASH CLEARING | (5,357,965.85) |
| 10012 | 10012 | 10012 OPERATING - DEPOSITS IN TRANSIT | 3,058,753.60 |
| 10020 | 10020 | 10020 INSURANCE ACCT | 291,109.28 |
| 10030 | 10030 | 10030 MONEY MARKET | 136,658.61 |
| 10060 | 10060 | 10060 BROKERAGE | 93.74 |
| 10100 | 10100 | 10100 MISC OPERATING 1 | (1,132,704.16) |
| 10102 | 10102 | 10102 MISC OPERATING 1 - DEPOSITS IN TRANSIT | 1,132,895.00 |
| | | Total cash and cash equivalents | 2,528,525.98 |

Investments, at fair value

| Code | Code | Description | Amount |
|---|---|---|---|
| 11100 | 11100 | 11100 INVESTMENT SECURITIES - COST | 66,751,143.30 |
| 11150 | 11150 | 11150 INVESTMENT SECURITIES - MARK TO MARKET | (7,702,195.68) |
| 17140 | 17140 | 17140 LT INVSTMT - HIGHLAND CLO FUNDING | 481,354.43 |
| 17207 | 17207 | 17207 LT INVSTMT - NXRT | 49,648,257.65 |
| 17209 | 17209 | 17209 LT INVSTMT - NHT | 10,718,068.67 |
| 17210 | 17210 | 17210 LT INVSTMT - NEXPOINT REAL ESTATE STRATEGIES FUND | 1,721,458.16 |
| 17405 | 17405 | 17405 LT INVSTMT - CRUSADER | 5,431,955.00 |
| 17440 | 17440 | 17440 LT INVSTMT - CREDIT STRATEGIES FUND | 132,002.75 |
| 17445 | 17445 | 17445 LT INVSTMT - MULTI STRAT CREDIT FUND | 20,244,908.67 |
| 17460 | 17460 | 17460 LT INVSTMT - RESTORATION CAPITAL PARTNERS | 36,949,197.43 |
| 17462 | 17462 | 17462 LT INVSTMT - PETROCAP PARTNERS II | 12,065,754.32 |
| 17466 | 17466 | 17466 LT INVSTMT - PETROCAP INCENTIVE PARTNERS III | 380.00 |
| 17467 | 17467 | 17467 LT INVSTMT - PETROCAP PARTNERS III | 1,254,168.41 |
| 17471 | 17471 | 17471 LT INVSTMT - HIGHLAND LOAN FUND | 261,889.71 |
| 17474 | 17474 | 17474 LT INVSTMT - HIGHLAND MERGER ARBITRAGE FUND | 1,397,752.04 |
| 17540 | 17540 | 17540 LT INVSTMT - HIGHLAND OPPORTUNISTIC CREDIT FUND | 5,427,536.32 |
| 17542 | 17542 | 17542 LT INVSTMT - HIGHLAND PREMIER GROWTH EQUITY FUND | 67,639.33 |
| 17543 | 17543 | 17543 LT INVSTMT - HIGHLAND SMALL CAP EQUITY FUND | 533,357.32 |
| 17550 | 17550 | 17550 LT INVSTMT - NEXPOINT CREDIT STRATEGIES | 13,275,503.51 |
| 17555 | 17555 | 17555 LT INVSTMT - L/S EQUITY FUND | - |
| 17560 | 17560 | 17560 LT INVSTMT - ENERGY AND MATERIALS FUND | 8,928.17 |
| 17561 | 17561 | 17561 LT INVSTMT - FLOATING RATE OPPORTUNITIES | 792,313.43 |
| 17562 | 17562 | 17562 LT INVSTMT - GLOBAL ALLOCATION | 1,573,054.32 |
| 17592 | 17592 | 17592 LT INVSTMT - HEALTH CARE FUND | 2,752,533.87 |
| | | Total investments, at fair value | 223,786,961.13 |

Equity method investees

| Code | Code | Description | Amount |
|---|---|---|---|
| 17410 | 17410 | 17410 LT INVSTMT - SELECT EQUITY FUND | 130,213,244.86 |
| 17475 | 17475 | 17475 LT INVSTMT - EAMES, LTD | 5,908,796.26 |
| 17480 | 17480 | 17480 LT INVSTMT - STARCK, LTD | 6,960,671.89 |
| 17485 | 17485 | 17485 LT INVSTMT - WRIGHT, LTD | 22,303,199.33 |
| 17835 | 17835 | 17835 LT INVSTMT - HIGHLAND CAPITAL MANAGEMENT LATIN AMERICA | - |
| 17840 | 17840 | 17840 LT INVSTMT - HIGHLAND CAPITAL MANAGEMENT SINGAPORE | 457,809.57 |
| 17850 | 17850 | 17850 LT INVSTMT - HIGHLAND CAPITAL MANAGEMENT KOREA | 1,011,300.61 |
| 17880 | 17880 | 17880 LT INVSTMT - PENANT MANAGEMENT | 302,358.21 |
| 17881 | 17881 | 17881 LT INVSTMT - EAGLE EQUITY ADVISORS | 22,803.05 |
| 17885 | 17885 | 17885 LT INVSTMT - MAPLE AVENUE HOLDINGS | 547,633.82 |
| 17900 | 17900 | 17900 LT INVSTMT - OTHER LONG-TERM INVESTMENTS | 2,924,323.00 |
| | | Total equity method investees | 170,652,140.60 |

Management and incentive fees receivable

| Code | Code | Description | Amount |
|---|---|---|---|
| 12145 | 12145 | 12145 MGMT FEES RECVBL - VALHALLA | 12,287.85 |
| 12150 | 12150 | 12150 MGMT FEES RECVBL - SOUTHFORK | 7,941.94 |
| 12160 | 12160 | 12160 MGMT FEES RECVBL - JASPER | 35,443.91 |
| 12165 | 12165 | 12165 MGMT FEES RECVBL - GLENEAGLES | 19,494.83 |
| 12170 | 12170 | 12170 MGMT FEES RECVBL - LIBERTY | 45,288.78 |
| 12175 | 12175 | 12175 MGMT FEES RECVBL - ROCKWALL | 18,213.61 |

| | | | |
|---|---|---|---|
| 12180 12180 | 12180 MGMT FEES RECVBL - RED RIVER | | 30,118.03 |
| 12190 12190 | 12190 MGMT FEES RECVBL - GRAYSON | | 99,945.24 |
| 12210 12210 | 12210 MGMT FEES RECVBL - EASTLAND | | 83,341.49 |
| 12215 12215 | 12215 MGMT FEES RECVBL - BRENTWOOD | | 36,565.44 |
| 12225 12225 | 12225 MGMT FEES RECVBL - ROCKWALL II | | 121,756.83 |
| 12230 12230 | 12230 MGMT FEES RECVBL - WESTCHESTER | | 130,594.11 |
| 12235 12235 | 12235 MGMT FEES RECVBL - HIGHLAND PARK | | 24,144.35 |
| 12265 12265 | 12265 MGMT FEES RECVBL - STRATFORD | | 42,557.64 |
| 12270 12270 | 12270 MGMT FEES RECVBL - GREENBRIAR | | 60,028.30 |
| 12280 12280 | 12280 MGMT FEES RECVBL - ABERDEEN | | 15,288.93 |
| 12445 12445 | 12445 MGMT FEES RECVBL - MULTI STRAT CREDIT FUND | | 20,567.91 |
| 12466 12466 | 12466 MGMT FEES RECVBL - PROMETHEUS | | 22,237.17 |
| 12471 12471 | 12471 MGMT FEES RECVBL - HIGHLAND LOAN FUND | | 1,736.85 |
| 12475 12475 | 12475 MGMT FEES RECVBL - LIFE SETTLEMENTS PROGRAM | | 0.01 |
| 12635 12635 | 12635 MGMT FEES RECVBL - LONGHORN A | | 8,439.48 |
| 12640 12640 | 12640 MGMT FEES RECVBL - LONGHORN B | | 128,482.29 |
| 12660 12660 | 12660 MGMT FEES RECVBL - BANDERA STRATEGIC CREDIT PARTNERS | | 4.10 |
| 12665 12665 | 12665 MGMT FEES RECVBL - PENSION DENMARK | | 430,691.12 |
| 12670 12670 | 12670 MGMT FEES RECVBL - NEXBANK | | 813,275.89 |
| 12675 12675 | 12675 MGMT FEES RECVBL - DAF | | 163,043.48 |
| 12680 12680 | 12680 MGMT FEES RECVBL - TRUSSWAY | | 10,080.65 |
| 12685 12685 | 12685 MGMT FEES RECVBL - SSP | | 197,173.42 |
| 14125 14125 | 14125 SUBADVISOR FEES RECEIVABLE - HCLOH | | 53,863.81 |
| | | | |
| | Total management and incentive fees receivable | | 2,632,607.46 |
| | | | |
| | Investment income receivable | | |
| 14010 14010 | 14010 CASH INTEREST RECEIVABLE | | 1,243,304.26 |
| | | | |
| | Total investment income receivable | | 1,243,304.26 |
| | | | |
| | Deferred incentive fees | | |
| 12906 12906 | 12906 INCTV FEES RECVBL - CRUSADER - OFFSHORE | | 15,020,930.06 |
| 12999 12999 | 12999 ALLOWANCE FOR UNCOLLECTIBLE ACCOUNTS | | (15,020,930.06) |
| | Fixed assets | | |
| 16100 16100 | 16100 BUILDINGS | | 2,594,846.58 |
| 16150 16150 | 16150 BUILDINGS - ACCUM DEPRECIATION | | (891,978.45) |
| 16200 16200 | 16200 FURNITURE AND FIXTURES | | 2,796,433.00 |
| 16250 16250 | 16250 FURNITURE AND FIXTURES - ACCUM DEPRECIATION | | (2,678,004.27) |
| 16300 16300 | 16300 COMPUTERS AND EQUIPMENT | | 2,805,720.49 |
| 16350 16350 | 16350 COMPUTERS AND EQUIPMENT - ACCUM DEPRECIATION | | (2,484,405.74) |
| 16400 16400 | 16400 COMPUTER SOFTWARE | | 331,195.05 |
| 16450 16450 | 16450 COMPUTER SOFTWARE - ACCUM DEPRECIATION | | (269,706.55) |
| 16500 16500 | 16500 LEASEHOLD IMPROVEMENTS | | 7,191,571.54 |
| 16550 16550 | 16550 LEASEHOLD IMPROVEMENTS - ACCUM DEPRECIATION | | (5,641,290.05) |
| | | | |
| | Total fixed assets | | 3,754,381.60 |
| | | | |
| | Other assets | | |
| 13110 13110 | 13110 REIMB EXP - PAMCO CAYMAN | | 151,270.77 |
| 13115 13115 | 13115 REIMB EXP - PAM CAPITAL | | 1,071.55 |
| 13120 13120 | 13120 REIMB EXP - LEGACY | | 146,431.94 |
| 13125 13125 | 13125 REIMB EXP - HIGHLAND V | | 19,535.41 |
| 13140 13140 | 13140 REIMB EXP - BRISTOL BAY | | 2,187.28 |
| 13145 13145 | 13145 REIMB EXP - VALHALLA | | 5,832.60 |
| 13150 13150 | 13150 REIMB EXP - SOUTHFORK | | 5,978.91 |
| 13160 13160 | 13160 REIMB EXP - JASPER | | 25,365.46 |
| 13165 13165 | 13165 REIMB EXP - GLENEAGLES | | 39,707.18 |
| 13170 13170 | 13170 REIMB EXP - LIBERTY | | 39,248.30 |
| 13175 13175 | 13175 REIMB EXP - ROCKWALL | | 13,040.05 |
| 13180 13180 | 13180 REIMB EXP - RED RIVER | | 17,189.51 |
| 13190 13190 | 13190 REIMB EXP - GRAYSON | | 42,151.73 |
| 13200 13200 | 13200 REIMB EXP - HIGHLAND FINANCIAL TRUST | | 8,381.53 |

