Case No. 3:25-cv-02724-L

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

In re Highland Capital Management, L.P.
Debtor

The Dugaboy Investment Trust

Appellant

v.

Highland Capital Management, L.P. and
Highland Claimant Trust

Appellees

Appeal from the United States Bankruptcy Court,
Northern District of Texas, Dallas Division
Case No. 19-34054-sgj11
Honorable Chief Judge Stacey G. C. Jernigan

# APPELLEES' BRIEF

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz
John A. Morris
Gregory V. Demo
Jordan A. Kroop
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
(310) 277-6910

HAYWARD PLLC
Zachery Z. Annable
Texas Bar No. 24053075
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
(972) 755-7100

*Counsel for Appellees*

4937-7591-9783.4 36027.003

1

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

I certify that, under Federal Rule of Bankruptcy Procedure 8012(c)(2) and Local Bankruptcy Rule 8012.1, appellee Highland Capital Management, L.P. is the only debtor in the underlying Chapter 11 bankruptcy case. It is not a corporation but, rather, a partnership whose controlling partnership interest is held by appellee Highland Claimant Trust, which is not a corporation but, rather, a Delaware statutory trust. Both appellees are represented by Pachulski Stang Ziehl & Jones LLP and Hayward PLLC. Appellant The Dugaboy Investment Trust is represented by King & Spalding LLP.

*/s/ Zachery Z. Annable*
Zachery Z. Annable

# Contents

Oral Argument.................................................................................5

Statement of the Case ......................................................................5

Standard of Review ........................................................................12

Argument Summary........................................................................13

Argument .......................................................................................15

    Highland's Valuation Methodology Relied on Dondero's Own Numbers
    and Was the Only Way to Honor the Plan's and Dondero's Own
    Priority Scheme Among Equityholders .................................................15

    Dugaboy Offered the Bankruptcy Court No Alternative to Valuing
    Dugaboy's Class 11 Interest................................................................19

    The Absolute Priority Rule Has Not Been "Violated" and Is Irrelevant
    Anyway................................................................................................23

    The Bankruptcy Court Properly Cited Res Judicata, and Not In the
    Way Dugaboy Thinks .........................................................................26

    Dugaboy's Tired Recusal Argument Has Never Persuaded Anyone and
    It Shouldn't Persuade This Court.......................................................27

Conclusion......................................................................................32

## AUTHORITIES

**Cases**

*NexPoint Advisors, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 48 F.4th 419 (5th Cir. 2022)...........................................................................25

*Stoll v. Gottlieb*, 305 U.S. 165 (1938) .........................................................................27

*Travelers Indemnity Co. v. Bailey*, 557 U.S. 137 (2009)..............................................27

*United Student Aid Funds v. Espinosa*, 559 U.S. 260 (2010) ......................................27

**Statutes**

28 U.S.C. § 455.....................................................................................................29, 30

## ORAL ARGUMENT

This appellant ("**Dugaboy**") and its affiliates have prosecuted more than 60 appeals from this bankruptcy case to this Court to date. The relevant factual history is, by now, more than well known to this Court. The legal issues pertinent to this appeal are neither complicated nor novel. Because the facts and legal arguments are adequately presented in the briefs and record, this Court's decisional process would not be significantly aided by oral argument. Appellees (together, "**Highland**") respectfully urge the Court to dispense with oral argument.[1]

## STATEMENT OF THE CASE

Dugaboy's statement of the case in its Opening Brief contains a rambling, inaccurate, and largely irrelevant recitation of the factual and procedural background leading to this appeal. The spurts of sophistry, the self-serving spinning of plain facts, outright falsehoods, and the

---

[1] Oral argument would only accord Dugaboy with yet another opportunity to repeat its lie concerning Chief Bankruptcy Judge Jernigan's voluntary recusal. Despite what Dugaboy's opening brief [Doc 23] ("**Opening Brief**") asserts in its introduction, Chief Judge Jernigan's recusal was neither "corrective action" nor "mandated" by the Judicial Council for the Fifth Circuit. Chief Fifth Circuit Judge Elrod's written decision makes that abundantly clear. The Court can read it for itself—and rely on the *three* decisions from the Fifth Circuit Court of Appeals which declined each time to find that Chief Judge Jernigan was either biased or prejudiced against Mr. Dondero or the myriad of entities he uses to prosecute his litigations. Dugaboy's continuing to lie about what that decision says offends the integrity of the judicial process and should insult this Court.

spurious impugning of the motives of everyone who is not serial litigator James Dondero—Highland, its counsel, James Seery, Chief Judge Jernigan, HMIT, HMIT's counsel, HMIT's administrator—are not accepted by Highland.[2]

For purposes of this appeal, Highland generally accepts Dugaboy's Statement of the Case section A; the first paragraph of section B, except for the false statement in the last sentence thereof; the first paragraph of section C, but not the completely fabricated and inaccurate second and third paragraphs of that section, and not the misleading fourth paragraph of that section. Section D of Dugaboy's Statement of the Case is wholly irrelevant, and the issues discussed therein were not raised, and were therefore waived, below.