| | | |
|---|---|---:|
| 13210 13210 | 13210 REIMB EXP - EASTLAND | 41,315.16 |
| 13215 13215 | 13215 REIMB EXP - BRENTWOOD | 91,010.17 |
| 13225 13225 | 13225 REIMB EXP - ROCKWALL II | 45,707.94 |
| 13230 13230 | 13230 REIMB EXP - WESTCHESTER | 115,662.06 |
| 13235 13235 | 13235 REIMB EXP - HIGHLAND PARK | 17,797.31 |
| 13265 13265 | 13265 REIMB EXP - STRATFORD | 15,332.69 |
| 13270 13270 | 13270 REIMB EXP - GREENBRIAR | 27,252.17 |
| 13276 13276 | 13276 REIMB EXP - ACIS CLO MANAGEMENT | 3,946.72 |
| 13280 13280 | 13280 REIMB EXP - ABERDEEN | 4,861.52 |
| 13281 13281 | 13281 REIMB EXP - HEWETT'S ISLAND | - |
| 13282 13282 | 13282 REIMB EXP - ACIS CLO 2018-VIII | 12,297.70 |
| 13284 13284 | 13284 REIMB EXP - ACIS CLO 2017-VII | 34,229.54 |
| 13285 13285 | 13285 REIMB EXP - ACIS CLO 2013-1 | 115,828.83 |
| 13286 13286 | 13286 REIMB EXP - ACIS CLO 2013-II | 0.03 |
| 13287 13287 | 13287 REIMB EXP - ACIS CLO 2014-III | 141,187.64 |
| 13288 13288 | 13288 REIMB EXP - ACIS CLO 2014-IIII | 161,700.16 |
| 13289 13289 | 13289 REIMB EXP - ACIS CLO 2014-V | 175,460.76 |
| 13290 13290 | 13290 REIMB EXP - ACIS CLO 2015-VI | 210,400.78 |
| 13298 13298 | 13298 REIMB EXP - ACIS CLO 2017-VII | 86,292.45 |
| 13403 13403 | 13403 REIMB EXP - HIGHLAND PROMETHEUS FUND | 2,390.26 |
| 13404 13404 | 13404 REIMB EXP - HIGHLAND LATIN AMERICA OPPORTUNITY FUND | (300.00) |
| 13410 13410 | 13410 REIMB EXP - SELECT EQUITY FUND | 44,673.00 |
| 13420 13420 | 13420 REIMB EXP - REAL ESTATE FUND | 8.92 |
| 13435 13435 | 13435 REIMB EXP - CDO OPPORTUNITIES FUND | 21,722.21 |
| 13440 13440 | 13440 REIMB EXP - CREDIT STRATEGIES FUND | 21.24 |
| 13445 13445 | 13445 REIMB EXP - MULTI STRAT CREDIT FUND | 71,217.26 |
| 13450 13450 | 13450 REIMB EXP - MULTI-STRAT INSURANCE DEDICATED FUND | 600.00 |
| 13460 13460 | 13460 REIMB EXP - RESTORATION CAPITAL PARTNERS | 32,683.10 |
| 13462 13462 | 13462 REIMB EXP - GRANITE BAY | 2,150.79 |
| 13465 13465 | 13465 REIMB EXP - CLO VALUE FUND | 47.62 |
| 13467 13467 | 13467 REIMB EXP - BB HIGHLAND FLOATING RATE FUND I | 250.00 |
| 13468 13468 | 13468 REIMB EXP - BB VOTORANTIM HIGHLAND INFRASTRUCTURE LLC | 8,604.01 |
| 13471 13471 | 13471 REIMB EXP - HIGHLAND LOAN FUND | 10,569.33 |
| 13475 13475 | 13475 REIMB EXP - LIFE SETTLEMENTS PROGRAM | 4,606.55 |
| 13515 13515 | 13515 REIMB EXP - FLOATING RATE | 6,607.38 |
| 13521 13521 | 13521 REIMB EXP - FLOATING RATE OPPORTUNITIES | 2,042.05 |
| 13540 13540 | 13540 REIMB EXP - HIGHLAND OPPORTUNISTIC CREDIT FUND | 139.53 |
| 13550 13550 | 13550 REIMB EXP - NEXPOINT CREDIT STRATEGIES | 48,761.50 |
| 13580 13580 | 13580 REIMB EXP - HIGHLAND INCOME FUND | 23,648.49 |
| 13591 13591 | 13591 REIMB EXP - HC MULTI-STRATEGY FUND | 9,120.88 |
| 13592 13592 | 13592 REIMB EXP - HEALTH CARE FUND | 10.21 |
| 13610 13610 | 13610 REIMB EXP - CALPERS DISTRESSED | 11.56 |
| 13635 13635 | 13635 REIMB EXP - LONGHORN A | 10,220.09 |
| 13640 13640 | 13640 REIMB EXP - LONGHORN B | 24,732.66 |
| 13660 13660 | 13660 REIMBURSABLE FUND EXPNESES - PYXIS L/S EQUITY FUND | 1,263.26 |
| 13661 13661 | 13661 REIMBURSABLE FUND EXPNESES - PYXIS L/S HEALTHCARE FUND | 12,331.25 |
| 13665 13665 | 13665 REIMBURSABLE FUND EXPNESES - PYXIS SMALL CAP EQUITY FU | 342.25 |
| 13670 13670 | 13670 REIMBURSABLE FUND EXPNESES - HIGHLAND OPPORTUNISTIC CR | 858.02 |
| 13672 13672 | 13672 REIMBURSABLE FUND EXPNESES - PYXIS ENERGY & MATERIALS | 219.00 |
| 13676 13676 | 13676 EXP REIMB GLOBAL ALLOCATION FUND | 7,509.40 |
| 13685 13685 | 13685 EXP REIMB IBOXX SENIOR LOAN ETF | 4,857.87 |
| 13690 13690 | 13690 EXP REIMB - NEXPOINT RESIDENTIAL TRUST | 35,354.89 |
| 13691 13691 | 13691 EXP REIMB - NEXPOINT CAPITAL | 62,057.74 |
| 13692 13692 | 13692 EXP REIMB - NEXPOINT MULTI FAMILY REALTY TRUST | 168.38 |
| 13905 13905 | 13905 REIMBURSABLE FUND EXPENSES - COMPANY REIMB | 4,176,204.78 |
| 13910 13910 | 13910 REIMBURSABLE FUND EXPENSES - OTHER | (1,166,137.22) |
| 13990 13990 | 13990 REIMBURSABLE FUND EXPENSES - OTHER | 662,179.33 |
| 13999 13999 | 13999 REIMBURSABLE FUND EXPNESES - CLEARING | 1,726,654.35 |
| 14130 14130 | 14130 MISCELLANEOUS RECEIVABLE | 8,900.00 |
| 14135 14135 | 14135 SHARED SVCS FEE RECVBL - FALCON | 0.09 |
| 14140 14140 | 14140 SHARED SVCS FEE RECVBL - PYXIS | 143,384.01 |
| 14142 14142 | 14142 SHARED SVCS FEE RECVBL - HCLOH | 37,290.33 |
| 14143 14143 | 14143 SHARED SVCS FEE RECVBL - HCM LATIN AMERICA | 10,000.00 |
| 14148 14148 | 14148 SHARED SVCS FEE RECVBL - RAND ADVISORS | 9,999.92 |
| 14149 14149 | 14149 SHARED SVCS FEE RECVBL - NREA | (0.01) |
| 14199 14199 | 14199 UNAPPLIED RECEIPTS | (20,825.39) |