Significantly, Dugaboy conveniently omits two critical facts and does so because those facts dispose of this frivolous appeal. The Plan and

---

[2] Highland does appreciate Dugaboy's willingness to inform the Court about all the incessant appeals, motions for reconsideration, recusal attacks, mandamus petitions, certiorari petitions, entreaties, and pleas Dugaboy has engaged in with respect to Highland's attempts to finally conclude the administration of its Chapter 11 estate for the benefit of creditors—a group to which Dugaboy is not and never has been a member. As poet and author Maya Angelou famously said, "When someone shows you who they are, believe them the first time." In addition to being a tool for Dondero's litigation crusade, Dugaboy is, among other things, a former holder of a *de minimis* 0.1866% of Highland's pre-petition limited partnership interests and nothing more.

the Claimant Trust Agreement (i) **expressly subordinate** Class 10 to Class 11, and that determination in the Plan is final and non-appealable; and (ii) **require** that all allowed Class 10 and Class 11 interests be determined in a fixed amount.[3] The Settlement Agreement governing the settlement between Highland and HMIT (the "**Settlement**," the bankruptcy court's approval of which Dugaboy has appealed separately to this Court in Case No. 3:25-cv-01876-K) achieved those requirements with respect to HMIT's Class 10 interest and the Class 11 Order did so for the Class 11 interests.

At the HMIT Settlement evidentiary hearing in the bankruptcy court on June 25, 2025, as well as at the September 18, 2025 evidentiary hearing on the Class 11 interest calculation, Seery testified at length how Highland's calculation of HMIT's Class 10 interest and Class 11 interest using Highland's consistently maintained partnership capital accounts was standard, objective and based on filed tax returns signed by Dondero (under penalty of perjury as to accuracy and completeness)—Dugaboy's sole current beneficiary and the person with de facto control over

---

[3] R.000771 (Claimant Trust Agreement, Art. V. 5.1(c)); R.000702-03 (Plan, Art. III, ¶¶ 10–11).

Dugaboy—and audited financial statements prepared when Dondero controlled Highland:

- HMIT owned 99.5% of the limited partnership interests in Highland as of the Petition Date;

- Under the Limited Partnership Agreement, *HMIT's prepetition partnership interests were senior to the holders of the remaining 0.5% partnership interests, including Dugaboy's 0.1866% interest*;

- Under the Plan, HMIT's pre-petition partnership interests were converted to senior Class 10 interests in the Claimant Trust with the remaining limited partnership interests placed in a *subordinated* Class 11 without objection by Dugaboy or anyone else;

- The Highland pre-petition Limited Partnership Agreement was rejected and of no relevance after confirmation of the Plan;

- Prior to the allowance of HMIT's Class 10 interest, in December 2024, Highland CLO Management, Ltd. ("HCLOM"), another entity controlled by Dugaboy, was allowed a Class 10 interest in the fixed amount of $10,140,633.26 by a bankruptcy court approved stipulation

among Highland, HCLOM, and Dondero and approved by Dugaboy.[4] HCLOM is the only other Class 10 interest holder besides HMIT;

- Highland calculated the amount of HMIT's Class 10 interest by (a) taking the fixed dollar amount of HMIT's capital account as of December 31, 2018, (b) bringing that amount forward to the Petition Date using Highland's financial statements, and (c) reducing that dollar amount by the amount of HMIT's obligations to Highland under the HMIT Note;[5]

- Highland calculated the value of the Class 11 interests by (a) taking the fixed dollar amount of each Class A limited partner capital account as of December 31, 2018, and (b) bringing those amounts forward to the Petition Date using Highland's financial statements;[6]

- Each of the calculations was based on (a) Highland's filed tax returns (executed by Dondero under penalty of perjury), (b) Schedule K-

---

[4] R.000784-90 (Bankr. Doc. 4199 (Dec. 27, 2024)).  The mere existence of the HCLOM Class 10 interest in a fixed amount makes the Dugaboy "pro rata" method completely untenable.  Under this method, Dugaboy continues to ignore that it is impossible to even determine how much HCLOM would receive via a pro rata distribution given that HCLOM was not a pre-petition limited partner in Highland.

[5] R.001129-32; R.001146-47; R.001166-70 (June 25, 2025 Tr. 93:19–96:20; 110:10–111:6; 130:20–134:9).