005185

| | | | | | |
|---|---|---|---|---|---|
| 14520 14520 | 14520 DUE FROM HIGHLAND CAPITAL MANAGEMENT EUROPE LTD. | - | | |
| 14530 14530 | 14530 DUE FROM HIGHLAND CAPITAL MANAGEMENT SERVICES | 7,482,480.88 | | |
| 14531 14531 | 14531 DUE FROM HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS | 10,413,539.53 | | |
| 14532 14532 | 14532 DUE FROM NEXPOINT ADVISORS | 24,534,644.03 | | |
| 14533 14533 | 14533 DUE FROM HCRE PARTNERS | 10,394,680.47 | | |
| 14535 14535 | 14535 DUE FROM HERA | 3,349,587.22 | | |
| 14540 14540 | 14540 DUE FROM SSP | 2,198,610.05 | | |
| 14545 14545 | 14545 DUE FROM TRUSSWAY | 1,056,956.03 | | |
| 14555 14555 | 14555 DUE FROM HIGHLAND CAPITAL MANAGEMENT SINGAPORE PTE LTD | 35,158.50 | | |
| 14565 14565 | 14565 DUE FROM OTHER - TAX LOANS | 10,670,299.84 | | |
| 14575 14575 | 14575 DUE FROM HIGHLAND CAPITAL OF NEW YORK | 5,023,073.12 | | |
| 14580 14580 | 14580 DUE FROM NEXBANK | 69,677.42 | | |
| 14585 14585 | 14585 DUE FROM HUNTER MOUNTAIN INVESTMENT TRUST | 56,873,209.22 | | |
| 14590 14590 | 14590 DUE FROM OTHER AFFILIATE | 5,288,256.35 | | |
| 14595 14595 | 14595 DUE FROM HIGHLAND CAPITAL KOREA | 3,132,278.05 | | |
| 14750 14750 | 14750 LONG TERM NOTES RECEIVABLE | 18,286,268.16 | | |
| 14900 14900 | 14900 INTERCOMPANY RECEIVABLE | 1,663.65 | | |
| 15010 15010 | 15010 PREPAID INSURANCE | 316,404.81 | | |
| 15020 15020 | 15020 PREPAID RENT | (708,213.81) | | |
| 15025 15025 | 15025 PREPAID RESEARCH | 496,846.51 | | |
| 15030 15030 | 15030 OTHER PREPAID EXPENSES | 11,250.00 | | |
| 15490 | 15490 PREPAID EXPENSE CLEARING | 27,223.80 | | |
| 15510 15510 | 15510 DEPOSITS | 129,871.65 | | |
| | Total other assets | 166,938,592.22 | | |
| | Total assets | 571,536,513.25 | | |

Liabilities and Partners' Capital

Current liabilities:

Securities sold, not yet purchased

| | | | | |
|---|---|---|---|---|
| 22010 22010 | 22010 SECURITIES SOLD, NOT YET PURCHASED - PROCEEDS | (180.71) x | pre |
| | Total securities sold, not yet purchased | (180.71) | |

Due to broker

| 20700 20700 | 20700 DUE TO BROKERS | (30,328,462.58) | |

Total due to broker

Due to broker for securities purchased, not yet settled
Payable to Highland Capital Management Services, Inc.

| | | | | |
|---|---|---|---|---|
| 23015 23015 | 23015 DUE TO MAPLE AVENUE HOLDINGS | (4,975,000.00) x | pre |
| 23035 23035 | 23035 DUE TO HIGHLAND CAPITAL OF NEW YORK | 5,446.00 x | |
| 23045 23045 | 23045 DUE TO HIGHLAND CAPITAL MANAGEMENT SINGAPORE PTE LTD | (248,745.28) x | pre |
| 23050 23050 | 23050 DUE TO AFFILIATE - OTHER | (208,051.44) x | |
| 23099 23099 | 23099 PAYABLES - OTHER AFFILIATE | (2,059,337.01) x | pre |
| | Total payable to Highland Capital Management Services, Inc | (7,485,687.73) | |

Accounts payable

| 20100 20100 | 20100 ACCOUNTS PAYABLE | (1,176,300.44) | |
| 20200 20200 | 20200 INTEREST PAYABLE | (613,638.07) x | mix |

Total accounts payable

005186

| | | Accrued and other liabilities | |
|---|---|---|---|
| 20900 | 20900 | 20900 INTERCOMPANY PAYABLE | - |
| 21010 | 21010 | 21010 ACCRUED LIABILITIES - INTEREST | 225.00 x |
| 21030 | 21030 | 21030 ACCRUED LIABILITIES - LEGAL | (8,761,799.69) x |
| 21040 | 21040 | 21040 ACCRUED LIABILITIES - AUDIT FEES | (165,967.74) x |
| 21080 | 21080 | 21080 ACCRUED LIABILITIES - INCOME TAX | (175,023.00) x |
| 21090 | 21090 | 21090 ACCRUED LIABILITIES - OTHER | (3,166.60) x |
| 21110 | 21110 | 21110 ACCRUED LIABILITIES - HCNY HEALTH INS PREMIUMS | (119,062.29) x |
| 21111 | 21111 | 21111 ACCRUED LIABILITIES - HCMFA HEALTH INS PREMIUMS | (95,045.39) x |
| 21113 | 21113 | 21113 ACCRUED LIABILITIES - HC FUNDS DISTRIBUTOR HEALTH IN | (754,170.28) x |
| 21114 | 21114 | 21114 ACCRUED LIABILITIES - NEXBANK HEALTH INS PREMIUMS | 544,043.98 x |
| 21115 | 21115 | 21115 ACCRUED LIABILITIES - DRUGCRAFTERS HEALTH INS PREMIUMS | 206,721.33 x |
| 21116 | 21116 | 21116 ACCRUED LIABILITIES - MARKHAM HEALTH INS PREMIUMS | 196,640.32 x |
| 21117 | 21117 | 21117 ACCRUED LIABILITIES - NEXBANK SECURITIES HEALTH INS PR | 38,116.34 x |
| 21118 | 21118 | 21118 ACCRUED LIABILITIES - HCMLP HEALTH INS PREMIUMS | 68,737.06 x |
| 21119 | 21119 | 21119 ACCRUED LIABILITIES - PCP HEALTH INS PREMIUMS | (8,854.67) x |
| 21120 | 21120 | 21120 ACCRUED LIABILITIES - JMIJM HEALTH INS PREMIUMS | (6,252.54) x |
| 21121 | 21121 | 21121 ACCRUED LIABILITIES - NXRT HEALTH INS PREMIUMS | (9,034.91) x |
| 21122 | 21122 | 21122 ACCRUED LIABILITIES - NPA HEALTH INS PREMIUMS | (25,017.59) x |
| 21123 | 21123 | 21123 ACCRUED LIABILITIES - EAGLE EQUITY HEALTH INS PREMIUMS | (4,458.02) x |
| 21124 | 21124 | 21124 ACCRUED LIABILITIES - VINEBROOK HEALTH INS PREMIUMS | (592.82) x |
| 21125 | 21125 | 21125 ACCRUED LIABILITIES - NHT HEALTH INS PREMIUMS | (1,185.64) x |
| 21200 | 21200 | 21200 ACCRUED LIABILITIES - HCMLP SHARED SERVICES | (18,014.97) x |
| 21205 | 21205 | 21205 ACCRUED LIABILITIES - HCFD SHARED SERVICES | (36,698.75) x |
| 21510 | 21510 | 21510 ACCRUED PAYROLL LIABILITIES - BONUS | (13,688,973.83) x |
| 21520 | 21520 | 21520 ACCRUED PAYROLL LIABILITIES - FEDERAL INC TAX W/H | - x |
| 21550 | 21550 | 21550 ACCRUED PAYROLL LIABILITIES - FICA | - x |
| 21560 | 21560 | 21560 ACCRUED PAYROLL LIABILITIES - MEDICARE | (13,310.19) x |
| 21600 | 21600 | 21600 ACCRUED PAYROLL LIABILITIES - 401(K) EE CONTRIBUTION | 3,262.35 x |
| 21630 | 21630 | 21630 ACCRUED PAYROLL LIABILITIES - LIFE INSURANCE | (13,761.35) x |
| 21640 | 21640 | 21640 ACCRUED PAYROLL LIABILITIES - FLEXIBLE SPENDING ACCOUN | (354,881.89) x |
| 21670 | 21670 | 21670 ACCRUED PAYROLL LIABILITIES - EE EXPENSE REIMBURSEMENT | (5,000.00) x |
| 21680 | 21680 | 21680 ACCRUED PAYROLL LIABILITIES - VACATION | (939,324.00) x |
| 21695 | 21695 | 21695 ACCRUED PAYROLL LIABILITY - SUSPENSE | 21,811.26 x |
| 25445 | 25445 | 25445 DEFERRED MANAGEMENT FEES - MULTI STRAT CREDIT | (431,483.88) x |
| 25461 | 25461 | 25461 DEFERRED INCENTIVE FEES - UNEARNED RCP CARRY | (4,392,937.00) x |
| 25500 | 25500 | 25500 DEFERRED MANAGEMENT FEES - DAF | 0.02 x |
| | | | |
| | | Total accrued and other liabilities | (28,944,459.38) |
| | | | |
| | | Other current liabilities | |
| 24150 | 24150 | 24150 CLAIMS PAYABLE | (73,997,399.28) |
| | | | |
| | | Total other current liabilities | (73,997,399.28) |
| | | | |
| | | Total current liabilities | |
| | | | |
| | | Debt and notes payable | |
| 26100 | 26100 | 26100 NOTES PAYABLE | (5,194,651.00) |
| 26110 | 26110 | 26110 CLASS A TERM NOTES PAYABLE | (9,541,446.00) x |
| 26200 | 26200 | 26200 REVOLVING CREDIT FACILITY | (11,340,751.26) x |
| | | | |
| | | Total debts and notes payable | (26,076,848.26) |
| | | | (64,225,759) |
| | | Payable to Highland Capital Management Services, Inc. | 5,023,073 |
| | | Deferred compensation | (59,202,686) |
| 27200 | 27200 | 27200 PROFIT SHARING PLAN | (632,258.10) x |
| 27265 | 27265 | 27265 2017 DEFERRED SHARES | (3,411,606.44) x |
| 27266 | 27266 | 27266 2018 DEFERRED SHARES | (1,758,391.79) x |
| 27267 | 27267 | 27267 2019 DEFERRED SHARES | (497,339.23) x |