[6] R.001533-40 (Sept. 18, 2025 Tr. 25:2-32:7).

1s based on those tax returns and issued to each of the limited partners as of December 31, 2018, (c) Highland's financial statements prepared under the direction of its then CFO, Frank Waterhouse, and (d) in the case of HMIT, the terms of a promissory note owed by Dugaboy to Highland;[7]

- The methodology was simple arithmetic and not at all subjective;[8]

- Argument aside, Dugaboy did not offer a scintilla of evidence to support any claim or interest amount, claim calculation methodology, or claim valuation;

- The contrived "pro rata" method Dugaboy briefly suggested[9] was untenable because it improperly treated the Class 10 and Class 11 interests as equal in priority—in plain violation of the Plan and Claimant

---

[7] This calculation was consistent with the post-petition capital account calculation on Highland's 2019 filed tax return executed by Frank Waterhouse under penalty of perjury while Dondero was in full control of Highland.

[8] R.001132 (June 25, 2025 Tr. 96:11–14); R.001539 (Sept. 18, 2025 Tr. 31:15-17).

[9] Before the hearing on June 25, 2025, Dugaboy chose not object to Highland's calculation of HMIT's Class 10 interest, including the methodology employed. *See generally* Bankr. Doc. 4230. Although it tried to change course during that hearing, Dugaboy offered *no* evidence on the issue. And at the hearing fixing the Class 11 Claims, Dugaboy admitted that Class 11 is subordinate to Class 10: "The Court: Okay. So you dispute that the plan subordinated Class 11 – Mr. Harper: [counsel for Dugaboy] No, Your Honor, The Court: -- to Class 10? Mr. Harper: I do not."  R.001522 (Sept. 18, 2025 Tr.14:2-6).

Trust Agreement, which *created separate classes for HMIT (senior Class 10) and the other LP holders (subordinated Class 11), and maintained the priority distribution rights fixed under Highland's pre-petition limited partnership agreement, subordinating Class 11 to Class 10.*[10]

Dugaboy blithely ignores all this—most critically, the express subordination of Dugaboy's Class 11 interest to HMIT's Class 10 interest in the only documents that matter after the effective date—the Plan and the Claimant Trust Agreement. But it is that subordination, more than any other immutable fact, that defeats Dugaboy's appeal here.

---

[10] R.001132-33 (June 25, 2025 Tr. 96:15–97:11). The Claimant Trust Agreement, including the provisions subordinating Class 11 interests to Class 10 interests, were adopted without objection as part of Highland's Plan. The Opening Brief admits, almost *sotto voce*, in a footnote (fn.12 at 20) that "[u]nder the Plan's priority structure, Class 11 interests are subordinate to Class 10, meaning Class 11 recovers nothing until Class 10 is paid in full." Of course, Dugaboy never addresses the implications of that express subordination in its Opening Brief.

## STANDARD OF REVIEW

Highland agrees that this Court reviews the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. Dugaboy's argument regarding the standard of review on "valuation methodology" is pointless and incorrect. Only by ignoring that the Plan explicitly subordinates Class 11 to Class 10 and that the Plan, confirmed more than five years ago, can Dugaboy attempt to make relevant the "valuation methodology" used to "value" Dugaboy's worthless Class 11 interest. As discussed below, the entire issue of "valuation methodology" is irrelevant because valuing the Class 11 interests together with the Class 10 interests is facially and unequivocally inconsistent with the Plan's clear subordination of Class 11 to Class 10 and the requirement that those interest amounts be set in fixed dollar amounts.

## ARGUMENT SUMMARY

By offering no evidence and no coherent legal argument of its own to oppose Highland's motion, Dugaboy gave the bankruptcy court no reason not to adopt the extensively fact-supported, claim calculation methodology in the Class 11 Order, which had the added merit of being based on Dondero's own sworn-to numbers and tax filings. Nothing about the Plan's classification scheme or the subordination of Class 11 to Class 10—wholly consistent with Highland's own pre-petition Limited Partnership Agreement—violated the Bankruptcy Code's absolute priority rule, even if it applied (it does not). The bankruptcy court properly invoked the long-settled law from the Supreme Court that a plan of reorganization and the bankruptcy court order confirming it have res judicata effect on any later attempts to challenge any of the provisions of the plan or the confirmation order. Dugaboy's attempts to misrepresent what the bankruptcy court did does not give Dugaboy any right to collaterally challenge the classification provisions of the Plan some five years after they were confirmed without objection, even from Dugaboy. Finally, Dugaboy's attempt to rehash a bereft argument about Chief Judge Jernigan's imagined bias and requirement to recuse goes nowhere,

and not just because Dugaboy misrepresents what the Fifth Circuit did in response to ethics complaints, and not just because this Court and the Fifth Circuit have rejected these same arguments time and time again, and not just because Dugaboy failed to even raise the issue of recusal at any time during the proceedings below thereby depriving Chief Judge Jernigan the opportunity to respond. Neither Dugaboy's fantasies about Chief Judge Jernigan (which were not raised in connection with this motion) nor any of Dugaboy's other baseless arguments establish that the bankruptcy court committed any error in entering the Class 11 Order. It should be affirmed in its entirety.