| | | | |
|---|---|---|---:|
| | | Total deferred compensation | (6,299,595.56) |
| | | Other liabilities | |
| | | Total liabilities | (174,922,572.01) |
| | | Commitments | |
| | | Partners' capital | |
| 31000 | 31000 | 31000 PARTNERS' CAPITAL | (6,509,576.64) |
| 32000 | 32000 | 32000 SUBSCRIPTIONS | (91,499,999.99) |
| 33000 | 33000 | 33000 REDEMPTIONS | 503,589,902.86 |
| 39000 | 39000 | 39000 RETAINED EARNINGS | (765,702,051.50) |
| 40145 | 40145 | 40145 MGMT FEE REV - VALHALLA | (50,628.85) |
| 40150 | 40150 | 40150 MGMT FEE REV - SOUTHFORK | (27,757.53) |
| 40160 | 40160 | 40160 MGMT FEE REV - JASPER | (145,851.77) |
| 40165 | 40165 | 40165 MGMT FEE REV - GLENEAGLES | (140,043.03) |
| 40170 | 40170 | 40170 MGMT FEE REV - LIBERTY | (165,929.40) |
| 40175 | 40175 | 40175 MGMT FEE REV - ROCKWALL | (66,518.03) |
| 40180 | 40180 | 40180 MGMT FEE REV - RED RIVER | (189,123.14) |
| 40190 | 40190 | 40190 MGMT FEE REV - GRAYSON | (465,501.18) |
| 40210 | 40210 | 40210 MGMT FEE REV - EASTLAND | (436,949.87) |
| 40215 | 40215 | 40215 MGMT FEE REV - BRENTWOOD | (190,598.12) |
| 40225 | 40225 | 40225 MGMT FEE REV - ROCKWALL II | (524,333.53) |
| 40230 | 40230 | 40230 MGMT FEE REV - WESTCHESTER | (328,847.76) |
| 40235 | 40235 | 40235 MGMT FEE REV - HIGHLAND PARK | (96,479.77) |
| 40265 | 40265 | 40265 MGMT FEE REV - STRATFORD | (178,461.48) |
| 40270 | 40270 | 40270 MGMT FEE REV - GREENBRIAR | (258,673.40) |
| 40280 | 40280 | 40280 MGMT FEE REV - ABERDEEN | (41,945.72) |
| 40445 | 40445 | 40445 MGMT FEE REV - MULTI STRAT CREDIT FUND | (484,270.56) |
| 40466 | 40466 | 40466 MGMT FEE REV - PROMETHEUS | (86,688.68) |
| 40471 | 40471 | 40471 MGMT FEE REV - HIGHLAND LOAN FUND | (180,409.31) |
| 40473 | 40473 | 40473 MGMT FEE REV - HIGHLAND FLEXIBLE INCOME UCITS FUND | (41,013.32) |
| 40635 | 40635 | 40635 MGMT FEE REV - LONGHORN A | (39,412.35) |
| 40640 | 40640 | 40640 MGMT FEE REV - LONGHORN B | (518,445.68) |
| 40644 | 40644 | 40644 MGMT FEE REV - PENSION DENMARK | (1,163,257.92) |
| 40646 | 40646 | 40646 MGMT FEE REV - NEXBANK | (2,505,695.14) |
| 40647 | 40647 | 40647 MGMT FEE REV - DAF | (3,596,743.32) |
| 40684 | 40684 | 40684 MGMT FEE REV - TRUSSWAY | (114,247.30) |
| 40685 | 40685 | 40685 MGMT FEE REV - SSP | (197,173.42) |
| 40690 | 40690 | 40690 SUBADVISORY FEES - HCLOH | (206,475.99) |
| 41455 | 41455 | 41455 INCTV FEE REV - HIGHLAND DYNAMIC INCOME FUND | (150,925.36) |
| 45100 | 45100 | 45100 INTEREST INCOME | (96.17) |
| 45200 | 45200 | 45200 DIVIDEND INCOME | (2,625,125.09) |
| 45445 | 45445 | 45445 ROYALTY FEES | (875,539.73) |
| 45509 | 45509 | 45509 SUBADVISOR FEES - HCMFA | (3,945,290.32) |
| 45511 | 45511 | 45511 SUBADVISOR FEES - NEXPOINT ADVISORS | (2,389,935.48) |
| 45515 | 45515 | 45515 SHARED SVCS FEE REV - NEXPOINT | (1,593,290.32) |
| 45530 | 45530 | 45530 SHARED SVCS FEE REV - NEXBANK | (189,677.42) |
| 45535 | 45535 | 45535 SHARED SVCS FEE REV - FALCON | (135,000.00) |
| 45540 | 45540 | 45540 SHARED SVCS FEE REV - PYXIS | (2,950,803.13) |
| 45541 | 45541 | 45541 SHARED SVCS FEE REV - HCLOH | (142,944.91) |
| 45543 | 45543 | 45543 SHARED SVCS FEE REV - HCM LATIN AMERICA | (100,000.00) |
| 45555 | 45555 | 45555 SHARED SVCS FEE REV - RAND ADVISORS | (171,053.46) |
| 45560 | 45560 | 45560 SHARED SVCS FEE REV - NREA | (720,000.00) |
| 45690 | 45690 | 45690 ADMIN FEES - ALL CAP EQUITY FUND | - |
| 45900 | 45900 | 45900 MISCELLANEOUS INCOME | (69,625.13) |
| 50110 | 50110 | 50110 SALARIES | 9,150,582.76 |
| 50130 | 50130 | 50130 OVERTIME | 443,209.60 |
| 50150 | 50150 | 50150 SEVERANCE | 480,800.00 |
| 50210 | 50210 | 50210 CASH BONUS | 9,248,793.64 |
| 50230 | 50230 | 50230 PROFIT SHARING | 632,258.10 |
| 50240 | 50240 | 50240 401(K) MATCH | 333,561.32 |
| 50255 | 50255 | 50255 SHORT-TERM INCENTIVE PLAN | (436,285.82) |
| 50265 | 50265 | 50265 2017 DEFERRED SHARES | 1,097,191.17 |

005188

| 50266 50266 | 50266 2018 DEFERRED SHARES | 822,120.61 |
|---|---|---|
| 50267 50267 | 50267 2019 DEFERRED SHARES | 497,339.14 |
| 50268 50268 | 50268 2016 DEFERRED SHARES | (25,311.95) |
| 50290 50290 | 50290 OTHER COMPENSATION | 1,155,780.58 |
| 50310 50310 | 50310 HEALTH INSURANCE | 1,523,588.77 |
| 50320 50320 | 50320 LIFE INSURANCE | 54,361.18 |
| 50410 50410 | 50410 EMPLOYER FICA | 583,174.17 |
| 50420 50420 | 50420 EMPLOYER MEDICARE | 375,760.29 |
| 50430 50430 | 50430 EMPLOYER FUTA | 4,744.82 |
| 50440 50440 | 50440 EMPLOYER SUTA | 12,959.77 |
| 60100 60100 | 60100 PERIODICALS | 22,386.10 |
| 60200 60200 | 60200 RESEARCH | 916,140.49 |
| 61100 61100 | 61100 LEGAL | 4,595,085.91 |
| 61200 61200 | 61200 AUDIT | 169,967.74 |
| 61300 61300 | 61300 CONSULTING | 3,452,054.35 |
| 61325 61325 | 61325 ASSET PLACEMENT FEES | 104,945.38 |
| 61350 61350 | 61350 ADMINISTRATION FEES | 57,121.04 |
| 61355 61355 | 61355 DATA SERVICE FEES | 43,875.13 |
| 61400 61400 | 61400 PAYROLL SERVICE | 19,604.39 |
| 61450 61450 | 61450 PLACEMENT FEES | 38,750.00 |
| 61510 61510 | 61510 VIRTUAL RECRUITING | 16,255.54 |
| 61530 61530 | 61530 CANDIDATE REIMBURSEMENT | 745.33 |
| 61540 61540 | 61540 TRAINING | 3,078.00 |
| 62100 62100 | 62100 DEPRECIATION EXPENSE - BUILDING | 48,653.37 |
| 62200 62200 | 62200 DEPRECIATION EXPENSE - FURNITURE AND FIXTURES | 100,107.56 |
| 62300 62300 | 62300 DEPRECIATION EXPENSE - COMPUTERS AND EQUIPMENT | 151,012.94 |
| 62400 62400 | 62400 DEPRECIATION EXPENSE - COMPUTER SOFTWARE | (13,361.00) |
| 62500 62500 | 62500 DEPRECIATION EXPENSE - LEASEHOLD IMPROVEMENTS | 498,088.99 |
| 69110 69110 | 69110 RENT - DALLAS | 994,874.28 |
| 69140 69140 | 69140 RENT - STORAGE | 11,023.33 |
| 69210 69210 | 69210 UTILITIES | 55,034.52 |
| 69220 69220 | 69220 OFFICE SUPPLIES | 143,507.22 |
| 69232 69232 | 69232 TELEPHONES - OFFICE | 86,573.03 |
| 69234 69234 | 69234 TELEPHONES - MOBILE | 102,030.73 |
| 69238 69238 | 69238 INTERNET | 213,470.37 |
| 69240 69240 | 69240 COMPUTER HARDWARE | 66,426.65 |
| 69250 69250 | 69250 COMPUTER SOFTWARE | 400,694.97 |
| 69260 69260 | 69260 MAINTENANCE | 18,021.65 |
| 69270 69270 | 69270 POSTAGE | 19,179.88 |
| 69280 69280 | 69280 TEMPORARY SERVICES | 2,579.33 |
| 69281 69281 | 69281 FOOD SUPPLIES | 144,648.14 |
| 69282 69282 | 69282 PARKING | 138,958.85 |
| 69290 69290 | 69290 OFFICE OVERHEAD - OTHER | 227,701.36 |
| 69310 69310 | 69310 DIRECTORS AND OFFICERS | 247,662.00 |
| 69320 69320 | 69320 WORKERS COMPENSATION | 34,662.88 |
| 69330 69330 | 69330 BUY/SELL | 14,875.00 |
| 69340 69340 | 69340 ADDITIONAL LIFE INSURANCE | 41,601.38 |
| 69350 69350 | 69350 OTHER INSURANCE | 88,305.83 |
| 69410 69410 | 69410 AIRFARE | 136,385.18 |
| 69420 69420 | 69420 MEALS | 64,817.22 |
| 69430 69430 | 69430 LODGING | 44,258.29 |
| 69440 69440 | 69440 ENTERTAINMENT | 509,735.88 |
| 69450 69450 | 69450 EMPLOYEE LUNCH | 283,814.86 |
| 69460 69460 | 69460 GROUND TRANSPORTATION | 23,557.78 |
| 69490 69490 | 69490 TRAVEL - OTHER | 5,972.71 |
| 69500 69500 | 69500 MARKETING AND ADVERTISING | 561,172.46 |
| 69600 69600 | 69600 CHARITABLE CONTRIBUTIONS | 67,700.00 |
| 69610 69610 | 69610 BUSINESS GIFTS | 116,780.19 |
| 69722 69722 | 69722 STATE CORPORATE TAX | 50.00 |
| 69730 69730 | 69730 TAXES - OTHER | 537,045.85 |
| 69832 69832 | 69832 CONFERENCE REGISTRATION | 12,420.78 |
| 69910 69910 | 69910 FEES AND DUES | 208,428.87 |
| 69920 69920 | 69920 BANK CHARGES | 14,052.09 |
| 69950 69950 | 69950 BAD DEBT | 79,835.57 |
| 69990 69990 | 69990 MISCELLANEOUS - OTHER | 684.72 |
| 80100 80100 | 80100 INTEREST INCOME - NON-OPERATING | (5,765,215.32) |