# ARGUMENT

## HIGHLAND'S CALCULATION METHODOLOGY RELIED ON DONDERO'S OWN NUMBERS AND WAS THE ONLY WAY TO HONOR THE PLAN'S AND DONDERO'S OWN PRIORITY SCHEME AMONG EQUITY HOLDERS

Dugaboy's argument that the bankruptcy court erred by not using Dugaboy's fanciful "pro rata" method for calculating HMIT's Class 10 interest under the Settlement and Dugaboy's Class 11 interest can be—and should be—understood for what it is: Dugaboy's vain attempt to maintain a toehold in the Highland bankruptcy case and obtain a distribution on its Class 11 interest that even Dugaboy admitted on the record at the bankruptcy court it will never receive.

The bankruptcy court faced two issues: (1) whether a rational basis existed to calculate Dugaboy's Class 11 interest the way Highland did; and (2) whether, however that interest was calculated, distributions between Class 10 and Class 11 should be pro rata despite Class 11's express subordination to Class 10 under the Plan and the Claimant Trust Agreement.

Highland solicited extensive testimony from its CEO James Seery explaining the completely objective method he used to calculate HMIT's Class 10 interest and Dugaboy's Class 11 interest, which had the added benefit of using Dondero's own figures from filed tax returns. Seery

explained in exacting detail the source of the amounts of HMIT's, Dugaboy's, and other limited partners' capital account balances, identifying (among other documents) Highland's own internal capital account ledgers, pre-bankruptcy tax returns, and IRS Schedule K-1s prepared by Highland's accountants when Dondero controlled Highland; the tax returns and K-1s were approved by Dondero and Dondero's CFO, Frank Waterhouse.[11]

To dispel any concern that Seery had interjected his own choices into calculating the Class 10 and Class 11 interests, Highland's counsel asked, "Did you apply any of your own subjective views or beliefs in the calculation of the amount of the Class 10 interest held by HMIT?" Seery answered, "No. This was math."[12] It was math done within the confines of Dondero's own capital account records, tax returns, and K-1s and, critically, within the confines of the Plan. Seery gave the same testimony with respect to the Class 11 interests agreeing that there was no "subjectivity" in the calculation of the Class 11 interest amounts.[13]

---

[11] R.001131-32 (June 25, 2025 Tr. 95:7–96:10).

[12] R.001132 (June 25, 2025 Tr. 96:11–14).

[13] R.001539 (Sept. 18, 2025 Tr. 31:15-17).

And that is why Dugaboy's contrived "pro rata" method made no sense to Seery[14] and is inconsistent with the Plan, which expressly subordinates Class 11 to Class 10. When the Opening Brief extols the "pro rata" method while simultaneously acknowledging, as it must, that "Class 11 interests are subordinated to Class 10," Dugaboy contradicts itself, lumping HMIT's Class 10 interest together with Dugaboy's subordinate Class 11 interest because both previously were some form of "equity interests" in pre-confirmation Highland." That is not what the Plan says. The Plan does *not* treat all former equity interests the same. HMIT's former equity interests (which were entitled to priority

---

[14] R.001132 (June 25, 2025 Tr. 96:15–25):

Q    And did you hear Dugaboy's counsel suggest … that perhaps you could have used a pro rata methodology instead of the methodology you used?

A    I heard what he said, but it doesn't make any sense. You can't fix an amount that way.

Q    And do you understand that Dugaboy, under the [Highland] partnership agreement, is subordinated to HMIT?

A    Dugaboy is subordinated under the partnership agreement for certain distributions. But importantly for our purposes, they're subordinated under the plan.