| | | | |
|---|---|---|---|
| 80200 | 80200 | 80200 INTEREST EXPENSE - NON-OPERATING | 1,344,399.09 |
| 80800 | 80800 | 80800 COMPANY DISCOUNT ON SHARE PURCHASES | (768,566.33) |
| 80900 | 80900 | 80900 OTHER INCOME/EXPENSE | 74,007,399.28 |
| 90100 | 90100 | 90100 REALIZED CAPITAL GAINS/LOSSES | (3,959,534.93) |
| 91100 | 91100 | 91100 INVESTMENT SECURITIES | 5,784,240.27 |
| 91207 | 91207 | 91207 NXRT | (15,997,586.35) |
| 91209 | 91209 | 91209 NHT | 163,219.32 |
| 91403 | 91403 | 91403 HIGHLAND PROMETHEUS FUND | 20.00 |
| 91410 | 91410 | 91410 SELECT EQUITY FUND | (109,058,363.77) |
| 91445 | 91445 | 91445 CREDIT OPPORTUNITIES FUND | 6,830,992.36 |
| 91460 | 91460 | 91460 RESTORATION CAPITAL PARTNERS | 9,909,464.57 |
| 91462 | 91462 | 91462 PETROCAP PARTNERS II | (468,147.29) |
| 91463 | 91463 | 91463 PETROCAP PARTNERS III | 9,472.57 |
| 91471 | 91471 | 91471 HIGHLAND LOAN FUND | (4,746.24) |
| 91480 | 91480 | 91480 STARCK | 2,346,668.27 |
| 91485 | 91485 | 91485 WRIGHT | (19,196,588.45) |
| 91495 | 91495 | 91495 HIGHLAND CLO FUNDING, LTD | 129,003.42 |
| 91835 | 91835 | 91835 HIGHLAND CAPITAL MANAGEMENT LATIN AMERICA, LP | 4,004,360.11 |
| 91840 | 91840 | 91840 HIGHLAND CAPITAL MANAGEMENT SINGAPORE | (9,123.39) |
| 91850 | 91850 | 91850 HIGHLAND CAPITAL MANAGEMENT KOREA | 225,509.80 |
| 91881 | 91881 | 91881 EAGLE EQUITY ADVISORS | 247,196.95 |
| 91885 | 91885 | 91885 MAPLE AVENUE HOLDINGS | (83,374.05) |
| 91900 | 91900 | 91900 OTHER INVESTMENTS | 424,641.00 |
| 99990 | 99990 | 99990 SYSTEM DEFAULT | (4,458.02) |

Total partners capital (396,613,941.24)

Total liabilities and partners' capital (571,536,513.25)    -

005190

**EXHIBIT 8**



CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

The following constitutes the ruling of the court and has the force and effect therein described.

Signed December 27, 2024

United States Bankruptcy Judge

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) | Case No. 19-34054-sgj11 |
| | ) | |
| Reorganized Debtor. | ) | |
| | ) | |

### STIPULATED AND AGREED ORDER RESOLVING (A) HCLOM, LTD.'S SCHEDULED CLAIMS 3.65 AND 3.66; AND (B) HIGHLAND CAPITAL MANAGEMENT, L.P.'S (1) OBJECTION AND (2) MOTION FOR A BAD FAITH FINDING AND AN AWARD OF ATTORNEYS' FEES AGAINST HCLOM, LTD. AND JAMES DONDERO IN CONNECTION THEREWITH [DOCKET NOS. 3657, 4176]

WHEREAS, on December 13, 2019, Highland Capital Management, L.P. ("Highland"),

the reorganized debtor in the above-captioned Chapter 11 case (the "Bankruptcy Case"), filed its

schedule of unsecured claims that identified "Highland CLO Holdco" as a creditor with claims

arising under a note. Docket No. 247 (Schedule E/F, Part 3.64 and 3.65) (the "Initial HCLOM

Claim");

---

[1] The Reorganized Debtor's last four digits of its taxpayer identification number are (8357). The headquarters and service address for the Reorganized Debtor is 100 Crescent Court, Suite 1850, Dallas, TX 75201.



1934054241227000000000001

005192

HCMLPHMIT00003860

WHEREAS, on September 22, 2020, Highland filed a *Notice of Filing of Debtor's Amended Schedules* in which it, among other things, replaced Highland CLO Holdco as the creditor on the Initial HCLOM Claim with Highland CLO Management, Ltd. ("HCLOM Ltd.," and together with Highland, the "Parties"). [Docket No. 1082] (Schedule E/F, Part 3.65 and 3.66, the "HCLOM Claim");

WHEREAS, on February 22, 2021, this Court entered the *Order Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (ii) Granting Related Relief* [Docket No. 1943] (the "Confirmation Order"), which confirmed the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* [Docket No. 1808] (the "Plan"). The Plan became effective on August 11, 2021 (the "Effective Date") [Docket No. 2700];

WHEREAS, as required under the Plan, Highland created a reserve for the HCLOM Claim (the "Reserve");

WHEREAS, on February 2, 2023, Highland filed its objection to the HCLOM Claim [Docket No. 3657] (the "Objection");

WHEREAS, on April 3, 2023, HCLOM Ltd. filed its response to the Objection [Docket No. 3751] (the "Response");

WHEREAS, on November 21, 2024, Highland filed its *Motion for (A) a Bad Faith Finding and (B) an Award of Attorneys' Fees Against Highland CLO Management, Ltd. and James Dondero in Connection with HCLOM Claims 3.65 and 3.66* [Docket No. 4176] (the "Bad Faith Motion," and collectively with the HCLOM Claim and the Objection, the "HCLOM Litigation");

WHEREAS, an evidentiary hearing on the HCLOM Litigation was scheduled for December 18, 2024 (the "Hearing");

005193

HCMLPHMIT00003861

WHEREAS, the Parties desire to settle and resolve the HCLOM Litigation pursuant to the terms of this Stipulated and Agreed Order (the "Agreement");

WHEREAS, the Court finds and concludes that: (a) the Court has jurisdiction to consider the terms contained in this Stipulated and Agreed Order; (b) venue is proper under 28 U.S.C. §1409; (c) the Parties' Stipulated and Agreed Order is binding; and (d) the relief requested in the Stipulated and Agreed Order is appropriate;

**ACCORDINGLY:**

**IT IS HEREBY ORDERED that:**

1.    The HCLOM Claim is hereby converted to a Class 10 interest[2] in the amount of $10,140,633.26.

2.    Upon the Effective Date, and to the maximum extent permitted by law, except for claims arising out of an failure to abide this Order, HCLOM Ltd. hereby forever, finally, fully, unconditionally, and completely releases, relieves, acquits, discharges, remises, and exonerates the Protected Parties,[3] individually and collectively, from, and waives and relinquishes, any and all Claims, which HCLOM Ltd. ever had, now has, or hereafter can, shall, or may have against any of the Protected Parties by reason of, arising from, relating to, or in connection with, any fact, matter, or transaction, including any fact, matter, transaction, or occurrence in connection with, relating to, or with respect to the Bankruptcy Case, the management of the Highland Entities, or the Highland Entities' property and including any defense, affirmative defenses, and right to setoff

---

[2] "Class 10" shall have the meaning ascribed to that term in Article III.H. ¶ 10 of the Plan.

[3] "Protected Parties" shall have the meaning ascribed to that term in Article I.B ¶ 105 of the Plan.

005194

HCMLPHMIT00003862

arising out of, or otherwise related to, any of the foregoing (collectively, "HCLOM Ltd.'s Released

Claims").

**FOR THE AVOIDANCE OF DOUBT, THE FOREGOING RELEASE IS INTENDED TO BE GENERAL AND INCLUDES, WITHOUT LIMITATION, A RELEASE OF ALL RELEASED CLAIMS, WHETHER KNOWN OR UNKNOWN, SUSPECTED OR UNSUSPECTED, ARISING OR EXISTING FROM THE BEGINNING OF TIME THROUGH AND INCLUDING THE EFFECTIVE DATE.**

3.      To the maximum extent permitted by law, HCLOM Ltd. waives the benefit of any

statute or other principle of law or equity that limits the applicability of a release with respect to

claims that the releasing party does not know or suspect to exist in his, her or its favor at the time

of executing the release.