Although it does not matter now, years later, Dugaboy's subordinated distribution rights in respect of its 0.1866% limited partnership interest under Highland's pre-petition partnership agreement is precisely why Dugaboy's former equity interest was subordinated to HMIT's former equity interest under the Plan—the Plan respected the priority distribution arrangement Highland's former limited partners had negotiated for themselves.

distribution rights under Highland's prepetition Limited Partnership Agreement, which Dondero signed) was placed in a superior Class 10 while Dugaboy's former equity interest was placed in a subordinated Class 11. And although Dondero and his controlled entities relentlessly objected to the Plan and appealed the bankruptcy court's order confirming the Plan, *neither Dondero nor anyone else* objected to the subordination of Class 11 to Class 10 in the Plan.[15]

The Opening Brief badly misrepresents the absolute priority rule contained in Bankruptcy Code § 1129(b)(2)(C) (more on that below, including that the absolute priority does not even apply here), but what the absolute priority rule *would* say (if it applied) is that all holders of allowed Class 10 interests must be paid in full before the holders of allowed Class 11 interests receive anything—and even Dugaboy does not dispute that Class 10 interests will never be paid in full.[16] That means, with epistemological certainty, that Dugaboy cannot now and will never

---

[15] At the hearing fixing the Class 11 interest amount, Seery once again explained in detail why the manufactured pro rata suggestion violated the Plan and the Claimant Trust Agreement. R.001540-41 (Sept. 18, 2025 Tr. 32:12-33:2) ("So the idea that [the method for fixing the Class 11 interest] would be pro rata would be anathema to the way – the structure of the plan.").

[16] R001541; R001555-56 (Sept. 18, 2025 Tr. 33:11-14; 47:10-48:9).

recover anything under the Plan—not because of nefarious actors, but because all Dugaboy ever had was a subordinated *de minimis* 0.1866% subordinated limited partnership interest. Dugaboy may not like it, but that is Dugaboy's unavoidable reality.

## DUGABOY OFFERED THE BANKRUPTCY COURT NO ALTERNATIVE TO VALUING DUGABOY'S CLASS 11 INTEREST

This appeal, just as the parallel appeal Dugaboy has pending before Judge Kinkeade, involves the bankruptcy court's application of the same approach in Dugaboy's exquisitely out-of-the-money Class 11 interest as it did in relation to HMIT's superior Class 10 interest. In that regard, the bankruptcy court hearing resulting in the Class 11 Order on appeal here presented Dugaboy with a rare second opportunity to persuade the bankruptcy court that the fixed-dollar methodology Seery used to calculate HMIT's Class 10 interest was inappropriate as applied to Dugaboy's subordinated Class 11 interest.

But rather than exploit that rare chance for a do-over, Dugaboy—as the bankruptcy court noted and as Dugaboy grudgingly acknowledges in its Opening Brief at 22—once again declined to put on any evidence to

support its preferred valuation methodology.[17] That left the bankruptcy court with only Highland's substantial evidence and gave the bankruptcy court no alternative but to rule in Highland's favor based on the extensive record that Highland produced, as long as the calculation methodology employed was reasonable (which is was).[18] Dugaboy imagines that the bankruptcy court erred in ruling on uncontested evidence because "the court improperly shifted the burden to Dugaboy, dodging its own obligation to explain and justify its method," and because "the court failed to address … whether Highland's capital account methodology … was sufficiently reliable to support any conclusions." This argument is meritless.

First, Dugaboy was objecting to Highland's motion. Highland had the burden of establishing its entitlement to the relief sought in that motion with evidence and legal authorities. It did so, amply. Even Dugaboy does not dispute that. When that happens, the burden shifts to

---

[17] *See* R.001577-78 (Sept. 18, 2025 Tr. 69:11-70:16).

[18] R.001582 (Sept. 18, 2025 Tr. 74:16-24) ("I find that the methodology proposed is reasonable.  It is my only evidence of what is reasonable, Dugaboy having chosen not to put on evidence. The methodology amounts to looking at the dollars used by the Debtor multiple times to allocate to the various limited partnership interests values that were signed off on by Mr. Dondero. So it's hard to understand why we're here, but I do accept as reasonable methodology the methodology suggested by Reorganized Highland and the Claimant Trust.").

the objector to substantiate the grounds for its objection. It is elementary that once the movant makes a prima facie case, the burden shifts to the objector. Dugaboy cites no law in its Opening Brief to the contrary. The burden was Dugaboy's to persuade the bankruptcy court that its alternative methodology was superior. (It hardly bears noting that the bankruptcy court did not "improperly shift[ ] the burden to Dugaboy"; hornbook law did.) By choosing not to present any evidence at the hearing—no expert testimony, no lay witness testimony, no documentary evidence, no learned treatises, nothing—Dugaboy utterly failed to carry its burden.[19] Rather than litigate with any honest rigor—by at least making all the arguments it now makes in pages 23–29 of its Opening Brief, to say nothing of presenting so much as a fleck of evidence to support those arguments—Dugaboy was satisfied to lodge a vague objection, burden the bankruptcy court, and then appeal to this Court when it ineluctably lost. And here we are again, more than 60 failed appeals later.