4.      Without limiting the scope of the foregoing waiver, in connection with the

foregoing release, HCLOM Ltd. waives the benefits of Section 1542 of the California Civil Code

(to the extent, if any, that Section 1542 might apply to the foregoing release), which provides as

follows:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

5.      HCLOM Ltd. hereby agrees that the provisions of Section 1542 of the Civil Code

of the State of California and all similar federal or state law, rights, rules or legal principles, legal

or equitable, in each case solely to the extent such provisions apply, **ARE HEREBY**

**KNOWINGLY AND VOLUNTARILY WAIVED AND RELINQUISHED BY HCLOM**

**LTD.** to the full extent that such rights and benefits pertaining to the matters released herein may

005195

HCMLPHMIT00003863

be waived, and HCLOM Ltd., on its own behalf and on behalf of the HCLOM Ltd. Releasors, hereby agrees and acknowledges that this waiver and relinquishment is an essential term of this Agreement, without which the consideration provided would not have been given.

6.      Except for the limited purpose of enforcing this Order, HCLOM, Ltd. shall file no pleading, motion, adversary proceeding, or other paper in this Bankruptcy Case (or in connection with any appeal arising from any order entered by the Bankruptcy Court), including but not limited to, in connection with the HCLOM Claim as a holder of a Class 10 interest.

7.      The Protected Parties, individually and collectively, shall owe no duty to HCLOM, Ltd. (whether contractual, fiduciary, equitable, statutory or otherwise) except as arising out of this Order.

8.      Highland is authorized to release the Reserve, and no reserve shall be established for HCLOM, Ltd.'s Class 10 interest.

9.      This Stipulated and Agreed Order does not and shall not operate to give HCLOM Ltd. standing for any purpose in connection with the Bankruptcy Case (or in connection with any appeal arising from any order entered by the Bankruptcy Court), except in connection with the enforcement of this Order.

10.     The Bad Faith Motion is deemed withdrawn with prejudice.

**THE PARTIES UNDERSTAND AND AGREE THAT THIS AGREEMENT CONTAINS THE ENTIRE AGREEMENT BETWEEN THE PARTIES, AND NO RIGHTS ARE CREATED IN FAVOR OF EITHER PARTY OTHER THAN AS SPECIFIED OR EXPRESSLY SET FORTH IN THIS AGREEMENT.  THERE ARE NO REPRESENTATIONS, CONDITIONS, WARRANTIES, STATEMENTS, OR UNDERSTANDINGS, EITHER ORAL OR WRITTEN, BETWEEN THE PARTIES OTHER THAN THOSE EXPRESSLY SET FORTH IN THIS AGREEMENT.**

### ### END OF ORDER ###

005196

STIPULATED AND AGREED THIS 23RD DAY OF DECEMBER 2024

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No. 143717)
John A. Morris (NY Bar No. 2405397)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569) 10100
Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile:  (310) 201-0760
E-mail: jpomerantz@pszjlaw.com
jmorris@pszjlaw.com
gdemo@pszjlaw.com
hwinograd@pszjlaw.com

- and -

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Telephone: (972) 755-7100
Facsimile:  (972) 755-7110

*Counsel for Plaintiff Highland Capital*
*Management, L.P.*

005197

HCMLPHMIT00003865

- and -

**STINSON LLP**
*/s/ Deborah Deitsch-Perez*
Deborah Deitsch-Perez
Texas State Bar No. 24036072
Michael P. Aigen
Texas State Bar No. 24012196
3102 Oak Lawn Avenue, Suite 777
Dallas, Texas 75219-4259
Telephone: (214) 560-2201
Email: deborah.deitschperez@stinson.com
Email: michael.aigen@stinson.com

*Counsel for Highland CLO Management, Ltd. and James Dondero*

- and -

**STINSON LLP**
*/s/ Deborah Deitsch-Perez*
Deborah Deitsch-Perez
Texas State Bar No. 24036072
Michael P. Aigen
Texas State Bar No. 24012196
3102 Oak Lawn Avenue, Suite 777
Dallas, Texas 75219-4259
Telephone: (214) 560-2201
Email: deborah.deitschperez@stinson.com
Email: michael.aigen@stinson.com

*Counsel for Hunter Mountain Investment Trust and Dugaboy Investment Trust (approved as to form and substance)*

005198

HCMLPHMIT00003866

**EXHIBIT 9**

## INTERCREDITOR AND PARTICIPATION AGREEMENT

This Intercreditor and Participation Agreement (the "<u>Agreement</u>") is entered into as of January 10, 2025 (the "<u>Effective Date</u>") by and between Highland CLO Management, Ltd. (together with its successors and assigns in such capacities, "<u>HCLOM Ltd.</u>") and Hunter Mountain Investment Trust (together with its successors and assigns in such capacities, "<u>HMIT</u>"). HCLOM Ltd. and HMIT are each referred to herein individually as a "Party" and jointly as the "Parties."

## RECITALS

WHEREAS, on September 22, 2020, Highland Capital Management, L.P. filed a Notice of Filing of Debtor's Amended Schedules in its pending Chapter 11 Case No. 19-34054-sgj11 (the "<u>Bankruptcy Case</u>") in which it, among other things, scheduled a creditor's claim by HCLOM Ltd. (the "<u>HCLOM Claim</u>"); and

WHEREAS, on December 27, 2024, the Bankruptcy Court entered a Stipulated and Agreed Order Resolving (A) HCLOM, Ltd.'s Scheduled Claims 3.65 and 3.66; and (B) Highland Capital Management, L.P.'s (1) Objection and (2) Motion for a Bad Faith Finding and an Award of Attorneys' Fees Against HCLOM, Ltd. and James Dondero in Connection Therewith [Docket Nos. 3657, 4176] in the Bankruptcy Case (the "<u>Stipulation and Agreed Order</u>"); and

WHEREAS, the Stipulation and Agreed Order converted the HCLOM Claim to a Class 10 interest/claim (as such is defined in Article III.H. ¶ 10 of the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) in the Bankruptcy Case) (the "<u>Plan</u>") in the amount of $10,140,633.26; and

WHEREAS, the Parties have agreed to certain rights and priorities solely as between themselves regarding HCLOM Ltd.'s participation in the payment of Class 10 interests/claims;

THEREFORE, for and in consideration of the promises, covenants, conditions, stipulations, benefits, and obligations described and provided herein, the sufficiency and adequacy of which is expressly hereby acknowledged, the Parties agree as follows:

## AGREEMENT

1.    **HMIT Payment Obligation to HCLOM Ltd.** Upon HMIT's receipt of distributions on account of its Class 10 interest/claim (the "<u>Distributions</u>"), HMIT will pay to HCLOM Ltd. an amount equal to five percent (5%) of the funds received by HMIT within two (2) business days after receipt of indefeasible funds by HMIT (the "<u>HMIT Payment Obligation</u>"). HMIT shall be entitled to deduct from the Distributions the fees and expenses billed by Kelly Hart Hallman, LLP which directly relate to the Stipulation and Agreed Order or this Agreement (the "HMIT Expenses") until all HMIT Expenses are paid in full.

2.    **No Additional Duties to HCLOM Ltd.** HMIT shall retain and have the sole discretion to act with respect to its Class 10 interest/claim, and shall owe no additional duties to HCLOM Ltd. or any other person or entity, including without limitation, with respect to (i) the amount of Distributions or recovery by HMIT on account of its Class 10 interests/claims,

ACTIVE 706075387v4

005200

HCMLPHMIT00003868

(ii) the amount of Distributions that could be received by any holder of Class 10 interests/claims, (iii) the rights of any holder of Class 10 interests/claims, or (iv) any pleading or document that could or should be filed in any way related to the Bankruptcy Case, the Plan, or the HMIT Class 10 interests/claims.

3. **No Liens or Encumbrances**. HMIT will not take any action that could reasonably be expected to encumber HMIT's Class 10 interests/claims, limit or affect HMIT's right or ability to fulfil and perform the HMIT Payment Obligation, or limit or affect HCLOM Ltd.'s right to receive the Distributions.

4. **This Agreement Supersedes the Effects of the Stipulated and Agreed Order Among the Parties**. HCLOM acknowledges and agrees that, notwithstanding the Stipulated and Agreed Order, the terms of this Agreement amends and supersedes the effect of the Stipulation and Agreed Order as between the Parties and HCLOM's rights to payment under the Plan are limited solely to the HMIT Payment Obligation.

5. **Non-Interference; No Cause of Action**. Notwithstanding Paragraph 3, HCLOM will not have any rights to object to or otherwise interfere with the rights of HMIT as a holder of Class 10 interest to reach a settlement with Highland Capital Management, LP ("Highland"). HCLOM acknowledges that it shall have no right to notice or approval of such a settlement nor will it have any cause of action against HMIT arising out of any such settlement.

6. **Remittance Agreement**. The Parties acknowledge that contemporaneously herewith NREA SB II Holdings, LLC (together with its successors and assigns in such capacities, "NexPoint Small Bay."), Charitable DAF Holdings Corp. (together with its successors and assigns in such capacities, "Charitable DAF"), and Liberty CLO Holdco, Ltd. (together with its successors and assigns in such capacities, "Liberty CLO") have entered into that certain Remittance Agreement effective January 10, 2025 (the "Remittance Agreement"). HCLOM agrees that if NexPoint Small Bay fails to make the DAF Bridge Equity Payment (as defined in the Remittance Agreement) pursuant to the terms of the Remittance Agreement, HMIT will have no obligations to make the HMIT Payment Obligation, and HMIT shall not receive any distribution from HMIT or any other party related to any Class 10 interest/claim. Notwithstanding any failure of NexPoint Small Bay to adhere to the terms of the Remittance Agreement, HCLOM acknowledges that by executing this Agreement, it shall have no other recourse or rights to payment under the Plan other than the terms of this Agreement.