---

[19] That a trial judge has "its own obligation" in this context, were it at all true, would surely be alarming news to this Court.

Second, the Opening Brief is particularly opaque when it argues that the bankruptcy court was required to "address the threshold legal question" of whether Highland's methodology was "sufficiently reliable." Dugaboy never identifies precisely what that "legal question" is, but it seems to be a reference to Dugaboy's misguided absolute priority rule argument, which Highland addresses now.

And Dugaboy's mendacious claim that Seery referred to Dugaboy's contrived pro rata calculation as standard is baseless. Seery did nothing of the sort and, in fact, on cross-examination testified at the Class 10 Settlement hearing that the evidence-based capital account calculation used by Highland was the standard:

"Q.: Okay. And why'd you use the petition date as the date to determine the value of the capital accounts"

A: Because this is bankruptcy and that's the date on which you fix all your claims and interests.

Q: If you used – have you ever used equity ownership percentage to determine the payment to equity versus their capital account balances?

A: In this case or elsewhere?

Q: Elsewhere.

A. I think that's standard.  I can't cite you a specific thing but typically when a partnership liquidates or a partnership is sold, amounts get distributed pursuant to the capital accounts and – and – in up to amounts in the capital accounts."[20]

## THE ABSOLUTE PRIORITY RULE HAS NOT BEEN "VIOLATED" AND IS IRRELEVANT ANYWAY

Dugaboy argues in this appeal, as it has in the appeal pending before Judge Kinkeade, a simple but illogical proposition: that Highland's calculation methodology violates the absolute priority rule because it inaccurately fixes creditors' claims. First, the Court can easily appreciate that Dugaboy's entire argument regarding the absolute priority rule springs forth from a fundamental mischaracterization of the Plan. The entirety of Section A of Dugaboy's argument section proceeds from the fiction that the Plan treats all "equity interests" the same and that all the Plan does is "subordinate the equity owners of Highland to the senior creditors."[21] That spot in its brief would have been the perfect place for Dugaboy to openly acknowledge what it unambiguously admitted to the Bankruptcy Court—that the Plan also subordinates Class 11 equity

---

[20] R.001168-69 (June 22, 2025 Tr. 132:20-133-8).

[21] Opening Brief at 19.

interests to Class 10 equity interests.[22] But, alas, Dugaboy ignores that critical and dispositive fact entirely (save for one throwaway footnote 12 that goes nowhere). Dugaboy spends pages arguing about a different plan than the one the bankruptcy court confirmed years ago.

The Opening Brief contradicts itself by arguing in one breath that the absolute priority rule "has no application" and then, in another breath, that the rule "does not support the bankruptcy court's ruling."[23] Highland confesses to being confused about what Dugaboy actually argues here, but its best guess is that it is asserting that, because HMIT's interest was fixed at over $300 million, the Plan's subordination of Class 11 to Class 10 violates the absolute priority rule. If that is what Dugaboy is arguing, Dugaboy is wrong.

Dugaboy cites no case or statutory authority for the proposition that the absolute priority rule *ever* depends on the amount of a creditor's claim. No such authority exists because the absolute priority rule has

---

[22] R.001522-23 (Sept. 18, 2025 Tr. 14:2-6; 15:13-24).

[23] Opening Brief at 21.

nothing to do with the amount of a creditor's claim.[24] All the rule says is that junior creditors may not receive a distribution unless and until all senior creditors are paid in full—*whatever* the aggregate amount of those senior claims is. That is why Dugaboy's argument is not—and cannot be—about the absolute priority rule.[25] It is simply about Dugaboy's pique that it will never recover on its de minimis Class 11 interest unless it can convince some court somewhere to disregard the subordination of Class 11 contained in and mandated by the long-ago confirmed and affirmed Plan. Citing the absolute priority rule is nothing more than Dugaboy's misguided attempt to brand the Settlement and the Class 11 Order as "illegal"—and, therefore, not fair and equitable—not because they violate the Bankruptcy Code or the Plan but, rather, because they contain

---

[24] If calculating a particular creditor's disputed claim post-confirmation could violate the absolute priority rule, as Dugaboy argues, then every Chapter 11 plan that provides for disputed claims to be resolved after plan confirmation would offend the absolute priority rule and could not be confirmed. But virtually all Chapter 11 plans do this.

[25] Dugaboy impugns and then attempts to mischaracterize the Plan's classification scheme itself as if the Plan had not been confirmed years ago and had not survived an appeal by several Dondero entities to the Fifth Circuit. Despite that the Fifth Circuit characterized the Dondero entities' approach as a "bankruptcy-law blunderbuss," neither Dugaboy nor any other Dondero entity ever appealed the subordination of Class 11 to Class 10. *NexPoint Advisors, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 48 F.4th 419, 432 (5th Cir. 2022).