7. **Choice of Law; Jurisdiction; Venue**. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas, without regard to conflict of law provisions. Each Party to hereby consents and agrees that the courts located in Texas shall have sole and exclusive jurisdiction to hear and determine any claims or disputes between the parties pertaining to this Agreement or to any matter arising out of or relating to this Agreement. Each Party expressly submits and consents in advance to such jurisdiction in any action or suit commenced in any such court, and each Party hereby waives any objection that it may have based upon lack of personal jurisdiction, improper venue, or *forum non conveniens*.

8. **Amendments; Waivers**. No amendment, modification, or waiver of any of the provisions of this Agreement shall be deemed to be made unless the same shall be in writing signed on behalf of each Party, and each waiver, if any, shall be a waiver only with respect to the specific instance involved and shall in no way impair the rights of the Party making such waiver or the obligations of the other Party in any other respect or at any other time.

005201

HCMLPHMIT00003869

9.      **Binding Effect**. Except as otherwise expressly provided herein, the provisions of this Agreement shall inure to the benefit of, and be binding upon, the Parties and their respective successors, assigns, executors, representatives, and administrators.

10.     **Entire Agreement**. The Agreement contains the entire understanding of the Parties with respect to the subject matter hereof and supersedes all prior agreements and understandings, oral or written, with respect to such matters, which the parties acknowledge have been merged into this Agreement.

11.     **Counterparts**. This Agreement may be executed in counterparts, each of which shall be deemed an original but all of which taken together shall constitute one and the same instrument. Signature by facsimile or other similar electronic transmission shall have the same force and effect as an original signature.

IN WITNESS WHEREOF, the Parties have executed this Intercreditor and Participation Agreement as of the Effective Date set forth above and in the capacities set forth below.

3

005202
HCMLPHMIT00003870

HIGHLAND CLO MANAGEMENT, LTD.

By: _____

Name: James Dondero

Title: President


HUNTER MOUNTAIN INVESTMENT TRUST

By: _____

Name: Mark Patrick

Title: Administrator


005203

HCMLPHMIT00003871

**EXHIBIT 10**

005204

| | |
|---|---|
| **From:** | Louis M. Phillips <Louis.Phillips@kellyhart.com> |
| **Sent:** | Wednesday, September 3, 2025 2:32 PM |
| **To:** | Dan.Elms@gtlaw.com; John A. Morris |
| **Cc:** | Jeff Pomerantz |
| **Subject:** | RE: Distributions to HCLOM |

Dan,

I have been advised that HMIT paid Dugaboy today on behalf of HCLOM (in accordance with wire instructions).  Amount was $164,120.82.  Let me know if you have any questions.

**Louis M. Phillips**
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

louis.phillips@kellyhart.com
www.kellyhart.com

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination,

1

005205

distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

---

**From:** Louis M. Phillips
**Sent:** Tuesday, August 26, 2025 9:33 AM
**To:** 'Dan.Elms@gtlaw.com' <Dan.Elms@gtlaw.com>; jmorris@pszjlaw.com
**Cc:** jpomerantz@pszjlaw.com
**Subject:** RE: Distributions to HCLOM

Dan,

Pursuant to a Consent Order entered into with the Joint Official Liquidators of Charitable DAF Holdco, Ltd. on or about July 31, 2025 (attached), CLO Holdco, LLC (on behalf of Hunter Mountain Investment Trust), must provide the JOL's 7 days' written notice of any payment or transaction of any nature in excess of $50,000.  Such notice of the payment to Dugaboy (on behalf of HCLOM) will be provided today and payment will be made to Dugaboy (on behalf of HCLOM) no sooner than September 3 in accordance with the Consent Order.  Thanks

**Louis M. Phillips**
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

005206

Case 19-34054-sgj11    Doc 4394-10    Filed 09/15/25    Entered 09/15/25 16:50:30    Desc
Exhibit 10    Page 4 of 9

*louis.phillips@kellyhart.com*
*www.kellyhart.com*

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

---

**From:** Dan.Elms@gtlaw.com <Dan.Elms@gtlaw.com>
**Sent:** Tuesday, August 26, 2025 7:45 AM
**To:** jmorris@pszjlaw.com
**Cc:** jpomerantz@pszjlaw.com; Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Subject:** RE: Distributions to HCLOM

EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.

---

GM, John:

Thank you for your patience on this.  Please remit to payment to HCLOM to the following account and let me know when this has been initiated.

Best, Dan

Bank Name: Nexbank, 2515 McKinney Ave, Dallas, TX 75201
Account Holder: The Dugaboy Investment Trust, 300 Crescent Ct, Ste 700, Dallas, TX 75201
Routing: 311973208
Account: 1612811
Re: HCLOM

**Daniel P. Elms**
**Shareholder**

3

005207

Greenberg Traurig, LLP
2200 Ross Avenue, Suite 5200 | Dallas, TX 75201
T +1 214.665.3660  |  F +1 214.665.3601
elmsd@gtlaw.com  |  www.gtlaw.com

---

**From:** John A. Morris <jmorris@pszjlaw.com>
**Sent:** Thursday, July 17, 2025 5:38 PM
**To:** Elms, Daniel P. (Shld-DAL-LT) <Dan.Elms@gtlaw.com>
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>; Louis M. Phillips <louis.phillips@kellyhart.com>
**Subject:** RE: Distributions to HCLOM

Dan,

We're following up again.

As you know, in accordance with the Stipulated and Agreed Order filed at Docket 4199, Highland has been seeking wire instructions from your client to facilitate a distribution on account of the Highland CLO Management, Ltd. ("HCLOM") interest in Class 10.  To date, we have received no instructions.

Additionally, and consistent with Article VI.L. of the Plan, in order to make the distribution, Highland requires HCLOM's current tax identification number as well as sufficient documentary evidence of HCLOM's tax reporting and withholding status, (typically an IRS form W-8 with applicable supplements).

Please provide the HCLOM wire instructions and required tax certifications.

Thank you for your prompt attention to this matter.

Regards,

John


**John A. Morris**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 212.561.7760
Tel: 212.561.7700 | Fax: 212.561.7777
jmorris@pszjlaw.com
vCard | Bio | LinkedIn

005208

Case 19-34054-sgj11    Doc 4394-10    Filed 09/15/25    Entered 09/15/25 16:50:30    Desc
Exhibit 10    Page 6 of 9



Los Angeles | New York | Wilmington, DE | Houston | San Francisco

**From:** Dan.Elms@gtlaw.com <Dan.Elms@gtlaw.com>
**Sent:** Monday, July 7, 2025 2:54 PM
**To:** John A. Morris <jmorris@pszjlaw.com>
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>; louis.phillips@kellyhart.com
**Subject:** RE: Distributions to HCLOM

Hi, John:

HCLOM has promised to provide me wiring instructions by COB today, and I will forward to you and Louis as soon as I have them.

Louis and I have a deal in place w/r/t to the HCLOM distribution.  Please distribute the full amount as authorized by HCLOM's Class 10 POC, and then HMIT will get a credit in the amount of that distribution against the amount payable by HMIT.

<u>Louis</u> – Please speak up if I've misunderstood or (unintentionally) mischaracterized the above.

Thanks, Dan

**Daniel P. Elms**
Shareholder

Greenberg Traurig, LLP
2200 Ross Avenue | Suite 5200 | Dallas, TX 75201
T +1 214.665.3660 | F +1 214.665.3601
Dan.Elms@gtlaw.com | www.gtlaw.com  | View GT Biography



**From:** John A. Morris <jmorris@pszjlaw.com>
**Sent:** Monday, July 7, 2025 1:46 PM
**To:** Elms, Daniel P. (Shld-DAL-LT) <Dan.Elms@gtlaw.com>

5

005209

**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>; Louis M. Phillips <louis.phillips@kellyhart.com>
**Subject:** FW: Distributions to HCLOM

**\*EXTERNAL TO GT\***

Dan,

I'm following up on the emails below.

Can you please send us wire instructions for HCLOM so Highland can fulfill its obligations under the Stipulated and Agreed Order filed at Docket No. 4199?

Highland will otherwise leave it to you and Louis to discuss what additional amounts may be due HCLOM under the HMIT/HCLOM agreement, if any.

Please let me know if you have any questions.

Regards,

John

**John A. Morris**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 212.561.7760
Tel: 212.561.7700 | Fax: 212.561.7777
jmorris@pszjlaw.com
vCard | Bio | LinkedIn



Los Angeles | New York | Wilmington, DE | Houston | San Francisco

6

005210

**From:** John A. Morris
**Sent:** Saturday, July 5, 2025 10:08 AM
**To:** Dan.Elms@gtlaw.com
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>
**Subject:** Re: Distributions to HCLOM

Dan, no worries at all.

We expect to make a distribution to HCLOM but understand there are two agreements in play (HCMLP/HCLOM and HMIT/HCLOM).

It's a $10 million payment.  Can you and Louis figure out how it gets divided and give us a joint instruction?

Please let us know.

Regards,

John

Sent from my iPhone

> On Jul 5, 2025, at 8:54 AM, Dan.Elms@gtlaw.com wrote:
>
> Hi, John:
>
> I hope you are well, and apologies for the weekend intrusion.  Louis Phillips advises me that there was a recent distribution of Class 10 funds from the Highland Entities to HCLOM.  Can you confirm this to be the case and, if so, advise of the amount, the date, the account to which those funds were sent, and how that distribution was calculated.
>
> This is not intended to disrupt your holiday weekend, so please let me know whenever you can.
>
> Thanks, Dan
>
> **Daniel P. Elms**
> Shareholder

7

005211

Greenberg Traurig, LLP
2200 Ross Avenue | Suite 5200 | Dallas, TX 75201
T +1 214.665.3660 | F +1 214.665.3601
Dan.Elms@gtlaw.com | www.gtlaw.com | View GT Biography

**GT** GreenbergTraurig

---

If you are not an intended recipient of confidential and privileged information in this email, please delete it, notify us immediately at postmaster@gtlaw.com, and do not use or disseminate the information.