4937-7591-9783.4 36027.003                    25

provisions that make it mathematically certain that Dugaboy's Class 11 interest is and will always be out of the money.

## THE BANKRUPTCY COURT PROPERLY CITED RES JUDICATA, AND NOT IN THE WAY DUGABOY CONTENDS

Dugaboy spends some three pages of its Opening Brief arguing that the bankruptcy court erroneously applied the preclusive concept of res judicata in approving the Class 11 valuation using the same methodology as it used to approve the Class 10 valuation. That isn't what the bankruptcy court did at all.

What the bankruptcy court did—and its application of res judicata as one of the several bases for its ruling—is easy to ascertain from the transcript of the September 18 hearing. This is what the bankruptcy court said, leaving out Dugaboy's counsel's frequent interruptions:

> I want you to address res judicata. How many times is it appropriate for this Court to consider the same issue? Isn't that exactly what I'm doing? **I considered the plan language**, which subordinated Class 11 to Class 10 based on they had different rights under the limited partnership agreement of Highland, which was part of the evidence. Your client didn't object, by the way, to that. Although [Dugaboy] objected to the plan in numerous ways and appealed the confirmation order. So you're going to show me, I guess, **why this isn't res judicata, because it looks to me like the plan decided it**. Okay?[26]

---

[26] R.001523-24 (Sept. 18, 2025 Tr. 15:13–16-3) (emphasis added).

The previous ruling to which the bankruptcy court was referring was the confirmed Plan, not the court's previous ruling on the Class 10 valuation as part of the Settlement. It is firmly entrenched Supreme Court law that a confirmed plan of reorganization and the bankruptcy court order confirming that plan have res judicata effect with respect to all their provisions.[27] The bankruptcy court properly applied this uncontroversial law to dispense with Dugaboy's years-late attack on the Plan's classification scheme and the explicit subordination of Class 11 to Class 10 under the Plan. *That* is what the bankruptcy court actually did and that is precisely what Dugaboy has no answer for. Instead, Dugaboy spills ink needlessly arguing that the bankruptcy court did something different from that, then argues that the bankruptcy court erred by doing it. There can be no better example of the classic "straw man" logical fallacy than this.

**DUGABOY'S TIRED RECUSAL ARGUMENT HAS NEVER PERSUADED ANYONE AND IT SHOULDN'T PERSUADE THIS COURT**

Dugaboy rounds out its Opening Brief by rehashing its beloved 12-page screed regarding Dugaboy's years-long campaign to oust Chief

---

[27] *See, e.g., Travelers Indemnity Co. v. Bailey*, 557 U.S. 137 (2009); *Stoll v. Gottlieb*, 305 U.S. 165 (1938); *United Student Aid Funds v. Espinosa*, 559 U.S. 260 (2010).

Judge Jernigan from hearing the Highland case. Here, Dugaboy does so in service of an argument that the Class 11 Order should never have been issued because Chief Judge Jernigan should have recused herself before issuing it (an argument that Dugaboy never made to the Bankruptcy Court in connection with this proceeding).

In support of this argument—which Dugaboy never mentioned below in connection with the motion to fix the Class 11 interests—Dugaboy maintains that the Fifth Circuit "effected a recusal of the predecessor judge as 'corrective action' for books she authored and published …"[28] The Fifth Circuit did no such thing and calls into question Dugaboy's credibility.  Again, to the extent this Court is at all interested in the issue, Highland invites the Court to review the Fifth Circuit's actual decisions on recusal—which carefully considered and rejected every argument of supposed bias or prejudice. Dugaboy ignores those Fifth Circuit decisions and instead focuses on—and badly misconstrues— Orders issued by Chief Judge Elrod in response to complaints filed by Dondero and his associates that were never subjected to the adversary process.

---

[28] Opening Brief at 36.

In December 2025, Chief Judge Jernigan voluntarily "recused herself from all matters related to the company's case that are currently pending before her," which Chief Judge Elrod of the Fifth Circuit stated "**should not be interpreted as an opinion or reflection on the merits of judge's prior decision not to recuse, which has been addressed by the Fifth Circuit**," or "**the validity of any decision, ruling, or order that she has issued in any judicial proceeding**."[29] Judge Elrod did *not*, as Dugaboy dishonestly asserts, "arrang[e] for extensive 'corrective action,' including the predecessor judge's recusal from this case," "impos[e] the corrective action of recusal," "tak[e] corrective action to recuse the predecessor judge from the case going forward," or "effect[] a recusal of the predecessor judge as 'corrective action' for books she authored."[30] In reality, Chief Judge Elrod held that the allegations of judicial misconduct "need not be decided" because Chief Judge Jernigan **voluntarily** "recused herself."[31] The Judicial Council Opinion was **not** an order to recuse Judge Jernigan under 28 U.S.C. § 455 and was in no way "corrective action" for Jernigan's alleged violation of

---

[29] Judicial Council Opinion at 6 and n.3 (emphasis added).