005212

Geoffrey S. Harper
Texas Bar No. 00795408
gharper@winston.com
John Michael Gaddis
Texas Bar No. 24069747
mgaddis@winston.com
WINSTON & STRAWN LLP
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
(214) 453-6500
(214) 453-6400 (fax)

Michael J. Lang
Texas State Bar No. 24036944
mlang@cwl.law
Alexandra Ohlinger
Texas State Bar No. 24091423
aohlinger@cwl.law
CRAWFORD, WISHNEW & LANG PLLC
1700 Pacific Ave, Suite 2390
Dallas, Texas 75201
Telephone: (214) 817-4500

*Counsel for The Dugaboy Investment Trust*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | |
| | § | Case No. 19-34054-sgj11 |
| Reorganized Debtor. | § | |
| | § | |

**THE DUGABOY INVESTMENT TRUST'S WITNESS AND EXHIBIT LIST
FOR HEARING TO BE HELD ON SEPTEMBER 18, 2025**

The Dugaboy Investment Trust ("Dugaboy") in the above-captioned chapter 11 case (the

"Bankruptcy Case"), by and through its undersigned counsel, submits the following witness and

exhibit list in support of its opposition to Highland Claimant Trust's ("Highland") *Motion for*

**005213**

*Order Fixing Allowed Amount of Class 11 Interests* [Docket Nos. 4362, 4384], which the Court

has set for hearing at 2:30 p.m. (Central Time) on September 18, 2025 (the "<u>Hearing</u>") in the

Bankruptcy Case.

    **A.**    <u>**Witnesses:**</u>

        1.    Any witness identified by or called by any other party; and

        2.    Any witness necessary for rebuttal.

    **B.**    <u>**Exhibits:**</u>

| Number | Exhibit | Offered | Admitted |
|--------|---------|---------|----------|
| 1. | Any document entered or filed in Highland Capital Management, L.P.'s chapter 11 bankruptcy case, including any exhibits thereto. | | |
| 2. | All exhibits necessary for impeachment and/or rebuttal purposes. | | |
| 3. | All exhibits identified by or offered by any other party at the Hearing. | | |

005214

Dated: September 15, 2025.

Respectfully submitted,

**WINSTON & STRAWN LLP**

By: */s/ Geoffrey S. Harper*

Geoffrey S. Harper
Texas Bar No. 00795408
gharper@winston.com
John Michael Gaddis
Texas Bar No. 24069747
mgaddis@winston.com
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
(214) 453-6500
(214) 453-6400 (fax)

-and-

Michael J. Lang
Texas State Bar No. 24036944
mlang@cwl.law
Alexandra Ohlinger
Texas State Bar No. 24091423
aohlinger@cwl.law
**Crawford, Wishnew & Lang PLLC**
1700 Pacific Ave, Suite 2390
Dallas, Texas 75201
Telephone: (214) 817-4500

***Counsel for The Dugaboy Investment Trust***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 15, 2025, a true and correct copy of this document was served electronically via the Court's CM/ECF system to the parties registered or otherwise entitled to receive electronic notices in this case.

*/s/ Geoffrey S. Harper*
Geoffrey S. Harper

BTXN 208 (rev. 07/09)

| | | |
|---|---|---|
| IN RE: Highland Capital Management, L.P. | Hearing type | Case # 19−34054−sgj11 |
| DEBTOR | | |

**TYPE OF HEARING**

| | | |
|---|---|---|
| Highland Capital Management, L.P. | *VS* | Dugaboy Investment Trust |
| **PLAINTIFF / MOVANT** | | **DEFENDANT / RESPONDENT** |

| | |
|---|---|
| John A. Morris | Geoffrey S. Harper |
| **ATTORNEY** | **ATTORNEY** |

**EXHIBITS**

SEE AMENDED EXHIBIT & WITNESS LIST AT
DOC. #4394
_____

Court admitted Debtors Exhibits #1, #2, #3, #4, #5,
#6, #7, #8, #9 & #10
_____
_____
_____
_____
_____
_____
_____

_____
_____
_____
_____
_____
_____
_____
_____

| | | |
|---|---|---|
| Michael Edmond | September 18, 2025 | Stacey G Jernigan |
| **REPORTED BY** | **HEARING DATE** | **JUDGE PRESIDING** |

005216



CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed September 22, 2025**

_____
**United States Bankruptcy Judge**

---

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § | Case No. 19-34054-sgj11 |
| | § | |
| Reorganized Debtor. | § | |

### ORDER FIXING ALLOWED AMOUNT OF CLASS 11 INTERESTS

Having considered (a) the *Motion for an Order Fixing Allowed Amount of Class 11 Interests* [Docket No. 4362] (the "Motion")[2] filed by the Highland Claimant Trust (the "Claimant Trust") in the above-captioned chapter 11 case (the "Bankruptcy Case"); (b) *Dugaboy Investment Trust's Response Opposing Highland Claimant Trust's Motion for Order Fixing Allowed Amount of Class 11 Interests* [Docket No. 4384] filed by The Dugaboy Investment Trust ("Dugaboy"); (c) the Claimant Trust's *Reply in Support of Motion for an Order Fixing Allowed*

---

[1] The last four digits of the Reorganized Debtor's taxpayer identification number are 8357. The headquarters and service address for the Reorganized Debtor is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

[2] Capitalized terms not otherwise defined herein have the meanings ascribed to such terms in the Motion.

LA:4918-8941-3738.5 36027.002

**005217**

*Amount of Class 11 Interests* [Docket No. 4393]; (d) the evidence admitted into the record during

the hearing on the Motion held on September 18, 2025 (the "Hearing"), including the Court's

assessment of the witness's credibility; (e) all arguments presented at the Hearing; and (f) all

prior proceedings in the Bankruptcy Case; and the Court having jurisdiction over this matter

pursuant to 28 U.S.C. §§ 157 and 1334 as well as the retention of jurisdiction provisions of the

Plan; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. §

157(b)(2); and venue in this District being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and

the Court having found that the legal and factual bases set forth in the Motion establish sufficient

cause for the relief granted herein; and adequate notice of the Motion having been given; and

after due deliberation and good cause appearing therefor,

**THE COURT HEREBY FINDS THAT:[3]**

1.      The Court's findings of fact and conclusions of law set forth on the record at the

conclusion of the Hearing are incorporated by reference except as supplemented in this Order.

2.      On the Effective Date and in accordance with the Plan, the Claimant Trust was

created pursuant to the terms of the Claimant Trust Agreement (the "CTA").

3.      Pursuant to Section 5.1(c) of the CTA and in accordance with the Plan (Art.

III.H.10 and 11): (a) the pre-petition Class B/C Limited Partnership Interests and the Class A

Limited Partnership Interests in Highland Capital Management, L.P. ("Highland") were

extinguished; (b) the Holders of allowed Class B/C Limited Partnership Interests would receive

unvested Class 10 Contingent Claimant Trust Interests if and when their Equity Interests were

allowed in amounts as determined under the Plan; and (c) Holders of allowed Class A Limited

Partnership Interests would receive unvested Class 11 Contingent Claimant Trust Interests if and

when their Equity Interests were allowed in amounts as determined under the Plan.

---

[3] Any finding of fact that should be more appropriately characterized as a conclusion of law should be deemed
as such and *vice versa*.

4.    The holders of unvested Class 11 Contingent Claimant Trust Interests (*i.e.*, Highland's former Class A limited partners) and the percentage of the limited partnership interests previously held by them are as follows: Strand Advisors (0.2508%), Dugaboy (0.1866%), Mark K. Okada (0.0487%), The Mark and Pamela Okada Family Trust—Exempt Trust #1 (0.0098%), and The Mark and Pamela Okada Family Trust—Exempt Trust #2 (0.0042%).  Together, Highland's former Class A limited partners held 0.500% of Highland's prepetition limited partnership interests which were extinguished by the Plan.

5.    Hunter Mountain Investment Trust ("<u>HMIT</u>") was Highland's sole Class B/C limited partner as of the Petition Date (holding 99.5% of Highland's limited partnership interests) and therefore received an unvested Class 10 Contingent Claimant Trust Interest under the Plan.

6.    Following an evidentiary hearing held on June 25, 2025, HMIT's Class 10 Interest was allowed in the amount of $336,940,230.58 pursuant to this Court's order entered at Docket No. 4297 (*see* Order ¶12).

7.    Paragraph 36 of the Confirmation Order provides that the "Plan properly separately classifies the Equity Interests in Class 10 . . . from the Equity Interests in Class 11 . . . because they represent different types of equity security interests in the Debtor and different payment priorities."

8.    Pursuant to the Plan and the CTA, Class 11 is subordinated to Class 10 such that holders of Allowed Class 11 Interests cannot receive any distributions from the Claimant Trust until the holders of allowed Class 10 Interests are paid in full.

9.    The Claimant Trust is required to resolve all disputed Claims and Interests before it can commence its dissolution, a process that must begin no later than August 11, 2026, pursuant to the CTA and this Court's prior orders.

005219

10.    The Court finds that the calculation the Claimant Trust used to fix the amount of each Class 11 Interest as of the Petition Date (*i.e.*, Highland started with each former partner's respective capital account balance as of December 31, 2018 (as reported in its 2018 federal income tax return and associated Schedules K-1 delivered to each former partner), and then used Highland's actual activity in 2019 (as reported in Highland's financial statements) to bring those capital account amounts forward to the Petition Date)) was fair and reasonable.

**NOW, THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED THAT:**

11.    The Motion is **GRANTED**.

12.    As stated on the record during the Hearing, applying the fair and reasonable calculation, the Class 11 Interests are Allowed in the following fixed amounts: Strand Advisors ($994,707.76), Dugaboy ($740,081.61), Mark K. Okada ($192,754.38), The Mark and Pamela Okada Family Trust—Exempt Trust #1 ($38,868.17), and The Mark and Pamela Okada Family Trust—Exempt Trust #2 ($16,657.79).

13.    Dugaboy's objections to the Motion are **OVERRULED**.

14.    The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

### ### END OF ORDER ###

005220