[30] Opening Brief at 36, 43–45.

[31] Judicial Council Opinion at 6.

judicial ethics. Dugaboy's attempts to persuade this Court that Judge Elrod said and did things she didn't say and didn't do only demonstrates Dugaboy's vindictive desperation to interfere with the final stages of this Chapter 11 case.

Dugaboy's assertion that the Class 11 Order was somehow illegitimate because Chief Judge Jernigan should have *sua sponte* recused herself is belied by the record. As the bankruptcy court, this Court, and the Fifth Circuit have held numerous times, Judge Jernigan *never* had a duty to recuse herself under Section 455. Dondero and Dugaboy have filed **five** failed recusal motions. The Fifth Circuit has rejected **three times** Dugaboy's attempts to recuse Judge Jernigan and the Supreme Court has twice denied Dugaboy's petitions for certiorari on the second of those Fifth Circuit rulings. Dugaboy's most recent recusal-related appeal was dismissed by this Court. Federal courts throughout the Fifth Circuit have repeatedly affirmed scores of Judge Jernigan's rulings in more than **five dozen** appeals Dondero entities have taken in this one bankruptcy case. And as reflected in the Judicial Council Opinion, despite having orchestrated five separate secret ethics complaints filed by his employees and cronies, Dondero even failed to

persuade Fifth Circuit Chief Judge Elrod that Judge Jernigan had done anything warranting recusal.

Nevertheless, Dugaboy spends nearly half its Opening Brief rehashing the same tired, vanquished arguments relating to Judge Jernigan's alleged "bias" and "impartiality." This Court should, once again, countenance none of it—if for no other reason than Dugaboy never raised the issue below.

Dugaboy does attempt something slightly different here than in previous settings: it argues that the finality of the Class 11 Order makes Judge Jernigan's refusal to recuse a final order susceptible to appeal as of right rather than the type of interlocutory order Dugaboy and Dondero have never prevailed to undo via a writ of mandamus despite many attempts. There is, of course, one enormous problem for Dugaboy: *it never moved for recusal in connection with the Class 11 proceedings, never raised an objection to Highland's motion on recusal or bias grounds, and never preserved the issue for appeal*.

The issue is simply not before this Court. Whether the Class 11 Order is a final order or not—and Highland does not dispute that it is—has nothing to do with Dugaboy's obstinate attempts to smear Chief

Judge Jernigan, even after she voluntarily recused herself after enduring five years of baseless allegations of bias by James Dondero, perhaps the most infamous vexatious litigant in Fifth Circuit history.

## CONCLUSION

For the foregoing reasons, the Court should affirm the bankruptcy court's Class 11 Order.

May 1, 2026

**PACHULSKI STANG ZIEHL & JONES LLP**
Jeffrey N. Pomerantz
John A. Morris
Gregory V. Demo
Jordan A. Kroop
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email:  jpomerantz@pszjlaw.com
         jmorris@pszjlaw.com
         gdemo@pszjlaw.com
         jkroop@pszjlaw.com

-and-

**HAYWARD PLLC**
*/s/ Zachery Z. Annable*
Zachery Z. Annable
Texas Bar No. 24053075
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Telephone: (972) 755-7100
Email:  ZAnnable@HaywardFirm.com

*Counsel for Appellees*
*Highland Capital Management, L.P. and the*
*Highland Claimant Trust*

4937-7591-9783.4 36027.003

33

## CERTIFICATE OF COMPLIANCE WITH RULE 8015

1.  This document complies with the type-volume limit of Fed. R. Bankr. P. 8015(a)(7)(B)(i) because, according to Microsoft Word, it contains 5,529 words, excluding the portions of the brief exempted by Fed. R. Bankr. P. 8015(g).

2.  This document complies with the typeface requirements of Fed. R. Bankr. P. 8015(a)(5) and the type-style requirements of Fed. R. Bankr. P. 8015(a)(6) because this document has been prepared in a proportionally spaced typeface (Century Schoolbook) in 14-point type (12-point type for footnotes).

By: */s/ Zachery Z. Annable*
Zachery Z. Annable

## CERTIFICATE OF SERVICE

I certify that, on May 1, 2026, a copy of this document was served electronically via the Court's CM/ECF system on all parties registered to receive electronic notice in this case.

By: */s/ Zachery Z. Annable*
Zachery Z. Annable